# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| INPHONIC, INC., et al.,[1] | : Case No. 07-_____ |
| Debtor. | : (Jointly Administered) |

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 366(b) FOR ORDER (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE TO DEBTORS, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby move this court for entry of an order (I) prohibiting utility companies from altering, refusing or discontinuing service, (II) deeming utility companies adequately assured of future performance, and (III) establishing procedures for determining requests for additional adequate assurance (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

675172-1

2.  The statutory basis for the relief requested herein are Sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

3.  On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Affidavit of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and is incorporated herein by reference.[2]

4.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.  No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

## The Debtors' Business Operations

6.  InPhonic was incorporated in 1997 and began operations in 1999. InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services. InPhonic focuses in four (4) areas: (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("MVNE") services, and (iv) unified communication services.

7.  InPhonic is a leading internet (online) seller of wireless services and devices to consumers. InPhonic sells these services and devices through company owned and branded

---

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

websites, including without limitation www.wirefly.com, as well as through a variety of private labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

8.  InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

9.  InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

10. CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite. Through VMC Satellite, InPhonic markets consumers digital broadcast satellite television, broadband and VOIP services. VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

11. InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers without having to own or operate the underlying wireless network or operational infrastructure.

InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

13. InPhonic developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee. Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer. The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

13. InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations. InPhonic has agreements with the largest wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services. The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

14. All of the Debtors are headquartered in Washington, D.C. The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

The Debtors' Utility Companies

15. In the ordinary course of business, the Debtors obtain electricity, telecommunications and similar services (collectively, the "Utility Services") from various utility companies (collectively, the "Utility Companies"). A non-exhaustive list identifying the Utility

Companies that provide Utility Services to the Debtors as of the Petition Date is attached hereto as Exhibit A and incorporated herein by reference.[3]

16. Historically, the Debtors have paid the Utility Companies' bills consistently and on a regular basis. Furthermore, to the best of the Debtors' knowledge, except for amounts owing set forth on Exhibit A, the Debtors are current on all amounts owing to the Utility Companies, other than payment interruptions that may be caused by the commencement of these chapter 11 cases. The Debtors estimate that their average monthly payments to the Utility Companies aggregate approximately $273,160.

17. The Debtors maintain operations in multiple locations throughout the Mid-Atlantic region.[4] Continued and uninterrupted Utility Services are vital to the Debtors' ability to sustain their operations during these chapter 11 cases. Any interruption of the Utility Services would severely disrupt the Debtors' business operations and jeopardize their ability to reorganize.

## Relief Requested

18. By this Motion, pursuant to Sections 105(a) and 366 of the Bankruptcy Code, the Debtors seek the entry of an order: (a) prohibiting their Utility Companies from altering, refusing or discontinuing service, (b) deeming the Utility Companies adequately assured of future performance, and (c) establishing procedures for determining requests for additional adequate assurance.

---

[3] The listing of any entity on Exhibit A is not an admission that any listed entity is a utility within the meaning of Section 366 of the Bankruptcy Code. The Debtors reserve all rights to further address the characterization of any particular entities listed on Exhibit A as a utility company within the meaning of Section 366(a) of the Bankruptcy Code. The Debtors further reserve all rights to terminate the services of any Utility Company at any time and to seek an immediate refund of any utility deposit without effect to any right of setoff or claim asserted by a Utility Company against the Debtors. The relief requested herein is with respect to all Utility Companies and is not limited to only those identified in Exhibit A.

[4] The Debtors leases its headquarters located at 1010 Wisconsin Avenue, NW, Suite 600, Washington D.C. 20007. The Debtors also leases (i) 1000 Wisconsin Ave N.W., Washington, DC 20007, (ii) 9301 Peppercorn Place, Largo

19. In accordance with the DIP Facility, as such term is defined in the Schwartz Affidavit, to provide adequate assurance of payment for future services to the Utility Companies, the Debtors propose to deposit into an interest-bearing, newly-created segregated account (the "Utility Deposit Account") a sum equal to approximately fifty percent (50%) of the amounts the Utility Companies billed the Debtors for Utility Services for the month prior to the Petition Date, i.e., $136,580. The Debtors propose to make such deposit within ten (10) days after the entry of a final order granting this Motion (the "Final Order"). The funds in the Utility Deposit Account will remain segregated, pending further order of this Court, for the purpose of providing each Utility Company with adequate assurance of payment of its postpetition date services to the Debtors. The Debtors submit that the Utility Deposit Account, in conjunction with their ability to pay for future Utility Services in the ordinary course of business, constitutes adequate assurance of payment to the Utility Companies.

20. The Debtors also seek to establish reasonable procedures (the "Procedures") by which Utility Companies may request additional adequate assurance of future payment, in the event that Utility Companies believe that the Utility Deposit Account does not provide them with satisfactory adequate assurances. The proposed Procedures are as follows:

    a.    Absent any further order of this Court and except as otherwise provided herein, the Utility Companies may not alter, refuse or discontinue service to, or discriminate against, the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges, or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges;

    b.    The Debtors will serve this Motion and a bridge order granting this Motion on an interim basis (the "Bridge Order"), if granted by the Court, via first-class mail, within three (3) business days after the

---

MD 20774, (iii) 10790 Parkridge Boulevard, Reston VA 20191, (iv) 11130 Sunrise Valley Drive, Reston VA 20191, and (v) 10205 Colvin Run Road, Suite 100, Great Falls, VA 22066.

date that the Bridge Order is entered by the Court on all Utility Companies identified on Exhibit A attached hereto; provided that for any Utility Company that may have been omitted from Exhibit A, the Debtors shall have the right to supplement such list of Utility Companies and shall promptly provide notice of the Bridge or Final Order upon learning of such Utility Company;

c.  A Utility Company may request additional assurance of payment within thirty (30) days after the Petition Date (an "Additional Assurance Request") by submitting an Additional Assurance Request to the following parties: (i) The Bayard Firm, 222 Delaware Avenue, Suite 900, Wilmington, Delaware 19899 (Attn: Neil B. Glassman); (ii) DLA Piper US LLP, The Marbury Building, 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: Maria Ellena Chavez-Ruark); (iii) Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn. Robert S. Brady); (iv) Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn: David A. Agay); and (v) counsel, if any, to any official committee of unsecured creditors;

d.  Any Additional Assurance Request must (i) be made in writing and (ii) include a summary of the Debtors' payment history relevant to the affected account(s);

e.  If a Utility Company makes a timely Additional Assurance Request that the Debtors, after consultation with Adeptio INPC Funding, LLC, believe is reasonable, then the Debtors shall be authorized in their sole discretion to comply with such request without further order of the Court;

f.  If the Debtors believe the Additional Assurance Request is unreasonable, the Debtors will schedule a hearing to determine adequate assurance to such Utility Company as necessary at the next omnibus hearing scheduled in these cases (the "Determination Hearing");

g.  Pending resolution of that issue at any such Determination Hearing, any Utility Company making an Additional Assurance Request shall be prohibited from altering, refusing or discontinuing service to the Debtors; and

h.  A Utility Company shall be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further adequate assurance of payment.

21.    Although the Debtors believe that the list of Utility Companies attached as Exhibit A hereto is a complete list, the Debtors request authority, without further order of the Court, to supplement the list of Utility Companies if any Utility Company has been inadvertently omitted. If the Debtors supplement the list subsequent to the filing of this Motion, the Debtors promptly will serve a copy of this Motion, and the signed order granting this Motion (the "Final Order"), on any Utility Company that is added to the list by such a supplement (the "Supplemental Service"). Concurrently with the Supplemental Service, the Debtors will: (a) file with the Court a supplement to Exhibit A adding the name of the Utility Company so served; and (b) increase the Utility Deposit Account to reflect the addition of the new Utility Company. The added Utility Company shall have thirty (30) days from the date of service of this Motion and the Final Order to make an Additional Assurance Request. If such an Additional Assurance Request is made, the Debtors shall abide by the procedures set forth above, as applicable. Pending resolution of any Determination Hearing relating to an Additional Assurance Request, the Debtors seek an order prohibiting any such Utility Company from altering, refusing or discontinuing Utility Services to the Debtors.

### Basis for Relief

22.    The relief requested in this Motion is supported by Section 366(a) of the Bankruptcy Code, which provides, in relevant part:

> (a)    Except as provided in subsection (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b)    Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a

> deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
>
> \* \* \*
>
> (c)(2)  Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366.

23.  Section 366 protects a debtor against the immediate termination of utility services after it files for bankruptcy. Pursuant to this section, a utility may not, during the first thirty (30) days of the case, alter, refuse, or discontinue services to a debtor in a chapter 11 case solely because of unpaid prepetition amounts. However, the utility may do so thereafter unless the debtor (as the Debtors are doing pursuant to this Motion) furnishes "adequate assurance" of payment, in the form of a deposit or otherwise, for postpetition services in a form "satisfactory" to the utility within twenty (20) days of the Petition Date.

24.  Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, courts, commentators, and legislative history had all confirmed that Section 366 does not require, in every case, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. In <u>Virginia Electric & Power Co. v. Caldor, Inc.</u>, 117 F.3d 646, 648-49 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit affirmed the bankruptcy court's ruling that the debtor's prepetition payment history, its postpetition liquidity, and the administrative expenses afforded postpetition invoices constituted adequate assurance of future performance. <u>See</u> also <u>In re Pacific Gas & Elec. Co.</u>, 271 B.R. 626,

644-45 (N.D. Cal. 2002) (upholding the bankruptcy court's finding that the debtor's likelihood of performance and availability of resources provided adequate assurance); Shirley v. Philadelphia Elec. Co. (In re Shirley), 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("[S]ection 366(b)... does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a prepetition debt owed for services rendered").

25. However, under the recently enacted Section 366(c) of the Bankruptcy Code, in a chapter 11 case, a utility company may alter, refuse, or discontinue utility service if within thirty (30) days after the commencement of the chapter 11 case the utility company does not receive adequate assurance in a form that is "satisfactory" to the utility company, subject to the Court's ability to modify the amount of adequate assurance. Further, under Section 366(c), in making a determination of whether an assurance of payment is adequate, the Court may not consider (a) the absence of security before the petition date, (b) the debtor's history of timely payment or (c) the availability of an administrative expense priority to the utility company.

26. While the form of adequate assurance of payment may be limited under new subsection 366(c) to the types of security enumerated in Section 366(c)(1)(A), the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court. It has been well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment. In Adelphia Business Solutions. Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002), the Bankruptcy Court for the Southern District of New York stated that "[i]n determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for post-

petition services." The essence of the Court's inquiry is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. Id. at 82-83; see also In re Magnesium Corp. of America, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) ("In deciding what constitutes adequate assurance in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more that than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.").

27.    Here, the Debtors propose to establish the Utility Deposit Account to provide adequate assurance to its Utility Companies. Under the circumstances of these cases, the Debtors believe that the establishment of this substantial cash reserve, relative to the Debtors' estimated monthly consumption, constitutes adequate assurance of payment under Section 366(c) of the Bankruptcy Code.

28.    In addition, the Debtors propose to protect the Utility Companies further by establishing the Procedures provided for herein, whereby any Utility Company can request additional adequate assurance in the event that it believes there are facts and circumstances with respect to its providing postpetition services to the Debtors that would merit greater protection.

29.    As set forth above, the Debtors cannot continue to perform without continued Utility Services. If any of the Utility Companies alter, refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption could have a devastating impact on the Debtors' going concern value and ability to reorganize. In contrast, the Utility Companies will not be prejudiced by the continuation of their services and will be paid all postpetition utility charges. It is therefore vital that Utility Services continue uninterrupted.

30.  This Court also has the authority to grant the relief requested herein pursuant to Section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of Section 105(a) is to assure the bankruptcy court's "power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (15th rev. ed. 2001). The Debtors submit that granting the relief requested in this Motion is both necessary and appropriate because it will afford the Debtors an opportunity to successfully reorganize without materially prejudicing the Utility Companies under Section 366 of the Bankruptcy Code.

### Statement Pursuant to Local Rule 1001-1(b)

31.  Pursuant to District Local Rule 7.1.2(a), incorporated by reference into Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Motion.

### Notice

32.  Notice of this Motion has been provided to (a) the Utility Companies listed on Exhibit A hereto, or their legal counsel (if known), (b) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (c) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay), and (d) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis. In addition, because this Motion seeks "first day" relief, notice of this Motion and any order entered respecting this

Motion will be served as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

## No Prior Request

33. The Debtors have not filed a prior motion seeking the relief requested herein in this Court or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court (i) enter the Bridge Order, substantially in the form attached hereto as Exhibit B, granting the relief requested herein on an interim basis, (ii) enter the Final Order, substantially in the form attached hereto as Exhibit C, granting the relief requested herein on a final basis, and (iii) grant such other and further relief as this Court deems proper.

Date: November 8, 2007

Respectfully submitted,

/s/ Neil B. Glassman

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone:  (302) 655-5000
Facsimile:   (302) 658-6395

and

Thomas R. Califano
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone:  212-335-4500
Facsimile:   212-335-4501

Mark J. Friedman (MD Bar No. 00102)
Maria Ellena Chavez-Ruark (MD Bar No. 23941)
Jason W. Hardman (MD Bar No. 27470)
DLA Piper US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone:    (410) 580-3000
Facsimile:    (410) 580-3001

Proposed Counsel for Debtors
and Debtors in Possession