## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-_____ |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(c), 1107(a), AND 1108 FOR ORDER AUTHORIZING DEBTORS TO HONOR CERTAIN PREPETITION OBLIGATIONS TO CUSTOMERS AND TO OTHERWISE CONTINUE THEIR CUSTOMER PROGRAMS AND PRACTICES IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby move this court for entry of an order authorizing the Debtors to honor certain prepetition obligations to customers and to otherwise continue customer programs and practices in the ordinary course of business (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391

2.     The statutory basis for the relief requested herein are Sections 105(a), 363(c), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Background

3.     On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Declaration of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and is incorporated herein by reference.[2]

4.     The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.     No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

The Debtors' Business Operations

6.     InPhonic was incorporated in 1997 and began operations in 1999. InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services. InPhonic focuses in four (4) areas: (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("MVNE") services, and (iv) unified communication services.

---

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

7.      InPhonic is a leading internet (online) seller of wireless services and devices to consumers.   InPhonic sells these services and devices through company owned and branded websites, including without limitation www.wirefly.com, as well as through a variety of private labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

8.      InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

9.      InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

10.      CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite.   Through VMC Satellite, InPhonic markets consumers digital broadcast satellite television, broadband and VOIP services.   VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

11.      InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers

without having to own or operate the underlying wireless network or operational infrastructure. InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

12.     InPhonic has developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee. Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer. The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

13.     InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations. InPhonic has agreements with the largest wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services. The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

14.     All of the Debtors are headquartered in Washington, D.C. The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

<u>The Debtors' Prepetition Customer Orders and Customer Programs and Practices</u>

15.     Prior to the Petition Date and in the ordinary course of their business, customers of the Debtors placed orders to purchase the Debtors' products, provided payment for services, and/or committed to pay Debtors' carrier or service providers in connection with such orders

(collectively, the "Customer Orders"). In certain instances, the Debtors have not yet fulfilled the Customer Orders.

16.     In addition, prior to the Petition Date, the Debtors offered and engaged in certain customer programs and practices to develop and sustain a positive reputation in the marketplace for their products and services and to engender customer loyalty (collectively, the "Customer Programs"). By way of background, the Debtors have implemented the following categories of Customer Programs:

a.      Product Returns:  Certain products may be returned within thirty (30) days of the Customer Order for a full refund or credit. The Debtors may receive returns under its return policy for Customer Orders placed prior to the Petition Date for which it is obligated to issue a refund or credit. The Debtors have also issued refunds and credits to customers that have not been utilized as of the Petition Date. The approximate amount of monthly returns is $7,800.

b.      Goodwill Payments:  In the event of a customer escalation, the Debtors, in the ordinary course of business, award the affected customer a gift card or other compensation for their inconvenience. Certain of these awards have been made, but not issued by the Debtors or their vendors as of the Petition Date. The approximate amount Debtors seek to satisfy after the Petition Date does not exceed $20,000.

17.     The Customer Programs, including without limitation the programs described in the preceding paragraph, are standard practice in the Debtors' industry. The Customer Programs ensure customer satisfaction, generate goodwill, meet competitive pressures so that the Debtors can retain current customers, attract new ones and ultimately enhance net revenue. Additionally, certain of Debtors' agreements with its carrier and service providers require Debtor to provide the product returns included in the Customer Programs.

Relief Requested

18.     By this Motion, the Debtors seek entry of an order pursuant to Sections 105(a), 363(c), 1107(a) and 1108 of the Bankruptcy Code authorizing the Debtors, in their sole

discretion and business judgment, to (a) honor the Customer Orders by delivering, in the ordinary course of business, any goods ordered and paid for prepetition; (b) perform and honor their prepetition obligations related to the Customer Programs, and (c) continue, renew, replace, create, modify and/or terminate one or more of the Customer Programs as they may deem appropriate, in the ordinary course of business, without further application to the Court.

### Basis for Relief

19.    As described below, Sections 105(a), 363(c), 1107(a) and 1108 of the Bankruptcy Code and the "necessity of payment" doctrine provide the basis for the relief requested in this Motion.    Accordingly, the Debtors submit that this Court has authority to grant the relief requested herein.

20.    Sections 1107(a) and 1108 authorize a debtor-in-possession to operate a debtor's business, see 11 U.S.C. §§ 1107(a) and 1108, while Section 363(c) authorizes a debtor-in-possession to use property of the estate in the ordinary course of business, without notice or a hearing.    See 11 U.S.C. § 363(c).    The Debtors submit that continuing, renewing, replacing, creating, modifying and/or terminating the Customer Programs in the ordinary course of business is permitted by Sections 363(c), 1107(a) and 1108 of the Bankruptcy Code without further application to the Court.

21.    The Court may also authorize continuation, renewal, replacement, creation, modification and/or termination of the Customer Programs under Section 363(b) of the Bankruptcy Code.    Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."    11 U.S.C. § 363(b)(1).    Under this section, a bankruptcy court may authorize a debtor to pay certain prepetition claims.    See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y.

1989) (affirming order authorizing payment of prepetition wages pursuant to Section 363(b)); In re UAL Corp., Case No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under Section 363 as an out-of-the-ordinary-course transaction). In order to qualify for relief under Section 363(b), "the debtor must articulate some business justification, other than the mere appeasement of major creditors." Ionosphere Clubs, 98 B.R. at 175.

22.     The Debtors need to continue during the postpetition period to fulfill the Customer Orders. Moreover, the Debtors need to continue during the postpetition period those Customer Programs that are cost-effective and beneficial to their business. Such relief is necessary to preserve the Debtors' critical business relationships, including those with its marketing and affiliate partners, and goodwill for the benefit of their estates. This is particularly true for a business such as the Debtors' for whom revenues are largely dependent on customer and partner satisfaction. The Debtors' customers have numerous choices for purchasing a mobile phone, activating wireless service and/or subscribing to satellite services. The Debtors distinguish their services by providing the Customer Programs. The benefits associated with the Customer Programs exceed the operational and administrative costs to implement and maintain such programs, and for this reason and other reasons set forth herein, it is in the best interests of these estates to honor the Debtors' prepetition obligations in connection with the Customer Programs and continue the Customer Programs in the ordinary course of business.

23.     Section 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine also provide ample support for the relief sought in this Motion. Section 105(a) grants bankruptcy courts authority to enter "any order, process or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). This provision codifies the "equitable power" of bankruptcy courts and provides "broad authority" to accomplish tasks

important to the implementation of the Bankruptcy Code. See United States v. Energy Res. Co., 495 U.S. 545, 549 (1990) (stating that Section 105(a)'s statutory directive is "consistent with the traditional understanding that bankruptcy courts, as courts in equity, have broad authority to modify creditor-debtor relationships"). The "necessity of payment" doctrine allows payment of prepetition claims when a debtor must maintain the continuity of its business. See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that payment of creditors' claims authorized under necessity of payment doctrine); Ionosphere Clubs, 98 B.R. at 176 (noting that necessity of payment doctrine applies to chapter 11 debtors).

24.    In previous chapter 11 cases where retaining loyalty and patronage of customers is critical to the reorganization process, this Court and other courts have granted relief similar to that requested here. See, e.g., In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. Jan. 4, 2006); In re Exide Technologies, Case No. 02-11125 (Bankr. D. Del. Apr. 18, 2002); In re W.R. Grace & Co., Case No. 01-1139 (Bankr. D. Del. Apr. 2, 2001); In re Collins & Aikman Corp., Case No. 05-55927-R (Bankr. E.D. Mich. May 17, 2005); In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005); In re Formica Corp., Case No. 02-10969 (Bankr. S.D.N.Y. Mar. 5, 2002); In re Teligent, Inc., Case No. 01-12974 (Bankr. S.D.N.Y. June 13, 2001); In re Lechters N.Y.C., Inc., Case No. 01-41432 (Bankr. S.D.N.Y. May 21, 2001); In re AI Realty Marketing of New York, Inc., Case No. 01-40252 (Bankr. S.D.N.Y. Feb. 6, 2001).

25.    The Debtors submit that continuing the Customer Programs will maintain the confidence of their customers and, accordingly, is warranted under Section 105(a) and the "necessity of payment" doctrine. As discussed herein and in the Schwarz Affidavit, the loyalty and continued patronage of the Debtors' customers are critical to the success of their business and maximizing the return for creditors in these cases. The Debtors' business is driven by

customer satisfaction, and fulfilling the Customer Orders and retaining the Customer Programs is critical to maintaining customers' confidence in the Debtors. Indeed, if the Debtors cease providing these programs and incentives, their customers might switch their business to the Debtors' competitors who do provide such programs and incentives – especially when contracts expire or when new customers surface. Moreover, if the Debtors fail to honor prepetition Customer Programs, they will be in breach of certain of their agreements with their carrier and service partners and may negatively impacts their relationships with marketing and affiliate partners. Given the Debtors' dependence on maintaining goodwill with their customers, any restriction on the Customer Programs would be counter to the interest of the Debtors' estates.

26. The Debtors further submit that honoring the Customer Orders and the Customer Programs would not drain the Debtors' estates of cash that would otherwise be available to general creditors. To the contrary, the very premise of this Motion is that permitting the Debtors to honor Customer Orders and Customer Programs will increase, or at least maintain, the Debtors' net cash flow. The Debtors would most likely lose future business by terminating the Customer Programs. Common business sense dictates that honoring the Customer Programs will not result in any significant cash flow loss, yet the certain losses that would arise if the Debtors are not permitted to honor the Customer Programs would be devastating. Consequently, the Debtors must be permitted to fulfill the Customer Orders and maintain the Customer Programs in the ordinary course of business to ensure the ongoing viability of their business operations.

27. For all the foregoing reasons, the relief sought in this Motion is in the best interest of the Debtors', their estates and their creditors.[3]

---

[3] Nothing herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors'

Statement Pursuant to Local Rule 1001-1(b)

28.      Pursuant to District Court Local Rule 7.1.2(a), incorporated by reference into to Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Motion.

Notice

29.      Notice of this Motion has been provided to (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay); and (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis.  In addition, because this Motion seeks "first day" relief, notice of this Motion and any order entered respecting this Motion will be served as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

No Prior Request

30.      The Debtors have not filed a prior motion seeking the relief requested herein in this Court or any other court.

---

rights to subsequently dispute such claim and recover such payments.

<u>Conclusion</u>

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court

enter an order substantially in the form annexed hereto (a) granting the relief requested herein

and (b) granting such other relief as may be deemed just and proper.

Respectfully submitted,

Date:  November 8, 2007

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:     (302) 655-5000
Facsimile:     (302) 658-6395

and

Thomas R. Califano
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:     212-335-4500
Facsimile:     212-335-4501

Mark J. Friedman (MD Bar No. 00102)
Maria Ellena Chavez-Ruark (MD Bar No. 23941)
Jason W. Hardman (MD Bar No. 27470)
DLA Piper US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone:     (410) 580-3000
Facsimile:     (410) 580-3001

Proposed Counsel for Debtors
and Debtors in Possession