## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-_____ |
| | : | |
| Debtor. | : | (Jointly Administered) |

### MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 507(a) AND 541(d) FOR AN ORDER AUTHORIZING PAYMENT OF PREPETITION TRUST FUND TAXES IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") this court for entry of an order authorizing the Debtors to pay prepetition trust fund taxes in the ordinary course of business. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein are Sections 105(a), 507(a) and 541(d) of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

## Background

3.      On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Declaration of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "<u>Schwarz Affidavit</u>"), and is incorporated herein by reference.[2]

4.      The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

## The Debtors' Business Operations

6.      InPhonic was incorporated in 1997 and began operations in 1999.  InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services.  InPhonic focuses in four (4) areas:  (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("<u>MVNE</u>") services, and (iv) unified communication services.

7.      InPhonic is a leading internet (online) seller of wireless services and devices to consumers.  InPhonic sells these services and devices through company owned and branded websites, including without limitation www.wirefly.com, as well as through a variety of private

---

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

8.      InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

9.      InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

10.      CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite.  Through VMC Satellite, InPhonic markets consumers digital broadcast satellite television, broadband and VOIP services.  VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

11.      InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers without having to own or operate the underlying wireless network or operational infrastructure. InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

12.     InPhonic developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee.  Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer.  The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

13.     InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations.  InPhonic has agreements with the largest wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services.  The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

14.     All of the Debtors are headquartered in Washington, D.C.  The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

<u>The Debtors' Collection and Payment of Trust Fund Taxes</u>

15.     In the ordinary course of business, the Debtors collect sales, use, employee-related and other trust fund type taxes (however denominated) (collectively, the "<u>Trust Fund Taxes</u>") from their employees, customers, subcontractors and other third parties and subsequently remit such taxes to the appropriate federal, state and local taxing authorities (each a "<u>Taxing Authority</u>"; collectively, the "<u>Taxing Authorities</u>").  For example, the Debtors withhold certain taxes (such as income tax and social security tax) from their employees' paychecks and

then periodically remit these amounts to the appropriate Taxing Authorities.[3]  The process by which the Debtors remit the Trust Fund Taxes varies depending on the nature of the tax at issue and the Taxing Authority to which the relevant tax is to be paid.  In addition, there is often a gap between the time when the Debtors incur an obligation to pay Trust Fund Taxes and the date when payment of such Trust Fund Taxes are due.  Accordingly, as of the Petition Date, various governmental units may have claims against the Debtors for Trust Fund Taxes that have accrued but are unpaid and not yet due.

16.    The Debtors estimate that, in the aggregate, no more than $322,065 accrued but unpaid Trust Fund Taxes may be due and owing as of the Petition Date.  A summary of these Trust Fund Taxes is attached hereto as **Exhibit A**.

<u>Relief Requested</u>

17.    By this Motion, pursuant to Sections 105(a), 507(a) and 541(d) of the Bankruptcy Code, the Debtors seek entry of an order authorizing (but not directing) the Debtors to pay prepetition Trust Fund Taxes owed to the appropriate Taxing Authorities in the ordinary course of business, on an unaccelerated basis, as such payments become due and payable and to the extent adequate funds are available to make such payments.  The Debtors seek authority to pay Trust Fund Taxes to avoid disruption of their reorganization efforts that would result from nonpayment of such taxes.

---

[3] The Debtors have also filed a motion seeking, among other relief, authority to pay prepetition obligations owing to the Debtors' employees (the "<u>Employee Benefits Motion</u>").  Although the Debtors request authority in the Employee Benefits Motion to pay employee withholding taxes, the Debtors have sought the same relief in this Motion out of an abundance of caution so that all Trust Fund Taxes are timely paid.  Approximately $240,915 of the Trust Fund Taxes relate to employee obligations.

Basis for Relief

18.     As described below, Sections 541(d), 507(a) and 105(a) of the Bankruptcy Code provide support for the relief requested in this Motion. Accordingly, the Debtors submit that this Court has authority to grant the relief requested herein.

19.     The Trust Fund Taxes do not constitute property of the Debtors' bankruptcy estates under Section 541(d) of the Bankruptcy Code[4] because the Debtors hold these funds in trust for payment to the Taxing Authorities. See EBS Pension LLC v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.), 243 B.R. 231, 235 (Bankr. D. Del. 2000). See also Begier v. IRS, 496 U.S. 53, 55-67 (1990); Al Copeland Enters., Inc. v. Texas (In re Al Copeland Enters., Inc.), 991 F.2d 233, 237 (5th Cir. 1993); Shank v. Washington State Dep't of Revenue (In re Shank), 792 F.2d 829, 830 (9th Cir. 1986) (sales taxes required by state law to be collected by sellers from their customers are "trust fund" taxes); DeChiaro v. New York State Tax Comm'n, 760 F.2d 432, 433-34 (2d Cir. 1985) (same); In re American Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (excise and withholding taxes); Shipley Co. v. Darr (In re Tap, Inc.), 52 B.R. 271, 272 (Bankr. D. Mass. 1985) (withholding taxes). Consequently, the Debtors have no equitable interest in the funds and creditors would not be prejudiced by payment of the Trust Fund Taxes.

20.     Even assuming the Trust Fund Taxes are deemed to be property of the Debtors' bankruptcy estates, claims for payment of the Trust Fund Taxes will be afforded priority status under Section 507(a)(8) of the Bankruptcy Code, which provides priority to "allowed unsecured

---

[4] Section 541(d) defines "property of the estate" as follows:

   Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

claims of governmental units . . . to the extent that such claims are for . . . (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." See 11 U.S.C. § 507(a)(8).    Such claims must be paid in full pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code under any chapter 11 plan in these cases. See 11 U.S.C. § 1129(a)(9)(C).

21.    Finally, payment of the Trust Fund Taxes should be permitted under Section 105(a) of the Bankruptcy Code.   Section 105(a) grants bankruptcy courts authority to enter "any order, process or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code.    11 U.S.C. § 105(a).    This provision codifies the "equitable power" of bankruptcy courts and provides "broad authority" to accomplish tasks important to the implementation of the Bankruptcy Code.   See United States v. Energy Res. Co., 495 U.S. 545, 549 (1990) (stating that Section 105(a)'s statutory directive is "consistent with the traditional understanding that bankruptcy courts, as courts in equity, have broad authority to modify creditor-debtor relationships").

22.    In previous chapter 11 cases, this Court has exercised its equitable powers under Section 105(a) to authorize debtors to pay a variety of prepetition claims, including prepetition tax obligations.   See, e.g., In re Radnor Holdings Corp., Case No. 06-10894 (PJW) (Bankr. D. Del. Aug. 23, 2006); In re Werner Holding Co. (DE), Inc., Case No. 06-10578 (KJC) (Bankr. D Del. June 13, 2006); In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. Feb. 13, 2006); In re Russell-Stanley Holdings, Inc., Case No. 05-12339 (PJW) (Bankr. D. Del. Aug. 22, 2005).

23.    The Debtors submit that similar relief is warranted here.   Indeed, because the Trust Fund Taxes do not constitute estate property, their payment will not adversely affect the Debtors, their estates or their creditors.   Further, many Taxing Authorities impose personal

liability on directors and officers of corporations to the extent such taxes are collected but not remitted. As a result, the Debtors' directors and officers may be subject to liability if they fail to remit the Trust Fund Taxes. The prosecution of such claims would cause a significant distraction and likely disrupt the Debtors' reorganization efforts. Also, some, if not all, of the Taxing Authorities may audit the Debtors if such taxes and fees are not timely paid. Such audits will divert the Debtors' attention away from the reorganization process and diminish their estates. Finally, the Trust Fund Taxes represent a de minimis portion of the Debtors' unsecured liabilities. Authorizing payment of the Trust Fund Taxes will allow the Debtors to continue to operate their business with minimal disruption and proceed with the important task of stabilizing their operations. Therefore, the Debtors seek authority to pay the Trust Fund Taxes in full in the ordinary course of business.

24.    For all the foregoing reasons, the relief sought in this Motion is in the best interest of the Debtors', their estates and their creditors.[5]

## Statement Pursuant to Local Rule 1001-1(b)

25.    Pursuant to District Court Local Rule 7.1.2(a), incorporated by reference into Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Motion.

## Notice

26.    Notice of this Motion has been provided to (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady)

---

[5] Nothing in this Motion should be construed as impairing the Debtors' right to contest the amount or validity of any taxes that may be due and owing to the Taxing Authorities.

and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay), and (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis.  In addition, because this Motion seeks "first day" relief, notice of this Motion and any order entered respecting this Motion will be served as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

No Prior Request

27.    The Debtors have not filed a prior motion seeking the relief requested herein in this Court or any other court.

Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form annexed hereto (a) granting the Motion; and (b) granting such other and further relief as is just and proper.

Respectfully submitted,

Date:  November 8, 2007

_____

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:    (302) 655-5000
Facsimile:    (302) 658-6395

     and

Thomas R. Califano
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:    212-335-4500
Facsimile:    212-335-4501

Mark J. Friedman (MD Bar No. 00102)
Maria Ellena Chavez-Ruark (MD Bar No. 23941)
Jason W. Hardman (MD Bar No. 27470)
DLA Piper US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone:    (410) 580-3000
Facsimile:    (410) 580-3001

Proposed Counsel for Debtors
and Debtors in Possession