## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
| | : |
| INPHONIC, INC., et al.,[1] | : Case No. 07-11666(KG) |
| | : |
| Debtor. | : (Jointly Administered) |
| | : |

**APPLICATION FOR ORDER PURSUANT TO 11 U. S. C. §§ 327(A) AND 328(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF GOLDSMITH, AGIO, HELMS SECURITIES, INC. AS INVESTMENT BANKER TO DEBTORS IN POSSESSION**

The above-captioned debtors and debtors in possession (the "Debtors") apply ("Application") for entry of an order authorizing the employment and retention of Goldsmith, Agio, Helms Securities, Inc. ("GAH") as investment banker to the Debtors. In support of this Application, the Debtors represent as follows:

<u>Jurisdiction and Venue</u>

1.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory basis for the relief requested herein is Sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

## Background

3.      On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Declaration of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and is incorporated herein by reference.[2]

4.      The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

## The Debtors' Business Operations

6.      InPhonic was incorporated in 1997 and began operations in 1999.  InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services.  InPhonic focuses in four (4) areas:  (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("MVNE") services, and (iv) unified communication services.

7.      InPhonic is a leading internet (online) seller of wireless services and devices to consumers.  InPhonic sells these services and devices through company owned and branded websites, including without limitation www.wirefly.com, as well as through a variety of private

---

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

8.    InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

9.    InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

10.    CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite. Through VMC Satellite, InPhonic markets consumers digital broadcast satellite television, broadband and VOIP services. VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

11.    InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers without having to own or operate the underlying wireless network or operational infrastructure. InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

12.    InPhonic developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee. Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer. The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

13.    InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations. InPhonic has agreements with the largest wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services. The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

14.    All of the Debtors are headquartered in Washington, D.C. The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

Relief Requested

15.    By this Application, the Debtors seek entry of an order authorizing the employment and retention of GAH as their investment banker as of the Petition Date, pursuant to the terms and conditions contained in the engagement letter between InPhonic, Inc. (on behalf of itself and its controlled subsidiaries) and GAH dated as of October 11, 2007 (the "Engagement Letter") and the indemnification agreement between InPhonic, Inc. (on behalf of itself and its controlled subsidiaries) and GAH, dated October 11, 2007 (the "Indemnification Agreement"), copies of which are attached to the Affidavit of Andrew Torgove in Support of Application for

an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014 Authorizing Employment and Retention of Goldsmith, Agio, Helms Securities, Inc. as Investment Banker to the Debtors in Possession, dated November 8, 2007 (the "Torgove Affidavit").

Basis for Relief

Necessity for Employment

16.    GAH is an investment banking firm focused on providing financing and investment banking advice on behalf of its clients. GAH's broad range of corporate advisory services includes services pertaining to general financial advice, corporate restructurings, financing and mergers and acquisitions to middle market businesses.

17.    GAH is a registered broker dealer with the Securities and Exchange Commission.

18.    The Debtors have selected GAH as their investment banker based upon (a) GAH's extensive experience in providing investment banking services in chapter 11 cases; and (b) GAH's excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

19.    The professionals at GAH have been employed as investment bankers in a number of distressed company situations, including the chapter 11 cases in the District of Delaware of Decora Industries, Plainwell Paper and Tokheim Corporation. The resources, capabilities, and experience of GAH in advising the Debtors are crucial to the Debtors' successful restructuring. An experienced investment bank such as GAH fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors believe that GAH's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the Debtors' benefit in pursuing any Restructuring or Sale Transaction. The Debtors further believe that the value to the

Debtors from GAH's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Restructuring Fee and Sale Transaction Fee is reasonable regardless of the number of hours expended by GAH's professionals in the performance of the services to be provided in the Engagement Letter.

20.    Prior to retaining GAH, the Debtors' senior management interviewed senior personnel of, and considered proposals from, at least one other investment banking firm.  The Debtors evaluated each firm on a number of criteria, including: the overall restructuring experience of each firm and their professionals; the overall investment banking capabilities of such firm; the firm's experience in advising companies in chapter 11; the likely attention of the senior personnel of the firm; and the compensation to be charged.  After due consideration of the above and as an exercise of their business judgment, the Debtors concluded that GAH was best qualified to provide investment banking services to the Debtors at a reasonable level of compensation

21.    Prior to the Petition Date, on October 11, 2007, the Debtors engaged GAH to provide investment banking advice in connection with the Debtors' attempts to sell substantially all of their assets as part of the restructuring process and to prepare for the commencement of these cases.

22.    In providing prepetition services to the Debtors in connection with these matters, GAH's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' operations, financial condition, debt structure, creditors, businesses and operations and related matters.  Accordingly, GAH has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.

23.    The compensation arrangement provided for in the Engagement Letter and the provisions of the Indemnification Agreement are consistent with and typical of arrangements entered into by GAH and other investment banking firms in connection with rendering similar services to clients such as the Debtors. The Debtors believe that GAH is well qualified and able to represent their interests in a cost-effective, efficient and timely manner. GAH has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of this Court.

Services to be Rendered

24.    Under the Engagement Letter, in consideration for the compensation contemplated therein, GAH has agreed to provide such investment banking services as the Debtors may reasonably request, including:[3]

(a)    Reviewing and analyzing the Debtors' business, operations and financial projections;

(b)    Evaluating the Debtors' potential debt capacity in light of its projected cash flows;

(c)    Assisting in the determination of a capital structure for the Debtors;

(d)    Assisting in the determination of a range of values for the Debtors on a going concern basis;

(e)    Advising the Debtors on tactics and strategies for negotiating with the stakeholders;

(f)    Rendering financial advice to the Debtors and participating in meetings or negotiations with the stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)    Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

---

[3]  To the extent there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

(h)     Advising and assisting the Debtors in evaluating potential Financing transactions by the Debtors, and, subject to GAH's agreement so to act and, if requested by GAH, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

(i)     Assisting the Debtors in preparing appropriate documentation required in connection with the Restructuring;

(j)     Assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of a Sale Transaction;

(k)     Attending meetings of the Debtors' Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

(l)     Providing testimony, as necessary, in any proceeding before the Bankruptcy Court; and

(m)    Providing the Debtors with other financial restructuring advice.

<u>Professional Compensation</u>

25.     Subject to this Court's approval, GAH will be entitled to the following forms of compensation for its chapter 11 related services as set forth in greater detail in the Engagement Letter:

(a)     A monthly fee of $50,000 (the "<u>Monthly Fee</u>"), payable on the 1st day of each month until the earlier of the completion of the Restructuring, Sale or the termination of GAH's engagement. The full amount of Monthly Fees paid for the first four months of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable. One half of the Monthly Fees paid for all months following the fourth month of this engagement shall be credited against any Restructuring Fee or Sale Transaction Fee; provided that such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b)     A fee equal to $1,500,000 <u>plus</u> 3.5% of the portion of Restructured Enterprise Value (as defined on Schedule I to the Engagement Letter) in excess of $90 million, but below $105 million, plus 5.5% of the portion of Restructured Enterprise Value in excess of $105 million, payable upon the consummation of a Restructuring (the "<u>Restructuring Fee</u>").

(c)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, a fee (the "<u>Sale Transaction Fee</u>") equal to $1,500,000, <u>plus</u> 3.5% of the portion of Aggregate Consideration (as defined on Schedule I attached hereto) in excess of $90 million but below $105 million, plus 5.5% of the portion of Aggregate Consideration in excess of $105 million.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction not contemplated by clause (i) above, a fee to be mutually agreed in good faith by InPhonic and GAH, which fee will appropriately compensate us for the magnitude and complexity of the transaction and the fees customarily paid to investment bankers for similar transactions.

(iii) Any Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(d)    In the event of a transaction which constitutes both a Restructuring and a Sale Transaction GAH shall be paid a fee which is the greater of the fee payable pursuant to clauses (b) and (c).

(e)    (i) In addition to any fees that may be payable to GAH and, regardless of whether any transaction occurs, the Company shall promptly reimburse GAH for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any; and

(ii) The Company provided GAH with an expense advance retainer of $150,000 (the "<u>Expense Advance</u>") upon the execution of the Engagement Letter, to be applied by GAH against the expenses that it incurs and that are reimbursable pursuant to clause (i) above.

(f)    As part of the compensation payable to GAH, the Company agreed to the terms of the Indemnification Agreement.

Engagement Letter, pp. 2-3.

26.    The overall compensation structure described above is comparable to compensation generally charged by investment banker of similar stature for comparable engagements, both in and out-of-court.

27.     In addition, given the numerous issues which GAH may be required to address in the performance of its services hereunder, GAH's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for GAH's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors agree that the fee arrangements in the Engagement Letter are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code,

28.     As stated above, GAH will also seek reimbursement for reasonable fees and expenses.  GAH will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors.

29.     GAH will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and any applicable orders of the Court.  GAH will submit time records in a summary format which shall set forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. However, consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are typically not hours-based, GAH does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals.  Therefore, GAH should be excused from compliance with such requirements and should be required only to maintain such time records in one-half hour increments.

30.     The compensation structure described above is consistent with GAH's normal and customary billing practices for cases of this size and complexity that require the level and scope of

services outlined. GAH and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based.

31.    GAH will not share or agree to share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of GAH, in accordance with section 504 of the Bankruptcy Code.

<u>Prepetition Compensation Received</u>

32.    Prior to the Petition Date, the Debtors' paid GAH $255,597.31, which includes $100,000 in monthly payments, $5,597.31 for reimbursement of GAH's prepetition expenses and a $150,000 retainer. Any portion of the prepetition retainer not used to reimburse GAH for its actual prepetition expenses will be detailed in GAH's first interim fee application, and such portion shall be credited towards GAH's postpetition expenses as allowed by the Court. GAH has received no other compensation from the Debtors pursuant to the Engagement Letter or Indemnification Agreement.

GAH's Fee and Expense Structure Under Section 328
<u>is Reasonable and Appropriate Under the Circumstances</u>

33.    Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) therefore permits the Court to approve the terms of GAH's engagement as set forth in the Engagement Letter, and the terms of the Indemnification Agreement.

34.    The fee and expense structure appropriately reflects the nature of the services to be provided by GAH and is consistent with the fee structures typically utilized by leading investment banks who do not bill their clients on an hourly basis. Similar monthly fee and

transaction fee arrangements have been approved and implemented in other large chapter 11 cases in this district and elsewhere. See, e.g., In re Burlington Industries, Inc., Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003); In re Oakwood Homes Corporation, Case No. 02-13396 (PJW) (Bankr D. Del. July 21, 2003); In re Kaiser Aluminum Corporation, et.al., Case No. 02-10429 (JKF) (Bankr. D. Del. March 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); In re Trans World Airlines, Inc., Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisor for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); In re Covad Communications Group, Inc., Case No. 01-10167 (JJF) (Bankr. D. Del. November 21, 2001) (authorizing retention of Houlihan, Lokey, Howard & Zukin Capital with compensation subject to standard of review set forth in Section 328(a)); In re Harnischfeger Industries, Case No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as financial advisor to debtors); In re Casual Male Corp., Case No. 01-41404 (REG) (Bankr. S.D.N.Y. March 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to section 328(a) standard of review); see also In re Global Power Equipment Group Inc, Case No. 06-11045 (BLS) (Bankr. D. Del. Dec. 18, 2006); In re Dura Automotive Systems, Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Dec. 7, 2006); In re Radnor Holdings Corporation, Case No. 06-10894 (PJW) (Bankr. D. Del. Dec. 19, 2006); In re Global Home Products LLC, Case No. 06-10340 (KG) (Bankr. D. Del. May 5, 2006).

35.    Notwithstanding approval of its engagement under section 328(a) of the Bankruptcy Code, GAH intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330, the Local Rules, and applicable orders of this Court.

Termination of Engagement

36.    GAH's engagement may be terminated by the Debtors or GAH at any time without liability or continuing obligation to the Debtors or GAH except that, following such termination and expiration of the Engagement Letter, GAH shall remain entitled to any fees accrued but not yet paid prior to such termination or expiration and to reimbursement of expenses. If the Debtors terminate GAH's engagement (except a termination due to the willful misconduct, bad faith or gross negligence of GAH) or the Engagement Letter expires, GAH shall remain entitled to full payment of all fees contemplated by the Engagement Letter in respect of any Restructuring and any Sale Transaction announced or resulting from negotiations occurring during the period from October 11, 2007 until one year following such termination or expiration.

Indemnification, Reimbursement and Contribution Provisions

37.    As part of the overall compensation payable to GAH under the terms of the Engagement Letter, the Debtors have agreed to indemnify, reimburse, and make certain contributions to GAH and its affiliates and its and their respective directors, officers, members, employees, agents and controlling persons in accordance with the provisions set forth in the Indemnification Agreement.

38.    The Debtors and GAH believe that the terms of the Indemnification Agreement are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 proceedings. See, e.g., In re United Artists Theatre Company, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan, Lokey, Howard & Zurkin Capital by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000); In re Comdisco, Inc., Case No 02-C-

1174 (N.D. Ill. September 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors). The terms of the Indemnification Agreement are similar to indemnification terms that have previously been approved by bankruptcy courts in this District and elsewhere. See, e.g., In re Burlington Industries, Inc., Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (order authorizing retention of Miller Buckfire Lewis & Co., LLC on similar terms); In re Oakwood Homes Corporation, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire Lewis & Co., LLC on similar terms); In re PC Landing Corp, Case No. 02-12086 (PJW) (Bankr. D. Del. October 10, 2002) (same); In re Worldcom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. January 14, 2003) (order authorizing retention of Lazard Freres & Co. LLC under similar terms); In re Metrocall, Inc., Case No. 02-11579 (RB) (Bankr. D. Del. July 8, 2002) (order authorizing retention of Lazard Freres & Co. LLC under similar terms); In re Kaiser Aluminum Corporation, Case No. 02-10429 (JKF) (Bankr. D. Del. March 19, 2002) (same); In re Adelphia Communications Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y September 27, 2002) (same); In re W.R. Grace & Co., Case No. 01-01139 (JJF) (Bankr. D. Del. June 22, 2001) (order authorizing retention of Blackstone Group L.P. under indemnification terms similar to the Indemnification Agreement); see also In re J.L. French Automotive Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. Mar. 3, 2006); In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); In re Exide Techs., Case No. 02-11125 (JCA) (Bankr. D. Del. Aug. 21, 2002). Accordingly, the Debtors respectfully submit that the terms of the Indemnification Agreement are reasonable and customary and should be approved in these cases.

39.    The terms of the Engagement Letter and the Indemnification Agreement were fully negotiated between the Debtors and GAH and the Debtors respectfully submit that the

Indemnification Agreement and the Engagement Letter are reasonable and in the best interests of the Debtors, their estates and creditors.

Disinterestedness of Professional

40.    To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Torgove Affidavit, (a) GAH is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates in connection with the matters for which GAH is to be retained by the Debtors; and (b) GAH has no connection with the Debtors, their creditors, the U.S. Trustee, or other parties-in-interest in these chapter 11 cases.

41.    The Debtors do not owe GAH any amount for any services performed or expenses incurred prior to the Petition Date. Accordingly, GAH is not a prepetition creditor of the Debtors.

42.    The Debtors' knowledge, information, and belief regarding the matters set forth herein are based upon, and made in reliance on, the Torgove Affidavit. To the extent that Mr. Torgove discovers any additional facts bearing on the matters described herein during the period of GAH's retention, GAH will supplement the information contained in the Torgove Affidavit.

Applicable Authority

43.    The Debtors seek approval of GAH's employment and retention as set forth in the Engagement Letter and Indemnification Agreement pursuant to section 328(a) of the Bankruptcy Code.

44.    As discussed above, Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis,"

11 U.S.C. § 328(a). Consequently, Bankruptcy Code Section 328(a) permits the Court to approve the terms of GAH's employment and retention as set forth in the Engagement Letter and Indemnification Agreement.

45.    The terms of compensation set forth in the Engagement Letter and Indemnification Agreement appropriately reflect the nature and scope of services to be provided by GAH and GAH's substantial experience with respect to investment banking services, and are consistent with the fee structures typically utilized by GAH and other leading financial advisors and investment bankers, who do not bill their clients on an hourly basis.

<u>Statement Pursuant to Local Rule 1001-1(b)</u>

46.    Pursuant to District Court Local Rule 7.1.2(a), incorporated by reference into to Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Motion.

<u>Notice</u>

47.    Notice of this Motion has been provided to (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay); and (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis. In addition, because this Motion seeks "first day" relief, notice of this Motion and any order entered respecting this Motion will be served as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

### No Prior Request

48      The Debtors have not filed a prior motion seeking the relief requested herein in this Court or any other court.

### Conclusion

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto (a) granting the relief requested herein and (b) granting such other relief as may be deemed just and proper.

Date:   November  8 , 2007
        Washington, D.C.

                        Respectfully submitted,

                        **INPHONIC INC., et al.**
                        _____
                        Kenneth Q. Schwartz
                        Chief Financial Officer