## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666(KG) |
|  | : |  |
| Debtor. | : | (Jointly Administered) |
|  | : |  |

### AFFIDAVIT OF ANDREW TORGOVE IN SUPPORT OF APPLICATION FOR ORDER PURSUANT TO 11 U. S. C. §§ 327(A) AND 328(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF GOLDSMITH, AGIO, HELMS SECURITIES, INC. AS INVESTMENT BANKER TO DEBTORS IN POSSESSION

STATE OF NEW YORK   )
                         ) ss.:
COUNTY OF NEW YORK )

Andrew Torgove, being duly sworn according to law, upon his oath, deposes and says:

1.     I am a Managing Director of the firm Goldsmith, Agio, Helms Securities, Inc. ("GAH" or the "Firm"), which has its principal office at 225 South Sixth Street, Forty-Sixth Floor, Minneapolis, Minnesota 55402. I am authorized to execute this affidavit on behalf of GAH. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein.

2.     This affidavit is being submitted in connection with the proposed retention of GAH as Investment Banker to InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, and 1010 Interactive, LLC (together, the "Debtors") to perform services as set

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

forth in the *Application for Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014 Authorizing Employment and Retention of Goldsmith, Agio, Helms Securities Inc. as Investment Banker to the Debtors in Possession* (the "<u>Application</u>").

3.    Attached hereto as Schedule 1 is a true and correct copy of an engagement letter between InPhonic, Inc. (on behalf of itself and its controlled subsidiaries) and GAH dated as of October 11, 2007 (the "<u>Engagement Letter</u>") and the indemnification agreement between InPhonic, Inc. (on behalf of itself and its controlled subsidiaries) and GAH, dated October 11, 2007 (the "<u>Indemnification Agreement</u>").

4.    GAH is a subsidiary of Lazard Frères & Co. LLC ("<u>Lazard</u>"), which is the US operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years. GAH has dedicated professionals who provide restructuring services to its clients.

5.    The current managing directors, directors, vice presidents and associates of GAH have extensive experience working with financially troubled companies in complex financial restructurings and assets sales in Chapter 11 proceedings and out-of-court. GAH and its principals have been involved as advisor to chapter 11 debtors in numerous reorganization and asset sale cases, including, among others, American Paper Group, Arthur D. Little, Decora Industries, Owens Corning, Plainwell Paper and Tokheim Corporation. In addition, Lazard has one of the leading restructuring practices, which has represented numerous parties in interest in chapter 11 cases, including, among others, the chapter 11 cases of Adelphia, Calpine, Delphi, Conseco, Northwest Airlines, Owens Corning and Worldcom.

6.    In connection with its proposed retention by the Debtors in these cases, GAH undertook to determine whether it had any conflicts or other relationships that might cause it not

2

to be disinterested or to hold or represent an interest adverse to the Debtors. In connection with this inquiry, GAH obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties-in-interest in these Chapter 11 cases (the "<u>Potential Parties-in-Interest</u>") and such parties are listed on Schedule 2 annexed hereto. GAH has researched its and Lazard's client files and records to determine its connections with the Debtors and any Potential Parties-in-Interest. To the best of my knowledge, neither GAH nor Lazard has been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these Chapter 11 cases.

7.     To the best of my knowledge and belief, insofar as I have been able to ascertain, none of the principals or employees of GAH working on or connected to this engagement on the Debtors' behalf has had, or will have in the future, direct contact concerning these Chapter 11 cases with the Potential Parties-in-Interest herein, the United States Trustee, or anyone employed in the Office of the United States Trustee, other than in connection with this engagement for the Debtors.

8.     To the extent that I have been able to ascertain that GAH or Lazard has been retained to represent any of the Potential Parties-in-Interest in matters unrelated to these cases, such parties are listed on Schedule 3 annexed hereto. GAH's representation of each entity listed on Schedule 3 is only on matters that are unrelated to the Debtors or these cases. Other than as listed on Schedule 3, I am unaware of any relationships that GAH or Lazard has had with the Potential Parties-in-Interest herein. Given the size of the Firm and the breadth of the client base of GAH and Lazard, however, it is possible that other principals or employees of GAH or Lazard may have been retained by one or more of the Potential Parties-in-Interest in unrelated matters without my knowledge. To the extent that GAH discovers any such additional relationships, it will supplement this disclosure to the Court promptly.

9.      As part of its regular business operations, Lazard's asset management subsidiary, Lazard Asset Management LLC ("LAM"), may act as investment advisor for or trade securities (including in discretionary client accounts, and through LAM's operation of hedge funds and mutual funds, in which cases investment decisions are made by LAM), including on behalf of creditors, equity holders or other parties in interest in these cases, and Lazard or its affiliates, managing directors and employees. Some of these LAM accounts and funds may now or in the future hold debt or equity securities of the Debtors. GAH and Lazard have in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has been or will be available to employees of LAM. While Lazard receives performance fees generated by certain LAM funds, LAM is operated as a separate and distinct affiliate of Lazard, which is separated from the Firm's other businesses, including GAH and its managing directors and employees advising the Debtors, by an ethical wall.[2]

10.     Other than as disclosed herein, GAH has no relationship with the Debtors of which I am aware after due inquiry.

11.     GAH has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the Application, the Engagement Letter and the Indemnification Letter. Accordingly, I make this Affidavit in support of an order authorizing such retention.

---

[2] Effective May 10, 2005, Lazard transferred its alternative investments business (which includes fund management and investment) and capital markets business (which includes equity research, syndicate, sales and trading) to new privately-held companies, Lazard Alternative Investments LLC ("LAI") and Lazard Capital Markets LLC ("LCM"), respectively, which are neither owned nor controlled by Lazard. LAI and LCM are owned and operated by LFCM Holdings LLC ("LFCM"), which is owned in large part by Lazard managing directors. LFCM is separate from Lazard and its businesses, including its financial advisory services group and its managing directors and employees advising the Debtors. LFCM does not hold any proprietary interest in any of the Debtors' securities. Potential Parties-in-interest may be customers of LFCM or investors in funds managed by subsidiaries of LFCM.

12.    All of the services that the Firm will provide to the Debtors will be (a) at the request of the Debtors and (b) performed in accordance with customary market practice of the investment banking and financial advisory profession.

13.    Based upon the foregoing, I believe GAH is disinterested as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or their estates.

14.    It is the intention of GAH to seek compensation for its services as described in the Application and the Engagement Letter in accordance with the Bankruptcy Code, the Bankruptcy Rules, the United States Trustees' Guidelines and any and all rules of this Court.

15.    GAH charges its clients for reasonably incurred expenses associated with an assignment. Except as necessary to comply with an applicable Administrative Order, all such expense billings are in accordance with the Firm's customary practices.

I declare under the penalty of perjury that the forgoing is true and correct.

GOLDSMITH, AGIO, HELMS SECURITIES, INC.

By: _____

Name:  Andrew Torgove

Title:  Managing Director

Sworn and subscribed to before me, a notary
public for the State of New York, County of
New York this _8th_ day of November, 2007

_____
Notary Public

SUSAN COADY
Notary Public, State of New York
No. 01CO6161937
Qualified in Richmond County
Term Expires February 26, 2011

6

Schedule 1

Engagement Letter



GOLDSMITH-AGIO-HELMS
*Private Investment Banking*

As of October 11, 2007

InPhonic, Inc.
1010 Wisconsin Ave, NW
Suite 600
Washington, DC 20007

Attention:    Ken Schwarz
              Chief Financial Officer

Dear Ken:

This letter agreement (the "Agreement") confirms the understanding and agreement between Goldsmith, Agio, Helms Securities, Inc. ("GAH") and InPhonic, Inc. ("InPhonic") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope.*

The Company hereby retains GAH as its sole investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein.    As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet) and other litigation-related claims and obligations or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests  or other similar transaction or series of transactions.  By signing this Agreement, we hereby accept our appointment as your sole investment banker under the terms hereof.

InPhonic, Inc.
October 11, 2007
Page 2

*Description of Services:*

1. GAH agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

(a) Reviewing and analyzing the Company's business, operations and financial projections;

(b) Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c) Assisting in the determination of a capital structure for the Company;

(d) Assisting in the determination of a range of values for the Company on a going concern basis;

(e) Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f) Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g) Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

(h) Advising and assisting the Company in evaluating potential Financing transaction by the Company, and, subject to GAH's agreement so to act and, if requested by GAH, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i) Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;

(j) Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of a Sale Transaction[1];

---

[1] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company ; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of or controlling portion of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets,

(k)    Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

(l)    Providing testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court; and

(m)    Providing the Company with other financial restructuring advice.

*Fees:*

2.  As consideration for the services to be provided, the Company shall pay GAH (or an affiliate thereof, as requested by GAH) the following fees:

(a)    A monthly fee of $50,000 (the "Monthly Fee"), payable on execution of this Agreement and on the 1st day of each month thereafter until the earlier of the completion of the Restructuring, Sale or the termination of GAH's engagement pursuant to Section 10. The full amount of Monthly Fees paid for the first four months of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable. One half of the Monthly Fees paid for all months following the fourth month of this engagement shall be credited against any Restructuring Fee or Sale Transaction Fee; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b)    A fee equal to $1,500,000 <u>plus</u> 3.5% of the portion of Restructured Enterprise Value (as defined on Schedule I attached hereto) in excess of $90 million but below $105 million plus 5.5% of the portion of Restructured Enterprise Value in excess of $105 million, payable upon the consummation of a Restructuring (the "Restructuring Fee").

(c)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, a fee (the "Sale Transaction Fee") equal to $1,500,000, <u>plus</u> 3.5% of the portion of Aggregate Consideration (as defined on Schedule I attached hereto) in excess of $90 million but below $105 million, plus 5.5% of the portion of Aggregate Consideration in excess of $105 million.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction not contemplated by clause (i) above, a fee to be mutually agreed in good faith by InPhonic and GAH, which fee will appropriately compensate us for the

---

securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.

InPhonic, Inc.
October 11, 2007
Page 4

magnitude and complexity of the transaction and the fees customarily paid to investment bankers for similar transactions.

(iii) Any Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(d)    In the event of a transaction which constitutes both a Restructuring and a Sale Transaction Lazard shall be paid a fee which is the greater of the fee payable pursuant to clauses (b) and (c).

(e)    (i) In addition to any fees that may be payable to GAH and, regardless of whether any transaction occurs, the Company shall promptly reimburse GAH for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any; and

(ii) The Company agrees to provide GAH with an expense advance retainer of $150,000 (the "Expense Advance"), payable upon the execution of this Agreement, to be applied by GAH against the expenses that it incurs and that are reimbursable pursuant to clause (i) above;

(f)    As part of the compensation payable to GAH hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety;

(g)    All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3.    In the event of the commencement of Chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain GAH on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, GAH agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court; provided, that because GAH is not being compensated on an hourly basis, but rather on a fixed monthly basis and a contingent basis pursuant to section 328(a) of the Code, it is agreed that GAH will not be required and will not maintain detailed time records in connection with rendering services to the COMPANY. The Company shall supply GAH with a draft of the application and proposed retention order authorizing GAH's retention sufficiently in advance of the filing of such application and proposed order to enable GAH and its counsel to review and comment thereon. GAH shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless GAH's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by

final order of the Bankruptcy Court, which order is acceptable to GAH. In so agreeing to seek GAH's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believe that GAH's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of GAH's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Restructuring Fee and Sale Transaction Fee is reasonable regardless of the number of hours to be expended by GAH's professionals in the performance of the services to be provided hereunder.

*Other.*

4. No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to GAH such current and historical financial information and other information regarding the business of the Company as GAH may request in connection with this engagement. The Company represents and warrants to GAH that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep GAH advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, including in connection with any valuation of the Company, GAH shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. GAH will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

6. In performing its services pursuant to this Agreement, GAH is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction. GAH shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall GAH be responsible for providing any tax, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by GAH or any other entity to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. Simultaneously herewith, the parties hereto are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform GAH of any discussions,

negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that GAH receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder may be terminated by you or us at any time without liability or continuing obligation to you or us, except that following such termination and any expiration of this Agreement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company and any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Restructuring and any Sale Transaction for which agreements are executed or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. The Company recognizes that GAH has been engaged only by the Company and that the Company's engagement of GAH is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against GAH or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of InPhonic is authorized to rely upon the Company's engagement of GAH or any statements, advice, opinions or conduct by GAH. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or management in the course of the Company's engagement of GAH are solely for the purpose of assisting senior management or the Board of Directors of InPhonic, as the case may be, in evaluating the Restructuring and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with the Restructuring, Sale Transaction or Financing. Any advice, written or oral, rendered by GAH may not be disclosed publicly or made available to third parties without the prior written consent of GAH. Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. GAH's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between GAH and the Company or its Board of Directors.

12. In connection with the services to be provided hereunder, GAH may employ the services of Lazard Frères & Co. LLC and its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that GAH and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to GAH hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as GAH.

13. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, GAH and any other person entitled to indemnity under the Indemnification Letter. You agree that the Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter

InPhonic, Inc.
October 11, 2007
Page 7

embody the entire agreement and understanding among the parties hereto and supersedes any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. This Agreement and the Indemnification Letter may be assigned by GAH, at any time and in its sole discretion, to Lazard Frères & Co. LLC or an affiliate thereof. Any such assignment shall be effective as of the date hereof.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of GAH pursuant to, or the performance by GAH of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

GOLDSMITH, AGIO, HELMS SECURITIES, INC.

By: _____
Andrew Torgove
Managing Director

Accepted and Agreed to as of the date first written above.

INPHONIC, INC., on behalf of itself
and its controlled subsidiaries

By: _____
Ken Schwarz
Chief Financial Officer

InPhonic, Inc.
October 11, 2007

SCHEDULE I

The term "Restructured Enterprise Value" means (x) the total fair market value (on the date of consummation of the Restructuring) on a fully diluted basis of all equity securities on the balance sheets of the Company and its affiliates, including all convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money, guarantees of monies, and pension, healthcare or other liabilities set forth on the balance sheets of the Company and its affiliates. Restructured Enterprise Value shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company affiliate, as applicable, after the date hereof other than normal quarterly cash dividends. For purposes of calculating Restructured Enterprise Value, the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days after the closing of the Restructuring; and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such date and any restricted stock (i.e., stock in a public company not freely tradeable) shall be valued at 85% of the public market price of such stock.

The term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money, guarantees of monies, and pension, healthcare or other liabilities of the Company or and its affiliates, as applicable, as set forth on the most recent balance sheets, or, in case of the sale of assets, all indebtedness for borrowed money, guarantees of monies, and pension, healthcare or other liabilities assumed by the third party. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or its affiliates after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or its affiliates. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than a majority of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.



GOLDSMITH-AGIO-HELMS
*Private Investment Banking*

As of October 11, 2007

InPhonic, Inc.
1010 Wisconsin Ave, NW
Suite 600
Washington, DC 20007

Attention:    Ken Schwarz
              Chief Financial Officer

In connection with the engagement of Goldsmith, Agio, Helms Securities, Inc. ("GAH"), to advise and assist InPhonic, Inc. and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "COMPANY") with a variety of financial matters, for good and valuable consideration, receipt of which is hereby acknowledged, the COMPANY and GAH are entering into this letter agreement. The COMPANY agrees not to assert claims against or recover from GAH (which term, for purposes of this agreement, includes it, its affiliates and its and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members) for losses, claims, damages or liabilities to the COMPANY or its shareholders, arising out of or in connection with this engagement or the performance by GAH of services on behalf of the COMPANY (collectively, "Company Claims"), and to indemnify and hold GAH harmless against and from all losses, claims, damages or liabilities, and all actions, claims, proceedings and investigations in respect thereof (collectively, "Indemnification Claims"), arising out of or in connection with this engagement or the performance by GAH of services on behalf of the COMPANY, and to timely reimburse GAH for all reasonable legal and other out-of-pocket expenses as incurred by GAH in connection with investigating, preparing to defend or defending any such Indemnification Claims (including costs of GAH personnel required to testify or otherwise assist in any litigation and a per diem of $1,500 per person for any time such person expends in connection with any appearance, and/or preparation to appear, as a witness), whether or not GAH is named as a party thereto; provided, however, that the COMPANY shall not be precluded from asserting Company Claims and shall not be liable to the extent Indemnification Claims are finally judicially determined (not subject to review or appeal) to have resulted primarily and directly from GAH's gross negligence or willful misconduct. If Company Claims are asserted, GAH's liability shall be limited to the amount of any fee received by GAH pursuant to its engagement.

*www.agio.com*
*T 612.339.0500  F 612.339.0507*
*Goldsmith, Agio, Helms Securities, Inc*
*225 South Sixth Street · Forty-Sixth Floor · Minneapolis, Minnesota 55402*

If indemnification and reimbursement for Indemnification Claims are insufficient or unavailable as a result of GAH's gross negligence, willful misconduct or otherwise, the COMPANY and GAH agree to make contributions to any Indemnification Claims paid or payable in such proportion as appropriately reflects the relative economic benefits received by the COMPANY and its shareholders, on the one hand, and GAH, on the other hand; provided, however, that the COMPANY agrees to make contributions to any Indemnification Claims paid or payable such that GAH will not be liable for more than the fee received by GAH pursuant to the engagement. The "relative economic benefits" received by the COMPANY on the one hand and GAH on the other shall be deemed to be in the same proportion as the total consideration paid or payable in connection with any transaction or restructuring contemplated by the engagement bears to the fee actually received by GAH in connection with the engagement.    If a determination of contributions based on relative economic benefit is unavailable, the COMPANY and GAH agree to make contributions to any Indemnification Claims paid or payable in such proportion as appropriately reflects the relative fault of the COMPANY and its shareholders, on the one hand, and GAH, on the other hand, as well as other equitable considerations; provided, however, that the COMPANY agrees to make contributions to any Indemnification Claims paid or payable such that GAH will not be liable for more than the fee received by GAH pursuant to the engagement.  The foregoing rights to indemnification and contribution shall not limit any other rights that GAH may have at law or otherwise and shall survive any expiration or termination of the engagement or GAH's relationship with the COMPANY or the consummation, abandonment or termination of any transaction or restructuring.  The COMPANY further agrees that, without the written consent of GAH, the COMPANY will not settle or compromise any pending or threatened action, claim, proceeding, or investigation with respect to which indemnification or contribution may be sought hereunder unless such settlement or compromise includes an unconditional release of GAH from all liability resulting from such action, claim, proceeding, or investigation.

No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.  This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the COMPANY and GAH hereby submits to the jurisdiction of such courts.  The COMPANY hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable.  The COMPANY (on your its own behalf and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with our engagement or this agreement

InPhonic, Inc.
Indemnification Letter
October 11, 2007
Page 3

Very truly yours,

GOLDSMITH, AGIO, HELMS SECURITIES,
INC.

By: _____
Andrew Torgove
Managing Director

Accepted and Agreed to as of the date first written above.

INPHONIC, INC., on behalf of itself
and its controlled subsidiaries,

By _____
Ken Schwarz
Chief Financial Officer

**Schedule 2**

InPhonic, Inc.'s Top Twenty Creditors
  Alltel Communications Products
  American Premier Corporation
  AOL
  Brightpoint – Nextel
  Chadbourne and Parke LLP
  Cingular Wireless
  Expert Serv, Inc
  Federal Express
  Google, Inc
  Helgeson Enterprises
  MSN (Microsoft Corp)
  Next Jump, Inc.
  Patton Boggs LLP
  Spanco Telesystems & Solutions, LTD
  Sprint PCS
  TMI WIRELESS
  T-Mobile
  Verizon Wireless
  Yahoo! Inc.
  Yahoo!, Search Marketing Overture

VMC Satellite's Top Twenty Creditors
  Yellow Page Authority
  Randall Van Dyke & Associates
  OKS-Ameridial
  5Linx Enterprises, Inc.
  Traypml
  Internap Network Services
  Cavalier Business Communications
  BlackMesh Inc.
  Lightyear Network Solutions, LLC
  Dennis Shepard
  mForce, Inc.
  Quixtar
  Allied Incentives
  Cognigen Networks, Inc.
  Search Cactus, LLC
  Strategic Promotions, Inc.
  Entertainment Publications, Inc.
  Colvin Run Partners, LLC
  Escape International
  QUILL

Equity Holders of 5% or Greater
  David A. Steinberg

FMR Corporation
MSD Capital, LP
S.A.C. Capital Advisors, LLC
The Goldman Sachs Group, Inc.
Trafelet & Company, LLC
Vardon Capital, LLC

Former Lenders
  AP InPhonic Holdings, LLC
  Citicorp North America, Inc.
  Goldman Sachs Credit Partners, L.P.

Current Lender
  Versa Capital Management, Inc. (f/k/a Chrysalis Capital Partners)

### Schedule 3

1. Lazard has represented Microsoft Corp., a partner of MSN, on a variety of matters unrelated to the Debtors, including Microsoft's acquisition of aQuantive earlier this year. GAH does not believe the foregoing constitutes a conflict of interest with respect to its retention by the Debtors.
2. Lazard has represented Sprint Nextel Corp on a variety of matters unrelated to the Debtors and LCM has acted as a co-manager on debt offerings by Sprint Nextel. GAH does not believe that the foregoing constitutes a conflict of interest with respect to its retention by the Debtors.
3. Lazard represented SAC Capital Advisors, LLC and certain other shareholders of TimeWarner Inc. in connection with matters unrelated to the Debtors. GAH does not believe that the foregoing constitutes a conflict of interest with respect to its retention by the Debtors.
4. GAH and Lazard have in the past employed, and continue to employ or work with, certain lawyers who are potential parties-in-interest in these cases. GAH does not believe that the foregoing constitutes a conflict of interest with respect to its retention by the Debtors.
5. GAH and Lazard routinely advise businesses in chapter 11 proceedings and may know some of the U.S. Trustees and judges involved in this case. GAH does not believe that the foregoing constitutes a conflict of interest with respect to its retention by the Debtors.
6. The Debtors have numerous customers, creditors and other parties with whom they maintain business relationships. In addition, there may be a number of smaller firms that are not listed as potential parties-in-interest. GAH or Lazard may have advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtors or their chapter 11 proceedings. GAH does not believe that the foregoing constitutes a conflict of interest with respect to its retention by the Debtors.