## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

**APPLICATION FOR ORDER PURSUANT TO 11 U. S. C. § 327 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING DEBTORS IN POSSESSION TO RETAIN DLA PIPER US LLP AS COUNSEL TO THE DEBTORS IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE**

InPhonic, Inc. et al., the above-captioned debtors and debtors in possession (the "Debtors"), as and for their application (the "Application") for an order pursuant to section 327 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to retain and employ DLA Piper US LLP ("DLA Piper" or the "Firm") as its bankruptcy counsel. In support of the Application, the Debtors rely on the Affidavit of Thomas R. Califano, sworn to on November 8, 2007 (the "Califano Affidavit"), filed contemporaneously herewith. In further support of the Application, the Debtors respectfully represent:

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

### Jurisdiction and Venue

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicate for the relief requested in the Application is section 327 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016 and 5002, and Local Rule of Bankruptcy Procedure 9010-1(a).

### Background

3.      On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.   The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Declaration of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and is incorporated herein by reference.[2]

4.      The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

6.      Through this bankruptcy filing, the Debtors seek to preserve their assets and maximize the return for their creditors.

---

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

## The Debtors' Business Operations

7.     InPhonic was incorporated in 1997 and began operations in 1999. InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services. InPhonic focuses in four (4) areas: (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("MVNE") services, and (iv) unified communication services.

8.     InPhonic is a leading internet (online) seller of wireless services and devices to consumers. InPhonic sells these services and devices through company owned and branded websites, including without limitation www.wirefly.com, as well as through a variety of private labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

9.     InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

10.     InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

11.     CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite. Through VMC Satellite, InPhonic markets consumers

digital broadcast satellite television, broadband and VOIP services. VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

12.    InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers without having to own or operate the underlying wireless network or operational infrastructure. InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

13.    InPhonic developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee.  Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer.  The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

14.    InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations. InPhonic has agreements with the largest wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services.  The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

15.    All of the Debtors are headquartered in Washington, D.C. The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

<u>Relief Requested</u>

16.    Section 327(a) of the Bankruptcy Code provides, in relevant part, "[e]xcept as otherwise provided in this section, the trustee may employ one or more attorneys. . . that do not hold an interest adverse to the estate, and that are disinterested persons, to assist the Trustee in carrying out the trustee's duties under this title."

17.    It is necessary for the Debtors to retain and employ bankruptcy counsel under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 to represent them in connection with the following non-exclusive matters:

    a.   advising management concerning their fiduciary obligations to the estates, the creditors and the Court;

    b.   assisting regarding the administration of these Chapter 11 cases, including prosecution of motions and adversary proceedings, defense of actions commenced against the Debtors, commencement and prosecution of objections to claims, representation in the claims reconciliation process and counseling regarding the preparation of schedules, statements and operating reports;

    c.   assisting in the formulation, negotiation and confirmation of a Chapter 11 plan of reorganization and related disclosure statement; and

    d.   rendering such other legal services as may be requested by management and as may be required in furtherance of these Chapter 11 cases.

18.    The attorneys at DLA Piper who will render bankruptcy-related services to the Debtors have considerable experience in reorganization matters and are capable of rendering the services required. Members of the Firm's bankruptcy department are recognized as highly competent practitioners in the reorganization field and have represented debtors, official and unofficial committees and other parties in interest in major Chapter 11 cases.

<u>Disinterestedness of Professionals</u>

19.     To the best of Debtors' knowledge, DLA Piper (a) has no connection with any of the Debtors' creditors, any other party in interest, any of their respective attorneys or accountants, the United States Trustee for the District of Delaware or any employee of the United States Trustee, or any judge in the Bankruptcy Court or the United States District Court for the District of Delaware or any person employed in the offices of same; (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and (c) does not hold or represent any interest adverse to the estates.

20.     As set forth in the Califano Affidavit, DLA Piper has in the past represented, currently represents and likely in the future will represent certain parties in interest in these cases in matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such entities' claims against or interests in the Debtors.

21.     The Debtors understand that except as otherwise set forth in the Califano Affidavit:

>     a.     Neither DLA Piper nor any attorney at the Firm holds or represents an interest adverse to the Debtors' estates.
>
>     b.     Neither DLA Piper nor any attorney at the Firm is or was a creditor or an insider of the Debtors.
>
>     c.     Neither DLA Piper nor any attorney at the Firm is or was, within two years prior to the Petition Date, a director, officer or employee of the Debtors.
>
>     d.     DLA Piper does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker or for any other reason.

22.     In view of the foregoing, the Debtors believe that DLA Piper is a "disinterested person" within the meaning of the Bankruptcy Code section 101(14).

23.     DLA Piper has informed the Debtors that throughout these cases, DLA Piper will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in these cases and that it will promptly update this Application and disclose any material developments regarding the Debtors or any other pertinent relationships that come to DLA Piper's attention by way of a supplemental Affidavit.

### Professional Compensation

24.     DLA Piper has been primary outside corporate counsel for InPhonic beginning with InPhonic's initial public offering in 2004.  DLA Piper's work has primarily been focused on general corporate and Securities and Exchange Committee ("SEC") reporting-related matters. DLA Piper also has had more limited engagements on a variety of other matters.  DLA Piper did not, however, advise InPhonic with respect to its major credit agreements or most of its acquisitions as those matters were handled by other firms.  Upon being retained by the Debtors with respect to restructuring matters, DLA Piper has agreed to waive all outstanding fees and expenses owed by the Debtors as of the Petition Date.

25.     With respect to restructuring matters, the Debtors initially paid DLA Piper the amount of $250,000 to be held as a retainer for professional fees and expenses expected to be incurred by DLA Piper in its representation of the Debtors.

26.     DLA Piper will bill for services rendered at its regular hourly rates and will bill for expenses.  Compensation and reimbursement of expenses to DLA Piper will be fixed upon

application to the Court pursuant to sections 330 and 331 of the Bankruptcy Code and the Local Rules of the Court.

27.     Given the Debtors' needs, DLA Piper anticipates being asked to render legal services to the Debtors from and after the Petition Date until the time this Court may be in position to consider this Application. The Debtors request that the retention of DLA Piper be made effective nunc pro tunc to the Petition Date.

28.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. See 11 U.S.C. § 328(a). Subject to this Court's approval and in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the rules and other procedures that may be fixed by this Court, the Debtors request that DLA Piper be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses DLA Piper incurs, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered. Expenses to be reimbursed include, but are not limited to, photocopies, word processing, courier service, computer assisted research, docket and court filing fees, telecommunications, travel, court reporting charges and any other incidental costs advanced by the firm specifically for these matters, at the rates commonly charged for such costs to other DLA Piper clients. In addition, DLA Piper has advised the Debtors that it intends to seek compensation for all time and expenses associated with its retention as a professional, including the preparation of this Application, the Califano Affidavit, and related documents, as well as time spent in preparing any monthly fee statements or interim or final fee applications.

29.     DLA Piper has advised the Debtors that the current standard hourly rates applicable to the principal attorneys and paralegals proposed to represent the Debtors are:

| Professional | Rate Per Hour |
|---|---|
| Mark J. Friedman (partner) | $600 |
| Thomas R. Califano (partner) | $720 |
| Maria Ellena Chavez-Ruark (partner) | $485 |
| Jason Hardman (associate) | $420 |
| Ashleigh Blaylock (associate) | $330 |
| William Countryman (paralegal) | $195 |

30.    Other attorneys and paralegals at DLA Piper will render services to the Debtors as needed.  To the fullest extent possible, lawyers having the requisite expertise who already have knowledge with respect to these areas and/or the matter involved will be assigned to these cases so that duplication of efforts is avoided.  The hourly rates of the other DLA Piper partners, associates and paralegals that hereafter act for the Debtors may be higher or lower than those of the persons presently assigned to this matter.  The hourly rates may be adjusted from time to time to reflect firmwide changes in rates.

31.    The Debtors understand that the hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

32.    Other than as set forth above, there is no proposed arrangement to compensate DLA Piper in connection with its representation of the Debtors.

33.    The Debtors are also seeking to employ The Bayard Firm ("Bayard") as local counsel in these Chapter 11 cases.  DLA Piper and Bayard will make every effort to avoid duplication of services and unnecessary expense to the bankruptcy estates.

34.    The Debtors submit that the engagement and retention of DLA Piper on the terms and conditions set forth herein is necessary and in the best interests of the Debtors, their estates, and their creditors and should be approved.

### Statement Pursuant to Local Rule 1001-1(b)

35.     Pursuant to District Court Local Rule 7.1.2(a), incorporated by reference into Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Application.

### Notice

36.     Notice of this Motion has been provided to (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay); and (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis. In addition, because this Motion seeks "first day" relief, notice of this Motion and any order entered respecting this Motion will be served as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

### No Prior Request

37.     The Debtors have not filed a prior motion seeking the relief requested herein in this Court or any other court.

### Conclusion

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto (a) granting the relief requested herein and (b) granting such other and further relief as may be deemed just and proper.

Dated: November 8, 2007
  Washington, D.C.

**InPhonic, Inc., <u>et</u> <u>al.</u>**


By:  <u>/s/ Kenneth D. Schwarz</u>
      Kenneth D. Schwarz
      Chief Financial Officer