# EXHIBIT A
# AFFIDAVIT OF THOMAS R. CALIFANO

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| INPHONIC, INC., et al.,[1] | : Case No. 07-11666(KG) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

**AFFIDAVIT OF THOMAS R. CALIFANO IN SUPPORT OF
APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. § 327 AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING
DEBTORS IN POSSESSION TO RETAIN DLA PIPER US LLP AS COUNSEL
TO THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE**

STATE OF NEW YORK            )
                             ) SS:
COUNTY OF NEW YORK           )

THOMAS R. CALIFANO being duly sworn, deposes and says:

1. I am a partner of DLA Piper US LLP ("DLA Piper"), which maintains an office for the practice of law at 1251 Avenue of the Americas, New York, NY 10020-1104. I am an attorney-at-law, duly admitted and in good standing to practice in the State of New York as well as the United States District Courts for the Southern and Eastern Districts of New York. I submit this Affidavit in connection with the application (the "Application") of the debtors and debtors in possession in the above-captioned cases (the "Debtors") to retain DLA Piper as counsel to the Debtors in their Chapter 11 cases nunc pro tunc to the Petition Date and to provide the disclosures required under Section 329 of Title 11 of the United States Code (the "Bankruptcy

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

Code"), the rules of this Court, and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. The attorneys at DLA Piper who will render bankruptcy related services to the Debtors have considerable experience in reorganization matters and are capable of rendering the services required. Members of the Firm's bankruptcy department are recognized as highly competent practitioners in the reorganization field and have represented debtors, official and unofficial committees and other parties in interest in major Chapter 11 cases.

### Services to be Rendered by DLA Piper

3. The Debtors have requested that DLA Piper render various services to the Debtors including, inter alia:

   a. advising the Debtors with respect to their powers and duties as debtors and debtors in possession in the continued management and operation of their businesses and properties;

   b. attending meetings and negotiating with representatives of creditors and other parties in interest and advising and consulting on the conduct of the cases, including all of the legal and administrative requirements of operating in chapter 11;

   c. taking all necessary action to protect and preserve the Debtors' estates, including prosecution of actions on their behalf, the defense of any actions commenced against those estates, negotiations concerning litigation in which the Debtors may be involved and objections to claims filed against the estates;

   d. preparing, on behalf of the Debtors, motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

   e. preparing and negotiating on the Debtors' behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents and taking any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

   f. advising the Debtors in connection with any sale of assets;

2

g.  performing other necessary legal services and providing other necessary legal advice to the Debtors in connection with these chapter 11 cases; and

h.  appearing before this Court, any appellate courts and the United States Trustee, and protecting the interests of the Debtors' estates before such courts and the United States Trustee.

4.  DLA Piper understands that the Debtors are planning on filing retention applications for other professionals in these cases and has informed the Debtors that it will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in these cases.

## DLA Piper's Connections with the Debtors

5.  DLA Piper utilizes a number of procedures (the "Firm Procedures") to determine its relationships, if any, to parties that may have connections to a client debtor. In implementing such Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors and DLA Piper's relationship with such parties:

a.  Upon and since its retention, DLA Piper requested and obtained from the Debtors extensive (but not necessarily comprehensive) lists of interested parties and significant creditors (the "Potential Parties in Interest").[2] The list of Potential Parties in Interest provided by the Debtors is attached hereto as Schedule 1. The Potential Parties in Interest include, among others, the Debtors and their members.[3]

---

[2] The list of Potential Parties in Interest may be updated during these cases; and, if appropriate, DLA Piper will update its disclosures accordingly. Further, DLA Piper continues to review the relationships its attorneys may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist. As may be necessary, DLA Piper will supplement this Affidavit if there is a relationship that may adversely affect DLA Piper's retention in these cases or otherwise should be disclosed under applicable law. DLA Piper also will update this disclosure if it is advised of any trading of claims against or interests in the Debtor that may relate to DLA Piper's retention or otherwise requires such disclosure.

[3] In reviewing its records and the relationships of its attorneys, DLA Piper did not seek information as to whether any DLA Piper attorney or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain DLA Piper partners have invested but as to which such partners have no control over or knowledge of investment decisions, securities of the Debtor or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any such relationship does exist, I do not believe it would impact upon DLA Piper's disinterestedness or otherwise give rise to a finding that DLA Piper holds or represents an interest adverse to the Debtors' estates.

3

      b.      DLA Piper then compared each of the Potential Parties in Interest to the names in its master electronic database of current and former clients (the "Client Database"). The Client Database generally includes the name of each client of the firm, the name of each party who is or was known to be adverse to such client of the firm, the name of each party that has or had a substantial role with regard to the subject matter of DLA Piper's retention, and the names of the DLA Piper attorneys who are or were primarily responsible for matters for such clients.

      c.      Known connections between former or current clients of DLA Piper and the Potential Parties in Interest were compiled for purposes of preparing this Affidavit.

6.      As a result of the Firm Procedures, I have thus far ascertained that, upon information and belief, if retained, DLA Piper:

      a.      is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services),[4] an equity security holder of the Debtors or an "insider" of the Debtors, as the term "insider" is defined in Section 101(31) of the Bankruptcy Code;

      b.      is not and has not been, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

      c.      does not have an interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason.

Accordingly, I believe DLA Piper is a "disinterested person" as that term is defined in Section 101(14), as modified by Section 1107(b), of the Bankruptcy Code.

7.      Additionally, as a result of the Firm Procedures, I have thus far ascertained that, upon information and belief, DLA Piper has the following connections with certain of the Potential Parties in Interest:

      a.      Because of its broad-based general practice, DLA Piper: (i) has appeared in the past and may appear in the future in cases

---

[4] See paragraph 15 below.

    unrelated to these cases where one or more of the Potential Parties in Interest may be involved; and (ii) has represented in the past, currently represents and/or may represent in the future one or more of said parties or other potentially interested parties or creditors in matters unrelated to the Debtors and these Chapter 11 cases.

  b. DLA Piper has in the past represented or may currently represent the Potential Parties in Interest or their affiliates listed on **Schedule 2** hereto[5] in matters unrelated to the Debtors and these cases. DLA Piper may represent such entities in the future in matters unrelated to the Debtors and these cases. The Potential Parties in Interest or their affiliates listed on Schedule 2 represents a <u>de minimis</u> amount of DLA Piper's revenues generated during 2006 and 2007.

  c. Certain of my fellow partners of DLA Piper and certain associates of and "of counsel" attorneys to DLA Piper and certain of such persons' relatives may have familial or personal relationships, as well as business, contractual, or economic relationships, with officers, directors and/or shareholders or creditors of the Debtors, competitors of the Debtors and/or other parties in interest in these cases. I have not been able to identify any such relationships and, therefore, I do not believe these familial or personal relationships, considered separately or collectively, are material.

  d. Certain of my fellow partners of DLA Piper and certain of the associates of and "of counsel" attorneys to DLA Piper and certain of such persons' relatives may directly or indirectly be shareholders of creditors of the Debtors, competitors of the Debtors and/or other parties in interest. Based on the information provided to me, I believe any such holdings are insignificant and, insofar as I have been able to ascertain, none of these shareholders controls or has any influence on such creditor or party in interest. I do not believe these shareholders' interests, considered separately or collectively, are material.

8. I believe that none of the representations or relationships recited above would give rise to a finding that DLA Piper represents or holds an interest adverse to the Debtors with respect to the services for which the Debtors seek to retain DLA Piper in these cases.

---

[5] In certain instances the precise identity of the parties in interest was not readily ascertainable (*e.g.*, only the trade name or a portion thereof was known). For purposes of this Affidavit only, such party in interest was treated as including affiliates and/or other entities bearing a similar name unless such party was believed by DLA Piper to be unrelated.

5

9.  DLA Piper has reviewed the relationships that its partners and employees have with the United States Trustee for the District of Delaware (the "United States Trustee") and those persons employed in the office of the United States Trustee, and I do not believe that DLA Piper has any material connections with the United States Trustee or any person employed in the office of the United States Trustee.

10. It is my understanding that the Debtors have filed or will also file an application to retain The Bayard Firm ("Bayard") as its Delaware co-counsel. In the unlikely event any matter were, in the future, to give rise to a potential conflict with respect to matters that otherwise would have been handled by DLA Piper, Bayard or another firm will handle such matters and DLA Piper will not be involved.

11. DLA Piper will continue to comply with its ongoing duty under Bankruptcy Code section 328 to notify this Court if any actual conflict arises, and if necessary, arrange for an "ethical wall" with respect to the DLA Piper attorney who worked on the matter.

### DLA Piper's Compensation

12. Subject to this Court's approval in accordance with Sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules as may be applicable, the Local Rules and such other procedures as may be fixed by order of this Court, compensation will be payable to DLA Piper on an hourly basis, plus reimbursement of actual and necessary expenses incurred by DLA Piper. The DLA Piper attorneys that are likely to represent the Debtors in these cases have current standard hourly rates ranging between $330 and $720. The paralegal that likely will assist the attorneys who will represent the Debtors has a current standard hourly rate of $195. These rates are subject to periodic adjustments.

13. The hourly rates that will be charged in these cases are DLA Piper's standard hourly rates. These rates are set at a level designed to fairly compensate DLA Piper for the work

6

of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is DLA Piper's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case or cases. The expenses charged to clients include, among other things, telephone and telecopier toll charges, mail and express mail charges, special or hand delivery charges, document processing and photocopying charges, travel expenses, expenses for "working meals" and computerized research and transcription costs. DLA Piper believes that it is appropriate to charge these expenses to the clients incurring them rather than to increase its hourly rates and thereby spread the expenses among all clients.

14. This Affidavit is intended to comply with Bankruptcy Rule 2016(b). DLA Piper intends to apply to this Court for compensation for professional services rendered in connection with these cases in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Court, Local Bankruptcy Rules, and the administrative and other orders entered by this Court.

15. In the 90 days prior to the Petition Date, DLA Piper received a retainer of $250,000 and applied a portion of the retainer to amounts due to DLA Piper for services rendered immediately prior to the commencement of the cases in connection with the preparation of filing these cases. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in DLA Piper's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors. If any amounts, after application of all invoices, are owed to DLA Piper as of the Petition Date, DLA Piper will waive any claim relating thereto upon entry of a final order approving DLA Piper's engagement herein.

16. No promises have been received by DLA Piper or by any partner or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

17. DLA Piper further states that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel and associates of DLA Piper or (b) any compensation another person or party has received or may receive.

18. By reason of the foregoing, I believe DLA Piper is eligible for employment and retention by the Debtors pursuant to Section 327(a) (as modified by Section 1107(b)) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Dated: New York, New York
November 8, 2007

Thomas R. Califano
DLA Piper US LLP

Sworn to before me this 8th day of November, 2007

/s/ _____
Notary Public
My Commission Expires: 11/15/08

VANESSA TORRES
Notary Public, State of New York
No. 01TO6118723
Qualified in New York County
Commission Expires November 15, 2008

8

**Schedule 1**

<u>InPhonic, Inc.'s Top Twenty Creditors</u>
  Alltel Communications Products
  American Premier Corporation
  AOL
  Brightpoint – Nextel
  Chadbourne and Parke LLP
  Cingular Wireless
  Expert Serv, Inc
  Federal Express
  Google, Inc
  Helgeson Enterprises
  MSN (Microsoft Corp)
  Next Jump, Inc.
  Patton Boggs LLP
  Spanco Telesystems & Solutions, LTD
  Sprint PCS
  TMI WIRELESS
  T-Mobile
  Verizon Wireless
  Yahoo! Inc.
  Yahoo!, Search Marketing Overture

<u>VMC Satellite's Top Twenty Creditors</u>
  Yellow Page Authority
  Randall Van Dyke & Associates
  OKS-Ameridial
  5Linx Enterprises, Inc.
  Traypml
  Internap Network Services
  Cavalier Business Communications
  BlackMesh Inc.
  Lightyear Network Solutions, LLC
  Dennis Shepard
  mForce, Inc.
  Quixtar
  Allied Incentives
  Cognigen Networks, Inc.
  Search Cactus, LLC
  Strategic Promotions, Inc.
  Entertainment Publications, Inc.
  Colvin Run Partners, LLC
  Escape International
  QUILL

9

Equity Holders of 5% or Greater
  David A. Steinberg
  FMR Corporation
  MSD Capital, LP
  S.A.C. Capital Advisors, LLC
  The Goldman Sachs Group, Inc.
  Trafelet & Company, LLC
  Vardon Capital, LLC

Former Lenders
  AP InPhonic Holdings, LLC
  Citicorp North America, Inc.
  Goldman Sachs Credit Partners, L.P.

Current Lender
  Versa Capital Management, Inc. (f/k/a Chrysalis Capital Partners)

## SCHEDULE 2[1]

### Equity Security Holders:[2]

1. FMR Corporation is an equity security holder of the Debtors and is related to both Sears and Kmart who are clients of the Firm.

2. Trafelet & Company is a client of the Firm in the United Kingdom and is an equity security holder of the Debtors.

### Carrier Partners of the Debtors:

1. T-Mobile is a client of the Firm and is a carrier partner of the Debtors.

2. Cingular Wireless is a client of the Firm and is a carrier partner of the Debtors.

3. Verizon is a client of the Firm and Verizon Wireless is a carrier partner of the Debtors.

4. Alltel Corporation is a client of the Firm and is a carrier partner of the Debtors.

### Marketing Partners of the Debtors:

1. Bar Yahoo Limited is a client of the Firm in the United Kingdom, Yahoo is one of the Debtors' top three marketing partners.

2. Google, Inc. is a client of the Firm and is one of the Debtors' top three marketing partners.

3. AOL, Inc. is a client of the Firm and is one of the Debtors' marketing partners.

### Top 20 Creditors of InPhonic:

1. Sprint/Nextel is a client of the Firm and Brightpoint, Nextel is one of the Debtors' twenty largest creditors.

2. Sprint/Nextel is a client of the Firm and Sprint PCS is one of the Debtors' twenty largest creditors.

3. Verizon is a client of the Firm and Verizon Wireless is one of the Debtors' twenty largest creditors.

---

[1] In certain instances, the precise identity of the potential party in interest was not readily ascertainable (e.g., only the trade name or a portion thereof was known). In these circumstances, DLA Piper has assumed, for purposes of this schedule only, that such potential party in interest includes all affiliates bearing a similar name unless such party was believed by DLA Piper to be unrelated. The stated relationship to the Debtor is based upon information and belief.

[2] Each of the equity security holders who are clients of the Firm owns approximately five percent (5%) of InPhonic's equity.

4.  Patton Boggs, LLP is a client of the Firm, on a matter inactive since 2002. Patton Boggs, LLP is one of the Debtors' twenty largest creditors.

5.  Chadbourne and Park LLP is a client of the Firm in the United Kingdom and is one of the Debtors' twenty largest creditors.

6.  TMI Nominees Ltd is related to Bank of Tokyo Mitsubishi which is a client of the Firm on a matter inactive since 2006. TMI Wireless is one of the Debtors' twenty largest creditors.

7.  TMI Nominees Ltd also is related to John Burnham & Company which is a client of the Firm on a matter inactive since 2006. TMI Wireless is one of the Debtors' twenty largest creditors.

8.  TMI Communications is related to TerreStar Networks, Inc. and TerreStar Corporation which are clients of the Firm. TMI Wireless is one of the Debtors' twenty largest creditors.

9.  TMI International BV is related to CBS Outdoor, Inc. which is a client of the Firm. TMI Wireless is one of the Debtors' twenty largest creditors.


**Top 20 Creditors of VMC Satellite:**

1.  Yellow Page Authority is related to SBC Smart Yellow Pages, SNET Yellow Pages and Southwestern Yellow Pages which are clients of the firm. Yellow Page Authority is one of VMC Satellite's twenty largest creditors.

2.  Internap Network Services Corp is related to Charter Holdings, Inc. and Vitalstream Broadcasting Corporation which are clients of the firm. Internap Network Services Corp. is one of VMC Satellite's twenty largest creditors.

3.  Lightyear Network Solutions, LLC is related to Northern Trust Bank of California which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

4.  Lightyear Network Solutions, LLC is related to Light Year Australia Pty Ltd which is related to Carlson Restaurants Worldwide, Inc. which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

5.  Lightyear Network Solutions, LLC is related to Light Year Australia Pty Ltd which is related to Carlson Travel Network Associates, Inc. which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

6.  Lightyear Network Solutions, LLC is related to Light Year Australia Pty Ltd which is related to Carlson Hotels Worldwide which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

7. Quixtar, Inc. is a subsidiary of Alticor, Inc. which is a client of the firm. Quixtar, Inc. is one of VMC Satellite's twenty largest creditors.

8. Entertainment Publications, Inc. is related to Expedia, Inc. which is a client of the firm. Entertainment Publications, Inc. is one of VMC Satellite's twenty largest creditors.

9. QUILL is related to Quill Communications, Inc. which is related to Wirestone, LLC which is a client of the firm. QUILL is one of VMC Satellite's twenty largest creditors.

10. QUILL is related to Quill Corporation which is subsidiary of Staples, Inc. which is a client of the firm. QUILL is one of VMC Satellite's twenty largest creditors.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| INPHONIC, INC., et al.,[1] | Case No. 07-_____ |
| Debtors. | (Jointly Administered) |

## STATEMENT OF DLA PIPER US LLP UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016, LOCAL RULE 2016-1 AND 11 U.S.C. §329

1. DLA Piper US LLP ("DLA Piper"), pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and Section 329 of Title 11 of the United States Code (the "Bankruptcy Code"), states that the undersigned is counsel for the debtors and debtors in possession in the above-captioned case (the "Debtors").

2. Compensation agreed to be paid by the Debtors to DLA Piper is for legal services rendered in connection with these Chapter 11 cases, including, without limitation, bankruptcy, tax, real estate, corporate finance, and litigation services relating to the Debtors' reorganization. The Debtors have agreed to pay DLA Piper for legal services to be rendered by its various attorneys, law clerks, paralegals and legal assistants in connection with these Chapter 11 cases on

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

the Debtors' behalf. The Debtors also have agreed to reimburse DLA Piper for its actual and necessary expenses incurred in connection with these Chapter 11 cases.

3. The Debtors paid DLA Piper a total of $250,000 as a retainer. DLA Piper applied a portion of this retainer for services rendered immediately prior to the commencement of the cases in connection with the preparation of filing these cases. A precise disclosure of the amounts applied and the balance, if any, being held as a retainer, or the amount of fees and expenses being waived, will be provided in DLA Piper's first interim fee application filed with this Court.

4. DLA Piper will seek approval of payment of compensation upon DLA Piper's appropriate applications for allowance of interim or final compensation pursuant to Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and Orders of this Court.

5. The entire filing fee in these cases has been paid from the aforementioned retainer.

6. The services to be rendered include all those services set forth in the Debtors' application to employ DLA Piper filed simultaneously herewith.

7. No promises have been received by DLA Piper or by any member or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. DLA Piper has no agreement with any other entity to share with such entity any compensation received by DLA Piper.

2

Dated: New York, New York
November X, 2007

_____
Thomas R. Califano
DLA Piper US LLP

Sworn to before me this 8th day of November, 2007

/s/ _____
Notary Public
My Commission Expires: 11/15/08

VANESSA TORRES
Notary Public, State of New York
No. 01TO6118723
Qualified in New York County
Commission Expires November 15, 2008

3