IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : |
| | : Chapter 11 |
| INPHONIC, INC., et al.,[1] | : |
| | : Case No. 07-11666 |
| Debtor. | : |
| | : Jointly Administered |
| | : **Re: Docket No. 6** |

**ORDER PURSUANT TO 11 U.S.C. §§ 345, 363, 364, 1107, 1108 AND LOCAL RULE 2015-2 FOR ORDER AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTENANCE OF EXISTING BANK ACCOUNTS, (III) CONTINUED USE OF EXISTING CHECKS AND BUSINESS FORMS, AND (IV) CONTINUED USE OF EXISTING INVESTMENT GUIDELINES**

This matter coming before the Court on the Motion of Debtors Pursuant to 11 U.S.C. §§ 345, 363, 364, 1107, 1108 and Local Rule 2015-2 for Order Authorizing (I) Continued Use of Existing Cash Management System, (II) Maintenance of Existing Bank Accounts, (III) Continued Use of Existing Checks and Business Forms, and (IV) Continued Use of Existing Investment Guidelines (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Court having reviewed the Motion and the *Affidavit of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court (the "Hearing"); the Court finding

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Motion.

675342-2

that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and (d) notice of the Motion and the Hearing was sufficient under the circumstances, the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and it appearing that the relief requested is in the best interest of the Debtors and their estates;

IT IS HEREBY ORDERED THAT:

1.  The Motion is granted on a final basis as provided herein.

2.  The Debtors are authorized to continue to use their Cash Management System subject to the Service Documentation relating thereto, as the same may be amended from time to time, including the continued use of their existing Accounts with the same names and account numbers as existed immediately prior to the chapter 11 cases (except to the extent it needs to be modified in accordance with the DIP Facility, as such term is defined in the Schwartz Affidavit, and as may be otherwise modified from time to time with the prior consent of the DIP Lender, such consent not to be unreasonably withheld, as such terms are defined in the Schwartz Affidavit) and to transfer funds by and among the Debtors. The Debtors shall continue to maintain detailed records reflecting all transfers of funds. Alternatively, with the prior written consent of the DIP Lender, the Debtors are authorized to create a similar Cash Management System (or a more streamlined version thereof with fewer accounts) at an alternative banking institution; provided that to the extent reasonably required by the DIP Lender, the Debtors will enter into account control agreements.

3. The Debtors are authorized to continue their customary intercompany accounting and cash management procedures in the ordinary course; provided, however, that the Debtors shall maintain records of all such accounting in a manner such that all receipts, disbursements and intercompany transfers can be readily monitored and ascertained on a non-consolidated basis.

4. The Debtors are authorized to deposit funds in and withdraw funds from any existing and new accounts (subject to available funds in the applicable accounts or, in the case of a zero balance account, in the applicable linked funding account) by all usual means, including, but not limited to, checks, wire transfers, electronic funds transfers and other debits, and to otherwise treat the pre-petition Accounts and any accounts opened post-petition for all purposes as debtor in possession accounts.

5. All Banks at which the Accounts are maintained are authorized and directed to maintain, service and administer the Accounts and any other deposit accounts opened post-petition in accordance with applicable non-bankruptcy law and in accordance with the Service Documentation between the applicable institution and the applicable Debtor or Debtors relating to such accounts, including by rescinding any administrative or debit freeze imposed with respect to the Accounts as a consequence of the filing of the petitions commencing these cases, subject to paragraph 5 below.

6. Prior to the effectiveness of the rescission of the debit or administrative freeze by any of the Banks as to any of the Accounts, the Debtors shall (a) provide each of the Banks with a list of all the unpaid checks or debits (the "Pre-Petition Items") which the Debtors believe were all the items or debits issued or signed pre-petition and which are not the subject of an order allowing payment of the specific Pre-Petition Item, and (b) take all necessary and appropriate

steps in accordance with the applicable institution's requirements (including the payment of any applicable fees to the relevant institution) to place a formal "stop payment" order on each Pre-Petition Item except those as to which the Debtors obtain authority from the Court to pay. Any Bank or other depository institution receiving an instruction to stop payment on any Pre-Petition Item will be authorized to rely thereon and shall have no liability to any person or entity for relying on such information. If the Debtors fail to place a formal stop payment order on any Pre-Petition Item and the item or debit is honored by the applicable institution, such institution will have no liability on account of the payment of such item or debit, notwithstanding that the same might be considered to be an unauthorized post-petition transfer. No Bank or other institution shall have any liability for having made a post-petition transfer in violation of the Bankruptcy Code attributable to honoring a Pre-Petition Item consistent with the foregoing.

7.     All Banks at which the Accounts are maintained are authorized pursuant to Sections 364(b), (c), and (d) of the Bankruptcy Code to provide post-petition credit to the Debtors in connection with their maintaining, servicing and administering the Accounts and any other deposit accounts opened post-petition in the ordinary course of their businesses, and are permitted to do so on a secured basis if the Service Documentation or other documentation relating to such accounts, grants the applicable Bank or other institution a lien or security interest in any assets of the Debtors, such as the deposit accounts or investment accounts at such institution, to secure any post-petition extension of credit relating to the provision of cash management services. Any such lien shall be subject to the terms of the DIP Facility, the DIP Credit Agreement or the interim and/or final orders approving the DIP Facility (as such terms are defined in the Schwarz Affidavit).

8. In accordance with the DIP Facility, as such term is defined in the Schwarz Affidavit, the Debtors shall reimburse the applicable Bank for any claim the applicable Bank may have arising prior to or after the Petition Date in connection with (a) any fees or charge backs owed under agreements or other Service Documentation entered into as of the Petition Date by and between any or all of the Debtors on the one hand and the applicable Bank on the other, including checks deposited with the applicable Bank, which have been dishonored or returned for insufficient funds in the applicable account, to the extent required under the pre-existing agreements or Service Documentation entered into by and between the Debtors and the applicable Bank, and (b) any reimbursement, account fee or other payment obligations arising under the agreements governing the Accounts or the Cash Management System, including all Service Documentation.

9. Nothing herein shall prevent the Debtors from opening new debtor in possession bank accounts or closing any existing Accounts as they deem necessary and appropriate (subject to the terms of any existing Service Documentation), in the ordinary course and/or pursuant to any applicable cash collateral or post-petition financing orders.

10. The Debtors are authorized to continue to use their existing business forms and check stock, which business forms and check stock shall not be required to include the legend "Debtor in Possession" or other similar legend.

11. Upon depletion of the Debtors' check stock, the Debtors are directed to obtain new checks reflecting their status as debtors in possession. The Debtors are authorized to invest and deposit funds in accordance with their customary pre-petition Cash Management System, including in excess of amounts insured by the Federal Depository Insurance Company, without the need for any additional bond or security not provided prior to the Petition Date. Use and

access to any bank services relating to the Cash Management System shall be in accordance with the agreements with the applicable banking institution.

12. Pursuant to Sections 503(b)(1) and 364(b) of the Bankruptcy Code, the Debtors are authorized to continue to consummate intercompany transactions in the ordinary course of business and all intercompany claims, to the extent that such claims are held by a Debtor or against a Debtor, are accorded administrative expense status.

13. The Debtors shall serve a copy of this Order and notice of its entry within three (3) business days after entry of this Order on (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay), (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, and (d) each of the Banks. If no party within twenty (20) days of service of this Order files and serves a written objection to the waiver of Section 345 of the Bankruptcy Code as described herein, such relief shall become final for purposes of these chapter 11 cases.

14. This Order shall be without prejudice to (a) the rights of the Debtors or any party in interest, including, without limitation, the United States Trustee, to apply to the Court for authority to further modify the terms hereof on appropriate notice and motion, and (b) any issue pertaining to the substantive consolidation of these estates herein.

15. Notwithstanding anything contained in this Order to the contrary, to the extent this Order is inconsistent with any term or provision of any Court approved debtor-in-possession financing and/or use of cash collateral or any future order in respect of the same, such other documents or orders shall govern and control.

16. The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

17. This Court will retain jurisdiction to address all disputes related to the interpretation or enforcement of this Order.

Dated: November 9, 2007
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

675342-2