IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| INPHONIC, INC., et al[1] | : | Case No. 07-11666 (KG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Ref. No. 11 |
| | : | |

**INTERIM ORDER (I) AUTHORIZING AND APPROVING DEBTORS'
POST-PETITION FINANCING; (II) GRANTING LIENS AND SECURITY
INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL
AND AFFORDING ADEQUATE PROTECTION; (IV) MODIFYING
AUTOMATIC STAY; AND (V) SCHEDULING FINAL HEARING**

This matter coming before this Court on the Debtors' Motion for Entry and Approval of

Interim and Final Orders: (A) Authorizing and Approving Postpetition Financing; (B) Granting

Liens and Security Interests and Providing Superpriority Administrative Expense Status;

(C) Authorizing Use of Cash Collateral and Affording Adequate Protection; (D) Modifying

Automatic Stay; and (E) Scheduling Final Hearing, Pursuant to 11 U.S.C. § § 105, 362, 363 and

364 and Federal Rules of Bankruptcy Procedure 2002 and 4001(c) and (d) (the "Motion") for an

interim hearing on November 9, 2007 (the "Interim Hearing").  The Motion requests the entry of

an interim order (the "Interim Order"):

(a) authorizing and approving, pursuant to Sections 105, 361, 362, 363, and 364 of

the United States Bankruptcy Code, 11 U.S.C. § § 101, et seq. (the "Bankruptcy Code") and

Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The Debtors are InPhonic, Inc, CAIS Acquisition, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, CAIS Acquisition II, LLC, FON Acquisition, LLC, and 1010 Interactive, LLC.

Rules"), postpetition financing (the "<u>DIP Facility</u>"), from Adeptio INPC Funding, LLC (together with its successors, assigns and transferees, the "<u>DIP Lender</u>") to (i) fund, among other things, ongoing working capital needs of the Debtors, and (ii) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lender under the DIP Facility and the other DIP Facility Documents (as defined below);

(b)    authorizing the Debtors to enter into and comply in all respects with the DIP Facility and the other DIP Facility Documents, and approval of all of the terms and conditions of the DIP Facility and the other DIP Facility Documents;

(c)    requesting that the financing under the DIP Facility, including, without limitation, as to all principal, accrued interest, unpaid fees and expenses, indemnification, and all other amounts due from time to time under the documents referred to below, including the Obligations[2] (collectively, the "<u>DIP Facility Obligations</u>"):

(i)    have priority, pursuant to Bankruptcy Code § 364(c)(1), over any and all administrative expenses, subject only to the Carve-Out (as defined below), which allowed superpriority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, as provided for herein; and

(ii)    pursuant to Bankruptcy Code § § 364(c)(2), (c)(3) and (d), be and be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior security interests in, and liens upon (all such liens and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP Facility Documents, the

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Documents or the Order (A) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets; (B) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (C) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Propsoed Cure Amounts; (D) Approving Expense Reimbursement Provision; and (E) Granting Related Relief.

"DIP Facility Liens"), all prepetition and postpetition assets of the Debtors, whether now existing or hereafter acquired, including all of the real, personal and mixed property (including equity interests) and all monies and other property of any kind received on account thereof (including, upon and following the approval of the Bankruptcy Court, Avoidance Actions), and all proceeds thereof, in which Liens are granted whether pursuant to the Interim Order and Final Order, as applicable, the Collateral Documents, or otherwise, in each case as security for the Obligations (each of the foregoing, the "Collateral"), but specifically (i) being subject solely to the Carve-Out to the extent provided for below, and (ii) receiving a junior lien on all Collateral encumbered by the Permitted Encumbrances, pursuant to Bankruptcy Code § 364(c)(2), subject to the provisions of paragraph 6 below;

(d)    authorizing the Debtors' use of the Prior Lender's (as defined below) cash collateral and granting adequate protection on account of the Prepetition Loan Agreement (as defined below) under Bankruptcy Code § § 105, 361, 362 and 363;

(e)    requesting, pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") be held before this Court to consider entry of order authorizing and granting the relief requested in the Motion on a final basis (the "Final Order"); and

(f)    granting of certain related relief.

The Court having found that due and appropriate notice, under the circumstances, of the Motion, the relief requested therein, the material terms of this Interim Order and the Interim Hearing was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), on the following parties: (a) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue

3

Service; (d) the Securities and Exchange Commission; (e) the Prior Lender; and (f) the Existing

Agent (collectively, the "Interim Notice Parties"). The Court having held the Interim Hearing on

November 9, 2007; having considered all the pleadings filed with this Court; and having

overruled all unresolved objections to the relief requested in the Motion; and upon the record

made by the Debtors at the Interim Hearing, including the Motion and other filings and pleadings

in the Debtors' Chapter 11 cases, and after due deliberation and consideration and good and

sufficient cause appearing therefore;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

CONCLUSIONS OF LAW:

A.    Petition Date. On November 8, 2007 (the "Petition Date"), each of the Debtors

filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or this "Court"). The

Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to Bankruptcy Code § § 1107 and 1108.

B.    Jurisdiction and Venue. This Court has core jurisdiction over the Debtors'

Chapter 11 cases, this Motion and the parties and property affected hereby pursuant to 28 U.S.C.

§ § 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and

1409.

C.    Notice. Notice of the Interim Hearing, the Motion and proposed entry of this

Interim Order has been provided to the Interim Notice Parties. Under the urgent circumstances,

requisite notice of the Motion and the relief requested thereby and this Interim Order has been

provided in accordance with Bankruptcy Rules 4001(b) and (c) and 9014, which notice is

4

sufficient for this Motion, and the entry of the Interim Order, and no further notice of, or hearing on, the Motion or this Interim Order is necessary or required.

       D.     <u>Creditors' Committee</u>. As of the date hereof, the U.S. Trustee has not appointed a Creditors' Committee in accordance with Bankruptcy Code § 1102.

       E.     <u>The Debtors' Stipulations as to Existing Secured Debt</u>. Subject to the limitations contained in paragraph 10 of this Interim Order, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree that:

       (a)     Prior to the Petition Date, the Debtors entered into that certain Credit Agreement dated as of November 7, 2006 (as amended, the "<u>Prepetition Loan Agreement</u>"), by and among the Debtors, the lenders from time to time party thereto (the "<u>Prior Lender</u>") and Citicorp North America, Inc. as Administration Agent (the "<u>Existing Agent</u>").

       (b)     As collateral for the Prepetition Indebtedness, the Debtors granted to the Prior Lender and Existing Agent a first-priority security interest in and lien upon (collectively, the "<u>Prepetition Liens</u>") all of the Debtors' assets (the "<u>Prepetition Collateral</u>").

       (c)     As of the Petition Date, the Debtors were indebted to the Prior Lender and Existing Agent in the aggregate principal amount of not less than $90 million plus accrued interest with respect thereto and any fees, expenses, costs and charges (the "<u>Prepetition Obligations</u>") provided under the Prepetition Loan Agreement.

       (d)     The DIP Lender currently holds all of the Prior Lender's Prepetition Indebtedness, the Prepetition Loan Agreement, and the Prepetition Liens (all terms as defined in the DIP Credit Agreement).

(e)     The Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from Bankruptcy Code § 362).

(f)     No portion of the Prepetition Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(g)     The Prepetition Liens in and to the Prepetition Collateral constitute valid, binding, enforceable, and perfected first-priority liens in and to the Prepetition Collateral, subject only to the liens described in the Prepetition Loan Agreement, if any, and are not subject to avoidance, reduction, recharacterization, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(h)     The Debtors do not have, and hereby forever release, any claim, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise against the Prior Lender, the Existing Agent and the DIP Lender, and their respective affiliates, partners, members, agents, officers, directors, employees, attorneys and advisors whether arising under or in connection with the Prepetition Loan Agreement or the transactions contemplated thereunder, the Prepetition Indebtedness or the Prepetition Liens, including, without limitation, any right to assert any disgorgement or recovery.

(i)     The foregoing acknowledgments, stipulations and agreements are subject only to the rights of any Creditors' Committee ("Creditors' Committee") and parties in interest pursuant to paragraph 10 below.

F.     <u>Findings Regarding Postpetition Financing.</u>

(a)    *Debtors' Request*.  The Debtors have requested from the DIP Lender, and the DIP Lender is willing to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in this Interim Order and the DIP Facility Documents.

(b)    *Need for Postpetition Financing*.  The Debtors have an immediate need to obtain the DIP Facility and use the Prepetition Collateral, including the Cash Collateral, in order to permit, among other things, the orderly continuation of the operation of their businesses, the management and preservation of Debtors' assets and properties, the sale of substantially all of the Debtors' assets (the "Proposed Sale") at an Auction pursuant to the Bidding Procedures Order (as defined in paragraph 7(b) below), to maintain business relationships with vendors, suppliers and customers, to make payroll, to satisfy other working capital and operational needs and maintain the going concern value of the Debtors' estates.  Without such cash and credit, the Debtors' estates would be irreparably harmed.

(c)    *No Credit Available on More Favorable Terms*.  The Debtors represent that they are unable to obtain sufficient financing from sources other than the DIP Lender on terms more favorable than under the DIP Credit Agreement (as defined below and in substantially the form affixed as Exhibit 1 hereto, subject only to non-material modifications as may be agreed to by the parties thereto) and any and all documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Credit Agreement, the "DIP Facility Documents") and are not able to obtain sufficient unsecured credit allowable as an administrative expense under Bankruptcy Code § 503(b)(1).  The Debtors are also unable to obtain unsecured credit with the enhanced priority afforded by Bankruptcy Code § 364(c)(1). New credit is unavailable to the Debtors without providing the DIP Lender with (a) the DIP

Facility Superpriority Claims and (b) the DIP Facility Liens as provided herein and in the DIP Facility Documents.

(d)      *Budget*. The Debtors have prepared and delivered the Budget to the DIP Lender, a copy of which Budget is attached hereto as <u>Exhibit 2</u>. Such Budget has been thoroughly reviewed by the Debtors and their management. The Debtors represent that the Budget is achievable and will allow the Debtors to operate their businesses, conduct the Auction and Sale and otherwise conduct their Chapter 11 cases. The DIP Lender is relying upon the Debtors' compliance with the Budget in accordance with the Interim Order in determining to enter into the postpetition financing arrangements provided for herein.

(e)      *Cash Collateral*. The Debtors stipulate, agree and acknowledge, subject to the rights of any Creditors' Committee or other party in interest pursuant to paragraph 10 below, that its cash, including, without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, the sale of inventory or other disposition of Prepetition Collateral, constitute proceeds of the Prepetition Collateral and are cash collateral of the Prior Lender within the meaning of Bankruptcy Code § 363(a) (the "<u>Cash Collateral</u>"). The Prior Lender is entitled, pursuant to Bankruptcy Code § § 361, 363(c)(2), 363(e) and 364(d)(1), to adequate protection of its interests in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of the Prior Lender's Prepetition Collateral, including, without limitation, any such diminution resulting from the use of Cash Collateral, the implementation of the DIP Facility, the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code § 362. The Prior Lender has indicated a willingness to consent and agree to allow the Debtors to

use its Cash Collateral and provide financing to the Debtors through the date of the Final Hearing

on the Motion, subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the

DIP Credit Agreement and the DIP Facility Documents, (iii) the terms and conditions of all

"First-Day Orders" being, in form and substance, reasonably satisfactory to the Prior Lender and

(iv) findings by the Court that such postpetition financing is essential to the Debtors' estates, that

the terms of such financing were negotiated in good faith and at arm's length, and that the DIP

Lender's DIP Facility Liens and DIP Facility Superpriority Claims, and other protections granted

pursuant to this Interim Order and the DIP Facility Documents will not be affected by any

subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other

order, as provided in Bankruptcy Code § 364(e).

(f)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  Based on

the record of the Interim Hearing, the terms of the DIP Facility Documents, this Interim Order

and the use of Cash Collateral are fair, just and reasonable under the circumstances, ordinary and

appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of

prudent business judgment consistent with their fiduciary duties and constitute reasonably

equivalent value and fair consideration.  The use of Cash Collateral and the terms of the DIP

Credit Agreement and the other DIP Facility Documents have been negotiated in good faith and

at arm's length between the Debtors, the Prior Lender and the DIP Lender, with all parties

represented by counsel, and any credit extended, loans made, and other financial

accommodations extended to the Debtors by the Prior Lender or the DIP Lender shall be deemed

to have been extended, issued, or made, as the case may be, in "good faith" as that term is used

in Bankruptcy Code § 364(e) and in express reliance upon the protections afforded by

Bankruptcy Code § 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)    *Good Cause, Immediate Entry.*  The Debtors represent that the relief requested by the Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtors, their estates and their creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to (i) minimize disruption to the Debtors' businesses and on-going operations, including in connection with the Sale, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all of the Debtors' creditors, and (iii) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  Thus, good cause has been shown for the immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS ORDERED, ADJUDGED AND DECREED, that:

1.    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  This Interim Order shall immediately become effective upon its entry.

2.    Objections Overruled.  All objections to the entry of this Interim Order are withdrawn or resolved by the terms hereof or, to the extent not resolved, are overruled.

3.    Authorization of the DIP Financing Documents.  Upon finalizing and executing that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement") by and between the Debtors and the DIP Lender (subject only to non-material modifications as may be agreed to by the parties thereto), and provided that the Debtors are not in default under the terms of this Interim Order, the Debtors are immediately authorized to use the Prior Lender's Cash Collateral and to borrow under the DIP Facility from the DIP

Lender in an interim amount not to exceed $10.0 million and to continue to operate its business, in accordance with the terms of this Interim Order, the DIP Credit Agreement and the DIP Facility Documents. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute and are hereby deemed to be legal, valid, and binding obligations of the Debtors and the Debtors' estates, enforceable against the Debtors and their estates in accordance with the terms of the DIP Facility Documents. Until the Final Hearing on the Motion, Cash Collateral and available financing and advances under the DIP Credit Agreement will be used or made only, in accordance with the Budget, to: (a) fund the Debtors' ordinary working capital and general corporate needs and (b) to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement, this Interim Order and any other orders of this Court.

4.    <u>Execution and Compliance with DIP Facility Documents</u>. The Debtors are authorized and directed to execute, deliver, perform and comply with all of the terms and covenants of the DIP Credit Agreement and DIP Facility Documents, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Debtors' Chapter 11 cases, any subsequently converted case of any Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any Debtor's Chapter 11 case. The Debtors are authorized and directed to perform all acts, and execute and comply with the terms of all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), as the DIP Lender may reasonably require as evidence of and for the protection of the Obligations and the Collateral or which may be otherwise deemed necessary by the DIP Lender to effectuate the terms and conditions of this Interim Order and the DIP Facility Documents.

5.    <u>DIP Facility Superpriority Claims</u>.  As security for the DIP Facility Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Facility Documents and this Interim Order, to the extent the DIP Facility Liens do not satisfy the DIP Facility Obligations, the DIP Lender is granted allowed super-priority administrative claim pursuant to Bankruptcy Code § 364(c)(1), which claim shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Bankruptcy Code § § 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and/or 364(c)(1) (the "<u>DIP Facility Superpriority Claim</u>"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of the Debtors and all proceeds thereof, <u>provided</u>, <u>however</u>, that the DIP Facility Superpriority Claim shall be subordinate to the Carve-Out to the extent specifically provided for in paragraph 8 of this Interim Order.

6.    <u>DIP Facility Liens</u>.  As security for the DIP Facility Obligations, pursuant to Bankruptcy Code § § 364(c)(2), (c)(3), and (d) and the consent of the Prior Lender and the Existing Agent, the DIP Lender shall have, and is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, control agreements, pledge agreements, lock box agreements financing statements, or otherwise) the DIP Facility Liens; <u>provided</u>, <u>however</u> that such liens and security interests shall not include Avoidance Actions or the proceeds thereof until the entry of the Final Order:

12

(a)      pursuant to Bankruptcy Code § 364(c)(2), valid, perfected, enforceable and non-avoidable first priority liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors, including, without limitation, avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof upon entry of the Final Order, that are not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date;

(b)      pursuant to Bankruptcy Code § 364(c)(3), valid, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors that are subject to valid, perfected, enforceable and non-avoidable liens in existence on the Petition Date or to valid liens in existence on the Petition Date that are perfected subsequent to such commencement as permitted by Bankruptcy Code § 546(b) (other than assets and property that are subject to the existing liens as referred to in subparagraph (c) below, which existing liens shall be primed as provided therein); and

(c)      pursuant to Bankruptcy Code § 364(d), valid, perfected, enforceable and non-avoidable first priority senior priming liens on and security interests in the Prepetition Collateral, except as to those liens and security interests in existence on the Petition Date to which the Prepetition Collateral is subject in accordance with the Prepetition Loan Agreement and as consented to by the DIP Lender, to the extent such liens and security interests are valid, perfected, enforceable and non-avoidable (provided that with respect to such excepted liens and security interests, the DIP Lender shall be granted the second priority or other junior liens granted in subparagraph (b) above).

In the event of the occurrence of an Event of Default (as defined below), or an event that would constitute an Event of Default with the giving of notice or lapse of time or both (a "Default"), the DIP Facility Liens shall be subject only to the payment of the Carve-Out (as defined below).

7.    Adequate Protection.  The Prior Lender and Existing Agent are entitled to adequate protection for DIP Facility Liens and the Debtors' use of Cash Collateral, and solely to the extent of diminution in value from the Debtors' use of Cash Collateral.  As adequate protection, the Prior Lender and Existing Agent are hereby granted the following:

(a)    *Replacement Liens.*  The Prior Lender and Existing Agent are granted (effective and perfected upon the entry of this Interim Order and without the necessity of the execution by the Debtors of security agreements, financing statements or other agreements) valid, perfected replacement security interests in and lien upon all Prepetition Collateral of the Debtors and the proceeds thereof, subject and subordinate only to (i) the Prepetition Liens, (ii) the DIP Facility Liens granted to the DIP Lender under this Interim Order and pursuant to the DIP Credit Agreement and (iii) the Carve-Out.

(b)    *Sale Process.*  The Debtors' motion, filed on the Petition Date, for an order, *inter alia*, (i) approving bid procedures with respect to the proposed sale of substantially all of the Debtors' Assets, as more fully set forth in that certain asset purchase agreement (the "Agreement") by and between the Debtors and Adeptio INPC Funding, LLC, (ii)  scheduling a hearing and approving the form and manner of notice of the Auction and the Bid Procedures; (iii) establishing procedures relating to the assumption and assignment of certain Contracts, including notice of proposed cure amounts; (iv) approving the expense reimbursement provision; and (v) granting related relief (the "Bid Procedures Motion") shall be heard as part of the

14

Debtors' other first-day motions and an order (the "<u>Bidding Procedures Order</u>" which includes the Bid Procedures as an exhibit) shall be entered, in the form filed by the Debtors with the Motion, upon such motion no later than November 9, 2007; and the relief requested in the Bid Procedures Motion, including, without limitation, the dates of the Auction, Sale Hearing and Closing Date, and the Debtors' agreement that the Sale shall be consummated with the Qualified Bidder that submits the highest or otherwise best bid at the Auction, shall not be modified except with the consent of the Prior Lender and the Existing Agent.

(c)     *Budget*. Except pursuant to permitted variances provided for in the DIP Financing Documents as in effect as of the entry of this Interim Order, the Debtors shall not make disbursements in excess of those projected in the Budget and shall not otherwise deviate from the terms of the Budget, without the written consent of the Prior Lender and Existing Agent.

(d)     *Fees and Expenses*. The Debtors are hereby authorized and directed to pay to the Prior Lender, all present and future costs, fees, charges and expenses of the Prior Lender following receipt of a summary invoice, including all reasonable fees and expenses of consultants, advisors, professionals and attorneys including Capstone Advisory Group, LLC whether incurred prepetition or postpetition. None of such Prior Lender's costs, fees, charges, and expenses shall be subject to Court approval, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices. The Prior Lender shall provide a copy of the summary invoice regarding any fees and expenses incurred postpetition to the U.S. Trustee and any Creditors' Committee's counsel subject to confidentiality and applicable privilege.

8.    <u>Carve-Out</u>. Liens, security interests and super-priority administrative expense
claims of the Prior Lender, the Existing Agent and the DIP Lender shall be subject to and
subordinate only to (a) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable
to the clerk of the Court (collectively, the "<u>UST/Clerk Fees</u>"); and (b) allowed, unpaid fees and
expenses of attorneys, accountants, and other professionals retained in the case by the Debtors or
the Creditors' Committee (collectively, the "<u>Professionals</u>") pursuant to Bankruptcy Code
§ § 327, 328 and 1103 (the "<u>Priority Professional Expenses</u>"), but the amount entitled to priority
under this sub-clause (b) shall not exceed $1.2 million outstanding in the aggregate at any time
(the "<u>Professional Expense Cap</u>," and together with the UST/Clerk Fees, the "<u>Carve-Out</u>");
<u>provided, however,</u> that any payments actually made to the Professionals, whether under
Bankruptcy Code sections 330 and 331 or otherwise, shall reduce the Professional Expense Cap
on a dollar-for-dollar basis, irrespective of whether such payment was made pre-Event of Default
or post-Event of Default, it being expressly understood that any prepetition retainers held by
Professionals shall not count against, and shall not reduce, the Professional Expense Cap.  The
Carve-Out shall be free and clear of all liens, claims and encumbrances granted hereunder and
shall be subject only to the allowed claims of the Professionals for such fees and expenses as
may be awarded by the Court under Bankruptcy Code § § 327 or 328; <u>provided, however,</u> the
Carve-Out cannot be used for the payment or reimbursement of any fees or disbursements of the
Debtors or the Creditors' Committee or any other party-in-interest incurred in connection with
the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion,
objection, defense or other contested matter, the purpose of which is to seek any order, judgment,
determination or similar relief: (1) invalidating, setting aside, avoiding, subordinating, in whole
or in part, the DIP Facility Obligations or the Prepetition Indebtedness or lien and security

16

interest securing the DIP Facility Obligations or the Prepetition Indebtedness; or (2) preventing, hindering or delaying, whether directly or indirectly, the assertion by the Prior Lender or the DIP Lender or enforcement by the Prior Lender or the DIP Lender or enforcement by the Prior Lender or the DIP Lender of its liens or realization upon any of the respective Collateral; or (3) challenging the postpetition liens or claims seeking an affirmative recovery from the Prior Lender or the DIP Lender; provided that the Carve-Out may be used to investigate the Prepetition Indebtedness and the validity and perfection of the liens and security interests securing the Prepetition Indebtedness.

9.    Fees and Expenses of Professionals.  So long as no Default or Event of Default shall have occurred and be continuing or have occurred and be waived, the Debtors shall be permitted to pay the compensation and reimbursement of fees and expenses allowed and payable under Bankruptcy Code § § 328, 330 and 331 (but excluding fees and expenses of third party professionals employed by Creditors' Committee members), as the same may be due and payable and as are otherwise permitted under this Interim Order and the DIP Credit Agreement.  Nothing contained herein is intended to constitute, nor should be construed as consent to the allowance of any fees, disbursements or expenses by any party and nothing herein shall affect the ability or right of the Debtors, the DIP Lender, the Creditors' Committee, the U.S. Trustee or any other party in interest to object to the allowance and payment of any amounts incurred or requested.

10.    Prepetition Lien/Claim Challenge.  The stipulations and admissions contained in this Interim Order shall be binding upon the Debtors and their estates in all circumstances. Subject to the terms of this paragraph, the Creditors' Committee shall have twenty-five (25) days from the date of appointment of counsel for the Creditors' Committee (and if no Creditors' Committee is formed, any party-in-interest shall have twenty-five (25) days from entry of this

17

Interim Order) within which to commence an adversary proceeding (collectively, a "Prepetition Lien/Claim Challenge") with respect to the validity, priority, extent, perfection, and enforceability of the Prepetition Liens or the Prepetition Indebtedness, or any other claims or causes of action against the Prior Lender and DIP Lender relating to the Prepetition Loan Agreement. If such a Prepetition Lien/Claim Challenge is not timely commenced within such applicable period set forth above, (a) the stipulations contained in paragraph E of this Interim Order shall be irrevocably binding on the estates, the Creditors' Committee and all parties in interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction), (b) the Prepetition Liens or the Prepetition Indebtedness and the Prior Lender's and the DIP Lender's liens upon and security interests in the Collateral shall be recognized and allowed as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected, (c) the Creditors' Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction) shall thereafter be forever barred from bringing any Prepetition Lien/Claim Challenge, and (d) the Prior Lender and the DIP Lender and their respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date, and all of Debtors' acknowledgements, releases and waivers of claims granted to or in favor of the Prior Lender or the DIP Lender relating to the Prepetition Loan Agreement in accordance with this Interim Order shall be binding upon all parties-in-interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code. Nothing in this Interim Order shall be deemed to confer or deny standing to commence an action on the Creditors' Committee.

18

11.    <u>Waiver of 506(c) Claims Against the Prior Lender and the DIP Lender</u>.  Except for the Carve-Out and upon entry of the Final Order, no costs or expenses of administration which already have been, or may hereafter be, incurred in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code shall be charged or asserted by the Debtors against the Prior Lender or the DIP Lender, their claims or the Collateral, pursuant to Bankruptcy Code § § 105 or 506(c) or otherwise without the prior written consent of the Prior Lender or the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the Prior Lender or the DIP Lender in this proceeding, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Lender).

12.    <u>Restrictions on Use of Proceeds</u>.  Subject to the limitations applicable in the DIP Credit Agreement, the Debtors shall use the Prior Lender's Cash Collateral and the proceeds of the DIP Facility made or arranged for by the DIP Lender pursuant to the DIP Facility Documents and this Interim Order, and in accordance with this Interim Order and the Budget: (a) to support the working capital and general corporate purposes of the Debtors, (b) to make any other payments permitted to be made by the Bankruptcy Code, in this Interim Order or in any other order of this Court to the extent provided for under the DIP Facility Documents or consented to by the DIP Lender as provided in the DIP Facility Documents, (c) to pay certain fees and expenses relating to the credit facilities established under the DIP Facility Documents, and (d) to promptly pay all present and future costs, fees, charges and expenses of the DIP Lender following receipt of a summary invoice (with a copy provided to the U.S. Trustee and any Creditors' Committee's counsel subject to confidentiality and applicable privilege), including all reasonable fees and expenses of consultants, advisors, professionals and attorneys paid or incurred at any time in connection with these cases whether incurred prepetition or postpetition,

all of which unpaid costs and expenses shall be added to, and are included as part of, the

principal amount of the Obligations, secured by the Collateral and afforded all of the rights,

priorities and protections afforded to the DIP Lender in respect of the Obligations under this

Interim Order and the DIP Facility Documents.  None of such DIP Lender's costs, fees, charges,

and expenses shall be subject to Court approval, and no recipient of any such payment shall be

required to file with respect thereto any interim or final fee application with the Court, provided

that the Court shall have jurisdiction to determine any dispute concerning such invoices.

13.    Commitment Termination Date.  The DIP Facility Obligations shall be due and

payable, without notice or demand, on the Commitment Termination Date.

14.    Restrictions on the Debtors.  Other than the Carve-Out, no claim having a priority

superior or *pari passu* with those granted by this Interim Order to the DIP Lender shall be

granted or permitted by any order of the Court heretofore or hereafter entered in the case, while

any portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains

outstanding without the consent of the DIP Lender.  Except as may be expressly permitted by the

DIP Credit Agreement, the Debtors will not, at any time during the case, grant mortgages,

security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to

Bankruptcy Code § 364(d) or otherwise without the consent of the DIP Lender.

15.    Lien Perfection.  This Interim Order shall be sufficient and conclusive evidence of

the priority, perfection and validity of all of the liens and security interests in and upon the

Collateral granted pursuant to this Interim Order and/or the DIP Facility Documents, without the

necessity of (a) filing, recording or serving any financing statements, mortgages, deeds of trust or

other agreements, documents or instruments which may otherwise be required under federal or

state law in any jurisdiction (collectively, the "Lien Recording Documents"), (b) taking

possession of Collateral or evidence thereof (provided, that, without limiting the foregoing, any third party in possession of any Collateral is hereby deemed a bailee for the benefit of and on behalf of the DIP Lender) or (c) taking any other action to validate or perfect the liens and security interests granted in this Interim Order and/or the DIP Facility Documents.  If the DIP Lender shall, in its discretion, elect for any reason to file any such Lien Recording Documents with respect to such liens and security interests, the Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon the DIP Lender's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the Petition Date.  The DIP Lender may, in its discretion, without seeking modification of the automatic stay under Bankruptcy Code § 362, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order.  To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided that if the DIP Lender takes steps to perfect their liens and security interests under otherwise applicable state law, it does so without waiving the benefits of this provision of this Interim Order).  In the event that any Lien Recording Document which the DIP Lender elects to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the DIP Lender's liens upon and

21

security interests in the Collateral or any of the DIP Lender's claims, rights, priorities and/or

protections afforded under this Interim Order and/or the DIP Facility Documents, such

limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely

affect in any way any of the DIP Lender's liens and security interests in the Collateral or their

claims, rights, priorities and/or protections granted under this Interim Order and/or the DIP

Facility Documents.

      16.    <u>Modification of Automatic Stay</u>.  Subject only to the provisions of the DIP Credit

Agreement and without further order from this Court, the automatic stay provisions of

Bankruptcy Code § 362 are vacated and modified to the extent necessary to permit the DIP

Lender to implement the provisions of the DIP Facility Documents and this Interim Order

including exercising, upon the occurrence and during the continuance of any Event of Default,

all rights and remedies provided for in the DIP Facility Documents; <u>provided</u>, <u>however</u>, that prior

to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Lender

shall be required to give five (5) business days written notice to the Debtors, its bankruptcy

counsel, the Creditors' Committee's counsel, if any, and the U.S. Trustee.  Notwithstanding the

occurrence of an Event of Default or the Commitment Termination Date or anything herein, all

of the rights, remedies, benefits, and protections provided to the DIP Lender under the DIP

Facility Documents and this Interim Order shall survive the Commitment Termination Date.

      17.    <u>Binding Effect of Interim Order and DIP Facility Documents</u>.

      (a)    The Debtors irrevocably waive any right to seek any modifications or

extensions of this Interim Order without the prior written consent of the DIP Lender as

authorized under the DIP Credit Agreement to give such consent, and no such consent shall be

implied by any other action, inaction or acquiescence by the DIP Lender.

(b)     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Debtors' Chapter 11 cases to a Chapter 7 case, dismissing any of the Debtors' bankruptcy cases (in the case of any such dismissal, to the maximum extent permitted under the Bankruptcy Code and other applicable law) or any order which may be entered confirming or consummating any plan of reorganization of the Debtors; and the terms and provisions of this Interim Order as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Order and the DIP Facility Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Interim Order until all Obligations are indefeasibly paid and satisfied in full; provided that all obligations and duties of the DIP Lender hereunder, under the DIP Facility Documents or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default, the Commitment Termination Date or the date that a plan of reorganization of the Debtors becomes effective unless the DIP Lender as is required under the DIP Facility Documents have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender.

(c)     The provisions of this Interim Order and the DIP Facility Documents shall be binding upon and inure to the benefit all parties-in-interest in these cases, including, without limitation, the Debtors, the DIP Lender, and the Creditors' Committee, and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to Bankruptcy Code § 1104 (upon entry of a Final Order) or any other

23

fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates), and shall inure to the benefit of the Debtors, the DIP Lender, and the Creditors' Committee, and their respective successors and assigns; provided, however, that DIP Lender shall have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the Debtors' estates.

18.    Survival.  The rights of the DIP Lender under the DIP Facility Documents or this Interim Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming a plan of reorganization in this case (and, to the extent not satisfied in full in cash, the DIP Facility Obligations shall not be discharged by the entry of any such order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtors having hereby waived such discharge); (ii) converting the case to a chapter 7 case; or (iii) dismissing the case, and the terms and provisions of this Interim Order as well as the DIP Facility Superpriority Claims and the DIP Facility Liens granted to and conferred upon the DIP Lender and the protection afforded to the DIP Lender pursuant to this Interim Order and the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Facility Documents and to the maximum extent permitted by law until all of the DIP Facility Obligations shall have been paid and satisfied in full in accordance with the provisions of the DIP Credit Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall remain binding on all interested parties).

19.    Nullifying Prepetition Restrictions on Postpetition Lien Grants.  Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, any

provision that restricts, limits or impairs in any way any Debtor's ability or right to grant liens or security interests upon any of the Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Facility Documents or this Interim Order or otherwise enter into and comply with all of the terms, conditions and provisions thereof (all such provisions being collectively referred to as the "Restrictive Clauses") shall not be effective and shall be unenforceable against any such Debtor and the DIP Lender to the maximum extent permitted under the Bankruptcy Code and other applicable law, but only with respect to the entry of this Interim Order granting such postpetition financing, and, therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Lender pursuant to this Interim Order and/or the DIP Facility Documents or any of the rights of the DIP Lender hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law.  Such Restrictive Clauses shall not, to the maximum extent permitted under the Bankruptcy Code and applicable law, render any contract or lease unable to be assumed and/or assigned by any Debtor (or by the DIP Lender pursuant to the provisions contained in this Interim Order), or in any way impair or limit the ability or right of any Debtor (or by the DIP Lender, on behalf of any Debtor, pursuant to the provisions contained in this Interim Order) to assume and/or assign any contract or lease under Bankruptcy Code § § 365 or 1123.

20.    After-Acquired Property.  Except as otherwise provided in this Interim Order, pursuant to Bankruptcy Code § 552(a), all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lender, on behalf of itself, pursuant to the Debtors' use of Cash Collateral, the DIP Facility

Documents and this Interim Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date (other than Permitted Encumbrances), except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under Bankruptcy Code §510(c) or other provisions or principles of applicable law.

21.     _Access to the Debtors_.  Without limiting the rights of access and information afforded the DIP Lender under the DIP Facility Documents, the Debtors shall permit representatives, agents and/or employees of the DIP Lender to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' business) and shall cooperate, consult with, and provide to such representatives, agents and/or employees all such non-privileged information as they may reasonably request.

22.     _Amendment to DIP Facility Documents_.  The DIP Lender, with the consent of the Debtors, is authorized to amend and/or modify the DIP Credit Agreement or any other DIP Facility Documents without further order of the Court; _provided_ that any such amendments or modifications must be in writing and served upon counsel for the Creditors' Committee (if appointed at such time) and the U.S. Trustee; _provided, further_ that any amendments or modifications that would have the effect of shortening the maturity date of the facilities or the aggregate fees payable, or the rate or amount of interest payable, under the DIP Facility Documents shall be done only pursuant to further order of the Court; _provided, however,_ that any amendment or modification to increase the aggregate amount of borrowings permitted must be in writing, filed with the Court and served upon counsel for the Creditors' Committee (if appointed

at such time), the Creditors' Committee and all parties who filed requests for notices under

Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, and such

parties shall have five (5) days to object to such amendment or modification or it shall become

effective.

23.    Insurance Policies.  Upon entry of this Interim Order, the DIP Lender shall be,

and shall be deemed to be, without any further action or notice, named as an additional insured

and loss payee on each insurance policy maintained by the Debtors which in any way relates to

the Collateral.  The Debtors are authorized and directed to take any action necessary to have the

DIP Lender added as an additional insured and loss payee on each insurance policy.

24.    Conclusive Evidence of Obligations.  The terms, conditions and covenants of the

DIP Credit Agreement and the other DIP Facility Documents shall be sufficient and conclusive

evidence of the borrowing and financing arrangements among the Debtors and the DIP Lender

for all purposes, including, without limitation, the Debtors' obligation to pay all principal,

interest, fees (including, without limitation, unused line fees, agency fees, servicing fees, letter of

credit fees, closing fees, syndication fees, early termination fees and appraisal fees), and other

costs and expenses (including, without limitation, all reasonable fees and expenses of

consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP

Credit Agreement and the other DIP Facility Documents.

25.    Maintenance of Collateral.  The Debtors shall not sell, transfer, lease, encumber

or otherwise dispose of any portion of the Collateral, except for sales contemplated under the

Agreement, sales of the Debtors' inventory in the ordinary course of their businesses or except as

otherwise provided for in the DIP Facility Documents and/or this Interim Order.  Nothing

contained in this paragraph shall limit or impair the right of any lessor or other contract party of

any Debtor to request that the Court compel the Debtors to assume or reject any lease or license of real or personal property.

26.    <u>Remedies upon Occurrence of Event of Default</u>.  In the event of any of the following: (a) the failure of the Debtors to perform in any material respect any of their obligations pursuant to this Interim Order, (b) the occurrence and continuation of any "Event of Default" as defined under the DIP Credit Agreement or the other DIP Facility Documents, (c) the termination or non-renewal of the DIP Facility Documents as provided for in the DIP Credit Agreement, or if terminated sooner by an order of this Court, or (d) any termination events occurring under the Agreement (each of the foregoing being referred to in this Interim Order, individually, as an "<u>Event of Default</u>" and collectively, as the "<u>Events of Default</u>"); then (unless such Event of Default is specifically waived in writing by the DIP Lender as provided for in the DIP Facility Documents, which waiver shall not be implied from any other action, inaction or acquiescence by such the DIP Lender) the DIP Lender may, notwithstanding the provisions of Bankruptcy Code § 362, without any application, motion or notice to or order from, the Bankruptcy Court, without prior notice, take any one or more of the following actions:  (a) terminate all or any portion of the Revolving Credit Commitment (as defined in the DIP Credit Agreement) whereupon the DIP Lender's obligation to make further Revolving Credit Advances (as defined in the DIP Credit Agreement) shall terminate; (b) declare all or any portion of the Obligations to be forthwith due and payable whereupon such Obligations shall become and be due and payable; and/or (c) exercise any rights and remedies provided to the DIP Lender under the DIP Facility Documents or at law or equity, including all remedies provided under the Bankruptcy Code; and, pursuant to the Interim Order and the Final Order, the automatic stay of Bankruptcy Code § 362 shall be modified and vacated to permit the DIP Lender to exercise its

28

remedies under the DIP Credit Agreement and the DIP Facility Documents, without further application or motion to, or order from, the Bankruptcy Court; provided, however, notwithstanding anything to the contrary contained herein, the DIP Lender shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower in the Collateral only upon five (5) Business Days' prior written notice to the Debtors, the United States Trustee for the District of Delaware, and any counsel approved by the Bankruptcy Court for the Creditors' Committee. Upon the occurrence of an Event of Default and the exercise by the DIP Lender of its rights and remedies under the DIP Credit Agreement and the other DIP Facility Documents, the Debtors shall assist the DIP Lender to the extent practicable in effecting a sale or other disposition of the Collateral upon such terms as are designed to maximize the proceeds obtainable from such sale or other disposition. Nothing contained in this Interim Order or otherwise shall be construed to obligate the DIP Lender in any way to lend or advance any additional funds to the Debtors, or provide other financial accommodations to the Debtors upon or after the occurrence of an Event of Default.

27.    Collateral Rights. Until all of the Obligations shall have been indefeasibly paid and satisfied in full in immediately available funds and without further order of the Court:

(a)    In the event that any party who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the DIP Lender in such Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, such Collateral proceeds in trust for the DIP Lender and shall immediately turnover to the DIP Lender such proceeds for application to the Obligations in accordance with the DIP Facility Documents and/or this Interim Order;

(b)    Upon the acceleration of the Obligations following an Event of Default, and subject to the DIP Lender providing the notice required by this Interim Order, in connection with a liquidation of any of the Collateral, the DIP Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the cost and expense of the Debtors to be added to the Obligations, to: (i) enter upon, occupy and use any personal property, fixtures and equipment owned or leased by the Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. If the DIP Lender exercises any remedies provided for in this paragraph, the DIP Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the DIP Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Lender actually occupies or uses such assets or properties); and

(c)    Upon the acceleration of the Obligations following an Event of Default, and subject to the DIP Lender providing the notice required by this Interim Order, as well as three (3) business days notice to any Debtor's real property lessor of the DIP Lender's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, the DIP Lender shall have the right, following the expiration of such three (3) business days notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral from the leased premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements with

30

such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of the DIP Lender provided for herein.  Subject to the following sentence, the Debtors shall remain obligated to perform any obligation and to pay any rent and additional rent due under the terms of their leases at all times, including during the period commencing upon the DIP Lender obtaining the right to enter the Debtors' leased premises in accordance with this paragraph.  Nothing herein shall require the DIP Lender to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

28.    <u>Reservation of Rights</u>.  Entry of this Interim Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action the DIP Lender may have against third parties, and shall not prejudice the rights of the DIP Lender from and after the entry of this Interim Order to seek any other relief in the Debtors' Chapter 11 cases.  Entry of this Interim Order shall not in any way constitute:  (a) a preclusion or a waiver of any right of the DIP Lender to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for other relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Interim Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to the DIP Lender, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by the DIP Lender; or (d) a preclusion, waiver or modification of any rights or remedies that the DIP Lender have against any other person or entity.

29.    <u>Restrictions on Additional Use of Cash Collateral, Additional Financing</u>.  All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Facility Documents are made in reliance on this Interim Order and in the event that

an order is entered at any time in the Debtors' Chapter 11 cases or in any subsequently converted

case under Chapter 7 of the Bankruptcy Code (other than the Final Order) which (a) authorizes

the use of cash collateral of the Debtors in which the DIP Lender has an interest or the sale,

lease, or other disposition of property of the Debtors' estates in which the DIP Lender has a lien

or security interest, except as expressly permitted hereunder or in the DIP Facility Documents, or

(b) authorizes under Bankruptcy Code § 364 the obtaining of credit or the incurring of

indebtedness secured by a lien or security interest which is equal or senior to a lien or security

interest in property in which the DIP Lender holds a lien or security interest, or which is entitled

to priority administrative claim status which is equal or superior to that granted to the DIP

Lender herein; then, in each instance described in clauses (a) and (b) of this paragraph, (i) the

DIP Lender as is required by the DIP Credit Agreement shall first have given their express prior

written consent thereto, no such consent being implied from any other action, inaction or

acquiescence by such the DIP Lender, or (ii) such other order shall require that all Obligations

first shall be indefeasibly paid in full in immediately available funds.  The liens and security

interests granted to or for the benefit of the DIP Lender hereunder and the rights of the DIP

Lender pursuant to this Interim Order and the DIP Facility Documents with respect to the

Obligations and the Collateral are cumulative and shall not be altered, modified, extended,

impaired, or affected by any plan of reorganization of the Debtors and, the DIP Lender shall

expressly consent in writing that the Obligations shall not be repaid in full upon confirmation

and effectiveness thereof, shall continue after confirmation and effectiveness of any such plan.

30.     Limitation of Liability.  Nothing in this Interim Order or the DIP Facility

Documents shall in any way be construed or interpreted to impose, or allow the imposition upon

the DIP Lender of, any liability for any claims arising from the prepetition or postpetition

activities by the Debtors in the operation of its business or in connection with its restructuring efforts.

31.    <u>No Modification or Stay of Interim Order</u>.  If any or all of the provisions of this Interim Order or the DIP Facility Agreement are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Lender prior to the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the DIP Facility Documents, as applicable.  Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by the Debtors to the DIP Lender prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order; and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities.  The indebtedness, obligations and/or liabilities of the Debtors to the DIP Lender under this Interim Order and/or the DIP Facility Documents shall not be discharged by the entry of an order confirming a plan of reorganization in the Debtors' bankruptcy cases pursuant to Bankruptcy Code § 1141(d)(4) or otherwise, unless and until all indebtedness, obligations and liabilities of the Debtors to the DIP Lender are indefeasibly paid in full in accordance with the terms and conditions of the DIP Facility Documents prior to or concurrently with the entry of such order. No indebtedness, obligation or liability owed by the Debtors to the DIP Lender under this Interim Order or the DIP Facility Documents, prior to the effective date of any modification, vacation or stay of this Interim Order can, as a result of any subsequent order in these Chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or super-priority

administrative claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Interim Order and/or the DIP Facility Documents.

32.    <u>Good Faith</u>.  The terms of the financing arrangements among the Debtors and the DIP Lender have been negotiated in good faith and at arms' length among the Debtors and the DIP Lender and any loans, advances or other financial accommodations which are made or caused to be made to the Debtors by the DIP Lender pursuant to the DIP Facility Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Bankruptcy Code § 364(e), and shall be entitled to the full protection of Bankruptcy Code § 364(e) in the event that this Interim Order or the DIP Facility Documents or any provisions are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Lender.

33.    <u>Final Hearing and Objection Date</u>.  This matter is set for a Final Hearing at 3:00 p.m. on November 30, 2007, in the United States Bankruptcy Court for the District of Delaware.  The Debtors shall promptly mail copies of this Interim Order to (a) the Interim Notice Parties, (ii) all parties who filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, (iii) counsel to be selected by the Creditors' Committee upon its formation if selected by such date, (iv)  the taxing authorities to which the Debtors pay taxes; and (v) those other creditors known to the Debtors who may have liens upon or perfected security interests in any of the Debtors' assets and properties.  Objections to the entry of the Final Order shall be in writing and shall be filed with the Clerk of this Court, on or before November 23, 2007, at 4:00 p .m., with a copy served upon: (i) counsel for the Debtors, DLA Piper US LLP, 1251 Avenue of the Americas, New York, NY  10020, Attn: Thomas R. Califano and The Bayard Firm, 222 Delaware Avenue, Suite 900, P.O. Box 25130, Wilmington,

34

DE 19899, Attn: Neil B. Glassman; (ii) counsel for Adeptio, Kirkland & Ellis, LLP, 200 E.

Randolph Dr., Chicago, IL 60601, Attn: David Agay, Anup Sathy and John Schoenfeld, and

Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 W. Street, 17th Floor,

Wilmington, DE 19801, Attn: Robert S. Brady; (iii) counsel to be selected by the Creditors'

Committee upon its formation if selected by such date; and (iv) the U.S. Trustee.  Any objections

by creditors or any other party-in-interest to the Motion or any of the provisions of the

postpetition financing and cash collateral arrangements among the Debtors and the DIP Lender

shall be deemed waived unless filed and received in accordance with the foregoing on or before

the close of business on such date.  In the event this Court modifies any of the provisions of this

Interim Order and the DIP Facility Documents following such Final Hearing, such modifications

shall not affect the rights and priorities of the DIP Lender pursuant to this Interim Order with

respect to the Collateral and any portion of the Obligations which arises, or is incurred or is

advanced prior to such modifications (or otherwise arising prior to such modifications), and this

Interim Order shall remain in full force and effect except as specifically modified pursuant to

such Final Hearing.

      34.    <u>Conflicting Provisions</u>.  Unless otherwise provided in this Interim Order, to the

extent the terms and conditions of the DIP Facility Documents are in conflict with the terms and

conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

35.    <u>Effectiveness</u>.  Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Interim Order shall (a) be immediately enforceable, and (b) not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the DIP Lender.


Dated: Wilmington, Delaware
November 9, 2007


_____
Kevin Gross
United States Bankruptcy Judge