# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
| Debtors. | : | (Jointly Administered) |

**APPLICATION FOR ORDER PURSUANT TO 11 U. S. C. § 327 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING DEBTORS IN POSSESSION TO RETAIN DLA PIPER US LLP AS COUNSEL TO THE DEBTORS IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE**

InPhonic, Inc. et al., the above-captioned debtors and debtors in possession (the "Debtors"), as and for their application (the "Application") for an order pursuant to section 327 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to retain and employ DLA Piper US LLP ("DLA Piper" or the "Firm") as its bankruptcy counsel. In support of the Application, the Debtors rely on the Affidavit of Thomas R. Califano, sworn to on November 8, 2007 (the "Califano Affidavit"), filed contemporaneously herewith. In further support of the Application, the Debtors respectfully represent:

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

Jurisdiction and Venue

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicate for the relief requested in the Application is section 327 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016 and 5002, and Local Rule of Bankruptcy Procedure 9010-1(a).

Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Declaration of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and is incorporated herein by reference.[2]

4. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

6. Through this bankruptcy filing, the Debtors seek to preserve their assets and maximize the return for their creditors.

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

The Debtors' Business Operations

7.     InPhonic was incorporated in 1997 and began operations in 1999.  InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services.  InPhonic focuses in four (4) areas:  (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("MVNE") services, and (iv) unified communication services.

8.     InPhonic is a leading internet (online) seller of wireless services and devices to consumers.  InPhonic sells these services and devices through company owned and branded websites, including without limitation www.wirefly.com, as well as through a variety of private labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

9.     InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

10.     InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

11.     CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite.  Through VMC Satellite, InPhonic markets consumers

digital broadcast satellite television, broadband and VOIP services. VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

12.     InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers without having to own or operate the underlying wireless network or operational infrastructure. InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

13.     InPhonic developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee. Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer. The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

14.     InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations. InPhonic has agreements with the largest wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services. The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

15. All of the Debtors are headquartered in Washington, D.C. The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

Relief Requested

16. Section 327(a) of the Bankruptcy Code provides, in relevant part, "[e]xcept as otherwise provided in this section, the trustee may employ one or more attorneys. . . that do not hold an interest adverse to the estate, and that are disinterested persons, to assist the Trustee in carrying out the trustee's duties under this title."

17. It is necessary for the Debtors to retain and employ bankruptcy counsel under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 to represent them in connection with the following non-exclusive matters:

a. advising management concerning their fiduciary obligations to the estates, the creditors and the Court;

b. assisting regarding the administration of these Chapter 11 cases, including prosecution of motions and adversary proceedings, defense of actions commenced against the Debtors, commencement and prosecution of objections to claims, representation in the claims reconciliation process and counseling regarding the preparation of schedules, statements and operating reports;

c. assisting in the formulation, negotiation and confirmation of a Chapter 11 plan of reorganization and related disclosure statement; and

d. rendering such other legal services as may be requested by management and as may be required in furtherance of these Chapter 11 cases.

18. The attorneys at DLA Piper who will render bankruptcy-related services to the Debtors have considerable experience in reorganization matters and are capable of rendering the services required. Members of the Firm's bankruptcy department are recognized as highly competent practitioners in the reorganization field and have represented debtors, official and unofficial committees and other parties in interest in major Chapter 11 cases.

Disinterestedness of Professionals

19.     To the best of Debtors' knowledge, DLA Piper (a) has no connection with any of the Debtors' creditors, any other party in interest, any of their respective attorneys or accountants, the United States Trustee for the District of Delaware or any employee of the United States Trustee, or any judge in the Bankruptcy Court or the United States District Court for the District of Delaware or any person employed in the offices of same; (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and (c) does not hold or represent any interest adverse to the estates.

20.     As set forth in the Califano Affidavit, DLA Piper has in the past represented, currently represents and likely in the future will represent certain parties in interest in these cases in matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such entities' claims against or interests in the Debtors.

21.     The Debtors understand that except as otherwise set forth in the Califano Affidavit:

     a.     Neither DLA Piper nor any attorney at the Firm holds or represents an interest adverse to the Debtors' estates.

     b.     Neither DLA Piper nor any attorney at the Firm is or was a creditor or an insider of the Debtors.

     c.     Neither DLA Piper nor any attorney at the Firm is or was, within two years prior to the Petition Date, a director, officer or employee of the Debtors.

     d.     DLA Piper does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker or for any other reason.

22. In view of the foregoing, the Debtors believe that DLA Piper is a "disinterested person" within the meaning of the Bankruptcy Code section 101(14).

23. DLA Piper has informed the Debtors that throughout these cases, DLA Piper will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in these cases and that it will promptly update this Application and disclose any material developments regarding the Debtors or any other pertinent relationships that come to DLA Piper's attention by way of a supplemental Affidavit.

Professional Compensation

24. DLA Piper has been primary outside corporate counsel for InPhonic beginning with InPhonic's initial public offering in 2004. DLA Piper's work has primarily been focused on general corporate and Securities and Exchange Committee ("SEC") reporting-related matters. DLA Piper also has had more limited engagements on a variety of other matters. DLA Piper did not, however, advise InPhonic with respect to its major credit agreements or most of its acquisitions as those matters were handled by other firms. Upon being retained by the Debtors with respect to restructuring matters, DLA Piper has agreed to waive all outstanding fees and expenses owed by the Debtors as of the Petition Date.

25. With respect to restructuring matters, the Debtors initially paid DLA Piper the amount of $250,000 to be held as a retainer for professional fees and expenses expected to be incurred by DLA Piper in its representation of the Debtors.

26. DLA Piper will bill for services rendered at its regular hourly rates and will bill for expenses. Compensation and reimbursement of expenses to DLA Piper will be fixed upon

application to the Court pursuant to sections 330 and 331 of the Bankruptcy Code and the Local Rules of the Court.

27.    Given the Debtors' needs, DLA Piper anticipates being asked to render legal services to the Debtors from and after the Petition Date until the time this Court may be in position to consider this Application.  The Debtors request that the retention of DLA Piper be made effective nunc pro tunc to the Petition Date.

28.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis.  See 11 U.S.C. § 328(a).  Subject to this Court's approval and in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the rules and other procedures that may be fixed by this Court, the Debtors request that DLA Piper be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses DLA Piper incurs, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.  Expenses to be reimbursed include, but are not limited to, photocopies, word processing, courier service, computer assisted research, docket and court filing fees, telecommunications, travel, court reporting charges and any other incidental costs advanced by the firm specifically for these matters, at the rates commonly charged for such costs to other DLA Piper clients.  In addition, DLA Piper has advised the Debtors that it intends to seek compensation for all time and expenses associated with its retention as a professional, including the preparation of this Application, the Califano Affidavit, and related documents, as well as time spent in preparing any monthly fee statements or interim or final fee applications.

29.    DLA Piper has advised the Debtors that the current standard hourly rates applicable to the principal attorneys and paralegals proposed to represent the Debtors are:

| Professional | Rate Per Hour |
|---|---|
| Mark J. Friedman (partner) | $600 |
| Thomas R. Califano (partner) | $720 |
| Maria Ellena Chavez-Ruark (partner) | $485 |
| Jason Hardman (associate) | $420 |
| Ashleigh Blaylock (associate) | $330 |
| William Countryman (paralegal) | $195 |

30.     Other attorneys and paralegals at DLA Piper will render services to the Debtors as needed. To the fullest extent possible, lawyers having the requisite expertise who already have knowledge with respect to these areas and/or the matter involved will be assigned to these cases so that duplication of efforts is avoided. The hourly rates of the other DLA Piper partners, associates and paralegals that hereafter act for the Debtors may be higher or lower than those of the persons presently assigned to this matter. The hourly rates may be adjusted from time to time to reflect firmwide changes in rates.

31.     The Debtors understand that the hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

32.     Other than as set forth above, there is no proposed arrangement to compensate DLA Piper in connection with its representation of the Debtors.

33.     The Debtors are also seeking to employ The Bayard Firm ("Bayard") as local counsel in these Chapter 11 cases. DLA Piper and Bayard will make every effort to avoid duplication of services and unnecessary expense to the bankruptcy estates.

34.     The Debtors submit that the engagement and retention of DLA Piper on the terms and conditions set forth herein is necessary and in the best interests of the Debtors, their estates, and their creditors and should be approved.

Statement Pursuant to Local Rule 1001-1(b)

35. Pursuant to District Court Local Rule 7.1.2(a), incorporated by reference into Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Application.

Notice

36. Notice of this Motion has been provided to (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel to Adeptio INPC Funding, LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay); and (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis. In addition, because this Motion seeks "first day" relief, notice of this Motion and any order entered respecting this Motion will be served as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

No Prior Request

37. The Debtors have not filed a prior motion seeking the relief requested herein in this Court or any other court.

Conclusion

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto (a) granting the relief requested herein and (b) granting such other and further relief as may be deemed just and proper.

Dated: November 8, 2007
Washington, D.C.

**InPhonic, Inc., et al.**

By: /s/ Kenneth D. Schwarz
Kenneth D. Schwarz
Chief Financial Officer

**EXHIBIT A**
**AFFIDAVIT OF THOMAS R. CALIFANO**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666(KG) |
| Debtors. | : | (Jointly Administered) |

**AFFIDAVIT OF THOMAS R. CALIFANO IN SUPPORT OF APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. § 327 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING DEBTORS IN POSSESSION TO RETAIN DLA PIPER US LLP AS COUNSEL TO THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE**

STATE OF NEW YORK )
) SS:
COUNTY OF NEW YORK )

THOMAS R. CALIFANO being duly sworn, deposes and says:

1. I am a partner of DLA Piper US LLP ("DLA Piper"), which maintains an office for the practice of law at 1251 Avenue of the Americas, New York, NY 10020-1104. I am an attorney-at-law, duly admitted and in good standing to practice in the State of New York as well as the United States District Courts for the Southern and Eastern Districts of New York. I submit this Affidavit in connection with the application (the "Application") of the debtors and debtors in possession in the above-captioned cases (the "Debtors") to retain DLA Piper as counsel to the Debtors in their Chapter 11 cases nunc pro tunc to the Petition Date and to provide the disclosures required under Section 329 of Title 11 of the United States Code (the "Bankruptcy

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

Code"), the rules of this Court, and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. The attorneys at DLA Piper who will render bankruptcy related services to the Debtors have considerable experience in reorganization matters and are capable of rendering the services required. Members of the Firm's bankruptcy department are recognized as highly competent practitioners in the reorganization field and have represented debtors, official and unofficial committees and other parties in interest in major Chapter 11 cases.

Services to be Rendered by DLA Piper

3. The Debtors have requested that DLA Piper render various services to the Debtors including, inter alia:

a. advising the Debtors with respect to their powers and duties as debtors and debtors in possession in the continued management and operation of their businesses and properties;

b. attending meetings and negotiating with representatives of creditors and other parties in interest and advising and consulting on the conduct of the cases, including all of the legal and administrative requirements of operating in chapter 11;

c. taking all necessary action to protect and preserve the Debtors' estates, including prosecution of actions on their behalf, the defense of any actions commenced against those estates, negotiations concerning litigation in which the Debtors may be involved and objections to claims filed against the estates;

d. preparing, on behalf of the Debtors, motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

e. preparing and negotiating on the Debtors' behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents and taking any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

f. advising the Debtors in connection with any sale of assets;

g. performing other necessary legal services and providing other necessary legal advice to the Debtors in connection with these chapter 11 cases; and

h. appearing before this Court, any appellate courts and the United States Trustee, and protecting the interests of the Debtors' estates before such courts and the United States Trustee.

4. DLA Piper understands that the Debtors are planning on filing retention applications for other professionals in these cases and has informed the Debtors that it will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in these cases.

DLA Piper's Connections with the Debtors

5. DLA Piper utilizes a number of procedures (the "Firm Procedures") to determine its relationships, if any, to parties that may have connections to a client debtor. In implementing such Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors and DLA Piper's relationship with such parties:

a. Upon and since its retention, DLA Piper requested and obtained from the Debtors extensive (but not necessarily comprehensive) lists of interested parties and significant creditors (the "Potential Parties in Interest").[2] The list of Potential Parties in Interest provided by the Debtors is attached hereto as Schedule 1. The Potential Parties in Interest include, among others, the Debtors and their members.[3]

---

[2] The list of Potential Parties in Interest may be updated during these cases; and, if appropriate, DLA Piper will update its disclosures accordingly. Further, DLA Piper continues to review the relationships its attorneys may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist. As may be necessary, DLA Piper will supplement this Affidavit if there is a relationship that may adversely affect DLA Piper's retention in these cases or otherwise should be disclosed under applicable law. DLA Piper also will update this disclosure if it is advised of any trading of claims against or interests in the Debtor that may relate to DLA Piper's retention or otherwise requires such disclosure.

[3] In reviewing its records and the relationships of its attorneys, DLA Piper did not seek information as to whether any DLA Piper attorney or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain DLA Piper partners have invested but as to which such partners have no control over or knowledge of investment decisions, securities of the Debtor or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any such relationship does exist, I do not believe it would impact upon DLA Piper's disinterestedness or otherwise give rise to a finding that DLA Piper holds or represents an interest adverse to the Debtors' estates.

      b. DLA Piper then compared each of the Potential Parties in Interest to the names in its master electronic database of current and former clients (the "Client Database"). The Client Database generally includes the name of each client of the firm, the name of each party who is or was known to be adverse to such client of the firm, the name of each party that has or had a substantial role with regard to the subject matter of DLA Piper's retention, and the names of the DLA Piper attorneys who are or were primarily responsible for matters for such clients.

c. Known connections between former or current clients of DLA Piper and the Potential Parties in Interest were compiled for purposes of preparing this Affidavit.

6. As a result of the Firm Procedures, I have thus far ascertained that, upon information and belief, if retained, DLA Piper:

a. is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services),[4] an equity security holder of the Debtors or an "insider" of the Debtors, as the term "insider" is defined in Section 101(31) of the Bankruptcy Code;

b. is not and has not been, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

c. does not have an interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason.

Accordingly, I believe DLA Piper is a "disinterested person" as that term is defined in Section 101(14), as modified by Section 1107(b), of the Bankruptcy Code.

7. Additionally, as a result of the Firm Procedures, I have thus far ascertained that, upon information and belief, DLA Piper has the following connections with certain of the Potential Parties in Interest:

a. Because of its broad-based general practice, DLA Piper: (i) has appeared in the past and may appear in the future in cases

[4] See paragraph 15 below.

      unrelated to these cases where one or more of the Potential Parties in Interest may be involved; and (ii) has represented in the past, currently represents and/or may represent in the future one or more of said parties or other potentially interested parties or creditors in matters unrelated to the Debtors and these Chapter 11 cases.

b. DLA Piper has in the past represented or may currently represent the Potential Parties in Interest or their affiliates listed on **Schedule 2** hereto[5] in matters unrelated to the Debtors and these cases. DLA Piper may represent such entities in the future in matters unrelated to the Debtors and these cases. The Potential Parties in Interest or their affiliates listed on Schedule 2 represents a de minimis amount of DLA Piper's revenues generated during 2006 and 2007.

c. Certain of my fellow partners of DLA Piper and certain associates of and "of counsel" attorneys to DLA Piper and certain of such persons' relatives may have familial or personal relationships, as well as business, contractual, or economic relationships, with officers, directors and/or shareholders or creditors of the Debtors, competitors of the Debtors and/or other parties in interest in these cases. I have not been able to identify any such relationships and, therefore, I do not believe these familial or personal relationships, considered separately or collectively, are material.

d. Certain of my fellow partners of DLA Piper and certain of the associates of and "of counsel" attorneys to DLA Piper and certain of such persons' relatives may directly or indirectly be shareholders of creditors of the Debtors, competitors of the Debtors and/or other parties in interest. Based on the information provided to me, I believe any such holdings are insignificant and, insofar as I have been able to ascertain, none of these shareholders controls or has any influence on such creditor or party in interest. I do not believe these shareholders' interests, considered separately or collectively, are material.

8. I believe that none of the representations or relationships recited above would give rise to a finding that DLA Piper represents or holds an interest adverse to the Debtors with respect to the services for which the Debtors seek to retain DLA Piper in these cases.

---

[5] In certain instances the precise identity of the parties in interest was not readily ascertainable (*e.g.*, only the trade name or a portion thereof was known). For purposes of this Affidavit only, such party in interest was treated as including affiliates and/or other entities bearing a similar name unless such party was believed by DLA Piper to be unrelated.

9. DLA Piper has reviewed the relationships that its partners and employees have with the United States Trustee for the District of Delaware (the "United States Trustee") and those persons employed in the office of the United States Trustee, and I do not believe that DLA Piper has any material connections with the United States Trustee or any person employed in the office of the United States Trustee.

10. It is my understanding that the Debtors have filed or will also file an application to retain The Bayard Firm ("Bayard") as its Delaware co-counsel. In the unlikely event any matter were, in the future, to give rise to a potential conflict with respect to matters that otherwise would have been handled by DLA Piper, Bayard or another firm will handle such matters and DLA Piper will not be involved.

11. DLA Piper will continue to comply with its ongoing duty under Bankruptcy Code section 328 to notify this Court if any actual conflict arises, and if necessary, arrange for an "ethical wall" with respect to the DLA Piper attorney who worked on the matter.

DLA Piper's Compensation

12. Subject to this Court's approval in accordance with Sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules as may be applicable, the Local Rules and such other procedures as may be fixed by order of this Court, compensation will be payable to DLA Piper on an hourly basis, plus reimbursement of actual and necessary expenses incurred by DLA Piper. The DLA Piper attorneys that are likely to represent the Debtors in these cases have current standard hourly rates ranging between $330 and $720. The paralegal that likely will assist the attorneys who will represent the Debtors has a current standard hourly rate of $195. These rates are subject to periodic adjustments.

13. The hourly rates that will be charged in these cases are DLA Piper's standard hourly rates. These rates are set at a level designed to fairly compensate DLA Piper for the work

of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is DLA Piper's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case or cases. The expenses charged to clients include, among other things, telephone and telecopier toll charges, mail and express mail charges, special or hand delivery charges, document processing and photocopying charges, travel expenses, expenses for "working meals" and computerized research and transcription costs. DLA Piper believes that it is appropriate to charge these expenses to the clients incurring them rather than to increase its hourly rates and thereby spread the expenses among all clients.

14. This Affidavit is intended to comply with Bankruptcy Rule 2016(b). DLA Piper intends to apply to this Court for compensation for professional services rendered in connection with these cases in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Court, Local Bankruptcy Rules, and the administrative and other orders entered by this Court.

15. In the 90 days prior to the Petition Date, DLA Piper received a retainer of $250,000 and applied a portion of the retainer to amounts due to DLA Piper for services rendered immediately prior to the commencement of the cases in connection with the preparation of filing these cases. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in DLA Piper's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors. If any amounts, after application of all invoices, are owed to DLA Piper as of the Petition Date, DLA Piper will waive any claim relating thereto upon entry of a final order approving DLA Piper's engagement herein.

16. No promises have been received by DLA Piper or by any partner or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

17. DLA Piper further states that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel and associates of DLA Piper or (b) any compensation another person or party has received or may receive.

18. By reason of the foregoing, I believe DLA Piper is eligible for employment and retention by the Debtors pursuant to Section 327(a) (as modified by Section 1107(b)) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Dated: New York, New York
November 8, 2007

Thomas R. Califano
DLA Piper US LLP

Sworn to before me this 8th day of November, 2007

/s/ Vanessa Torres
Notary Public
My Commission Expires: 11/15/08

VANESSA TORRES
Notary Public, State of New York
No. 01TO6118723
Qualified In New York County
Commission Expires November 15, 2008

NEWY1\8165641.1 <dcode >

**Schedule 1**

InPhonic, Inc.'s Top Twenty Creditors

Alltel Communications Products
American Premier Corporation
AOL
Brightpoint - Nextel
Chadbourne and Parke LLP
Cingular Wireless
Expert Serv, Inc
Federal Express
Google, Inc
Helgeson Enterprises
MSN (Microsoft Corp)
Next Jump, Inc.
Patton Boggs LLP
Spanco Telesystems & Solutions, LTD
Sprint PCS
TMI WIRELESS
T-Mobile
Verizon Wireless
Yahoo! Inc.
Yahoo!, Search Marketing Overture

VMC Satellite's Top Twenty Creditors

Yellow Page Authority
Randall Van Dyke & Associates
OKS-Ameridial
5Linx Enterprises, Inc.
Traypml
Internap Network Services
Cavalier Business Communications
BlackMesh Inc.
Lightyear Network Solutions, LLC
Dennis Shepard
mForce, Inc.
Quixtar
Allied Incentives
Cognigen Networks, Inc.
Search Cactus, LLC
Strategic Promotions, Inc.
Entertainment Publications, Inc.
Colvin Run Partners, LLC
Escape International
QUILL

Equity Holders of 5% or Greater

David A. Steinberg
FMR Corporation
MSD Capital, LP
S.A.C. Capital Advisors, LLC
The Goldman Sachs Group, Inc.
Trafelet & Company, LLC
Vardon Capital, LLC

Former Lenders

AP InPhonic Holdings, LLC
Citicorp North America, Inc.
Goldman Sachs Credit Partners, L.P.

Current Lender

Versa Capital Management, Inc. (f/k/a Chrysalis Capital Partners)

## SCHEDULE 2[1]

**Equity Security Holders:[2]**

1.  FMR Corporation is an equity security holder of the Debtors and is related to both Sears and Kmart who are clients of the Firm.

2.  Trafelet & Company is a client of the Firm in the United Kingdom and is an equity security holder of the Debtors.

**Carrier Partners of the Debtors:**

1.  T-Mobile is a client of the Firm and is a carrier partner of the Debtors.

2.  Cingular Wireless is a client of the Firm and is a carrier partner of the Debtors.

3.  Verizon is a client of the Firm and Verizon Wireless is a carrier partner of the Debtors.

4.  Alltel Corporation is a client of the Firm and is a carrier partner of the Debtors.

**Marketing Partners of the Debtors:**

1.  Bar Yahoo Limited is a client of the Firm in the United Kingdom, Yahoo is one of the Debtors' top three marketing partners.

2.  Google, Inc. is a client of the Firm and is one of the Debtors' top three marketing partners.

3.  AOL, Inc. is a client of the Firm and is one of the Debtors' marketing partners.

**Top 20 Creditors of InPhonic:**

1.  Sprint/Nextel is a client of the Firm and Brightpoint, Nextel is one of the Debtors' twenty largest creditors.

2.  Sprint/Nextel is a client of the Firm and Sprint PCS is one of the Debtors' twenty largest creditors.

3.  Verizon is a client of the Firm and Verizon Wireless is one of the Debtors' twenty largest creditors.

---

[1] In certain instances, the precise identity of the potential party in interest was not readily ascertainable (e.g., only the trade name or a portion thereof was known). In these circumstances, DLA Piper has assumed, for purposes of this schedule only, that such potential party in interest includes all affiliates bearing a similar name unless such party was believed by DLA Piper to be unrelated. The stated relationship to the Debtor is based upon information and belief.

[2] Each of the equity security holders who are clients of the Firm owns approximately five percent (5%) of InPhonic's equity.

4.    Patton Boggs, LLP is a client of the Firm, on a matter inactive since 2002. Patton Boggs, LLP is one of the Debtors' twenty largest creditors.

5.    Chadbourne and Park LLP is a client of the Firm in the United Kingdom and is one of the Debtors' twenty largest creditors.

6.    TMI Nominees Ltd is related to Bank of Tokyo Mitsubishi which is a client of the Firm on a matter inactive since 2006. TMI Wireless is one of the Debtors' twenty largest creditors.

7.    TMI Nominees Ltd also is related to John Burnham & Company which is a client of the Firm on a matter inactive since 2006. TMI Wireless is one of the Debtors' twenty largest creditors.

8.    TMI Communications is related to TerreStar Networks, Inc. and TerreStar Corporation which are clients of the Firm. TMI Wireless is one of the Debtors' twenty largest creditors.

9.    TMI International BV is related to CBS Outdoor, Inc. which is a client of the Firm. TMI Wireless is one of the Debtors' twenty largest creditors.


**Top 20 Creditors of VMC Satellite:**

1.    Yellow Page Authority is related to SBC Smart Yellow Pages, SNET Yellow Pages and Southwestern Yellow Pages which are clients of the firm. Yellow Page Authority is one of VMC Satellite's twenty largest creditors.

2.    Internap Network Services Corp is related to Charter Holdings, Inc. and Vitalstream Broadcasting Corporation which are clients of the firm. Internap Network Services Corp. is one of VMC Satellite's twenty largest creditors.

3.    Lightyear Network Solutions, LLC is related to Northern Trust Bank of California which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

4.    Lightyear Network Solutions, LLC is related to Light Year Australia Pty Ltd which is related to Carlson Restaurants Worldwide, Inc. which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

5.    Lightyear Network Solutions, LLC is related to Light Year Australia Pty Ltd which is related to Carlson Travel Network Associates, Inc. which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

6.    Lightyear Network Solutions, LLC is related to Light Year Australia Pty Ltd which is related to Carlson Hotels Worldwide which is a client of the firm. Lightyear Network Solutions, LLC is one of VMC Satellite's twenty largest creditors.

7. Quixtar, Inc. is a subsidiary of Alticor, Inc. which is a client of the firm. Quixtar, Inc. is one of VMC Satellite's twenty largest creditors.

8. Entertainment Publications, Inc. is related to Expedia, Inc. which is a client of the firm. Entertainment Publications, Inc. is one of VMC Satellite's twenty largest creditors.

9. QUILL is related to Quill Communications, Inc. which is related to Wirestone, LLC which is a client of the firm. QUILL is one of VMC Satellite's twenty largest creditors.

10. QUILL is related to Quill Corporation which is subsidiary of Staples, Inc. which is a client of the firm. QUILL is one of VMC Satellite's twenty largest creditors.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-__________ |
| Debtors. | : | (Jointly Administered) |

**STATEMENT OF DLA PIPER US LLP UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016, LOCAL RULE 2016-1 AND 11 U.S.C. §329**

1. DLA Piper US LLP ("DLA Piper"), pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and Section 329 of Title 11 of the United States Code (the "Bankruptcy Code"), states that the undersigned is counsel for the debtors and debtors in possession in the above-captioned case (the "Debtors").

2. Compensation agreed to be paid by the Debtors to DLA Piper is for legal services rendered in connection with these Chapter 11 cases, including, without limitation, bankruptcy, tax, real estate, corporate finance, and litigation services relating to the Debtors' reorganization. The Debtors have agreed to pay DLA Piper for legal services to be rendered by its various attorneys, law clerks, paralegals and legal assistants in connection with these Chapter 11 cases on

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

the Debtors' behalf. The Debtors also have agreed to reimburse DLA Piper for its actual and necessary expenses incurred in connection with these Chapter 11 cases.

3. The Debtors paid DLA Piper a total of $250,000 as a retainer. DLA Piper applied a portion of this retainer for services rendered immediately prior to the commencement of the cases in connection with the preparation of filing these cases. A precise disclosure of the amounts applied and the balance, if any, being held as a retainer, or the amount of fees and expenses being waived, will be provided in DLA Piper's first interim fee application filed with this Court.

4. DLA Piper will seek approval of payment of compensation upon DLA Piper's appropriate applications for allowance of interim or final compensation pursuant to Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and Orders of this Court.

5. The entire filing fee in these cases has been paid from the aforementioned retainer.

6. The services to be rendered include all those services set forth in the Debtors' application to employ DLA Piper filed simultaneously herewith.

7. No promises have been received by DLA Piper or by any member or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. DLA Piper has no agreement with any other entity to share with such entity any compensation received by DLA Piper.

Dated: New York, New York
November 8, 2007

Thomas R. Califano
DLA Piper US LLP

Sworn to before me this 8th day of November, 2007

/s/ [signature]
Notary Public
My Commission Expires: 11/15/08

VANESSA TORRES
Notary Public, State of New York
No. 01TO6118723
Qualified in New York County
Commission Expires November 15, 2008

**EXHIBIT B**
**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
| Debtors. | : | (Jointly Administered) |

**ORDER AUTHORIZING RETENTION OF DLA PIPER US LLP
AS COUNSEL TO DEBTORS AND DEBTORS IN POSSESSION
NUNC PRO TUNC TO THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for an order, pursuant to sections 327(a), 330, 331, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the Debtors to retain the firm of DLA Piper US LLP ("DLA Piper") as bankruptcy counsel in their chapter 11 cases as of the commencement of these cases (the "Petition Date"); and upon the Affidavit of Thomas R. Califano in Support of Application to Employ and Retain DLA Piper US LLP as Counsel to Debtors and Debtors in Possession, annexed to the Application as Exhibit A; and due and adequate notice of the Application having been given; and it appearing that no other or further notice need be provided; and the Court being satisfied that DLA Piper is a "disinterested person" as such term is defined under section 101(14), as modified by section 1107(b), of the Bankruptcy Code; and it appearing that no other or further notice need

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

be provided; and it appearing that the relief requested by this Application is in the best interest of these estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1. The Application is granted to the extent set forth herein.

2. Pursuant to sections 327(a) and 1107(b) of the Bankruptcy Code, the Debtors hereby are authorized to retain DLA Piper as their attorneys under a general retainer in these chapter 11 cases effective as of the Petition Date, and DLA Piper is authorized to perform the services set forth in the Application.

3. Debtors' retention of DLA Piper is hereby approved effective nunc pro tunc to the Petition Date, as defined in the Application.

4. DLA Piper shall be compensated in accordance with procedures set forth in sections 330 and 331 of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the Local Rules, and such other procedures as may be fixed by Order of this Court.

5. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: November _____, 2007
Wilmington, Delaware

_______________________________
UNITED STATES BANKRUPTCY JUDGE