IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INPHONIC, INC., et al.,[1] | Cases No. 07-11666 (KG) |
| | Jointly Administered |
| Debtors. | |
| | Hearing Date: December 13, 2007 at 10:00 a.m. |
| | Objection Deadline: December 6, 2007 at 4:00 p.m. |

**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(a)
FOR AUTHORITY TO EMPLOY AND RETAIN THE BAYARD FIRM AS CO-
COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors"), hereby apply (the "Application") pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authority to employ and retain The Bayard Firm, P.A. ("Bayard") as co-counsel for the Debtors *nunc pro tunc* to the Petition Date (defined herein). In support of the Application, the Debtors rely on the Declaration of Neil B. Glassman (the "Glassman Declaration") filed in support of this Application, and respectfully represent as follows:

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

### Jurisdiction and Venue

1.  The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  The statutory predicates for the relief requested in the Application are section 327 of the Bankruptcy Code and Rules 2014, 2016 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule Procedure 9010-1(a) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### Background

3.  On November 8, 2007 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the *Declaration of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Schwarz Affidavit"), and is incorporated herein by reference.[2]

4.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On November 16, 2007, the official committee of unsecured creditors was appointed in the Debtors' chapter 11 cases.

---

[2] Capitalized terms shall have the meanings ascribed to them in the Schwarz Affidavit unless otherwise defined herein.

675161-1

2

## The Debtors' Business Operations

6. InPhonic was incorporated in 1997 and began operations in 1999. InPhonic's business principally involves the marketing of wireless telephone and satellite television services and related equipment and support services. InPhonic focuses in four (4) areas: (i) wireless device activation services, (ii) television satellite activation services, (iii) mobile virtual network enabler ("MVNE") services, and (iv) unified communication services.

7. InPhonic is a leading internet (online) seller of wireless services and devices to consumers. InPhonic sells these services and devices through company owned and branded websites, including without limitation www.wirefly.com, as well as through a variety of private labeled websites that it develops and manages for marketing partners such as internet businesses, affinity organizations and national retailers.

8. InPhonic markets its services through a variety of online advertising programs including display advertising, search marketing, email marketing and affiliate programs. InPhonic's website www.wirefly.com, a leading one-stop shopping site for mobile phones and wireless plans, has been awarded "Best of the Web" by Forbes magazine and "Best in Overall Customer Experience" by Keynote Performance Systems.

9. InPhonic also markets its services through its partners' private labeled websites which InPhonic creates to leverage its partners' brands and their existing customer relationships. InPhonic private-labels customer touch points to the partners' brands, including the web storefront, customer communications (such as call centers and in-box collateral) and device packaging.

10. CAIS Acquisitions II, LLC, a wholly-owned subsidiary of InPhonic, does business under the name VMC Satellite. Through VMC Satellite, InPhonic markets consumers digital broadcast satellite television, broadband and VOIP services. VMC Satellite markets its services through a portfolio of its own websites, affiliate websites, print advertisement and private labeled websites, as well as through an in-bound call center.

11. InPhonic's Mobile Virtual Network Enabler (MVNE) business leverages the company's e-commerce platform and operational infrastructure to enable communications service providers and consumer brands to offer a branded wireless service to their customers without having to own or operate the underlying wireless network or operational infrastructure. InPhonic's MVNE platform provides a turn-key solution that combines system integration to every major U.S. wireless carrier with enterprise strength billing and customer care solutions.

12. InPhonic developed and sells a unified communications service that provides users with a private toll-free number and a professional set of small business messaging services for one monthly fee. Users have one central location for all of their voicemail, email, faxes, calendar appointments and address books and can manage all of their messages from anywhere by accessing a single message box using any phone or computer. The platform offers users many voice messaging, fax delivery, conference calling and call routing services integrated into a single application accessible by telephone or computer for a single monthly fee.

13. InPhonic's relationships with its carrier, service, affiliate and marketing partners are the keys to its business operations. InPhonic has agreements with the largest

wireless carriers in the U.S., as well as large satellite, broadband and VOIP providers, to market their products and services. The company also has agreements with thousands of affiliate and marketing partners that market Debtors' products and services under their brands through private-labeled websites that InPhonic creates and manages and/or their websites.

14. All of the Debtors are headquartered in Washington, D.C. The Debtors maintain technology and operations centers in Largo, Maryland; Reston, Virginia and Great Falls, Virginia.

### Relief Requested

15. By this Application, the Debtors seek to employ and retain Bayard pursuant to section 327(a) of the Bankruptcy Code as their counsel in connection with the commencement and prosecution of the above-captioned bankruptcy cases, effective as of the Petition Date.

### Basis for Relief

16. Section 327(a) of the Bankruptcy Code provides, in relevant part, "[e]xcept as otherwise provided in this section, the trustee may employ one or more attorneys . . . that do not hold an interest adverse to the estate, and that are disinterested persons, to assist the Trustee in carrying out the trustee's duties under this title."

17. The Debtors seek to retain Bayard as their co-counsel because of: a) Bayard's extensive general experience and knowledge and, in particular, its recognized expertise in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code; b) its expertise, experience and knowledge practicing before the United States Bankruptcy Court for the District of Delaware; c) its proximity to this Court; d) its ability to respond quickly to emergency hearings and other emergency

matters in this Court; and e) Bayard's appearance before this Court for the applications, motions and other matters in these chapter 11 cases will be efficient and cost effective for the Debtors' estates. The Debtors believe that Bayard is both well-qualified and uniquely able to represent them in these cases in a most efficient and timely manner.

18. The services of Bayard are necessary to enable the Debtors to execute faithfully their duties. Subject to Court approval, the professional services that Bayard will be required to render, shall include (but shall not be limited to):

(a) taking all necessary action to protect and preserve the estates of the Debtors, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

(b) providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business and management of their properties;

(c) negotiating, preparing and pursuing confirmation of a plan and approval of a disclosure statement;

(d) preparing on behalf of the Debtors, as debtors in possession, necessary motions, applications, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(e) appearing in Court and to protect the interest of the Debtors before the Court;

(f) assisting with any disposition of the Debtors' assets, by sale or otherwise; and

(g) performing all other legal services in connection with these chapter 11 cases as may reasonably be required.

19. Bayard has advised the Debtors that Bayard intends to work closely with co-counsel to the Debtors, DLA Piper US LLP, to ensure that there is no unnecessary duplication of services performed or charged to the Debtors' estates.

20. It is necessary that the Debtors employ attorneys to render the foregoing professional services. Bayard has stated its desire and willingness to act in these cases and render the necessary professional services as attorneys for the Debtors.

21. Prior to the Petition Date, Bayard was retained by the Debtors to provide bankruptcy advice, including assisting in the preparation of the requisite petitions, pleadings, exhibits, lists and schedules in connection with the commencement of these cases. The Debtors believe Bayard has the necessary background to deal effectively and efficiently with many of the potential legal issues and problems that may arise in the context of these cases. The Debtors believe that Bayard is both well-qualified and uniquely able to represent the Debtors in a most efficient and timely manner.

22. Representation for the purposes delineated above is in accordance with section 327(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides for the appointment of counsel where the proposed counsel does not possess any interest materially adverse to the Debtors with regard to the matters that will be handled by counsel and where counsel are disinterested persons.

23. To the best of the Debtors' knowledge, and except as disclosed herein and in the annexed Glassman Declaration, Bayard does not hold or represent any interest or connection adverse to the Debtors, their estates, their creditors, any other party in interest, or the Debtors' respective attorneys or accountants. Bayard is a "disinterested person" as defined in the Bankruptcy Code.

24. Notwithstanding the foregoing, the Debtors hereby disclose to the Court, in connection with the representation of all of the Debtors by Bayard, that there are certain interrelationships between and among the Debtors. The Debtors do not believe,

however, that their relationships to one another pose any conflict of interest in these chapter 11 cases because of their general unity of interest at all levels.

25. The Debtors submit that Bayard's representation of the Debtors is permissible under section 327 of the Bankruptcy Code and is in the best interest of all creditors of the estates.

26. The Debtors understand that Bayard intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and Orders of this Court.

27. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, propose to pay Bayard their customary hourly rates for services rendered that are in effect from time to time, as set forth in the Glassman Declaration. The Debtors also submit that such rates are reasonable and should be approved by the Court at this time, subject to a determination of the amounts to be paid to Bayard upon applications for allowance. Moreover, the Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, propose to reimburse Bayard for their actual and necessary expenses.

28. On November 7, 2007, prior to the filing of the bankruptcy petitions, the Debtors sent a wire transfer in the amount of $149,200.00 (the "Retainer") to Bayard. Pre-petition fees and expenses incurred by the Debtors totaling $66,370.25 were drawn against the Retainer prior to the filing of the Debtors' petitions, and a balance of $82,829.75 remains in the Debtors' client trust account. Bayard will retain this balance as a security retainer and apply it to any outstanding fees and expenses upon this Court's

approval of Bayard's final fee application in these Cases. No portion of the Retainer was applied by Bayard to outstanding invoices sent to the Debtors prior to Bayard's receipt of the Retainer (other than as set forth above).

### Notice

29. Notice of this Motion has been provided to (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (b) counsel to Adeptio INPC Funding, LLC: Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn: David A. Agay); and (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

30. No previous motion for the relief sought herein has been made to this or any other Court.

### Conclusion

WHEREFORE, the Debtors respectfully request the relief requested herein and such other and further relief as is just and proper.

November 19, 2007        INPHONIC, INC.

Name: Walter W. Leach, III
Title: General Counsel