## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INPHONIC, INC., *et al.*, | Case No. 07-11666 (KG)<br>Jointly Administered |
| Debtors. | Objection Deadline: N/A<br>Hearing Deadline: N/A |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
PURSUANT TO DEL.BANKR.LR. 9006-1(e) FOR AN ORDER LIMITING AND
SHORTENING NOTICE TO CONSIDER MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER
(I) DISMISSING (OR CONVERTING) DEBTORS' BANKRUPTCY CASES
PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE OR,
ALTERNATIVELY, (II) COMPELLING THE TRUSTEE TO ABANDON
FULLY-ENCUMBERED ESTATE PROPERTY PURSUANT TO SECTION
554(b)OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee"), by and

through its proposed undersigned counsel, moves this Court pursuant to

Del.Bankr.LR. 9006-1(e) for an Order limiting and shortening notice (the "Motion to

Shorten and Limit Notice") with respect to the Motion  of the Committee for an Order

(I) Dismissing (or Converting) Debtors' Bankruptcy Cases Pursuant to Section 1112(b)

of the Bankruptcy Code or, Alternatively, (II) Compelling the Trustee to Abandon Fully-

Encumbered Estate Property Pursuant to Section 554(b) of the Bankruptcy Code (the

"Motion to Dismiss") and respectfully states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this Motion to

Shorten and Limit Notice pursuant to 28 U.S.C. § 1334(b).

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

## FACTUAL BACKGROUND

4.    On November 8, 2007 (the "Petition Date"), InPhonic, Inc. ("InPhonic")

and each of its wholly-owned subsidiaries (collectively, the "Debtors")[1] filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

(the "Bankruptcy Code").  The Debtors' cases are being jointly administered (for

procedural purposes only).

5.    The Debtors are continuing in possession of their respective properties and

are managing their businesses as debtors in possession, pursuant to Sections 1107 and

1108 of the Bankruptcy Code.

6.    On November 16, 2007, the United States Trustee conducted an

organizational meeting of the Debtors' unsecured creditors for the purpose of forming an

official committee of unsecured creditors (the "Organizational Meeting").  At the

Organizational Meeting, the United States Trustee appointed the Committee pursuant to

Section 1102(a)(1) of the Bankruptcy Code.

### The DIP Financing Motion

7.    On the Petition Date, the Debtors filed their Motion for Entry of Interim

and Final Orders (I) Authorizing and Approving Post-Petition Financing; (II) Granting

Liens and Security Interests and Providing Superpriority Administrative Expense Status;

(III) Authorizing Use of Cash Collateral and Affording Adequate Protection;

(IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing Pursuant to Section

---

1   The seven wholly owned debtor-subsidiaries are: (a) CAIS Acquisition, LLC, a Delaware
limited liability company, (b) CAIS Acquisition II, LLC, a Delaware limited liability company,
(c) SimIPC Acquisition Corp., a Delaware corporation, (d) Star Number, Inc., a Delaware
corporation, (e) Mobile Technology Services, LLC, a Delaware limited liability company, (f)
FON Acquisition, LLC, a Delaware limited liability company, and (g) 1010 Interactive, LLC, a
Delaware limited liability company.

105, 361, 362, 363 and 364 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001 (c) and (d) (the "DIP Financing Motion") (D.I. 11).

8.      In the DIP Financing Motion, the Debtors seek to borrow, on both a secured and superpriority administrative expense basis, $25 million from Adeptio.

9.      When evaluating the DIP Financing Motion and the requests made therein for various protections to be accorded to Adeptio in its capacity as DIP lender and prepetition lender, it is critical to bear in mind all of the different hats that Adeptio wears in these chapter 11 cases. Adeptio is (a) the prepetition lender, having acquired at a steep discount the rights and interests of the Prior Lenders earlier this month, (b) the proposed purchaser of the Debtors' assets, and (c) the DIP lender, offering loans to the Debtors solely for the purpose of keeping the Debtors' businesses intact so that Adeptio can acquire them at a Section 363 sale scheduled to occur in December, 2007.

10.     Even though the DIP facility is solely for Adeptio's benefit, Adeptio seeks to impose costs upon, and reduce the rights of, the unsecured creditors in exchange for the DIP facility - as if the DIP facility benefited the unsecured creditors. For example, Adeptio seeks a "superpriority claim" for the diminution in value of its collateral during the sale process, and worse yet, Adeptio seeks to pay such claims out of the proceeds of avoidance actions against unsecured creditors that will receive no benefit from the sale process. Adeptio seeks a waiver of the estates' right to surcharge Adeptio's collateral under Section 506(c) of the Bankruptcy Code even though these cases are being run for Adeptio's benefit. Adeptio also seeks unreasonable fees, in the amount of $500,000, for a loan that Adeptio would make in any event to preserve its right to acquire the Debtors' assets via a credit bid.

11.     Moreover, Adeptio seeks to use approximately $780,000 of the DIP facility to pay Adeptio's professional fees.

12.     Accordingly, as Adeptio is the only party that can hope to receive any real benefit from these bankruptcy cases, neither the estates nor unsecured creditors should bear the expenses associated with these bankruptcy cases, including the monetary costs and proposed loss of rights associated with the proposed DIP facility.

13.     The final hearing on the DIP Financing Motion is scheduled for <u>November 30, 2007</u>, just 2 weeks after the Committee was formed on November 16, 2007..

### The Motion to Dismiss and the Basis Therefor

14.     As explained in the Motion to Dismiss, the Debtors essentially filed for chapter 11 bankruptcy relief to effect a sale of substantially all of the Debtors' assets to Adeptio INPC Funding, LLC ("<u>Adeptio</u>").  Adeptio is the Debtors' stalking-horse bidder, its DIP financer and also the recent purchaser (at a very steep discount, just 6 days prior to the filing of these bankruptcy cases) of the pre-petition lenders' alleged $90 million claim against the Debtors.  The Debtors' statements in their first day motions and related filings indicate that Adeptio's prepetition claim is grossly undersecured (considering its face amount as opposed to the underlying collateral value as evidenced by the price Adeptio paid for such claim).  As the Debtors' also indicate, the proposed auction sale of their assets will likely not generate any bid other than Adeptio's $50 million credit bid, let alone any bid that will provide value to any entity other than Adeptio.

15.     In short, the entire sale process is a farce that, if permitted, would run its course at the expense of many unsecured creditors that will not receive any benefit from the sale.  The thinly-veiled purpose of the proposed sale is to benefit Adeptio by providing for the transfer of the Debtors' assets free and clear of liens, claims and

interests. Although only Adeptio would benefit from this sale process, Adeptio purports to impose upon the estates and their other creditors the costs and expenses associated with the sale process.

16. Worse yet, Adeptio seeks to impose upon the estates and their creditors a claim for diminution in the value of Adeptio's collateral during the sale process – even though the Debtors undertake the sale process at Adeptio's insistence and for Adeptio's benefit. Adeptio also apparently seeks to assert avoidance actions against unsecured creditors to satisfy Adeptio's diminution claim.

17. Compounding the travesty, Adeptio seeks to impose the Debtors' estates (a) $500,000 in fees for a proposed DIP loan that benefits only Adeptio and (b) $780,000 in Adeptio's professional fees incurred solely to further Adeptio's own interest in a process that is already entirely for Adeptio's benefit.

18. Accordingly, the Committee believes that the Debtors' bankruptcy cases should be dismissed (or converted) as Adeptio is the only party that can hope to receive a benefit from these bankruptcy cases. Instead of further prejudicing the Debtors' unsecured creditors by allowing the estates to incur unnecessary expenses and fees (such as the expenses and fees that will be paid unnecessarily to GAH), Adeptio should be required to obtain the Debtors' assets by exercising Adeptio's foreclosure rights outside of these chapter 11 bankruptcy cases. Adeptio will achieve the same results by exercising its foreclosure rights, but the process would be more equitable because Adeptio, not the Debtors' unsecured creditors, will bear the costs for the benefits Adeptio will receive.

19.    Alternatively, *if* this Court does not dismiss the Debtors' cases, the

Committee believes that this Court should compel the Debtors to abandon all assets

encumbered by Adeptio's security interest.  Those assets are "burdensome" and "of

inconsequential value and benefit" to the Debtors' estates.  See 11 U.S.C. § 554(b).

## RELIEF REQUESTED

20.    Pursuant to Del.Bankr.LR. 9006-1(e), the Committee seeks an order

shortening notice with respect to the Motion to Dismiss and scheduling a hearing on the

Motion to Dismiss for November 30, 2007 at 3:00 a.m. (Eastern), as well as establishing

November 28, 2007 at 10:00 a.m. (Eastern) as the deadline for filing and serving

objections to the Motion to Dismiss.

21.    In addition, the Committee requests this Court's approval to limit notice of

the Motion to Dismiss to the following parties:  (i) proposed counsel for the Debtors;

(ii) counsel to Adeptio; (iii) the Office of the United States Trustee; (iv) all the parties

that have requested notice pursuant to Fed. R. Bankr. P. 2002; and (v) all creditors listed

in the Debtors' Consolidated List of Creditors (D.I. 43), which includes approximately

4,000 creditors.

## BASIS FOR RELIEF REQUESTED

22.    If this Court were to grant the DIP Financing Motion on November 30,

2007, that will greatly prejudice the unsecured creditors.  In addition, if this Court were to

grant the DIP Financing Motion, it may affect this Court's ruling on the Motion to

Dismiss.  The Motion to Dismiss involves many of the exact same issues associated with

the Committee's objection to the DIP Financing Motion.  Accordingly, the Motion to Dismiss and the DIP Financing Motion should be heard at the same time.[2]

23.    Pursuant to Del.Bankr.LR. 9006-1(e), "[n]o motion will be scheduled on less notice than required by these rules or the Fed.R.Bankr.P. except by Order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice.  The Court will rule on such motion promptly without need for hearing."

### Request To Shorten Notice

24.    Pursuant to Fed.R.Bankr.P. 2002(a)(4), the regular notice period for a hearing on the Motion to Dismiss is 20 days notice by mail.[3]

25.    The Debtors' next hearing is scheduled for November 30, 2007 at 3:00 p.m.  At that hearing, this Court will hear the DIP Financing Motion.

26.    Due to the fact that the Motion to Dismiss, by its nature, should be heard prior to or at the hearing on the DIP Financing Motion, the Committee respectfully requests that the Court shorten notice with respect to the Motion to Dismiss.

27.    The Committee has brought the Motion to Dismiss as quickly as possible. The Committee was only formed last Friday, November 16, 2007 and selected its proposed counsel that same day.

---

[2]    It also makes sense to have the hearing on the Motion to Dismiss prior to the December hearing on the Debtors' motion to sell substantially all of their assets.

[3]    In the Motion to Dismiss, the Committee makes an alternative request to compel abandonment of fully-encumbered property.  Pursuant to Fed.R.Bankr.P. 6007(b), there is no specific notice period for a hearing on a motion to compel abandonment.

28.    For the reasons set forth above, the Committee respectfully requests that this Court schedule a hearing on the Motion to Dismiss for November 30, 2007, so that it can be heard on the same day as the DIP Financing Motion.

### Request to Limit Notice

29.    Pursuant to Fed.R.Bankr.P. 2002(d)(4), "unless otherwise ordered by the court," notice of the hearing on the dismissal or conversion of the case to another chapter shall be given to all equity security holders.

30.    In these cases, it is abundantly clear that there is absolutely no value for equity security holders. Adeptio's credit bid is for $50 million. That leaves Adeptio with a potential deficiency claim in excess of $40 million. Even ignoring any deficiency claim of Adeptio, the bankruptcy schedules of Inphonic, Inc. list over $80 million in unsecured creditors. Thus, there is clearly no value in these cases for equity, and no one contends otherwise.

31.    Moreover, the equity security holders will not be prejudiced if this Court grants the Motion to Dismiss.

32.    For the foregoing reasons, it would be wasteful of estate assets to require the Committee to serve the equity security holders with the Motion to Dismiss.

WHEREFORE, the Committee respectfully request that the Court enter an order (i) scheduling a hearing on the relief requested in the Motion to Dismiss for November 30, 2007 at 3:00 p.m. (Eastern Prevailing Time); (ii) requiring that any responses to the Motion to Dismiss be filed and served so as to be received on or before November 28, 2007 at 10:00 a.m. (Eastern); and (ii) limiting notice of the Motion to Dismiss as described herein.

Dated: November 21, 2007
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Kurt F. Gwynne
    Kurt F. Gwynne (No. 3951)
    1201 N. Market Street, Suite 1500
    Wilmington, DE 19801
    Telephone: (302) 778-7500
    Facsimile: (302) 778-7575
    E-mail: kgwynne@reedsmith.com

       and

    Robert P. Simons, Esquire
    435 Sixth Avenue
    Pittsburgh, PA 15219
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    E-mail: rsimons@reedsmith.com

       and

    Claudia Z. Springer, Esquire
    2500 One Liberty Place
    1650 Market Street
    Philadelphia, PA 19103-7301
    Telephone: 215-851-8100
    Facsimile: 215-851-1420
    E-mail: cspringer@reedsmith.com

    Proposed Counsel to the Official Committee
    of Unsecured Creditors