IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | Chapter 11 |
|---|---|---|
| In re: | : | |
| | : | Case No. 07-11666 (KG) |
| INPHONIC, INC., *et al.*, | : | Jointly Administered |
| | : | |
| Debtors. | : | Objection Deadline: N/A |
| | : | Hearing Date: N/A |

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR AN EXPEDITED TELEPHONIC
HEARING TO CONSIDER THE MOTION PURSUANT TO BANKRUPTCY
RULE 9006(c)(1) AND FEDERAL RULES OF CIVIL PROCEDURE 30, 33, 34 AND
36 FOR AN ORDER ESTABLISHING SHORTENED DISCOVERY PROCEDURES**

The Official Committee of Unsecured Creditors (the "Committee") of InPhonic, Inc. (together with its affiliated debtors and debtors in possession, the "Debtors"), hereby submits this Emergency Motion Of The Official Committee Of Unsecured Creditors For An Expedited Telephonic Hearing (the "Scheduling Motion") To Consider The Motion Pursuant To Bankruptcy Rule 9006(c)(1) And Federal Rules of Civil Procedure 30, 33, 34, And 36 For An Order Establishing Shortened Discovery Procedures (the "Motion to Shorten") for the afternoon of Wednesday, November 21, 2007, or such other time as is convenient for the Court, and states as follows:

**FACTUAL BACKGROUND AND
BASIS FOR RELIEF REQUESTED**

1. On November 8, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to possess their property and manage their businesses as debtors in possession. The Debtors' cases are being jointly administered.

2. On November 16, 2007, the United States Trustee formed the Committee.

3. Concurrently with the filing of this Scheduling Motion, the Committee has filed its Motion to Shorten. In the Motion to Shorten, the Committee seeks Court approval to shorten the time period for responding to the Committee's discovery requests relating to its Motion to Dismiss (as defined below).

4. At this time, by this Scheduling Motion, the Committee seeks only a telephonic hearing on the Motion to Shorten for the afternoon of November 21, 2007.

**The Sale Process**

5. On the Petition Date the Debtors filed, *inter alia*, the Motion to Approve (I) Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets; (II) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices, (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, (IV) Approving Expense Reimbursement Provision, and (V) Granting Related Relief (the "Bid Procedures Motion").

6. On the Petition Date, the Debtors also filed the Motion of Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").

7. On November 9, 2007, after a hearing, the Court entered an order approving the Bid Procedures Motion (the "Bid Procedures Order").

8. Pursuant to the Bid Procedures Order, the deadline for submitting bids to acquire substantially all of the Debtors' assets is December 7, 2007, with an auction to occur on

December 12, 2007. The Court scheduled a hearing on the Sale Motion for December 13, 2007 at 10:00 a.m (EST).

9. As of November 2, 2007, Adeptio INPC Funding, LLC ("Adeptio") was assigned all right, title and interest in and to the Debtors' prepetition credit facility. See Affidavit of Kenneth D. Schwarz, Chief Financial Officer of the Debtors, In Support of First Day Motions and Applications at ¶ 18.

10. The Debtors have identified Adeptio as the stalking horse bidder in the Sales Motion.

**The Proposed Post-Petition Financing**

11. On the Petition Date, the Debtors filed their Motion for Entry of Interim and Final Orders (I) Authorizing and Approving Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing Pursuant to Section 105, 361, 362, 363 and 364 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001 (c) and (d) (the "DIP Motion") (D.I. 11).

12. In the DIP Motion, the Debtors seek to borrow, on both a secured and superpriority administrative expense basis, $25 million from Adeptio.

13. A final hearing on the DIP Motion is scheduled for November 30, 2007.

14. When evaluating the DIP Motion and the requests made therein for various protections to be afforded to Adeptio in its capacity as DIP lender and prepetition lender, it is critical to bear in mind all of the different hats that Adeptio wears in these chapter 11 cases. Adeptio is (a) the prepetition lender, having acquired at a steep discount the rights and interests

of the Prior Lenders earlier this month, (b) the proposed purchaser of the Debtors' assets, and (c) the DIP lender, offering loans to the Debtors solely for the purpose of keeping the Debtors' businesses intact so that Adeptio can acquire them at a Section 363 sale scheduled to occur in December, 2007.

15. Even though the DIP facility is solely for Adeptio's benefit, Adeptio seeks to impose costs upon, and reduce the rights of, the unsecured creditors in exchange for the DIP facility -- as if the DIP facility benefited the unsecured creditors. For example, Adeptio seeks a "superpriority claim" for the diminution in value of its collateral during the sale process, and worse yet, Adeptio seeks to pay such claims out of the proceeds of avoidance actions against unsecured creditors that will receive no benefit from the sale process. Adeptio also seeks to compel the Debtors to pay $780,000 of Adeptio's professional fees associated with these cases. Adeptio seeks a waiver of the estates' right to surcharge Adeptio's collateral under Section 506(c) of the Bankruptcy Code even though these cases are being run for Adeptio's benefit. Adeptio also seeks unreasonable fees in the amount of $500,000 for a loan that Adeptio would make in any event to preserve its right to acquire the Debtors' assets via a credit bid.

16. Accordingly, as Adeptio is the only party that can hope to receive any real benefit from these bankruptcy cases, neither the estates nor unsecured creditors should bear the expenses associated with these bankruptcy cases, including the monetary costs and proposed loss of rights associated with the proposed DIP facility.

17. The Committee believes that dismissal of these cases (or abandonment of fully-encumbered property) is in the best interest of the estates' creditors.

## The Committee's Motion to Dismiss These Cases

18. Contemporaneously with the filing of this Motion, the Committee also filed its Motion For An Order (I) Dismissing (Or Converting) Debtors' Bankruptcy Cases Pursuant To Section 1112(b) Of The Bankruptcy Code Or, Alternatively, (II) Compelling The Trustee To Abandon Fully-Encumbered Estate Property Pursuant To Section 554(b) Of The Bankruptcy Code (the "Motion to Dismiss").

19. From the time of their formation to the present, the Debtors have not achieved profitability. Post-petition, the Debtors admit that they are continuing to consume cash and incur losses. See Schwarz Affidavit at ¶¶ 27 and 130. In fact, based upon the Debtors' cash flow forecasts, they will incur negative cash flows of approximately $4 million for *each* of the first 6 weeks of their cases.

20. In the Motion to Dismiss, the Committee seeks to dismiss these cases because of those continuing losses and the fact these cases were filed solely to benefit Adeptio at the expense of the unsecured creditors. Specifically, the thinly-veiled purpose of the proposed sale is to benefit Adeptio by providing for the transfer of the Debtors' assets free and clear of liens, claims and interests. Although only Adeptio would benefit from this sale process, Adeptio purports to impose upon the estates and their other creditors the costs and expenses associated with the sale process with no resulting benefit to those creditors.

21. Worse yet, Adeptio seeks to impose upon the estates and their creditors a claim for diminution in the value of Adeptio's collateral during the sale process – even though the Debtors undertake the sale process at Adeptio's insistence and for Adeptio's benefit. Adeptio also apparently seeks to assert avoidance actions against unsecured creditors to satisfy Adeptio's diminution claim.

22.     Accordingly, the Committee believes that the Debtors' bankruptcy cases should be dismissed (or converted) as Adeptio is the only party that can hope to receive a benefit from these bankruptcy cases. Instead of further prejudicing the Debtors' unsecured creditors by allowing the estates to incur unnecessary expenses and fees (such as the expenses and fees that will be paid unnecessarily to GAH), Adeptio should be required to obtain the Debtors' assets by exercising Adeptio's foreclosure rights outside of these chapter 11 bankruptcy cases. Adeptio will achieve the same results by exercising its foreclosure rights, but the process would be more equitable because Adeptio, not the Debtors' unsecured creditors, will bear the costs for the benefits Adeptio will receive.

23.     In the Motion to Dismiss, the Committee, alternatively, seeks an order compelling the Debtors to abandon all assets encumbered by Adeptio's security interest. Those assets are "burdensome" and "of inconsequential value and benefit" to the Debtors' estates. See 11 U.S.C. § 554(b).

24.     The Committee believes that its Motion to Dismiss should be heard no later than the hearing on the DIP Motion. The Committee does not want the estate to incur fees, expenses, costs, or other liability associated with the DIP Motion. Instead, the Committee believes that the cases should be dismissed.

25.     Accordingly, the Committee seeks expedited discovery on the Motion to Dismiss and the DIP Motion so that the Committee can be prepared to litigate (i) the Committee's (forthcoming) objection to the DIP Motion and (ii) the Motion to Dismiss at the hearing on November 30, 2007.

**RELIEF REQUESTED**

26. The Committee respectfully requests that this Court (i) grant the Scheduling Motion and (ii) schedule a telephonic hearing on the Motion to Shorten for the afternoon of November 21, 2007, at a time convenient for the Court.

**BASIS FOR RELIEF REQUESTED**

27. Pursuant to Del.Bankr.LR. 9006-1(e), "[n]o motion will be scheduled on less notice than required by these rules or the Fed.R.Bankr.P. except by Order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice. The Court will rule on such motion promptly without need for hearing."

28. The Committee was appointed on Friday, November 16, 2007. Less than thirty (30) days after the appointment of the Committee, the Debtors seek to sell substantially all of their assets and leave nothing for the Debtors' unsecured creditors.

29. By "fast tracking" the sale process with a contemplated sale to Adeptio (who six days prior to the Petition date became the Debtors' secured lender), the Debtors have put the Committee in a particularly difficult situation. The Committee must be prepared to litigate certain issues in a very short time frame. Unlike the Debtors and Adeptio, the Committee has not had the benefit of the due diligence, analyses and communications that occurred in the weeks and months before this proposed sale.

30. As soon as possible after its appointment, the Committee (by and through its proposed counsel) prepared a discovery plan that would enable the Committee to gather the information necessary to allow it to present the Motion to Dismiss in an expedited manner. The relief requested in the Motion to Shorten is fair and reasonable under the circumstances, and

necessary to allow the Committee to properly prosecute the Motion to Dismiss and thereby fulfill its duties to its unsecured creditor constituency.

31. Unless the Motion to Shorten is considered on an expedited basis, the Committee will not have sufficient time to conduct its diligence before the November 30, 2007, hearing on the DIP Motion and the proposed hearing on the Motion to Dismiss.

WHEREFORE, the Committee respectfully requests that this Court (i) grant the Scheduling Motion, (ii) schedule a telephonic hearing on the Motion to Shorten for the afternoon of November 21, 2007 at a specific time to be set by the Court, and (iii) grant the Committee such other and further relief that the Court deems just and proper.

Dated: November 21, 2007  
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Kurt F. Gwynne
 Kurt F. Gwynne (No. 3951)
 1201 N. Market Street, Suite 1500
 Wilmington, DE 19801
 Telephone: (302) 778-7500
 Facsimile: (302) 778-7575
 E-mail: kgwynne@reedsmith.com

 and

 Robert P. Simons, Esquire
 435 Sixth Avenue
 Pittsburgh, PA 15219
 Telephone: (412) 288-3131
 Facsimile: (412) 288-3063
 E-mail: rsimons@reedsmith.com

 Proposed Counsel for The Official Committee
 of Unsecured Creditors