# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 573-6272

July 1, 1999

Robert J. Rosenberg, Esq.
Roland S. Young, Esq.
Latham & Watkins
885 Third Avenue
New York, NY 10022

Dave P. Adams, Esq.
Office of the United States Trustee
601 Walnut Street, Suite 950-W
Philadelphia, PA 19106

Laura Davis Jones, Esq.
Edwin J. Harron, Esq.
Michael R. Nestor, Esq.
M. Blake Cleary, Esq.
Young, Conaway, Stargatt
 & Taylor
11th Floor, Rodney Square North
P.O. Box 391
Wilmington, DE 19899-0391

Eric D. Schwartz, Esq.
Gregory W. Werkheiser, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Robert D. Albergotti, Esq.
Stephen M. Pezanosky, Esq.
Scott W. Everett, Esq.
Haynes and Boone, L.L.P.
901 Main Street, Suite 3100
Dallas, TX 75202-3789

Steven R. Gross, Esq.
Michael E. Wiles, Esq.
Debevoise & Plimpton
875 Third Avenue
New York, NY 10022

RE: Dailey International, Inc.
    Case No. 99-1233 (PJW)

Dear Counsel:

This is the Court's ruling with respect to the application (the "Application") of Dailey International Inc. and

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 2
July 1, 1999

its affiliates (the "Debtors") to retain Ernst & Young, L.L.P. ("Ernst & Young") as Accountants, Auditors, Tax Advisors, and Financial Advisory Services Providers for the Debtors (Doc. # 16). For the reasons stated below, the Application will be denied.

On May 28, 1999, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors filed the Application on the same day, seeking to employ Ernst & Young under the terms and conditions of a letter of understanding dated May 28, 1999 (the "Engagement Letter") attached to the Application as Exhibit B. The lengthy Engagement Letter contains the following unusual provisions:

> Any controversy or claim, other than the allowance of fees, arising out of or relating to this Agreement or any of the services provided by Ernst & Young pursuant thereto (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of Ernst & Young) shall be submitted first to voluntary mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures attached to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. In the event that, for any reason, this arbitration requirement is declared null and void, any controversy or claim



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 3
July 1, 1999

arising out of or relating to this Agreement shall be resolved solely by a federal court with jurisdiction over such controversy or claim, and, as to any such federal court proceeding, the parties expressly waive their right to a jury trial. [This paragraph hereinafter referred to as the "ADR Provision."]

As to the tax, consulting and financial services which the Company has requested and Ernst & Young has agreed to provide as set forth in the Agreement (the "Non-Attestation Services"), the total aggregate liability to the Company of E & Y whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, under this Agreement shall be limited to the fees paid by the Company to E & Y pursuant to the Agreement under which any such liability arises. In no event will E & Y be liable to the Company for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, even if advised of the likelihood of such damages. The Company's recourse with respect to any liability or obligation of E & Y hereunder shall be limited to the assets of E & Y, and the Company shall have no recourse against, and shall bring no claim against, any partner of E & Y or any of the assets thereof.

The Company shall have no recourse against, and shall bring no claim (in the nature of contribution or otherwise) against E & Y or its partners and employees with respect to (i) any third-party claim (from all causes of action of any kind, including contract, tort or



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 4
July 1, 1999

otherwise) against the Company or its subsidiaries or affiliates related to or arising out of the Non-Attestation Services provided hereunder, or (ii) any losses, liabilities, damages or expenses (including attorneys' fees and expenses) incurred by the Company or its subsidiaries or affiliates as a result of any such third-party claim. In addition, the Company shall indemnify and hold harmless E & Y, its partners and employees ("E & Y Indemnitees") from and against (i) all claims and causes of action of any kind, including contract, tort or otherwise, by any third party related to or arising out of the Non-Attestation Services provided hereunder, and (ii) any losses, liabilities, damages and expenses (including, but not limited to, reasonable attorneys' fees and expenses incurred by the E & Y Indemnitees in any action or proceeding between an E & Y Indemnitee and any third party or otherwise) that are incurred by the E & Y Indemnitees as a result of any such claims or causes of action. The Company shall reimburse the E & Y Indemnitees for such Indemnified Costs as they are incurred by the E & Y Indemnitees. The Company's subsidiaries and affiliates are deemed a third party as that term is used herein. [The two paragraphs immediately above hereinafter referred to as the "Risk Allocation Provisions."]

The consideration for approval of both the ADR Provision and the Risk Allocation Provisions is a matter of first impression for this Court, as Ernst & Young's counsel acknowledged at the June 2, 1999 hearing. See Doc. # 51 at 27 (When queried as to whether any other bankruptcy court had approved a professional retention



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 5
July 1, 1999

application embodying such provisions, Ernst & Young's counsel responded: "I believe you have the distinct honor of having this presented to you first as the standard form of engagement letter going forward."). Subsequent to the June 2, 1999 hearing, the Debtors and Ernst & Young filed memoranda in support of the Application. The United States Trustee (the "Trustee") and the Official Committee of Unsecured Creditors (the "Committee") filed substantial memoranda in opposition to the Application, setting forth numerous arguments against the propriety of the above-quoted provisions. Ernst & Young filed a reply memorandum in response to the Trustee's and Committee's oppositions. For the most part, I find the arguments of the Trustee and the Committee to have considerable merit.[1]

At the June 2, 1999 hearing, Ernst & Young's counsel contended that the ADR Provision and the Risk Allocation Provisions are "standard in the marketplace outside of bankruptcy." Doc # 51

---

[1] Due to time constraints, I address only a limited number of the arguments regarding the subject provisions.

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 6
July 1, 1999

at 28; see also Doc. # 51 at 27, 28 (characterizing the Engagement Letter as "the standard market-based, nonbankruptcy engagement letter" and the ADR Provision and Risk Allocation Provisions as "out-of-court normal procedure"). However, these contentions are not borne out by the affidavit (the "Affidavit") of A. Zuard Renkey, associate general counsel of Ernst & Young, which Ernst & Young subsequently filed in support of the Application. In reference to the ADR Provision, Renkey states in the Affidavit that:

> Th[e] ADR provision, including the attached procedures, are *similar to* those which are included in other engagement letters entered into by E & Y and its clients. Additionally, it is the *policy* of E & Y *to seek* to include such ADR provisions in *virtually all* of its engagement letters, including engagement letters for both bankruptcy and non-bankruptcy related services.

Affidavit at 2 (emphasis added).

In reference to the Risk Allocation Provisions, Renkey states in the Affidavit that:

> The[] risk allocation provisions are identical *or similar to* those which are included in other engagement letters entered into by E & Y and its clients. Specifically, E



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 7
July 1, 1999

> & Y *seeks* to *include* for non-attestation consulting services these liability cap and exclusion provisions in *most* of its engagement letters and nonrecourse and indemnity provisions in *many* of its engagement letters.

*Id.* (emphasis added).

Obviously, the Affidavit fails to provide credible evidence to support Ernst & Young's contention that the ADR Provision and the Risk Allocation Provisions are "standard in the marketplace outside of bankruptcy." Ernst & Young has failed to provide information as to the frequency with which other substantial clients have agreed to either the ADR Provision or the Risk Allocation Provisions. With regard to the ADR Provision, Renkey states that "similar" provisions have been included in other engagement letters and that Ernst & Young "seeks" to include such provisions in "virtually all" of its engagement letters. With regard to the Risk Allocation Provisions, Renkey asserts that Ernst & Young "seeks to include" the Risk Allocation Provisions in "many" or "most" of its engagement letters. However, Ernst & Young has not stated when its "policy" was adopted and has failed to provide



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 8
July 1, 1999

evidence of a single engagement letter, either inside or outside of bankruptcy, which contains the ADR Provision or Risk Allocation Provisions set forth in the Engagement Letter. In fact, according to the Committee, Ernst & Young did not seek the Risk Allocation Provisions from the Debtors in the prepetition April 30, 1999 engagement letter with the Debtors for tax services.

Regardless of Ernst & Young's "policy" or what it purports to be the standard practice outside of bankruptcy, I find that the ADR Provision and the Risk Allocation Provisions are not appropriate terms and conditions for the retention of professionals in bankruptcy pursuant to 11 U.S.C. §§ 327 and 328.

The ADR Provision denies the Court the ability to hear potential claims by the Debtors, or its successors or other parties in interest, against Ernst & Young arising out of its performance pursuant to its court-approved retention. It seems to me that such claims would be core proceedings as those claims would relate to the "administration of the estate." See 28 U.S.C. § 157(b)(2)(A); see also Southmark Corp. v. Coopers & Lybrand (In re Southmark

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 9
July 1, 1999

Corp.), 163 F.3d 925 (5th Cir. 1999) (holding that professional malpractice claims against court-appointed professionals are core matters). Furthermore, such claims would likely involve the meaning and effect of the very contract for Ernst & Young's retention which is solely within the jurisdiction of this Court to approve. See 11 U.S.C. §§ 327, 328. In addition, as the Committee points out, the limiting procedures set forth in the ADR Provision are inimical to procedural rights and remedies in an adversary proceeding in a bankruptcy case. Without discussing these in detail, I observe that the Committee's point is well-taken.

In its reply, Ernst & Young argues that just because this Court may have jurisdiction to hear disputes involving statutorily retained professionals does not necessarily mean that a bankruptcy court has exclusive jurisdiction over such matters. While this may be so, I do not believe it serves as a legitimate argument for ousting the bankruptcy court from jurisdiction over such matters.

Ernst & Young's reliance on the "strong federal policy encouraging arbitration", citing the Federal Arbitration Act,

