Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 10
July 1, 1999

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987) and related cases, is misplaced. The policy on which Ernst & Young relies favors the enforcement of arbitration clauses which are already effective and binding in existing contracts. The issue in the case at bar is not whether an arbitration clause in a valid contract should be enforced, but whether this Court--acting pursuant to broad administrative authority over reorganizations and claims resolutions--should approve the proposed ADR Provision in the first place. Ernst & Young has cited no federal policy which favors the execution of arbitration provisions akin to the ADR Provision in the Engagement Letter which seeks to sidestep a bankruptcy court's conventional jurisdiction.

With regard to the Risk Allocation Provisions, Ernst & Young states that "indemnity provisions are routinely included in engagement letters between debtors and investment banks acting as advisors to such debtors and are approved by this Court." Doc. # 36 at 11. Indeed, I have approved limited forms of indemnity provisions in engagement letters for investment bankers and



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 11
July 1, 1999

financial advisors (these provisions typically exclude from coverage the gross negligence or willful misconduct of the indemnitee). For an example cited by Ernst & Young, see In re Long John Silver, Inc., Case No. 98-1164 Doc. # 91 (application to retain Donaldson Lufkin & Jenrette Securities Corp. as investment bankers). For more recent examples, see In re Loewen Group Int'l, Case No. 99-1244 Doc. # 22 (application to retain Wasserstein Perella & Co. as financial advisors); In re Hechinger Co., Case No. 99-2261 Doc. # 23 (application to retain Policano & Manzo, L.L.C. as special financial advisor and bankruptcy consultant); In re Harnischfeger Indus., Inc., Case No. 99-2171 Doc. # 16 (application to retain PriceWaterhouse Coopers Securities LLC as financial advisor); In re Willcox & Gibbs, Inc., Case No. 99-928 Doc. # 13 (application to retain Peter J. Solomon Co. as financial advisor and investment banker).

However, in sharp contrast to the indemnification provisions which this Court has approved in prior cases involving similar professional services, by its Risk Allocation Provisions

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 12
July 1, 1999

Ernst & Young seeks to (i) limit its damages for all claims relating to "Non-Attestation Services" to the fees that Ernst & Young is paid for such services; (ii) require the Debtors to waive all claims to recover consequential, incidental, indirect, punitive or special damages regardless of the nature of the claims asserted; (iii) bar any claim for contribution or indemnification from Ernst & Young without regard to the nature of the claim that might be asserted or the wrongdoing by Ernst & Young that contributed to or gave rise to the claim; (iv) require the Debtors to indemnify Ernst & Young against all legal costs and damages associated with "all claims and causes of action of any kind, including contract, tort or otherwise, by any third party related to or arising out of the Non-Attestation Services." Obviously, the Risk Allocation Provisions which Ernst & Young seeks go _far_ beyond the limited indemnification provisions for investment bankers and financial advisors which this Court has heretofore allowed.[2]

---

[2] Ernst & Young's damage limitation provision reminds me of the type of limited liability of photo film developers: No matter what happens to the customer's film or prints, the developer's

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 13
July 1, 1999

In its reply, Ernst & Young argues that the Committee is attempting to preclude Ernst & Young from entering into an agreement with the Debtor which both Ernst & Young and the Debtor find acceptable and appropriate. According to Ernst & Young,

> the Trustee and the Committee do not wish to have sophisticated parties negotiate engagement letters at all. Instead they wish to create absolute rules which strictly govern the form of engagement letters. In effect, they wish to have this Court create another "official bankruptcy form" which sets forth what is permitted in engagement letters and what is not.

(Doc. # 92 at 14)

Ernst & Young misses the point. It is patently clear from §§ 327 and 328 that sophisticated parties are not entitled to dictate the terms and conditions of the engagement of professionals. Those terms and conditions are subject to the approval of the bankruptcy court in making reasoned determinations as to what is in the best interest of the estate. In this regard, I should note that there is a distinct benefit to having uniformity on certain important

---

liability is limited to the cost of the roll of film. However appropriate that may be in the commercial arena of film processing, I find it inappropriate in the arena of professional services.



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 14
July 1, 1999

terms and conditions of the retention of professionals. Absent such uniformity, a good argument can be made that retention of professionals should not be included in "first day" motions, but rather should be reserved to a later date when other parties, including statutory committees, will have an opportunity to debate the merits of "customized" proposed terms and conditions for retentions.

In its reply, Ernst & Young points out that in <u>In re Favorite Brands Int'l Holding Corp.</u>, Case No. 99-726 (Bankr. D. Del. May 28, 1999), this Court approved the retention of an investment banker as financial advisor under an engagement letter which include an indemnification provision, a damage limitation provision and a waiver of certain claims. Having reviewed that engagement letter in the <u>Favorite Brands</u> case, I find the risk allocation provisions not as sweeping as those proposed here by Ernst & Young, and if given the opportunity to reconsider the engagement letter in the <u>Favorite Brands</u> case, I believe I would be inclined to reconsider the allowance of certain of its terms and

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 15
July 1, 1999

conditions. Indeed, having reread that engagement letter, I am inclined to believe at this time that that retention may have been improvidently granted.

Ernst & Young contends that because the Risk Allocation Provisions are enforceable under state law, such provisions are reasonable and appropriate in a bankruptcy context. However, the issue in not whether indemnification and other risk allocation provisions should be enforced when present in a valid contract; rather, the issue is whether such provisions should be approved in a professional's retention application in a bankruptcy forum. Ernst & Young fails to cite any policy in favor of approving the particular Risk Allocation Provisions in a Chapter 11 bankruptcy case. To allow such provisions here would be a dramatic departure from this Court's policies governing professionals' retentions and I see no benefit to the administration of reorganization cases resulting from the adoption of such provisions.

Furthermore, I find the provision of the Engagement Letter confusing and ambiguous. The limitation of liability that



Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 16
July 1, 1999

Ernst & Young seeks applies to "tax, consulting and financial services," which Ernst & Young defines as the "Non-Attestation Services." Although I understand that these services do not include auditing services, the description of "tax, consulting and financial services" appears to me to include rather conventional outside accountant's services. When these three services are compared with the services to be performed which are identified on the first page of the Engagement Letter--"audit services; due-diligence-related services; loaned staff services; tax outsourcing and consultation services and; financial advisory services"--it is unclear how the three services mentioned in the Risk Allocation Provisions fit into the description of services on the first page of the Engagement Letter. It is not at all clear that the Risk Allocation Provisions operate to exclude conventional outside accountant's services from such liability limitations.

In its reply, Ernst & Young takes a fallback position on the indemnification. Specifically, Ernst & Young states that it "does not seek indemnification for claims or causes of action

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 17
July 1, 1999

arising from gross negligence or wilfull misconduct and will agree to a modification of the engagement letter to so specify." (Doc. # 92 at 12)  While this is an improvement, I do not view it as adequately addressing the many objectionable features of the Engagement Letter as discussed above.

I am aware of the multi-million dollar settlement payment which Ernst & Young recently agreed to with the Chapter 7 trustee in the Merry-Go-Round Enterprises, Inc. litigation. Ernst & Young's efforts to avoid similar liability exposure in the future is understandable; however, I find its apparent efforts in that regard in the instant case as overreaching and not consonant with the public policy design embodied in the Bankruptcy Code.

For the reasons stated above, the Debtors' Application (Doc. # 16) is DENIED.

Very truly yours,

Peter J. Walsh

PJW:vw