IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| INPHONIC, INC., *et al,* | ) | Case No. 07-11666(KG) |
| | ) | |
| | ) | Jointly Administered |
| Debtor. | ) | **Objection Deadline: 11/23/07 at 4:00 p.m.** |
| | ) | **Hearing Date: 11/30/07 at 3:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' APPLICATION TO EMPLOY GOLDSMITH, AGIO, HELMS SECURITIES, INC. AS INVESTMENT BANKER PURSUANT TO SECTIONS 327(a) AND 328 (a) OF THE UNITED STATES BANKRUPTCY CODE (DOCKET NO. 63)**

In support of her Objection to the Application to Employ Goldsmith, Agio, Helms Securities, Inc. as Investment Banker Pursuant to Sections 327(a) and 328 (a) of the United States Bankruptcy Code (Docket No. 63) ("Application"), Kelly Beaudin Stapleton, the United States Trustee for Region 3 ("UST"), by and through her undersigned counsel, states as follows:

**Background and Relevant Facts**

1.  This Court has jurisdiction to hear the above-referenced Objection.

2.  Pursuant to 28 U.S.C. § 586, the UST is charged with monitoring applications filed under section 327 of the Bankruptcy Code and, whenever the UST deems it to be appropriate, filing with the court comments with respect to the approval of such applications. *See* 28 U.S.C. § 586(a)(3)(H). This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990)

1

(describing the UST as a "watchdog").

3.  Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the above-referenced Objection.

4.  On or about November 8, 2007, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business as debtors-in-possession. 11 U.S.C. §§ 1107, 1108.

5.  The UST appointed an Official Committee of Unsecured Creditors ("Committee") on November 16, 2007.

6.  The Debtors filed the present Application to employ Goldsmith, Agio, Helms Securities, Inc. ("GAH") as Investment Banker Pursuant to Sections 327(a) and 328 (a) of the United States Bankruptcy Code on November 13, 2007. The Application and GAH's employment is in accordance with an engagement letter, dated October 11, 2007, along with certain addenda to the engagement letter (collectively the "Engagement Letter").

7.  In the Application, GAH proposes to be compensated, subject to Court approval, in accordance with the provisions of Section 328(a) of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, a monthly fee in the amount of $50,000.00 (the "Monthly Fee") plus a fee equal to $1.5M plus 3.5% of a certain calculated amount as a "Restructuring Fee" in the event certain benchmarks are reached concerning a "restructuring" as well as a "Sales Transaction Fee" similar in terms to the Restructuring Fee but based upon certain sale-related benchmarks. In addition, GAH is entitled to an expense advance retainer of $150,000. (See Paragraph 25 (a) through (f) of the Application).

8.  The services to be provided by GAH include the following:

2

reviewing and analyzing the Debtors' business, operations and financial projections; evaluating the Debtors' potential debt capacity in light of its projected cash flows; assisting in the determination of a capital structure for the Debtors; assisting in the determination of a range of values for the Debtors' on a going concern basis; advising the Debtors' on tactics and strategies for negotiating with the Stakeholders; rendering financial advice to the Debtors' and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring; advising the Debtors' on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring; advising and assisting the Debtors' in evaluating potential Financing transaction by the Debtors', and, subject to GAH's agreement so to act and, if requested by GAH, to execution of appropriate agreements, on behalf of the Debtors', contacting potential sources of capital as the Debtors' may designate and assisting the Debtors' in implementing such a Financing; assisting the Debtors' in preparing documentation within our area of expertise that is required in connection with the Restructuring; assisting the Debtors' in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors' in connection with negotiations and aiding in the consummation of a Sale Transaction; providing testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court; and providing the Debtors' with other financial restructuring advice

(See Paragraph 24 (a) through (m) of the Application).

9. As part of this employment and engagement, and notwithstanding the objectionable compensation provisions, the Debtors and GAH also request court approval of certain other objectionable provisions and conditions of employment.

10. GAH seeks to limit the forum for litigation with respect to the Application to solely the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and that the Debtor and GAH submits to the jurisdiction of such courts. (See Engagement Letter at paragraph 14, page 7).

11. GAH also seeks the following indemnification and limitation of liability provision:

In connection with the engagement of GAH, to advise and assist InPhonic, Inc. and its controlled subsidiaries (collectively with any entity formed or used for the

purposes set forth herein, the "COMPANY") with a variety of financial matters, for good and valuable consideration, receipt of which is hereby acknowledged, the COMPANY and GAH are entering into this letter agreement. The COMPANY agrees not to assert claims against or recover from GAH (which term, for purposes of this agreement, includes it, its affiliates and its and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members) for losses, claims, damages or liabilities to the COMPANY or its shareholders, arising out of or in connection with this engagement or the performance by GAH of services on behalf of the COMPANY (collectively, "Company Claims"), and to indemnify and hold GAH harmless against and from all losses, claims, damages or liabilities, and all actions, claims, proceedings and investigations in respect thereof (collectively, "Indemnification Claims"), arising out of or in connection with this engagement or the performance by GAH of services on behalf of the COMPANY, and to timely reimburse GAH for all reasonable legal and other out-of-pocket expenses as incurred by GAH in connection with investigating, preparing to defend or defending any such Indemnification Claims (including costs of GAH personnel required to testify or otherwise assist in any litigation and a per diem of $1,500 per person for any time such person expends in connection with any appearance, and/or preparation to appear, as a witness), whether or not GAH is named as a party thereto; provided, however, that the COMPANY shall not be precluded from asserting Company Claims and shall not be liable to the extent Indemnification Claims are finally judicially determined (not subject to review or appeal) to have resulted primarily and directly from GAH's gross negligence or willful misconduct. ***If Company Claims are asserted, GAH's liability shall be limited to the amount of any fee received by GAH pursuant to its engagement***. (Emphasis added).

If indemnification and reimbursement for Indemnification Claims are insufficient or unavailable as a result of GAH's gross negligence, willful misconduct or otherwise, the COMPANY and GAH agree to make contributions to any Indemnification Claims paid or payable in such proportion as appropriately reflects the relative economic benefits received by the COMPANY and its shareholders, on the one hand, and GAH, on the other hand; provided, however, that the COMPANY agrees to make contributions to any Indemnification Claims paid or payable such that GAH will not be liable for more than the fee received by GAH pursuant to the engagement. The "relative economic benefits" received by the COMPANY on the one hand and GAH on the other shall be deemed to be in the same proportion as the total consideration paid or payable in connection with any transaction or restructuring contemplated by the engagement bears to the fee actually received by GAH in connection with the engagement. If a determination of contributions based on relative economic benefit is unavailable, the COMPANY and GAH agree to make contributions to ally Indemnification Claims paid or payable in such proportion as appropriately reflects the relative fault of the COMPANY and its shareholders, on the one hand, and GAH,

on the other hand, as well as other equitable considerations; provided, however, that the COMPANY agrees to make contributions to any Indemnification Claims paid or payable such that GAH will not be liable for more than the fee received by GAH pursuant to the engagement. The foregoing tights to indemnification and contribution shall not limit any other rights that GAH may have at law or otherwise and shall survive any expiration or termination of the engagement or GAH's relationship with the COMPANY or the consummation, abandonment or termination of any transaction or restructuring. The COMPANY further agrees that, without the written consent of GAH, the COMPANY will not settle or compromise any pending or threatened action, claim, proceeding, or investigation with respect to which indemnification or contribution may be sought hereunder unless such settlement or compromise includes an unconditional release of GAH from all liability resulting from such action, claim, proceeding, or investigation.

Engagement Letter *addenda*.

12. Additionally, GAH seeks to abrogate its fiduciary duty to the Debtors through a provision in the Engagement Letter states that GAH's role herein is that of an independent contractor and that nothing therein is intended to create or shall be construed as creating a fiduciary relationship between GAH and the Debtors or their Board of Directors. (See Engagement Letter at paragraph 11, page 6).

13. Lastly, GAH requires that it be entitled, in connection with the services to be provided hereunder, to employ the services of Lazard Freres & Co. LLC and its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Debtors, with Lazard and Lazard would be entitled to indemnification as requested in the Application.(See Engagement Letter at paragraph 12, page 6).

## LEGAL ANALYSIS AND ARGUMENT

**A.    Approval of Fees, Fee Structure and the Review of Fees Awarded under Section 328 and 330 of the Bankruptcy Code in unwarranted in this case.**

14. Section 327(a) of the Bankruptcy Code provides that:

> The trustee, with the court's approval, may employ one or more attorneys. . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327 (a).

15. 11 U.S.C. § 328(a) states that "[t]he trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any *reasonable terms and conditions of employment*, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, *the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing of such terms and conditions*." 11 U.S.C. § 328(a) (Emphasis Added).

16. GAH seeks to be retained under Section 328 with a specific reference to and exclusion from the "reasonableness" standards of Section 330 of the Bankruptcy Code.

17. Although under the Monthly Advisory Fee construct (*i.e.* the alleged reasonable terms and conditions of employment) GAH may be paid a monthly fee of $50,000, GAH's monthly fee should be subject to review under 11 U.S.C. § 330. Additionally, GAH should file fee applications in accordance with the Bankruptcy Code, Bankruptcy Rules, the prescripts of the Administrative Order, and that awards of compensation and expenses would made be in accordance with Sections 330 and 331 of the Bankruptcy Code.

18.     GAH should demonstrate that its monthly compensation is reasonable. While the UST understands that the monthly fee being charged is on a fixed monthly fee basis, such a fee structure does not prevent a reasonableness review of the fees. *See In re Stations Holding, Inc.*, 2004 WL 1857116, *3 (Bankr. D. Del.) (Where the Bankruptcy Court in this District reduced a financial advisor's flat fee from $1 million to $104,000 based on amount of hours that were being billed and the reasonableness of the hourly rate).

19.     With respect to the Restructuring Fee and the Sales Transaction Fee, under the "improvident" standard of Section 328(a) the payment to GAH of these fees should not be allowed as it is improvident in the present circumstances. For example, in the event that the secured creditor, Adeptio, merely credit bids and purchases the Debtors' assets without any cash, revenue or funds being generated, GAH should not be allowed any such Restructuring Fee or Sales Transaction Fee. Such a pecuniary endowment is a term and condition that is clearly improvident in light of present circumstances capable of being recognized at the time of the fixing of such terms and conditions and should not be allowed.

20.     In the Third Circuit opinion *In re Federal Mogul-Global, Inc.*, 348 F.3d 390 (2003), Judge (now Justice) Alito wrote: "...when a Bankruptcy Court has 'fixed..terms and conditions' of employment for an application to employ that was approved, the Court may allow compensation on different terms or conditions only if the court's initial approval 'prove[s] to have been improvident in light of developments not capable of being anticipated at the time' of approval." 348 F.3d at 397 (citations omitted). In this case, the Sale Transaction Fee is improvident and should not be allowed.

21.     GAH does not satisfy the test under Section 328(a) since the terms and conditions of employment are and would be improvident in light of developments capable of being

anticipated at the time of the fixing of such terms and conditions.

**B.     Choice of Forum, Indemnification and Limitation of Liability Provisions are likewise Unwarranted and must Comply with Applicable Law and Practice in this District.**

22.     Additionally, the choice of forum provisions set forth in the Engagement Letter improperly divest this court of jurisdiction. The indemnification and limitation of liability provisions set forth therein are not warranted, are inappropriate and are inconsistent with the obligations and duties of an estate professional and are contrary to applicable law and the practice in this District.. *See, e.g., United Artists Theatre Co. v. Walton*, 315 F.3d 217 (3d Cir. 2003)*; In re United Cos. Fin. Corp.*, 241 B.R. 521 (Bankr. D. Del. 1999); *In re Dailey Int'l, Inc.*, No. 99-1233PJW (Bankr. D. Del July, 1999)

**C.     Fiduciary Duty of Professionals Employed by Debtor in Possession Can Not Be Compromised by Agreement**

23.     Under 11 U.S.C. § 1107(a), a Chapter 11 debtor in possession assumes essentially all of the rights and duties of a trustee.  This includes the trustee's primary fiduciary duty to act in the best interests of general creditors rather than insiders. *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[o]ne of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors"); *Wolf v. Weinstein*, 372 U.S. 633, 649 (1963) ("[S]o long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession."); *In re United Healthcare System, Inc.*, 200 F.3d 170, 177 n.9 (3d Cir. 1999) (debtor, "as a debtor-in-possession, is a fiduciary for its estate and for its creditors."); *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 2000) ("When the chapter 11 petition

was filed in this case, the debtor-in-possession assumed the same fiduciary duties as would an appointed trustee. . . . [including] the duty to protect and conserve property in its possession for the benefit of creditors.") (internal quotation omitted).

24. A leading commentator describes the fiduciary duties of a debtor in possession as follows:

> The debtor in possession is bound by a duty of care, requiring it to exercise that measure of care, diligence and skill that an ordinarily prudent person would exercise under similar circumstances. . . . A debtor in possession is also bound by a duty of loyalty that includes an obligation to refrain from self-dealing [and] to avoid conflicts of interests[.]

7 Lawrence P. King, *Collier on Bankruptcy* ¶ 1107.02[4] at 1107-12 (15th ed. 2000).

25. Justice Cardozo provided the following oft-quoted comparison of what is expected of a trustee to what is expected of entities engaging in their daily business: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 463, 164 N.E. 545, 546 (1928). Thus, upon filing a Chapter 11 petition the debtor in possession is no longer free to enter into any arrangement it sees fit; "the debtor, though left in possession . . . does not operate [its business], as it did before the filing of the petition, unfettered and without restraint." *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 125-26 (1939).

26. Section 327(a) of the Bankruptcy Code requires a Chapter 11 debtor in possession[1] to obtain the bankruptcy court's authorization to employ certain types of "professional persons"[2] to represent or assist it in carrying out its duties.[3] Although the term "professional person" is not defined, courts have generally found that term to refer to persons that play a central role in the administration of the estate or are given discretion or autonomy as to some part of the estate's administration.  *See, e.g.*, *In re Bicoastal Corp.*, 141 B.R. 216, 218 (Bankr. M.D. Fla. 1993); *In re Semenza*, 121 B.R. 56, 57 (Bankr. D. Mont. 1990); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981).  The reason Congress required court approval of professional persons was "to avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered Chapter 11 debtors. . . ."  *See In re Bartley Lindsay Co.*, 137 B.R. 305, 308 (D. Minn. 1991) (internal quotations omitted).

27. Once employed, a professional person "owes his allegiance to the entity and not to the stockholder, director, officer, employee, representative or other person professional with the entity."  *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr. N.D. Ill. 1990).  Thus, just like directors,

---

[1] Although Section 327(a) refers only to trustees, the Bankruptcy Code provides that (with exceptions not relevant here) a debtor in possession "shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee," 11 U.S.C. § 1107(a), and thus the limitations on employment of professional persons imposed by Section 327(a) apply equally to trustees and debtors in possession.

[2] The term "'person' includes individual, partnership, and corporation." 11 U.S.C. §101(41)(A).

[3] Pursuant to 11 U.S.C. § 1107(a), the debtor in possession must perform the following "functions and duties" of a trustee, among others:  serving as the representative of the estate (11 U.S.C. § 323); operating the debtor's business (11 U.S.C. § 1108); investing the debtor's funds (11 U.S.C. § 345(a)); accounting for all estate property (11 U.S.C. §§ 704(2), 1106(a)(1)); furnishing information regarding estate administration to parties in interest (11 U.S.C. §§ 704(7), 1106(a)(1)); filing operating reports with the court and United States Trustee (11 U.S.C. §§ 704(8), 110;(a)(1)); and filing a plan of reorganization (11 U.S.C. § 1106(a)(5)).

officers, and other management personnel, professionals employed by a debtor in possession cannot make any action or recommendation that would enable them to profit from their position or any agreement that would cause them to breach their fiduciary duties.

> **D. If the Debtors Seek to Retain Lazard Freres & Co. LLC and its Affiliates and Lazard Capital Markets LLC they may do so under Proper Application to this Court upon Notice and Opportunity for a Hearing and in Accordance with 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a).**

28. To the extent that the Debtors wishes to use or employ any other professional, including those affiliated with GAH, the Debtors must file a separate and complete application for such professional, upon notice, in accordance with 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) with complete and full disclosure of any and all connections and conflicts.

29. All professional persons seeking employment under 11 U.S.C. § 327 must submit a verified statement disclosing "all connections" with the debtor, creditors, other parties in interests, and their respective attorneys and accountants. *See* Fed. R. Bankr. P. 2014(a). As a result, every professional who seeks employment in a bankruptcy case is under an affirmative duty to disclose all actual and potential conflicts of interest; "[t]his responsibility is especially important to insure that those conflicts of interest not immediately apparent are brought to the attention of the court reviewing a *pro forma* application for employment." *See In re Glenn Electric Sales Corp.*, 99 B.R. 596, 599 (D.N.J. 1988). In *In re BH&P, Inc.*, 949 F.2d 1300, 1317 (3d Cir. 1991), the Third Circuit quoted the following language with approval: "One of the more salient principles in bankruptcy law is that . . . professionals who request court approval of employment have 'a duty to disclose *actual or potential* conflicts of interest which may bear upon their qualification.'" 949 F.2d at 1317 (quoting *In re BH&P, Inc.*, 119 B.R. 35, 44 (D.N.J. 1990)) (internal citation omitted) (emphasis in

original).

30.     The UST reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the UST requests that this Court issue an order denying the Application and/or granting such other relief as this Court deems appropriate, fair and just.

          Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**

By:     /s/Richard L. Schepacarter
       Richard L. Schepacarter, Esquire
       Trial Attorney
       United States Department of Justice
       Office of the United States Trustee
       J. Caleb Boggs Federal Building
       844 King Street, Room 2207, Lockbox 35
       Wilmington, DE  19801
       (302) 573-6491

Dated: November 21, 2007       (302) 573-6497 (Fax)