IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                                       :
In re:                                                 :
                                                       : Chapter 11
INPHONICS, INC., *et al.*,                             :
                                                       : Case No. 07-11666 (KG)
          Debtors.                                     : *(Jointly Administered)*
                                                       :
                                                       : **Related to Docket Nos. 11 and 55**
                                                       :
-------------------------------------------------------X

**LIMITED OBJECTION OF SPANCO TELESYSTEMS & SOLUTIONS LIMITED TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING AND APPROVING POSTPETITION FINANCING; (II) GRANTING LIENS AND SECURITY INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (IV) MODIFYING AUTOMATIC STAY; AND (V) SCHEDULING FINAL HEARING, PURSUANT TO SECTIONS 105, 361, 362, 363 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 4001(C) AND (D)**

Spanco Telesystems & Solutions Limited ("Spanco"), by and through their undersigned counsel, hereby makes this limited objection (the "Limited Objection") to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving Postpetition Financing; (II) Granting Liens and Security Interests and Providing SuperPriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing, Pursuant to Sections 105, 361, 362, 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001(c) and (d) (the "DIP Financing Motion"). In support of its Limited Objection, Spanco states as follows:

#2972386 (136965.005)
DM3\594461.1

## BACKGROUND

1. On November 8, 2007 (the "Petition Date"), InPhonic, Inc. ("InPhonic") and each of its wholly-owned subsidiaries (collectively, the "Debtors")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware. The Debtors' cases are being jointly administered under case no. 07-11666.

2. The Debtors continue to operate their business and manage their property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the case.

3. On the Petition Date, the Debtors filed several "first day" motions including the DIP Financing Motion.

4. On November 9, 2007, the Court entered an Interim Order approving the Debtors' DIP Financing Motion. The Court has scheduled a hearing to approve the proposed final DIP financing order for November 30, 2007 at 3:00 p.m.

### Spanco's Agreement with InPhonic

5. Pre-petition, pursuant to an agreement dated August 1, 2005 between Spanco and InPhonic (the "Agreement"), Spanco owned and operated a call center that provided InPhonic and its customers with technical support services and allied IT enabled services related to the Debtors' products sold to its customers. As of the Petition Date, InPhonic was

---

[1] InPhonic's seven wholly-owned debtor-subsidiaries are: CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, and 1010 Interactive, LLC.

indebted to Spanco in the approximate amount of $1,985,666.77[2] and, as a result, Spanco is one of the Debtors' twenty (20) largest unsecured creditors.

6. Since the Petition Date, Spanco has continued to operate the call center and provide technical support services and allied IT enabled services at the specific request of InPhonic.

7. Pursuant to the Agreement, Spanco is to invoice InPhonic for services bi-weekly and payments for services are to be made to Spanco via wire transfer within two business days of receipt of an invoice.

8. The historical bi-weekly billing under the Agreement issued by Spanco to InPhonic approximates $300,000.

**The DIP Financing Motion**

9. As set forth by the Debtors in their first day motions, prior to the Petition Date, the Debtors were indebted to Goldman Sachs Credit Partners, L.P., Citicorp North America, Inc. and various other lenders (collectively, the "Pre-Petition Lenders") in the approximate amount of $90 million under a credit agreement (the "Pre-Petition Credit Agreement") dated November 7, 2006. The obligations of the Debtors under the Pre-Petition Credit Agreement appear to be secured by liens on and security interests in virtually all of the Debtors' assets.

10. On November 2, 2007, the Pre-petition Lenders assigned all of their right, title and interest in and to the Pre-Petition Credit Agreement and the documents related thereto to Versa Capital Management, Inc. ("Versa"), who is the parent company to Adeptio INPC Funding, LLC ("Adeptio").

---

[2] This amount is subject to further review and reconciliation.

#2790076 (136965.005)                   Page 3

DM3\594461.1

11. By the DIP Financing Motion, the Debtors seek authority to borrow $25 million from Adeptio on both a secured and superpriority administrative expense basis.

12. As detailed below, in exchange for this borrowing, the Debtors seek to grant to Adeptio an extensive panoply of new liens, claims, and rights which, together, unfairly leverage the bankruptcy case in favor of Adeptio to the detriment of unsecured creditors.

13. The onerous scope of the "protections" sought by the Debtors on behalf of Adeptio is highlighted by the number of provisions that deviate from Delaware Local Rule 4001-2. For example, the Debtors seek, among other things, a lien on the currently unencumbered avoidance actions possessed by the estate and a waiver of the Debtors' ability to surcharge Adeptio's collateral under Section 506(c) of the Bankruptcy Code.

14. Additionally, while addressing certain administrative claims, the DIP Financing Motion fails to provide for additional funds to pay claims arising under Section 503(b)(9) of the Bankruptcy Code.

## **LIMITED OBJECTION**

15. As a party that is currently providing services to the Debtors post-petition, Spanco does not object, in and of itself, to the Debtors borrowing money on reasonable terms so that they may continue to meet their day-to-day cash flow needs through consummation of a sale of all or substantially all of the Debtors' assets. When the terms of a proposed financing are not reasonable, however, the financing should not be approved. Indeed, it is well recognized that the court does not have unbridled discretion in approving post-petition financing. Rather, courts must balance the interests of the parties, and generally "focus their attention on proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an

early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits." In re Ames Dep't Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

16. Based upon the representations made by the Debtors in their first day motions, it is clear that Adeptio's pre-petition claim is severely undersecured. The Debtors fully admit that there is no chance for a rehabilitation and that proposing a plan of reorganization is not feasible. The Debtors posit that the best option is for the Debtors to complete a quick sale of all or substantially all of the assets to Adeptio. There is no question, therefore, that the continued operation of the Debtors' business during the next month or so is for the direct benefit of Adeptio. Accordingly, Adeptio as the post-petition lender needs to "pay to play," and no provision of any DIP financing order the Court might enter should prejudice the parties such as Spanco that are providing services post-petition. This Court should not approve the DIP financing if any provision tilts the playing field in favor of Adeptio.

A. **The Budget**

17. As an initial matter, the proposed budget (the "Budget") attached as Exhibit 2 to the DIP Financing Motion provides little detail. It is impossible to discern from a review of the Budget whether all post-petition expenses, including bi-weekly service charges owed to Spanco, are accounted for in the Budget. The Debtors must present evidence to the Court showing that all post-petition expenses are included and that the limits placed on the Debtors by the Budget will not prevent the timely payment of all post-petition expenses. In addition,

the Debtors must include in their Budget a line item expense that allocates and budgets payment for services being performed by Spanco on a post-petition basis.

### B. Section 503(b)(9) Administrative Claims

18. The DIP Financing Motion fails to address statutory administrative claims under Section 503(b)(9) of the Bankruptcy Code. As the provider of services to InPhonic within the twenty (20) day period immediately preceding the Petition Date, Spanco believes that it has a statutory administrative expense claim pursuant to Section 503(b)(9) of the Bankruptcy Code. Not only should the Court require that the Debtors provide a proper estimate of all such claims, but such claims should be addressed in the DIP Financing Motion and the Debtors should be required to segregate and/or set aside sufficient funds to pay all such claims. Thus, the DIP Financing Motion should not be approved unless and until these 503(b)(9) claims are addressed and an adequate reserve is established to fund 503(b)(9) administrative claims.

### C. Granting Liens on Avoidance Actions

19. The DIP Financing Motion also seeks to grant liens on the avoidance actions that belong to the Debtors' estates and are currently unencumbered. Liens on avoidance actions are inappropriate in this case. If that is an alleged "deal breaker" for Adeptio, then the case should perhaps simply be dismissed, rather than allow the Debtors to needlessly relinquish chapter 5 causes of action. Adeptio cannot legitimately claim that it needs to deprive the general creditor body of this potential, bankruptcy-specific source of recovery in order to lend. Moreover, any superpriority administrative claim granted to Adeptio should not extend to the proceeds of such actions, as this effectively constitutes a lien on those proceeds.

### D. Waiver of Section 506(c) Surcharge

20. Section 506(c) of the Bankruptcy Code provides that "the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). A debtor-in-possession has a fiduciary obligation to assert section 506(c) claims where circumstances dictate. See Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 12 (2000).

21. The waiver of the section 506(c) surcharge is inappropriate in this case where the lender, Adeptio, is undersecured. Adeptio is voluntarily lending the Debtors further funds. Administrative creditors, such as Spanco, are not. To the extent that the Debtors, for whatever reason, do not pay for all goods and services provided to them post-petition, in addition to whatever other remedies may be available, the ability to surcharge the collateral must be preserved for the benefit of vendors and other service providers whose services preserve the going concern value of the collateral, and permitted a subsequent disposition thereof, or provided "any benefit" to Adeptio as the lender.

### E. Reservation of Rights

22. Spanco reserves its rights, claims, defenses and remedies including, without limitation, the right to amend, modify, or supplement this Limited Objection and/or raise additional objections during the final hearing on the DIP Financing Motion[3].

---

[3] Spanco incorporates as if fully set forth herein, the Objection to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing Pursuant to Section 105, 361, 362, 363 and 364 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001 (C) and

#2790076 (136965.005)   Page 7

DM3\594461.1

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Spanco requests that the Court enter an Order that denies approval of the DIP Financing Motion unless and until an order entered and a budget approved with respect thereto conforms with the above and for such other and further relief as is equitable and just under the circumstances.

Dated: November 23, 2007

Respectfully yours,

**WILENTZ, GOLDMAN & SPITZER, P.A.**

By: /s/ David H. Stein
    David H. Stein, Esq. (DHS-8514)
    Jaimie A. Slosberg, Esq. (JS-9233)
    90 Woodbridge Center Drive
    P.O. Box 10
    Woodbridge, New Jersey 07095-0958
    (732) 636-8000

- and -

**DUANE MORRIS LLP**

By: /s/ Richard W. Riley
    Richard W. Riley, Esq. (DE No.   )
    Suite 1200
    1100 North Market Street
    Wilmington, Delaware 19801-1246
    (302) 657-4900

*Attorneys for Creditor,*
*Spanco Telesystems & Solutions Limited*

---

(D) Filed by Official Committee of Unsecured Creditors, which Objection is listed on the Clerk's Docket as Document No. 104.

#2790076 (136965.005)                                   Page 8

DM3\594461.1