IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INPHONIC, INC., *et al.*, | Case No. 07-11666 (KG) |
| | Jointly Administered |
| Debtors. | |

**MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE DEPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors (the "Committee"), by its undersigned counsel[1] files this Memorandum in Support of Motion to Preclude Deposition of the Official Committee of Unsecured Creditors (the "Motion"), and states as follows:

### FACTUAL BACKGROUND

1.  On November 8, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code"). Pursuant to an Order of this Court dated November 9, 2007, the Debtors' Chapter 11 cases were consolidated for procedural purposes only pursuant to Fed.R.Bankr.P. 1015.

2.  In the night time on Sunday, November 25, 2007, counsel for the Debtors served a notice of deposition *duces tecum* on counsel for the Committee (the "Notice"). A copy of the Notice is attached as Exhibit A. The Notice was clearly the Debtors' ill-advised attempt to harass and annoy the Committee.

---

[1] At the Organizational Meeting (hereinafter defined), the Committee selected Reed Smith LLP ("Reed Smith") as its proposed counsel.

3. In the Notice, the Debtors proposed to examine a Committee member solely on the following topics:

    a. the *preparation* of the Committee's objection to the Debtors' proposed sale of assets to Versa Capital Management, Inc. (the "Sale");

    b. the *deliberation* between and among Committee members and Committee counsel regarding the Committee's objection to the Sale; and

    c. the *deliberation* between and among Committee members and Committee counsel regarding any possible or potential settlement of the Committee's objection to the Sale.

4. At a hearing on Monday, November 26, 2007, the Committee made its oral Motion to preclude the deposition set forth in the Notice. See Fed.R.Bankr.P. 9013 ("A request for an order . . . shall be by written motion, unless made during a hearing."); Fed.R.Civ.P. 26(c)(1) and (4) (party may seek protective order precluding discovery or precluding discovery on certain issues).

5. For the following reasons, this Court should grant the Committee's Motion and preclude the deposition sought in the Notice.

**THIS COURT SHOULD PRECLUDE THE PROPOSED DEPOSITION BECAUSE IT RELATES ENTIRELY TO THE COMMITTEE'S ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS.**

6. The Debtors have asserted that they are entitled to depose members of the Committee regarding the substance of privileged communications between the Committee and its counsel. Specifically, the Debtors propose to depose Committee members regarding, *inter alia*, the substance of discussions between or among the Committee members and Committee counsel regarding the Committee's preparation of its objection to the Sale and the Committee's settlement positions related thereto.

7.  At the November 26, 2007 hearing in these cases, counsel for the Debtors represented to this Court that the Ninth Circuit Court of Appeals held that communications between committee members and committee counsel were not protected by the attorney-client privilege. *In fact, however, the Ninth Circuit has held directly to the contrary.* The other courts addressing the issue have also recognized that committee members' discussions with Committee counsel are subject to the attorney-client privilege.

8.  Not only does the attorney-client privilege clearly extend to communications between creditors' committees and their counsel, it is exactly these types of attorney-client communications that the privilege is meant to protect.

9.  First, it is quite well-established that the attorney-client privilege applies to the attorney-client relationship between an official committee of unsecured creditors and its counsel. As one court aptly stated:

> The purposes underlying the privilege have no less applicability to a creditor's committee than they do to any other entity, at least when disclosure of privileged communications is sought by those who are not represented by the committee, or who stand in an adversarial relationship with it. If the committee cannot engage in "full and frank communications" with its attorneys without fear of disclosure to such outsiders, then its work may be seriously hampered, to the detriment of those it represents. *See, Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

Matter of Baldwin-United Corp., 38 B.R. 802, 804-05 (Bankr. S.D. Ohio 1984).

10. Contrary to the assertions of Debtors' counsel, the Ninth Circuit (in one of the most-cited cases) has held the attorney-client privilege applies "where the party seeking the documents is engaged in adversarial litigation against the creditors' committee and has no fiduciary relation to the Committee or its counsel." In re

<u>Subpoenas Duces Tecum Dated March 16, 1992</u>, 978 F.2d 1159, 1160-61 (9th Cir. 1992); Howard J. Steinberg, 1 BANKRUPTCY LITIGATION § 4:31 (2007) ("The Ninth Circuit has recognized that the attorney-client privilege covers communications between a creditors' committee and its counsel where the party seeking the information is engaged in litigation against the committee.")

11. The United States Bankruptcy Court for the Southern District of New York has recognized that the Committee's attorney-client privilege "clearly can be enforced against those who are not represented by the committee or who are standing in an adversarial relationship to the unsecured creditors as a group." <u>In re Refco Inc.</u>, 336 B.R. 187, 197 (Bankr. S.D.N.Y. 2006) (citing <u>Subpoena Duces Tecum</u>, 948 F.2d 1159, 1161 (9th Cir. 1992)); <u>see also</u> <u>Riddell Sports, Inc. v. Brooks</u>, 1995 WL 20260, *1 (S.D.N.Y. Jan. 19, 1995) (recognizing attorney-client privilege for legal advice between committee and committee counsel and/or committee and committee member who was an attorney and stating that "the fact that communications take place in this [creditors' committee] context neither alters the application of traditional privileges nor creates a new one.").

12. In fact, it is hornbook law that

> When a committee is engaged in litigation with a third party, there is *no doubt* that the attorney-client privilege is applicable to shield communications between the committee and its counsel relating to the litigation. The privilege ought also to be available for communications relating to strategy in the case *vis-à-vis* the debtor and third parties.

<u>Refco</u>, 336 B.R. at 197 (quoting 7 COLLIER ON BANKRUPTCY ¶ 1103.03[8] at 1103-17) (emphasis added).

13. By the Notice, the Debtors plainly seek to depose a Committee member regarding privileged communications relating to the litigation and Committee strategy regarding its objection to the Sale and related settlement possibilities. Nothing could be more damaging to the attorney-client privilege. The communications into which the Debtors seek to inquire are exactly the types of communications that the attorney-client privilege was meant to protect. The attorney-client privilege extends to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (2000)). The discussions regarding the preparation of an objection to the Sale and the Committee's views on settlement are communications between the Committee (by way of its individual members) and its counsel that were made in confidence and for the purpose of providing legal advice and guidance to the Committee in the fulfillment of its fiduciary duties.

14. Furthermore, as referenced above, the attorney-client privilege's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn, 449 U.S. at 389. Certainly, this policy articulated by the Supreme Court in Upjohn would be frustrated if the Committee was unable to speak candidly with its counsel in confidence about settlement positions and other issues. In fact, the entire bankruptcy process would be disrupted and impeded if a committee could not engage in

confidential discussions with its counsel – like every other client to have ever participated in our legal system.

15. The Debtors' misrepresentation of the law notwithstanding, it is actually quite clear and universally established by the courts that discussions between a committee and its counsel are entitled to the protections of the attorney-client privilege. Accordingly, this Court should preclude the deposition sought in the Notice as it seeks communications that are entirely subject to the Committee's attorney-client privilege.

### THIS COURT SHOULD PRECLUDE THE PROPOSED DEPOSITION BECAUSE (I) IT RELATES TO SETTLEMENT STRATEGY IN ONGOING LITIGATION AND (II) PROVIDES FOR NEW YORK AS THE SITUS OF THE DEPOSITION.

16. The proposed deposition is also improper because it seeks (a) to depose a Committee member regarding the Committee's settlement strategy in ongoing litigation and (b) to compel the Committee's designee to travel to New York for a deposition.

17. It is plainly improper to permit discovery of an adversary's settlement position in ongoing litigation. See, e.g., Mars Steel Corp. v. Continental Ill. Nat'l Bank and Trust Co. of Chicago, 834 F.2d 677, 684 (7th Cir. 1987) (upholding district court's denial of discovery into settlement discussions, stating that "[d]iscovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponent's strategy"); Thornton v. Syracuse Sav. Bank, 961 F.2d 1042, 1046 (2d Cir. 1992) (declaring that precluding parties from taking discovery on each other's settlement strategy "is necessary to prevent parties from learning their opponents' strategies"); Beneficial Franchise Co., Inc. v. Bank One, N.A., 205 F.R.D. 212, 221 (N.D.Ill. 2001) ("Further, the Court agrees with the authorities that generally find it

6

unwise to allow one party to obtain discovery about the private settlement positions of opposing parties in ongoing litigation.").

18.  The settlement discussions are inadmissible as provided in Federal Rule of Evidence 408 (as made applicable by Federal Rule of Bankruptcy Procedure 9017). For that reason too, the Debtors have no legitimate interest in deposing a Committee member regarding those settlement discussions. Rather, the Debtors' transparent purpose in seeking to depose the Committee is solely to harass and annoy the Committee.

19.  Moreover, the Notice purports to examine the Committee in New York. Even if any examination were proper (which it clearly is not), there is simply no basis to compel the Committee's Rule 30(b)(6) designee to travel to New York for a deposition. Rather, the Debtors should have to travel to the location of the Rule 30(b)(6) designee.

20.  For the foregoing reasons, this Court should (i) preclude the Debtors from conducting the deposition sought in the Notice and (ii) grant such other relief to the Committee as is appropriate.

Dated: November 27, 2007  
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Kurt F. Gwynne  
Kurt F. Gwynne (No. 3951)  
1201 N. Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: (302) 778-7500  
Facsimile: (302) 778-7575

and

Robert P. Simons, Esquire
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

and

Claudia Z. Springer, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone: 215-851-8100
Facsimile: 215-851-1420

Proposed Counsel to the Official
Committee of Unsecured Creditors