**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:  )  | Chapter 11 |
| ) | |
| ) | Case No. 07-11666 (KG) |
| INPHONIC, INC., et al.,  ) | |
| ) | Jt. Admin. |
| ) | |
| DEBTORS.  ) | Hearing Date: December 13, 2007, 10 am |
| ) | Related to Docket Nos.: 13, 65 and 146 |

**OBJECTION OF AT&T TO CURE NOTICE AND LIMITED
OBJECTION TO DEBTORS' MOTION TO SELL SUBSTANTIALLY
ALL ASSETS AND TO ASSUME AND ASSIGN CONTRACTS**

AT&T[1], by and through its counsel, files this objection to the above-captioned Debtors' (i) Notices of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts (the "Cure Notices"), and (ii) Motion for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets, (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"), and respectfully states as follows:

---

[1] "AT&T" means collectively AT&T Mobility II, LLC f/k/a Cingular Wireless II, LLC and its affiliates including AT&T, Inc.

**Debtors/AT&T Relationship**

1. AT&T and the Debtors provide goods or services to each other primarily pursuant to that certain "Cingular Wireless Non-Exclusive Dealer Agreement," effective October 1, 2006 (the "AT&T Dealer Agreement"). Due to the confidential nature of the AT&T Dealer Agreement, a copy is not being attached to this Objection.

2. The AT&T Dealer Agreement represents a material portion of the Debtors' sales.

3. The relationship generally involves AT&T selling cell phones and other equipment to the Debtors and the Debtors procuring customers for AT&T's wireless services.

4. Each time the Debtors procure a customer for AT&T's wireless service, the Debtors are entitled to a commission from AT&T. Under certain circumstances, the Debtors may have to return or credit commissions back to AT&T.

5. Likewise, AT&T is entitled to be paid for the cell phones and other equipment it sells to the Debtors.

**Pre-Petition Balances**

6. Prior to the filing of the bankruptcy cases, the Debtors and AT&T recouped various amounts owing to each other.

7. As of the petition date, pursuant to the AT&T Dealer Agreement the Debtors owed to AT&T approximately $4,553,580 and AT&T owed to the Debtors approximately $4,452,763. These amounts are approximations and AT&T is still in the process of determining final numbers for the pre-petition period. These amounts are also subject to recoupment.

8.     The Debtors may owe an additional pre-petition balance to AT&T for traditional land line telephone services (the "Land Line Services").  AT&T is in the process of determining the pre-petition balance owed for the Land Line Services.

## Post-Petition Balances

9.     Post-petition, pursuant to the AT&T Dealer Agreement the Debtors and AT&T continue to operate in the same fashion, and continue to incur obligations to each other.  These obligations are also subject to recoupment.

10.     The Debtors may owe an additional post-petition balance to AT&T for the Land Line Services.  AT&T is in the process of determining the post-petition balance for the Land Line Services.

## Cure/Assignment Objections

**A.     The Cure Notice Is Deficient**

11.     The Debtors provided to AT&T seven different Cure Notices, copies of which are attached hereto as **Exhibit "1"**.

12.     The Debtors then filed a Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing [Docket No. 146] (the "Master Cure Notice").

13.     Both the Cure Notices and the Master Cure Notice are deficient because they fail to identify the name of the AT&T contract(s) seeking to be assumed and assigned.  Rather, both only list AT&T by name, address and proposed cure amount.

14.     AT&T reserves the right to supplement this Objection if and when the names of the contracts seeking to be assumed and assigned are provided to AT&T.

15. For purposes of this Objection, AT&T is assuming that the Debtors are seeking to assume and assign the AT&T Dealer Agreement, as almost all of the Debtors' and AT&T's business relationship is governed by the AT&T Dealer Agreement.

16. Based upon the number of Cure Notices received from the Debtors, AT&T is also assuming that the Debtors are seeking to assume and assign the Land Line Services.

**B.     Pre-Petition Cure Amount**

17. All but one of the seven Cure Notices lists a cure amount of zero, with the one exception listing a cure amount of $186.77.

18. AT&T believes the Debtors have presumably listed a cure amount of zero for the AT&T Dealer Agreement because the Debtors are assuming that the amounts that the Debtors and AT&T owe each other as of the petition date under the AT&T Dealer Agreement are to be or have already been recouped.

19. The AT&T Dealer Agreement provides for recoupment at Section 6.3:

> [AT&T] or its affiliates may, at any time, offset and recoup against any and all amounts owed to [Debtors] or its Affiliates any amounts owed by [Debtors] or its Affiliates to [AT&T], including but not limited to amounts owed or to be owed under this Agreement ….

20. The AT&T Dealer Agreement at Section 12.1 is governed by Georgia law. Georgia law also provides for a right of recoupment:

> Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract upon which suit is brought.

O.C.G.A. 13-7-2.

21. AT&T is in agreement that these amounts are subject to recoupment, pursuant to the terms of the AT&T Dealer Agreement. After applying recoupment, AT&T is owed an approximate balance of $100,817 relating to the pre-petition period. As indicated above, this amount is an approximation as AT&T is still in the process of determining final numbers for the pre-petition period.

22. In the absence of recoupment, the pre-petition component of AT&T's cure claim is approximately $4,553,580, which amount is also an approximation pending final numbers.

23. AT&T is still in the process of determining what if any pre-petition cure amounts are owed by the Debtors to AT&T for the Land Line Services.

**C.     Post-Petition Cure Amount**

24. The Debtors and AT&T continue to operate post-petition under the AT&T Dealer Agreement, and continue to incur obligations to each other. These obligations are also subject to recoupment.

25. It is unclear at this time if after recoupment AT&T will be owed a balance from the petition date through the date of assignment for the AT&T Dealer Agreement.

26. It is also unclear at this time if AT&T will be owed a balance from the petition date through the date of assignment for the Land Line Services.

27. In the event that AT&T will be owed a post-petition balance, the successful assignee must assume these obligations. The asset purchase agreement ("APA") proposed by the stalking horse bidder, Adeptio INPC Funding, LLC ("Adeptio"), provides for such assumption. See APA at p. 4, definition of "Assumed Liabilities" [Docket No. 13].

**D.    Adequate Assurance of Future Performance**

28.    Pursuant to sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code, AT&T is entitled to adequate assurance of future performance from the assignee of the AT&T Dealer Agreement and the Land Line Services.

29.    AT&T reserves its rights on this issue pending the identification of the assignee.

30.    To the extent the assignee is Adeptio, AT&T requires a deposit of $3 million, equal to approximately one month of average equipment sales to the Debtors.  AT&T has requested financial information from Adeptio regarding its ability to perform under the AT&T Dealer Agreement, but to date has received no information.  Upon receipt of any information, AT&T requires a reasonable amount of time to analyze such information.

**E.    Additional Cure Claims and Issues**

31.    AT&T's cure claim is based upon there being no actions pursuant to Chapter 5, Title 11, United States Code against AT&T.  Any order or agreement providing for the assumption and assignment of the AT&T Dealer Agreement and Land Line Services must provide for a waiver of such claims.  Absent such a waiver, AT&T may have additional cure claims that will need to be satisfied by the assignee.  See In re Kiwi Airlines, 344 F.3d 311 (3d Cir. 2003).

32.    As stated above, each time the Debtors procure a customer for AT&T's wireless service, the Debtors are entitled to a commission from AT&T.  Under certain circumstances, the Debtors may have to return commissions to AT&T.  These circumstances arise when a customer cancels its AT&T service within a certain amount of time.  Upon cancellation, AT&T is entitled to a refund or credit of the commission.  There is a lag time between the Debtors'

sign up of a customer for AT&T service and that customer's cancellation of the service. As a result of this lag time, there will be post-petition cancellations/refunds relating to pre-petition customer sign ups, and there will be post-assignment cancellations/refunds relating to post-petition/pre-assignment customer sign ups. Post-assignment, a true-up will be required to settle out these commission refunds. The assignee will need to assume this refund obligation as part of AT&T's cure claim.

33. The Debtors sold various cell phones to customers with mail-in rebates. Certain of these customers selected AT&T service. In the event these rebates are not honored, the customers may cancel their AT&T service, resulting in a refund of commissions to AT&T, or may demand other concessions from AT&T. The assignee of the AT&T Dealer Agreement must agree to honor, process and pay these rebate obligations to the Debtors' customers, or agree to reimburse AT&T for any concessions extended.

34. Certain customers that the Debtors sign up for AT&T service post a cash deposit. The Debtors collect the deposit for AT&T, but instead of transferring that deposit to AT&T, AT&T credits to the customer's account an amount equal to the deposit collected by the Debtors, and then AT&T deducts the amount credited from the following month's obligations AT&T owes to the Debtors. As is the case with the commission refunds discussed above, a true-up of this amount will need to occur post-assignment, with any obligations assumed by the assignee as part of AT&T's cure claim.

### Limited Sale Motion Objection

35. AT&T objects to the Sale Motion on a limited basis related to the procedures for assumption and assignment of the AT&T Dealer Agreement and Land Line Services.

36. The assumption and assignment of an executory contract constitutes a contested matter. Bankruptcy Rule 6006(a). In a contested matter, reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought, and procedures shall be provided that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify. Bankruptcy Rules 9014(a) and (e).

37. The Sale Motion fails to specifically provide when the AT&T Dealer Agreement is to be assumed and assigned, or when the related cure issues will be satisfied.

38. In addition, the Cure Notice fails to provide when such issues will be determined by the Court.

39. Furthermore, AT&T objects to the Sale Motion to the extent that the Sale Motion in any way seeks to impair, abridge, alter, or modify the validity, extent or priority of any pre-petition or post-petition offset (including recoupment and setoff) rights of AT&T.

**WHEREFORE**, AT&T respectfully requests that the Court: (a) sustain this Objection; (b) deny the relief sought by the Debtors in the Sale Motion except to the extent clarifications or changes are made consistent herewith; and (c) grant such other and further relief as is just and proper.

Respectfully submitted this 5th day of December, 2007.

/s/ Todd C. Meyers
Todd C. Meyers
Georgia Bar No. 503756
Paul M. Rosenblatt
Georgia Bar no. 614522
KILPATRICK STOCKTON LLP
Suite 2800

US2000 10469252.2

        1100 Peachtree Street, N.E.
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6500

-- and --
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728

**Counsel for AT&T**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection of AT&T to Cure Notice and Limited Objection to Debtors' Motion to Sell Substantially All Assets and to Assume and Assign Contracts was served, by first class United States Mail, postage prepaid, and by facsimile on the parties listed below, this 5th day of December, 2007.

| | |
|---|---|
| Gregory S. Cole<br>Inphonic, Inc.<br>1010 Wisconsin Avenue, N.W.<br>Suite 600<br>Washington, D.C.  20007<br>Facsimile:  202-333-8280 | Andrew Torgove<br>Goldsmith-Agio-Helms<br>Lazard Middle Market<br>11 West 42nd Street-29th Floor<br>New York, New York  10036<br>Facsimile:  212-758-3833 |
| Thomas R. Califano<br>DLA Piper US LLP<br>1251 Avenue of the Americas<br>New York, New York  10020<br>Facsimile:  212-335-4501 | Neil B. Glassman<br>The Bayard Firm<br>222 Delaware Avenue – Suite 900<br>Wilmington, Delaware  19899<br>Facsimile:  302-658-6395 |
| David Lorry<br>Adeptio<br>c/o Cira Centre<br>2929 Arch Street<br>Philadelphia, Pennsylvania  19104<br>Facsimile:  215-609-3434 | Anup Sathy<br>John Schoenfeld<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, Illinois  60601<br>Facsimile:  312-861-2200 |

        By: /s/ Paul M. Rosenblatt
           Paul M. Rosenblatt

        KILPATRICK STOCKTON LLP
        1100 Peachtree Street, Suite 2800
        Atlanta, GA  30309
        Telephone:  (404) 815-6321
        Facsimile:   (404) 541-3373

        Counsel for AT&T