**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| INPHONIC, INC., et al, | : | Case No. 07-11666-KG |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Regarding Dkt. Nos. 12 and 146** |

**OBJECTION OF CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS TO
(A) DEBTORS MOTION (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL
ASSETS; (II) APPROVING AN ASSET PURCHASE AGREEMENT, SUBJECT TO
HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (IV) GRANTING RELATED RELIEF AND (B) NOTICE OF POSSIBLE
ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND
EXECUTORY CONTRACTS AND SALE HEARING**

Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless), by its undersigned counsel, hereby objects to (a) the Motion (I) Authorizing the Sale of Substantially All Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"); and (b) the Notice Of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing (the "Notice") of InPhonic, Inc. ("InPhonic"), and its wholly owned subsidiaries, the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support hereof, Verizon Wireless states as follows:

**Background**

1. On November 8, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. InPhonic and Verizon Wireless are parties to that certain Non-Exclusive E-Commerce Authorized Agency Agreement, Contract No. 730-06258-2002, dated January 20, 2003 (as amended from time to time, the "Agreement"), pursuant to which Verizon Wireless authorized InPhonic to, among other things, act as an agent for the sale of Verizon Wireless service and for InPhonic to purchase equipment from Verizon Wireless from time to time.

3. As of the Petition Date, InPhonic owed Verizon Wireless approximately $1,218,647.92 (the "Unpaid Pre-petition Equipment Balance") relating to InPhonic's pre-petition equipment purchases from Verizon Wireless, together with other contingent and unliquidated claims, and InPhonic is currently owed approximately $769,462.17 from Verizon Wireless for advance payments due in November 2007 ("November Advance") based on estimates related to pre-petition activations (which amounts are subject to future chargebacks and reconciliations pursuant to the terms of the Agreement). Under the Agreement, Verizon Wireless can offset and/or recoup from advance payments for deactivations that occur within a six month period after any given activation. In addition, under the Agreement, Verizon Wireless can offset and/or recoup for any amount owing to Verizon Wireless for unpaid equipment purchases from Verizon Wireless against any monies that Verizon Wireless may at any time owe to InPhonic.

4. Verizon Wireless also holds contingent and unliquidated indemnification rights and remedies under the Agreement.

5. The Debtors and Verizon Wireless are negotiating a stipulation which contemplates approval of setoff and recoupment rights, an amendment to the Agreement and certain other rights and obligations.

6. On November 9, 2007, the Bankruptcy Court entered an Order approving the Bid Procedures (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, if the Debtors

choose to assume any contract, the Debtors were to deliver a Cure Amount Notice (as defined in the Bid Procedures Order) no later than November 14, 2007, which was to include a calculation of the cure amounts that the Debtors believed must be paid.

7. Verizon Wireless was granted an extension until December 5, 2007 to file any objections to the Cure Amount Notice and/or assumption of the Agreement and to the Sale Motion.

8. Verizon Wireless received three Cure Amount Notices from the Debtors' counsel on November 27, 2007 indicating that the Pre-petition Cure Amounts (as defined in the Order) under purportedly three separate contracts were $0.00, $0.00 and $1,250,247.92. The cure notices provided only the following information:

    (a) Verizon, PO Box 920041, Dallas, TX 75392-0041---$0 ("Cure Notice #1);

    (b) Verizon, 180 Washington Valley Rd, Bedminster, NJ 07921----$0 ("Cure Notice #2"); and

    (c) Verizon Wireless Inventory, PO Box 64498, Baltimore, MD 21264-44980----$1,250,247.92 ("Cure Notice #3"). Cure Notice #1, Cure Notice #2, Cure Notice #3 are hereafter collectively referred to as "VZW Cure Notices".

### Objections

**A. The VZW Cure Notices are Deficient**

9. Verizon Wireless objects to VZW Cure Notices on the basis that:

- the notices do not adequately identify the relevant contracts by date;
- the notices do not adequately describe the contract to which such notice applied;

- the notices do not adequately identify the applicable non-debtor to such contract;

- the notices do not contain any calculations evidencing the cure amounts that the Debtors are required to pay;

- the notices do not reflect contingent and unliquidated amounts owing under the Agreement.

- Neither the notices nor the APA preserves setoff and recoupment rights for future chargebacks that are clearly contemplated by the six month true up period after advance payments are made on activations; and

- The notices were not timely provided and do not give the non-debtor party to the contract ample time to identify the potential claims under the Agreement.

10. The Debtors should be required at a minimum in good faith to identify: a) the non-debtor party to the contract; b) the contract at issue; c) the type of contract involved or a description of the services provided; and d) the amount of the pre-petition arrearage under each such contract.

11. As to Cure Notice #1 and #2, it is impossible for Verizon Wireless to even identify the contracts involved, and therefore, Verizon Wireless reserves all of its rights with respect to these notices, including its right to assert that the cure amount is not zero.

12. As to Cure Notice #3, Verizon Wireless believes that this notice refers to the Agreement given that the numbers are similar to Verizon Wireless' equipment sales records. However, while Verizon Wireless believes that the outstanding pre-petition arrearage under the Agreement as of the Petition Date is $1,218,647.92, Verizon Wireless also holds contingent and unliquidated claims more fully described in this objection. Consequently, the Cure Notice #3 is

only part of what is due and owing and that may be due and owing to Verizon Wireless at the time of assumption and thereafter.

13.  In addition, the Agreement contemplates chargebacks, setoffs and recoupments which can increase the Debtors' obligations to Verizon Wireless. Thus, these obligations to Verizon Wireless must be assumed and continue post sale/assignment to comply with section 365 of the Bankruptcy Code. Moreover, the indemnification provisions under the Agreement require a successful purchaser to indemnify Verizon Wireless from any liabilities or losses sustained by Verizon Wireless.  Therefore, to the extent any claims may be brought by the Debtor or its estate against Verizon Wireless after the date of the sale/assignment, such claims must be indemnified by the successful purchaser or released by the Debtor's estate so that Verizon Wireless has been provided its entire cure or the assignment cannot be approved pursuant to Section 365.

**B. The Sale Motion Cannot Approve Any Sale Free and Clear of Verizon Wireless' Claims and Interests.**

14.     Verizon Wireless objects to the Sale Motion to the extent it attempts to limit or restrict Verizon Wireless' rights under the Agreement to offset and/or recoup the November Advance against the Unpaid Pre-petition Equipment Balance.  The Debtors have agreed to this offset and the parties are in the process of documenting these terms.  Verizon Wireless objects to the "free and clear" language of Section 2.1 (a) of the APA[1] to the extent the Buyer seeks to divest any rights of setoff or recoupment of Verizon Wireless.  See Folger Adam Security, Inc. v. Dematteis/MacGregor, JV, 209 F.3d 252, 253-54 (3d. Cir. 2000) (holding that the affirmative defenses of recoupment and setoff do not constitute an "interest" for purposes of Section 363(f) of the Bankruptcy Code and therefore cannot be extinguished through a 363 sale).

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

15.     Verizon Wireless also objects to the Sale Motion to the extent the Debtors seek to sell free and clear of Verizon Wireless' setoff rights that exist under section 553 of the Bankruptcy Code.  The Sale Order should preserve and reserve all such rights and remedies for Verizon Wireless.

16.     Verizon Wireless also objects to the Sale Motion to the extent it attempts to limit or restrict Verizon Wireless' rights under the contract for future chargebacks in the ordinary course of business under the Agreement.   The Sale Order must preserve and reserve all rights to setoff, recoup or offset pre-petition amounts owed by InPhonic to Verizon Wireless on account of equipment sales against commissions (i.e. the advance payments which are based on estimates of what ultimately will be owed, subject to later adjustment).  Moreover, the Sale Order must preserve and reserve all rights to setoff, recoup or offset any future commissions or advance payments by the amounts of all chargebacks for deactivations in the ordinary course of business under the Agreement. Verizon Wireless also asserts that commissions accruing during the post petition period are subject to recoupment against any unpaid equipment sales.

17.     Moreover, the APA, through the defined term "Assumed Liabilities", provides that the Buyer will only assume Cure Costs associated with the liabilities and obligations of the Sellers arising from and after the Closing under the Designated Contracts.  To the extent any chargeback or indemnity obligation arises or becomes known post-Closing but relates to conduct, action, or omissions prior to the Closing date, these liabilities and obligations must be assumed by the Buyer and the APA and Sale Order must be clarified to so provide.  The Debtors must assume and assign to the Buyer the entire Agreement, including the ability to continue chargebacks in accordance with the terms of the Agreement.

18.     Verizon Wireless objects to the lack of specificity of the timing of any

assumption. The Motion merely says that the contract parties will be "timely" cured. The Sale Motion and APA lack specificity of exactly what is being assumed and the date the assumption is effective and payment is to be made.

19.     Verizon Wireless objects to Adeptio as the buyer and any other buyer unless and until Verizon Wireless is provided due diligence with respect to their ownership structure, and financial condition. At the very least, Verizon Wireless requires disclosure regarding the officers, directors or members of Adeptio and its corporate structure and activities. On at least three separate occasions, **Verizon Wireless has requested due diligence information akin to that which would normally be provided to the investors of Adeptio, the proposed buyer of substantially all the Debtors' assets. To date, no information has been provided.** Until the financial information and the sale documents have been delivered to and satisfactorily reviewed by Verizon Wireless, Verizon Wireless objects to Sale Motion and any assumption of the Agreement. Any potential assignee and/or buyer must be acceptable to Verizon Wireless under the Agreement. Absent complete and satisfactory information on Adeptio (or any other successful bidder) and its corporate structure and ownership and financial wherewithal, Verizon Wireless objects to any assumption and assignment to Adeptio and Verizon Wireless reserves all of its rights under 11 U.S.C. §365(e)(2) to reject any assignee of the Agreement.

20.     Verizon Wireless reserves the right to amend, supplement, and/or withdraw this objection.

WHEREFORE, Verizon Wireless respectfully requests that the Sale Motion should be denied and/or for such other relief as is just and proper.

Dated:  December 5, 2007 **BLANK ROME LLP**

By: */s/ Michael D. DeBaecke*
Michael D. DeBaecke (No. 3186)
Chase Manhattan Centre
1201 Market Street - Suite 800
Wilmington, DE  19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

and

Regina Stango Kelbon
Blank Rome, LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Telephone: (215) 569-5507
Facsimile: (212) 834-5507

Counsel for Cellco Partnership, on behalf of itself and its affiliated license holders d/b/a Verizon Wireless