IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| | : | |

## DEBTORS' OBJECTION TO MOTION OF INFINITE COMPUTER SOLUTIONS, INC. (I) TO COMPEL DEBTOR TO ASSUME OR REJECT THE MASTER SERVICE AGREEMENT BETWEEN ICS AND THE DEBTOR UNDER SECTION 365(d)(2) OR, ALTERNATIVELY, (II) FOR RELIEF FROM STAY UNDER SECTION 362(d)(1) TO ALLOW ICS TO TERMINATE ITS EXECUTORY CONTRACT

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, file this objection (the "Objection") to the Motion (I) to Compel Debtor to Assume or Reject the Master Service Agreement Between ICS and the Debtor Under Section 365(d)(2) or, alternatively, (II) for Relief From the Stay under Section 362(d)(1) to Allow ICS to Terminate its Executory Contract, dated November 21, 2007 (the "Motion to Compel"), filed by Infinite Computer Solutions, Inc. ("ICS"). In support of this Objection, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

The relief requested in the Motion to Compel filed by ICS is unnecessary in light of the procedures already in place to effectuate the expeditious sale of substantially all of the Debtors' assets (the "Sale") and procedures contemplating the assumption and rejection of executory

---

[1] The Debtors and the last four digits of each Debtors' federal tax identification numbers are: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and

contracts and unexpired leases (the "Designated Contracts Process"). As detailed below, the Designated Contracts Process provides for the disposition of all executory contracts—including the Master Service Agreement with ICS (the "MSA")—within the next three weeks. ICS did not object to the Designated Contracts Process, but merely demands an early decision without providing any analysis as to why special treatment is required.

The Debtors have received the list of contracts tentatively designated for assumption by the Buyer, Adeptio Funding I LLC ("Adeptio"), in the event this Court approves the Sale. At this time, Adeptio does not contemplate assumption of the MSA. It is possible, however, that the MSA will be assumed after the Sale, but ICS should know this decision fairly quickly. Moreover, the DIP budget approved by the Court adequately accounts for postpetition operating expenses incurred in the brief period prior to the Sale, including services rendered by ICS under the MSA. Accordingly, there are no legitimate reasons to justify acceleration of the assumption and rejection process or grant ICS relief from stay to prematurely terminate the MSA. Thus, the Motion to Compel should be denied.

## BACKGROUND

1. On November 8, 2007 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. The Debtors continue to possess their property and manage their business as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

3. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 cases. On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

---

(h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

4.     On the Petition Date, the Debtors filed, among other things, the following first day motions:

    a.    Motion for Entry of Interim and Final Orders (I) Authorizing and Approving Postpetition Financing; (II) Granting Liens, and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing, Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001 (c) and (d) (the "DIP Motion");

    b.    Motion for Order (I) Approving Bid Procedures Relating to Sale of Substantially All of Debtors' Assets; (II) Scheduling A Hearing to Consider the Sale and Approving the Form and Matter of Notice; (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contract, Including Notice of Proposed Cure Amounts, (IV) Approving Expense Reimbursement Provisions, and (V) Granting Related Relief ("Bid Procedures Motion"); and

    c.    Motion of the Debtors for an Order Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure: (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").

5.     On November 9, 2007, the Bankruptcy Court entered: (a) the Interim Order: (I) Authorizing and Approving Postpetition Financing; (II) Granting Liens, and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing, Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001 (c) and (d) (the "Interim DIP Order"); and (b) the Order (a) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets; (B) Scheduling a Hearing to Consider the Sale and Approving the Form and

Matter of Notice; (C) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Expense Reimbursement Provision; and (E) Granting Related Relief (the "Bid Procedures Order"), which granted the Bid Procedures Motion and established the Designated Contracts Process. The final hearing on the Sale Motion is scheduled for December 13, 2007.

6. The DIP Motion provides the Debtors with sufficient financing pursuant to a budget (the "Budget") to operate their business through the Sale.

7. On November 21, 2007, ICS filed the Motion to Compel.

## OBJECTION AND REPLY

8. The ICS Motion to Compel should be denied.

### A. THE COURT SHOULD NOT COMPEL IMMEDIATE ASSUMPTION OR REJECTION OF THE MSA UNDER SECTION 365(d)(2).

#### 1. The Debtors Must be Afforded a Reasonable Amount of Time to Decide Whether to Assume or Reject the MSA.

9. Section 365(d)(2) of the Bankruptcy Code provides that a debtor under chapter 11 "may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan." 11 U.S.C. § 365(d)(2). This provision reflects Congress' "considered judgment" that a debtor under chapter 11 should be granted significant latitude in deciding whether to assume or reject an executory contract in order to assist in the process of reorganization. NLRB v. Bildisco & Bilsdisco, 465 U.S. 513, 529 (1984). This latitude enables a debtor to "carefully evaluate the possible benefits and burdens of the executory contract" which is "vitally important" to making a prudent decision regarding assumption or rejection. In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001).

10. A party to an executory contract may petition the court to order a debtor to

4

assume or reject the contract within a specified period of time. See 11 U.S.C. § 362(d)(2). Nonetheless, a debtor is entitled to a reasonable amount of time within which to assume or reject the contract. See, e.g., In re Dunes Casino Hotel, 63 B.R. 939, 949 (D.N.J. 1986); In re G-I Holdings, Inc., 308 B.R. 196, 212-13 (Bankr. D.N.J. 2004).

11.     As this Court recently stated, "[i]n deciding whether to accelerate the debtor's decision, the court must balance the interests of the contracting party against the interests of the debtor and its estate." Physician Health, 262 B.R. at 292. Other factors used by courts to determine what constitutes a reasonable amount of time to assume or reject a contract include (1) the nature of the interests at stake, (2) the balance of the hurt to the parties, (3) the safeguards afforded those parties, and (4) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary. See Dunes Casino Hotel, 63 B.R. at 949. Above all, however, "the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is 'to permit successful rehabilitation of debtors.'" Id. (quoting Bildisco, 465 U.S. at 527).

12.     In this case, the Debtors have proposed a sale of substantially all of the Debtors' assets to Adeptio pursuant to an Asset Purchase Agreement (the "APA") and subject to higher and better offers received at the Sale. The Bid Procedures Order and APA establish the terms of the Designated Contracts Process.

13.     Under the Designated Contracts Process established by the APA, Adeptio was required to provide a list of contracts designated for assumption six (6) days prior to the contemplated Sale. Adeptio provided the list of contacts on December 6, 2007, and did not list the MSA as an executory contract it intends to assume.

14.     This does not end the assumption process. Adeptio reserves the right to designate any of the Debtors' executory contracts for assumption and assignment up through ten (10) days

5

after the closing of the Sale, which is scheduled to occur before the end of this month.[2] (APA § 2.5(b).) Accordingly, the Debtors and Adeptio have already established procedures which safeguard the interests of ICS and provide for the disposition of all executory contracts in less than three weeks from the date of this objection (and less than two months from the Petition Date). Such a short time frame for considering the status of an executory contract under section 365(d)(2) is reasonable. See, e.g., Dunes Casino Hotel, 63 B.R. at 949 (affirming the bankruptcy court's decision not to specify a time for assumption or rejection under section 365(d)(2) when the debtor's own time period for assumption was "relatively short.").

15. In contrast, a Court-imposed date for the assumption or rejection of the MSA could jeopardize the Sale and, consequently, the possibility for an effective reorganization of the Debtors. Accordingly, the marginal benefit to ICS from the assumption or rejection of the MSA prior to the deadlines already imposed under the APA is far outweighed by the detriment to the Debtors and other parties in interest that stand to benefit from the Sale and subsequent reorganization of the Debtors.

16. Thus, in light of the short time frame already provided for the disposition of executory contracts under the APA and the overriding Congressional intent to afford debtors wide latitude with respect to the assumption/rejection decision, the Motion to Compel should be denied.

## 2. The Court-Approved Budget Provides For the Payment of All Postpetition Operating Expenses.

17. The only justification ICS advances in support of the Motion to Compel is that

---

[2] Under section 2.5(b) of the APA, Adeptio may also designate a contract to be held by the Debtors and not rejected for up to 210 days following the scheduled close of the Sale (the "Held Contracts"). (See APA § 2.5(b).) However, the APA requires Adeptio to pay for any liabilities associated with the continuation of such Held Contracts. (See id.) Accordingly, the APA provides adequate safeguards of ICS in the event that the MSA is

6

they are currently providing postpetition services to the Debtors without payment which, ICS claims, is tantamount to involuntarily financing the Debtors' postpetition operations. This contention is false for a number of reasons.

18. First, the Debtors submitted a postpetition Budget as part of the DIP Motion which was approved by the Court pursuant to the Interim DIP Order. That Budget provides for, among other things, postpetition operating expenses. Accordingly, ICS's contention that they are being required to "participate, involuntarily in the financing of the Debtor's [sic] post-petition operations," is without merit; any postpetition services provided ICS are accounted for in the Budget.

19. Additionally, the APA provides substantial safeguards for the disposition of executory contracts, such as the MSA. In the event that Adeptio had decided, or does decide in the future, to assume the MSA, section 2.5(a) requires Adeptio to pay all cure costs and agree to perform and discharge all liabilities arising thereunder. In the event that Adeptio directs the Debtors to hold the MSA, section 2.5(b) requires Adeptio to reimburse the Debtors for all liabilities for the continuation of the MSA until a final decision is made. Finally, in the event that Adeptio decides to reject the MSA, the Bankruptcy Code provides ICS—and all other similarly situated parties—with a prepetition claim for rejection damages as of the Petition Pate. See 11 U.S.C. § 365(g)(1). Accordingly, both the Budget and the APA provide adequate safeguards for the rights of ICS under the MSA. In the end, ICS will be treated the same as every other similarly situated party to an executory contract in this case.

20. Because ICS does not advance any legitimate justification for accelerating the assumption/rejection decision of the MSA pursuant to section 365(d)(2), the Motion to Compel should be denied.

---

designated as a Held Contract.

7

B.  **THE COURT SHOULD NOT GRANT ICS RELIEF FROM STAY TO TERMINATE THE MSA.**

21. As an alternative basis for relief, ICS requests that the Court lift the automatic stay pursuant to section 362(d)(1) to allow it to prematurely terminate the MSA. As with ICS's request under section 365(d)(2), this relief is unnecessary in light of the rapidly approaching Sale and substantial protections afforded ICS under the Budget and APA.

22. Section 362(d)(1) provides that the court shall grant relief from stay "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). No cause exists to warrant relief from stay in this case. As discussed above, the Sale is scheduled to close in less than three weeks, at which point, the Debtors—at the direction of Adeptio—will make a determination as to the status of the MSA. Accordingly, there is no harm in allowing the Sale process to run its course and provide the Debtors with the highest probability for a successful reorganization. However, if the Court grants ICS relief from stay to prematurely terminate the MSA, it could forestall the Sale process to the detriment of the Debtors, Adeptio and various other parties in interest. Indeed, under this scenario, ICS itself would forego the possibility that Adeptio will decide to assume the MSA and cure all arrearages owed thereunder. Consequently, such result is not in the best interest of any party in this case and is unwarranted under the circumstances.

23. ICS's only argument in support of its request for relief from stay is the same baseless argument it advances in support of relief under section 365(d)(2); namely, that by providing postpetition services to the Debtors, ICS is somehow funding the Debtors' postpetition operations without the hope of repayment or benefit of a postpetition security interest. This argument, however, is without merit for the reasons discussed earlier. ICS is not funding the postpetition operation of the Debtors. Any postpetition services provided by ICS under the MSA are accounted for in the Budget approved by this Court as part of the Interim DIP Order.

Accordingly, no cause exists to warrant relief from stay for ICS to prematurely terminate the MSA. As such, the Court should deny the Motion to Compel.

## CONCLUSION

24. The Debtors respectfully request that this Court deny the Motion to Compel and grant such other and further relief as this Court deems just and proper.

Date:  December 10, 2007
       Wilmington, Delaware

Respectfully submitted,

THE BAYARD FIRM

By: /s/ Neil B. Glassman
Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone:  (302) 655-5000
Facsimile:   (302) 658-6395

And

**DLA PIPER US LLP**

Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:   (212) 335-4501

Counsel for Debtors
and Debtors in Possession