IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INPHONIC, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing Date: December 13, 2007 at 10:00 a.m.** |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO MOTION FOR AN ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS; (II) APPROVING AN ASSET PURCHASE AGREEMENT, SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned proposed counsel, file this omnibus reply (the "Reply") to objections filed to the Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").[2]  In support of this Reply, the Debtors respectfully state as follows:

---

[1] The Debtors and the last four digits of each Debtors' federal tax identification numbers are:  (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

[2] Capitalized terms shall have the meaning ascribed to them in the Sale Motion unless otherwise defined herein.

## PRELIMINARY STATEMENT

The only substantive objection to the relief sought in the Sale Motion was filed by the Committee in what appears to be yet another attempt to extort funding from the Debtors' prepetition secured lender and the proposed purchaser of substantially all of the Debtors' assets, Adeptio INPC Funding, LLC ("Adeptio"), in the only viable method of restructuring, the proposed asset sale (the "Sale"). The Committee appears to believe that Adeptio, which, among other things, is providing a $25 million in debtor in possession financing (the "DIP Financing"), nearly all of which inures to the benefit of the Debtors' employees and unsecured creditors, is obligated to provide a distribution to unsecured creditors. Nothing in the Bankruptcy Code or applicable law requires Adeptio to "pay off" the unsecured creditors as part of a bankruptcy process.

This theme, despite the absence of supporting law or fact, is repeated in the Committee's objection to DIP Financing, motion to dismiss and motion to reconsider the bid procedures and is the subject of the extensive pleadings. Accordingly, this Omnibus Reply will focus on the newest unsupported obligations in the Committee's Objection and incorporate the Debtors' prior responsive pleadings addressing the Committee's allegations. Ultimately, as has been established, these bankruptcy cases will benefit numerous parties, including the Debtors' estates, employees and unsecured creditors. The Debtors intend to negotiate a plan term sheet with Adeptio that will provide for funding of a plan and liquidating trusts for the benefit of unsecured creditors.

In addition to the Committee's substantive objection to the Sale Motion, the Debtors received an objection from the Office of the United States Trustee ("UST") with respect to newly-enacted provisions of the Bankruptcy Code (title 11 of the United States Code) regarding

consumer credit transactions (section 363(o) of the Bankruptcy Code) and with respect to the sale of personally identifiable information (section 363(b)(1) of the Bankruptcy Code). The Debtors have agreed to language in the order approving the proposed sale which will resolve the UST's concerns about section 363(o) of the Bankruptcy Code. In addition, earlier in these cases the Debtors filed a Supplement (defined below) which addresses the UST's concerns relating to personally identifiable information.

Finally, the Debtors received several responses (collectively, the "Cure Objections") to the cure notices (the "Cure Notices") circulated to non-Debtor parties to executory contracts and unexpired leases that may be assumed by the Debtors and assigned to Adeptio. Parties who filed Cure Objections are hereinafter referenced as "Contract Parties". As set forth below, the Cure Objections are premature and should not be entertained by the Court at this time because the Debtors are currently not contemplating the assumption of any of the contracts of the Contract Parties.

For the reasons set forth herein, the Debtors request that the Court overrule the objections and grant the relief requested in the Sale Motion.

## PLEADINGS RELATING TO THE SALE MOTION

1.      On the Petition Date, the Debtors filed the Sale Motion. Pursuant to the Sale Motion, the Debtors sought authority to conduct the Sale to Adeptio, or such other higher or better bidder, pursuant to the terms of that certain Asset Purchase Agreement between the Debtors and Adeptio, dated November 8, 2007 (the "APA"). In connection with the Sale Motion, the Debtors filed a Motion for an Order (i) Approving Bid Procedures Relating to Sale of Substantially all of the Debtors' Assets; (ii) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (iii) Establishing Procedures Relating to Assumption

and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (iv) Approving Expense Reimbursement Provision; and (v) Granting Related Relief (the "Bid Procedures Motion"). On November 9, 2007, this Court entered an order approving the Bid Procedures Motion (the "Bid Procedures Order").

2.    The proposed sale to Adeptio, or any other purchaser, pursuant to the Sale Motion implicates the Debtors' list of personal customer information. This list contains certain personally identifiable information (the "Personally Identifiable Information"), as defined in section 101(41A) of the Bankruptcy Code,[3] collected and retained from the Debtors' customers as a result of the Debtors' offering of products and services through their subsidiary sites, agents, contractors and business affiliates.

3.    On November 9, 2007, the Court conducted hearings on various "first day" motions, including the Sale Motion. At the hearing, the UST suggested that the Debtors should request clarification from the Court regarding the need for appointment of a Consumer Privacy Ombudsman under sections 104(41A), 322 and 363 of the Bankruptcy Code[4] in light of the transfer of the Personally Identifiable Information contemplated under the Sale Motion and Bid Procedures Motion.

---

[3] The term "personally identifiable information" means: (a) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purpose (i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name; (ii) the geographical address of a physical place of residence of such individual; (iii) an electronic address (including an e-mail address) of such individual; (iv) a telephone number dedicated to contacting such individual at such physical place of residence; (v) a social security account number issued to such individual; or (vi) the account number of a credit card issued to such individual; or (b) if identified in connection with one or more of the items of information specified in subparagraph (a)(i) a birth date, the number of a certificate of birth or adoption, or a place of birth; or (ii) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically. 11 U.S.C. § 101(41A).

[4] 11 U.S.C. § 332(a), as amended by Pub. L. No. 109-8, § 231(a) (2005), is effective in cases commenced on or after October 17, 2005, requires this Court to order the UST to appoint one disinterested person to serve as a Consumer Privacy Ombudsman "if a hearing is required under section 363(b)(1)(B) of the Bankruptcy Code."

4.     On November 14, 2007, the Debtors filed a Supplement to the Motion of the Debtors for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Supplement").  The Supplement sets forth in detail the facts and anticipated treatment of all Personally Identifiable Information implicated in the Sale and is incorporated herein by reference.

5.     The Debtors received the following objections to the Sale Motion:

   a.     United States Trustee's Objection to the Debtor's Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "UST Objection"); and

   b.     Objection of the Official Committee of Unsecured Creditors to the Motion of Debtors for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Committee Objection").

6.     Between November 14 and 21, 2007, the Debtors served Cure Notices on the Designated Contract Parties upon the non-debtor parties to executory contracts that the Debtors believe may be assumed and assigned in connection with the Sale.

7.    The Debtors received the following Cure Objections:

    a.    Objection of NEA's Member Benefits Corporation to Cure Amounts;

    b.    Objection by Comparewirelessrates, LLC and Myrateplan.com, LLC to Proposed Cure Amount;

    c.    Objection of Spanco Telesystems & Solutions LTD to Motion of Debtors for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief;

    d.    Limited Objection of Microsoft Licensing, Inc. and MSN to Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing and to Debtor's Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief;

    e.    Objection of Yellow Page Authority, LTD to Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing;

    f.    Objection to Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Verizon Business Objection");

    g.    Objection of Randall Van Dyke & Associates, Inc., d/b/a RNA, Inc. to Cure Amount;

    h.    Limited Objection of Sprint Nextel Corporation to the Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets;

(II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief;

i.      Objection of Qualution Systems, Inc. to Motion of Debtors for Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief;

j.      Cure Objection of mForce, Inc. to Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing;

k.      Objection of Cellco Partnership d/b/a Verizon Wireless to (A) Debtors Motion (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief and (B) Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing;

l.      Limited Objection of GSI Commerce Solutions, Inc. ("GSI") to the Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief;

m.      Objection of AT&T to Cure Notice and Limited Objection to Debtors' Motion to Sell Substantially All Assets and to Assume and Assign Contracts;

n.      Limited Objection of T-Mobile USA, Inc. to Motion of Debtors for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief; and

o.    Objection of USCC Distribution Co., LLC to Proposed Cure Amount.

p.    Limited objection of Alltel Communications, Inc. to the Debtors' Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing.[5]

## REPLY

8.    The UST Objection, the Committee Objection and the Cure Objection should be overruled and the Sale Motion should be granted in its entirety.

A.    **The Debtors Have Addressed the UST's Concerns**

9.    The UST's Objection seeks clarification that the Sale will not be free and clear of claims and defenses that are related to a consumer credit transaction subject to the Truth in Lending Act or any consumer credit contract as defined by Bankruptcy Code section 363(o). Further, the UST Objection seeks to have any bid procedures order clarify that neither its provisions nor those in the sale order will abridge or modify the newly-added protections of this subsection of the Bankruptcy Code.

10.    The Debtors have agreed, and Adeptio has consented, to include the following language, subject to final review of all parties, in the sale procedure order or sale order:

> Consumer Credit Transactions/Contract Liability. The Purchaser shall remain subject to all claims and defenses that related to any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time) hereby transferred to the same extent as Purchaser would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

11.    The Debtors believe the addition of this language satisfies the UST's concern over the transfer of liability pursuant to Bankruptcy Code section 363(o) raised in the UST Objection.

In the event that this language is not satisfactory to the UST, the Debtors reserve the right to respond to the relief sought in the UST Objection.

12.     The UST also seeks clarification to determine whether a consumer privacy ombudsman needs to be appointed under section 363(b)(1) of the Bankruptcy Code.  At the initial hearing in these cases, the UST suggested that the Debtors should request clarification from the Court regarding the need, or lack thereof, for appointment of a Consumer Privacy Ombudsman under Bankruptcy Code section 322[6] in light of the transfer of the Personally Identifiable Information contemplated under the Sale Motion and Bid Procedures Motion. Subsequent to the UST's comments at the initial hearing in these cases, and prior to the UST's, the Debtors filed the Supplement.  The Supplement states, _inter alia_, that the Debtors have a privacy policy (the "Privacy Policy") with respect to the personally identifiable information.  As set forth in the Supplement, the Privacy Policy does not prohibit the transfer of personally identifiable information to third parties.  In addition, the proposed sale to Adeptio is consistent with the Privacy Policy.  Therefore, the Sale Motion may be considered and approved pursuant to section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy ombudsman.

13.     The Supplement sets forth in detail the facts and anticipated treatment of all Personally Identifiable Information implicated in the Sale and is incorporated herein by reference.   The Debtors believe the Supplement sufficiently addresses the UST's concerns relating to Personally Identifiable Information.

---

[5] It should be noted, Alltel Communications, Inc. also filed an Emergency Motion for Extension of Time to Object contemporaneously with their late filed objection to cure amount on December 7, 2007.

[6] 11 U.S.C. § 332(a), as amended by Pub. L. No. 109-8, § 231(a) (2005), is effective in cases commenced on or after

B.    **The Committee Objection Should be Overruled.**

14.    The Committee Objection, their latest attempt to extort a contribution from Adeptio, repeatedly demands that Adeptio "pay to play" as part of the chapter 11 process. The advantages to the Sale are clear:  (a) Adeptio is providing $25 million in DIP Financing, the majority of which inures directly to the benefit of unsecured creditors and employees; (b) the Sale preserves the jobs of over 400 employees; (c) Adeptio is responsible for picking up substantial cure obligations under the Designated Contracts; (d) the Sale preserves a business entity going forward to the benefit of unsecured creditors; and (e) the Debtors have preserved a significant asset of the Debtors' estates, a $35 million directors and officers insurance policy, for the benefit of unsecured creditors in a liquidation.  The Sale is clearly a legitimate and proper use of the Chapter 11 process for the benefit of the Debtors' entire estates, not just Adeptio as a secured creditor.

15.    Instead of focusing on the benefits of the Sale Motion, the Committee focuses on several facts designed to mislead the Court in an effort to deny the Sale Motion.  As alleged in several of the papers filed in these cases and at multiple hearings, the Committee repeatedly refers to the "steep discount" obtained by Adeptio in purchasing the Debtors' prepetition debt. The Committee fails, however, at any point to identify the relevance of this fact.

(a)    **No Cause Exists For Disallowance of Adeptio's Credit Bid.**

16.    As with the Committee's other attempts to derail the legitimate sale of the Debtors' assets in these cases, the Committee again fails to provide any legal or factual justification that the Court should disallow Adeptio's credit bid.  In fact, the Committee admits

---

October 17, 2005, and requires the court to order the UST to appoint a disinterested person to serve as a Consumer Privacy Ombudsman "if a hearing is required under section 363(b)(1)(B) of the Bankruptcy Code."

that the contemplated Sale is not improper, but asserts that it violates the "spirit" of the Bankruptcy Code. See Committee Objection, ¶ 22. As discussed herein and in other filings, there are clear legitimate purposes to the Sale.

17.    The Committee fails to establish or even make reference to any evidence or authority that would support a finding by the Court that "cause" exists for disallowing a credit bid by Adeptio. In fact, the Committee's focus on the consideration paid by Adeptio in purchasing the prepetition secured claims has been rejected by the Third Circuit or the "allowed" nature of prepetition secured claims.

18.    In Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Systems Corp.), 432 F.3d 448 (3d Cir. 2006), the Third Circuit examined the permissibility of credit bidding under section 363(k). In that case, the Third Circuit permitted a purchaser to credit bid the entire face amount of various lenders' claims. Id. at 459. In so doing, the Court of Appeals noted that "it is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)." Id.

19.    Moreover, the Third Circuit in SubMicron was not concerned by the fact that the claims that were credit bid by the purchaser had not yet been allowed as secured claims. Nor was the Third Circuit concerned that those claims could not have been allowed as secured claims under Bankruptcy Code section 506 due to a lack of collateral. See id. at 459 ("§ 506(a) is inapplicable .... That is, § 363(k) speaks to the full face value of a secured creditor's claim, not to the portion of that claim that is actually collateralized as described in § 506.").

20.    Indeed, the Third Circuit stated that requiring allowance of a claim as a secured claim under Bankruptcy Code section 506 prior to the use of a credit bid would be "nonsensical,"

concluding that such a requirement would contravene the purposes of Bankruptcy Code section 363. See id. at 460-61 ("[N]o § 506 valuation is required before a § 363 sale of the underlying collateral can be approved. Section 363 attempts to avoid the complexities and inefficiencies of valuing collateral altogether by substituting the theoretically preferable mechanism of a free market sale to set the price." (emphasis in original)); see also In re Suncruz Casinos, LLC, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003) (citing cases, legislative history, and treatises, and determining that "the secured creditor may credit bid its entire claim, including any unsecured deficiency portion thereof.").

21.     Again the Committee pleads for additional time to investigate Adeptio's acquisition of the secured debt, but instead of focusing on the investigation, the Committee remains focused on trying to extort funds through unsubstantiated allegations of impropriety in the absence of any evidence of wrongdoing. The Committee has now been in the case over three weeks, but has chosen to pursue a motion practice strategy rather than addressing the underlying facts.

22.     Somewhat curiously, the Committee attempts to support its objection to the Sale Motion by requesting a lengthy trial similar to that which occurred in In re Radnor Holdings, Inc., Case No. 06-10894 (PJW) (Bankr. D. Del 2006). In Radnor, this Court dismissed extremely similar allegations by a committee that sought to derail a sale of substantially all of the debtors' assets to a buyer (who was also the debtors' prepetition lender) bidding a portion of the secured creditor's prepetition debt. The Radnor committee raised virtually the same objections to the proposed sale as the Committee does here (objections to credit bidding, bankruptcy for the benefit of secured creditors, assets sufficiently unsecured that no bidding would take place), which objections were overruled in their entirety. In fact, the bald assertions by the Committee

regarding collusion and conflicts of interest in these cases were issues in <u>Radnor</u> because certain of the buyer's board members had significant relationships with the buyer. None of these facts are present in these cases.

23.    This argument shows the true nature of the Committee's Objection to the Sale Motion and other pleadings, notwithstanding the absence of any credible assertion of collusion or impropriety, the Committee would rather encourage this Court to use the threat of a lengthy trial and the costs attendant thereto to force Adeptio to fund a distribution. This behavior cannot and should not be condoned by this Court absent any evidence of bad faith or collusions.

(b)    <b>The Releases Provided in the APA are Properly Issued to Adeptio.</b>

24.    The Committee then continues its pattern of citing authority with zero factual foundation as a basis for arguing that the releases granted to Adeptio are improper due to the absence of good faith with respect to the proposed Sale. The Committee makes a number of allegations including: (a) the sale price may have been controlled by agreement with potential bidders (Committee Objection, ¶ 30); (b) that the proposed sale and releases are somehow fraudulent release (<u>Id.</u>, ¶ 31); and (c) the releases are essentially settlements pursuant to Bankruptcy Rule 9019 that should not be approved based on the record (<u>Id.</u>, ¶ 32-33).

25.    Here, the Committee fails to even allege that bad faith is present in this deal, much less provide any evidence of agreements between the parties. As established before this Court, the APA was negotiated at arms' length, there was no relationship between Adeptio and the Debtors prior to Adeptio's purchase of the prepetition secured debt. Indeed, Adeptio acquired the secured debt only one week prior to the Petition Date, there is zero risk of any improper relationship or any bad faith conduct to develop.

26.    To the contrary, the record makes it clear that the sale process and the APA result from arms length, good faith negotiations.    There is no <u>allegation</u> that the Debtors hare not actively marketing the assets.    Prepetition, the Debtors retained Goldsmith Agio Helms Securities ("<u>GAH</u>") as an investment banker and marketed the Debtors' assets extensively.    The result of this process was the Adeptio bid.    As discussed extensively in other pleadings filed by the Debtors, there are no indicia of bad faith with respect to the proposed Sale.

27.    The benefits of the Sale to the Debtors' estates have been argued in virtually all of the pleadings filed by the Debtors in these cases.    The reduction of $50 million in secured debt is certainly sufficient consideration for providing Adeptio with releases for any potentially improper conduct, if any exists, since November 2, 2007.

28.    The Committee then argues that the proposed releases should be considered settlements and judged pursuant to the standard under Bankruptcy Rule 9019.    Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

29.    Compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interest in expediting administration of the bankruptcy estate. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996).    A bankruptcy court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement.    The court can give weight to the trustee's or debtor in possession's informed judgment that a compromise is fair and equitable.    The court can also give weight to the competency and experience of counsel who support the settlement. <u>Six West Retail Acquisition,</u>

Inc. v. Loews Cineplex Entertainment Corp. (In re Loews Cineplex Entertainment Corp.), 286 B.R. 239, 248 n.13 (S.D.N.Y. 2002).

30.    As reiterated by numerous courts, "a bankruptcy court is not required to hold a mini-trial on the merits of the settlement.  Instead, it is charged with 'canvassing the issues to determine whether the settlement falls below the lowest point in the range of reasonableness.'" In re Enron Corp., 2003 U.S. Dist. LEXIS 1383 at*6 (S.D.N.Y. Jan. 31, 2003) (affirming bankruptcy court order approving settlement) (quoting In re Interstate Cigar Co., 240 B.R. 816, 822 (E.D.N.Y. 1999)); Abeles v. Infotechnology (In re Infotechnology), 1995 U.S. App. LEXIS 39883 at *4-5 (2d Cir. Nov. 9, 1995) (the court should not substitute its business judgment for that of the debtor in possession).

31.    The proposed Sale certainly falls above the lowest point of reasonableness.  The Sale allows for the continuation of the Debtors' operations as a going concern, benefiting unsecured creditors and employees.  In addition, the reduction of $50 million in secured claims against the Debtors is another substantial benefit.  The proposed Sale satisfies the standard of approval under Bankruptcy Rule 9019.

32.    The absence of even a scintilla of evidence of any bad faith conduct on behalf of the Debtors or Adeptio justifies the overruling of the Committee Objection with respect to the proposed releases to Adeptio.

### c.    The Debtors Are Permitted to Sell Avoidance Actions.

33.    The Committee asserts that the Debtors are not permitted to sell avoidance actions, citing In re Cybergenics Corp., 226 F.3d 308 (3d Cir. 2002).  See Committee Objection, ¶ 37. Again, the Committee misquotes applicable authority in an effort to discredit the proposed

Sale. In Cybergenics, the Third Circuit held that only fraudulent conveyances cannot be transferred, not all avoidance actions and, in particular, not preferences. Cybergenics Corp., 226 F.3d at 320; In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, 321-22 (3d Cir. 2003) (discussing sale of preference in context of contracts assumed by the purchaser of substantially all of the debtors' assets, holding that the preference cause of action was properly sold to buyer).

34.     The sale of avoidance actions to Adeptio is completely appropriate. The sale of avoidance actions with respect to the assumed contracts is calculated to ensure that the Designated Contract Parties cooperate with Adeptio during the transition and is not an effort to deprive unsecured creditors of potential assets.

35.     In addition, the proposed transfer of avoidance actions with respect to preference is critical to facilitating the proposed Sale. If the Committee's argument were to prevail, than it would undermine the use of Bankruptcy Code 365 to assume and assign contracts as part of a contemplated sale of substantially all of debtor's assets. If the Committee could later assert a preference claim against a Designated Contract Party, it would have one of two consequences: (a) cause the Debtors to incur additional administrative expenses in light of the contemplated assumption and assignment; or (b) force Adeptio to pay for additional assumed liabilities pursuant to the terms of the APA. Neither consequence is justified under the circumstances of this case.

### (d)     The Unsubstantiated Allegations in the Committee's Motion to Dismiss Do Not Justify Denying the Sale Motion.

36.     The Committee then asserts that the argument in their motion to dismiss constitute a sufficient basis for deny the Sale Motion and proceeds to quote, verbatim, the authorities cited in the motion to dismiss. See Committee Motion, ¶¶ 38-48. The Debtors respectfully refer this

Court to the Debtors' objection to the motion to dismiss and authority that a sale of substantially all of the Debtors' assets is wholly appropriate under the circumstances of these cases.

37.     Although the Debtors are losing money at the rate of approximately $3.2 million per week, the Debtors have put forth a financing structure and sale transaction which allows the Debtors to continue operations through a Sale, resolve in excess of $50 million in secured claims, pay all administrative claims, and pay an as of yet undetermined amount of unsecured cure claims, all without prejudicing the rights of unsecured creditors.  At the same time, the Debtors have preserved significant assets for the estate and remain able to propose and confirm a liquidating plan after a sale is consummated.  The Committee's objection to the Sale Motion, as with its motion to dismiss, is simply an attempt to extort a payment from the assets being sold by a group with no economic interest in those assets.  Thus, the reasons for dismissal offered in the Committee's motion to dismiss are equally devoid of factual or legal support in the context of the Committee Objection to the Sale Motion.

38.     The Committee again implies and asserts, with no factual evidence or applicable authority, that Adeptio's "voluntary" involvement and desire to have the Sale approved by this Court is a basis for denying the Sale Motion because Adeptio does not intend to fund a plan of liquidation.  Setting aside the fact that the Committee can provide no authority that requires secured lenders and proposed purchasers to fund a plan, the Debtors and Adeptio have committed to funding a plan of liquidation and liquidating trust for the benefit of unsecured creditors.

        (e)      **The Court is Not Required to Hold Adeptio Liable for All Administrative Claims and the APA is sufficiently clear as to Assumed Liabilities and Designated Contracts**

39.     The Committee then asserts, again without basis, that the APA is full of "double talk" and it is unclear whether Adeptio is assuming the Designated Contracts, assuming related liabilities and is paying other administrative expenses.   As the Court is well aware, there is a pending motion for final approval of DIP Financing in the amount of $25 million to finance administrative expenses through closing, including all operating expenses.

40.     With respect to the Designated Contracts, the APA clearly provides that Adeptio it responsible for all cure costs associates with any executory contract or unexpired lease that is assumed by the Debtors and assigned to Adeptio pursuant to the APA.   The APA does not provide that Adeptio is entitled to "change their mind" and establishes firm deadlines for the designation of assumed contracts:    (a) by December 6, 2007, Adeptio must specify the Designated Contracts (i.e. contracts that Adeptio may assume), which Adeptio did; (b) by the commencement of the hearing on the Sale Motion, currently scheduled for December 13, 2007, Adeptio must specify which contracts will be assumed and pay the cure costs at the closing; (c) ten days after closing, Adeptio can compel the Debtors to put certain contracts on hold pending a determination by Adeptio on the assumption or rejection of the contracts; and (d) 210 days from closing, Adeptio shall have provided notice of assumption and, if so, Adeptio is required to satisfy all applicable cure costs.

41.     The Committee repeatedly, asserts that Adeptio attempts to burden the Debtors' other creditors with the costs, expenses, and burden of administering both the Debtors' cases and the proposed sale.   These allegations, however, are plainly false.   To the contrary, Adeptio has agreed to bear the brunt, if not all, of the burdens associated with the proposed Sale.

42.    The APA is sufficiently clear as to which obligations and contracts will be assumed by the Adeptio pursuant to the sale and Adeptio is not required, nor is it possible at this time, for Adeptio to designate which obligations and which contracts and leases it will assume and pay as a condition of the Sale

43.    For the reasons stated herein, the Committee Objection should be denied in its entirety.

C.    **The Cure Objections Are Premature**

44.    Between November 14 and 21, 2007, the Debtors served their "Cure Amount Notice" upon those non-debtor parties to executory contracts that the Debtors thought they might assume and assign in connection with the Sale.  To date, the following Contract Parties have filed Cure Objections:

| | |
|---|---|
| NEA's Member Benefits Corporation | Comparewirelessrates, LLC and MyRatePlan.com, LLC |
| Spanco Telesystems & Solutions LTD | Microsoft Licensing, Inc. and MSN |
| Yellow Page Authority, LTD | Verizon Business f/k/a MCI Worldcom |
| Randall Van Dyke & Associates, Inc. d/b/a RNA, Inc. | Sprint Nextel Corporation |
| Qualtion Systems, Inc. | mForce, Inc. |
| Cellco Partnership d/b/a Verizon Wireless | GSI Commerce Solutions, Inc. |
| AT&T | T-Mobile USA, Inc. |
| USCC Distribution Co., LLC | Alltel Communications, Inc. |

45.    Pursuant to the APA, Adeptio was required to give the Debtors a list of executory contracts to be assumed and assigned (collectively, the "Designated Contracts") on or before six (6) days prior to the date of the Auction (i.e. December 6, 2007).  Adeptio provided the Debtors with its list of Designated Contracts on December 6, 2007 and none of the Contract Parties'

executory contracts appear on that list.   Nevertheless, the APA provides that Adeptio shall have until ten (10) days after the closing on the Sale to provide the Debtors with a list of those contracts Adeptio would like the Debtors to "hold" (collectively, the "Held Contracts") for a two hundred ten (210) day period.   During this period, Adeptio (a) will decide which of the Held Contracts should be assumed and assigned[7] and (b) is liable to the Debtors for all liabilities under the Held Contracts.

46.   Thus far, none of the Contract Parties is a party to a Designated Contract.   The Debtors are therefore not currently contemplating assuming and assigning those contracts. Accordingly, the Cure Objections are premature and should not be entertained by the Court at this time.   If any of the Contract Parties' executory contracts are ultimately designated as Held Contracts and the Debtors seek to assume and assign those contracts in the future, the Court can address any applicable Cure Objections at that time.[8]   Addressing the Cure Objections now will only serve to distract from the Sale process and unnecessarily delay these proceedings.

47.   Even if the Debtors choose to proceed with assuming and assigning an executory contract subject to a Cure Objection at the Sale Hearing, the Bid Procedures Order provides a mechanism by which all such objections should be resolved.[9]   The Debtors will first attempt to

---

[7]   The Debtors will move to reject all executory contracts not assumed and assigned during this period.

[8]   T-Mobile USA, Inc. ("T-Mobile"), Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") and AT&T Mobility II, LLC and its affiliates including AT&T, Inc. (collectively, "AT&T") are Contract Parties. They also filed objections on other grounds relating to the possible assumption and assignment of their respective contracts. T-Mobile and Verizon Wireless object to the extent that the Debtors seek to sell their assets, free and clear of the respective security interests and offset rights of T-Mobile and Verizon Wireless.   Similarly, AT&T objects to the sale to the extent the Debtors seek to impair AT&T's pre and post-petition recoupment and offset rights.   The Debtors are negotiating assumption agreements with Verizon Wireless, AT&T and Sprint.   The Debtors intend to have stipulations finalized prior to the hearing on the Sale Motion.   As for T-Mobile, the Debtors may negotiate a stipulation with them as well but have not entered into substantive negotiations.   If the Debtors do not have a stipulation with T-Mobile by the date of the Sale Motion, the Debtors will reject the contract and T-Mobile's equipment (of which, the Debtors believe, there is a de minimus amount) will be returned.

[9]   The Bid Procedures Order provides, in pertinent part, as follows:

resolve the Cure Objections, one by one, by stipulation. If the Debtors are not able to amicably resolve the Cure Objections, Adeptio or any other successful purchaser is required to segregate any disputed cure amounts pending a resolution. Thus, the Contract Parties will not be prejudiced if the Sale or the assumption and assignment of their contracts is approved because sufficient funds to satisfy cure amounts will be reserved pending further Court order. As a result, the Cure Objections should not delay the Sale or the assumption and assignment of any executory contracts.

48.    To the extent any of the Cure Objections purport to object to the Sale or the Debtors' proposed assumption and assignment of any executory contracts, all such objections should be overruled. If the Debtors do decide to assume and assign any of the Contract Parties' executory contracts at the Sale Hearing and the Debtors are not able to resolve the Cure Objections prior to that date, the Debtors request that the Court schedule evidentiary hearings for each of the applicable Cure Objections as necessary.

49.    The Debtors reserve their rights to raise additional arguments in opposition to the Cure Objections and respond to any additional Cure Objections that are filed after the date hereof.

---

14.    In the event that a Cure Amount Objection is timely filed [and] . . . In the event that the Debtors and the non-debtor party to the Designated Contract cannot consensually resolve the Cure Amount Objection, the successful bidder or any other assignee will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

15.    Hearings on Cure Amount Objections may be held (a) at the Sale Hearing, or (b) on such other date as this Court may designate upon motion by the Debtors, provided that if the subject Designated Contract is assumed and assigned, the Cure Cost asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the successful bidder or any other assignee pending further order of this Court or mutual agreement of the parties.

## CONCLUSION

50.   The Debtors respectfully request that this Court overrule the objections filed to the Sale Motion and grant such other and further relief as this Court deems just and proper.

Date:   December 10, 207
       Wilmington, Delaware

Respectfully submitted,

**THE BAYARD FIRM**

By:_____
Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:   (302) 655-5000
Facsimile:   (302) 658-6395

     and

**DLA PIPER US LLP**

Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York  10020
Telephone:   (212) 335-4500
Facsimile:   (212) 335-4501

Counsel for Debtors
and Debtors in Possession