EXHIBIT 5

EXECUTION COPY

INPHONIC PLEDGE AGREEMENT

dated as of November 7, 2006

among

THE LOAN PARTIES FROM TIME TO TIME PARTY HERETO

and

CITICORP NORTH AMERICA, INC.
as Administrative Agent

# TABLE OF CONTENTS[*]

Page

## ARTICLE I
## DEFINITIONS

Section 1.01   Terms Defined in the Credit Agreement ...................................................1
Section 1.02   Terms Defined in the UCC...................................................................1
Section 1.03   Additional Definitions.........................................................................1
Section 1.04   Terms Generally..................................................................................7

## ARTICLE II
## THE SECURITY INTERESTS

Section 2.01   Grant of Security Interests...................................................................7
Section 2.02   Security Interests Absolute..................................................................8
Section 2.03   Continuing Liability of the Loan Parties..............................................9

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Section 3.01   Title to Collateral ...............................................................................9
Section 3.02   Validity, Perfection and Priority of Security Interests .........................10
Section 3.03   Collateral............................................................................................10
Section 3.04   No Consents ........................................................................................10

## ARTICLE IV
## COVENANTS

Section 4.01   Delivery of Collateral..........................................................................11
Section 4.02   Delivery of Perfection Certificate; Filing of Financing Statements and Delivery of Search Reports ...............................................................................11
Section 4.03   Change of Name, Identity, Structure or Location; Subjection to Other Security Agreements ......................................................................................11
Section 4.04   Further Actions....................................................................................12
Section 4.05   Disposition of Collateral ......................................................................12
Section 4.06   Additional Collateral ...........................................................................12
Section 4.07   Information Regarding Collateral ........................................................12

## ARTICLE V
## DISTRIBUTIONS ON COLLATERAL; VOTING

Section 5.01   Right to Receive Distributions on Collateral; Voting. .........................13

## ARTICLE VI
## GENERAL AUTHORITY; REMEDIES

Section 6.01   General Authority................................................................................14

[*]   The Table of Contents is not a part of the Pledge Agreement.

Table of Contents (Cont.)

Page

Section 6.02    Remedies upon Event of Default. ........................................................15
Section 6.03    Securities Act. .........................................................................16
Section 6.04    Other Rights of the Administrative Agent. ................................................17
Section 6.05    Limitation on Duty of Administrative Agent in Respect of Collateral ......................18
Section 6.06    Waiver and Estoppel. ..................................................................18
Section 6.07    Application of Proceeds. ...............................................................18

## ARTICLE VII
## THE ADMINISTRATIVE AGENT

Section 7.01    Concerning the Administrative Agent.....................................................19
Section 7.02    Appointment of Co-Administrative Agent..................................................19
Section 7.03    Appointment of Sub-Agents..............................................................19

## ARTICLE VIII
## MISCELLANEOUS

Section 8.01    Notices................................................................................20
Section 8.02    No Waivers; Non-Exclusive Remedies.....................................................20
Section 8.03    Compensation and Expenses of the Administrative Agent; Indemnification.......20
Section 8.04    Enforcement............................................................................22
Section 8.05    Amendments and Waivers ................................................................22
Section 8.06    Successors and Assigns.................................................................22
Section 8.07    Governing Law..........................................................................22
Section 8.08    Limitation of Law; Severability. ......................................................23
Section 8.09    Counterparts; Effectiveness............................................................23
Section 8.10    Additional Loan Parties................................................................23
Section 8.11    Termination; Release of Loan Parties. .................................................23
Section 8.12    Entire Agreement ......................................................................24
Schedules:
        Schedule I    -   List of Pledged Shares
        Schedule II   -   List of Pledged Notes
        Schedule III  -   List of Pledged LLC Interests
        Schedule IV   -   List of Pledged Partnership Interests

Exhibits:

        Exhibit A    -   Form of Issuer Control Agreement
        Exhibit B    -   Form of Securities Account Control Agreement

ffny03\rosenke\670234.5

PLEDGE AGREEMENT dated as of November 7, 2006 (as amended, modified or supplemented from time to time, this "<u>Agreement</u>") among the LOAN PARTIES from time to time party hereto and Citicorp North America, Inc., as Administrative Agent for benefit of the Secured Parties referred to herein.

InPhonic, Inc., a Delaware corporation (the "<u>Borrower</u>"), proposes to enter into a Credit Agreement dated as of November 7, 2006 (as amended, restated, modified or supplemented from time to time and including any agreement extending the maturity of, refinancing or otherwise restructuring all or any portion of the obligations of the Borrower under such agreement or any successor agreement, the "<u>Credit Agreement</u>") among the Borrower, the banks and other lending institutions from time to time party thereto (each a "<u>Lender</u>" and, collectively, the "<u>Lenders</u>") and Citicorp North America, Inc., as Administrative Agent (together with its successor or successors in such capacity, the "<u>Administrative Agent</u>").

The Lenders and the Administrative Agent and their respective successors and assigns are herein referred to individually as a "<u>Secured Party</u>" and collectively as the "<u>Secured Parties</u>".

To induce the Lenders to enter into the Credit Agreement and the other Loan Documents and as a condition precedent to the obligations of the Secured Parties thereunder, the Borrower and its subsidiaries (each a "<u>Guarantor</u>" and, collectively, the "<u>Guarantors</u>") have agreed, jointly and severally, to provide a guaranty of all obligations of the Borrower and the other Loan Parties under or in respect of the Loan Documents.

As a further condition precedent to the obligations of the Lenders under the Loan Documents, the Borrower and each Guarantor (each a "<u>Loan Party</u>" and, together with each other person that becomes a party hereto pursuant to <u>Section 8.10</u> hereof and the respective successors and permitted assigns of each of the foregoing, the "<u>Loan Parties</u>") has agreed or will agree to grant a continuing security interest in favor of the Administrative Agent in and to the Collateral (as hereinafter defined) to secure the Obligations (as hereinafter defined). Accordingly, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01    <u>Terms Defined in the Credit Agreement</u>.  Capitalized terms defined in the Credit Agreement and not otherwise defined herein have, as used herein, the respective meanings provided for therein.

Section 1.02    <u>Terms Defined in the UCC</u>.  Unless otherwise defined herein or in the Credit Agreement or the context otherwise requires, the following terms, together with any uncapitalized terms used herein which are defined in the UCC (as defined below), have the respective meanings provided in the UCC: (i) Certificated Security; (ii) Financial Asset; (iii) Investment Property; (iv) Payment Intangibles; (v) Proceeds; (vi) Securities Account; (vii) Securities Intermediary; (viii) Security; (ix) Security Certificate; and (x) Uncertificated Security.

Section 1.03    <u>Additional Definitions</u>.  Terms defined in the introductory section hereof have the respective meanings set forth therein.  The following additional terms, as used herein, have the following respective meanings:

"<u>Account Control Agreement</u>" means (i) with respect to a Deposit Account, a deposit account control agreement, substantially in the form of <u>Exhibit C</u> to the Security Agreement or otherwise

containing substantially similar terms and acceptable in form and substance to the Administrative Agent, among one or more Loan Parties, the Administrative Agent and the bank which maintains such Deposit Account, and (ii) with respect to a Securities Account, a securities account control agreement, substantially in the form of Exhibit B to the Pledge Agreement or otherwise containing substantially similar terms and acceptable in form and substance to the Administrative Agent, among one or more Loan Parties, the Administrative Agent and the Securities Intermediary which maintains such Securities Account in each case as the same may be amended, restated, modified or supplemented from time to time.

"Collateral" has the meaning set forth in Section 2.01 of this Agreement.

"Administrative Agent" means Citicorp North America, Inc., in its capacity as Administrative Agent for the Secured Parties, and its successor or successors in such capacity.

"Delivery" and the corresponding term "Delivered" when used with respect to Collateral means:

(i)     in the case of Collateral constituting Certificated Securities, transfer thereof to the Administrative Agent or its nominee or custodian by physical delivery to the Administrative Agent or its nominee or custodian, such Collateral to be in suitable form for transfer by delivery, or accompanied by undated instruments of transfer or assignment duly executed in blank, with (in the case of registered securities for which signature guarantees are customary in connection with transfer) signatures appropriately guaranteed;

(ii)    in the case of Collateral constituting Uncertificated Securities, (A) registration thereof on the books and records of the issuer thereof in the name of the Administrative Agent or its nominee or custodian (who may not be a Securities Intermediary) or (B) the execution and delivery by the issuer thereof of an effective agreement, substantially in the form of Exhibit A hereto, pursuant to which such issuer agrees that it will comply with instructions originated by the Administrative Agent or such nominee or custodian without further consent of the registered owner of such Collateral or any other Person;

(iii)   in the case of Collateral constituting Security Entitlements or other Financial Assets deposited in or credited to a Securities Account, (A) completion of all actions necessary to constitute the Administrative Agent or its nominee or custodian the entitlement holder with respect to each such Security Entitlement or (B) the execution and delivery by the relevant Securities Intermediary of an effective Account Control Agreement pursuant to which such Securities Intermediary agrees to comply with all entitlement orders originated by the Administrative Agent or such nominee or custodian without further consent by the relevant entitlement holder or any other Person;

(iv)    in the case of LLC Interests and Partnership Interests which do not constitute Securities, (A) compliance with the provisions of clause (i) above for each such item of Collateral which is represented by a certificate and (B) compliance with the provisions of clause (ii) above for each such item of Collateral which is not evidenced by a certificate;

(v)     in the case of Collateral which constitute Instruments, transfer thereof to the Administrative Agent or its nominee or custodian by physical delivery to the Administrative Agent or its nominee or custodian indorsed to, or registered in the name of, the Administrative Agent or its nominee or custodian or indorsed in blank;

(vi)    in the case of cash, transfer thereof to the Administrative Agent or its nominee or custodian by physical delivery to the Administrative Agent or its nominee or custodian; and

(vii)    in each case such additional or alternative procedures as may hereafter become appropriate to grant control of, or otherwise perfect a security interest in, any Collateral in favor of the Administrative Agent or its nominee or custodian, consistent with changes in applicable Law or regulations or the interpretation thereof.

"Event of Default" means one or more Events of Default, as such term is defined in the Credit Agreement.

"Federal Securities Laws" has the meaning set forth in Section 6.03(a) of this Agreement.

"General Intangibles" means all "general intangibles" (as defined in the UCC), including, without limitation, (i) all Payment Intangibles and other obligations and indebtedness owing to any Loan Party in respect of Collateral and (ii) all interests in limited liability companies and/or partnerships which interests do not constitute Securities.

"Instruments" means:

(i)    the promissory notes described on Schedule II hereto, as such Schedule may be amended, supplemented or modified from time to time (the "Pledged Notes"), and all interest, distributions, cash, instruments and other property, income, profits and proceeds from time to time received or receivable or otherwise made upon or distributed in respect of or in exchange for any or all of the Pledged Notes;

(ii)    all additional or substitute promissory notes from time to time issued to or otherwise acquired by any Loan Party in any manner in respect of Pledged Notes or otherwise, and all interest, distributions, cash, instruments and other property, income, profits and proceeds from time to time received or receivable or otherwise made upon or distributed in respect of such additional or substitute notes;

(iii)    all promissory notes, bankers' acceptances, commercial paper, negotiable certificates of deposit and other obligations constituting "instruments" within the meaning of the UCC which, individually or in the aggregate, exceed $100,000; and

(iv)    to the extent not otherwise included in the foregoing, all cash and non-cash Proceeds thereof.

"LLC Interests" means:

(i)    the limited liability company membership interests described on Schedule III hereto, as such Schedule may be amended, supplemented or modified from time to time (the "Pledged LLC Interests"), and all dividends, distributions, cash, instruments and other property, income, profits and proceeds from time to time received or receivable or otherwise made upon or distributed in respect of or in exchange for any or all of the Pledged LLC Interests;

(ii)    all additional or substitute limited liability company membership interests from time to time issued to or otherwise acquired by any Loan Party in any manner in respect of Pledged LLC Interests or otherwise, and all dividends, distributions, cash, instruments

-3-

and other property, income, profits and proceeds from time to time received or receivable or otherwise made upon or distributed in respect of such additional or substitute membership interests;

(iii)    all right, title and interest of any Loan Party in each limited liability company to which any Pledged LLC Interest relates, including, without limitation:

(A)    all interests of such Loan Party in the capital of such limited liability company and in all profits, losses and assets, whether tangible or intangible and whether real, personal or mixed, of such limited liability company, and all other distributions to which such Loan Party shall at any time be entitled in respect of such Pledged LLC Interests;

(B)    all other payments due or to become due to such Loan Party in respect of Pledged LLC Interests, whether under any limited liability company agreement or operating agreement or otherwise and whether as contractual obligations, damages, insurance proceeds or otherwise;

(C)    all of such Loan Party's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under any limited liability company agreement or operating agreement, or at law or otherwise in respect of such Pledged LLC Interests;

(D)    all present and future claims, if any, of such Loan Party against any such limited liability company for moneys loaned or advanced, for services rendered or otherwise; and

(E)    all of such Loan Party's rights under any limited liability company agreement or operating agreement or at law to exercise and enforce every right, power, remedy, authority, option and privilege of such Loan Party relating to such Pledged LLC Interests, including any power to terminate, cancel or modify any limited liability company agreement or operating agreement, to execute any instruments and to take any and all other action on behalf of and in the name of such Loan Party in respect of such Pledged LLC Interests and any such limited liability company, to make determinations, to exercise any election (including, without limitation, election of remedies) or option to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce, collect or give receipt for any of the foregoing or for any assets of any such limited liability company, to enforce or execute any checks or other instruments or orders, to file any claims and to take any other action in connection with any of the foregoing; and

(iv)    to the extent not otherwise included in the foregoing, all cash and non-cash Proceeds thereof.

"<u>Loan Party</u>" means the Borrower and each Subsidiary Guarantor, individually, and "<u>Loan Parties</u>" means all of them, collectively.

"<u>Partnership Interests</u>" means:

(i)    the partnership interests described on <u>Schedule IV</u> hereto, as such Schedule may be amended, supplemented or modified from time to time (the "<u>Pledged</u>

-4-

Partnership Interests"), and all dividends, distributions, cash, instruments and other property, income, profits and proceeds from time to time received or receivable or otherwise made upon or distributed in respect of or in exchange for any or all of the Pledged Partnership Interests;

(ii)    all additional or substitute partnership interests from time to time issued to or otherwise acquired by any Loan Party in any manner in respect of Pledged Partnership Interests or otherwise, and all dividends, distributions, cash, instruments and other property, income, profits and proceeds from time to time received or receivable or otherwise made upon or distributed in respect of such additional or substitute partnership interests;

(iii)    all right, title and interest of any Loan Party in each partnership to which any Pledged Partnership Interest relates, including, without limitation:

(A)    all interests of such Loan Party in the capital of such partnership and in all profits, losses and assets, whether tangible or intangible and whether real, personal or mixed, of such partnership, and all other distributions to which such Loan Party shall at any time be entitled in respect of such Pledged Partnership Interests;

(B)    all other payments due or to become due to such Loan Party in respect of Pledged Partnership Interests, whether under any partnership agreement or otherwise and whether as contractual obligations, damages, insurance proceeds or otherwise;

(C)    all of such Loan Party's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under any partnership agreement, or at law or otherwise in respect of such Pledged Partnership Interests;

(D)    all present and future claims, if any, of such Loan Party against any such partnership for moneys loaned or advanced, for services rendered or otherwise;

(E)    all of such Loan Party's rights under any partnership agreement or at law to exercise and enforce every right, power, remedy, option and privilege of such Loan Party relating to such Pledged Partnership Interests, including any power to terminate, cancel or modify any partnership agreement, to execute any instruments and to take any and all other action on behalf of and in the name of such Loan Party in respect of such Pledged Partnership Interests and any such partnership, to make determinations, to exercise any election (including, without limitation, election of remedies) or option to give or receive any notice, consent, amendment, waiver or approval, together with full power and authority to demand, receive, enforce, collect or give receipt for any of the foregoing or for any assets of any such partnership, to enforce or execute any checks or other instruments or orders, to file any claims and to take any other action in connection with any of the foregoing; and

(iv)    to the extent not otherwise included in the foregoing, all cash and non-cash Proceeds thereof.

"Perfection Certificate" means a certificate, substantially in the form of Exhibit G-3 to the Credit Agreement, completed and supplemented with the schedules and attachments contemplated thereby.

-5-

"Permitted Lien" means any Lien referred to in, and permitted by, Section 7.02 of the Credit Agreement.

"Pledge Agreement" means this Agreement, as the same may be amended, supplemented or modified from time to time.

"Pledged LLC Interests" has the meaning set forth in clause (i) of the definition of "LLC Interests".

"Pledged Notes" has the meaning set forth in clause (i) of the definition of "Instruments".

"Pledged Partnership Interests" has the meaning set forth in clause (i) of the definition of "Partnership Interests".

"Pledged Shares" has the meaning set forth in clause (i) of the definition of "Stock".

"Secured Party" has the meaning set forth in the introductory section hereof.

"Security Entitlements" means: (i) all "security entitlements" (as defined in the UCC); (ii) all "securities entitlements" (as defined in the United States Department of the Treasury's regulations governing the transfer and pledge of marketable securities issued by the United States Treasury and maintained in the TRADES book-entry system in the records of the federal reserve banks set forth in 61 Fed. Reg. 43626 (1996) (codified at 31 C.F.R. Part 357)); (iii) all "securities entitlements" (as defined in the Federal Housing Finance Board's regulations governing procedures for maintaining Federal Housing Finance Board consolidated securities (codified at 12 C.F.R. Part 987)); (iv) all "security entitlements" (as defined in the Department of Housing and Urban Development's regulations governing procedures for issuance, recordation and transfer of Federal National Mortgage Association and Federal Home Loan Mortgage Corporation securities in the book-entry system and set forth in 24 C.F.R. Part 81); (v) all "security entitlements" (as defined in the Department of Housing and Urban Development's regulations governing procedures for issuance, recordation and transfer of Government National Mortgage Association securities in the book-entry system and set forth in 24 C.F.R. Part 350); (vi) all "security entitlements" (as defined in the Farm Credit Administration's regulations governing procedures for the issuance, maintenance and transfer of farm credit securities in the book-entry system and set forth in 12 C.F.R. Part 615); (vii) all "security entitlements" (as defined in the Thrift Depositor Protection Oversight Board's regulations governing Resolution Funding Corporation book entry securities and set forth in 12 C.F.R. Part 1511); (viii) all "security entitlements" (as defined in the Department of Treasury's regulations governing Sallie Mae book entry securities and set forth in 31 C.F.R. Part 354); and (ix) all "security entitlements" (as defined in the Tennessee Valley Authority's regulations governing the issuance of and transactions in all TVA Power securities issued in book-entry form and set forth in 18 C.F.R. Part 1314), including all rights and property interests with respect to Financial Assets deposited in or credited to Securities Accounts.

"Security Interests" means the security interests in the Collateral granted under this Agreement securing the Obligations.

"Stock" means:

(i)      the shares of capital stock and other Securities described on Schedule I hereto, as such Schedule may be amended, supplemented or modified from time to time (the "Pledged Shares"), and all dividends, interest, distributions, cash, instruments and other property,

income, profits and proceeds from time to time received, receivable or otherwise made upon or distributed in respect of or in exchange for any or all of the Pledged Shares; and

(ii)    all additional or substitute shares of capital stock or other equity interests of any class of any issuer from time to time issued to or otherwise acquired by any Loan Party in any manner in respect of Pledged Shares or otherwise, the certificates representing such additional or substitute shares, and all dividends, interest, distributions, cash, instruments and other property, income, profits and proceeds from time to time received, receivable or otherwise made upon or distributed in respect of or in exchange for any or all of such additional or substitute shares; and

(iii)    to the extent not otherwise included in the foregoing, all cash and non-cash proceeds thereof.

"UCC" means the Uniform Commercial Code as in effect from time to time in the State of New York; provided that if by reason of mandatory provisions of Law, the perfection, the effect of perfection or non-perfection or the priority of the Security Interests in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than New York, "UCC" means the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority.

Section 1.04    Terms Generally. The definitions in Sections 1.02 and 1.03 shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation". All references herein to Articles, Sections, Exhibits and Schedules shall be deemed references to Articles and Sections of, and Exhibits and Schedules to, this Agreement unless the context, shall otherwise require. Unless otherwise expressly provided herein, the word "day" means a calendar day.

ARTICLE II
THE SECURITY INTERESTS

Section 2.01    Grant of Security Interests. To secure the due and punctual payment of all Obligations, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing or due or to become due, in accordance with the terms thereof and to secure the performance of all of the obligations of each Loan Party hereunder and under the other Loan Documents, each Loan Party hereby grants to the Administrative Agent for the benefit of the Secured Parties a security interest in, and each Loan Party hereby pledges and collaterally assigns to the Administrative Agent for the benefit of the Secured Parties, all of such Loan Party's right, title and interest in, to and under the following, whether now owned or existing or hereafter acquired, created or arising, whether tangible or intangible, and regardless of where located (all of which are herein collectively called the "Collateral"):

(i)    Stock;

(ii)    Instruments;

(iii)    LLC Interests;

(iv)    Partnership Interests;

-7-

(v)    Investment Property;

(vi)    Financial Assets;

(vii)    all General Intangibles; and

(viii)    all Proceeds of all or any of the Collateral described in clauses (i) through (vii) hereof.

**Section 2.02**    <u>Security Interests Absolute</u>. All rights of the Administrative Agent, all security interests hereunder and all obligations of each Loan Party hereunder are unconditional and absolute and independent and separate from any other security for or guaranty of the Obligations, whether executed by such Loan Party, or any other Loan Party. Without limiting the generality of the foregoing, the obligations of each Loan Party hereunder shall not be released, discharged or otherwise affected or impaired by:

(i)    any extension, renewal, settlement, compromise, acceleration, waiver or release in respect of any obligation of any other Loan Party under any Loan Document or any other agreement or instrument evidencing or securing any Obligation, by operation of law or otherwise;

(ii)    any change in the manner, place, time or terms of payment of any Obligation or any other amendment, supplement or modification to any Loan Document or any other agreement or instrument evidencing or securing any Obligation;

(iii)    any release, non-perfection or invalidity of any direct or indirect security for any Obligation, any sale, exchange, surrender, realization upon, offset against or other action in respect of any direct or indirect security for any Obligation or any release of any other obligor or Secured Parties in respect of any Obligation;

(iv)    any change in the existence, structure or ownership of any Loan Party, or any insolvency, bankruptcy, reorganization, arrangement, readjustment, composition, liquidation or other similar proceeding affecting any Loan Party or its assets or any resulting disallowance, release or discharge of all or any portion of any Obligation;

(v)    the existence of any claim, set-off or other right which any Loan Party may have at any time against the Borrower, any other Loan Party, the Administrative Agent, any other Secured Party or any other Person, whether in connection herewith or any unrelated transaction; <u>provided</u> that nothing herein shall prevent the assertion of any such claim by separate suit or compulsory counterclaim;

(vi)    any invalidity or unenforceability relating to or against the Borrower or any other Loan Party for any reason of any Loan Document or any other agreement or instrument evidencing or securing any Obligation or any provision of applicable Law or regulation purporting to prohibit the payment by the Borrower or any other Loan Party of any Obligation;

(vii)    any failure by any Secured Party: (A) to file or enforce a claim against any Loan Party or its estate (in a bankruptcy or other proceeding); (B) to give notice of the existence, creation or incurrence by any Loan Party of any new or additional indebtedness or obligation under or with respect to the Obligations; (C) to commence any action against any Loan Party; (D) to disclose to any Loan Party any facts which such Secured Party may now or hereafter

-8-

know with regard to any Loan Party; or (E) to proceed with due diligence in the collection, protection or realization upon any collateral securing the Obligations;

(viii)    any direction as to application of payment by the Borrower, any other Loan Party or any other Person;

(ix)    any subordination by any Secured Party of the payment of any Obligation to the payment of any other liability (whether matured or unmatured) of any Loan Party to its creditors;

(x)    any act or failure to act by the Administrative Agent or any other Secured Party under this Agreement or otherwise which may deprive any Loan Party of any right to subrogation, contribution or reimbursement against any other Loan Party or any right to recover full indemnity for any payments made by such Loan Party in respect of the Obligations; or

(xi)    any other act or omission to act or delay of any kind by any Loan Party or any Secured Party or any other Person or any other circumstance whatsoever which might, but for the provisions of this clause, constitute a legal or equitable discharge of any Loan Party's obligations hereunder.

Each Loan Party has irrevocably and unconditionally delivered this Agreement to the Administrative Agent, for the benefit of the Secured Parties, and the failure by any other Person to sign this Agreement or a pledge agreement similar to this Agreement or otherwise shall not discharge the obligations of any Loan Party hereunder.

This Agreement shall remain fully enforceable against each Loan Party irrespective of any defenses that any other Loan Party may have or assert in respect of the Obligations, including, without limitation, failure of consideration, breach of warranty, payment, statute of frauds, statute of limitations, accord and satisfaction and usury.

Section 2.03    **Continuing Liability of the Loan Parties**.  The Security Interests are granted as security only and shall not subject the Administrative Agent or any Secured Party to, or transfer or in any way affect or modify, any obligation or liability of any Loan Party with respect to any of the Collateral or any transaction in connection therewith.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Each Loan Party represents and warrants that as of the Closing Date and on the date any Loan is made:

Section 3.01    **Title to Collateral**.  Such Loan Party is the legal, record and beneficial owner of, and has good and marketable title to, all of the Collateral pledged by it hereunder, free and clear of any Liens other than Permitted Liens and Liens securing indebtedness to be repaid with the proceeds of the Loan under the Credit Agreement and in respect of which the Administrative Agent has received pay-off letters and instruments appropriate under local Law to effect the termination of such Liens. Other than financing statements or other similar or equivalent documents or instruments with respect to the Security Interests and Permitted Liens, no financing statement, mortgage, security agreement or similar or equivalent document or instrument covering all or any part of the Collateral is on file or of record in any jurisdiction in which such filing or recording would be effective to perfect a Lien on such Collateral. No

Collateral is in the possession or control of any Person asserting any claim thereto or security interest therein, except that the Administrative Agent or its nominee, custodian or a Securities Intermediary acting on its behalf may have possession and/or control of Collateral as contemplated hereby and by the other Loan Documents.

Section 3.02    Validity, Perfection and Priority of Security Interests. The Security Interests constitute valid security interests under the UCC securing the Obligations. Upon Delivery of all Collateral to the Administrative Agent in accordance with the provisions hereof and filing of Uniform Commercial Code financing statements stating that the same covers "all assets of the Debtor", "all personal property of the Debtor" or words of similar import in the offices specified in Schedule V hereto, the Security Interests shall constitute perfected security interests in all right, title and interest of such Loan Party in the Collateral (subject to the requirements of Section 9-315 of the UCC with respect to any proceeds of Collateral and to the further requirement that additional steps may be necessary to perfect the Security Interests in dividends or other distributions in kind), in each case prior to all other Liens and rights of others therein except for Permitted Liens, and, to the extent control of such Collateral may be obtained pursuant to Article 8 and/or 9 of the UCC, the Administrative Agent will have control of the Collateral subject to no adverse claims of any other Person.

Section 3.03    Collateral.

(a)    Schedules I, II, III and IV hereto (as such schedules may be amended, supplemented or modified from time to time) set forth (i) the name and jurisdiction of organization of, and the ownership interest (including percentage owned and number of shares, units or other equity interests) of such Loan Party in the Shares, LLC Interests and Partnership Interests issued by each of such Loan Party's direct Subsidiaries which are required to be included in the Collateral and pledged hereunder, (ii) all other Shares, LLC Interests and Partnership Interests directly owned by such Loan Party that are required to be included in the Collateral and pledged hereunder and (iii) the issuer, date of issuance and amount of all promissory notes having a face value in excess of $100,000 directly owned or held by such Loan Party that are required to be included in the Collateral and pledged hereunder. Such Loan Party holds all such Collateral directly (i.e., not through a Subsidiary, Securities Intermediary or any other Person).

(b)    All Collateral consisting of Pledged Shares, Pledged LLC Interests and Pledged Partnership Interests has been duly authorized and validly issued, is fully paid and non-assessable and is subject to no options to purchase or similar rights of any Person. Except as set forth on Schedules I, III and IV hereto, (i) such Collateral constitutes 100% of the issued and outstanding shares of capital stock or other equity interests of the respective issuers thereof, (ii) no issuer of Collateral has outstanding any security convertible into or exchangeable for any shares of its capital stock or other equity interests or any warrant, option, convertible security, instrument or other interest entitling the holder thereof to acquire any such shares or any security convertible into or exchangeable for such shares, (iii) there are no voting trusts, stockholder agreements, proxies or other agreements in effect with respect to the voting or transfer of such shares of its capital stock and (iv) there are no Liens or agreements, arrangements or obligations to create or give any Lien relating to any such shares of capital stock. No Loan Party is now and or will become a party to or otherwise bound by any agreement, other than this Agreement, which restricts in any manner the rights of the Administrative Agent or any other present or future holder of any Collateral with respect thereto.

Section 3.04    No Consents. No consent of any other Person (including, without limitation, any stockholder or creditor of such Loan Party or any of its Subsidiaries) and no order, consent, approval, license, authorization or validation of, or filing, recording or registration with, or exemption by any Governmental Authority is required to be obtained by such Loan Party in connection

-10-

with the execution, delivery or performance of this Agreement, or in connection with the exercise of the rights and remedies of the Administrative Agent pursuant to this Agreement, except as may be required in connection with the disposition of the Collateral by laws affecting the offering and sale of securities generally.

### ARTICLE IV
### COVENANTS

Each Loan Party covenants and agrees that until the payment in full of all Loan Obligations and until there is no commitment by any Secured Party to make further advances, incur obligations or otherwise give value, such Loan Party will comply with the following:

Section 4.01.   Delivery of Collateral.  All Collateral shall be Delivered to and held by or on behalf of the Administrative Agent pursuant hereto; provided that so long as no Event of Default shall have occurred and be continuing, and except as required by the Security Agreement or any other Loan Document, each Loan Party may retain any Collateral (i) consisting of checks, drafts and other Instruments (other than Pledged Notes and any additional or substitute promissory notes issued to or otherwise acquired by such Loan Party in respect of Pledged Notes) received by it in the ordinary course of business or (ii) which it is otherwise entitled to receive and retain pursuant to Section 5.01 hereof, and the Administrative Agent shall, promptly upon request of any Loan Party, make appropriate arrangements for making any Collateral consisting of an Instrument or a Certificated Security pledged by such Loan Party available to it for purposes of presentation, collection or renewal.  All Collateral Delivered hereunder shall be accompanied by any required transfer tax stamps.  The Administrative Agent shall have the right upon the occurrence and during the continuance of an Event of Default, and upon notice to any Loan Party, to cause any or all of the Collateral to be transferred of record into the name of the Administrative Agent or its nominee.  Each Loan Party will promptly give the Administrative Agent copies of any notices or other communications received by it with respect to Collateral registered in the name of such Loan Party, and the Administrative Agent will promptly give each Loan Party copies of any notices and communications received by the Administrative Agent with respect to any material portion of the Collateral registered in the name of the Administrative Agent or its nominee or custodian.

Section 4.02   Delivery of Perfection Certificate; Filing of Financing Statements and Delivery of Search Reports.  Prior to the Closing Date, the Borrower shall deliver the Perfection Certificate to the Administrative Agent and shall cause all filings and recordings and other actions specified in Schedule 4.01 to the Security Agreement to have been completed as required by the Security Agreement.  The information set forth in the Perfection Certificate shall be correct and complete as of the Closing Date.

Section 4.03   Change of Name, Identity, Structure or Location; Subjection to Other Security Agreements.  Such Loan Party will not change the location of any Collateral or its name, identity, structure or location (determined as provided in Section 9-307 of the UCC) in any manner, and shall not become bound, as provided in Section 9-203(d) of the UCC, by a security agreement entered into by another Person, in each case unless it shall have given the Administrative Agent not less than 30 days' prior notice thereof.  Such Loan Party shall not in any event change the location of any Collateral or its name, identity, structure or location (determined as provided in Section 9-307 of the UCC), or become bound, as provided in Section 9-203(d) of the UCC, by a security agreement entered into by another Person, if such change would cause the Security Interests in any Collateral to lapse or cease to be perfected unless such Loan Party has taken on or before the date of lapse all actions necessary to ensure that the Security Interests in the Collateral do not lapse or cease to be perfected.

-11-

Section 4.04    Further Actions.  Such Loan Party will, from time to time at its expense and in such manner and form as the Administrative Agent may reasonably request, execute, deliver, file and record any financing statement, specific assignment, instrument, document, agreement or other paper and take any other action (including, without limitation, any filings of financing or continuation statements under the Uniform Commercial Code) that from time to time may be necessary, or that the Administrative Agent may reasonably request, in order to create, preserve, perfect, confirm or validate the Security Interests or to enable the Administrative Agent and the Secured Parties to obtain the full benefit of this Agreement or to exercise and enforce any of its rights, powers and remedies created hereunder or under applicable Law with respect to any of the Collateral.  To the extent permitted by applicable Law, such Loan Party hereby authorizes the Administrative Agent to file, in the name of such Loan Party or otherwise and without the signature or other separate authorization or authentication of such Loan Party appearing thereon, such Uniform Commercial Code financing statements or continuation statements as the Administrative Agent in its sole discretion may deem necessary to further perfect or maintain the perfection of the Security Interests.  Such Loan Party agrees that a carbon, photographic, photostatic or other reproduction of this Agreement or of a financing statement is sufficient as a financing statement. The Loan Parties shall pay the costs of, or incidental to, any recording or filing of any financing or continuation statements concerning the Collateral.

Section 4.05    Disposition of Collateral.  Such Loan Party will not sell, exchange, assign or otherwise dispose of, or grant any option with respect to, any Collateral or create or suffer to exist any Lien (other than the Security Interests and Permitted Liens) on any Collateral except that, subject to the rights of the Administrative Agent and the Secured Parties hereunder if a Default or an Event of Default shall have occurred and be continuing, such Loan Party may sell, exchange, assign or otherwise dispose of, or grant options with respect to, Collateral to the extent expressly permitted by the Credit Agreement, whereupon, in the case of any such disposition, the Security Interests created hereby in such item (but not in any Proceeds arising from such disposition) shall, except as otherwise specified in the Credit Agreement, cease immediately without any further action on the part of the Administrative Agent.

Section 4.06    Additional Collateral.  Such Loan Party will cause each issuer of the Collateral not to issue any stock, other securities, limited liability company membership interests, partnership interests, promissory notes or other instruments in addition to or in substitution for the Pledged Shares, Pledged LLC Interests, Pledged Partnership Interests and Pledged Notes issued by such issuer, except to such Loan Party, and, in the event that any issuer of Collateral at any time issues any additional or substitute stock, other securities, limited liability company membership interests, partnership interests, promissory notes or other instruments to such Loan Party, such Loan Party will promptly Deliver all such items to the Administrative Agent to hold as Collateral hereunder and will promptly thereafter deliver to the Administrative Agent a certificate executed by an authorized officer of such Loan Party describing such Pledged Shares, Pledged LLC Interests, Pledged Partnership Interests and/or Pledged Notes, attaching such supplements to Schedules I through V hereto as are necessary to cause such Schedules to be complete and accurate at such time and certifying that such Pledged Shares, Pledged LLC Interests, Pledged Partnership Interests and/or Pledged Notes have been duly pledged with the Administrative Agent hereunder.

Section 4.07    Information Regarding Collateral.  Such Loan Party will, promptly upon request, provide to the Administrative Agent all information and evidence it may reasonably request concerning the Collateral to enable the Administrative Agent to enforce the provisions of this Agreement.

ffny03\rosenke\670234.5

## ARTICLE V
## DISTRIBUTIONS ON COLLATERAL; VOTING

Section 5.01    Right to Receive Distributions on Collateral; Voting.

(a)    So long as no Event of Default shall have occurred and be continuing:

(i)    Each Loan Party shall be entitled to exercise any and all voting, management, administration and other consensual rights pertaining to the Collateral or any part thereof for any purpose not inconsistent with the terms of this Agreement and the other Loan Documents.

(ii)    Each Loan Party shall be entitled to receive and retain any and all dividends, interest, distributions, cash, instruments and other payments and distributions made upon or in respect of the Collateral; provided, however, that any and all:

(A)    dividends, interest and other payments and distributions paid or payable other than in cash in respect of, and instruments and other property received, receivable or otherwise distributed in respect of, or in exchange for, any Collateral;

(B)    dividends and other payments and distributions paid or payable in cash in respect of any Collateral in connection with a partial or total liquidation or dissolution or in connection with a reduction of capital, capital surplus or paid-in-surplus;

(C)    additional stock, other securities, limited liability company membership interests, partnership interests, promissory notes or other instruments or property paid or distributed in respect of any Pledged Shares, Pledged LLC Interests or Pledged Partnership Interests by way of share-split, spin-off, split-up, reclassification, combination of shares or similar rearrangement;

(D)    all other or additional stock, other securities, limited liability company membership interests, partnership interests, promissory notes or other instruments or property which may be paid in respect of the Collateral by reason of any consolidation, merger, exchange of shares, conveyance of assets, liquidation or similar reorganization; and

(E)    cash paid, payable or otherwise distributed in respect of principal of, in redemption of, or in exchange for, any Collateral;

shall be forthwith Delivered to the Administrative Agent or its nominee or custodian to hold as Collateral hereunder.

(iii)    The Administrative Agent shall, upon receiving a written request from any Loan Party accompanied by a certificate signed by an authorized officer of such Loan Party stating that Event of Default has occurred and is continuing, execute and deliver (or cause to be executed and delivered) to such Loan Party or as specified in such request all proxies, powers of attorney, consents, ratifications and waivers and other instruments as such Loan Party may reasonably request for the purpose of enabling such Loan Party to exercise the voting and other rights which it is entitled to exercise pursuant to paragraph (i) above and to receive the dividends, interest, distributions, cash, instruments or other payments or distributions which it is authorized

-13-

to receive and retain pursuant to paragraph (ii) above in respect of any of the Collateral which is registered in the name of the Administrative Agent or its nominee.

      (b)    Upon the occurrence and during the continuance of an Event of Default:

      (i)    All rights of each Loan Party to receive the dividends, interest, distributions, cash, instruments and other payments and distributions which it would otherwise be authorized to receive and retain pursuant to Section 5.01(a)(ii) shall cease, and all such rights shall thereupon become vested in the Administrative Agent, which shall thereupon have the sole right to receive and hold as Collateral such dividends, interest, distributions, cash, instruments and other payments and distributions.

      (ii)    All dividends, interest, distributions, cash, instruments and other payments and distributions which are received by any Loan Party contrary to the provisions of paragraph (i) of this Section 5.01(b) shall be received in trust for the benefit of the Administrative Agent and the Secured Parties, shall be segregated from other property or funds of such Loan Party and shall be forthwith Delivered, in the same form as so received to the Administrative Agent or its nominee or custodian to hold as Collateral.

      (c)    Upon the occurrence and during the continuance of an Event of Default, all rights of such Loan Party to exercise the voting, management, administration and other consensual rights which it would otherwise be entitled to exercise pursuant to Section 5.01(a)(i) shall cease, all such rights shall thereupon become vested in the Administrative Agent, who shall thereupon have the sole right to exercise such voting and other consensual rights, and such Loan Party shall take all actions as may be necessary or appropriate to effect such right of the Administrative Agent.

**ARTICLE VI**
**GENERAL AUTHORITY; REMEDIES**

      **Section 6.01**    **General Authority.**  Each Loan Party hereby irrevocably appoints the Administrative Agent and any officer or agent thereof as its true and lawful attorney-in-fact, with full power of substitution, in the name of such Loan Party, the Administrative Agent, the Secured Parties or otherwise, for the sole use and benefit of the Administrative Agent and the Secured Parties, but at such Loan Party's expense, to the extent permitted by Law, to exercise at any time and from time to time while an Event of Default has occurred and is continuing, all or any of the following powers with respect to all or any of the Collateral, all acts of such attorney being hereby ratified and confirmed; such power, being coupled with an interest, is irrevocable until the Obligations are paid in full and until there is no commitment by any Secured Party to make further advances, incur obligations or otherwise give value:

      (i)    to take any and all appropriate action and to execute any and all documents and instruments which may be necessary to carry out the terms of this Agreement;

      (ii)    to receive, take, indorse, assign and deliver any and all checks, notes, drafts, acceptances, documents and other negotiable and non-negotiable Instruments taken or received by such Loan Party as, or in connection with, the Collateral;

      (iii)    to accelerate any Pledged Note which may be accelerated in accordance with its terms, and to otherwise demand, sue for, collect, receive and give acquittance for any and all monies due or to become due on or by virtue of any Collateral;

-14-

(iv)    to commence, settle, compromise, compound, prosecute, defend or adjust any claim, suit, action or proceeding with respect to, or in connection with, the Collateral;

(v)    to sell, transfer, assign or otherwise deal in or with the Collateral or the Proceeds or avails thereof, as fully and effectually as if the Administrative Agent were the absolute owner thereof;

(vi)    to extend the time of payment of any or all of the Collateral and to make any allowance and other adjustments with respect thereto;

(vii)    to vote all or any part of the Pledged Shares, Pledged LLC Interests, Pledged Partnership Interests and/or Pledged Notes (whether or not transferred into the name of the Administrative Agent) and give all consents, waivers and ratifications in respect of the Collateral; and

(viii)    to do, at its option, but at the expense of such Loan Party, at any time or from time to time, all acts and things which the Administrative Agent deems necessary to protect or preserve the Collateral and to realize upon the Collateral.

Section 6.02    <u>Remedies upon Event of Default</u>.

(a)    If any Event of Default has occurred and is continuing, the Administrative Agent, upon being instructed to do so by the Required Lenders, may, in addition to all other rights and remedies granted to it in this Agreement and in any other agreement securing, evidencing or relating to the Obligations: (i) exercise on behalf of the Secured Parties all rights and remedies of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised) and, in addition, (ii) without demand of performance or other demand or notice of any kind (except as herein provided or as may be required by mandatory provisions of Law) to or upon any Loan Party or any other Person (all of which demands and/or notices are hereby waived by each Loan Party), (A) apply all cash, if any, then held by it as Collateral as specified in <u>Section 6.07</u> and (B) if there shall be no such cash or if such cash shall be insufficient to pay all the Obligations in full or cannot be so applied for any reason or if the Administrative Agent determines to do so, collect, receive, appropriate and realize upon the Collateral and/or sell, assign, give an option or options to purchase or otherwise dispose of and deliver the Collateral (or contract to do so) or any part thereof in one or more parcels (which need not be in round lots) at public or private sale or at broker's board or on any securities exchange, at any office of the Administrative Agent or elsewhere in such manner as is commercially reasonable and as the Administrative Agent may deem best, for cash, on credit or for future delivery, without assumption of any credit risk and at such price or prices as the Administrative Agent may deem satisfactory.

(b)    The Administrative Agent shall give each Loan Party not less than 20 days' prior notice of the time and place of any sale or other intended disposition of any of the Collateral, except any Collateral which threatens to decline speedily in value or is of a type customarily sold on a recognized market. Any such notice shall (i) in the case of a public sale, state the time and place fixed for such sale, (ii) in the case of a sale at a broker's board or on a securities exchange, state the board or exchange at which such sale is to be made and the day on which the Collateral, or the portion thereof being sold, will first be offered for sale, (iii) in the case of a private sale, state the day after which such sale may be consummated, (iv) contain the information specified in Section 9-613 of the UCC, (v) be authenticated and (vi) be sent to the parties required to be notified pursuant to Section 9-611(c) of the UCC; <u>provided</u> that, if the Administrative Agent fails to comply with this sentence in any respect, its liability for such failure shall be limited to the liability (if any) imposed on it as a matter of law under the UCC. The Administrative Agent and each Loan Party agree that such notice constitutes reasonable notification

-15-

within the meaning of Section 9-611 of the UCC. Except as otherwise provided herein, each Loan Party hereby waives, to the extent permitted by applicable Law, notice and judicial hearing in connection with the Administrative Agent's taking possession or disposition of any of the Collateral.

(c)    The Administrative Agent or any Secured Party may be the purchaser of any or all of the Collateral so sold at any public sale (or, if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, at any private sale). Each Loan Party will execute and deliver such documents and take such other action as the Administrative Agent deems necessary or advisable in order that any such sale may be made in compliance with Law. Upon any such sale, the Administrative Agent shall have the right to deliver, assign and transfer to the purchaser thereof the Collateral so sold. Each purchaser at any such sale shall hold the Collateral so sold to it absolutely and free from any claim or right of whatsoever kind. Any such public sale shall be held at such time or times within ordinary bankers hours and at such place or places as the Administrative Agent may fix in the notice of such sale. At any such sale, the Collateral may be sold in one lot as an entirety or in separate parcels, as the Administrative Agent may determine. The Administrative Agent shall not be obligated to make any such sale pursuant to any such notice. The Administrative Agent may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place to which the same may be so adjourned without further notice. In the case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by the Administrative Agent until the selling price is paid by the purchaser thereof, but the Administrative Agent shall not incur any liability in the case of the failure of such purchaser to take up and pay for the Collateral so sold and, in the case of any such failure, such Collateral may again be sold upon like notice.

### Section 6.03    Securities Act.

(a)    _Securities Act._ In view of the position of the Loan Parties in relation to the Collateral, or because of other present or future circumstances, a question may arise under the Securities Act of 1933, as now or hereafter in effect, or any similar statute hereafter enacted analogous in purpose or effect (such Act and any such similar statute as from time to time in effect being herein called the "Federal Securities Laws") with respect to any disposition of the Collateral permitted hereunder. Each Loan Party understands that compliance with the Federal Securities Laws might very strictly limit the course of conduct of the Administrative Agent if the Administrative Agent were to attempt to dispose of all or any part of the Collateral, and might also limit the extent to which or the manner in which any subsequent transferee of any Collateral could dispose of the same. Similarly, there may be other legal restrictions or limitations affecting the Administrative Agent in any attempt to dispose of all or part of the Collateral under applicable Blue Sky or other state securities laws or similar Laws analogous in purpose or effect. Without limiting the generality of the foregoing, the provisions of this Section 6.03 would apply if, for example, the Administrative Agent were to place all or any part of the Collateral for private placement by an investment banking firm, or if such investment banking firm purchased all or any part of the Collateral for its own account, or if the Administrative Agent placed all or any part of the Collateral privately with a purchaser or purchasers.

Accordingly, each Loan Party expressly agrees that the Administrative Agent is authorized, in connection with any sale of any Collateral, if it deems it advisable so to do, (i) to restrict the prospective bidders on or purchasers of any of the Collateral to a limited number of sophisticated investors who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or sale of any of such Collateral, (ii) to cause to be placed on certificates for any or all of the Collateral or on any other securities pledged hereunder a legend to the effect that such security has not been registered under the Securities Act of 1933 and may not be disposed

-16-

of in violation of the provision of said Act and (iii) to impose such other limitations or conditions in connection with any such sale as the Administrative Agent deems necessary or advisable in order to comply with said Act or any other Law. Each Loan Party covenants and agrees that it will execute and deliver such documents and take such other action as the Administrative Agent deems necessary or advisable in order that any such sale may be made in compliance with the Securities Act of 1933 and all other applicable Laws. Each Loan Party acknowledges and agrees that such limitations may result in prices and other terms less favorable to the seller than if such limitations were not imposed, and, notwithstanding such limitations, agrees that any such sale shall be deemed to have been made in a commercially reasonable manner, it being the agreement of the Loan Parties and the Administrative Agent that the provisions of this Section 6.03 will apply notwithstanding the existence of a public or private market upon which the quotations or sales prices may exceed substantially the price at which the Administrative Agent sells the Collateral. The Administrative Agent shall be under no obligation to delay a sale of any Collateral for a period of time necessary to permit the issuer of any securities contained therein to register such securities under the Federal Securities Laws, or under applicable state securities laws, even if the issuer would agree to do so. Furthermore, each Loan Party acknowledges that it is aware that Section 9-610 of the UCC provides that the Administrative Agent or a Secured Party may purchase Collateral if it is sold at a public sale. Each Loan Party also acknowledges that it is aware that staff personnel of the United States Securities and Exchange Commission have, over a period of years, issued various No-Action Letters that describe procedures which, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Part 6 of Article 9 of the UCC, yet not public for purposes of Section 4(2) of the Securities Act. Each Loan Party is also aware that the Administrative Agent or one or more Secured Parties may wish to purchase Collateral that is sold at a foreclosure sale, and such Loan Party believes that such purchases would be appropriate in circumstances in which the Collateral Securities are sold in conformity with the principles set forth in the No-Action Letters. Accordingly, each Loan Party specifically agrees that a foreclosure sale conducted in conformity with the principles set forth in the No-Action Letters: (i) shall be considered to be a "public" sale for purposes of Section 9-610 of the UCC; (ii) will be considered commercially reasonable notwithstanding that the Administrative Agent or other Secured Party has not registered or sought to register the Collateral under the Securities Laws, even if one or more Loan Parties agrees to pay all costs of the registration process; and (iii) shall be considered to be commercially reasonable notwithstanding that the Administrative Agent or one or more other Secured Parties purchases Collateral at such a sale.

Section 6.04    Other Rights of the Administrative Agent.

(a)    If any Event of Default has occurred and is continuing, the Administrative Agent, instead of exercising the power of sale conferred upon it pursuant to Section 6.02, may proceed by a suit or suits at law or in equity to foreclose the Security Interests and sell the Collateral, or any portion thereof, under a judgment or decree of a court or courts of competent jurisdiction, and may in addition institute and maintain such suits and proceedings as the Administrative Agent may deem appropriate to protect and enforce the rights vested in it by this Agreement.

(b)    If any Event of Default has occurred and is continuing, the Administrative Agent shall, to the extent permitted by applicable Law, without notice to any Loan Party or any party claiming through any Loan Party, without regard to the solvency or insolvency at such time of any Person then liable for the payment of any of the Obligations, without regard to the then value of the Collateral and without requiring any bond from any complainant in such proceedings, be entitled as a matter of right to the appointment of a receiver or receivers (who may be the Administrative Agent) of the Collateral or any part thereof, and of the profits, revenues and other income thereof, pending such proceedings, with such powers as the court making such appointment shall confer, and to the entry of an order directing that the profits, revenues and other income of the property constituting the whole or any part of the Collateral be segregated, sequestered and impounded for the benefit of the Administrative Agent and the Secured

-17-

Parties, and each Loan Party irrevocably consents to the appointment of such receiver or receivers and to the entry of such order.

Section 6.05    Limitation on Duty of Administrative Agent in Respect of Collateral. Beyond the exercise of reasonable care in the custody thereof, neither the Administrative Agent nor any Secured Party shall have any duty to exercise any rights or take any steps to preserve the rights of any Loan Party in the Collateral in its or their possession or control or in the possession or control of any agent or bailee or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto, nor shall the Administrative Agent or any Secured Party be liable to any Loan Party or any other Person for failure to meet any obligation imposed by Section 9-207 of the UCC or any successor provision. Each Loan Party agrees that the Administrative Agent shall at no time be required to, nor shall the Administrative Agent be liable to any Loan Party for any failure to, account separately to any Loan Party for amounts received or applied by the Administrative Agent from time to time in respect of the Collateral pursuant to the terms of this Agreement. Without limiting the foregoing, the Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession or control if the Collateral is accorded treatment substantially equal to that which the Administrative Agent accords its own property, and (i) shall not be liable or responsible for any loss or damage to any of the Collateral, or for any diminution in the value thereof, by reason of the act or omission of any agent or bailee selected by the Administrative Agent in good faith or (ii) shall not have any duty or responsibility for ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not the Administrative Agent has or is deemed to have knowledge of such matters.

Section 6.06    Waiver and Estoppel.

(a)      Each Loan Party agrees, to the extent it may lawfully do so, that it will not at any time in any manner whatsoever claim or take the benefit or advantage of, any appraisal, valuation, stay, extension, moratorium, turnover or redemption Law, or any Law permitting it to direct the order in which the Collateral shall be sold, now or at any time hereafter in force which may delay, prevent or otherwise affect the performance or enforcement of this Agreement, and each Loan Party hereby waives all benefit or advantage of all such Laws. Each Loan Party covenants that it will not hinder, delay or impede the execution of any power granted to the Administrative Agent, the Administrative Agent or any other Secured Party in any Loan Document.

(b)      Each Loan Party, to the extent it may lawfully do so, on behalf of itself and all who claim through or under it, including without limitation any and all subsequent creditors, vendees, assignees and lienors, waives and releases all rights to demand or to have any marshalling of the Collateral upon any sale, whether made under any power of sale granted herein or pursuant to judicial proceedings or under any foreclosure or any enforcement of this Agreement, and consents and agrees that all of the Collateral may at any such sale be offered and sold as an entirety.

(c)      Each Loan Party waives, to the extent permitted by Law, presentment, demand, protest and any notice of any kind (except the notices expressly required hereunder or in the other Loan Documents) in connection with this Agreement and any action taken by the Administrative Agent with respect to the Collateral.

Section 6.07    Application of Proceeds.

(a)      *Priority of Distributions*. The proceeds of any sale of, or other realization upon, all or any part of the Collateral (including any proceeds received and held pursuant to Section 5.01) and any cash held by the Administrative Agent or its nominee or custodian hereunder shall be applied as

-18-

provided in Section 8.03 of the Credit Agreement. The Administrative Agent may make distributions hereunder in cash or in kind or, on a ratable basis, in any combination thereof. All distributions made by the Administrative Agent pursuant to this Section shall be presumptively correct (except in the event of manifest error), and the Administrative Agent shall have no duty to inquire as to the application by the Secured Parties of any amounts distributed to them.

(b)     *Deficiencies*. It is understood that the Loan Parties shall remain jointly and severally liable to the extent of any deficiency between the amount of the proceeds of the Collateral and the amount of the Obligations.

## ARTICLE VII
## THE ADMINISTRATIVE AGENT

Section 7.01     Concerning the Administrative Agent. The provisions of Article IX of the Credit Agreement shall inure to the benefit of the Administrative Agent in respect of this Agreement and shall be binding upon all Loan Parties and all Secured Parties and upon the parties hereto in such respect. In furtherance and not in derogation of the rights, privileges and immunities of the Administrative Agent therein set forth:

(i)     The Administrative Agent is authorized to take all such actions as are provided to be taken by it as Administrative Agent hereunder and all other action reasonably incidental thereto. As to any matters not expressly provided for herein (including, without limitation, the timing and methods of realization upon the Collateral), the Administrative Agent shall act or refrain from acting in accordance with written instructions from the Required Lenders or, in the absence of such instructions or provisions, in accordance with its discretion.

(ii)     The Administrative Agent shall not be responsible for the existence, genuineness or value of any of the Collateral or for the validity, perfection, priority or enforceability of the Security Interests in any of the Collateral, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder unless such action or omission constitutes gross negligence or willful misconduct. The Administrative Agent shall have no duty to ascertain or inquire as to the performance or observance of any of the terms of this Agreement by any Loan Party.

Section 7.02     Appointment of Co-Administrative Agent. At any time or times, in order to comply with any legal requirement in any jurisdiction, the Administrative Agent may appoint another bank or trust company or one or more other persons, either to act as co-agent or co-agents, jointly with the Administrative Agent, or to act as separate agent or agents on behalf of the Secured Parties with such power and authority as may be necessary for the effectual operation of the provisions hereof and may be specified in the instrument of appointment (which may, in the discretion of the Administrative Agent, include provisions for the protection of such co-agent or separate agent similar to the provisions of Section 7.01).

Section 7.03     Appointment of Sub-Agents. The Administrative Agent shall have the right to appoint one or more sub-agents for the purpose of retaining physical possession of the Pledged Shares, Pledged LLC Interests, Pledged Partnership Interests and Pledged Notes, which may be held (in the discretion of the Administrative Agent) in the name of the relevant Loan Party, indorsed or assigned in blank or in favor of the Administrative Agent or any nominee or custodian of the Administrative Agent or a sub-agent appointed by the Administrative Agent.

-19-

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.01**    <u>Notices.</u> (a)    Unless otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including by facsimile transmission) and mailed, faxed or delivered, to the address, facsimile number or (subject to <u>subsection (b)</u> below) electronic mail address specified for notices: (i) in the case of any Subsidiary Guarantor, as set forth in <u>Section 5.01</u> of the Guaranty; (ii) in the case of the Borrower, the Administrative Agent or any Lender, as specified in or pursuant to <u>Section 10.01</u> of the Credit Agreement; (iii) in the case of the Administrative Agent, as set forth in the signature pages hereto; or (iv) in the case of any party, at such other address as shall be designated by such party in a notice to the Administrative Agent and each other party hereto. All such notices and other communications shall be deemed to be given or made upon the earlier to occur of: (i) actual receipt by the intended recipient and (ii)(A) if delivered by hand or by courier, when signed for by the intended recipient; (B) if delivered by mail, four Business Days after deposit in the mails, postage prepaid; (C) if delivered by facsimile transmission, when sent and receipt has been confirmed by telephone; and (D) if delivered by electronic mail (which form of delivery is subject to the provisions of <u>subsection (b)</u> below), when delivered. Rejection or refusal to accept, or the inability to deliver because of a changed address of which no notice was given, shall not affect the validity of notice given in accordance with this Section.

(b)    Except as expressly provided herein or as may be agreed by the Administrative Agent in its sole discretion, electronic mail and internet and intranet websites may be used only to distribute routine communications, such as financial statements and other information, and to distribute Loan Documents for execution by the parties thereto, to distribute executed Loan Documents in Adobe PDF format and may not be used for any other purpose.

**Section 8.02**    <u>No Waivers; Non-Exclusive Remedies</u>.    No failure or delay on the part of the Administrative Agent or any Secured Party to exercise, no course of dealing with respect to, and no delay in exercising, any right, power or privilege under this Agreement or any other Loan Document or any other document or agreement contemplated hereby or thereby and no course of dealing between the Administrative Agent or any Secured Party and any of the Loan Parties shall operate as a waiver thereof nor shall any single or partial exercise of any such right, power or privilege hereunder or under any Loan Document preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder or thereunder. The rights and remedies provided herein and in the other Loan Documents are cumulative and are not exclusive of any other remedies provided by Law. Without limiting the foregoing, nothing in this Agreement shall impair the right of any Secured Party to exercise any right of set-off or counterclaim it may have and to apply the amount subject to such exercise to the payment of indebtedness of any Loan Party other than its indebtedness under the Loan Documents. Each Loan Party agrees, to the fullest extent it may effectively do so under applicable Law, that any holder of a participation in a Obligation, whether or not acquired pursuant to the terms of any applicable Loan Document, may exercise rights of set-off or counterclaim or other rights with respect to such participation as fully as if such holder of a participation were a direct creditor of the Loan Party in the amount of such participation.

**Section 8.03**    <u>Compensation and Expenses of the Administrative Agent; Indemnification</u>.

(a)    *Expenses*.  The Loan Parties, jointly and severally, agree (i) to pay or reimburse the Administrative Agent for all out-of-pocket costs and expenses incurred in connection with the preparation, negotiation and execution of this Agreement and any amendment, waiver, consent or other modification of the provisions hereof (whether or not the transactions contemplated hereby are

-20-

consummated), and the consummation of the transactions contemplated hereby, including all reasonable fees, disbursements and other charges of counsel for the Administrative Agent, (ii) to pay for or reimburse the Administrative Agent and the other Secured Parties for all taxes which the Administrative Agent or any Secured Party may be required to pay by reason of the security interests granted in the Collateral (including any applicable transfer taxes) or to free any of the Collateral from the lien thereof and (iii) to pay or reimburse each Agent and each other Secured Party for all reasonable costs and expenses incurred in connection with the enforcement, attempted enforcement or preservation of any rights and remedies under this Agreement (including all such costs and expenses incurred during any "workout" or restructuring in respect of the Obligations and during any legal proceeding, including any proceeding under any bankruptcy or insolvency proceeding), including all reasonable fees and disbursements of counsel (including the allocated charges of internal counsel). The foregoing costs and expenses shall include all search, filing, recording, title insurance and appraisal charges and fees and taxes related thereto, and other out-of-pocket expenses incurred by the Administrative Agent and the costs of independent public accountants and other outside experts retained by or on behalf of the Agents and the Secured Parties. The agreements in this Section 8.03(a) shall survive the termination of the Commitments and repayment of all Obligations.

(b)    _Protection of Collateral_. If any Loan Party fails to comply with the provisions of any Loan Document, such that the value of any Collateral or the validity, perfection, rank or value of any Security Interest is thereby diminished or could reasonably be believed to be potentially materially diminished or put at risk, the Administrative Agent may, but shall not be required to, effect such compliance on behalf of such Loan Party, and the Loan Parties shall reimburse the Administrative Agent for the costs thereof on demand. Any and all excise, property, sales and use taxes imposed by any state, federal or local authority on any of the Collateral, or in respect of periodic appraisals of the Collateral, or in respect of the sale or other disposition thereof shall be borne and paid by the Loan Parties. If any Loan Party fails to promptly pay any portion thereof when due, the Administrative Agent may, at its option, but shall not be required to, pay the same and charge the Loan Parties' account therefor, and the Loan Parties agree to reimburse the Administrative Agent therefor on demand. All sums so paid or incurred by the Administrative Agent for any of the foregoing and any and all other sums for which any Loan Party may become liable hereunder and all costs and expenses (including attorneys' fees, legal expenses and court costs) reasonably incurred by the Administrative Agent or any Secured Party in enforcing or protecting the Security Interests or any of their rights or remedies under this Agreement, shall, together with interest thereon until paid at the Default Rate, be additional Obligations hereunder.

(c)    _Indemnification_. Whether or not the transactions contemplated hereby or by the other Loan Documents are consummated, each Loan Party, jointly and severally, agrees to indemnify, save and hold harmless the Administrative Agent, the Representatives, each other Secured Party and their respective Affiliates, directors, officers, employees, counsel, agents and attorneys-in-fact and their respective successors and assigns (collectively, the "Indemnitees") from and against: (i) any and all claims, demands, actions or causes of action that may at any time (including at any time following repayment of the Obligations and the resignation or removal of the Administrative Agent or Representative or the replacement of any Lender) be asserted or imposed against any Indemnitee, arising out of or in any way relating to or arising out of the ownership, purchasing, delivery, control, acceptance, financing, possession, sale, return or other disposition of the Collateral, the violation of the Laws of any country, state or other governmental body or unit, or any tort or contract claim; (ii) any administrative or investigative proceeding by any Governmental Authority arising out of or related to a claim, demand, action or cause of action described in clause (i) above; and (iii) any and all liabilities (including liabilities under indemnities), losses, costs or expenses (including fees and disbursements of counsel) that any Indemnitee suffers or incurs as a result of the assertion of any foregoing claim, demand, action or cause of action or proceeding, or as a result of the preparation of any defense in connection with any foregoing claim, demand, action or cause of action or proceeding, in all cases, and whether or not an Indemnitee is a

party to such claim, demand, action or cause of action, or proceeding; provided that no Indemnitee shall be entitled to indemnification for any claim to the extent such claim is determined by a court of competent jurisdiction in a final non-appealable judgment to have been caused by its own gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this Section 8.03(b) applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by any Loan Party, its directors, shareholders or creditors or an Indemnitee or any other Person or any Indemnitee is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated. Without prejudice to the survival of any other agreement of the Loan Parties hereunder and under the other Loan Documents, the agreements and obligations of the Loan Parties contained in this Section 8.03(b) shall survive the repayment of the Loans and other obligations under the Loan Documents and the termination of the Commitments. Any amounts paid by any Indemnitee as to which such Indemnitee has a right to reimbursement hereunder shall constitute Obligations.

(d)    *Contribution.* If and to the extent that the obligations of any Loan Party under this Section 8.03 are unenforceable for any reason, each Loan Party hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable Law.

Section 8.04    Enforcement.  The Secured Parties agree that this Agreement may be enforced only by the action of the Administrative Agent, acting upon the instructions of the Required Lenders (or, after the date on which all Obligations have been paid in full and all Commitments with respect thereto terminated, the holders of at least 51% of the outstanding Swap Obligations) and that no other Secured Party shall have any right individually to seek to enforce this Agreement or to realize upon the security to be granted hereby, it being understood and agreed that such rights and remedies may be exercised by the Administrative Agent or the holders of at least 51% of the outstanding Swap Obligations, as the case may be, for the benefit of the Secured Parties upon the terms of this Agreement and the other Loan Documents.

Section 8.05    Amendments and Waivers.  Any provision of this Agreement may be amended, changed, discharged, terminated or waived if, but only if, such amendment or waiver is in writing and is signed by each Loan Party directly affected by such amendment, change, discharge, termination or waiver (it being understood that the addition or release of any Loan Party hereunder shall not constitute an amendment, change, discharge, termination or waiver affecting any Loan Party other than the Loan Party so added or released) and the Administrative Agent (with the consent of the Required Lenders or, to the extent required by Section 10.06 of the Credit Agreement, all of the Lenders), at all times prior to the time on which all Obligations have been paid in full and all Commitments with respect thereto have been terminated; provided, however, that no such amendment, change, discharge, termination or waiver shall be made to Section 6.07 hereof or this Section 8.05 without the consent of each Secured Party adversely affected thereby.

Section 8.06    Successors and Assigns.  This Agreement shall be binding upon each of the parties hereto and inure to the benefit of the Administrative Agent and the Secured Parties and their respective successors and assigns.  In the event of an assignment of all or any of the Obligations, the rights hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness.  No Loan Party shall assign or delegate any of its rights and duties hereunder without the prior written consent of the Required Lenders or all of the Lenders as provided in Section 10.03 of the Credit Agreement.

Section 8.07    Governing Law.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW

-22-

YORK (INCLUDING, WITHOUT LIMITATION, SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES, EXCEPT AS OTHERWISE REQUIRED BY MANDATORY PROVISIONS OF LAW AND EXCEPT TO THE EXTENT THAT REMEDIES PROVIDED BY THE LAWS OF ANY JURISDICTIONS OTHER THAN NEW YORK ARE GOVERNED BY THE LAWS OF SUCH JURISDICTIONS.

Section 8.08    Limitation of Law; Severability.

(a)    All rights, remedies and powers provided in this Agreement may be exercised only to the extent that the exercise thereof does not violate any applicable provision of Law, and all the provisions of this Agreement are intended to be subject to all applicable mandatory provisions of Law which may be controlling and be limited to the extent necessary so that they will not render this Agreement invalid, unenforceable in whole or in part, or not entitled to be recorded, registered or filed under the provisions of any applicable Law.

(b)    If any provision hereof is invalid or unenforceable in any jurisdiction, then, to the fullest extent permitted by Law, (i) the other provisions hereof shall remain in full force and effect in such jurisdiction and shall be read and/or understood in an effort to carry out the intentions of the parties hereto as nearly as may be possible and (ii) the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provisions in any other jurisdiction.

Section 8.09    Counterparts; Effectiveness.    This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement shall become effective with respect to each Loan Party when the Administrative Agent shall receive counterparts hereof executed by itself and such Loan Party.

Section 8.10    Additional Loan Parties.    It is understood and agreed that any Affiliate of the Borrower that is required by any Loan Document to execute a counterpart of this Agreement after the date hereof shall automatically become a Loan Party hereunder with the same force and effect as if originally named as a Loan Party hereunder by executing an instrument of accession or joinder satisfactory in form and substance to the Administrative Agent and delivering the same to the Administrative Agent. Concurrently with the execution and delivery of such instrument of accession or joinder, such Affiliate shall take all such actions and deliver to the Administrative Agent all such documents and agreements as such Affiliate would have been required to deliver to the Administrative Agent on or prior to the date of this Agreement had such Affiliate been a party hereto on the date of this Agreement. Such additional materials shall include, among other things, supplements to Schedules I, II, III, and IV hereto (which Schedules shall thereupon automatically be amended and supplemented to include all information contained in such supplements) such that, after giving effect to the accession or joinder of such Affiliate, each of Schedules I, II, III, and IV hereto and Schedule 4.01 to the Security Agreement is true, complete and correct with respect to such Affiliate as of the effective date of such accession or joinder. The execution and delivery of any such instrument of accession or joinder, and the amendment and supplementation of the Schedules hereto as provided in the immediately preceding sentence, shall not require the consent of any other Loan Party hereunder. The rights and obligations of each Loan Party hereunder shall remain in full force and effect notwithstanding the addition of any new Loan Party as a party to this Agreement.

Section 8.11    Termination; Release of Loan Parties.

-23-

(a)     _Termination_.  Upon the full, final and irrevocable payment and performance of all Obligations and the termination of all Commitments under the Loan Documents, the Security Interests shall terminate and all rights to the Collateral shall revert to the Loan Parties.  In addition, at any time and from time to time prior to such termination of the Security Interests, the Administrative Agent may release any of the Collateral to the extent required by the Credit Agreement or with the prior written consent of the Required Lenders; provided that the release of all or substantially all of the Collateral shall require the consent of all of the Lenders.  Upon any such termination of the Security Interests or release of Collateral, the Administrative Agent will, upon request by and at the expense of any Loan Party, execute and deliver to such Loan Party such documents as such Loan Party shall reasonably request to evidence the termination of the Security Interests or the release of such Collateral, as the case may be.  Any such documents shall be without recourse to or warranty by the Administrative Agent or the Secured Parties.  The Administrative Agent shall have no liability whatsoever to any Secured Party as a result of any release of Collateral by it as permitted by this Section 8.11.  Upon any release of Collateral pursuant to this Section 8.11, none of the Secured Parties shall have any continuing right or interest in such Collateral or the Proceeds thereof.  Thereafter, the Administrative Agent shall take such actions and execute such documents as are reasonably requested by the Borrower or any of the other Loan Parties to evidence such termination.

(b)     _Release of Loan Parties_.  If any part of the Collateral is sold or otherwise disposed of or liquidated in compliance with the requirements of the Loan Documents (or such sale, other disposition or liquidation has been approved in writing by those Secured Parties whose approval is required by the applicable Loan Documents and the proceeds of such sale, disposition or liquidation are applied in accordance with the provisions of the Loan Documents, to the extent applicable, the Administrative Agent, at the request and expense of such Loan Party, will duly release from the security interest created hereby and assign, transfer and deliver to such Loan Party (without recourse and without representation or warranty) such of the Collateral as is then being (or has been) so sold, disposed of or liquidated as may be in the possession or control of the Administrative Agent and has not theretofore been released pursuant to this Agreement.  Thereafter, the Administrative Agent shall take such actions and execute such documents as are reasonably requested by the Borrower or any of the other Loan Parties to evidence such release.

Section 8.12     **Entire Agreement**.  This Agreement and the other Loan Documents constitute the entire agreement and understanding among the parties hereto and supersede any and all prior agreements and understandings, oral or written, and any contemporaneous oral agreements and understandings relating to the subject matter hereof and thereof.

[Signature Pages Follow]

-24-

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first written above.

LOAN PARTIES:

INPHONIC, INC.

By: _____
Name: David Steinberg
Title: CEO

CAIS ACQUISITION, LLC

By: _____
Name: David Steinberg
Title: President

CAIS ACQUISITION II, LLC

By: _____
Name: David Steinberg
Title: President

FON ACQUISITION, LLC

By: _____
Name: David Steinberg
Title: President

MOBILE TECHNOLOGY SERVICES, LLC

By: _____
Name: David Steinberg
Title: President

*Signature page to Pledge Agreement*

SIMIPC ACQUISITION CORP.

By: _____
Name: David Steinberg
Title: CEO

STARNUMBER, INC.

By: _____
Name: David Steinberg
Title: CEO

ADMINISTRATIVE AGENT:         CITICORP NORTH AMERICA, INC.,
                              as Administrative Agent

                              By: _____
                                  Name:
                                  Title:

                                  390 Greenwich St.
                                  7th Floor
                                  New York, NY 10013
                                  Attention: David Stempler
                                  Telephone:
                                  Telecopier

SIMIPC ACQUISITION CORP.

By:_____.
   Name:
   Title:

STARNUMBER, INC.

By:_____
   Name:
   Title:

ADMINISTRATIVE AGENT:       CITICORP NORTH AMERICA, INC.,
                      as Administrative Agent

                      By:_____
                        Name: Scot P. French
                        Title: Managing Director / Vice President

                      390 Greenwich St.
                      7th Floor
                      New York, NY 10013
                      Attention: David Stampler
                      Telephone:
                      Telecopier

*Signature page to Pledge Agreement*