# EXHIBIT 12

## INPHONIC INTERCOMPANY NOTE

November 7, 2006

FOR VALUE RECEIVED, the undersigned, InPhonic, Inc., a corporation organized under the laws of the Delaware with its principal office located in Washington, DC, ("Debtor"), hereby promises to pay ON DEMAND to each of CAIS Acquisition II, LLC; CAIS Acquisition LLC; FON Acquisition, LLC; Mobile Technology Services, LLC; Star Number, Inc.; SimIPC Acquisition Corp.; (the subsidiaries) organized under the laws of the Delaware with its principal office located Washington, DC, ("Creditor"), the principal sum owing to each such Creditor from time to time, together with interest from the date hereof on the unpaid principal balance outstanding from time to time as provided in this NOTE. It is also understood that the balance of such note may increase or decrease over time.

1. Payment of Interest. The interest rate of this Note varies and is computed quarterly by InPhonic, Inc.

2. Related Agreements. This Note is one of the Intercompany Notes referred to in the Credit Agreement, dated as of November 7, 2006, among InPhonic, Inc., the lenders from time to time party thereto and Citicorp North America, Inc., as Administrative Agent, (as amended, modified or supplemented from time to time, the "Credit Agreement") and is subject to the terms thereof, and shall be pledged by the Creditor pursuant to the Pledge Agreement (as defined in the Credit Agreement). The Debtor hereby acknowledges and agrees that the Administrative Agent (as defined in the Credit Agreement) pursuant to and as defined in the Pledge Agreement, as in effect from time to time, may exercise all rights provided therein with respect to this Note.

Anything in this Note to the contrary notwithstanding, the indebtedness evidenced by this Note owed by the Debtor to the Creditor shall be subordinate and junior in right of payment to all Obligations of such Debtor under the Loan Documents (as defined in the Credit Agreement), including, without limitation, where applicable, under such Debtor's guarantee of the Obligations (as defined in the Credit Agreement) pursuant to the Guaranty (as defined in the Credit Agreement) (such Obligations and other indebtedness and obligations in connection with any renewal, refunding, restructuring or refinancing thereof, including interest thereon accruing after the commencement of any proceedings referred to in the next paragraph below, whether or not such interest is an allowed claim in such proceeding, being hereinafter collectively referred to as "Senior Indebtedness").

In the event of any insolvency or bankruptcy proceedings, and any receivership, liquidation, reorganization or other similar proceedings in connection therewith, relative to the Debtor or to its creditors, as such, or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Debtor, whether or not involving insolvency or bankruptcy, then (x) the holders of Senior Indebtedness shall be paid in full in cash in respect of all amounts constituting Senior Indebtedness before the Creditor is entitled to receive (whether directly or indirectly), or make any demands for, any payment on account of this Note and (y) until the holders of Senior Indebtedness are paid in full in cash in respect of all

amounts constituting Senior Indebtedness, any payment or distribution to which the Creditor would otherwise be entitled on account of this Note shall be made to the holders of Senior Indebtedness.

If any Event of Default occurs under the Credit Agreement, then no payment or distribution of any kind or character shall be made by or on behalf of the Debtor or any other Person on its behalf with respect to this Note without the consent of the Administrative Agent (as defined in the Credit Agreement).

If any payment or distribution of any character, whether in cash, securities or other property, in respect of this Note shall (despite these subordination provisions) be received by the Creditor in violation of the two immediately preceding paragraphs before all Senior Indebtedness shall have been paid in full in cash, such payment or distribution shall be held in trust for the benefit of, and shall be paid over or delivered to, the holders of Senior Indebtedness (or their representatives), ratably according to the respective aggregate amounts remaining unpaid thereon, to the extent necessary to pay all Senior Indebtedness in full in cash.

To the fullest extent permitted by law, no present or future holder of Senior Indebtedness shall be prejudiced in its right to enforce the subordination of this Note by any act or failure to act on the part of the Debtor or by any act or failure to act on the part of such holder or any trustee or agent for such holder. The Creditor and the Debtor hereby agree that the subordination of this Note is for the benefit of the Administrative Agent and the Lenders and the Administrative Agent and the Lenders are obligees under this Note to the same extent as if their names were written herein as such and the Administrative Agent may, on behalf of itself and the Lenders, proceed to enforce the subordination provisions herein.

3. <u>Principal Prepayments Setoff</u>. Subject to compliance with the terms of Section 2 above, the principal amount of this Note may be prepaid, without premium or penalty, at Debtor's option, at any time and from time to time, in whole or in part. Any prepayments shall be applied first to accrued and unpaid interest and then to principal. Debtor shall not have the right to set-off against any amount due hereunder any claim or other amount due to Debtor from Creditor.

4. <u>Severability</u>. The invalidity, illegality or unenforceability of any provision of this Note shall not render invalid, illegal or unenforceable any other provision hereof.

5. <u>Costs of Collection</u>. Debtor agrees to pay all reasonable out-of-pocket expenses of Creditor (including reasonable legal fees) in connection with the enforcement of any provision of this Note or the collection of this Note.

6. <u>No Waiver of Remedies</u>. No failure or delay on the part of Creditor in the exercise of any power or right in this Note shall operate as a waiver thereof, and no exercise or waiver of any single power or right, or the partial exercise thereof, shall affect Creditor's right with respect to any and all other rights and powers.

7. <u>Certain Waivers</u>. Debtor waives presentment, notice of dishonor, protect and notice of protest of this Note.

634143.01-New York Server 4A - MSW

8.  **Maximum Interest**. This Note is subject to the express condition that at no time shall Debtor be obligated or required to pay interest on the unpaid principal balance due hereunder at a rate which is in excess of the maximum interest rate permitted under applicable law. If by the terms of this Note, Debtor is at any time required or obligated to pay interest on the unpaid principal balance due hereunder at a rate in excess of such maximum rate, then for such time as the rate of interest under this Note would be deemed excessive, its application shall be suspended and there shall be charged instead interest at such maximum rate.

9.  **Jurisdiction and Service**. (a) Debtor and Creditor each hereby irrevocably submits itself and its property to the non-exclusive jurisdiction of the Federal District Court for the Western District of New York or the Supreme Court of New York sitting in Monroe County over any dispute arising out of or relating to this Note and Debtor and creditor each hereby irrevocably agrees that all claims in respect of such dispute or any action, suit or proceeding related thereto may be heard and determined in such courts. Debtor and Creditor each hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any such disputed brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Debtor and Creditor each agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)  Debtor and Creditor each hereby consents to process being served by Debtor or Creditor in any such suit, action or proceeding by the mailing of a copy thereof in accordance with the provisions of Section 10 hereof.

(c)  Nothing in this Section 9 shall affect the rights of Debtor or Creditor to commence any such action, suit or proceeding in any other forum or to serve process in any such action, suit or proceedings in any other name permitted by law.

10. **Notices**. All notices, requests, demands and other communications under this Note shall be in writing and shall be deemed given when delivered personally or mailed by registered mail, return receipt requested, to the parties (and to the persons or entities to receive copies thereof) at the following addresses (or to such other address as a party may have specified by notice given to the other party pursuant to this provision):

(a)  If to Creditor:

Larry Winkler, CFO
1010 Wisconsin Avenue
Washington, DC 20002

(b)  If to Debtor:

Larry Winkler, CFO
1010 Wisconsin Avenue
Washington, DC 20002

11. **Successors and Assigns**. This Note shall inure to the benefit of and be binding upon Debtor, Creditor, any holder of this Note and their respective successors and permitted

assigns (including the Administrative Agent under the Credit Agreement). Whenever Debtor or Creditor is referred to in this Note, such references shall be deemed references to its successors and permitted assigns and, in the case of Creditor, and other holder of this Note. Without the prior written consent of Creditor, Debtor may not assign its rights, or permit the assumption of its obligations, under this Note to or by any person or entity.

12. <u>Headings and Captions</u>. Any headings or captions preceding the text of the separate sections hereof are intended solely for convenience of reference and shall not constitute a part of this Note, nor shall they affect its meaning, construction or effect.

13. <u>Governing Law</u>. This Note shall be construed in accordance with and governed by the laws of the State of New York without reference to its principles of conflicts of law.

IN WITNESS WHEREOF, the Undersigned has caused this Note to be executed as of the day and year first above written, November 7, 2006.

By: _____
Name: LAWRENCE S. WINKLER
Title: CFO