EXHIBIT 23

EXECUTION VERSION

## AMENDMENT NO. 11 TO CREDIT AGREEMENT

AMENDMENT, dated as of September 28, 2007 (this "Amendment"), to the Credit Agreement, dated as of November 7, 2006, as amended by Amendment to the Credit Agreement, dated as of February 6, 2007, by Amendment No. 2 to the Credit Agreement, dated as of March 30, 2007, by Amendment No. 3 to the Credit Agreement, dated as of April 9, 2007, by Amendment No. 4 to the Credit Agreement, dated as of April 23, 2007, Amendment No. 5 to the Credit Agreement, dated as of May 1, 2007, Amendment No. 6 to the Credit Agreement, dated as of May 31, 2007, Amendment No. 7 to the Credit Agreement, dated as of June 15, 2007, Amendment No. 8 to the Credit Agreement, dated as of June 29, 2007, Amendment No. 9 to the Credit Agreement, dated as of August 8, 2007, and Amendment and Waiver No. 10 to the Credit Agreement, dated as of August 30, 2007 (collectively, the "Agreement"), among InPhonic, Inc., a Delaware corporation (the "Borrower"), the Lenders listed on the signature pages hereof as Lenders, and Citicorp North America, Inc., as Administrative Agent.

WHEREAS, the parties hereto have previously entered into the Agreement; and

WHEREAS, the parties desire to amend the Agreement on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual agreements, provisions and covenants contained herein, the parties agree as follows:

**Section 1.**          **Definitions**.

Capitalized terms used but not otherwise defined herein shall have the respective meanings given to them in the Agreement.

**Section 2.**          **Effectiveness of the Amendment**. This Amendment shall become effective (the date of any such effectiveness, the "Effective Date") upon the receipt by the Administrative Agent of counterparts hereof duly executed by:

      (1)     the Borrower,

      (2)     each of the Guarantors,

      (3)     the Administrative Agent, and

      (4)     each Lender

**Section 3.**          Amendment to Agreement – Inventory Transaction and Related
                        Mandatory Prepayment

> *Section 4 of Amendment No. 9 to the Credit Agreement, dated as of August 8, 2007.* The
> phrase:

> "The Borrower has advised the Administrative Agent and the Lenders that it intends to
> sell for cash consideration resulting in Net Cash Proceeds to the Borrower of at least
> $15,000,000 all or a substantial portion of its inventory in a single transaction or series of
> related transactions to a third party that shall, among other things, serve as the outsourced
> provider of the Borrower's inventory management, logistics and fulfillment operations,
> which will close on or before September 30, 2007 (the "Inventory Transaction")"

> is amended and restated to read as follows:

> "The Borrower has advised the Administrative Agent and the Lenders that it intends to
> sell for cash consideration resulting in Net Cash Proceeds to the Borrower of at least
> $15,000,000 all or a substantial portion of its inventory in a single transaction or series of
> related transactions to a third party that shall, among other things, serve as the outsourced
> provider of the Borrower's inventory management, logistics and fulfillment operations,
> which will close on or before October 5, 2007 (the "Inventory Transaction")."

**Section 4.**          Amendment to Agreement  – Affirmative Covenants

> *Section 5 of Amendment No. 9 to the Credit Agreement, dated as of August 8, 2007.*
> The phrase:

> "*Inventory Transaction / Outsourcing Agreements*. By September 30, 2007, the
> Borrower shall (i) conclude the Inventory Transaction (as defined in Amendment
> No. 9 to Credit Agreement) resulting in Net Cash Proceeds to the Borrower of at
> least $15,000,000, and (ii) enter into a definitive agreement that shall provide for,
> among other things, the outsourcing of the Borrower's inventory management,
> logistics and fulfillment operations"

> Is hereby amended and restated as follows:

> "*Inventory Transaction / Outsourcing Agreements*. By October 5, 2007, the
> Borrower shall (i) conclude the Inventory Transaction (as defined in Amendment
> No. 11 to Credit Agreement) resulting in Net Cash Proceeds to the Borrower of at
> least $15,000,000, and (ii) enter into a definitive agreement that shall provide for,
> among other things, the outsourcing of the Borrower's inventory management,
> logistics and fulfillment operations."

**Section 5.**　　　　　**Waivers**. With respect to the annual financial statements for the year-ended December 31, 2006, the Administrative Agent and the Lenders hereby waive the requirement set forth in Section 6.01(a) of the Agreement that Borrower deliver an opinion (the "Internal Controls Opinion for 2007") of a Registered Public Accounting Firm independently assessing the Borrower's internal controls over financial reporting in accordance with Item 308 of SEC Regulation S-K, PCAOB Auditing Standard No. 2, and Section 404 of Sarbanes-Oxley expressing a conclusion that contains no statement that there is a material weakness in such internal controls to the extent that the Internal Controls Opinion for 2007 (x) is delivered later than March 31, 2007 and (y) mentions that there are material weaknesses in such internal controls; provided that the waiver in this Section 5 shall terminate and be of no force or effect unless (i) the Borrower cures all of the material weakness in internal controls (identified in Schedule A to Amendment No. 2 to Credit Agreement dated as of March 30, 2007 or in the Internal Controls Opinion for 2007) by October 5, 2007, and (ii) the Borrower receives the Internal Controls Opinion for 2007 (and delivers a copy to the Administrative Agent and the Lenders) by October 5, 2007.

**Section 6.**　　　　　**Representations and Warranties**. The Borrower hereby repeats and restates those representations and warranties set forth in Article V of the Agreement, as if made on and as of the date hereof (except to the extent such representations and warranties expressly relate to an earlier date), which representations and warranties are hereby incorporated herein by reference, as if specifically set forth herein; provided that references to "the Agreement" in any Loan Documents shall be and are deemed to mean the Agreement as amended hereby.

The Borrower represents and warrants to the Administrative Agent and the Lenders that, after giving effect to this Amendment, no Default or Event of Default exists on the Effective Date of this Amendment.

**Section 7.**　　　　　**Consent of Guarantors.** By signing below, each of the Guarantors irrevocably consents and agrees to this Amendment and all of the terms and provisions hereof.

**Section 8.**　　　　　**Miscellaneous**. This Amendment may be executed by one or more of the parties to this Amendment on any number of counterparts (including by facsimile), and all of said counterparts taken together shall be deemed to constitute one and the same instrument. This Amendment is a Loan Document. The Borrower shall pay or reimburse each of the Lenders and the Administrative Agent for all of their reasonable out-of-pocket expenses in connection with the negotiation, preparation, execution and delivery of this Amendment, including without limitation, the reasonable fees and expenses of Fried, Frank, Harris, Shriver & Jacobson, LLP . The provisions of Sections 10.14 and 10.15 of the Agreement are incorporated by reference into this Amendment *mutatis mutandis*. This Amendment shall not constitute an amendment or waiver of any of the terms and provisions of the Agreement and shall not be construed as a waiver or consent to any further or future action on the part of the Borrower or any Guarantor, except to the extent expressly set forth herein. None of the terms or provisions of this

Amendment shall be effective unless and until the Effective Date. Except as specifically set forth herein, all of the terms and provisions of the Agreement and the other Loan Documents are confirmed and shall remain in full force and effect and the Borrower and the Guarantors shall continue to be bound by such terms and provisions.

[Signature Pages Follow]

IN WITNESS WHEREOF, each of the parties hereto has caused this Amendment to be duly executed and delivered as of the date first above written.

Borrower:

INPHONIC, INC.

By: _____
    Name:  Walter W. Leach III
    Title:  General Counsel and Secretary

Guarantors:

CAIS ACQUISITION, LLC

By: _____
    Name:  Walter W. Leach III
    Title:  Secretary

CAIS ACQUISITION II, LLC

By: _____
    Name:  Walter W. Leach III
    Title:  Secretary

FON ACQUISITION, LLC

By: _____
    Name:  Walter W. Leach III
    Title:  Secretary

MOBILE TECHNOLOGY SERVICES, LLC

By: _____
    Name:  Walter W. Leach III
    Title:  Secretary

SIMIPC ACQUISITION CORP.

By: _____
    Name: Walter W. Leach III
    Title: Secretary

STAR NUMBER, INC.

By: _____
    Name: Walter W. Leach III
    Title: Secretary

1010 INTERACTIVE, LLC

By: _____
    Name: Walter W. Leach III
    Title: Secretary

[Signature Page to Amendment No. 11 to InPhonic Credit Agreement]

CITICORP NORTH AMERICA, INC.,
as Administrative Agent and as a Lender

By: _David_____
      Name: David Stempler
      Title: Vice President

GOLDMAN SACHS CREDIT PARTNERS,
L.P.,
as a Lender

By: _____

Name: Kenneth Eberts
Title: Managing Director, Goldman, Sachs
& Co.   Attorney-in-fact Goldman Sachs
Credit Partners

[Signature Page to Amendment No. 11 to InPhonic Credit Agreement]

AP INPHONIC HOLDINGS, LLC,
  as a Lender

By: _____
  Name: Scott G. Bruce
  Title: Managing Director

## CERTIFICATE OF INCUMBENCY

I, Walter W. Leach, being Secretary of InPhonic, Inc. (the "Corporation"), a corporation incorporated under the laws of the State of Delaware, HEHEBY CERTIFY THAT:

1.    I am the duly elected, qualified and acting Secretary of the Corporation and am charged with maintaining the records and minutes of the Corporation.

2.    Pursuant to the Corporation's By-Laws, the following named persons were designated and appointed to the offices indicated below, and that said persons do continue to hold such offices at this time, and the signatures set forth opposite the names are genuine signatures.

| NAME | TITLE | SPECIMEN SIGNATURE |
|------|-------|--------------------|
| Andrew B. Zeinfeld | Chief Executive Officer and President | |
| Kenneth D. Schwarz | Chief Financial Officer and Treasurer | |
| Walter W. Leach III | General Counsel and Secretary | |

3.    Pursuant to the Corporation's By-Laws, and certain resolutions adopted by the Corporation's Board of Directors, the persons designated to serve in the above-entitled capacity were given sufficient authority to act on behalf of and to bind the Corporation.

4.    Pursuant to the Corporation's By-Laws, I have the power and authority to execute this certificate on behalf of the Corporation and have so executed this certificate as of this 28th day of September, 2007.

Signature: _____

Name:     Walter W. Leach

Title:     Deputy General Counsel and Secretary, InPhonic, Inc.

**INPHONIC, INC.**

SECRETARY'S CERTIFICATE

The undersigned, as Corporate Secretary of InPhonic, Inc., a Delaware corporation (the "*Company*"), does hereby certify as of this 28th day of September 2007, on behalf of the Company that:

1.  Attached hereto as <u>Exhibit A</u> is a true, correct, and complete copy of all resolutions adopted by the Company's Board of Directors authorizing the execution, delivery and performance of: (i) the Credit Agreement, dated as of November 7, 2006, among InPhonic, Inc., the Lenders listed on the signature pages thereof as Lenders, and Citicorp North America, Inc., as Administrative Agent (the "*Credit Agreement*"); (ii) the Amendment to Credit Agreement dated as of February 6, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders, and Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 1*"); (iii) Amendment No. 2 to Credit Agreement dated as of March 30, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders, and Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 2*"); (iv) Amendment No. 3 to Credit Agreement dated as of April 9, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders, and Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 3*"); (v) Amendment No. 4 to Credit Agreement of dated as of April 23, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders, and Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 4*"); (vi) Amendment No. 5 to Credit Agreement dated as of May 1, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 5*"); (v) Amendment No. 6 to Credit Agreement dated as of May 31, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 6*"); (vi) Amendment No. 7 to Credit Agreement dated as of June 15, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 7*"); (vii) Amendment No. 8 to Credit Agreement dated as of June 29, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 8*"); (viii) Amendment No. 9 to Credit Agreement dated as of August 8, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 9*"); (ix) Amendment No. 10 to Credit Agreement dated as of August 30, 2007 among InPhonic, Inc., the Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 10*"); and (x) Amendment No. 11 to Credit Agreement dated as of September 28, 2007 among InPhonic, Inc., the

Lenders listed on the signature pages hereof as Lenders; Citicorp North America, Inc., as Administrative Agent (the "*Amendment No. 11*") (the Amendment No. 1, Amendment No. 2, Amendment No. 3, Amendment No. 4, Amendment No. 5, Amendment No. 6, Amendment No. 7, Amendment No. 8, Amendment No. 9, Amendment No. 10 and Amendment No. 11, collectively with the Credit Agreement, the "*Agreements*") and the performance of all of the transactions described in the Agreements. All such resolutions were duly adopted, are in full force and effect at the date hereof, have not been amended, varied or revoked in any respect and are all the resolutions adopted in connection with the transactions contemplated by the Agreements. Such resolutions authorize the Company to execute, deliver and perform its obligations under the Agreements.

2.      The Amendment No. 11 has been duly executed and delivered by Walter W. Leach III, General Counsel and Corporate Secretary of the Company, who is duly authorized to do so pursuant to such resolutions.

[Signature Page Follows]

~WASH1:3718472.v2 |3/3/03
27244-2

IN WITNESS WHEREOF, the undersigned has executed and delivered this Secretary's Certificate as of the date first written above.

_____
Walter W. Leach
General Counsel and Corporate Secretary,
InPhonic, Inc.

~WASH1:3718472.v2 |3/3/03
27244-2

## Exhibit A

Resolutions of the Board of Directors

1. Mr. Steinberg discussed the Corporation's negotiations with Goldman Sachs and intent to enter into an amendment no. 9 to the original Credit Agreement, dated November 7, 2006, between the Corporation and Goldman Sachs & Co, Citicorp North America, Inc. and AP InPhonic Holdings, LLC. Mr. Steinberg advised that the material terms of the draft Ninth Amendment provide for the Corporation: (i) to receive fifteen million dollars; (ii) require the Corporation to issue eight hundred thousand warrants to the lenders; and (iii) pay a five hundred thousand dollar fee to the lenders. Discussion followed.

2. Thereafter, the Board upon motion duly made and seconded, unanimously adopted the following resolutions:

WHEREAS, the Board deems it advisable and in the best interest of the Corporation to enter into a amendment no 9 ("**Ninth Amendment**") to the Credit Agreement, dated as of November 7, 2006, among the Corporation, the lenders from time to time party thereto, and Citicorp North America, Inc., as Administrative Agent (the "*Credit Agreement*"), providing for, among other things, the extension of a credit facility to the Corporation by the lenders in the amount of fifteen million dollars ($15,000,000) on the terms and conditions set forth therein;

WHEREAS, it is a condition precedent to funding under the Ninth Amendment that the Corporation enter into an amendment (the "**Warrant Agreement Amendment**") to the Warrant Agreement dated November 7, 2006 between the Corporation and the Purchasers identified therein (the "*Warrant Agreement*") and

WHEREAS, upon the execution and delivery of the Warrant Agreement Amendment by the Company and the Purchasers from time to time thereunder and/or the exercise of the warrants to be issued as contemplated thereby, one or more of the Purchasers may be deemed to be an "interested stockholder" (as such term is defined in Section 203 ("*Section 203*") of the Delaware General Corporation Law) of the Company;

THEREFORE, BE IT

### Ninth Amendment to Credit Agreement

RESOLVED, that the forms, terms and provisions of, and the transactions contemplated by, the Ninth Amendment to the Credit Agreement providing for, among other things, the extension of a credit facility to the Corporation by the lenders, consisting of a fifteen million dollar ($15,000,000) term loan be, and they hereby are, approved and adopted in all respects; and further

RESOLVED, that the appropriate officers of the Company (the "*Appropriate Officers*") and each employee of the Corporation that is authorized in writing as an Appropriate Officer (together with the Appropriate Officers, the "*Authorized Individuals*") be, and each of them, acting individually hereby is, authorized and empowered to execute and deliver, in the name and on behalf of the Corporation, the Ninth Amendment to the Credit Agreement, to borrow thereunder from time to time, to execute and deliver the Warrant Agreement Amendment, the certificates representing the Warrants to be issued pursuant to the Warrant Agreement Amendment and any collateral documents, and to consummate the transactions contemplated thereby, including without limitation the execution, delivery, and/or filing of such certificates, agreements, instruments, or documents as any Authorized Individual, in his sole discretion, may deem necessary or desirable and in the best interests of the Corporation, with such changes therein and additions thereto as shall be deemed necessary, appropriate or advisable by the officer executing the same on behalf of the Corporation, the execution thereof by such officer to be conclusive evidence of the approval by him of such changes and additions; and further

*RESOLVED*, that the Authorized Individuals be, and each of them acting individually hereby is, authorized and empowered to execute, in the name of and on behalf of the Corporation, and to deliver when so executed, term loan notes, notices of borrowing or other appropriate document or documents to the Administrative Agent or Lenders, in such form, with such changes thereto, as shall be deemed necessary, appropriate or advisable by the officer executing the same.

## Warrant Agreement Amendment

**RESOLVED**, that the forms, terms and provisions of, and the transactions contemplated by, the Warrant Agreement Amendment, pursuant to which, among other things, the Corporation agrees to issue and sell warrants for the Common Stock of the Corporation to the Purchasers (as defined in the Warrant Agreement), and the transactions contemplated thereby be, and they hereby are, approved and adopted in all respects; and further

**RESOLVED**, that whereas the Board wishes to issue eight hundred thousand (800,000) additional Warrants (as defined in the Warrant Agreement) to the holders of outstanding Warrants, the Authorized Individuals be, and they hereby are, authorized and directed to issue to the Purchasers, as the holders of Warrants a certificate or certificates representing 800,000 Warrants in accordance with the Corporation's obligations under the Warrant Agreement Amendment; and

**RESOLVED**, that the Corporation hereby duly, validly and irrevocably reaffirms its approval of Goldman and its affiliates becoming an "interested stockholder" within the meaning and for purposes of Section 203 (for purposes of clarification, the phrase "Goldman and its affiliates" including Goldman Sach Group, Inc., Goldman, Sachs & Co. and their affiliates), as such approval was given in resolutions duly adopted on November ___, 2006; and further

**RESOLVED**, that the Corporation shall at all times reserve and keep available, free from preemptive rights, out of the aggregate of its authorized but unissued Common Stock or its authorized Common Stock held in treasury, that number of shares of Common Stock sufficient for the purposes of enabling it to satisfy any obligations to issue Warrant Shares (as defined in the Warrant Agreement) upon the exercise or exchange of all outstanding Warrants (as defined in the Warrant Agreement), including, without limitation, the Warrants for 800,000 Warrant Shares to be issued pursuant to the Warrant Agreement Amendment; and further

**RESOLVED**, that, if and when so obligated under the terms of the Warrant Agreement, the Authorized Individuals be, and they hereby are, authorized and directed to issue to the holders of Warrants a certificate or certificates representing the applicable aggregate amount under the Warrant Agreement of Warrant Shares to the exercising or exchanging holder of Warrants, each such Warrant Share to be a duly authorized, validly issued, fully paid and nonassessable share of the Corporation's Common Stock; and

**RESOLVED**, that the Authorized Individuals be, and each of them hereby is, authorized to execute and deliver, in the name and on behalf of the Corporation, the Warrant Agreement, and to consummate the transactions contemplated thereby, including without limitation the execution, delivery, and/or filing of such certificates, agreements, instruments, or documents as any Authorized Individual, in his sole discretion, may deem necessary or desirable as in the best interests of the Corporation, with such changes therein and additions thereto as shall be deemed necessary, appropriate or advisable by the officer executing the same on behalf of the Corporation, the execution thereof by such officer to be conclusive evidence of the approval by him of such changes and additions.

2

## General Resolutions

RESOLVED, that the Authorized Individuals be, and each of them individually hereby is, authorized, empowered and directed, for, and in the name and on behalf of the Corporation, to take or cause to be taken any and all such further actions, to execute and deliver all such other instruments, documents, undertakings, agreements, certificates, and papers (including without limitation all amendments to any of the documents authorized hereunder and any and all other collateral documents) required or desirable to be entered into, or contemplated by the documents referred to in the foregoing resolutions in the name and on behalf of the Corporation, to incur and pay all such fees and expenses and to engage such persons as such officer or officers shall, in his or their discretion, determine to be necessary, proper or desirable to carry out fully the intent and purposes of the foregoing resolutions and the execution by such officer or officers of any such instrument or document or the payment of any such fees and expenses or the engagement of such persons or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefor and the ratification, approval and confirmation by the Corporation of the instruments or documents so executed, the fees and expenses so paid, the persons so engaged and the actions so taken; and further

RESOLVED, that the Secretary of the Corporation is authorized and empowered to certify and to attest any documents which such officer deems necessary or advisable to complete the transactions contemplated by these resolutions; provided that such certification or attestation shall not be required for the validity of the particular document; and further

RESOLVED, that all actions previously taken by any officer or director of the Corporation in connection with the transactions contemplated by the foregoing resolutions are hereby adopted, ratified, confirmed and approved in all respects.

3