EXHIBIT 24

<u>Loan Party Accession Agreement</u>

**LOAN PARTY ACCESSION AGREEMENT** dated as of January 4, 2007 (as amended, restated, modified or supplemented from time to time, this "<u>Agreement</u>") among 1010 Interactive, LLC, a Delaware limited liability company ( the "<u>New Loan Party</u>"), and Citicorp North America, Inc., as Administrative Agent for and on behalf of the Lenders referred to below.

InPhonic, Inc., a Delaware corporation (the "<u>Borrower</u>"), entered into a Credit Agreement dated as of November 7, 2006 (as amended, modified or supplemented from time to time, the "<u>Credit Agreement</u>"; the terms defined therein being used herein as therein defined) among the Borrower, the banks and other lending institutions from time to time party thereto (each a "<u>Lender</u>" and, collectively, the "<u>Lenders</u>") and Citicorp North America, Inc. as Administrative Agent (together with its successor or successors, the "<u>Administrative Agent</u>").

To induce the Lenders to enter into the Credit Agreement and the other Loan Documents, and as a condition precedent to the obligations of the Secured Parties thereunder, the Borrower and its subsidiaries (each a "<u>Guarantor</u>" and, collectively, the "<u>Guarantors</u>") have agreed, jointly and severally, to provide a guaranty of all obligations of the Borrower and the other Loan Parties under or in respect of the Loan Documents.

As a further condition precedent to the obligations of the Lenders under the Loan Documents, each Loan Party has agreed or will agree to grant a continuing security interest in favor of the Administrative Agent in and to the Collateral to secure the Obligations.

The New Loan Party, was formed by the Borrower and is a Wholly-Owned Subsidiary of the Borrower. The New Loan Party was formed on January 4, 2007 to pursue new business initiatives. The New Loan Party was not created in connection with an acquisition transaction.

<u>Section 6.12</u> of the Credit Agreement requires each Subsidiary formed or acquired by the Borrower or any of its Subsidiaries after the Closing Date to become a party to the Guaranty as an additional "Guarantor", to become a party to the Security Agreement as an additional "Loan Party" and to become a party to the Pledge Agreement as an additional "Loan Party". The Guaranty, the Security Agreement and the Pledge Agreement specify that such additional Subsidiaries may become "Guarantors" under the Subsidiary Guaranty and "Loan Parties" under each of the Security Agreement and the Pledge Agreement by execution and delivery of a counterpart of each such Loan Documents.

The New Loan Party has agreed to execute and deliver this Agreement in order to evidence its agreement to become a "Guarantor" under the Subsidiary Guaranty and a "Loan Party" under each of the Security Agreement and the Pledge Agreement. Accordingly, the parties hereto agree as follows:

**Section 1.    <u>Guaranty</u>.** In accordance with <u>Section 5.10</u> of the Guaranty, the New Loan Party hereby (i) agrees that, by execution and delivery of a counterpart signature page to the Guaranty in the form attached hereto as <u>Exhibit A</u>, the New Loan Party shall become a "Guarantor" under the Guaranty with the same force and effect as if originally named therein as a Guarantor (as defined in the Guaranty), (ii) acknowledges receipt of a copy of and agrees to be obligated and bound as a "Guarantor" by all of the terms and provisions of the Guaranty and (iii) acknowledges and agrees that, from and after the date hereof, each reference in the Guaranty to a "Guarantor" or the "Guarantors" shall be deemed to include the New Loan Party. The New Loan Party hereby waives acceptance by the Administrative Agent and the Secured Parties of the guarantee by the New Loan Party under the Guaranty

upon the execution and delivery by each of the New Loan Party of the counterpart signature referred to herein.

**Section 2.** **Security Agreement.** In accordance with Section 7.10 of the Security Agreement, the New Loan Party hereby (i) agrees that, by execution and delivery of a counterpart signature page to the Security Agreement in the form attached hereto as Exhibit B, the New Loan Party shall become a "Loan Party" under the Security Agreement with the same force and effect as if originally named therein as a Loan Party (as defined in the Security Agreement), (ii) acknowledges receipt of a copy of and agrees to be obligated and bound as a "Loan Party" by all of the terms and provisions of the Security Agreement, (iii) grants to the Administrative Agent for the benefit of the Secured Parties a continuing security interest in the Collateral (as defined in the Security Agreement), in each case to secure the full and punctual payment of the Obligations in accordance with the terms thereof and to secure the performance of all of the obligations of each Loan Party under the Credit Agreement and the other Loan Documents, (iv) represents and warrants that each of Schedules 1.01, 3.06 and 4.01 to the Security Agreement, as amended, supplemented and modified as set forth on Schedules 1.01, 3.06 and 4.01 hereto, is complete and accurate with respect to the New Loan Party as of the date hereof after giving effect to the New Loan Party's accession to the Security Agreement as an additional Loan Party thereunder and (v) acknowledges and agrees that, from and after the date hereof, each reference in the Security Agreement to a "Loan Party" or the "Loan Parties" shall be deemed to include the New Loan Party.

**Section 3.** **Pledge Agreement.** In accordance with Section 8.10 of the Pledge Agreement, the New Loan Party hereby (i) agrees that, by execution and delivery of a counterpart signature page to the Pledge Agreement in the form attached hereto as Exhibit C, the New Loan Party shall become a "Loan Party" under the Pledge Agreement with the same force and effect as if originally named therein as a Loan Party (as defined in the Pledge Agreement), (ii) acknowledges receipt of a copy of and agrees to be obligated and bound as a "Loan Party" by all of the terms and provisions of the Pledge Agreement, (iii) grants to the Administrative Agent for the benefit of the Secured Parties a continuing security interest in the Collateral (as defined in the Pledge Agreement), in each case to secure the full and punctual payment of the Loan Obligations in accordance with the terms thereof and to secure the performance of all of the Obligations of each Loan Party under the Credit Agreement and the other Loan Documents, (iv) represents and warrants that each of Schedules I, II, III, and IV to the Pledge Agreement, as amended, supplemented and modified as set forth on Schedules I, II, III, and IV hereto, is complete and accurate with respect to the New Loan Party as of the date hereof after giving effect to the New Loan Party's accession to the Pledge Agreement as an additional Loan Party thereunder and (v) acknowledges and agrees that, from and after the date hereof, each reference in the Pledge Agreement to a "Loan Party" or the "Loan Parties" shall be deemed to include the New Loan Party.

**Section 4.** **Representations and Warranties.** The New Loan Party hereby represents and warrants that:

(a)   This Agreement has been duly authorized, executed and delivered by the New Loan Party, and each of this Agreement and the Subsidiary Guaranty, the Security Agreement and the Pledge Agreement, as acceded to hereby by the New Loan Party, constitutes a valid and binding agreement of the New Loan Party, enforceable against the New Loan Party in accordance with its terms, except in each case as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforceability of creditors' rights generally and by equitable principles of general applicability (regardless of whether such enforceability is considered in a proceeding in equity or at law).

(b)   Each of the representations and warranties contained in the Credit Agreement, the Subsidiary Guaranty, the Security Agreement, the Pledge Agreement and each of the other Loan

Documents is true and correct in all material respects as of the date hereof, with the same effect as though such representations and warranties had been made on and as of the date hereof after giving effect to the accession of the New Loan Party as an additional "Guarantor" under the Subsidiary Guaranty and an additional "Loan Party" under each of Security Agreement and the Pledge Agreement.

(c) Attached hereto as Exhibit D is a correct and complete Perfection Certificate relating to the New Loan Party and its Collateral.

Section 5. **Effectiveness**. This Agreement and the accession of the New Loan Party to the Subsidiary Guaranty, the Security Agreement and the Pledge Agreement as provided herein shall become effective with respect to the New Loan Party when (i) the Administrative Agent shall have received a counterpart of this Agreement duly executed by such New Loan Party and (ii); the Administrative Agent and/or the Administrative Agent, as applicable, shall have received duly executed counterpart signature pages to each of the Subsidiary Guaranty, the Security Agreement and the Pledge Agreement as contemplated hereby.

Section 6. **Integration; Confirmation**. On and after the date hereof, each of the Subsidiary Guaranty, the Security Agreement and the Pledge Agreement and the respective Schedules thereto shall be supplemented as expressly set forth herein; all other terms and provisions of each of the Subsidiary Guaranty, the Security Agreement, the Pledge Agreement, the other Loan Documents and the respective Schedules thereto shall continue in full force and effect and unchanged and are hereby confirmed in all respects.

Section 7. **Expenses**. The New Loan Party agrees to pay (i) all out-of-pocket expenses of the Agents, including fees and disbursements of special and local counsel for the Agents, in connection with the preparation, execution and delivery of this Agreement and any document or agreement contemplated hereby and (ii) all taxes which the Administrative Agent or any Secured Party may be required to pay by reason of the security interests granted in the Collateral (including any applicable transfer taxes).

Section 8. **GOVERNING LAW**. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (INCLUDING, WITHOUT LIMITATION, SECTION 5-1401 AND SECTION 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES, EXCEPT AS OTHERWISE REQUIRED BY MANDATORY PROVISIONS OF LAW.

Section 9. **Counterparts**. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement may be transmitted and/or signed by facsimile and if so transmitted or signed, shall, subject to requirements of law, have the same force and effect as a manually signed original and shall be binding on the New Loan Party, the Agents and the Secured Parties. The Administrative Agent may also require that this Agreement be confirmed by a manually signed original hereof; provided, however, that the failure to request or deliver the same shall not limit the effectiveness of any facsimile document or signature.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

1010 INTERACTIVE, LLC

By: _____
    Name: David A. Steinberg
    Title: Chief Executive Officer

CITICORP NORTH AMERICA, INC.
as Administrative Agent

By: _____
    Name:
    Title: