EXHIBIT 29



**DEPOSIT ACCOUNT
CONTROL AGREEMENT**

This Deposit Account Control Agreement (this "Agreement") is entered into as of August 2, 2007, by and among INPHONIC, INC. ("Customer"), CITICORP NORTH AMERICA, INC. ("Secured Party") and COMERICA BANK ("Bank") with reference to the following facts:

A.      Customer maintains the Deposit Account (as defined below) at Bank's San Jose Airport Banking Center (the "Banking Office").

B.      Customer has granted Secured Party a security interest in the Deposit Account and all funds now or at any time hereafter held in the Deposit Account.

C.      Secured Party, Customer and Bank have agreed to enter into this Agreement to provide for the control of the Deposit Account by Secured Party and to perfect Secured Party's security interests in the Deposit Account (as each such term is defined below).

NOW, THEREFORE, in consideration of the mutual promises and covenants, contained herein the parties hereto mutually agree as follows.

## ARTICLE 1 - DEFINITIONS

1.01    Definitions.      As used in this Agreement, the following terms shall have the following meanings:

"Code" means the California Uniform Commercial Code, as amended and supplemented from time to time, and any successor statute.

"Deposit Account" means, collectively, only Customer's deposit accounts (as such term is defined in the Code) with Bank, numbers 1891668467, 1892038819 and 1892038827, and including without limitation any and all other deposit account(s) of Customer established with Bank from time to time in replacement or substitution therefor.

"Notice of Exclusive Control" means written notice to Bank which states that an event of default has occurred and is continuing under the document, instrument or agreement pursuant to which Customer has granted the security interest in the Deposit Account to Secured Party (or the related credit agreement), and that on the basis thereof, Secured Party is exercising exclusive control over the Deposit Account.

"Order" means any instruction issued by any person with respect to the disposition of any funds contained in the Deposit Account.

1.02    Construction.  Any reference herein to any document includes any and all alterations, amendments, extensions, modifications, renewals, or supplements thereto or thereof, as applicable.  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Secured Party, whether under any rule of construction or otherwise.  This Agreement has been reviewed by each of the parties hereto, and their respective counsel.  This Agreement shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of Customer and Secured Party.

## ARTICLE 2 - CONTROL

2.01    No Withdrawals or Payments After Receipt of Notice of Exclusive Control.  Anything contained in Section 2.03 to the contrary notwithstanding, Customer hereby absolutely, irrevocably and unconditionally

authorizes and instructs Bank that, promptly upon receipt of a Notice of Exclusive Control by Bank at the Banking Office, Bank shall:

(a)    neither accept nor comply with any Order from Customer for the payment of any funds from the Deposit Account to any third person nor permit Customer to withdraw any funds in the Deposit Account without the specific prior written consent of Secured Party; and

(b)    comply with all Orders originated by Secured Party concerning the Deposit Account and all other requests or instructions from Secured Party regarding disposition and/or delivery of funds contained in the Deposit Account, without further consent or direction from Customer and without regard to any inconsistent or conflicting Orders given to Bank by Customer.  Customer and Secured Party hereby agree that Bank shall have no duty to notify Customer or make any inquiry whatsoever as to Secured Party's right or authority to give any such Notice of Exclusive Control or any such Orders, instructions or directions.

2.02    Priority of Lien.  Bank hereby acknowledges and agrees that:

(a)    Bank has received notice of the existence of the security interest of Secured Party in the Deposit Account, and recognizes the security interest granted to Secured Party by Customer;

(b)    Said security interest shall be noted by Bank on its books and records;

(c)    all of Bank's present and future rights against the Deposit Account are subordinate to Secured Party's security interest therein; provided, however, that Secured Party hereby acknowledges and agrees that nothing herein subordinates or waives, and that Bank expressly reserves, all of its present and future rights (whether described as rights of setoff, banker's lien, security interest, chargeback or otherwise, and whether available to Bank under the law or under any other agreement between Bank and Customer concerning the Deposit Account, or otherwise) with respect to: (i) items deposited to the Deposit Account and returned unpaid, whether for insufficient funds or for any other reason, and without regard to the timeliness of return of any such items or the occurrence or timeliness of any drawee's notice of non-payment of such items; (ii) ACH entries credited to the Deposit Account and later reversed, whether for insufficient funds or for any other reason, and without regard to the timeliness of such entries' reversal; (iii) chargebacks to the Deposit Account of credit card transactions, without regard to the timeliness of such chargebacks; (iv) erroneous entries to the Deposit Account; (v) claims of breach of the transfer or presentment warranties made to Bank pursuant to the Code in connection with items deposited to the Deposit Account; (vi) Bank's usual and customary charges for services rendered in connection with the Deposit Account; and

(d)    Except as otherwise required by law, Bank shall not enter into any agreement with any third party relating to the Deposit Account or agree that it will comply with any Orders concerning the Deposit Account originated by any such third party without the prior written consent of Secured Party and Customer.

2.03    Control of Deposit Account.  At all times during the effectiveness of this Agreement, Customer hereby absolutely, irrevocably and unconditionally instructs, and Bank hereby agrees, that:

(a)    Bank shall comply with any Orders or other instructions concerning the Deposit Account from Secured Party without further consent by Customer;

(b)    Bank shall not comply with any Orders or other instructions concerning the Deposit Account from any third party without the prior written consent of Secured Party and Customer, and

(c)    Except as otherwise provided in Sections 2.01 and 2.02, prior to the receipt of a Notice of Exclusive Control by Bank at the Banking Office, Bank may accept and comply with Orders from Customer for the payment of any funds from the Deposit Account to Customer or any third person, or permit Customer to withdraw any funds in the Deposit Account without the specific prior written consent of Secured Party.

2.04    Bank's Representations, Warranties and Acknowledgments.

(a)    Bank represents and warrants to Secured Party that:

2-

(i)      the Deposit Account has been established and is maintained with Bank at the Banking Office solely in Customer's name as recited above;

(ii)     any balances in the Deposit Account are valid and binding obligations of Bank;

(iii)    Bank has no knowledge of any claim to, security interest in or lien upon the Deposit Account, except the security interests in favor of Secured Party and Bank's liens securing fees and charges, as described in Section 2.02 hereof; and

(iv)     Bank has not entered into any agreement with any third party regarding the Deposit Account or agreed that it will comply with any Orders concerning the Deposit Account originated by any such third party.

2.05    Agreements of Bank and Customer.  Bank and Customer agree that:

(a)      Bank shall send copies of all statements relating to the Deposit Account simultaneously to Customer and to Secured Party;

(b)      Bank may disclose to Secured Party such other information concerning the Deposit Account as Secured Party may from time to time request; provided, however, that Bank shall have no obligation to disclose to Secured Party any information which Bank does not ordinarily make available to its depositors; and

(c)      Bank shall use reasonable efforts to promptly notify Secured Party and Customer if any other party asserts any claim to, security or property interest in or lien upon the Deposit Account.

2.06    Bank's Responsibility.  Anything contained in the foregoing to the contrary notwithstanding:

(a)      Except for permitting a withdrawal in violation of Section 2.01, Bank shall not be liable to Secured Party for complying with Orders from Customer that are received by Bank before Bank receives and has had a reasonable opportunity to act on a Notice of Exclusive Control and any contrary Order from Secured Party;

(b)      Bank shall not be liable to Customer for complying with Orders originated by Secured Party, even if Customer notifies Bank that Secured Party is not legally entitled to issue Orders, unless Bank takes the action after it is served with an injunction, restraining order, or other legal process enjoining it from doing so, issued by a court of competent jurisdiction, and had a reasonable opportunity to act on the injunction, restraining order or other legal process;

(c)      This agreement does not create any obligation of Bank except for those expressly set forth in this Agreement.  In particular, Bank need not investigate whether the Secured Party is entitled under Secured Party's agreements with Customer to provide Bank with a Notice of Exclusive Control or to give Orders.  In acting or performing under this Agreement, Bank may rely on any papers, documents, notices and communications it believes are given, signed or sent by the appropriate party or its authorized representative;

(d)      Bank will not have any liability to Customer or Secured Party for claims, losses, liabilities or damages suffered or incurred by Customer or Secured Party as a result of or in connection with this agreement except to the extent such losses, liabilities and damages directly result from Bank's gross negligence or willful misconduct;

(e)      The parties agree that substantial compliance by Bank with the terms of this Agreement and the agreements entered into with Customer from time to time with respect to the Deposit Account, as they may be amended from time to time, shall be deemed to constitute the exercise of ordinary and reasonable care.  In the event that Bank is liable to Customer or Secured Party under this Agreement, Bank's liability shall be limited to the actual direct and provable amount of money damages suffered by the claiming party; and

3

(f)    In no event shall Bank have any liability to Customer or Secured Party for (1) any consequential, special, punitive or exemplary damages, indirect loss or damage or any lost profits, whether or not any claim for such damages is based on tort or contract or an allegation that Bank knew or should have known the likelihood of such damages in any circumstances, (2) any failure to perform the Bank's responsibilities under this Agreement if such failure is due to strikes, lockouts or other labor disturbances, riots or civil commotions, fire or other casualty, earthquakes, floods, windstorms, lightning or other acts of God, epidemics, sabotage, insurrection, war, civil disorders, hostilities, expropriation or confiscation of properties, equipment failures or malfunctions, power failures, failures of or delays by carriers or other third parties, interference by civil or military authorities, or any other cause or condition beyond the Bank's control, (3) any act or failure to act by Customer or Secured Party, or (4) acting pursuant to a court order, subpoena, garnishment, tax levy or similar process in regard to any account or service covered by this Agreement.

2.07    Indemnity.

(a)    Customer and Secured Party hereby agree that Bank is released from any and all claims and liabilities to Customer and Secured Party arising from the terms of this Agreement and the compliance by Bank with the terms hereof, except to the extent that such liabilities arise from Bank's gross negligence or willful misconduct.

(b)    Customer shall indemnify and hold harmless Bank, its officers, directors, employees, and agents from and against any and all claims, liabilities, demands, damages and expenses arising out of this Agreement (including reasonable attorneys' fees and disbursements and the reasonable estimate of the allocated costs and expenses of in-house legal counsel and staff), except to the extent the claims, liabilities, damages or expenses are caused by Bank's gross negligence or willful misconduct. Customer shall indemnify Secured Party for any indemnity obligations Secured Party owes to Bank under this Agreement.

(c)    Secured Party shall indemnify and hold harmless Bank, its officers, directors, employees, and agents from and against any and all claims, liabilities, demands, damages and expenses arising out of a Notice of Exclusive Control or following any Orders or other instructions from Secured Party concerning the Deposit Account (including reasonable attorneys' fees and disbursements and the reasonable estimate of the allocated costs and expenses of in-house legal counsel and staff), except to the extent the claims, liabilities, damages or expenses are caused by Bank's gross negligence or willful misconduct; provided, however, that in no event shall the Secured Party be liable for any special, consequential, punitive or exemplary damages, or lost profits.

2.08    Termination. Survival.

(a)    This Agreement shall terminate:

(i)    immediately upon receipt by the Bank at the Banking Office of written notice from Secured Party expressly stating that Secured Party is terminating this Agreement;

(ii)    immediately upon receipt by the Bank at the Banking Office of written notice from Secured Party expressly stating that Secured Party's security interest in the Deposit Account has terminated; or

(iii)    thirty (30) days after the receipt by Secured Party and Customer of written notice from Bank stating that it is terminating this Agreement.

(b)    Sections 2.06, "Bank's Responsibility," and Section 2.07, "Indemnity," shall survive termination of this Agreement.

## ARTICLE 3 -  GENERAL PROVISIONS

3.01    Conflicts; Controlling Agreement.  As to the matters specifically the subject of this Agreement, in the event of any conflict between this Agreement and any other agreement between Bank and Customer, the terms of this Agreement shall control.

4

3.02    <u>Final Agreement; Amendments and Waivers</u>.  This Agreement, together with any other document, instrument, or agreement entered into between Customer and Secured Party in connection therewith with respect to the subject matter contained therein constitutes the entire understanding among each of them with respect to the subject matter thereof.  This Agreement supersedes any and all prior oral or written agreements relating to the subject matter hereof.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the party asserted to be bound thereby, and then such amendment or waiver shall be effective only in the specific instance and specific purpose for which given.

3.03    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties.

3.04    <u>Amendments, Modifications</u>.  This Agreement may be amended or modified only in writing signed by all parties hereto.

3.05    <u>Severability of Provisions</u>.  If any provision of this Agreement for any reason is held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Agreement.

3.06    <u>Section Headings</u>.  Headings and numbers used to identify sections and paragraphs of this Agreement have been set forth herein for convenience only.  Unless the contrary is compelled by the context, everything contained in each section applies equally to this entire Agreement.

3.07    <u>Counterparts; Facsimile Execution</u>.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile also shall deliver a manually executed counterpart of this Agreement but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

3.08    <u>Notices</u>.    All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing (unless otherwise specifically provided) and delivered to each party at the following address:

Bank:                                           COMERICA BANK
                                                226 Airport Parkway, Suite # 100, M/C 4348
                                                San Jose, CA 95110
                                                Fax. No.:  (408) 451-8523
                                                Attn:  Branch Manager

With a copy to:                                 Comerica Bank
                                                75 East Trimble Road
                                                San Jose, CA 95131
                                                Fax. No.:  (408) 556-5091
                                                Attn:  Manager

And With a copy to:                             Comerica Bank
                                                Technology and Life Sciences Division
                                                11921 Freedom Drive, Suite 920
                                                Reston, VA 20190
                                                Fax. No.:  (703) 467-9308
                                                Attn:  Todd McDonald

Customer:

InPhonic, Inc.
1010 Wisconsin Avenue, NW Suite 600
Washington, DC 20007
Fax. No.: (202) 333-5775
Attn: David Steinberg

Secured Party:

Citicorp North America, Inc.,
as administrative agent
390 Greenwich Street, 7th Floor
New York, NY 10013
Fax. No.: (212) 723-8036
Attn: David Stempler

or to such other address or facsimile number as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (i) if sent by hand delivery, upon delivery; (ii) if sent by facsimile, upon receipt; and (iii) if sent by overnight courier, upon receipt; provided, however, that in any case, receipt by Bank of any Notice of Exclusive Control shall not be deemed to have occurred until the Bank delivers written notification (by email, fax or hard copy) confirming receipt to the Secured Party. Bank shall attempt in good faith to deliver written notification confirming receipt to the Secured Party promptly following Bank's actual receipt of the Notice of Exclusive Control.

3.09    Governing Law. This Agreement shall be deemed to have been made in the state of California and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed in accordance with the internal laws of the state of California, without regard to principles regarding the conflicts or choice of law.

3.10    WAIVER OF JURY TRIAL.    THE UNDERSIGNED ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OTHER DOCUMENT, INSTRUMENT OR AGREEMENT BETWEEN THE UNDERSIGNED PARTIES.

3.11    Judicial Reference Provision.

(a)    In the event the Waiver of Jury Trial set forth above is not enforceable, the parties elect to proceed under this Judicial Reference Provision.

(b)    With the exception of the items specified in clause (c), below, any controversy, dispute or claim (each, a "Claim") between the parties arising out of or relating to this Agreement or any other document, instrument or agreement between the undersigned parties (collectively in this Section, the "Loan Documents"), will be resolved by a reference proceeding in California in accordance with the provisions of Sections 638 et · seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including whether the Claim is subject to the reference proceeding. Except as otherwise provided in the Loan Documents, venue for the reference proceeding will be in the state or federal court in the county or district where the real property involved in the action, if any, is located or in the state or federal court in the county or district where venue is otherwise appropriate under applicable law (the "Court").

(c)    The matters that shall not be subject to a reference are the following: (i) nonjudicial foreclosure of any security interests in real or personal property, (ii) exercise of self-help remedies (including, without limitation, set-off), (iii) appointment of a receiver and (iv) temporary, provisional or ancillary remedies

6

(including, without limitation, writs of attachment, writs of possession, temporary restraining orders or preliminary injunctions). This reference provision does not limit the right of any party to exercise or oppose any of the rights and remedies described in clauses (i) and (ii) or to seek or oppose from a court of competent jurisdiction any of the items described in clauses (iii) and (iv). The exercise of, or opposition to, any of those items does not waive the right of any party to a reference pursuant to this reference provision as provided herein.

(d)    The referee shall be a retired judge or justice selected by mutual written agreement of the parties. If the parties do not agree within ten (10) days of a written request to do so by any party, then, upon request of any party, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP § 170.6, each party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(e)    The parties agree that time is of the essence in conducting the reference proceedings. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (i) set the matter for a status and trial-setting conference within fifteen (15) days after the date of selection of the referee, (ii) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the conference and (iii) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(f)    The referee will have power to expand or limit the amount and duration of discovery. The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based upon good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

(g)    Except as expressly set forth herein, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing party, the parties will equally share the cost of the referee and the court reporter at trial.

(h)    The referee shall be required to determine all issues in accordance with existing case law and the statutory laws of the State of California. The rules of evidence applicable to proceedings at law in the State of California will be applicable to the reference proceeding. The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a court proceeding, including without limitation motions for summary judgment or summary adjudication. The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the parties that are the subject of the reference. Pursuant to CCP § 644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court and any such decision will be final, binding and conclusive. The parties reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee. The parties reserve the right to findings of fact, conclusions of laws, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this provision.

(i)    If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act §1280 through §1294.2 of the CCP as amended from

7

time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

THE PARTIES RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE OR CLAIM BETWEEN OR AMONG THEM ARISING OUT OF OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date set forth in the first paragraph hereof.

CUSTOMER:

INPHONIC, INC.

By: _____
Name: _David A. Steinberg_
Title: _Chairman and CEO_

BANK:

COMERICA BANK

By: _____
Name: _Todd McDonald_
Title: _SVP_

SECURED PARTY:

CITICORP NORTH AMERICA, INC., AS ADMINISTRATIVE AGENT

By: _____
Name: _Jeanne Argauto_
Title: _V.P._



DEPOSIT ACCOUNT
CONTROL AGREEMENT

This Deposit Account Control Agreement (this "Agreement") is entered into as of August 2, 2007, by and among CAIS ACQUISITION II, LLC ("Customer"), CITICORP NORTH AMERICA, INC. ("Secured Party") and COMERICA BANK ("Bank") with reference to the following facts:

A.      Customer maintains the Deposit Account (as defined below) at Bank's San Jose Airport Banking Center (the "Banking Office").

B.      Customer has granted Secured Party a security interest in the Deposit Account and all funds now or at any time hereafter held in the Deposit Account.

C.      Secured Party, Customer and Bank have agreed to enter into this Agreement to provide for the control of the Deposit Account by Secured Party and to perfect Secured Party's security interests in the Deposit Account (as each such term is defined below).

NOW, THEREFORE, in consideration of the mutual promises and covenants, contained herein the parties hereto mutually agree as follows.

## ARTICLE 1 -  DEFINITIONS

1.01    Definitions.      As used in this Agreement, the following terms shall have the following meanings:

"Code" means the California Uniform Commercial Code, as amended and supplemented from time to time, and any successor statute.

"Deposit Account" means only Customer's deposit account (as such term is defined in the Code) with Bank, number 1892770221, and including without limitation any and all other deposit account(s) of Customer established with Bank from time to time in replacement or substitution therefor.

"Notice of Exclusive Control" means written notice to Bank which states that an event of default has occurred and is continuing under the document, instrument or agreement pursuant to which Customer has granted the security interest in the Deposit Account to Secured Party (or the related credit agreement), and that on the basis thereof, Secured Party is exercising exclusive control over the Deposit Account.

"Order" means any instruction issued by any person with respect to the disposition of any funds contained in the Deposit Account.

1.02    Construction. Any reference herein to any document includes any and all alterations, amendments, extensions, modifications, renewals, or supplements thereto or thereof, as applicable. Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Secured Party, whether under any rule of construction or otherwise. This Agreement has been reviewed by each of the parties hereto, and their respective counsel. This Agreement shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of Customer and Secured Party.

## ARTICLE 2 -  CONTROL

2.01    No Withdrawals or Payments After Receipt of Notice of Exclusive Control. Anything contained in Section 2.03 to the contrary notwithstanding, Customer hereby absolutely, irrevocably and unconditionally authorizes and instructs Bank that, promptly upon receipt of a Notice of Exclusive Control by Bank at the Banking Office, Bank shall:

(a)    neither accept nor comply with any Order from Customer for the payment of any funds from the Deposit Account to any third person nor permit Customer to withdraw any funds in the Deposit Account without the specific prior written consent of Secured Party; and

(b)    comply with all Orders originated by Secured Party concerning the Deposit Account and all other requests or instructions from Secured Party regarding disposition and/or delivery of funds contained in the Deposit Account, without further consent or direction from Customer and without regard to any inconsistent or conflicting Orders given to Bank by Customer.  Customer and Secured Party hereby agree that Bank shall have no duty to notify Customer or make any inquiry whatsoever as to Secured Party's right or authority to give any such Notice of Exclusive Control or any such Orders, instructions or directions.

2.02    Priority of Lien.  Bank hereby acknowledges and agrees that:

(a)    Bank has received notice of the existence of the security interest of Secured Party in the Deposit Account, and recognizes the security interest granted to Secured Party by Customer;

(b)    Said security interest shall be noted by Bank on its books and records;

(c)    all of Bank's present and future rights against the Deposit Account are subordinate to Secured Party's security interest therein; provided, however, that Secured Party hereby acknowledges and agrees that nothing herein subordinates or waives, and that Bank expressly reserves, all of its present and future rights (whether described as rights of setoff, banker's lien, security interest, chargeback or otherwise, and whether available to Bank under the law or under any other agreement between Bank and Customer concerning the Deposit Account, or otherwise) with respect to: (i) items deposited to the Deposit Account and returned unpaid, whether for insufficient funds or for any other reason, and without regard to the timeliness of return of any such items or the occurrence or timeliness of any drawee's notice of non-payment of such items; (ii) ACH entries credited to the Deposit Account and later reversed, whether for insufficient funds or for any other reason, and without regard to the timeliness of such entries' reversal; (iii) chargebacks to the Deposit Account of credit card transactions, without regard to the timeliness of such chargebacks; (iv) erroneous entries to the Deposit Account; (v) claims of breach of the transfer or presentment warranties made to Bank pursuant to the Code in connection with items deposited to the Deposit Account; (vi) Bank's usual and customary charges for services rendered in connection with the Deposit Account; and

(d)    Except as otherwise required by law, Bank shall not enter into any agreement with any third party relating to the Deposit Account or agree that it will comply with any Orders concerning the Deposit Account originated by any such third party without the prior written consent of Secured Party and Customer.

2.03    Control of Deposit Account.  At all times during the effectiveness of this Agreement, Customer hereby absolutely, irrevocably and unconditionally instructs, and Bank hereby agrees, that:

(a)    Bank shall comply with any Orders or other instructions concerning the Deposit Account from Secured Party without further consent by Customer;

(b)    Bank shall not comply with any Orders or other instructions concerning the Deposit Account from any third party without the prior written consent of Secured Party and Customer, and

(c)    Except as otherwise provided in Sections 2.01 and 2.02, prior to the receipt of a Notice of Exclusive Control by Bank at the Banking Office, Bank may accept and comply with Orders from Customer for the payment of any funds from the Deposit Account to Customer or any third person, or permit Customer to withdraw any funds in the Deposit Account without the specific prior written consent of Secured Party.

2.04    Bank's Representations, Warranties and Acknowledgments.

(a)    Bank represents and warrants to Secured Party that:

(i)    the Deposit Account has been established and is maintained with Bank at the Banking Office solely in Customer's name as recited above;

· 2

(ii)    any balances in the Deposit Account are valid and binding obligations of Bank;

(iii)    Bank has no knowledge of any claim to, security interest in or lien upon the Deposit Account, except the security interests in favor of Secured Party and Bank's liens securing fees and charges, as described in Section 2.02 hereof; and

(iv)    Bank has not entered into any agreement with any third party regarding the Deposit Account or agreed that it will comply with any Orders concerning the Deposit Account originated by any such third party.

2.05    Agreements of Bank and Customer.  Bank and Customer agree that:

(a)    Bank shall send copies of all statements relating to the Deposit Account simultaneously to Customer and to Secured Party;

(b)    Bank may disclose to Secured Party such other information concerning the Deposit Account as Secured Party may from time to time request; provided, however, that Bank shall have no obligation to disclose to Secured Party any information which Bank does not ordinarily make available to its depositors; and

(c)    Bank shall use reasonable efforts to promptly notify Secured Party and Customer if any other party asserts any claim to, security or property interest in or lien upon the Deposit Account.

2.06    Bank's Responsibility.  Anything contained in the foregoing to the contrary notwithstanding:

(a)    Except for permitting a withdrawal in violation of Section 2.01, Bank shall not be liable to Secured Party for complying with Orders from Customer that are received by Bank before Bank receives and has had a reasonable opportunity to act on a Notice of Exclusive Control and any contrary Order from Secured Party;

(b)    Bank shall not be liable to Customer for complying with Orders originated by Secured Party, even if Customer notifies Bank that Secured Party is not legally entitled to issue Orders, unless Bank takes the action after it is served with an injunction, restraining order, or other legal process enjoining it from doing so, issued by a court of competent jurisdiction, and had a reasonable opportunity to act on the injunction, restraining order or other legal process;

(c)    This agreement does not create any obligation of Bank except for those expressly set forth in this Agreement.  In particular, Bank need not investigate whether the Secured Party is entitled under Secured Party's agreements with Customer to provide Bank with a Notice of Exclusive Control or to give Orders. In acting or performing under this Agreement, Bank may rely on any papers, documents, notices or communications it believes are given, signed or sent by the appropriate party or its authorized representative;

(d)    Bank will not have any liability to Customer or Secured Party for claims, losses, liabilities or damages suffered or incurred by Customer or Secured Party as a result of or in connection with this agreement except to the extent such losses, liabilities and damages directly result from Bank's gross negligence or willful misconduct;

(e)    The parties agree that substantial compliance by Bank with the terms of this Agreement and the agreements entered into with Customer from time to time with respect to the Deposit Account, as they may be amended from time to time, shall be deemed to constitute the exercise of ordinary and reasonable care. In the event that Bank is liable to Customer or Secured Party under this Agreement, Bank's liability shall be limited to the actual direct and provable amount of money damages suffered by the claiming party; and

(f)    In no event shall Bank have any liability to Customer or Secured Party for (1) any consequential, special, punitive or exemplary damages, indirect loss or damage or any lost profits, whether or not any claim for such damages is based on tort or contract or an allegation that Bank knew or should have known the likelihood of such damages in any circumstances, (2) any failure to perform the Bank's

responsibilities under this Agreement if such failure is due to strikes, lockouts or other labor disturbances, riots or civil commotions, fire or other casualty, earthquakes, floods, windstorms, lightning or other acts of God, epidemics, sabotage, insurrection, war, civil disorders, hostilities, expropriation or confiscation of properties, equipment failures or malfunctions, power failures, failures of or delays by carriers or other third parties, interference by civil or military authorities, or any other cause or condition beyond the Bank's control, (3) any act or failure to act by Customer or Secured Party, or (4) acting pursuant to a court order, subpoena, garnishment, tax levy or similar process in regard to any account or service covered by this Agreement.

2.07    Indemnity.

(a)    Customer and Secured Party hereby agree that Bank is released from any and all claims and liabilities to Customer and Secured Party arising from the terms of this Agreement and the compliance by Bank with the terms hereof, except to the extent that such liabilities arise from Bank's gross negligence or willful misconduct.

(b)    Customer shall indemnify and hold harmless Bank, its officers, directors, employees, and agents from and against any and all claims, liabilities, demands, damages and expenses arising out of this Agreement (including reasonable attorneys' fees and disbursements and the reasonable estimate of the allocated costs and expenses of in-house legal counsel and staff), except to the extent the claims, liabilities, damages or expenses are caused by Bank's gross negligence or willful misconduct. Customer shall indemnify Secured Party for any indemnity obligations Secured Party owes to Bank under this Agreement.

(c)    Secured Party shall indemnify and hold harmless Bank, its officers, directors, employees, and agents from and against any and all claims, liabilities, demands, damages and expenses arising out of a Notice of Exclusive Control or following any Orders or other instructions from Secured Party concerning the Deposit Account (including reasonable attorneys' fees and disbursements and the reasonable estimate of the allocated costs and expenses of in-house legal counsel and staff), except to the extent the claims, liabilities, damages or expenses are caused by Bank's gross negligence or willful misconduct; provided, however, that in no event shall the Secured Party be liable for any special, consequential, punitive or exemplary damages, or lost profits.

2.08    Termination, Survival.

(a)    This Agreement shall terminate:

(i)    immediately upon receipt by the Bank at the Banking Office of written notice from Secured Party expressly stating that Secured Party is terminating this Agreement;

(ii)    immediately upon receipt by the Bank at the Banking Office of written notice from Secured Party expressly stating that Secured Party's security interest in the Deposit Account has terminated; or

(iii)    thirty (30) days after the receipt by Secured Party and Customer of written notice from Bank stating that it is terminating this Agreement.

(b)    Sections 2.06, "Bank's Responsibility," and Section 2.07, "Indemnity," shall survive termination of this Agreement.

## ARTICLE 3 -  GENERAL PROVISIONS

3.01    Conflicts; Controlling Agreement.  As to the matters specifically the subject of this Agreement, in the event of any conflict between this Agreement and any other agreement between Bank and Customer, the terms of this Agreement shall control.

3.02    Final Agreement; Amendments and Waivers.  This Agreement, together with any other document, instrument, or agreement entered into between Customer and Secured Party in connection therewith with respect to the subject matter contained therein constitutes the entire understanding among each of them with respect to the subject matter thereof.  This Agreement supersedes any and all prior oral or written

4

agreements relating to the subject matter hereof.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the party asserted to be bound thereby, and then such amendment or waiver shall be effective only in the specific instance and specific purpose for which given.

3.03    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties.

3.04    Amendments, Modifications.  This Agreement may be amended or modified only in writing signed by all parties hereto.

3.05    Severability of Provisions.  If any provision of this Agreement for any reason is held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Agreement.

3.06    Section Headings.  Headings and numbers used to identify sections and paragraphs of this Agreement have been set forth herein for convenience only.  Unless the contrary is compelled by the context, everything contained in each section applies equally to this entire Agreement.

3.07    Counterparts; Facsimile Execution.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile also shall deliver a manually executed counterpart of this Agreement but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

3.08    Notices.    All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing (unless otherwise specifically provided) and delivered to each party at the following address:

Bank:                                          COMERICA BANK
                                               226 Airport Parkway, Suite # 100, M/C 4348
                                               San Jose, CA  95110
                                               Fax. No.:  (408) 451-8523
                                               Attn:  Branch Manager

With a copy to:                                Comerica Bank
                                               75 East Trimble Road
                                               San Jose, CA 95131
                                               Fax. No.:  (408) 556-5091
                                               Attn:  Manager

And With a copy to:                            Comerica Bank
                                               Technology and Life Sciences Division
                                               11921 Freedom Drive, Suite 920
                                               Reston, VA 20190
                                               Fax. No.:  (703) 467-9308
                                               Attn:  Todd McDonald

5

Customer:                                   CAIS Acquisition II LLC
                                            1010 Wisconsin Avenue, NW Suite 600
                                            Washington, DC 20007
                                            Fax. No.: (202) 333-5775
                                            Attn: David Steinberg

Secured Party:                              Citicorp North America, Inc.,
                                            as administrative agent
                                            390 Greenwich Street, 7th Floor
                                            New York, NY 10013
                                            Fax. No.: (212) 723-8036
                                            Attn: David Stempler

or to such other address or facsimile number as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (i) if sent by hand delivery, upon delivery; (ii) if sent by facsimile, upon receipt; and (iii) if sent by overnight courier, upon receipt; provided, however, that in any case, receipt by Bank of any Notice of Exclusive Control shall not be deemed to have occurred until the Bank delivers written notification (by email, fax or hard copy) confirming receipt to the Secured Party. Bank shall attempt in good faith to deliver written notification confirming receipt to the Secured Party promptly following Bank's actual receipt of the Notice of Exclusive Control.

   3.09    Governing Law. This Agreement shall be deemed to have been made in the state of California and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed in accordance with the internal laws of the state of California, without regard to principles regarding the conflicts or choice of law.

   3.10    WAIVER OF JURY TRIAL.    THE UNDERSIGNED ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OTHER DOCUMENT, INSTRUMENT OR AGREEMENT BETWEEN THE UNDERSIGNED PARTIES.

   3.11    Judicial Reference Provision.

       (a)    In the event the Waiver of Jury Trial set forth above is not enforceable, the parties elect to proceed under this Judicial Reference Provision.

       (b)    With the exception of the items specified in clause (c), below, any controversy, dispute or claim (each, a "Claim") between the parties arising out of or relating to this Agreement or any other document, instrument or agreement between the undersigned parties (collectively in this Section, the "Loan Documents"), will be resolved by a reference proceeding in California in accordance with the provisions of Sections 638 et seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including whether the Claim is subject to the reference proceeding. Except as otherwise provided in the Loan Documents, venue for the reference proceeding will be in the state or federal court in the county or district where the real property involved in the action, if any, is located or in the state or federal court in the county or district where venue is otherwise appropriate under applicable law (the "Court").

       (c)    The matters that shall not be subject to a reference are the following: (i) nonjudicial foreclosure of any security interests in real or personal property, (ii) exercise of self-help remedies (including, without limitation, set-off), (iii) appointment of a receiver and (iv) temporary, provisional or ancillary remedies

6

(including, without limitation, writs of attachment, writs of possession, temporary restraining orders or preliminary injunctions). This reference provision does not limit the right of any party to exercise or oppose any of the rights and remedies described in clauses (i) and (ii) or to seek or oppose from a court of competent jurisdiction any of the items described in clauses (iii) and (iv). The exercise of, or opposition to, any of those items does not waive the right of any party to a reference pursuant to this reference provision as provided herein.

(d)     The referee shall be a retired judge or justice selected by mutual written agreement of the parties. If the parties do not agree within ten (10) days of a written request to do so by any party, then, upon request of any party, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP § 170.6, each party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(e)     The parties agree that time is of the essence in conducting the reference proceedings. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (i) set the matter for a status and trial-setting conference within fifteen (15) days after the date of selection of the referee, (ii) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the conference and (iii) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(f)     The referee will have power to expand or limit the amount and duration of discovery. The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based upon good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

(g)     Except as expressly set forth herein, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing party, the parties will equally share the cost of the referee and the court reporter at trial.

(h)     The referee shall be required to determine all issues in accordance with existing case law and the statutory laws of the State of California. The rules of evidence applicable to proceedings at law in the State of California will be applicable to the reference proceeding. The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a court proceeding, including without limitation motions for summary judgment or summary adjudication. The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the parties that are the subject of the reference. Pursuant to CCP § 644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court and any such decision will be final, binding and conclusive. The parties reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee. The parties reserve the right to findings of fact, conclusions of laws, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this provision.

(i)     If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act §1280 through §1294.2 of the CCP as amended from

time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

THE PARTIES RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE OR CLAIM BETWEEN OR AMONG THEM ARISING OUT OF OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date set forth in the first paragraph hereof.

CUSTOMER:                              CAIS ACQUISITION II LLC

                                      By:
                                      Name:
                                      Title:

BANK:                                 COMERICA BANK

                                      By:
                                      Name:
                                      Title:

SECURED PARTY:                        CITICORP NORTH AMERICA, INC., AS
                                      ADMINISTRATIVE AGENT

                                      By:
                                      Name: MATHIEU BOULANGER
                                      Title: DIRECTOR

8



**DEPOSIT ACCOUNT
CONTROL AGREEMENT**

This Deposit Account Control Agreement (this "Agreement") is entered into as of August 2, 2007, by and among STAR NUMBER, INC. ("Customer"), CITICORP NORTH AMERICA, INC. ("Secured Party") and COMERICA BANK ("Bank") with reference to the following facts:

A.    Customer maintains the Deposit Account (as defined below) at Bank's San Jose Airport Banking Center (the "Banking Office").

B.    Customer has granted Secured Party a security interest in the Deposit Account and all funds now or at any time hereafter held in the Deposit Account.

C.    Secured Party, Customer and Bank have agreed to enter into this Agreement to provide for the control of the Deposit Account by Secured Party and to perfect Secured Party's security interests in the Deposit Account (as each such term is defined below).

NOW, THEREFORE, in consideration of the mutual promises and covenants, contained herein the parties hereto mutually agree as follows:

## ARTICLE 1 -  DEFINITIONS

1.01    Definitions.    As used in this Agreement, the following terms shall have the following meanings:

"Code" means the California Uniform Commercial Code, as amended and supplemented from time to time, and any successor statute.

"Deposit Account" means, collectively, only Customer's deposit accounts (as such term is defined in the Code) with Bank, numbers 1891929380, 1892038843 and 1892038884, and including without limitation any and all other deposit account(s) of Customer established with Bank from time to time in replacement or substitution therefor.

"Notice of Exclusive Control" means written notice to Bank which states that an event of default has occurred and is continuing under the document, instrument or agreement pursuant to which Customer has granted the security interest in the Deposit Account to Secured Party (or the related credit agreement), and that on the basis thereof, Secured Party is exercising exclusive control over the Deposit Account.

"Order" means any instruction issued by any person with respect to the disposition of any funds contained in the Deposit Account.

1.02    Construction. Any reference herein to any document includes any and all alterations, amendments, extensions, modifications, renewals, or supplements thereto or thereof, as applicable. Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Secured Party, whether under any rule of construction or otherwise. This Agreement has been reviewed by each of the parties hereto, and their respective counsel. This Agreement shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of Customer and Secured Party.

## ARTICLE 2 -  CONTROL

2.01    No Withdrawals or Payments After Receipt of Notice of Exclusive Control. Anything contained in Section 2.03 to the contrary notwithstanding, Customer hereby absolutely, irrevocably and unconditionally

authorizes and instructs Bank that, promptly upon receipt of a Notice of Exclusive Control by Bank at the Banking Office, Bank shall:

        (a)    neither accept nor comply with any Order from Customer for the payment of any funds from the Deposit Account to any third person nor permit Customer to withdraw any funds in the Deposit Account without the specific prior written consent of Secured Party; and

        (b)    comply with all Orders originated by Secured Party concerning the Deposit Account and all other requests or instructions from Secured Party regarding disposition and/or delivery of funds contained in the Deposit Account, without further consent or direction from Customer and without regard to any inconsistent or conflicting Orders given to Bank by Customer. Customer and Secured Party hereby agree that Bank shall have no duty to notify Customer or make any inquiry whatsoever as to Secured Party's right or authority to give any such Notice of Exclusive Control or any such Orders, instructions or directions.

    2.02   <u>Priority of Lien</u>. Bank hereby acknowledges and agrees that:

        (a)    Bank has received notice of the existence of the security interest of Secured Party in the Deposit Account, and recognizes the security interest granted to Secured Party by Customer;

        (b)    Said security interest shall be noted by Bank on its books and records;

        (c)    all of Bank's present and future rights against the Deposit Account are subordinate to Secured Party's security interest therein; <u>provided, however</u>, that Secured Party hereby acknowledges and agrees that nothing herein subordinates or waives, and that Bank expressly reserves, all of its present and future rights (whether described as rights of setoff, banker's lien, security interest, chargeback or otherwise, and whether available to Bank under the law or under any other agreement between Bank and Customer concerning the Deposit Account, or otherwise) with respect to: (i) items deposited to the Deposit Account and returned unpaid, whether for insufficient funds or for any other reason, and without regard to the timeliness of return of any such items or the occurrence or timeliness of any drawee's notice of non-payment of such items; (ii) ACH entries credited to the Deposit Account and later reversed, whether for insufficient funds or for any other reason, and without regard to the timeliness of such entries' reversal; (iii) chargebacks to the Deposit Account of credit card transactions, without regard to the timeliness of such chargebacks; (iv) erroneous entries to the Deposit Account; (v) claims of breach of the transfer or presentment warranties made to Bank pursuant to the Code in connection with items deposited to the Deposit Account; (vi) Bank's usual and customary charges for services rendered in connection with the Deposit Account; and

        (d)    Except as otherwise required by law, Bank shall not enter into any agreement with any third party relating to the Deposit Account or agree that it will comply with any Orders concerning the Deposit Account originated by any such third party without the prior written consent of Secured Party and Customer.

    2.03   <u>Control of Deposit Account</u>. At all times during the effectiveness of this Agreement, Customer hereby absolutely, irrevocably and unconditionally instructs, and Bank hereby agrees, that:

        (a)    Bank shall comply with any Orders or other instructions concerning the Deposit Account from Secured Party without further consent by Customer;

        (b)    Bank shall not comply with any Orders or other instructions concerning the Deposit Account from any third party without the prior written consent of Secured Party and Customer, and

        (c)    Except as otherwise provided in <u>Sections 2.01 and 2.02</u>, prior to the receipt of a Notice of Exclusive Control by Bank at the Banking Office, Bank may accept and comply with Orders from Customer for the payment of any funds from the Deposit Account to Customer or any third person, or permit Customer to withdraw any funds in the Deposit Account without the specific prior written consent of Secured Party.

    2.04   <u>Bank's Representations, Warranties and Acknowledgments</u>.

        (a)   Bank represents and warrants to Secured Party that:

(i)    the Deposit Account has been established and is maintained with Bank at the Banking Office solely in Customer's name as recited above;

(ii)    any balances in the Deposit Account are valid and binding obligations of Bank;

(iii)    Bank has no knowledge of any claim to, security interest in or lien upon the Deposit Account, except the security interests in favor of Secured Party and Bank's liens securing fees and charges, as described in Section 2.02 hereof; and

(iv)    Bank has not entered into any agreement with any third party regarding the Deposit Account or agreed that it will comply with any Orders concerning the Deposit Account originated by any such third party.

2.05    Agreements of Bank and Customer.  Bank and Customer agree that:

(a)    Bank shall send copies of all statements relating to the Deposit Account simultaneously to Customer and to Secured Party;

(b)    Bank may disclose to Secured Party such other information concerning the Deposit Account as Secured Party may from time to time request; provided, however, that Bank shall have no obligation to disclose to Secured Party any information which Bank does not ordinarily make available to its depositors; and

(c)    Bank shall use reasonable efforts to promptly notify Secured Party and Customer if any other party asserts any claim to, security or property interest in or lien upon the Deposit Account.

2.06    Bank's Responsibility.  Anything contained in the foregoing to the contrary notwithstanding:

(a)    Except for permitting a withdrawal in violation of Section 2.01, Bank shall not be liable to Secured Party for complying with Orders from Customer that are received by Bank before Bank receives and has had a reasonable opportunity to act on a Notice of Exclusive Control and any contrary Order from Secured Party;

(b)    Bank shall not be liable to Customer for complying with Orders originated by Secured Party, even if Customer notifies Bank that Secured Party is not legally entitled to issue Orders, unless Bank takes the action after it is served with an injunction, restraining order, or other legal process enjoining it from doing so, issued by a court of competent jurisdiction, and had a reasonable opportunity to act on the injunction, restraining order or other legal process;

(c)    This agreement does not create any obligation of Bank except for those expressly set forth in this Agreement.  In particular, Bank need not investigate whether the Secured Party is entitled under Secured Party's agreements with Customer to provide Bank with a Notice of Exclusive Control or to give Orders. In acting or performing under this Agreement, Bank may rely on any papers, documents, notices and communications it believes are given, signed or sent by the appropriate party or its authorized representative;

(d)    Bank will not have any liability to Customer or Secured Party for claims, losses, liabilities or damages suffered or incurred by Customer or Secured Party as a result of or in connection with this agreement except to the extent such losses, liabilities and damages directly result from Bank's gross negligence or willful misconduct;

(e)    The parties agree that substantial compliance by Bank with the terms of this Agreement and the agreements entered into with Customer from time to time with respect to the Deposit Account, as they may be amended from time to time, shall be deemed to constitute the exercise of ordinary and reasonable care. In the event that Bank is liable to Customer or Secured Party under this Agreement, Bank's liability shall be limited to the actual direct and provable amount of money damages suffered by the claiming party; and

3

(f)    In no event shall Bank have any liability to Customer or Secured Party for (1) any consequential, special, punitive or exemplary damages, indirect loss or damage or any lost profits, whether or not any claim for such damages is based on tort or contract or an allegation that Bank knew or should have known the likelihood of such damages in any circumstances, (2) any failure to perform the Bank's responsibilities under this Agreement if such failure is due to strikes, lockouts or other labor disturbances, riots or civil commotions, fire or other casualty, earthquakes, floods, windstorms, lightning or other acts of God, epidemics, sabotage, insurrection, war, civil disorders, hostilities, expropriation or confiscation of properties, equipment failures or malfunctions, power failures, failures of or delays by carriers or other third parties, interference by civil or military authorities, or any other cause or condition beyond the Bank's control, (3) any act or failure to act by Customer or Secured Party, or (4) acting pursuant to a court order, subpoena, garnishment, tax levy or similar process in regard to any account or service covered by this Agreement.

2.07    Indemnity.

(a)    Customer and Secured Party hereby agree that Bank is released from any and all claims and liabilities to Customer and Secured Party arising from the terms of this Agreement and the compliance by Bank with the terms hereof, except to the extent that such liabilities arise from Bank's gross negligence or willful misconduct.

(b)    Customer shall indemnify and hold harmless Bank, its officers, directors, employees, and agents from and against any and all claims, liabilities, demands, damages and expenses arising out of this Agreement (including reasonable attorneys' fees and disbursements and the reasonable estimate of the allocated costs and expenses of in-house legal counsel and staff), except to the extent the claims, liabilities, damages or expenses are caused by Bank's gross negligence or willful misconduct. Customer shall indemnify Secured Party for any indemnity obligations Secured Party owes to Bank under this Agreement.

(c)    Secured Party shall indemnify and hold harmless Bank, its officers, directors, employees, and agents from and against any and all claims, liabilities, demands, damages and expenses arising out of a Notice of Exclusive Control or following any Orders or other instructions from Secured Party concerning the Deposit Account (including reasonable attorneys' fees and disbursements and the reasonable estimate of the allocated costs and expenses of in-house legal counsel and staff), except to the extent the claims, liabilities, damages or expenses are caused by Bank's gross negligence or willful misconduct; provided, however, that in no event shall the Secured Party be liable for any special, consequential, punitive or exemplary damages, or lost profits.

2.08    Termination, Survival.

(a)    This Agreement shall terminate:

(i)    immediately upon receipt by the Bank at the Banking Office of written notice from Secured Party expressly stating that Secured Party is terminating this Agreement;

(ii)    immediately upon receipt by the Bank at the Banking Office of written notice from Secured Party expressly stating that Secured Party's security interest in the Deposit Account has terminated; or

(iii)    thirty (30) days after the receipt by Secured Party and Customer of written notice from Bank stating that it is terminating this Agreement.

(b)    Sections 2.06, "Bank's Responsibility," and Section 2.07, "Indemnity," shall survive termination of this Agreement.

## ARTICLE 3 -    GENERAL PROVISIONS

3.01    Conflicts; Controlling Agreement.    As to the matters specifically the subject of this Agreement, in the event of any conflict between this Agreement and any other agreement between Bank and Customer, the terms of this Agreement shall control.

4

3.02    <u>Final Agreement; Amendments and Waivers</u>.  This Agreement, together with any other document, instrument, or agreement entered into between Customer and Secured Party in connection therewith with respect to the subject matter contained therein constitutes the entire understanding among each of them with respect to the subject matter thereof.  This Agreement supersedes any and all prior oral or written agreements relating to the subject matter hereof.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the party asserted to be bound thereby, and then such amendment or waiver shall be effective only in the specific instance and specific purpose for which given.

3.03    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties.

3.04    <u>Amendments, Modifications</u>.  This Agreement may be amended or modified only in writing signed by all parties hereto.

3.05    <u>Severability of Provisions</u>.  If any provision of this Agreement for any reason is held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Agreement.

3.06    <u>Section Headings</u>.  Headings and numbers used to identify sections and paragraphs of this Agreement have been set forth herein for convenience only.  Unless the contrary is compelled by the context, everything contained in each section applies equally to this entire Agreement.

3.07    <u>Counterparts; Facsimile Execution</u>.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile also shall deliver a manually executed counterpart of this Agreement but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

3.08    <u>Notices</u>.        All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing (unless otherwise specifically provided) and delivered to each party at the following address:

Bank:

Comerica Bank
226 Airport Parkway, Suite # 100, M/C 4348
San Jose, CA  95110
Fax. No.: (408) 451-8523
Attn:  Branch Manager

With a copy to:

Comerica Bank
75 East Trimble Road
San Jose, CA 95131
Fax. No.: (408) 556-5091
Attn:  Manager

And With a copy to:

Comerica Bank
Technology and Life Sciences Division
11921 Freedom Drive, Suite 920
Reston, VA 20190
Fax. No.: (703) 467-9308
Attn:  Todd McDonald

5

Customer:

Star Number, Inc.
1010 Wisconsin Avenue, NW Suite 600
Washington, DC 20007
Fax. No.: (202) 333-5775
Attn: David Steinberg

Secured Party:

Citicorp North America, Inc.,
as administrative agent
390 Greenwich Street, 7th Floor
New York, NY 10013
Fax. No.: (212) 723-8036
Attn: David Stempler

or to such other address or facsimile number as any party may designate by written notice to all other parties.
Each such notice, request and demand shall be deemed given or made as follows: (i) if sent by hand delivery,
upon delivery; (ii) if sent by facsimile, upon receipt; and (iii) if sent by overnight courier, upon receipt; provided,
however, that in any case, receipt by Bank of any Notice of Exclusive Control shall not be deemed to have
occurred until the Bank delivers written notification (by email, fax or hard copy) confirming receipt to the Secured
Party. Bank shall attempt in good faith to deliver written notification confirming receipt to the Secured Party
promptly following Bank's actual receipt of the Notice of Exclusive Control.

3.09    Governing Law. This Agreement shall be deemed to have been made in the state of California
and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall
be determined under, governed by, and construed in accordance with the internal laws of the state of California,
without regard to principles regarding the conflicts or choice of law.

3.10    WAIVER OF JURY TRIAL.    THE UNDERSIGNED ACKNOWLEDGE THAT THE RIGHT TO
TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN
CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR
HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER CHOICE,
KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, WAIVES ANY
RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS
AGREEMENT OR ANY OTHER DOCUMENT, INSTRUMENT OR AGREEMENT BETWEEN THE
UNDERSIGNED PARTIES.

3.11    Judicial Reference Provision.

(a)    In the event the Waiver of Jury Trial set forth above is not enforceable, the parties elect to
proceed under this Judicial Reference Provision.

(b)    With the exception of the items specified in clause (c), below, any controversy, dispute or
claim (each, a "Claim") between the parties arising out of or relating to this Agreement or any other document,
instrument or agreement between the undersigned parties (collectively in this Section, the "Loan Documents"),
will be resolved by a reference proceeding in California in accordance with the provisions of Sections 638 et
seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which shall constitute the
exclusive remedy for the resolution of any Claim, including whether the Claim is subject to the reference
proceeding. Except as otherwise provided in the Loan Documents, venue for the reference proceeding will be in
the state or federal court in the county or district where the real property involved in the action, if any, is located
or in the state or federal court in the county or district where venue is otherwise appropriate under applicable law
(the "Court").

(c)    The matters that shall not be subject to a reference are the following: (i) nonjudicial
foreclosure of any security interests in real or personal property, (ii) exercise of self-help remedies (including,
without limitation, set-off), (iii) appointment of a receiver and (iv) temporary, provisional or ancillary remedies

6

(including, without limitation, writs of attachment, writs of possession, temporary restraining orders or preliminary injunctions). This reference provision does not limit the right of any party to exercise or oppose any of the rights and remedies described in clauses (i) and (ii) or to seek or oppose from a court of competent jurisdiction any of the items described in clauses (iii) and (iv). The exercise of, or opposition to, any of those items does not waive the right of any party to a reference pursuant to this reference provision as provided herein.

(d)    The referee shall be a retired judge or justice selected by mutual written agreement of the parties. If the parties do not agree within ten (10) days after a written request to do so by any party, then, upon request of any party, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP § 170.6, each party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(e)    The parties agree that time is of the essence in conducting the reference proceedings. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (i) set the matter for a status and trial-setting conference within fifteen (15) days after the date of selection of the referee, (ii) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the conference and (iii) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(f)    The referee will have power to expand or limit the amount and duration of discovery. The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based upon good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

(g)    Except as expressly set forth herein, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing party, the parties will equally share the cost of the referee and the court reporter at trial.

(h)    The referee shall be required to determine all issues in accordance with existing case law and the statutory laws of the State of California. The rules of evidence applicable to proceedings at law in the State of California will be applicable to the reference proceeding. The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a court proceeding, including without limitation motions for summary judgment or summary adjudication. The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the parties that are the subject of the reference. Pursuant to CCP § 644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court and any such decision will be final, binding and conclusive. The parties reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee. The parties reserve the right to findings of fact, conclusions of laws, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this provision.

(i)    If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act §1280 through §1294.2 of the CCP as amended from

7

time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

THE PARTIES RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE OR CLAIM BETWEEN OR AMONG THEM ARISING OUT OF OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date set forth in the first paragraph hereof.

CUSTOMER:                                 STAR NUMBER, INC

                                          By: _____
                                          Name: David A. Steinberg
                                          Title: CEO

BANK:                                     COMERICA BANK

                                          By: _____
                                          Name: _____
                                          Title: _____

SECURED PARTY:                            CITICORP NORTH AMERICA, INC., AS
                                          ADMINISTRATIVE AGENT

                                          By: _____
                                          Name: MATTHEW BOULANGER
                                          Title: DIRECTOR

8

Account Numbers:  _3300453675 - InPhonic Inc. Operating_

# SVB › Silicon Valley Bank

A Member of SVB Financial Group

## DEPOSIT ACCOUNT CONTROL AGREEMENT

Customer:    _InPhonic, Inc._
Creditor:    _Citicorp North America, Inc. as Administrative Agent_
Date:        _Aug. 10, 2007_

This Deposit Account Control Agreement ("Agreement") is entered into as of the above date among Silicon Valley Bank ("Bank"), Creditor identified above ("Creditor"), and Customer identified above ("Customer").

All parties agree as follows:

**1.    Deposit Account.** Bank maintains one or more demand, time, savings, passbook, certificates of deposit or other similar accounts that are identified above in which Customer has an interest (collectively, the "Deposit Account"). The Deposit Account is subject to Bank's Deposit Agreement and Disclosure Statement (the "Deposit Agreement"), provided that, in the case of any conflict between the terms of this Agreement and the Deposit Agreement, the terms of this Agreement will prevail. The parties acknowledge that the Deposit Account constitutes a "deposit account" within the meaning of Section 9102 of the Uniform Commercial Code of the State of California ("UCC"), and Bank is a "bank" within the meaning of Section 9102 of the UCC. The provisions of this Agreement constitute "control" over the Deposit Account within the meaning of Section 9104 of the UCC.

**2.    Security Interests.** Pursuant to a security agreement or similar agreement, Customer has granted to Creditor a security interest in the Deposit Account. Bank acknowledges the lien on and security interest in the Deposit Account granted by Customer to Creditor.

[For Bank use only - Bank representative to check box, if necessary, and insert initials.]

☒ Other than as set forth in Section 6 below, Bank does not have a security interest in the Deposit Account to secure letters of credit, cash management obligations, foreign exchange contracts, or other extensions of credit from Bank to Customer. _____ [DLM initials]

**3.    Other Deposit Control Agreements.**

[For Bank use only - Bank representative to check appropriate box below and insert initials.]

☒ Bank has not entered into any other control agreement governing the Deposit Account with any other party.  _____ [DLM initials]

☐ Bank has entered into other control agreement(s) governing the Deposit Account with the following party or parties: _____
_____
_____
_____
_____ [DLM initials]

Bank agrees that it will not enter into a control agreement with any other party with respect to the Deposit Account without Creditor's prior written consent.

**4.    Customer's Rights in Deposit Account.** Creditor has control over the Deposit Account, provided that, until Bank receives a Notice of Exclusive Control (as described and set forth in Section 13(b) below), Customer will be entitled to draw items on and to withdraw or otherwise direct the disposition of funds from the Deposit Account. So long as this Agreement is in effect, Customer may not close the Deposit Account without Creditor's prior written consent. Bank may close the Deposit Account in accordance with the Deposit Agreement and as may be required by applicable law. After Bank receives a Notice of Exclusive Control, Bank

will notify Creditor prior to closing the Deposit Account in non-emergency circumstances and substantially contemporaneously with closing the Deposit Account in emergency circumstances (for example, in response to fraud or returned items), unless prohibited by law. Customer will notify Creditor promptly if Bank closes the Deposit Account.

5.    Creditor's Control of Deposit Account. Except as permitted in Section 6 hereof, after Bank receives a Notice of Exclusive Control and has reasonable opportunity to comply with it, but no later than two Business Days (as defined below) after the Notice of Exclusive Control has been validly given (in accordance with Section 13(b) below), Bank and Customer agree that: (a) Bank will comply only with Creditor's instructions as to the withdrawal or disposition of any funds credited to the Deposit Account and to any other matters relating to the Deposit Account, without Customer's further consent, and (b) Bank will not comply with any instructions from Customer concerning the Deposit Account or any funds therein. Bank shall have no duty to inquire or determine whether Creditor is entitled to send a Notice of Exclusive Control. Creditor's instructions may include the giving of stop payment orders for any items being presented to the Deposit Account for payment. Bank will be fully entitled to rely upon such instructions from Creditor even if such instructions are contrary to any instructions or demands given by Customer. Customer confirms that Bank (x) should follow instructions from Creditor even if the result of following such instructions is that Bank dishonors items presented for payment from the Deposit Account, and (y) will have no liability to Customer for wrongful dishonor of such items in following such instructions from Creditor. For purposes of this Agreement, "Business Day" means a day on which Bank is open to the public for business and is measured in a 24 hour increment.

6.    Priorities of Security Interests: Rights Reserved by Bank.

        (a)    Creditor agrees that nothing herein subordinates or waives, and that Bank expressly reserves, any and/or all of Bank's present and future rights (whether described as rights of setoff, banker's liens, chargeback or otherwise, and whether available to Bank under the law or under any other agreement between Bank and Customer concerning the Deposit Account) with respect to:

        (i) the face amount of a check, draft, money order, instrument, wire transfer of funds, automated clearing house entry, credit from a merchant card transaction, other electronic transfer of funds or other item (A) deposited in or credited to the Deposit Account, whether before or after the Agreement Date, and returned unpaid or otherwise uncollected or subject to an adjustment entry, whether for insufficient funds or for any other reason and without regard to the timeliness of the return or adjustment or the occurrence or timeliness of any other person's notice of nonpayment or adjustment, (B) subject to a claim against the Bank for breach of transfer, presentment, encoding, retention or other warranty under Federal Reserve Regulations or Operating Circulars, clearing house rules, the UCC or other applicable law, or (C) for a merchant card transaction, against which a contractual demand for chargeback has been made ("Returned Items");

        (ii) service charges, fees or expenses payable or reimbursable to the Bank in connection with the Deposit Account or any related services ("Account Charges"); and

        (iii) any adjustments or corrections of any posting or encoding errors ("Adjustments").

        (b)    Creditor agrees that notwithstanding receipt of the Notice of Exclusive Control, Bank may exercise Bank's rights and remedies in connection with any liens or claims it may have in or on the Deposit Account as described herein.

7.    Statements. At Customer's expense, Bank will send copies of all statements sent to Customer for the Deposit Account to Creditor at Creditor's address set forth below Creditor's signature at the end of this Agreement. Until this Agreement is terminated, Customer authorizes Bank to disclose to Creditor at Creditor's request any information concerning the Deposit Account, including but not limited to the identity of any other party with which Customer and Bank have executed control agreements.

8.    Returned Items, Account Charges, and Adjustments. Bank will debit the Deposit Account for Returned Items, Account Charges and Adjustments. If at any time after Creditor exercises exclusive control over the Deposit Account (a) funds are not available in the Deposit Account to cover the amount of any Returned Item, Account Charge or Adjustment, and (b) Customer fails to pay such amount within fifteen (15) Business Days of Bank's written demand therefor, then Creditor agrees that it

will pay, within ten (10) Business Days of a written demand by Bank, amounts owed for each such Returned Item, Account Charge or Adjustment that is not paid in full by Customer up to the amount of the proceeds received by Creditor from the Deposit Account, provided that Bank must make a demand from Creditor within 180 days of termination of this Agreement.

9.    **Indemnity and Hold Harmless of Bank by Customer.**  Customer hereby agrees to indemnify and hold harmless Bank, its affiliates and their respective directors, officers, agents and employees (each, an "Indemnified Person") against any and all claims, causes of action, liabilities, lawsuits, demands and damages (each, a "Claim") asserted by Creditor or any other party (other than an Indemnified Person), including without limitation, any and all court costs and reasonable attorneys' fees, in any way related to or arising out of or in connection with this Agreement; provided that no Indemnified Person shall be entitled to be indemnified to the extent that such Claims result from such Indemnified Person's gross negligence or willful misconduct.

10.    **Indemnification and Hold Harmless of Bank by Creditor.**    To the extent that an Indemnified Person is not promptly indemnified by Customer, Creditor shall indemnify and hold harmless such Indemnified Person against any and all Claims (including reasonable attorneys' fees) asserted by persons other than an Indemnified Person and arising from any Notice of Exclusive Control from Creditor except to the extent such Claims result from the gross negligence or willful misconduct of Bank or any other Indemnified Person; provided that in no event shall Creditor be liable for any special, indirect, consequential or punitive damages, or lost profits. Creditor agrees that Bank is released from any and all liabilities to the Creditor arising from the terms of this Agreement except to the extent such liabilities arise from Bank's or another Indemnified Person's gross negligence or willful misconduct.

11.    **Waiver.**    NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT OR ANYWHERE ELSE, CUSTOMER WAIVES AND AGREES THAT IT SHALL NOT SEEK FROM BANK OR CREDITOR UNDER ANY THEORY OF LIABILITY (INCLUDING WITHOUT LIMITATION ANY THEORY IN TORT), ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES RELATING TO THIS AGREEMENT.

12.    **Amendments.**  This Agreement and all exhibits attached hereto may be amended only by a written agreement signed by Bank, Creditor, and Customer.

13.    **Notices.**

(a)    Any notice, other than a Notice of Exclusive Control, or other communication provided for or allowed hereunder shall be in writing and shall be considered to have been validly given (i) when received if delivered personally (whether by messenger, hand delivery or otherwise), or by overnight delivery or by facsimile to the recipient to the address or facsimile number set forth below the signature of the applicable party hereto, or (ii) 72 hours after being deposited in the United States mail, registered or certified, postage prepaid, return receipt requested, if sent to the address and addressee as set forth below the signature of the applicable party hereto. The addresses and facsimile numbers to which notices or other communications are to be given (including statements delivered pursuant to Section 7 and a Notice of Exclusive Control pursuant to Section 13(b) below) may be changed from time to time by notice given as provided herein.

(b)    A Notice of Exclusive Control shall be in writing, must be in the form set forth in Exhibit A hereto, must be delivered to the address listed below Bank's signature at the end of this Agreement via hand delivery, messenger, overnight delivery or facsimile, and shall be considered to have been validly given when actually received, except that a facsimile will be considered to have been validly given only when acknowledged in writing by Bank (Bank agrees that it will use its good faith effort to promptly acknowledge receipt of such facsimile). To the extent Creditor does not deliver the Notice of Exclusive Control as set forth in this Section 13 or to the address listed below Bank's signature at the end of this Agreement, Creditor (a) acknowledges that Bank may not be able to respond to such Notice of Exclusive Control pursuant to Section 5 above, and (b) agrees that Bank will not be held liable for any failure to respond to such Notice of Exclusive Control.

Creditor agrees that it will provide Bank with a copy of its formation documentation when delivering a Notice of Exclusive Control if deemed necessary by Bank to enable Bank to comply with the provisions of §326 of the USA PATRIOT Act, unless such documentation has previously been provided to Bank and Bank can verify that such documentation is still maintained in Bank's files (provided that no such request by Bank shall delay the effectiveness of any such Notice of Exclusive Control).

14.    Integration Provision.    This Agreement constitutes the entire agreement among Bank, Customer and Creditor with respect to Creditor's control over the Deposit Account and matters related thereto, and all prior communications, whether verbal or written, between any of the parties hereto with respect to the subject matter hereof shall be of no further effect or evidentiary value.

15.    Counterparts.    This Agreement may be signed in counterparts that, when signed by all parties, shall constitute one agreement.

16.    Relationship of the Parties.    Nothing in this Agreement shall create any agency or fiduciary relationship between Customer, Creditor and Bank.

17.    Governing Law and Jurisdiction.    The parties hereto agree that this Agreement shall be governed exclusively under and in accordance with the laws of the State of California. All parties hereto each submit to the exclusive jurisdiction of the State and Federal courts in Santa Clara County, California.

18.    Jury Trial Waiver.    CUSTOMER, CREDITOR, AND BANK EACH WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, OR ANY CONTEMPLATED TRANSACTION, INCLUDING CONTRACT, TORT, BREACH OF DUTY AND ALL OTHER CLAIMS. THIS WAIVER IS A MATERIAL INDUCEMENT FOR ALL PARTIES TO ENTER INTO THIS AGREEMENT. EACH PARTY HAS REVIEWED THIS WAIVER WITH ITS COUNSEL.

WITHOUT INTENDING IN ANY WAY TO LIMIT THE PARTIES' AGREEMENT TO WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY, if the above waiver of the right to a trial by jury is not enforceable, the parties hereto agree that any and all disputes or controversies of any nature between them arising at any time out of or based upon this Agreement or any transaction contemplated herein shall be decided by a reference to a private judge, mutually selected by the parties (or, if they cannot agree, by the Presiding Judge of the Santa Clara County, California Superior Court) appointed in accordance with California Code of Civil Procedure Section 638 (or pursuant to comparable provisions of federal law if the dispute falls within the exclusive jurisdiction of the federal courts), sitting without a jury, in Santa Clara County, California; and the

parties hereby submit to the jurisdiction of such court. The reference proceedings shall be conducted pursuant to and in accordance with the provisions of California Code of Civil Procedure §§ 638 through 645.1, inclusive. The private judge shall have the power, among others, to grant provisional relief, including without limitation, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers. All such proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed. If during the course of any dispute, a party desires to seek provisional relief, but a judge has not been appointed at that point pursuant to the judicial reference procedures, then such party may apply to the Santa Clara County, California Superior Court for such relief. The proceeding before the private judge shall be conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. The parties shall be entitled to discovery which shall be conducted in the same manner as it would be before a court under the rules of discovery applicable to judicial proceedings. The private judge shall oversee discovery and may enforce all discovery rules and order applicable to judicial proceedings in the same manner as a trial court judge. The parties agree that the selected or appointed private judge shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon pursuant to the California Code of Civil Procedure § 644(a). Nothing in this paragraph shall limit the right of any party at any time to exercise self-help remedies, foreclose against collateral, or obtain provisional remedies. The private judge shall also determine all issues relating to the applicability, interpretation, and enforceability of this paragraph.

19.    Successors.    The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective corporate successors or heirs and personal representatives. Customer may not assign this Agreement without the prior written consent of the Creditor and Bank. Creditor may assign this Agreement upon written notice to Bank; provided, that such assignee must assume in writing or by operation of law all of Creditor's obligations under this Agreement. Bank may assign this Agreement upon written notice to Creditor (which shall be given to Creditor at the same time such notice is provided to Customer); provided, that such assignee must assume in writing or by operation of law all of Bank's obligations under this Agreement.

20.     Attorneys' Fees, Costs and Expenses.  In any action or proceeding between Bank and any other party to this agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other reasonable costs and expenses incurred, in addition to any other relief to which it may be entitled.

21.     Termination; Survival.    Customer may terminate this Agreement only with the written consent of Creditor.  Creditor may terminate this Agreement by giving Bank and Customer written notice of termination. Creditor acknowledges that, as of the termination date, it will no longer have a perfected security interest in the Deposit Account via control pursuant to this Agreement. Bank may terminate this Agreement by giving Creditor and Customer 30 days' prior written notice of termination unless termination is a result of Bank's closure of the Deposit Account pursuant to its rights set forth in the Deposit Agreement or in accordance with applicable law, in which case, Creditor's receipt of notice shall be governed by Section 4 hereof.  Subject to the foregoing, this Agreement automatically terminates when the Deposit Account closes or when Creditor notifies Bank that all obligations owed to Creditor have been paid in full, and Creditor has terminated its security interest in the Deposit Account. Sections 9, 10, 11, 17, 18 and 20 shall survive the termination of this Agreement.

[Signature page follows.]

BANK:                          SILICON VALLEY BANK
                               By _____
                               Title:
                               Deposit Liability Management

                               Address for Notices:
                               Silicon Valley Bank
                               Deposit Liability Management
                               3003 Tasman Drive, Mail Sort HF184
                               Santa Clara, CA 95054
                               Telephone: (408) 654-3078
                               Facsimile: (408) 496-2409

CUSTOMER:                      InPhonic, Inc.
                               a Delaware Corporation
                               TIN* 52-2145389
                               By _____
                               Name: David A. Steinberg
                               Title: CEO and Chairman

                               Address for Notices:
                               1010 Wisconsin Ave. NW Suite 600
                               Washington, DC 20007
                               _____
                               Telephone:
                               Facsimile:

CREDITOR:                      Citicorp North America, Inc. as Administrative Agent
                               a _____
                               TIN* _____

                               By _____
                               Name:
                               Title:

                               Address for Notices:
                               390 Greenwich St. 7th Floor
                               New York, NY 10013
                               Attn: David Stemper
                               Telephone:
                               Facsimile:

* Pursuant to §326 of the USA PATRIOT Act, Bank is required to obtain a Tax Identification
Number (TIN) from all parties to this Agreement.

SVB Deposit Account Control Agreement (June 2007)

BANK:                           SILICON VALLEY BANK
                                By _____
                                Title:
                                Deposit Liability Management

                                Address for Notices:
                                Silicon Valley Bank
                                Deposit Liability Management
                                3003 Tasman Drive, Mail Sort HF184
                                Santa Clara, CA  95054
                                Telephone:  (408) 654-3078
                                Facsimile:  (408) 496-2409

CUSTOMER:                       _____,
                                a _____
                                TIN* _____

                                By _____
                                Name:
                                Title:

                                Address for Notices:
                                _____
                                _____
                                _____
                                Telephone: _____
                                Facsimile:

CREDITOR:                       Citi corp North America.
                                a Delaware Corporation
                                TIN: 13 - 293 8684
                                By _Ianne Arret_
                                Name: Jeanne Arret(?)
                                Title: V.P.

                                Address for Notices:
                                390 Greenwich 7thFl
                                New York NY 10013
                                Telephone: 212-723-1048
                                Facsimile: 212-723-8036

* Pursuant to §326 of the USA PATRIOT Act, Bank is required to obtain a Tax Identification
Number (TIN) from all parties to this Agreement.

SVB Deposit Account Control Agreement (June 2007)

BANK:

SILICON VALLEY BANK
By _Martha Mraz_
Title: _Sr. V Division Manager_
Deposit Liability Management

Address for Notices:
Silicon Valley Bank
Deposit Liability Management
3003 Tasman Drive, Mail Sort HF184
Santa Clara, CA  95054
Telephone:  (408) 654-3078
Facsimile:  (408) 496-2409

CUSTOMER:

_InPhonic, Inc._
a _Delaware_ _Corporation_
TIN* _52-2199384_

By _____
Name: _David A. Steinberg_
Title: _CEO and Chairman_

Address for Notices:
_1010 Wisconsin Ave. NW Suite 600_
_Washington, DC 20007_
Telephone:
Facsimile:

CREDITOR:

_Citicorp North America, Inc. as Administrative Agent_
a _____
TIN* _____

By _____
Name:
Title:

Address for Notices:
_390 Greenwich St. 7th Floor_
_New York, NY  10013_
_Attn: David Stemper_
Telephone:
Facsimile:

* Pursuant to §326 of the USA PATRIOT Act, Bank is required to obtain a Tax Identification
Number (TIN) from all parties to this Agreement.

BANK:                          SILICON VALLEY BANK
                               By _____
                               Title: _____
                               Deposit Liability Management

                               Address for Notices:
                               Silicon Valley Bank
                               Deposit Liability Management
                               3003 Tasman Drive, Mail Sort HF184
                               Santa Clara, CA  95054
                               Telephone: (408) 654-3078
                               Facsimile: (408) 496-2409

CUSTOMER:                      _____.
                               a _____
                               TIN* _____

                               By _____
                               Name:
                               Title:

                               Address for Notices:
                               _____
                               _____
                               _____

                               Telephone:
                               Facsimile:

CREDITOR:                      Citi corp North America,
                               a Delaware Corporation
                               TIN: 13-293 8684
                               By _Jeanne Arpet_
                               Name: Jeanne Arpet
                               Title: V.P.

                               Address for Notices:
                               390 Greenwich 7th Fl
                               New York, NY 10013

                               Telephone: 212-723-1048
                               Facsimile: 212-723-8036

* Pursuant to §326 of the USA PATRIOT Act, Bank is required to obtain a Tax Identification
Number (TIN) from all parties to this Agreement.

SVB Deposit Account Control Agreement (June 2007)

Exhibit A

Notice of Exclusive Control

To:     Silicon Valley Bank ("Bank")
From:   _____ ("Creditor")
Re:     _____ ("Customer")
Date:   _____

Pursuant to the Deposit Account Control Agreement dated _____ ("Agreement") entered among Bank, Customer and Creditor, Creditor hereby notifies Bank of Creditor's exercise of Creditor's rights under the Agreement and directs Bank to cease complying with instructions or any directions originated by Customer or its agents. Creditor hereby certifies that it is entitled to exercise its rights under the Agreement and that Creditor has a right to all or part of the funds in the Deposit Account (as defined in the Agreement).

Creditor agrees that it will provide Bank with a copy of its formation documentation when delivering a Notice of Exclusive Control if deemed necessary by Bank to enable Bank to comply with the provisions of §326 of the USA PATRIOT Act (provided that no such request by Bank shall delay the effectiveness of any such Notice of Exclusive Control).

Creditor hereby certifies that the person executing this Notice of Exclusive Control is an officer, representative or agent of Creditor authorized to act on the behalf of Creditor and to make the representations and agreements contained herein.

CREDITOR:                          _____

                                   By _____
                                   Title:

ACKNOWLEDGED BY:                   SILICON VALLEY BANK

(for facsimile only)

                                   By: _____
                                   Name:
                                   Title:
                                   Date:
                                   Time: