**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INPHONIC, INC., *et al.* | : | Case No. 07-11666-KG |
| | : | |
| Debtor. | : | (Jointly Administered) |
| | : | **Re: 13, 65, 146, 172, 212, 213** |

**RESPONSE OF MICROSOFT LICENSING AND MSN TO DEBTOR'S OMNIBUS REPLY TO OBJECTIONS TO MOTION FOR AN ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS; (II) APPROVING AN ASSET PURCHASE AGREEMENT, SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Microsoft Licensing G.P. ("MLGP"), the entity that licenses Microsoft Corporation software to business users, and Microsoft Online L.P., the entity that contracts to provide advertising on the Microsoft Network ("MSN"), by and through their counsel Holland & Knight LLP and Brown Stone Nimeroff LLC, hereby submit their Response to Debtor's Omnibus Reply to Objections to Debtor's Motion for an Order (I) Authorizing the Sale of Substantially all of Their Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Omnibus Reply"), and respectfully represent as follows:

**BACKGROUND**

1.  MLGP and one or more of the Debtors are parties to certain intellectual property licensing agreements.  More specifically, the Debtors and MLGP are parties to five agreements, consisting of a Master Select Agreement, a Master Enterprise Agreement, a Standard Enrollment Select Agreement, an MS Business Agreement and a Standard Enrollment Enterprise Agreement (the "Licensing Agreements").  Under these Agreements collectively, MLGP licensed certain

Microsoft Corporation produced software (the "MS Software") to the Debtors on a nonexclusive basis. In addition, under the Licensing Agreements, the Debtors were permitted to purchase, have maintained and receive upgrades for the MS Software.

2. On or about November 8, 2007, the Debtors filed a Motion for an Order (I) Authorizing the Sale of Substantially all of Their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (iii) Approving the Assumption of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors sought to assume, assign and sell certain of their unexpired leases, license agreements, and executory contracts (the "Contracts") free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "Cure Costs").

3. On or about November 14, 2007, the Debtors filed a Notice of Possible Assumption, Sale and assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing (the "First Sale Notice"). Annexed to the First Sale Notice was a schedule of those Contracts the Debtors may seek to assume, assign and sell, along with the corresponding Cure Costs. The schedules annexed to the First Sale Notice included a listing for a contract between the Debtors and MLGP as well as two listings for contracts between the Debtors and MSN.

4. Upon review of the First Sale Notice, MLGP and MSN determined that the First Sale Notice lacked specificity as to (i) what contracts were actually at issue and (ii) the appropriate Cure Costs. Thus, on or about December 3, 2007, MLGP and MSN filed a Limited Objection to the First Sale Notice and the Sale Motion (the "Limited Objection") (Docket No. 172).

5.     On or about December 10, 2007, the Debtors filed a Notice of Assumption, Sale and Assignment of Designated Unexpired Leases and Executory Contracts (the Second Sale Notice"). Annexed to the Second Sale Notice was a schedule of Contracts that Adepto INPC Funding, LLC (the "Buyer") has elected to assume (the "Designated Contracts"). That schedule does not include any Contracts between the Debtors and either MLGP or MSN.

6.     On or about December 10, 2007, the Debtors filed the Omnibus Reply, in which the Debtors assert that the objections to Cure Costs, including the Limited Objection, were premature as the Second Sale Notice does not provide for the assumption of any Contracts between the Debtors, MLGP and MSN, although due to a 210 day period during which the Buyer may designate additional agreements for assumption and assignment such assumption and assignment may occur in the future. The Debtors pointed out further that there has been no agreement or stipulation between the Debtors, MLGP and MSN as to the appropriate Cure Costs in connection with the Licensing Agreements and the MSN Agreements.

7.     MLGP and MSN readily acknowledge that the Debtors and the Buyer may freely determine which Contracts, in their business judgment, should be assumed or rejected. MLGP is constrained to point out, however, that, while the Debtors have substantial leeway as to the decisions to assume or reject, and MLGP is certainly willing to discuss the assumption by the Debtors and assignment to the Buyer of the Licensing Agreements, absent such assumption and assignment, which can only be accomplished upon MLGP's written consent, the Buyer is prohibited from using any computer, peripheral, server or any other related equipment running any MS Software. *See In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 310 (D. Del. 2001); *In re Access Beyond Technologies, Inc.,* 237 B.R. 32, 48-49 (Bankr. D. Del. 1999)(citing *In re West Elec., Inc.*, 852 F.2d 79 (3d Cir. 1988)); *In re Patient Educ. Media*, 210

B.R. 237, 243 (Bankr. S.D.N.Y. 1997)(holding that debtor could not assume and assign nonexclusive license without copyright owner's consent).

8. MLGP maintains that any use by the Buyer of any MS Software, including, without limitation, the start up of any computer or related equipment running MS Software governed by the Licensing Agreements, without the prior assumption of the License Agreements and the assignment of those License Agreements to the Buyer, will be a knowing and willful infringement of MLGP's copyright and trademark rights, and that MLGP would be entitled to seek appropriate injunctive and/or monetary relief against the Buyer in the event of such infringement.

9. The primary condition to MLGP's providing the requisite consent to the assumption and assignment of the License Agreements is the Debtor's satisfaction of its obligations to cure defaults, including monetary defaults. The Debtors indicate that the prepetition cure amount under its agreements with MLGP is $487,119.42, but as MLGP has previously stated, depending on which agreements are assumed and assigned and the actual number of users in the Debtors' enterprise, that amount may overstate or understate the actual cure.

10. Whether or not the License Agreements are assumed and assigned, as well as whether or not the Debtors' agreements with MSN are assumed and assigned, the Debtors' current use of the licensed MLGP software, and its current receipt of the benefits of its advertising agreements with MSN, continue to give rise to administrative expense claims under Section 503(b) of the Bankruptcy Code. To the extent the Licensing Agreements, and the agreements with MSN, are not assumed by the Debtors and assigned to the Buyer, the continued accrual of amounts entitled to administrative expense status that are owed to MLGP and MSN

for up to the additional 210 days that the Buyer may exercise its contract designation rights make it questionable whether or not the Debtors timely will be able to satisfy in full MLGP's or MSN's claim or have any funds left over for unsecured creditors.

11. Again, MLGP, and MSN, stand ready to discuss assumption and assignment of the Licensing Agreements and the MSN advertising agreements with the Debtors and the Buyer, but believe that any sale of the Debtors' assets without the assumption of the Licensing Agreements would be extremely detrimental to the Debtors, their estates and their creditors, and would subject the Buyer to potential liability.

WHEREFORE, MLGP and MSN respectfully requests that the Court: (a) deny the Sale Motion to the extent it envisions the post-closing use of MLGP's software unless the Licensing Agreements are assumed and assigned and all Cure Costs paid, (b) award MLGP (costs and attorneys' fees incurred in connection with this bankruptcy case, and (c) grant such other and

[remainder of page left intentionally blank]

6

further relief as deemed just and appropriate.

Dated: December 12, 2007
      Wilmington, Delaware

BROWN STONE NIMEROFF LLC

/s/ Jami B. Nimeroff
Jami B. Nimeroff, Esq. (N0. 4049)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
T - 302-428-8142
F - 302-351-2744
Email: jnimeroff@bsnlawyers.com

    and

HOLLAND & KNIGHT LLP
John Monaghan
Peter Zisser
10 St. James Avenue, 11th Floor
Boston, MA 02116
Phone: (617) 573-5834 (212) 513-3200
Fax: (212) 385-9010

Attorneys for MLGP and MSN