IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| INPHONIC, INC., et al[1] | : | Case No. 07-11666 (KG) |
| Debtors. | : | (Jointly Administered) |

RE: DOCKET No. 11

## FINAL ORDER (I) AUTHORIZING AND APPROVING DEBTORS' POST-PETITION FINANCING; (II) GRANTING LIENS AND SECURITY INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; AND (IV) MODIFYING AUTOMATIC STAY

This matter came before this Court on the Debtors' Motion for Entry and Approval of Interim and Final Orders: (A) Authorizing and Approving Postpetition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; (D) Modifying Automatic Stay; and (E) Scheduling Final Hearing (the "Motion"), pursuant to 11 U.S.C. § § 105, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. § § 101, *et. seq.* (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001(c) and (d) (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Motion requests the entry of a final order (the "Final Order"):

(a)    authorizing and approving, pursuant to Bankruptcy Code § § 105, 361, 362, 363, and 364 and Bankruptcy Rules 2002, 4001 and 9014, postpetition financing (the "DIP Facility"),

---

[1]    The Debtors are InPhonic, Inc, CAIS Acquisition, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, CAIS Acquisition II, LLC, FON Acquisition, LLC, and 1010 Interactive, LLC.

from Adeptio INPC Funding, LLC (together with its successors, assigns and transferees, the "DIP Lender") to (i) fund, among other things, ongoing working capital needs of the Debtors, and (ii) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lender under the DIP Facility and the other DIP Facility Documents (as defined below);

(b)    authorizing the Debtors to continue to comply in all respects with the DIP Facility and the other DIP Facility Documents, and approval of all of the terms and conditions of the DIP Facility and the other DIP Facility Documents;

(c)    requesting that the financing under the DIP Facility, including, without limitation, as to all principal, accrued interest, unpaid fees and expenses, indemnification, and all other amounts due from time to time under the documents referred to below, including the Obligations[2] (collectively, the "DIP Facility Obligations"):

(i)    continue to have priority, pursuant to Bankruptcy Code § 364(c)(1), over any and all administrative expenses, subject only to the Carve-Out (as defined below), which allowed superpriority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, as provided for herein; and

(ii)    pursuant to Bankruptcy Code § § 364(c)(2), (c)(3) and (d), continue to be and be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior security interests in, and liens upon (all such liens and security interests granted to the DIP Lender, pursuant to this Final Order and the DIP Facility Documents,

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Documents or the Order (A) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets; (B) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (C) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Propsoed Cure Amounts; (D) Approving Expense Reimbursement Provision; and (E) Granting Related Relief.

the "DIP Facility Liens"), all prepetition and postpetition assets of the Debtors, whether now existing or hereafter acquired, including all of the real, personal and mixed property (including equity interests) and all monies and other property of any kind received on account thereof (including, upon and following the approval of the Bankruptcy Court, Avoidance Actions), and all proceeds thereof, in which Liens are granted whether pursuant to the Interim Order and Final Order, as applicable, the Collateral Documents, or otherwise, in each case as security for the Obligations (each of the foregoing, the "Collateral"), but specifically (i) being subject solely to the Carve-Out to the extent provided for below, and (ii) receiving a junior lien on all Collateral encumbered by the Permitted Encumbrances, pursuant to Bankruptcy Code § 364(c)(2), subject to the provisions of paragraph 6 below;

(d)     authorizing the Debtors' continued use of the Prior Lender's (as defined below) cash collateral and granting adequate protection on account of the Prepetition Loan Agreement (as defined below) under Bankruptcy Code § § 105, 361, 362 and 363; and

(e)     granting of certain related relief.

The court having held an interim hearing (the "Interim Hearing") on the Motion on November 9, 2007 and the court having held a final hearing (the "Final Hearing") on the Motion on November 30, 2007; and, the Court having found that due and appropriate notice, under the circumstances, of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing, and the material terms of this Final Order was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Local Rule 2002-1, on the following parties: (a) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) the

Securities and Exchange Commission; (e) the Prior Lender; (f) the Existing Agent; (g) Reed

Smith LLP, in its capacity as agent for the Creditors' Committee; and (h) and all parties having

filed requests for notices in the Debtors' Chapter 11 cases (collectively, the "Final Notice

Parties"). The Court having considered all the pleadings filed with this Court; and having

overruled all unresolved objections to the relief requested in the Motion; and upon the record

made by the Debtors at the Interim and Final Hearing, including the Motion and other filings and

pleadings in the Debtors' Chapter 11 cases, and after due deliberation and consideration and

good and sufficient cause appearing therefore;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

CONCLUSIONS OF LAW:

A.    Petition Date. On November 8, 2007 (the "Petition Date"), each of the Debtors

filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or this "Court"). The

Debtors continue to operate their business and manage their properties as debtors-in-possession

pursuant to Bankruptcy Code § § 1107 and 1108.

B.    Jurisdiction and Venue. This Court has core jurisdiction over the Debtors'

Chapter 11 cases, this Motion and the parties and property affected hereby pursuant to 28 U.S.C.

§ § 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and

1409.

C.    Notice. Notice of the Interim Hearing, Final Hearing, the Motion, the relief

requested therein and proposed entry of this Final Order has been provided to the Final Notice

Parties. Requisite notice of the Motion and the relief requested thereby and this Final Order has

been provided in accordance with Bankruptcy Rules 4001(b) and (c) and 9014 and Local Rule

2001-1, which notice is sufficient for this Motion, and the entry of this Final Order, and no further notice of, or hearing on, the Motion or this Final Order is necessary or required.

        D.     <u>Creditors' Committee</u>.  On November 16, 2007 , the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") in accordance with Bankruptcy Code § 1102.

        E.     <u>The Debtors' Stipulations as to Existing Secured Debt</u>.  Subject to the limitations contained in paragraph 10 of this Final Order, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree that:

        (a)     Prior to the Petition Date, the Debtors entered into that certain Credit Agreement dated as of November 7, 2006 (as amended, the "<u>Prepetition Loan Agreement</u>"), by and among the Debtors, the lenders from time to time party thereto (the "<u>Prior Lender</u>") and Citicorp North America, Inc. as Administration Agent (the "<u>Existing Agent</u>").

        (b)     As collateral for the Prepetition Indebtedness, the Debtors granted to the Prior Lender and Existing Agent a first-priority security interest in and lien upon (collectively, the "<u>Prepetition Liens</u>") all of the Debtors' assets (the "<u>Prepetition Collateral</u>").

        (c)     As of the Petition Date, the Debtors were indebted to the Prior Lender and Existing Agent in the aggregate principal amount of not less than $90.0 million plus accrued interest with respect thereto and any fees, expenses, costs and charges (the "<u>Prepetition Obligations</u>") provided under the Prepetition Loan Agreement.

        (d)     The DIP Lender currently holds all of the Prior Lender's Prepetition Indebtedness, the Prepetition Loan Agreement, and the Prepetition Liens (all terms as defined in the DIP Credit Agreement (defined below)).

(e)    The Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from Bankruptcy Code § 362).

(f)    No portion of the Prepetition Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(g)    The Prepetition Liens in and to the Prepetition Collateral constitute valid, binding, enforceable, and perfected first-priority liens in and to the Prepetition Collateral, subject only to the liens described in the Prepetition Loan Agreement, if any, and are not subject to avoidance, reduction, recharacterization, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(h)    The Debtors do not have, and hereby forever release, any claim, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise against (i) Adeptio in its capacity as Prior Lender, (ii) the Existing Agent and (iii) the DIP Lender, and their respective affiliates, partners, members, agents, officers, directors, employees, attorneys and advisors whether arising under or in connection with the Prepetition Loan Agreement or the transactions contemplated thereunder, the Prepetition Indebtedness or the Prepetition Liens, including, without limitation, any right to assert any disgorgement or recovery. It is expressly understood that the Debtors are not releasing any Prior Lender other than Adeptio.

(i)    The foregoing acknowledgments, stipulations and agreements are subject only to the rights of the Creditors' Committee and parties in interest pursuant to paragraph 10 below.

F.    <u>Findings Regarding Postpetition Financing.</u>

(a)    *Debtors' Request.*  The Debtors have requested from the DIP Lender, and the DIP Lender is willing to continue to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in the Interim Order and this Final Order and the DIP Facility Documents.

(b)    *Need for Postpetition Financing.*  The Debtors have an immediate need to continue the use of the DIP Facility and the Prepetition Collateral, including the Cash Collateral, in order to permit, among other things, the orderly continuation of the operation of their business, the management and preservation of the Debtors' assets and properties, the sale of substantially all of the Assets (the "Proposed Sale") at the Auction pursuant to the Bidding Procedures Order (as defined in paragraph 7(b) below), to maintain business relationships with vendors, suppliers and customers, to make payroll, to satisfy other working capital and operational needs and maintain the going concern value of the Debtors' estates.  Without such continued use of cash and credit, the Debtors' estates would be irreparably harmed.

(c)    *Interim Financing Order.*  On November 9, 2007, this Court entered the Interim Order (I) Authorizing and Approving Debtors' Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing.

(d)    *No Credit Available on More Favorable Terms.*  The Debtors represent that they are unable to obtain sufficient financing from sources other than the DIP Lender on terms more favorable than under the DIP Credit Agreement (as defined below and in substantially the form affixed as an exhibit to the Motion, subject only to non-material modifications as may be agreed to by the parties thereto) and any and all documents and

instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Credit Agreement, the "DIP Facility Documents") and are not able to obtain sufficient unsecured credit allowable as an administrative expense under Bankruptcy Code § 503(b)(1). The Debtors are also unable to obtain unsecured credit with the enhanced priority afforded by Bankruptcy Code § 364(c)(1). New credit is unavailable to the Debtors without providing the DIP Lender with (a) the DIP Facility Superpriority Claims and (b) the DIP Facility Liens as provided herein and in the DIP Facility Documents.

(e)    *Budget*. The Debtors have prepared and delivered the Budget to the DIP Lender, a copy of which Budget is attached as an exhibit to the Motion. Such Budget has been thoroughly reviewed by the Debtors and their management. The Debtors represent that the Budget is achievable and will allow the Debtors to operate their business, conduct the Auction and Proposed Sale and otherwise conduct their Chapter 11 cases. The DIP Lender relied upon the Debtors' compliance with the Budget in accordance with the Interim Order and continues to rely upon the Debtors' compliance with the Budget in accordance with this Final Order in determining to enter into the postpetition financing arrangements provided for herein.

(f)    *Cash Collateral*. The Debtors stipulate, agree and acknowledge, subject to the rights of any Creditors' Committee or other party in interest pursuant to paragraph 10 below, that its cash, including, without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, the sale of inventory or other disposition of Prepetition Collateral, constitute proceeds of the Prepetition Collateral and are cash collateral of the Prior Lender within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral"). The Prior Lender is entitled, pursuant to Bankruptcy Code § § 361, 363(c)(2), 363(e) and 364(d)(1), to

adequate protection of its interests in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of the Prior Lender's Prepetition Collateral, including, without limitation, any such diminution resulting from the use of Cash Collateral, the implementation of the DIP Facility, the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code § 362. The Prior Lender has indicated a willingness to consent and agree to allow the Debtors to continue use of its Cash Collateral and provide financing to the Debtors, subject to: (i) the entry of this Final Order; (ii) the terms and conditions of the DIP Credit Agreement and the DIP Facility Documents; (iii) the terms and conditions of all "First Day Orders" being in form and substance reasonably satisfactory to the Prior Lender; and (iv) findings by the Court that such postpetition financing is essential to the Debtors' estates, that the terms of such financing were negotiated in good faith and at arm's length, and that the DIP Lender's DIP Facility Liens and DIP Facility Superpriority Claims, and other protections granted pursuant to this Final Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Final Order or any other order, as provided in Bankruptcy Code § 364(e).

(g)    *Business Judgment and Good Faith Pursuant to Section 364(e).* Based on the record of the Interim Hearing and Final Hearing, the terms of the DIP Facility Documents, this Final Order and the use of Cash Collateral are fair, just and reasonable under the circumstances, ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The use of Cash Collateral and the terms of the DIP Credit Agreement and the other DIP Facility Documents have been negotiated

in good faith and at arm's length between the Debtors, the Prior Lender and the DIP Lender, with all parties represented by counsel, and any credit extended, loans made, and other financial accommodations extended to the Debtors by the Prior Lender or the DIP Lender shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" as that term is used in Bankruptcy Code § 364(e) and in express reliance upon the protections afforded by Bankruptcy Code § 364(e) in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(h)     *Good Cause, Immediate Entry*.  The Debtors represent that the relief requested by the Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtors, their estates and their creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to (i) minimize disruption to the Debtors' businesses and on-going operations, including in connection with the Proposed Sale, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all of the Debtors' creditors, and (iii) avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees, and their assets.  Thus, good cause has been shown for the immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing, and after due consideration and good cause appearing therefore, IT IS ORDERED, ADJUDGED AND DECREED, that:

1.     Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Final Order.  This Final Order shall immediately become effective upon its entry.

2.     Objections Overruled.  All objections to the entry of this Final Order are withdrawn or resolved by the terms hereof or, to the extent not resolved, are overruled.

3.    <u>Authorization of the DIP Financing Documents</u>.  Upon finalizing and executing
that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement (the "<u>DIP
Credit Agreement</u>") by and between the Debtors and the DIP Lender (subject only to non-
material modifications as may be agreed to by the parties thereto), and provided that the Debtors
are not in default under the terms of this Final Order, the Debtors are immediately authorized to
continue to use the Prior Lender's Cash Collateral and to continue to borrow under the DIP
Facility from the DIP Lender an amount not to exceed $25.0 million and to operate its business,
in accordance with the terms of this Final Order, the DIP Credit Agreement and the DIP Facility
Documents.  Upon execution and delivery of the DIP Facility Documents, the DIP Facility
Documents shall constitute and are hereby deemed to be legal, valid, and binding obligations of
the Debtors and the Debtors' estates, enforceable against the Debtors and their estates in
accordance with the terms of the DIP Facility Documents.  The Debtors are hereby authorized
and empowered to continue to borrow under the DIP Facility for working capital and other items
set forth in the DIP Budget, pursuant to the terms set forth in the DIP Credit Agreement, the
Interim Order, this Final Order and the DIP Documents.  Unless expressly modified in this Final
Order, the findings, authorizations, protections and provisions contained in the Interim Order
remain in full force and effect.

4.    <u>Execution and Compliance with DIP Facility Documents</u>.  The Debtors are
authorized and directed to execute, deliver, perform and comply with all of the terms and
covenants of the DIP Credit Agreement and DIP Facility Documents, each of which constitute
valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during
the Debtors' Chapter 11 cases, any subsequently converted case of any Debtor under Chapter 7
of the Bankruptcy Code or after the dismissal or reorganization of any Debtor's Chapter 11 case.

The Debtors are authorized and directed to perform all acts, and execute and comply with the terms of all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), as the DIP Lender may reasonably require as evidence of and for the protection of the Obligations and the Collateral or which may be otherwise deemed necessary by the DIP Lender to effectuate the terms and conditions of this Final Order and the DIP Facility Documents.

5.    DIP Facility Superpriority Claims.  As security for the DIP Facility Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Facility Documents and this Final Order, to the extent the DIP Facility Liens do not satisfy the DIP Facility Obligations, the DIP Lender is granted an allowed super-priority administrative claim pursuant to Bankruptcy Code § 364(c)(1), including an allowed super-priority administrative claim to recoveries on account of Avoidance Actions under Chapter 5 of the Bankruptcy Code, which claim shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Bankruptcy Code § § 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and/or 364(c)(1) (the "DIP Facility Superpriority Claim"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, provided, however, that the DIP Facility Superpriority Claim shall be subordinate to the Carve-Out to the extent specifically provided for in paragraph 8 of this Final Order.

6.     <u>DIP Facility Liens</u>. As security for the DIP Facility Obligations, pursuant to Bankruptcy Code § § 364(c)(2), (c)(3), and (d) and the consent of the Prior Lender and the Existing Agent, the DIP Lender shall continue to have (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, control agreements, pledge agreements, lock box agreements financing statements, or otherwise) the DIP Facility Liens, including Avoidance Actions or the proceeds thereof:

     (a)     pursuant to Bankruptcy Code § 364(c)(2), valid, perfected, enforceable and non-avoidable first priority liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors, including, without limitation, Avoidance Actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof from the date of the entry of the Interim Order, that are not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date;

     (b)     pursuant to Bankruptcy Code § 364(c)(3), valid, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors including, without limitation, Avoidance Actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof from the date of the entry of the Interim Order, that are subject to valid, perfected, enforceable and non-avoidable liens in existence on or after the Petition Date or to valid liens in existence on or after the Petition Date that are perfected subsequent to such commencement as permitted by Bankruptcy Code § 546(b) (other than assets and property that are subject to the existing liens as referred to in subparagraph (c) below, which existing liens shall be primed as provided therein); and

13

(c)    pursuant to Bankruptcy Code § 364(d), valid, perfected, enforceable and non-avoidable first priority senior priming liens on and security interests in the Prepetition Collateral, including, without limitation, Avoidance Actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof from the date of the entry of the Interim Order, except as to those liens and security interests in existence on the Petition Date to which the Prepetition Collateral is subject in accordance with the Prepetition Loan Agreement and as consented to by the DIP Lender, to the extent such liens and security interests are valid, perfected, enforceable and non-avoidable (provided that with respect to such excepted liens and security interests, the DIP Lender shall be granted the second priority or other junior liens granted in subparagraph (b) above).

In the event of the occurrence of an Event of Default (as defined below), or an event that would constitute an Event of Default with the giving of notice or lapse of time or both (a "Default"), the DIP Facility Liens shall be subject only to the payment of the Carve-Out (as defined below).

7.    Adequate Protection.  The Prior Lender and Existing Agent are entitled to adequate protection for DIP Facility Liens and the Debtors' use of Cash Collateral, and solely to the extent of diminution in value from the Debtors' use of Cash Collateral.  As adequate protection, the Prior Lender and Existing Agent have previously been granted, and are hereby also granted the following:

(a)    *Replacement Liens*.  The Prior Lender and Existing Agent have been granted (effective and perfected upon the date of the entry of the Interim Order and without the necessity of the execution by the Debtors of security agreements, financing statements or other agreements) valid, perfected replacement security interests in and lien upon all Prepetition

14

Collateral of the Debtors and the proceeds thereof, which grant is hereby confirmed as valid and

in full force and effect, subject and subordinate only to (i) the Prepetition Liens, (ii) the DIP

Facility Liens granted to the DIP Lender under the Interim Order and continuing forthwith

pursuant to this Final Order and pursuant to the DIP Credit Agreement and (iii) the Carve-Out.

(b)     *Sale Process*.  The Debtors' motion, filed on the Petition Date, for an

order, *inter alia*, (i) approving Bid Procedures with respect to the Proposed Sale of substantially

all of the Assets, as more fully set forth in that certain asset purchase agreement (the

"Agreement") by and between the Debtors and Adeptio INPC Funding, LLC, (ii)  scheduling a

hearing and approving the form and manner of notice of the Auction and the Bid Procedures;

(iii) establishing procedures relating to the assumption and assignment of certain Designated

Contracts, including notice of proposed Cure Costs; (iv) approving the Expense Reimbursement

provision; and (v) granting related relief (the "Bidding Procedures Motion") and heard as part of

the Debtors' other first-day motions and an order (the "Bidding Procedures Order" which

includes the Bid Procedures as an exhibit) entered, in the form filed by the Debtors with the

Motion, upon such motion on November 9, 2007 shall remain valid and in full force and effect;

and the relief granted in the Bidding Procedures Order, including, without limitation, the dates of

the Auction, Sale Hearing and Closing Date, and the Debtors' agreement that the Proposed Sale

shall be consummated with the Qualified Bidder that submits the highest or otherwise best bid at

the Auction, shall not be modified except with the consent of the Prior Lender and the Existing

Agent.

(c)     *Budget*.  Except pursuant to permitted variances provided for in the DIP

Financing Documents as in effect as of the entry of the Interim Order and this Final Order, the

Debtors shall not make disbursements in excess of those projected in the Budget and shall not

otherwise deviate from the terms of the Budget, without the written consent of the Prior Lender
and Existing Agent.

(d)     *Fees and Expenses*.  The Debtors are hereby authorized and directed to
continue to pay to the Prior Lender, all present and future costs, fees, charges and expenses of the
Prior Lender following receipt of a summary invoice, including all reasonable fees and expenses
of consultants, advisors, professionals and attorneys including Capstone Advisory Group, LLC
whether incurred prepetition or postpetition.  None of such Prior Lender's costs, fees, charges,
and expenses shall be subject to Court approval, and no recipient of any such payment shall be
required to file with respect thereto any interim or final fee application with the Court, provided
that the Court shall have jurisdiction to determine any dispute concerning such invoices.  The
Prior Lender shall provide a copy of the summary invoice regarding any fees and expenses
incurred postpetition to the U.S. Trustee and any Creditors' Committee's counsel subject to
confidentiality and applicable privilege.

8.     Carve-Out.  Liens, security interests and super-priority administrative expense
claims of the Prior Lender, the Existing Agent and the DIP Lender shall be subject to and
subordinate only to (a) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable
to the clerk of the Court (collectively, the "UST/Clerk Fees"); and (b) allowed, unpaid fees and
expenses of attorneys, accountants, and other professionals retained in the case by the Debtors or
the Creditors' Committee (collectively, the "Professionals") pursuant to Bankruptcy Code
§ § 327, 328 and 1103 (the "Priority Professional Expenses"), but the amount entitled to priority
under this sub-clause shall not exceed $1.2 million outstanding in the aggregate at any time (the
"Professional Expense Cap," and together with the UST/Clerk Fees, the "Carve-Out"); provided,
however, that any payments actually made to the Professionals, whether under Bankruptcy Code

§ § 330 and 331 or otherwise, shall reduce the Professional Expense Cap on a dollar-for-dollar

basis, irrespective of whether such payment was made pre-Event of Default or post-Event of

Default, it being expressly understood that any prepetition retainers held by Professionals shall

not count against, and shall not reduce, the Professional Expense Cap. The Carve-Out shall be

free and clear of all liens, claims and encumbrances granted hereunder and shall be subject only

to the allowed claims of the Professionals for such fees and expenses as may be awarded by the

Court under Bankruptcy Code § § 327 or 328; provided, however, the Carve-Out cannot be used

for the payment or reimbursement of any fees or disbursements of the Debtors or the Creditors'

Committee or any other party-in-interest incurred in connection with the assertion or joinder in

any claim, counter-claim, action, proceeding, application, motion, objection, defense or other

contested matter, the purpose of which is to seek any order, judgment, determination or similar

relief: (1) invalidating, setting aside, avoiding, subordinating, in whole or in part, the DIP

Facility Obligations or the Prepetition Indebtedness or lien and security interest securing the DIP

Facility Obligations or the Prepetition Indebtedness; or (2) preventing, hindering or delaying,

whether directly or indirectly, the assertion by the Prior Lender or the DIP Lender or

enforcement by the Prior Lender or the DIP Lender or enforcement by the Prior Lender or the

DIP Lender of its liens or realization upon any of the respective Collateral; or (3) challenging the

postpetition liens or claims seeking an affirmative recovery from the Prior Lender or the DIP

Lender; provided that the Carve-Out may be used to investigate the Prepetition Indebtedness and

the validity and perfection of the liens and security interests securing the Prepetition

Indebtedness.

     9.     Fees and Expenses of Professionals.  So long as no Default or Event of Default

shall have occurred and be continuing or have occurred and be waived, the Debtors shall be

permitted to pay the compensation and reimbursement of fees and expenses allowed and payable

under Bankruptcy Code § § 328, 330 and 331 (but excluding fees and expenses of third party

professionals employed by Creditors' Committee members), as the same may be due and payable

and as are otherwise permitted under this Final Order and the DIP Credit Agreement.  Nothing

contained herein is intended to constitute, nor should be construed as consent to the allowance of

any fees, disbursements or expenses by any party and nothing herein shall affect the ability or

right of the Debtors, the DIP Lender, the Creditors' Committee, the U.S. Trustee or any other

party in interest to object to the allowance and payment of any amounts incurred or requested.

      10.    <u>Prepetition Lien/Claim Challenge</u>.  The stipulations and admissions contained in

this Final Order shall be binding upon the Debtors and their estates in all circumstances.  Subject

to the terms of this paragraph, the Creditors' Committee shall have until December 11, 2007

within which to commence an adversary proceeding (collectively, a "<u>Prepetition Lien/Claim</u>

<u>Challenge</u>") with respect to the validity, priority, extent, perfection, and enforceability of the

Prepetition Liens or the Prepetition Indebtedness, or any other claims or causes of action against

the Prior Lender and DIP Lender relating to the Prepetition Loan Agreement.  If such a

Prepetition Lien/Claim Challenge is not timely commenced within such applicable period set

forth above, (a) the stipulations contained in paragraph E of this Final Order shall be irrevocably

binding on the estates, the Creditors' Committee and all parties in interest (including without

limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction),

(b) the Prepetition Liens or the Prepetition Indebtedness and the Prior Lender's and the DIP

Lender's liens upon and security interests in the Collateral shall be recognized and allowed as

valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or

defenses and perfected, (c) the Creditors' Committee and any other party in interest (including

18

without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction) shall thereafter be forever barred from bringing any Prepetition Lien/Claim Challenge, and (d) Adeptio in its capacity as Prior Lender and the DIP Lender and their respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date, and all of Debtors' acknowledgements, releases and waivers of claims granted to or in favor of the Prior Lender or the DIP Lender relating to the Prepetition Loan Agreement in accordance with this Final Order shall be binding upon all parties-in-interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code. It is expressly understood that the Debtors are not releasing any Prior Lender other than Adeptio. Nothing in this Final Order shall be deemed to confer or deny standing to commence an action on the Creditors' Committee.

11.   Waiver of 506(c) Claims Against the Prior Lender and the DIP Lender. Except for the Carve-Out and upon entry of this Final Order, no costs or expenses of administration which already have been, or may hereafter be, incurred in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code shall be charged or asserted by the Debtors against the Prior Lender or the DIP Lender, their claims or the Collateral, pursuant to Bankruptcy Code § § 105 or 506(c) or otherwise without the prior written consent of the Prior Lender or the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the Prior Lender or the DIP Lender in this proceeding, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Lender).

12.   Restrictions on Use of Proceeds. Subject to the limitations applicable in the DIP Credit Agreement, the Debtors shall continue to use the Prior Lender's Cash Collateral and the

proceeds of the DIP Facility made or arranged for by the DIP Lender pursuant to the DIP Facility

Documents and this Final Order, and in accordance with this Final Order and the Budget: (a) to

support the working capital and general corporate purposes of the Debtors, (b) to make any other

payments permitted to be made by the Bankruptcy Code, in this Final Order or in any other order

of this Court to the extent provided for under the DIP Facility Documents or consented to by the

DIP Lender as provided in the DIP Facility Documents, (c) to pay certain fees and expenses

relating to the credit facilities established under the DIP Facility Documents, and (d) to promptly

pay all present and future costs, fees, charges and expenses of the DIP Lender following receipt

of a summary invoice (with a copy provided to the U.S. Trustee and any Creditors' Committee's

counsel subject to confidentiality and applicable privilege), including all reasonable fees and

expenses of consultants, advisors, professionals and attorneys paid or incurred at any time in

connection with these cases whether incurred prepetition or postpetition, all of which unpaid

costs and expenses shall be added to, and are included as part of, the principal amount of the

Obligations, secured by the Collateral and afforded all of the rights, priorities and protections

afforded to the DIP Lender in respect of the Obligations under this Final Order and the DIP

Facility Documents.  None of such DIP Lender's costs, fees, charges, and expenses shall be

subject to Court approval, and no recipient of any such payment shall be required to file with

respect thereto any interim or final fee application with the Court, provided that the Court shall

have jurisdiction to determine any dispute concerning such invoices.

13.    Commitment Termination Date.  The DIP Facility Obligations shall be due and

payable, without notice or demand, on the Commitment Termination Date.

14.    Restrictions on the Debtors.  Other than the Carve-Out, no claim having a priority

superior or *pari passu* with those granted by this Final Order to the DIP Lender shall be granted

or permitted by any order of the Court heretofore or hereafter entered in the case, while any

portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains

outstanding without the consent of the DIP Lender.  Except as may be expressly permitted by the

DIP Credit Agreement, the Debtors will not, at any time during the case, grant mortgages,

security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to

Bankruptcy Code § 364(d) or otherwise without the consent of the DIP Lender.

      15.    <u>Lien Perfection</u>.  Either the Interim Order or this Final Order shall be sufficient

and conclusive evidence of the priority, perfection and validity of all of the liens and security

interests in and upon the Collateral granted herein, effective as of the date of the entry of the

Interim Order, pursuant to the Interim Order or this Final Order and/or the DIP Facility

Documents, without the necessity of (a) filing, recording or serving any financing statements,

mortgages, deeds of trust or other agreements, documents or instruments which may otherwise

be required under federal or state law in any jurisdiction (collectively, the "<u>Lien Recording</u>

<u>Documents</u>"), (b) taking possession of Collateral or evidence thereof (provided, that, without

limiting the foregoing, any third party in possession of any Collateral is hereby deemed a bailee

for the benefit of and on behalf of the DIP Lender) or (c) taking any other action to validate or

perfect the liens and security interests granted in the Interim Order or this Final Order and/or the

DIP Facility Documents.  If the DIP Lender shall, in its discretion, elect for any reason to file

any such Lien Recording Documents with respect to such liens and security interests, the

Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording

Documents upon the DIP Lender's request and the filing, recording or service thereof (as the

case may be) of such Lien Recording Documents shall be deemed to have been made at the time

of and on the Petition Date.  The DIP Lender may, in its discretion, without seeking modification

of the automatic stay under Bankruptcy Code § 362, file a certified copy of the Interim Order or this Final Order in any filing or recording office in any county or other jurisdiction in which the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Final Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided that if the DIP Lender takes steps to perfect its liens and security interests under otherwise applicable state law, it does so without waiving the benefits of this provision of this Final Order or the corresponding provision of the Interim Order). In the event that any Lien Recording Document which the DIP Lender elects to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the DIP Lender's liens upon and security interests in the Collateral or any of the DIP Lender's claims, rights, priorities and/or protections afforded under the Interim Order or this Final Order and/or the DIP Facility Documents, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of the DIP Lender's liens and security interests in the Collateral or their claims, rights, priorities and/or protections granted under the Interim Order or this Final Order and/or the DIP Facility Documents.

16.     Modification of Automatic Stay. Subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to permit the DIP

Lender to implement the provisions of the DIP Facility Documents, the Interim Order and this

Final Order including exercising, upon the occurrence and during the continuance of any Event

of Default, all rights and remedies provided for in the DIP Facility Documents; provided,

however, that prior to the exercise of any enforcement or liquidation remedies against the

Collateral, the DIP Lender shall be required to give five (5) business days written notice to the

Debtors, its bankruptcy counsel, the Creditors' Committee's counsel, if any, and the U.S.

Trustee.  Notwithstanding the occurrence of an Event of Default or the Commitment Termination

Date or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP

Lender under the DIP Facility Documents, the Interim Order and this Final Order shall survive

the Commitment Termination Date.

       17.    Binding Effect of Final Order and DIP Facility Documents.

       (a)    The Debtors irrevocably waive any right to seek any modifications or

extensions of the Interim Order or this Final Order without the prior written consent of the DIP

Lender as authorized under the DIP Credit Agreement to give such consent, and no such consent

shall be implied by any other action, inaction or acquiescence by the DIP Lender.

       (b)    The provisions of the Interim Order or this Final Order and any actions

taken pursuant hereto shall survive entry of any order which may be entered converting the

Debtors' Chapter 11 cases to a Chapter 7 case, dismissing any of the Debtors' bankruptcy cases

(in the case of any such dismissal, to the maximum extent permitted under the Bankruptcy Code

and other applicable law) or any order which may be entered confirming or consummating any

plan of reorganization of the Debtors; and the terms and provisions of the Interim Order or this

Final Order as well as the priorities in payment, liens, and security interests granted pursuant to

this Final Order and the DIP Facility Documents shall continue in this or any superseding case

under the Bankruptcy Code, and such priorities in payment, liens and security interests shall

maintain their priority as provided by the Interim Order or this Final Order until all Obligations

are indefeasibly paid and satisfied in full; provided that all obligations and duties of the DIP

Lender hereunder, under the DIP Facility Documents or otherwise with respect to any future

loans and advances or otherwise shall terminate immediately upon the earlier of the date of any

Event of Default, the Commitment Termination Date or the date that a plan of reorganization of

the Debtors becomes effective unless the DIP Lender as is required under the DIP Facility

Documents have given its express prior written consent thereto, no such consent being implied

from any other action, inaction or acquiescence by the DIP Lender.

   (c)  The provisions of this Final Order and the DIP Facility Documents shall

be binding upon and inure to the benefit all parties-in-interest in these cases, including, without

limitation, the Debtors, the DIP Lender, and the Creditors' Committee, and their respective

successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter

7 or Chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner

appointed pursuant to Bankruptcy Code § 1104 or any other fiduciary hereafter appointed as a

legal representative of the Debtors or with respect to the property of the Debtors' estates), and

shall inure to the benefit of the Debtors, the DIP Lender, and the Creditors' Committee, and their

respective successors and assigns; provided, however, that DIP Lender shall have no obligation

to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the

Debtors' estates.

  18.  Survival.  The rights of the DIP Lender under the DIP Facility Documents or this

Final Order, the provisions of this Final Order and any actions taken pursuant hereto shall

survive the entry of any order (i) confirming a plan of reorganization in this case (and, to the

extent not satisfied in full in cash, the DIP Facility Obligations shall not be discharged by the entry of any such order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtors having hereby waived such discharge); (ii) converting the case to a Chapter 7 case; or (iii) dismissing the case, and the terms and provisions of this Final Order as well as the DIP Facility Superpriority Claims and the DIP Facility Liens granted to and conferred upon the DIP Lender and the protection afforded to the DIP Lender pursuant to this Final Order and the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Final Order and the DIP Facility Documents and to the maximum extent permitted by law until all of the DIP Facility Obligations shall have been paid and satisfied in full in accordance with the provisions of the DIP Credit Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall remain binding on all interested parties).

19.    <u>Nullifying Prepetition Restrictions on Postpetition Lien Grants</u>.  Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, any provision that restricts, limits or impairs in any way any Debtor's ability or right to grant liens or security interests upon any of the Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Facility Documents or this Final Order or otherwise enter into and comply with all of the terms, conditions and provisions thereof (all such provisions being collectively referred to as the "<u>Restrictive Clauses</u>") shall not be effective and shall be unenforceable against any such Debtor and the DIP Lender to the maximum extent permitted under the Bankruptcy Code and other applicable law, but only with respect to the entry of this

Final Order granting such postpetition financing, and, therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Lender pursuant to this Final Order and/or the DIP Facility Documents or any of the rights of the DIP Lender hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law. Such Restrictive Clauses shall not, to the maximum extent permitted under the Bankruptcy Code and applicable law, render any contract or lease unable to be assumed and/or assigned by any Debtor (or by the DIP Lender pursuant to the provisions contained in this Final Order), or in any way impair or limit the ability or right of any Debtor (or by the DIP Lender, on behalf of any Debtor, pursuant to the provisions contained in this Final Order) to assume and/or assign any contract or lease under Bankruptcy Code § § 365 or 1123.

20.    After-Acquired Property. Except as otherwise provided in this Final Order, pursuant to Bankruptcy Code § 552(a), all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lender, on behalf of itself, pursuant to the Debtors' use of Cash Collateral, the DIP Facility Documents and this Final Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date (other than Permitted Encumbrances), except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under Bankruptcy Code §510(c) or other provisions or principles of applicable law.

21.    Access to the Debtors. Without limiting the rights of access and information afforded the DIP Lender under the DIP Facility Documents, the Debtors shall permit

representatives, agents and/or employees of the DIP Lender to have reasonable access to its

premises and records during normal business hours (without unreasonable interference with the

proper operation of the Debtors' business) and shall cooperate, consult with, and provide to such

representatives, agents and/or employees all such non-privileged information as they may

reasonably request.

22.    <u>Amendment to DIP Facility Documents</u>.  The DIP Lender, with the consent of the

Debtors, is authorized to amend and/or modify the DIP Credit Agreement or any other DIP

Facility Documents without further order of the Court; <u>provided</u> that any such amendments or

modifications must be in writing and served upon counsel for the Creditors' Committee (if

appointed at such time) and the U.S. Trustee; <u>provided, further</u> that any amendments or

modifications that would have the effect of shortening the maturity date of the facilities or the

aggregate fees payable, or the rate or amount of interest payable, under the DIP Facility

Documents shall be done only pursuant to further order of the Court; <u>provided, however,</u> that any

amendment or modification to increase the aggregate amount of borrowings permitted must be in

writing, filed with the Court and served upon counsel for the Creditors' Committee (if appointed

at such time), the Creditors' Committee and all parties who filed requests for notices under

Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, and such

parties shall have five (5) days to object to such amendment or modification or it shall become

effective.

23.    <u>Insurance Policies</u>.  Upon entry of this Final Order, the DIP Lender shall continue

to be, and shall continue to be deemed to be, without any further action or notice, named as an

additional insured and loss payee on each insurance policy maintained by the Debtors which in

any way relates to the Collateral.  The Debtors are authorized and directed to continue to take

any action necessary to have the DIP Lender added as an additional insured and loss payee on each insurance policy.

24.     <u>Conclusive Evidence of Obligations</u>.  The terms, conditions and covenants of the DIP Credit Agreement and the other DIP Facility Documents shall be sufficient and, subject to the Creditors' Committee's rights contained herein, conclusive evidence of the borrowing and financing arrangements among the Debtors and the DIP Lender for all purposes, including, without limitation, the Debtors' obligation to pay all principal, interest, fees (including, without limitation, unused line fees, agency fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees and appraisal fees), and other costs and expenses (including, without limitation, all reasonable fees and expenses of consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP Credit Agreement and the other DIP Facility Documents.

25.     <u>Maintenance of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, except for sales contemplated under the Agreement, sales of the Debtors' inventory in the ordinary course of their businesses or except as otherwise provided for in the DIP Facility Documents and/or this Final Order.  Nothing contained in this paragraph shall limit or impair the right of any lessor or other contract party of any Debtor to request that the Court compel the Debtors to assume or reject any lease or license of real or personal property.

26.     <u>Remedies upon Occurrence of Event of Default</u>.  In the event of any of the following: (a) the failure of the Debtors to perform in any material respect any of their obligations pursuant to the Interim Order and this Final Order, (b) the occurrence and continuation of any "Event of Default" as defined under the DIP Credit Agreement or the other

DIP Facility Documents, (c) the termination or non-renewal of the DIP Facility Documents as

provided for in the DIP Credit Agreement, or if terminated sooner by an order of this Court, or

(d) any termination events occurring under the Agreement (each of the foregoing being referred

to in this Final Order, individually, as an "Event of Default" and collectively, as the "Events of

Default"); then (unless such Event of Default is specifically waived in writing by the DIP Lender

as provided for in the DIP Facility Documents, which waiver shall not be implied from any other

action, inaction or acquiescence by such the DIP Lender) the DIP Lender may, notwithstanding

the provisions of Bankruptcy Code § 362, without any application, motion or notice to or order

from, the Bankruptcy Court, without prior notice, take any one or more of the following actions:

(a) terminate all or any portion of the Revolving Credit Commitment (as defined in the DIP

Credit Agreement) whereupon the DIP Lender's obligation to make further Revolving Credit

Advances (as defined in the DIP Credit Agreement) shall terminate; (b) declare all or any portion

of the Obligations to be forthwith due and payable whereupon such Obligations shall become

and be due and payable; and/or (c) exercise any rights and remedies provided to the DIP Lender

under the DIP Facility Documents or at law or equity, including all remedies provided under the

Bankruptcy Code; and, pursuant to the Interim Order and this Final Order, the automatic stay of

Bankruptcy Code § 362 shall be modified and vacated to permit the DIP Lender to exercise its

remedies under the DIP Credit Agreement and the DIP Facility Documents, without further

application or motion to, or order from, the Bankruptcy Court; provided, however,

notwithstanding anything to the contrary contained herein, the DIP Lender shall be permitted to

exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower

in the Collateral only upon five (5) Business Days' prior written notice to the Debtors, the United

States Trustee for the District of Delaware, and any counsel approved by the Bankruptcy Court

for the Creditors' Committee.  Upon the occurrence of an Event of Default and the exercise by

the DIP Lender of its rights and remedies under the DIP Credit Agreement and the other DIP

Facility Documents, the Debtors shall assist the DIP Lender to the extent practicable in effecting

a sale or other disposition of the Collateral upon such terms as are designed to maximize the

proceeds obtainable from such sale or other disposition.  Nothing contained in the Interim Order

or this Final Order or otherwise shall be construed to obligate the DIP Lender in any way to lend

or advance any additional funds to the Debtors, or provide other financial accommodations to the

Debtors upon or after the occurrence of an Event of Default.

   27. <u>Collateral Rights</u>.  Until all of the Obligations shall have been indefeasibly paid

and satisfied in full in immediately available funds and without further order of the Court:

    (a) In the event that any party who holds a lien or security interest in any of

the Collateral that is junior and/or subordinate to the liens and claims of the DIP Lender in such

Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and

satisfaction in full of all Obligations, such junior or subordinate lienholder shall be deemed to

have received, and shall hold, such Collateral proceeds in trust for the DIP Lender and shall

immediately turnover to the DIP Lender such proceeds for application to the Obligations in

accordance with the DIP Facility Documents and/or this Final Order;

    (b) Upon the acceleration of the Obligations following an Event of Default,

and subject to the DIP Lender providing the notice required by this Final Order, in connection

with a liquidation of any of the Collateral, the DIP Lender (or any of its employees, agents,

consultants, contractors or other professionals) shall have the right, at the cost and expense of the

Debtors to be added to the Obligations, to: (i) enter upon, occupy and use any personal property,

fixtures and equipment owned or leased by the Debtors and (ii) use any and all trademarks,

tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are

owned by or subject to a lien of any third party and which are used by the Debtors in their

business.  If the DIP Lender exercises any remedies provided for in this paragraph, the DIP

Lender will be responsible for the payment of any applicable fees, rentals, royalties or other

amounts due such lessor, licensor or owner of such property for the period of time that the DIP

Lender actually uses the equipment or the intellectual property (but in no event for any accrued

and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Lender

actually occupies or uses such assets or properties); and

      (c)    Upon the acceleration of the Obligations following an Event of Default,

and subject to the DIP Lender providing the notice required by this Final Order, as well as three

(3) business days notice to any Debtor's real property lessor of the DIP Lender's intention to

enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral

located at such leased premises in accordance with the terms of this paragraph, the DIP Lender

shall have the right, following the expiration of such three (3) business days notice period

described in this paragraph, to enter onto or into such leased premises for the purpose of

removing the Collateral from the leased premises or selling such Collateral at the leased

premises, in each case subject to the applicable terms of such Debtor's lease arrangements with

such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the

rights of the DIP Lender provided for herein.  Subject to the following sentence, the Debtors

shall remain obligated to perform any obligation and to pay any rent and additional rent due

under the terms of their leases at all times, including during the period commencing upon the

DIP Lender obtaining the right to enter the Debtors' leased premises in accordance with this

paragraph. Nothing herein shall require the DIP Lender to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

28.    Reservation of Rights.  Entry of this Final Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action the DIP Lender may have against third parties, and shall not prejudice the rights of the DIP Lender from and after the entry of this Final Order to seek any other relief in the Debtors' Chapter 11 cases.  Entry of this Final Order shall not in any way constitute:  (a) a preclusion or a waiver of any right of the DIP Lender to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for other relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Final Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to the DIP Lender, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by the DIP Lender; or (d) a preclusion, waiver or modification of any rights or remedies that the DIP Lender have against any other person or entity.

29.    Restrictions on Additional Use of Cash Collateral, Additional Financing.  All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Facility Documents are made in reliance on this Final Order and in the event that an order is entered at any time in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code which (a) authorizes the use of cash collateral of the Debtors in which the DIP Lender has an interest or the sale, lease, or other disposition of property of the Debtors' estates in which the DIP Lender has a lien or security interest, except as expressly permitted hereunder or in the DIP Facility Documents, or (b) authorizes under

Bankruptcy Code § 364 the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lender herein; then, in each instance described in clauses (a) and (b) of this paragraph, (i) the DIP Lender as is required by the DIP Credit Agreement shall first have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by such the DIP Lender, or (ii) such other order shall require that all Obligations first shall be indefeasibly paid in full in immediately available funds. The liens and security interests granted to or for the benefit of the DIP Lender hereunder and the rights of the DIP Lender pursuant to this Final Order and the DIP Facility Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtors and, the DIP Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation and effectiveness thereof, shall continue after confirmation and effectiveness of any such plan.

30.     Limitation of Liability. Nothing in this Final Order or the DIP Facility Documents shall in any way be construed or interpreted to impose, or allow the imposition upon the DIP Lender of, any liability for any claims arising from the prepetition or postpetition activities by the Debtors in the operation of its business or in connection with its restructuring efforts.

31.     Cellco Partnership; Sprint Nextel Corporation; T-Mobile USA, Incorporated; AT&T, and Alltel Communications, Incorporated. Nothing contained herein shall impact, impair, abridge, alter, or modify the validity, extent or priority of any prepetition or postpetition

claims or rights, including those of offset, setoff, recoupment and purchase money security

interests, if (and only to the extent) any such claims or rights exist, of Cellco Partnership d/b/a

Verizon Wireless, Sprint Nextel Corporation, T-Mobile USA, Inc. d/b/a T-Mobile (f/k/a

VoiceStream Wireless Corporation), AT&T or Alltel Communications, Inc. (collectively, the

"Carriers").  Nothing contained in this paragraph is or shall be deemed as granting relief from the

automatic stay or other authorization by the Court (to the extent such relief or authorization is

necessary to exercise any such rights, remedies or interests) for the Carriers (either individually

or collectively) to exercise any such rights, remedies or interests set forth in this paragraph (in

each case if and only to the extent such claims or rights exist) or precludes the Debtors or the

DIP Lender from challenging such rights, remedies or interests.

        32.      <u>No Modification or Stay of Final Order</u>.  If any or all of the provisions of this

Final Order or the DIP Facility Agreement are hereafter modified, vacated or stayed, such

modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or

liability incurred by the Debtors to the DIP Lender prior to the effective date of such

modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien,

or priority authorized or created hereunder or pursuant to the DIP Facility Documents, as

applicable.  Notwithstanding any such modification, vacation or stay, any indebtedness,

obligations or liabilities incurred by the Debtors to the DIP Lender prior to the effective date of

such modification, vacation or stay shall be governed in all respects by the original provisions of

this Final Order; and the DIP Lender shall be entitled to all the rights, remedies, privileges and

benefits granted herein with respect to all such indebtedness, obligations and/or liabilities.  The

indebtedness, obligations and/or liabilities of the Debtors to the DIP Lender under this Final

Order and/or the DIP Facility Documents shall not be discharged by the entry of an order

confirming a plan of reorganization in the Debtors' bankruptcy cases pursuant to Bankruptcy Code § 1141(d)(4) or otherwise, unless and until all indebtedness, obligations and liabilities of the Debtors to the DIP Lender are indefeasibly paid in full in accordance with the terms and conditions of the DIP Facility Documents prior to or concurrently with the entry of such order. No indebtedness, obligation or liability owed by the Debtors to the DIP Lender under this Final Order or the DIP Facility Documents, prior to the effective date of any modification, vacation or stay of this Final Order can, as a result of any subsequent order in these Chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or super-priority administrative claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Final Order and/or the DIP Facility Documents.

33.    <u>Good Faith</u>.  The terms of the financing arrangements among the Debtors and the DIP Lender have been negotiated in good faith and at arms' length among the Debtors and the DIP Lender and any loans, advances or other financial accommodations which are made or caused to be made to the Debtors by the DIP Lender pursuant to the DIP Facility Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Bankruptcy Code § 364(e), and shall be entitled to the full protection of Bankruptcy Code § 364(e) in the event that this Final Order or the DIP Facility Documents or any provisions are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Lender.

34.    <u>Conflicting Provisions</u>.  Unless otherwise provided in this Final Order, to the extent the terms and conditions of the DIP Facility Documents or the Motion are in conflict with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

35.    Effectiveness.  Notwithstanding any Bankruptcy Rule to the contrary, the terms

and conditions of this Final Order shall (a) be immediately enforceable, and (b) not be stayed

absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the

Debtors and the DIP Lender.


Dated: Wilmington, Delaware

~~December 13~~ 2007

_____
Kevin Gross
United States Bankruptcy Judge


36. On the basis of the testimony at the hearing and the record in this case, and for the reasons stated on the record, the Court finds that the Committee's investigation of liens and causes of action was sufficient and adequate to fulfill its fiduciary duties and that the performance of Committee counsel was likewise commensurate with counsel's professional responsibilities.