IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| INPHONIC, INC., et al[1] | : Case No. 07-11666 (KG) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : Ref. Docket No. 13 |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated November 8, 2007 (the "Sale Motion") and the supplement to the Sale Motion (the "Supplement"), dated November 14, 2007, of the above-captioned debtors and debtors-in-possession (the "Debtors" or "Sellers") for the entry of an order pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to, *inter alia*, (i) enter into that certain Asset Purchase Agreement, dated as of November 8, 2007, between Adeptio INPC Funding, LLC, a Delaware limited liability company ("Adeptio" or "Buyer"), and the Debtors (the "Agreement", attached as Exhibit 1 to the Sale Motion), (ii) sell substantially all of their assets free and clear of all Encumbrances[2], with

---

[1] The Debtors are InPhonic, Inc, CAIS Acquisition, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, CAIS Acquisition II, LLC, FON Acquisition, LLC, and 1010 Interactive, LLC.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion, the Agreement, or the Order (A) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets; (B) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices;

such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume and sell and assign certain executory contracts and unexpired leases to the Buyer; and (iv) granting related relief; and this Court having entered an order dated November 9, 2007 (the "Bidding Procedures Order" and attached as Exhibit 1 thereto, the "Bid Procedures") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher or otherwise better offers for the Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; (iii) procedures relating to certain unexpired leases and executory contracts, including notice of proposed cure amounts; and (iv) the Expense Reimbursement; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. § § 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

---

(C) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Propsoed Cure Amounts; (D) Approving Expense Reimbursement Provision; and (E) Granting Related Relief.

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. § § 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. § § 1408 and 1409.

D.    The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code § § 102, 105, 363, 365, 1123, 1141 and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.    On November 8, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code § § 1107(a) and 1108.

F.    As evidenced by the affidavits of services and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Supplement, the Auction,

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

and the Sale Hearing have been provided in accordance with Bankruptcy Code § § 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order.  The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract listed on the Notice of Assumption, Sale and Assignment of Designated Unexpired Leases and Executory Contracts filed on December 10, 2007 (Docket No. 213) (the "Designated Contracts") to each non-debtor party under each such Designated Contract.  Such notice was good and sufficient and appropriate under the particular circumstances.  No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Designated Contracts, or of the entry of this Order is necessary or shall be required.

G.    A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien upon the Assets; (ii) all parties to Designated Contracts assumed and sold and assigned pursuant to this Order; (iii) all governmental taxing authorities that have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against the Debtors; (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) all interested governmental, pension and environmental entities; (vii) the Office of the United States Trustee; and (viii) all entities that heretofore expressed to the Debtors an interest in purchasing the Assets within the past 12 months.  Other

4

parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

H.     The Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

I.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to enter into the Agreement, sell the Assets and assume and assign the Designated Contracts under Bankruptcy § § 363, 365, 1123 and 1141, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.

J.     The Bid Procedures set forth in the Bidding Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of arm's length negotiations between the Debtors and the Buyer.

K.     The Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

K&E 12208439.5

L.    No bids were submitted on or before the Bid Deadline, other than the offer submitted by the Buyer in the Agreement.  The Buyer submitted the highest or otherwise best offer and the Buyer is the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  The Bidding Procedures obtained the highest value for the Assets for the Debtors and their estates.

M.    The offer of the Buyer, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

N.    The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.  The Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code § § 363(m) and (n) with respect to all of the Assets.  The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Agreement or to the consummation of the sale transaction and transfer of the Assets and Designated Contracts to Buyer.  The Buyer is entitled to all the protections and immunities of Bankruptcy Code § 363(m).

K&E 12208439.5

O.     The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

P.     The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Assets and to consummate the transactions contemplated by the Agreement.  Notwithstanding any requirement for approval or consent by any person, the transfer of the Assets to the Buyer and the assumption and assignment of the Designated Contracts is a legal, valid and effective transfer of the Assets and any Designated Contracts.

Q.     The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

R.     Except as otherwise provided in the Agreement, the Assets shall be sold free and clear of all Liens, Claims, Encumbrances and Interests with such Liens, Claims, Encumbrances and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and Buyer would not enter into the Agreement to purchase the Assets otherwise.

7

S.      The transfer of the Assets to Buyer will be a legal, valid and effective transfer of the Assets, and, except as may otherwise be provided in the Agreement, shall vest Buyer with all right, title and interest of the Debtors to the Assets free and clear of any and all Liens, Claims, Encumbrances and Interests.  Except as specifically provided in the Agreement or this Order, the Buyer shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Assets being sold by the Debtors.

T.      The transfer of the Assets to the Buyer free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Assets shall be forever barred estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Buyer, any of its assets, property, successors or assigns, or the Assets.

U.      The Debtors may sell the Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied.  Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have

8

consented pursuant to Bankruptcy Code § 363(f)(2).  All objections to the Sale Motion have been resolved.  Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Claims, Encumbrances and Interests, with such Claims, Encumbrances and Interests being subject to treatment as prescribed in the Debtors' Plan or by separate order of this Court.

V.      Not selling the Assets free and clear of all Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and the sale of Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

W.      The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code § § 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Designated Contracts.  The Buyer has demonstrated adequate assurance of future performance with respect to the Designated Contracts pursuant to Bankruptcy Code § 365(b)(1)(C).  The assumption and assignment of the Designated Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

X.      The Designated Contracts are assignable notwithstanding any provisions contained therein to the contrary.  The Debtors have provided for the cures and/or other

9

payments or actions required to assume and assign the Designated Contracts to the Buyer. The Buyer has provided adequate assurance of its future performance under the Designated Contracts and the proposed assumption and assignment of the Designated Contracts.

Y.      The Buyer reserves its right under Section 2.5(b) of the Agreement to, within ten (10) days of Closing of the Sale, designate as a held contract (the "Held Contract", as defined in the Agreement) any executory contract and/or unexpired lease that is not on the Notice of Assumption, Sale and Assignment of Designated Unexpired Leases and Executory Contracts filed on December 10, 2007 (Docket No. 213) and to which a Debtor is a party. The Debtors shall hold and not reject each Held Contract for a period of 210 days following the Closing of the Sale (the "Contract ~~Rejection~~ *Retention* Period"). As soon as practicable after receiving written notice from the Buyer to assume and assign a Held Contract, the Debtors shall take all actions reasonably necessary to assume and assign the Held Contract to Buyer pursuant to Bankruptcy Code § 365. Any applicable cure cost for the assumption and assignment of a Held Contract shall be paid in accordance with the Agreement. The Buyer shall compensate the Debtors for "Liabilities," as defined in the Agreement, for the continuation of a Held Contract during the Contract ~~Rejection~~ *Retention* Period up to and including the date which is five (5) days following the Debtors' receipt of written notice from the Buyer authorizing rejection of the same.

Z.      In the absence of a stay pending appeal, the Buyer will be acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

K&E 12208439.5

AA.    The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates.

BB.    The sale of the Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The sale does not constitute a *sub rosa* chapter 11 plan.

CC.    Pursuant to Section 10.15 of the Agreement, the Debtors are providing the Buyer with a general release of claims and the Buyer is providing fair value for the release.

DD.    The Buyer is a secured creditor of the Debtors, holding valid Liens, Claims, Interests and Encumbrances in and against the Debtors and their estates arising in connection with the various pre-petition loan and security agreements, as amended, and related documents, instruments and agreements and the Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement.  The Buyer holds an allowed Claim as of the Petition Date in the amount of $90.0 million plus accrued interest with respect thereto and any fees, expenses, costs and charges (the "Allowed Claim"), and was authorized to credit bid any or all of such Allowed Claim at the Auction.

EE.    The Buyer's credit bid pursuant to the Agreement was a valid and proper offer pursuant to the Bidding Procedures Order and Bankruptcy Code § § 363(b) and 363(k).

11

FF.    The total consideration provided by the Buyer for the Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Assets.

GG.    Time is of the essence in consummating the sale.  In order to maximize the value of the Assets, it is essential that the sale of the Assets occur within the time constraints set forth in the Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

HH.    The Buyer shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities and its obligations under the Agreement.

II.    The Debtors have a privacy policy (the "Privacy Policy" as described in the Supplement to the Sale Motion) that does not prohibit the transfer of "Personally Identifiable Information" as defined in Bankruptcy Code § 101(41A).  Upon the Closing of the Sale pursuant to the Agreement, the Buyer intends to protect, store and control the "Personally Identifiable Information" in a manner that is consistent with the Debtors' Privacy Policy.  Therefore, the Sale may be approved pursuant to Bankruptcy Code § 363(b)(1)(A) without the appointment of a consumer privacy ombudsman as defined in Bankruptcy Code § 363(b)(1) (the "Consumer Privacy Ombudsman").

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

K&E 12208439.5

1.      The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.      All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.      The sale of the Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), the credit bid by the Buyer and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.      The sale of the Assets and the consideration provided by the Buyer under the Agreement, including the Credit Bid Amount is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code § 363(m), including with respect to the transfer of the Designated Contracts as part of the sale of the Assets pursuant to Bankruptcy Code § 365 and this Order.

K&E 12208439.5

7.      The Debtors be, and hereby are, authorized, directed to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.  The Buyer shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

8.      The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver

14

such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.  The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and

K&E 12208439.5

consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

9.      Effective as of the Closing, (a) the sale of the Assets by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all right, title and interest of the Debtors in and to the Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, pursuant to Bankruptcy Code § 363(f), and (b) the assumption of any Assumed Liabilities by the Buyer shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

10.     The sale of the Assets is not subject to avoidance pursuant to Bankruptcy Code § 363(n).

11.     The sale of the Assets is approved pursuant to Bankruptcy Code § 363(b)(1) without the appointment of a Consumer Private Ombudsman.

*Transfer of Assets*

12.     Except to the extent specifically provided in the Agreement, upon the Closing, pursuant to Bankruptcy Code § 1141(c), the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Bankruptcy Code § § 105, 363(b), 1123 and 1141, to sell the Assets, including those within the Assignment and Assumption Agreement, to the Buyer. The sale of the Assets shall vest Buyer with all right, title and interest of the Debtors to the Assets free and clear of any and all Claims, Liens, Interests and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unified,

K&E 12208439.5

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests and Encumbrances to attach only to the proceeds of the sale (if any) with the same priority, validity, force, and effect, if any, as they now have in or against the Assets, subject to all claims and defenses the Debtors may possess with respect thereto.  Following the Closing Date, no holder of any Claims, Liens, Interests and Encumbrances in the Assets shall interfere with the Buyer's use and enjoyment of the Assets based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

13.    The provisions of this Order authorizing the sale of the Assets free and clear of Liens, Claims, Encumbrances and Interests, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Debtors and the Buyer, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order.  Moreover, effective as of the Closing, the Buyer, its successors and assigns, shall be designated and appointed the Debtors' true and lawful

K&E 12208439.5

attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Buyer, its successors and assigns, to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute in the Debtors' name, for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets which the Buyer, its successors and assigns, shall deem desirable.  The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

14.    On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Assets, as such Encumbrances may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances or Interests in or against the Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or Interests that the person or entity has with respect to the Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Assets prior to the Closing, and the Buyer is authorized to file such documents after Closing.

15.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

16.    All of the Debtors' interests in the Assets to be acquired by the Buyer under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired by the Buyer under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Buyer.

17.    Except as expressly provided in the Agreement, the Buyer is not assuming nor shall it or any affiliate of Buyer be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate of the Buyer.

18.     Except as otherwise provided in the Agreement, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims against the Assets, if any, as may have been recorded or may otherwise exist.

19.     Except as otherwise expressly provided in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Assets are directed to surrender possession of the Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

20.     Notwithstanding anything to the contrary in this Order or the Agreement, to the extent any of the Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), and if such interest is purchased under the Agreement, the Buyer shall remain subject to the claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the Buyer would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under section 363, as provided for in Bankruptcy Code § 363(o).

*Designated Contracts*

21.     The Assignment and Assumption Agreement is valid and binding, in full force and effect, and enforceable in accordance with its terms.

22.     Subject to the terms of the Agreement, the Assignment and Assumption Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Designated Contracts and the sale and assignment of such agreements to the Buyer, as provided

K&E 12208439.5

for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Bankruptcy Code § § 363, 365, 1123(a)(5)(D) and 1141(c).

23.     The Designated Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Buyer at the Closing, pursuant to Bankruptcy Code § § 363 and 365, subject only to (a) the payment of all cures and/or other payments or actions required to assume and assign the Designated Contracts to the Buyer; and (b) the Buyer's right to exclude Designated Contracts from the definition of Designated Contracts in accordance with the terms of the Agreement.  To the extent the Buyer excludes any Designated Contracts from the definition of Designated Contracts, the Debtors shall file a revised Notice of Assumption, Sale and Assignment of Designated Unexpired Leases and Executory Contracts with the Court and provide proper and adequate notice thereof.

24.     Upon the Closing, in accordance with Bankruptcy Code § § 363 and 365, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Designated Contract.  The Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

25.     Pursuant to Bankruptcy Code § § 365(b)(l)(A) and (B), and except as otherwise provided in this Order, the Debtors shall promptly pay or cause to be paid to the parties to any Designated Contracts the requisite Cure Amounts, if any, set forth in the notice served by the Debtors on each of the parties to the Designated Contracts, except to the extent that a cure amount was amended on the record of the Sale Hearing (the "Cure Amounts"), following the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the notice served by the Debtors, or the amounts set forth on the record of the Sale Hearing, as

the case may be, and the non-debtor parties to the Designated Contracts are forever bound by such Cure Amounts.

26.     All defaults or other obligations under the Designated Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment of the Cure Costs.

27.     Any provision in any Designated Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Designated Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Cost, if any.  No sections or provisions of any Designated Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Designated Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Designated Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Designated Contract.  The non-Debtor party to each Designated Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Buyer shall enjoy all of the rights and benefits under each such Designated Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof.

K&E 12208439.5

28.     The Buyer has satisfied all requirements under Bankruptcy Code § § 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under the Designated Contracts.

29.     The Debtors and its estates shall be relieved of any liability for any breach of any of the Designated Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

30.     In accordance with Section 2.5(b) of the Agreement, the Buyer may designate certain unexpired leases or executory contracts as a Held Contract.  The Debtors shall hold and not reject each Held Contract for the Contract ~~Rejection~~ _Retention_ Period.  During the Contract ~~Rejection~~ _Retention_ Period, the Buyer may direct the Debtors to assume and assign the Held Contract to the Buyer. As soon as practicable after receiving written notice from the Buyer to assume and assign a Held Contract, the Debtors shall take all actions reasonably necessary to assume and assign the Held Contract to Buyer pursuant to Bankruptcy Code § 365.   Any applicable cure cost for the assumption and assignment of a Held Contract shall be paid in accordance with the Agreement. Parties to the Held Contract shall retain their rights to object to such assumption and assignment under Bankruptcy Code § 365.  The Buyer shall compensate the Debtors for "Liabilities," as defined in the Agreement, for the continuation of a Held Contract during the Contract ~~Rejection~~ _Retention_ Period up to and including the date which is five (5) days following the Debtors' receipt of written notice from the Buyer authorizing rejection of the same. ⊕ insert Rdn A

K&E 12208439.5

*Additional Provisions*

31.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

32.    The Buyer has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Agreement, and the Buyer has not purchased any of the Excluded Assets.  Consequently, all persons, Governmental Units (as defined in Bankruptcy Code § § 101(27) and 101(41)) and all holders of Claims, Liens, Interests or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer or the Assets to recover any Claims, Liens, Interests or Encumbrances or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement.  All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Claims, Liens, Interests or Encumbrances or cause of action against the Buyer or the Assets for any liability associated with the Excluded Assets.

33.    The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the Agreement.  Except to the extent the Buyer assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Assets by the Buyer or its affiliates, nor the fact that the Buyer or its affiliates are using any of the Assets previously

24

operated by the Debtors, will cause the Buyer or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Except to the extent expressly included in the Assumed Liabilities, Buyer and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. § § 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Buyer's purchase of the Assets or assumption of the Assumed Liabilities.

34.    Except to the extent expressly included in the Assumed Liabilities, pursuant to Bankruptcy Code § § 105, 363, 1123(a)(5)(D) and 1141(c), all persons and entities, including, but not limited to, the Debtors, the official committee of unsecured creditors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of

the Assets to the Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest against the Buyer or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in accordance with the terms of the Agreement.

35.     The general release set forth in paragraph 10.15 of the Agreement is approved in its entirety.

36.     Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

37.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

38.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

K&E 12208439.5

39.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

40.     Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtors and Buyer thereunder.

41.     This Order and Agreement shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets.

42.     The provisions of this Order are non-severable and mutually dependent.

43.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

44.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close under the Agreement at any time, subject to the terms of the Agreement.  In the

absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Buyer close under the Agreement, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

45.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Designated Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Interests and Encumbrances.  To the extent there are any inconsistencies between the terms of this Order and the Agreement, the terms of this Order shall control, *and if any inconsistencies with the attached term sheet, the term sheet shall control. The term sheet is attached hereto and incorporated in this Order.*

Wilmington, Delaware
Dated: December 13, 2007

*/s/ Kevin Gross*
_____
United States Bankruptcy Judge

*46. The findings with respect to the Committee and its counsel set forth in ¶ 36 of the Final Order the Post Petition Financing, etc., are incorporated herein by reference.*

Rider A

Nothing contained herein shall impact, impair, abridge, alter, or modify the validity, extent or priority of any prepetition or postpetition claims or rights, including those of offset, setoff, recoupment and purchase money security interests if (and only to the extent) any such claims or rights exist of Sprint Nextel Corporation, T-Mobile USA, Inc. d/b/a T-Mobile (f/k/a VoiceStream Wireless Corporation), AT&T Mobility II, LLC f/k/a Cingular Wireless II, LLC and its affiliates including AT&T, Inc., Cellco Partnership d/b/a Verizon Wireless, Alltel Communications, Inc., or EchoStar Satellite L.L.C (collectively, the "Carriers"). Nothing contained in this paragraph is or shall be deemed as granting relief from the automatic stay or other authorization by the Court (to the extent such relief or authorization is necessary to exercise any such rights, remedies or interests) for the Carriers (either individually or collectively) to exercise any such rights, remedies or interests set forth in this paragraph (in each case if and only to the extent such claims or rights exist) or precludes the Debtors or the Buyer from challenging such rights, remedies or interests.

*[handwritten annotations:]*

*the Agreement or the fact that the Closing occurs*

*whether pre-Closing or post-Closing,*

*now or hereafter*

*(collectively, the "Offset Rights")*

*[handwritten paragraph:]*

Furthermore, solely with respect to the Carriers, the Contract Retention Period shall terminate on January 31, 2008. For the avoidance of doubt, (a) all rights are reserved by both the Carriers and the Buyer with respect to any cure and adequate assurance disputes, and nothing contained in this Order, the Agreement or otherwise shall impact such rights; and (b) the sale of Assets shall not be free and clear of the respective Carrier's pre-Closing or post-Closing Offset Rights.

_Rider A continued_

On January 31, 2008, the respective Carrier's agreements shall be deemed rejected unless such Carrier's agreements have been assumed and assigned by order of the Court, which date may be extended by consent of the respective Carrier, it being understood that any motion to assume and assign the Carriers' agreements, or approve a stipulation relating thereto, can be brought on a shortened notice basis.