UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|                          |     |                           |
| ------------------------ | --- | ------------------------- |
|                          | .   |                           |
| IN RE:                   | .   | Chapter 11                |
|                          | .   |                           |
| InPhonic, Inc., et al.,  | .   |                           |
|                          | .   |                           |
| Debtor(s).               | .   | Bankruptcy #07-11666 (KG) |

.........................................................

Wilmington, DE
December 5, 2007
8:00 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtors:               Thomas Califano, Esq.
                               DLA Piper US, LLP
                               1251 Avenue of the Americas
                               New York, NY 10020

                               Jeremy Johnson, Esq.
                               DLA Piper US, LLP
                               1251 Avenue of the Americas
                               New York, NY 10020

                               Neil Glassman, Esq.
                               The Bayard Firm
                               222 Delaware Ave.-Ste. 900
                               Wilmington, DE 19899

                               Mary Augustine, Esq.
                               The Bayard Firm
                               222 Delaware Ave.-Ste. 900
                               Wilmington, DE 19899

For The Creditors Committee:   Kurt Gwynne, Esq.
                               Reed Smith, LLP
                               1201 Market St.-Ste. 1500
                               Wilmington, DE 19801

2

                                    Claudia Springer, Esq.
                                    Reed Smith, LLP
                                    1201 Market St.-Ste. 1500
                                    Wilmington, DE 19801

For AT&T:                           Christopher D. Loizides, Esq.
                                    Loizides, P.A.
                                    Legal Arts Building
                                    1225 King St.-Ste. 800
                                    Wilmington, DE 19899

For Adeptio:                        Anup Sathy, Esq.
                                    Kirkland & Ellis, LLP
                                    200 East Randolph Dr.
                                    Chicago, IL 60601

                                    David Agay, Esq.
                                    Kirkland & Ellis, LLP
                                    200 East Randolph Dr.
                                    Chicago, IL 60601

                                    Robert Brady, Esq.
                                    Young Conaway Stargatt
                                    & Taylor, LLP
                                    The Brandywine Building
                                    1000 West St., 17th Fl.
                                    Wilmington, DE 19899

For T-Mobile:                       Francis Monaco, Jr. Esq.
                                    Womble Carlyle Sandridge
                                    & Rice
                                    222 Delaware Ave.-Ste.1501
                                    Wilmington, DE 19801

For Sprint Nextel:                  Brett D. Fallon, Esq.
                                    Morris James, LLP
                                    500 Delaware Ave.-Ste. 1500
                                    Wilmington, DE 19801

                                    David I. Swan, Esq.
                                    McGuire Woods, LLP
                                    1750 Tysons Blvd.-Ste. 1800
                                    McLean, VA 22102

For Spanco Systems:                 Richard Riley, Esq.
                                    Duane Morris, LLP
                                    1100 N. Market St.-Ste. 1200
                                    Wilmington, DE 19801

For Cellco-Verizon Wireless:    Bonnie Glantz Fatell, Esq.
                                Blank Rome, LLP
                                Chase Manhattan Centre
                                1201 Market St.-Ste. 800
                                Wilmington, DE 19801

For the U.S. Trustee:           Richard L. Schepacarter, Esq.
                                Office of the United States
                                Trustee
                                844 King St.-Ste. 2700
                                Wilmington, DE 19801
(Via Telephone)

For The Creditors Committee:    Timothy McGary, Esq.
                                Timothy McGary, Attorney at Law
                                10500 Sager Ave.
                                Fairfax, VA 22030

                                Gaston Loomis, Esq.
                                Reed Smith, LLP
                                1201 Market St.-Ste. 1500
                                Wilmington, DE 19801

                                Robert Simons, Esq.
                                Reed Smith, LLP
                                1201 Market St.-Ste. 1500
                                Wilmington, DE 19801

For AOL, LLC:                   Tiffany Cobb, Esq.
                                Vorys Sater Seymour
                                & Pease, LLP
                                52 East Gay St.
                                Columbus, OH 43216

For AT&T:                       Paul Rosenblatt, Esq.
                                Kilpatrick Sotckton, LLP
                                1100 Peachtree St.-Ste. 2800
                                Atlanta, GA 30309

Audio Operator:                 Sherry Johnson

Transcribing Firm:              Writer's Cramp, Inc.
                                6 Norton Rd.
                                Monmouth Jct., NJ 08852
                                732-329-0191


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1           THE CLERK:  Please rise.

2           THE COURT:

3           Good morning, everyone.  You may be seated.  Thank

4  you.  Good morning, Mr. Glassman.

5           MR. GLASSMAN:  Good morning, Your Honor.  It is early

6  and we thank you very much for seeing us.  I think we thank you

7  for seeing us at this time.

8           THE COURT:  I think so.  Of course.  You're welcome,

9  Mr. Glassman.

10          MR. GLASSMAN:  We filed a Second Amended Agenda early

11  today, Your Honor and there are motions of the Debtor and -- as

12  well as the Committee has a motion and objections.  What we

13  would propose is to just go in the order and start with the

14  D-I-P financing --

15          THE COURT:  Yes.

16          MR. GLASSMAN:  -- and take it from there.

17          THE COURT:  That's what I'd like, too.  Thank you.

18          MR. GLASSMAN:  Thank you, Your Honor.

19          THE COURT:  You're welcome.  Good morning,

20          Mr. Califano.

21          MR. CALIFANO:  Good morning, Your Honor.  Thank you

22  for accommodating us in your schedule and taking us so early

23  today.

24          THE COURT:  Well, I appreciate counsel's being here,

25  too.  I mean I know what extra effort it takes to -- for an 8

1  o'clock hearing.

2        MR. CALIFANO:  Well, I got to stay at the lovely

3  Double Tree last night, so.

4        THE COURT:  Okay.

5     (Laughter)

6        MR. CALIFANO:  Your Honor, we -- the Debtor -- the

7  Debtor they're between two parties, have tried to facilitate a

8  settlement, and unfortunately, we have not been able, and we're

9  not able to report today to Your Honor that we have reached a

10  settlement.  We believe that everybody's put a lot of work into

11  it.  We have made ourselves available through the weekend.

12  Proposals have gone back and forth.  We've tried to throw a

13  proposal in, even though we're not either the, you know, the

14  seller or the buyer.  I mean, we're not -- we don't have the

15  authority obviously.

16        THE COURT:  Right.

17        MR. CALIFANO:  We don't have anything to give, nor do

18  we have anything to ask, but we have tried to facilitate it.

19  And unfortunately, I am sorry to report to Your Honor that as

20  of today, we don't have a resolution.  I don't believe that

21  that means between now and the 13th, which is the next time

22  we're scheduled to be before Your Honor, we won't have a

23  resolution.  And I'm hopeful that we will.

24     I will report to Your Honor with respect to the

25  negotiations that we have been able to not finalize, but

1  negotiate with Adeptio a preliminary term sheet that we're

2  working on.  There has some -- there is some open issues that

3  we're continuing to discuss that would provide for some post-

4  closing financing that would lead to a -- hopefully to an

5  ultimate resolution of these cases.  We have not resolved it.

6  I'm very, though, optimistic that the open issues will be

7  resolved and that that will ensure that at the Sale Hearing,

8  when we bring this on hopefully as an amendment to the D-I-P,

9  that post-closing there will be some assurance that the case

10  will not be administratively insolvent and there will be some

11  funds to deal with some of the post-closing issues.

12      So Adeptio is here in the Courtroom, but, Your Honor, we

13  believe -- and that's good news.  And that's a step forward, I

14  believe, and that's significant progress because absent that,

15  obviously we don't have any post-closing financing or ability

16  to go forward.

17      Your Honor, we also would like to report to you that the

18  Debtor is, while still losing money, is performing much better

19  post-petition, and we've finally got, you know, some indication

20  of the results from November.  Much better than had been

21  anticipated.

22          THE COURT:  Good.

23          MR. CALIFANO:  So while we're still losing money, the

24  company has shown that some of the efforts that we've laid out

25  in the first day affidavit and some of the other pleadings, the

1  changes that we made to the operations have shown some positive

2  results.

3      More good news is the fact that the sale process -- and I

4  was handed a report from Lazard this morning tracking the

5  process.  The sale process has shown some results.  They sent

6  out 244 proposals -- you know, solicitations.  We received 20

7  non-disclosure agreements; 17 were executed and fully

8  negotiated.  Seventeen potential bidders received access to the

9  data room and actually went in and looked at it.  We have three

10  buyers who are currently in the data room as -- and have not

11  declined to go forward and are still actively in the process.

12  And we have received one indication of interest.  As Your Honor

13  may recall, under the bid procedures, 5 days after a potential

14  bidder obtains access to the data room, they're supposed to

15  give us an indication of interest, indicating whether they

16  would in fact -- you know, non-binding, but would in fact,

17  having done due diligence, go forward and give an offer which

18  potentially could be a qualifying bid.

19      So we have one of those indications of interest in our

20  possession now, and we believe that is not only a logical buyer

21  because it is a competitor of the Debtor, but it's also a

22  funded logical buyer because they, in fact, are backed by a

23  substantial private equity firm.  We can't, for obvious

24  reasons, get into the identify of that buyer --

25          THE COURT:  Of course, no, of course not.

1            MR. CALIFANO:  -- but that is good news.  And, you
2    know, I like to get as much good news to the Court as possible.
3    And we're hopeful and optimistic that some of the -- one of the
4    three that are still in the data room might also give us an
5    indication of interest.  And I believe, Your Honor, that that
6    shows that the process is working.
7            You know, obviously, this is a Debtor who is in extremis.
8    No one will dispute that it is, I think as you would call it, a
9    melting ice cube.  But I believe that in that context it shows
10   some promise.
11           What I'd like to talk -- do today, Your Honor, I would
12   ask, Your Honor, that we deal with the D-I-P Motion first
13   because we need the money.  We need the money today to go
14   forward.  And I would also ask Your Honor to continue the Bid
15   Procedures Motion to Reconsider -- Motion to Reconsider Bid
16   Procedures and the Motion to Dismiss.  And the reason why, Your
17   Honor, is while the negotiations have gone slowly and
18   painfully, going forward with the D-I-P, in my opinion, and I
19   know the committee has objections to the D-I-P, doesn't harm
20   anyone.  It allows us to get through the next 8 days where we
21   have to be back in front of Your Honor on the 13th.  It
22   preserves the status quo.  There are issues with some of the
23   provisions, we can go through them, but at least we have a case
24   going forward.
25           The Motion to Reconsider -- or the Motion to Dismiss

1  obviously kills the case; kills any chance of a settlement, any

2  chance of a negotiation, any chance of recovery for the

3  Unsecured Creditors, however slim that may be.  It affects the

4  Debtor as a going concern, it obviously ends that.  It harms

5  Adeptio as a Secured Creditor because it affects the value of

6  their collateral.  And it harms 400 people who tomorrow will be

7  out of work and will have unpaid wages.

8      So Your Honor, I believe that it's like the Committee is

9  standing here with a gun to their own head saying if we don't

10  get what we want, we're going to pull the trigger, or we're

11  going to ask Your Honor to pull the trigger.  I'm just asking

12  Your Honor to put that off and not allow them to pull the

13  trigger because it's going to harm everyone including

14  themselves.  So Your Honor, I would ask that we just go forward

15  with the D-I-P Motion, deal with the objections, we have our

16  witnesses, but that the Motion to Reconsider and that the

17  Motion to Dismiss be put off.  And with that, Your Honor, I'd

18  like to start with our case on the D-I-P Motion.

19          MR. GWYNNE:  Your Honor, may we respond to that first?

20          THE COURT:  Yes, you may, Mr. Gwynne, certainly.  One

21  other thing, may I get a copy of the newly-amended agenda?

22  Thank you, Ms. Augustine.  Thank you.

23      (The Court receives document)

24          THE COURT:  Good morning.  Thank you.

25          MR. GWYNNE:  Good morning, Your Honor, Kurt Gwynne

1    from Reed Smith on behalf of the Official Committee of

2    Unsecured Creditors, along with Claudia Springer.  With --

3              THE COURT:  Good morning, Mr. Gwynne.

4              MR. GWYNNE:  Thank you, Your Honor.  With respect to

5    the bid procedures, I believe Mr. Simons is on the phone.  In

6    light of the relatively fast pace of this case, we've have to

7    fractionalize things more than we otherwise would have so --

8              THE COURT:  Understood.

9              MR. GWYNNE:  -- he can address that.  But with respect

10   to the Motion to Dismiss, Your Honor, and the -- that not going

11   forward while the D-I-P goes forward, if Your Honor may recall,

12   when we had a hearing with Your Honor on our Motion to Shorten

13   Notice, it was important that the two be heard together, and I

14   think Your Honor agreed and that's why you scheduled the Motion

15   to Dismiss to be heard the same time as the D-I-P Motion.

16        To say that the D-I-P Motion prejudices nobody going

17   forward is untrue for several reasons.  One is contrary to

18   statements that were made to Your Honor at the First Day

19   Hearing and contrary to statements that were made to Your Honor

20   at one of the discovery hearings, there's a release in there of

21   prior lenders.  In addition, Your Honor, the Debtor grants

22   Adeptio an adequate protection lien -- a replacement lien as

23   adequate protection for its pre-petition liens.  The Debtor has

24   stipulated in our stipulation of facts that it's going to lose

25   at least $25 million between the petition and the sale hearing.

1  So Your Honor, under 507(b), to the extent the Court grants

2  adequate protection and it turns out that the adequate

3  protection is not in fact adequate and there is a diminution in

4  someone's claim, well then they come back and they assert a

5  507(b) super priority claim.  We are very concerned about that,

6  Your Honor.  We've been concerned about that from the beginning

7  of the case and that's why we wanted this hearing to go forward

8  at the same time as the D-I-P.

9      I've spoke with Mr. Califano as late as I think 9 o'clock

10  last night, and at no time did he tell me he was even going to

11  seek to continue this.  We're here prepared to go forward.  We

12  think that the two have to go forward together.  We made a

13  settlement offer, not this Monday but the prior Monday, to

14  Adeptio.  When we were in Your Honor's Chambers before, I

15  mistakenly indicated that we had received an offer -- a

16  counter-offer from Adeptio.  In fact, what we had received was

17  something from the Debtor who was trying to broker a deal, but

18  it was something the Debtor sent without authority.  We didn't

19  in fact get anything from Adeptio until yesterday.  Your Honor,

20  that's 8 or 9 days after we made our offer in this expedited

21  case.  There was plenty of time to try to resolve this.  We

22  think that it's unlikely that it's going to be resolved in

23  light of what we did see yesterday that took, you know, 8 or 9

24  days to put together.

25      In addition, Your Honor, we don't want this to go forward

1    on the same process as the Sale Hearing.  There are 363(m) and

2    other potential issues that we don't want to deal with.  We

3    want the issue of dismissal to be resolved now, and if we

4    prevail, fine, but if we don't, we want to have the option to

5    at least be able to seek relief, you know, in an Appellate

6    Court.  And we wouldn't have time to do that if we have to go

7    forward at the same time as the Sale Hearing.

8         For those reasons, Your Honor, you know, we would request

9    that we go forward with our motion today for the reasons that

10   Your Honor gave us the hearing on the same day as the D-I-P.

11        THE COURT:  Thank you, Mr. Gwynne.

12        MR. GWYNNE:  Thank you.

13        THE COURT:  Well, you know, I'm always reluctant to

14   indicate before parties have had a change to argue where I am

15   on a particular motion.  But I've had a lot of papers

16   obviously, and I've had an opportunity to make a careful

17   review.  And I must say that I will not be prepared to approve

18   the proposed D-I-P financing.  Now, I don't know if the parties

19   would like to discuss the possibility of an interim, another

20   interim order very much tailored, which the Court might find

21   acceptable, to give the parties an opportunity to negotiate or

22   if we must proceed to the hearing on the final order.  But if

23   that's the case, I can't imagine that I'll hear anything this

24   morning which will change my mind.  So I just want to say that

25   in conjunction with the argument over whether or not we proceed

13

1  with the Motion to Dismiss because if we're going to proceed to

2  a Final D-I-P Order Hearing and it's denied, that makes a huge

3  difference, obviously, on the Motion to Dismiss and the outcome

4  of that.  So I don't know if the parties would like a recess to

5  discuss this, Adeptio in particular, or if everyone is

6  determined just to proceed.

7         MR. CALIFANO:  Your Honor, if I could just have a very

8  brief period of time to --

9         THE COURT:  Certainly you may.  I --

10        MR. CALIFANO:  -- consult with the D-I-P lender and

11  decide whether it's --

12        THE COURT:  Yes.

13        MR. CALIFANO:  -- interim or whether we should go

14  forward.

15        THE COURT:  Yes, Mr. Califano.

16        MR. CALIFANO:  Thank you.

17        THE COURT:  That's certainly acceptable.  And I'll be

18  in Chambers, and when you're ready, just let us know.

19        MR. CALIFANO:  All right, thank you.

20        THE COURT:  Thank you, Counsel.

21     (Court in recess)

22        THE CLERK:  Please rise.

23        THE COURT:  Thank you, Counsel, you may be seated.

24  Mr. Califano.

25        MR. CALIFANO:  Your Honor, thank you for your

1  indulgence of the time.

2        THE COURT:  Of course.

3        MR. CALIFANO:  Your Honor, we have a proposal.  Under

4  the existing -- and I think this doesn't affect anybody rights

5  and keeps everyone going forward while we try to negotiate and

6  try to get a resolution here.  Your Honor, we have an

7  availability of approximately 450,000 under the existing order

8  that authorized some $10 million in financing.

9        THE COURT:  Okay.

10       MR. CALIFANO:  Currently, as I said before, the

11  Debtor's actually operating a little better than we expected.

12  There was a request for some 352,000, and I'm told the Debtor

13  makes a request once a week.  So the current draw request is

14  352,000.  Thus, under the order that Your Honor entered in the

15  original D-I-P financing from the first day, there is

16  availability to allow the Debtor to stay in business.  Adeptio

17  has agreed not to press for the final order today, and what we

18  would like to do is come back, Your Honor, allowing the Debtor

19  to operate through that period, early next week on the final

20  D-I-P Motion and the other motions that are on for today.

21       THE COURT:  Okay.  Let me hear -- good morning.

22       MS. SPRINGER:  Good morning Your Honor, Claudia

23  Springer for the Committee.

24       THE COURT:  Welcome, Ms. Springer.

25       MS. SPRINGER:  Thank you, Your Honor.  I want to get

1    some clarification because I just want to make sure I

2    understand what Mr. Califano is saying.  Under the original

3    interim D-I-P order, with which we do have issues Your Honor --

4            THE COURT:  I know.

5            MS. SPRINGER:  -- as you know from --

6            THE COURT:  Yes.

7            MS. SPRINGER:  -- reading the papers we filed, it's my

8    understanding from what he just said that the $10 million that

9    was approved under the terms of the interim D-I-P, that's the

10   10 million that has not yet been -- it has not -- the D-I-P has

11   not yet reached that limit and there's $400,000 remaining to

12   get to the 10 million, is that correct?

13           THE COURT:  Correct.  That's my understanding.  It's

14   450,000.

15           MR. CALIFANO:  450,000, Your Honor.

16           MS. SPRINGER:  Okay.  So there won't be any borrowing

17   that will exceed that $10 million amount, is that my

18   understanding?

19           MR. CALIFANO:  That is correct, Your Honor.

20           THE COURT:  Thank you, Mr. Califano.

21           MS. SPRINGER:  Okay.  Well, you know, the Committee's

22   view is, as you know, we are still opposed to many of the terms

23   in the interim order.

24           THE COURT:  Yes, I do know that.

25           MS. SPRINGER:  It's still our view that

1  notwithstanding the continuation of the D-I-P, we would still

2  like to go forward today on the Motion to Dismiss.

3       THE COURT:  Well, I think there may be some benefit to

4  giving the parties a little bit more time.  I don't know that

5  it's going to benefit anyone to kill the case.  And this is a

6  situation where it seems to me that the Court is in a position

7  to do no harm to the case by allowing the proposal to further

8  fund from the -- under the present interim order for an

9  additional period of time.  I have not been, obviously, a party

10  to the negotiations, and I don't want to be a party to the

11  negotiations, but -- so I don't know just how impossible it may

12  be or difficult it may be to finally reach some resolution.

13  But I'm hopeful that my message to Adeptio that the proposed

14  financing is unacceptable and is far from acceptable may help

15  in these negotiations, and it not, then we're back here next

16  week and I will proceed with all the pending motions.

17       MS. SPRINGER:  Your Honor, I guess I would have a

18  couple of comments --

19       THE COURT:  Please.  Please.

20       MS. SPRINGER:  -- and it's more in the nature of

21  questions really --

22       THE COURT:  Okay.

23       MS. SPRINGER:  -- because I don't want to understand.

24  As Your Honor knows, in the current Interim D-I-P Order, there

25  are numerous provisions in there that the Committee found

1  objectionable.

2          THE COURT:  Yes.

3          MS. SPRINGER:  And among them were the avoidance

4  actions that were available for the diminution in the value of

5  the collateral.  I'm not talking about the -- because I know

6  the interim order did not permit the lien on the avoidance

7  actions; that was reserved for the final order.  But there was

8  still the ability of the D-I-P lender to attach the avoidance

9  actions, as I understand it, for the diminution of value.

10         THE COURT:  Yes.

11         MS. SPRINGER:  To the extent that this additional

12  lending were to cause a diminution in value, I would like the

13  interim order to provide that the avoidance actions are not

14  available for purposes of the super priority claim caused by

15  the diminution in value.  So in other words, you know, they can

16  lend the additional $450,000, but to the extent there's a

17  diminution in value, they can't look to the avoidance actions

18  to cover that gap.  And we'll get to the other issues as well.

19      Obviously, we have issues with the 506(c) waiver and all

20  kinds of --

21         THE COURT:  Yes.

22         MS. SPRINGER:  -- other stuff --

23         THE COURT:  Yes, Ms. Springer.

24         MS. SPRINGER:  -- but this is real dollars that could

25  affect the Unsecured Creditors, but I don't think they should

1  be entitled to.  Because as I said in my papers, I think this

2  whole post-petition lending is really for only one party's

3  benefit, and that's Adeptio so that Adeptio can ultimately can

4  acquire the company in a sound and operating condition.

5        THE COURT:  I understand your position, Ms. Springer,

6  and my view is that of $10 million, we're talking about a $10

7  million interim order, we're talking about $352,000 in

8  addition.  And the Court, of course, contemplated the

9  possibility that all $10 million would have been used by now.

10  So I think the best course of action at this point is to

11  reserve all of your arguments until we come back here sometime

12  -- and I'll check the schedule -- early next week, and we can

13  address all of these issues at the same time.  I think that's

14  probably going to be the most fruitful way for the parties,

15  hopefully, to reach a a resolution.  And if not, then we will

16  proceed certainly fully when we return.

17        MR. CALIFANO:  Your Honor --

18        THE COURT:  In other words, no one is making

19  additional rule --

20        MS. SPRINGER:  I understand.

21        THE COURT:  -- any additional rulings.

22        MR. CALIFANO:  Your Honor, if I may --

23        THE COURT:  Yes, Mr. Califano, you may.

24        MR. CALIFANO:  -- in the interest of reaching a

25  resolution, can you -- would Your Honor be willing to let us

1   know what in particular in the financing is troublesome so that

2   we can focus on those issues?

3          THE COURT:  Yes, yes, I certainly would.  And I think

4   -- you know, I think it makes sense to do that.  And I must

5   say, really most of the Committee's concerns are the Court's

6   concerns as well, in the context of Adeptio's position within

7   the case, and that is the liens on the avoidance actions, the

8   failure for the financing to provide for the orderly wind-down

9   of the case which you indicated earlier to be addressed and

10  hopefully was going to be addressed before the Court when you

11  returned.  But I think it has to be addressed in the context of

12  the final order.

13         MR. CALIFANO:  Yes, Your Honor.

14         THE COURT:  The Section 506 waiver.  I'm also

15  concerned about the limited time for the Unsecured Creditors

16  Committee to investigate liens and timing of the transaction.

17  Now, just let me interrupt my listing to say that, you know,

18  I'm hopeful that there would be some give and take on these

19  concerns.  And I don't mean to foreclose -- I'm not ruling

20  today.  These are my concerns, and I would hope that the

21  parties would be able to address a global resolution of all of

22  these issues.  The provision granting immediate automatic

23  relief from the automatic stay in the event of a default.  The

24  Court is readily accessible in an emergency, and, you know, I

25  get hearings on a very expedited basis, and I don't think that

1  provision is necessary.  And a number of events of default

2  provisions.

3          MR. CALIFANO:  Okay, thank you, Your Honor.

4          THE COURT:  Which I'm not going to specify, but I want

5  to give some room to the parties --

6          MR. CALIFANO:  Understood, Your Honor.

7          THE COURT:  -- to try and discuss all these issues.

8          MR. CALIFANO:  And I appreciate that.

9          THE COURT:  And I'm concerned that maybe that hasn't

10  been fully -- the parties haven't taken full advantage ogf the

11  time and ought to certainly, now fully understanding the

12  Court's reluctance to enter a Final D-I-P Order in the nature

13  that it was presented.

14          MR. CALIFANO:  Thank you, Your Honor.

15          THE COURT:  Yes.  Mr. Gywnne?

16          MR. GWYNNE:  Yes, thank you, Your Honor.  Your Honor,

17  we had a stipulation of facts that was governing the hearing on

18  November 30th --

19          THE COURT:  Yes.

20          MR. GWYNNE:  -- and when the hearing was continued

21  till today, that was with Adeptio and the Debtor's agreement

22  that that stipulation would still govern for this hearing.

23          THE COURT:  Correct.

24          MR. GWYNNE:  And the same would have to be true going

25  forward, otherwise we would have to take discovery between now

1  and the next hearing.  So is Your Honor ordering --

2          THE COURT:  Yes.

3          MR. GWYNNE:  Okay.

4          THE COURT:  Yes.

5          MR. GWYNNE:  And with respect to -- and Your Honor, we

6  understand what you're saying, and we're proceeding that way,

7  and we will, like we have been, do everything we can in good

8  faith to try resolve it, but I do want to make clear one thing.

9  We do believe that Unsecured Creditors would actually be better

10 off if this case were dismissed for the following reasons.

11         THE COURT:  Okay.

12         MR. GWYNNE:  With respect to employees, Your Honor, in

13 a UCC sale, employees don't have to lose their jobs.  In fact,

14 they may know less what's going on than they do in a bankruptcy

15 case.  With respect to parties to executory contracts,

16 contracts can be assigned pursuant to State law, assuming the

17 Debtor cures all it's defaults, and the party to the contract

18 wants it to be assumed.

19     What the problem here, Your Honor, is that the cost of a

20 process that benefits only Adeptio is being borne by the

21 Unsecured Creditors at the same time the Unsecured Creditors

22 are receiving no distribution.  With respect to that diminution

23 claim, Your Honor, that I mentioned earlier, the Debtor

24 stipulated that it's going to lose at least $25 million from

25 the petition to the sale closing, and because they gave a

1  replacement lien to Adeptio and it has no other assets, it's a

2  replacement lien on the same assets as the D-I-P, by definition

3  Adeptio will come back and argue there's been a $25 million

4  diminution and that it has a super priority admin claim under

5  507(b).  The Debtor doesn't have the money to pay that.

6      Where would the -- the only possible way the Debtor could

7  raise funds to do that would be to pursue avoidance actions

8  against the Unsecured Creditors.  So in a case where we're not

9  getting anything, in a case where the sale process is set up to

10 benefit Adeptio, the cost of it would be borne by the Unsecured

11 Creditors.  There are other examples of it, too, and in

12 addition to the things Your Honor mentioned --

13     THE COURT:  The fees are another concern, by the way,

14 I don't know if I raised those.

15     MR. GWYNNE:  Thank you.  Yeah, the fees, the loan fees

16 and professional fees, and again, all for things that are

17 benefitting Adeptio.  But we also have the fundamental problem

18 that Chapter 11 shouldn't be used for their sole benefit, and

19 there should be a distribution to Unsecured Creditors or they

20 should do their foreclosure sale.  And the irony is the only

21 real people that get hurt if this case is dismissed would be

22 the professionals.  And yet we as the professionals for the

23 Committee feel very strongly that if this can happen, if what

24 they're doing in this case is permissible, then Unsecured

25 Creditors and Unsecured Creditors Committee have no bargaining

1 power and really no influence and probably no real seat at the

2 table in any other Chapter 11 case.  And that's why we're

3 willing, frankly, take the risk to answering our partners why

4 we have an uncollectible receivable that gets bigger every time

5 this is continued.  But we think that fundamentally, that's a

6 very important issue as well, Your Honor.

7            THE COURT:  Well, it's a very important issue to the

8 Court as well, Mr. Gwynne, I can assure you.  And it's really

9 what is largely prompting my refusal to enter a final order in

10 the nature it's been presented.  And what I'm hoping, it's hard

11 to say, it's hard to forecast whether the Committee will or

12 will not be, or the Creditor -- Unsecured Creditors will or

13 will not be better off if the case is dismissed today.  And I

14 would just say that if you are as excellent a negotiator as you

15 are an advocate, then I'm confident that perhaps you can come

16 back here with a resolution that will benefit the Unsecured

17 Creditors Committee.

18            MR. GWYNNE:  I hope that's the case, Your Honor.

19 We're open to that, and the reality is we would prefer that.

20            THE COURT:  And I think all the papers have been filed

21 that need to be filed, unless -- I just can't imagine what else

22 would need to be said at this point, so it really is a matter

23 of negotiation.

24            MR. GWYNNE:  Yes, thank you, Your Honor.

25            THE COURT:  You're welcome.

1          MR. CALIFANO:  Your Honor, and this is just

2   clarification --

3          THE COURT:  Please.

4          MR. CALIFANO:  And Mr. Agay reminded me, And I want to

5   thank him.  There is some language issues, there's an

6   interpretation issues.  There is no intent -- and we're going

7   to clarify this language and do whatever we need to do to make

8   this crystal clear.

9          THE COURT:  Prior lender release?

10         MR. CALIFANO:  I don't want to argue about what the

11  language says.

12         THE COURT:  No.

13         MR. CALIFANO:  If there's an ambiguity, we'll resolve

14  it, we just want to let you know our original intent.

15         THE COURT:  Yes.

16         MR. CALIFANO:  And our intent, no one's -- there's no

17  intent to release the prior lenders, so whatever we need to do

18  to fix that, I just want to make it clear there's no intent.

19  And there's also no intent for them to purchase avoidance

20  proceedings of people who aren't going to being employed --

21  related to people who aren't going to be employed by the Debtor

22  -- by Adeptio post-confirmation -- post-sale, I'm sorry.  So

23  we're gonna make that clear.  So I don't argue about the

24  language, those are two things that have been pointed out in

25  the papers as misrepresentations.  There really may be arguably

1  ambiguities, but there's no intent to make a misrepresentation,

2  and we will straighten that out as part of this addressing the

3  Court's concerned.

4         THE COURT:  Excellent.

5         MR. CALIFANO:  We'll address whatever ambiguity there

6  may be, but there's no intent that those things will be done.

7         THE COURT:  Thank you, Mr. Califano.

8         MR. CALIFANO:  Thank you, Your Honor.

9         THE COURT:  So I think we are now -- Mr. Monaco, did

10  you wish to be heard?

11         MR. MONACO:  Good morning, Your Honor.

12         THE COURT:  Good morning.

13         MR. MONACO:  All right, Your Honor, Frank Monaco for

14  T-Mobile.

15         THE COURT:  Yes.

16         MR. MONACO:  Your Honor, T-Mobil and several other

17  carriers have objections or reached out to D-I-P lender and

18  Debtor.  And there was some proposed language that was

19  generally satisfactory to the carriers, with the exception that

20  they did not want to put anything in the order that would

21  reflect that they do not intend to prime our lien.  The

22  carriers have either security interest in inventory or rights

23  of set off in recoupment.  We wanted to make it absolutely

24  clear that the lender was not intending to prime those rights.

25  And it's my understanding that for whatever reason, the D-I-P

1  lender's somewhat reluctant to use the word prime, but it's

2  willing to make a statement on the record they do not intend to

3  prime our security interest or rights of set-off or recoupment.

4  So that's what we're looking for on the record today.  As far

5  as -- and that goes for the final hearing as well, the Final

6  D-I-P Order.

7        THE COURT:  Okay, thank you, Mr. Monaco.  I think that

8  -- here's what I'm going to do.  I'm not going to ask anybody

9  to make commitments today.  I think that what I would like the

10 parties to do is continue to negotiate, reach a resolution of

11 all of these objections, and hopefully when we can come back

12 next week, early next week, we'll be able to have a full

13 accommodation of all interests.  So let me now insist that

14 anyone make statements on the record at this point, and we'll

15 leave it until next week.  Now, I have time on Tuesday at

16 2 p.m., and I assume that Tuesday still allows the Debtors to

17 operate within that additional interim D-I-P money.

18        MR. CALIFANO:  Yes, it does.

19        THE COURT:  Okay.  Does that time work for everyone?

20 I know there are an awful lot of people here.

21        MR. CALIFANO:  I'll move some things, Your Honor.

22        THE COURT:  You can't --

23        MR. CALIFANO:  I will.

24        THE COURT:  I mean, you're --

25        MR. CALIFANO:  Nothing I can't cancel.

1          THE COURT:  Okay.  Thank you, Mr. Califano.  Then we

2    will be back on Tuesday, December 11th at 2 p.m., and you have

3    sufficient time, I think, to reach a resolution.  And if not,

4    then we'll proceed with the hearing on all the motions that are

5    scheduled for today.  Anything further?

6          MR. CALIFANO:  Thank you, Your Honor.

7          THE COURT:  Thank you, Counsel.  We will stand to

8    recess then.

9       (Court adjourned)

10

11                    CERTIFICATION
12   I certify that the foregoing is a correct transcript from the
13   electronic sound recording of the proceedings in the above-
14   entitled matter.
15

16   *Lewis Parham*                    12/13/07
17   _____         _____
18   Signature of Transcriber              Date