IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INPHONIC, INC., et al.,[1] | Case No. 07-11666 (KG) |
| | Jointly Administered |
| Debtors. | |
| | Proposed Hearing Date: December 20, 2007 at 3:00 p.m. |
| | Proposed Objection Deadline: December 19, 2007 at 4:00 p.m. |

**DEBTORS' MOTION FOR AN ORDER: (I) APPROVING THE
CONFORMED TERM SHEET BY AND AMONG THE DEBTORS,
ADEPTIO INPC FUNDING, LLC AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS AND (II) AUTHORIZING THE
ABANDONMENT OF CERTAIN PREFERENCE CLAIMS PURSUANT
TO BANKRUPTCY CODE SECTION 544**

InPhonic, Inc., et al., the above-captioned debtors and debtors in possession (the "Debtors"), by their attorneys, DLA Piper US LLP and The Bayard Firm, hereby move (the "Motion") this Court for an order (i) pursuant to Rules 2002, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a conformed term sheet settling certain litigation pending in this Court and providing the framework for a plan of liquidation (the "Term Sheet") by and among the Debtors, Adeptio INPC Funding, LLC ("Adeptio") and the Official Committee of Unsecured Creditors (the "Committee", and collectively, the "Parties"), and (ii) pursuant to sections 105(a) and 554(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 6007(a) authorizing the abandonment of the

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

Debtors' interest in certain preference claims under Bankruptcy Code section 547. In support thereof, the Debtors respectfully state as follows:

## BACKGROUND

1. On November 8, 2007 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. The Debtors continue to possess their property and to manage their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

3. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 cases. On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors.

4. On the Petition Date, the Debtors filed the Motion of the Debtors pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement, subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors sought the sale of substantially all of their assets to Adeptio, the Debtors prepetition lender and secured creditor.

5. Also, on the Petition Date, the Debtors filed a Motion for Entry of Interim and Final Orders (I) Authorizing and Approving Postpetition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expenses Status; (II) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing, Pursuant to Section 105, 361, 362, 363 and 364 of the Bankruptcy

Code and Federal Rules of Bankruptcy Procedure 2002 and 4001(c) and (d) (the "DIP Motion").

6. The Committee objected to approval of the Sale Motion and DIP Motion. In addition, the Committee filed various motions (collectively, the "Committee Motions") contesting the relief sought in these bankruptcy cases including, but not limited, to:

- Motion of the Official Committee of Unsecured Creditors for an Order (i) Dismissing (or Converting) Debtors' Bankruptcy Cases Pursuant to Section 1112(b) of the Bankruptcy Code or, Alternatively, (ii) Compelling the Trustee to Abandon Fully-Encumbered Estate Property Pursuant to Section 554(b) of the Bankruptcy Code;

- Motion of Official Committee of Unsecured Creditors Seeking Reconsideration of Court's Order (a) Approving Bid Procedures Relating to Sale of Substantially all of the Debtors' Assets; (b) Scheduling A Hearing to Consider the Sale and Approving the Form and Matter of Notices; (c) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, including Notice of Proposed Cure Amounts; Approving Expense Reimbursement Provision; and (e) Granting Related Relief; and

- Emergency Motion of the Official Committee of Unsecured Creditors for an Order (I) Postponing the Sale Hearing Currently Scheduled for December 13, 2007, and (II) Extending the Investigation Period.

7. At the hearing on the DIP Motion and Sale Motion on December 13, 2007, after intensive discussions, the Committee, the Debtors, and Adeptio reached a global settlement on the Committee's various objections and motions, including the Committee Motions, allowing for entry of final orders approving the Sale Motion (the "Final Sale Order") and the DIP Motion (the "Final DIP Order"). The settlement is reflected in the Term Sheet that was approved and incorporated into the Final Sale Order. The terms of the Term Sheet control in the event of any inconsistencies between it and the DIP Order or the Final Sale Order. An executed copy of the Term Sheet, which has been conformed to reflect the interlineations attached to the Final Sale

order is annexed hereto as Exhibit A.[2]

## JURISDICTION

8. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and of the APA. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9. The statutory predicates for the relief requested herein are Bankruptcy Rules 2002, 6004 and 9019 of the Bankruptcy Code sections 105(a) and 554(a).

## RELIEF REQUESTED

10. By this Motion, the Debtors seek entry of an order, pursuant to Bankruptcy Rule 9019(a), approving: (a) the Term Sheet by and among the Parties, pursuant to Bankruptcy Rules 2002, 6004 and 9019, settling certain open matters before this Court and providing for funding a plan of liquidation, and (ii) authorizing the abandonment of the Debtors' interest in certain preference claims under Bankruptcy Code section 547.

### A. The Bankruptcy Court should approve the Term Sheet.

11. The Term Sheet is the result of prolonged, contentious, arms' length negotiations by and among the Parties. The salient terms of the Term Sheet are summarized as follows:[3]

- Upon closing, Adeptio will: (a) pay all allowed professional fees accrued through the effective date of a plan of liquidation, up to the aggregate amount budgeted from such fees in the DIP Budget, but not to exceed $1,100,000 ("Professional Funding"); (b) fund the administrative costs of maintaining the Debtors' estates post-closing in an amount up to $200,000 ("Wind Down Funding"); (c) fund allowed professional fees related to investigation, commencement, prosecution and litigation of appropriate claims of the Estate through a Litigation Trust to be formed pursuant to the Plan through a senior secured loan of up to $500,000 (the "Investigation Funding").

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Term Sheet.

[3] To the extent of any inconsistencies between the summary and the Term Sheet, the Term Sheet shall govern.

- Adeptio shall have an allowed deficiency claim of $20,000,000 on account of its prepetition secured claim and DIP funding claims.

- Upon the confirmation of a chapter 11 plan, Adeptio shall contribute up to $500,000 for the sole purpose of making distributions to allowed priority claims pursuant to the terms and conditions of section 1129(a)(9) of the Bankruptcy Code (the "Priority Claims Funding").

- The Debtors shall promptly release all Bankruptcy Code section 547 preference claims which are not being sold to Adeptio.

- Adeptio assumes liability for all obligations in connection with the GAH Fee, which shall be allowed in a total amount of $1,300,000, including the amount already paid to GAH to date of closing.

- Claims against certain individuals and parties (whether or not an officer of director) with an on-going, post-closing business relationship with the Debtors' post-closing business, which are considered Purchased Assets under the APA.

- In connection with the purchase of Avoidance Actions or litigation claims purchased under the APA, Avoidance Actions against the putative defendants shall be deemed released as of the closing of the sale under the APA.

- The Committee's investigation period shall be deemed to have expired on December 13, 2007 and Adeptio shall be deemed to have a valid, first priority secured claim against the Debtors' estates and shall be released from any and all claims as of the sale closing.

12. Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "[C]ompromises are favored in bankruptcy" because they minimize the costs of litigation and further the parties' interest in expediting administration of a bankruptcy estate. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996), citing Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993).

13. A bankruptcy court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement. The court can give weight to the trustee's or debtor in possession's informed judgment that a compromise is fair and equitable. The court can

also give weight to the competency and experience of counsel who support the settlement. Six West Retail Acquisition, Inc. v. Loews Cineplex Entertainment Corp. (In re Loews Cineplex Entertainment Corp.), 286 B.R. 239, 248 n.13 (S.D.N.Y. 2002).

14. As reiterated by numerous courts, "a bankruptcy court is not required to hold a mini-trial on the merits of the settlement. Instead, it is charged with 'canvassing the issues to determine whether the settlement falls below the lowest point in the range of reasonableness.'" In re Enron Corp., 2003 U.S. Dist. LEXIS 1383 at*6 (S.D.N.Y. Jan. 31, 2003) (affirming bankruptcy court order approving settlement) (quoting In re Interstate Cigar Co., 240 B.R. 816, 822 (E.D.N.Y. 1999)); Abeles v. Infotechnology (In re Infotechnology), 1995 U.S. App. LEXIS 39883 at *4-5 (2d Cir. Nov. 9, 1995) (the court should not substitute its business judgment for that of the debtor in possession).

15. In determining whether to approve a settlement of a controversy, the bankruptcy court should consider all facts surrounding the controversy and the likelihood of the debtor's success on the merits as well as the cost, complexity and timing of litigation. See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); In re Drexel Burnham Lambert Group, 960 F.2d 285, 292 (2d Cir. 1992). Of paramount importance is the interest of creditors in maximizing their recovery. See Nellis v. Shugrue, 165 B.R. 115, 122 (S.D.N.Y. 1994). A bankruptcy court does not, however, engage in an independent investigation into the reasonableness of the proposed settlement, but instead generally defers to the judgment of the debtor in possession provided there is "a legitimate business justification for the settlement." See Martin, 91 F.3d at 395. "Where the Debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's

conduct." <u>Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

16. The Court already approved the Term Sheet as part of the Final Sale Order. In an abundance of caution, the Debtors seek approval of the conformed Term Sheet. First, the Term Sheet provides for the prompt sale of substantially all of the Debtors' assets and avoids any further diminution or harm to the Debtors' estates. Using their sound business judgment, the Debtors have determined that a sale of substantially all of the Debtors' assets pursuant to the Sale Motion and APA is the best way to prevent this continued drain on the Debtors' estates. By virtue of the Term Sheet, the Debtors have resolved the disputes by and among the Parties and will allow the sale to go forward.

17. The settlement evidenced by the conformed Term Sheet provides significant benefit to the Debtors' estates, including:

- Resolving the Committee's objections to the DIP Motion and Sale Motion and the outstanding Committee Motions, thus permitting the Debtors to close the proposed transaction;

- Providing for significant concessions on behalf of Adeptio, which allow for payment of administrative and priority claims post-closing;

- Funding a plan of liquidation and litigation trust to pursue claims against third parties; and

- Providing the framework for the terms of a plan of liquidation providing for the orderly winddown of these chapter 11 cases.

18. Second, using their sound business judgment, the Debtors have determined that the terms and conditions contained in the Final Sale Order are the best, if not only, course of action given the attending circumstances. Approving this conformed Term Sheet will permit the Debtors to move forward with the proposed sale and take advantage of these benefits.

19. As the Court is well aware, the Parties have struggled to find a consensual

resolution to this litigation that would permit the Debtors to sell their assets in an orderly fashion and provide for the resolution of these chapter 11 cases pursuant to a confirmed plan. The early stages of the Debtors' cases have been marked by a significant amount of contention and litigation between the Parties. The litigation between the Parties has significantly impaired the value of the Debtors' estates. The settlement embodied by the Term Sheet resolves the litigation between the parties and allows the Debtors to move forward with the sale and provides the framework for a plan of liquidation.

**B.      The Bankruptcy Court should authorize the Debtors' abandonment of the Debtors' interest in certain Bankruptcy Code section 547 claims.**

20.     The settlement set forth in the Term Sheet provides that certain preference claims pursuant to Bankruptcy Code section 547 will be transferred to Adeptio at closing of the sale, as contemplated by the Sale Motion and APA (the "Transferred Claims"). The Transferred Claims include claims pursuant to Bankruptcy Code section 547 against the non-Debtor parties to the executory contracts and unexpired leases being assumed by the Debtors and assigned to Adeptio pursuant to the APA. In connection with the purchase of Avoidance Actions or litigation claims purchased under the APA, Avoidance Actions against the putative defendants shall be deemed released as of the closing of the sale under the APA. All remaining preference claims pursuant to Bankruptcy Code section 547 not transferred to Adeptio (the "Remaining Claims") shall be released by the Debtors pursuant to the Term Sheet. Other claims and causes of action of the Debtors will be transferred to the Trust pursuant to the Plan.

21.     Bankruptcy Code section 554(a) provides, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The Court may direct the debtor and any other necessary party to perform any act that is necessary for the consummation

of the Plan. 11 U.S.C. § 1142(b).

22. In addition, Bankruptcy Code section 105(a) provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See 11 U.S.C. § 105(a). One leading commentator on bankruptcy law characterizes section 105 as:

> an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction....

2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 (L. King, 15th rev. ed. 2002).

23. The right to abandon property of the estate is quite broad under Bankruptcy Code section 554. In Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494 (1986), the United States Supreme Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." Midlantic, 474 U.S. at 507. The Court qualified that statement, however, with the following footnote, which is commonly referred to as the "Midlantic exception."

> This exception to the abandonment power vested in the trustee by § 554 is a *narrow* one. It does not encompass a *speculative or indeterminate* future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from *imminent and identifiable harm.*

Id. at 507 n.9 (emphasis added).

24. Relying on the Midlantic exception, this Court, in In re Unidigital, Inc., 262 B.R. 283 (D. Del. 2001), allowed abandonment of commercial printing equipment, holding: "[s]ince the Midlantic decision, the majority of courts have read the exception to abandonment *narrowly*

by disallowing abandonment *only where there is an imminent and identifiable harm to the public health or safety.*" 262 B.R. at 286 (emphasis added).

25. In the instant case, the Debtors' proposed abandonment of the Remaining Claims fits squarely within the statutory requirements of Bankruptcy Code section 554, and is consistent with the Supreme Court's ruling in <u>Midlantic</u> and this Court's decision in <u>Unidigital</u>.

26. The abandonment and waiver of the Remaining Claims is an essential aspect of the settlement embodied in the Term Sheet reached between the Debtors, Adeptio and the Committee. The benefits of the settlement far outweigh any potential benefit that could be achieved by pursuing the Remaining Claims.

## **CONCLUSION**

27. The Term Sheet and abandonment of the Remaining Claims provides substantial benefit to the Debtors' estates while at the same time allowing for the prompt resolution of these chapter 11 cases.

## **NOTICE**

28. Notice of this Motion has been provided to: (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Richard Shepacarter); (b) counsel to Adeptio Funding LLC: Young Conway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn.: Robert S. Brady) and Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (Attn.: David A. Agay), (c) proposed counsel to the Committee, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne), and (d) all parties having filed requests for notices in the Debtors chapter 11 cases. The Debtors submit that such notice constitutes good and sufficient notice of this Motion and all proceedings to be held thereon, and

that no other or further notice need be given.

### STATEMENT PURSUANT TO LOCAL RULE 1001-1(B)

29. Pursuant to District Local Rule 7.1.2(a), incorporated by reference into Bankruptcy Local Rule 1001-1(b), the Debtors waive their right to file a brief in support of the Motion because there are no novel issues of law presented in this Motion.

### NO PREVIOUS MOTION

30. No previous motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court (a) enter an order approving this Motion, (i) approving the Term Sheet; and (ii) authorizing and deeming all the Debtors' interests in the Remaining Claims; and (b) grant such other and further relief as is just and proper.

Date: December 17, 2007
      Wilmington, Delaware

Respectfully submitted,

**THE BAYARD FIRM**

By: _____
Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395

and

**DLA PIPER US LLP**
Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York  10020
Telephone:    (212) 335-4500
Facsimile:    (212) 335-4501

Counsel for Debtors and Debtors in Possession