## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| INPHONIC, INC., *et al.,* | : | Case No. 07-11666 (KG) |
|  | : | Jointly Administered |
|  | : |  |
| Debtors. | : | **Objection Deadline: January 2, 2008 at 4:00 p.m.** |
|  | : | **Hearing Date: January 9, 2008 at 10:00 a.m.** |

### APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY REED SMITH LLP, *NUNC PRO TUNC* AS OF NOVEMBER 16, 2007, AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 1103(a) AND 328(a) AND FED.R.BANKR.P. 2014

The Official Committee of Unsecured Creditors (the "Committee") files this Application to Employ Reed Smith LLP, *Nunc Pro Tunc* as of November 16, 2007, as Counsel for the Committee Pursuant to 11 U.S.C. §§ 1103(a) and 328(a), and Fed.R.Bankr.P. 2014, and states as follows:

### FACTUAL BACKGROUND

1.    On November 8, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtors continue to operate their business and manage their properties as debtors-in-possession. By order dated November 9, 2007, the Court approved the joint administration of these cases for procedural purposes only.

2.    No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

3.    On November 16, 2007, the United States Trustee for Region 3 (the "U.S. Trustee") conducted a formational meeting of the Debtors' unsecured creditors for the purpose of forming an official committee of unsecured creditors (the "Formational Meeting") and appointed the Committee pursuant to 11 U.S.C. § 1102.

4.    At the Formational Meeting, the Committee determined that it needed the assistance and advice of counsel to perform the Committee's duties under Section 1103(c) of the Bankruptcy Code.  The Committee selected Reed Smith LLP ("Reed Smith") as its proposed counsel for the Committee pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code.

5.    The Committee selected Reed Smith because its attorneys have experience in cases and proceedings in or related to Title 11 of the United States Code, and the Committee has confidence in Reed Smith's ability to provide superior legal services during these bankruptcy cases.

## RELIEF REQUESTED

6.    The Committee seeks to employ Reed Smith as counsel for the Committee, on an hourly-rate basis, plus properly reimbursable expenses and out-of-pocket costs as an expense of administration and/or in accordance with any order of this Court, subject to approval by this Court.

## BASIS FOR RELIEF REQUESTED

7.    To assist the Committee with its statutory rights and duties under Section 1103(c) of the Bankruptcy Code, a Committee may retain counsel.  See 11 U.S.C. §§ 1103(a) and 328(a). Specifically, Section 1103(a) provides, in relevant part, that "[a]t a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys . . . to represent the committee." 11 U.S.C. § 1103(a).

8.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that "a committee appointed under section 1102 of this title, with the court's approval, may employ or

authorize the employment of a professional person under section . . . 1103 of this title, . . . on any reasonable terms and conditions of employment, including on a retainer, [or] on an hourly basis." 11 U.S.C. § 328(a).

9.      These bankruptcy cases have progressed very quickly.  The Debtors filed on November 8, 2007 and almost immediately sought approval of the sale of substantially of the Debtors' assets to take place on December 13, 2007.  Moreover, the Debtors obtained a truncated 25-day period for the Committee to investigate claims or defenses related to Adeptio, the Debtors' prepetition lender, post-petition lender, and stalking horse purchaser.  The Committee filed (a) a motion to dismiss or convert these cases or to compel abandonment, (b) a motion for expedited discovery, (c) a motion to reconsider the bidding procedures, (d) a motion to extend the investigation period and continue the sale hearing, (d) an objection to the retention of the Debtors' investment banker, and (e) an objection to the Debtors' proposed post-petition financing.  In addition, proposed Committee counsel (together with its proposed financial advisor) has been conducting discovery with respect to the motion to dismiss and the investigation concerning Adeptio.  In the short time since the Petition Date, the Committee has attended 4 hour hearings and participated in 2 other telephonic hearings.  Moreover, the time necessary to review the results of a comprehensive computer conflicts check takes a significant amount of time in light of the size of Reed Smith (which has approximately 1430 lawyers and over 22 offices) and the fact that the Debtors have a relatively large number of creditors and other parties in interest.  Therefore, the Committee requests that this Court approve this Application as of November 16, 2007, in order to compensate Reed Smith for work performed prior to the submission of this Application to the Court.  See, e.g., F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.), 844 F.2d 99, 103 (3d Cir.) (not approving application nunc pro tunc

where counsel delayed for seven months before filing employment application), cert. denied, 488

U.S. 852 (1988); In re Arkansas Co., 798 F.2d 645, 649-50 (3d Cir. 1986) (not approving

application nunc pro tunc where counsel for committee delayed for thirteen months before filing

employment application); In re United Companies Financial Corp., 241 B.R. 521, 526 (Bankr.

D.Del. 1999) (MFW) (noting that "the UST recognizes that in large chapter 11 cases, given the

press of urgent matters to be determined in the early days of the chapter 11 proceeding, the

preparation and filing of retention applications for all professionals may be delayed" and adding

that if such applications are filed within approximately 30 days, the "the UST will not ordinarily

object.") (emphasis added).

### Reed Smith's Eligibility for Employment as Counsel for the Committee

10.    Pursuant to Section 1103(b) of the Bankruptcy Code, "an attorney . . . employed

to represent a committee appointed under section 1102 of this title may not, while employed by

such committee, represent any other entity having an adverse interest in connection with the

cases.  Representation of one or more creditors of the same class as represented by the committee

shall not per se constitute the representation of an adverse interest."  11 U.S.C. § 1103(b).

11.    Pursuant to Section 328(c), a bankruptcy court may deny allowance of

compensation for services and reimbursement of expenses of a professional person employed

under Section 1103 of this title if such person is not disinterested or if such person represents or

holds an interest adverse to the estates with respect to the matter on which such professional

person is employed.  See 11 U.S.C. § 328(c); 11 U.S.C. § 101(14) (defining "disinterested").

12.    These cases are likely to raise complex issues and the Committee will require

counsel with extensive experience in insolvency and bankruptcy cases, as well as specialized

expertise in commercial litigation and business law.

13.     The Committee seeks to retain Reed Smith as counsel because of its attorneys'
extensive experience and knowledge in the field of debtors' and creditors' rights and business
reorganizations under chapter 11 of the Bankruptcy Code and because of its attorneys'
substantial experience in commercial litigation and business law.

14.     Kurt F. Gwynne, one of the Reed Smith partners who will be responsible for Reed
Smith's representation of the Committee locally, is admitted to practice law, and is a member in
good standing of the bar in the State of Delaware, the Commonwealth of Pennsylvania, the State
of New Jersey, the United States Court of Appeals for the Third Judicial Circuit, the United
States District Court for the District of Delaware, the United States District Courts for the
Eastern and Western Districts of Pennsylvania, the United States District Court for the Northern
District of Texas, the United States District Court for the Eastern District of Michigan, the
United States District Court for the Central District of Illinois, and the United States District
Court for the District of New Jersey.  Mr. Gwynne is a former law clerk to the Honorable Bruce
Fox of the United States Bankruptcy Court for the Eastern District of Pennsylvania.
Mr. Gwynne has been practicing bankruptcy law since 1992 and has extensive experience in
representing creditors committees in bankruptcy cases pending in the District of Delaware as
well as in cases in other jurisdictions.  Recently, he represented the creditors committee in the
following cases filed in this District:  Adva-Lite; Nellson Nutraceutical, Inc.; Birch Telecom,
Inc.; aaiPharma, Inc.; Women First Healthcare, Inc.; Rouge Industries, Inc.; Birmingham Steel;
Slater Steel Corporation; and Atlantic Gulf Communities, Inc.  Mr. Gwynne has also represented
publicly-traded debtors in possession, Chapter 11 trustees, secured creditors, and unsecured
creditors in large bankruptcy cases in many jurisdictions.  Mr. Gwynne has served as a Chapter

11 trustee in cases pending in this District (TelePad Corporation and Quintus Corporation) and as

an examiner (CF Capital Assets, LLC).

15.    The Committee believes that the retention of Reed Smith is in the best interests of

the Debtors' estates and its creditors.

16.    The professional services that Reed Smith will render to the Committee so that

the Committee can execute its duties under Section 1103(c) include, without limitation, the

following:

> a.   consulting with the trustee or Debtors concerning the administration
> of these cases;
>
> b.   investigating the acts, conduct, assets, liabilities, and financial
> condition of the Debtors, the operation of the Debtors' businesses and the
> desirability or the continuance of such businesses, and any other matter
> relevant to the cases or to the formulation of one or more plans;
>
> c.   evaluating, with the Debtors, any offers to purchase the assets or
> businesses of the Debtors and participating in the sale process;
>
> d.   participating in the formulation of one or more plans, advising those
> represented by such committee of such committee's determinations as to
> any plan formulated, and collecting and filing with the court acceptances
> or rejections of any such plan;
>
> e.   if appropriate, requesting the appointment of one or more trustees or
> examiners under Section 1104 of the Bankruptcy Code;
>
> f.   asserting claims and causes of action on behalf of the Committee and
> the Debtors, if the Debtors fail to assert such claims; and
>
> g.   performing such other services as are in the interest of the Debtors'
> creditors.

17.    The regular hourly rates of Reed Smith's attorneys and paralegals are set forth in

the unsworn declaration of Kurt F. Gwynne, Esquire, a partner in Reed Smith, pursuant to

Fed.R.Bankr.P. 2014(a) (the "Declaration"), which is attached as Exhibit A.

18.    The Committee is informed that the hourly rates set forth in the Declaration are the rates that Reed Smith regularly charges its clients.  As stated in the Declaration, the rates are set at a level designed to fairly compensate Reed Smith for the work of its attorneys and paralegals and to cover fixed and routine overhead expense.  As also stated in the Declaration, it is Reed Smith's policy to charge its clients in all areas of practice for all other expenses incurred in connection with each client's case.  The expenses charged to clients include, without limitation, long-distance telephone charges, facsimile and other charges, mass mailing postage, messenger and express mail charges, special or hand delivery charges, document processing, photocopying charges, filing fees, travel expenses, expenses for "working meals," the catering of meetings and business meetings, computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime and late night transportation, where necessary to meet deadlines or client expectations.  As stated in the Declaration, Reed Smith will charge the Debtors' estates for the expenses incurred by Reed Smith on behalf of the Committee in a manner and at rates consistent with charges made generally to Reed Smith's other clients and in a manner consistent with the Local Bankruptcy Rules.

19.    Reed Smith intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules and orders of the Court, including without limitation any order permitting interim compensation pursuant to Section 331 of the Bankruptcy Code.

### Reed Smith is Disinterested and Does Not Hold or Represent
### An Interest Adverse to the Debtors' Estates

20.    Section 101(14) of the Bankruptcy Code currently defines a "disinterested person" as a person that—

(A)    is not a creditor, an equity security holder, or an insider;

(B)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtors; and

(C)    does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtors or for any other reason.

11 U.S.C. § 101(14).

21.    As described in the attached Declaration, Reed Smith has been adverse to InPhonic in 3 matters that have concluded.  In these bankruptcy cases, Reed Smith represents TUSC a/k/a Broech Corporation with respect to an executory contract TUSC entered into with InPhonic prior to these bankruptcy cases.  TUSC is owed prepetition amounts based on services it rendered to InPhonic.  InPhonic has been paying TUSC postpetition and will either assume or reject this contract.  Section 1103(b) provides that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest."  11 U.S.C. § 1103(b).  Reed Smith has discussed the representation of TUSC in these cases with the Office of the U.S. Trustee.  To the best of the Committee's knowledge, Reed Smith has not represented the Debtors, any other creditors, equity security holders, or any other parties-in-interest, or their respective attorneys, in any matters relating to the Debtors or their estates.

22.    Pursuant to Bankruptcy Rule 2014, Reed Smith's "connections" with the Debtors, their creditors, and other parties in interest are set forth in the Declaration and Exhibit 2 thereto. The names of the entities searched for purposes of disclosing Reed Smith's connections are set forth on Exhibit 1 to the Declaration.  As stated in the Declaration, in order to check and clear

potential conflicts of interest in these cases, Reed Smith researched its client database, to

determine whether Reed Smith had any relationships with the following entities:

      a.     the Debtors;

      b.     the Debtors' officers and directors;

      c.     the Debtors' lender;

      d.     the Debtors' 20 largest unsecured creditors; and

      e.     certain other parties in interest.

23.     As set forth in the Declaration, Reed Smith asserts that it is disinterested and does

not hold or represent an interest adverse to the Debtors' estates.

## Notice

24.     Notice of this Application has been given, pursuant to Del.Bankr.LR. 2014-1(b),

9013-1 and 2002-1(b) to (i) the Committee members; (ii) the Debtors; (iii) counsel for the

Debtors; (iv) counsel to the Debtors' postpetition lender; (v) the Office of the United States

Trustee; and (vi) all parties that have requested notice pursuant to Fed.R.Bankr.P. 2002(i).

## No Prior Request

25.     No previous request for the relief sought in this Application has been made to this

Court or any other court.

WHEREFORE, the Committee respectfully requests that this Court enter an order, in the form submitted by the Committee, authorizing the Committee to employ Reed Smith as its counsel on an hourly-rate basis, plus properly reimbursable expenses and out-of-pocket costs as an expense of administration, subject to approval by this Court, to represent the Committee in these Chapter 11 bankruptcy cases.

Dated:  December 17, 2007

Respectfully Submitted,

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

Mr. Ashoka Tankala
S.V.P. – Finance and Corporate
Infinite Computer Solutions, Inc.
5 Choke Cherry Road
Suite 320
Rockville, MD  20850

Committee Chair