IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INPHONIC INC., *et al.*[1] | ) | Case No. 07-11666 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**DECLARATION OF DANIEL POLSKY IN SUPPORT OF THE APPLICATION FOR
AUTHORIZATION TO RETAIN DELOITTE FINANCIAL ADVISORY SERVICES LLP
*NUNC PRO TUNC* TO NOVEMBER 19, 2007 AS FINANCIAL ADVISORS FOR THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

DANIEL POLSKY, deposes and says:

1.      I am a Director of the firm of Deloitte Financial Advisory Services LLP

("Deloitte FAS"), which has an office located at One World Financial Center, New York, New

York 10281. I make this declaration in support of the application (the "Employment

Applications") for authorization to retain Deloitte FAS as financial advisors to the official

committee of unsecured creditors (the "Committee") of the above-captioned debtors (the

"Debtors"). The Committee seeks to retain Deloitte FAS *nunc pro tunc* to November 19, 2007

pursuant to the terms and conditions set forth in the engagement letter (the "Engagement

Letter"), attached hereto as Exhibit 1.

2.      The statements set forth in this Declaration are based upon my personal

knowledge, upon information and belief, and upon client matter records kept in the ordinary

course of business that were reviewed by me or other personnel of Deloitte FAS or its affiliates.

---

[1]    The Debtors are as follows: (a) InPhonic, Inc. (b) CAIS Acquisition, LLC, (c) CAIS Acquisition II, LLC, (d)
SimIPC Acquisition Corp., (e) Star Number, Inc., (f) Mobile Technology Services, LLC, (g) FON Acquisition,
LLC, (h) 1010 Interactive, LLC.

3.    Except as set forth herein or as set forth on the attached Exhibit 2, to my knowledge based on reasonable inquiry, (1) Deloitte FAS, and the partners, principals, and directors of Deloitte FAS (the "Deloitte FAS Partners/Directors") that are anticipated to provide the services as part of the engagement team on the engagement for which Deloitte FAS is to be retained in these chapter 11 cases (the "Committee Engagement Team"), and the employees of Deloitte FAS who are anticipated to provide the services as part of the Committee Engagement Team, do not hold or represent any interest adverse to any of the Debtors or the Committee with respect to the matters on which Deloitte FAS is to be retained in these chapter 11 cases, and (2) Deloitte FAS and the Deloitte FAS Partners/Directors have no relationship to any of the Debtors, any of the Debtors' significant creditors, other known parties-in-interest in these chapter 11 cases, or to the attorneys that are known to be assisting the Debtors or the Committee in these chapter 11 cases, except as described herein or as set forth on the attached Exhibit 2.

4.    From time to time, Deloitte FAS and its affiliates have provided, currently provide or may currently provide services and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these chapter 11 cases.

5.    As described below, Deloitte FAS has undertaken a search to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals or other entities with significant relationships with the Debtors identified on a schedule provided to Deloitte FAS.

Deloitte FAS and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these chapter 11 cases to certain of the Debtors' creditors, other parties-in-interest, or to attorneys and accountants that are known to us to be assisting the Debtors or various committees. Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte FAS or its affiliates and the Deloitte FAS Engagement Partners/Principals/Directors in matters unrelated to these chapter 11 cases.

6.      Several years ago, Deloitte Tax LLP ("Deloitte Tax"), an affiliate of Deloitte FAS, provided certain sales and use tax-related services to the Debtors. Such services are no longer being provided and there are no agreements with the Debtors to provide ongoing services. A small amount remained payable to Deloitte Tax in connection with these services, and is listed by the Debtors in InPhonics, Inc. Schedule F (Creditors Holding Unsecured Non-priority Claims). Subject to approval of the Employment Application, Deloitte Tax has agreed not to seek recovery of this amount.

7.      To check upon and disclose possible relationships with parties-in-interest in these chapter 11 cases, Deloitte FAS researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant

3

relationships with the Debtors. The identities of these parties in interest were provided to Deloitte FAS by counsel to the Committee.

8.      Despite the efforts described above to identify and disclose Deloitte FAS' connections with the parties-in-interest in these chapter 11 cases, because Deloitte FAS is a nationwide firm with thousands of employees, and because the Debtors are a large enterprise, Deloitte FAS is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte FAS discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

9.      From this internal search, Deloitte FAS has determined that certain relationships should be disclosed as follows.

> a.      Deloitte FAS and/or its affiliates provide services in matters unrelated to these chapter 11 cases to certain of the Debtors' largest unsecured creditors and other affiliated entities listed on Exhibit 2.
>
> b.      Law firms identified on Exhibit 2, including: Chadbourne & Parke, Patton Boggs LLP, DLA Piper US LLP, Reed Smith LLP, and Skadden, Arps, Slate, Meagher & Flom LLP have provided, currently provide and may in the future provide legal services to Deloitte FAS or its affiliates in matters unrelated to these chapter 11 cases, and/or Deloitte FAS and/or its affiliates have provided, currently provide, and may in the future provide services to such firms
>
> c.      In the ordinary course of its business, Deloitte FAS and its affiliates have business relationships in unrelated matters with its principal competitors, including KPMG LLP and Grant Thornton, which together with their affiliates, may be parties-in-interest in these chapter 11 cases. For example, from time to time, Deloitte FAS and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.
>
> d.      Certain financial institutions or their respective affiliates (including Citigroup, Inc.) listed on Exhibit 2 are lenders to an affiliate of Deloitte FAS. Deloitte FAS is a guarantor of such indebtedness. These financial institutions have also financed a portion of the capital and/or

capital loan requirements of various partners and principals, respectively, of Deloitte FAS and its affiliates.

e.       Certain parties-in-interest may be adverse to and/or involved in litigation matters with Deloitte FAS and/or its affiliates in connection with matters unrelated to these chapter 11 cases.

10.       Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte FAS or its affiliates who are anticipated to provide services to the Committee and the United States Bankruptcy Judge presiding in the Cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, and the attorney therefore assigned to these chapter 11 cases.

11.       Except as may be disclosed herein, to the best of my knowledge, Deloitte Tax and the Deloitte Tax Partners/Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax and the Deloitte Tax Partners/Directors are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

12.       As set forth in the Engagement Letter, Deloitte FAS plans to perform various financial advisory services identified therein, subject to approval of the Employment Application.

13.       Deloitte FAS has significant qualifications and experience in performing the scope of work described in the Engagement Letter and has provided similar services to many chapter 11 debtors and creditors' committees.

14.       Deloitte FAS intends to apply to the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the Engagement Letter, the

5

Employment Application and this Declaration, the applicable provisions of the Bankruptcy

Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court of

the District of Delaware, the United States Trustee Guidelines and the Orders of this Court.

15.    Subject to allowance and approval by the Bankruptcy Court, in exchange

for the services hereunder, the professional fees of Deloitte FAS will be based upon a blended

average hourly billing rate of $325 per hour the ("Applicable Rate") for all professional staff.

Deloitte FAS will bill any paralegal and support personnel at $125 per hour.  In addition,

Deloitte FAS has agreed to certain fee caps on a monthly (the "Monthly Caps") and a cumulative

(the "Cumulative Cap") basis.  The Monthly Caps provide that Deloitte FAS may bill the lesser

of actual fees incurred or the Monthly Cap in all months, subject to the provisions below.  The

Monthly Caps are based upon the following schedule: $75,000 for services provided from

November 19, 2007, through December 18, 2007 ("Month 1"), and $50,000 per month,

thereafter.  In the event that actual fees exceed the Monthly Cap in any given month, such excess

may be carried forward and billed in a subsequent month ("Catch-up Billing") in which actual

monthly billing is less than the Monthly Cap.  The Cumulative Cap provides that Deloitte FAS

may bill up to the sum of the Monthly Caps.  In no event can Deloitte FAS' total fees exceed the

Cumulative Cap.  Deloitte FAS will provide a detailed reconciliation in each monthly fee

statement and interim fee application submitted

16.    The Applicable Rate ($325/hr.) charged by Deloitte FAS for the services

provided by its personnel in this matter apply regardless of, among other things, each

professional's level of experience, geographic differentials, and types of services being provided.

17.    In addition, reasonable expenses, including travel, report production, delivery services, and other expenses incurred in providing the services, will be included in the total amount billed.

18.    Deloitte FAS requests that it be permitted to submit monthly invoices for services rendered and expenses incurred. Such invoices will contain reasonable detail consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to these chapter 11 cases. Deloitte FAS requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments.

19.    All payments rendered pursuant to Deloitte FAS' retention by the Committee must be approved by an Order of this Court and based upon the filing by Deloitte FAS of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

20.    Deloitte & Touche has completed a reorganization of some of its business units, including its financial advisory services, tax services, solutions, human capital and outsourcing business functions. This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted. These business functions are now being conducted by entities affiliated with Deloitte & Touche, including Deloitte FAS, Deloitte Consulting LLP ("Deloitte Consulting"), and Deloitte Tax. Accordingly, some services incidental to the tasks to be performed by Deloitte FAS in these chapter 11 cases may be performed by personnel now employed by or associated with Deloitte Tax, Deloitte

Consulting, Deloitte & Touche and/or their respective subsidiaries, including subsidiaries located outside of the United States. The fees and expenses with respect to such services will be included in the fee applications of Deloitte FAS.

21.    Deloitte FAS has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte FAS has no agreement with any nonaffiliated entity to share any compensation earned in these Chapter 11 cases.

Dated: December 12, 2007

Declarant:   Daniel Polsky
Title:   Director

# EXHIBIT "1"

Engagement Letter

WILLIB-56783.1-999921-50001

Deloitte Financial Advisory Services, LLP
1 World Financial Center
New York, NY  10281
USA

Tel: +1 212 436 5668
Fax: +1 212 653 2952
www.deloitte.com

# Deloitte.

December 12, 2007

Official Committee of Unsecured Creditors of Inphonics, Inc.

c/o    Mr. Ashoka Tankala
       V.P. – Finance and Corporate
       Infinite Computer Solutions, Inc.
       5 Choke Cherry Road
       Suite 320
       Rockville, MD  20850
       Committee Chair

Re:  Retention of Deloitte Financial Advisory Service, LLP *In re Inphonics, Inc., et al.*

Dear Committee Members:

This letter, including the General Business Terms attached hereto and made a part hereof, sets forth the terms and conditions of the engagement of Deloitte Financial Advisory Services LLP ("Deloitte FAS" or "we/us") by the Official Committee of Unsecured Creditors of Inphonics, Inc. (the "Committee"), *nunc pro tunc* to November 19, 2007. Deloitte FAS will provide to the Committee the mutually agreed upon services described below with respect to the Chapter 11 case of Inphonics, Inc. and its debtor subsidiaries and/or affiliates[1] (collectively, the "Debtors") consistent with the terms and conditions of this engagement letter.

Deloitte FAS may provide the following services, as may be agreed to by Deloitte FAS and the Committee:

     i)    Assist the Committee in connection with its assessment of the Debtors' cash and liquidity requirements, as well as the Debtors' financing requirements;

    ii)    Assist the Committee in connection with its monitoring of the Debtors' financial and operating performance, including their current operations, monthly operating reports, and other financial and operating analyses or periodic reports as provided by management or the Debtors' financial advisors;

   iii)    Assist the Committee in connection with its evaluation of the Debtors' key employee retention plans, compensation and benefit plans and/or other incentive or bonus plans;

---

[1] The Debtors are as follows: (a) InPhonic, Inc. (b) CAIS Acquisition, LLC, (c) CAIS Acquisition II, LLC, (d) SimIPC Acquisition Corp., (e) Star Number, Inc., (f) Mobile Technology Services, LLC, (g) FON Acquisition, LLC, (h) 1010 Interactive, LLC.

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

iv)    Assist the Committee in connection with its evaluation of the Debtors' business, operational and financial plans, both short-term and long-term, including with respect to actual results versus forecast, capital expenditure requirements, and cost reduction opportunities;

v)    Assist the Committee in connection with its evaluation of the Debtors' statements of financial affairs and supporting schedules, executory contracts and claims;

vi)    Assist the Committee in connection with its evaluation of the Debtors' operating structure, business configuration and strategic alternatives;

vii)    Assist the Committee in connection with its evaluation of restructuring-related alternatives for the Debtors;

viii)    Assist the Committee in connection with the Committee's restructuring or reorganization-related negotiations including analysis, preparation or evaluation of any plan(s) of reorganization proposed by the Debtors, the Committee or a third party;

ix)    Assist the Committee in connection with its analysis of issues related to claims filed against the Debtors including reclamation issues, administrative, priority or unsecured claims, case litigation and contract rejection damages;

x)    Assist the Committee in its evaluation of auction procedures or sale transactions that may take place, including with respect to the Committee's evaluation of bids, establishment of bid procedures, identification of additional potentially interested parties for the Debtors' assets, negotiation of asset purchase agreement provisions including working capital adjustments, valuation issues and other related matters;

xi)    Consistent with the scope of services set forth herein, attend and participate in hearings before the Bankruptcy Court (as defined below);

xii)    Assist the Committee, where appropriate, in its analysis of the books and records of the Debtors in connection with potential for recovery of funds to the estate from voidable transactions including related party transactions, preference payments and unenforceable claims; and

xiii)    Provide such other related services as may be requested in writing by the Committee and as agreed to by Deloitte FAS.

On November 8, 2007 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On November 9, 2007, the Bankruptcy Court entered an order directing the Debtors' cases to be jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On November 16, 2007, the United States Trustee appointed the Committee in accordance with Section 1102 of the Bankruptcy Code. The Committee has requested that when and if necessary Deloitte FAS perform the services described herein and Deloitte FAS has agreed to perform such services when and if such services are necessary and subject to the terms and conditions of this engagement letter. This engagement letter, and Deloitte FAS' obligations and responsibilities relating to this engagement, shall be effective as of November 19, 2007, subject to obtaining Bankruptcy Court approval in the matter *In re*

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

*Inphonics, Inc. et al. Case Numbers 07-11666, 07-11667, 07-11668, 07-11669, 07-11670, 07-11671, 07-11672, 07-11673 (Jointly Administered)* (the "Cases"); provided, however, that, in addition to Deloitte FAS' other rights or remedies, Deloitte FAS may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte FAS reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte FAS' retention by the Committee in the Cases on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of Deloitte FAS as financial advisors for the Committee is not issued by the Bankruptcy Court in the Cases on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte FAS in its sole discretion, or (c) the application of the Committee seeking such order is denied by the Bankruptcy Court in the Cases. In any such event, the Committee hereby agrees to withdraw or amend, promptly upon Deloitte FAS' request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte FAS' services in the Cases.

The Committee acknowledges and agrees that the Debtors' management is responsible for supplying complete and accurate information, representations, and books and records upon which Deloitte FAS will rely in providing our services to the Committee. In addition, we will not audit or otherwise verify the materials provided to us, nor will we provide any assurances concerning the reliability, accuracy or completeness of any materials provided by or on behalf of the Committee, the Debtors' management or any other party, and our services cannot be relied upon to disclose errors or fraud should they exist. We have no responsibility for updating our services. In the event that any tax consultation services are requested by the Committee, such services will require a separate written engagement letter with a separate affiliate of Deloitte FAS.

## *ENGAGEMENT STAFFING AND FEES*

Mr. Daniel Polsky will participate as Engagement Director, maintaining overall responsibility for the engagement on behalf of Deloitte FAS. Mr. Timothy Hurley, Principal, and Mr. Kevin Shea, Senior Manager, will provide field support services and coordinate daily management of the engagement. Other support, technical or otherwise may also be provided by other professionals who may be identified during the course of the engagement.

Subject to allowance and approval by the Bankruptcy Court, in exchange for the services hereunder, the professional fees of Deloitte FAS will based upon a blended average hourly billing rate of $325 per hour (the "Applicable Rate") for all professional staff. We will bill any paralegal and support personnel at $125 per hour. In addition, Deloitte FAS has agreed to certain fee caps on a monthly (the "Monthly Caps") and a cumulative (the "Cumulative Cap") basis. The Monthly Caps provide that Deloitte FAS may bill the lesser of actual fees incurred or the Monthly Cap in all months, subject to the provisions below. The Monthly Caps are based upon the following schedule: $75,000 for services provided from November 19, 2007, through December 18, 2007 ("Month 1"), and $50,000 per month, thereafter. In the event that actual fees exceed the Monthly Cap in any given month, such excess may be carried forward and billed in a subsequent month ("Catch-up Billing") in which actual monthly billing is less than the Monthly Cap. The Cumulative Cap provides that Deloitte FAS may bill up to the sum of the Monthly Caps. In no event can Deloitte FAS' total fees exceed the Cumulative Cap. We will provide a detailed reconciliation in each monthly fee statement and interim fee application submitted.

In addition to professional fees, Deloitte FAS' fee applications will include requests for reimbursement of reasonable expenses, including travel, report production, delivery services, and other costs incurred in providing the services. As a component of such applications, Deloitte FAS will provide descriptions of the services performed, and the related time expended by each professional.

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

In addition, Deloitte FAS will be entitled to compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses) that we may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of Deloitte FAS' performance of these services.

## *OTHER MATTERS*

The financial advisory services to be provided by Deloitte FAS will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants, or other regulatory body. In addition, we will not make any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. Additionally, we do not provide any legal advice; you will be responsible for all legal matters. The financial advisory services to be provided by Deloitte FAS will not include any services that would, if provided, impair our independence for rendering attest services.

The Committee recognizes and acknowledges that by performing the services set forth in this engagement letter, Deloitte FAS is not acting in any management capacity and that the Committee has not asked Deloitte FAS to make, nor has Deloitte FAS agreed to make, any business decisions on behalf of the Committee. All decisions about the business of the Committee or the Debtors remain the sole responsibility of the Committee. By signing this engagement letter, the Committee expressly acknowledges that Deloitte FAS does not guarantee, warrant, or otherwise provide any assurances that the Debtors will restructure successfully.

This engagement letter agreement plus the attached "General Business Terms" incorporated herein, constitute the entire agreement between the Committee and Deloitte FAS regarding the matters referred to herein. Deloitte FAS acknowledges and agrees that there are no other agreements or understanding relating to such subject matter of this letter agreement other than those set forth herein. This engagement letter shall be governed by the laws of the State of New York, and may be executed in multiple counterparts.

No change or modification of this engagement letter shall be valid or binding upon the parties hereto nor shall any waiver of any term or condition in the future be so binding, unless such change or modification or waiver is in writing and signed by the parties hereto.

******************************

4

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it to Dan Polsky at Deloitte FAS. An original is provided for your records. Please call Daniel Polsky at (212) 436-5668 if you have any questions. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

Deloitte Financial Advisory Services LLP

By: _____

Daniel Polsky
Director

Agreed and Accepted on Behalf of the Committee by:

By: _____
Ashoka Tankala
Committee Chairperson

*Company*: Infinite Computer Solutions, Inc.

*Title*: SVP - FINANCE & OPERATIONS

*Date*: 12/17/07

5

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

## GENERAL BUSINESS TERMS

*1.    Services.* It is understood and agreed that Deloitte Financial Advisory Services LLP's ("Deloitte FAS") services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by the Committee. In connection with its services hereunder, Deloitte FAS shall be entitled to rely on all decisions and approvals of the Committee.

*2.    Payment of Invoices.* Invoices should be paid in accordance with any rules, guidelines or administrative orders applicable to the compensation of professionals established in the Cases as defined in this engagement letter.

*3.    Term.* Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of Deloitte FAS' services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) days before the effective date of termination. Deloitte FAS may terminate this engagement upon written notice to the Committee if it determines that (a) a governmental, regulatory, or professional entity (including, without limitation, the AICPA, the PCAOB or the Securities and Exchange Commission), or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte FAS' performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in the composition of the Committee) such that Deloitte FAS' performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, Deloitte FAS will be compensated under the terms of the engagement letter for the services performed and expenses incurred through the effective date of termination.

*4.    Ownership.*

   a)    *Deloitte FAS Technology.* Deloitte FAS has created, acquired or otherwise has rights in, and may, in connection with the performance of services hereunder, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques (including, without limitation, function, process, system and data models); templates; generalized features of the structure, sequence and organization of software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "Deloitte FAS Technology").

   b)    *Ownership of Deliverables.* Except as provided below, upon full and final payment to Deloitte FAS hereunder, the tangible items specified as deliverables or work product in the engagement letter to which these terms are attached (the "Deliverables") shall become the property of the Committee. To the extent that any Deloitte FAS Technology is contained in any of the Deliverables, Deloitte FAS hereby grants the Committee, upon full and final payment to Deloitte FAS hereunder, a royalty-free, fully paid-up, worldwide, non-exclusive license to use such Deloitte FAS Technology in connection with the Deliverables.

   c)    *Ownership of Deloitte FAS Property.* To the extent that Deloitte FAS utilizes any of its property (including, without limitation, the Deloitte FAS Technology or any hardware or software of Deloitte FAS) in connection with the performance of services hereunder, such property shall remain the property of Deloitte FAS and, except for the license expressly granted in the preceding subparagraph, the Committee shall acquire no right or interest in such property. Notwithstanding anything herein to the contrary, the parties acknowledge and agree that (a) Deloitte FAS shall own all right, title, and interest, including, without limitation, all rights under all copyright, patent and other intellectual property laws, in and to the Deloitte FAS Technology and (b) Deloitte FAS may employ, modify, disclose, and otherwise exploit the Deloitte FAS Technology (including, without limitation, providing services or creating programming or materials for other Committees). Deloitte FAS does not agree to any terms that may be construed as precluding or limiting in any way its right to (a) provide consulting or other services of any kind or nature whatsoever to any person or entity as Deloitte FAS in its sole discretion deems appropriate or (b) develop for itself, or for others, materials that are competitive with those produced as a result of the services provided hereunder, irrespective of their similarity to the Deliverables.

*5.    Limitation on Warranties.* THIS IS A SERVICES ENGAGEMENT. DELOITTE FAS WARRANTS THAT IT SHALL PERFORM SERVICES HEREUNDER IN GOOD FAITH. DELOITTE FAS DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

*6.    Proportional Fault.* Deloitte FAS' aggregate liability for any claims, liabilities or expenses relating to this engagement shall not exceed an amount which is proportional to the relative fault that Deloitte FAS' conduct bears to all other conduct giving rise to such claims, liabilities or expenses. The provisions of this Paragraph and Paragraphs 9 and 11(b) shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

*7.    Cooperation.* The Committee shall cooperate with Deloitte FAS in the performance by Deloitte FAS of its services hereunder, including, without limitation, in facilitating the Debtors providing Deloitte FAS with reasonable facilities and timely access to data, information and personnel of the Debtors. The Committee shall be responsible for the performance of its members and agents and for the accuracy and completeness of all data and information provided to Deloitte FAS by the Committee for purposes of the performance by Deloitte FAS of its services hereunder.

*8.    Force Majeure.* Deloitte FAS shall not be liable for any delays or non-performance resulting from circumstances or causes

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the Committee or the Debtors (including, without limitation, entities or individuals under their control, or any of their respective members, officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

**9.    Limitation on Actions.**  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the date of the last payment due to such party hereunder.

**10.  Independent Contractor.**  Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte FAS in respect of the Services. It is understood and agreed that Deloitte FAS is an independent contractor and that Deloitte FAS is not, and will not be considered to be, an agent, partner, or representative of the Committee.

**11.  Confidentiality and Internal Use.**

      a)    The Committee agrees that all services hereunder and Deliverables shall be solely for the Committee's informational purposes and internal use, and are not intended to be and should not be used by any person or entity other than the Committee. The Committee further agrees that such services and Deliverables shall not be circulated, quoted, disclosed, or distributed to, nor shall reference to such services or Deliverables be made to, any person or entity other than the Committee.

      b)    All services and Deliverables in connection with this engagement shall be solely for the Committee's informational purposes and internal use and this engagement does not create privity between Deloitte FAS and any person or party other than the Committee ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte FAS, no third party is entitled to rely in any manner or for any purpose, on the advice, opinions, reports, or other services or Deliverables of Deloitte FAS. In the event of any unauthorized reliance as a result of distribution of the work product by an individual Committee Member, such Committee Member agrees to indemnify and hold harmless Deloitte FAS and its personnel from all third-party claims, liabilities, costs and expenses. Neither the Committee nor the Debtors shall be liable for the acts of any individual Committee Member.

      c)    To the extent that, in connection with this engagement, Deloitte FAS comes into possession of any proprietary or confidential information of the Committee, Deloitte FAS will not disclose such information to any third party without the Committee's consent, except (a) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto, or (b) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte FAS in breach hereof, (ii) is disclosed by the Committee to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to Deloitte FAS on a nonconfidential basis from a source other than the Committee which Deloitte FAS believes is not prohibited from disclosing such information to Deloitte FAS by obligation to the Committee, (iv) is known by Deloitte FAS prior to its receipt from the Committee without any obligation of confidentiality with respect thereto, or (v) is developed by Deloitte FAS of any disclosures made by the Committee to Deloitte FAS of such information.

**12.  Survival and Interpretation.**  The agreements and undertakings of the Committee contained in the engagement letter, together with the provisions of these terms, shall survive the expiration or termination of this engagement. In the event of any conflict, ambiguity, or inconsistency between these terms and the engagement letter, these terms shall govern and control. For purposes of these terms, "Deloitte FAS" shall mean Deloitte Financial Advisory Services LLP and Deloitte FAS Products Company LLC, one of its subsidiaries. The Committee acknowledges and agrees that no affiliated or related entity of Deloitte FAS, whether or not acting as a subcontractor, shall have any liability hereunder to the Committee or any other person and the Committee will not bring any action against such affiliated or related entity in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte FAS are intended third party beneficiaries of these terms, including without limitation, the agreements and undertakings of the Committee contained in the engagement letter and herein. Any affiliated or related entity of Deloitte FAS may in its own right enforce such terms, agreements and undertakings. The provisions of Sections 6, 9, 12, 14 and 16 hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

**13.  Assignment.**  Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, any interests or claims relating to this engagement) without the prior written consent of the other party. Deloitte FAS may, without the consent of the Committee, assign or subcontract its rights and obligations hereunder to (a) any affiliate or related entity or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte FAS.

**14.  Waiver of Jury Trial.**  DELOITTE FAS AND THE COMMITTEE HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS ENGAGEMENT.

**15.  Entire Agreement, Amendment and Notices.**  These terms, and the engagement letter to which these terms are attached,

Mr. Ashoka Tankala
Committee Chairperson
December 12, 2007

including exhibits, constitute the entire agreement between Deloitte FAS and the Committee with respect to this engagement, supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by written agreement signed by the parties. In the event of any conflict, ambiguity, or inconsistency between these terms and the engagement letter to which these terms are attached, these terms shall govern and control. All notices hereunder shall be (i) in writing, (ii) delivered to the representatives of the parties at the addresses first set forth above, unless changed by either party by notice to the other party, and (iii) effective upon receipt.

**16.     *Governing Law and Severability.*** These terms, the engagement letter to which these terms are attached, including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof) except to the extent governed by the U.S. Bankruptcy Code, where applicable. If any provision of such terms or engagement letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

8

**EXHIBIT "2"**

Parties-in-Interest for whom Deloitte FAS LLP or its affiliates has provided or is currently providing services in matters unrelated to these chapter 11 cases or with whom such parties have other relationships including banking relationships.


Alltell Corporation
America OnLine
Cellco Partnership
Chadbourne & Parke
Citibank N.A.
Citicorp Life Insurance Company
Citigroup
DLA Piper US LLP
Fidelity International Limited
Fidelity Investments
FMR Corporation
Goldman Sachs Capital Partners
Google Inc.
GTE Southwest Incorporated
Microsoft Corporation
MSD Capital
Patton Boggs LLP
Reed Smith LLP
SAC Capital Advisors LLC
Skadden Arps Slate Meagher and Flom LLP
Technology Crossover Ventures
Time Warner Inc
Verizon Communications
Verizon Wireless
Vodafone PLC
Yahoo! Inc.
Yahoo Japan Corporation