# EXHIBIT A

LEASE AGREEMENT FOR

# INPHONIC, INC.

### Suite #600

WATERFRONT CENTER
1010 Wisconsin Avenue, N.W.
Washington, DC 20007

C:\WORD DOCUMENTS\REALESTA\1010\INPHON-3.LEA.DOC
DRAFT DATE: 04/18/03

# TABLE OF CONTENTS

Section                                                                                          Page

1.    DEMISED PREMISES ................................................................. 1

2.    TERM ................................................................................ 1

3.    USE ................................................................................. 4

4.    RENT ................................................................................ 4

5.    DEPOSIT ............................................................................. 6

6.(A)  OPERATING EXPENSES (Intentionally Omitted) ............................ 7

6.(B)  REAL ESTATE TAXES (Intentionally Omitted) ............................. 7

6.(C)  CHAR SERVICE COSTS (Intentionally Omitted) .......................... 8

7.    CONSUMER PRICE INDEX ESCALATION (Intentionally Omitted) .......... 8

8.    ASSIGNMENT AND SUBLETTING ........................................... 8

9.    PREMISES IMPROVEMENTS ................................................ 10

10.   ALTERATIONS ............................................................... 12

11.   LIENS ....................................................................... 14

12.   MAINTENANCE BY LESSEE .................................................. 14

13.   SIGNS AND ADVERTISEMENTS ............................................. 16

14.   DELIVERIES AND MOVING OF LESSEE'S PROPERTY ....................... 16

15.   LESSEE'S EQUIPMENT ....................................................... 17

16.   SERVICES AND UTILITIES ................................................... 18

17.   LESSEE'S RESPONSIBILITY FOR DAMAGES/EXPENSES .................... 20

18.   ENTRY FOR INSPECTIONS, REPAIRS, OR INSTALLATIONS .............. 20

- i -

19.   INSURANCE RATING ............................................................................... 21

20.   INDEMNITY AND PUBLIC LIABILITY INSURANCE ........................... 21

21.   WORKER'S COMPENSATION INSURANCE ......................................... 22

22.   ALL RISK COVERAGE INSURANCE ..................................................... 22

23.   LESSEE'S CONTRACTOR'S INSURANCE .............................................. 23

24.   REQUIREMENTS FOR LESSEE'S INSURANCE POLICIES ................... 23

25.   LIABILITY FOR DAMAGE TO PERSONAL PROPERTY AND PERSON ............. 24

26.   DAMAGE TO THE BUILDING AND/OR THE DEMISED PREMISES ................ 24

27.   DEFAULT OF LESSEE ............................................................................. 25

28.   REPEATED DEFAULTS ........................................................................... 26

29.   WAIVER ................................................................................................... 26

30.   SUBORDINATION AND COVENANTS WITH MORTGAGEES ............... 27

31.   CONDEMNATION ................................................................................... 29

32.   RULES AND REGULATIONS ................................................................. 30

33.   RIGHT OF LESSOR TO CURE LESSEE'S DEFAULT ............................ 30

34.   LATE CHARGES ..................................................................................... 30

35.   BANKRUPTCY ........................................................................................ 31

36.   NO PARTNERSHIP .................................................................................. 31

37.   NO REPRESENTATIONS BY LESSOR ................................................... 31

38.   BROKER AND AGENT ........................................................................... 31

39.   WAIVER OF JURY TRIAL ..................................................................... 32

40.   ENFORCEMENT OF LEASE ................................................................... 32

41.    NOTICES ........................................................................... 32

42.    ESTOPPEL CERTIFICATES ........................................... 32

43.    HOLDING OVER ............................................................ 33

44.    RIGHTS RESERVED BY LESSOR ................................. 33

45.    COVENANTS OF LESSOR .............................................. 34

46.    LIEN FOR RENT (Intentionally Omitted) ...................... 35

47.    EFFECTIVENESS OF LEASE ......................................... 35

48.    TRASH SORTING AND ENVIRONMENTAL LAWS ..... 35

49.    PARKING .......................................................................... 36

50.    RECORDATION ............................................................... 36

51.    GENDER ........................................................................... 36

52.    BENEFIT AND BURDEN ................................................. 37

53.    GOVERNING LAW ........................................................... 37

54.    SAVINGS CLAUSE ........................................................... 37

55.    CORPORATE LESSEE ...................................................... 37

56.    JOINT AND SEVERAL LIABILITY .............................. 38

57.    BUSINESS DAY/WORKING DAY ................................... 38

58.    ENTIRE AGREEMENT ..................................................... 38

59.    LESSEE'S REPRESENTATIONS ..................................... 39

60.    HEADINGS ........................................................................ 39

61.    RIGHT-TO-MATCH .......................................................... 39

62.    ROOF-TOP ACCESS ......................................................... 40

## LEASE EXHIBITS

A.      Demised Premises

B-1.    Lessor's Improvements

B-2.    Lessee's Improvements

C.      Rules and Regulations

D.      (Intentionally Omitted)

E.      Corporate Resolution

F.      (Intentionally Omitted)

G.      Lessee's Logo for Specialty Signage

*For 1010 & 1002*

# WATERFRONT CENTER

## LEASE AGREEMENT

THIS LEASE AGREEMENT (hereinafter the "**Lease**") is made and entered into on this _____ day of April, 2003, by and between Waterfront Center Limited Partnership, a District of Columbia limited partnership (hereinafter called "**Lessor**") and Inphonic, Inc., a Delaware corporation (hereinafter called "**Lessee.**")

WITNESSETH, that, for and in consideration of the rents, mutual covenants, and agreements hereinafter set forth, the parties hereto do hereby mutually agree as follows:

### 1.    DEMISED PREMISES

Lessor does hereby lease to Lessee, and Lessee does hereby lease from Lessor, upon the terms and the conditions hereinafter provided, suite 600, (such suite being hereinafter referred to as the "**Demised Premises**") deemed to contain approximately 13,800 square-feet of area, located on the sixth (6th) floor of the office building (currently known as the Waterfront Center) situated at 1010 Wisconsin Avenue N.W., Washington, DC (such building being hereinafter referred to as the "**Building**" and which definition shall also include the four (4) level townhouse situated at 1002 Wisconsin Avenue, N.W., Washington, DC; and which definition shall include the parcel of land associated with the Building currently known as Square 1188, Lot 0118, recorded in the land records of Washington, DC). The Demised Premises is generally outlined on the floor plan(s) attached hereto and made a part hereof as Exhibit "A". The Demised Premises shall not include any of the Building's mechanical, electrical, or equipment closets/rooms, and if any such areas have access doors to/from the Demised Premises, the Lessee shall keep such access clear. The statement of approximate area of the Demised Premises set forth above is not a representation or warranty by Lessor, but is rather an amount agreed upon by Lessor and Lessee. The square footage of the Demised Premises shall not be subject to remeasurement.

### 2.    TERM

(A)    The term of this Lease shall commence on the first (1st) day of December, 2003 (the "**Commencement Date**") subject however, to:  i) the existing occupant/tenant of the Demised Premises vacating same in accordance with its lease, which terminates on October 31, 2003; and  ii) the Lessor delivering the Demised Premises to the Lessee in the "**Deliverable Condition**" (hereinafter defined in section 2(C)2. below). Unless earlier terminated as provided in this Lease, the term of this Lease shall expire on the 30th day of November, 2008 (the "**Termination Date**").

(B)1.    In the event that Lessor shall not be able to give possession of the Demised Premises in the Deliverable Condition to the Lessee on (or before) December 1, 2003 for any reason, then Lessor, its Agent ("Agent" hereinafter defined) and employees shall not be liable or responsible for any claims, damages, or liabilities arising in connection therewith or by reason thereof, nor shall Lessee be excused from its obligations to perform under the Lease.

2.    Notwithstanding the Commencement Date above in 2(A), should the existing occupant/tenant of the Demised Premises vacate the Demised Premises:

(a)    on or prior to October 31, 2003, and the Lessor agrees to terminate that lease with the existing occupant/tenant on or prior to October 31, 2003, then without adjustment to the Termination Date above in 2(A), the "Occupancy Date" may be moved by Lessor to a date earlier than December 1, 2003 (so long as the Lessor is able to give such possession of the Demised Premises to the Lessee in the Deliverable Condition), but in no event shall the Occupancy Date be prior to September 1, 2003; or

(b)    November 1, 2003, then without adjustment to the Termination Date above in 2(A), the "Occupancy Date" may be moved by Lessor to a date after December 1, 2003 (so long as the Lessor is able to give such possession of the Demised Premises to the Lessee in the Deliverable Condition).

3.    By operation of either Lease section 2(B)2. (a) or (b) above, the "**Occupancy Date**" shall be the effective date of Lessor's notice to Lessee (which shall contain a minimum of five (5) days prior notice) and: i) the Lessee shall accept possession of the Demised Premises on the Occupancy Date,; ii) the Commencement Date shall be deemed to be the first (1st) day of the first (1st) full calendar month following the Occupancy Date (only if the Occupancy Date is after December 1, 2003); and  iii) all provisions of this Lease shall also apply to the period of time from the Occupancy Date through the day before the Commencement Date, in addition to applying on and after the Commencement Date.

4.    If the event described in 2(B)1. above does not occur, the Lessee shall accept possession of the Demised Premises on the Commencement Date as stated above in 2(A), and the Occupancy Date and the Commencement Date shall be deemed to be one-in-the-same.

5.    Notwithstanding any of the foregoing, in the event that Lessor is not able to give possession of the Demised Premises to the Lessee in the Deliverable Condition on or prior to March 1, 2004, then the Lessee may propose to terminate the Lease (so long as the Lessee shall not be, nor have been, in default in the performance or observance of any of the terms, provisions, covenants, and conditions of the "Prior Lease" (hereinafter defined) or this Lease beyond any grace period granted in either the "Prior Lease" or the Lease for curing the same) by providing the Lessor with written notice, such notice which must be received by the Lessor during the period of time beginning with March 1, 2004 and ending on March 31, 2005, of Lessee's intent to terminate the Lease.  If after ten (10) business days of Lessor's receipt of Lessee's intent to terminate the Lease (if and only if during the

period of time prescribed above in this paragraph) due to the foregoing, the Lessor is still unable to give possession of the Demised Premises to the Lessee in the Deliverable Condition, the Lease shall be deemed terminated.

(C)1.    In the event Lessee fails to furnish to Lessor information requested by Lessor which is required by Lessor to timely proceed with and complete ordering of materials, preparation and procuring of prices for or for performance of any Improvements, within five (5) working days from the receipt of Lessor's request (oral or written) for information, then any delay by Lessor in completing the Lessor's Improvements specified in Exhibit "B-1" shall not in any manner delay or affect the Commencement Date, including Lessee's obligation to pay Rent from said Occupancy Date as provided in this Lease.

2.    The term "Deliverable Condition" for the purposes of this Lease shall mean substantial completion of the **"Lessor's Improvements"** (hereinafter defined) subject to minor punchlist items (such as carpet base, touch-up and "cutting in" of paint) which allows Lessee to begin placement of its property upon any part of the Demised Premises.

(D)    For the purpose of this Lease, the term "Occupancy Date" and "Commencement Date" shall also mean any extended Occupancy Date and Commencement Date which may be established pursuant to the operation of the provisions of this section of the Lease.

(E)    The term **"Lease Year"** as it appears herein means that period of twelve (12) consecutive calendar months commencing on the first (1st) day of the month in which the Commencement Date (as it may be revised hereunder) occurs and each consecutive twelve (12) month period thereafter, which by operation of Lease section 2(B)2. above, may result in the last Lease-Year being less than twelve (12) months.

(F)1.    Upon the Occupancy Date hereunder, the prior lease between the parties dated February 17, 2000, as amended by that certain Addendum Number One to Lease, dated March 1, 2000; and that certain Addendum Number Two (2) to Lease dated April 24, 2000; and that certain Addendum Number Three to Lease dated May 24, 2002 (collectively, the **"Prior Lease"**); shall be automatically terminated except for those issues which survive such lease.

2.    This Lease granted to Lessee herein may be modified, limited, or terminated by Lessor, in Lessor's sole discretion, if at the period of time beginning on the date of this Lease herein, and ending on the Occupancy Date under this Lease, the Prior Lease shall be in full force and effect and the Lessee shall be in default (beyond any grace period granted in the Prior Lease for curing the same) in the performance or observance of any of the terms, provisions, covenants, and conditions of the Prior Lease. Lessee's failure to be in compliance with this Lease section 2(F)2., shall not create, or in any way give rise to, any rights for Lessee to, not accept possession of the Demised Premises hereunder, it being expressly acknowledged by Lessee that Lessee's obligations under this Lease section 2(F)2. are absolute and only Lessor can avail itself of the conditions under this Lease section 2(F)2.

- 3 -

3.    USE

(A)1.    Lessee shall not commence the use of the Demised Premises pursuant to terms herein prior to the Occupancy Date, without the prior written consent of Lessor (or as allowed under section 9 of this Lease), in Lessor's sole and absolute discretion, and upon such terms as Lessor may require. Lessee shall use and occupy the Demised Premises solely for general office purposes only, and in accordance with, and subject to, all applicable zoning regulations. The Demised Premises shall not be used for any other purpose or purposes without the prior written consent of Lessor. Lessee shall not use or occupy the Demised Premises for any unlawful purpose, and will comply with all present and future laws, ordinances, regulations, and orders of all governments, government agencies and any other public authority having jurisdiction over the Demised Premises, and will provide Lessor with written evidence of such compliance is so requested in writing by the Lessor.

2.    Lessee shall take all action necessary to prevent any conduct or activity by any of its invitees whomsoever: i) on any common area of the Building including but not limited to any walk-way, balcony, or patio, if any, adjacent to the Demised Premises; or ii) in the Demised Premises; which may cause injury or damage to any person or property, or which, in Lessor's opinion, may be disturbing or offensive to, any other tenants of the Building or to any member(s) of the public in the vicinity of the Building. The Lessee shall indemnify, defend, and save harmless the Lessor from any liability, loss, or obligation arising out of, or related to, any such conduct or activity. Other than for Lessee's customary day-to-day ingress and egress to the Demised Premises associated only with Lessee's permitted use hereunder, Lessee shall not use or permit the use of any walk-way, balcony, or patio for any purpose without the prior written consent of Lessor (which may be conditioned, without limitation, on Lessee obtaining such insurance coverage for such use as shall be satisfactory to Lessor).

(B)    The Lessee specifically acknowledges and agrees that it shall not provide any type of communications, internet (unless such internet service is through the "web" and not a direct, physical link in or through any part of the Building,) utility, or other services to any other occupant or tenant in the Building without the Lessor's prior written consent, which consent may be conditioned or withheld at the Lessor's sole discretion.

4.    RENT

(A)    Lessee covenants and agrees to pay to Lessor the Rent (as hereinafter defined) of every kind and nature specified in this Lease. This shall include: i) Base Rent and Monthly Rent (both as hereinafter defined); and ii) any sums, charges, expenses, and costs identified in this Lease to be paid by Lessee to Lessor or to a third party if required under this Lease; all of which shall be deemed additional rent hereunder. All such amounts becoming due hereunder from Lessee are sometimes hereafter referred to collectively as "**Rent**." Lessee's obligation to pay said Rent shall begin on the Occupancy Date and shall continue to remain an obligation of Lessee until said obligation to pay Rent is completely satisfied.

- 4 -

Lessee shall make all payments of Rent: i) each by one (1) check in lawful currency of the United States of America, payable to **"Waterfront Center,"** and delivered to R B Associates, Inc., 1054 31st Street, N.W., Suite 1000, Washington, DC, 20007, or to such other party or to such other address, or pursuant to such other reasonable direction as Lessor may designate from time to time by written notice to Lessee; ii) without demand; and iii) without deduction, set-off, or counterclaim. If Lessor at any time or times accepts Rent after it shall become due and payable, or in an amount that may actually be less than that which is actually due, then such acceptance shall not excuse any delay upon subsequent occasions, or constitute, or be construed as, a waiver of any or all of Lessor's rights hereunder. In the event any check given by Lessee to Lessor pursuant to this Lease is dishonored, Lessee shall pay to Lessor, as additional Rent upon demand, the charges assessed against Lessor by the financial institution in which the dishonored check was deposited, and Lessor may require that Lessee pay all subsequent amounts due hereunder in the form (or similar) of a bank check. No endorsement or statement on any check shall be deemed an accord or satisfaction and Lessor may accept such check in payment without prejudice to any of Lessor's rights hereunder. Lessor shall have the right but not the obligation, to apply any Rent or other amounts received under this Lease to any and all amounts due and payable to Lessor under the Lease, whether described as Rent or otherwise, in any manner and in any order of payment that Lessor may, in its sole discretion, desire. To the extent that Lessor accounts for any amounts received under this Lease by categories, such accounting categories are for Lessor's convenience of reference only and shall not serve to limit Lessor's rights hereunder or prevent Lessor from altering such categories or eliminating one (1) or more such categories in the future.

(B)    On and after the Commencement Date, and for the initial Lease term herein, Lessee shall pay to Lessor a fixed, minimum, guaranteed base rent (the **"Base Rent"**) of the sum of two million one hundred sixty-eight thousand seven hundred ninety-six & 00/100 dollars ($2,168,796.00) (subject however to: i) increase or decrease as provided for below in Lease section 4(D); and ii) rent abatement as provided for below in Lease section 4(E)). The Base Rent above shall be payable in minimum monthly installments of:

| Lease Year | Base Rent - Monthly |
|---|---|
| One (1) | $33,350.00 |
| Two (2) | $35,600.00 |
| Three (3) | $35,898.00 |
| Four (4) | $37,244.00 |
| Five (5) | $38,641.00 |

The monthly installment of rent for the Demised Premises set forth above is hereinafter referred to as **"Monthly Base Rent"**, which Lessee hereby agrees to pay in advance to Lessor and Lessor hereby agrees to accept. The term Monthly Rent as it appears herein is deemed to mean Monthly Base Rent as adjusted pursuant to any applicable section of the Lease.

(C)    Monthly Rent as specified above shall be payable in advance on the first (1st) day of each calendar month during the term of this Lease, however, the first (1st) such monthly installment shall be due upon affixation of Lessee's signature hereto. Lessee shall also pay to Lessor with the payment of Monthly Rent any and all such payments of additional Rent provided for in this Lease.

(D)1.   In addition to the Base Rent above, if the Occupancy Date occurs on a day prior to December 1, 2003, said Monthly Rent for such partial month(s) (regardless of the actual number of days such month has) shall be payable at the rate of one thousand ninety-three & 44/100 dollars ($1,093.44) per day, for each day of each month from the Occupancy Date until the Commencement Date stated above in section 2(A), payable in advance, as specified above.

2.   If the Occupancy Date occurs on a day after December 1, 2003, the Base Rent (and Monthly Base Rent for those months so effected) as set forth above in Lease section 4(B) shall be reduced for (regardless of the actual number of days such month has) at the rate of one thousand ninety-three & 44/100 dollars ($1,093.44) per day, for each day after December 1, 2003 until the Occupancy Date, payable in advance, as specified above.

(E)   RENTAL ABATEMENT

Notwithstanding the foregoing, Lessor shall grant to Lessee a "**rent holiday**" from the payment of a certain portion of Monthly Rent only for an aggregate of twelve (12) calendar months during the term, consisting of the first (1st) full twelve (12) consecutive calendar months which immediately follow the Occupancy Date (said twelve (12) months being hereafter referred to as the "**Free Rent Period**").   During such Free Rent Period, each installment of Monthly Rent shall be abated by the amount of two thousand three hundred fifty & 00/100 dollars ($2,350.00) (such rental abatement being hereinafter referred to as the "**Free Rent Allowance**"); provided, however, that:  i) the Free Rent Period and the granting of the Free Rent Allowance as provided hereunder shall not affect the Commencement Date as determined herein;  ii) Lessee shall remain obligated during the Free Rent Period to pay all Additional Rent pursuant to this Lease and to perform all of Lessee's obligations under this Lease except as expressly aforesaid; and  iii) if during the initial Lease Term in the event of any termination of this Lease by Lessor based upon a default hereunder by Lessee, the amount of Monthly Rent which is equal to the Free Rent Allowance; shall immediately become due and payable upon Lessee's written demand to Lessee.

5.   DEPOSIT

(A)1.   Should the Lessor not terminate this Lease pursuant to Lease section 2(F)2. above, the parties acknowledge and agree that: i) the Lessor shall under this Lease (and for the entire term thereof) continue to hold that certain deposit that the Lessee has deposited with the Lessor pursuant to the Prior Lease, in the amount of thirty-five thousand five hundred seventy-five & 01/100 dollars ($35,575.01); and ii) such deposit's agreed-upon interest up to and including December 1, 2003, shall be two thousand ninety-nine & 99/100 dollars ($2,099.99) resulting in a total of $37,675.00, hereinafter be referred to as the "**Security Deposit**" as a deposit to be used as security for payment of Rent and for the performance by Lessee of all of Lessee's obligations hereunder, said Security Deposit to be held by Lessor for the entire term of this Lease and any extensions or renewals thereof.  Interest shall continue to accrue on the Security Deposit starting on December 1, 2003 in accordance with this Lease section 5.

- 6 -

(B)    Lessor shall have the right, but shall not be obligated, to apply all or any portion of the Security Deposit toward any and all amounts due and payable hereunder, in the manner permitted under section 4(A) of this Lease, including but not limited to, unpaid Rent, or the losses or damages resulting from any default by Lessee, in which event Lessee shall: i) be obligated to promptly deposit with Lessor the amount necessary to restore the Security Deposit to its original amount; and ii) only be entitled accrued interest forward from the latest date of Lessor's receipt of full restoration of the Security Deposit from the Lessee.  In the event Lessee fails to perform its obligations to commence payment of Rent on the Occupancy Date or to take possession of the Demised Premises by not later than the Commencement Date provided herein, said Security Deposit shall not be deemed liquidated damages and Lessor may apply the Security Deposit to reduce Lessor's damages, and such application of the Security Deposit shall not preclude Lessor from recovering from Lessee all additional damages incurred by Lessor.

(C)    Except as hereinafter provided, said Security Deposit shall bear interest at the passbook rate of interest per annum paid by the financial institution in which said Security Deposit is placed by Lessor and said interest shall be held by Lessor together with and as part of the Security Deposit as aforesaid.  At Lessor's option, Lessor may apply the Security Deposit toward payment to Lessee of any allowance payable to Lessee hereunder in which case no interest on the Security Deposit shall be payable to Lessee, but in such event Lessor shall remain responsible for any return of the Security Deposit to which Lessee may be entitled at the expiration or termination of this Lease.  In no event shall the Security Deposit or any part thereof be required to be placed by Lessor in any escrow account, any such requirement being thereby waived by Lessee, and it is agreed that said Security Deposit may be commingled with other funds of Lessor or other deposits (or both).

(D)    In the event that Lessee shall fully and faithfully comply with all the provisions of this Lease which shall include that the Demised Premises is properly vacated (which includes full adherence to section 12 of this Lease), and all keys/entry cards to the Demised Premises and Building returned to the Lessor, the Security Deposit and any interest thereon, or any balance thereof, shall be reimbursed to Lessee within thirty (30) days after the later of expiration of the term of this Lease, or when and if no further issues or liabilities remain under this Lease.  In the absence of evidence satisfactory to Lessor of any permitted assignment of the right to receive the Security Deposit or the remaining balance thereof, Lessor shall return the same to the original Lessee, regardless of one (1) or more assignments of Lessee's interest thereon (or balance thereof) to the another lessee, Lessor shall be completely relieved of any liability hereunder.  Upon vacating the Demised Premises, Lessee shall furnish Lessor, in writing, a forwarding address.  If Lessee fails to provide the Lessor with a forwarding address, it is understood that any communication (and return of Deposit, if any) from Lessor will be sent to Lessee at Lessee's last known address, i.e., the Demised Premises.

6.    (A)    OPERATING EXPENSES (Intentionally Omitted)

(B)    REAL ESTATE TAXES (Intentionally Omitted)

(C)   CHAR SERVICE COSTS (Intentionally Omitted)

7.   CONSUMER PRICE INDEX ESCALATION (Intentionally Omitted)

8.   ASSIGNMENT AND SUBLETTING

(A)   Lessee may not assign or otherwise transfer this Lease, or sublet (including permitting occupancy or use by another party) the Demised Premises, or any part thereof, without the prior written consent of Lessor, such consent however, which shall not be unreasonably withheld, delayed, or conditioned, so long as the proposed assignee or sublessee can demonstrate to the Lessor's reasonable satisfaction that they are of sound professional character and that they possess the financial capacity to undertake the obligations with respect to that area which is proposed for assignment or sublease (as the case may be) that is the subject of Lessee's request. Such consent of Lessor shall be requested by Lessee giving Lessor thirty (30) days prior written notice of Lessee's intention to assign this Lease or sublet all or any part of the Demised Premises. In the event Lessee seeks permission to sublease all or any part of the Demised Premises (which such permission Lessee may seek only so long as there is no uncured event of default hereunder) the notice shall: i) identify the area of the Demised Premises Lessee seeks to sublease; ii) include the proposed sublease/assignment document signed by the appropriate parties; and iii) include such financial information and incorporation/partnership or other organizational documentation (unless such proposed sublessee/assignee is an individual) regarding the proposed sublessee/assignee that the Lessor may require. Within thirty (30) days after receipt of said notice of intent to assign or sublease, together with all supporting documentation as aforesaid, Lessor shall have the option to: i) terminate the Lease, if Lessee desires to assign this Lease; or ii) terminate the Lease with regard to that portion of the Demised Premises which Lessee seeks to sublet, or alternately to sublet that portion of the Demised Premises from Lessee for the term which Lessee desires to sublet that portion of the Demised Premises; or iii) grant or withhold its consent to the matters set forth in Lessee's notice of intention to assign or sublet. Lessor may exercise the option by giving Lessee written notice of its election to exercise the option, withhold consent, or otherwise, within said thirty (30) day period. In the event that the rent under any such sublease or assignment results in rent higher than due under the Lease the Lessee and Lessor shall divide equally any profit or gain.

The effective date of termination, or the effective date of commencement of the sublease to Lessor, shall be mutually agreed upon by Lessor and Lessee. If the parties cannot agree upon a termination date or upon a sublease commencement date to the Lessor, the termination date or sublease commencement date shall be the date that is sixty (60) days after the date Lessor received the notice that Lessee desired to assign the Lease or sublet all or any portion of the Demised Premises. Upon termination, all of the rights and obligations of Lessor and Lessee under the terms of this Lease shall be terminated, or terminated with regard to that portion of the Demised Premises that Lessee notified Lessor that Lessee desired to sublet, except that Lessee shall continue to be obligated to pay Rent and all other charges for the Demised Premises which accrue to the date of termination.

- 8 -

If Lessor consents to the proposed sublease or assignment and Lessor does not exercise its option to terminate or sublet, Lessee may assign this Lease or sublet the part of the Demised Premises so identified as aforesaid within sixty (60) days after the date that the Lessor notifies Lessee of its consent. Notwithstanding anything to the contrary herein, it is expressly understood that Lessee shall be required, in all cases, however, to obtain Lessor's prior written consent to any assignee, any assignment, or any sublessee, or any subletting, which consent may be given or withheld by Lessor pursuant to the terms herein this Lease section 8. In the event that Lessee fails to present to Lessor any sublease or assignment agreement, fully executed by the parties thereto, within said sixty (60) day period, Lessee may not assign this Lease or sublet the Demised Premises without first affording Lessor the option to terminate or sublease as previously provided for in this section.

(B)    Lessee shall reimburse to Lessor, as additional Rent, all reasonable costs and expenses, including reasonable attorney's fees, which Lessor incurs by reason of or in connection with any assignment (including to a "Lessee Affiliate", as hereinafter defined), sublease, or leasehold mortgage proposed or granted by Lessee (whether or not permitted under this Lease,) and all negotiations and actions with respect thereto, such additional Rent to be due and payable within fifteen (15) days of receipt of a statement of such costs and expenses from Lessor.

(C)1.   No assignment of this Lease shall be effectuated by operation of law or otherwise without the prior written consent of Lessor. For the purposes of this Lease, the transfer of fifty percent (50%) or more of the ownership interest of Lessee or the transfer and/or issuance of more than fifty percent (50%) of the voting stock of Lessee, if Lessee is not a publicly held corporation, to any persons or entities that are not owners or stockholders of Lessee on the date of execution of this Lease shall be deemed an assignment of this Lease thereby giving Lessor the option to terminate this Lease or exercise such other rights and remedies as provided to Lessor hereunder.

2.     Lessor's consent shall not be required (nor may Lessor terminate the Lease) to any assignment of the Lease to a "Lessee Affiliate" (hereinafter defined) of Lessee; provided, however, that in each instance: i) Lessee shall not then be in default of the Lease; ii) Lessee shall be in possession of all of the Demised Premises; and iii) Lessee shall give Lessor prior written notice of its intent to assign the Lease along with a copy of (a) the proposed assignment document, and (b) such other reasonable documentation required by Lessor to confirm Lessee's compliance with any requirements of this Lease section 8. As used herein, the term "Lessee Affiliate" shall refer to a person or entity that directly or indirectly (through one or more intermediaries) controls (hereinafter defined), is controlled by, or is under common control with Lessee; provided that such Lessee Affiliate: i) has a net worth equal or greater than the net worth of Inphonic, Inc. and a general credit worthiness (including the rating of its corporate debt) equal to or greater to that of Inphonic, Inc. immediately prior to such assignment; ii) is deemed by Lessor, in its sole discretion, to be an entity consistent with other tenants in the Building; and iii) expressly assumes the obligations of Lessee pursuant to the terms and conditions of this Lease. "Control" as used herein shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of the entity in question, whether through ownership of voting securities or by contract.

(D)    The consent by Lessor to any assignment or subletting to any party other than Lessor, including, without limitation, a subsidiary or affiliate of Lessee, shall not be construed as a waiver or release of Lessee from the terms of any covenant or obligation under this Lease and Lessee shall remain obligated to perform all such covenants and obligations throughout the entire term of this Lease and any extension or renewal thereof. Lessor's collection or acceptance of rent from any assignee of Lessee shall not constitute a waiver or release of Lessee of any covenant or obligation contained in this Lease, nor shall any such assignment or subletting be construed to relieve Lessee from giving Lessor said thirty (30) days notice or from obtaining the consent in writing of Lessor to any further assignment or subletting. In the event that Lessee is in default of any term or provision of this Lease, Lessee hereby assigns to Lessor the rent due from any subtenant of Lessee and hereby authorizes and directs each such subtenant, upon notice from Lessor, to pay said rent directly to Lessor, the collection or acceptance of rent from any subtenant in such instance not to constitute a waiver or release of Lessee of any covenant or obligation contained in this Lease.

(E)    Lessee shall not mortgage or encumber this Lease without the prior written consent of Lessor, in Lessor's sole and absolute discretion.

9.    PREMISES IMPROVEMENTS

(A)1.    Lessee shall accept Premises in "as-is" condition, however, the Lessor shall, in good faith, substantially complete the work specified in Exhibit "B-1" attached hereto (the "**Lessor's Improvements**") within thirty (30) days after Lessor regains possession of the Demised Premises from the prior tenant/occupant (unless otherwise specified).

2.    The Lessor's obligations in Lease section 9(A)1. above may be modified, limited, or terminated by Lessor, in Lessor's sole discretion, if at the period of time beginning on the date of this Lease herein, and ending on the Occupancy Date under this Lease, the Prior Lease shall be in full force and effect and the Lessee shall not be in default (beyond any grace period granted in the Lease for curing the same) in the performance or observance of any of the terms, provisions, covenants, and conditions of the Prior Lease. Lessee's failure to be in compliance with this Lease section 9(A)2., shall not create, or in any way give rise to, any rights for Lessee to not accept possession of the Demised Premises, it being expressly acknowledged by Lessee that Lessee's obligations under this Lease section 9(A)2. are absolute and only Lessor can avail itself of the conditions under this Lease section 9(A)2.

(B)1.    Lessee shall perform at its sole cost and expense, and subject to the conditions herein, certain work the Demised Premises (the "**Lessee's Improvements**") as described conceptually on Exhibit B-2 (and such work which shall be performed pursuant to the Lease and Exhibit B-2) during the two (2) month period of time beginning on the date which is two (2) weeks after Lessor regains possession of the Demised Premises from the prior tenant/occupant, such period of time being hereinafter referred to as the "**Lessee's Work Period**".

- 10 -

2.      Should the Lessor not terminate the Lease pursuant to Lease section 2(F)2. above, then the Lessor hereby grants to Lessee, in consideration for Rent, and subject to conditions precedent herein, this Lease, an allowance (the "Lessee's Allowance") in an amount not to exceed fifty-three thousand & 00/100 dollars ($53,000.00).

$25,000 mw

(a)      At least thirty-five thousand & 00/100 dollars ($35,000.00) of the Lessee's Allowance shall be used for costs incurred by Lessee for the actual costs of installation of the Lessee's Improvements (which shall not include any fees/costs payable to Lessee of any kind) and only during the Lessee's Work Period (the "Hard Costs Allowance"). Such payment shall be to reimburse the Lessee for its actual costs for the Lessee's Improvements performed or supplied by Lessee or its contractor(s) or vendor(s), up to the amount of the Lessee's Allowance, within (30) days after Lessor receives Lessee's request for payment of same (the "Lessee's 1st Request"), but only if the Lessee's 1st Request is submitted in accordance with this Lease. Lessee may make only one (1) Lessee's 1st Request, such request being no earlier than two (2) weeks after the substantial completion of the Lessee's Improvements and no later than March 1, 2004. Such reimbursement or payment by Lessor shall be made by one (1) check, payable to Lessee. Any portion of the Lessee's Allowance allocated to the Hard Costs Allowance not requested in the Lessee's 1st Request shall be deemed forfeited by Lessee. Lessor shall have no obligation to make payment pursuant to the Lessee's 1st Request until each and every condition set forth below has been completed to Lessor's reasonable satisfaction. The Lessee's 1st Request shall be accompanied by: i) a letter from Lessee summarizing the nature of invoice(s) and the labor and/or materials for which reimbursement is requested and which includes a certification from Lessee that such labor and/or materials have been received and that the invoice is true, accurate, and complete; ii) the actual invoices from appropriate parties for each and every amount to be paid or reimbursed for the Hard Costs Allowance. Lessor retains the right to make its own inspections of the Demised Premises in order to confirm that the installation of the Lessee's Improvements are being (or were) performed in a manner, and with materials, reasonably consistent with Lessor's operation of the Building.

$28,000 mw

(b)      No more than eighteen thousand & 00/100 dollars ($18,000.00) of the Lessee's Allowance may be utilized by Lessee for moving costs, re-wiring costs, architectural and other consultants' fees, or "free rent" (the "Soft Costs Allowance"). Such payment shall be made by Lessor to the Lessee, within (30) days after Lessor receives Lessee's request for such payment (the "Lessee's 2nd Request"), but only if the Lessee's 2nd Request is submitted in accordance with this Lease. Lessee may make only one (1) Lessee's 2nd Request, such request being no earlier than two (2) weeks after the Lessor's delivery of the Hard Costs Allowance to Lessee and no later than May 1, 2004. Such reimbursement or payment by Lessor shall be made by one (1) check, payable to Lessee. Any portion of the Lessee's Allowance allocated to the Soft Costs Allowance not requested in the Lessee's 2nd Request shall be deemed forfeited by Lessee.

- 11 -

3.    In the event that the Lessee's Improvements are not completed during the Lessee's Work Period or if the Lessee's 1st Request and/or Lessee's 2nd Request to Lessor are not made in accordance with the requirements herein: i) Lessor, its Agent (hereinafter defined) and employees shall not be liable or responsible for any claims, damages, or liabilities arising in connection therewith or by reason thereof; ii) nor shall Lessee be excused from its obligations to perform under the Lease; and iii) any unused amount of the Lessee's Allowance shall be forfeited by Lessee, and Lessee shall have no claim against Lessor for such unused amount.

4.    Lessee shall indemnify, defend and hold Lessor and its Agent harmless from and against any loss, costs, liability, damage or expense (including but not limited to reasonable attorney's fees) arising out of the design and specifications of the Lessee's Improvements and the installation of the Lessee's Improvements by the Lessee's professionals, regardless of the source of payment for such professionals.

(C)    All of the Lessor's Improvements and Lessee's Improvements shall be hereinafter the "Improvements" and become and remain the property of Lessor and shall be considered a part of the Demised Premises. In the event Lessee removes any elements of the Improvements, Lessee agrees to repair any damage to the Demised Premises and the Building and restore the Demised Premises and the Improvements to their condition after the installation of such Improvements. Any replacement of any property, fixtures or Improvements of Lessor, whether made at Lessee's expense or otherwise, shall be and remain the property of Lessor.

10.    <u>ALTERATIONS</u>

After the Occupancy Date, Lessee shall make no alterations, installations, additions or additional improvements (hereinafter collectively called "**Alterations**") in or to the Demised Premises or the Building without Lessor's prior written consent except for those "Lessee's Improvements approved by Lessor pursuant to section 9(B) above and which are installed pursuant to Exhibit B-2. Consent by Lessor to Lessee's Alterations shall not be unreasonably withheld, except that Lessor may withhold its consent in its sole and absolute discretion with regard to requested Alterations by Lessee which affect the structure of the Building, or the mechanical, plumbing or electrical systems of the Building, or any common areas of the Building, or any exterior or interior architectural or visual aspects or parts of the Building, or any portion of the Demised Premises visible from the exterior of the Building, or any other tenant or tenants of the Building. Lessee, at its sole cost and expense, shall provide Lessor with such architectural or other plans as shall be deemed necessary by Lessor prior to performance of such Alterations, and after installation of such Alterations Lessee, at its sole cost and expense, shall provide Lessor with such revised as-built full-floor mechanical and electrical plans for the floor or floors on which the Alterations are to be made, as shall be deemed necessary by Lessor, to show Lessee's Alterations. If any Alterations are made without the prior written consent of Lessor, Lessor may correct or remove the same, and Lessee shall be liable for any and all expenses incurred by Lessor in the performance of this work, plus fifteen percent (15%) of such expenses as an administrative cost to Lessor. All Alterations shall be made in compliance with all laws and regulations and at Lessee's sole expense, at such times and in such manner as Lessor may designate, and only by such contractors or mechanics as are approved in writing by Lessor.  Approval of

- 12 -

contractors or mechanics by Lessor, shall be based, without limitation, upon the contractors or mechanics being properly licensed, bonded and insured, their financial posture, experience and past job performance.

All Alterations to the Demised Premises, whether made by Lessor or Lessee, and whether at Lessor's or Lessee's expense, or the joint expense of Lessor and Lessee, shall be and remain the property of Lessor.  Notwithstanding the foregoing, however, any Alterations, fixtures or any other property installed in the Demised Premises at the sole expense of Lessee, and which can be removed without causing material damage to the Demised Premises or the Building, shall be and remain the property of Lessee if (and only if) Lessee provides to Lessor a list of each such Alteration prior to the installation of such Alteration (as such may be approved by Lessor), and if Lessee fails to list any such Alteration as aforesaid then Lessor shall have the option, by written notice to Lessee, to require Lessee to remove such Alteration at the expiration or earlier termination of this Lease or to leave it in place as Lessor's property at the expiration or earlier termination of this Lease.  In the event Lessee removes any of these Alterations and the like, Lessee agrees, at Lessor's election, to: i) to repair any damage to the Building caused by said removal and to restore the Demised Premises to a condition equal to that on the Occupancy Date; or ii) pay Lessor, as additional Rent, for all costs incurred by Lessor to undertake such repairs.  Any replacements of any property or improvements of Lessor, whether made at Lessee's expense or otherwise, shall be and remain the property of Lessor.

If Lessor consents to the Alterations, Lessor, may elect to require Lessee to remove all or any part of the Alterations made by Lessee subsequent to the Occupancy Date at the expiration or earlier termination of the term of this Lease, such election which shall be indicated by Lessor to the Lessee in writing at the time Lessor consents to the Alterations.  Removal of Lessee's Alterations shall be at Lessee's cost and expense, and Lessee shall, at its cost and expense, repair any damage to the Demised Premises or the Building caused by such removal.

Lessee shall remove all of Lessee's property at the expiration or earlier termination of this Lease, unless otherwise specified by Lessor, as set forth above.  In the event Lessee does not remove Lessee's property at the expiration or earlier termination of the Lease, such property shall become the property of Lessor.

In the event Lessee fails to remove its property or the Alterations requested to be removed by Lessor on or before the expiration, or earlier termination, of the term of the Lease, then Lessor may remove such property and Alterations from the Demised Premises at Lessee's expense, and Lessee hereby agrees to pay to Lessor, as additional Rent, the cost of such removal together with any and all damages which Lessor may suffer and sustain by reason of the failure of Lessee to remove the same. Said amount of additional Rent shall be due and payable upon receipt by Lessee of a written statement of costs and damages from Lessor.

- 13 -

11.    LIENS

Lessee shall promptly pay all persons furnishing labor or materials with respect to any work performed by Lessee or its contractors on or about the Demised Premises. If any mechanics' or other lien is filed against the Demised Premises, or the Building for work, labor, services, or materials, done for or supplied to or claimed to have been done for or supplied to Lessee, such lien shall be discharged by Lessee, at its sole cost and expense, within ten (10) days from the date Lessee receives written demand from Lessor to discharge said lien, by the payment thereof or by filing any bond required by law. If Lessee shall fail to discharge any such lien, Lessor may, at its option, discharge the same and treat the cost thereof (together with an administrative fee of fifteen percent (15%) of such costs) as additional Rent, due and payable upon receipt by Lessee of a written statement of costs from Lessor. It is hereby expressly covenanted and agreed that such discharge of any lien by Lessor shall not be deemed to waive or release Lessee from its default under the Lease for failing to discharge the same.

Lessee will indemnify and hold harmless Lessor from and against any and all claims, damages and expenses incurred by Lessor, arising from any liens placed against the Demised Premises or the Building and the land (or full parcel(s)) upon which it is situated, or other parcels associated with the Building) as a result of any work performed by or on behalf of Lessee in the Demised Premises at its own cost and under its own control and direction, or making any Alterations to the Demised Premises.

12.    MAINTENANCE BY LESSEE

(A)    Lessee at its sole cost and expense shall keep, maintain, and repair the Demised Premises and the fixtures and equipment therein (including, without limitation, all of the Improvements) in clean, safe and sanitary condition, shall take good care thereof, and shall suffer no waste or injury thereto. Without limiting the general provision above, Lessee, at its sole cost and expense shall be responsible for the following items within/for the Demised Premises (which shall include, but may not be limited to): i) cleaning and char services and supplies for any eating area(s)/room(s), kitchenette(s), shower(s), or lavatorie(s); ii) replacement cost of any lighting elements of all light fixtures which are not Building Standard fixtures (as well as the maintenance of any such fixtures); iii) maintenance of any locks/keys/hardware for: a) locks on any internal doors within the Demised Premises or b) any non Building Standard locks to any entry door(s) to the Demised Premises; iv) maintenance of any security system or non Building Standard item or Alteration (whether or not approved by Lessor); and v) repair/replacement of any ceiling tile or other item as a result of wiring/cabling conducted by or on behalf of the Lessee.

(B)    At the expiration or earlier termination of the term of this Lease (or immediately upon the earlier vacancy of the Demised Premises by the Lessee), Lessee shall surrender the Demised Premises and the Improvements, broom clean and in the same order and condition in which they were on the Occupancy Date (which shall include compliance with section 12(C) hereinafter set forth) ordinary wear and tear and damage by the elements, fire and other insured casualty excepted.

- 14 -

(C)1.   Within ten (10) business days after the expiration or sooner termination of the Lease, Lessor may elect ("**Election Right**") by written notice to Lessee to (so long as evidence is provided to the Lessor which is satisfactory to Lessor, of Lessee's compliance with Section 12(C)3.):

(a)   Retain any or all wiring, cables, and similar installations appurtenant thereto installed by Lessee in the risers and other pathways of the Building and the Demised Premises ("**Wiring**");

(b)   Remove any or all such Wiring and restore the Demised Premises and risers to their condition existing prior to the installation of the Wiring ("**Wire Restoration Work**"). Lessor shall perform such Wire Restoration Work at Lessee's sole cost and expense (such work which shall be performed at "market rates" for same); or

(c)   Require Lessee to perform the Wire Restoration Work at Lessee's sole cost and expense.

2.   The provisions of this section 12(C) shall survive the expiration or sooner termination of the Lease.

3.   In the event Lessor elects to retain the Wiring (pursuant to section 12(C) hereof), Lessee covenants that:

(a)   Lessee shall be the sole owner of such Wiring (up until the time of Lessor's Election Right), that Lessee shall have good right to surrender such Wiring, and that such Wiring shall be free of all liens and encumbrances; and

(b)   All Wiring shall be left in good condition, working order, properly labeled at each wire end and properly labeled in each telecommunications/electrical closet and junction box, and in safe condition.

4.   Not withstanding anything to the contrary in section 5 of this Lease, Lessor may retain the Security Deposit after the expiration or sooner termination of the Lease until the earliest of the following events:

(a)   Lessor elects to retain the Wiring pursuant to section 12(C);

(b)   Lessor elects to perform the Wiring Restoration Work and the Wiring Restoration Work is complete and Lessee has fully reimbursed Lessor for all costs related thereto; or

(c)   Lessor elects to require the Lessee to perform the Wiring Restoration Work and the Wiring Restoration Work is complete and Lessee has completely paid the Lessor for all costs related thereto.

- 15 -

5.    In the event Lessee fails or refuses to pay all costs of the Wiring Restoration Work within ten (10) days of the effective date Lessor's notice to Lessee requesting Lessee's reimbursement for or payment of such costs, Lessor may apply all or any portion of Security Deposit toward the payment of such unpaid costs relative to the Wiring Restoration Work.

6.    The retention or application of the Security Deposit by Lessor pursuant to this section 12(C) does not constitute a limitation on or waiver of Lessor's right to seek further remedy under law or equity.

13.    SIGNS AND ADVERTISEMENTS

No sign, advertisement, or notice shall be inscribed, painted, affixed, or displayed on any part of the outside or the inside of the Demised Premises or the Building without Lessor's prior written consent and then only in such place, number, size, color and style (i.e., Building standard lettering) as is authorized by Lessor. If any such sign, advertisement or notice is exhibited without first obtaining Lessor's written consent, Lessor shall have the right to remove the same, and Lessee shall be liable for any and all expenses incurred by Lessor by said removal, as additional Rent.

Lessor agrees to display:  i) Lessee's name on one (1) strip (line); and  ii) the names of up to six (6) individuals who are employees/principals of the Lessee, on each of the two (2) Building lobby directories in the Building standard color, size, and style of lettering, at Lessor's one-time, initial expense; and at the Lessee's sole cost and expense any time thereafter.  At Lessee's sole cost and expense, Lessee may display Lessee's name: i) on (or adjacent to) the main entry door of the Demised Premises; and ii) on a wall of the Building's sixth (6th) floor elevator lobby; both places only in color, size, and location (and means of attachment/affixation) as may be agreed to by the Lessor, but which may incorporate Lessee's logo as shown on exhibit "G" attached hereto.

Lessor shall have the right to prohibit any advertisement of Lessee or reference to the Building, Lessor, or its Agent which in Lessor's opinion tends to impair the reputations of said parties or of the Building or its desirability as a high-quality commercial-use building, and, upon written notice from Lessor, Lessee shall immediately refrain from and discontinue any such advertisement or reference.

14.    DELIVERIES AND MOVING OF LESSEE'S PROPERTY

No furniture, equipment, deliveries, or other bulky matter of any description shall be received into the Demised Premises or the Building, or carried in the elevators except in the manner and during the times approved by Lessor.  Lessee shall obtain Lessor's prior determination of the manner in which said property may be moved into the Building.  All moving of furniture, equipment and other material within the public areas shall be under the direct control and supervision of Lessor who shall, however, not be responsible for any damage to or charges for moving the same.  Lessor shall have the

sole right to determine the load capacities of the elevators of the Building and to determine if Lessee's property can be safely transported in the elevators. Lessee agrees promptly to remove from the sidewalks adjacent to the Building or any of the Building common areas, any of the Lessee's furniture, equipment or other material there delivered or deposited.

15.    **LESSEE'S EQUIPMENT**

(A)    Lessee will not install or operate in the Demised Premises any electrically operated equipment or other machinery (other than typewriters, word processing machines, personal computers, adding machines, radios, televisions, tape recorders, dictaphones, bookkeeping machines, copying machines, clocks, and other business machines and equipment normally employed for general office use) which require high electricity consumption for operation, without first obtaining the prior written consent of Lessor, who may condition such consent upon payment by Lessee of additional Rent as compensation for additional consumption of electricity and/or other utility services. Such additional Rent shall be in addition to Lessee's other obligations under this Lease to pay any costs specified elsewhere in this Lease. If any or all of Lessee's equipment requires electricity consumption in excess of the capacity of the electrical system existing in the Demised Premises, and if Lessor consents to the installation of such equipment, then all additional transformers, distribution panels and wiring that may be required to provide the amount of electricity required for Lessee's equipment shall be installed, if reasonably feasible, by Lessor at the cost and expense of Lessee.

If Lessee's equipment causes Lessee's consumption of electricity to exceed the Building standard amount provided by Lessor (as determined by Lessor), or if such equipment is to be consistently operated beyond the normal Building hours of 8:00 a.m. to 6:00 p.m., Monday through Friday, and 9:00 a.m. to 1:00 p.m. on Saturday, Lessor may at its option: i) install a separate electric meter for the Demised Premises at Lessee's sole cost and expense; ii) install a separate meter at Lessee's sole cost and expense, to record the specific equipment that is causing Lessee's excessive consumption of electricity; or iii) determine the equitable amount to be charged to Lessee for such excessive consumption of electricity. In the event Lessor installs a separate meter for the Demised Premises, Lessee shall then pay the cost of such excessive consumption of electricity as recorded by such meter directly to the Lessor. In the event Lessor separately meters the specific equipment or in the event Lessor itself determines the equitable amount to be charged to Lessee as aforesaid, Lessee shall be billed periodically by Lessor based upon such excessive consumption.

(B)    Lessee shall not install any equipment of any kind or nature whatsoever or permit any use of the Demised Premises which will or may necessitate any changes, replacements or additions to, or in the use of (but necessarily limited to), the water system, heating system, plumbing system, air-conditioning system, or electrical system of the Demised Premises or the Building without first obtaining the prior written consent of Lessor. Any machines or mechanical equipment belonging to or being used by Lessee which cause noise or vibration that may be transmitted to the structure of the Building or to any space therein to such a degree as to be objectionable to Lessor or to any tenant in the Building shall be installed and maintained by Lessee, at Lessee's expense, on vibration eliminators or other devices sufficient to eliminate such noise and vibration.

- 17 -

(C)    Lessor shall have the right to prescribe the weight and position of all heavy personal property, equipment and fixtures, including, but not limited to, data processing equipment, record and file systems, and safes which Lessee intends to install or locate within the Demised Premises. Lessee shall obtain Lessor's prior review and approval before installing or locating any such heavy personal property, equipment and fixtures in the Demised Premises, and if installation or location of such property, equipment or fixtures, in Lessor's opinion, requires structural modifications or reinforcement of any portion of the Demised Premises or the Building, Lessee agrees to reimburse Lessor, as additional Rent, for any and all costs incurred by Lessor to make such required modifications or reinforcements, and such modifications or reinforcements shall be completed prior to Lessee installing or locating such equipment or fixtures in the Demised Premises. Lessee shall reimburse Lessor within thirty (30) days of receipt of any statement setting forth those costs.

16.    SERVICES AND UTILITIES

(A)    Lessor shall provide and maintain the following utilities and services (unless stated otherwise or interrupted by Lessee's mis-use or negligence):

1.    Hot and cold water and lavatory supplies, it being understood and agreed that hot and cold water and lavatory supplies shall be furnished by Lessor only at those points of supply provided for general use of other tenants in the Building, as well as hot and cold water to any Lessor approved facility within the Demised Premises;

2.    Automatically operated elevator service (at least one (1) elevator) at all times;

3.    Cleaning and char services, as determined by Lessor, after normal business hours, Monday through Friday of each week, except on the holidays listed in subparagraph (iv) below. This shall not include any eating area(s)/room(s), kitchenette(s), shower(s) or lavatorie(s) within the Demised Premises, the cleaning and supplying of which shall be the sole cost and responsibility of the Lessee;

4.    Heat and air-conditioning in seasons as determined by Lessor, Monday through Friday from 8:00 a.m. to 6:00 p.m. and on Saturday from 9:00 a.m. to 1:00 p.m., except for the following holidays: New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Fourth of July, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day, and any other national holiday promulgated by a Presidential Executive Order or Congressional Act. Lessor shall provide heat and air-conditioning at times in addition to those specified in the preceding sentence at Lessee's expense, provided Lessee gives Lessor notice prior to 1:00 p.m. on a business day in the case of after-hours service on that business day and prior to 3:00 p.m. on the immediately preceding business day in the case of after-hours service on a Saturday, a Sunday or a holiday. Lessor shall charge Lessee for said after-hours services the same rate it charges other tenants of the Building. Lessor reserves the right, in its sole discretion, to increase the hourly charge for said after-hours service, but in no event shall the rate per hour charged Lessee be more than the rate per hour charged other tenants of the Building. In the event the same after-hours service is also requested by other tenants of the Building in addition to Lessee, the charge therefor to each tenant requesting such after-

- 18 -

hours service shall be prorated among all requesting tenants based upon the respective square footages of each of the demised premises of the tenants requesting such after-hours service;

     5.     Maintenance and electric lighting service for all public areas in the Building, as well as all Building Standard light fixtures within the Demised Premises;

     6.     Building access system as determined by Lessor; and

     7.     Electricity and electrical facilities to furnish Building standard amounts (as determined by Lessor) of electricity for equipment of Lessee installed pursuant to the section of this Lease entitled, "Lessee's Equipment."

     (B)     In the event any public utility supplying energy requires, or government law, regulation, executive or administrative order results in a requirement, that Lessor or Lessee must reduce, or maintain at a certain level, the consumption of electricity for the Demised Premises or Building, which affects the heating, air-conditioning, lighting, or hours of operation of the Demised Premises or Building, Lessor and Lessee shall each adhere to and abide by said laws, regulations or executive orders without any reduction in Rent.

     (C)     Lessor's inability to furnish, to any extent, these defined services, or any cessation thereof, resulting from, but not limited to, any causes including from entry from inspections, repairs, alterations, improvements and installations by Lessor, its Agent, employees or contractors pursuant to the section of this Lease entitled "Entry for Inspections, Repairs, and Installation", or from renovation, redecoration or rehabilitation of any area of the Building, including the lobby, or any of the surrounding public spaces, shall not render Lessor liable for damages to either person or property, nor be construed as an eviction of Lessee, nor work as an abatement of any portion of Rent, nor relieve Lessee from fulfillment of any covenant or agreement hereof. Should any of the Building equipment or machinery cease to function properly for any cause, Lessor shall use reasonable diligence to repair the same promptly, but Lessee shall have no claim against Lessor for damages or for a rebate of any portion of Rent on account of any interruptions in any services occasioned thereby or resulting therefrom.

     (D)     Lessor shall not be liable to Lessee for any loss, damage, or expense which Lessee may sustain if the quality or character of the utilities or services herein used upon or furnished to the Demised Premises (or Lessee) are no longer available or suitable for Lessee's requirements or if said utilities are interrupted as a result of actions by the public utility companies or any other cause other than Lessor's gross negligence or willful misconduct.

- 19 -

17.    LESSEE'S RESPONSIBILITY FOR DAMAGES/EXPENSES

(A)    Any and all injury, breakage or damage to the Demised Premises, the Building, or the Improvements arising from any cause done by (or omission of) Lessee, its agents, contractors, servants, employees and visitors, or by individuals and persons making deliveries to or from the Demised Premises, except as provided for in the section of this Lease entitled, "All Risk Coverage Insurance", shall be repaired by Lessor at the sole expense of Lessee.

(B)    Lessee shall defend, indemnify and hold harmless Lessor, its mortgagees and its agents form and against any claims, demands, administrative orders, judicial orders, penalties, fines, liabilities, settlements damages, costs or expenses (including, without limitation, reasonable attorneys' and consultant fees, court costs and litigation expenses) of whatever kind or nature, known or unknown, contingent or otherwise, arising out of or in any way related to: i) the violation or alleged violation of any federal, state or local laws, statutes, regulations, rules, ordinances, codes, standard, orders, licenses and permits by Lessee, its agents, employees, contractors or invitees; or ii) any suit, proceeding, hearing or administrative action involving Lessee, its agents, employees, contractors or invitees in which Lessor is not a party or otherwise involved but for being the Lessor under this Lease.

(C)    The payment by Lessee for the cost of such repairs/expenses by or of Lessor as a result of this section 17 of the Lease shall be due as additional Rent with the next installment of Monthly Rent after Lessee receives a bill for such repairs/expenses from Lessor. The provisions herein this section 17 shall not be in limitation of any other rights and remedies which Lessor has or may have in such circumstances.

18.    ENTRY FOR INSPECTIONS, REPAIRS, OR INSTALLATIONS

Lessee shall permit Lessor, its Agent, employees or contractors, to enter the Demised Premises at all reasonable times (which shall include during business hours) and in a reasonable manner, without charge to Lessor or diminution of Monthly Rent payable by Lessee, to: i) examine, measure, inspect, or protect the Demised Premises or the Building, and upon one (1) day written notice, to make such repairs or installations as in the judgment of Lessor may be deemed necessary to maintain or protect the Demised Premises or Building or as may be required by any governmental requirements (beyond any responsibility of the Lessee hereunder); or ii) exhibit the same to prospective purchasers of the Building or prospective lenders to Lessor; or iii) exhibit the same to prospective tenants during the last nine (9) months of the term of this Lease; or iv) exhibit the same to prospective tenants prior to the last nine (9) months of the term of this Lease, but only at times that are other than the "Working Day;" and v) in the event of an emergency, enter the Demised Premises or the Building without notice and make whatever repairs are necessary to protect the Demised Premises or the Building, or personal property. Lessor shall use reasonable efforts to minimize interference to Lessee's business when making repairs, but Lessor shall not be required to perform the repairs at a time other than during normal working hours.