## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| SN LIQUIDATION, INC., *et al.,* | ) | Case No. 07-11666 (KG) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | **Re: Docket No. 365** |
|  | ) |  |

## DEBTORS' OBJECTION TO MOTION OF WATERFRONT CENTER LIMITED PARTNERSHIP FOR ENTRY OF AN ORDER THAT DIRECTS AND COMPELS PAYMENT OF POST-PETITION RENT OBLIGATIONS PURSUANT TO 11 U.S.C. § 365(d)(3)

The above-captioned debtors and debtors in possession (the "Debtors"), by and through undersigned counsel, object (the "Objection") to the Motion of Waterfront Center Limited Partnership ("Waterfront") for Entry of an Order that Directs and Compels Payment of Post-Petition Rent Obligations Pursuant to 11 U.S.C. § 365(d)(3) (the "Motion"). In support of this Objection, the Debtors respectfully represent as follows:

### The Lease

1.      In April 2003, Waterfront, as landlord, and InPhonic, Inc., one of the above-captioned Debtors, as tenant, entered into a nonresidential lease agreement (the "Waterfront Lease") pertaining to real property located at 1010 Wisconsin Avenue, N.W., Washington, D.C, and additional space in the building commonly referred to as the Dodge Warehouse (the "Waterfront Center"). A copy of the Waterfront Lease is attached hereto as Exhibit A.

2.      The Lease provides that the Debtors paid a security deposit to Waterfront in the amount of $37,675.00 plus interest accrued from December 1, 2003 (the "Security Deposit"). Lease at 5(A)1. Upon information and belief, with interest, the security deposit totals approximately $48,000.00.

{00739758;v1}

### General Background

3.      On November 8, 2007 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors continue to possess their property and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4.      On the Petition Date, the Debtors filed their Motion for an Order (A) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets, (B) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices, (C) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Procured Cure Amounts, (D) Approving Expense Reimbursement Provision, and (E) Granting Related Relief (the "Bid Procedures Motion").

5.      On the Petition Date, the Debtors also filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion and the APA, the Debtors sought authority to sell substantially all of their business assets to the Buyer and to assume, sell and assign certain of their unexpired leases, license agreements, and executory contracts free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts ("Cure Costs") required under Bankruptcy Code section 365(b)(1)(A).

2

{00739758;v1}

6.      On November 9, 2007, the Bankruptcy Court entered an order approving the Bid Procedures Motion.

7.      On November 14, 2007, the Debtors filed the Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing (the "Cure Notice"). The Cure Notice set forth the list of contracts that the Debtors may have sought to assume, assign and sell through the sale process and the corresponding Cure Costs. RB Associates, Inc., Waterfront Center, and Waterfront Limited Partnership were included in the Cure Notice.

8.      On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

9.      On December 10, 2007, the Debtors filed the Notice of Assumption, Sale and Assignment of Designated Unexpired Leases and Executory Contracts.

10.      On December 13, 2007, the Court entered the Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief, which approved and authorized the sale of substantially all of the Debtors' assets to Adeptio INPC Funding LLC ("Adeptio").

11.      Under section 2.1(c) of the APA, Adeptio agreed to assume all Assumed Liabilities. The APA defines Assumed Liabilities to include, "trade payables to the extent first arising after the Petition Date directly relating to the operation of the Business in the ordinary course." APA at 2.1(c). A copy of the APA is attached hereto as Exhibit B.

3

12.     Further, at the sale hearing on December 13, 2007, Adeptio represented that it was "picking up the carrying costs" for contracts to be rejected and "assuming post petition trade payables," the definition of which in the APA is "pretty broad." Transcript at p. 33, a copy of which is attached hereto as Exhibit C.

13.     In December 2007, the Debtors and Adeptio communicated regarding the unexpired leases and executory contracts that the Debtors were authorized by Adeptio to reject. Adeptio did not authorize the rejection of any unexpired leases and executory contracts, including the Waterfront Lease, until early to mid-December.

14.     On or about December 16, 2007, the Debtors vacated the Waterfront Center.

15.     On December 21, 2007, the sale closed, and Adeptio assigned to Simplexity, LLC, a Delaware limited liability company and a subsidiary of the Buyer ("Simplexity"), its rights to receive the Assets from the Sellers under the APA.

16.     On January 14, 2008, the Debtors filed the Motion to Reject its Real Property Lease of Office Space at Waterfront Center (the "Motion to Reject").

17.     On January 18, 2008, the Debtors filed the Motion for an Order Authorizing Debtors to Reject Certain Unexpired leases and Executory Contracts pursuant to section 365(a) of the Bankruptcy Code (the "Omnibus Rejection Motion"). The Omnibus Rejection Motion sought approval of the rejection of unexpired leases and executory contracts with, *inter alia*, RB Associates, Inc., Waterfront Center and Waterfront Center Limited Partnership.

18.     Prior to the objection deadline for the Motion to Reject, counsel to the landlord of the Waterfront Center contacted Debtors' counsel to advise the Debtors that the landlord, under the name RB Associates, Inc., was subject to both the Omnibus Rejection Motion and the Motion to Reject. Debtors' counsel confirmed that the Waterfront Lease should be subject only to the

4

{00739758;v1}

Motion to Reject and circulated to landlord's counsel for approval a revised form of order for the Motion to Reject with RB Associates, Inc. removed from the schedule of rejected agreements. The Debtors received no objection to the revised form of order.

19.    On January 29, 2008, the Bankruptcy Court entered the Order Rejecting Debtors' Real Property Lease for Office Space at Waterfront Center (the "Rejection Order"). Pursuant to the Rejection Order, the Waterfront Lease was rejected *nunc pro tunc* to January 14, 2008.

20.    On January 29, 2008, the Court also approved the Omnibus Rejection Motion *nunc pro tunc* to December 21, 2007 (the "Omnibus Rejection Order"). Waterfront Center and Waterfront Center Limited Partnership (collectively, the "Waterfront Entities") are included in Exhibit A to the Omnibus Rejection Order.

21.    On or about February 8, 2008, under the name Waterfront Center Limited Partnership, Waterfront filed its Motion seeking immediate payment of post-petition obligations allegedly due under the Waterfront Lease. Specifically, Waterfront seeks immediate payment of post-petition rent for the months of December 2007 in the amount of $51,041.00 ("December Rent") and January 2008 in the amount of $44,933.00 ("January Rent") in the total amount of $95,974.00 (the "Requested Payment"). Waterfront also seeks to recover attorneys' fees and costs incurred in connection with the filing of its Motion. After reviewing the Motion and prior pleadings, the Debtors discovered that the Waterfront Entities were included in the Omnibus Rejection Order.

### Objection

22.    The Debtors object to the Motion because: (a) Adeptio, and not the Debtors, is responsible for payment of December Rent, (b) Waterfront should offset the Security Deposit against January Rent, (c) the remaining January Rent should be paid pursuant to a confirmed

5

plan of liquidation, and (d) Waterfront is not entitled to recover attorneys' fees and costs incurred in connection with the filing of its Motion.

### Basis for the Objection

**A.    Adeptio Is Responsible for December Rent**

23.    The Debtors do not contest that Waterfront is entitled to December Rent. However, Adeptio, and not the Debtors, is responsible for payment of such obligations under the APA. As referenced above, under the APA Adeptio agreed to assume all Assumed Liabilities, which include trade payables. The Waterfront Lease is a trade payable as it directly relates to the operation of the Debtors businesses in the ordinary course. The Debtors, in the course of their businesses, had offices in the Waterfront Center. The December Rent obligation arose after the Petition Date, and prior to Adeptio's authorization of the Waterfront Lease rejection, in the ordinary course of the Debtors' businesses in leasing the Waterfront Center. Therefore, the December Rent should be paid by Adeptio.

24.    The Debtors carried the Waterfront Lease in December until Adeptio determined it could be rejected in early to mid-December. Proration of rent is not allowed in this Circuit. *See In re Montgomery Ward Holding Corp.,* 268 F.3d 205, 209 (3d Cir. 2001). Pursuant to section 4(C) of the Lease, rent is payable on the first day of each month for the rent for that same month. Therefore, since rent cannot be prorated, Adeptio is responsible for all December Rent.

25.    Requiring the Debtors to pay the December Rent instead of Adeptio runs afoul of the clear language of the APA and is contrary to the understanding of all parties involved in the sale process. Adeptio executed an APA requiring it to pay post-petition trade payables. The Waterfront Lease was an ordinary course obligation of the Debtors and a regular cost of

6

operating the Debtors' businesses. The December Rent is the precise trade-payable expense that the APA requires Adeptio to pay.

26.    As this Court is already aware, the Debtors' resources are extremely limited, and the Debtors need to conserve such resources so that a distribution is available for general unsecured creditors. The Waterfront Lease may be one of several unexpired leases or executory contracts, for which Adeptio will dispute payment responsibility. Adeptio should be responsible for the costs the estates bore on Adeptio's behalf while Adeptio determined which agreements to reject or to assume or assign. Adeptio cannot now elude the responsibilities it represented to the Court it would undertake in the sale process simply because a formal designation of the Waterfront Lease as a "Held Contract" was not made.

**B.    Waterfront Should Offset the Security Deposit Against the January Rent**

27.    Upon information and belief, Waterfront currently holds approximately $48,000.00 of the Debtors' property as the Security Deposit. The Debtors request that this Court order Waterfront to offset the January Rent with the Security Deposit. *See e.g., In re Standard Furniture Co.,* 3 B.R. 527, 531 (Bankr. S.D. Cal. 1980) (chapter 7 trustee permitted to offset the estates' post-petition rent obligation against the pre-petition security deposit); *In re Zeinel Furniture, Inc.,* 13 B.R. 264, 267 (Bankr. E.D. Wisc. 1981) (security deposit offsets landlord's claim, which included pre-petition arrearage and post-petition, pre-rejection rent charges). Since the estates resources cannot shoulder the cost of January Rent, and Waterfront is in possession of the Debtors' property in the form of the Security Deposit, this Court should order the offset of the January Rent with the Security Deposit.

7

**C.**  **If this Court Finds that the Debtors Are Responsible for any Portion of the Requested Payment, the Debtors Should Not Be Required to Make Immediate Payment**

28.    The Motion seeks immediate payment of the Requested Payment under section 365(d)(3) of the Bankruptcy Code.  Section 365(d)(3) provides:

> [t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.  The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

11 U.S.C. § 365(d)(3).

29.    Although section 365(d)(3) requires payment within 60 days of the Petition Date if the debtor is to continue to enjoy the benefits of the respective lease short of assuming the lease, such is not the case according to the express language of section 365(d)(3) where the performance by the landlord has not been extended. This is precisely the case at hand. Moreover, since the estates' resources are limited, the Debtors request that this Court permit payment of the Requested Payment pursuant to a confirmed plan of liquidation.

30.    When an estate is administratively insolvent, the immediate payment of expenses pursuant to section 365(d)(3) of the Bankruptcy Code grants a landlord super-priority status when such status is not warranted. *In re Valley Media,* 290 B.R. 73, 77 (Bank. D. Del. 2003); *See also In re Pudgie's Development of N.Y., Inc.*, 239 B.R. 688, 696 (S.D.N.Y. 1999); *In re Microvideo Learning Systems, Inc.*, 232 B.R. 602, 609-10 (Banker. S.D.N.Y. 1999) ("the payment of rent now would effectively give the landlord a super-priority over the other administrative expense creditors.  That, I believe, is not the purpose of § 365(d)(3)."), *aff'd,* 254 B.R. 90 (S.D.N.Y. 1999), *aff'd,* 227 F.3d 474 (2d Cir. 2000).

8

31.    Holders of administrative expense claims are <u>rarely</u> accorded the right to immediate payment. *In re Grant Broad. of Phila., Inc.*, 71 B.R. 891, 899 (Bankr. E.D. Pa. 1987) ("We believe that there is no authority whatsoever for the principle that administrative claims should generally be paid immediately."); *see also In re Cont'l Airlines, Inc.,* 146 B.R. 520, 531 (Bankr. D. Del. 1992). ("Most courts postpone actual payment until confirmation of a plan."); *Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 502 (D.N.J. 2005) ("Unless the holder of a particular claim agrees otherwise, 11 U.S.C. § 1129(a)(9)(A) requires that the holder of an administrative claim receive payment on the effective date of the plan.").

32.    It would be unfair to other administrative creditors to order the Debtors to pay the Requested Payment when, although the Debtors expect to confirm a plan of liquidation, there is not insubstantial risk that administrative creditors will not receive payment in full of their claims. Ordering immediate payment will essentially grant Waterfront super-priority status when such treatment is not warranted.

33.    Waterfront will not be prejudiced if the Debtors' time to make the Requested Payment is extended.  The Debtors no longer occupy the Waterfront Center and are no longer incurring costs payable to Waterfront.  Waterfront has been able to re-let a portion of the property and requests a fixed amount for payment in the Motion.  Since the Waterfront Lease was rejected, Waterfront needs no protection from the accrual of additional liabilities.  Until the universe of claims against the Debtors is determined and a plan is confirmed, the Debtors should not be required to immediately pay administrative expense claims or the Requested Payment. Therefore, if this Court determines that the Debtors' are responsible for any portion the Requested Payment, the Requested Payment should be paid pursuant to a confirmed plan of liquidation.

9

**D. Waterfront Is Not Entitled to Recover Attorneys' Fees and Costs**

34.     Waterfront is not entitled to reimbursement of its attorneys' fees and costs associated with its Motion as its efforts did not benefit the estate.  "Administrative expense compensation based on a substantial benefit to a bankruptcy estate must be strictly limited to extraordinary creditor actions that lead directly to tangible benefits to the creditors, the debtor or the estate."  *In re Worldwide Direct, Inc.*, 334 B.R. 112, 124 (Bankr. D. Del. 2005) (internal citation omitted).  Creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole; thus, they have the burden of proving by a preponderance of the evidence that they made the requisite substantial contribution.  *In the Matter of Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993) (internal citations omitted).

35.     In seeking to recover the Requested Payment, Waterfront is looking out for its own interests and is not benefiting the estate in any way.  Further, Waterfront has not asserted anything in its Motion that would justify recovery of attorneys' fees and costs from this estate, as opposed to their inclusion, if appropriate, in a timely-filed proof of claim for rejection damages.  Therefore, Waterfront is not entitled to recover attorneys' fees and costs in prosecuting this Motion.

<u>Notice</u>

36.     Notice of this Objection has been provided to: (a) the Office of the United States Trustee; (b) counsel to Adeptio Funding LLC; (c) counsel to the Committee; (d) counsel to Waterfront Center Limited Partnership; and (e) all parties requesting notice in the Debtors' chapter 11 cases.

## Conclusion

WHEREFORE, the Debtors respectfully request entry of an order: (a) requiring Adeptio to pay December Rent, (b) offsetting January Rent with the Security Deposit (c) requiring the Debtors' payment of the Requested Payment pursuant only to a confirmed plan of liquidation, and (d) denying Waterfront's request for attorneys' fees and costs,.

Date:  February 20, 2008
       Wilmington, Delaware

**BAYARD, P.A.**

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone:    (302) 655-5000
Facsimile:    (302) 658-6395

and

**DLA PIPER US LLP**
Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 335-4500
Facsimile:    (212) 335-4501

Counsel for Debtors and
Debtors in Possession

11