appropriate governmental officials and in accordance with all applicable laws and regulations; and ii) in compliance with any terms and conditions stated in said prior written approval by the Lessor. Lessee may use such Materials in the ordinary course of business, provided that such use is in accordance with all applicable statutes, laws, rules and regulations, and any manufacturer instructions; and provided further that Lessee may not discharge any Materials except as provided by applicable statutes, laws, rules and/or regulations, and specifically may not discharge any Materials in any public sewer or any drain and/or drainpipe leading or connected thereto. Lessee shall promptly give written notice to Lessor of any communication received by Lessee from any governmental authority or other person or entity concerning any complaint, investigation or inquiry regarding any use or discharge (or alleged use or alleged discharge) by Lessee or any Materials. Lessor shall have the right (but not the obligation) to conduct such investigations or tests (or both) as Lessor shall deem necessary with respect to any such complaint, investigation or inquiry, and Lessee, at its expense, shall take such action (or refrain from taking such action) as Lessor may request in connection with such investigations and tests by Lessor. Lessee shall indemnify, defend (with counsel selected by Lessor), and hold Lessor harmless from and against any such improper use or discharge (or both) by Lessee, including any costs of all necessary clean-up activities occasioned by Lessee's actions, whether during the term or after termination of this Lease.

49.   <u>PARKING</u>

So long as the Lessee is not in default of the Lease or any applicable rules and regulations which apply to the garage; then during the term of the Lease, the Lessee shall be entitled to contract with the Building's parking garage operator for up to fourteen (14) unreserved parking spaces in the Building's parking garage at prevailing market rates. This shall not include times of repair or other times where the reasonable needs of the Lessor or the operator make such spaces unavailable.

50.   <u>RECORDATION</u>

Lessee shall not record this Lease or any memorandum thereof without the prior written consent of Lessor. All fees, costs, taxes and expenses in connection with Lessee's filing and recording of this Lease or any memorandum thereof shall be the sole obligation of Lessee. Lessor may condition its consent to any request by requiring that only a memorandum of lease be filed and recorded, such memorandum to exclude information as to the amount of Rent specified in this Lease.

51.   <u>GENDER</u>

Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular number, in any place or places herein in which the context may require such substitution or substitutions.

52.    BENEFIT AND BURDEN

The terms and provisions of this Lease shall be binding upon and shall inure to the benefit of the parties hereto and each of their respective representatives, successors and permitted assigns. Lessor may freely and fully assign its interest hereunder.  In the event of any sale or transfer of the Building by operation of law or otherwise by the party named as Lessor hereunder (or any subsequent successor, transferee or assignee), then said party, whose interest is thus sold or transferred shall be and is completely released and forever discharged from and with respect to all covenants, obligations and liabilities as Lessor hereunder after the date of such sale or transfer.

In the event Lessor shall be in default under this Lease, and if as a consequence of such default, Lessee shall recover a money judgment against Lessor, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment against the right, title and interest of Lessor in the Building as the same may then be constituted and encumbered and Lessor shall not be liable for any deficiency. In no event shall Lessee have the right to levy execution against any property of Lessor other than its interests in the Building. In no event shall any personal judgment lie against any partner in Lessor or any officer, director, shareholder, or trustee in any partnership or corporation which is a partner in Lessor.

53.    GOVERNING LAW

This Lease and the rights and obligations of Lessor and Lessee hereunder shall be governed by the laws of the District of Columbia.

54.    SAVINGS CLAUSE

If any provision of this Lease or the application thereof to any person or circumstance is to any extent held invalid, then the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby, and each provision of the Lease shall be valid and enforced to the fullest extent permitted by law.

55.    CORPORATE LESSEE

The person(s) executing this Lease on behalf of Lessee hereby consent, represent and warrant that Lessee is a duly incorporated or a duly qualified (if a foreign corporation) corporation and authorized to do business in the District of Columbia; and that the person or persons executing this Lease on behalf of Lessee is an officer or are officers of Lessee, and that he or she as such officers are duly authorized to sign and execute this Lease. Simultaneously with the execution and delivery of this Lease by Lessee to Lessor, Lessee shall deliver to Lessor documentation satisfactory to Lessor evidencing Lessee's compliance with the provisions of this section. Further, Lessee agrees to promptly execute all necessary and reasonable applications or documents confirming such registration as requested by Lessor or its representatives required to permit the issuance of necessary permits and

- 37 -

certificates for Lessee's use and occupancy of the Demised Premises. Any delay or failure by Lessee in submitting such application or document so executed shall not serve to delay the Commencement Date or delay or waive Lessee's obligations to pay Rent hereunder. Lessee, if a corporation, states that its registered agent in the District of Columbia is CTC, having an address at 1025 Vermont Avenue, N.W., Washington, DC and that it is a corporation in good standing in the District of Columbia.

56.   **JOINT AND SEVERAL LIABILITY**

If two (2) or more individuals, corporations, partnerships or other business associations (or any combination of two (2) or more thereof) shall sign this Lease as Lessee, the liability of each of them shall be joint and several. In like manner, if Lessee named in this Lease shall be a partnership or other business association the members of which are, by virtue of statute or general law, subject to personal liability, the liability of each of such member shall be joint and several.

57.   **BUSINESS DAY/WORKING DAY**

The terms "business day" and/or "working day" are terms describing each calendar day Monday through Friday (from 8:00am to 6:00pm) and Saturday (from 9:00 am to 1:00pm) except any holiday identified specifically or generically in the section of this Lease entitled, "Services and Utilities" falling on one (1) of such calendar days.

58.   **ENTIRE AGREEMENT**

(A)   This Lease, together with the Exhibits attached hereto and made a part hereof, contains and embodies the entire agreement of the parties hereto, and no representations, induce-ments, or agreements, oral or otherwise, between the parties not contained and embodied in this Lease and said Exhibits shall be of any force or effect, and the same may not be modified, changed or terminated in whole or in part in any manner other than by an agreement in writing duly signed by all parties hereto.

(B)   The Lessee and the Lessor agree, understand, and acknowledge that the Lease has been freely negotiated by both parties; and that in any controversy, dispute, or contest over the meaning, interpretation, validity, or enforceability of this Lease, or any of its terms and conditions, there shall be no inference, presumption, or conclusion drawn whatsoever against either party having drafted this Lease or any portion thereof.

59.   LESSEE'S REPRESENTATIONS

The financial information and references submitted by Lessee are made a part of this Lease and has been an inducement for the Lessor to lease the Demised Premises to the Lessee under the terms herein. If any of the representations contained in that financial information or references are discovered at any time to be misleading, incorrect or untrue, Lessor has the right to cancel this Lease and repossess the Demised Premises according to any remedy provided by law. Lessor may also recover from the Lessee any loss or damages (including Rent for the full term hereunder) which the Lessor may have suffered from such misrepresentation.

60.   HEADINGS

The captions, section numbers, and table of contents appearing in this Lease are included only as a matter of convenience and in no way define, limit, or describe the scope of intent of such sections of this Lease, nor in any way affect this Lease.

61.   RIGHT-TO-MATCH

(A)   Provided that Lessee is not then in default (or has been in default beyond any grace period granted in the Lease for curing same) of the Lease, then solely during second (2ⁿᵈ) and third (3ʳᵈ) Lease-Years, Lessee shall have the right to match any offer the Lessor may receive (and agree to) from a non-Lessor affiliated entity (other than from any then current tenant/occupant of the Building which has over 9,000 square-feet in the Building, their affiliates, assigns, or successors) to lease any other space located on the Building's sixth (6ᵗʰ) floor (the "**Available Space**"). The Available Space shall be offered to and accepted (if at all) by Lessee on the terms and conditions as shall be set forth in such offer that Lessor may receive and agrees to as to such Available Space (the "Lessor's Offer"). Lessee may only take the Available Space: i) in whole but not in part, with respect to size of the Available Spaces; and ii) at a minimum length of lease term set forth in the Lessor's Offer.

(B)   Upon the Lessee's exercise of such Right-to-Match during i) the second (2ⁿᵈ) Lease-Year, the expiration date of the Lease term shall automatically be extended for the longer of (a) one (1) year, or (b) the end of the lease term set forth in the Lessor's Offer; or ii) the third (3ʳᵈ) Lease-Year, the expiration date of the Lease term shall automatically be extended for the longer of (c) two (2) years, or (d) the end of the lease term set forth in the Lessor's Offer. For either of such automatic extensions:

1.   The Lease term as extended applies to both the original Demised Premises and the Available Space.

2.   The rent of the original Demised Premises shall be the greater of Fair-Market-Value or the continued three and three-fourths percent (3.75%) automatic increase from #4 above.

3.     The tenant improvements/allowance under the Lessor's Offer shall be pro-rated to apply to the original premises, such improvements to be applied at the commencement of the automatic extension. For example, if the Lessor's Offer contains $20.00/sf in T.I.'s, for a five (5) year deal and the Lease term is extended for two (2) years, then forty percent (40%) (ie, $8.00/sf) would apply to original Demised Premises.

(C)     Lessee shall give written notice of its option to lease the Available Space within ten (10) days after the Lessor's Offer. If Lessee shall fail to exercise its option within said ten (10) day period, then Lessee's option shall be null and void and cancelled for any future option.

(D)     Within ten (10) days (subject to extension by Lessor) after the date Lessee exercises the option, Lessor and Lessee shall execute an amendment to the Lease (or, at Lessor's option, a new lease as to said Available Space). If Lessee shall fail to execute said amendment (or said new lease, as the case may be) for the Available Space within such ten (10) day period (as the same may be extended as aforesaid), then Lessor, at its option, may cancel the Lessee's Right-to-Match and Lessee's Right-to-Match shall be null and void and cancelled for any future options.

62.     ROOF-TOP-ACCESS

Lessee shall have the non-exclusive right, without the payment of any additional rent hereunder for such right, to install and maintain on the roof of the Building a satellite dish, which shall not exceed three (3) feet in diameter. The satellite dish can be situated in a location as Lessor may approve, in its sole and absolute discretion. The installation of the satellite dish shall be in accordance as Lessor may approve, in its sole and absolute discretion and in no event shall such dish be affixed to the roof. After installation, Lessee shall have non-exclusive access to the roof of the Building for the purpose of installing, operating, maintaining, repairing and replacing the satellite dish and any related equipment, only with Lessor's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Lessee acknowledges that access to the roof is through another Lessee's space and may only access when Lessor is able to allow such access.

Lessee covenants and agrees that: i) all costs and expenses incurred in installing, operating, maintaining, repairing and replacing such satellite dish shall be borne solely by Lessee; ii) Lessee shall, throughout the period of such installation, and thereafter during any maintenance, repair or replacement of such equipment install and utilize, at Lessee's sole expense, screening supports, walk boards, and such other materials as may be reasonably required to protect the roof of the Building, the Building generally, pedestrians, vehicles on adjacent roadways and any other property or adjacent property owners; iii) no equipment that impairs the structure, value, rental value or rentability of, or unreasonably and materially detracts from the appearance of the Building or any part thereof shall be installed or operated by Lessee; iv) no equipment may be installed or operated that causes a violation of any mortgage, deed of trust, or other financing instrument now existing or hereafter recorded with respect to the Property; v) no equipment may be installed or operated that would interfere with or materially disturb any other lessee's quiet enjoyment of its space in the Building; vi) no equipment may be installed or operated that interferes with any other equipment in the Building or any other

- 40 -

equipment owned by any other person, irrespective of whether such person has any interest in the property;  vii) Lessee shall have no right to sublease, license or otherwise allow the use of space on the roof by parties other than Lessee,  viii) Lessee and any satellite dish shall not interfere with the use of the roof by Lessor;  ix) if so requested by Lessor, at the expiration or other termination of this Lease any satellite dish installed or operated by Lessee shall be removed by Lessee at Lessee's expense and any damage caused by such removal shall be promptly repaired by Lessee;  x) no equipment may be installed or operated that causes a violation of any applicable law, rule, regulation or ordinance of any governmental agency claiming jurisdiction; and xi) Lessee shall indemnify, defend and hold Lessor, its agents and employees harmless from and against any loss, cost, liability, damage or expense (including, but not limited to, reasonable attorney's fees) arising out of the installation or operation and maintenance (or failure to maintain) of any satellite dish installed or operated at the Building by Lessee or any subtenant of Lessee.

**[Signatures, Witnesses, and Exhibits Follow]**



IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease to be signed in their names by their duly authorized representatives and delivered as their act and deed, intending to be legally bound by its terms and provisions.

WITNESS:                    LESSOR:    Waterfront Center Limited Partnership

                           By: The Waterfront Corporation, its General Partner

                           By: _____
Date: 7/29/3                   Richard D. Bernstein, its President


WITNESS:                    LESSEE:    Inphonic, Inc.

                           By: _____
                           Name: Michael Walden
                           Title: VP of Corporate Development

CONFIDENTIAL

- 42 -



## EXHIBIT "B-1"

## THE "LESSOR'S IMPROVEMENTS"

The work to be provided by Lessor at no additional cost to Lessee (the "Lessor's Improvements") shall be as follows:

    1.  Paint all vertical walls in Lessor's Building Standard white except that, the Lessor will paint the vertical walls of up to six (6) distinct different offices or rooms each in one (1) different, reasonable color of the Lessee's reasonable choice from Lessor's other Building Standard selections;

    2.  Install new carpet in all currently carpeted areas in one (1) color of Lessee's choice from Lessor's Building Standard selections, except that, the Lessor will install carpet in up to six (6) offices or rooms each in one (1) different, reasonable color of the Lessee's reasonable choice from Lessor's Building Standard selections;

    3.  Demolish walls and construct new walls to generally match the floor plan as shown on that certain "Test Fit" TF-3 dated March 13, 2003 by the Core Group (the "Test Fit");

    4.  Construct glass door and relocate door to emergency stairwell where shown on the Test Fit and "re-swing" and/or re-locate doors to generally match the Test Fit;

    5.  Construct bathroom where shown on the Test Fit, such bathroom to include one (1) commode, a sink, a mirror, and floor tile in one (1) color of Lessee's choice from Lessor's Building Standard selections; and

    6.  Fix ceiling tile, relocate lighting and electrical outlets/switches as mutually agreed to by the parties.

Except for the work set forth above in this Exhibit "B-1", Lessee accepts possession of the Demised Premises and Building in their "as-is" condition existing on the Lease date. Lessor reserves the right to reasonably modify the above if field conditions require such modification. In the case where significant modification is required, the Lessor will notify the Lessee of such modification. All of Lessor's Improvements shall be of Lessor's Building Standard unless otherwise noted, such performance and standard of such work at least equal to that Lessor performed under the Prior Lease.

Not included in Lessor's Improvements are:

1.  carpet in the reception area and conference room; "glass light" into executive area;
2.  "curved" walls shown on Test Fit will be built straight;
3.  any cabinetry, counters, fixtures, equipment.

## EXHIBIT "B-2"

## THE "LESSEE'S IMPROVEMENTS"

The Lessee shall (so long as same does not interfere with the Lessor's Improvements) be permitted to install the following in the conference room, reception area, and the pantry (the "Lessee's Improvements"):

1. wall, floor and ceiling finishes; and

2. lighting and mill work.

All of Lessee's Improvements are to be performed pursuant to the following (and the Lease):

A. Lessee will follow Lessor's directions for its trash removal and any clean-up to the Building, or its common or surrounding areas resulting from Lessee's Improvements.

B. The Lessee Improvements shall be subject to the prior approval of Lessor. Any work undertaken by Lessee shall not damage or weaken the structural strength of the Building nor affect any Building systems, or any part thereof and shall be performed in a first-class with new materials, and in a workmanlike manner.

C. Lessee must upon written notice from the Lessor immediately replace any contractor, vendor etc. which is the cause/reason for any union, licensing or other regulatory dispute.

D. Lessee is accepting Demised Premises in its "as-is" condition. Lessee is responsible for confirming all dimensions of the demised premises. Any dimensions, drawings, or other information furnished to Lessee by Lessor are as a courtesy only.

E. Lessee shall not commence with any of Lessee's Work until:

1. Receipt of written approval of Lessee's plans and specifications in writing from the Lessor.

2. Submittal to Lessor, evidence of reasonable insurance for any contractors performing the work.

F. All contractors engaged by Lessee shall be capable of performing quality workmanship, and Lessee's Work shall be performed so as to cause a minimum of interference with other tenants in the Building and Building neighbors.

# EXHIBIT "C"
## Rules and Regulations

The following rules and regulations have been formulated for the safety and well-being of all the lessees of the Building. Any violation of these rules and regulations by any lessee which continues after notice from Lessor shall be sufficient cause for termination, at the option of Lessor, of the Lessee's lease. Lessor may, upon request by any Lessee, waive the compliance by such Lessee of any of the following rules and regulations, provided that: i) no waiver shall be effective unless signed by Lessor or Lessor's authorized agent; ii) any such waiver shall not relieve the Lessee from the obligation to comply with such rule or regulation in the future unless expressly consented to, in writing by Lessor; and iii) no waiver of a rule or regulation granted to any lessee shall relieve any other lessee from the obligation unless such other lessee has received a similar waiver in writing from Lessor.

1. The sidewalks, entrances, passages, courts, elevators, vestibules, stairways, corridors or halls or other parts of the Building not occupied by any Lessee (hereinafter "Common Areas") shall not be obstructed or encumbered by any lessee or used for any purpose other than ingress and egress to and from the Lessee's Demised Premises. Lessor shall have the right to control and operate the Common Areas, and the facilities furnished for the common use of the Lessee in such manner as Lessor, in its sole discretion, deems best for the benefit of the Lessees generally. No lessee shall permit the visit to its Demised Premises of persons in such number or under such conditions as to interfere with the use and enjoyment by other lessees of the Common Areas.

2. No awnings or other projections shall be attached to the outside walls of the Building. No drapes, blinds, shades or screens shall be attached to or hung in, or used in connection with, any window or door of a lessee's Demised Premises.

3. No sign, advertisement, notice or other lettering or material(s) shall be exhibited, inscribed, painted or affixed by any lessee on any part of the outside or inside of the Lessee's Demised Premises, the Building or elevators. In the event of the violation of the foregoing by any lessee, Lessor may remove same without any liability, and may charge the expense incurred by such removal to the lessee or lessees violating this rule. All interior signs on the doors and directory table shall be inscribed, painted or affixed for each lessee by Lessor at the expense of such lessee, and shall be of a size, color and style acceptable to Lessor.

4. No show cases or other articles shall be put in front of or affixed to any part of the exterior of the Building, nor placed in the Common Areas.

5. The water and wash closets and other plumbing fixtures shall not be used for any purposes other than those for which they were constructed, and no sweepings, rubbish, rags or other substances shall be thrown or placed therein. All damages resulting from any misuse of the fixtures shall be borne by the lessee whose employees, agents, visitors or licensees shall have caused the same.

6. There shall be no marking, painting, drilling into or other form of defacing or damage of any part of a lessee's Demised Premises or the Building. No boring, cutting or stringing of wires shall be permitted. No lessee shall construct, maintain, use or operate within its Demised Premises or elsewhere within or on the outside of the Building, any electrical device, wiring or apparatus in connection with a loud speaker system or other sound system. Lessor will, however, permit a Lessee to install muzak or other internal music system within the Lessee's Demised Premises if the music system cannot be heard outside of the Demised Premises.

7. No Lessee shall make or permit to be made any disturbing noises or disturb or interfere with the occupants of the Building or neighboring Buildings or premises or those having business with them, whether by the use of any musical instrument, radio, tape recorder, whistling, singing or any other way. No Lessee shall throw anything out of the doors or windows, off the balconies or down the corridors or stairs.

8. No bicycles, vehicles or animals, birds or pets of any kind shall be brought into or kept in or about a Lessee's Demised Premises. No cooking shall be done or permitted by any Lessee on its Demised Premises, except that, with Lessor's prior written approval, a lessee may install and operate for the convenience of its employees, a lounge or coffee room with microwave oven, sink and refrigerator. No lessee shall cause or permit any unusual or objectionable odors to originate from its Demised Premises. Each lessee shall be obligated to maintain sanitary conditions in any area approved by the Lessor for food and beverage preparation and consumption.

9. No space in or about the Building shall be used by any Lessee for the manufacture, storage, or sale or auction of merchandise, goods or property of any kind.

10. No flammable, combustible, explosive, hazardous or toxic fluid, chemical or substance shall be brought into or kept upon a lessee's Demised Premises.

11. No additional locks or bolts or alarms of any kind shall be placed upon any of the doors or windows by any lessee, nor shall any changes be made in existing locks or the mechanism thereof. Should the Lessee desire, it may at its sole cost install: i) a security/access system to the two (2) exterior doors to the Demised Premises; and ii) locks to up to three (3) interior office doors; so long as such locks/system are visually acceptable to Lessor and Lessor is provided the means of immediate access to any such areas. The doors leading to the Common Areas shall be kept closed during business hours except as they may be used for ingress and egress. Each lessee shall, upon the expiration or termination of its tenancy, return to Lessor all keys or codes used in connection with its Demised Premises, including any keys or codes to the Demised Premises, to rooms and offices within the Demised Premises, to storage rooms and closets, to cabinets and other built-in furniture, and to toilet rooms whether or not such keys or codes were furnished by Lessor or procured by Lessee, and in the event of the loss of any such keys and the codes for any alarms, such lessee shall pay to Lessor the cost of replacing the locks. On the expiration or termination of a lessee's lease, the lessee shall disclose to Lessor the combination of all locks for safes, safe cabinets and vault doors and the codes for any alarms, if any, remaining in the Demised Premises.

C-2

12. All deliveries and removals, or the carrying in or out of any safes, freight, furniture or bulky matter or material of any description, must take place in such manner and during such hours as Lessor may require. Lessor reserves the right to inspect all freight, furniture or bulky matter or materials to be brought into the Building and to exclude from the Building all or any of such which violates any of these rules and regulations or the Lease.

13. Any person employed by Lessee to do janitorial work within the Demised Premises must obtain Lessor's written consent prior to commencing such work, and such person shall, while in the Building and outside of said Demised Premises, comply with all instructions issued by the superintendent of the Building. No lessee shall engage or pay any employees on the Lessee's Demised Premises, except those actually working for such lessee on said Demised Premises.

14. Any person(s) or company supplying spring water, ice, coffee, soft drinks, towels, or other like merchandise or service shall follow Lessor's directions for delivering same. Lessor has the right to prohibit entry to the Building by such person(s) or company who does not follow Lessor's directions.

15. Lessor shall have the right to prohibit any advertising by any Lessee which, in Lessor's sole opinion, tends to impair the reputation of the Building or its desirability as a Building for offices, and upon written notice from Lessor, such lessee shall refrain from or discontinue such advertising.

16. Lessor reserves the right to exclude from the Building at all times any person who is not known or does not properly identify himself to the Building management or its agents. Lessor may at its option require all persons admitted to or leaving the Building between the hours of 6:00 p.m. and 8:00 a.m., Monday through Friday, and at all times on Saturdays, Sundays and holidays, to register. Each Lessee shall be responsible for all persons for whom it authorizes entry into the Building, and shall be liable to Lessor for all acts of such persons.

17. Each Lessee, before closing and leaving its Demised Premises at any time, shall assure that all lights are turned off and access to the Demised Premises is locked.

18. The requirements of Lessees will be attended to only upon application at the office of the Building. Building employees shall not perform, and shall not be requested by any Lessee to perform, any work or do anything outside of their regular duties, unless under special instructions from the Building management.

19. Canvassing, soliciting and peddling in the Building is prohibited and each Lessee shall cooperate to prevent the same.

20. No water cooler, plumbing or electrical fixtures shall be installed by the Lessee without Lessor's prior written consent.

21. There shall not be used in any space, or in the Common Areas of the Building, either by any Lessee or by jobbers or others in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards.

C-3

22. Mats, trash or other objects shall not be placed in the Common Areas.

23. Lessor shall not maintain or repair suite finishes or fixtures which are non-standard, including, but not limited to, kitchens, bathrooms, wallpaper, and special lights.

24. No space demised to any lessee shall be used, or permitted to be used, for lodging or sleeping or for any illegal purpose.

25. Employees of Lessor other than those expressly authorized are prohibited from receiving any packages or other articles delivered to the Building for any lessee and, should any such employee receive any such package or article, he or she in so doing shall be the agent of such lessee and not Lessor.

26. No Lessee shall install or permit or allow installation of a television antenna in the windows or upon the exterior of its Demised Premises or the Building.

27. No Lessee shall tie in, or permit others to tie in, to the electrical or water supply of the Building without prior written consent of the Building management.

28. No Lessee shall remove, alter or replace the Building standard ceiling, light diffusers or air conditioning terminals in any portion of its Demised Premises without the prior written consent of Lessor.

29. No vending machines shall be permitted to be placed or installed in any part of the Building by any lessee. Lessor reserves the right to place or install vending machines in any of the Common Areas of the Building.

30. No lessee shall place, or permit to be placed, on any part of the floor or floors of the space demised to such lessee a load exceeding the floor load per square foot which such floor was designed to carry and which is allowed by law.

31. Lessor reserves the right to specify where in the space demised to any Lessee business machines and mechanical equipment shall be placed or maintained in order, in Lessor's judgment, to absorb and prevent vibration, noise, and annoyance to other Lessees of the Building.

32. Lessor reserves the right to rescind, amend, alter or waive any of the foregoing rules and regulations at any time when, in its sole judgment, it deems it necessary, desirable or proper for its best interest and for the best interests of the lessees, and no such rescission, amendment, alteration or waiver or any rule or regulation in favor of one Lessee shall operate as an alteration or waiver in favor of any other Lessee. Lessor shall not be responsible to any lessee for the non-observance or violation by any other Lessee of any of these rules and regulations at any time.

C-4

EXHIBIT "E"

## Certificate as to Resolution of the
## Board of Directors and Incumbency

The undersigned, _Dawn A. Stainburn_, hereby certifies to Waterfront Center Limited Partnership, that they are the duly elected _Chief Executive Officer_ of _InPhonic, Inc._, a _Delaware_ corporation (the "Corporation"), and that, as such, they are authorized to execute this Certificate on behalf of the Corporation, and further certifies that:

(a) The following resolution was adopted on the _10th_ day of _April_, 20_03_ by the unanimous consent of the Board of Directors of the Corporation and duly filed with the minutes of the Corporation:

"RESOLVED, that _Michael Walden_, the _Senior Vice President_ of the Corporation, be and is hereby authorized and directed for and on behalf of the Corporation to executive, acknowledge, seal and deliver that certain lease ( the "Lease") between Waterfront Center Limited Partnership, as Lessor, and the Corporation as Lessee, demising certain space known as suite #_600_ and located at 1010 Wisconsin Avenue, N.W., Washington, DC, upon the terms and conditions set forth in the Lease, a copy of which is attached hereto and incorporated by reference herein".

(b) The person hereinabove named is the now duly elected, qualified and acting _Chief Executive Officer_ of the Corporation, and their signature appearing opposite their name is their true and genuine signature.

_Chief Executive Officer_
Title of Officer

Signature of Officer

Witness the signature of the undersigned and the seal of the Corporation this 23rd day of _April_, 20_08_

[Corporate Seal]

MAY-27-2004 12:58 FROM:R B ASSOCIATES        2023420973        TO:202 333 8280        P.001/003

SEPTEMBER 3 T.V.

## ADDENDUM NUMBER ONE TO LEASE

This Addendum Number One to Lease (the "Addendum") is made and entered into this ~~day of August,~~ 2003 by and between Waterfront Center Limited Partnership (the "Lessor") and InPhonic, Inc., a Delaware corporation (the "Lessee").

## WITNESSETH

WHEREAS, by that certain Lease Agreement dated April 29, 2003 between the Lessor and the Lessee, (hereinafter, referred to as the "Lease",) the Lessor leased to Lessee approximately 13,800 square feet of area on the sixth (6th) floor of the office building located at 1010 Wisconsin Avenue, N.W., Washington, DC (such area hereinafter referred to as the "Demised Premises" and such office building hereinafter referred to as the "Building";)

WHEREAS, the parties desire to modify the scope and responsible for the "Improvements"; and

WHEREAS, Lessor and Lessee desire to formally reflect their understanding and agreement, and therefore revise and modify the Lease accordingly, with respect to the following Lease sections:

1.   Premises Improvements          3.   Other Terms and Provisions
2.   Exhibit B-1

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1.      **Premises Improvement.**   Lease section 9(B)2. is modified to provide that:

The Lessee's Allowance shall be forty-five thousand & 00/100 dollars ($45,000.00) such allowance to be allocated twenty-five thousand & 00/100 dollars ($25,000.00) for Hard Cost Allowance and twenty thousand & 00/100 dollars ($20,000.00) for Soft Cost Allowance.

2.      **Exhibit "B-1".**   Exhibit B-1 to the Lease is replaced in its entity by:

The work to be provided by Lessor at no additional cost to Lessee (the "Lessor's Improvements") shall be as follows:

1.   Paint all vertical walls in Lessor's Building Standard white except that, the Lessor will paint the vertical walls of up to six (6) distinct different offices or rooms each in one (1) different, reasonable color of the Lessee's reasonable choice from Lessor's other Building Standard selections;

Inphonics Addendum #1 - Page 2

2. Install new carpet in all currently carpeted areas (except in "executive" bathroom, conference room, reception area and pantries) in one (1) color of Lessee's choice from Lessor's Building Standard selections, except that, the Lessor will install carpet in up to six (6) offices or rooms each in one (1) different, reasonable color of the Lessee's reasonable choice from Lessor's Building Standard selections;

3. Demolish certain walls and construct certain new dry-wall partition walls to generally match the floor plan as shown on that certain "Test Fit" labeled _____ T F-4 _____ and dated _____ 3.13 _____, 2003 by the Core Group (the "Test Fit") attached hereto;

4. Generally where shown on the Test Fit: (a) Construct new double glass entry door in existing "glass wall", (b) relocate existing door to emergency stairwell (and "close-in" old opening); and (c) "re-swing" and/or re-locate existing office/room doors (to include three (3) closets with bi-fold doors as shown);

5. Construct "executive" bathroom generally where shown on the Test Fit, such bathroom to include one (1) each of a commode, a sink, a stall shower, a mirror, and floor tile in one (1) color of Lessee's choice from Lessor's Building Standard selections;

6. Fix ceiling tile, relocate standard lighting and electrical outlets/switches (for standard functions only) as mutually agreed to by the parties; and

7. For the two (2) pantries: provide (a) "stubbed-in", rough plumbing (one (1) drain and one (1) hot and one (1) cold supply lines in mutually agreed locations near the pantries), and (b) rough electrical supply to a junction box in a mutually agreed location, near each of the pantries.

Except for the work set forth above in this Exhibit "B-1", Lessee accepts possession of the Demised Premises and Building in their "as-is" condition existing on the Lease date. Lessor reserves the right to reasonably modify the above if field conditions require such modification. In the case where significant modification is required, the Lessor will notify the Lessee of such modification. All of Lessor's improvements shall be of Lessor's Building Standard, unless otherwise noted, such performance and standard of such work at least equal to that Lessor performed under the Prior Lease.

Not included in Lessor's Improvements are:

1. carpet in the reception area and conference room; "glass light" into executive area;
2. "curved" walls shown on Test Fit will be built straight;
3. any millwork, cabinetry, counters, fixtures, equipment, and/or personal property, or specialty lighting;
4. distribution of plumbing or electrical power (and hook-ups) in the two (2) pantries; and
5. any other notation on Test Fit, not described specifically in the Lessor's Improvements above in this Exhibit B-1.

Inphonics Addendum #1 - Page 3

## 3.   Other Terms and Provisions.

All Provisions of the Lease, as modified herein, shall remain in full force and effect and apply to the Demised Premises. If any provision of this Addendum conflicts with a provision of the Lease, the provision of this Addendum shall control.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Addendum to be signed in their act and deed, intending to be legally bound by its terms and provision.

WITNESS:                          LESSOR:  Waterfront Center Limited Partnership

                                  By:   The Waterfront Corporation, its General Partner

                                  By:
                                        Richard D. Bernstein, President

WITNESS:                          LESSEE: Inphonic, Inc.

                                  By:
                                        Name:
                                        Title:  SVP of Corporate

draft date: 08/14/03
C:\WORD DOCUMENTS\REALESTA\1010\INPHON-1A.ADN.DOC

# AMENDMENT TO ADDENDUM NUMBER TWO TO LEASE

THIS AMENDMENT TO ADDENDUM NUMBER TWO TO LEASE (this "*Amendment*") is made as of this 14 day of May 2004 ("*Effective Date*"), by and between INPHONIC, INC., a Delaware corporation (the "*Lessee*"), and Waterfront Center Limited Partnership (the "*Lessor*").

## RECITALS

WHEREAS, the Lessor and the Lessee entered into that certain Addendum Number Two to Lease, dated May ___, 2004 (the "*Addendum*") setting forth the terms and conditions upon which the parties desire to expand the Demised Premises; and

WHEREAS, the parties now desire to amend the Addendum to the extent, and only to the extent, provided herein; and

WHEREAS, any terms not otherwise defined herein shall have the meanings given to them in the Lease and any addenda thereto.

## AGREEMENT

NOW, THEREFORE, in consideration of the agreements and undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as set forth below.

1.     *AMENDMENT TO EXHIBIT 1 OF THE ADDENDUM*. Exhibit 1, the "EXPANSION AREA IMPROVEMENTS" shall be amended to include the following subsection No. 5:

5.  Lessor agrees to provide three (3) additional 120 Volt, 20 Amp dedicated electric circuits to provide power to Lessee installed modular furniture systems as depicted in Lessee's submitted floor plans.

2.     RATIFICATION. Except as provided herein, the Lease and any addenda thereto and their terms and provisions shall remain in full force and effect and shall constitute the legal, valid, binding and enforceable obligation of each of the Lessee and the Lessor and shall not be released, impaired, diminished or in any other way modified or amended as a result of the execution and delivery of this Amendment.

3.     ENTIRE AGREEMENT. This Amendment sets forth the entire agreement and understanding of the parties hereto in respect of the matters described herein. The terms herein may not be changed verbally but only by an instrument in writing signed by the party against which enforcement of the change is sought.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed as of the date first above written.

*Signatory Page Follows*

IN WITNESS WHEREOF, Lessor and Lessee have caused this Amendment to be signed in their act and deed, intending to be legally bound by its terms and provision.

LESSEE:                                                    WITNESS:

INPHONIC, INC.

By: _____
Lawrence S. Winkler
Chief Financial Officer

LESSOR:                                                    WITNESS:

Waterfront Center Limited Partnership

By:  The Waterfront Corporation, its General Partner                    5-14-4

_____
Richard D. Bernstein, its President

# EX HIBIT "H"

15.12.4



ORIG PREMISES

Existing Conference Room

Existing File Room

CONFIDENTIAL

NEW DOOR

NEW DOOR

Straighten out door (curved)

Demo if Necessary

EXPANSIO AREA

IMAGE IS APPROX

NOT-TO SCALE

1010 WASC 6TH FLOOR

← ORIG PREMISES →

✕✕✕ = DEMO WALL (AND ASSOCIATED DOORS)

╫╫ = NEW WALL

ALL OTHER WALLS, EXISTING, REMAIN IN PLACE

# EXHIBIT "I"

## THE "EXPANSION AREA IMPROVEMENTS"

The work to be provided by Lessor (the **"Expansion Area Improvements"**) in the Expansion Area shall be as follows:

    1.  Newly paint all vertical walls in one (1) color to match the print color in the original premises (which may not be an exact match due to fading, normal wear and tear, and/or changes in manufacturers' specifications;

    2.  Install new carpet and base to match the carpet in the original premises (which may not be an exact match due to fading, normal wear and tear, and/or changes in manufacturers' specifications;

    3.  Such demolition and new wall construction to generally match the floor plan attached to this Addendum as Exhibit "H"; and

    4.  On new walls, electrical outlets and telephone outlets (with "ring and string" only) in mutually agreeable locations following general office standards.

Except for the work set forth above in this Exhibit "I", Lessee accepts possession of the Expansion Area and Building in their "as-is" condition existing on the Lease date. Lessor reserves the right to reasonably modify the above if field conditions require such modification. In the case where significant modification is required, the Lessor will notify the Lessee of such modification. All Expansion Area Improvements shall be of Lessor's Building Standard unless otherwise noted.

# R B Associates, Inc.

July 21, 2006

InPhonic, Inc.
1010 Wisconsin Avenue, N.W. Suite 600
Washington, DC 20007
Attention: Mr. David A. Steinberg, CEO

**Via Facsimile**
@ 202.333.5775
Hard copy to follow

RE:   Proposal - Lease Term Extension & Premises Expansion @ Waterfront Center

Dear David:

We thank you for Inphonic's recent expression of interest in expanding its premises and extending its lease term at the subject property. Therefore, R B Associates, Inc. (the **"Lessor"**) hereby submits this proposal to Inphonic (the **"Lessee"**) for a modification of its existing lease (the **"Modification"**) at the subject building (the **"Building"**). This proposal is effective for five (5) days and if agreed to, shall serve as an outline of basic terms and conditions to be incorporated into the Modification.

**Premises:**   Commencing on September 1, 2006 the premises shall be expanded to include suites #100 and #200 (the **"Expansion Premises"**) located on the first and second floors of the Dodge Warehouse portion of the Building (@ 1000 Wisconsin Avenue) and consisting of a total of 4,072 rentable square-feet of area, as further shown (generally) on Exhibit "A" attached hereto.

**Lease Term:**   The Lease Term shall be extended for one (1) year, commencing on December 1, 2008 and ending on November 30, 2009.

**Base Rent:**   (a)  Expansion Premises: The initial base rent shall be $35.00/sf = $11,877.30/month (rounded-off) which shall be added to the Monthly Rent for the current Lease-Year as well as for Lease-Year Four (4) which commences on December 1, 2006. $12,351.86/month will be added to the Monthly Rent for Lease-Year Five (5) which commences on December 1, 2007.

(b)  Entire Premises:  Monthly Rent for the Lease-Year which commences on December 1, 2008 shall be $60,186.00.

**Utilities/Charges:**   (a)  For the Expansion Premises, Lessee shall pay for its: i) electrical and gas consumption – such consumption recorded by meters; and ii) insurance. Lessor shall pay for: i) reasonable water consumption; and ii) cleaning after standard business hours.

THE CLASSIC HOSPITALITY OF FINE HOTELS, RESTAURANTS
AND COMMERCIAL REAL ESTATE

1054 31st Street, NW • Suite 1000 • Washington, DC 20007-4403
202/342-1054 • FAX 202/342-0973

InPhonic, Inc.
Lease Extension - Page 2
July 21, 2006

(b) No change with respect to the original Premises.

**R.E. Taxes:**  Starting with Lease-Year six (6), Lessee shall pay its pro-rata share of the increases in the Building's real estate taxes, over a base-year of Tax-Year 2007.

**Premises Improvements:**  Lessee shall accept the Expansion Premises in "as-is" condition, however, the Lessor shall make those certain improvements to the Expansion Premises as identified on Exhibit "B" attached hereto.

**Deposit/Guarantee:**  Lessee shall provide Lessor with full, current financial information and references; from which Lessor shall determine the additional security deposit/guarantee(s) required under the Lease.

**Broker:**  Lessee represents and warrants to the Lessor, that it has not employed any person or other who may claim any commission relating to the Modification.

The parties hereto agree that this proposal is non-binding (except for "Broker" section) on its signatories and that only a fully executed Modification will obligate the parties thereto, to each other. If the foregoing meets with InPhonic's approval, please have this indicated with an authorized signature below and timely return to us along with the information specified above in the Deposit/Guarantee section. We look forward to working with you and InPhonic, and we are pleased to offer you with this opportunity.

By:  R B Associates, Inc.          Seen & Agreed to this _____ day of August 2006

By: _____
    Theodore D./R. Vogel
    Vice President-Real Estate       Title: _____
                                     Name: _____

Enclosures

cc:  Allison Berry

Draft Date: July 21, 2006
C:\WORD DOCUMENTS\REALESTATE\10103 Tenants\INPHON-R.pro.doc





EXHIBIT ", 2 of 2

IMAGE & DIMENSIONS APPROXIMATE    7/21/6

2nd FLOOR

RB ASSOCIATES, INC.

DODGE WAREHOUSE
1200 WISCONSIN AVE. NW
WASHINGTON, DC 20001

EXHIBIT "B"

The "Expansion Improvements"

The work to be provided by Lessor to the Expansion Premises at no additional cost to Lessee (the "Expansion Improvements") shall be as follows:

1.  Install new carpet and base color (one (1) color for each) to be selected by the Lessee from Building Standard Selections.

2.  Walls:

    a.  Drywall walls painted, with latex flat, in one (1) color to be selected by the Lessee from Building Standard Selections.

    b.  Up to thirty linear feet (30') of new partition walls built pursuant to a plan and as mutually agreed upon between Lessor and Lessee.

3.  Install new light fixtures to match plan, approximately one (1) fixture per 150 s.f. of area.

**Notes:**  All Expansion Improvements shall be of Lessor's Building Standard unless otherwise noted.

# R B Associates, Inc.

*For 1000*

August 10, 2006

InPhonic, Inc.
1010 Wisconsin Avenue, N.W., Suite 600
Washington, DC 20007
Attention: Mr. David A. Steinberg, CEO

<u>**Via Facsimile**</u>
@ 202.333.5775
Hard copy to follow

RE:    <u>Proposal #2- Lease Term Extension & Premises Expansion @ Waterfront Center</u>

Dear David:

We thank you for Inphonic's recent response to our July 21st proposal, and therefore, R B Associates, Inc. (the "**Lessor**") hereby submits this *revised* proposal to Inphonic (the "**Lessee**") for a modification of its existing lease (the "**Modification**") at the subject building (the "**Building**"). This proposal is effective for five (5) days and if agreed to, shall serve as an outline of basic terms and conditions to be incorporated into the Modification.

<u>**Premises:**</u>    Commencing on September 15, 2006 the premises shall be expanded to include suites #100 and #200 (the "**Expansion Premises**") located on the first (1st) and second (2nd) floors of the Dodge Warehouse portion of the Building (@ 1000 Wisconsin Avenue) and consisting of a total of 4,072 rentable square-feet of area, as further shown (generally) on Exhibit "A" attached to the prior proposal.

<u>**Lease Term:**</u>    The Lease Term shall be extended for one (1) year, commencing on December 1, 2008 and ending on November 30, 2009.

<u>**Base Rent:**</u>    (a)    Expansion Premises: The initial base rent shall be $33.50/sf = $11,368.42/month (rounded-off) which shall be added to the Monthly Rent for the current Lease-Year as well as for the Lease-Year which commences on December 1, 2006. $34.50/sf = $11,707.86/month (rounded-off) shall be added to the Monthly Rent for the Lease-Year which commences on December 1, 2007.

(b)    Entire Premises:   Monthly Rent for the Lease-Year which commences on December 1, 2008 shall be $59,556.00 = $36.00/sf.

<u>**Utilities/Charges:**</u>    (a)   For the Expansion Premises, Lessee shall pay for its: i) electrical and gas consumption – such consumption recorded by meters; and ii) insurance. Lessor shall pay for: i) reasonable water consumption; and ii) cleaning after standard business hours.

InPhonic, Inc.
Lease Extension #2 - Page 2
August 10, 2006

(b) No change with respect to the original Premises.

**R.E. Taxes:**  Starting with Lease-Year six (6), Lessee shall pay its pro-rata share of the increases in the Building's real estate taxes, over a base-year of Tax-Year 2007.

**Premises Improvements:**  Lessee shall accept the Expansion Premises in "as-is" condition, however, the Lessor shall make those certain improvements to the Expansion Premises as identified on Exhibit "B" attached hereto.

**Deposit/Guarantee:**  Lessee shall provide Lessor with full, current financial information and references; from which Lessor shall determine the additional security deposit/guarantee(s) required under the Lease.

**Broker:**  Lessee represents and warrants to the Lessor, that it has not employed any person or other who may claim any commission relating to the Modification.

The parties hereto agree that this proposal is non-binding (except for "Broker" section) on its signatories and that only a fully executed Modification will obligate the parties thereto, to each other. If the foregoing meets with InPhonic's approval, please have this indicated with an authorized signature below and _timely_ return to us along with the information specified above in the Deposit/Guarantee section. We look forward to working with you and InPhonic, and we are pleased to offer you with this opportunity.

By:  R B Associates, Inc.                    Seen & Agreed to this _____ day of August 2006

By: _____

Theodore D. R. Vogel                         Title: _____
Vice/President-Real Estate                   Name:

Enclosures

cc:  Allison Berry

Draft Date: August 10, 2006
C:\WORD DOCUMENTS\REALESTA\1010\Tenants\INPHON-10.pre doc

# EXHIBIT "B"

## The "Expansion Improvements"

The work to be provided by Lessor to the Expansion Premises at no additional cost to Lessee (the **"Expansion Improvements"**) shall be as follows:

1. Install new carpet and base color (one (1) color for each) to be selected by the Lessee from Building Standard Selections.

2. Walls:

   a. Drywall walls, painted, with latex flat, in one (1) color to be selected by the Lessee from Building Standard Selections.

   b. Up to twenty linear feet (20') of new partition walls built pursuant to a plan and as mutually agreed upon between Lessor and Lessee.

3. Install new light fixtures to match plan, approximately one (1) fixture per 150 s.f. of area.

**Notes:** All Expansion Improvements shall be of Lessor's Building Standard unless otherwise noted.