IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SN LIQUIDATION, INC., et al.,<br><br>Debtors. | : Chapter 11<br>:<br>: Cases No. 07-11666 (KG)<br>:<br>: Jointly Administered<br>:<br>: Hearing Date: March 28, 2008 at 10:00 a.m.<br>: Objection Deadline: March 18, 2008 at 4:00 p.m. |

**MOTION FOR ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE: (I) AUTHORIZING THE EMPLOYMENT OF CLEAR
THINKING GROUP LLC AND JOSEPH MYERS AS CHIEF WIND-DOWN OFFICER
FOR THE DEBTORS *NUNC PRO TUNC* TO FEBRUARY 21, 2008, AND
(II) APPROVING THE APPOINTMENT OF JOSEPH PARDO**

SN Liquidation, Inc., and their affiliated debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, file this motion (the "Motion") for an order under sections 105 and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") authorizing the employment of Clear Thinking Group LLC ("CTG") and Joseph Myers ("Myers")[1] as Chief Wind-Down Officer ("CWO") *nunc pro tunc* to February 21, 2008 and approving the appointment of Joseph Pardo as the sole member of the board of directors of each corporate debtor entity and as the manager or other authorized person for each limited liability company debtor entity.[2] In support of this Motion, the Debtors rely on the declaration of Myers (the "Myers Declaration"), a copy of which is attached hereto as Exhibit A and respectfully represent as follows:

---

[1] All references in this Motion to the employment and compensation of Mr. Myers are in Mr. Myers' capacity as a Managing Director of CTG as designated by CTG and not in a personal capacity.

[2] This Motion is filed out of an abundance of caution in the event Court approval is required for the Debtors' employment of CTG and Mr. Myers or the Debtors' appointment of Mr. Pardo. This Motion should not be construed as an admission that Court approval is required for such employment, appointment or compensation.

{00743032;v1}

## BACKGROUND

1. On November 8, 2007 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors continue to possess their property and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. On the Petition Date, the Debtors also filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion and the APA, the Debtors sought authority to sell substantially all of their business assets to the Buyer and to assume, sell and assign certain of their unexpired leases, license agreements, and executory contracts free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts ("Cure Costs") required under Bankruptcy Code section 365(b)(1)(A).

3. On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

4. On December 13, 2007, the Court entered the Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting

Related Relief, which approved and authorized the sale of substantially all of the Debtors' assets to Adeptio INPC Funding LLC ("Adeptio").

5. On December 21, 2007, the sale closed, and Adeptio assigned to Simplexity, LLC, a Delaware limited liability company and a subsidiary of the Buyer ("Simplexity"), its rights to receive the Assets from the Sellers under the APA.

6. The Debtors lost all of their employees after the sale of their assets to Adeptio and Simplexity. On January 31, 2008, in order to avoid the resignation of the sole remaining director without any replacement, the remaining director appointed Mr. Myers to fill a vacant seat on the board of INP Liquidation Corp. f/k/a InPhonic, Inc. and subsequently resigned. Shortly thereafter, on February 21, 2008, Mr. Myers appointed Mr. Pardo, a person entirely independent from CTG, to the board of directors of INP Liquidation Corp., and thereafter, Mr. Myers resigned. The remaining debtor affiliates are wholly-owned subsidiaries of INP Liquidation Corp., and the Debtors intend to appoint Mr. Pardo to serve as a director or manager or other authorized person, to the extent the entities are limited liability companies, for the affiliated debtors. As director of INP Liquidation Corp., Mr. Pardo has retained CTG and Myers as CWO pursuant to the Engagement Letter, subject to court approval to the extent necessary.

## RELIEF REQUESTED

7. By this Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105 and 363 (a) authorizing the employment of CTG and Myers as the Debtors' CWO under the terms contained in the Engagement Letter attached hereto as Exhibit B *nunc pro tunc* to February 21, 2008 and (b) approving the appointment of Joseph Pardo as the sole member of the board of directors of each corporate debtor entity and as the manager or other authorized person for each limited liability company debtor entity.

{00743032;v1}

## **BASIS FOR RELIEF**

8. The Debtors' employment of CTG, Mr. Myers and Mr. Pardo is necessary in these cases. The Debtors' require the assistance of sophisticated wind-down professionals who will guide them to a successful plan of liquidation.

9. CTG is an advisor and crisis manager providing services and advice specifically in the areas of restructuring and distressed debt, including the wind-down of the affairs of Chapter 11 debtors and post-confirmation trusts after the sale of substantially all the debtors' assets.

10. Mr. Pardo has extensive experience regarding the operation of businesses in a variety of complex chapter 11 bankruptcy cases, including liquidation cases. Mr. Pardo recently provided wind-down services in the following cases: In re APF Co., Case No. 98-1596 (Bank. D. Del.); In re Brothers Gourmet Coffees, Inc., Case No. 98-1970, (Bank. D. Del.); and In re Sabratek Corp., Case No. 99-4414, (Bank. D. Del.).

*Summary of the Terms of the Engagement*

11. CTG will designate Joseph Myers as CWO for the Debtors. In this capacity, the CWO will assist the Debtors in their financial and accounting operations and other CTG employees will provide services with an objective of guiding the Debtors to a successful plan of reorganization. The following list represents CTG's duties in connection with its retention in these cases:

    (a) Monitor ongoing litigation.

    (b) Coordinate the information-sharing protocol with Official Committee of Unsecured Creditors and Simplexity, Inc.

    (c) Coordinate the funding of the wind-down activities by Simplexity, Inc.

(d) Coordinate the contract acceptance/rejection process of Simplexity, Inc.

(e) Assist in plan and disclosure statement process.

(f) Prepare necessary reports.

12. To address and handle the above responsibilities on behalf of the Debtors, the CWO will be accompanied by a staff of administrative support with varying levels of skills and expertise with whom it has professional relationships. In addition, CWO may retain independent contractors, all of whom have a wide range of skills and abilities related to this type of assignment. All CTG employees and independent contractors will be subject to the agreements in the Engagement Letter with respect to titles, hourly rates and other descriptions set forth therein except as modified by this Motion or any Order approving this Motion. The independent contractors will serve at the direction of the CWO and/or the Debtors.

13. The fees charged for CTG professionals will be based on the following hourly rates as set forth in the Engagement Letter.

| Managing Directors | $400 |
| Consultants | $200 |
| Administrative Support | $75 - $100 |

14. Mr. Pardo will charge $5,000 per month for his services and shall be entitled to reimbursement for his reasonable out-of-pocket expenses. Mr. Pardo and CTG will submit invoices to the Debtors on a monthly basis for payment of professional fees and reimbursement of out-of-pocket expenses incurred. The invoices shall include the name, rate and title of each person providing services to the Debtors.

15. The Debtors seek authority to pay, in the ordinary course of their business, all reasonable amounts invoiced by CTG and Mr. Pardo for fees and expenses.

16. Because CTG and Mr. Pardo are not being employed as professionals under Bankruptcy Code section 327, they will not be submitting quarterly fee applications under Bankruptcy Code sections 330 and 331.

*Indemnification*

17. The Engagement Letter also provides the following indemnification provision:

> INDEMNIFICATION. The Company agrees to indemnify, hold harmless and defend CTG (including our principals, employees, agents and the designated CWO) against all claims, liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursements of our counsel and the costs of our professional time (at CTG's rates in effect when such future time is required) relating to or arising out of the engagement, including any legal proceeding in which CTG may be required or agree to participate but in which it is not a party. CTG, its principals, employees and agents, may, but are not required to, engage a single firm of separate counsel of its choice in connection with any of the matters to which this Indemnification provisions relates. This Indemnification provision does not apply to actions taken or omitted to be taken by CTG in bad faith.

18. CTG's and Mr. Myers' decision to accept this engagement to provide management services to the Debtors is contingent upon its ability to be retained in accordance with terms and conditions of the Engagement Letter.

*Applicable Authority*

19. Bankruptcy Code section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or, judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Code section 363(c) authorizes the Debtors to enter into certain transactions and use property of their estates in the ordinary course of business. See 11 U.S.C. § 363(c).

6

{00743032;v1}

20. Arguably, entering into contractual arrangements for the provision of interim management is within the ordinary course of the Debtors' business as contemplated by the Bankruptcy Code and does not require Bankruptcy Court approval. Corporations routinely hire and fire senior executives. The absence of executives capable of achieving successful wind-down and administration of the estate would severely hinder the Debtors' ability to operate in an efficient and effective manner.

21. Even if this Court finds that Bankruptcy Code section 363(c) does not apply, the requested relief is warranted under Bankruptcy Code section 363(b). Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). This Court and courts in other districts have authorized the retention of officers under Bankruptcy Code section 363, including the in the following cases: In re RCN Corp., Case No. 04-13638 (Bankr. S.D.N.Y. July 30, 2004); In re Parmalat USA Corp., Case No. 04-11139 (Bankr. S.D.N.Y. Sept. 2, 2004); In re Mirant Corp., Case No. 03-46590 (Bankr. N.D. Tex. Sept. 29, 2003); and In re Fleming Cos., Case No. 03-10945 (Bankr. D. Del. June 25, 2003).

22. The Debtors request that this Court authorize their employment of CTG and Mr. Myers and approve the appointment of Mr. Pardo and the employment of any other necessary personnel by CTG to the extent such employment falls outside the ordinary course of business. Such authorization is appropriate if the Debtors demonstrate a sound business justification for doing so. See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Del. & Hudson Ry. Co., 124 B.R. 169, 179 (D. Del. 1991).

23. Once the Debtors articulate a valid business justification, "the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has shields the Debtors' management from judicial second-guessing. Id.; see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtors' management decisions.").

24. Here, a sound business justification exists for the retention of CTG and Mr. Myers and the appointment of Mr. Pardo. The Debtors are in bankruptcy and require personnel to oversee and approve the liquidation process. In all, the Debtors believe that CTG's, Mr. Myers' and Mr. Pardo's services are necessary as the Debtors need both a director and also an officer with significant financial experience and other employees with liquidation experience to guide them through this process, including formulating and obtaining approval of a disclosure statement and confirmation of a plan. CTG, Mr. Myers and Mr. Pardo have such experience.

25. The Debtors have reviewed the Engagement Letter and have determined that the terms of the Engagement Letter are within the range of those for senior executive officers employed with companies of comparable size, value and reputation.

Accordingly, the Debtors believe that the decision to enter into the Engagement Letter reflects an exercise of the Debtors' sound business judgment.

26. Numerous courts, including this Court, have authorized the retention of officers in bankruptcy cases, see supra ¶ 16, and the Debtors request authorization for their cases.

27. The Debtors firmly believe that under Bankruptcy Code section 363, the retention of CTG and Mr. Myers as CWO and the appointment of Mr. Pardo are appropriate and in the best interests of the Debtors and their estates and creditors.

## NOTICE

28. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Adeptio; (3) counsel to the Creditors' Committee; and (4) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto authorizing the employment and compensation of CTG and Mr. Myers by the Debtors *nunc pro tunc* to February 21, 2008 and approving the appointment of Mr. Pardo.

Date: February 29, 2008
Wilmington, Delaware

By: /s/ Joseph Pardo
Joseph Pardo
INP Liquidation Corp.

{00743032;v1}