# EXHIBIT B



401 Towne Centre Drive
Hillsborough, NJ  08844
(908) 431-2121 Tel
(908) 359-5940 Fax

CLEAR
THINKING
GROUP, LLC

February 21, 2008


Joseph Pardo
Director
Board of Directors
SN Liquidation, Inc.
11130 Sunrise Valley Drive
Suite 300
Reston, VA  20191

Via Email

Re:  SN Liquidation, Inc., et al


Dear Mr. Pardo:

This agreement ( "Agreement") sets  forth  the terms and conditions pursuant  to which SN Liquidation, Inc., et al ( the "Company") has retained Clear Thinking Group LLC ("CTG") to provide the services of *Chief Wind-down Officer* ("CWO") through a designated executive of CTG. This  Agreement shall be effective February 21, 2008 and continue until the confirmation of the  Plan  of Reorganization, unless earlier terminated pursuant to the provisions set forth elsewhere herein.  References to CTG in this Agreement shall include its principals, employees, agents and the hereinafter designated CWO. Throughout this Agreement the Company and CTG may be referred to individually as a "party", or collectively as "parties".

This is an engagement for services only and decisions relating to the implementation of the advice and recommendations of CTG during the course of its engagement shall be made by and are the sole responsibility of the Company.


MANAGEMENT AND SCOPE OF ASSIGNMENT.

Joseph Myers, Managing Director of CTG, shall be the designated CWO. CTG reserves the right to designate an alternate CWO at its discretion. The CWO will be assisted, as necessary and appropriate, by a staff of professionals and administrative support with varying levels of

● Page 2

skills and experience suitable for this assignment. In addition, the CWO may retain independent contractors with specialized skills and abilities, and with whom it has relationships, to assist with the performance of his duties.

The duties of the CWO include, but are not limited to:

- monitor ongoing litigation
- coordinate the information-sharing protocol with Official Committee of Unsecured Creditors and Simplexity, Inc.
- coordinate the funding of the wind-down activities by Simplexity, Inc.
- coordinate the contract acceptance/rejection process with Simplexity, Inc.
- assist in plan and disclosure statement process
- prepare necessary reports

TIMING, FEES AND EXPENSES. CTG will commence this engagement immediately upon receipt of a signed engagement letter. We will submit invoices to the Company on a monthly basis for payment. Our fees for this assignment will be based on the hours charged at the following hourly rates: Managing Directors: $400; Consultants: $200; Administrative Support: $75 - $100. In addition to our professional fees, the Company shall reimburse CTG monthly, upon presentation of reasonably detailed invoices, for all reasonable out-of-pocket expenses incurred, including, but not limited to, travel, lodging, data process and communications charges, courier services, (collectively, the "Expenses") in connection with the performance of services hereunder.

RELATIONSHIP OF THE PARTIES. The parties intend that an independent contractor relationship will be created by this Agreement and neither party shall be considered an employee, agent or representative of the other. Employees or agents of CTG are not entitled to any of the benefits that the Company provides for the Company's employees.

CONFIDENTIALITY. CTG agrees to keep confidential all information obtained from the Company. CTG agrees that neither it nor its directors, officers, principals, employees, agents or attorneys will disclose to any other person or entity, or use for any purpose other than specified herein, any information pertaining to the Company or any affiliate thereof which is either non-public, confidential or proprietary in nature ("Information") which it obtains or is given access to during the performance of the services provided hereunder. CTG may make reasonable disclosure of Information to third parties in connection with their performance of their obligations and assignments hereunder. In addition, CTG will have the right to disclose to others in the normal course of business its involvement with the Company.

Information includes data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models, or any work product relating to the business of the Company, its subsidiaries, distributors affiliates, vendors, customers, employees, contractors and consultants. The Company acknowledges that all advice (written or oral) given by CTG to the Company in connection with CTG's engagement is intended solely for the benefit and use of the Company (limited to its management) in considering the transactions to

● Page 3

which it relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks and programs referred to herein without CTG's prior approval (which shall not be unreasonably withheld) except as required agents from by law. This agreement shall survive the termination of the engagement.

INDEMNIFICATION. The Company agrees to indemnify, hold harmless and defend CTG (including our principals, employees, agents and the designated CWO) against all claims, liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursements of our counsel and the costs of our professional time (at CTG's rates in effect when such future time is required) relating to or arising out of the engagement, including any legal proceeding in which CTG may be required or agree to participate but in which it is not a party. CTG, its principals, employees and agents, may, but are not required to, engage a single firm of separate counsel of its choice in connection with any of the matters to which this Indemnification provisions relates. This Indemnification provision does not apply to actions taken or omitted to be taken by CTG in bad faith.

TERMINATION AND SURVIVAL. This Agreement may be terminated at any time by written notice by one party to the other, provided, however, that notwithstanding such termination CTG will be entitled to any fees and expenses due under the provisions of the Agreement. Such payment obligations shall inure to the benefit of any successor or assignee of CTG. The obligations of the parties under the Indemnification and Confidentiality sections of this Agreement shall survive the termination of the Agreement as well as the other sections of this Agreement, which expressly provide that they shall survive termination of this Agreement.

GOVERNING LAW. This Agreement is governed by and construed in accordance with the laws of the State of New Jersey with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof. If we have any dispute arising between us, including any dispute with respect to this Agreement, its interpretation, performance or breach, and are unable to agree on a mutually satisfactory resolution with thirty (30) days, either party may require the matter to be settled by the American Arbitration Association in accordance with its Commercial Arbitration Rules. The arbitration shall take place in the State of New Jersey. The decisions of the arbitrator(s) shall be final and binding on the parties hereto and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The costs assessed by the AAA for arbitration shall be borne equally by both parties.

LIMITATIONS. This is a services engagement. CTG warrants that it will perform services hereunder in good faith and disclaims all other warranties. We will not be liable for any actions, damages, claims, liabilities, costs, expenses or losses arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by the Company to CTG in performing the services that form the basis for the action or claim. In addition, we will not be liable for any delays resulting from circumstances or causes beyond our reasonable control, including without limitation, fire or other casualty, acts of God, strikes or labor disputes, war or other violence, or any law, order or required of any governmental agency or authority.

● Page 4                                                    February 22, 2008

SEVERABILITY. If any portion of this Agreement shall be determined to be invalid or unenforceable, we each agree that the remainder shall be valid and enforceable to the maximum extent possible.

NOTICES. All notices required or permitted to be delivered under this Agreement shall be in writing and sent, if to CTG, to the address set forth at the head of this letter and, if to the Company, to the address set forth above, to the attention of Joseph Pardo or such other name or address as may be given in writing to the other party. All notices under this Agreement shall be sufficient if delivered by facsimile, express mail or electronic transmission. Any notice shall be deemed to be given upon actual receipt.

ENTIRE AGREEMENT. The Company agrees that this Agreement represents the entire understanding of the terms of CTG's engagement and that it supersedes any prior understandings or agreements that the parties may have had or discussed. The terms and provisions of this Agreement may not be modified or amended except in a writing signed by an authorized representative of the Company and CTG.

If the terms of this Agreement meet with your approval, please sign and return the enclosed copy of this proposal to my attention.

Very truly yours,

Joseph E. Myers
Partner and Managing Director
Clear Thinking Group LLC


Accepted and Acknowledged:


Signed: _____

Name: _____

Title: _____

Date: _____