UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| SN LIQUIDATION, INC. | : Case No. 07-11666 (KG) |
| F/K/A INPHONIC, INC., et al.,[1] | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : **Objection deadline: March 14, 2008 @ 4:00 p.m.** |
| _____ | **Hearing date: March 28, 2008 @ 10:00 a.m.** |

**OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING RETROACTIVE REJECTION OF CERTAIN
UNEXPIRED LEASES AND EXECUTORY CONTRACTS [RE: D.I. 402]**

Yellow Page Authority, Ltd. ("YPA"), by and through its undersigned counsel, submits this objection ("Objection") to the Debtors' Second Motion for an Order Authorizing Debtors to Reject Certain Unexpired Leases and Executory Contracts Pursuant to Section 365(a) of the Bankruptcy Code filed on February 25, 2008 (the "Motion") requesting the rejection of the YPA's Held Contracts (as defined herein) *retroactively* to an indeterminate "earlier" date than the date upon which this Court ultimately may enter an order granting Debtors' request to reject the YPA's Held Contracts, and in support states as follows:

<u>Background</u>

1.      On November 8, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      YPA is a full-service agency specializing in nationwide Yellow Page advertising, internet advertising and advertising design. YPA is a party to certain agreements with Debtors for the provision of such advertising services (the "YPA Agreements").

---

1 The Debtors are Inphonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC and 1010 Interactive, LLC.

3.      On the Petition Date, the Debtors filed their Motion For Order (I) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets, (II) Scheduling A Hearing to Consider the Sale and Approving the Form and Manner of Notices, (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, (IV) Approving Expense Reimbursement Provision, and (V) Granting Related Relief (the "Sale Motion and Agreement").

4.      On or about November 14, 2007, Debtors filed a Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and Sale Hearing as it pertains to YPA (the "Cure Notice"), whereby the Debtors proposed to pay to YPA a cure amount of $286,174.13 (the "Proposed Cure Amount").

5.      As noted in YPA's objection to the Proposed Cure Amount, as of the Petition Date the Debtors had failed to pay to YPA directory-listing charges in the amount of $629,053.27 (the "Current Amounts Owed"), for the items and charges detailed in the invoices collectively attached hereto as Exhibit 1.

6.      On or about December 13, 2007, the Bankruptcy Court entered an order approving the Sale Motion and Agreement [D.I. 250] (the "Sale Order").  The Sale Order authorized the Debtors to assume and assign the Designated Contracts (as defined in the Sale Motion and Agreement) to Adeptio INPC Funding, LLC, a Delaware limited liability company (defined as "Adeptio" or "Buyer" in the Sale Order).  The Sale Order also authorized Adeptio to direct the Debtors to assume additional contracts and "hold" contracts as follows:

> The Buyer reserves its right under Section 2.5(b) of the Agreement to, within ten (10) days of Closing of the Sale, designate as a held contract (the "Held Contract", as defined in the Agreement) any executory contract and/or unexpired lease that is not on the Notice of Assumption, Sale and Assignment of Designated Unexpired Leases and Executory Contracts filed on December 10, 2007 (Docket No. 213) and to which a Debtor is a party. *The Debtors shall hold and not reject*

> *each Held Contract for a period of 210 days following the Closing of the Sale (the "Contract Retention Period").* As soon as practicable after receiving written notice from the Buyer to assume and assign a Held Contract, the Debtors shall take all actions reasonably necessary to assume and assign the Held Contract to Buyer pursuant to Bankruptcy Code § 365. Any applicable cure cost for the assumption and assignment of a Held Contract shall be paid in accordance with the Agreement. *The Buyer shall compensate the Debtors for "Liabilities," as defined in the Agreement, for the continuation of a Held Contract during the Contract Retention Period up to and including the date which is five (5) days following the Debtors' receipt of written notice from the Buyer authorizing rejection of the same.*

Sale Order, Recital Y (emphasis added). Correspondingly, the Sale Order went on to state:

> The Buyer may designate certain unexpired leases or executory contracts as a Held Contract. *The Debtors shall hold and not reject each Held Contract for the Contract Retention Period.* During the Contract Retention Period, the Buyer may direct the Debtors to assume and assign the Held Contract to the Buyer. As soon as practicable after receiving written notice from the Buyer to assume and assign the Held Contract the Debtors shall take all actions reasonably necessary to assume and assign the Held Contract to Buyer pursuant to Bankruptcy Code §365. Any applicable cure cost for the assumption and assignment of a Held Contract shall be paid in accordance with the Agreement. *The Buyer shall compensate the Debtors for "Liabilities," as defined in the Agreement, for the continuation of a Held Contract during the Contract Retention Period up to and including the date which is five (5) days following the Debtors' receipt of written notice from the Buyer authorizing rejection of the same.*

Sale Order, Decretal ¶30 (emphasis added).

7.    Pursuant to the Sale Order, the Debtors agreed to hold and not reject each Held Contract for a period of 210 days following the December 21, 2007 Closing of the Sale (the "Contract Retention Period"). The Sale Order further provided that any applicable cure cost for the assumption and assignment of a Held Contract shall be paid in accordance with the Agreement, and that the Buyer shall compensate the Debtors for "Liabilities," as defined in the Agreement, for the continuation of a Held Contract during the Contract Retention Period up to and including the date which is five (5) days following the Debtors' receipt of written notice from the Buyer authorizing rejection of the same. Sale Order, ¶Y.

8.    During the course of the December 13, 2007 hearing on the Sale Motion and Agreement, counsel for Debtors and Adeptio discussed with the Court the meaning of the above-quoted provisions of the Sale Order. Counsel for Debtors and Adeptio agreed that pursuant to these provisions, Adeptio had agreed to pay all of the administrative carrying costs or operating costs for both the post-petition period and post-closing up until the date that a Held Contract is accepted, or rejected, by the Debtors. <u>See</u> December 13, 2007 Transcript ("TR") at p. 33, ll. 1-17. [Docket No. 432].  True, correct and authentic copies of the TR pp. 33 and 34 are attached hereto as <u>Exhibit 2</u>.

9.    Specifically, Adeptio, by counsel, stated, "Your Honor, it is correct that we're [Adeptio] picking up the carrying costs of these contracts, post-closing and that we're assuming post petition trade payables.  Counsel was a little bit liberal with the language he was using, we are assuming liabilities as defined in the APA and that definition of liability is pretty broad. Counsel can take a look at it, so I think it would encompass the type of things he's concerned about, Your Honor."  TR at p. 33, ll. 19-25; p. 34, l. 1.

10.    On or around December 21, 2007, Adeptio assigned to Simplexity, LLC, a Delaware limited liability company and a subsidiary of Adeptio ("Simplexity"), its rights to receive the Assets from the Debtors under the Agreement (as defined in the Agreement).

11.    On December 31, 2007, pursuant to the Sale Order and Section 2.5(b) of the Agreement, Simplexity submitted to the Debtors a notice (the "December 31 Notice") setting forth additional Designated Contracts for assumption and assignment ("Additional Designated Contracts") and contracts to be "held" by the Debtors pursuant to the terms of the Sale Order and Section 2.5(b) of the Agreement ("Held Contracts").[2] The YPA Agreements with Debtors were

---

2 On January 20, 2008, the Bankruptcy Court entered that certain Order Approving (A) The Assumption and Assignment of Additional Designated Contracts; and (B) Procedures for Future Assumption and Assignment of

listed on "Annex A – Held Contracts" to the December 31 Notice ("YPA's Held Contracts"). The December 31 Notice was, in turn, attached as <u>Exhibit 1</u> to Debtors' January 7, 2008 Omnibus Motion for Order Approving (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (B) Procedures for Future Assumption and Assignment of Certain Held Contracts Pursuant to the December 13, 2007 Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtor Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief.

12.     Pursuant to the Sale Order and following the issuance of the December 31 Notice, Simplexity and YPA agreed that the sum of $481,391.00 was owed to YPA for orders requiring service by YPA following the Petition Date. Declaration of Patrick M. Fagen (the "Fagen Decl."), which is filed contemporaneously herewith.  Fagen Decl. 7, 8.

13.     Pursuant to this agreement, Simplexity agreed to pay YPA the sum of $481,391.00 in three installments, to be paid as follows: (a) $160,463.67 by February 1, 2008; (b) $160,463.67 by March 1, 2008; and (c) $160,463.66 by April 1, 2008.  Fagen Decl. ¶ 9.

14.     To date, YPA has not received any of the monies Simplexity agreed to pay. Fagen Decl. ¶ 10.

15.     Notwithstanding the Sale Order, the designation of YPA's Held Contracts by the December 31 Notice, and the agreement of Simplexity to pay YPA the sum of $481,391.00 in three installments, on or around January 30, 2008 and February 15, 2008, Simplexity apparently submitted to the Debtors notices (the "Notices") setting forth, among other things, lists of

---

Certain Held Contracts, authorizing the Debtors to assume and assign certain contract to Simplexity and establishing the procedures for future assumption and assignment of held contracts.

contracts and leases to be rejected by the Debtors and removed from the list of Held Contracts, including – remarkably – YPA's Held Contracts.  The Debtors seek relief with respect to those contracts which, by the Notices, Debtors apparently no longer wish to designate as Held Contracts, and now wish to reject ("Rejected Contracts").

YPA's Objection

16.     By the Motion, the Debtors request the entry of an order under Bankruptcy Code §§ 105(a) and 365(a) authorizing the Debtors to reject the Rejected Contracts <u>nunc pro tunc</u> to December 21, 2007 (the date of the closing of the sale) or, in the alternative, the earlier of: (a) the date the Debtors notified the non-debtor party to the Rejected Contracts of the Debtors' intent to reject the contract by service of the instant motion; or (b) the date of entry of the Order approving this Motion (the "Rejection Date").  The Rejected Contracts, as enumerated in <u>Exhibit A</u> to the Motion, include YPA's Held Contracts.

17.     YPA, as the holder of contracts designated as Held Contracts pursuant to the December 31 Notice, objects to the Motion on the grounds that it violates the plain language of the Sale Order regarding the Debtors' duties towards Held Contracts and the agreement by Simplexity to pay YPA $481,391.00.

18.     Specifically and as noted above, the Sale Order provides that "Debtors shall hold and not reject each Held Contract for the Contract Retention Period," which as noted above runs through July 18, 2008. During this period, and per the terms of the Sale Order, "The Buyer shall compensate the Debtors for 'Liabilities,' as defined in the Agreement, for the continuation of a Held Contract during the Contract Retention Period up to and including the date which is five (5) days following the Debtors' receipt of written notice from the Buyer authorizing rejection of the same." In other words, Adeptio (or, now, Simplexity) was required to provide Debtors the

6

financial wherewithal to "continue" the Held Contracts – including YPA's Held Contracts – during the Contract Retention Period.

19.    In good-faith reliance upon the express terms of the Sale Order and the December 31 Notice, which guaranteed that its agreements would be "continued" through July 18, 2008, YPA has incurred additional expenses in the form of placing Yellow Pages directory advertisements and incurring costs associated therewith.

20.    YPA further objects to the Motion's request that the rejection of YPA's Held Contracts be deemed effective as of the *earlier* of (a) the date of the closing of the sale, December 21, 2007, *or* (b) the date upon which Debtors provided notice of the termination to YPA, rather than the date of the entry of an order approving the proposed rejection. Instead, and for the reasons noted above, pursuant to the express terms of the Sale Order and the December 31 Notice, the earliest effective date of any such rejection of YPA's Held Contracts must be the date the Court enters an Order granting such rejection.

21.    Moreover, Debtors' request for retroactive relief is not consistent with the dictates of the Code, and should be denied as to the YPA Agreements. Normally, the effective date of a rejection is the date the Order is entered. In re Fleming Companies, Inc., 304 B.R. 85, 96 (Bankr. D. Del. 2003); see also In re Nat'l Record Mart, Inc., 272 B.R. 131, 133 (Bankr. W.D. Pa. 2002) (agreeing with the general principle that the effective date of a debtor's rejection of an unexpired lease is the effective date the court enters the order); In re Appliance Store, Inc., 148 B.R. 234, 240 (Bankr. W.D. Pa. 1992) (finding that the plain unequivocal language of section 365 states that court approval is a precondition to a debtor's rejection of a lease). See also In re Amber's Stores, Inc., 193 B.R. 819, 825-26 (Bankr. N.D. Tex. 1996) (noting that the majority of

courts have found that the effective date of rejection is the date of the entry of the bankruptcy court's order approving rejection).

22.     Rejection has been allowed *nunc pro tunc* to the date a motion is filed or the premises surrendered, whichever is later, only in extraordinary circumstances.  Fleming, 304 B.R. at 96.  To grant *nunc pro tunc* rejection, the debtor must have stated an unequivocal intent to reject the leases.  Id.

23.     Here, the Debtors unequivocally agreed to hold and not reject each Held Contract – including YPA's Held Contracts – during the 210-day Contract Retention Period, and promised to make payments on them on a going forward basis.  Sale Order, ¶Y.

24.     Instead, and ignoring the Sale Order and the December 31 Notice, the Debtors now seek an order which rejects YPA's Held Contracts *retroactively* to an indeterminate "earlier" date than the date upon which this Court ultimately may enter an order granting Debtors' request to reject the YPA Agreements.

25.     If Debtors unilaterally are allowed to reject YPA's Held Contracts *retroactively* to an indeterminate date "earlier" than the date commanded by the Sale Order, or upon which this Court ultimately may enter an order granting Debtors' Motion, then this Court's Sale Order is rendered meaningless and this Court's role in approving the rejection of YPA's Held Contracts becomes nothing more than a ministerial act.

26.     Here, Debtors have shown no compelling circumstances for the retroactive rejection of YPA's Held Contracts.  Debtors have not requested expedited relief from this Court in order to minimize the estates' exposure to YPA's administrative claims.  YPA has not engaged in any inequitable conduct that seeks to delay the entry of an order rejecting YPA's Held Contracts.  Debtors' only justification for this extraordinary relief is the implication that

retroactive rejection will save the estates money.  If that were the standard, then every rejection motion would include a request for retroactive application, and court approval would be essentially meaningless.

27.     As Debtors have shown no extraordinary circumstances that merit extraordinary relief, Debtors' request for retroactive rejection of the YPA Agreements should be denied.

*(remainder of page intentionally left blank)*

WHEREFORE, YPA respectfully requests that the Court (1) determine that the rejection of the YPA Held Contracts should be effective, if at all, upon the Court's approval of the rejection of the YPA Held Contracts, and (2) grant YPA all other relief just and proper.

Dated:  March 14, 2008          Respectfully submitted,

/s/ Peter J. Duhig                               .
Peter J. Duhig (Bar No. 4024)
BUCHANAN INGERSOLL & ROONEY, P.C.
The Brandywine Building
1000 N. West Street, Suite 1410
Wilmington, DE 19801
Tel. 302/552-4200; Fax 302/552-4295
Email: peter.duhig@bipc.com

– and –

William H. Schorling (Bar No. 4055)
BUCHANAN INGERSOLL & ROONEY, P.C.
Two Logan Square, 12th Floor
Philadelphia, PA 19103
Tel. 215/567-7508; Fax 215/567-2737
Email: william.schorling@bipc.com

– and –

C. Daniel Motsinger
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204-2079
Tel. 317/636-4341; Fax 317/636-1507
Email: cmotsinger@kdlegal.com

Attorneys for Yellow Page Authority, Ltd.

#1011337-v2