IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| SN LIQUIDATION, INC., *et al.*,[1] | : Case No. 07-11666 (KG) |
| | : |
| Debtors. | : Jointly Administered |
| | : |
| | : Ref. Docket Nos. 398 and 412 |

**ADEPTIO'S (A) REPLY TO QUALUTION'S OBJECTION TO THE DEBTORS' SECOND MOTION TO REJECT CERTAIN CONTRACTS AND LEASES AND (B) OBJECTION TO QUALUTION'S MOTION FOR POST-PETITION PAYMENTS**

Two matters relating to Qualution Systems, Inc. ("Qualution") currently are pending. First, Qualution objected to the above-captioned debtors' (the 'Debtors") motion to reject Qualution's contract with Star Number, Inc. (a Debtor) (Docket No. 412) (the "Objection"), arguing that the rejection effective date should occur on the date that Qualution's product is returned, not December 21, 2007, as sought in the Debtors' motion. Second, Qualution filed its motion for payment of administrative expenses under the contract (Docket No. 398) (the "Motion"), arguing that the Debtors owe $25,000 for December 2007 and January and February 2008.

---

[1] Pursuant to the Bankruptcy Court's order on January 29, 2008, the Debtors' cases, which were jointly administered under the name "InPhonic, Inc., *et al*.", are now jointly-administered under the name "SN Liquidation, Inc., *et al*.". The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

The Court should overrule the Objection and deny the Motion. Qualution knew that the Debtors planned to reject the license agreement on or before December 31, 2007, and Qualution has received the appropriate amount of relief under the Agreement.

### *Background*

1. Prior to these chapter 11 cases, Qualution and the Debtors entered into an agreement (the "Agreement"), effective as of October 7, 2003, under which Qualution granted the Debtors a non-exclusive license to use a wireless communications customer relations management software suite known as CATALYST for Telecom (the "Software"), and further agreed to provide certain maintenance services.[2]

2. On November 8, 2007, the Debtors filed these chapter 11 bankruptcy petitions with the Court. The Debtors filed numerous motions on the bankruptcy petition date, including a motion for approval of the Debtors' asset purchase agreement (the "APA") with Adeptio INPC Funding, LLC ("Adeptio"), pursuant to which the Debtors sold substantially all of their assets to Adeptio. The Court approved the sale APA on December 13, 2007 (the "Sale Order"). The sale closed on December 21, 2007. That same day, Adeptio assigned to Simplexity, LLC ("Simplexity") its rights under the APA to receive the Debtors' assets.

3. Under section 2.5 of the APA, Adeptio had to identify contracts that the Debtors were to hold (i.e., not assume or reject) for a period of time (the "Held Contracts"), pending Adeptio's decision on each Held Contract. Under the APA, Adeptio agreed to pay the costs necessary to maintain the Held Contracts until Adeptio could determine whether to assume or reject them. The Agreement was identified as a Held Contract by Adeptio.

---

[2] Facts asserted herein are supported by the Declaration of Frank Bennett, Chief Operating Officer of Simplexity, attached hereto as <u>Exhibit A</u>.

4.      On February 25, 2008, the Debtors filed a motion to reject the Agreement *nunc pro tunc* to December 21, 2007. Subsequently, Qualution filed the Motion, seeking $25,000 for alleged post-petition amounts of $10,000 for each of December 2007 and January 2008 and $5,000 for February 2008. As already mentioned, Qualution also objected to the rejection motion.

*The Agreement*

5.      Pursuant to the Agreement, the Debtors paid an incremental charge for using the Software, with a minimum charge of $5,000 per month per customer (the "Minimum Monthly Charge"). Pursuant to the terms of the Agreement, the Minimum Monthly Charge is applicable only when at least one mobile number is "active, temporarily suspended under 31 days, hotlined, having any usage, or incurring any charges during the billing period . . . ." During November 2007, the Software serviced clients for two customer accounts, AT&T, Inc. ("AT&T") and Hawaiian Telecom Communications, Inc. ("Hawaiian Telecom"), both having very few subscribers on the Debtors' system. Thus, the Debtors paid the minimum charge of $10,000 in the aggregate.

6.      The Debtors ceased business with Hawaiian Telecom during November 2007, with Qualution entering into an agreement directly with Hawaiian Telecom. From and after December 1, 2007, the Debtors ceased to have any active clients on the Hawaiian Telecom account that would support a fee to Qualution under the Agreement.

7.      Thus, Qualution cannot make any claim, administrative or otherwise, for the $10,000 (of the $25,000 set out in the Motion) attributable in the Motion for services provided to Hawaiian Telecom during December 2007 and January 2008.

8.  To the contrary, during December 2007, the Software serviced only AT&T. On February 14, 2008, the Debtors paid Qualution $5,000 for such service.[3] Accordingly, Qualution cannot make any claim for the $5,000 (of the $25,000 set out in the Motion) attributable in the Motion for services provided to AT&T during December 2007, as such sum has been paid.

9.  Further, on December 31, 2007, with full knowledge of and disclosure to Qualution, Simplexity ceased using the Software to service AT&T.[4] From and after January 1, 2008, Simplexity ceased to have any active clients on the AT&T account that would support the Minimum Monthly Charge under the Agreement.[5] Thus, Qualution cannot make any claim, administrative or otherwise, for the remaining $10,000 (of the $25,000 set out in the Motion) attributable in the Motion for services provided to AT&T during January and February 2008.

10.  Accordingly, at no time since December 31, 2007, did either the Debtors or Simplexity in any way utilize the Software or receive any other benefits under the Agreement.

### *Rejection Should Be Nunc Pro Tunc to December 31, 2007*

11.  The Court has authority to deem the rejection of an executory contract retroactively to a prior date. *See e.g.*, *In re NAMCO Cybertainment, Inc.*, Case No. 98-00173 [Docket No. 185] (Bankr. D. Del. Apr. 15, 1998) ; *In re Hechinger Inv. Co.*, Case No. 99-02261 [Docket No. 491] (Bankr. D. Del. Aug. 13, 1999).

12.  The Court should deem the Agreement to be rejected *nunc pro tunc* to December 31, 2007. On that date, Qualution knew the Debtors would reject the Agreement. Indeed,

---

[3] Only one AT&T mobile customer used the networking platform during December. Nevertheless, pursuant to the Agreement, the Debtors made the $5,000 minimum payment.

[4] Qualution assisted Simplexity with the shut-down. As a matter of fact, on December 31, 2007, Qualution inserted unauthorized code into the programming causing a system outage that shut down Simplexity's production software system. Simplexity may assert a counterclaim on account of Qualution's actions.

[5] Indeed, on or after January 1, 2008, Simplexity ceased to have any active clients under the Agreement.

Qualution assisted in shutting down the Software platform.[6] Accordingly, the Court should overrule the Objection.

### *Qualution is Not Entitled to Any Recovery*

13.     As discussed in further detail above, under the terms of the Agreement Qualution is entitled to the Minimum Monthly Charge only in certain instances. The Debtors ceased to provide services to Hawaiian Telecom and AT&T on account of its active clients after November and December 2007, respectively. Accordingly, Qualution was entitled to payment only for AT&T's December 2007 service. Qualution has received such payment. Thus, under the terms of the Agreement, Qualution is entitled to no further relief.

14.     Moreover, the relief sought in the Motion is not warranted under Bankruptcy Code § 503(b). Bankruptcy Code § 503(b) grants an allowed administrative expense claim only for "the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). As noted by the Third Circuit:

> For a claim in its entirety to be entitled to first priority under § 503(b)(1)(A), the debt must arise from a transaction with the debtor-in-possession . . . . *and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business.*

*In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532-533 (3d Cir. 1999) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)) (emphasis added).

15.     The "benefit" test is objective. *In re Patient Education Media, Inc.*, 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998). Qualution, as the moving party, bears the burden of establishing benefit to the estate. *See e.g., In re Alumni Hotel Corp.*, 203 B.R. 624, 630 (Bankr. E.D. Mich.

---

[6]   The Objection states that the effective date for rejection of the Agreement should be on or after the date on which Work Product and Confidential Information, as those terms are used in the Objection, are returned to Qualution. Adeptio is not aware of the existence of any such physical product or information. Indeed, Qualution performed programming and Software updating directly through maintenance access provided to it. Simplexity certifies that the Software is not operational and has not generated a bill sense December 31, 2007.

-6-

1996) ("The burden is on the applicant to prove by a preponderance of the evidence that he has made a substantial contribution."); *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988) (applicant has burden of proving a substantial contribution). As such, Qualution must establish that the Debtors actually used the Software during the relevant months. *See In re Templeton*, 154 B.R. 930, 933 (Bankr. W.D. Tex. 1993) ("Actual use, not mere possession, is a prerequisite to establishing an administrative priority claim."); *see also In re Patient Education Media, Inc.*, 221 B.R. at 102 (stating that the debtor must pay an administrative expense only for the part of the property used).

16. Simply put, the Debtors used the Software only during December 2007. Simplexity paid Qualution $5,000 for that use. Qualution cannot show that the Debtors or Simplexity used the Software during January or February 2008. Accordingly, Qualution cannot meet its burden. The Motion has no merit and should be denied.

*Conclusion*

On or before December 31, 2007, Qualution knew that the Debtors would reject the Agreement. In addition, Qualution received compensation for December 2007, the only time period during which the Software was used. Accordingly, Adeptio respectfully submits that the Court should overrule the Objection and deny the Motion.

Date: March 14, 2008                    YOUNG CONWAY STARGATT & TAYLOR LLP

_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (312) 571-1253

and

KIRKLAND & ELLIS LLP
Anup Sathy
David A. Agay
Jeffrey D. Pawlitz
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:    (312) 861-2000
Facsimile:    (312-861-2200

Counsel for Adeptio INPC Funding LLC

# EXHIBIT A

**Declaration of Frank Bennett**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| SN LIQUIDATION, INC., *et al.*,[1] | : Case No. 07-11666 (KG) |
| Debtors. | : Jointly Administered |

## DECLARATION OF FRANK BENNETT

I, Frank Bennett, being duly sworn according to law, do hereby depose and say:

1. I am the Chief Operating Officer of Simplexity, LLC ("Simplexity"), and have held this position for approximately four months. Prior to this I was the President of MVNO Services for InPhonic, Inc. throughout the period when services were provided to Hawaiian Telcom and AT&T.

2. I make this Declaration in support of Adeptio's (A) Reply to Qualution's Objection to the Debtors' Second Motion to Reject Certain Contracts and Leases and (B) Objection to Qualution's Motion for Post-Petition Payments (the "Motion"). The statements I have made herein are based upon my personal knowledge, unless otherwise noted.

3. Under the Agreement, the Debtors are obligated only to pay the Minimum Monthly Charge for a client account only when at least one mobile user on the client's account is

---

[1] Pursuant to the Bankruptcy Court's order on January 29, 2008, the Debtors' cases, which were jointly administered under the name "InPhonic, Inc., *et al.*", are now jointly-administered under the name "SN Liquidation, Inc., *et al.*". The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) InPhonic, Inc., a Delaware corporation, Fed. Tax Id. No. 9384; (b) CAIS Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 6257; (c) CAIS Acquisition II, LLC, a Delaware limited liability company, Fed. Tax Id. No. 3695; (d) SimIPC Acquisition Corp., a Delaware corporation, Fed. Tax Id. No. 4924; (e) Star Number, Inc., a Delaware corporation, Fed. Tax Id. No. 5549; (f) Mobile Technology Services, LLC, a Delaware limited liability company, Fed. Tax Id. No. 1426; (g) FON Acquisition, LLC, a Delaware limited liability company, Fed. Tax Id. No. 2807; and (h) 1010 Interactive, LLC, a Delaware limited liability company, Fed. Tax Id. No. 5391.

"active, temporarily suspended under 31 days, hotlined, having any usage, or incurring any charges during the billing period."

4. During the month of November 2007, the Debtors serviced only two clients, Hawaiian Telecom and AT&T, under the Agreement. The service provided did not exceed the Minimum Monthly Charge. Accordingly, Qualution received $10,000.

5. The Debtors ceased to do business with Hawaiian Telecom during the month of November 2007, with Hawaiian Telecom entering into an agreement with Qualution to receive billing services directly. Accordingly, for the month of December 2007, the Debtors provided services under the Agreement only to AT&T. During December 2007, AT&T had only one mobile user and the amount billed did not exceed the Minimum Monthly Charge. Qualution received payment of $5,000 on February 14, 2008, on account of the AT&T service for December 2007.

6. On December 21, 2007, Adeptio assigned to Simplexity its rights under the APA to receive the Debtors' assets.

7. On December 31, 2007, Simplexity ceased using the Software to service AT&T.

8. Since December 31, 2007, at no time has Simplexity or the Debtors in any way utilized the Software to provide the services covered under the Agreement, except as part of the permanent decommissioning of the Software, and at no time since December 31, 2007 did Simplexity receive any other benefits under the Agreement.

9. By December 31, 2007, Qualution knew that the Debtors would reject the Agreement. In fact, Qualution, assisted in shutting down the Software platform.

10. I certify that Simplexity is not aware of any Work Product or Confidential Information in its possession currently that belongs to Qualution. The Software is not operational and has not generated a bill since December 31, 2007.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 14, 2008

_____
Frank Bennett