## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| SN LIQUIDATION, INC., *et al.*, | : Case No. 07-11666 (KG) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : **Objection Deadline:  June 6, 2008 at 4:00 p.m.** |
| | : **Hearing Date:  June 13, 2008 at 11:00 a.m.** |

**MOTION PURSUANT TO SECTIONS 1125, 1126, AND 105 OF THE
BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 3017, 3018 AND 3020, AND
LOCAL RULE 3017-1 FOR ORDER (A) APPROVING ADEQUACY OF
DISCLOSURE STATEMENTS, (B) ESTABLISHING PROCEDURES FOR
SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT
THE PLAN, (C) FIXING THE ADMINISTRATIVE EXPENSE BAR DATE, AND
(D) FIXING DATE, TIME AND PLACE FOR CONFIRMATION HEARING**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and

the Official Committee of Unsecured Creditors (the "Creditors Committee"), hereby submit this

motion (the "Motion") for entry of an order pursuant to sections 1125, 1126, and 105 of title 11

of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), Rules 2002, 3003,

3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving the adequacy of

the Disclosure Statement for Joint Plan of Liquidation of SN Liquidation, Inc., *et al.,* Proposed

by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14,

2008, to be distributed to the holders of Class 4, Secured Lender Claims (the "Disclosure

Statement"), and the Disclosure Statement and Summary of Joint Plan of Liquidation of SN

Liquidation, Inc., *et al.,* Proposed by the Debtors in Possession and the Official Committee of

Unsecured Creditors to be distributed to the holders of Class 5, General Unsecured Claims (the

"Class 5 Disclosure Statement," together with the Disclosure Statement, the "Disclosure

Statements"), as may be subsequently amended, pursuant to section 1125 of the Bankruptcy Code; (b) establishing procedures for solicitation and tabulation of votes to accept or reject the Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14, 2008 (as may be amended, the "Plan");[1] (c) fixing the administrative expense bar date; and (d) fixing the date, time, and place for a confirmation hearing, and respectfully state as follows:

### Introduction

1.     Prior to November 8, 2007 ("the Petition Date"), the Debtors reached an agreement (the "Asset Purchase Agreement" or "Agreement"), subject to higher and better offers, pursuant to which the Debtors would sell (the "Sale") substantially all of their assets to Adeptio, the parent corporation of Simplexity, Inc. (the "Buyer's Subsidiary," together with Adeptio, the "Purchaser"), assignee to the Buyer's rights under the Sale Order and Agreement. On the Petition Date, the Debtors commenced these chapter 11 cases to effectuate the Sale process as a means to maximize value and provide themselves with a vehicle to explore any and all of their restructuring alternatives.

2.     Accordingly, on the Petition Date, the Debtors filed the Motion of Debtors for an Order Pursuant to Section 105(a), 363 and 365 of title 11 of the Untied States Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (i) Authorizing the Sale of Substantially All of Debtors' Assets; (ii) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iv) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors sought to sell substantially all of their assets to Adeptio.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

2

3.     Pursuant to section 363 of the Bankruptcy Code, and through the Sale Motion, the Debtors sought approval of the Sale in order to maximize value to their estates and provide a vehicle to explore any and all restructuring alternatives.   The Debtors received no other qualified, additional offers.  Accordingly, there was no auction held, and the Debtors pursued approval of the Asset Purchase Agreement with Adeptio.  On December 13, 2007, the Court entered the final order approving the Sale Motion (the "Final Sale Order"), and the Debtors closed on the Sale on December 21, 2007 (the "Closing Date").  Since the Closing Date, the Debtors and the Purchaser have worked to effectuate various transfers contemplated by the Sale Order and the Asset Purchase Agreement and to determine the respective liabilities under such documents.

4.     The Debtors consummated the Sale on terms that enabled the Debtor and the Creditors Committee (jointly, the "Proponents") to propose the Plan.  The Proponents believe that this Plan not only comports with the requirements of the Bankruptcy Code but is also fair and reasonable to all constituents.

5.     On April 14, 2008, the Debtors filed the Plan and Disclosure Statement.  The Plan is the result of ongoing negotiations with a number of creditors and creditor representatives.  The Plan provides for the orderly liquidation of the Debtors' Estates.  All of the Debtors' operating assets were sold as part of the Sale.  The Plan provides for the formation of a Litigation Trust that will administer the remaining Estate Assets and assess the value thereof.  These remaining Estate Assets include, but are not limited to, any Causes of Action against the recipients of stock redemption payments and claims, former directors, and officers or otherwise.  Realization of value from Causes of Action is critical to the success of the Plan

3

and the distribution of any value to holders of General Unsecured Claims and holders of Allowed Administrative Expense Claims.

6.     There are eight distinct legal entities that are being liquidated pursuant to the Plan.[2]  The Plan, however, provides for the merger of all of the Debtors' estates into SN Liquidation.  To the extent that all of the Estates are merged, on the Effective Date (i) all intercompany claims by, between and among the Debtors shall be eliminated, (ii) all assets and liabilities of the Affiliate Debtors shall be merged or treated as if they were merged with the assets and liabilities of SN Liquidation, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of SN Liquidation, (iv) the Subsidiary Interests shall be cancelled, (v) each Claim filed or to be filed against any Debtor shall be deemed filed only against SN Liquidation and shall be deemed a single claim against and a single obligation of SN Liquidation, and (vi) all Assets shall become those of the Liquidation Trust, which trust shall become responsible for prosecutions of Causes of Action and the liquidation of Claims against SN Liquidation.

7.     In addition, and to the extent that the Estates are merged on the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect.  The existing common and voting stock of the Debtors shall be cancelled under the Plan, and no distributions are provided for holders of such stock interests or claims based upon or arising from the ownership of such stock.

---

[2] The Debtors and debtors in possession are INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

{00772931;v9}

8. The purpose of this Motion is to, among other things, obtain approval of the Disclosure Statements and the procedures for voting and tabulation and to set a timeline for voting on and confirming the Plan. The Proponents believe that the Disclosure Statements contain adequate information, and that the procedures and timeline proposed are consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and are fair, reasonable, and sufficient.

## Background

9. On November 8, 2007, (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

10. The Debtors continue to possess their property as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The Debtors' business assets have been sold to a designee of Adeptio INPC Funding, LLC ("Adeptio" or "Buyer") as set forth below.

11. On November 9, 2007, this Court authorized the retention of BMC Group, Inc. as noticing claims and balloting agent for the Bankruptcy Court (the "Voting Agent").

12. No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases. On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

13. On February 25, 2008, this Court entered the Order Approving Limited Notice to Certain Rebate Creditors (the "Rebate Order"), which, permitted limited notice to rebate creditors of these chapter 11 proceedings. Pursuant to the Rebate Order, the Debtors are not required to serve the rebate creditors with this Motion, the Plan, Disclosure Statement, or notice of the confirmation hearing.

{00772931;v9}

14.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C § 1334. Venue is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409. The statutory and rule predicates for the relief sought herein are sections 1125, 1126, and 105 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020 and Local Rule 3017-1.

### Relief Requested

15.     The Proponents seek the entry of an order (a) approving the adequacy of the Disclosure Statements as they may be modified or amended, (b) establishing the procedures for solicitation and tabulation of votes to accept or reject the Plan, (c) fixing a bar date for filing administrative expense claims, and (d) setting a hearing to consider confirmation of Plan.

### Adequacy of the Disclosure Statements

16.     The Proponents believe that the Disclosure Statements should be approved as containing adequate information. Section 1125(b) of the Bankruptcy Code requires that a plan proponent provide "adequate information" regarding a debtor's proposed plan of reorganization. In particular, section 1125(a)(1) of the Bankruptcy Code states:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the Plan to the debtor, any successor to the debtors, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

17.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need in order to make an informed decision whether to vote for or against a chapter 11 plan. *See Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) (". . . section 1125 seeks

6

to guarantee a minimum amount of information to the creditor asked for its vote"); *see also In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987). Congress anticipated that such informed judgments would be needed to both negotiate over and vote on a plan of reorganization. *Id.*

18.    In examining the adequacy of the information contained in a disclosure statement, the Court has broad discretion. *See In re Cajun Elec. Power Co-op, Inc.*, 230 B.R. 715, 731 (Bankr. M.D. La. 1999) (citing *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination is largely within the discretion of the bankruptcy court.")); *see also In re A.H. Robbins Co.*, 880 F.2d 694, 698 (4th Cir. 1989); *In re Egan*, 33 B.R. 672, 674-75 (Bankr. N.D. Ill. 1983). This discretion provides flexibility and facilitates the effective reorganization of the different types of chapter 11 debtors by accommodating the varying circumstances accompanying chapter 11 cases. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977).

19.    Courts evaluate whether a disclosure statement contains adequate information on a case-by-case basis based on the facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank et al.*, 848 F.2d 414, 417 (3d Cir. 1988); *In re Tex. Extrusion Corp.*, 844 F.2d at 1157; *In re A.H. Robbins Co.*, 880 F.2d at 698; *see also In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same).

20.    The determination should take account of expertise and resources, including outside advisors and relevant information already possessed or publicly available, of the

7

hypothetical investor of each class of claims or interests from which classes the acceptance or rejection of the Plan is solicited after the commencement of the cases. *See In re Zenith Elec. Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

21.     The Proponents propose to distribute to the holders of Class 4, Secured Lender Claims, the Disclosure Statement attached hereto as Exhibit A. The Proponents further propose to distribute to the holders of Class 5, General Unsecured Claims, the Class 5 Disclosure Statement attached hereto as Exhibit B.

22.     The Disclosure Statement contains ample information with respect to the topics identified above, including, among other things, information with respect to: (a) the terms of the Plan; (b) certain events preceding the Debtors' Cases; (c) the operation of the Debtors' businesses during the course of the Cases; (d) estimates of the Claims asserted or to be asserted against the Debtors' estates and the value of distributions to be received by holders of such Claims; (e) the risk factors affecting the Plan; (f) the method and timing of distributions under the Plan; (g) the details of the litigation trust established by the Plan; (h) a liquidation analysis identifying the estimated return that creditors would receive if the Debtors' bankruptcy cases were cases under chapter 7 of the Bankruptcy Code; (i) the federal tax consequences of the Plan; and (j) appropriate disclaimers regarding the Court's approval of information only as contained in the Disclosure Statement. Accordingly, the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

23.     Section 1125(c) of the Bankruptcy Code provides that "there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes." The Class 5 Disclosure Statement contains summary information with respect to the topics above, including, among other things, a summary of: (a) the terms of the Plan; (b) the

{00772931;v9}

operation of the Debtors' businesses during the course of the Cases; (c) the sources for distributions under the Plan; (d) the method and timing of distributions under the Plan; (e) the details of the litigation trust established by the Plan; (f) a liquidation analysis identifying the estimated return that creditors would receive if the Debtors' bankruptcy cases were cases under chapter 7 of the Bankruptcy Code; and (g) the federal tax consequences of the Plan. Additionally, the Class 5 Disclosure Statement will advise that the Disclosure Statement and Plan can be obtained through both the Bankruptcy Court's internet website (www.deb.uscourts.gov) and the Voting Agent's internet website (www.bmcgroup.com/inphonic) or by requesting copies from the Voting Agent in writing.

24.    Section 1125(a)(1) permits the Court to consider a proposed disclosure statement "as far as is reasonably practicable in light of the nature and history of the debtor." 11 U.S.C. § 1125(a)(1).  These Debtors are currently administratively insolvent, and the Proponents are soliciting acceptance of the Plan with severely limited funds.  In order to accomplish solicitation, the Debtors were required to reduced copying and postage costs for the mailing of a disclosure statement to holders of Class 5 Claims.  The Class 5 Disclosure Statement accomplishes this objective.  The Class 5 Disclosure Statement will be sent to 1,284 creditors and should be approved as reasonably practicable.  Moreover, the Holders of Class 5 Claims will be able to view the Disclosure Statement from the Voting Agent on its website or receive a hard copy by mail by contacting the Voting Agent at the Debtors' expense.  Accordingly, the Class 5 Disclosure Statement Disclosure Statement contains adequate information with the meaning of sections 1125(b) and (c) of the Bankruptcy Code and should be approved.

{00772931;v9}

## Notice of Disclosure Statement Hearing

25.    In accordance with Bankruptcy Rules 2002 and 3017, the Debtors served notice of the Disclosure Statement Hearing and the Disclosure Statements on (i) the United States Trustee, (ii) counsel to the Creditors Committee, (iii) all parties having filed requests for notices in the Cases, (iv) the Securities and Exchange Commission, and (v) the Internal Revenue Service.    In addition, the Debtors directed their Voting Agent to provide notice of the Disclosure Statement Hearing to all of the Debtors' known creditors[3] and holders of equity interests.    The Proponents believe that they have provided adequate notice of the Disclosure Statement Hearing to all parties-in-interest

## Solicitation Procedures

26.    To conduct effective solicitation of acceptances or rejections to the Plan in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and due process, the Proponents seek approval of the following Solicitation Procedures, including:  (a) setting a solicitation record date, (b) approving forms of ballot, (c) setting a voting deadline, and (d) approving the procedure for tabulating ballots.

## A.    Solicitation Record Date for Voting

27.    Bankruptcy Rule 3017(c) provides, in relevant part, that "on or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Bankruptcy Rule 3017(d) provides that, for purposes of voting on a plan of reorganization under chapter 11 of the Bankruptcy Code, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order

---

[3] This does not include rebate creditors who the Debtors are not required to serve pursuant to the Order Approving Limited Notice to Certain Rebate Creditors [Docket No. 399].

approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Bankruptcy Rule 3018(a) further provides that, "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court." Accordingly, the Debtors request that the Court set June 13, 2008 as the solicitation record date (the "Solicitation Record Date") for purposes of Bankruptcy Rules 3017 and 3018.

**B.    Form of Ballot**

28.    Bankruptcy Rule 3018(c) requires that "an acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." The Proponents' solicitation procedures require that all votes to accept or reject the Plan be cast by using the appropriate ballot or master ballot (collectively, the "Ballots"). The Ballots contain instructions for both holders of claims and nominees, if applicable, to comply with in completing the Ballots.

29.    The Proponents have prepared Ballots for all classes of claims under the Plan that are entitled to vote to accept or reject the Plan. By this Motion, the Proponents seek approval of the form of the Ballots, attached hereto as Exhibit C, and the authority to distribute such Ballots to all holders of impaired claims entitled to vote on the Plan. All Ballots will be accompanied by return envelopes addressed to BMC Group, the Voting Agent. The Voting Agent will customize each Ballot to include the creditor's name, address, and claim information.

C.    **Distribution of the Disclosure Statement and Solicitation Materials**

30.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for purposes of soliciting their votes.   Except as otherwise provided herein, the Proponents propose that, after entry by the Court of an order approving the Disclosure Statements, the following materials (the "Solicitation Materials") will be distributed to those parties described below:

  a. the notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), substantially in the form attached hereto as Exhibit D;

  b. either (i) the Disclosure Statement or (ii) the Class 5 Disclosure Statement;

  c. the Plan or summary thereof approved by this Court; and

  d. the Ballots and voting instructions.

31.    The Proponents request that the Voting Agent be authorized to inspect, monitor, and supervise the solicitation process, to serve as the tabulator of the Ballots, and to certify to the Court the results of the balloting.

32.    The Proponents propose to distribute the Solicitation Materials containing the Disclosure Statement to the holders of Secured Lender Claims and the Solicitation Materials containing the Class 5 Disclosure Statement to the holders of General Unsecured Claims (collectively, the "Voting Claims"), provided that such holders' claims are listed in the Debtors' schedules of liabilities as not contingent, unliquidated or disputed (excluding scheduled claims that have been superseded by filed claims) provided further that with respect to those persons or entities to whom the Debtors or their Voting Agent mailed a prior notice that was returned by the United States Postal Service as undeliverable with no forwarding address, the Debtors and their Voting Agent shall not be required to mail such persons the Solicitation Materials.

{00772931;v9}

33.    The holders of (i) Intercompany Claims and (ii) Equity Interests will not receive any distribution under the Plan, and are thus conclusively presumed to have rejected the Plan. The Proponents propose to send a notice (the "Impaired Non-Voting Notice"), substantially in the form hereto as Exhibit E that will, among other things, (i) include a summary of the treatment provided under the Plan to such class, (ii) include the date of the Confirmation Hearing and (iii) state the date fixed to file objections to confirmation of the Plan.

34.    The holders of (i) Assumed Liability Claims, (ii) Other Secured Claims and (iii) Priority Non-Tax Claims (collectively, the "Unimpaired Claim Holders") are not impaired under the Plan, and are thus conclusively presumed to have accepted the Plan. Therefore, in lieu of distributing the Solicitation Materials to the Unimpaired Claim Holders, in accordance with Bankruptcy Rule 3017(d), the Proponents propose to send by first class mail, a notice (the "Unimpaired Non-Voting Notice"), substantially in the form attached hereto as Exhibit F, which will, among other things, (i) include a summary of the treatment provided under the Plan to each such class, (ii) advise that the Disclosure Statement and Plan can be obtained through the Bankruptcy Court's internet website (www.deb.uscourts.gov), the Voting Agent's internet website (www.bmcgroup.com/inphonic) or upon written request to the Voting Agent, (iii) include the date of the Confirmation Hearing and (iv) state the date fixed to file objections to confirmation of the Plan. The Proponents submit that additional distribution of the Disclosure Statement and Plan is unnecessary in light of the fact that the parties receiving the Unimpaired Non-Voting Notice are unimpaired and not entitled to vote on the Plan.

35.    The Proponents do not intend to publish the Confirmation Hearing Notice given the lack of funds remaining in these cases and the accrued and unpaid expenses to date;

Publication notice is not warranted when weighed against the expense to the Estates. The Proponents request that the Court relieve them of any obligation to provide publication notice.

36.     The proposed Solicitation Procedures comport with due process and the requirements of Bankruptcy Rule 3017 and section 1125 of the Bankruptcy Code. The Proponents propose that all parties entitled to vote on the Plan will receive the Solicitation Materials, which include either a complete copy of the Disclosure Statement and the Plan or the Class 5 Disclosure Statement and a summary of the Plan. The Confirmation Hearing Notice also advises any party wishing to obtain a copy of the Disclosure Statement and/or the Plan without charge may do so online or by contacting the Voting Agent.

37.     Mailing the Solicitation Materials and other notices described herein to outdated or otherwise improper addresses results in unnecessary expense to the Debtors' Estates. The Proponents request that the Court excuse the Proponents and Voting Agent from mailing Solicitation Materials and other notices to those persons or entities to whom the Debtors or their Voting Agent mailed a prior notice that was returned by the United States Postal Service as undeliverable with no forwarding address.

**D.     Voting Deadline**

38.     Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the Disclosure Statement, "the court shall fix a time within which the holder's of claims and interests may accept or reject the plan." In the Disclosure Statements, holders of Voting Claims will be instructed to return Ballots to the Voting Agent. The Proponents request that the Court enter an order requiring that all Ballots accepting or rejecting the Plan must be received by the Voting Agent by 4:00 p.m., prevailing Eastern Time, on August 1, 2008 (the "Voting

14

Deadline"). The Proponents further request that they be entitled to reserve the right to extend the Voting Deadline as facts and circumstances require.

## Voting Procedures

39.    For voting purposes only and not, as discussed below, for determining who has an allowed claim or who is entitled to receive a distribution under the Plan, the Proponents propose the following voting procedures: each holder of a Voting Claim shall have an allowed claim, solely for the purpose of voting on the Plan, in an amount equal to (i) the amount of such claim as set forth on a timely-filed proof of claim, or (ii) in the absence of a timely-filed proof of claim, the liquidated, non-contingent and non-disputed amount of such claim as set forth in the Debtors' schedule of liabilities, provided, however, that the assignee of a transferred and assigned scheduled or filed Claim shall be permitted to vote such claim only if the transfer and assignment has been reflected on the Court's docket as of the close of business on the Solicitation Record Date, and provided, further, that (a) if a claim for which a proof of claim has been timely filed is listed on the Debtors' schedules of liabilities as contingent, unliquidated or disputed, such claim shall be allowed for voting purposes only and not for the purpose of allowance or distribution, in an amount equal to $1.00, (b) if a claim for which a proof of claim has been timely filed is for a contingent or unliquidated amount, such claim shall be allowed for voting purposes only and not for the purpose of allowance or distribution, in an amount equal to $1.00, (c) if a claim for which a proof of claim has been timely filed is for an unknown amount, such claim shall be allowed for voting purposes only and not for the purpose of allowance or distribution, in an amount equal to $1.00, (d) if a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim shall be allowed for voting purposes only in the amount estimated or allowed by the Court, unless, prior to the Voting Deadline, the Court

enters an order disallowing such claim, (e) if a claim is deemed allowed pursuant to the Plan and the holder of the claim is entitled to vote on the Plan, the claim shall be allowed for voting purposes in the amount deemed allowed pursuant to the Plan, (f) if a holder of claims has timely filed multiple proofs of claims on account of a single claim (whether such claims were filed against one or more Debtors), and such holder files properly executed ballots related to more than one such multiple proofs of claim, the Debtors reserve the right to treat only one such claim as an allowed claim for voting purposes and not count additional ballots submitted by the holder on account of additional claims. In addition, if a Voting Claim is listed in the Debtors' schedules of liabilities as contingent, unliquidated, unknown, disputed, or is not listed in the Debtors' schedules of liabilities, and a proof of such claim was not timely filed, such claim shall have no voting rights.

40.     The Proponents also propose that if the Debtors or Creditors Committee have served and filed an objection to a Voting Claim at least ten (10) days prior to the Voting Deadline, such claim shall be disallowed for voting purposes only and, pending final resolution of such objection, not for the purpose of allowance or distribution; provided that any undisputed portions of such claim shall be allowed for voting purposes.

## **Tabulation Procedures**

41.     Pursuant to section 105 and 1126 of the Bankruptcy Code, the Proponents request that the Court adopt the following procedures:

a.     only original Ballots returned to the Voting Agent bearing original signatures will be counted,

b.     any unsigned Ballot shall not be counted;

c.     any Ballot that is illegible or contains insufficient information to permit the identification of the holder shall not be counted;

16

d.      any Ballot cast by a person or entity that does not hold a claim in a class entitled to vote on the Plan shall not be counted;

e.      any Ballot that is properly completed, executed and timely returned to the Voting Agent that does not indicate an acceptance or rejection of the Plan shall not be counted;

f.      any Ballot that is properly completed, executed and timely returned to the Voting Agent that indicates both acceptance and rejection of the Plan shall not be counted;

g.      whenever a holder of a Voting Claim returns more than one Ballot voting the same claim prior to the Voting Deadline, only the last properly executed Ballot timely returned to the Voting Agent shall be counted;

h.      each holder of a Voting Claim shall be deemed to have voted the full amount of its claim,

i.      holders of Voting Claims shall not split their vote within a claim, but shall vote their entire claim within a particular class either to accept or reject the Plan; and

j.      any Ballot received by the Voting Agent by telecopier, facsimile or other electronic communication shall not be counted.

42.     The Proponents submit that establishing the voting and tabulation procedures set forth above is necessary to avert any confusion resulting from incomplete Ballots, will simplify the voting and tabulation process, and is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

43.     The Proponents request that the Court enter an order requiring that a report on the outcome of the voting be received by the Proponents from the Voting Agent by 4:00 p.m., prevailing Eastern Time, on August 15, 2008 (the "Voting Report Deadline").

**E.      <u>Hearing on Confirmation of the Debtors</u>**

44.     To enable the Proponents to confirm the Plan expeditiously, the Proponents request that this Court schedule the Confirmation Hearing on or about August 20, 2008 at 2:00 p.m. (prevailing Eastern Time) or, as soon thereafter as the Court's calendar will permit. Such

17

date will give the Proponents sufficient time to solicit votes on the Plan and to notify the required parties of the Confirmation Hearing date in accordance with Bankruptcy Rule 2002(b), which requires that parties receive 25 days notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. The Proponents also request that the Court order that the Confirmation Hearing may be continued from time to time by announcement of such continuance in open court without further notice to creditors or other parties-in-interest.

45.    To permit the Proponents adequate time to respond to objections prior to the Confirmation Hearing, the Proponents request August 1, 2008 at 4:00 p.m. (prevailing Eastern Time) be fixed by the Court as the last date for filing and serving written objections to confirmation of the Plan (including any supporting memoranda) (the "Objection Deadline"). The Proponents further propose that the Court only consider timely-filed written objections and that all objections not timely filed and served in accordance with the provisions of this Motion be deemed overruled. The Proponents further request that this Court direct that objections, if any (including any supporting memoranda), to confirmation of the Plan (a) shall be in writing, (b) shall comply with the Bankruptcy Code, Bankruptcy Rules and any orders of this Court, (c) shall set forth the name and contact information of the objector and the nature and amount of any claim or interest asserted by the objector against the estates or property of the Debtors, (d) shall state with particularity the legal and factual basis for such objection, and (e) shall be filed with this Court, together with proof of service thereof, and served upon the following persons so as to be <u>received</u> no later than the Objection Deadline:

{00772931;v9}

Counsel for the Debtors and Debtors in Possession

BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone:  302-655-5000
Facsimile: 302-658-6395
Email: bankserve@bayardlaw.com
Attn:  Neil B. Glassman, Esquire

- and -

DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York  10020
Telephone:  212-335-4500
Facsimile:  212-884-8562
Email: jeremy.johnson@dlapiper.com
Attn: Jeremy R. Johnson, Esquire

The United States Trustee

OFFICE OF THE UNITED STATES TRUSTEE
844 King Street, Suite 2207
Wilmington, Delaware 19801
Facsimile: (302) 573-6497
Attn:   Kelly Beaudin Stapleton, Esquire

Official Committee of Unsecured Creditors

REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
Telephone:  302-778-7500
Facsimile:  302-778-7575
E-Mail:  kgwynne@reedsmith.com
Attn:   Kurt F. Gwynne, Esquire

{00772931;v9}

F.     **The Administrative Expense Bar Date**

46.     March 21, 2008 (the "Bar Date")[4] was established as the last date on which proofs of claim could be filed against the Debtor under section 501 of the Bankruptcy Code.

47.     The Bar Date is applicable only to proofs of claim or interests that arose prior to the Commencement Date and did not require proofs of claim to be filed with respect to administrative expense claims.

G.     **Fixing the Administrative Expense Bar Date at this Time is Justified**

48.     Section 503(a) of the Bankruptcy Code provides that: "An entity may timely file a request for payment of an administrative expense or may tardily file such request if permitted by the court for cause." 11 U.S.C. §503(a).  Indeed, section 503(a) was amended in 1994 to make clear the intent of Congress that bankruptcy courts possess the requisite authority to set a bar date for filing requests for payment of administrative expenses.  Moreover, administrative expense claims must be filed by the court-ordered bar date in order to enable the debtor and its creditors to know what entities are making claims and in what general amounts.  *See, Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 580 (S.D.N.Y. 2001); *Aargus Polybag Co. v. Commonwealth Edison Co. (In re Aargus Polybag Co.)*, 172 B.R. 586, 589 (Bankr. N.D. Ill. 1994); *see also In re Southern Soya Corp.*, 251 B.R. 302, 311 (D.S.C. 2000) (courts may exercise discretion in setting bar dates according to the circumstances of each case).  Further, Bankruptcy Rule 3003(c) requires that this Court fix a time within which proofs of claim shall be filed.  The circumstances in this case justify the setting of the Administrative Expense Bar Date (defined herein) with respect to the filing of administrative expense claims at this time.

---

[4] May 6, 2008 is the bar date for governmental entities.  Also, certain claims, such as contract or lease rejection claims, may be subject to extended bar dates that occur after the Bar Date.

**H.**    **Proposed Procedures for Filing Requests for Payment of Administrative Expenses**

49.    Pursuant to section 503(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c), the Proponents respectfully request that this Court fix a date that is the first business day that is thirty (30) days after the Effective Date of the Plan as the "Administrative Expense Bar Date," by which time all parties who allegedly hold administrative expense claims must file requests for payment of such expenses in these chapter 11 cases or be forever barred from asserting such claims.    For purposes hereof, "claim" shall have the meaning provided for in section 101(5) of the Bankruptcy Code.    The Administrative Expense Bar Date will apply to all post-petition claims which arose during the period on and after the Petition Date and through and including the Administrative Expense Bar Date, including, without limitation, any claims relating to services provided to the Debtors during such period.

50.    The Debtors seek an order requiring, any person or entity asserting an administrative expense claim against any of the Debtors and their estates that arose during the period on and after the Petition Date and through and including the Administrative Expense Bar Date, must file, on or before the Administrative Expense Bar Date, an administrative expense claim so as to be underline actually received at the appropriate destination not later than 4:00 p.m. (prevailing Pacific Time) on or before the Administrative Expense Bar Date, by mailing the original to:  (a) the claims' agent, BMC Group, *via* U.S. regular mail at (i) SN Liquidation Inc., *et al.* f/k/a InPhonic, Inc., *et al.*, c/o BMC Group, Inc., P.O. Box 978, El Segundo, CA 90245-2822, or *via* messenger or overnight courier at (ii) SN Liquidation Inc., *et al.* f/k/a InPhonic, Inc., *et al.*, c/o BMC Group, Inc., 444 N. Nash St., El Segundo, CA 90245; with copies to (b) Bayard, P.A., 222 Delaware Avenue, Suite 900, P.O. Box 25130, Wilmington, DE  19899, Attention: Neil B. Glassman, Esquire; (c) DLA Piper US LLP, 1251 Avenue of the Americas,

21

New York, NY 10020, Attention: Jeremy R. Johnson, Esquire; (d) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE 19801, Attention: Kurt Gwynne, Esquire; and (e) Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attention: Kelly Beaudin Stapleton, Esquire. An Administrative Expense Claim will be deemed timely filed only when <u>actually</u> <u>received</u> on or before the Administrative Expense Bar Date.

51.    The Debtors further seek an order providing that the following persons or entities are <u>not</u> required to file an administrative expense claim by the Administrative Expense Bar Date:

a.    any person or entity which has already filed an administrative expense claim against the Debtors; and

b.    holders of administrative expense claims previously allowed by order(s) of this Court.

c.    any professional retained (pursuant to Section 327 or 363 of the Bankruptcy Code) in these chapter 11 cases by the Debtors or the Committee, for professional fees and reimbursement of expenses

52.    Except for the post-petition claims of those creditors holding administrative expense claims, the claims of all creditors of the Debtors will be subject to the Bar Date. In this regard, any failure of any creditor to file a timely proof of claim pursuant to the Bar Date does not entitle such creditor to file a claim pursuant to the Administrative Expense Bar Date.

## I.    <u>Effect of Failure to File an Administrative Expense Claim On or Before the Administrative Expense Bar Date</u>

53.    The Proponents propose that any alleged holder of an administrative expense claim (which arose during the period on and after the Petition Date and through and including the Administrative Expense Bar Date) who is required to, but fails to, file an Administrative Expense Claim in accordance with an order approving this Motion on or before the

{00772931;v9}

Administrative Expense Bar Date shall be forever barred, estopped and enjoined from asserting such administrative expense claim against the Debtors and their Estates (or filing a claim with respect thereto), and the Debtors and their Estates shall be forever discharged from any and all indebtedness or liability with respect to such administrative expense claim, and such holder shall not be permitted to participate in any distribution in the Debtors' chapter 11 cases on account of such administrative expense claim or to receive any further notice regarding such administrative expense claim.

## Notice

54.    As set forth above, the Debtors directed their Voting Agent to provide all of their known creditors,[5] and holders of equity interests with notice of the Disclosure Statement Hearing, as well as provided copies of this Motion and the Disclosure Statement to the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) Reed Smith LLP, counsel to the Creditors Committee, and (iii) all parties that have requested notice or copies of pleadings filed in the cases pursuant to Bankruptcy Rule 2002.  Because of the nature of the relief requested, the Proponents respectfully submit that no other or further notice of the relief requested in this Motion need be given.

---

[5] This Notice does not include notice to the rebate creditors who the Debtors are not required to serve pursuant to the Order Approving Limited Notice to Certain Rebate Creditors, [Docket No. 399]

{00772931;v9}

WHEREFORE, the Proponents request entry of an order granting the relief requested herein and such other relief as is just and proper.

Date:    May 19, 2008
          Wilmington, Delaware

**BAYARD, P.A.**

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395

and

**DLA PIPER US LLP**
Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

Counsel for Debtors and Debtors in Possession

**REED SMITH LLP**
Kurt F. Gwynne (No. 3951)
1201 Market Street
Suite 1500
Wilmington, DE 19801
Telephone:  (302) 778-7550
Facsimile:  (302) 778-7575

Counsel for the Official Committee
of Unsecured Creditors

{00772931;v9}