UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Chapter 11
                                .
SN LIQUIDATION INC., *et al.*,  .    Case No. 07-11666(KG)
                                .    (Jointly Administered)
                                .
                                .    May 8, 2008
                                .    2:00 p.m.
            Debtors.            .    (Wilmington)
                                .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**<u>INDEX</u>**

ADMITTED

<u>EXHIBITS FOR THE COMMITTEE:</u>

EXHIBIT 1 - AIG Insurance Policy                    15

EXHIBIT 2 - CNA Insurance Policy                    15

EXHIBIT 3 - XL Insurance Policy                    15

1          THE CLERK: Please rise.

2          THE COURT: Thank you, everyone.  Please be seated.

3   Good afternoon.  Good afternoon, Ms. Stitzer.  How are you?

4          MS. STITZER: Good.  How are you, Your Honor?

5          THE COURT: Very well, thank you.

6          MS. STITZER: Your Honor, we're here today in the

7   matter of SN Liquidation versus Icon International.  It is a

8   motion for preliminary injunction that will be argued today.

9          THE COURT: Yes.

10          MS. STITZER: Briefly, by way of, just to inform the

11   Court where we are in the case, we are getting ready to file

12   motions of approval of solicitation procedures and the

13   disclosure statement, and are hoping to have a plan confirmed

14   by the end of the summer.

15          THE COURT: Very well.  Thank you.

16          MS. STITZER: Mr. Gwynne will be handling the

17   argument today on behalf of the Committee, so I will concede

18   the podium to him.

19          THE COURT: Thank you.

20          MS. STITZER: Thank you.

21          THE COURT: Mr. Gwynne, your armed for bear there it

22   looks like.

23          MR. GWYNNE: Good morning, Your Honor.  Kurt Gwynne

24   from Reed Smith on behalf of the Creditors Committee.  If I

25   could just have a minute to get my - -

1          THE COURT: Absolutely.

2          MR. GWYNNE:  - - papers situated.

3          THE COURT: I campaigned for a larger podium for

4     people, but it didn't get anywhere.

5          MR. GWYNNE: May it please the Court, Your Honor,

6     there are two issues presented in the Debtors' motion for

7     preliminary injunction.  The first issue is did Icon's

8     actions violate the automatic stay, and the second issue is

9     if the stay is inapplicable, is there a sufficient identity

10    of interest between the Debtors and the Officers and

11    Directors such that the continuation of the Icon litigation

12    should be enjoined because it's really an action against the

13    Debtor.  Today Your Honor, I will address only the first

14    issue, because I think that it is dispositive, and also

15    frankly because on the second issue, I think the defendants

16    actually have some, some good arguments.  In this case

17    factually Your Honor, there are three insurance policies.

18    And if I may approach, Your Honor - -

19          THE COURT: Yes.

20          MR. GWYNNE:  - - I have copies for the Court.

21          THE COURT: Yes.  Thank you.  Thank you.

22          MR. GWYNNE: Your Honor, I've marked the three

23    insurance policies as OCUC Exhibits 1, 2, and 3 in the order

24    in which they provide coverage.  The first policy is the AIG

25    policy marked as Committee Exhibit OCUC 1.  That policy

1   provides $10 million in coverage.  That is the primary

2   insurance policy.  Importantly, Your Honor, that policy

3   provides both entity coverage, as well as coverage for the

4   D's and O's, and as well as coverage to the organization,

5   Inphonic, for indemnification related to D&O claims.  But

6   there is, and I think it's an important distinction in the

7   case law, it's important to recognize that there is entity

8   coverage in this case.  Also under the AIG policy, one of the

9   things that was relevant, at least in one of Your Honor's

10   prior opinions, is the terms of an insured versus insured

11   exclusion.

12          THE COURT: Yes.

13          MR. GWYNNE: In this case there is an insured versus

14   insured exclusion.  It's paragraph 4(i)(3) on page 7.  That

15   policy, however, Your Honor, has an exception to the

16   exclusion, as is not uncommon.  It says that the exclusion

17   shall not apply to, in any bankruptcy proceeding by or

18   against an organization, which is Inphonic, any claim brought

19   by the examiner, trustee, receiver, liquidator, or

20   rehabilitator, or any assignee thereof of such organization.

21   In this case, Your Honor, the insured versus insured

22   exclusion does not apply because of that exception.  So there

23   is entity coverage for claims and causes of actions by the

24   estate.  The next policy, Your Honor, is the CNA insurance

25   policy, which is the first layer of excess insurance

1    coverage.  That is a $10 million policy and in insurance,

2    insurance parlance that is a follows form policy.  That's why

3    it's a short 13 page policy.  It follows the forms and, and

4    the provisions and terms of the AIG policy.  The third policy

5    that's been marked OCUC Exhibit 3 is the XL insurance policy.

6    The XL policy is the second layer of excess coverage, the

7    third layer of insurance coverage overall.  But it's the

8    second layer of excess coverage.  That's a $15 million

9    policy.  That policy provides D&O coverage only.  And as I'll

10   get into later, Your Honor, that's important, because that

11   policy only kicks in when the first two are exhausted.

12   That's a policy that could be available to the Icon

13   defendants after the first two policies were exhausted.  If

14   they get paid out of either of the first two policies, having

15   the third policy won't help the estate.  There is an insured

16   versus insured exception in that policy which has similar

17   carve outs as the other two, but as I indicated, I think

18   because it's only D&O coverage provided in that policy, it

19   has limited relevance today.  As Your Honor is well aware

20   from this short but intense history of this case, that

21   Inphonic was a defendant in two securities class actions

22   filed prior to the filing in May 7th and May 18th of '07, and

23   that Inphonic was also subject to 15 putative class actions

24   from rebate holders, which were two of the main reasons the

25   Debtors expressed to the Court as to why they were forced to

1   file Chapter 11.  Turning to, to the legal issue, Your Honor,

2   of whether the defendant violated the automatic stay,

3   §362(a)(3) applies to any action to obtain possession,

4   custody, or control over property of the estate.  The

5   property of the estate that is implicated in this case is the

6   insurance proceeds under those first two policies, OCUC

7   Exhibits 1 and 2.  In it's 2006 ACNS decision, with which the

8   Court is quite familiar, the 3rd Circuit held that insurance

9   policies are property of the estate, but in it's 1993

10  Macateer (phonetic) decision, the 3rd Circuit held that

11  ownership of insurance proceeds must be analyzed separately

12  from ownership of the insurance policy.  Where there is

13  entity coverage, and not just D&O coverage, and not just D&O

14  indemnity coverage for the estate, but where there is entity

15  coverage, the insurance proceeds are property of the estate.

16  In 2006, Your Honor, there was a decision called Nutraquest,

17  it's a 3rd Circuit decision that I believe is relevant on

18  point, and obviously binding with respect to the issues

19  presented here today.  And I know Your Honor also recently,

20  on February 15th wrote an opinion dealing with insurance

21  policy proceeds in the 15375 Memorial Corp. case, but I don't

22  believe that that decision, or the prior decisions from this

23  district discussed the Nutraquest decision.  But if I could

24  approach, Your Honor, I'd like to hand up a copy?

25          THE COURT: Yes.  Thank you.  Thank you, Mr. Gwynne.

1          MR. GWYNNE: Your Honor, in footnote 4 of page 647

2   of this case on the printout, it actually starts on the

3   bottom of page 8.

4          THE COURT: Yes.

5          MR. GWYNNE: But the 3rd Circuit held that

6   Nutraquest's right to insurance policy proceeds is property

7   of the estate under §541(a).  And then there are some

8   citations, and the 3rd Circuit continues.  The exception to

9   this general rule arises when the Debtor does not own the

10  insurance proceeds, but owns, but just owns the policy.  For

11  example, when the Debtor was a corporation, but the liability

12  policy insured only the corporation's directors and officers,

13  and would pay only to them, the liability proceeds were not

14  property of the bankruptcy estate.  Another citation, and

15  then this exception does not fit our case in which the

16  insurance policy and any proceeds from it both belong to

17  Nutraquest.  The District Court therefore was incorrect when

18  it suggested the estate was not diminished at all by the

19  settlement.  In this case, Your Honor, I believe the

20  Nutraquest decision is obviously on point because we do have

21  entity coverage, not just coverage of the D's and O's.  As

22  the 3rd Circuit said in that instance, those proceeds are

23  property of the estate under §541.  And if the Icon

24  defendants continue with their litigation, and they are

25  successful in that litigation, they will then seek recovery

 1    from the insurance proceeds.  Because as Your Honor knows in

 2    this case there's very little other than insurance proceeds

 3    or litigation recoveries to distribute to the creditors in

 4    light of the credit bid purchase of the assets by Adeptio, a

 5    secured creditor.  Also for the reasons I mentioned earlier,

 6    Your Honor, the difference between the first two policies and

 7    the third policy, which could be available to the plaintiffs

 8    if they were successful, but could not be available to the

 9    estate, there is even more of a prejudicial diminution in the

10    value of the estate and it's right to policy proceeds if the

11    Icon litigation is permitted to continue.

12         THE COURT: The first policy, Exhibit 1, includes

13    both entity coverage and D&O coverage.

14         MR. GWYNNE: Right.

15         THE COURT: Is that correct? Are they severable?

16         MR. GWYNNE: They are.  Well, there are separate

17    coverages there, Your Honor.  Importantly, as also was

18    something I think was addressed in one of Your Honor's

19    opinions, and know was something important to Judge Walrath

20    in the Quintus Corporation case where there was no published

21    decision, but where she granted a motion for relief from stay

22    for someone to continue to go after, continue litigation that

23    would affect policy proceeds.  There's, there's, there was a

24    priority of payment provision I believe in Your Honor's prior

25    case.  I know there was in Quintus Corporation.  This, I'm

1   glad Your Honor brought that up, because that's a, it's a

2   very important critical distinction.  This policy has no

3   priority of payment provision.  So that the, the claims

4   against the D&O litigants, and their claims, and the D&O

5   officers' claims, the directors' and officers' claims for

6   reimbursement do not have priority over the entity coverage.

7   So that also, if that were the case, Your Honor, we would

8   have a difficult time arguing to Your Honor that there was

9   any diminution in the estate, because the estate's rights

10  would only be, would already be subject to the rights of

11  other folks under the priority of payment provision.  But in

12  this case, that's not in fact true.

13          THE COURT: Now also, just factually, because you've

14  mentioned the securities litigation as well as the rebate

15  holder litigation.  What is the status of those actions?

16          MR. GWYNNE: Those actions are there, Your Honor.

17  They're still stayed.

18          THE COURT: Okay.

19          MR. GWYNNE: And they're not trying to, to move

20  ahead and get a leg up on everybody else, frankly, like we

21  believe that the Icon defendants are doing.  Now in the ACNS,

22  Inc. versus Travelers case, which is also cited in Your

23  Honor's prior decision that I mentioned, on page 261 of that

24  case, the 3rd Circuit says, quote, "The possession or control

25  language of §362(a)(3) has consistently been interpreted to

1   prevent acts that diminish future recoveries from a debtor's
2   insurance policies."  Close quote.  That language, Your
3   Honor, obviously evidences that it's not a race to the
4   courthouse.  It's not a race to go and get the insurance
5   policy proceeds.  That if the estate would be diminished with
6   respect to its future assertion of claims to recover under
7   the policy, it's, in other words, that just because the
8   estate has not yet recovered under the insurance policy
9   proceeds, and the defendants are moving forward with their
10  litigation in what I believe to be a violation of the stay,
11  doesn't mean that they have the right to do that.
12  Particularly where there's no priority of payment provision.
13  And unlike in the Quintus Corporation decision I mentioned,
14  the defendants here, they didn't file a motion for relief
15  from stay, they didn't come and ask this Court if they could
16  continue with their litigation, but instead decided to make
17  their own decision that the stay didn't apply, and that they
18  could proceed with that litigation.  In Your Honor's 15375
19  Memorial court decision 382br 652 from February 15th of 2008,
20  Your Honor drew distinction between insurance policies that
21  provided coverage to the estate where the estate can actually
22  recover proceeds and policies where the policy itself may be
23  property of the estate, but where the proceeds would only go
24  to somebody else.  And that in that instance Your Honor held
25  that if the estate has no right to the proceeds of a policy,

1    then Your Honor wasn't going to enjoin anyone from continuing

2    to litigate there under.  And obviously for the reasons I

3    mention that is also markedly different from this case.  And

4    Your Honor, when Your Honor was talking about policies where

5    there was coverage to the estate, like for example collision,

6    life, or fire insurance policies, and where the proceeds

7    could be made payable to the Debtor rather than a third party

8    creditor, that the proceeds are property of the estate in

9    that situation.  And for the reasons I mentioned, that is the

10   situation in the present case.  Now I believe, Your Honor,

11   because the automatic stay applies, clearly under the case

12   law, and that because the Icon entities have violated the

13   automatic stay by continuing with the litigation in a way

14   that could diminish the value of the proceeds to the estate,

15   that that's frankly all that should have to be shown here

16   today.  I mean, they haven't moved for relief from stay.  If

17   the stay applies, I don't know that necessarily the Court

18   would have to get into all the other injunction factors.  But

19   to the extent that Your Honor would get into those factors,

20   irreparable injury.  While I pointed out the difference

21   between the second layer excess insurance policy, which is

22   the third policy, the XL policy, and the prior two policies,

23   and as I mentioned, based upon the terms of the documents of

24   the insurance policies themselves, if the Icon folks are

25   allowed to continue their litigation, it will prejudice the

1    estate, and it could be irreparable injury, because to the

2    extent they recover policy proceeds under one of the first

3    two policies, the estate can't make that up under the third

4    policy, where there's no entity coverage.  As far as the

5    second factor, reasonable probability of success on the

6    merits, I think it's clear under binding 3rd Circuit case law,

7    as well as the factors that Your Honor looked at in your

8    prior decision, that the estate has a great likelihood of

9    success on the merits.  The next factor is whether the harm

10   to the Debtor outweighs the, the possible harm to Icon.  Well

11   Your Honor, the harm to the Debtor does outweigh the possible

12   harm to Icon because, as I mentioned, the Icon entities can

13   recover from the third insurance policy.  There is no entity

14   coverage under that XL policy for the estate.

15         THE COURT: Well they would first have to exhaust

16   the first two policies.

17         MR. GWYNNE: Well that's correct, Your Honor.  But

18   with the amount, as Your Honor knows, there's over $160

19   million in claims against this Debtor with the two class

20   actions, the five other pieces of litigation that, that I

21   don't think will be a problem if there is - - and as Debtors'

22   counsel mentioned, we're getting ready to file the plan and

23   the solicitation motion.  The harm to the Debtor also, I

24   think, outweighs the possible harm to Icon if Your Honor

25   looks at the Debtor in terms of its estate and the other

1   creditors.  There are the securities class action plaintiffs,

2   there are the rebate plaintiffs.  There are other creditors

3   that have filed claims that will be prejudiced to the extent

4   that the Icon defendants are able to recover hundred cent

5   dollars under the insurance policies while everybody else

6   will receive only a small pro rata distribution, even if,

7   even if both of the first two policies are exhausted.  The

8   fourth factor, Your Honor, is the harm to the public or the

9   public interest.  Well we believe that the automatic stay,

10  and the parties need to comply with the automatic stay, abide

11  by the automatic stay, and come to this Court if they think

12  the stay doesn't apply.  And that there is harm to the public

13  if the automatic stay means nothing, and if notwithstanding

14  that the estate has an interest in the insurance policy

15  proceeds, the Icon entities are allowed to just proceed with

16  their litigation, and to take those proceeds that are

17  property of the estate.  Also harm to the public, Your Honor,

18  when you look at the public interest in which one of the most

19  important fundamental provisions of bankruptcy is the pro

20  rata treatment of creditors.  Now obviously I realize that

21  the, unfortunately the priorities list always gets longer, as

22  do the exceptions to discharge.  But that is still one of the

23  main fundamental principles of bankruptcy.  Is equality of

24  treatment with respect to the creditors.  To the extent that

25  the Icon entities are allowed to go forward and recover under

1   one of the first two policies, that would also harm the

2   public interest in the fundamental principles of bankruptcy.

3   That's all I have, Your Honor, unless you have questions for

4   me.  But I would like to move into admission OCUC Exhibits 1

5   through 3, and I believe the parties stipulated that those

6   were exhibits.

7           THE COURT: Correct.

8           MR. ROSEN: I have no objection to those, Your

9   Honor.

10          THE COURT: And they are so admitted.  Thank you,

11  Mr. Gwynne.

12          MR. GWYNNE: Thank you, Your Honor.

13          THE COURT: You'll certainly have an opportunity to

14  reply - -

15          MR. GWYNNE: Thank you very much.

16          THE COURT:  - - to have rebuttal.  Mr. Harker, good

17  afternoon.

18          MR. HARKER: Good afternoon, Your Honor.  It's my

19  pleasure to introduce to the Court an attorney that you've

20  signed an order *pro hac vice* on.  His name is Scott D. Rosen

21  of Cohn, Birnbaum & Shea out of Hartford, Connecticut.

22          THE COURT: Wonderful.  Thank you, Mr. Harker.  And

23  Mr. Rosen, welcome to you.

24          MR. ROSEN: Thank you, Your Honor.  Good morning,

25  Scott Rosen of Cohn, Birnbaum & Shea for Icon International.

1    Your Honor, just as a preliminary matter, this is an

2    adversary proceeding.  The motion before the Court is a

3    motion for a preliminary injunction.  The standard is not

4    only very steep, but the Creditors Committee is not a party

5    to this adversary proceeding.  So to that extent I would ask

6    that the Court strike and disregard all of the argument by

7    the Creditors Committee so far.  However, I am willing to

8    consent to the admission of the exhibits.

9         THE COURT: I had understood there was a stipulation

10   that permitted the Committee to make argument.  I'll have to

11   - - let me look.  There was a - -

12        MR. ROSEN: If I'm mistaken, I apologize, Your

13   Honor.

14        THE COURT: There was a stipulation extending time.

15        MS. STITZER: There's a stipulated order, Your

16   Honor, attached as Exhibit H.

17        MR. GWYNNE: Your Honor, in addition, under §1109

18   - -

19        THE COURT: Yes.

20        MR. GWYNNE:  - - the Committee has a right to

21   appear and be heard.  And the 3rd Circuit has held twice that

22   that gives the committee the right to appear and be heard in

23   an adversary proceedings.  And for the record, the Committee

24   was not even aware of the filing of this adversary proceeding

25   until this motion surfaced, or we would have sought

1  intervention.

2          THE COURT: Understood.  So I, I'll overrule that

3  objection, Mr. Rosen.

4          MR. ROSEN: Yes, Your Honor.

5          THE COURT: On both Mr. Gwynne's reference to the

6  statute, as well as the, the order entered in the case.

7          MR. ROSEN: Your Honor, I'd first point out that - -

8          THE COURT: Now of greater concern to me is your

9  argument about the factual record before me supporting the

10 motion.

11         MR. ROSEN: Yes.

12         THE COURT: Because normally we proceed in, on

13 motions for injunctive relief by either verified complaint or

14 affidavit.  And we have neither here.  And at the moment, I

15 suppose, the only factual record I've got are the three

16 policies.

17         MR. ROSEN: Yes.  I, I agree with that, Your Honor.

18 And that's Icon's position.  Now given that the policies may

19 be a factual record, I would like to point out some facts

20 about the policies.

21         THE COURT: Yes, sir.

22         MR. ROSEN: These are claims made policies.  That

23 means that they only cover claims that are actually asserted

24 during the policy period.  These policies were in effect from

25 November '06 to November '07, therefore any claims asserted

1   before or after that date are not covered by these policies.

2   In the first instance, Icon didn't bring its complaint

3   against the individuals until December 31.  That's over a

4   month after these policies expired.  The individuals did not

5   notify the Debtor of the indemnity claim until January 10th of

6   '08, at least according to the Debtors' moving papers.  On

7   that record alone, Icon's claim, on these facts, would not be

8   a claim made within the policy period here.  I'd also note

9   that the Debtor, the estate has made no claims on the policy,

10  at least none that have been presented to this Court that

11  would be within the policy period either.  And while I am

12  hearing reference to securities litigation for the first

13  time, I'm not aware that this is litigation that a trustee

14  would be able to take over as a plaintiff and somehow fall

15  into the status of having made the claim.  That allegation

16  hasn't been made, and I don't know if it can be.  As of now,

17  there is no trustee, there is no liquidating agent, there's

18  just a Debtor-in-Possession.  And under the policy, a debtor-

19  in-possession cannot be an insured.  While it may be in the

20  future, if a liquidating trustee is appointed, and the plan

21  is approved, that might change, it still wouldn't change the

22  fact that the claims made date on this policy expired in

23  November of '07.  As far as I know, there have been no

24  actions brought by the estate claiming coverage under these

25  policies, there have been none identified.  Not one.  In

1    fact, in the disclosure statement that was filed in this

2    case, even in the disclosure statement, not one potential

3    piece of litigation is identified as belonging to the estate.

4    All that's talked about is possible investigations that would

5    be funded by the secured creditor in the future.  So these

6    are speculative claims that haven't even been identified,

7    certainly don't exist yet, to be brought by a party who

8    doesn't exist yet.  To say that it's speculative, and it

9    would be certainly an understatement, and the preliminary

10   injunction standard is an imminent theat of irreparable harm.

11   Well it's anything but imminent.  I don't even think it's a

12   threat.  It may be a hypothetical or conditional possibility

13   that at some point in the future this type of thing could

14   arise where the estate might be able to assert claims against

15   these policies, but that hasn't happened yet, and the estate,

16   of course, is always free to come in later if the situation

17   should change.  The public policy, the primary public policy

18   in these cases is to protect a reorganization.

19             THE COURT: Yes.

20             MR. ROSEN: And there is no reorganization here.

21   This, there never was one, it was never intended to be one,

22   it was a simple asset sale.  Basically a foreclosure by the

23   secured creditor dressed up in a lot of fancy clothes.  Icon

24   is a general unsecured creditor.  We filed a proof of claim

25   for $4,997,000 and change.  That has not been objected to.

1    It is based on financial accommodations extended by Icon to

2    the Debtor.  And the actual underlying basis for the claim is

3    a stipulated arbitration award in favor of Icon.  The claim

4    against the individuals is based on their own tortious

5    conduct.  And to the extent Icon recovers a dollar from the

6    individuals, it reduces Icon's claim against the estate.  Now

7    the theoretical discussion of insurance coverage would be

8    interesting if there were a policy here that might give

9    coverage to Icon, but there's not.  So I think that

10   theoretical discussion just doesn't rise to the level of, of

11   justifying an injunction at all.  With respect to the

12   automatic stay, the laws are very clear that the stay only

13   applies to debtors.  It does not apply to co-debtors,

14   sureties, guarantors, etcetera, etcetera.  The exceptions

15   have to do with this identity of interest test.  And in order

16   for there to be an identity of interest, a couple of factors

17   have to be present.  Neither of which are present here.

18   Either the claim against the non-debtor has to create a

19   collateral estoppel against the estate, so in effect it would

20   be litigation against the estate, binding on the estate, or

21   it has to give rise to a new claim against the estate that

22   didn't otherwise exist.  In other words, a way to back door a

23   claim against the estate where there wasn't one before.

24   Since Icon already has an allowed claim for the full amount,

25   those issues simply don't apply.  And even if Icon's claim

1   were objected to, the basis of Icon's claim against the

2   estate is a stipulated arbitration award.  The basis against

3   the individual are torts.  So there, I don't think there

4   could be any collateral estoppel under any circumstances.

5          THE COURT: And I think, if I'm not mistaken, that,

6   that the Committee has in effect waived that argument at this

7   point.

8          MR. ROSEN: Your Honor, I only raise it because the

9   Committee was arguing that the automatic stay applies.

10         THE COURT: I see.

11         MR. ROSEN: And I think that in order for the stay

12  to apply, the case law says that the identity of interest

13  test must be met.

14         THE COURT: Yes.  Thank you.

15         MR. ROSEN: So if the Committee's conceding that

16  there is no identity of interest, then I think the Committee

17  has to concede that the automatic stay doesn't apply.  All

18  that would be left would be an injunction under §105, and in

19  this case a preliminary injunction which has an even higher

20  standard.

21         THE COURT: Well I think the Committee's argument is

22  that it implicates property of the estate, and particularly

23  because of the indemnification obligation.

24         MR. ROSEN: I - -

25         THE COURT: I'll let Mr. Gwynne make that argument

1    himself, but I think that's the point he's trying to make.

2            MR. ROSEN: To address that, Your Honor, again

3    there's, there's been no evidence that the estate has claims

4    against the policy.  There hasn't even been an allegation or

5    a sworn statement that there's a claim against the policy.

6    And there's certainly nothing in the record to suggest that

7    Icon has a claim against this policy.  So for those reasons,

8    the idea that Icon's action affects property of the estate, I

9    think just simply doesn't hold.  Your Honor, in conclusion I

10   don't think the Debtor has satisfied the elements for a

11   preliminary injunction.  There's no evidence other than the

12   policies.  There's not a factual basis.  Even if the facts as

13   represented were taken as true, the estate has not shown a

14   probability of success on the merits, has not shown any

15   imminent danger of irreparable harm, I don't believe there's

16   any public policy implicated here, and certainly in terms of

17   prejudice, since again there's no policy that Icon can claim

18   against, the prejudice in enjoining Icon would only be to

19   Icon.  There'd be no prejudice to the estate on this record

20   if Icon were to proceed.  Thank you.

21           THE COURT: Well now, just a couple questions for

22   you.  Are there other, are there subsequent policies - -

23           MR. ROSEN: I don't - -

24           THE COURT:  - - which would enable Icon to recover?

25   In other words on a claims made basis?

 1          MR. ROSEN: Your Honor, I'm not aware of any.  In

 2    fact, we weren't aware that these even existed until they

 3    were supplied.  I do note that these do have an extension

 4    period that may be bought, and the premium is very steep.

 5    It's, I think in one of them it's $247 thousand.  I think the

 6    record would reflect that the estate did not purchase that

 7    extension.  But I, I will allow myself to be corrected on

 8    that point.

 9          THE COURT: And on a claims made, is it just when

10    that claim is actually made or when it arose?

11          MR. ROSEN: It's when the claim is actually

12    asserted.  And the language is in the policy itself.  It

13    describes what a claims made is.  And it has to be, the claim

14    has to be asserted and the insurance company has to have been

15    given notice of the claim within the claims made period.

16          THE COURT: Thank you.  Thank you very much, Mr.

17    Rosen.

18          MR. ROSEN: Thank you, Your Honor.

19          THE COURT: Mr. Gwynne, is Icon correct that any

20    claim for indemnification would be a pre-petition, unsecured

21    claim, in effect?

22          MR. GWYNNE: The Directors and Officers claims, to

23    the extent they relate to pre-petition conduct, are pre-

24    petition, general, unsecured claims.  However, to the extent

25    that they assert the indemnification claims because of the

1    Icon litigation, then that impacts the property of the estate

2    which is the insurance proceeds.  With respect to the

3    evidence issue, Your Honor - - and I realize that, since that

4    was Your Honor's first question to opposing counsel, I'd like

5    to address that.  First of all, under the language of the

6    policies themselves, there is entity coverage contrary to

7    what counsel said.  The policy very clearly defines the

8    insured as including the organization which, on the first

9    page, is Inphonic.  There is entity coverage here.  Because

10   there is entity coverage, under the 3rd Circuit case law, the

11   proceeds are property of the estate.  There is no priority of

12   payment provision, and the insured versus insured exclusion,

13   yes, while, you know, there's language in there that excepts

14   the examiner, trustee, receiver, liquidator, or

15   rehabilitator, and we don't have one of those yet, we intend

16   to have one in the plan.  And basically the argument of

17   opposing counsel is that because we don't have a trustee now,

18   the exclusion applies, and therefore the, there's no, there's

19   no coverage.  With respect to the way it works, Your Honor,

20   is that when a claim is made by another party against an

21   organization or a director or officer, they give notice to

22   the insurance company within 30 days after - -

23              THE COURT: And there's a duty to defend.

24              MR. GWYNNE: Right.  Within 30 days after the policy

25   expires.  And that was done in this case by the Debtors and

1    the Committee.  But that, and I know there's not, you don't

2    have those in front of you here today.  But the issue, Your

3    Honor, is whether the stay applied, and whether the stay was

4    violated.  If the stay applied, and the stay was violated,

5    then their actions are void *ab initio*.  And there's plenty of

6    3rd Circuit cases, obviously, that stand for that proposition,

7    unlike some circuits where it's voidable, in the 3rd Circuit,

8    it's void *ab initio*.  If, and if someone violates the stay,

9    Your Honor, and the Debtor comes in before this Court under

10   §105 and says, Your Honor, the creditor violated the

11   automatic stay, in that instance when they violate the

12   automatic stay, that's enough to enjoin them.  But here

13   they're trying to say we have to prove all these other

14   things.  And yes, this was a motion for a preliminary

15   injunction.  Those factors, I think, were really relevant

16   though, Your Honor.  And the second part, which is if the

17   automatic stay does not apply, would this Court extend the

18   automatic stay under §105 to cover non-debtors, because

19   there's an identity of interest between the Directors and

20   Officers and the Debtor.  And as Your Honor indicated, the

21   Committee was not making that argument here today.  The only

22   argument we're making is that the stay applied, it was

23   violated, and that's, in and of itself is enough for an

24   injunction.  The automatic stay is a statutory injunction.

25   So their argument amounts to if they violate the injunction,

1   we have to come in and prove up another basis for another

2   injunction.  I mean, the automatic stay is a statutory

3   injunction.  If they violate it, it's void, and they should

4   be held to have to comply with it going forward.  With

5   respect to the facts as I mentioned Your Honor, the policy is

6   all this Court needs to show that the proceeds in this case

7   are property of the estate, and this litigation has been

8   going for some time.  And to the extent that - -

9          THE COURT: But Mr. Rosen's argument is that he's

10  not attacking or seeking recovery from the proceeds - -

11         MR. GWYNNE: Right.  Well, Your Honor his argument

12  is that he is not, but the Directors and Officers have the

13  right to seek indemnification, and when they seek

14  indemnification, that would come out of the policy proceeds.

15  And that would, in essence, obviously Your Honor, the money

16  that they would seeking, be seeking indemnification for,

17  would go to the Icon entities.  They would be the ones that

18  would receive the settlement payment, and the Directors would

19  then go to the estate for indemnification.  It would come out

20  of the policy proceeds, and therefore it would be Icon

21  receiving a full distribution to the prejudice of other

22  unsecured creditors.  And also, Your Honor, I mentioned some

23  things earlier about the, the commencement of the securities

24  litigation and the other litigation, of which Your Honor is

25  aware.

1         THE COURT: Yes.

2         MR. GWYNNE: And certainly Your Honor can take

3    judicial notice as the 3rd Circuit held this Court could in

4    Indian Palms and Nantucket Investors case.  So Your Honor can

5    take judicial notice under Federal Rule of Evidence 201 of

6    the existence of that litigation against the estate.  And

7    that litigation in and of itself was commenced pre-petition,

8    the securities litigation, it is covered by the policy.  And

9    the proceeds that could go to pay that claim would be

10   implicated in this case by the indemnification claim.  So in

11   essence, what the Icon entities are arguing is we can bring

12   our claim against the officers and directors.  And if the,

13   they seek indemnification from the estate, the estate pays

14   their claim, it reduces the proceeds available for

15   distribution to other unsecured creditors, but there's no

16   prejudice and the stay doesn't apply.  The stay does apply.

17   The identity of interest argument, Your Honor, is not, does

18   not govern whether the automatic stay applies to property of

19   the estate.  That's a 362(a)(3) question.  The identity of

20   interest deals with extending the stay under 105 or even some

21   courts have looked at it as if there is such an identity of

22   interest that the Debtor is, in essence, the defendant, then

23   the stay applies in that case, too.  Some courts look at it

24   as extending the stay.  But in any event, that's all, I

25   think, irrelevant for the arguments that I mentioned earlier.

1   And although we have sent the notices of claims to the

2   insurance company within the policy period plus the 30 days,

3   which is what the policy provides, we don't have to come in

4   here today and admit evidence of that.  And we certainly

5   don't want, by the way, the Icon entities to see what's in

6   those.  Those are obviously private between the estate and

7   the insurer.  But the - - and the insurer sent a reservation

8   of rights letter.  But we don't have to come in and prove all

9   of that to show that they violated the stay.  All we have to

10  show is that the proceeds are property of the estate under

11  the policy, and that they're taking action that's going to

12  affect those proceeds.  May I have one minute, Your Honor?

13          THE COURT: You certainly may.

14          MR. GWYNNE: Nothing further.  Thank you very much,

15  Your Honor.  Unless Your Honor has questions for me.

16          THE COURT: I don't think I have any further for you

17  now, Mr. Gwynne.  Thank you.

18          MR. GWYNNE: Thank you very much.

19          THE COURT: Mr. Rosen you're welcome to be heard.

20          MR. ROSEN: Your Honor, in the first instance, I was

21  not aware of the Nutraquest case, and would like an

22  opportunity to respond to that after this hearing.

23          THE COURT: You certainly may.

24          MR. ROSEN: I just haven't had a chance to read it

25  yet.  I suppose I'm, I'm maybe a little bit confused by

1    counsel's argument about entity coverage.  I do understand

2    that under some circumstances, policy proceeds can be

3    property of the estate.

4         THE COURT: Yes.

5         MR. ROSEN: But as I understand it, it has to be a

6    claim that's asserted by the estate, or assertable by the

7    estate, against the policy.  So for example, a third party

8    suing the estate which might result in a payment to the third

9    party, well that doesn't make the proceeds property of the

10   estate.  And I seem to be hearing that the securities

11   litigation is in that category, and it, I'm just, I'm not

12   sure I really follow - - let me gather my thoughts here - -

13        THE COURT: Well, unfortunately - -

14        MR. ROSEN:  - - for a second.

15        THE COURT: Unfortunately we don't have any record,

16   factual record of that.  I mean, I, does the securities

17   litigation exist?  Yes.  Whether it's entitled to make a

18   claim against the insurance proceeds, that we don't know.

19        MR. ROSEN: Yes.  And I think that the estate has

20   made no claim against the policy.  I think it's conceded by

21   the estate that Icon's claim was brought after the coverage

22   period in the policy, is evident by the statements and the

23   Debtors' pleadings as to when the notice was given in the

24   Icon complaint, which was filed December 31, over a month

25   after the policy expired.  The fact that an individual may

1   make a wrongful indemnity claim against a policy, shouldn't

2   be what ultimately determines that Icon is barred from

3   pursuing its rights.  Incidentally in a sister court of the

4   United States, and it is somewhat extraordinary to me that

5   this Court is being asked to enjoin an action in the U.S.

6   District Court when this motion could have been brought in

7   the District Court, but I suppose that's, I didn't raise that

8   argument in my papers.  I only note it now.

9        THE COURT: Well the injunction would not go,

10   obviously, to the District Court, or the action in the

11   District Court, but rather to Icon's prosecution of that

12   action.

13        MR. ROSEN: I understand that, Your Honor.  The

14   practical effect is that it's a stay of the District Court

15   proceeding.  I would still continue to object that there is

16   no evidentiary record here, and based on the case law a

17   preliminary injunction can not issue.  There has been no

18   request, at least that I know of, for a preliminary ruling on

19   whether the automatic stay applies to Icon in this case.

20   That would be, I think it would have to be brought on some

21   sort of different procedural mechanism, but in any event it

22   isn't brought on here.  And to address the stay issue.  The

23   cases are just absolutely clear, and I'll quote from my

24   memorandum.  "The automatic stay affords protection only to

25   Debtors, and does not extend to co-tortfeasors, joint

1   obligors, guarantors, sureties, or other non-debtor co-

2   defendants.  Icon is not proceeding against this insurance

3   policy.  It would be the individual Directors whose conduct

4   is implicating the policy, and whose letter implicated the

5   policy, not Icon's.  For those reasons, Your Honor, I'd ask

6   that the movants be denied their relief.

7           THE COURT: Thank you, Mr. Rosen.

8           MR. GWYNNE: Your Honor, may I respond, respond?

9           THE COURT: You certainly may.

10          MR. GWYNNE: Your Honor, with respect to the entity

11  coverage - -

12          THE COURT: Yes.

13          MR. GWYNNE:  - - I just want to be clear about that

14  to the extent I haven't been.  With respect to the pre-

15  petition securities litigation, if Your Honor looks at the

16  policy, and the definition of the entity coverage for

17  securities claim, it's very broad.  That coverage applies,

18  and now the question becomes - - what I understand opposing

19  counsel to raise a fair point.  So okay, in that case, the

20  Debtor is the insured.  But where do the proceeds go?  In

21  that case, Your Honor, the proceeds would go to the estate.

22  Because the, and could be distributed to creditors, unsecured

23  creditors, because a claim has been asserted against the

24  Debtor, a securities claim.  That claim is subject to

25  subordination under 510(b).  So even though there are

1    proceeds available to pay the securities claim, those

2    proceeds that are property of the estate would be distributed

3    to the unsecured creditors, because even though these

4    securities claimants are creditors outside of bankruptcy law,

5    in bankruptcy law they are creditors, but they're

6    subordinated.  So that's the reason why those claims are

7    important to the coverage issue.  With respect to the

8    procedure, Your Honor, the Debtors brief was very clear to me

9    in raising the first issue, being the violation of the

10   automatic stay.  I don't know what other procedure or process

11   the Debtor needed to raise the violation of the automatic

12   stay.  I think the Debtor raised it, and raised it clearly in

13   its papers.  That's issue number one.

14          THE COURT: I'm satisfied that that issue is before

15   the Court.

16          MR. GWYNNE: And I think that with respect to the

17   issue of whether the non, the automatic stay only applies to

18   the Debtors, not non-debtors, that's, I think, irrelevant,

19   because we're not arguing, again, that identity of interest

20   issue.  We're saying the stay applies to property of the

21   estate.  3rd Circuit has said that it applies to property of

22   the estate, and includes insurance proceeds.  And Your Honor,

23   all that would be required - - if you took out the second

24   half of the adversary proceeding, or the second argument in

25   the motion about §105 and extending the stay, and if all we

1   were before the Court on today was whether they violated the

2   automatic stay, which is what we're here on arguing, Your

3   Honor would look at the policy, determine if there's

4   coverage, determine if there are, if the proceeds are

5   property of the estate, and then that's, that's really the

6   end of the question.

7           THE COURT: Thank you.

8           MR. GWYNNE: I don't have anything further.  I

9   appreciate your indulgence letting me come back again.

10          THE COURT: Any time, because I like everybody to

11  walk out of the courtroom feeling as if they've had a full

12  opportunity to say whatever they want to say.  And

13  interestingly I did have a preliminary ruling that I was

14  going to, going to provide to the parties today, but I want

15  to go do a little rethinking based upon both sides' excellent

16  arguments.  I thought it was a very interesting argument.

17  Very helpful.  I do want to read the policies again a little

18  bit more carefully, and perhaps with a slightly different

19  perspective.  And re-review the cases, which I had already

20  read, but I'd like to take just another look at them based

21  upon the arguments that counsel have made.  And I will then

22  issue a written opinion on the issue.  I should say on the

23  motion.  And I know that Mr. Rosen indicated that Icon would

24  like an opportunity to at least respond to the Nutraquest

25  decision.  Is that correct, Mr. Rosen?

```
 1            MR. ROSEN: Yes.  That's correct.

 2            THE COURT: Give me just - - I'll continue to work

 3   on it in the meantime, but give me a reasonable time that you

 4   would like to respond.

 5            MR. ROSEN: Uh - -

 6            THE COURT: I know that lawyers are busy.  I used to

 7   be a lawyer, and I know what it was like.

 8            MR. ROSEN: Is next Wednesday - -

 9            THE COURT: More than, that's perfectly fine.  Why

10   don't we say the end of the next week?

11            MR. ROSEN: That would be fine, Your Honor.

12            THE COURT: And that will certainly meet with my

13   timetable as well.  And so I'm going to reserve my decision,

14   much to my surprise.  And I won't, I won't indicate which

15   side I was coming out on, but I'm going to go back and look

16   things, and I will issue an opinion sometime after Icon has

17   had an opportunity to submit it's letter.  And a letter will

18   be sufficient.

19            MR. ROSEN: A letter?

20            THE COURT: Yes.  That would be fine.

21            MR. GWYNNE: Your Honor, the Debtor or the estate as

22   the movant, is there any chance the Debtor could have a few

23   days to respond?  If it thinks necessary?  If not - -

24            THE COURT: Sure.

25            MR. GWYNNE:  - - the Debtor won't waste Your
```

1  Honor's time.

2          THE COURT: I don't have a problem with that.

3          MR. GWYNNE: Okay.  So if they're going to file on

4  Wednesday, if we could just have until - -

5          THE COURT: I think I gave Mr. Rosen until Friday.

6          MR. GWYNNE: Okay.  If we could have to the next

7  Wednesday.

8          THE COURT: Fine.

9          MR. GWYNNE: Okay.

10          THE COURT: All right.

11          MR. GWYNNE: Thank you, Your Honor.

12       (The remainder of the page is intentionally left blank.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT: I'll be on the lookout for those.  If I

2  don't see something, I'll figure it's, it's not coming.

3          MR. GWYNNE: Thank you.

4          THE COURT: All right, counsel.  Thank you very

5  much.  An excellent argument, and I appreciate it very much.

6  And we'll stand in recess.

7      (Whereupon at 2:51 p.m. the hearing in this matter was

8  concluded for this date.)

9

10

11

12

13

14

15

16

17

18          I, Jennifer Ryan Enslen, approved transcriber for

19  the United States Courts, certify that the foregoing is a

20  correct transcript from the electronic sound recording of the

21  proceedings in the above entitled matter.

22

23   _/s/Jennifer Ryan Enslen_                    ___05/15/08___
     Jennifer Ryan Enslen
24   43 Bay Boulevard
     Newark, DE 19702
25   (302)836-1905