IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| SN LIQUIDATION, INC., *et al.*, | : Case No. 07-11666 (KG) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : Re: Docket Nos. 542, 562, 563, 564, 566, 568 |
| | : **Hearing Date:  June 13, 2008 at 11:00 a.m.** |

## REPLY OF DEBTORS IN SUPPORT OF DISCLOSURE STATEMENT

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submit this reply in support of the motion (the "Motion") for entry of an order pursuant to sections 1125, 1126, and 105 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), Rules 2002, 3003, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (a) approving the adequacy of the Disclosure Statement for Joint Plan of Liquidation of SN Liquidation, Inc., *et al.*, Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14, 2008 (as was amended on June 12, 2008, and as may subsequently be amended, the "Disclosure Statement"), to be distributed to the holders of Secured Lender Claims, and the Disclosure Statement and Summary of Joint Plan of Liquidation of SN Liquidation, Inc., *et al.*, Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors to be distributed to the holders of General Unsecured Claims, as either disclosure statement forms may be subsequently amended, pursuant to section 1125 of the Bankruptcy Code; (b) establishing procedures for solicitation and tabulation of votes to accept or reject the Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14, 2008 (as was

{01032163;v1}

of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14, 2008 (as was amended on June 12, 2008, and as may subsequently be amended,, the "Plan");[1] (c) fixing the administrative expense bar date; and (d) fixing the date, time, and place for a confirmation hearing, and respectfully state as follows:

### Background

1.　On April 14, 2008, the Debtors and the Official Committee of Unsecured Creditors (the "Proponents") filed the Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14, 2008 [Docket No. 404] and the Disclosure Statement for Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated April 14, 2008 [Docket No. 405].

2.　On May 19, 2008, the Proponents filed the Motion seeking approval of the Disclosure Statement.

3.　On June 3, 2008, Jerome Neil filed a letter response to the Motion [Docket No. 562]. In the letter response, Mr. Neil advises that he does not owe any money to and does not have any dealings with the Debtors. Mr. Neil does not refer to the Disclosure Statement in the letter.

4.　On June 3, 2008, Linda Opel filed a letter response to the Motion [Docket No. 563]. In the letter response, Ms. Opel requests $200.00 for a DVD player allegedly promised to her by the Debtors, yet never received by Ms. Opel. Ms. Opel does not refer to the Disclosure Statement in the letter.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the First Amended Disclosure Statement.

5. On June 3, 2008, Justin M. Lux filed a letter response to the Motion [Docket No. 564]. In the letter response, Mr. Lux asks this Court to reconsider commission allegedly due to Mr. Lux in the amount of $110.00. Mr. Lux does not refer to the Disclosure Statement in the letter.

6. On June 6, 2008, Icon International, Inc. ("Icon") objected to the Disclosure Statement in the Objection of Icon International, Inc. to Adequacy of Disclosure Statement [Docket No. 565] (the "Icon Objection"). In the Icon Objection, Icon identifies several alleged deficiencies of the Disclosure Statement including the failure to: (a) provide a complete description of the available assets and their value; (b) identify the source of information contained in the Proposed Disclosure Statement; (c) provide a liquidation analysis from which a creditor can estimate how much it would receive under a Chapter 7 case; (d) estimate the value of any avoidance actions; (e) describe the existence, likelihood and probability of success in any non-bankruptcy litigation; and (f) explain the potential recoveries in potential causes of action against former directors and officers. Icon Objection at ¶ 7.

7. On June 6, 2008, Sadiyyah Young filed a letter response to the Motion [Docket No. 566]. In the letter response, Ms. Young objects to the granting of any relief in these cases and requests payment for rebates allegedly submitted to the Debtors. Ms. Young does not refer to the Disclosure Statement in the letter response.

8. On June 6, 2008, Jay Saiki filed a letter response to the Motion [Docket No. 568]. In the letter response, Mr. Saiki advises that he submitted the letter in order to fulfill the required steps in obtaining a rebate payment. Mr. Saiki does not refer to the Disclosure Statement in the letter response.

9. On June 11, 2008, Adeptio Funding LLC ("Adeptio") filed Adeptio's Limited Objection and Reservation of Rights Regarding Debtors' Motion to, Among Other Things, Approve Adequacy of Disclosure Statement [Docket No. 576] (the "Adeptio Reservation of Rights") to preserve issues, which the Proponents are currently negotiating with Adeptio, including the terms of the Adeptio Loan, the Priority Claims Funding, the Debtors' rejection of indemnification obligations, the Litigation Trustee's setoff rights with respect to Adeptio and a requested release and exculpation of Adeptio.

10. The above-referenced letter responses (collectively, the "Letter Responses") and the Icon Objection and the Adeptio Reservation of Rights are collectively referred to as the Objections.

11. Contemporaneously with the filing of this Reply, the Debtors filed the First Amended Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated June 12, 2008 (the "First Amended Plan") and the First Amended Disclosure Statement for Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated June 12, 2008 (the "First Amended Disclosure Statement"). The Proponents also filed blackline comparisons of the First Amended Plan and the First Amended Disclosure Statement to the Plan and Disclosure Statement originally filed.

## Reply

12. The Proponents respectfully request that this Court overrule the Objections and approve the Motion and the Disclosure Statement.

## The Letter Responses

13. Although the Proponents sympathize with the parties filing the Letter Responses, such filings were not responsive to the Motion and do not address specific concerns with the Motion or the Disclosure Statement. Therefore, the Letter Responses should be overruled.

## The Icon Objection

14. As stated in the Motion, the Court has broad discretion in examining the adequacy of the information contained in a disclosure statement. *See In re Cajun Elec. Power Co-op, Inc.*, 230 B.R. 715, 731 (Bankr. M.D. La. 1999) (citing *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination is largely within the discretion of the bankruptcy court.")); *see also In re A.H. Robbins Co.*, 880 F.2d 694, 698 (4th Cir. 1989); *In re Egan*, 33 B.R. 672, 674-75 (Bankr. N.D. Ill. 1983). This discretion provides flexibility and facilitates the effective reorganization of the different types of chapter 11 debtors by accommodating the varying circumstances accompanying chapter 11 cases. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977).

15. In these cases, the estates are administratively insolvent, and the Proponents have negotiated with multiple creditors in order to make a plan of liquidation possible. As expressed in the Disclosure Statement, the Proponents believe that the best, indeed the only practicable, potential source for recovery for not only general unsecured creditors but also administrative and priority claimants is through the Plan currently proposed. The Debtors believe, given the current resources available, the First Amended Disclosure Statement Should be approved.

*The Available Assets are Adequately Described in the First Amended Disclosure Statement*

16. The Proponents have adequately described the assets available for distribution and their value. *See* Section IV.C.4 of the First Amended Disclosure Statement. Specifically,

the Proponents are relying on the funding provided for under the Term Sheet, which includes $500,000 to be made available by Adeptio to the Debtors' estates for the payment of Allowed Priority Claims and up to an additional $500,000 as a senior secured loan for the investigation of potential claims against, *inter alia,* former directors and officers (where such claims have not been released or transferred pursuant to the Sale or the Term Sheet). *See* First Amended Disclosure Statement at Section IV.C.5.a.ii.

17. If any recoveries are obtained from the causes of action against former directors and officers, the proceeds from the litigation will fund the Litigation Trust. Specifically, the First Amended Disclosure Statement states:

> The Committee has been investigating all such actions, including claims against former directors and officers (where such claims have not been released or transferred pursuant to the Sale or the Term Sheet). The Committee's investigation of Causes of Action includes an analysis of claims relating to the Debtors' redemption of stock. Specifically, the Committee has begun investigating claims in connection with two InPhonic stock repurchase programs (the "Stock Repurchase Programs"). These Stock Repurchase Programs were apparently authorized by the Board of Directors during August 2005 and November 2006, respectively. In each of the Stock Repurchase Programs, the Board of Directors apparently authorized repurchase of up to $30 million of common stock during the ensuing 12 months. InPhonic repurchased common stock with a reported value of at least $13.59 million between August 17, 2005 and March 31, 2006, and at least $13.96 million between November 15, 2006 and June 30, 2007. In pursuit of Causes of Action, the Estate will seek recovery from the Insurance policies to make distributions on account of Allowed Claims. In addition, the Committee is investigating the repurchase of common shares with a reported value of at least $2.79 million that were repurchased between April 1, 2007 and June 30, 2007, outside of the publicly announced Share Repurchase Programs. The Committee believes the Debtors were insolvent (or rendered more deeply insolvent) during these time periods, and this insolvency was exacerbated by the Stock Repurchase Programs.

\*\*\*

> The Causes of Action are entrusted to the Litigation Trust under the Plan for the benefit of creditors. The value of the Causes of Action, related breaches of fiduciary duty by directors and officers, the potential for recovery, the potential defenses to such claims, and the timing of any recoveries cannot be determined at this time. The pursuit of the Causes of Action, however, is the purpose of confirming the Plan, and establishing Litigation Trust, and the only opportunity of which Proponents are aware for any distribution to the Holders of General Unsecured Claims.

First Amended Disclosure Statement at Section IV.C.5.a.ii.

18. Because the value of the claims that may be prosecuted or compromised by the Litigation Trust is currently unknown, the Proponents have disclosed as much as is known to them of the available assets for distribution and their value, specifically the litigation claims and funding to pursue such claims,. For this reason, the Icon Objection as it pertains to this issue should be overruled.

*The Source of the Information Contained in the Disclosure Statement*

19. In the First Amended Disclosure Statement, the Debtors included the sources for the information contained therein. *See* First Amended Disclosure Statement at Introduction. The First Amended Disclosure Statement states, "[t]his Disclosure Statement is prepared with information the Proponents obtained from the Debtors' SEC filings, the Committee's investigation into potential recoveries into the estates for the benefit of general unsecured creditors, and publicly available pleadings filed in courts where causes of action are pending against the Debtors." *Id.* Therefore, the objection raised by Icon regarding the source of the information contained in the Disclosure Statement should be overruled.

*The Liquidation Analysis is Adequate*

20. Icon asserts that the liquidation analysis in the Disclosure Statement does not enable a creditor to estimate how much it would receive under a chapter 7 case. Icon Objection

7

{01032163;v1}

at ¶ 7.c. The First Amended Disclosure Statement states as follows regarding the chapter 7 liquidation analysis:

> [t]he Debtors and the Committee believe that liquidation under chapter 7 or dismissal would result in smaller, if any, distributions to creditors than those provided for in the Plan. This is because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals during such liquidation, and because the payment of the Investigation Funding and the Priority Claims Funding, to be made by Adeptio pursuant to the Term Sheet, might not occur if these Chapter 11 Cases are converted to chapter 7 bankruptcy cases . . . if Adeptio does not provide the Adeptio Loan pursuant to the Term Sheet and Settlement Agreement, the chapter 7 estate will not contain sufficient funds to pursue the Causes of Action, which makes it highly unlikely that a chapter 7 trustee will pursue the Causes of Action. Consequently, it is unlikely that there would be any recovery to Holders of General Unsecured Claims and there would be less--or possibly no--recovery for Holders of Allowed Administrative Claims. In addition, if the cases are converted to cases under chapter 7 of the Bankruptcy Code, Adeptio may not provide the Priority Claims Funding and there would be little to no recovery priority for claimants.

First Amended Disclosure Statement at Section XI.A.

21. As previously stated herein, the Committee is investigating possible causes of action, including those arising from the Stock Repurchase Programs and the repurchase of stock outside of those programs. First Amended Disclosure Statement at Section IV.C.5.a.ii. The Estates currently have insurance policies with coverage totaling $35 million, after defense costs. First Amended Disclosure Statement at Section III.C.1. In the litigation to be commenced by the Litigation Trust, the Estates will seek recovery from the Insurance Policies to make distributions on account of Allowed Claims. First Amended Disclosure Statement at Section IV.C.5.a.ii. To investigate the Causes of Action, the Litigation Trust needs the Investigation Funding provided pursuant to the Term Sheet in order to attempt to recover under the Policies. To pay Allowed

Priority Claims, the Litigation Trust requires Priority Claims Funding. First Amended Disclosure Statement at Section XI.A.

22. It may be argued that, based upon the language in the Term Sheet,[2] if a chapter 11 plan is not confirmed, Adeptio has no obligation to provide the Investigation Funding and the Priority Claims Funding. *Id.* This could leave a chapter 7 trustee with insufficient cash to investigate any causes of action that could bring recoveries into the Estates. *Id.* In addition, in chapter 7 cases, the Estates will incur chapter 7 administrative claims for the expenses and fees of the chapter 7 trustee and the trustee's professionals. *Id.* Therefore, in chapter 7 cases, it is possible that chapter 11 administrative, priority and general unsecured creditors will receive no distribution on their Allowed Claims.

23. Because the funds that may be recovered into the Litigation Trust cannot be determined at this time, and the Proponents cannot predict if litigation would be commenced by a chapter 7 trustee if these cases were converted to cases under chapter 7 of the Bankruptcy Code, the liquidation analysis in the First Amended Disclosure is adequate. It provides the information

---

[2] The Term Sheet, the terms of which are set forth in Section III.H of the First Amended Disclosure Statement, provide in pertinent part that upon closing of the APA, Adeptio will:

> Investigation . . .Funding. Fund . . . (ii) the costs of professional fees necessary to investigate the viability of avoidance actions and other litigation claims and commence and prosecute such litigation if appropriate that the Debtors' estates through a Litigation Trust may possess through a senior secured loan (which shall accrue interest as ruled by the Court) of up to a total $500,000, in accordance with the terms set forth below (the "Investigation Funding") which amount shall be repaid from first proceeds paid to the Litigation Trust;
>
> Priority Claims. Upon confirmation of a chapter 11 plan, contribute up to a total $500,000 solely for the purpose of making distributions under such plan on account of allowed priority claims as such claims become allowed pursuant to the terms and conditions of section 1129(a)(9) of the Bankruptcy Code (the "Priority Claims Funding").

First Amended Disclosure Statement at Section III.H.

9

{01032163;v1}

that is currently available to the Proponents, and the Icon Objection, on this basis, must be overruled.

*Value of Avoidance Actions*

24. Icon alleges that the Disclosure Statement fails to estimate the value of any avoidance actions. The Term Sheet provides that certain preference claims pursuant to section 547 of the Bankruptcy Code were transferred to Adeptio at closing of the sale, as contemplated by the Sale Motion and APA (the "Transferred Claims"). *See* First Amended Disclosure Statement at Section III.H. The Transferred Claims include claims pursuant to section 547 of the Bankruptcy Code against the non-Debtor parties to the executory contracts and unexpired leases assumed by the Debtors and assigned to Adeptio pursuant to the APA. In connection with the purchase of Avoidance Actions under the APA, Avoidance Actions against the putative defendants were deemed released as of the closing of the Sale under the APA. All remaining preference claims pursuant to section 547 of the Bankruptcy Code not otherwise transferred to Adeptio were released by the Debtors pursuant to the Term Sheet. Therefore, the Proponents estimate that there is no value to any preference actions. Fraudulent transfer claims, such as those arising out of the Stock Repurchase Programs, remain property of the Estates.

*Adequate Description of Causes of Action*

25. The Proponents have, with the information that is available to them at this time, described the existence, likelihood and probability of success in any non-bankruptcy litigation. *See infra* ¶¶ 17-18, 21. It is not possible to guarantee the results of litigation. The Proponents disclosed the Insurance Policies available to the Estates in the First Amended Disclosure Statement as the Policies were described in this Court's June 2, 2008 Opinion in the Icon Action, *see* First Amended Disclosure Statement at Section III.C.1., and explained the Litigation Trust's

intent to pursue claims against such policies in connection with proposed litigation against former directors and officers. *See* First Amended Disclosure Statement at Section IV.C.5.a.ii. Therefore, the Disclosure Statement is adequate and should be approved.

26. The Debtors believe they have incorporated the concerns raised by the Icon Objection into the First Amended Disclosure Statement. Therefore, the Icon Objection should be overruled. Nevertheless, if after a review of the First Amended Disclosure Statement, Icon would like the Proponents to consider incorporating further language into the document, the Debtors will reasonably cooperate with Icon to resolve their concerns.

## The Adeptio Reservation of Rights

*Priority Claims Funding*

27. In the Adeptio Reservation of Rights, Adeptio asserts that it has no obligation to provide Priority Claims Funding until the Adeptio Loan is repaid in full and terminated. Adeptio Reservation of Rights at ¶ 4. The Debtors disagree with Adeptio's reading of the Term Sheet. The Term Sheet provides that upon closing of the APA, Adeptio will:

> Priority Claims. Upon confirmation of a chapter 11 plan, contribute up to a total $500,000 solely for the purpose of making distributions under such plan on account of allowed priority claims as such claims become allowed pursuant to the terms and conditions of section 1129(a)(9) of the Bankruptcy Code (the "Priority Claims Funding").

First Amended Disclosure Statement at Section III.H.

28. The above language unambiguously does not require repayment or termination of the Adeptio Loan. It requires funding for the payment of priority claims upon confirmation of a chapter 11 plan. The only conditions are the confirmation of a chapter 11 plan and the allowance of claims pursuant to section 1129(a)(9) of the Bankruptcy Code.

11

29. If the Debtors were required to wait to pay Allowed Priority Claims until the Litigation Trust recovered funds sufficient to repay the Adeptio Loan, the Plan could be violative of section 1129(a)(9) of the Bankruptcy Code, which requires payment of priority claims in cash on the Effective Date of the Plan, equal to the allowed amount of such claim. This, in particular, impacts the Holders of Allowed Non-Tax Priority Claims who are not solicited for acceptance of the Plan.

30. Adeptio's argument that the Debtors' interpretation of the Term Sheet is afoul of the priority scheme of the Bankruptcy Code is incorrect. Adeptio Reservation of Rights at ¶ 4. Under this Plan, Holders of Allowed Administrative Claims, if they do not object to the Plan, consent to their treatment, which is as follows:

> [e]xcept as otherwise provided herein, and subject to the requirements of the Plan, APA Final Sale Order and Term Sheet, on, or as soon as reasonably practicable after the later of (i) the repayment in full of the Adeptio Loan, (ii) the Distribution Date or (iii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors and shall have agreed upon. All unpaid Allowed Administrative Claims shall be paid interest from the Effective Date to the date of distribution the published L.I.B.O.R. rate of interest plus 4%.

First Amended Disclosure Statement at Section IV.A.1.a.

31. The professionals retained in these cases consist of the majority of the Holders of Administrative Expense Claims. These professionals have been involved in these cases and the negotiations of the Plan. Their consent to the treatment under the Plan was obtained with full and continuous disclosure. Other administrative expense claimants who, while not "section 327 professionals", nonetheless are organizations and persons who have provided critical

{01032163;v1}

administrative support,[3] through stipulation, have already consented to the treatment proposed in the Plan. This is not the case for the Holders of Non-Tax Priority Claims. It would violate the Term Sheet if all the priority claimants are required to wait to receive their distribution until the Adeptio Loan is repaid in full and terminated. Therefore, Adeptio's objection should be overruled.

*Adeptio Release and Exculpation*

32. Adeptio asserts that it is entitled to release and exculpation under the Plan. Adeptio Reservation of Rights at ¶ 8. However, no consideration has been offered, and release and exculpation of Adeptio is not required by the APA, Final Sale Order or Term Sheet. There are two types of releases sought: the release of estate claims against Adeptio and release of direct claims of claimholders against Adeptio The Debtors have provisionally included a release of the Estates' claims against Adeptio and its affiliates in the Plan in the hope and expectation that the release will be justified based on the cooperation of Adeptio in obtaining confirmation of the plan and its funding in coordination with the Debtors and the Creditors' Committee.

33. As to the release of the claimholders' direct claims, the Debtors have declined to solicit third party releases under the Plan for multiple reasons, including expense-related concerns. To save expense, in the Motion, the Debtors have sought approval to send a summary disclosure statement to all Holders of Class 4 General Unsecured Claims. The release requested by Adeptio would jeopardize the Debtors' ability to solicit plan approval with the summary disclosure statement, would require the Estates to incur additional costs in by including more voluminous documents in the solicitation package, and would require the professionals involved in the solicitation process to incur fees in further revising the solicitation documents. Without

---

[3] These professionals include: (a) Clear Thinking Group, which provides wind down management services, (b) BMC Group, which is the claims and noticing agent in these cases, and (c) Joseph Pardo who is the member or director of each debtor entity.

13

{01032163;v1}

adequate consideration, and without any real showing of need, including the existence of any such claims, such an expense should not be borne by the Estates.

WHEREFORE, the Proponents request entry of an order granting the Motion and approving the Disclosure Statements.

Date: June 12, 2008
Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Mary E. Augustine*
Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

and

**DLA PIPER US LLP**
Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Counsel for Debtors and Debtors in Possession