# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| SN LIQUIDATION, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**FIRST AMENDED JOINT PLAN OF LIQUIDATION OF SN LIQUIDATION, INC., *ET AL*. PROPOSED BY THE DEBTORS IN POSSESSION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS  DATED ~~APRIL 14,~~ JUNE 12, 2008**

**DLA PIPER US LLP**

Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York  10020

Counsel for Debtors and Debtors in Possession

**BAYARD P.A.**

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, Delaware  19899

**REED SMITH LLP**

Kurt F. Gwynne (No. 3951)
1201 Market Street
Suite 1500
Wilmington, DE 19801

Robert P. Simons (admitted in PA)
Claudia Z. Springer (admitted in PA)
Joshua C. Lewis (admitted in PA)

Counsel for the Official Committee of Unsecured Creditors

---

[1] The Debtors and debtors in possession are INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

INTRODUCTION ....................................................................................................1

~~Article~~ARTICLE I    DEFINED TERMS AND RULES OF INTERPRETATION......................3

    A.        Rules of Construction ........................................................................3

    B.        Definitions...........................................................................................3

            1.        Adeptio...........................................................................3

            2.        Adeptio Loan .................................................................3

            3.        Administrative Claim.....................................................3

            4.        Allowed Claim ..............................................................3

            5.        Allowed Administrative Claim .....................................4

            6.        Allowed Deficiency Claim............................................4

            7.        Allowed General Unsecured Claim ...............................4

            8.        Allowed Priority Claims................................................4

            9.        Asset Purchase Agreement ...........................................4

            10.      Assumed Liabilities ......................................................4

            11.      Avoidance Actions........................................................4

            12.      Ballot.............................................................................4

            13.      Ballot Date ....................................................................4

            14.      Bankruptcy Code ..........................................................4

            15.      Bankruptcy Court..........................................................5

            16.      Bankruptcy Rules..........................................................5

            17.      Bar Date ........................................................................5

            18.      Beneficiary....................................................................5

            19.      Business Day.................................................................5

            20.      Bylaws...........................................................................5

            21.      Cash...............................................................................5

            22.      Causes of Action...........................................................5

            23.      Chapter 11 Cases...........................................................5

            24.      Claim.............................................................................5

            25.      Claimholder...................................................................5

            26.      Claims Agent ................................................................6

            27.      Class...............................................................................6

            28.      Closing Date..................................................................6

29. Committee ................................................................................................. 6

30. Committee Member ..................................................................................... 6

31. Confirmation ............................................................................................... 6

32. Confirmation Date ....................................................................................... 6

33. Confirmation Hearing .................................................................................. 6

34. Confirmation Order ..................................................................................... 6

35. Contingent .................................................................................................. 6

36. Creditor ...................................................................................................... 6

37. Cure ............................................................................................................ 6

38. Debtor(s) .................................................................................................... 6

39. Designated Contracts .................................................................................. 7

40. DIP Facility ................................................................................................. 7

41. DIP Lender .................................................................................................. 7

42. Disclosure Statement .................................................................................. 7

43. Disputed ..................................................................................................... 7

44. Distribution ................................................................................................ 7

45. Distribution Date ........................................................................................ 7

46. Effective Date ............................................................................................. 7

47. Entity .......................................................................................................... 7

48. Estates ........................................................................................................ 7

49. Estate Assets .............................................................................................. 7

50. Excluded Assets .......................................................................................... 8

51. Excluded Liabilities ..................................................................................... 8

52. Executory Contract ..................................................................................... 8

53. Final Decree ............................................................................................... 8

54. Final Distribution ........................................................................................ 8

55. Final Order ................................................................................................. 8

56. Final Tax Day ............................................................................................. 8

57. General Unsecured Claim ........................................................................... 8

58. Held Contract ............................................................................................. 8

59. Holder ......................................................................................................... 8

60. Impaired ..................................................................................................... 8

61. Insider ........................................................................................................ 8

| | | |
|---|---|---|
| 62. | Interest | 8 |
| 63. | Late Claim | 9 |
| 64. | Lien | 9 |
| 65. | Litigation Trust | 9 |
| 66. | Litigation Trust Agreement | 9 |
| 67. | Litigation Trust Expenses | 9 |
| 68. | Litigation Trust Interests | 9 |
| 69. | Litigation Trust Professionals | 9 |
| 70. | Litigation Trustee | 9 |
| 71. | Person | 9 |
| 72. | Petition Date | 9 |
| 73. | Plan | 10 |
| 74. | Priority Non-Tax Claim | 10 |
| 75. | Priority Tax Claim | 10 |
| 76. | Professional | 10 |
| 77. | Professional Fee Claim | 10 |
| 78. | Pro Rata | 10 |
| 79. | Rejected Contract | 10 |
| 80. | Sale Order | 10 |
| 81. | Secured lender | 10 |
| 82. | Securities Act | 10 |
| 83. | Security | 10 |
| 84. | SN Liquidation | 10 |
| 85. | Subordinated Claim | 10 |
| 86. | Term Sheet | 10 |
| 87. | Trust Assets | 11 |
| 88. | Trust Oversight Committee | 11 |
| 89. | Trustee Fee Claim | 11 |
| 90. | Trustee Fees | 11 |
| 91. | Unclassified Claims | 11 |
| 92. | Unimpaired | 11 |
| 93. | Voting Deadline | 11 |
| 94. | Other Definitions | 11 |

C.      Rules of Interpretation ...................................................................11

D.      Computation of Time.................................................................~~11~~12

E.      Governing Law .............................................................................12

~~Article~~ARTICLE II    CLASSIFICATION OF CLAIMS AND INTERESTS .............................12

A.      Introduction..................................................................................12

B.      Unsolicited Claims (not entitled to vote on this Plan)...........................................13

C.      Unimpaired Classes of Claims (deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan)............................................13

D.      Impaired Classes of Claims (shall be permitted to vote on this Plan) ..................13

E.      Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)............................................13

~~Article~~ARTICLE III  TREATMENT OF CLAIMS AND INTERESTS .................................~~13~~14

A.      Unclassified Claims ...........................................................................~~13~~14

        1.      Administrative Claims ................................................................14

        2.      Priority Tax Claims....................................................................15

        3.      Trustee Fee Claims ....................................................................16

B.      Unimpaired Claims .........................................................................~~15~~16

        1.      Class 1:  Other Secured Claims ...................................................16

        2.      Class 2:  Priority Non-Tax Claims................................................16

C.      Impaired Claims Entitled to Vote ........................................................17

        1.      Class 3:  Secured Lender Claims .................................................17

        2.      Class 4:  General Unsecured Claims.............................................17

D.      Impaired Classes of Claims (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)............................................18

        1.      Class 5:  Intercompany Claims ...................................................18

E.      Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)............................................18

        1.      Class 6:  Equity Interests...........................................................18

F.      Allowed Claims ...............................................................................18

~~Article~~ARTICLE IV  ACCEPTANCE OR REJECTION OF THE PLAN ...................................19

    A.      Impaired Classes of Claims Entitled to Vote ..........................................................19

    B.      Acceptance by an Impaired Class .......................................................................19

    C.      Presumed Acceptances by Unimpaired Classes .................................................19

    D.      Classes Deemed to Reject Plan..........................................................................19

    E.      Summary of Classes Voting on this Plan.......................................................~~19~~20

~~Article~~ARTICLE V  MEANS FOR IMPLEMENTATION OF THE PLAN.............................20

    A.      Sale..................................................................................................................20

    B.      Corporate Action.............................................................................................20

            1.      Merger of Debtors.................................................................................20

            2.      Continued Corporate Existence .............................................................20

            3.      Retention of Wind Down Specialist .......................................................21

    C.      Post-Effective Date Compensation of Professionals ...........................................21

    D.      Sources for Plan Distribution...........................................................................21

    E.      Litigation Trust ...............................................................................................22

            1.      Sources of Litigation Trust Funding.......................................................22

            2.      Litigation Trust Operation ....................................................................23

            3.      Claims Resolution ................................................................................29

            4.      Deadline for Filing of Administrative and Professional Fee Claims..........29

            5.      Estimation of Claims.............................................................................30

             6.      Late Claims ..........................................................................................31

             7.      Procedures for Treatment and Resolving Disputed, Contingent
                    and/or Unliquidated Claims ..................................................................31

            8.      Claims Reserve .....................................................................................32

             9.      Setoffs .................................................................................................32

             10.     Undeliverable and Unclaimed Distributions...........................................32

             11.     Transmittal of Distributions and Notice .................................................34

             12.     Distribution Dates .................................................................................34

             13.     Payments of Less than $15.00 ...............................................................34

             14.     Remainder of Funds in Reserve..............................................................34

15.    Execution of Documents.................................................................35

~~Article~~ARTICLE VI  TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ........................................................3435

    A.    Assumption of Insurance Policies; Assignment of Rights.................3435

    B.    Rejection of Other Executory Contracts ...........................................3536

~~Article~~ARTICLE VIIDISALLOWANCE OF CONTRIBUTION CLAIMS.........................3637

~~Article~~ARTICLE VIIICONFIRMATION AND CONSUMMATION OF THE PLAN PURSUANT TO BAN

~~Article~~ARTICLE IX  CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ...................................................3637

    A.    Conditions to Confirmation ...............................................................3637

    B.    Conditions to Effective Date..............................................................3738

    C.    Waiver of Conditions.........................................................................3738

~~Article~~ARTICLE X  RETENTION OF JURISDICTION.......................................3839

~~Article~~ARTICLE XI  MISCELLANEOUS PROVISIONS......................................4142

    A.    Modifications and Amendments.........................................................4142

    B.    Severability of Plan Provisions..........................................................4142

    C.    Adeptio Release..................................................................................43

    D.    Litigation Trustee Bound....................................................................43

    E.    Successors and Assigns .....................................................................4244

    ~~D.~~ F. Exculpation and Limitation of Liability ...........................................4244

    ~~E.~~ G. Binding Effect..............................................................................4345

    ~~F.~~ H. Revocation, Withdrawal, or Non-Consummation ...............................4345

    ~~G.~~ I. Notices ....................................................................................4445

    ~~H.~~ J. Indemnification and Related Matters ...............................................4446

    ~~I.~~ K. Prepayment ...............................................................................4547

    ~~J.~~ L. Dissolution of the Committee .......................................................4547

    ~~K.~~ M. Term of Injunctions or Stays ......................................................4548

~~Article~~ARTICLE XII ALTERNATIVES TO CONFIRMATION AND
CONSUMMATION OF PLAN ............................................................ 45<u>48</u>

    A.      Liquidation Under Chapter 7 .......................................................... 45<u>48</u>

    B.      Alternative Plan of Reorganization ................................................. 46<u>49</u>

~~Article~~ARTICLE XIII .......................................... CONCLUSION AND RECOMMENDATIONS     46<u>4</u>

## INTRODUCTION

THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS PLAN PROPONENTS, PROPOSE THE FOLLOWING CHAPTER 11 PLAN OF LIQUIDATION. THIS PLAN CONTEMPLATES THE LIQUIDATION OF THE DEBTORS' ASSETS AND THE RESOLUTION OF THE OUTSTANDING CLAIMS AGAINST AND INTERESTS IN THE DEBTORS. REFERENCE IS MADE TO THE DISCLOSURE STATEMENT, DISTRIBUTED CONTEMPORANEOUSLY HEREWITH, FOR A DISCUSSION OF (I) THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND OPERATIONS, (II) A SUMMARY AND ANALYSIS OF THIS PLAN, AND (III) CERTAIN RELATED MATTERS, INCLUDING RISK FACTORS RELATING TO THE CONSUMMATION OF THIS PLAN. ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) IN THEIR ENTIRETIES BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127 AND BANKRUPTCY RULE 3019, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION. THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ARE THE PROPONENTS OF THIS PLAN (THE "PROPONENTS") WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1129.

THIS PLAN IS A LIQUIDATING PLAN. PURSUANT TO PRIOR ORDERS OF THE BANKRUPTCY COURT, THE DEBTORS HAVE SOLD SUBSTANTIALLY ALL OF THEIR ASSETS. THIS PLAN PROVIDES FOR THE DISTRIBUTION OF THE ESTATES'

{01032386;v1}

INTEREST IN PROCEEDS FROM SUCH SALE AND THE CREATION OF A LITIGATION TRUST THAT WILL ADMINISTER AND LIQUIDATE ALL REMAINING PROPERTY OF THE DEBTORS, INCLUDING CAUSES OF ACTION, NOT SOLD, TRANSFERRED OR OTHERWISE WAIVED OR RELEASED BEFORE THE EFFECTIVE DATE OF THIS PLAN. THIS PLAN ALSO PROVIDES FOR DISTRIBUTION TO CERTAIN HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS AND THE FUNDING OF THE LITIGATION TRUST.   THIS PLAN FURTHER PROVIDES FOR THE TERMINATION OF ALL EQUITY INTERESTS IN THE DEBTORS, THE DISSOLUTION AND WIND-UP OF THE AFFAIRS OF THE DEBTORS.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN APPROVED FOR USE IN SOLICITING ACCEPTANCES AND REJECTIONS OF THIS PLAN. NOTHING IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNLESS AND UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED AND DISTRIBUTED TO ALL HOLDERS OF CLAIMS AND INTERESTS TO THE EXTENT REQUIRED BY BANKRUPTCY CODE SECTION 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THIS PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

2

# ARTICLE I

# DEFINED TERMS AND RULES OF INTERPRETATION

## A.  Rules of Construction

Unless this Plan expressly provides or the context requires otherwise, all capitalized terms used in this Plan shall have the meanings assigned to them in this Article I.  Whenever the context requires, terms used in this Plan shall include the plural as well as the singular.  A term used in this Plan and not defined in this Plan has the meaning, if any, given in the Bankruptcy Code or the Bankruptcy Rules.   In the event an inconsistency exists between the Plan and the Sale Order, APA, and Term Sheet (each defined below), the terms of the Sale Order, APA, and Term Sheet shall govern and are not altered in any way.

## B.  Definitions

1.      "Adeptio" shall mean Adeptio INPC Funding LLC or any successor in interest, including Simplexity LLC.

2.      "Adeptio Loan" shall mean ~~the loan established by~~that certain senior secured loan (which shall accrue interest as ruled by the Court) of up to a total of $500,000 in accordance with the terms set forth in the Term Sheet by and among the Debtors, Adeptio and the Committee approved by the Order (I) Approving Confirmed Term Sheet Settling Controversies, (II) Authorizing the Abandonment of Certain Preference Claims Pursuant to Bankruptcy Code Section 544, which, upon the Closing Date of the Asset Purchase Agreement, Adeptio agreed to fund the costs of professional fees necessary to investigate the viability of avoidance actions and other litigation claims ~~and commence and prosecute such litigation if appropriate that the Debtors' estates thought a Litigation Trust may possess through a senior secured loan (which shall accrue interest as ruled by the Court) of up to a total of $500,000 in accordance with the terms set forth in the Term Sheet.~~

3.      "Administrative Claim" means a Claim for payment of an administrative expense or cost of a kind specified in Bankruptcy Code section 503(b) and referenced in Bankruptcy Code sections 507(a)(1), 507(b) or 1114(e)(2) including, without limitation, the actual, necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors, taxes incurred by the Estate, including wages, salaries, or commissions for services rendered after the commencement of these Chapter 11 Cases, compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 328, 330(a) or 331 and all fees and charges assessed against the Debtors under chapter 123 of title 28 United States Code.

3

4.     "Allowed ~~Administrative~~ ~~Claim"~~ ~~means~~ ~~all~~ ~~or~~ ~~that~~ ~~portion~~ ~~of~~ ~~any~~ ~~Administrative Claim which either (a) has become allowed by a Final Order or (b) was incurred~~ ~~by the Debtors in the ordinary course of business during these Chapter 11 Cases and is~~ ~~undisputed and due and owing under the terms and conditions of any agreements or applicable~~ ~~law.~~Claim" means a Claim shall be deemed allowed for purposes of this Plan and the Litigation Trust if it is: (a) a Claim that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated and as to which the Debtors or other party-in-interest have not filed an objection; (b) a Claim that is either not Disputed or has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of a confirmation order in these cases and approved by the Bankruptcy Court; (ii) in any stipulation with Debtors of amount and nature of Claim executed on or after the entry of a confirmation order in these cases; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms hereof.

5.     "Allowed Administrative Claim" means all or that portion of any Administrative Claim which has become Allowed.

6.     "Allowed Deficiency Claim" means (i) an unsecured deficiency Claim of a Holder of a Secured Claim arising as a result of the Debtors' failure to pay such Secured Claim in full or (ii) with respect to the Secured Lender, its Twenty Million Dollar ($20,000,000) General Unsecured Claim, which shall be deemed Allowed.

7.     ~~5.~~ "Allowed General Unsecured Claim" means a General Unsecured Claim that is either not Disputed or that has been ~~allowed by a Final Order~~Allowed, including an Allowed Deficiency Claim.

8.     "Allowed Priority Claims" means Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims.

9.     ~~6.~~ "Asset Purchase Agreement" means that Asset Purchase Agreement dated November 8, 2007 by and among Adeptio and the Debtors, as such agreement has been amended by the parties thereto.

10.    ~~7.~~ "Assumed Liabilities" shall have the meaning ascribed to such term in the Sale Order and Asset Purchase Agreement.

~~8.     "Assumed Liabilities Claim" means a Claim or any portion thereof that~~ ~~constitutes an Assumed Liability.~~

11.    ~~9.~~ "Avoidance Actions" means the Estates' interests in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtors to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to chapter 5 of the Bankruptcy Code, including without limitations, sections 544, 545, 547, 548, 549, 550, 551, or 553 or under any other applicable law, regardless of whether or not such actions have been commenced prior to the Effective Date. Notwithstanding the foregoing, "Avoidance Actions" shall not include any Avoidance Actions (a) previously settled, released or waived in the Term Sheet, (b) settled, released, or waived by

4

Final Order of the Bankruptcy Code, or (c) that were transferred to Adeptio pursuant to the Asset Purchase Agreement and Sale Order.

12.    ~~10.~~ "Ballot" means the instrument used by any Holder, that is authorized to vote on this Plan, to indicate acceptance or rejection of this Plan.

13.    ~~11.~~ "Ballot Date" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of this Plan.

14.    ~~12.~~ "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and all amendments thereto.

15.    ~~13.~~ "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

16.    ~~14.~~ "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and incorporates the Local Rules of the Bankruptcy Court, as the same may be amended and modified from time to time, and as applicable to cases pending before the Bankruptcy Court.

17.    ~~15.~~ "Bar Date" means, as applicable: (i) with respect to Claims arising from the rejection of an Executory Contract or unexpired lease pursuant to this Plan, thirty (30) days after the earlier of the date of the Bankruptcy Court order approving the Debtors' rejection of such Executory Contract or unexpired lease or the Confirmation Date; (ii) with respect to Professional Fee Claims, sixty (60) days after the Effective Date of this Plan or such other date set by the Court; (iii) with respect to Administrative Claims other than Professional Fee Claims, thirty (30) days after the Effective Date of this Plan or such other date set by the Court; (iv) with respect to government units, as defined in Bankruptcy Code section 101(27), is May 6, 2008; and (v) with respect to all other Claims against the Debtors, March 21, 2008.

18.    ~~16.~~ "Beneficiary" means any Holder of an Allowed Claim who holds a beneficial interest in the Litigation Trust.

19.    ~~17.~~ "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

20.    ~~18.~~ "Bylaws" means the Third Amended and Restated Bylaws of InPhonic, Inc., including any prior versions.

21.    ~~19.~~ "Cash" means Cash, or Cash equivalents, including currency, checks, and wire transfers of immediately available funds.

22.    ~~20.~~ "Causes of Action" means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies (including without limitation equitable subordination), rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable

5

directly or derivatively, in law, equity or otherwise, whether under federal or state law, that any Debtors and/or Estates may hold against any Person and that are Excluded Assets but excluding those released, exculpated or waived pursuant to this Plan, the DIP Order, Asset Purchase Agreement, Term Sheet and/or the Sale Order.

23. ~~21.~~ "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, including all adversary proceedings pending in connection therewith, which cases are jointly administered under Case Number 07-11666 (KG).

24. ~~22.~~ "Claim" has the same meaning as that term is defined in Bankruptcy Code section 101(5).

25. ~~23.~~ "Claimholder" means the Holder of a Claim.

26. ~~24.~~ "Claims Agent" means The BMC Group, Inc, the claims agent appointed pursuant to the Bankruptcy Court's Order dated November 9, 2007.

27. ~~25.~~ "Class" means any group of Holders of Claims or Interests as classified in Article 2 of this Plan.

28. ~~26.~~ "Closing Date" shall mean December 21, 2007.

29. ~~27.~~ "Committee" means the Official Unsecured Creditors' Committee appointed by the Office of the United States Trustee in these Chapter 11 Cases pursuant to Bankruptcy Code section 1102, by notice filed November 16, 2007.

30. ~~28.~~ "Committee Member" means a Person serving on the Committee on the Confirmation Date.

31. ~~29.~~ "Confirmation" means entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court.

32. ~~30.~~ "Confirmation Date" means the date on which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court.

33. ~~31.~~ "Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of this Plan. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice.

34. ~~32.~~ "Confirmation Order" means the Order confirming this Plan (as may be amended or modified) pursuant to Bankruptcy Code section 1129.

35. ~~33.~~ "Contingent" means, with reference to a Claim, a Claim that has not accrued at the time in question, or is not otherwise currently payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

6

36.    ~~34.~~ "Creditor" means any Person who holds a Claim against one or more of the Debtors.

37.    ~~35.~~ "Cure" means the distribution of Cash by the Purchaser, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to Bankruptcy Code section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

38.    ~~36.~~ "Debtor(s)" means, collectively or individually, INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

~~37.      "Deficiency Claim" means (i) an unsecured deficiency Claim of a Holder of a Secured Claim arising as a result of the Debtors' failure to pay such Secured Claim in full or (ii) with respect to the Secured Lender, its Twenty Million Dollar ($20,000,000) General Unsecured Claim.~~

39.    ~~38.~~ "Designated Contracts" has the meaning ascribed to it in the Asset Purchase Agreement.

40.    ~~39.~~ "DIP Facility" has the meaning ascribed to it in the Final DIP Order.

41.    ~~40.~~ "DIP Lender" has the meaning ascribed to it in the Final DIP Order.

42.    ~~41.~~ "Disclosure Statement" means the document filed in connection with these Chapter 11 Cases pursuant to Bankruptcy Code section 1125 and approved by the Bankruptcy Court as containing "adequate information," as that term is defined in Bankruptcy Code section 1125(a)(1), and any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

43.    ~~42.~~ "Disputed" means any portion of a Claim, Administrative Claim, or Interest that is not Allowed, including without limitation, any Claim designated as disputed, contingent or unliquidated in the Debtors' schedules filed in connection with this case, or any Claim, Administrative Claim, or Interest with respect to which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

44.    ~~43.~~ "Distribution" means any distribution made pursuant to this Plan and Litigation Trust Agreement, including payments made pursuant to this Plan to Holders of Administrative and Priority Claims.

45.    "Distribution Date" means the date for Distribution occurring as soon as practicable after the Effective Date.

{01032386;v1}

46.    44. "Effective Date" means the effective date for confirmation of the Plan and shall be the first Business Day on which all of the conditions set forth in Article IX.B have been satisfied or waived in accordance with Article IX.C.

47.    45. "Entity" shall have the meaning set forth in Bankruptcy Code section 101(15).

48.    46. "Estates" means the Debtors' bankruptcy estates created in these Chapter 11 Cases pursuant to Bankruptcy Code section 541.

49.    47. "Estate Assets" means, collectively, all of the legal and equitable rights in and to all assets, property, interests and affects, real and personal, tangible and intangible, wherever situated, held at any time by the Estates including, without limitation, Excluded Assets and all Causes of Action, and all rights and appurtenances thereto and proceeds thereof, and which shall, on the Effective Date, be irrevocably assigned, transferred and conveyed to the Litigation Trust.

50.    48. "Excluded Assets" shall have the meaning ascribed in the Asset Purchase Agreement.

51.    49. "Excluded Liabilities" shall have the meaning ascribed in the Asset Purchase Agreement.

52.    50. "Executory Contract" means any executory contract or unexpired lease of real or personal property, as contemplated by Bankruptcy Code section 365 that was unexpired, not terminated, and otherwise in effect on the Petition Date, between the Debtors and any Person, and including, without limitation, any written employment agreements or plans and employee benefit plans and agreements.

53.    51. "Final Decree" means, with respect to each of these Chapter 11 Cases, a Final Order of the Bankruptcy Court closing the bankruptcy case.

54.    52. "Final Distribution" means the Distribution by the Litigation Trustee, which exhausts the Estate Assets (except for any holdback for costs of administering the Litigation Trust) held by the Litigation Trust.

55.    53. "Final Order" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with these Chapter 11 Cases or proceedings therein, which has not been reversed, stayed, modified or amended and as to which the time period to appeal or to seek certiorari, review or rehearing (except under Bankruptcy Rule 9024) has passed.

56.    54. "Final Tax Day" means, with respect to the Estates, the last day which shall be included in a taxable year for which an income tax return is required to be filed by the Estates or the Litigation Trustee.

8

57.    55. "General Unsecured Claim" means a Claim arising on or before the Petition Date that is neither an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, nor Late Claim.

58.    56. "Held Contract" shall have the meaning ascribed to it in Section 2.5(b) of the Asset Purchase Agreement.

59.    57. "Holder" means the beneficial owner of any Claim or Interest.

60.    58. "Impaired" means, when used with reference to a Claim or Interest, that such Claim or Interest is impaired within the meaning of Bankruptcy Code section 1124.

61.    59. "Insider" shall have the meaning set forth in Bankruptcy Code section 101(31)(B).

62.    60. "Interest" means any "equity security" interest in the Debtors held by any "equity security holder" as those terms are defined in Bankruptcy Code sections 101(16) and (17).

63.    61. "Late Claim" means a Claim filed after the Bar Date or after any filing deadline applicable to such Claim.

64.    62. "Lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

65.    63. "Litigation Trust" means that trust which, after the Effective Date, will hold title to, control, and administer all property of the Debtors and their Estates including, without limitation, the Estate Assets, in accordance with the terms hereof, the Confirmation Order, and the Litigation Trust Agreement, orders entered by the Bankruptcy Court, and applicable law.

66.    64. "Litigation Trust Agreement" means that certain "SN Liquidation, Inc. et al. Litigation Trust Agreement," a true and correct copy of which is attached hereto and incorporated herein as Exhibit 1.

65.    "Litigation Trustee" means Morton Branzburg, Esquire, and any successors appointed to act as the trustee and representative of the Litigation Trust and thereby implement the provisions of the Litigation Trust Agreement.

67.    66. "Litigation Trust Expenses" means all expenses, debts, charges, taxes, liabilities and obligations related to administration of the Trust, including without limitation, the compensation payable to the Litigation Trustee and those professionals retained by the Litigation Trustee to assist in the implementation and consummation of the terms of this Plan and the Litigation Trust Agreement and all costs and expenses of (a) taking possession of, holding, maintaining, liquidating or distributing the Estate Assets that shall be transferred to or invested in the Litigation Trust, and (b) prosecuting, defending, settling or otherwise resolving any disputes regarding the Estate Assets and the Distribution of the Estate Assets from the Litigation Trust. Without limiting the generality of the foregoing, Litigation Trust Expenses shall also mean and

{01032386;v1}

include, without limitation: (i) any and all costs, expenses and fees (including, without limitation, all reasonable professional fees) incurred by the Litigation Trust or Litigation Trust Professionals in performing its duties hereunder.

68.    67. "Litigation Trust Interests" means the interests in the Litigation Trust to be distributed to Holders of Allowed General Unsecured Claims pursuant to this Plan.

69.    68. "Litigation Trust Professionals" means the agents, financial advisors, attorneys, consultants, independent contractors, representative and other professionals of the Litigation Trust.

70.    "Litigation Trustee" means Morton Branzburg, Esquire, and any successors appointed to act as the trustee and representative of the Litigation Trust and thereby implement the provisions of the Litigation Trust Agreement.

71.    69. "Person" shall have the meaning set forth in Bankruptcy Code section 101(41).

72.    70. "Petition Date" means November 8, 2007, the date of commencement of these Chapter 11 Cases under chapter 11 of the Bankruptcy Code.

73.    71. "Plan" means this plan, and any exhibits annexed hereto and any documents delivered in connection herewith as the same may be amended or modified from time to time by any duly authorized amendment or modification.

74.    72. "Priority Non-Tax Claim" shall mean an Allowed Claim that is entitled to priority under Bankruptcy Code section 507(a)(3) through section 507(a)(7).

75.    73. "Priority Tax Claim" means an Allowed Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

76.    74. "Professional" means any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327 or 1103 and any Professional seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(4).

77.    75. "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

78.    76. "Pro Rata" means the proportion that an Allowed Claim or Administrative Claim bears to the aggregate amount of all Allowed Claims or all Allowed Administrative Claims, as appropriate, calculated in accordance with the provisions of this Plan.

79.    77. "Rejected Contract" shall have the meaning ascribed to it in the Asset Purchase Agreement.

80.    78. "Sale Order" shall refer to that Final Order (I) Approving Asset Purchase Agreement ands Authorizing the Sale of Assets of Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief, dated December 13, 2007.

81.    79. "Secured Lender" means Adeptio.

82.    80. "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

83.    81. "Security" shall have the meaning ascribed to it in Bankruptcy Code section 101(49).

84.    82. "SN Liquidation" means the Debtor formerly known as Star Number, Inc.

85.    83. "Subordinated Claim" means any Claim subordinated pursuant to Bankruptcy Code section 510(b) or (c).

86.    84. "Term Sheet" shall refer to that certain Settlement Term Sheet by and among the Debtors, the Committee and Adeptio and approved by the Sale Order and the order of the Bankruptcy Court dated December 20, 2007.2007, pursuant to which, among other things, in full and final settlement and satisfaction of all Adeptio claims in the case (including secured and unsecured), Adeptio shall be given a $20 million allowed unsecured claim under the Plan. A copy of the Term Sheet is attached hereto as Exhibit 2 and is incorporated herein by reference.

87.    85. "Trust Assets" means all property of, vested in, controlled by, belonging to or in the possession of the Litigation Trust including, without limitation, the Estate Assets assigned, transferred and conveyed to the Litigation Trust on the Effective Date.

86.    "Trustee Fees" means all fees payable pursuant to 28 U.S.C. § 1930(a)(6).

88.    "Trust Oversight Committee" shall have the meaning ascribed to that term in the Litigation Trust Agreement.

89.    87. "Trustee Fee Claim" means a Claim of the Office of the United States Trustee for the payment of Trustee Fees.

88.    "Trust Oversight Committee" shall have the meaning ascribed to that term in the Litigation Trust Agreement.

90.    "Trustee Fees" means all fees payable pursuant to 28 U.S.C. § 1930(a)(6).

91.    89. "Unclassified Claims" means Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Professional Fee Claims.

11

92.    ~~90.~~ "Unimpaired" means a Claim or Interest that is not impaired within the meaning of Bankruptcy Code section 1124.

93.    ~~91.~~ "Voting Deadline" means the deadline for voting to either accept or reject this Plan as fixed by the Bankruptcy Court in an order approving the Disclosure Statement or otherwise.

94.    ~~92.~~ Other Definitions.    Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Litigation Trust Agreement shall have the meaning set forth therein.

**C.    Rules of Interpretation**

For purposes of this Plan (i) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (iii) in the event an inconsistency exists between the Plan and the Sale Order, APA, and Term Sheet, the terms of the Sale Order, APA, and Term Sheet shall govern and are not altered in any way, (iv) unless otherwise specified, all references in this Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to this Plan, (~~iv~~v) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (~~v~~vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan and (~~vi~~vii) to the extent not modified herein, the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

**D.    Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

12

{01032386;v1}

E.    **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Delaware shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan and (ii) the laws of the state of incorporation or formation, as appropriate, of each Debtors shall govern corporate and limited liability governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

A.    **Introduction**

All Claims and Interests, except Administrative Claims, Priority Tax Claims and Trustee Fee Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, withdrawn, waived, settled or otherwise satisfied prior to the Effective Date.

The Proponents have set forth the Classes below.  Pursuant to this Plan, the Estates shall be substantively consolidated on the Effective Date.  The Proponents reserve the right to seek

13

confirmation of this Plan with respect to each of the Debtors separately and to dismiss any Chapter 11 Case through the Confirmation Order.

**B.** **Unsolicited Claims (not entitled to vote on this Plan)**

    1.    Administrative Claims

    2.    Priority Tax Claims

    3.    Trustee Fee Claims

**C.** **Unimpaired Classes of Claims (deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan)**

    1.    Class 1: ~~Assumed Liability~~Other Secured Claims

    2.    Class 2~~: Other Secured Claims~~

    ~~3.~~    ~~Class 3~~: Priority Non-Tax Claims

**D.** **Impaired Classes of Claims (shall be permitted to vote on this Plan)**

    1.    Class 4~~3~~: Secured Lender Claims

    2.    Class 5~~4~~: General Unsecured Claims

**E.** **Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)**

    1.    Class 6~~5~~: Intercompany Claims

    2.    Class 7~~6~~: Equity Interests

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**A.** **Unclassified Claims**

    1.    Administrative Claims

Except as otherwise provided herein, ~~and~~ subject to the requirements of this Plan, the APA, the Sale Order, and Term Sheet, on, or as soon as reasonably practicable after the later of (i) the repayment in full of the Adeptio Loan; (ii) the Distribution Date or (~~ii~~iii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed

{01032386;v1}

Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors and shall have agreed upon; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during these Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (i) prior to the Effective Date, by the Debtors or Adeptio (as required by the terms of the Asset Purchase Agreement), as applicable, and (ii) subsequent to the Effective Date, by the Litigation Trustee or Adeptio (as required by the terms of the Asset Purchase Agreement, Sale Order and Term Sheet), as applicable. All unpaid Allowed Administrative Claims shall be paid interest from the Effective Date to the date of distribution at the published L.I.B.O.R. rate of interest as of the Effective Date plus 4%.

Allowed Administrative Claims total an estimated $1,482,000.00.1,800,000. Of that total, $700,000 in Allowed Administrative Claims remain unpaid. Currently, the Estates do not have sufficient cash to make a distribution to Holders of Allowed Administrative Claims. The payment of unpaid Allowed Administrative Claims will be funded by the proceeds, if any, of any Litigation or Causes of Action commenced by the Committee or Litigation Trust.

ProceedsSubject to repayment of the Adeptio Loan, proceeds, if any, once recovered by the Litigation Trust will be used to pay Allowed Administrative Claims with interest as provided above. If there are insufficient proceeds to pay the Holders of the unpaid Allowed Administrative Claims, such Holders will receive a Pro Rata distribution and distributions thereafter from the Litigation Trust to the extent the proceeds are available until fully paid,

before which there shall be no distributions to Holders of General Unsecured Claims on account of such claims. The Plan may be confirmed only if the Holders of ~~unpaid~~ Administrative Claims consent to such treatment. If Holders of ~~unpaid~~ Administrative Claims do not object to the Plan, they are deemed to consent to the treatment proposed herein upon entry of an order confirming the Plan.

2.    <u>Priority Tax Claims</u>

On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Tax Claim, or (iii) the date such Allowed Priority Tax Claim becomes payable pursuant to any agreement between the Litigation Trustee and each Holder of an Allowed Priority Tax, each Holder of such Allowed Priority Tax Claim ~~up to a maximum of $500,000~~ shall receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of such Allowed Priority Tax claim or (b) such other treatment as to which the Allowed Priority Tax Claim Holder and the Litigation Trustee shall have agreed in writing. The Debtors estimate that the <u>Allowed</u> Priority Tax Claims will not exceed $500,000. To the extent that Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims exceed $500,000, the Holders of Allowed Priority Tax Claims shall receive their Pro Rata share of such differential, which shall be paid by the Litigation Trust in regularly quarterly distributions over the time period set forth 1129(a)(9)(C)(ii) to the extent the Litigation Trust contains sufficient Cash. <u>In the event an Allowed Priority Tax Claims is not paid on the Distribution Date, the Holders thereof will be paid interest on such Priority Tax Claim accruing from the Distribution Date to the date of actual distribution at the United States Treasury's current interest rate for bankruptcy tax claims as of the Distribution Date. Adeptio shall make available up to $500,000 solely for the purpose of making distributions on account of Allowed</u>

16

Priority Claims; provided, however, that Adeptio shall make payments on account of Allowed Priority Claims only to the extent such claims are allowed and only as requested by the Debtors on or before the Effective Date or by the Litigation Trustee if the request is made after the Effective Date.

        3.        Trustee Fee Claims

All Trustee Fee Claims will be satisfied on or before the Effective Date.

**B.**        **Unimpaired Claims**

        1.        Class 1:  ~~Assumed Liability Claims~~

~~Assumed Liability Claims shall be satisfied by Adeptio pursuant to the terms of the Asset Purchase Agreement:  (i) in the ordinary course of business; (ii) pursuant to the terms of the applicable agreement underlying such claim, or (iii) such other treatment as to which such Holder and Adeptio shall have agreed.  The Debtors cannot estimate the amount of Allowed Assumed Liability Claims at this time.~~

        2.       ~~Class 2:~~  Other Secured Claims

On, or as soon as reasonably practicable after, the later of: (i) the repayment in full of the Adeptio Loan; (ii) the Distribution Date; (~~ii~~iii) the date such claim becomes an Allowed Other Secured Claim; or (~~iii~~iv) the date such Other Secured Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Other Secured Claim, a Holder of a Secured Claim, other than a Secured Lender Claim, shall receive either (i) Cash equal to the amount of the Allowed Other Secured Claim; (ii) the collateral which secures its claim; or (iii) such other treatment as to which the Debtors and the Holder of an Allowed Other Secured Claim agrees in writing, on the later of the Effective Date or the date such Claim becomes an Allowed Other Secured Claim.  The Debtors estimate that no Allowed Other Secured Claims exist.  To the extent there is collateral securing Allowed Secured Claims,

{01032386;v1}

the priority of such security interest or lien shall not be affected or "primed" by the Adeptio Loan.

       2. ~~3.~~ Class 3~~2~~: Priority Non-Tax Claims

On, or as soon as reasonably practicable after, the latest of: (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Non-Tax Claim; or (iii) the date such Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim (i) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such other treatment as to which the Litigation Trustee and such Holder shall have agreed upon in writing. The Debtors estimate that no Allowed Priority Non-Tax Claims exist. ~~To the extent that Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims exceed $500,000, the Holders of Allowed Priority Non-Tax Claims shall receive their Pro Rata share of such differential, which shall be paid by the Litigation Trust in regularly quarterly distributions over the time period set forth 1129(a)(9)(C)(ii) to the extent the Litigation Trust contains sufficient Cash.~~ Adeptio shall make available up to $500,000 solely for the purpose of making distributions on account of Allowed Priority Claims; provided, however, that Adeptio shall make payments on account of Allowed Priority Claims only to the extent such claims are Allowed and only as requested by the Debtors on or before the Effective Date or by the Litigation Trustee if the request is made after the Effective Date.

    **C.**    **Impaired Claims Entitled to Vote**

       1.    Class 4~~3~~: Secured Lender Claims

On the Effective Date, ~~all Claims by the Secured Lender, including any Claims arising~~ ~~under the DIP Facility or any prepetition agreement, the Secured Lender shall,~~ pursuant to the Term Sheet and subject to the terms of the Term Sheet, in <u>exchange for and in</u> full satisfaction, settlement, release and discharge of ~~and in exchange for such Claims, receive~~ the Secured Lender's<u> Allowed Secured Lender Claim, the Secured Lender shall receive an Allowed</u> Deficiency Claim in the amount of Twenty Million Dollars ($20,000,000), which entitles the Secured Lender to a Pro Rata share of the interests in the Litigation Trust Interests to be distributed to the Holders of Allowed General Unsecured Claims in Class ~~5.~~<u>4.</u>

      2.     Class ~~5~~<u>4</u>: General Unsecured Claims

Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Litigation Trust Interests, which shall entitle the holder of a Litigation Trust Interest to its Pro Rata share of any distributions (up to the amount of such holder's Allowed General Unsecured Claim) made by the Litigation Trust after satisfaction in full of<u> the Adeptio Loan,</u> all Liquidation Expenses, unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims. Distributions on Litigation Trust Interests shall be made in accordance with and pursuant to the Litigation Trust Agreement and shall be made by the Litigation Trust at such times and in such amounts as the Litigation Trustee, after consultation with the Litigation Trust Committee, shall determine. The Debtors believe there are a total of approximately $~~204,964,908.04~~<u>350,718,352</u> in General Unsecured Claims.

    **D.**    **Impaired Classes of Claims (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)**

      1.     Class ~~6~~<u>5</u>: Intercompany Claims

On the Confirmation Date or such other date as may be set by an order of the ~~court~~<u>Court,</u> but subject to the occurrence of the Effective Date, all Intercompany Claims shall be deemed

{01032386;v1}

expunged and extinguished. The Holders of Intercompany Claims shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims. Class 65 is deemed to have rejected this Plan and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject this Plan.

**E.    Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)**

1.    Class 76:  Equity Interests

On the Effective Date, all Equity Interests shall be canceled and each Holder thereof shall not be entitled to, and shall not receive or retain any property or interest in property on account of, such Equity Interests. Class 76 is deemed to have rejected this Plan and, therefore, Holders of Equity Interests are not entitled to vote to accept or reject this Plan.

**F.    Allowed Claims**

Notwithstanding any provision herein to the contrary, the Litigation Trustee shall only make distributions to Holders of Allowed Claims. No Holder of a Disputed Claim will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. SN Liquidation and/or the Litigation Trustee may, in its or their discretion, withhold distributions otherwise due hereunder to any Claimholder until its Claim becomes an Allowed Claim. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution in accordance with the terms and provisions of this Plan and the Litigation Trust Agreement.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.    Impaired Classes of Claims Entitled to Vote**

Subject to Article III of this Plan, Claimholders in each Impaired Class of Claims are entitled to vote as a Class to accept or reject this Plan.

**B.    Acceptance by an Impaired Class**

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**C.    Presumed Acceptances by Unimpaired Classes**

In accordance with Bankruptcy Code section 1124, Holders of Class 1 Other Secured Creditor Claims in Classes 1, 2 and 3and Class 2 Priority Non-Tax Claims are not Impaired by this Plan.  Under Bankruptcy Code section 1126(f), and each Holder of a Class 1 and 2 Claim in Classes 1 through 3 is presumed to have accepted this Plan, and the votes of such Claim Holders will not be solicited.

**D.    Classes Deemed to Reject Plan**

Holders of Claims and Interests in Classes 65 and 76 are not entitled to receive or retain any property under this Plan.  Under Bankruptcy Code section 1126(g) of the, Class 65 Claim Holders and Class 76 Interest Holders are deemed to reject this Plan, and the votes of such Claim or Interest Holders will not be solicited.

**E.    Summary of Classes Voting on this Plan**

As a result of the provisions of Article III of this Plan, only the votes of Holders of Claims in Classes 43 and 54 will be solicited with respect to this Plan.

{01032386;v1}

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtors and the Litigation Trust will implement and consummate this Plan through the means set forth in the Term Sheet and contemplated by Bankruptcy Code sections 1123(a)(5)(B) and (D), 1123(b)(3)(A) and (B), and 1123(b)(4).

**A.**    **Sale**

This Plan completes the implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' assets and the pursuit of the Estates' Causes of Action via the Litigation Trust.

**B.**    **Corporate Action**

1.    Merger of Debtors

Pursuant to Section 303 of the Delaware General Corporation Law (8 Del. C. § 303), on the Effective Date, (a) the members of the board of directors or managers, as the case may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned; (b) each of the Debtors shall be merged with and into SN Liquidation without the necessity of any other or further action to be taken by or on behalf of the Debtors.

2.    Rejection of Indemnification Obligations

Except as otherwise provided in this Plan, the Sale Order, or any other contract, instrument, release or other agreement or document entered into in connection with this Plan and approved by the Bankruptcy Court, on the Effective Date, the Bylaws and all related corporate documents shall be deemed rejected and all obligations related to any corporate contract, instrument, certificate of incorporation, bylaw, comparable organizational document or any other document or applicable law shall be deemed rejected as of the Effective Date including as they

22

~~relate to any indemnification rights claimed by any former employee, officer or director of the Debtors.~~

        2.       ~~3.~~ Continued Corporate Existence

On the Effective Date, immediately after (i) the merger of the other Debtors into SN Liquidation and (ii) the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be dissolved under applicable state law, and the Debtors shall be entitled to use the Confirmation Order as evidence of the authority to terminate the Debtors' corporate existence and to make all necessary filings associated therewith.

        3.       Retention of Wind Down Specialist

Clear Thinking Group, Joseph Myers and Joseph Pardo will continue to be employed on current terms until the Effective Date in order to facilitate the orderly Wind Down of the Debtors' Estates.

**C.      Post-Effective Date Compensation of Professionals**

The Professionals employed by the Debtors, the Committee, and the Litigation Trust shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date preparation, filing and prosecution of final fee applications, upon the submission of invoices to the Litigation Trustee. Any time or expenses incurred in the preparation, filing and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Bankruptcy Court.

**D.      Sources for Plan Distribution**

All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to this Plan shall be obtained from the following sources: (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action; (d) Adeptio's funding obligations pursuant to the Sale Order and Term

23

Sheet, including the: (i) Professional Funding; (ii) ~~Windown~~Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with the terms of such Term Sheet. The Term Sheet, which is attached hereto as Exhibit 2 and is incorporated herein by reference, provides that upon the closing of the ~~Asset Purchase Agreement~~APA, Adeptio shall fund (i) the administrative costs of maintaining the Debtors' estates post closing in the amount of $200,000 (the "Wind Down Funding") and (ii) the costs of professional fees necessary to investigate the viability of Avoidance Actions and other Causes of Action and commence and prosecute such litigation, if appropriate, that the Debtors' estates through a Litigation Trust may possess through a senior secured loan (which shall accrue interest as ruled by the Court) of up to a total $500,000, in accordance with the terms set forth in the Term Sheet (the "Investigation Funding") which amount shall be secured by all assets of the Litigation Trust and shall be repaid first from the proceeds paid to the Litigation Trust.  The terms of the Investigation Funding are more fully set forth in the Adeptio Loan Agreement attached hereto as Exhibit 3 and incorporated herein by reference.

### E.   Litigation Trust

On the Effective Date, the Litigation Trust shall be created pursuant to the Litigation Trust Agreement.  Morton Branzburg, Esquire, shall be appointed as the initial Litigation Trustee.

   1.   Sources of Litigation Trust Funding

      (a)   Investigation Funding.  Pursuant to the Term Sheet, upon formation of the Litigation Trust, Adeptio shall fund the costs of professional fees necessary to investigate, commence and prosecute Causes of Action, through ~~a senior secured loan of up to a total $500,000.~~the Adeptio Loan.

24

(b)     Transfer of Estate Assets.  Pursuant to the Term Sheet, upon the formation of the Litigation Trust, all Estate Assets and the proceeds thereof shall be transferred to the Litigation Trust, as set forth and defined in the Term Sheet.  ~~The~~Other than in connection with the Investigation Funding, the Estate Assets shall be deemed vested in and become property of the Litigation Trust free and clear of all claims, liens, encumbrances and interests of Adeptio or the Debtors subject to the terms of this Plan. These ~~claims~~Estate Assets include, without limitation, those set forth in the Notice of Circumstances sent by the Debtors on November 29, 2007 to its respective directors and officers liability insurance carriers and the supplemental letter sent by Committee counsel dated November 30, 2007 to such liability insurance carriers.  From and after the transfer of all such rights to the Litigation Trust, pursuant to Bankruptcy Code section 1123(b)(3) and the terms of the Litigation Trust Agreement, the Litigation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, or Causes of Action in accordance with the best interests of and for the benefit of the beneficiaries of the Litigation Trust.  Such transfers shall be free and clear of any Claims, Interests, or Encumbrances, except the rights of the beneficiaries of the Litigation Trust hereunder and under the Litigation Trust Agreement and except as expressly provided in this Plan.

(c)     Priority Claims Funding.  Upon the Effective Date, Adeptio shall ~~contribute~~make available to the Litigation Trust up to a total $500,000

25

solely for the purpose of making distributions under this Plan on account of Allowed Priority ~~Tax Claims and Allowed Priority Non-Tax~~ Claims as such claims become allowed pursuant to the terms and conditions of Bankruptcy Code section 1129(a)(9).

2.    <u>Litigation Trust Operation</u>

(a)    Quarterly Reports.  As soon as practicable after each calendar quarter, and in no event later than thirty (30) days after the end of each quarter, the Litigation Trustee shall submit to the United States Trustee and any Beneficiary who requests copies of such quarterly report after the Effective Date, an unaudited written report and account showing: (a) the assets and liabilities of the Litigation Trust, (b) any Distributions made and Liquidation Trust Expenses paid pursuant to this Plan and the Litigation Trust Agreement, (c) any changes in the Estate Assets that have not been previously reported, and (d) any material action taken by the Litigation Trustee in the performance of his or her duties under the Litigation Trust Agreement that have not been previously reported.

(b)    Disbursing Agent.  The Litigation Trust or its nominee shall serve as the disbursing agent under this Plan and shall make all Distributions provided for under this Plan.  Pursuant to the terms of the Litigation Trust Agreement, the Litigation Trust shall maintain a reserve in trust for the payment of any accrued and anticipated Liquidation Trust Expenses of the Litigation Trust and any Disputed Claims.

(c)    Litigation Trustee Appointment of Professionals.  The Litigation Trust is authorized, without further order of the Bankruptcy Court, to

26

employ such persons, including professionals, as it may deem necessary to enable it to perform its functions hereunder, and the costs of such employment and other expenditures shall be paid from the Litigation Trust.   Such persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses from the Litigation Trust without further notice, hearing or approval of the Bankruptcy Court.

(d)     Liquidation of Causes of Action.   Notwithstanding any other term or provision of this Plan, subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall have sole authority and responsibility for investigating, analyzing, and if appropriate, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering the Causes of Action.

(e)     Objection to and Compromise of Claims.   Pursuant to Bankruptcy Rule 9019(b), this Plan and the Litigation Trust Agreement, as of the Effective Date (i) the Litigation Trustee is authorized to object to or approve compromises of the Causes of Action and all Claims, Disputed Claims and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court.

(f)     Distribution.   Distribution of proceeds shall be made in accordance with the Term Sheet, this Plan, the Confirmation Order, and the Litigation Trust Agreement.

27

(g)     Reserve for Disputed Claims.  For purposes of calculating Pro Rata or any other distributions to be made under this Plan to Holders of Allowed Claims, the calculation of the total Allowed Claims in any Class shall be computed as if all Disputed Claims then pending were allowed in the full amount thereof.

(h)     Allowance of Disputed Claims.  Distributions shall be made with respect to any Disputed Claim which becomes an Allowed Claim after the Effective Date on or as soon as practicable after the date on which each such Disputed Claim becomes an Allowed Claim.  The amount of such distribution shall be calculated on a Pro Rata basis, so that the subject Claim receives an initial distribution equal to the total percentage distributions made prior to the date of such allowance to other Allowed Claims in its Class.  No interest shall be payable to the Holders of Disputed Claims on account of funds reserved by the Litigation Trust, if any, under this Plan to satisfy such Disputed Claims.

(i)     Final Distribution.   The Litigation Trustee shall cause the distribution of all remaining available assets, if any, of the Litigation Trust to the Holders of Allowed Claims, after repayment in full of the Adeptio Loan, the payment of all Allowed Administrative Claims (with interest) and all of the debts and obligations of the Litigation Trust, including the Adeptio Loan and all unpaid Allowed Claims in Classes 1 through 4and 2 of this Plan.  After making a final distribution, the Litigation Trust, acting through the Litigation Trustee, shall file a final report and account of all

28

receipts and disbursements with the Bankruptcy Court and the United States Trustee. The Litigation Trustee shall be discharged from his or her obligations under this Plan or the Litigation Trust Agreement at such time as the Litigation Trust has terminated pursuant to its terms (or upon the Litigation Trustee's prior resignation or termination).

(j)     Means of Cash Payment.  Cash payments made pursuant to this Plan shall be paid by wire transfer or checks drawn on an account maintained by the Litigation Trust.

(k)     Release of Liens.  On the Effective Date, all Liens against the Estate Assets shall be fully and completely released and discharged and all of the Estate Assets when transferred to the Litigation Trust shall be free and clear of any such Liens.

(l)     Cancellation of Notes, Instruments, Securities and Other Documentation.  On the Effective Date, all agreements (other than those established by the Term Sheet and assumed contracts or leases), credit agreements, prepetition loan documents, postpetition loan documents, and evidence of Liens shall be deemed to be canceled and of no further force and effect, without any further action on the part of the Debtors or the Litigation Trust.  The Holders of or parties to such canceled instruments, agreements, securities and other documentation will have no remaining rights against the Debtors, their Estates, or the Litigation Trust arising from or relating to such documents or the cancellation thereof except the right to receive distributions under this Plan.

29

(m)     Exemption from Certain Taxes.  Pursuant to Section 1146 of the Bankruptcy Code, all transactions, including the transfers described in this Plan, and the delivery and recordation of any instrument, under, in furtherance of, or in connection with this Plan shall not be subject to any stamp tax, real estate transfer tax or similar transfer fee or tax.

(n)     Other Tax Matters.  The Litigation Trust shall be treated as a grantor trust for federal income tax purposes, within the meaning of Sections 671 through 677 of the Internal Revenue Code.  Pursuant to and in accordance with this Plan, the Litigation Trustee shall be responsible for all tax matters of the Estates including, but not limited to, the filing of all tax returns and other filings with governmental authorities on behalf of the Estates for time periods ending on or before the Final Tax Day, including the filing of tax returns for the Litigation Trust as a grantor trust pursuant to Section 1-671-4(a) of the United States Income Tax Regulations, the filing of any determination requests under Section 505(b) of the Bankruptcy Code, and responding to any tax audits of the Estates.  The Litigation Trustee shall provide such information to the beneficiaries as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law.  The Litigation Trustee is authorized to act as agent for the Estates in withholding or paying over any amounts required by law (including tax law), if any, to be withheld or paid by the Estates in connection with the transfer and assignment of the Estate Assets to the Litigation Trust pursuant to this Plan.

{01032386;v1}

(o)    Except as otherwise set forth in the Litigation Trust Agreement or this Plan, any items of income, deduction, credit, or loss of the Litigation Trust shall be allocated for federal income tax purposes among the beneficiaries Pro Rata on the basis of their beneficial interests; provided, however, that to the extent any item of income cannot be allocated in the taxable year in which it arises, the Litigation Trust shall pay the federal, state and local taxes attributable to such income (net of related deductions) and the amount of such taxes shall be treated as having been received by, and paid on behalf of the beneficiaries when such allocations are made. The Litigation Trustee shall be entitled to deduct any federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate.

(p)    Duration of Trust.  The Litigation Trust shall continue to exist until such time as the Litigation Trustee has administered all assets of the Litigation Trust and performed all other duties required by the Plan and the Litigation Trust Agreement.  As soon as practicable after the Final Distribution Date, if any, or such other time as the Litigation Trustee deems appropriate, the Litigation Trustee may seek entry of a Final Order closing these Chapter 11 Cases pursuant to Bankruptcy Code section 350.

3.    <u>Claims Resolution.</u>

The Litigation Trustee shall review and object to Claims as and when the Litigation Trustee deems appropriate taking into account, the funds available for distribution to Holders of a particular Class, the amount of such Claims, and any other issues that the Litigation Trustee deems appropriate.

31

4.    <u>Deadline for Filing of Administrative and Professional Fee Claims</u>

Any person asserting an Administrative Claim (other than a Professional Fee Claim) shall file an application therefore with the Bankruptcy Court not later than thirty (30) days after the Effective Date.

Any Person asserting a Professional Fee Claim shall file a fee application with the Bankruptcy Court not later than sixty (60) days after the Effective Date for professional services rendered and out-of-pocket costs incurred through the Effective Date.

Any Administrative Claim or Professional Fee Claim not filed within the deadlines set forth above shall be forever barred, and the Debtors and the Litigation Trust shall be discharged of any obligation on such Claim.

5.    <u>Estimation of Claims</u>

The Litigation Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to Bankruptcy Code sections 105 and 502(c) in the interests of expeditious administration of the Estates or the Litigation Trust regardless of whether an objection has been filed with respect to such Claim.  If the Bankruptcy Court estimates any Contingent, Disputed or unliquidated Claim, the estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, at the option of the Litigation Trustee.  If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may pursue any supplemental proceedings to object to the allowance and ultimate distribution on such Claim after reservation for such claim.  If the estimated amount is treated as the Allowed Amount of such claim, such claim shall be paid only up to an amount not to exceed the estimated amount, even if such Claim, as finally allowed, exceeds the maximum estimated amount thereof.  Furthermore, neither the Litigation Trust nor the Litigation Trustee shall have any liability to such claimant.  Unless otherwise ordered by the

32

Bankruptcy Court, resolution or compromise of estimated Claims shall be done pursuant to this Plan.   All Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.   The Committee  and the Debtors, shall have the right to move the Bankruptcy Court for disallowance of any Claim for voting purposes.

        6.    <u>Late Claims</u>

No Distribution shall be made on account of any Claims filed after the Bar Date, unless specifically allowed by Final Order of the Bankruptcy Court after notice and opportunity for hearing.

        7.    <u>Procedures for Treatment and Resolving Disputed, Contingent and/or Unliquidated Claims</u>

    (a)    Notwithstanding any other provision of this Plan, no property shall be distributed under this Plan on account of all or any portion of any Disputed Claim, or any Claim that is contingent or unliquidated.

    (b)    Pursuant to Section V.E.2(e) of this Plan, from and after the Effective Date, the Litigation Trustee shall be authorized and shall have the exclusive right to file and serve all objections to the allowance of any Claim.  The Litigation Trustee is exclusively authorized to take all actions necessary or advisable to pursue, settle or compromise any such Disputed Claims.

    (c)    At such time as a Disputed Claim becomes an Allowed Claim, (i) the Holder of such Allowed Claim shall receive a distribution, in the same Pro Rata amount as other members of its Class have already received, without interest.  Such distribution, if any, shall be made within thirty (30) days of the date that the order or judgment of the Bankruptcy Court

33