

June 17, 2008

Office of the Clerk
United States Bankruptcy Court for the District of Delaware
824 Market Street, 3rd Floor
Wilmington, Delaware 19801

Re: SN Liquidation, Inc., et al., Chapter 11, Case No. 07-11666 (KG)

To Whom It May Concern,

    This letter is in response to the debtor's objection in the above mentioned case on June 6, 2008 titled "Notice Of Debtors' First Omnibus Objection (Non-Substantive) To Certain Improperly Classified Claims". HireStrategy, Inc. has a legitimate claim against the debtor of $ 47, 739.83. Of that total, $ 28,918.50 qualifies for priority claim status. This amount represents hours worked and wages paid to four different employees of Hire Strategy, Inc. at the facilities of Inphonic, Inc., which is the original debtor is this case. See attached summary which breaks down the amount owed for each employee. Also enclosed are copies of the priority claim invoices with approved timesheets, copies of invoices that are not priority claims, copy of our original proof of claim and copies of HireStrategy's contracts with Inphonic. Please send any replies and future correspondence to my attention at HireStrategy at the address of record which also appears below.

Sincerely,

Rick Kite
HireStrategy, Inc.
Accounting Manager

703-547-6725

T.703.547.6700 ▪ www.hirestrategy.com ▪ F.703.707.1836
11730 Plaza America Drive ▪ Suite 340 ▪ Reston ▪ VA ▪ 20190

## Inphonic Balance Due Information (as of 7/30/2007)

| Invoice # | Amount Due | Priority | Contractor/Pay Period | Notes |
|---|---|---|---|---|
| 3258 | $ 2,014.87 | | | finance charges |
| 3450 | $ 2,207.91 | | | finance charges |
| 3540 | $ 467.58 | | | finance charges |
| 3749 | $ 2,913.12 | | | finance charges |
| 3987 | $ 4,158.57 | | | finance charges |
| 4198 | $ 1,717.35 | | | finance charges |
| 4266 | $ 0.03 | | Van Nguyen (7/31/06-8/8-06) | |
| 4421 | $ 1,157.54 | | | finance charges |
| 4563 | $ 2,671.49 | | | finance charges |
| 4867 | $ 1,512.87 | | | finance charges |
| 5665 | $ 2,821.00 | $ 2,821.00 | Joel Mank (2/17/07-3/2/07) | |
| 5850 | $ 2,333.50 | $ 2,333.50 | Joel Mank (3/17/07-3/30/07) | |
| 6046 | $ 2,600.00 | $ 2,600.00 | Jeffrey Clark (4/14/07-4/27/07) | |
| 6132 | $ 5,200.00 | $ 5,200.00 | Jeffrey Clark (4/28/07-5/11/07) | |
| 6153 | $ 1,040.00 | $ 1,040.00 | Matt McGuiney (4/28/07-5/11/07) | |
| 6198 | $ 1,872.00 | $ 1,872.00 | Alexise Chakogoum (5/12/07-5/25/07) | |
| 6228 | $ 5,200.00 | $ 5,200.00 | Jeffrey Clark (5/12/07-5/25/07) | |
| 6348 | $ 1,963.00 | $ 1,963.00 | Alexise Chakogoum (5/26/07-6/8/07) | |
| 6320 | $ 1,560.00 | $ 1,560.00 | Jeffrey Clark (5/26/07-5/31/07) | |
| 6428 | $ 2,080.00 | $ 2,080.00 | Alexise Chakogoum (6/9/07-6/22/07) | |
| 6522 | $ 1,885.00 | $ 1,885.00 | Alexise Chakogoum (6/23/07-7/6/07) | |
| 6645 | $ 364.00 | $ 364.00 | Alexise Chakogoum (7/7/07-7/20/07) | |
|  | $ 47,739.83 | $ 28,918.50 | | |

Total Wages per Contractor:

| | | |
|---|---|---|
| Joel Mank | $ | 5,154.50 |
| Jeffrey Clark | $ | 14,560.00 |
| Matt McGuiney | $ | 1,040.00 |
| Alexise Chakogoum | $ | 8,164.00 |
| | $ | 28,918.50 |

Summary for SN Liquidation, Inc, et al., Case No. 07-11666 (KG)

# PROOF OF CLAIM

**In re:** SN Liquidation, Inc., et al. f/k/a InPhonic, Inc., et al.

**Case Number:** 07-11666-KG

NOTE: See Reverse for List of Debtors/Case Numbers/ Important details. This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor and Address:**

13727660007587

HIRESTRATEGY INC
11730 PLAZA AMERICA DR
STE 340
RESTON, VA 20190

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court or BMC Group in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the court.

If you have already filed a proof of claim with the Bankruptcy Court or BMC, you do not need to file again.

**THIS SPACE IS FOR COURT USE ONLY**

**Creditor Telephone Number (✓):** 703-547-6700

**Name and address where payment should be sent (if different from above):**

Same

☐ Check this box if you are the debtor or trustee in this case.

Check here if this claim  ☐ replaces  ☐ amends  a previously filed claim dated: _____ or claim number (see reverse): _____

**Payment Telephone Number** (703) 547-6725

**1. AMOUNT OF CLAIM AS OF DATE CASE FILED** $ 47,739.83

If all or part of your claim is secured, complete item 4c below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete item 4b.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. BASIS FOR CLAIM:** reimbursement of contract worker wages
(See instruction #2 on reverse side.) various

**3. Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3 on reverse side.)

**4. CLASSIFICATION OF CLAIM.**

**4a. UNSECURED NONPRIORITY CLAIM**  Total unsecured nonpriority claim: $ _____
DO NOT Include the priority portion of your unsecured claim here.

**4b. UNSECURED PRIORITY CLAIM**
☑ Check this box ONLY if you have an unsecured claim, all or part of which is entitled to priority.
Total unsecured priority claim: $ 47,739.83
Include ONLY the priority portion of your unsecured claim here.

You MUST specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☑ Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ( ___ ).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**4c. SECURED CLAIM** (See instruction #4c on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:
☐ Real Estate  ☐ Motor Vehicle
☐ Other

Total secured claim: $ _____
Value of Property: $ _____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

DO NOT Include the priority or unsecured portion of your claim here.

**5. CREDITS:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**6. SUPPORTING DOCUMENTS:** *Attach redacted copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and redacted copies of evidence of perfection of lien. If the documents are not available, explain. If the documents are voluminous, attach a summary. (See definition of "redacted" on reverse side.)

**7. DATE-STAMPED COPY:** DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

The original of this completed proof of claim form must be sent by mail or hand delivered (FAXES NOT ACCEPTED) so that it is actually received no later than 4:00 pm, PREVAILING EASTERN TIME, on the following dates: a) March 21, 2008 for Non-Governmental Claimants; OR b) May 6, 2008 for Governmental Units

BY MAIL TO:
SN Liquidation, Inc., et al. f/k/a InPhonic, Inc., et al.
c/o BMC Group
PO Box 978
El Segundo CA 90245-0978

BY HAND OR OVERNIGHT DELIVERY TO:
SN Liquidation, Inc., et al. f/k/a InPhonic, Inc., et al.
c/o BMC Group
1330 East Franklin Ave
El Segundo, CA 90245

THIS SPACE FOR COURT USE ONLY
**FILED**
FEB 1 1 2008
**BMC**

**DATE:** 2-8-2008

**SIGNATURE:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Rick Kite* — Rick Kite, Accounting Manager, 703-547-6725
InPhonic Inc.

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571*

00271

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## ITEMS TO BE COMPLETED IN PROOF OF CLAIM FORM (IF NOT ALREADY PROPERLY FILLED IN)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed, the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the Claims Agent, BMC Group, some or all of this information may have been already completed.

| Debtor Name | Case No |
|---|---|
| SN Liquidation, Inc., et al. f/k/a InPhonic, Inc., et al. | 07-11666-KG |

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete item 4. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**4. Classification of Claim**

**4a Unsecured Nonpriority Claim:**
If your claim is an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim" (See DEFINITIONS, below), check the appropriate box in this section. If your claim is partly secured and partly unsecured, state here only the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

**4b. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**4c. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien

**5. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**6. Supporting Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary.
You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d).
Do not send original documents, as attachments may be destroyed after scanning.

**7. Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

*Please read – important information: upon completion of this claim form, you are certifying that the statements herein are true.*

Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable."

**Return claim form and attachments, if any. If you wish to receive an acknowledgement of your claim, please enclose a self-addressed stamped envelope and a second copy of the proof of claim form with any attachments to the Claims Agent, BMC Group, at the address on the front of this form.**

_____DEFINITIONS_____              _____INFORMATION_____

**DEBTOR**
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**CREDITOR**
A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

**PROOF OF CLAIM**
A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the court appointed Claims Agent, BMC Group, at the address listed on the reverse side of this page

**SECURED CLAIM Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim.

Examples of liens on property include a mortgage on real estate or a security interest in a car.
A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**UNSECURED CLAIM**
If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**UNSECURED PRIORITY Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

ONCE YOUR CLAIM IS FILED YOU CAN OBTAIN OR VERIFY YOUR CLAIM NUMBER BY VISITING www.bmcgroup.com



12021 Sunset Hills Road, Suite 550, Reston, VA 20190
703.547.6700 F.703.707.1836

February 17, 2004

Maria Canfora
Controller
InPhonic, Inc.
1010 Wisconsin Avenue
Suite 600
Washington, DC 20007

Dear Maria:

HireStrategy is pleased to formalize our business relationship with InPhonic. Based on previous discussions, this letter will serve to document the terms of our agreement. Our search services will be provided according to the following terms:

- **Fees:** The total fee will be 20% of the candidate's first year annual compensation, and is due on the hire date of the selected candidate.
- **Candidate Representation:** Any candidate hired for this or any other position within Inphonic and within 12 months of resume submittal from HireStrategy or last interview, whichever is later, will be considered placed by HireStrategy and the placement fee will be considered earned.
- **Expenses:** Any travel expense incurred by HireStrategy, or any candidate whom we reimburse on your behalf, will be billed monthly and itemized separately. Expenses to be invoiced must be approved in advance by Inphonic to be eligible for reimbursement.
- **Invoicing:** The fee will be invoiced on the start date of the employee. Payments not received within 10 days from the due date will be subject to a 1.5% late charge or the maximum amount permitted by law plus collection costs.
- **Guarantee:** The guarantee period is 90 days from the hire date. If a candidate hired through HireStrategy voluntarily leaves Inphonic or its subsidiaries within 90 days of hire, or is released for any reason, other than lack of work or funding within 90 days of hire, HireStrategy will place another candidate in that position at no additional cost. The guarantee is null and void and the entire fee is immediately due and payable if any fee is late according to the invoicing provision above.
- **Cancellation:** This agreement will remain in effect until it is canceled in writing by either party or replaced by a new agreement. Upon cancellation, any engagement fees that have been billed will be considered earned by HireStrategy.

At HireStrategy we strive to set a benchmark for customer service and look forward to a strategic partnership with your firm. Thank you for choosing HireStrategy for your human capital needs.

Sincerely,

*Barbara Wallace* 

Barbara Wallace          Date
Director, Recruitment Services
HireStrategy

Accepted by,

*Maria Canfora  2/17/04*

Maria Canfora            Date
Controller
InPhonic, Inc.



11730 Plaza America Drive • Suite 340 • Reston • VA • 20190
T.703.547.6700 • F.703.707.1836

This Client Agreement is entered into as of this 19th day of September 2005, by and between **HireStrategy** ("Supplier," a Delaware Corporation) and InPhonic ("Client").

## RECITALS

HireStrategy is in the business of providing temporary, permanent and contract placement of professional personnel trained in performing technology, finance, accounting and sales services; and

NOW, THEREFORE, HireStrategy and Client agree to the following terms and conditions:

1. **Identification of Consultant.** From time to time Client may make request of HireStrategy for a person or persons to perform tasks as required by Client. In response to any such request from Client, HireStrategy shall make good faith efforts to identify and assign appropriate personnel ("Consultants") to perform such tasks.

2. **Rate of Compensation.** Client shall compensate HireStrategy for the provision of such Consultant/s at the rates agreed to by Client and HireStrategy. Such agreement regarding any one or more Consultant's shall be evidenced by an appropriate entry in a document taking the form of an exhibit attached hereto. Such document shall hereinafter be referred to as the Addendum.

3. **Payment Terms.** Payment for rendered services is due within 30 days of Client's receipt of invoice. Invoices are currently generated bi-weekly and may be generated more frequently, but not more often than weekly. Payments not received within 30 days from the due date will be subject to a 1.5% per month late charge.

4. **Term for Service.** Unless otherwise specifically agreed to by the parties hereto, the contemplated term of service of any particular Consultant and the general nature of the services to be provided by the Consultant shall be set forth in the relevant Addendum. HireStrategy will make good faith efforts to identify and assign Consultants who are able to provide the kinds of services desired by the Client and if specifically set forth in the relevant Addendum, for the term desired by the Client. It is understood that the nature of this agreement is a time and materials level of effort agreement. Client will be responsible for hours performed and billed according to the terms outlined in the Addendum.

5. **Costs and Expenses.** Client shall be responsible for the payment of all costs or expenses reasonably incurred by Consultant arising out of or relating to the performance of the services by Consultant for Client. If, in its absolute discretion, HireStrategy should agree to advance any such costs or expenses, the same shall be due to HireStrategy upon presentation of invoice for the same. All such costs or expenses shall be approved, in advance and in writing by Client before such are incurred.

6. **Supplier Personnel.** Supplier personnel shall in no sense be considered an employee or an agent of Client, nor shall it be entitled or eligible to participate in any benefits or privileges given or extended by the Client to their employees, or be deemed an employee of the Client for purposes of Federal or State withholding taxes, F.I.C.A. taxes and Unemployment Benefits, Workmen's Compensation or otherwise. Supplier shall be responsible for all matters relating to (i) payment of federal, state, and local withholding and other payroll taxes, (ii) the provision of payments of premiums in respect to workers' compensation insurance covering all their personnel, and (iii) the payment of all compensation and benefits whatsoever becoming due to their personnel with respect to services performed for client. Supplier agrees to indemnify and hold the Client harmless from and against any and all liabilities, costs, and expenses the Client may incur by reason of Supplier's failure to pay wages, payroll taxes, unemployment insurance, workers compensation insurance or benefits

7. **Confidential Information.** HireStrategy recognizes that Client may disclose to agents and employees of HireStrategy, including Consultant, the details of processes and procedures, documentations regarding software and hardware, customer, supplier, and client lists, and other information deemed proprietary and confidential to the Client (hereinafter referred to as "Confidential Information"). Confidential Information includes items defined by client as confidential, proprietary or as intellectual property. HireStrategy recognizes the proprietary rights of Client in and to all Confidential Information in any form disclosed, distributed, or observed and the confidential nature of the information and agrees not to disclose the Confidential Information in any part thereof and to take every reasonable precaution to safeguard and treat the Confidential Information as confidential. HireStrategy, its agents and employees, including Consultant agrees not to use this Confidential Information in any manner other than as necessary in the performance of the services requested in the Addendum. Work product prepared by Consultant for Client in the performance of the services listed in the Addendum shall be the sole and exclusive property of Client. Nothing in the Agreement shall be construed to grant to HireStrategy any rights or licenses to use the Confidential Information. Upon the request of Client, HireStrategy its agents and employees, including Consultant, shall promptly return all materials containing such Confidential Information



or copies thereof as have been provided by Client or are in the possession of HireStrategy or Consultant. Except as required by law, in no event shall either party issue a press release or make a public announcement concerning this Agreement or the other party without first obtaining the prior written consent of the other party.

8. **Termination.** This Agreement may be terminated in whole by either party upon 30 days written notice to the other party. Individual addendums may be terminated for convenience upon 5 days written notice or for cause upon immediate written notification. In the event of termination, HireStrategy shall cause to be returned to Client all materials or copies thereof as have been provided by Client. Client shall be obligated for all services performed by Consultant to the date of termination of the relevant Addendum.

9. **Lack of Agency.** The parties hereto understand that neither of them has authority to bind the other in any contractual arrangement with any third party.

10. **Limitation of Liability.** HireStrategy shall maintain policies of insurance during the term of the Agreement, at its own expense, having at least the following limits.

    a. Worker's Compensation Insurance as required by state law and prescribed by the statutory limits.
    b. Commercial Liability Insurance up to $1,000,000 including contractual liability and a separation of insureds. Client shall be named as an additional insured under the Commercial General Liability policy.

    Each party agrees that in no event shall the individual or collective liability of the Client, Consultant, HireStrategy and/or any respective agents or employees of such party, for damages of any kind or nature, (including without limitation, compensatory, consequential, exemplary, punitive and lost profit or opportunity damages and whether such damages are claimed by Client or any third party), arising out of or relating to this Agreement or the provision of services by HireStrategy or Consultant, and regardless of the form of action by which such damages are sought, exceed the total amount paid by Client to HireStrategy relating to the provision of services by the relevant Consultant. HireStrategy makes no warranties or representations, expressed or implied, as to the quality of services or conduct of Consultant.

11. **Right to Hire.** If Client wishes to convert consultant to an employee of Client, the fee paid to HireStrategy will be based on length of contract assignment, according to the following schedule:

    - 0 – 120 days .................................................. 20% of the annualized first year compensation
    - 121 – 180 days ............................................... 15% of the annualized first year compensation
    - Over 180 days ................................................ No fee

12. **Fair Employment Practice.** It shall be the policy of both HireStrategy and Client to provide equal employment opportunity without regard to race, color, religion, sex, national origin, age sexual orientation, physical or mental disability or veteran status.

13. **Consultant Employee of HireStrategy.** Consultant/s shall not be deemed to be employees of Client. Client acknowledges that the services to be provided by Consultant/s hereunder are contemplated to be temporary and non-permanent in nature.

14. **Non-Solicitation.** Client shall not solicit, recruit, hire or otherwise employ or retain the employees of HireStrategy working under this Agreement during the Term of this Agreement and for one (1) year following the termination or expiration of this Agreement without the prior written consent of HireStrategy.

15. **Priority of this Agreement.** This Agreement set forth the entire intent and understanding of the parties hereto on the subject matter hereof, and supersedes any other agreements or understandings. It may be amended only in writing duly signed by both of the parties hereto.

16. **Nonassignability.** This Agreement is not assignable by HireStrategy without the prior written consent of Client.

APPROVED:                                    ACCEPTED BY:

_____              _____ 11/1/05
Michael Jones           Date                 Scott Ableman            Date
Director, Recruitment Services               Senior Vice President - Marketing
HireStrategy                                 Inphonic