UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                      .     Case No. 07-11666 (KG)
                            .
SN LIQUIDATION, INC.,       .
et al.,                     .     824 North Market Street
                            .     Wilmington, DE 19801
                            .
           Debtors.         .     June 13, 2008
. . . . . . . . . . . . ..         11:00 a.m.


TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


APPEARANCES:

For the Debtor:          Bayard, P.A.
                         By: MARY AUGUSTINE, ESQ.
                             DAN O'BRIEN, ESQ.
                             NEIL GLASSMAN, ESQ.
                         222 Delaware Avenue, Suite 900
                         Wilmington, DE  19899

For the Committee:       Reed Smith, LLP
                         By: GASTON P. LOOMIS, ESQ.
                         1201 Market Street, Suite 1500
                         Wilmington, DE  19801




Audio Operator:          LESLIE MURIN



Proceedings recorded by electronic sound recording, transcript
                produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES (Contd'):

```
For Adeptio INPC          Kirkland & Ellis LLP
Funding LLC:              By:  DAVID A. AGAY, ESQ.
                              JEFFREY D. PAWLITZ, ESQ.
                         200 East Randolph Drive
                         Chicago, IL  60601
                         (Telephonic appearance)

                         Vorys Sater Seymour Pease, LLP
                         By:  TIFFANY STRELOW COBB, ESQ.
                         52 East Gay Street
                         Columbus, OH 4326
                         (Telephonic appearance)

                         Young, Conaway, Stargatt & Taylor
                         By:  ROBERT BRADY, ESQ.
                              EDMON MORTON, ESQ.
                         The Brandywine Building
                         1000 West Street, 17th Floor
                         Wilmington, DE  19801

For YPH:                 Buchanan Ingersoll Rooney
                         By:  PETER J. DUHIG, ESQ.
                         The Brandywine Building
                         1000 West Street, Suite 1410
                         Wilmington, DE  19801
```

1          THE COURT:  Good morning, everyone.  Please be

2  seated, thank you.  Ms. Augustine, good morning.

3          MS. AUGUSTINE:  Good morning, Your Honor.  Today we

4  have a large item on the agenda that hopefully won't take a

5  large amount of time to go through.  And we have two smaller

6  matters.  The first was a certification of counsel resolving

7  the yellow page objection.

8          THE COURT:  Yes, and I signed that this morning.

9          MS. AUGUSTINE:  Okay, great, thank you.

10          THE COURT:  Yes.

11          MS. AUGUSTINE:  The second matter is we weren't

12  exactly sure how to qualify it on the agenda.  It's the last

13  item.

14          THE COURT:  Yes, yes.

15          MS. AUGUSTINE:  It's the notice of objection to claim

16  filed by Mr. Saltmarshall.

17          THE COURT:  Exactly.

18          MS. AUGUSTINE:  I wrote a letter to him and he

19  responded and I'd asked him to call me so we could talk about

20  what he was hoping to do at the hearing today and I haven't

21  heard from him.

22          THE COURT:  Yes, and he hasn't called in.

23          MS. AUGUSTINE:  No.

24          THE COURT:  I'm not sure quite what to do so I think

25  when in doubt, do nothing.

1          MS. AUGUSTINE:  Okay, so what we'd like to do is

2    we're happy to leave that item on the docket but not set it for

3    further hearing at this time.

4          THE COURT:  Exactly, we'll wait to hear back from

5    him.

6          MS. AUGUSTINE:  Okay, great, thank you.

7          THE COURT:  Thank you.

8          MS. AUGUSTINE:  So, now we are onto the disclosure

9    statement hearing.  Yesterday we transmitted a first amended

10   agenda with the first amended plan and disclosure statement in

11   the form it currently is.

12         THE COURT:  Yes.

13         MS. AUGUSTINE:  We also filed under certification of

14   counsel the solicitation documents.  Most of those amendments

15   you'll see after we go through the changes in the disclosure

16   statement reflect an elimination of a class and a few changes

17   in description in the disclosure statement.  But I would like

18   to know, Your Honor, if you wanted a plan summary or if you

19   wanted to start with the disclosure statement.

20         THE COURT:  Start with the disclosure statement.

21   That would be fine.  I did read the plan summary that you

22   submitted.

23         MS. AUGUSTINE:  Okay, if Your Honor could turn to the

24   blackline of the disclosure statement?

25         THE COURT:  Yes, and we are dealing -- when we refer

1  to the disclosure statement, we're talking about the first

2  amended disclosure statement?

3          MS. AUGUSTINE:  Yes.  If I could just use the --

4          THE COURT:  Yes.

5          MS. AUGUSTINE:  -- disclosure language throughout,

6  that would be helpful.

7          THE COURT:  Exactly.

8          MS. AUGUSTINE:  Okay.  Your Honor will note there

9  were two -- well, there were some letter responses filed but

10 there were also -- there was an objection by Icon and Young --

11 I'm sorry, Young Conaway is here for Adeptio and there was a

12 reservation of rights filed.  I'm not planning to address those

13 pleadings yet as we go through the blackline, but I wanted to

14 advise that most of the blackline is as a result of

15 conversations with the Committee and Adeptio and the response

16 filed by Icon, as well.

17         THE COURT:  Yes, it did appear that most, if not all,

18 of the Adeptio objections were reflected in the amended

19 disclosure statement.

20         MS. AUGUSTINE:  Well, there's some -- as far as

21 Adeptio is concerned, there are some issues that the three

22 parties, the proponents which are the debtors, and the

23 Committee and Adeptio need to work through.  There's a question

24 about the terms of the Adeptio loan which is that 500,000

25 senior secured loan.  There's still an issue as to the priority

1  claims funding because Adeptio would like to have the Adeptio

2  loan paid off before funding priority claims.  And I'm just

3  previewing -- there's a release and things like that, so not

4  all these changes are reflected.

5          THE COURT:  Okay.

6          MS. AUGUSTINE:  But just before the hearing we spoke

7  with counsel and we are fine with putting into another form

8  disclosure statement Adeptio would like X, Y and Z.  We're

9  still negotiating.

10          THE COURT:  Of course.

11          MS. AUGUSTINE:  So that's kind of -- and, of course,

12  after the presentation, you know, Adeptio can discuss their

13  reservation, but that's how we're planning to work with that.

14          THE COURT:  Okay, thank you, Ms. Augustine.

15          MS. AUGUSTINE:  Sure.  So this is a pretty strict

16  priority plan.  The only change that we see from the tradition

17  is the treatment of administrative expense claims.  Those

18  claims are mostly of professionals and not in the strict

19  professional sense, but also a clear thinking group, BMC Group,

20  Mr. Joe Pardo.  They're all people who have been involved in

21  this process from the beginning.  And we've negotiated through

22  them.  We've put off payment until there are funds in the

23  litigation trust to pay off the senior secured loan by Adeptio

24  and then we are paying them interest so that would be a fair

25  treatment.  We believe that everyone has consented.  To the

1  extent there are administrative creditors who aren't

2  professionals, we are planning to either object to the claim

3  before the confirmation hearing, or if they do not object to

4  the plan, we are deeming them to have consented to the

5  treatment.

6          THE COURT:  Okay.

7          MS. AUGUSTINE:  Okay, so if Your Honor turns to Page

8  1 --

9          THE COURT:  Yes.

10         MS. AUGUSTINE:  -- which is the introduction, under

11 the disclosure statement blackline, you can see that we've --

12 well, I'll wait for --

13         THE COURT:  I'm right there.

14         MS. AUGUSTINE:  Okay.  You can see we've added the

15 source of information in the disclosure statement.  That was in

16 response to Icon's objection.  The next change -- there are

17 luckily not many changes in the background until we get to Page

18 10.  That's where the heading -- it begins on 9 and goes to

19 full Page 10.  There was language added to talk about the

20 executory contract process we have in this case and the held

21 contracts which pursuant to the asset purchase agreement will

22 be disposed of after 210 days except that as some counsel

23 pointed out, we never really dealt with them after 210 days.

24 So we are proposing that they're deemed rejected on the 211th

25 day if they're not already subject to notices of assumption and

8

1  assignment or motions to reject, and that's an explanatory

2  background there.  It goes through Page 11.  And then the

3  change on Page 11, the very last change, is talking about the

4  held contracts.

5             THE COURT:  Yes.

6             MS. AUGUSTINE:  Okay.  On Page 13, it's the chart

7  summary, I would prefer to talk about each change in here as it

8  is further in the disclosure statement since the language is

9  the same.

10            THE COURT:  Fine.

11            MS. AUGUSTINE:  Okay.  I'm just paging through now to

12 Page 22.

13            THE COURT:  I am there, thank you.

14            MS. AUGUSTINE:  We have had some discussions with the

15 SEC regarding some of the filing requirements and this language

16 was proposed by them to deal with the alternative, either

17 revocation proceeding or notice of termination of registration

18 that the SEC would like to have in place by the time of

19 confirmation.

20            THE COURT:  And presumably if there is an issue with

21 the SEC, they will --

22            MS. AUGUSTINE:  Yes.

23            THE COURT:  -- raise an objection at the time of the

24 confirmation hearing?

25            MS. AUGUSTINE:  Yes, and we've been in discussions

1  and believe we can resolve that.

2            THE COURT:  Good.

3            MS. AUGUSTINE:  The next change is on Page 26.

4            THE COURT:  Okay.

5            MS. AUGUSTINE:  This change is the addition of

6  information regarding the Icon adversary proceeding and also

7  includes some language from Your Honor's June 2nd opinion which

8  we believed was very helpful in describing the insurance

9  policies and also Your Honor's interpretation of those

10  policies.

11            THE COURT:  I did receive a motion to amend the

12  order, right?

13            MS. AUGUSTINE:  Yes, we saw that as well, and that

14  language continues on 28.  The purpose of this is not so much

15  to describe the Icon adversary -- well, it does but it also

16  describes the insurance policies more thoroughly which was in

17  the Icon objection, as well.

18            THE COURT:  Yes, yes.

19            MS. AUGUSTINE:  So we hope that that would resolve

20  Icon's issues with that, as well.

21            THE COURT:  And they're not here today so have you

22  shared this with Icon?

23            MS. AUGUSTINE:  Well, someone is here for Icon

24  although they have not signed in so --

25            THE COURT:  Oh, I'm sorry.

1        MS. AUGUSTINE:  -- I don't know if they intended to

2   appear today, but I think that any further discussions are fine

3   with us.  If there's further language, we said in our reply

4   we'd be happy to add any proposed language that's reasonable.

5        THE COURT:  Yes.  Okay.

6        MS. AUGUSTINE:  Okay.  There are some small nits

7   throughout that I prefer to skip over if that's okay with Your

8   Honor.

9        THE COURT:  Yes, it's not necessary to go through

10  those.

11       MS. AUGUSTINE:  So then we turn to Page 32; 32 is

12  information regarding to the -- regarding the term sheet which

13  is very important in this plan and it provides information

14  regarding the settlement that was reached during the debtor's

15  sale of all their assets between Adeptio, the debtors, and the

16  Committee.  At the suggestion of counsel for Adeptio we

17  included by copying and pasting out of the term sheet the exact

18  salient provisions so there was no confusion.

19       THE COURT:  Good.

20       MS. AUGUSTINE:  And those changes continue to Page

21  34.  On Page 37 we start going through the treatments of

22  different claims and the classifications of the claims.  One of

23  the issues raised by Adeptio that the parties still need to

24  resolve is the language regarding the repayment in full or

25  termination of the Adeptio loan.  So you see where that

**J&J COURT TRANSCRIBERS, INC.**

1  language first starts to appear.

2          THE COURT:  Yes.

3          MS. AUGUSTINE:  You know, for administrative claims,

4  we've added that the Adeptio loan must be paid first before

5  administrative claimants receive payment so that is the

6  clarification there.  We've also throughout added that the --

7  all the requirements are subject to the plan, the APA final

8  sale order and term sheet just so that those documents are

9  continued to be incorporated as they were important negotiated

10  documents.

11          On Page 38 we continue with the changes to the

12  administrative claims.  We took out the language regarding

13  payment in the ordinary course of business because it simply

14  isn't happening.  We don't have a large pool of administrative

15  claims that we believe will be deemed allowed.  However, even

16  professionals at this point are not receiving payment in the

17  ordinary course.

18          And that brings me to the estimated total of

19  administrative expense claims; it's $1.8 million.  However,

20  most of that is taken care of under the professional fee

21  carve-out of $1.1 million and we believe that there are a total

22  of 700,000 in administrative claims that remain unpaid.  One of

23  those claims is the claim of Waterfront.  Your Honor might

24  remember that we had a stipulation with Waterfront because they

25  were a landlord seeking some payment for their rent.  That

1  claim, I believe, is roughly $10,000.  It's not an exact amount

2  in my memory but that's included in that $700,000 figure.

3           If Your Honor could turn to Page 29, that is the --

4           THE COURT:  29 or 49?

5           MS. AUGUSTINE:  Oh, I'm sorry, 39.

6           THE COURT:  39.

7           MS. AUGUSTINE:  That is just the next page, the

8  section regarding priority tax claims.

9           THE COURT:  Yes.

10          MS. AUGUSTINE:  As Your Honor is aware, under the

11 term sheet we're receiving $500,000 in priority claims funding

12 and we've broken up the tax claim -- or I'm sorry, the priority

13 claims into priority tax claims and non-tax claims.  Under

14 Section 1129(a)(9)(c)(2), we're allowed to stretch out payment

15 of tax claims if we pay interest.  And so what we've done is in

16 the event allowed priority claims exceed $500,000, we've

17 incorporated this provision to allow us to pay those out over

18 time with interest.  And then the other language that's

19 included in here is language proposed by Adeptio that we are

20 not getting a lump sum payment -- this is Adeptio's proposal --

21 on the confirmation of the plan, but that we should make

22 requests and Adeptio should make those funds available to the

23 extent that they are on account of allowed claims.  That's

24 something that is also still in negotiation between the

25 proponents and the Adeptio, but we're happy to include language

1  in this disclosure statement that that is what Adeptio asserts.

2          Does Your Honor have any questions so far?

3          THE COURT:  No.

4          MS. AUGUSTINE:  Okay.

5          THE COURT:  I view this as a disclosure statement

6  obviously which means parties' positions as long as they're

7  well-founded should be included in the disclosures, among the

8  disclosures, and that's kind of my philosophy on disclosure

9  statements.  So, I do appreciate that there may be some open

10 issues, issues which will have to be either resolved or decided

11 at confirmation.  But, at least for today's purposes, as long

12 as everyone is satisfied that it's been fully vetted, that is

13 chiefly my concern.

14         MS. AUGUSTINE:  Yes, one thing that has happened is

15 discussions.

16         THE COURT:  Yes.

17         MS. AUGUSTINE:  So, we're happy that the parties are

18 working together so nicely --

19         THE COURT:  Good.

20         MS. AUGUSTINE:  -- to resolve these issues.  On Page

21 40 you'll see that we eliminated the class of assumed

22 liabilities claims.  These assumed liability claims presumably

23 are already paid or they don't actually exist, so we thought it

24 appropriate to remove that class because there are no assumed

25 liability claim-holders.

1           THE COURT:  Okay.

2           MS. AUGUSTINE:  So, then we had to renumber all the

3    classes so now when I refer to class numbers, they are under

4    the first amended disclosure statement as opposed to the

5    disclosure statement originally proposed.  So we have Class 1

6    secured claims.  Those claims are repayment.  They're subject

7    to repayment of the Adeptio loan which was an addition to that

8    description, and also a clarification about the Adeptio loan

9    and how that does not affect the priority of security interest

10   or liens, that the Adeptio loan is not priming loans that are

11   already secured and already exist.

12          THE COURT:  Okay.

13          MS. AUGUSTINE:  We turn to Page 41.  That's Class 2

14   priority non-tax claims.  It's again the same language that we

15   added to the priority tax claims.  We didn't need to talk about

16   1129(a) in here, but we did need to clarify that Adeptio is

17   going to make this position regarding the availability of

18   priority funding.  So, that language isn't completely here yet

19   but this was as of discussions yesterday and we'll continue to

20   -- we'll work out a revision to this to accurately state

21   Adeptio's position.

22          THE COURT:  Okay.  Okay, I understand now because it

23   looked like it had been agreed upon.

24          MS. AUGUSTINE:  Right.

25          THE COURT:  And what you're saying is, it is still

1 subject to negotiation.

2          MS. AUGUSTINE:  Well, yes, because we still are

3 waiting for some positions of some parties.  I think the

4 debtors may not have the same position as the Committee on this

5 and we're not comfortable --

6          THE COURT:  Okay.

7          MS. AUGUSTINE:  -- with taking a position for them.

8          THE COURT:  Again, as long as the parties are

9 satisfied that the disclosure is accurate, even if it's to

10 state positions, contrary positions, that would be satisfactory

11 to the Court.

12          MS. AUGUSTINE:  Thank you, Your Honor.  Page 42 is

13 merely a clarification requested by Adeptio regarding their

14 treatment and how they will receive a $20 million claim which

15 entitles them to a pro rata share of the trust.

16          THE COURT:  Yes.

17          MS. AUGUSTINE:  On 44 it's a similar clarification

18 regarding Adeptio's deficiency claim.  Your Honor, on Page 47

19 there is some language about the rejection of indemnification

20 obligations.  Mr. Glassman is very well versed in these issues

21 and I'd like to save for the end of this presentation the

22 changes that are proposed and still being proposed regarding

23 this provision.

24          THE COURT: Very well.  Ready.

25          MS. AUGUSTINE:  Okay.  On Page 49 there is some

1  clarification about the sources for plan distribution.  And

2  then you'll see at the end there's language about the terms of

3  the investigation funding which is the Adeptio loan.  And at

4  this point, Your Honor, the parties are still negotiating the

5  terms of that loan agreement.  We had hoped to attach it as an

6  exhibit to the plan so it's disclosed to all parties.

7            This language needs to be cleaned up a bit to provide

8  for Adeptio's position again and the position of the

9  proponents.  But, the position that Adeptio has taken is that

10 this is a draw down-type fund and they're also requesting that

11 no distributions be made until the Adeptio loan is repaid in

12 full and terminated.  That's not, I believe, in here at this

13 point.

14            THE COURT:  Ready.

15            MS. AUGUSTINE:  On Page 50 --

16            THE COURT:  Yes.

17            MS. AUGUSTINE:  -- at the bottom.  We've clarified

18 some information about the insurance policies in response to

19 the Icon objection.  Those clarifications continue on 51 with a

20 small change, and 52, as well.

21            THE COURT:  Okay.

22            MS. AUGUSTINE:  On Page 55 again there is a

23 clarification about repayment in full of the Adeptio loan.  The

24 next meaningful change is on Page 64.

25            THE COURT:  Yes.

1          MS. AUGUSTINE:  That, again, clarifies regarding the

2   held contracts.

3          THE COURT:  Exactly.

4          MS. AUGUSTINE:  There are some treatment -- or they

5   are disposed of.  On Page 65 the change ties in to be

6   consistent with the change regarding the indemnification

7   obligations so Mr. Glassman's presentation will cover that.

8   And then we turn almost to the end, Page 68.

9          THE COURT:  Yes.

10         MS. AUGUSTINE:  That deals with the Adeptio release

11  mostly.  The parties believe that they can come to an

12  understanding regarding this release if there is adequate

13  consideration.  And so, again, there will be further

14  negotiations and further disclosure of the parties' positions

15  regarding this release.  That also holds true for the

16  exculpation and limitation of liability.  That is not set forth

17  with language in the disclosure statement, but Adeptio is

18  seeking a release of claim holders.  So, this is separate from

19  the estate release as this is a third party release.  And the

20  estate -- the proponents are taking the position that we cannot

21  achieve such a release without a special finding by the Court.

22  We're not sure that there is one warranted.

23         We also have concerns about the cost of putting all

24  that information in the solicitation package because of the

25  shortened disclosure statement we are proposing for the general

1 unsecured creditors.  We believe we would need to fully

2 disclose any such third party release and at the current state

3 of affairs with the lack of funding, we just don't know that it

4 warrants additional expense without some kind of justification

5 from Adeptio.  And, again, I'm sure, I don't mean to preview

6 any of Adeptio's objection, I'm sure they'll have their own

7 summary for you.

8           Again, to deal with the Icon concerns.

9           THE COURT:  Yes.

10          MS. AUGUSTINE:  We updated the liquidation under

11 Chapter 7 analysis on Page 69.

12          THE COURT:  Yes.

13          MS. AUGUSTINE:  We're trying to make clear that we

14 believe that without a confirmed plan, there is a risk that any

15 of the funding provided by Adeptio for the investigation and

16 the priority claims would be lost.  Specifically, the priority

17 claims say that the $500,000 is paid upon confirmation of a

18 Chapter 11 plan and we can't know how that would play out until

19 it does, but there's a risk in that with a Chapter 7

20 liquidation.  There's also increased cost with a Chapter 7

21 trustee and professionals, so that's disclosed.  And the

22 largest risk would be that a Chapter 7 trustee would not pursue

23 any claims, and so we'd all be sitting here with as much money

24 as we were ever going to receive.

25          So that although is not a numbers-type analysis, is

1  the best analysis we can have because of the fact that we can't

2  guarantee a litigation result.

3            THE COURT:  Yes.

4            MS. AUGUSTINE:  So that, Your Honor, is the blackline

5  disclosure statement.  I'm happy to go through the blacklines

6  of the solicitation documents.  I can say that they really only

7  change things to reflect what we've already gone through.

8            THE COURT:  That's how it appeared to me yesterday

9  when I was reviewing these.

10           MS. AUGUSTINE:  There is one more change we made to

11 the order which is not ready to be signed today, but we

12 incorporated all the exhibits into the order before we refer

13 them back to the motion so I just wanted Your Honor to be aware

14 that we caught that.

15           THE COURT:  Okay.  Aren't we hear a little bit

16 prematurely with so many issues remaining to be resolved?

17           MS. AUGUSTINE:  Well, we viewed this hearing as a

18 benchmark and we very much attempted to resolve everything by

19 today.  We are happy with the progress the parties have made

20 and feel that if we can go a little further with this language,

21 circulate amongst the parties, perhaps submit under

22 certification of counsel or, if need be, have another

23 teleconference or short hearing if there are any issues that

24 remain, we're happy to do so.

25           THE COURT:  Okay.

1          MS. AUGUSTINE:  But as far as the status of the

2    estate, we are pleased that we were able to get to this point.

3          THE COURT:  I'm pleased too.

4          MS. AUGUSTINE:  So it was our hope that after today

5    the parties would, again, work as hard as they have been and

6    submit something to Your Honor.

7          THE COURT:  Okay.  But, I guess what I'm asking is,

8    at the moment there's really nothing firm for me to approve, is

9    that correct?

10         MS. AUGUSTINE:  Yes.  Yes.

11         THE COURT:  Maybe Mr. Glassman --

12         MS. AUGUSTINE:  And Mr. Glassman still has --

13         THE COURT:  Maybe Mr. Glassman has a different view

14   on this, but --

15         MR. GLASSMAN:  Well, no, Your Honor, simply that

16   there isn't anything to approve right now other than we hope in

17   the next day or two we will be able to submit --

18         THE COURT:  Oh, so your discussions have moved along

19   that far?

20         MR. GLASSMAN:  Oh, I think so.  I think once Adeptio

21   puts its proposed -- Adeptio contends that language in --

22         THE COURT:  Okay.

23         MR. GLASSMAN:  -- we get a little bit of input from

24   Mr. Loomis and his colleagues from Reed Smith, and we need some

25   input, frankly, from the person who is going to be the

21

1 litigation trustee.

2           THE COURT:  Okay.

3           MR. GLASSMAN:  Part of -- in fact, this is not a bad

4 segue if it's okay.  If I could take Your Honor back to Page 47

5 --

6           THE COURT:  Yes, sir.

7           MR. GLASSMAN:  -- the first amended disclosure

8 statement --

9           THE COURT:  I am there.  Indemnification?

10           MR. GLASSMAN:  I -- and if I could get my reading

11 glasses, excuse me.  Without them I'm crippled.  I want to be

12 careful not to say too much here but I also wouldn't mind some

13 guidance from Your Honor whether it's now or at the

14 confirmation hearing and I suspect if you give it to us it will

15 be after you hear what we sort of have concluded.

16           THE COURT:  Okay.

17           MR. GLASSMAN:  The debtors are corporations and

18 limited liability companies which, if this plan is confirmed,

19 will be merged into one of the debtors so that there is one

20 remaining corporate entity that will then be dissolved under

21 State law.

22           THE CLERK:  (Inaudible).

23           MR. GLASSMAN:  Okay, do you want me to try to start

24 over?

25           THE CLERK:  (Inaudible).

1          MR. GLASSMAN:  That's okay.  As I said, the entities

2  are all -- the debtors are all corporations or limited

3  liability companies which will be, under the plan, if it's

4  confirmed and goes effective, will be merged into one corporate

5  entity then dissolved under State law.

6          There are existing litigations out there, Icon

7  litigation and others.  There are former directors and

8  officers.  There are no directors and officers now who -- of

9  the debtors, who were, you know, employed by the company while

10  it was operating.

11          I have had a concern over the last couple of months

12  as I've been watching some of the developing Chancery law that

13  the common wisdom that indemnification claims necessarily are

14  pre-petition claims because they arise as a result of demands

15  made for indemnity relative to pre-petition facts and

16  occurrences is not necessarily, although it probably is good

17  understanding under <u>Frenville</u> and the relevant Third Circuit

18  progeny.  Having said that, I have seen, and I can refer you to

19  one.  I brought it with me, in case Your Honor wants to read it

20  because it seems to be interesting; <u>Schum v. Troy</u> (phonetic).

21  And if Your Honor would like, I will hand it up, CA Number

22  2362, Vice Chancellor Lamb, decided March 28th, 2008.  If I may

23  approach, I'll --

24          THE COURT:  Yes, thank you.  I would appreciate that.

25  I'd like to have it and read it.  Thank you, Mr. Glassman.

1           MR. GLASSMAN:  In this case the Chancery Court finds

2    that it's all right for bylaws to have been changed relative to

3    an indemnity and advancement, after the person who is the

4    subject of the indemnity or advancement, the former officer or

5    director is no longer with the company and the conduct had

6    already occurred.  And that's one of the cases that made me

7    start wondering, well, when do these things really ripen and

8    when do they accrue and when do they -- so -- and I've seen it

9    in other plans.  Frankly, I don't remember what plans I've seen

10   it in, but I have seen indemnification provisions rejected as

11   executory contracts and that's all we're seeking to do.  I'm

12   not trying to go beyond 365 in this plan.

13          But, out of an abundance of caution I thought, well,

14   we ought to just reject these things, in addition, reform the

15   operative agreement so that after the confirmation date, that

16   there is no coverage for former officers and directors.  And in

17   addition, you'll notice the language on Page 47 provides that

18   all such claims, those indemnification claims, shall be deemed

19   to be pre-petition claims.

20          Naturally, the Committee is the debtor, is very

21   concerned about monetizing the retained litigation claims so

22   that there's a recovery for not only the general unsecured

23   creditors but the administrative claimants, and if there are

24   any priority claimants above 500,000, for them, as well.  We're

25   all very concerned about that.  We don't want to do anything

1  that might affect recovery under the relevant D&O policies --

2          THE COURT:  Right.

3          MR. GLASSMAN:  -- and affecting claims which might be

4  covered under the indemnification prong.  I'm not trying to get

5  into the -- but Your Honor has had some lessons recently in the

6  nature of these policies --

7          THE COURT:  Yes.

8          MR. GLASSMAN:  -- and that there is -- there's a

9  State coverage and then there's also a director's and an

10 officer's coverage which is separate and we're not trying -- in

11 fact, this plan provision you'll notice on Page 47 confirms

12 that this plan is not doing anything between non-debtors, not

13 trying to affect that.  So, I don't really want to say much

14 more than that other than it may be the rejection is not such a

15 good idea.  I put it in so that it would start the discussion

16 and that's in part where we haven't had enough input from the

17 Committee on, from Adeptio, as well.  Look, Adeptio is a large

18 claimant.  It's -- you know, it's got a big stake.  It wouldn't

19 be making that senior loan if it didn't think there was

20 recovery I would imagine, although it's part of the sale and

21 you know.

22          So, that's really the background for this provision

23 or this language on Page 47.  And I wish I could explain more.

24 I'm a little bit afraid of doing something that's unknown, so

25 my inclination right now frankly is to jettison it and just

1  confirm that any of those claims are pre-petition claims and

2  jetisson the rejection of the -- because, on the other hand, I

3  don't think, I'm pretty sure, that doing it should have any

4  effect on the ability to prosecute or compromise claims and

5  have them covered but --

6          THE COURT:  I understand your --

7          MR. GLASSMAN:  I don't want necessarily want to be

8  the one on whose watch that risk is taken unless everybody else

9  thinks it's a good idea.

10          THE COURT:  I understand your concern.  I don't think

11  you do need to say more because I appreciate that it is a

12  somewhat sensitive issue.  So at the moment --

13          MR. GLASSMAN:  At the moment I'm leaving it in.

14          THE COURT:  -- we're talking about it.

15          MR. GLASSMAN:  We're talking about it, that's right.

16          THE COURT:  Okay, all right.  And to the extent a

17  decision is made which way you're going, you'll make

18  disclosure.

19          MR. GLASSMAN:  Yes, it's actually -- well, maybe what

20  we should do is add something to the disclosure statement if

21  you would like, saying that this is just being considered and

22  it may not be -- along the lines of the release, reserving

23  rights not to reject the indemnification obligations.  I can't

24  imagine who would --

25          THE COURT:  Well --

**J&J COURT TRANSCRIBERS, INC.**

1          MR. GLASSMAN:  -- who's going to object to us not

2   rejecting, but it's --

3          THE COURT:  I agree with that.  The only concern I've

4   got, of course, is what you're going to have in the plan to

5   which this disclosure statement relates.

6          MR. GLASSMAN:  Well, in the plan what I would do is I

7   would just -- I mean, when we get to confirmation, I would just

8   carve out the rejection.  If Your Honor is uncomfortable with

9   that, we'll make the call now, you know, within the next two

10  days when we submit the certification -- I hope it's the next

11  few days -- you know, we'll make the call now if need be.

12  We're going to have to make the call at some point anyway.

13         THE COURT:  Well, I'm not looking for you to make the

14  call today because I would like you to have discussions, but I

15  do think that on an issue such as this, I think you need more

16  than just "we may."  I think you need to make your decision and

17  the disclosure statement and the plan ought to be consistent

18  with the decision that you make.

19         MR. GLASSMAN:  Okay, then we should make the call

20  soon.

21         THE COURT:  Yes.

22         MR. GLASSMAN:  Got it.

23         THE COURT:  But, make it obviously -- I guess what

24  I'm suggesting is you'll make it in conjunction with the other

25  interested parties.

1          MR. GLASSMAN:  Oh, certainly, Your Honor.  The debtor

2 is a stake-holder here.

3          THE COURT:  Right.

4          MR. GLASSMAN:  There are many communications,

5 unfortunately, most of them go through our train station, but

6 not all of them.

7          THE COURT:  Right.  Right.  Thank you, Mr. Glassman.

8 Who else wishes to be heard on the disclosure statement?

9          MR. LOOMIS:  Your Honor, this is Gaston Loomis for

10 the Committee.

11          THE COURT:  Good morning.

12          MR. LOOMIS:  We -- the changes that were made by the

13 debtors to the disclosure statement; we join.  I know it's not

14 -- I guess it's not up for approval today, but when it is

15 prepared, we're prepared to move for -- that it be approved by

16 Your Honor.

17          THE COURT:  Thank you.  Mr. Brady, good morning.

18          MR. BRADY:  Good morning, Your Honor.  Robert Brady

19 on behalf of Adeptio.  And I would note David Agay is on the

20 telephone, Your Honor.

21          THE COURT:  Oh, I'm sorry.

22          MR. BRADY:  Kirkland and Ellis.

23          THE COURT:  Mr. Agay, good morning, sir.

24          MR. AGAY:  Good morning, Judge Gross.

25          THE COURT:  And also Jeffrey Pawlitz and Tiffany Cobb

1   are on the phone.

2             MS. COBB:  Good morning, Your Honor.

3             MR. PAWLITZ:  Good morning, Your Honor.

4             THE CLERK:  No, Your Honor --

5             THE COURT:  Oh, they did not --

6             THE CLERK:  One of them did.

7             THE COURT:  Okay, that's okay.  All right, Ms. Cobb,

8   are you on the phone?  Okay, that's the one who didn't I think.

9   Thank you.

10            MR. BRADY:  I note that, Your Honor, because Mr. Agay

11  has been taking the lead in the discussions with the debtors

12  and the Committee and he's available to fill in any gaps in the

13  discussions that have been had and in case I screw this up and

14  don't get it right, he can correct me.

15            THE COURT:  I doubt it.

16            MR. BRADY:  We would like to begin by thanking the

17  debtors and the Committee for working with us on our requested

18  changes to the disclosure statement.  I think we got very far

19  and I think we're close and should be able to complete the

20  process with the disclosure statement that would have Adeptio's

21  support to go out.

22            As debtor's counsel indicated, they have clarified in

23  the disclosure statement that both the Adeptio loan and the

24  priority claims funding that's provided for in the term sheet

25  will be funded on an as-needed basis and not in a lump sum,

1  up-front payment and have confirmed that the loan is not a
2  revolver.  So with those changes, we believe it's sufficient.
3  Those changes don't appear in the plan.  We're presuming that
4  that's because they'll be covered in the plan supplement which
5  will contain the loan documents --
6            THE COURT:  Okay.
7            MR. BRADY:  -- and other agreements related to the
8  term sheet and can be addressed there.  But, that satisfies at
9  least part of our objection that's set forth in Section A
10 and B.
11           Adeptio also asked for clarification, Your Honor,
12 that the loan had to be both paid and terminated before payment
13 of any secured administrative priority or general unsecured
14 claims.  The debtors have clarified that with respect to
15 repayment prior to the distributions under the plan with the
16 exception of the priority --
17           THE COURT:  Yes.
18           MR. BRADY:  -- funding which is a matter of some
19 disagreement still.  But, they have not included the terminated
20 language that Adeptio requested.  I can give the Court an
21 example of a scenario that we're concerned about and why we
22 would, at least with respect to the disclosure statement,
23 request that Adeptio's point be noted, that it believes it's
24 required to both be repaid and terminated.
25           The example would be as follows, Your Honor.  The

1 debtor incurs fees or the litigation trustee incurs fees up to

2 $300,000 and asks for a draw on the loan.  The loan pays out

3 the $300,000 that has been requested.  The plan trustee then

4 receives a $500,000 settlement.  At that point the $300,000 is

5 used to pay back Adeptio and the $200,000 is then used to pay

6 other claimants.  At that point it's possible that no other

7 recoveries are achieved by the litigation trustee so Adeptio

8 would have paid out -- well, I'm sorry -- I add to my scenario,

9 then request another draw of $200,000 and then there's no other

10 recoveries.  So, at that point Adeptio would have paid out

11 another $200,000 under the loan, no other recoveries would have

12 been achieved and the 200,000 that would have been available to

13 pay it has gone to other creditors lower on the priority

14 scheme.  That's why we think the language, both repaid and

15 terminated, is important.

16       Also, Your Honor, Adeptio believes that the loan must

17 be repaid and terminated before its obligations to fund the

18 $500,000 in priority funding kicks in.  Now, we understand the

19 debtors and the Committee may disagree with that point.  We

20 believe that that's properly for the further discussions that

21 are going to be had or part of confirmation.  But, at this

22 point we would think that it would be prudent and I think the

23 debtors have agreed to include that Adeptio asserts or Adeptio

24 takes the position and include our language that we suggested

25 in our limited response with the proviso that it's Adeptio's

1  assertion that the parties are continuing those discussions.

2         With the changes made and with including Adeptio's

3  assertions in the disclosure statement, we think we can resolve

4  both our points made under Section A and B.

5         With respect to our response, Section C, dealing with

6  the indemnification that Mr. Glassman addressed, again, we

7  raised the concerns, as he indicated, about that provision.  We

8  are having discussions with the debtors and the Committee about

9  that and based on Your Honor's statements, I assume we'll have

10  those discussions before any finalized disclosure statement is

11  sent, but we did just want to note for the record our potential

12  disagreement on that point.

13         With respect to our objection relating to the setoff

14  language that's set forth in D in our response --

15         THE COURT:  Yes.

16         MR. BRADY:  -- we've asked for a clarification to be

17  added to the disclosure statement that Adeptio is not going to

18  be subject to any setoff claims.  The debtors haven't agreed to

19  that now.  We imagine this will be also part of further

20  discussions.  So, at this point we would be -- we would find

21  acceptable inclusion in the disclosure statement that it's

22  Adeptio's position that it's allowed claim.  The investigation

23  funding or any other obligations to Adeptio under the plan are

24  not subject to setoff and they can put that in as our assertion

25  and we'll deal with that in our further discussions.  And if we

1  can't reach agreement, we'll deal with it at confirmation.

2          With respect to the release and exculpation, the

3  debtors have provided what I'll call conditional release in

4  here for Adeptio to the extent the debtor determines it's

5  appropriate.  Obviously, Adeptio believes that it will be able

6  to satisfy any standard for consideration required for any

7  releases or exculpation under the plan.  It's Adeptio's

8  position that both funded the bankruptcy case and primarily

9  funding the plan process and the litigation trust.

10         As a result, what we ask, Your Honor, is that the

11 debtor not limit themselves.  Our concern here is that we

12 believe it's appropriate not only to get a release from the

13 Committee and the debtors but to obtain third party releases

14 because of the consideration provided and to be included as

15 part of the exculpation.  So, we think the debtors should

16 provide the same conditional inclusion of third party releases

17 and exculpation in the disclosure statement because if it's not

18 included, we could have a real notice problem.  If ultimately

19 the negotiations lead to the point where the debtors and

20 Committee are comfortable providing Adeptio with exculpation

21 and third party releases because of the consideration provided,

22 but it's not in the disclosure statement, then there would be a

23 notice issue at that point.

24         THE COURT:  Yes, there would.

25         MR. BRADY:  We think it's prudent to give the parties

1  the right to seek those releases and exculpation in the

2  disclosure statement.  Obviously, it can be conditional as the

3  debtor has indicated with the debtor releases.  And if

4  negotiations lead to the point where we can establish that

5  Adeptio is entitled to those protections, it can be granted

6  without a notice issue.

7         We recognize the debtor's concern about cost.  They

8  -- we've noted here and we don't take issue with their request

9  to send out a short form disclosure statement.  We leave the

10  debtors to address that with the Court.  But, we don't think

11  including in that short form disclosure statement provisions

12  indicating that the debtors and the plan proponents reserve the

13  right to seek third party releases and exculpation of Adeptio

14  as well as the debtor and Committee releases would add very

15  much to that short form disclosure statement, would not

16  increase costs significantly and would provide more flexibility

17  in our negotiations to bring about final resolution of the open

18  issues you've heard about.

19         One additional comment, Your Honor, and I think this

20  was new in the sense it showed up in the blackline I saw

21  yesterday and that is in Article 12 dealing with a potential

22  Chapter 7 liquidation.

23         THE COURT:  Yes.

24         MR. BRADY:  The disclosure statement, as I read it,

25  seems to indicate that Adeptio would still be obligated under

1  the term sheet to provide the loan and the priority claim

2  funding it had agreed to.

3          We do disagree with that.  We believe that Adeptio --

4  it's clear that Adeptio agreed to provide both the loan and its

5  priority claim funding in connection with a plan, not in

6  connection with a Chapter 7 liquidation.  You'll recall the

7  goal of the sale resolution was to hopefully get and achieve a

8  Chapter 11 plan confirmation.  Again, I think that could be

9  handled in the disclosure statement that Adeptio asserts it

10 would not be obligated in a Chapter 7 to provide the loan and

11 the funding and we can deal with that if necessary.

12         THE COURT:  I didn't think the debtor disagreed with

13 that.  And, in fact, that was one of the concerns that the

14 debtor was expressing about a Chapter 7 proceeding; it would

15 not be this funding.

16         MS. AUGUSTINE:  We were hesitant to take a position

17 on what Adeptio's position is so now that their position is

18 clear, it makes it even more clearer for us to put into the

19 Chapter 7 liquidation analysis.

20         THE COURT:  Is that your position as well and the

21 Committee's position that in a Chapter 7 there is no funding

22 here?

23         MR. GLASSMAN:  Your Honor, our position is, is we

24 don't know.  There is a high -- a good probability that Mr.

25 Brady's client's position is correct.  It might not be.

1  Chapter 7 trustee might have succeeded to some rights under

2  that settlement agreement and I'd rather not address that.

3  What I do know is, is we have a battle on our hands.  Mr. Agay

4  and Mr. Brady probably wouldn't just roll over on that and

5  considering that that affects the probabilities of whatever

6  available funding substantially that might be available under 7

7  and it is available here, it isn't even close.

8              THE COURT:  Okay.

9              MR. GLASSMAN:  We're happy to put the language in

10  about Adeptio contending that it wouldn't be held.

11              THE COURT:  Okay, okay.

12              MR. LOOMIS:  Your Honor, and the Committee would like

13  to actually not make a decision on that today, to have some

14  time to actually discuss it with them.

15              THE COURT:  Okay, understood.

16              MR. BRADY:  Your Honor, Robert Brady again.  I would

17  just note, right now it currently reads, "The debtors and the

18  Committee contend that Adeptio would continue to be obligated."

19              THE COURT:  Right.

20              MR. BRADY:  I'm not sure they want to revise that to

21  indicate they reserve the right to contend, but certainly

22  Adeptio wants to reserve the right to contend, that it would

23  not be obligated.

24              THE COURT:  Understood.

25              MR. BRADY:  And then one final -- and perhaps we can

1  just deal with it --  I'll put it on the record, but we can

2  deal with it with counsel in our discussions.  But, we were not

3  quite sure in connection with the release language, the use of

4  the term "non-natural affiliate" was not obvious to us what

5  that meant so we will talk to Mr. Glassman about that and see

6  if he can educate us on that term and we can get comfortable

7  with its use in the disclosure statement.

8            THE COURT:  Tell me what you're thinking, Mr.

9  Glassman, as a "non-natural affiliate."

10           MR. GLASSMAN:  Very simply, Your Honor, we were

11  trying to make sure that former officers and directors of the

12  debtors who are now employees of Simplexity and who may have a

13  piece of Simplexity, we don't know what their arrangement is

14  with that.  We simply wanted to make sure that we weren't

15  unnecessarily releasing individuals who may be targets,

16  although I don't know that there is anybody.  It's the

17  transactional lawyer in me that came out when I was doing that.

18           THE COURT:  I remember you did that kind of work.

19           MR. GLASSMAN:  As to the third -- if this is a good

20  time to address Mr. Brady's --

21           MR. AGAY:  Your Honor, David Agay for Adeptio.  Could

22  I just address that point?

23           THE COURT:  Please, yes.

24           MR. AGAY:  If you can't hear me okay --

25           THE COURT:  No, no, you're coming through well.

1          MR. AGAY:  Great.  The only reason I ask is some

2   people at the podium seem to be cutting in and out a bit.  On

3   Mr. Glassman's point I would note that as part of the APA,

4   those actions against officers that continue with what is now

5   called Simplexity were acquired by my client so I don't see --

6   I guess I -- and Mr. Glassman and I can talk further about this

7   but I guess I don't see the need for that language in light of

8   that fact.  I'd just note that for the record.

9          MR. GLASSMAN:  I understand Mr. Agay's point.  We've

10  gone around and around on that, Your Honor.  Our response is,

11  is they've already been released or those claims have already

12  been given up so there isn't any need -- they can't be put back

13  by this plan so that's all.  It's -- I understand Mr. Agay's

14  point, Your Honor.  It's really a language issue I think

15  because I don't think I'm actually taking anything away in the

16  nature of releases that have already been given under the APA.

17  That has been dealt in large measure to Adeptio to make that

18  call what to do with those claims.  And naturally it puts it in

19  its pocket and doesn't do anything with them.

20          THE COURT:  Right.

21          MR. GLASSMAN:  With respect to the third party

22  releases, I think probably in the next couple of days -- I mean

23  frankly, I didn't see any -- and this is said respectfully with

24  respect to Adeptio, I didn't see any need for them to have

25  third party releases and to go through the hoops of asking

1  people to vote for it or getting separate consideration because

2  frankly, a lot of the consideration so far has been for the

3  sale, not necessarily -- and yes, part of it's plan funding.  I

4  didn't want to have to deal with those issues.  Adeptio wants

5  us to deal with those issues so we'll talk about it.  Yes,

6  there will be a notice issue.  If we don't go out and solicit

7  those releases now, we aren't going to just slot them in at

8  confirmation, that's true.

9          THE COURT:  That's right.

10         MR. GLASSMAN:  So, if we get to the point after

11  talking with the Committee and Adeptio about -- this is not a

12  conventional case in many respects, you know.  You've got a lot

13  of professionals that are doing this for reasons which are not

14  easy to understand on the surface, taking the credit risk and

15  the financial risk.  But I understand their request.  Frankly,

16  if everything else is wrapped up and there's a deal in place,

17  that's why I was happy to have the estate give the release as

18  long as by the time we get to the effective date, it's done.

19         THE COURT:  Exactly.

20         MR. GLASSMAN:  So what I would propose is, is let us

21  talk about it.  And if need be, when we submit under

22  certification of counsel, if we get to that point, if something

23  that doesn't have third party releases in it, then Adeptio I

24  guess can do a counter certification of some kind although it

25  shouldn't get there.  It just shouldn't get there.

1          THE COURT:  Well, here's what we'll do on that point

2   because as I'm listening, there are still a lot of moving parts

3   here and there will be a lot still for the Court to consider.

4   Even under a certification of counsel it may be necessary to

5   follow it up with at least a telephone conference and perhaps

6   even another hearing as Ms. Augustine suggested.  But, to the

7   extent you haven't reached agreement, I would just hope that at

8   least that's made clear to me when you submit the papers, even

9   if it's a call to chambers saying you'll be receiving a counter

10  certificate of counsel with still discussed points or points

11  under contention.

12          MR. GLASSMAN:  Frankly, on a case this thin --

13          THE COURT:  Yes.

14          MR. GLASSMAN:  -- and this small --

15          THE COURT:  I know.

16          MR. GLASSMAN:  -- this kind of issue shouldn't be

17  driving the bus in the timing sense, at all.  Getting this done

18  at this point is -- but I think if you let counsel put their

19  heads together, we ought to be able to resolve that one.

20          THE COURT:  I have faith in counsel here and I think

21  that -- I think it's worthwhile because -- I realize it's a

22  disputed issue, but the funding is really the whole game at

23  this point for the litigation.  And somehow the parties have

24  got to reach an accommodation so that that funding can be

25  achieved.

1          MR. GLASSMAN:  We understand that, Your Honor.

2          THE COURT:  So, that's in everyone's interest

3   obviously, all parties.  So I suppose -- well, I don't really

4   know what to say because I really don't have a disclosure

5   statement before me that the parties are proposing.

6          MR. GLASSMAN:  How about this?  How about in the

7   next, I keep saying in the next two or three days, I know

8   that's optimistic but two or three business days, that we see

9   if we can get to the point of submitting something under

10  certification of counsel that is consensual --

11         THE COURT:  Yes.

12         MR. GLASSMAN:  -- in terms of the language.  I mean,

13  not everything will be solved, but we'll address the rejection

14  of the indemnification issue and finalize that.

15         THE COURT:  Okay.

16         MR. GLASSMAN:  That's easy.

17         THE COURT:  Yes.

18         MR. GLASSMAN:  Unfortunately, that just deals with an

19  unknown and we'll probably deal with that -- address that

20  conservatively.  As to the other open points, the Adeptio

21  contends language, will deal with most of that.  Really the

22  only issue that would keep us from being able to send something

23  to you if we don't agree is really the third party releases.

24  And frankly, Your Honor, I'm not going to let that drive the

25  bus.  So I think -- I am quite hopeful that soon, I won't say

1  two or three days, but very soon we will be able to file under

2  certification of counsel a consensual disclosure statement.  If

3  we can't do that by -- pick a day, Wednesday, Thursday,

4  something like that, then maybe we need another hearing date

5  and maybe Your Honor should block it out now.

6      THE COURT:  I think that's right.  I'll get you in

7  one way or the other.  I'll shoehorn a hearing in so don't

8  worry about that.  I don't want to do it today because it may

9  take until Thursday or Friday before everyone is content that

10  either you've got agreement or you can't reach agreement.  The

11  only concern I've got for purposes of the disclosure statement

12  is this.  To the extent that Adeptio's position prevails, there

13  may not be any -- there may never be any distributions here.

14  There may be no funding.

15      MR. GLASSMAN:  With respect to which position, Your

16  Honor?

17      THE COURT:  Well, for example, that they don't fund

18  until their loan is paid and retired.

19      MR. GLASSMAN:  Well, I can tell you, Your Honor,

20  that's a non-starter.  We're just going to pack our bags and go

21  home.  I mean, to round out the picture for you a little bit,

22  we've gone into this whole project assuming that the priorities

23  weren't going to be more than 500,000 --

24      THE COURT:  Yes.

25      MR. GLASSMAN:  -- and that's the reason why 500,000

42

1   was put on the table.

2            THE COURT:  Okay.

3            MR. GLASSMAN:  Now, what we've learned is there are

4   some pretty large tax priority claims that have been asserted.

5   Now, how good are those?  Well, this was an internet sales

6   company, you see where -- so what we may have to do before we

7   get to confirmation is, we may have to do some estimation or

8   some claim objections, but right now we need data from

9   Simplexity because it's the only one who can help us with --

10  and they're working with us.  I mean, it's -- my point is, is

11  that that 500,000, at least in terms of -- Mr. Califano was

12  more involved in the actual negotiations at the time than I

13  was, but in terms of the $500,000 priority, if everything else

14  -- I don't want to get in negotiations, but in terms of the

15  priority claims, I think if we reach agreement on everything

16  else, I don't think that is going to be a showstopper.

17           Now, in terms of money that comes out of the trust,

18  if you go over the 500,000 --

19           THE COURT:  Yes.

20           MR. GLASSMAN:  -- and now I think that's going to be

21  real hard for Simplexity or Adeptio or whatever name you want

22  to use to say, okay, money can come out before a senior loan is

23  paid back.  But, as to the 500,000, I am quite hopeful if

24  everything else slots into place, that will too because I don't

25  think -- I don't want to predict -- I don't want to disclose

**J&J COURT TRANSCRIBERS, INC.**

1  negotiations and I don't want to predict how Your Honor will

2  rule if you end up having to interpret that term sheet.   I

3  think we're closer than you may realize.

4           THE COURT:  Okay.

5           MR. GLASSMAN:  That's all I'm saying.

6           THE COURT:  That's fine, and that's why I don't want

7  to say too much and I don't want anybody to feel that they have

8  to say anything to reserve their position at this hearing

9  because I realize things are in flux and I'd like to see that

10 deal get done.

11          MR. GLASSMAN:  Frankly, Your Honor, everybody is

12 really as -- this is the converse as the way it was at the sale

13 hearing.

14          THE COURT:  Okay.

15          MR. GLASSMAN:  For whatever reason, people are being

16 very professional and --

17          THE COURT:  You're all very professional.

18          MR. GLASSMAN:  I mean, everybody really is.  The tone

19 is very different right now.

20          MR. AGAY:  Your Honor, David Agay for Adeptio.

21          THE COURT:  Yes, sir.

22          MR. AGAY:  A couple of points.  I reserve the right

23 to argue that we were very professional at the sales hearing.

24          THE COURT:  All right.

25          MR. AGAY:  And secondly, as Mr. Brady said, we

1 appreciate all the debtors' and Committee's efforts.  I think

2 Mr. Glassman's point is correct.  We've all been working

3 amicably and in the vein of not reserving too much, not saying

4 too much, I mean suffice it to say that, you know, we continue

5 to work with each other.  We reserve all the arguments that

6 we've put before the Court and hopefully we can get to a

7 resolution.

8          THE COURT:  Thank you, Mr. Agay, and I appreciate

9 really everyone's -- I recognize it's a difficult case and it's

10 not a cash flush case and I appreciate counsel's efforts here

11 and the hard work that you're doing to try and resolve things

12 and get a plan confirmed so I am certainly prepared to work

13 with you on it and hopefully you'll reach resolution and if you

14 don't, you'll come back in front of me.

15          MR. GLASSMAN:  We'll be back to you middle to --

16          THE COURT:  I'm not holding you to next Wednesday,

17 but if you have a sense that you're there or you're not there

18 and won't get there, then obviously contact us and we'll get

19 you in.

20          MR. GLASSMAN:  Thank you, Your Honor.

21          THE COURT:  Anything else from the parties?  All

22 right, well, thank you all.  To those of you to whom it

23 applies, a Happy Father's Day on Sunday and I'll see you all

24 soon I'm sure.  Good day, everyone.

25                    * * * * *

**J&J COURT TRANSCRIBERS, INC.**

# **C E R T I F I C A T I O N**

        I, MARY L. POLITO, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above entitled matter, and to the best of my ability.


_____   DATE:  June 23, 2008

MARY L. POLITO

J&J COURT TRANSCRIBERS, INC.