## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| SN LIQUIDATION, INC., *et al.*,[1] | : | Case No. 07-11666 (KG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | **Objection Deadline: August 13, 2008 at 4:00 p.m.** |
|  | : | **Hearing Date:  August 20, 2008 at 2:00 p.m.** |

## OBJECTION OF THE DEBTORS TO CLAIM NOS. 1106 AND 1344 FILED BY THE OHIO DEPARTMENT OF TAXATION, AND, IN THE ALTERNATIVE, MOTION TO DETERMINE TAX LIABILITY PURSUANT TO 11 U.S.C. § 505

SN Liquidation, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby object (the "Objection") pursuant to sections 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to claim nos. 1106 ("Claim No. 1106") and 1344 ("Claim No. 1344", together with Claim No. 1106, the "Ohio Claims") filed by the Ohio Department of Taxation (the "Ohio DOT"), and, in the alternative, move pursuant to section 505 of the Bankruptcy Code to have this Court determine the Debtors' unpaid tax liability owed to the State of Ohio, if any, and in support of its Objection relies upon the Declaration of David Moir  (the "Moir Declaration"), of Simplexity, LLC attached hereto as Exhibit A, and respectfully represents as follows:

---

[1] The Debtors and debtors in possession are INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

## Background

**A.    The Debtors' Business Overview**

1.      Prior to the Sale (as defined below), InPhonic, Inc. ("InPhonic"), one of the affiliated debtors and debtors in possession, was a leading internet (online) seller of wireless services and devices to consumers.  InPhonic sold these services and devices through company owned and branded websites.

2.      All of the Debtors were headquartered in Washington, D.C.   The Debtors maintained technology and operations centers in Largo, Maryland; Reston, Virginia; and Great Falls, Virginia.  The Debtors did not have (and do not have) any physical presence in Ohio.

**B.    The Debtors' Chapter 11 Cases**

3.      On November 8, 2007, (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4.      The Debtors continue to possess their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

5.      On the Petition Date, the Debtors filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").  Pursuant to the

Sale Motion and APA, the Debtors sought authority to sell substantially all of their business assets and to assume, sell and assign certain of their unexpired leases, license agreements, and executory contracts free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code.

6.     On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

7.     On December 13, 2007, after conducting a hearing, the Bankruptcy Court entered an order approving the Sale Motion and APA (the "Sale Order"). Pursuant to the Sale Order, the Debtors sold substantially all of their business assets (the "Sale") to Adeptio INPC Funding, LLC ("Adeptio").

8.     On or around December 21, 2007, Adeptio assigned to Simplexity, LLC, a Delaware limited liability company and a subsidiary of Adeptio ("Simplexity"), its rights to receive the assets from the Debtors under the APA (as defined in the Sale Order). That date, the parties closed the sale of the APA.

9.     The Debtors and their professionals have conducted a review of the official register of claims filed in the Debtors' cases. For the reasons set forth below, the Debtors have determined that the Ohio Claims are properly the subject to this Objection.

**C.     The Ohio Tax Claims**

10.     On or about March 20, 2008, the Ohio DOT filed Claim No. 1106 against InPhonic, Inc., in the amount of $7,689,038.59, a copy of which is attached hereto as Exhibit B. Claim No. 1106 alleges a claim for sales and use taxes for the period of January 1, 2002 through November 7, 2007, as well as interest and penalties related thereto, and is alleged to have priority status pursuant to section 507(a)(8) of the Bankruptcy Code.

11.    On or about April 7, 2008, the Ohio DOT filed Claim No. 1344 against InPhonic, in the amount of $42,556.27, a copy of which is attached hereto as Exhibit C.  Claim No. 1344 alleges a claim for commercial activity taxes for the period of July 1, 2005 through September 30, 2007, as well as interest and penalties related thereto, and is alleged to have priority status pursuant to section 507(a)(8) of the Bankruptcy Code.

12.    The Ohio Claims are based only on estimates made by the Ohio DOT and were filed without any supporting documentation.  In an effort to determine the basis of the Ohio Claims, the Debtors requested from the Ohio DOT supporting documentation with regard to the Claims.  In response, the Debtors received an excel spreadsheet (the "Ohio Workbook") estimating (i) InPhonic taxable sales in Ohio at $1 million per month, and (ii) Ohio purchases liabilities at $500,000 per quarter, for the period of January 1, 2002 through November 7, 2007. The Ohio Workbook does not inform the Debtors of any factual basis for the Ohio Claims. Indeed, the Ohio Workbook reveals that the Ohio Claims were derived by the Ohio DOT through estimated sales projections without regard to any actual sales activity.  The actual sales activity, in turn, reveals that the Ohio DOT estimations are severely inflated and groundless.  The Ohio Workbook does not address the basis for Claim No. 1344.

13.    For the reasons set forth below, the Ohio Claims are unenforceable against the Debtors, and therefore, should be disallowed and expunged pursuant to section 502(b)(1) of the Bankruptcy Code.   In the event this Court determines any liability to the Ohio DOT, such liability should be substantially reduced and/or reclassified.

## Jurisdiction

14.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

**Relief Requested**

15.    For the reasons set forth below, the Debtors object to the Ohio Claims.  By this Objection, the Debtors respectfully request the entry of an order pursuant to sections 502(b) and 505(a) of the Bankruptcy Code and Bankruptcy Rule 3007: disallowing and expunging the Ohio Claims in full, or, in the alternative, (a) reducing the Ohio Claims, (b) reclassifying the Ohio Claims, and (c) determining the Debtors' tax liability to Ohio.

**Objection**

16.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that the Court shall allow a claim,

Except to the extent that –

> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

## I.    The Ohio Claims Should Disallowed and Expunged.

### A.    The Ohio Claims are Unconstitutional Under the Commerce Clause.

17.    The Debtors object to Claim No. 1106, which purports to represent sales and use taxes for the period of January 1, 2002 through November 7, 2007, and Claim No. 1344, which purports to represent commercial activity taxes for the period of July 1, 2005 through September 30, 2007, as well as all interest and penalties related thereto, in their entirety as the taxes assessed therein are unconstitutional and invalid under the Commerce Clause.

18.    Article I, § 8, cl. 3, of the United States Constitution expressly authorizes Congress to "regulate Commerce... among the several States."  In addition to this affirmative grant of power, the "negative" or "dormant" Commerce Clause also serves to prohibit state

actions that interfere with interstate commerce. *Quill Corp. v. North Dakota*, 504 U.S. 298, 309 (1992) *citing South Carolina State Highway Dept. v. Barnwell Brothers, Inc.*, 303 U.S. 177, 185 (1938); *see, e.g., Kassel v. Consolidated Freightways Corp. of Del.,* 450 U.S. 662, (1981) (holding that the Commerce Clause bars state regulations that unduly burden interstate commerce).

19.     In *Complete Auto Transit Inc. v. Brady,* the United States Supreme Court enunciated a four-part test, which provided that a state tax on an out-of state seller would survive Commerce Clause scrutiny so long as the "tax [1] is applied to an activity with a **substantial nexus** with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." 430 U.S 274 (1977) (emphasis added).    The first and fourth prongs of the *Complete Auto* analysis require a substantial nexus and a relationship between the tax and state-provided services, which "limit[s] the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce." *Quill,* 504 at 313.

20.     In *Quill Corp. v. North Dakota, supra,* the United States Supreme Court was asked to determine the constitutionality of sales and use taxes levied by the State of North Dakota on Quill Corp., an out-of-state retailer, under Commerce Clause jurisprudence.   Quill Corp., an office equipment supplier, sold merchandise in North Dakota through catalogs, advertising flyers, newspaper advertisements, and telephone calls. *Id.* at 302.   The company operated no store, outlet, or warehouse in North Dakota, and did not own any tangible property in the state. *Id.*   North Dakota sought to collect the sales tax proceeds from Quill Corp.'s sales to residents under the State's use tax statute. *Id.* at 302-303.   In finding the taxes assessed against Quill Corp. by North Dakota unconstitutional under the Commerce Clause, the U.S. Supreme

Court held that a retailer must have a physical presence in the state before the state has a substantial nexus to require that retailer to collect and remit sales and use taxes. *Id.* at 315. In so finding, the Court reaffirmed the "bright line" rule established in *National Bellas Hess, Inc. v. Dept. of Revenue of Illinois*, 368 U.S. 753 (1967) (holding, under substantially similar facts as *Quill*, that a vendor whose only contacts with the taxing state are by mail or common carrier lacks the substantial nexus required by the Commerce Clause). This is the case here.

21.     Moreover, the Ohio Supreme Court addressed this issue in *SFA Folio Collections, Inc. v. Tracey,* 652 N.E.2d 693 (Ohio 1995). In *SFA Folio,* SFA Folio ("Folio"), a mail order company based in New York and wholly owned by the parent company of Saks Fifth Avenue, contested an order by the Ohio Tax Collector to collect use taxes from Ohio residents. *Id* at 695. Folio sold clothes and accessories through direct mailings, including to customers in Ohio. *Id.* at 694-695. Folio had no facility, store, or warehouse in Ohio, and did not enter Ohio to collect payment for sold merchandise. *Id.* The Tax Commissioner argued that the operation of multiple Saks Fifth Avenue stores in Ohio, which allowed returns from Folio customers, and the connection between Saks Fifth Avenue and Folio through the same parent company constituted "physical presence" under *Quill. Id.* at 695-696. Despite Folio's connection with Saks Fifth Avenue, the Ohio Court concluded that Folio lacked the physical presence with the State necessary to satisfy the nexus requirement required by *Quill. Id.* at 696-697. Accordingly, the Court found the Ohio taxes unconstitutional under the Commerce Clause as they related to Folio, an out-of-state retailer with no physical presence in Ohio.

22.     Subsequent to the *Quill* and *SFA Folio* opinions, a number of Courts have examined whether sales and use taxes can be levied on internet sales. *See e.g, St. Tammany Parish Tax Collector v. Barnesandnoble.com*, 481 F.Supp.2d 575 (E.D.La. 2007) (holding that

for Commerce Clause purposes, out-of-state internet bookseller, which was affiliated with Louisiana book retailer, did not have a substantial nexus with Louisiana parish such that taxing jurisdictions within the parish could subject to it liability for sales and use taxes; despite, among other things, existence of a close corporate relationship between companies and a common corporate name and that the book retailer had policy to accept returns from bookseller's costumers); *Borders Online, LLC v. State Bd. of Equalization,* 129 Cal.App.4th 1197 (Cal.App. 1 Dist. 2005) (holding nexus between state and internet retailer sufficient for imposition of use taxes under the Commerce Clause where "brick and mortar" retailer located in the State was acting as agent for the internet retailer).

23.    In *Valley Media, Inc.*, Case No. 01-11353 (Bankr.D.Del. December 29, 2004), the Bankruptcy Court found sales and use taxes assessed by Massachusetts against Valley Media, Inc. ("Valley"), a California vendor who sold product to internet retailers (the "Internet Retailers"), invalid under the Massachusetts' tax statute because Valley did not "deliver" products to Massachusetts' consumers as required by the statute. The Court found that the drop shipment transactions at issue caused Valley's product to be delivered to the Internet Retailers in California, not the Internet Retailers' consumers in Massachusetts. Judge Walsh, however, considered whether the Internet Retailers would be subject to the Massachusetts' taxes if Valley forwarded all products to the Internet Retailers for the Internet Retailers to repackage and ship to their Massachusetts customers. *Id.* at 10-12. Citing *Quill,* the Court stated that it was "extremely unlikely that the Internet Retailers could have been taxed" and that it "appear[ed] that [the Massachusetts Department of Revenue was] pursuing its claim against Valley because [U.S.] Supreme Court precedent prevent[ed] it from levying against the Internet Retailers directly." *Id.* at 10-11. Judge Walsh went on to note that:

Presumably the matter before me reflects the problem that all states are having with enforcement of sales and use taxes. The difficulties posed to the states by catalog merchants and the Supreme Court's decision in *Quill* have only grown with the explosion of vendors onto the internet. Although these developments pose an obstacle for state departments of revenue, it is not a problem that can be solved in a court. In *Quill* the Supreme Court observed that Congress was free to change the law to enable states to collect the tax from such out of state businesses.

*Id.* at 11 *citing Quill,* 504 U.S. at 318.

24.    Under Commerce Clause jurisprudence, the operation of the "dormant" Commerce Clause prevents states from assessing sales and use taxes on vendors that do not have a substantial nexus with the state. *See e.g., Bellas Hess, supra; Quill, supra; SFA Folio, supra.* For a state to have a substantial nexus with a retailer, so that the taxing state may require the retailer to collect sales and use taxes, the retailer must have a physical presence in the taxing state. *Id.* Prior to the Sale, InPhonic was an online retailer of products and services. The Company operated no "brick and mortar" stores. Further, unlike the retailers in *Borders Online LLC, supra,* InPhonic had no offices, warehouses, or outlets in Ohio.[2] As an internet based company, InPhonic had even less physical presence in Ohio than the out-of-state retailers had with their respective taxing states in *Bellas Hess, supra, Quill, supra,* and *St. Tammany Parish Tax Collector, supra.* Moreover, Inphonic undoubtedly had less of a physical presence in Ohio than did Folio in *SFA Folio,* and, in that case, the Ohio Supreme Court determined that Folio's lack of a physical presence in Ohio prevented the State from establishing the substantial nexus required by the Commerce Clause. *SFA Folio,* 652 N.E.2d. at 696-697.

25.    Pursuant to the "bright line" test articulated by the U.S. Supreme Court in *Bellas Hess* and upheld in *Quill,* InPhonic delivered merchandise through mail or by common carrier and provided remote services to customers located in Ohio. That contact is insufficient to

---

[2] From February 2002 to July 2002, the Debtors employed one individual in Ohio and paid payroll taxes to Ohio for

establish a physical presence in the State as contemplated by Commerce Clause jurisprudence. As such, Ohio clearly lacks the substantial nexus with InPhonic required by the Commerce Clause to force InPhonic to collect sales and uses taxes for sales made in Ohio. Therefore, the sales and use taxes, and any interest or penalties related thereto, assessed in Claim No. 1106 are unconstitutional under the Commerce Clause and unenforceable against InPhonic under section 502(b)(1) of the Bankruptcy Code.

26.    Ohio's commercial activity tax is a tax measured by taxable gross receipts from most business activities in the state. *See* Ohio Rev. Code Ann. § 5751.02 (2008). The commercial activity tax only applies to those gross receipts that are sitused to Ohio. *Id.*; Ohio Rev. Code Ann. § 5751.033 (2008). "Persons on which the commercial activity tax is levied include, but are not limited to, persons with substantial nexus with this state." § 5751.02. The commercial activity tax is substantially similar to the sales and use taxes levied by the Ohio DOT against InPhonic. Since the Debtors lack a substantial nexus with Ohio, the commercial activity taxes, and any interest or penalties related thereto, assessed in Claim No. 1344 are unconstitutional under the Commerce Clause and unenforceable against InPhonic under section 502(b)(1) of the Bankruptcy Code.

27.    Accordingly, the Debtors respectfully request that the Ohio Claims be disallowed and expunged in their entirety.

### B.    No Supporting Documentation

28.    The Ohio Claims do not attach supporting documentation. When supporting documentation was requested, Ohio proffered the Ohio Workbook which merely guesses at Ohio sales. The Ohio Workbook does not inform the Debtors of the factual basis of the Ohio Claims or the basis for any of its calculations of penalty or interest. The Ohio Workbook simply

---

that individual.

illustrates that the sales and use taxes reflected in Claim No. 1106 were estimated.  Further, the

Ohio Workbook fails to address Claim No. 1344.  Under section 502(b)(1) of the Bankruptcy

Code and Rule 3001(c) of the Bankruptcy Rules, the Ohio Claims should be disallowed.

29.    Bankruptcy Rule 3001(c) provides, in relevant part, that:

> When a claim, or an interest in property of the debtor securing the
> claim, is based on a writing, the original or a duplicate shall be filed
> with the proof of claim.  If the writing has been lost or destroyed, a
> statement of the circumstances of the loss or destruction shall be filed
> with the claim.

30.    For a proof of claim to be legally sufficient and, therefore, to be *prima facie* valid,

under the Bankruptcy Rules, [it] must:

> 1) be in writing
> 2) make a demand on the debtor's estate
> 3) express the intent to hold the debtor liable for the debt
> 4) be properly filed; and
> 5) be based upon facts which would allow, as a matter of equity,
>    to have the document accepted as a proof of claim.

*First Nat'l Bank of Fayetteville, Ark. v. Circle J Dairy (In re Circle J Dairy, Inc.*, 112 B.R. 297,

299-300 (W.D. Ark. 1989) (*quoting In re Scholz*, 57 B.R. 259 (Bankr. N.D. Ohio 1986)).  If a

claim fails to comply with each of the foregoing requirements, it is not entitled to *prima facie*

validity under Bankruptcy Rule 3001.  *Id.* at 300; *see also Ashford v. Consol. Pioneer Mortgage*

*(In re Consol. Pioneer Mortgage)*, 178 B.R. 222, 226-27 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d

151 (9th Cir. 1996).

31.    Under the fifth requirement, the allegations of the proof of claim must "set forth

all the necessary facts to establish a claim" and must not be "self-contradictory." *Circle J Dairy,*

112 B.R. at 300.  The *prima facie* validity of the claim does not attach unless the claim is in

compliance "with the rules, including 3001, and set[s] forth the facts necessary to support the

claim." *Id.*  Also, the claim itself "can be used as evidence to dispute its own validity." *Id.*

Moreover, Local Rule 3007-1(d)(vi) permits a debtor to object on non-substantive grounds to claims filed without any supporting documentation.

32.    Claim No. 1344 does not constitute a valid *prima facie* claim because it fails to contain or attach supporting documentation of any kind whatsoever.

33.    Claim No. 1106, even when the Ohio Workbook is considered, which was not attached to the Claim, does not constitute a valid *prima facie* claim because it fails to be based upon facts which would allow, as a matter of equity, to have the document accepted as a proof of claim. The Ohio Workbook does nothing more than to demonstrate that Claim No. 1106 is based on the Ohio DOT's randomly generated estimates.

34.    Accordingly, the Debtors object to the Ohio Claims and respectfully request that this Court disallow and expunge these Claims.

## II.    In the Alternative, the Ohio Claims Should Reduced, Reclassified and Expunged.

### A.    Books and Records

35.    Upon review of InPhonic's Books and Records, the Debtors' professionals have determined that the amounts asserted by the Ohio Claims do not reconcile with InPhonic's Books and Records. Assuming, *arguendo*, the Ohio taxes are constitutionally valid, the Debtors calculated its sales tax liabilities to Ohio to be no more than $213,053.57 when based on actual Ohio sales per month for the period of January 1, 2005 through November 7, 2007. The Ohio DOT has not supplied a calculable basis for the use taxes assessed for the same time period, or for the commercial activity taxes for the period of July 1, 2007 through September 30, 2007. The amounts actually owed for use and commercial activity taxes, assuming, *arguendo*, that the Ohio taxes are constitutionally valid, would be substantially less, no doubt, than the amounts claimed, as demonstrated by the remarkable disparity between the amount of sales taxes

estimated by the Ohio DOT and actual sales taxes calculated by the Debtors.  Consequently, the

Ohio Claims are invalid and should be reduced accordingly.

### B.  Portions of the Ohio Claims Should Be Reclassified

#### 1.  Claim No. 1106 is Improperly Classified.

36.    Section 507(a)(8) of the Bankruptcy Code grants priority to allowed unsecured

claims of governmental units to the extent that such claims are for:

> a tax on or measured by income or gross receipts for a taxable year
> ending on or before the date of the filing of the petition – (i)
> for which a return, if required, is last due, including extensions, after
> three years before the date of the filing of the petition…

11 U.S.C. § 507(a)(8)(A).

37.    Section 507(a)(8) of the Bankruptcy Code grants priority to allowed unsecured

claims of governmental units to the extent that the tax return for the taxable period came due

within the three years proceeding the petition date.  *See* 11 U.S.C. § 507(a)(8)(A)(i).

38.    InPhonic filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code on November 8, 2007; therefore, any taxes owed by InPhonic for the years prior to year

2005 must be reclassified as general unsecured claims. To determine the estimated sales tax

assessed in the Ohio Claims, the Ohio DOT estimated that InPhonic made $1 million in taxable

sales in Ohio per month.   That amount was then multiplied by the effective tax rate for the

applicable time period to determine the estimated sales tax.

39.    Ohio asserts sales taxes in the approximate amount of $2,160,000 for the period

of January 1, 2002 through December 31, 2004.  The Ohio DOT has not supplied a calculable

basis for the use taxes assessed for the same time period; however, the amount is clearly

significantly overstated.  Consequently, not only are the estimates considerably inflated, the tax

claims from such timeframe are not entitled to priority status under section 507(a)(8)(A) of the Bankruptcy Code.

40.    As the underlying tax claims are not entitled to priority status for the period prior to year 2005, neither are the claims for any interest or penalties related thereto. *See In re Chateaugay Corp.*, 153 B.R. 632 (Bankr.S.D.N.Y. 1993) (holding that to qualify as a priority under section 507(a)(8)(G), a claim must be related to an underlying priority claim). Accordingly, Claim No. 1106 should be reclassified the extent it seeks priority status for sales and use taxes, and interest related thereto, for the period of January 1, 2002 through December 31, 2004.

### 2.    Penalties

41.    Section 507(a)(8) of the Bankruptcy Code grants priority to allowed unsecured claims of governmental units to the extent that such claims are for:

> a penalty related to a claim of a kind specified in this paragraph
> and in compensation for actual pecuniary loss.

11 U.S.C. § 507(a)(8)(G).

42.    In Claim No. 1106, the Ohio DOT alleges penalties in the amount of $2,299,837.71, and for Claim No. 1344, penalties in the amount of $14,937.00. The Ohio DOT has not supplied a calculable basis for its penalty calculations, but it is clear that the Ohio DOT assessed penalties equal to approximately 50% of the taxes assessed in the Ohio Claims.

43.    The penalties assessed in the Ohio Claims are invalid, because penalties can only be assessed for actual pecuniary losses. *See* 11 U.S.C. § 507(a)(8)(G). Ohio alleged no actual pecuniary loss. Moreover, the penalties assessed in the Ohio Claims, when compared to the total claim amounts of the Claims, clearly indicate that the penalties were assessed for punitive purposes, as opposed to actual pecuniary losses, in violation of section 507(a)(8)(G) of the

Bankruptcy Code.

### 3.    Interest

44.    In Claim No. 1106, the Ohio DOT alleges interest in the amount of $782,455.03, and for Claim No. 1344, interest in the amount of $2,279.27.  The interest assessed in the Ohio Claims is invalid, because the Ohio DOT has not supplied a calculable basis for its interest calculations and without any documentation supplied by the Ohio DOT to support the Ohio Claims, the Debtors cannot determine how the interest calculations were rendered.  *See Circle J Dairy,* 112 B.R. at 300 (holding that the *prima facie* validity of the claim does not attach unless the claim is in compliance with the rules, including 3001, and set[s] forth the facts necessary to support the claim).

45.    To the extent that the Court finds the Ohio Claims invalid pursuant to this Objection, so too should the Court find the interest related thereto invalid.  Further, to qualify as a priority under section 507(a)(8)(G), a claim must be related to an underlying priority claim. *See In re Chateaugay Corp.,* 153 B.R. 632 (Bankr.S.D.N.Y. 1993).  Therefore, to the extent that Claim No. 1106 is improperly classified as having priority status, the interest related thereto is not entitled to priority status.

### Conclusion

46.    In conclusion, the Debtors contend that the Ohio Claims are unconstitutional and invalid, and should be disallowed and expunged in their entirety.  If the Court, however, determines that the Debtors have a tax liability to Ohio for the Ohio Claims, the priority portion of that liability should be limited to the amount of taxes owed pursuant to actual sales made in Ohio and the limitations provided by the Bankruptcy Code.   In the event litigation is necessary to resolve the Ohio Claims, the Debtors respectfully request this Court to set the maximum

allowable claim amount and class for confirmation purposes.

## Notice

47.    This Objection will be served on (i) the Ohio DOT; (ii) the Ofice of the United States Trustee; and (iii) each person or entity requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that notice of this Objection is sufficient and that no further notice is necessary.

## No Previous Request

48.    No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully requests that the Court (i) grant the relief requested in this Objection, (ii) enter the proposed Order reducing or disallowing and expunging, and/or reclassifying the Claims set forth therein, and (iii) grant such other and further relief as is just and proper.

Dated: July 18, 2008

BAYARD, P.A.

By:    _____
Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
Daniel O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:    (302) 655-5000
Facsimile:    (302) 658-6395

- and -

{BAY:01063062v1}

**DLA PIPER US LLP**
Thomas R. Califano, Esquire
Christopher R. Thomson, Esquire
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:     (212) 335-4500
Facsimile:      (212) 335-4501

Counsel for Debtors