UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .
SN LIQUIDATION, INC., *et al.*,     .    Case No. 07-11666(KG)
                                    .    (Jointly Administered)
                                    .
                                    .    July 15, 2008
                                    .    11:00 a.m.
              Debtors.              .    (Wilmington)
                                    .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1           THE CLERK: Please rise.

2           THE COURT: Good morning, everyone.  Please be

3    seated, and thank you.  Ms. Augustine.

4           MS. AUGUSTINE: Good morning, Your Honor.

5           THE COURT: You're getting around much better, I

6    see.

7           MS. AUGUSTINE: Yes.

8           THE COURT: Good.

9           MS. AUGUSTINE: We have really only four items on

10   the agenda today.  The first, let's see, six, I believe, have

11   either been resolved, continued, or an order has been

12   entered.

13          THE COURT: Yes.

14          MS. AUGUSTINE: So that takes us to agenda item 7,

15   which is the Debtors' first omnibus objection.

16          THE COURT: Right.

17          MS. AUGUSTINE: This omnibus objection is to

18   reclassify claims that were filed either as secured or

19   priority claims to general unsecured claims.

20          THE COURT: Yes.

21          MS. AUGUSTINE: Most of the claims in this objection

22   were asserted by rebate claimants or employees over the cap

23   under 507.  There were six entities that, or individuals,

24   that responded to this objection.  Two of those were Andrew

25   Zeinfeld and Kenneth Schwarz, and we've been in discussion

1    with their counsel and agreed to continue the objection with

2    respect to those two parties to the August 20th hearing.

3              THE COURT: Okay.

4              MS. AUGUSTINE: We're hopeful we can resolve those

5    two objections.

6              THE COURT: Excellent.

7              MS. AUGUSTINE: There were three responses filed by

8    rebate creditors, and then there was one response filed by

9    Hire Strategy.  And if I may, I would like to discuss the

10   responses of the rebate creditors first?

11             THE COURT: That's fine, Ms. Augustine.  Sure.

12             MS. AUGUSTINE: Okay.  Georgia and Jim Ryan filed a

13   response alleging that they were entitled to a judgment for

14   their rebate claim.  We attempted to get their reasoning from

15   them and were unable to confirm any kind of judgment that

16   would be in their favor.  We also invited them to participate

17   in the hearing today, and I don't believe that they are here.

18             THE COURT: I don't see them on the telephone.

19             MS. AUGUSTINE: So because there's no showing that,

20   that the claim of the Ryans is entitled to priority, we'd

21   like to sustain our objection with respect to that claim.

22   And reclassify it.

23             THE COURT: And I did read the papers, and I read

24   the objections, and in the absence of any proof that their,

25   that a judgment was actually rendered in their favor, I do

1    think it is appropriate to reclassify the claims.  And I

2    will, I will approve your objection and enter the order as to

3    those rebate claimants.

4         MS. AUGUSTINE: Okay.  Thank you, Your Honor.  Then

5    we also have Mr. Hall, who's another rebate claimant.  And

6    his response was understandable.  He just wants his rebate.

7         THE COURT: Yes.

8         MS. AUGUSTINE: However, I don't know that that

9    speaks to the priority of the claim, and again, don't see how

10   it would raise to a priority level.  So that we would also

11   ask - -

12        THE COURT: Yes.

13        MS. AUGUSTINE:  - - Your Honor to reclassify that

14   claim.

15        THE COURT: And the Court certainly understands the

16   claimant's disappointment, if you will, with, with the

17   procedure, but clearly the rebate claim is a general

18   unsecured claim, and should be reclassified as such.  And

19   again, I will approve, approve the objection and enter the

20   order - -

21        MS. AUGUSTINE: Okay.

22        THE COURT:  - - as to the, as to Mr. Hall.

23        MS. AUGUSTINE: Okay.  Thank you.  The final rebate

24   claimant who filed a response I believe is Mr. Dabholkar.

25   And that was a clarification to make sure that there was a

1    claim for $160.  There was an $80 portion of priority and

2    unsecured.  The objection, the proposed order granting the

3    objection does maintain that amount, it just reclassifies

4    that $80 portion.

5             THE COURT: Yes.

6             MS. AUGUSTINE: So I think that that concern is

7    addressed, and then we would ask to reclassify that claim as

8    well.

9             THE COURT: And again I will sustain the objection

10   to, to that claim, as far as its classification is concerned.

11   And we will approve the order reclassifying it.

12            MS. AUGUSTINE: Thank you, Your Honor.  The last

13   response was filed by Hire Strategy.

14            THE COURT: Yes.

15            MS. AUGUSTINE: And Hire Strategy, again, we

16   contacted all of the respondents.  I don't believe that they

17   are here today.  They would like priority status for about

18   $28 thousand of their claim.  However 507(a)(4) of the

19   Bankruptcy Code does not grant them priority status.  It

20   generally grants priority status to individuals, not

21   companies, who contract with the Debtors.  And there is an

22   instance where a corporation with only one employee could

23   potentially gain priority status.  However, Hire Strategy has

24   not asserted that they fall into that classification, and

25   review of their website indicates that although they may be a

1    corporation, they certainly have more than one employee.    So

2    we would ask that the objection be sustained with respect to

3    Hire Strategy as well.

4                    THE COURT: And I did go back and look, looked at

5    the statute and looked at the claim and your objection, and I

6    agree with you that under the circumstances, the statute does

7    not provide for priority claim for this particular claimant,

8    and I will sustain your objection as to it's classification,

9    and we will reclassify it.

10                   MS. AUGUSTINE: Okay.   Thank you, Your Honor.

11                   THE COURT: Yes, Ms. Augustine.

12                   MS. AUGUSTINE: That would conclude that, any of the

13   responses to the first omnibus objection.

14                   THE COURT: Yes.

15                   MS. AUGUSTINE: We have a proposed form of order

16   that is identical to the one submitted with the motion except

17   for we've redacted Mr. Zeinfeld and Mr. Schwarz.

18                   THE COURT: Understood.

19                   MS. AUGUSTINE: So if I may approach?

20                   THE COURT: Please, please, Ms. Augustine.   Thank

21   you.   Thank you.   And I know that counsel are, is here for

22   the claimants who are being exempted, if you will, from this

23   order.   And I just want to confirm that they have been, if

24   you will, redacted from it.   And I guess we would look to the

25   exhibit for that.   Is that correct?

1          MS. AUGUSTINE: Yes, Your Honor.

2          THE COURT: Okay.

3          MS. AUGUSTINE: And counsel has reviewed the final

4    order.

5          THE COURT: Oh, wonderful.  Okay.  And I am going to

6    enter the order.

7          MS. AUGUSTINE: Thank you.

8          THE COURT: Thank you.

9          MS. AUGUSTINE: My colleague, Mr. O'Brien, will

10   present the second omnibus objection - -

11         THE COURT: All right.  Very well.

12         MS. AUGUSTINE:  - - which is agenda item 8.

13         THE COURT: Thank you, Ms. Augustine.

14         MS. AUGUSTINE:  Thank you, Your Honor.

15         THE COURT: Welcome.

16         MR. O'BRIEN: Good morning, Your Honor.

17         THE COURT: Good morning.

18         MR. O'BRIEN: Dan O'Brien of Bayard on behalf of the

19   Debtors.  The second omnibus objection seeks to disallow and

20   expunge claims that were duplicate claims, amended superceded

21   claims, claims that were late filed after the March 21st bar

22   date - -

23         THE COURT: Yes.

24         MR. O'BRIEN:  - - and claims that were filed

25   without any supporting documentation.  On July 1st the Debtors

1   submitted to Your Honor copies of the proofs of claim that

2   were filed without any supporting documentation.

3           THE COURT: Thank you for that.

4           MR. O'BRIEN: We received only one response to this

5   objection, and it was from the IRS.  And in the objection we

6   seek to disallow and expunge claims 2 and 3 filed by the IRS

7   as being amended and superceded by claims 42 and 1373 filed

8   by the IRS.  I contacted counsel to the IRS and, about their

9   response, and they indicated that they did not oppose entry

10  of the proposed form or order as originally filed.  They just

11  wanted to clarify that their claims have been amended as

12  opposed to amended and superceded or what have you.  But

13  they've reviewed the proposed form or order and they were

14  fine with entry of it as it is.

15          THE COURT: Good.

16          MR. O'BRIEN: So unless Your Honor has any

17  questions, we would respectfully request that the Court enter

18  the order sustaining the second omnibus objection.

19          THE COURT: Mr. O'Brien, I did have an opportunity

20  to review the claims and I am prepared to sustain the

21  objection.

22          MR. O'BRIEN: Thank you, Your Honor.  May I approach

23  with a. . .(microphone not recording).

24          THE COURT: Please, yes sir.

25          MR. O'BRIEN: Thanks.

1          THE COURT: Thank you.  I am signing the order.

2          MR. O'BRIEN: Thank you, Your Honor.

3          THE COURT: Okay.

4          MS. AUGUSTINE: All right.  Your Honor, the next two

5    items on the agenda are status conferences.

6          THE COURT: Yes.

7          MS. AUGUSTINE: One is regarding our much belabored

8    disclosure statement.

9          THE COURT: Yes.

10          MS. AUGUSTINE: And one is regarding the Icon

11    adversary.  The integral parties for these status conferences

12    are in the hall.  They are discussing some unresolved terms

13    of a term sheet for the Adeptio loan to fund the plan of

14    liquidation.

15          THE COURT: Okay.

16          MS. AUGUSTINE: So I'd like to ask Your Honor how

17    you'd like to proceed.

18          THE COURT: Well are you also having discussions

19    with the Icon claimants?

20          MS. AUGUSTINE: Well, Mr. Gwynne is really - - he's

21    not having discussions - -

22          THE COURT: That's right.

23          MS. AUGUSTINE:  - - but he's really, he's filed a

24    motion - -

25          THE COURT: He's taking the lead.

1          MS. AUGUSTINE:  - - to intervene and he's taking

2     the lead in that as well.

3          THE COURT: Okay.

4          MS. AUGUSTINE: So I, I can go out into the hall and

5     see if they're ready.

6          THE COURT: Why don't you, why don't you do that?

7     Before, and if necessary we'll take a short recess.

8          MS. AUGUSTINE: Okay.  I'll be right back.

9          THE COURT: Thank you, Ms. Augustine.  But they may

10    be ready, in which case we might as well proceed.

11         MS. AUGUSTINE: Okay.

12         MR. GLASSMAN: Sorry, Your Honor.

13         THE COURT: It's quite all right, Mr. Glassman.  I

14    was prepared to take a recess, and if need be, I still am.

15         MR. GLASSMAN: I - -

16         THE COURT: If you think a few more minutes - -

17         MR. GLASSMAN: I think Ms. Augustine is going to

18    suggest that we reorder some of the items, and then - -

19         MS. AUGUSTINE: Yes.

20         MR. GLASSMAN:  - - maybe we'll make progress in the

21    interim.

22         THE COURT: Okay.

23         MR. GLASSMAN: While you address the last one.

24         THE COURT: That will be fine.

25         MS. AUGUSTINE: Yes.  Perhaps we should proceed with

1  the last agenda item, which is the Icon status conference.

2          THE COURT: Yes.

3          MS. AUGUSTINE: And Your Honor had entered an

4  opinion with the form of order requesting a report on the

5  status of the stay - -

6          THE COURT: Yes.

7          MS. AUGUSTINE:  - - for that litigation.  And I

8  believe Mr. Gwynne would like to inform the Court of the

9  next, of the plan.

10          THE COURT: Okay.  And I think I also have a motion

11  for reconsideration.  And I don't know whether or not I've

12  received a response to that from the Committee thus far.  But

13  Mr. Gwynne will bring me up to date on that.  Thank you.

14          MR. GWYNNE: We did file a response, Your Honor.

15  There has been no reply, and therefore no notice of

16  completion of briefing.  But again, let me address that

17  first, then I'll address, I guess, our view, the Committee's

18  view of the status going forward.

19          THE COURT: Okay.

20          MR. GWYNNE: With respect to the motion for

21  reconsideration as I read it, Your Honor, it's basically, it

22  doesn't address what Your Honor did, it addresses what the

23  Icon folks want to believe the Court did.  For example, as I

24  read Your Honor's order, I understood the Court to be saying

25  that the Court did not need to address the standard

1    preliminary injunction factors because all the Court was

2    concluding was that the automatic stay did, in fact, apply.

3            THE COURT: Right.

4            MR. GWYNNE: The automatic stay is a statutory

5    injunction.  And if the stay applies, to enforce it, you

6    don't have to go out and establish preliminary injunction

7    factors, you already have an injunction by virtue of the

8    statute.

9            THE COURT: Yes.

10           MR. GWYNNE: As I read their motion for

11   reconsideration it says, Your Honor, you were wrong, you

12   didn't make finding, the four findings necessary for the

13   issuance of a preliminary injunction, therefore, we want the

14   Court to make additional findings under Rule 52 or reconsider

15   the preliminary injunction under Rule 59.  And I think that

16   Your Honor, I think it was an unfair motion in that it

17   doesn't even address what the Court did, which is why our

18   response was rather short and to the point.  So that's our

19   position with respect to that.  I don't know if the Icon

20   defendants plan on filing a reply or just resting on the

21   briefing as it is.  With respect to the status, Your Honor, I

22   believe that the purpose of the automatic stay is to maintain

23   the status quo.  We don't even have a plan confirmed yet.

24   When we do confirm a plan, and at that point, I think will be

25   the appropriate time to address whether the stay should still

1  apply in the context of the Liquidating Trust.  And I think

2  our answer will be, Yes it should, because there are still

3  competing claimants to the property of the estate, the

4  insurance proceeds, and the entity coverage.  The estate has

5  sent a notice of claims to the insurer to protect its

6  interest.  The automatic stay protects us from creditors like

7  Icon that are trying to get a leg up on the other creditors

8  who may share in those insurance proceeds.  And we think that

9  the purpose of the stay is to maintain the status quo, that's

10  what should happen.  And that I don't think we need to do

11  anything further on behalf of the estate to ensure that the

12  stay continues in full force and effect, unless the Icon

13  defendants do something to violate, something further to

14  violate the automatic stay.

15          THE COURT: Thank you, Mr. Gwynne.

16          MR. GWYNNE: And that's all I have on that, Your

17  Honor.

18          THE COURT: I don't know if Mr. Harker wishes - -

19  Mr. Harker.

20          MR. HARKER: Good morning, Your Honor.

21          THE COURT: Good morning.

22          MR. McMAHON: I believe my colleague Mr. Scott Rosen

23  is on the telephone.

24          THE COURT: I apologize.  Mr. Rosen, I do see your

25  name here.  You're on - -

1        MR. ROSEN (Telephonic): Thank you, Your Honor.

2   Scott Rosen for Icon.

3        THE COURT: Yes.  Good morning.

4        MR. ROSEN (Telephonic): Good morning.  My

5   understanding was that this was a status conference, and not

6   an argument on the motion to amend or make new findings of

7   fact.  So I really would prefer not to address that at this

8   point, and reserve whatever rights we may have to argue that

9   if the Court wants to have argument on it.

10       THE COURT: That's fair enough.  And I apologize.

11  I've been on the road a little bit.  I have not had an

12  opportunity to read your response.  Or I should say the

13  Committee's response.  And will you be filing a reply?

14       MR. ROSEN (Telephonic): It is not our intention to

15  file a reply.

16       THE COURT: Okay.  Then let me do this.  I will look

17  at your papers today or tomorrow.  And I will notify counsel

18  whether or not I think I need oral argument.  But you are

19  quite correct, this was not the, the time.  I appreciate Mr.

20  Gwynne's comments.  This was not the time for argument on the

21  motion, or the response, and I think having heard from Mr.

22  Gwynne on the substance, I certainly should afford you an

23  opportunity to make an argument.  So I will schedule argument

24  on this.

25       MR. ROSEN (Telephonic): Thank you, Your Honor.

1            THE COURT: Mr. Gwynne.

2            MR. GWYNNE: I was going to say, Your Honor, it

3    might just be more efficient for the Court's time, and

4    everyone else's if they just file a reply, and they could

5    include any arguments to what I've said here today.

6            THE COURT: Well, Mr. Rosen?

7            MR. ROSEN (Telephonic): Uh - -

8            THE COURT: I'm not, I'm not going to insist that

9    you file a reply.  But it might expedite things if you did.

10           MR. ROSEN (Telephonic): I will file a reply.

11           THE COURT: Okay.  How much time would you like for

12   that?  A week?  Two weeks?  I'm not trying to rush you here.

13           MR. ROSEN (Telephonic): Two weeks would be

14   appreciated.

15           THE COURT: Okay.  So we will say two weeks from

16   today your reply will be due.  And then I can decide whether

17   or not I even need oral argument.  And I will notify you

18   promptly.

19           MR. ROSEN (Telephonic): Thank you.

20           THE COURT: Thank you, Mr. Rosen.

21           MR. ROSEN (Telephonic): With respect to the

22   automatic stay issue.

23           THE COURT: Yes.

24           MR. ROSEN (Telephonic): My understanding from Your

25   Honor's decision was that Your Honor was of the belief that

1    the automatic stay, while it does preserve the status quo, is

2    not intended to do so indefinitely or in some open ended

3    fashion.  And that the purpose of today's status conference

4    was for the Debtor, Debtors and the Committee to inform the

5    Court of what, if any progress they've made toward, in some

6    sort of end game with respect to the Icon action.  I haven't

7    heard anything other than that the Committee would simply

8    like to keep the stay in effect indefinitely.  I don't

9    believe that's, that's where the Court intends this to go.  I

10   would ask if the Court would perhaps ask the Committee to

11   clarify that.

12          THE COURT: I think I understood the Committee to

13   say that the stay, in its view, should remain in effect at

14   least until plan confirmation.  That is, Mr. Gwynne, am I

15   correct?  That is your position, at least until that date?

16          MR. GWYNNE: Well, Your Honor, yeah.  I think that's

17   the effect of the Bankruptcy Code - -

18          THE COURT: Yes.

19          MR. GWYNNE:  - - unless Icon were to file a motion

20   to seek relief from stay - -

21          THE COURT: Correct.

22          MR. GWYNNE:  - - and then we would address it in

23   that context.  Otherwise it continues.  And I think because

24   this is a, you know, a liquidating case, the Debtor doesn't

25   get a discharge, but the discharge is not technically denied

1    under the statute, and the stay can continue under the plan

2    to protect creditors from going after the assets that will

3    then be in the Liquidating Trust.  Otherwise it would be

4    another free for all.

5         THE COURT: Yes.

6         MR. GWYNNE: But that issue, we'll address at

7    confirmation.

8         THE COURT: Correct.

9         MR. GWYNNE: Yeah.

10        THE COURT: So that is their position, I think, Mr.

11   Rosen.  That the stay should remain in effect at least until

12   plan confirmation.  And then depending upon what happens

13   then, we'll see what the future course would be.  Now you may

14   want to address that in your reply.

15        MR. ROSEN (Telephonic): Yes.  And, and I also note

16   that Your Honor did invite Icon to file a motion for relief

17   from stay if Icon thought it was appropriate.

18        THE COURT: Yes.

19        MR. ROSEN (Telephonic): And we will be considering

20   that also.  Although at this point I don't want to commit one

21   way or, or the other.

22        THE COURT: And I'm certainly not asking you to.

23   You just, but it would be helpful, I think, if at the very

24   least you indicate in your reply what your plans are with

25   respect to a motion for relief from stay.

1          MR. ROSEN (Telephonic): I will do that.

2          THE COURT: Okay.  Thank you, Mr. Rosen.

3          MR. ROSEN (Telephonic): Thank you, Your Honor.

4          THE COURT: You're welcome to remain on the phone or

5     to be excused at this point.

6          MR. ROSEN (Telephonic): Will the conference be

7     continuing as to the disclosure statement status hearing?

8          THE COURT: Yes.

9          MR. ROSEN (Telephonic): I would like to stay on.

10         THE COURT: Okay, sir.  You're welcome to.  Thank

11    you.  Mr. Glassman.

12         MR. GLASSMAN: Good morning, Your Honor.

13         THE COURT: Good morning.

14         MR. GLASSMAN: Neil Glassman of Bayard for the

15    Debtors.  I'd like to address now, Your Honor, the status of

16    the disclosure statement, and in that regard, it's good

17    news/bad news.  Mostly good news, frankly.  The, the good

18    news is relative to the plan confirmation process is that we

19    have pretty much determined that we think that we can bring

20    the priority claims in in an amount which allows us to do a

21    plan.  With the $500 thousand of funding to come from Versa,

22    Adeptio, Simplexity, which ever of the affiliates is to

23    provide.  And that is a bit of a moving target as well.  We,

24    we're pretty sure that we can, and in that regard we may,

25    we're going to have to file some claim objections and some

1   motions to estimate, but we think we can get there.

2          THE COURT: Okay.

3          MR. GLASSMAN: And so what does that leave open?

4   Well, we had a few open issues in the disclosure statement

5   the last time we were in front of you.  One, of course, was

6   whether or not Adeptio was going to get a release and be

7   exculpated.  Another open issue was whether or not Adeptio

8   has to provide the, and by Adeptio I'm referring to any one

9   of the affiliates.  I'm not trying to speak as artfully as

10  perhaps I should.  The, another open issue was the timing of

11  the provision of the, the up to half million dollars for the

12  priority claims.  And also the terms and conditions for the

13  funding of a senior loan to the Trust.  Against a backdrop of

14  negotiating all those issues, I happen to think that the

15  parties have made pretty good process, although they haven't

16  come as far as they, as far as I had hoped.  The other open

17  issue we had in terms of the disclosure statement was whether

18  or not we were going to reject the indemnification

19  obligations.  We have decided not to reject them, and to play

20  it conventionally the way things are, are done at least in

21  terms of the art form these days.  And as to the status of

22  the negotiations, I don't want to get into the bid and the

23  ask, but we pretty much got to the point of saying to

24  Adeptio, Fine, you can have, assuming there's a deal and

25  everything, we're okay with third party releases.  And here

1    I'm reserving rights for the US Trustee, Mr. Schepacarter

2    isn't here.

3              THE COURT: Understood.

4              MR. GLASSMAN: We certainly understand that he may,

5    that office may have issues with whatever releases whenever

6    we get to confirmation.

7              THE COURT: And of course I'm not deciding that

8    today.

9              MR. GLASSMAN: Not at all.  But you're, not at all,

10   Your Honor.  But we had pretty much got to the point of

11   saying to Adeptio, If you pay for it, pay for the

12   solicitation costs, asking for releases which are in an opt

13   out nature, where a creditor can check a box to opt out of

14   the release, we were okay with that, assuming your agreement

15   on everything else.  It's the everything else at this point.

16   And the disagreement, I will tell you, in by and large, while

17   it may have economic consequences, they're pretty much non-

18   economic issues.  It's terms and conditions of the loan,

19   things like that.  I, and the terms of the senior loan are

20   being negotiated between the Committee and Adeptio's counsel,

21   so I will let them address that.  Where I'm trying to go is

22   is we're at a point where a little bit more negotiation might

23   help, or Your Honor can just answer some questions today,

24   five days from now, seven days from now, that's end of the,

25   and this is really tripartite here.  Mr. Brady's here for

1   Adeptio.

2          THE COURT: Yes.

3          MR. GLASSMAN: I think Mr. Agay is on the phone - -

4          THE COURT: Yes.

5          MR. GLASSMAN: - - as well.  Mr. Gwynne is here for

6   the Committee.  I think Mr. Gwynne would like to just go

7   forward today.  We just want a resolution, the Debtor just

8   wants a resolution.  And that's sort of where we are, if that

9   makes sense.  But we are - -

10          THE COURT: What makes sense is there are some

11   matters still to discuss, I think.

12          MR. GLASSMAN: That's correct, Your Honor.

13          THE COURT: And I guess Mr. Gwynne wants to take

14   those up with the Court.  Is that right?

15          MR. GWYNNE: Your Honor, we have had, just like

16   earlier in this case, lengthy discussions with Adeptio on all

17   the disclosure statement issues.  The third party release,

18   you name it.  All of their revisions.  We have also had

19   lengthy discussions regarding the term sheet for the $500

20   thousand loan to fund the investigation and litigation of the

21   Liquidating Trust.  I am of the view that having been part of

22   all those discussions - - and Ms. Augustine was on, with me

23   recently, towards the end of last week, I think on Friday we

24   had our last discussion - - that we're at an impasse, and

25   I'm, I believe that it would be better for the estate to

1    simply raise the issues with Your Honor, Your Honor make a

2    ruling, the parties live with the terms, and then we can get

3    on with the disclosure statement.  Rather than coming back

4    again when it's not like we haven't had discussions, Your

5    Honor.  And there are a couple points on which we have been

6    unable to reach an agreement.  And I know we're not going to

7    change our view, and I'm pretty confident that Adeptio's not

8    going to change its view.  And rather than continue the

9    hearing, and come back again, and create further

10   administrative expense claims, I just think it makes sense to

11   tee up the few minor issues, we can hand up Your Honor the

12   different versions of the term sheet, it's only a couple

13   pages, and talk about what Your Honor thinks is appropriate.

14   I think just like the way Your Honor resolved the issue

15   earlier in the case that Your Honor's involvement would be

16   helpful.  I don't think we would have had a settlement in

17   this case if Your Honor was not involved earlier.  And I

18   think that's the situation here too.  I think sometimes when

19   the judge says something as opposed to opposing counsel, it

20   means more to, to a party.  And that, I think that's just

21   going to be the only way to get it done.  That's why I'm in

22   favor of doing that.  I won't get into the specifics, because

23   I assume you want to hear first from Adeptio about what it

24   would like to do.

25            THE COURT: What it would like to do, and

1   particularly I'm sensitive to the fact that this was noticed

2   as a status conference, and I don't know whether or not - -

3          MR. GWYNNE: (Microphone not recording.)

4          THE COURT:  - - the parties are both, both parties

5   - -

6          MR. GWYNNE: Yes.

7          THE COURT:  - - agree, then certainly that would

8   make a difference to me.

9          MR. GWYNNE: Yeah.  I totally agree with that, Your

10  Honor.  And if Adeptio doesn't want to go forward, and Your

11  Honor, therefore doesn't want to, that's fine as well.  But

12  when I discussed it last week on the conference call with Mr.

13  Agay and Ms. Augustine, and said, Hey, I think we ought to do

14  this, this makes sense, I believe Mr. Agay was okay with

15  that.  Now I don't know if things have changed between now

16  and then, but my understanding was that's what we were going

17  to do.

18         THE COURT: Okay.

19         MR. GWYNNE: As of our call on Friday.  But I don't

20  know if that's still the case.

21         THE COURT: Mr. Brady or Mr. Agay?  Who wants to be

22  heard?  Mr. Brady, good morning.

23         MR. BRADY: Good morning, Your Honor.  Robert Brady

24  on behalf of Adeptio.  And Mr. Agay is on the phone.  Mr.

25  Agay has been conducting the primary negotiations on behalf

1    of Adeptio with Mr. Gwynne and with Mr. Glassman and his

2    colleagues, so to the extent we get into that, Mr. Agay is

3    better suited to respond.  You know, to the extent that the

4    Court is interested in getting involved in this, obviously we

5    would take the Court's lead on that.  My concern is really

6    how this is teed up, in the sense that I saw a revised term

7    sheet last night.  I'm not sure if the parties have had

8    sufficient time to talk about our comments to the, the term

9    sheet.  But my sense is it would be helpful, more helpful to

10   the Court, and perhaps the parties, if we understood exactly

11   what the issues that still remain are between the parties.

12   What their respective positions are.  And then, perhaps, it

13   would be an appropriate time to seek the Court's guidance on

14   some of these issues.  I'm just concerned now that, that

15   while it's taken longer, I'm sure, than everyone would have

16   liked, you know, some additional time for the parties to try

17   to walk through this with an understanding that if they can't

18   walk through this the Court may choose to become involved and

19   provide the parties some guidance.  I just, I'm afraid today

20   it's not been properly teed up, having just been noticed as a

21   status conference.

22          THE COURT: Okay, well - -

23          MR. AGAY (Telephonic): Your Honor, may I add to

24   that?

25          THE COURT: You may, Mr. Agay, yes sir.

1           MR. AGAY (Telephonic): I apologize for not being

2    there is person.

3           THE COURT: It's quite all right.

4           MR. AGAY (Telephonic): Thank you very much.  I,

5    like Mr. Brady said, if the Court is inclined to take a look

6    at the term sheet and provide guidance, you know, we don't

7    object to that.  But as we sit here today when Mr. Gwynne

8    says we're at an impasse, I don't know what we're at an

9    impasse about.  We got a revised term sheet from the

10   Committee and the Debtor yesterday.  And we gave them

11   comments back yesterday afternoon.  We have not heard from

12   them since.  I will tell you that the comments we gave them

13   are of a technical nature.  They're not around economics.

14   And you know, I think it would be useful, as Mr. Brady said,

15   for the parties to have a conversation around what the open

16   points are to see if we can resolve it, or at a minimum

17   further narrow it.  I would add to that, Your Honor, that it,

18   it is good to hear that from the Debtors' perspective, and I

19   don't know if the Committee echoed this, that they believe

20   we've reached resolution on the disclosure statement.

21   Unfortunately, while we've had discussions, we haven't seen

22   the next turn of the disclosure statement.  So even if we

23   resolved issues on the term sheet today, you know, it,

24   unfortunately, we have to take a look at the revisions of the

25   disclosure statement per our, the concerns we heard at, you

1    know, we raised at the last hearing.  Lastly, I'd just make

2    the point, Your Honor, that this is a term sheet.  It's not a

3    final loan document.  You know, our view is it's subject to

4    definitive loan documentation, and I don't know that anybody

5    disagrees with that.  So, it's not as if, you know, the Court

6    today would be making a decision on the final document before

7    the money starts flowing.  Obviously there are other hurdles

8    that the estate has to get over.  For example, reducing the

9    priority claims and confirming a plan before that occurs.  So

10   I just make those points, and then, you know, hereafter we'll

11   just follow the Court's lead on this.

12         MR. GWYNNE: Your Honor, if I may just add a few

13   comments.  This is the term sheet.  Two pages.  You can see

14   the dark is the black lining.  There's not that much there,

15   and what I understand Mr. Agay is saying is he doesn't want

16   Your Honor to make a ruling today, and that's fine.  I think,

17   though, it would be helpful if we went over the issues, and

18   Your Honor just gave us your wisdom or guidance.  You don't

19   have to make a ruling on what the terms are going to be.  I

20   think if you were to do that, we could have this resolved

21   today or tomorrow on our own.  But without, I think, at least

22   some guidance, I think it's going to be harder.  Much like

23   earlier in the case, Your Honor didn't say you have to settle

24   on these terms, Your Honor gave us your wisdom as to what

25   might be reasonable, and that's what the parties ultimately

1  agreed to.  So I think if Mr. Agay would be okay with us

2  discussing these issues with Your Honor today, and just get

3  some guidance from the Court, non-binding.  We could even do

4  it off the record, if Your Honor wanted, just so that the, I

5  think that type of intervention might help the parties

6  resolve this on their own.  Understanding that nothing today

7  is binding on any of the parties.

8          THE COURT: Understood.  Mr. Glassman, did you want

9  to add something before I give my - -

10          MR. GLASSMAN: Only, Your Honor - -

11          THE COURT:  - - view.

12          MR. GLASSMAN:  - - that at some point, to put in

13  context, the reason why we've got a bit of a chicken and egg

14  problem is because the notion of getting an, of soliciting

15  third party releases for Adeptio is present.  Because of

16  that, we need to reach agreement on everything else.  Absent

17  that, we could let a lot go to confirmation, including the

18  terms and conditions of the - - and have, have Your Honor

19  rule at that time.  So just to put it all in context, that's

20  the reason why we're sort of in the box that we're in right

21  now.  Having said that, I really agree with everything that

22  Mr. Agay said, and that Mr. Gwynne said, and that Mr. Brady

23  said.

24          MR. GWYNNE: Good Debtors' counsel.

25          MR. GLASSMAN: But we, but we need help from the

1   Court.

2          THE COURT: Okay.

3          MR. GLASSMAN: Whether, whether Your Honor gives us

4   a little guidance today, or you give us a drop dead date at

5   which point you're going to rule or force us back - - and by

6   force I literally mean to use that verb - - into one room.

7   And how you do it is, is, I just don't want it to go too

8   long.  That's all.

9          THE COURT: No, I, Mr. - -

10         MR. AGAY (Telephonic): I would just add, Your

11  Honor, I don't know that we need help, but if the Court is

12  inclined to give it, again, we'll follow your lead.

13         THE COURT: Well is this, my only question is I

14  would want everyone to be in agreement that this is the time

15  for me to be giving my guidance.

16         MR. AGAY (Telephonic): Your Honor, as you heard - -

17         THE COURT: And I, and I know that you indicated,

18  Mr. Agay, that you might, it might be helpful for there to be

19  just a little bit more discussion.

20         MR. AGAY (Telephonic): I do believe that's the

21  case.

22         THE COURT: And I would, I would be prepared to

23  defer to that for a brief period of time.  Tell me what

24  you're talking about in terms of some more discussion.  Are

25  you talking about - -

1            UNIDENTIFIED SPEAKER: Your Honor - -

2            THE COURT:  - - a half an hour?  Are you talking

3      about - -

4            MR. AGAY (Telephonic): I, I frankly think it's a

5      half hour discussion, Your Honor.

6            UNIDENTIFIED SPEAKER: Ten minutes.

7            MR. AGAY (Telephonic): I don't think it's a long

8      discussion.

9            THE COURT: Then why don't we do this?  Mr. Glassman

10     - -

11           MR. GLASSMAN: No, no, Your Honor's - -

12           THE COURT: I was going to say, you know, I have a

13     little bit of time right now.  Why don't I give you a little

14     bit of time.  I'll take a recess.  I'll go back into

15     chambers.  And then when you're ready, and everyone agrees

16     that this is a good time for me to take a look at your term

17     sheet, and to give some guidance, I'd be prepared to that.

18           MR. AGAY (Telephonic): Sure.

19           THE COURT: Okay.

20           MR. GWYNNE: Your Honor, can we talk in the

21     courtroom?

22           THE COURT: You may.

23           MR. GWYNNE: If we can do that, I'm sure Mr. Agay

24     may want to make sure that it's - -

25           MR. AGAY (Telephonic): Yeah.  No, that's fine.  And

1    so long as we can do it off the record.

2         THE COURT: This will be off the record, and I won't

3    - - unfortunately or fortunately, you know, we do have a way

4    to listen in chambers, but I will not be doing that.  I give

5    you my word.  Okay?  We'll turn it down, I won't listen, and

6    you can feel free to talk very candidly with one another.

7         MR. GLASSMAN: Thanks for letting us know you - -

8         THE COURT: Now I don't know to what extent you want

9    to do this in front of other people in the courtroom, or I

10   would also offer you the opportunity to come into chambers

11   and to use the conference room.

12        MR. GWYNNE: Your Honor - -

13        MR. AGAY (Telephonic): It doesn't matter to me,

14   Your Honor.

15        MR. GWYNNE: Yeah.  It doesn't matter.

16        THE COURT: It doesn't matter.  Okay.  All right.  I

17   didn't know how sensitive it might be.  Let's do that.  Let's

18   take a recess, and you'll let me know when you're ready.

19        UNIDENTIFIED SPEAKER: Thank you, Your Honor.

20        THE COURT: All right?  Thank you.

21   (Whereupon at 11:38 a.m. a recess was taken in the

22   hearing in this matter.)

23   (Whereupon at 12:15 p.m. the hearing in this matter

24   reconvened and the following proceedings were had:)

25        THE CLERK: Please rise.

```
 1              THE COURT: Thank you, counsel.  Please be seated.

 2    At your convenience.

 3              MR. GLASSMAN: Thank you, Your Honor.

 4              THE COURT: Mr. Glassman.

 5              MR. GLASSMAN: Good news, with, with exception.

 6              THE COURT: Yes.

 7              MR. GLASSMAN: One provision of the term sheet.  The

 8    Committee and Adeptio have reached agreement on the balance

 9    of the term sheet, and it is with respect to that one

10    provision that your guidance is sought.  The provision is, I

11    believe the very last one in the term sheet relative to the

12    execution of additional documentation.  And maybe what I

13    should do is, since I'm not really party to this, either Mr.

14    Agay or Mr. Gwynne, and Mr. Gwynne is standing up, so I'll

15    let him go.  But I'm sure Mr. Agay will jump in.

16              THE COURT: I'm sure Mr. Agay will, and Mr. Gwynne

17    is not shy.

18              MR. GWYNNE: Thank you, Your Honor.  Kurt Gwynne on

19    behalf of the Committee.  And Your Honor, I understand you

20    have a copy of the term sheet.

21              THE COURT: I do.  And I think we're looking at the

22    last term.  Miscellaneous.

23              MR. GWYNNE: The last, that's right.  The last

24    provision.  And what I'd like to do, Your Honor, is describe

25    first the dispute as I see it on this provision, and why we,
```

1    why it's unacceptable in this case, and what I propose would

2    be acceptable, and at the end what I think would be an

3    acceptable fix.  Your Honor, this is a term sheet.  I

4    recognize that.  I recognize that term sheets, you know, DIP

5    loan term sheets, exit financing term sheets, often, if not

6    always or nearly always, have a provision like this.  I

7    understand that.  This is not that case.  This isn't a DIP

8    loan agreement, this is not an exit financing agreement.

9    This is a loan that is being made pursuant to a settlement,

10   settlement agreement that's already been reached between the

11   parties.

12              THE COURT: Okay.

13              MR. GWYNNE: And it's, this is not a situation where

14   Adeptio, for example, is a voluntary lender.  I've had the

15   pleasure of dealing with Adeptio in this case from the first

16   week in, and I think Adeptio is very aggressive, and they

17   have every right, it's a very successful company largely

18   because of that.  But Your Honor, I don't want to leave a

19   crack open in the door, because they'll blow through it with

20   provisions that we haven't agreed to, and that end up

21   exceeding the scope of the deal.  And I think when I go

22   through, for Your Honor, the term sheet that was approved by

23   Your Honor, and then the terms that we have actually agreed

24   to, I think you'll see the Committee has been reasonable and

25   accommodating to Adeptio in agreeing to provisions that

1   weren't in any way required by the settlement agreement that

2   was reached by the parties.  I'd like to describe what I see

3   to be the problem with this provision, now, a little more

4   specifically.  And then I'd like to go through, Your Honor,

5   why I think it's not needed, which requires me to go through

6   a little bit of what's already been agreed to.  This

7   provision says this term sheet is subject to definitive loan

8   documentation which shall - - and I understand as, as Adeptio

9   wants it to read which would say, Which shall contain such

10  other terms and conditions which are consistent with the

11  settlement term sheet, this term sheet, and the plan.  I

12  believe Adeptio is okay with taking out the customary for

13  loans of this nature.  It may be not, since we didn't reach

14  an agreement, it may be Adeptio's position that they want

15  that back in there.  So I think you can consider it either

16  way.

17          THE COURT: Okay.

18          MR. GWYNNE: But from our perspective, Your Honor,

19  that's a problem because if this provision said, This term

20  sheet is subject to definitive loan documentation period, we

21  could live with that.  It's the, the pending clauses that

22  follow that are the problem because all they require is that

23  these other terms and conditions, which we don't know what

24  they are, that they are consistent with the settlement

25  agreement term sheet, this term sheet, and the plan, and may

1    be customary if they're still pushing that issue.  But there

2    can be something that's not contemplated by the original

3    settlement.  It's not contemplated by this term sheet.  It's

4    not contemplated by the plan.  And therefore, it's not

5    inconsistent with them, because they don't deal with it in

6    any way, shape, or form.  I would have been okay with the

7    provision that either has a period in this case after loan

8    documentation, in the beginning.  Just said, This term sheet

9    is subject to definitive loan documentation.  So everyone's

10   rights are reserved with regard to new provisions.  Or I

11   would have been okay with a dependent cause that said, Which

12   contains such other terms and conditions as are consistent

13   with the settlement agreement term sheet, this term sheet,

14   and the plan, and that do not go beyond the provisions of

15   those documents.

16          THE COURT: I - -

17          MR. GWYNNE: That's the, the, you know, Your Honor,

18   if it's consistent with what's already been agreed to, and

19   doesn't go beyond it, the Committee has no problem with it.

20   That's our deal.  If it is consistent, because it wasn't

21   contemplated, so therefore you can't argue it's inconsistent,

22   but it's something totally new, that's a problem.  And we

23   don't want to agree to a term sheet that now has changed the

24   deal and leaves open that window for Adeptio, because I have

25   no doubt they'll come crashing through.  Your Honor, may I

1    approach for a second with a copy of - -

2            THE COURT: Yes.

3            MR. GWYNNE: This was the order approving the

4    conformed term sheet.

5            THE COURT: Okay.  Thank you.

6            MR. GWYNNE: I did give Mr. Brady a copy.  I don't

7    know if Mr. Agay has one.  But I'm only going to read a very

8    small provision anyway.  In the term sheet itself, Your

9    Honor, the settlement term sheet, which is after the order.

10           THE COURT: Yes.

11           MR. GWYNNE: There's a bullet point that says,

12   Investigation Litigation and Wind Down Funding.

13           THE COURT: Yes.

14           MR. GWYNNE: Third line up from the bottom there.

15   After it says $500 thousand, the amount of the loan.  It

16   says, In accordance with the terms set forth below.  Well the

17   only terms that were agreed to in here and that were set

18   forth below were things like, it's a first priority loan.

19   It's first priority.  It gets paid first out of the proceeds.

20   And that we won't, we won't, we won't assert, use that money

21   to assert claims that have been released, and we won't use

22   that money to assert claims that have been purchased by

23   Adeptio.  Those were the terms and interest, as Your Honor

24   ordered interest at the lowest rate allowed by Federal Law

25   not to make the loan a gift.  Those were the terms that were,

1    that were agreed to.  There's nothing in that document that

2    says, And such other terms as Adeptio may require as it

3    believes are customary, or as Adeptio believes are consistent

4    with the settlement agreement.  Now at the same time I

5    realize, Your Honor, that that's not a loan document either.

6    And that just because we have a settlement agreement doesn't

7    mean we're not obviously going to have a loan document.  But

8    if Adeptio wanted to add terms to it, they should have been

9    in the settlement agreement.  Now not withstanding that, I

10   want to go over provisions in Adeptio's draft term sheet that

11   the Committee has agreed to, and that weren't contemplated

12   before, but nevertheless the Committee agreed to them.  And I

13   think it will show A, the Committee's been very reasonable in

14   the process, and B, that Adeptio has every provision that it

15   needs to make the loan that's required in this case.  And

16   again, this is not DIP financing or exit financing.  It's not

17   a voluntary loan situation where they can stick in whatever

18   provisions are acceptable to the lender in its reasonable

19   discretion like loan term sheets say.  They're required to

20   make this loan under a settlement that's been approved.  In

21   the, if you look at Adeptio's term sheet, Your Honor, you'll

22   see in the lender, definition of lender.  It says in there

23   that the lender will be Adeptio INPC Funding, LLC or it's

24   designee.  And by the way, Your Honor, there are provisions

25   that we've been agreed to, and I think at the end, maybe I

1    should have done that at the beginning, but I think at the

2    end, after we get past this issue, we can explain to Your

3    Honor what's been agreed to in the term sheet, subject to our

4    client's approval.  So we're, no one's bound here today by

5    what we've agreed to.  We're going to take it back to our

6    clients.

7         THE COURT: Okay.

8         MR. GWYNNE: But Adeptio or it's designee.  And our

9    settlement agreement says Adeptio INPC Funding, LLC will make

10   the loan.  But the Committee, being reasonable, said to

11   Adeptio, if you want to set up another entity to make the

12   loan, we're okay with that, provided that it's adequately

13   funded.  And we've worked out language now that, that covers

14   that revision.  But that's the instance, Your Honor, where

15   they wanted a provision that was beyond what was in the

16   settlement agreement, the Committee agreed to it.  The

17   purpose of the loan as set forth in the term sheet.  The

18   purpose, you know, and the use of the funds there to

19   investigate and commence and prosecute litigation under the

20   Litigation Trust.  The security is described in the term

21   sheet.  That Adeptio will have a senior secured, first

22   priority lien on all its existing and after acquired tangible

23   and intangible assets and property.  The - - and by the way,

24   it refers to avoidance actions in here.  They've all been

25   released, but Adeptio referred to it to, you know, to avoid

1    having to make another change if they think there's some

2    there that we can assert that they have a lien on, they can

3    have a lien on it.  But Your Honor approved a release of

4    them.

5              THE COURT: Right.

6              MR. GWYNNE: The security is described, as I

7    mentioned.  The interest rate, which is already specified in

8    our term sheet here is just fleshed out with references to

9    the specific statutory provisions, and an example of that

10   rate, what the monthly rate was in June, 2008.  The

11   borrowings.  In our settlement agreement, there was no

12   provision that said we couldn't ask to borrow all 500

13   thousand on day one when the Trust was set up.  But, as an

14   accommodation to Adeptio, the Committee agreed that they

15   would just make the loans from time to time when the money

16   was needed, instead of funding it all up front.  And that

17   they'd have two business days after each loan request to fund

18   the loan.  That we cannot request advances more frequently

19   than two times per month.  None of - - sorry.  Someone's

20   shooting.

21             THE COURT: That's all - - it sounded like it.

22             MR. GWYNNE: None of, none of that - -

23             THE COURT: Here come the marshals.

24             MR. GWYNNE: None of that was in the settlement

25   agreement.  There's a limit in the borrowing paragraph that

1    the Committee, I'm sorry the Liquidation Trust will have 12

2    months to draw on the 500 thousand.  Again, it's not a

3    provision of our settlement.  The Committee trying to be

4    reasonable, accommodating, agreed to it.  The loan payment

5    terms.  Well those are obvious from the fact that it is a

6    senior, first priority loan.  But nevertheless, they're set

7    forth here in detail in the loan payment paragraph.  And then

8    we have conditions precedent to the loan.  And these are

9    fine, because these are things that I think are implied in

10   the settlement agreement.  Like that there's going to be an

11   order confirming a plan, otherwise we don't have a

12   Liquidating Trust.  That there's evidence of the formation of

13   the Liquidating Trust.  That we deliver to the lender non-

14   binding, good faith estimated projection of draws under the

15   loan.  Not required by the settlement agreement, but a

16   condition precedent the Committee agreed to to be reasonable.

17   And fourth, the execution and delivery to the lender of loan

18   documents evidencing the loan.  And that's consistent with

19   this term sheet.  That's why opening a loop hole, giving

20   Adeptio a crack is, is not acceptable.  And the

21   representations and warranties, due formation of the Trust,

22   authority to enter into the loan documents, validity and

23   binding nature, those are things that are obviously implied

24   in the term sheet.  Affirmative covenants.  Things, again,

25   that were not required by the term sheet.  Delivering,

1    delivering periodic reports of the borrowers activities to

2    Adeptio, I guess, or it's designee.  The payment and

3    performance of obligations agreed to consistent with the term

4    sheet, and compliance with laws that have a material affect

5    on repayment of the loan.  Negative covenants.  Borrower will

6    not make distributions of proceeds to its beneficiaries prior

7    to payment in full of the loan and accrued and unpaid

8    interest.  I don't think we need that, but we agreed to it.

9    It's a first priority, senior secured loan.  It's obvious it

10   gets paid first.  That's consistent.  We agreed to it.  In

11   the negative covenants, that we will not incur any

12   indebtedness or grant a lien that is senior or *pari passu*

13   with the loan.  That to me is covered by the term sheet.

14   Again, it's a first priority, senior loan.  We agreed to it

15   because it was not inconsistent with the term sheet.  The

16   events of default.  Conversion to the bankruptcy case,

17   Chapter 7.  That's now been changed to say, And termination

18   of the Litigation Trust, because you could have a conversion

19   that didn't - -

20            THE COURT: Right.

21            MR. GWYNNE:  - - affect the Litigation Trust.

22            THE COURT: Right.

23            MR. GWYNNE: We've agreed to that language - -

24            THE COURT: I wondered about that.

25            MR. GWYNNE: Yeah.  We've agreed to that language,

1    but Your Honor, again, there's nothing in the settlement

2    agreement that says that that's a default or that that's a

3    basis for them to, to not make the loan or to call the loan.

4    Waiver of jury trial, submission to jurisdiction, Delaware

5    law governing.  No problem.  The Committee agreed.  So we

6    have a lot of provisions, including those last ones which are

7    miscellaneous provisions.  I asked Mr. Agay, and I ask him

8    again, what other miscellaneous provision do you need?  What

9    do you not have for this type of loan?  Tell me what you

10   need, and we can add it to the list.  Mr. Agay says he can't

11   tell me what these other miscellaneous provisions are.  That

12   Your Honor, gives me the greatest pause of all.  Agreeing to

13   something with Adeptio that would let them add other

14   provisions that they would say are consistent, because

15   they're not prohibited, or that they may consider customary.

16   But that the, where the Committee would oppose that - - the

17   important thing from our standpoint, Your Honor, is this,

18   we're not negotiating with GE for a DIP loan where they can

19   put those type of provisions in.  We have an agreement.  And

20   we don't want to open up the window for Adeptio to add

21   provisions that we haven't agreed to.  And that's why that

22   provision is not acceptable.  As I mentioned, I think it

23   would be acceptable to put a period after the words, loan

24   documentation, or to make it clear that any additional terms

25   not only had to be consistent, but that they wouldn't go

1    beyond what has already been agreed to.  The Committee has

2    done that, consensually.  We've gone beyond the terms of the

3    settlement agreement.  But we're not going to do it with an

4    open-ended provision that Adeptio might get if we were coming

5    to it for a consensual DIP loan or exit financing, because

6    that's not the case here.  That's all I have, Your Honor,

7    unless you have any questions for me?

8            THE COURT: Not yet.

9            MR. GWYNNE: Thank you.

10           THE COURT: But I may.  Mr. Agay?

11           MR. AGAY (Telephonic): Yeah.  I'm still here, Your

12   Honor.

13           THE COURT: Okay.

14           MR. AGAY (Telephonic): I think Mr. Gwynne said it a

15   couple times that there was an original settlement agreement

16   that contemplated a loan?

17           THE COURT: Yes.

18           MR. AGAY (Telephonic): That settlement agreement

19   mentioned a couple of terms relevant to the loan.  But

20   obviously by, you know, by the fact that there's a term sheet

21   in front of you, that settlement term sheet didn't spell out

22   any of the terms of that loan.  So we need to do a term

23   sheet.  Mr. Gwynne also said that there's going to be

24   definitive loan documentation, so by definition, that loan

25   documentation is going to contain terms in addition to those

1   terms contained in this term sheet.  We're not trying to pull

2   a fast one, and I'll decline Mr. Gwynne's invitation to make

3   disparaging comments about other counsel on the phone or in

4   the room.  All we're trying to do here is make sure that we

5   have appropriate protections built into that loan document,

6   because it is a loan at the end of the day.  Everybody agreed

7   to that.  So I really thought we were stating nothing more

8   than the obvious by including this additional provision here.

9   I'd never seen a loan agreement, loan term sheet without this

10  provision in there.  I never imagined that it would be

11  subject to such controversy.  Whether it be a DIP loan, an

12  exit loan, any loan.  And I've seen a lot of them, as I'm

13  sure Your Honor has as well.  If they want to take out the

14  words which are customary for loans of this type, that's

15  fine, but to say which shall contain such other terms an

16  conditions which are consistent with the settlement term

17  sheet, this term sheet, and the plan, I thought that that

18  would, that's just stating the obvious.  And we're not going

19  to agree today that the loan documentation is not going to

20  contain additional terms, because that's how a loan works.

21  Now if the Committee or the Debtor is not happy with the loan

22  terms that we propose, they don't have to agree to them.  I,

23  you know, to say, Oh, we're going to drive through it if they

24  leave open any crack, they don't have to sign anything that

25  they don't want to.  And the reason, Your Honor, we're not

1    negotiating a definitive loan document today is because we

2    don't know that we have a confirmed plan.  So it doesn't make

3    sense to expend the time and resources for either my client

4    or the estate to document a loan until we get to a point

5    where we know we're going to be able to confirm a plan.  But

6    we have agreed to, you know, put down on paper what we think

7    the broad terms are going to be.  And everybody understands

8    that at the end of the day it's going to be subject to

9    definitive loan documentation.  And we just added this

10   additional provision in there, which we thought should be

11   totally uncontroversial and should only be stating the

12   obvious.  That's all, Your Honor.

13          THE COURT: Mr. Gwynne.  Mr. Gwynne, your concern is

14   that the word consistent is to open-ended.

15          MR. GWYNNE: Well Your Honor, the word consistent by

16   itself is a problem if it's not also cabined by the word

17   consistent and not beyond the terms that have been agreed to.

18   I want to point out that I, one of the things I suggested to

19   the Court was that I haven't heard Mr. Agay mention one

20   additional provision that he needed.  When he just spoke to

21   Your Honor, he hasn't mentioned one.  I said it, I imagine

22   he, he said he's worked on many loan agreements.  Well then

23   he ought to have a list of provisions from those loan

24   agreements that he wants.  Let me know what they are.  We

25   agreed to many of them in here, things that do go beyond the

1   settlement.  Like I told you, the two days for this, the no

2   more than twice a month.  If we agree to something that just

3   says, Such other provisions as are consistent with the

4   agreement, then the problem is, Your Honor, there are a whole

5   bunch of things you could put in here that aren't

6   inconsistent with the settlement, but that go well beyond it.

7   Like, for example, let's say that we said no to their

8   provision that we had to draw down the loan within 12 months.

9   We agreed to it, because we were being reasonable.  But

10  Adeptio could say, Well, that provision is not inconsistent

11  with the settlement term sheet, because the settlement term

12  sheet doesn't specify how you have to, you know, the time

13  period you have to draw the 500 thousand.  The same with the

14  you can't draw more than twice a month, or you, you know, we

15  don't have to give you the money for two business days.

16  Those are all things that are consistent with the settlement

17  term sheet, because the settlement term sheet didn't address

18  them.  If they're reasonable, we agreed to them.  But Your

19  Honor, if we have a term sheet that's going to bind the

20  parties that says all the term, new term has to be is

21  consistent with the agreement, well, we've changed the terms

22  of our settlement, and we've opened it up to Adeptio being

23  able to propose terms that are consistent, but that go beyond

24  what the parties have already agreed to.  Again, if there's

25  some provision that Mr. Agay believes Adeptio needs to

1   protect itself, again, tell me what it is.  Let's make it

2   specific.  Let's add it in here now.  If you can't, then you

3   should be able to agree that any other provision will be

4   consistent and not beyond what we've already agreed to.  If

5   you're feeling, obviously you go from a term sheet to a

6   definitive documentation - -

7            THE COURT: Right.

8            MR. GWYNNE:  - - you take short paragraphs and you

9   make them long ones.  That doesn't mean you can just add

10  whatever you want and change, and change the terms of the

11  deal.  And that's what my concern is, Your Honor.  Thank you.

12           THE COURT: Well, would it help - -

13           MR. GLASSMAN: Your Honor?

14           THE COURT: Oh, Mr. Glassman.  Yes.

15           MR. GLASSMAN: I simply want to say one thing.  And

16  that is I don't view this proposed term sheet as being

17  binding on anybody.  That can't happen until there's a

18  confirmed plan.

19           THE COURT: Right.

20           MR. GLASSMAN: So without trying to color either of

21  the parties' positions, I simply want to make clear that the

22  Debtors' position that the term sheet is just that.

23           MR. AGAY (Telephonic): I second that, Your Honor.

24           THE COURT: If that's the case, then couldn't we end

25  this after that first clause, is subject to definitive loan

1    documentation?

2          MR. AGAY (Telephonic): Your Honor, I just - -

3          THE COURT: Yes.

4          MR. AGAY (Telephonic):  - - want to make clear that

5    there are going to be other terms and conditions in the loan

6    document, and Mr. Gwynne seems to be taking exception to

7    that.  That's the only issue.

8          THE COURT: Or if we added the words, And which are

9    consistent with the parties' agreement?

10         MR. AGAY (Telephonic): Sure.

11         MR. GWYNNE: Your Honor, that's fine if Your Honor,

12   in approving that language, is not saying that the Committee

13   has to agree to other provisions that go beyond the

14   settlement.  That if there is a dispute, and we come back to

15   the Court, that Adeptio's not going to be able to say, Well,

16   we agreed that they could put in other provisions because of

17   this miscellaneous provision.  That we don't have to agree to

18   anything that goes beyond the terms of the settlement, and if

19   there's a dispute, Your Honor will decide it.  With that as

20   the framework, not an open window for new provisions.

21         THE COURT: And the Court will resolve any disputes?

22         MR. GWYNNE: Yes.

23         THE COURT: If we put that?  Would that be

24   satisfactory to everyone?  In other words if we said, This

25   term sheet is subject to definitive loan documentation, and

1  shall contain terms and conditions which are consistent with

2  the settlement agreement term sheet, this term sheet, and the

3  plan, and which are consistent with the parties' agreement,

4  subject to the Court's, the Court resolving any disputes.

5       MR. GWYNNE: That would be acceptable to me, Your

6  Honor.

7       THE COURT: I think, is, does that do it for

8  everyone?  Mr. - - I'm not trying to bend anyone's arm.

9  Because I really would like you to at least agree to it

10  today.  Mr. Agay?

11       MR. AGAY (Telephonic): Your Honor, I, I appreciate

12  the suggestion.  I, we have to think about it in terms of the

13  Court resolving disputes.  We have to check with our client.

14  You know, we are a lender, and - -

15       THE COURT: Yes.

16       MR. AGAY (Telephonic):  - - and you know, we have

17  a, you know, signed a settlement agreement that compels us to

18  make a loan, but, you know, there are further things to flesh

19  out.  So we'll have - - I appreciate the suggestion, we'll

20  just have to think about it.

21       MR. GWYNNE: Well I think that's our only purpose

22  for today.  We're not binding anyone.

23       THE COURT: Yeah.  I think the parties were, are

24  anxious to at least move on with this.

25       MR. AGAY (Telephonic): Right.  Well - -

1          THE COURT: So - -

2          MR. AGAY (Telephonic):  - - I mean, Mr. Gwynne made

3   the point that this is all subject to everybody, the client's

4   agreement at the end of the day.  He has to check with his

5   Committee, I have to check with my - -

6          THE COURT: Right.

7          MR. AGAY (Telephonic):  - - my client.  And I'll

8   take that suggestion back to them, and see if they have any

9   issue with it.  And like I, I appreciate that the parties are

10  anxious to move this along, and I appreciate Your Honor

11  taking the time.  And to the extent that there's any

12  lingering issues, I mean, we can - -

13         THE COURT: Do you want to, do you want to try and

14  schedule - -

15         UNIDENTIFIED SPEAKER: Yes, Your Honor.

16         THE COURT:  - - a telephone conference?  I mean, I

17  don't know how many - - what are you talking about?  A day to

18  get back?

19         MR. AGAY (Telephonic): Yeah.  I think that's right.

20  And at the same time, Your Honor, you know, we still need to

21  see another draft of the plan and disclosure statement.  I

22  don't think this is sort of the Court signing off on that

23  either.  So I - -

24         THE COURT: Of course, of course.

25         MR. AGAY (Telephonic): - - what, whenever that is

1    next teed up, I think we can resolve that issue.

2             MR. GWYNNE: I think we ought to try to see if we

3    can resolve the term sheet with the understanding that that

4    is still subject to Adeptio approving the disclosure

5    statement.  If they don't, they can have the right to reopen

6    the term sheet.

7             THE COURT: Right.

8             MR. AGAY (Telephonic): Okay.

9             THE COURT: So, is Friday sufficient time for the

10   parties to work this out with your respective clients, and

11   with one another, and then we can talk it through again?

12            MR. AGAY (Telephonic): Sure.

13            UNIDENTIFIED SPEAKER: Yes, Your Honor.

14            MR. AGAY (Telephonic): Okay.  So Your Honor, the

15   language you've proposed is, This term sheet is subject to

16   definitive loan documentation which shall contain such other

17   terms and conditions which are part, which are consistent

18   with the settlement term sheet, this term sheet, and the plan

19   and the parties' agreement?

20            THE COURT: Yes.  And which are consistent with the

21   parties' agreement.

22            MR. AGAY (Telephonic): And which are consistent - -

23   I'm just writing this down, Your Honor.

24            THE COURT: Yes.

25            MR. AGAY (Telephonic): With the parties' agreement.

1    Okay.

2              THE COURT: And then we could have a call on Friday

3    afternoon?  Or Friday morning.  I was thinking the afternoon,

4    which gives you little more time.  I have a sale hearing at 1

5    o'clock on Friday, which may take a little bit of time.  And

6    I was going to suggest 4 o'clock on Friday, perhaps.

7              UNIDENTIFIED SPEAKER: That's fine.

8              MR. AGAY (Telephonic): That's fine, Your Honor.

9              MR. GLASSMAN: We'll get the disclosure statement,

10   the revised disclosure statement out of here later today or

11   tomorrow.

12             THE COURT: Okay.

13             MR. GLASSMAN: To give them more, some more time on

14   Friday would give them more time.

15             THE COURT: Excellent.  So why don't we set this

16   down for 4 p.m.  If you'll just let me know a call-in number,

17   then I will call in and we'll see where we are hopefully

18   close it out at that point.

19             MR. AGAY (Telephonic): Okay.

20             MR. GWYNNE: Your Honor, your language I believe you

21   read the first time also had language at the end about the

22   Court resolving the dispute.  I just wanted to - -

23             THE COURT: I don't know, well - -

24             MR. GWYNNE: That you suggested - -

25             THE COURT: I'm suggesting that, yes.

1          MR. GWYNNE:  - - Mr. Agay is saying he's going to

2    take back to his client.

3          THE COURT: Okay.

4          MR. GWYNNE: But I just wanted that to be clear.  I

5    also, probably should have started, as I said, I think I was

6    remiss not telling Your Honor what we have resolved.  So if

7    you have a minute - -

8          THE COURT: Sure.

9          MR. GWYNNE:  - - I could do that quickly.  In the

10   Adeptio term sheet, it's black lined, where the provision

11   entitled, Lender?

12         THE COURT: Yes.

13         MR. GWYNNE: We're going to move, the language

14   that's struck out, that says, In the Committee's or the

15   Trust's reasonable discretion?

16         THE COURT: Yes.

17         MR. GWYNNE: We're going to move that right after

18   the comma after adequately to fund the loan comma.

19         THE COURT: Okay.

20         MR. GWYNNE: And Mr. Agay, if I misstate anything,

21   please feel free to correct me.  On the next page, the

22   Negative Covenants?

23         THE COURT: Yes.

24         MR. GWYNNE: We're going to delete the words,

25   Restrictions and limitations on use of.  And we're going to

1    delete the apostrophe s after borrower's.  So it will say,

2    Borrower, and then we're going to add, shall not make, delete

3    the word assets.  So it will say, Borrower shall not make

4    distributions of proceeds, and then the rest the way that it

5    reads.

6             THE COURT: Okay.

7             MR. GWYNNE: Under the Events of Default, where it

8    says Conversion of the Bankruptcy Case to Chapter 7?

9             THE COURT: Yes.

10            MR. GWYNNE: It's going to add right after the 7 and

11   before the semi colon, And termination of the Litigation

12   Trust.

13            THE COURT: Okay.

14            MR. GWYNNE: And then Your Honor dealt with the last

15   paragraph.  Now there is also the footnote?  Number 1.

16            THE COURT: Yes.

17            MR. GWYNNE: And what we said to Adeptio is we agree

18   with them in concept that whatever reporting is made to the

19   Trust Oversight Committee will also be made, that same - -

20   which by the way, Adeptio is going to be on, but that we will

21   also give them separately the same reporting in their

22   capacity as lender.  And that, just need to confirm there's a

23   reference in here to Article 4(c)(5)(b)(1).  But the - -

24            THE COURT: Adeptio is on the Trust Oversight

25   Committee.

1            MR. GWYNNE: Yeah, they have one, they have a seat

2     on the - -

3            THE COURT: Okay.

4            MR. GWYNNE:  - - Trust Oversight Committee.

5            THE COURT: Good.

6            MR. GWYNNE: And we're looking forward - -

7            THE COURT: You'll give them - -

8            MR. GWYNNE: We're looking forward - -

9            THE COURT:  - - you'll be giving them - - official

10    notice, in effect.

11           MR. GWYNNE: Yes.  As, in their capacity as a

12    lender.

13           THE COURT: Okay.

14           MR. GWYNNE: And that's it, Your Honor.

15           THE COURT: Okay.

16           MR. GWYNNE: Thank you very much for accommodating

17    us.

18           THE COURT: Absolutely.  Any time.  And if you need

19    me between now and Friday afternoon, just, just get hold of

20    us.  But it will give you time.

21           MR. GLASSMAN: That's for refereeing another World

22    Wrestling Federation - -

23           THE COURT: You said it.  My pleasure.  Really it's

24    a pleasure.  And I appreciate the parties trying to work

25    through this.  Anything else?  Then we will stand in recess

1    until the next scheduled hearing.

2            MR. GLASSMAN: Thank you, Your Honor.

3            THE COURT: Thank you all.  Have a good afternoon.

4        (Whereupon at 12:46 p.m. the hearing in this matter was

5    concluded for this date.)

6

7

8

9

10

11

12

13

14

15

16

17

18            I, Jennifer Ryan Enslen, approved transcriber for

19    the United States Courts, certify that the foregoing is a

20    correct transcript from the electronic sound recording of the

21    proceedings in the above entitled matter.

22

23     _/s/Jennifer Ryan Enslen_                    ___07/20/08___
        Jennifer Ryan Enslen
24      43 Bay Boulevard
        Newark, DE 19702
25      (302)836-1905