sole discretion, to pay without interest all Disputed Claims that may become Allowed Claims and to pay any post-confirmation tax liability, Trustee Fees, professional fees and other expenses or costs that the Trustee, in his sole discretion, believes may be incurred.

### f.    Setoffs

The Litigation Trustee may, pursuant to Bankruptcy Code section 553 and applicable non-bankruptcy law, set off against any distribution to the Holder of an Allowed Claim, the claims, rights and Causes of Action that the Litigation Trust may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Litigation Trustee of any such claims, rights and causes of action that the Trustee may possess against such Creditor.  Creditors shall maintain their setoff rights existing prior to the Filing Date, but such setoff rights may be exercised only with prior Bankruptcy Court approval.  The Litigation Trustee shall not have the authority to effectuate any setoff right against Adeptio or any of its affiliates except to the extent such setoff arises on account of a dispute in connection with the Plan, Final Sale Order, APA, and Term Sheet, including with respect to Adeptio's or Simplexity's obligations thereunder. Adeptio and its affiliates reserve all rights to contest such assertions.

### g.    Undeliverable and Unclaimed Distributions

Unclaimed and undeliverable distributions shall include:  (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (ii) checks (and the funds represented thereby) which have been issued to the Holder of an Allowed Claim in accordance with the Plan but which have not been presented for payment within ninety (90) days after the date of such checks, and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a complete or correct mailing address.  If any distribution made on account of an Allowed Claim is returned to the

54

Litigation Trustee as undeliverable, no further distributions shall be made to such Creditor unless and until the Litigation Trustee is notified in writing of such Creditor's then-current address. Subject to the following paragraph, undeliverable distributions shall remain in the possession of the Trustee until such time as such distribution becomes deliverable. Undeliverable distributions shall not be entitled to any interest or other accruals of any kind. Nothing in the Plan shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim.

In the event that any distribution on account of any Allowed Claim remains undeliverable or unclaimed for a period of ninety (90) days after the date of the check (the "Claiming Period"), the entire unpaid Allowed Claim upon which such distribution was issued shall, on the first (1st) Business Day after expiration of the Claiming Period, be deemed expunged and reduced to zero ($0) dollars for purposes of calculating any subsequent distribution. The proceeds of all unclaimed and undeliverable distributions shall remain in the Litigation Trust's operating account and be distributed to the other Holders of Allowed Claims. Notwithstanding the foregoing, the Litigation Trustee shall retain the discretion to pay any Allowed Claim after the expiration of the Claiming Period.

If, after payment of all Allowed Claims pursuant to the Plan and the expiration of the Claiming Period, the unclaimed distributions on deposit in the Litigation Trust's operating account equal $50,000.00 or less, the Litigation Trustee shall be authorized, without further order of the Court, to donate such sum to the United Way. If such amount is $50,000.00 or greater, the Trustee shall make a further distribution to Holders of Allowed Claims in accordance with the terms of the Plan.

### h.      Transmittal of Distributions and Notice

Except as may otherwise be agreed among the Trustee and the Holder of a particular Claim, any distribution or notice to which the Holder of a Claim shall be or become entitled

under the provisions of the Plan shall be delivered to such Holder by regular mail, postage prepaid, in an envelope addressed to the last known address maintained by the Debtors' Claims Agent from time to time, according to any respective proof of Claim, the Schedules (if no proof of Claim was filed), or any assignment of Claim or other written notice of change of address delivered to the Debtors' Claims Agent by such Holder.  Distributions and notices delivered in accordance herewith will be deemed delivered to the Creditor regardless of whether such distributions or notices are actually received by such Creditor or Interest Holder.  To the extent that the Debtors' Claims Agent resigns or is terminated, any future changes of address shall be delivered to the Litigation Trustee and filed with the Bankruptcy Court.

### i.  Distribution Dates

Whenever any distribution to be made under the Plan shall be due on a day other than a Business Day, such distribution shall instead be made, on the next following Business Day.

### j.  Payments of Less than $15.00

The Litigation Trustee shall not be required to make any distribution in an amount of less than $15.00.  The Litigation Trustee is authorized to round down all distributions under the Plan to the nearest $15.00.  To the extent that such a distribution shall be called for, the Litigation Trustee shall establish a reserve for all distributions in the amount of less than $15.00 and shall, when and if the Holder of a Claim is entitled to a distribution of $15.00 or more, make such a distribution at such time.

### k.  Remainder of Funds in Reserve

If, in the Litigation Trustee's sole discretion, the Litigation Trustee determines that it is unnecessary to maintain funds in the Claims Reserve described in the Plan, then the Trustee shall deposit such funds or transfer such remaining funds from the Claims Reserve into the Litigation Trust's operating account.

I.    **Execution of Documents**

The Proponents are authorized and directed to execute any and all documents necessary to effectuate the Plan.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND LEASES UNDER THE PLAN

A.    **Assumption of Insurance Policies; Assignment of Rights**

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (the "Insurance Policies"), unless previously canceled or transferred to Adeptio, are treated as Executory Contracts under the Plan, and the Plan shall constitute a motion to assume the Insurance Policies and to assign all of the Estates' rights under such Insurance Policies to the Litigation Trust.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2) and a finding by the Bankruptcy Court that such assumption is in the best interest of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date because the Debtors are current.  To the extent the Bankruptcy Court determines otherwise as to any of the Insurance Policies, the Debtors reserve the right to seek rejection of such insurance policy or other available relief.  For the avoidance of doubt, the Term Sheet and the APA are deemed assumed under the Plan, and are not rejected.

To the extent that rights and benefits under any Insurance Policies and agreements apply to Claims against the Debtors, which Claims, if Allowed, will be paid by the Liquidating Trust, such policies and agreements shall be assigned to the Litigation Trust.

57

**B.**     **Rejection of Other Executory Contracts**

On the Effective Date, all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to section 2.5(b) of the Asset Purchase Agreement), including without limitation, all written employment agreements, collective bargaining agreements, severance contracts, employee benefit or retirement or supplemental retirement benefit plans and agreements, indemnification agreements (whether discrete or set forth in another document) and unexpired real or personal property leases of the Debtors, that are not the subject of a motion to assume or reject pending on the Effective Date, shall be deemed rejected by the Debtors as of the Petition Date.  Further, on the Effective Date, all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date, shall be deemed rejected by the Debtors and such rejection shall be deemed to be effective as of July 19, 2008.

Each Person who is a party to an Executory Contract which was not previously rejected prior to the Effective Date or which is rejected pursuant to the Plan, shall be entitled to file a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract to which such Person is a party.  All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date and shall be pre-petition general unsecured claims subject to the provisions of the Bankruptcy Code, relevant rules and the Plan.

## ARTICLE VI

## DISALLOWANCE OF CONTRIBUTION CLAIMS

On the Effective Date, any Claim for reimbursement, indemnification, contribution or subrogation of an Entity that is liable with any Debtors on or that has secured the Claim of a

creditor not heretofore disallowed by order of the Bankruptcy Court shall be deemed disallowed to the extent (a) such Creditor's Claim against the Debtors is disallowed; (b) such Claim for reimbursement, indemnification, contribution or subrogation is contingent as of the Confirmation Date, including, without limitation, all Claims which are disallowed under Bankruptcy Code section 502(e); or (c) such Entity asserts a right of subrogation to the rights of such Creditor under Bankruptcy Code section 509 except as otherwise specifically provided therein.

## ARTICLE VII

### CONFIRMATION AND CONSUMMATION OF THE PLAN PURSUANT TO BANKRUPTCY CODE SECTION 1129 (b)

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Proponents will request confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b). The Proponents reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including the right to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**A.      Rule 9019(a) Settlement**

Except as otherwise provided in the Plan, the Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that were or could have been commenced against Debtors prior to the date of entry of this Confirmation Order. Such settlement, as reflected in the relative distributions and recoveries or other benefits provided to Holders of Claims or Interests under the Plan, (i) will save the Debtors and their estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' estates and require substantial time to adjudicate, and (ii) have facilitated the creation and

59

implementation of the Plan and benefits of the Debtors' estates and creditors. Accordingly, such settlement is fair and reasonable.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date: (a) entry of an Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125; and (b) the proposed Confirmation Order shall be in form and substance acceptable to the Proponents.

### B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the Plan:

1.    The Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Proponents;

2.    The Confirmation Order shall provide that the Proponents are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the Litigation Trust Agreement and any other contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan;

3.    The Litigation Trust Agreement shall be executed and approved by order of the Bankruptcy Court in form and substance reasonably acceptable to the Proponents;

4.    The Estate Assets shall have been transferred to the Litigation Trust pursuant to the Plan; and

{BAY:00815667v18}

5.      The Adeptio Loan shall have been funded by Adeptio or other arrangements with Adeptio satisfactory to the Proponents shall have been made.

**C.      Waiver of Conditions**

Each of the conditions set forth in this Article may be waived in whole or in part by the Proponents.  The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right the may be asserted at any time.

## ARTICLE IX

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law, as described more fully in the Plan.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

The following shall be governed by the terms and provisions of the Plan:

1.      Modifications and Amendments;

2.      Severability of Plan Provisions;

3.      Adeptio Release – through the Adeptio Release, the Estates generally release Adeptio and Simplexity as follows:

**A.      Estate Releases**

**Notwithstanding anything contained herein to the contrary, on the Effective Date and effective as of the Effective Date, the Debtors, their professionals, employees, agents, and advisors shall provide a full release (and each entity so released shall be deemed**

61

released) to Adeptio and its non-natural affiliates and subsidiaries and each of their respective directors, officers, employees, members, attorneys, financial advisors, accountants, professionals, agents and representatives, each in their respective capacities as such, and their respective property from any and all causes of action, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors; nothing in this Plan releases any Retained Litigation Claims as set forth in the Term Sheet or Adeptio's or Simplexity's obligations under the Term Sheet, the APA or this Plan (the "Adeptio Release").  Pursuant to the Term Sheet, Adeptio and Simplexity will provide to the Litigation Trustee the books, records, files or other materials, or copies thereof, necessary to defend or otherwise resolve claims against the Debtors and to investigate and/or prosecute the claims and causes of action not sold and assigned to Adeptio and will provide access to personnel as reasonably necessary.  Adeptio and Simplexity also agree to work in good faith towards an agreement regarding the governance and constitution of the Litigation Trust.

B.     **Third Party Releases**

Subject to the occurrence of the Effective Date, any Holder of a Secured Lender Claim or a General Unsecured Claim and their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, by acceptance of the distributions to be received hereunder, will be presumed conclusively to have provided a full discharge and release to Adeptio and Simplexity, including their respective present members, officers, directors, employees, advisors, attorneys, and agents and their respective former members, officers, directors, employees,

62

and agents if they are Transferred Employees, as that term is defined in the Asset Purchase Agreement (and their Affiliates to the extent set forth in section 3 below), from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way whatsoever to the Debtors and these Chapter 11 Cases, including, but not limited to, those in any way related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Sale, the Plan, this Disclosure Statement, the Litigation Trust Agreement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with these Chapter 11 Cases or the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their gross negligence, willful misconduct or bad faith; provided, however, that the foregoing releases shall not apply to any Holder of a Secured Lender Claim or a General Unsecured Claim if such holder "opts out" of the releases provided in Section XI.C.2 of the Plan by a timely written election set forth on such Holder's ballot. Nothing in the Plan or Disclosure Statement or the order approving the Plan or Disclosure Statement shall (i) release or discharge any claims held by the U.S. Securities and Exchange Commission against any non-debtor(s) or (ii) enjoin or restrain the U.S. Securities and Exchange Commission from enforcing such claims against any non-debtor(s). The Office of the United States Trustee has raised

concern regarding the releases of Adeptio and Simplexity.  This issue will be decided at the Confirmation Hearing;

      1.      Litigation Trustee Bound;

      2.      Successors and Assigns;

      **3.**      **Exculpation and Limitation of Liability - Neither the Debtors, the Committee, the Litigation Trustee, the Trust Oversight Committee, Adeptio or Simplexity, nor any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan or the Litigation Trust Agreement, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the Litigation Trust Agreement or the property to be distributed under this Plan or the Litigation Trust Agreement, except for their gross negligence, willful misconduct or bad faith, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

The Litigation Trust is hereby deemed to release only each Person exculpated pursuant to the above paragraph from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan, solicitation of

{BAY:00815667v18}

**acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or bad faith.**

**Affiliates (as defined in the Asset Purchase Agreement) of Simplexity and Adeptio shall be exculpated and their liability (and the releases set forth in section XI.C of the Plan) shall be limited to the extent provided in and only to the extent provided in, the Asset Purchase Agreement and Term Sheet.**

**The Office of the United States Trustee has raised concern regarding the exculpation and limitation of liability of the chapter 11 professionals in these cases. This issue will be decided at the Confirmation Hearing;**

    1.    Binding Effect;

    2.    Revocation, Withdrawal, or Non-Consummation;

    3.    Notices;

    4.    Indemnification and Related Matters;

    5.    Prepayment;

    6.    Dissolution of the Committee; and

    7.    Term of Injunction or Stays - Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), including any stay exceptions provided for under Bankruptcy Code section 362(b), shall remain in full force and effect until the later of (a) the closing of the Chapter 11 Cases, or (b) the dissolution of the Liquidation Trust.

{BAY:00815667v18}

For a more detailed description of the aforementioned issues and their treatment under the plan please see Article XI of the Plan.

## ARTICLE XI

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN

### A.    Liquidation Under Chapter 7

If the Plan is not confirmed, these Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtors, or the Cases could be dismissed.  The Debtors and the Committee believe that liquidation under chapter 7 or dismissal would result in smaller, if any, distributions to creditors than those provided for in the Plan.  This is because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals during such liquidation, and because Adeptio might not be obligated to provide the Investigation Funding and the Priority Claims Funding if these Chapter 11 Cases are converted to chapter 7 bankruptcy cases.  It is Adeptio's position that it has no such obligation and will not provide such funding to a chapter 7 Trustee.  If Adeptio does not provide the Adeptio Loan pursuant to the Term Sheet and Settlement Agreement, the chapter 7 estate will not contain sufficient funds to pursue the Causes of Action, which makes it highly unlikely that a chapter 7 trustee will pursue the Causes of Action.  Consequently, it is unlikely that there would be any recovery to Holders of General Unsecured Claims and there would be less--or possibly no--recovery for Holders of Allowed Administrative Claims.  In addition, if the cases are converted to cases under chapter 7 of the Bankruptcy Code, Adeptio might not be obligated to provide the Priority Claims Funding and there would be little to no recovery priority for claimants.  It is Adeptio's position that it has no such obligation and will not provide a loan to a chapter 7 trustee.

66

Therefore, in order to use the Investigation and Priority Claims Funding provided by Adeptio pursuant to the Term Sheet and the Plan, the Proponents contend that confirmation and consummation of the Plan is in the best interests of Creditors.

**B.      Alternative Plan of Reorganization**

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan of reorganization.   During the course of negotiating the Plan, the Proponents explored various other alternatives and concluded that the Plan represented the best alternative to protect the interests of creditors and other parties in interest.   The Proponents have not changed their conclusions, and believe that the Plan represents the best alternative to protect the interests of creditors.

<u>**CONCLUSION AND RECOMMENDATIONS**</u>

The Debtors and the Committee urge all creditors entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by immediately returning their properly completed ballots to the appropriate voting agent as set forth on the ballots within the time stated in the notice served with this Disclosure Statement.

{BAY:00815667v18}

Therefore, in order to use the Investigation and Priority Claims Funding provided by Adeptio pursuant to the Term Sheet and the Plan, the Proponents contend that confirmation and consummation of the Plan is in the best interests of Creditors.

**B.    Alternative Plan of Reorganization**

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan of reorganization. During the course of negotiating the Plan, the Proponents explored various other alternatives and concluded that the Plan represented the best alternative to protect the interests of creditors and other parties in interest. The Proponents have not changed their conclusions, and believe that the Plan represents the best alternative to protect the interests of creditors.

## CONCLUSION AND RECOMMENDATIONS

The Debtors and the Committee urge all creditors entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by immediately returning their properly completed ballots to the appropriate voting agent as set forth on the ballots within the time stated in the notice served with this Disclosure Statement.

Dated: August 7, 2008

FOR THE DEBTORS:

By: _Joseph A. Pardo_
Name: JOSEPH A. PARDO
Title: DIRECTOR AND MEMBER

FOR THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By: _____
Name:
Title:

{BAY:00815667v18}

Dated:  August 11, 2008

FOR THE DEBTORS:                    FOR THE OFFICIAL COMMITTEE OF
                                    UNSECURED CREDITORS

By: _____        By:  /s/ Colleen R. Jones
    Name:                               Name:  Colleen R. Jones
    Title:                              Title:  Committee Representative

    BAYARD, P.A.                        REED SMITH LLP


By:  /s/ Mary E. Augustine           By:  /s/ Kurt F. Gwynne
    Neil B. Glassman (No. 2087)         Kurt F. Gwynne (No. 3951)
    Mary E. Augustine (No. 4477)        1201 Market Street
    222 Delaware Avenue, Suite 900      Suite 1500
    P.O. Box 25130                      Wilmington, DE 19801
    Wilmington, DE 19899

        and                                 and

    DLA PIPER US LLP                    Robert P. Simons
    Thomas R. Califano                  Joshua C. Lewis
    Jeremy Johnson                      435 Sixth Avenue
    1251 Avenue of the Americas         Pittsburgh, PA  15219-1886
    New York, NY  10020

    Counsel for Debtors and Debtors in      and
    Possession
                                        Claudia Z. Spinger
                                        1500 One Liberty Place
                                        1650 Market Street
                                        Philadelphia, PA  19103

                                        Counsel for the Official Committee of
                                        Unsecured Creditors

{BAY:00815667v18}

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| SN LIQUIDATION, INC., et al.,[1] | : | Case No. 07-11666 (KG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## SECOND AMENDED JOINT PLAN OF LIQUIDATION OF SN LIQUIDATION, INC., *ET AL.* PROPOSED BY THE DEBTORS IN POSSESSION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AUGUST 11, 2008

**DLA PIPER US LLP**

Thomas R. Califano
Jeremy R. Johnson
1251 Avenue of the Americas
New York, New York  10020

**BAYARD P.A.**

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, Delaware  19899

Counsel for Debtors and Debtors in Possession

**REED SMITH LLP**

Kurt F. Gwynne (No. 3951)
1201 Market Street
Suite 1500
Wilmington, DE 19801

Robert P. Simons (admitted in PA)
Claudia Z. Springer (admitted in PA)
Joshua C. Lewis (admitted in PA)

Counsel for the Official Committee of Unsecured Creditors

---

[1] The Debtors and debtors in possession are INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

INTRODUCTION ..................................................................................................1

ARTICLE I          DEFINED TERMS AND RULES OF INTERPRETATION.....................3

A.    Rules of Construction ..........................................................................3

B.    Definitions............................................................................................3

    1.    Adeptio...............................................................................3

    2.    Adeptio Loan .....................................................................3

    3.    Administrative Claim..........................................................3

    4.    Affiliate ..............................................................................3

    5.    Allowed Claim ...................................................................4

    6.    Allowed Administrative Claim ...........................................4

    7.    Allowed Deficiency Claim ..................................................4

    8.    Allowed General Unsecured Claim .....................................4

    9.    Allowed Priority Claims .....................................................4

    10.   Asset Purchase Agreement .................................................4

    11.   Assumed Liabilities ...........................................................4

    12.   Avoidance Actions.............................................................4

    13.   Ballot.................................................................................4

    14.   Ballot Date ........................................................................4

    15.   Bankruptcy Code ...............................................................5

    16.   Bankruptcy Court...............................................................5

    17.   Bankruptcy Rules...............................................................5

    18.   Bar Date ............................................................................5

    19.   Beneficiary.........................................................................5

    20.   Business Day......................................................................5

    21.   Bylaws...............................................................................5

    22.   Cash...................................................................................5

    23.   Causes of Action ...............................................................5

    24.   Chapter 11 Cases...............................................................5

    25.   Claim.................................................................................6

    26.   Claimholder.......................................................................6

    27.   Claims Agent .....................................................................6

    28.   Class..................................................................................6

29.   Closing Date ................................................................................................. 6

30.   Committee ...................................................................................................... 6

31.   Committee Member ........................................................................................ 6

32.   Confirmation .................................................................................................. 6

33.   Confirmation Date ......................................................................................... 6

34.   Confirmation Hearing .................................................................................... 6

35.   Confirmation Order ........................................................................................ 6

36.   Contingent ...................................................................................................... 6

37.   Creditor .......................................................................................................... 6

38.   Cure ................................................................................................................ 6

39.   Debtor(s) ........................................................................................................ 7

40.   Designated Contracts ..................................................................................... 7

41.   DIP Facility .................................................................................................... 7

42.   DIP Lender ..................................................................................................... 7

43.   Disclosure Statement ..................................................................................... 7

44.   Disputed ......................................................................................................... 7

45.   Distribution .................................................................................................... 7

46.   Distribution Date ........................................................................................... 7

47.   Effective Date ................................................................................................ 7

48.   Entity .............................................................................................................. 7

49.   Estates ............................................................................................................ 7

50.   Estate Assets .................................................................................................. 7

51.   Excluded Assets ............................................................................................. 8

52.   Excluded Liabilities ....................................................................................... 8

53.   Executory Contract ........................................................................................ 8

54.   Final Decree ................................................................................................... 8

55.   Final Distribution .......................................................................................... 8

56.   Final Order ..................................................................................................... 8

57.   Final Tax Day ................................................................................................ 8

58.   General Unsecured Claim .............................................................................. 8

59.   Held Contract ................................................................................................. 8

60.   Holder ............................................................................................................. 8

61.   Impaired ......................................................................................................... 8

62. Insider .........................................................................................................8

63. Interest .........................................................................................................9

64. Late Claim .........................................................................................................9

65. Lien .........................................................................................................9

66. Litigation Trust .........................................................................................................9

67. Litigation Trust Agreement .........................................................................................................9

68. Litigation Trust Expenses .........................................................................................................9

69. Litigation Trust Interests .........................................................................................................9

70. Litigation Trust Professionals .........................................................................................................9

71. Litigation Trustee .........................................................................................................9

72. Person .........................................................................................................9

73. Petition Date .........................................................................................................10

74. Plan .........................................................................................................10

75. Priority Non-Tax Claim .........................................................................................................10

76. Priority Tax Claim .........................................................................................................10

77. Professional .........................................................................................................10

78. Professional Fee Claim .........................................................................................................10

79. Pro Rata .........................................................................................................10

80. Rejected Contract .........................................................................................................10

81. Sale Order .........................................................................................................10

82. Secured lender .........................................................................................................10

83. Securities Act .........................................................................................................10

84. Security .........................................................................................................10

85. SN Liquidation .........................................................................................................10

86. Subordinated Claim .........................................................................................................10

87. Termination .........................................................................................................11

88. Term Sheet .........................................................................................................11

89. Trust Assets .........................................................................................................11

90. Trust Oversight Committee .........................................................................................................11

91. Trustee Fee Claim .........................................................................................................11

92. Trustee Fees .........................................................................................................11

93. Unclassified Claims .........................................................................................................11

94. Unimpaired .........................................................................................................11

|  |  | 95. | Voting Deadline .................................................................. | 11 |
|  |  | 96. | Other Definitions ............................................................... | 11 |
|  | C. | Rules of Interpretation ................................................................... | | 11 |
|  | D. | Computation of Time ..................................................................... | | 12 |
|  | E. | Governing Law .............................................................................. | | 12 |

**ARTICLE II**  CLASSIFICATION OF CLAIMS AND INTERESTS ............... 13

|  | A. | Introduction.................................................................................... | | 13 |
|  | B. | Unsolicited Claims (not entitled to vote on this Plan) ........................... | | 13 |
|  | C. | Unimpaired Classes of Claims (deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan).......................................... | | 14 |
|  | D. | Impaired Classes of Claims (shall be permitted to vote on this Plan) ......... | | 14 |
|  | E. | Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan).......................................... | | 14 |

**ARTICLE III**  TREATMENT OF CLAIMS AND INTERESTS ..................... 14

|  | A. | Unclassified Claims ...................................................................... | | 14 |
|  |  | 1. | Administrative Claims........................................................ | 14 |
|  |  | 2. | Priority Tax Claims ........................................................... | 15 |
|  |  | 3. | Trustee Fee Claims ........................................................... | 16 |
|  | B. | Unimpaired Claims ........................................................................ | | 16 |
|  |  | 1. | Class 1: Other Secured Claims........................................... | 16 |
|  |  | 2. | Class 2: Priority Non-Tax Claims ...................................... | 17 |
|  | C. | Impaired Claims Entitled to Vote .................................................... | | 18 |
|  |  | 1. | Class 3: Secured Lender Claims ......................................... | 18 |
|  |  | 2. | Class 4: General Unsecured Claims..................................... | 18 |
|  | D. | Impaired Classes of Claims (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan).......................................... | | 18 |
|  |  | 1. | Class 5: Intercompany Claims ........................................... | 18 |
|  | E. | Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan).......................................... | | 19 |
|  |  | 1. | Class 6: Equity Interests.................................................... | 19 |

F.      Allowed Claims ........................................................................................................19

ARTICLE IV          ACCEPTANCE OR REJECTION OF THE PLAN ..................................20

A.      Impaired Classes of Claims Entitled to Vote..........................................................20

B.      Acceptance by an Impaired Class ............................................................................20

C.      Presumed Acceptances by Unimpaired Classes ......................................................20

D.      Classes Deemed to Reject Plan................................................................................20

E.      Summary of Classes Voting on this Plan .................................................................20

ARTICLE V          MEANS FOR IMPLEMENTATION OF THE PLAN..............................21

A.      Sale............................................................................................................................21

B.      Corporate Action......................................................................................................21

        1.      Merger of Debtors ........................................................................................21

        2.      Continued Corporate Existence ...................................................................21

        3.      Retention of Wind Down Specialist .............................................................22

C.      Post-Effective Date Compensation of Professionals ..............................................22

D.      Sources for Plan Distribution..................................................................................22

E.      Litigation Trust ........................................................................................................23

        1.      Sources of Litigation Trust Funding............................................................23

        2.      Litigation Trust Operation ...........................................................................24

        3.      Claims Resolution.........................................................................................30

        4.      Deadline for Filing of Administrative and Professional Fee Claims..........30

        5.      Estimation of Claims....................................................................................31

        6.      Late Claims ...................................................................................................31

        7.      Procedures for Treatment and Resolving Disputed, Contingent
                and/or Unliquidated Claims.........................................................................32

        8.      Claims Reserve .............................................................................................33

        9.      Setoffs ...........................................................................................................33

        10.     Undeliverable and Unclaimed Distributions................................................33

        11.     Transmittal of Distributions and Notice ......................................................35

        12.     Distribution Dates ........................................................................................35

        13.     Payments of Less than $15.00 ......................................................................35

14.    Remainder of Funds in Reserve ..................................................36

15.    Execution of Documents ..............................................................36

ARTICLE VI        TREATMENT OF EXECUTORY CONTRACTS AND
                  UNEXPIRED LEASES ..................................................36

A.    Assumption of Insurance Policies; Assignment of Rights ......................36

B.    Rejection of Other Executory Contracts ..............................................37

ARTICLE VII       DISALLOWANCE OF CONTRIBUTION CLAIMS ..............................38

ARTICLE VIII      CONFIRMATION AND CONSUMMATION OF THE PLAN
                  PURSUANT TO BANKRUPTCY CODE SECTION 1129(b) ................38

A.    Rule 9019(a) Settlement ................................................................38

ARTICLE IX        CONDITIONS PRECEDENT TO CONFIRMATION AND
                  CONSUMMATION OF THE PLAN ..................................................39

A.    Conditions to Confirmation ...........................................................39

B.    Conditions to Effective Date ..........................................................39

C.    Waiver of Conditions ...................................................................40

ARTICLE X         RETENTION OF JURISDICTION ..................................................40

ARTICLE XI        MISCELLANEOUS PROVISIONS ..................................................43

A.    Modifications and Amendments .....................................................43

B.    Severability of Plan Provisions ......................................................44

C.    Adeptio Releases .......................................................................44

      1.    Estate Releases .................................................................44

      2.    Third Party Releases ..........................................................45

D.    Litigation Trustee Bound ..............................................................47

E.    Successors and Assigns ................................................................47

F.    Exculpation and Limitation of Liability .............................................47

G.    Binding Effect ..........................................................................48

H.    Revocation, Withdrawal, or Non-Consummation .................................48

I.    Notices ..................................................................................49

J.      Indemnification Claims..........................................................................50

K.      Prepayment ........................................................................................50

L.      Dissolution of the Committee ................................................................50

M.      Term of Injunctions or Stays.................................................................51

ARTICLE XII          CONCLUSION AND RECOMMENDATIONS .......................................51

## INTRODUCTION

THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS PLAN PROPONENTS, PROPOSE THE FOLLOWING CHAPTER 11 PLAN OF LIQUIDATION.  THIS PLAN CONTEMPLATES THE LIQUIDATION OF THE DEBTORS' ASSETS AND THE RESOLUTION OF THE OUTSTANDING CLAIMS AGAINST AND INTERESTS IN THE DEBTORS.  REFERENCE IS MADE TO THE DISCLOSURE STATEMENT, DISTRIBUTED CONTEMPORANEOUSLY HEREWITH, FOR A DISCUSSION OF (I) THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND OPERATIONS, (II) A SUMMARY AND ANALYSIS OF THIS PLAN, AND (III) CERTAIN RELATED MATTERS, INCLUDING RISK FACTORS RELATING TO THE CONSUMMATION OF THIS PLAN.  ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) IN THEIR ENTIRETIES BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127 AND BANKRUPTCY RULE 3019, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.   THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ARE THE PROPONENTS OF THIS PLAN (THE "PROPONENTS") WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1129.

THIS PLAN IS A LIQUIDATING PLAN.  PURSUANT TO PRIOR ORDERS OF THE BANKRUPTCY COURT, THE DEBTORS HAVE SOLD SUBSTANTIALLY ALL OF THEIR ASSETS.   THIS PLAN PROVIDES FOR THE DISTRIBUTION OF THE ESTATES'

INTEREST IN PROCEEDS FROM SUCH SALE AND THE CREATION OF A LITIGATION TRUST THAT WILL ADMINISTER AND LIQUIDATE ALL REMAINING PROPERTY OF THE DEBTORS, INCLUDING CAUSES OF ACTION, NOT SOLD, TRANSFERRED OR OTHERWISE WAIVED OR RELEASED BEFORE THE EFFECTIVE DATE OF THIS PLAN. THIS PLAN ALSO PROVIDES FOR DISTRIBUTION TO CERTAIN HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS AND THE FUNDING OF THE LITIGATION TRUST.  THIS PLAN FURTHER PROVIDES FOR THE TERMINATION OF ALL EQUITY INTERESTS IN THE DEBTORS, THE DISSOLUTION AND WIND-UP OF THE AFFAIRS OF THE DEBTORS.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN APPROVED FOR USE IN SOLICITING ACCEPTANCES AND REJECTIONS OF THIS PLAN.  NOTHING IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNLESS AND UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED AND DISTRIBUTED TO ALL HOLDERS OF CLAIMS AND INTERESTS TO THE EXTENT REQUIRED BY BANKRUPTCY CODE SECTION 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THIS PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Rules of Construction

Unless this Plan expressly provides or the context requires otherwise, all capitalized terms used in this Plan shall have the meanings assigned to them in this Article I.  Whenever the context requires, terms used in this Plan shall include the plural as well as the singular.  A term used in this Plan and not defined in this Plan has the meaning, if any, given in the Bankruptcy Code or the Bankruptcy Rules.  In the event an inconsistency exists between the Plan and the Sale Order, APA, and Term Sheet (each defined below), the terms of the Sale Order, APA, and Term Sheet shall govern and are not altered in any way.

### B.    Definitions

1.    "Adeptio" shall mean Adeptio INPC Funding LLC or any successor in interest, including Simplexity LLC.

2.    "Adeptio Loan" shall mean that certain senior secured loan (which shall accrue interest as ruled by the Court) of up to a total of $500,000 in accordance with the terms set forth in the Term Sheet by and among the Debtors, Adeptio and the Committee approved by the Order (I) Approving Confirmed Term Sheet Settling Controversies, (II) Authorizing the Abandonment of Certain Preference Claims Pursuant to Bankruptcy Code Section 544, which, upon the Closing Date of the Asset Purchase Agreement, Adeptio agreed to fund the costs of professional fees necessary to investigate the viability of avoidance actions and other litigation claims.

3.    "Administrative Claim" means a Claim for payment of an administrative expense or cost of a kind specified in Bankruptcy Code section 503(b) and referenced in Bankruptcy Code sections 507(a)(1), 507(b) or 1114(e)(2) including, without limitation, the actual, necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors, taxes incurred by the Estate, including wages, salaries, or commissions for services rendered after the commencement of these Chapter 11 Cases, compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 328, 330(a) or 331 and all fees and charges assessed against the Debtors under chapter 123 of title 28 United States Code.

4.    "Affiliate" refers to Affiliate as defined in the Asset Purchase Agreement.

3

5. "Allowed Claim" means a Claim shall be deemed allowed for purposes of this Plan and the Litigation Trust if it is: (a) a Claim that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated and as to which the Debtors or other party-in-interest have not filed an objection; (b) a Claim that is either not Disputed or has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of a confirmation order in these cases and approved by the Bankruptcy Court; (ii) in any stipulation with Debtors of amount and nature of Claim executed on or after the entry of a confirmation order in these cases; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms hereof.

6. "Allowed Administrative Claim" means all or that portion of any Administrative Claim which has become Allowed.

7. "Allowed Deficiency Claim" means (i) an unsecured deficiency Claim of a Holder of a Secured Claim arising as a result of the Debtors' failure to pay such Secured Claim in full or (ii) with respect to the Secured Lender, its Twenty Million Dollar ($20,000,000) General Unsecured Claim, which shall be deemed Allowed.

8. "Allowed General Unsecured Claim" means a General Unsecured Claim that is either not Disputed or that has been Allowed, including an Allowed Deficiency Claim.

9. "Allowed Priority Claims" means Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims.

10. "Asset Purchase Agreement" or "APA" means that Asset Purchase Agreement dated November 8, 2007 by and among Adeptio and the Debtors, as such agreement has been amended by the parties thereto.

11. "Assumed Liabilities" shall have the meaning ascribed to such term in the Sale Order and Asset Purchase Agreement.

12. "Avoidance Actions" means the Estates' interests in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtors to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to chapter 5 of the Bankruptcy Code, including without limitations, sections 544, 545, 547, 548, 549, 550, 551, or 553 or under any other applicable law, regardless of whether or not such actions have been commenced prior to the Effective Date. Notwithstanding the foregoing, "Avoidance Actions" shall not include any Avoidance Actions (a) previously settled, released or waived in the Term Sheet, (b) settled, released, or waived by Final Order of the Bankruptcy Code, or (c) that were transferred to Adeptio pursuant to the Asset Purchase Agreement and Sale Order.

13. "Ballot" means the instrument used by any Holder, that is authorized to vote on this Plan, to indicate acceptance or rejection of this Plan.

14. "Ballot Date" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of this Plan.

4

15.    "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., and all amendments thereto.

16.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

17.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and incorporates the Local Rules of the Bankruptcy Court, as the same may be amended and modified from time to time, and as applicable to cases pending before the Bankruptcy Court.

18.    "Bar Date" means, as applicable: (i) with respect to Claims arising from the rejection of an Executory Contract or unexpired lease pursuant to this Plan, thirty (30) days after the earlier of the date of the Bankruptcy Court order approving the Debtors' rejection of such Executory Contract or unexpired lease or the Confirmation Date; (ii) with respect to Professional Fee Claims, sixty (60) days after the Effective Date of this Plan or such other date set by the Court; (iii) with respect to Administrative Claims other than Professional Fee Claims, thirty (30) days after the Effective Date of this Plan or such other date set by the Court; (iv) with respect to government units, as defined in Bankruptcy Code section 101(27), is May 6, 2008; and (v) with respect to all other Claims against the Debtors, March 21, 2008.

19.    "Beneficiary" means any Holder of an Allowed Claim who holds a beneficial interest in the Litigation Trust.

20.    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

21.    "Bylaws" means the Third Amended and Restated Bylaws of InPhonic, Inc., including any prior versions.

22.    "Cash" means Cash, or Cash equivalents, including currency, checks, and wire transfers of immediately available funds.

23.    "Causes of Action" means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies (including without limitation equitable subordination), rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether under federal or state law, that any Debtors and/or Estates may hold against any Person and that are Excluded Assets but excluding those released, exculpated or waived pursuant to this Plan, the DIP Order, Asset Purchase Agreement, Term Sheet and/or the Sale Order.

24.    "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, including all adversary proceedings pending in connection therewith, which cases are jointly administered under Case Number 07-11666 (KG).

25. "Claim" has the same meaning as that term is defined in Bankruptcy Code section 101(5).

26. "Claimholder" means the Holder of a Claim.

27. "Claims Agent" means The BMC Group, Inc, the claims agent appointed pursuant to the Bankruptcy Court's Order dated November 9, 2007.

28. "Class" means any group of Holders of Claims or Interests as classified in Article 2 of this Plan.

29. "Closing Date" shall mean December 21, 2007.

30. "Committee" means the Official Unsecured Creditors' Committee appointed by the Office of the United States Trustee in these Chapter 11 Cases pursuant to Bankruptcy Code section 1102, by notice filed November 16, 2007.

31. "Committee Member" means a Person serving on the Committee on the Confirmation Date.

32. "Confirmation" means entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court.

33. "Confirmation Date" means the date on which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court.

34. "Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of this Plan. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice.

35. "Confirmation Order" means the Order confirming this Plan (as may be amended or modified) pursuant to Bankruptcy Code section 1129.

36. "Contingent" means, with reference to a Claim, a Claim that has not accrued at the time in question, or is not otherwise currently payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

37. "Creditor" means any Person who holds a Claim against one or more of the Debtors.

38. "Cure" means the distribution of Cash by the Purchaser, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to Bankruptcy Code section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under

6

such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

39.  "Debtor(s)" means, collectively or individually, INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

40.  "Designated Contracts" has the meaning ascribed to it in the Asset Purchase Agreement.

41.  "DIP Facility" has the meaning ascribed to it in the Final DIP Order.

42.  "DIP Lender" has the meaning ascribed to it in the Final DIP Order.

43.  "Disclosure Statement" means the document filed in connection with these Chapter 11 Cases pursuant to Bankruptcy Code section 1125 and approved by the Bankruptcy Court as containing "adequate information," as that term is defined in Bankruptcy Code section 1125(a)(1), and any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

44.  "Disputed" means any portion of a Claim, Administrative Claim, or Interest that is not Allowed, including without limitation, any Claim designated as disputed, contingent or unliquidated in the Debtors' schedules filed in connection with this case, or any Claim, Administrative Claim, or Interest with respect to which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

45.  "Distribution" means any distribution made pursuant to this Plan and Litigation Trust Agreement, including payments made pursuant to this Plan to Holders of Administrative and Priority Claims.

46.  "Distribution Date" means the date for Distribution occurring as soon as practicable after the Effective Date.

47.  "Effective Date" means the effective date for confirmation of the Plan and shall be the first Business Day on which all of the conditions set forth in Article IX.B have been satisfied or waived in accordance with Article IX.C.

48.  "Entity" shall have the meaning set forth in Bankruptcy Code section 101(15).

49.  "Estates" means the Debtors' bankruptcy estates created in these Chapter 11 Cases pursuant to Bankruptcy Code section 541.

50.  "Estate Assets" means, collectively, all of the legal and equitable rights in and to all assets, property, interests and affects, real and personal, tangible and intangible,

7

wherever situated, held at any time by the Estates including, without limitation, Excluded Assets and all Causes of Action, and all rights and appurtenances thereto and proceeds thereof, and which shall, on the Effective Date, be irrevocably assigned, transferred and conveyed to the Litigation Trust.

51.     "Excluded Assets" shall have the meaning ascribed in the Asset Purchase Agreement.

52.     "Excluded Liabilities" shall have the meaning ascribed in the Asset Purchase Agreement.

53.     "Executory Contract" means any executory contract or unexpired lease of real or personal property, as contemplated by Bankruptcy Code section 365 that was unexpired, not terminated, and otherwise in effect on the Petition Date, between the Debtors and any Person, and including, without limitation, any written employment agreements or plans and employee benefit plans and agreements.

54.     "Final Decree" means, with respect to each of these Chapter 11 Cases, a Final Order of the Bankruptcy Court closing the bankruptcy case.

55.     "Final Distribution" means the Distribution by the Litigation Trustee, which exhausts the Estate Assets (except for any holdback for costs of administering the Litigation Trust) held by the Litigation Trust.

56.     "Final Order" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with these Chapter 11 Cases or proceedings therein, which has not been reversed, stayed, modified or amended and as to which the time period to appeal or to seek certiorari, review or rehearing (except under Bankruptcy Rule 9024) has passed.

57.     "Final Tax Day" means, with respect to the Estates, the last day which shall be included in a taxable year for which an income tax return is required to be filed by the Estates or the Litigation Trustee.

58.     "General Unsecured Claim" means a Claim arising on or before the Petition Date that is neither an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, nor Late Claim.

59.     "Held Contract" shall have the meaning ascribed to it in Section 2.5(b) of the Asset Purchase Agreement.

60.     "Holder" means the beneficial owner of any Claim or Interest.

61.     "Impaired" means, when used with reference to a Claim or Interest, that such Claim or Interest is impaired within the meaning of Bankruptcy Code section 1124.

62.     "Insider" shall have the meaning set forth in Bankruptcy Code section 101(31)(B).

8

63.    "Interest" means any "equity security" interest in the Debtors held by any "equity security holder" as those terms are defined in Bankruptcy Code sections 101(16) and (17).

64.    "Late Claim" means a Claim filed after the Bar Date or after any filing deadline applicable to such Claim.

65.    "Lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

66.    "Litigation Trust" means that trust which, after the Effective Date, will hold title to, control, and administer all property of the Debtors and their Estates including, without limitation, the Estate Assets, in accordance with the terms hereof, the Confirmation Order, and the Litigation Trust Agreement, orders entered by the Bankruptcy Court, and applicable law.

67.    "Litigation Trust Agreement" means that certain "SN Liquidation, Inc. *et al.* Litigation Trust Agreement," a true and correct copy of which is attached hereto and incorporated herein as Exhibit 1.

68.    "Litigation Trust Expenses" means all expenses, debts, charges, taxes, liabilities and obligations related to administration of the Trust, including without limitation, the compensation payable to the Litigation Trustee and those professionals retained by the Litigation Trustee to assist in the implementation and consummation of the terms of this Plan and the Litigation Trust Agreement and all costs and expenses of (a) taking possession of, holding, maintaining, liquidating or distributing the Estate Assets that shall be transferred to or invested in the Litigation Trust, and (b) prosecuting, defending, settling or otherwise resolving any disputes regarding the Estate Assets and the Distribution of the Estate Assets from the Litigation Trust. Without limiting the generality of the foregoing, Litigation Trust Expenses shall also mean and include, without limitation: (i) any and all costs, expenses and fees (including, without limitation, all reasonable professional fees) incurred by the Litigation Trust or Litigation Trust Professionals in performing its duties hereunder.

69.    "Litigation Trust Interests" means the interests in the Litigation Trust to be distributed to Holders of Allowed General Unsecured Claims pursuant to this Plan.

70.    "Litigation Trust Professionals" means the agents, financial advisors, attorneys, consultants, independent contractors, representative and other professionals of the Litigation Trust.

71.    "Litigation Trustee" means Morton Branzburg, Esquire, and any successors appointed to act as the trustee and representative of the Litigation Trust and thereby implement the provisions of the Litigation Trust Agreement.

72.    "Person" shall have the meaning set forth in Bankruptcy Code section 101(41).

73.     "Petition Date" means November 8, 2007, the date of commencement of these Chapter 11 Cases under chapter 11 of the Bankruptcy Code.

74.     "Plan" means this plan, and any exhibits annexed hereto and any documents delivered in connection herewith as the same may be amended or modified from time to time by any duly authorized amendment or modification.

75.     "Priority Non-Tax Claim" shall mean an Allowed Claim that is entitled to priority under Bankruptcy Code section 507(a)(3) through section 507(a)(7).

76.     "Priority Tax Claim" means an Allowed Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

77.     "Professional" means any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327 or 1103 and any Professional seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(4).

78.     "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

79.     "Pro Rata" means the proportion that an Allowed Claim or Administrative Claim bears to the aggregate amount of all Allowed Claims or all Allowed Administrative Claims, as appropriate, calculated in accordance with the provisions of this Plan.

80.     "Rejected Contract" shall have the meaning ascribed to it in the Asset Purchase Agreement.

81.     "Sale Order" shall refer to that Final Order (I) Approving Asset Purchase Agreement ands Authorizing the Sale of Assets of Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief, dated December 13, 2007.

82.     "Secured Lender" means Adeptio.

83.     "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

84.     "Security" shall have the meaning ascribed to it in Bankruptcy Code section 101(49).

85.     "SN Liquidation" means the Debtor formerly known as Star Number, Inc.

86.     "Subordinated Claim" means any Claim subordinated pursuant to Bankruptcy Code section 510(b) or (c).

87.     "Termination" means, with respect to the Adeptio Loan, that Adeptio's obligations to fund under the Adeptio Loan cease.

88.     "Term Sheet" shall refer to that certain Settlement Term Sheet by and among the Debtors, the Committee and Adeptio and approved by the Sale Order and the order of the Bankruptcy Court dated December 20, 2007, pursuant to which, among other things, in full and final settlement and satisfaction of all Adeptio claims in the case (including secured and unsecured), Adeptio shall be given a $20 million allowed unsecured claim under the Plan. A copy of the Term Sheet is attached hereto as Exhibit 2 and is incorporated herein by reference.

89.     "Trust Assets" means all property of, vested in, controlled by, belonging to or in the possession of the Litigation Trust including, without limitation, the Estate Assets assigned, transferred and conveyed to the Litigation Trust on the Effective Date.

90.     "Trust Oversight Committee" shall have the meaning ascribed to that term in the Litigation Trust Agreement.

91.     "Trustee Fee Claim" means a Claim of the Office of the United States Trustee for the payment of Trustee Fees.

92.     "Trustee Fees" means all fees payable pursuant to 28 U.S.C. § 1930(a)(6).

93.     "Unclassified Claims" means Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Professional Fee Claims.

94.     "Unimpaired" means a Claim or Interest that is not impaired within the meaning of Bankruptcy Code section 1124.

95.     "Voting Deadline" means the deadline for voting to either accept or reject this Plan as fixed by the Bankruptcy Court in an order approving the Disclosure Statement or otherwise.

96.     Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Litigation Trust Agreement shall have the meaning set forth therein.

### C.     **Rules of Interpretation**

For purposes of this Plan (i) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or

11

supplemented, (iii) in the event an inconsistency exists between this Plan and the Sale Order, APA, and Term Sheet, the terms of the Sale Order, APA, and Term Sheet shall govern and are not altered in any way, (iv) unless otherwise specified, all references in this Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to this Plan, (v) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan and (vii) to the extent not modified herein, the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

### D.    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Delaware shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan and (ii) the laws of the state of incorporation or formation, as appropriate, of each Debtors shall govern corporate and limited liability governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    <u>Introduction</u>

All Claims and Interests, except Administrative Claims, Priority Tax Claims and Trustee Fee Claims are placed in the Classes set forth below.   In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, withdrawn, waived, settled or otherwise satisfied prior to the Effective Date.

The Proponents have set forth the Classes below.  Pursuant to this Plan, the Estates shall be substantively consolidated on the Effective Date.  The Proponents reserve the right to seek confirmation of this Plan with respect to each of the Debtors separately and to dismiss any Chapter 11 Case through the Confirmation Order.

### B.    <u>Unsolicited Claims (not entitled to vote on this Plan)</u>

1.    <u>Administrative Claims</u>

2.    <u>Priority Tax Claims</u>

3.    <u>Trustee Fee Claims</u>

    **C.**    **Unimpaired Classes of Claims (deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan)**

        1.    Class 1: Other Secured Claims

        2.    Class 2: Priority Non-Tax Claims

    **D.**    **Impaired Classes of Claims (shall be permitted to vote on this Plan)**

        1.    Class 3: Secured Lender Claims

        2.    Class 4: General Unsecured Claims

    **E.**    **Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)**

        1.    Class 5: Intercompany Claims

        2.    Class 6: Equity Interests

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

    **A.**    **Unclassified Claims**

        1.    Administrative Claims

Except as otherwise provided herein, subject to the requirements of this Plan, the APA, the Sale Order, and Term Sheet, on, or as soon as reasonably practicable after the later of (i) the repayment in full and Termination of the Adeptio Loan; (ii) the Distribution Date or (iii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors and shall have agreed upon.  All unpaid Allowed Administrative Claims shall be paid interest from the Effective Date to the date of distribution at the published L.I.B.O.R. rate of interest as of the Effective Date plus 4%.

14

Allowed Administrative Claims total an estimated $1,800,000. Of that total, $700,000 in Allowed Administrative Claims remain unpaid. Currently, the Estates do not have sufficient cash to make a distribution to Holders of Allowed Administrative Claims. The payment of unpaid Allowed Administrative Claims will be funded by the proceeds, if any, of any Litigation or Causes of Action commenced by the Committee or Litigation Trust.

Subject to repayment in full and Termination of the Adeptio Loan, proceeds, if any, once recovered by the Litigation Trust will be used to pay Allowed Administrative Claims with interest as provided above. If there are insufficient proceeds to pay the Holders of the unpaid Allowed Administrative Claims, such Holders will receive a Pro Rata distribution and distributions thereafter from the Litigation Trust to the extent the proceeds are available until fully paid, before which there shall be no distributions to Holders of General Unsecured Claims on account of such claims. This Plan may be confirmed only if the Holders of unpaid Administrative Claims consent to such treatment. If Holders of unpaid Administrative Claims do not object to this Plan, they are deemed to consent to the treatment proposed herein upon entry of an order confirming this Plan.

      2.     Priority Tax Claims

On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Tax Claim, or (iii) the date such Allowed Priority Tax Claim becomes payable pursuant to any agreement between the Litigation Trustee and each Holder of an Allowed Priority Tax, each Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of such Allowed Priority Tax claim or (b) such other treatment as to which the Allowed Priority Tax Claim Holder and the Litigation Trustee shall have agreed in writing. The

15

Debtors estimate that the Allowed Priority Tax Claims will not exceed $500,000. To the extent that Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims exceed $500,000, the Holders of Allowed Priority Tax Claims shall receive their Pro Rata share of such differential, which shall be paid by the Litigation Trust in regularly quarterly distributions over the time period set forth 1129(a)(9)(C)(ii) to the extent the Litigation Trust contains sufficient Cash. In the event an Allowed Priority Tax Claims is not paid on the Distribution Date, the Holders thereof will be paid interest on such Priority Tax Claim accruing from the Distribution Date to the date of actual distribution at the interest rate set forth in 26 U.S.C. §§ 6621 and 6622 as of the Effective Date. Adeptio shall make available up to $500,000 solely for the purpose of making distributions on account of Allowed Priority Claims; provided, however, that Adeptio shall make payments on account of Allowed Priority Claims only to the extent such claims are allowed and only as requested by the Debtors on or before the Effective Date or by the Litigation Trustee if the request is made after the Effective Date.

3.    Trustee Fee Claims

All Trustee Fee Claims will be satisfied on or before the Effective Date. The Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-confirmation reports.

**B.    Unimpaired Claims**

1.    Class 1: Other Secured Claims

On, or as soon as reasonably practicable after, the later of: (i) the repayment in full and Termination of the Adeptio Loan; (ii) the Distribution Date; (iii) the date such claim becomes an Allowed Other Secured Claim; or (iv) the date such Other Secured Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Other Secured Claim, a Holder of a Secured Claim, other than a Secured Lender Claim,

16

shall receive either (i) Cash equal to the amount of the Allowed Other Secured Claim; (ii) the collateral which secures its claim; or (iii) such other treatment as to which the Debtors and the Holder of an Allowed Other Secured Claim agrees in writing, on the later of the Effective Date or the date such Claim becomes an Allowed Other Secured Claim. The Debtors estimate that no Allowed Other Secured Claims exist. To the extent there is collateral securing Allowed Secured Claims, the priority of such security interest or lien shall not be affected or "primed" by the Adeptio Loan.

      2.    <u>Class 2:  Priority Non-Tax Claims</u>

On, or as soon as reasonably practicable after, the latest of: (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Non-Tax Claim; or (iii) the date such Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim (i) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such other treatment as to which the Litigation Trustee and such Holder shall have agreed upon in writing. The Debtors estimate that no Allowed Priority Non-Tax Claims exist. Adeptio shall make available up to $500,000 solely for the purpose of making distributions on account of Allowed Priority Claims; provided, however, that Adeptio shall make payments on account of Allowed Priority Claims only to the extent such claims are Allowed and only as requested by the Debtors on or before the Effective Date or by the Litigation Trustee if the request is made after the Effective Date.

C.    **Impaired Claims Entitled to Vote**

1.    Class 3:  Secured Lender Claims

On the Effective Date, pursuant to the Term Sheet and subject to the terms of the Term Sheet, in exchange for and in full satisfaction, settlement, release and discharge of the Secured Lender's Allowed Secured Lender Claim, the Secured Lender shall receive an Allowed Deficiency Claim in the amount of Twenty Million Dollars ($20,000,000), which entitles the Secured Lender to a Pro Rata share of the interests in the Litigation Trust Interests to be distributed to the Holders of Allowed General Unsecured Claims in Class 4.

2.    Class 4:  General Unsecured Claims

Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Litigation Trust Interests, which shall entitle the holder of a Litigation Trust Interest to its Pro Rata share of any distributions (up to the amount of such holder's Allowed General Unsecured Claim) made by the Litigation Trust after satisfaction in full of the Adeptio Loan, all Liquidation Expenses, unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.  Distributions on Litigation Trust Interests shall be made in accordance with and pursuant to the Litigation Trust Agreement and shall be made by the Litigation Trust at such times and in such amounts as the Litigation Trustee, after consultation with the Litigation Trust Committee, shall determine.   The Debtors believe there are a total of approximately $350,718,352 in General Unsecured Claims.

D.    **Impaired Classes of Claims (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)**

1.    Class 5:  Intercompany Claims

On the Confirmation Date or such other date as may be set by an order of the Court, but subject to the occurrence of the Effective Date, all Intercompany Claims shall be deemed

expunged and extinguished. The Holders of Intercompany Claims shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims. Class 5 is deemed to have rejected this Plan and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject this Plan.

### E. Impaired Classes of Interests (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)

1. Class 6: Equity Interests

On the Effective Date, all Equity Interests shall be canceled and each Holder thereof shall not be entitled to, and shall not receive or retain any property or interest in property on account of, such Equity Interests. Class 6 is deemed to have rejected this Plan and, therefore, Holders of Equity Interests are not entitled to vote to accept or reject this Plan.

### F. Allowed Claims

Notwithstanding any provision herein to the contrary, the Litigation Trustee shall only make distributions to Holders of Allowed Claims. No Holder of a Disputed Claim will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. SN Liquidation and/or the Litigation Trustee may, in its or their discretion, withhold distributions otherwise due hereunder to any Claimholder until its Claim becomes an Allowed Claim. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution in accordance with the terms and provisions of this Plan and the Litigation Trust Agreement.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Impaired Classes of Claims Entitled to Vote

Subject to Article III of this Plan, Claimholders in each Impaired Class of Claims are entitled to vote as a Class to accept or reject this Plan.

### B.    Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### C.    Presumed Acceptances by Unimpaired Classes

In accordance with Bankruptcy Code section 1124, Holders of Class 1 Other Secured Creditor Claims and Class 2 Priority Non-Tax Claims are not Impaired by this Plan.  Under Bankruptcy Code section 1126(f), and each Holder of a Class 1 and 2 Claim is presumed to have accepted this Plan, and the votes of such Claim Holders will not be solicited.

### D.    Classes Deemed to Reject Plan

Holders of Claims and Interests in Classes 5 and 6 are not entitled to receive or retain any property under this Plan.  Under Bankruptcy Code section 1126(g) of the, Class 5 Claim Holders and Class 6 Interest Holders are deemed to reject this Plan, and the votes of such Claim or Interest Holders will not be solicited.

### E.    Summary of Classes Voting on this Plan

As a result of the provisions of Article III of this Plan, only the votes of Holders of Claims in Classes 3 and 4 will be solicited with respect to this Plan.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtors and the Litigation Trust will implement and consummate this Plan through the means set forth in the Term Sheet and contemplated by Bankruptcy Code sections 1123(a)(5)(B) and (D), 1123(b)(3)(A) and (B), and 1123(b)(4).

### A.    Sale

This Plan completes the implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' assets and the pursuit of the Estates' Causes of Action via the Litigation Trust.

### B.    Corporate Action

#### 1.    Merger of Debtors

Pursuant to Section 303 of the Delaware General Corporation Law (8 Del. C. § 303), on the Effective Date, (a) the members of the board of directors or managers, as the case may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned; (b) each of the Debtors shall be merged with and into SN Liquidation without the necessity of any other or further action to be taken by or on behalf of the Debtors.

#### 2.    Continued Corporate Existence

On the Effective Date, immediately after (i) the merger of the other Debtors into SN Liquidation and (ii) the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be dissolved under applicable state law, and the Debtors shall be entitled to use the Confirmation Order as evidence of the authority to terminate the Debtors' corporate existence and to make all necessary filings associated therewith.

{BAY:00815666v18}

3.    Retention of Wind Down Specialist

Clear Thinking Group, Joseph Myers and Joseph Pardo will continue to be employed on current terms until the Effective Date in order to facilitate the orderly Wind Down of the Debtors' Estates.

**C.    Post-Effective Date Compensation of Professionals**

The Professionals employed by the Debtors, the Committee, and the Litigation Trust shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date preparation, filing and prosecution of final fee applications, upon the submission of invoices to the Litigation Trustee.    Any time or expenses incurred in the preparation, filing and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Bankruptcy Court.

**D.    Sources for Plan Distribution**

All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to this Plan shall be obtained from the following sources:  (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action; (d) Adeptio's funding obligations pursuant to the Sale Order and Term Sheet, including the: (i) Professional Funding; (ii) Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with the terms of such Term Sheet.  The Term Sheet, which is attached hereto as Exhibit 2 and is incorporated herein by reference, provides that upon the closing of the APA, Adeptio shall fund (i) the administrative costs of maintaining the Debtors' estates post closing in the amount of $200,000 (the "Wind Down Funding") and (ii) the costs of professional fees necessary to investigate the viability of Avoidance Actions and other Causes of Action and commence and prosecute such litigation, if appropriate, that the Debtors' estates through a Litigation Trust may

22

possess through a senior secured loan (which shall accrue interest as ruled by the Court) of up to a total $500,000, in accordance with the terms set forth in the Term Sheet (the "Investigation Funding") which amount shall be secured by all assets of the Litigation Trust and shall be repaid first from the proceeds paid to the Litigation Trust. The terms of the Investigation Funding are more fully set forth in the Adeptio Loan Agreement Term Sheet attached hereto as Exhibit 3 and incorporated herein by reference.

E.    **Litigation Trust**

On the Effective Date, the Litigation Trust shall be created pursuant to the Litigation Trust Agreement. Morton Branzburg, Esquire, shall be appointed as the initial Litigation Trustee.

1.    Sources of Litigation Trust Funding

(a)    Investigation Funding. Pursuant to the Term Sheet, upon formation of the Litigation Trust, Adeptio shall fund the costs of professional fees necessary to investigate, commence and prosecute Causes of Action, through the Adeptio Loan.

(b)    Transfer of Estate Assets. Pursuant to the Term Sheet, upon the formation of the Litigation Trust, all Estate Assets and the proceeds thereof shall be transferred to the Litigation Trust, as set forth and defined in the Term Sheet. Other than in connection with the Investigation Funding, the Estate Assets shall be deemed vested in and become property of the Litigation Trust free and clear of all claims, liens, encumbrances and interests of Adeptio or the Debtors subject to the terms of this Plan. These Estate Assets include, without limitation, those set forth in the Notice of Circumstances sent by the Debtors on November 29, 2007 to its

23

respective directors and officers liability insurance carriers and the supplemental letter sent by Committee counsel dated November 30, 2007 to such liability insurance carriers.  From and after the transfer of all such rights to the Litigation Trust, pursuant to Bankruptcy Code section 1123(b)(3) and the terms of the Litigation Trust Agreement, the Litigation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, or Causes of Action in accordance with the best interests of and for the benefit of the beneficiaries of the Litigation Trust.  Such transfers shall be free and clear of any Claims, Interests, or Encumbrances, except the rights of the beneficiaries of the Litigation Trust hereunder and under the Litigation Trust Agreement and except as expressly provided in this Plan.

(c)      Priority Claims Funding.  Upon the Effective Date, Adeptio shall make available to the Litigation Trust up to a total $500,000 solely for the purpose of making distributions under this Plan on account of Allowed Priority Claims as such claims become allowed pursuant to the terms and conditions of Bankruptcy Code section 1129(a)(9).

2.      Litigation Trust Operation

(a)      Quarterly Reports.  As soon as practicable after each calendar quarter, and in no event later than thirty (30) days after the end of each quarter, the Litigation Trustee shall submit to the United States Trustee and any Beneficiary who requests copies of such quarterly report after the Effective Date, an unaudited written report and account showing: (a) the assets and liabilities of the Litigation Trust, (b) any Distributions made

24

and Liquidation Trust Expenses paid pursuant to this Plan and the Litigation Trust Agreement, (c) any changes in the Estate Assets that have not been previously reported, and (d) any material action taken by the Litigation Trustee in the performance of his or her duties under the Litigation Trust Agreement that have not been previously reported.

(b)     Disbursing Agent.  The Litigation Trust or its nominee shall serve as the disbursing agent under this Plan and shall make all Distributions provided for under this Plan.  Pursuant to the terms of the Litigation Trust Agreement, the Litigation Trust shall maintain a reserve in trust for the payment of any accrued and anticipated Liquidation Trust Expenses of the Litigation Trust and any Disputed Claims.

(c)     Litigation Trustee Appointment of Professionals.  The Litigation Trust is authorized, without further order of the Bankruptcy Court, to employ such persons, including professionals, as it may deem necessary to enable it to perform its functions hereunder, and the costs of such employment and other expenditures shall be paid from the Litigation Trust.  Such persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses from the Litigation Trust without further notice, hearing or approval of the Bankruptcy Court.

(d)     Liquidation of Causes of Action.  Notwithstanding any other term or provision of this Plan, subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall have sole authority and

responsibility for investigating, analyzing, and if appropriate, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering the Causes of Action.

(e)    Objection to and Compromise of Claims.  Pursuant to Bankruptcy Rule 9019(b), this Plan and the Litigation Trust Agreement, as of the Effective Date (i) the Litigation Trustee is authorized to object to or approve compromises of the Causes of Action and all Claims, Disputed Claims and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court.

(f)    Distribution.  Distribution of proceeds shall be made in accordance with the Term Sheet, this Plan, the Confirmation Order, and the Litigation Trust Agreement.

(g)    Reserve for Disputed Claims.  For purposes of calculating Pro Rata or any other distributions to be made under this Plan to Holders of Allowed Claims, the calculation of the total Allowed Claims in any Class shall be computed as if all Disputed Claims then pending were allowed in the full amount thereof.

(h)    Allowance of Disputed Claims.  Distributions shall be made with respect to any Disputed Claim which becomes an Allowed Claim after the Effective Date on or as soon as practicable after the date on which each such Disputed Claim becomes an Allowed Claim.  The amount of such distribution shall be calculated on a Pro Rata basis, so that the subject

26

Claim receives an initial distribution equal to the total percentage distributions made prior to the date of such allowance to other Allowed Claims in its Class.  No interest shall be payable to the Holders of Disputed Claims on account of funds reserved by the Litigation Trust, if any, under this Plan to satisfy such Disputed Claims.

(i)     Final Distribution.   The Litigation Trustee shall cause the distribution of all remaining available assets, if any, of the Litigation Trust to the Holders of Allowed Claims, after repayment in full and Termination of the Adeptio Loan, the payment of all Allowed Administrative Claims (with interest) and all of the debts and obligations of the Litigation Trust, and all unpaid Allowed Claims in Classes 1 and 2 of this Plan.  After making a final distribution, the Litigation Trust, acting through the Litigation Trustee, shall file a final report and account of all receipts and disbursements with the Bankruptcy Court and the United States Trustee. The Litigation Trustee shall be discharged from his or her obligations under this Plan or the Litigation Trust Agreement at such time as the Litigation Trust has terminated pursuant to its terms (or upon the Litigation Trustee's prior resignation or termination).

(j)     Means of Cash Payment.   Cash payments made pursuant to this Plan shall be paid by wire transfer or checks drawn on an account maintained by the Litigation Trust.

(k)     Release of Liens.   On the Effective Date, all Liens against the Estate Assets shall be fully and completely released and discharged and all

27

of the Estate Assets when transferred to the Litigation Trust shall be free and clear of any such Liens.

(l)     Cancellation of Notes, Instruments, Securities and Other Documentation.  On the Effective Date, all agreements (other than those established by the Term Sheet and assumed contracts or leases), credit agreements, prepetition loan documents, postpetition loan documents, and evidence of Liens shall be deemed to be canceled and of no further force and effect, without any further action on the part of the Debtors or the Litigation Trust.  The Holders of or parties to such canceled instruments, agreements, securities and other documentation will have no remaining rights against the Debtors, their Estates, or the Litigation Trust arising from or relating to such documents or the cancellation thereof except the right to receive distributions under this Plan.

(m)     Exemption from Certain Taxes.  Pursuant to Section 1146 of the Bankruptcy Code, all transactions, including the transfers described in this Plan, and the delivery and recordation of any instrument, under, in furtherance of, or in connection with this Plan shall not be subject to any stamp tax, real estate transfer tax or similar transfer fee or tax.

(n)     Other Tax Matters.  The Litigation Trust shall be treated as a grantor trust for federal income tax purposes, within the meaning of Sections 671 through 677 of the Internal Revenue Code.  Pursuant to and in accordance with this Plan, the Litigation Trustee shall be responsible for all tax matters of the Estates including, but not limited to, the filing of all

28

tax returns and other filings with governmental authorities on behalf of the Estates for time periods ending on or before the Final Tax Day, including the filing of tax returns for the Litigation Trust as a grantor trust pursuant to Section 1-671-4(a) of the United States Income Tax Regulations, the filing of any determination requests under Section 505(b) of the Bankruptcy Code, and responding to any tax audits of the Estates.  The Litigation Trustee shall provide such information to the beneficiaries as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law.  The Litigation Trustee is authorized to act as agent for the Estates in withholding or paying over any amounts required by law (including tax law), if any, to be withheld or paid by the Estates in connection with the transfer and assignment of the Estate Assets to the Litigation Trust pursuant to this Plan.

(o)    Except as otherwise set forth in the Litigation Trust Agreement or this Plan, any items of income, deduction, credit, or loss of the Litigation Trust shall be allocated for federal income tax purposes among the beneficiaries Pro Rata on the basis of their beneficial interests; provided, however, that to the extent any item of income cannot be allocated in the taxable year in which it arises, the Litigation Trust shall pay the federal, state and local taxes attributable to such income (net of related deductions) and the amount of such taxes shall be treated as having been received by, and paid on behalf of the beneficiaries when such allocations are made. The Litigation Trustee shall be entitled to deduct any federal or state

withholding taxes from any payments made with respect to Allowed Claims, as appropriate.

(p)    Duration of Trust.  The Litigation Trust shall continue to exist until such time as the Litigation Trustee has administered all assets of the Litigation Trust and performed all other duties required by this Plan and the Litigation Trust Agreement.  As soon as practicable after the Final Distribution Date, if any, or such other time as the Litigation Trustee deems appropriate, the Litigation Trustee may seek entry of a Final Order closing these Chapter 11 Cases pursuant to Bankruptcy Code section 350.

3.    <u>Claims Resolution</u>

The Litigation Trustee shall review and object to Claims as and when the Litigation Trustee deems appropriate taking into account, the funds available for distribution to Holders of a particular Class, the amount of such Claims, and any other issues that the Litigation Trustee deems appropriate.

4.    <u>Deadline for Filing of Administrative and Professional Fee Claims</u>

Any person asserting an Administrative Claim (other than a Professional Fee Claim) shall file an application therefore with the Bankruptcy Court not later than thirty (30) days after the Effective Date.

Any Person asserting a Professional Fee Claim shall file a fee application with the Bankruptcy Court not later than sixty (60) days after the Effective Date for professional services rendered and out-of-pocket costs incurred through the Effective Date.

Any Administrative Claim or Professional Fee Claim not filed within the deadlines set forth above shall be forever barred, and the Debtors and the Litigation Trust shall be discharged of any obligation on such Claim.

30

5.    Estimation of Claims

The Litigation Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to Bankruptcy Code sections 105 and 502(c) in the interests of expeditious administration of the Estates or the Litigation Trust regardless of whether an objection has been filed with respect to such Claim.  If the Bankruptcy Court estimates any Contingent, Disputed or unliquidated Claim, the estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, at the option of the Litigation Trustee.  If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may pursue any supplemental proceedings to object to the allowance and ultimate distribution on such Claim after reservation for such claim.  If the estimated amount is treated as the Allowed Amount of such claim, such claim shall be paid only up to an amount not to exceed the estimated amount, even if such Claim, as finally allowed, exceeds the maximum estimated amount thereof.  Furthermore, neither the Litigation Trust nor the Litigation Trustee shall have any liability to such claimant.  Unless otherwise ordered by the Bankruptcy Court, resolution or compromise of estimated Claims shall be done pursuant to this Plan.  All Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  The Committee  and the Debtors, shall have the right to move the Bankruptcy Court for disallowance of any Claim for voting purposes.

6.    Late Claims

No Distribution shall be made on account of any Claims filed after the Bar Date, unless specifically allowed by Final Order of the Bankruptcy Court after notice and opportunity for hearing.

{BAY:00815666v18}

7.    <u>Procedures for Treatment and Resolving Disputed, Contingent and/or Unliquidated Claims</u>

(a)    Notwithstanding any other provision of this Plan, no property shall be distributed under this Plan on account of all or any portion of any Disputed Claim, or any Claim that is contingent or unliquidated.

(b)    Pursuant to Section V.E.2(e) of this Plan, from and after the Effective Date, the Litigation Trustee shall be authorized and shall have the exclusive right to file and serve all objections to the allowance of any Claim.  The Litigation Trustee is exclusively authorized to take all actions necessary or advisable to pursue, settle or compromise any such Disputed Claims.

(c)    At such time as a Disputed Claim becomes an Allowed Claim, (i) the Holder of such Allowed Claim shall receive a distribution, in the same Pro Rata amount as other members of its Class have already received, without interest.  Such distribution, if any, shall be made within thirty (30) days of the date that the order or judgment of the Bankruptcy Court allowing such Claim become a Final Order (or as soon as practicable thereafter).

(d)    Except with respect to Estimated Claims, or at the discretion of the Litigation Trustee, no partial distributions will be made with respect to a Disputed Claim until all disputes with respect to such Disputed Claim have been resolved by a Final Order and have become Allowed Claims.

32

8.    <u>Claims Reserve</u>

After the Effective Date, the Litigation Trustee shall deposit any available Cash into the claims reserve ("<u>Claims Reserve</u>") in an amount reasonably sufficient, in the Litigation Trustee's sole discretion, to pay without interest all Disputed Claims that may become Allowed Claims and to pay any post-confirmation tax liability, Trustee Fees, professional fees and other expenses or costs that the Trustee, in his sole discretion, believes may be incurred.

9.    <u>Setoffs</u>

The Litigation Trustee may, pursuant to Bankruptcy Code section 553 and applicable non-bankruptcy law, set off against any distribution to the Holder of an Allowed Claim, the claims, rights and Causes of Action that the Litigation Trust may hold against the Holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Litigation Trustee of any such claims, rights and causes of action that the Trustee may possess against such Creditor.  Creditors shall maintain their setoff rights existing prior to the Filing Date, but such setoff rights may be exercised only with prior Bankruptcy Court approval.  The Litigation Trustee shall not have the authority to effectuate any setoff right against Adeptio or any of its affiliates except to the extent such setoff arises on account of a dispute in connection with the Plan, Final Sale Order, APA, and Term Sheet, including with respect to Adeptio's or Simplexity's obligations thereunder. Adeptio and its affiliates reserve all rights to contest such assertions.

10.    <u>Undeliverable and Unclaimed Distributions</u>

Unclaimed and undeliverable distributions shall include: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (ii) checks (and the funds represented thereby) which have been issued to the Holder of an Allowed Claim in accordance with this Plan but which have not been presented for payment

33

within ninety (90) days after the date of such checks, and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a complete or correct mailing address.  If any distribution made on account of an Allowed Claim is returned to the Litigation Trustee as undeliverable, no further distributions shall be made to such Creditor unless and until the Litigation Trustee is notified in writing of such Creditor's then-current address.  Subject to the following paragraph, undeliverable distributions shall remain in the possession of the Trustee until such time as such distribution becomes deliverable.  Undeliverable distributions shall not be entitled to any interest or other accruals of any kind.  Nothing in this Plan shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim.  Notwithstanding the foregoing, the Litigation Trustee shall retain the discretion to pay any Allowed Claim after the expiration of the Claiming Period.

In the event that any distribution on account of any Allowed Claim remains undeliverable or unclaimed for a period of ninety (90) days after the date of the check (the "Claiming Period"), the entire unpaid Allowed Claim upon which such distribution was issued shall, on the first (1st) Business Day after expiration of the Claiming Period, be deemed expunged and reduced to zero ($0) dollars for purposes of calculating any subsequent distribution.  The proceeds of all unclaimed and undeliverable distributions shall remain in the Litigation Trust's operating account and be distributed to the other Holders of Allowed Claims.

If, after payment of all Allowed Claims pursuant to this Plan and the expiration of the Claiming Period, the unclaimed distributions on deposit in the Litigation Trust's operating account equal $50,000.00 or less, the Litigation Trustee shall be authorized, without further order of the Court, to donate such sum to the United Way.  If such amount is $50,000.00 or greater, the

34

Trustee shall make a further distribution to Holders of Allowed Claims in accordance with the terms of this Plan.

11.    Transmittal of Distributions and Notice

Except as may otherwise be agreed among the Trustee and the Holder of a particular Claim, any distribution or notice to which the Holder of a Claim shall be or become entitled under the provisions of this Plan shall be delivered to such Holder by regular mail, postage prepaid, in an envelope addressed to the last known address maintained by the Debtors' Claims Agent from time to time, according to any respective proof of Claim, the Schedules (if no proof of Claim was filed), or any assignment of Claim or other written notice of change of address delivered to the Debtors' Claims Agent by such Holder.  Distributions and notices delivered in accordance herewith will be deemed delivered to the Creditor regardless of whether such distributions or notices are actually received by such Creditor.  To the extent that the Debtors' Claims Agent resigns or is terminated, any future changes of address shall be delivered to the Litigation Trustee and filed with the Bankruptcy Court.

12.    Distribution Dates

Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, on the next following Business Day.

13.    Payments of Less than $15.00

The Litigation Trustee shall not be required to make any distribution in an amount of less than $15.00.  The Litigation Trustee is authorized to round down all distributions under this Plan to the nearest $0.05.  To the extent that such a distribution shall be called for, the Litigation Trustee shall establish a reserve for all distributions in the amount of less than $15.00 and shall, when and if the Holder of a Claim is entitled to a distribution of $15.00 or more, make such a distribution at such time.

35

14.    Remainder of Funds in Reserve

If, in the Litigation Trustee's sole discretion, the Litigation Trustee determines that it is unnecessary to maintain funds in the Claims Reserve described in this Plan, then the Trustee shall deposit such funds, or transfer such remaining funds from the Claims Reserve, into the Litigation Trust's operating account.

15.    Execution of Documents

The Proponents are authorized and directed to execute any and all documents necessary to effectuate this Plan.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption of Insurance Policies; Assignment of Rights

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (the "Insurance Policies"), unless previously canceled or transferred to Adeptio, are treated as Executory Contracts under this Plan, and this Plan shall constitute a motion to assume the Insurance Policies and to assign all of the Estates' rights under such Insurance Policies to the Litigation Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2) and a finding by the Bankruptcy Court that such assumption is in the best interest of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors exiting as of the Confirmation Date because the Debtors are current. To the extent the Bankruptcy Court determines otherwise as to any of the Insurance Policies, the Debtors reserve the right to seek rejection of such insurance

36

policy or other available relief. For the avoidance of doubt, the Term Sheet and the APA are deemed assumed under this Plan, and are not rejected.

To the extent that rights and benefits under any Insurance Policies and agreements apply to Claims against the Debtors, which Claims, if Allowed, will be paid by the Liquidating Trust, such policies and agreements shall be assigned to the Litigation Trust.

**B.      Rejection of Other Executory Contracts**

On the Effective Date, all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to section 2.5(b) of the Asset Purchase Agreement), including without limitation, all written employment agreements, collective bargaining agreements, severance contracts, employee benefit or retirement or supplemental retirement benefit plans, indemnification agreements (whether discrete or set forth in other documents) and agreements and unexpired real or personal property leases of the Debtors, that are not the subject of a motion to assume or reject pending on the Effective Date, shall be deemed rejected by the Debtors as of the Petition Date. Further, on the Effective Date, all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date, shall be deemed rejected by the Debtors and such rejection shall be deemed to be effective as of July 19, 2008.

Each Person who is a party to an Executory Contract which was not previously rejected prior to the Effective Date or which is rejected pursuant to this Plan, shall be entitled to file a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract to which such Person is a party. All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date. All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date

37

and shall be pre-petition general unsecured claims subject to the provisions of the Bankruptcy Code, relevant rules and the Plan.

<h1 style="text-align:center">ARTICLE VII</h1>

<h2 style="text-align:center">DISALLOWANCE OF CONTRIBUTION CLAIMS</h2>

On the Effective Date, any Claim for reimbursement, indemnification, contribution or subrogation of an Entity that is liable with any Debtors on or that has secured the Claim of a Creditor not heretofore disallowed by order of the Bankruptcy Court shall be deemed disallowed to the extent (a) such Creditor's Claim against the Debtors is disallowed; (b) such Claim for reimbursement, indemnification, contribution or subrogation is contingent as of the Confirmation Date, including, without limitation, all Claims which are disallowed under Bankruptcy Code section 502(e); or (c) such Entity asserts a right of subrogation to the rights of such Creditor under Bankruptcy Code section 509 except as otherwise specifically provided therein.

<h1 style="text-align:center">ARTICLE VIII</h1>

<h2 style="text-align:center">CONFIRMATION AND CONSUMMATION OF THE PLAN PURSUANT TO<br/>BANKRUPTCY CODE SECTION 1129(b)</h2>

To the extent that any Impaired Class rejects this Plan or is deemed to have rejected this Plan, the Proponents will request confirmation of this Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b). The Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan exhibit or schedule, including the right to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

### A.    <u>Rule 9019(a) Settlement</u>

Except as otherwise provided in this Plan, this Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that were or could have been commenced against Debtors prior to the

38

date of entry of this Confirmation Order. Such settlement, as reflected in the relative distributions and recoveries or other benefits provided to Holders of Claims or Interests under this Plan, (i) will save the Debtors and their estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' estates and require substantial time to adjudicate, and (ii) have facilitated the creation and implementation of this Plan and benefits of the Debtors' estates and creditors.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.  <u>Conditions to Confirmation</u>

The following are conditions precedent to the occurrence of the Confirmation Date: (a) entry of an Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125; and (b) the proposed Confirmation Order shall be in form and substance acceptable to the Proponents.

### B.  <u>Conditions to Effective Date</u>

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with this Plan:

> (a)     The Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Proponents;

> (b)     The Confirmation Order shall provide that the Proponents are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the Litigation Trust Agreement and any other contracts, instruments, releases, or other agreements or documents created in connection with this Plan;

(c) The Litigation Trust Agreement shall be executed in form and substance reasonably acceptable to the Proponents;

(d) The Estate Assets shall have been transferred to the Litigation Trust; and

(e) The Adeptio Loan shall have been funded by Adeptio, or other arrangements with Adeptio satisfactory to the Proponents are made.

## C. <u>Waiver of Conditions</u>

Each of the conditions set forth in this Article may be waived in whole or in part by the Proponents. The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right the may be asserted at any time.

## ARTICLE X

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Hear and determine all Causes of Action, which Causes of Action are vital to the implementation and success of this Plan and constitute the only source of payment on account of General Unsecured Claims;

(b) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim not otherwise allowed under this Plan, including the resolution of any request

for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of an Claim;

(c)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4); provided, however, that from and after the Effective Date, the Litigation Trust Expenses may be paid without the necessity of application to or approval by the Bankruptcy Court (although any party in interest may challenge the reasonableness of any such Litigation Trust Expenses);

(d)     Hear and determine all matters with respect to the assumption or rejection of any Executory Contract to which any Debtor is a party or with respect to which any Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(e)     Effectuate performance of and payments under the provisions of this Plan;

(f)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, related to, these Chapter 11 Cases;

(g)     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in

41

connection with this Plan, the Disclosure Statement or the Confirmation Order;

(h)    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(i)    Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

(k)    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, including the Litigation Trust Agreement or the Adeptio Loan, which is critical to the implementation of this Plan;

42

(m)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

(n)     Except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(o)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(p)     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(q)     Modify this Plan at the request of the Proponents and as provided by applicable law;

(r)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(s)     Enter a Final Decree closing these Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### A.    <u>Modifications and Amendments</u>

The Proponents may alter, amend, or modify this Plan or any Plan exhibit under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of this Plan, as defined in Bankruptcy Code section 1101(2), the Proponents may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such

43

matters as may be necessary to carry out the purposes and effects of this Plan and such proceedings as do not materially adversely affect the treatment of Holders of the Claims under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### B.    Severability of Plan Provisions

If, prior to the Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan and the Term Sheet, as they may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

### C.    Adeptio Release

#### 1.    Estate Releases

**Notwithstanding anything contained herein to the contrary, on the Effective Date and effective as of the Effective Date, the Debtors, their professionals, employees, agents, and advisors shall provide a full release (and each entity so released shall be deemed released) to Adeptio and its non-natural affiliates and subsidiaries and each of their respective directors, officers, employees, members, attorneys, financial advisors,**

44

accountants, professionals, agents and representatives, each in their respective capacities as such, and their respective property from any and all causes of action, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors; nothing in this Plan releases any Retained Litigation Claims as set forth in the Term Sheet or Adeptio's or Simplexity's obligations under the Term Sheet, the APA or this Plan (the "<u>Adeptio Release</u>").  Pursuant to the Term Sheet, Adeptio and Simplexity will provide to the Litigation Trustee the books, records, files or other materials, or copies thereof, necessary to defend or otherwise resolve claims against the Debtors and to investigate and/or prosecute the claims and causes of action not sold and assigned to Adeptio and will provide access to personnel as reasonably necessary.  Adeptio and Simplexity also agree to work in good faith towards an agreement regarding the governance and constitution of the Litigation Trust.

2.    <b><u>Third Party Releases</u></b>

Subject to the occurrence of the Effective Date, any Holder of a Secured Lender Claim or a General Unsecured Claim and their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, by acceptance of the distributions to be received hereunder, will be presumed conclusively to have provided a full discharge and release to Adeptio and Simplexity, including their respective present members, officers, directors, employees, advisors, attorneys, and agents and their respective former members, officers, directors, employees, and agents if they are Transferred Employees, as that term is defined in the Asset Purchase Agreement (and their Affiliates to the extent set forth in section F below), from any and all

45

Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way whatsoever to the Debtors and these Chapter 11 Cases, including, but not limited to, those in any way related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Sale, this Plan, the Disclosure Statement, the Litigation Trust Agreement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with these Chapter 11 Cases or the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their gross negligence, willful misconduct or bad faith; provided, however, that the foregoing releases shall not apply to any Holder of a Secured Lender Claim or a General Unsecured Claim if such holder "opts out" of such releases by a timely written election set forth on such Holder's ballot.

Nothing in the Plan or Disclosure Statement or the order approving the Plan or Disclosure Statement shall (i) release or discharge any claims held by the U.S. Securities and Exchange Commission against any non-debtor(s) or (ii) enjoin or restrain the U.S. Securities and Exchange Commission from enforcing such claims against any non-debtor(s).