Book Page 110

Debtors estimate that the Allowed Priority Tax Claims will not exceed $500,000. To the extent that Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims exceed $500,000, the Holders of Allowed Priority Tax Claims shall receive their Pro Rata share of such differential, which shall be paid by the Litigation Trust in regularly quarterly distributions over the time period set forth 1129(a)(9)(C)(ii) to the extent the Litigation Trust contains sufficient Cash. In the event an Allowed Priority Tax Claims is not paid on the Distribution Date, the Holders thereof will be paid interest on such Priority Tax Claim accruing from the Distribution Date to the date of actual distribution at the interest rate set forth in 26 U.S.C. §§ 6621 and 6622 as of the Effective Date. Adeptio shall make available up to $500,000 solely for the purpose of making distributions on account of Allowed Priority Claims; provided, however, that Adeptio shall make payments on account of Allowed Priority Claims only to the extent such claims are allowed and only as requested by the Debtors on or before the Effective Date or by the Litigation Trustee if the request is made after the Effective Date.

3.    Trustee Fee Claims

All Trustee Fee Claims will be satisfied on or before the Effective Date. The Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-confirmation reports.

B.    **Unimpaired Claims**

1.    Class 1: Other Secured Claims

On, or as soon as reasonably practicable after, the later of: (i) the repayment in full and Termination of the Adeptio Loan; (ii) the Distribution Date; (iii) the date such claim becomes an Allowed Other Secured Claim; or (iv) the date such Other Secured Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Other Secured Claim, a Holder of a Secured Claim, other than a Secured Lender Claim,

16

shall receive either (i) Cash equal to the amount of the Allowed Other Secured Claim; (ii) the collateral which secures its claim; or (iii) such other treatment as to which the Debtors and the Holder of an Allowed Other Secured Claim agrees in writing, on the later of the Effective Date or the date such Claim becomes an Allowed Other Secured Claim. The Debtors estimate that no Allowed Other Secured Claims exist. To the extent there is collateral securing Allowed Secured Claims, the priority of such security interest or lien shall not be affected or "primed" by the Adeptio Loan.

        2.     Class 2: Priority Non-Tax Claims

On, or as soon as reasonably practicable after, the latest of: (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Non-Tax Claim; or (iii) the date such Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim (i) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such other treatment as to which the Litigation Trustee and such Holder shall have agreed upon in writing. The Debtors estimate that no Allowed Priority Non-Tax Claims exist. Adeptio shall make available up to $500,000 solely for the purpose of making distributions on account of Allowed Priority Claims; provided, however, that Adeptio shall make payments on account of Allowed Priority Claims only to the extent such claims are Allowed and only as requested by the Debtors on or before the Effective Date or by the Litigation Trustee if the request is made after the Effective Date.

17

**C.**     **Impaired Claims Entitled to Vote**

1.     Class 3:  Secured Lender Claims

On the Effective Date, pursuant to the Term Sheet and subject to the terms of the Term Sheet, in exchange for and in full satisfaction, settlement, release and discharge of the Secured Lender's Allowed Secured Lender Claim, the Secured Lender shall receive an Allowed Deficiency Claim in the amount of Twenty Million Dollars ($20,000,000), which entitles the Secured Lender to a Pro Rata share of the interests in the Litigation Trust Interests to be distributed to the Holders of Allowed General Unsecured Claims in Class 4.

2.     Class 4:  General Unsecured Claims

Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Litigation Trust Interests, which shall entitle the holder of a Litigation Trust Interest to its Pro Rata share of any distributions (up to the amount of such holder's Allowed General Unsecured Claim) made by the Litigation Trust after satisfaction in full of the Adeptio Loan, all Liquidation Expenses, unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.  Distributions on Litigation Trust Interests shall be made in accordance with and pursuant to the Litigation Trust Agreement and shall be made by the Litigation Trust at such times and in such amounts as the Litigation Trustee, after consultation with the Litigation Trust Committee, shall determine.  The Debtors believe there are a total of approximately $350,718,352 in General Unsecured Claims.

**D.**     **Impaired Classes of Claims (deemed to have rejected this Plan and, therefore, not entitled to vote on this Plan)**

1.     Class 5:  Intercompany Claims

On the Confirmation Date or such other date as may be set by an order of the Court, but subject to the occurrence of the Effective Date, all Intercompany Claims shall be deemed

Book Page 113

expunged and extinguished.  The Holders of Intercompany Claims shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims.  Class 5 is deemed to have rejected this Plan and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject this Plan.

**E.    Impaired Classes of Interests (deemed to have rejected
this Plan and, therefore, not entitled to vote on this Plan)**

1.    Class 6:  Equity Interests

On the Effective Date, all Equity Interests shall be canceled and each Holder thereof shall not be entitled to, and shall not receive or retain any property or interest in property on account of, such Equity Interests.  Class 6 is deemed to have rejected this Plan and, therefore, Holders of Equity Interests are not entitled to vote to accept or reject this Plan.

**F.    Allowed Claims**

Notwithstanding any provision herein to the contrary, the Litigation Trustee shall only make distributions to Holders of Allowed Claims.  No Holder of a Disputed Claim will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.  SN Liquidation and/or the Litigation Trustee may, in its or their discretion, withhold distributions otherwise due hereunder to any Claimholder until its Claim becomes an Allowed Claim.  Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution in accordance with the terms and provisions of this Plan and the Litigation Trust Agreement.

19

Book Page 114

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Impaired Classes of Claims Entitled to Vote

Subject to Article III of this Plan, Claimholders in each Impaired Class of Claims are entitled to vote as a Class to accept or reject this Plan.

### B.    Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### C.    Presumed Acceptances by Unimpaired Classes

In accordance with Bankruptcy Code section 1124, Holders of Class 1 Other Secured Creditor Claims and Class 2 Priority Non-Tax Claims are not Impaired by this Plan.  Under Bankruptcy Code section 1126(f), and each Holder of a Class 1 and 2 Claim is presumed to have accepted this Plan, and the votes of such Claim Holders will not be solicited.

### D.    Classes Deemed to Reject Plan

Holders of Claims and Interests in Classes 5 and 6 are not entitled to receive or retain any property under this Plan.  Under Bankruptcy Code section 1126(g) of the, Class 5 Claim Holders and Class 6 Interest Holders are deemed to reject this Plan, and the votes of such Claim or Interest Holders will not be solicited.

### E.    Summary of Classes Voting on this Plan

As a result of the provisions of Article III of this Plan, only the votes of Holders of Claims in Classes 3 and 4 will be solicited with respect to this Plan.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtors and the Litigation Trust will implement and consummate this Plan through the means set forth in the Term Sheet and contemplated by Bankruptcy Code sections 1123(a)(5)(B) and (D), 1123(b)(3)(A) and (B), and 1123(b)(4).

### A.    **Sale**

This Plan completes the implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' assets and the pursuit of the Estates' Causes of Action via the Litigation Trust.

### B.    **Corporate Action**

#### 1.    Merger of Debtors

Pursuant to Section 303 of the Delaware General Corporation Law (8 Del. C. § 303), on the Effective Date, (a) the members of the board of directors or managers, as the case may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned; (b) each of the Debtors shall be merged with and into SN Liquidation without the necessity of any other or further action to be taken by or on behalf of the Debtors.

#### 2.    Continued Corporate Existence

On the Effective Date, immediately after (i) the merger of the other Debtors into SN Liquidation and (ii) the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be dissolved under applicable state law, and the Debtors shall be entitled to use the Confirmation Order as evidence of the authority to terminate the Debtors' corporate existence and to make all necessary filings associated therewith.

Book Page 116

    3.    Retention of Wind Down Specialist

Clear Thinking Group, Joseph Myers and Joseph Pardo will continue to be employed on current terms until the Effective Date in order to facilitate the orderly Wind Down of the Debtors' Estates.

**C.**    **Post-Effective Date Compensation of Professionals**

The Professionals employed by the Debtors, the Committee, and the Litigation Trust shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date preparation, filing and prosecution of final fee applications, upon the submission of invoices to the Litigation Trustee. Any time or expenses incurred in the preparation, filing and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Bankruptcy Court.

**D.**    **Sources for Plan Distribution**

All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to this Plan shall be obtained from the following sources: (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action; (d) Adeptio's funding obligations pursuant to the Sale Order and Term Sheet, including the: (i) Professional Funding; (ii) Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with the terms of such Term Sheet. The Term Sheet, which is attached hereto as Exhibit 2 and is incorporated herein by reference, provides that upon the closing of the APA, Adeptio shall fund (i) the administrative costs of maintaining the Debtors' estates post closing in the amount of $200,000 (the "Wind Down Funding") and (ii) the costs of professional fees necessary to investigate the viability of Avoidance Actions and other Causes of Action and commence and prosecute such litigation, if appropriate, that the Debtors' estates through a Litigation Trust may

22

possess through a senior secured loan (which shall accrue interest as ruled by the Court) of up to a total $500,000, in accordance with the terms set forth in the Term Sheet (the "Investigation Funding") which amount shall be secured by all assets of the Litigation Trust and shall be repaid first from the proceeds paid to the Litigation Trust. The terms of the Investigation Funding are more fully set forth in the Adeptio Loan Agreement Term Sheet attached hereto as Exhibit 3 and incorporated herein by reference.

### E.    Litigation Trust

On the Effective Date, the Litigation Trust shall be created pursuant to the Litigation Trust Agreement. Morton Branzburg, Esquire, shall be appointed as the initial Litigation Trustee.

1.    Sources of Litigation Trust Funding

(a)    Investigation Funding.    Pursuant to the Term Sheet, upon formation of the Litigation Trust, Adeptio shall fund the costs of professional fees necessary to investigate, commence and prosecute Causes of Action, through the Adeptio Loan.

(b)    Transfer of Estate Assets.    Pursuant to the Term Sheet, upon the formation of the Litigation Trust, all Estate Assets and the proceeds thereof shall be transferred to the Litigation Trust, as set forth and defined in the Term Sheet.    Other than in connection with the Investigation Funding, the Estate Assets shall be deemed vested in and become property of the Litigation Trust free and clear of all claims, liens, encumbrances and interests of Adeptio or the Debtors subject to the terms of this Plan. These Estate Assets include, without limitation, those set forth in the Notice of Circumstances sent by the Debtors on November 29, 2007 to its

23

respective directors and officers liability insurance carriers and the supplemental letter sent by Committee counsel dated November 30, 2007 to such liability insurance carriers. From and after the transfer of all such rights to the Litigation Trust, pursuant to Bankruptcy Code section 1123(b)(3) and the terms of the Litigation Trust Agreement, the Litigation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, or Causes of Action in accordance with the best interests of and for the benefit of the beneficiaries of the Litigation Trust. Such transfers shall be free and clear of any Claims, Interests, or Encumbrances, except the rights of the beneficiaries of the Litigation Trust hereunder and under the Litigation Trust Agreement and except as expressly provided in this Plan.

(c)    Priority Claims Funding. Upon the Effective Date, Adeptio shall make available to the Litigation Trust up to a total $500,000 solely for the purpose of making distributions under this Plan on account of Allowed Priority Claims as such claims become allowed pursuant to the terms and conditions of Bankruptcy Code section 1129(a)(9).

2.    Litigation Trust Operation

(a)    Quarterly Reports. As soon as practicable after each calendar quarter, and in no event later than thirty (30) days after the end of each quarter, the Litigation Trustee shall submit to the United States Trustee and any Beneficiary who requests copies of such quarterly report after the Effective Date, an unaudited written report and account showing: (a) the assets and liabilities of the Litigation Trust, (b) any Distributions made

24

and Liquidation Trust Expenses paid pursuant to this Plan and the Litigation Trust Agreement, (c) any changes in the Estate Assets that have not been previously reported, and (d) any material action taken by the Litigation Trustee in the performance of his or her duties under the Litigation Trust Agreement that have not been previously reported.

(b)    Disbursing Agent.  The Litigation Trust or its nominee shall serve as the disbursing agent under this Plan and shall make all Distributions provided for under this Plan.  Pursuant to the terms of the Litigation Trust Agreement, the Litigation Trust shall maintain a reserve in trust for the payment of any accrued and anticipated Liquidation Trust Expenses of the Litigation Trust and any Disputed Claims.

(c)    Litigation Trustee Appointment of Professionals.  The Litigation Trust is authorized, without further order of the Bankruptcy Court, to employ such persons, including professionals, as it may deem necessary to enable it to perform its functions hereunder, and the costs of such employment and other expenditures shall be paid from the Litigation Trust.  Such persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses from the Litigation Trust without further notice, hearing or approval of the Bankruptcy Court.

(d)    Liquidation of Causes of Action.  Notwithstanding any other term or provision of this Plan, subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall have sole authority and

25

Book Page 120

responsibility for investigating, analyzing, and if appropriate, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering the Causes of Action.

(e)     Objection to and Compromise of Claims. Pursuant to Bankruptcy Rule 9019(b), this Plan and the Litigation Trust Agreement, as of the Effective Date (i) the Litigation Trustee is authorized to object to or approve compromises of the Causes of Action and all Claims, Disputed Claims and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court.

(f)     Distribution. Distribution of proceeds shall be made in accordance with the Term Sheet, this Plan, the Confirmation Order, and the Litigation Trust Agreement.

(g)     Reserve for Disputed Claims. For purposes of calculating Pro Rata or any other distributions to be made under this Plan to Holders of Allowed Claims, the calculation of the total Allowed Claims in any Class shall be computed as if all Disputed Claims then pending were allowed in the full amount thereof.

(h)     Allowance of Disputed Claims. Distributions shall be made with respect to any Disputed Claim which becomes an Allowed Claim after the Effective Date on or as soon as practicable after the date on which each such Disputed Claim becomes an Allowed Claim. The amount of such distribution shall be calculated on a Pro Rata basis, so that the subject

26

Claim receives an initial distribution equal to the total percentage distributions made prior to the date of such allowance to other Allowed Claims in its Class.   No interest shall be payable to the Holders of Disputed Claims on account of funds reserved by the Litigation Trust, if any, under this Plan to satisfy such Disputed Claims.

(i)    Final Distribution.   The Litigation Trustee shall cause the distribution of all remaining available assets, if any, of the Litigation Trust to the Holders of Allowed Claims, after repayment in full and Termination of the Adeptio Loan, the payment of all Allowed Administrative Claims (with interest) and all of the debts and obligations of the Litigation Trust, and all unpaid Allowed Claims in Classes 1 and 2 of this Plan.   After making a final distribution, the Litigation Trust, acting through the Litigation Trustee, shall file a final report and account of all receipts and disbursements with the Bankruptcy Court and the United States Trustee. The Litigation Trustee shall be discharged from his or her obligations under this Plan or the Litigation Trust Agreement at such time as the Litigation Trust has terminated pursuant to its terms (or upon the Litigation Trustee's prior resignation or termination).

(j)    Means of Cash Payment.   Cash payments made pursuant to this Plan shall be paid by wire transfer or checks drawn on an account maintained by the Litigation Trust.

(k)    Release of Liens.   On the Effective Date, all Liens against the Estate Assets shall be fully and completely released and discharged and all

27

Book Page 122

of the Estate Assets when transferred to the Litigation Trust shall be free and clear of any such Liens.

(l)       Cancellation of Notes, Instruments, Securities and Other Documentation.  On the Effective Date, all agreements (other than those established by the Term Sheet and assumed contracts or leases), credit agreements, prepetition loan documents, postpetition loan documents, and evidence of Liens shall be deemed to be canceled and of no further force and effect, without any further action on the part of the Debtors or the Litigation Trust.  The Holders of or parties to such canceled instruments, agreements, securities and other documentation will have no remaining rights against the Debtors, their Estates, or the Litigation Trust arising from or relating to such documents or the cancellation thereof except the right to receive distributions under this Plan.

(m)      Exemption from Certain Taxes.  Pursuant to Section 1146 of the Bankruptcy Code, all transactions, including the transfers described in this Plan, and the delivery and recordation of any instrument, under, in furtherance of, or in connection with this Plan shall not be subject to any stamp tax, real estate transfer tax or similar transfer fee or tax.

(n)       Other Tax Matters.  The Litigation Trust shall be treated as a grantor trust for federal income tax purposes, within the meaning of Sections 671 through 677 of the Internal Revenue Code.  Pursuant to and in accordance with this Plan, the Litigation Trustee shall be responsible for all tax matters of the Estates including, but not limited to, the filing of all

28

Book Page 123

tax returns and other filings with governmental authorities on behalf of the Estates for time periods ending on or before the Final Tax Day, including the filing of tax returns for the Litigation Trust as a grantor trust pursuant to Section 1-671-4(a) of the United States Income Tax Regulations, the filing of any determination requests under Section 505(b) of the Bankruptcy Code, and responding to any tax audits of the Estates. The Litigation Trustee shall provide such information to the beneficiaries as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law. The Litigation Trustee is authorized to act as agent for the Estates in withholding or paying over any amounts required by law (including tax law), if any, to be withheld or paid by the Estates in connection with the transfer and assignment of the Estate Assets to the Litigation Trust pursuant to this Plan.

(o)      Except as otherwise set forth in the Litigation Trust Agreement or this Plan, any items of income, deduction, credit, or loss of the Litigation Trust shall be allocated for federal income tax purposes among the beneficiaries Pro Rata on the basis of their beneficial interests; provided, however, that to the extent any item of income cannot be allocated in the taxable year in which it arises, the Litigation Trust shall pay the federal, state and local taxes attributable to such income (net of related deductions) and the amount of such taxes shall be treated as having been received by, and paid on behalf of the beneficiaries when such allocations are made. The Litigation Trustee shall be entitled to deduct any federal or state

29

Book Page 124

withholding taxes from any payments made with respect to Allowed Claims, as appropriate.

(p)    Duration of Trust.  The Litigation Trust shall continue to exist until such time as the Litigation Trustee has administered all assets of the Litigation Trust and performed all other duties required by this Plan and the Litigation Trust Agreement.  As soon as practicable after the Final Distribution Date, if any, or such other time as the Litigation Trustee deems appropriate, the Litigation Trustee may seek entry of a Final Order closing these Chapter 11 Cases pursuant to Bankruptcy Code section 350.

3.    <u>Claims Resolution</u>

The Litigation Trustee shall review and object to Claims as and when the Litigation Trustee deems appropriate taking into account, the funds available for distribution to Holders of a particular Class, the amount of such Claims, and any other issues that the Litigation Trustee deems appropriate.

4.    <u>Deadline for Filing of Administrative and Professional Fee Claims</u>

Any person asserting an Administrative Claim (other than a Professional Fee Claim) shall file an application therefore with the Bankruptcy Court not later than thirty (30) days after the Effective Date.

Any Person asserting a Professional Fee Claim shall file a fee application with the Bankruptcy Court not later than sixty (60) days after the Effective Date for professional services rendered and out-of-pocket costs incurred through the Effective Date.

Any Administrative Claim or Professional Fee Claim not filed within the deadlines set forth above shall be forever barred, and the Debtors and the Litigation Trust shall be discharged of any obligation on such Claim.

Book Page 125

5.    <u>Estimation of Claims</u>

The Litigation Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to Bankruptcy Code sections 105 and 502(c) in the interests of expeditious administration of the Estates or the Litigation Trust regardless of whether an objection has been filed with respect to such Claim. If the Bankruptcy Court estimates any Contingent, Disputed or unliquidated Claim, the estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, at the option of the Litigation Trustee. If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may pursue any supplemental proceedings to object to the allowance and ultimate distribution on such Claim after reservation for such claim. If the estimated amount is treated as the Allowed Amount of such claim, such claim shall be paid only up to an amount not to exceed the estimated amount, even if such Claim, as finally allowed, exceeds the maximum estimated amount thereof. Furthermore, neither the Litigation Trust nor the Litigation Trustee shall have any liability to such claimant. Unless otherwise ordered by the Bankruptcy Court, resolution or compromise of estimated Claims shall be done pursuant to this Plan. All Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. The Committee and the Debtors, shall have the right to move the Bankruptcy Court for disallowance of any Claim for voting purposes.

6.    <u>Late Claims</u>

No Distribution shall be made on account of any Claims filed after the Bar Date, unless specifically allowed by Final Order of the Bankruptcy Court after notice and opportunity for hearing.

Book Page 126

7.    Procedures for Treatment and Resolving Disputed, Contingent and/or Unliquidated Claims

(a)    Notwithstanding any other provision of this Plan, no property shall be distributed under this Plan on account of all or any portion of any Disputed Claim, or any Claim that is contingent or unliquidated.

(b)    Pursuant to Section V.E.2(e) of this Plan, from and after the Effective Date, the Litigation Trustee shall be authorized and shall have the exclusive right to file and serve all objections to the allowance of any Claim. The Litigation Trustee is exclusively authorized to take all actions necessary or advisable to pursue, settle or compromise any such Disputed Claims.

(c)    At such time as a Disputed Claim becomes an Allowed Claim, (i) the Holder of such Allowed Claim shall receive a distribution, in the same Pro Rata amount as other members of its Class have already received, without interest. Such distribution, if any, shall be made within thirty (30) days of the date that the order or judgment of the Bankruptcy Court allowing such Claim become a Final Order (or as soon as practicable thereafter).

(d)    Except with respect to Estimated Claims, or at the discretion of the Litigation Trustee, no partial distributions will be made with respect to a Disputed Claim until all disputes with respect to such Disputed Claim have been resolved by a Final Order and have become Allowed Claims.

Book Page 127

8.    Claims Reserve

After the Effective Date, the Litigation Trustee shall deposit any available Cash into the claims reserve ("Claims Reserve") in an amount reasonably sufficient, in the Litigation Trustee's sole discretion, to pay without interest all Disputed Claims that may become Allowed Claims and to pay any post-confirmation tax liability, Trustee Fees, professional fees and other expenses or costs that the Trustee, in his sole discretion, believes may be incurred.

9.    Setoffs

The Litigation Trustee may, pursuant to Bankruptcy Code section 553 and applicable non-bankruptcy law, set off against any distribution to the Holder of an Allowed Claim, the claims, rights and Causes of Action that the Litigation Trust may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Litigation Trustee of any such claims, rights and causes of action that the Trustee may possess against such Creditor. Creditors shall maintain their setoff rights existing prior to the Filing Date, but such setoff rights may be exercised only with prior Bankruptcy Court approval. The Litigation Trustee shall not have the authority to effectuate any setoff right against Adeptio or any of its affiliates except to the extent such setoff arises on account of a dispute in connection with the Plan, Final Sale Order, APA, and Term Sheet, including with respect to Adeptio's or Simplexity's obligations thereunder. Adeptio and its affiliates reserve all rights to contest such assertions.

10.    Undeliverable and Unclaimed Distributions

Unclaimed and undeliverable distributions shall include: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (ii) checks (and the funds represented thereby) which have been issued to the Holder of an Allowed Claim in accordance with this Plan but which have not been presented for payment

33

Book Page 128

within ninety (90) days after the date of such checks, and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a complete or correct mailing address. If any distribution made on account of an Allowed Claim is returned to the Litigation Trustee as undeliverable, no further distributions shall be made to such Creditor unless and until the Litigation Trustee is notified in writing of such Creditor's then-current address. Subject to the following paragraph, undeliverable distributions shall remain in the possession of the Trustee until such time as such distribution becomes deliverable. Undeliverable distributions shall not be entitled to any interest or other accruals of any kind. Nothing in this Plan shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim. Notwithstanding the foregoing, the Litigation Trustee shall retain the discretion to pay any Allowed Claim after the expiration of the Claiming Period.

In the event that any distribution on account of any Allowed Claim remains undeliverable or unclaimed for a period of ninety (90) days after the date of the check (the "Claiming Period"), the entire unpaid Allowed Claim upon which such distribution was issued shall, on the first (1st) Business Day after expiration of the Claiming Period, be deemed expunged and reduced to zero ($0) dollars for purposes of calculating any subsequent distribution. The proceeds of all unclaimed and undeliverable distributions shall remain in the Litigation Trust's operating account and be distributed to the other Holders of Allowed Claims.

If, after payment of all Allowed Claims pursuant to this Plan and the expiration of the Claiming Period, the unclaimed distributions on deposit in the Litigation Trust's operating account equal $50,000.00 or less, the Litigation Trustee shall be authorized, without further order of the Court, to donate such sum to the United Way. If such amount is $50,000.00 or greater, the

34

Trustee shall make a further distribution to Holders of Allowed Claims in accordance with the terms of this Plan.

11.    Transmittal of Distributions and Notice

Except as may otherwise be agreed among the Trustee and the Holder of a particular Claim, any distribution or notice to which the Holder of a Claim shall be or become entitled under the provisions of this Plan shall be delivered to such Holder by regular mail, postage prepaid, in an envelope addressed to the last known address maintained by the Debtors' Claims Agent from time to time, according to any respective proof of Claim, the Schedules (if no proof of Claim was filed), or any assignment of Claim or other written notice of change of address delivered to the Debtors' Claims Agent by such Holder.  Distributions and notices delivered in accordance herewith will be deemed delivered to the Creditor regardless of whether such distributions or notices are actually received by such Creditor.  To the extent that the Debtors' Claims Agent resigns or is terminated, any future changes of address shall be delivered to the Litigation Trustee and filed with the Bankruptcy Court.

12.    Distribution Dates

Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, on the next following Business Day.

13.    Payments of Less than $15.00

The Litigation Trustee shall not be required to make any distribution in an amount of less than $15.00.  The Litigation Trustee is authorized to round down all distributions under this Plan to the nearest $0.05.  To the extent that such a distribution shall be called for, the Litigation Trustee shall establish a reserve for all distributions in the amount of less than $15.00 and shall, when and if the Holder of a Claim is entitled to a distribution of $15.00 or more, make such a distribution at such time.

Book Page 130

14.    Remainder of Funds in Reserve

If, in the Litigation Trustee's sole discretion, the Litigation Trustee determines that it is unnecessary to maintain funds in the Claims Reserve described in this Plan, then the Trustee shall deposit such funds, or transfer such remaining funds from the Claims Reserve, into the Litigation Trust's operating account.

15.    Execution of Documents

The Proponents are authorized and directed to execute any and all documents necessary to effectuate this Plan.

<h2 style="text-align:center">ARTICLE VI</h2>

<h3 style="text-align:center">TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</h3>

**A.    Assumption of Insurance Policies; Assignment of Rights**

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (the "Insurance Policies"), unless previously canceled or transferred to Adeptio, are treated as Executory Contracts under this Plan, and this Plan shall constitute a motion to assume the Insurance Policies and to assign all of the Estates' rights under such Insurance Policies to the Litigation Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2) and a finding by the Bankruptcy Court that such assumption is in the best interest of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors exiting as of the Confirmation Date because the Debtors are current. To the extent the Bankruptcy Court determines otherwise as to any of the Insurance Policies, the Debtors reserve the right to seek rejection of such insurance

36

policy or other available relief.  For the avoidance of doubt, the Term Sheet and the APA are deemed assumed under this Plan, and are not rejected.

To the extent that rights and benefits under any Insurance Policies and agreements apply to Claims against the Debtors, which Claims, if Allowed, will be paid by the Liquidating Trust, such policies and agreements shall be assigned to the Litigation Trust.

**B.     Rejection of Other Executory Contracts**

On the Effective Date, all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to section 2.5(b) of the Asset Purchase Agreement), including without limitation, all written employment agreements, collective bargaining agreements, severance contracts, employee benefit or retirement or supplemental retirement benefit plans, indemnification agreements (whether discrete or set forth in other documents) and agreements and unexpired real or personal property leases of the Debtors, that are not the subject of a motion to assume or reject pending on the Effective Date, shall be deemed rejected by the Debtors as of the Petition Date.  Further, on the Effective Date, all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date, shall be deemed rejected by the Debtors and such rejection shall be deemed to be effective as of July 19, 2008.

Each Person who is a party to an Executory Contract which was not previously rejected prior to the Effective Date or which is rejected pursuant to this Plan, shall be entitled to file a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract to which such Person is a party.  All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date.  All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date

37

Book Page 132

and shall be pre-petition general unsecured claims subject to the provisions of the Bankruptcy Code, relevant rules and the Plan.

## ARTICLE VII

## DISALLOWANCE OF CONTRIBUTION CLAIMS

On the Effective Date, any Claim for reimbursement, indemnification, contribution or subrogation of an Entity that is liable with any Debtors on or that has secured the Claim of a Creditor not heretofore disallowed by order of the Bankruptcy Court shall be deemed disallowed to the extent (a) such Creditor's Claim against the Debtors is disallowed; (b) such Claim for reimbursement, indemnification, contribution or subrogation is contingent as of the Confirmation Date, including, without limitation, all Claims which are disallowed under Bankruptcy Code section 502(e); or (c) such Entity asserts a right of subrogation to the rights of such Creditor under Bankruptcy Code section 509 except as otherwise specifically provided therein.

## ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN PURSUANT TO BANKRUPTCY CODE SECTION 1129(b)

To the extent that any Impaired Class rejects this Plan or is deemed to have rejected this Plan, the Proponents will request confirmation of this Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b). The Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan exhibit or schedule, including the right to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

A.      **Rule 9019(a) Settlement**

Except as otherwise provided in this Plan, this Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that were or could have been commenced against Debtors prior to the

38

date of entry of this Confirmation Order.   Such settlement, as reflected in the relative distributions and recoveries or other benefits provided to Holders of Claims or Interests under this Plan, (i) will save the Debtors and their estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' estates and require substantial time to adjudicate, and (ii) have facilitated the creation and implementation of this Plan and benefits of the Debtors' estates and creditors.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

### A.    <u>Conditions to Confirmation</u>

The following are conditions precedent to the occurrence of the Confirmation Date: (a) entry of an Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125; and (b) the proposed Confirmation Order shall be in form and substance acceptable to the Proponents.

### B.    <u>Conditions to Effective Date</u>

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with this Plan:

(a)    The Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Proponents;

(b)    The Confirmation Order shall provide that the Proponents are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the Litigation Trust Agreement and any other contracts, instruments, releases, or other agreements or documents created in connection with this Plan;

39

Book Page 134

(c)     The Litigation Trust Agreement shall be executed in form and substance reasonably acceptable to the Proponents;

(d)     The Estate Assets shall have been transferred to the Litigation Trust; and

(e)     The Adeptio Loan shall have been funded by Adeptio, or other arrangements with Adeptio satisfactory to the Proponents are made.

**C.     <u>Waiver of Conditions</u>**

Each of the conditions set forth in this Article may be waived in whole or in part by the Proponents. The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right the may be asserted at any time.

## ARTICLE X

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     Hear and determine all Causes of Action, which Causes of Action are vital to the implementation and success of this Plan and constitute the only source of payment on account of General Unsecured Claims;

(b)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim not otherwise allowed under this Plan, including the resolution of any request

40

for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of an Claim;

(c)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4); provided, however, that from and after the Effective Date, the Litigation Trust Expenses may be paid without the necessity of application to or approval by the Bankruptcy Court (although any party in interest may challenge the reasonableness of any such Litigation Trust Expenses);

(d)     Hear and determine all matters with respect to the assumption or rejection of any Executory Contract to which any Debtor is a party or with respect to which any Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(e)     Effectuate performance of and payments under the provisions of this Plan;

(f)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, related to, these Chapter 11 Cases;

(g)     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in

41

Book Page 136

connection with this Plan, the Disclosure Statement or the Confirmation Order;

(h)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(i)     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

(k)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, including the Litigation Trust Agreement or the Adeptio Loan, which is critical to the implementation of this Plan;

42

(m)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

(n)     Except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(o)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(p)     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(q)     Modify this Plan at the request of the Proponents and as provided by applicable law;

(r)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(s)     Enter a Final Decree closing these Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### A.     Modifications and Amendments

The Proponents may alter, amend, or modify this Plan or any Plan exhibit under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to the substantial consummation of this Plan, as defined in Bankruptcy Code section 1101(2), the Proponents may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such

43

matters as may be necessary to carry out the purposes and effects of this Plan and such proceedings as do not materially adversely affect the treatment of Holders of the Claims under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**B.      Severability of Plan Provisions**

If, prior to the Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan and the Term Sheet, as they may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

**C.      Adeptio Release**

1.    **Estate Releases**

**Notwithstanding anything contained herein to the contrary, on the Effective Date and effective as of the Effective Date, the Debtors, their professionals, employees, agents, and advisors shall provide a full release (and each entity so released shall be deemed released) to Adeptio and its non-natural affiliates and subsidiaries and each of their respective directors, officers, employees, members, attorneys, financial advisors,**

44

accountants, professionals, agents and representatives, each in their respective capacities as such, and their respective property from any and all causes of action, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors; nothing in this Plan releases any Retained Litigation Claims as set forth in the Term Sheet or Adeptio's or Simplexity's obligations under the Term Sheet, the APA or this Plan (the "Adeptio Release"). Pursuant to the Term Sheet, Adeptio and Simplexity will provide to the Litigation Trustee the books, records, files or other materials, or copies thereof, necessary to defend or otherwise resolve claims against the Debtors and to investigate and/or prosecute the claims and causes of action not sold and assigned to Adeptio and will provide access to personnel as reasonably necessary. Adeptio and Simplexity also agree to work in good faith towards an agreement regarding the governance and constitution of the Litigation Trust.

2.    Third Party Releases

Subject to the occurrence of the Effective Date, any Holder of a Secured Lender Claim or a General Unsecured Claim and their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, by acceptance of the distributions to be received hereunder, will be presumed conclusively to have provided a full discharge and release to Adeptio and Simplexity, including their respective present members, officers, directors, employees, advisors, attorneys, and agents and their respective former members, officers, directors, employees, and agents if they are Transferred Employees, as that term is defined in the Asset Purchase Agreement (and their Affiliates to the extent set forth in section F below), from any and all

45

Book Page 140

Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way whatsoever to the Debtors and these Chapter 11 Cases, including, but not limited to, those in any way related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Sale, this Plan, the Disclosure Statement, the Litigation Trust Agreement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with these Chapter 11 Cases or the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their gross negligence, willful misconduct or bad faith; provided, however, that the foregoing releases shall not apply to any Holder of a Secured Lender Claim or a General Unsecured Claim if such holder "opts out" of such releases by a timely written election set forth on such Holder's ballot.

Nothing in the Plan or Disclosure Statement or the order approving the Plan or Disclosure Statement shall (i) release or discharge any claims held by the U.S. Securities and Exchange Commission against any non-debtor(s) or (ii) enjoin or restrain the U.S. Securities and Exchange Commission from enforcing such claims against any non-debtor(s).

**D.**     **Litigation Trustee Bound**

The Litigation Trustee is hereby deemed to be bound by the Sale Order, APA, Term Sheet, and Plan, and all terms, including releases, contained herein and therein.

**E.**     **Successors and Assigns**

The rights, benefits and obligations of any named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**F.**     **Exculpation and Limitation of Liability**

**Neither the Debtors, the Committee, the Litigation Trustee, the Trust Oversight Committee, Adeptio or Simplexity, nor any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan or the Litigation Trust Agreement, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the Litigation Trust Agreement or the property to be distributed under this Plan or the Litigation Trust Agreement, except for their gross negligence, willful misconduct or bad faith, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

**The Litigation Trust is hereby deemed to release only each Person exculpated pursuant to the above paragraph from any liability arising from any act or omission**

47

Book Page 142

occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or bad faith.

Affiliates (as defined in the Asset Purchase Agreement) of Simplexity and Adeptio shall be exculpated and their liability (and the releases set forth in section XI.C of this Plan) shall be limited to the extent provided in and only to the extent provided in, the Asset Purchase Agreement and Term Sheet.

### G.    Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but no limited to, the Litigation Trust and Litigation Trustee, and all other parties in interest in these Chapter 11 Cases.

### H.    Revocation, Withdrawal, or Non-Consummation

The Proponents reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Proponents revoke or withdraw this Plan, or if Confirmation or consummation does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any of the Debtors

or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## I.    Notices

Any notice, request, or demand required or permitted to be made or provided to or upon the Proponents under this Plan shall be: (a) in writing; (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission; and (b) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

        Neil B. Glassman
        Mary E. Augustine
        Bayard P.A.
        222 Delaware Avenue, Suite 900
        P.O. Box 25130
        Wilmington, DE  19899
        Facsimile:        (302) 658-6395

           and

        Thomas R. Califano
        Jeremy Johnson
        DLA Piper US LLP
        1251 Avenue of the Americas
        New York, New York  10020
        Facsimile:        (212) 335-4501

           and

        Kurt F. Gwynne
        Reed Smith LLP
        1201 Market Street; Suite 1500
        Wilmington, DE 19801
        Facsimile:        (302) 778-7575

           and

Book Page 144

Anup Sathy, P.C.
David A. Agay
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Facsimile:      (312) 861-2200

### J.      Indemnification Claims

Any claims for indemnification, such claims being subject to objection by the Debtors and the Litigation Trustee, which relate to or arise directly or indirectly from events, acts, or omissions that occurred pre-petition, whether asserted pre-or post-petition, constitute pre-petition general unsecured claims subject to the provisions of the Bankruptcy Code, relevant rules and this Plan.

### K.      Prepayment

Except as otherwise provided in this Plan, any ancillary documents entered into in connection therewith, or the Confirmation Order, the Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the classes of Claims.

### L.      Dissolution of the Committee

On the Effective Date, the Committee will dissolve, and the Committee Members will be released and discharged from all duties and obligations arising from or related to these Chapter 11 Cases.  Except as otherwise provided herein, the Professionals retained by the Committee and the Committee Members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date.  The Professionals retained by the Committee or the Debtors may be retained by the Litigation Trustee and compensated in accordance with the Litigation Trust Agreement.

### M.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), including any stay exceptions provided for under Bankruptcy Code section 362(b), shall remain in full force and effect until the later of (a) the closing of the Chapter 11 Cases, or (b) the dissolution of the Liquidation Trust.

In accordance therewith, and without limiting the foregoing, until the later of (a) the closing of the Chapter 11 Cases, or (b) the dissolution of the Liquidation Trust (except as provided in section 362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date.

### ARTICLE XII

### CONCLUSION AND RECOMMENDATIONS

The Debtors and the Committee urge all Creditors entitled to vote on this Plan to vote to accept this Plan and to evidence such acceptance by immediately returning their properly completed Ballots to the appropriate voting agent as set forth on the Ballots within the time stated in the notice served with the Disclosure Statement.

51

Book Page 146

Dated: August 11 2008

| | |
|---|---|
| FOR THE DEBTORS: | FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |

By: /s/ Joseph A. Pardo
    Name: Joseph A. Pardo
    Title: Director and Member of the Debtors

    BAYARD, P.A.

By: /s/ Mary E. Augustine
    Neil B. Glassman (No. 2087)
    Mary E. Augustine (No. 4477)
    222 Delaware Avenue, Suite 900
    P.O. Box 25130
    Wilmington, DE 19899

    and

    DLA PIPER US LLP
    Thomas R. Califano
    Jeremy Johnson
    1251 Avenue of the Americas
    New York, NY 10020

    Counsel for Debtors and Debtors in Possession

By: /s/ Colleen R. Jones
    Name: Colleen R. Jones
    Title: Committee Representative

    REED SMITH LLP

By: /s/ Kurt F. Gwynne
    Kurt F. Gwynne (No. 3951)
    1201 Market Street
    Suite 1500
    Wilmington, DE 19801

    and

    Robert P. Simons
    Joshua C. Lewis
    435 Sixth Avenue
    Pittsburgh, PA 15219-1886

    and

    Claudia Z. Springer
    1500 One Liberty Place
    1650 Market Street
    Philadelphia, PA 19103

    Counsel for the Official Committee of Unsecured Creditors

52

Book Page 147

<u>EXHIBITS</u>

EXHIBIT 1    LITIGATION TRUST AGREEMENT

EXHIBIT 2    TERM SHEET

EXHIBIT 3    ADEPTIO LOAN AGREEMENT TERM SHEET

Book Page 148

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

**SECOND AMENDED JOINT PLAN OF LIQUIDATION**

**OF SN LIQUIDATION, INC.,** *ET AL*

**<u>EXHIBIT 1</u>**

**<u>LITIGATION TRUST AGREEMENT</u>**

Book Page 150

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

Book Page 151

# SN LIQUIDATION, INC.

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (the "Trust Agreement"), dated as of _____, 2008, by and among SN Liquidation, Inc. f/k/a InPhonic, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), and Morton Branzburg, Esquire, in his capacity as trustee hereunder (the "Trustee"). This Trust Agreement is being entered into in connection with the Debtors' Joint Plan of Liquidation (the "Plan") Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Committee")[1], which was confirmed by the Bankruptcy Court's Confirmation Order entered on _____, 2008 (the "Confirmation Order"), and provides for, inter alia,:

(a)    The transfer of the assets (the "Trust Assets") of the Debtors and the Debtors' chapter 11 estates (the "Estates") required by the Plan to be transferred as of the Effective Date to the Litigation Trust for distribution to the holders of Allowed Claims (the "Beneficiaries") pursuant to and in accordance with this Trust Agreement, the Plan, and the Confirmation Order;

(b)    For federal income tax purposes (i) the Beneficiaries of the Litigation Trust are to be treated as the grantees of the Litigation Trust and deemed to be the owners of the Trust Assets, and (ii) the Debtors are to treat the transfer of the Trust Assets to the Litigation Trust as a deemed transfer to such Beneficiaries followed by a deemed transfer by such Beneficiaries to the Litigation Trust;

(c)    The management of the Trust Assets by the Trustee in conjunction with the Trust Oversight Committee (hereinafter defined); and

(d)    The liquidation of the Trust Assets and liquidation of unresolved claims and, after payment of expenses in accordance with the terms of this Trust Agreement and any unpaid

---

[1] Any capitalized term contained herein without definition shall have the definition set forth in the Plan.

Book Page 152

Administrative Claims, the distribution of the proceeds of such liquidation to the Beneficiaries as set forth in the Plan.

NOW, THEREFORE, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I

## DECLARATION OF TRUST

1.1    **Purpose of the Litigation Trust.** The Debtors and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Trust Agreement, hereby constitute and create the Litigation Trust (the "SN Liquidation Litigation Trust" or the "Litigation Trust") for the purpose of liquidating the Trust Assets and liquidating claims against the Debtors' estates with no objective to continue or engage in the conduct of a trade or business. In particular, the Litigation Trust, through the Trustee and with the assistance of the Trust Oversight Committee, shall (i) receive, analyze, investigate and, if appropriate, collect and reduce the Trust Assets to Cash, (ii) if appropriate, resolve any issues concerning the amount of the Claims of the Beneficiaries, (iii) prosecute, abandon, settle and/or defend any claims or causes of action that are a part of the Trust Assets or against Trust Assets; (iv) file final tax returns and dissolve the Debtors, (iv) make distributions to the Beneficiaries pursuant to the Plan and this Litigation Trust, and (v) perform all actions required under the Plan and take such steps as are reasonably necessary to accomplish such purpose, all as more fully provided in, and subject to the terms and provisions of the Plan, the Confirmation Order, and this Trust Agreement. The Litigation Trust shall not have authority to engage in a trade or business, and no portion of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary to the prompt and orderly collection and reduction to the Trust Assets to Cash and closing the cases.

- 2 -

**1.2    Name of the Litigation Trust.** The Litigation Trust established hereby shall be known as the "SN Liquidation Litigation Trust". In connection with the exercise of its powers, the Trustee may use such name or such variation thereof as it sees fit, and may transact the business and affairs of the Litigation Trust in such name.

**1.3    Transfer of Assets to Create Litigation Trust.** The Debtors and the Estate, to the full extent permitted under applicable law, hereby grant, release, assign, transfer, convey and deliver to the Litigation Trust as of the Effective Date, to have and to hold unto the Trustee and his successors in trust and to be applied as specified in the Plan and this Trust Agreement, all of the "Estate Assets" (as defined in the Plan, in relevant part, to include "collectively, all of the legal and equitable rights in and to all assets, property, interests and affects, real and personal, tangible and intangible, wherever situated, held at any time by the Estates including, without limitation, Excluded Assets and all Causes of Action"). Upon the transfer of the Estate Assets to the Trust, those assets shall become Trust Assets, and the Debtors shall retain no interest in such Trust Assets. On the Effective Date, the Debtors shall execute and deliver or cause to be executed and delivered to or upon the order of the Trustee all such documents, in recordable form where necessary or appropriate, and the Debtors shall take or cause to be taken such further or other action, as the Trustee may deem appropriate, to vest or perfect in or confirm to the Trustee, or upon the order of the Trustee, title to and possession of all of the Trust Assets. The Trust Assets shall also include the rights to receive funds (and the proceeds thereof) pursuant to the Term Sheet (as defined in the Plan).

**1.4    Acceptance by Trustee.** The Trustee hereby accepts (a) the appointment to serve as Trustee; (b) the transfer of the Trust Assets on behalf of the Litigation Trust; and (c) the trust imposed on him by this Trust Agreement. The Trustee agrees to receive, hold, administer and distribute the Trust Assets and the income derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Trust Agreement.

Book Page 154

## ARTICLE II

## TRUSTEE - GENERALLY

**2.1**  **Appointment.**  The initial Trustee shall be Morton Branzburg.

**2.2**  **Term of Service.**  The Trustee shall serve until (a) the termination of the Litigation Trust in accordance with Article X of this Trust Agreement, or (b) the Trustee's resignation, death or removal in accordance with this Trust Agreement.

**2.3**  **Services.**  The Trustee shall be entitled to engage in such other activities as he deems appropriate which are not in conflict with the Plan, this Trust Agreement, or the interests of the Beneficiaries.  The Trustee shall devote such time as is necessary to fulfill all of its duties as Trustee.

**2.4**  **Resignation, Death or Removal of Trustee.**  The Trustee may resign at any time upon forty-five (45) days' written notice, in accordance with the notice provisions of the Plan, to the Bankruptcy Court, the Trust Oversight Committee and the United States Trustee.  Such resignation shall become effective prior to the expiration of such forty-five (45) day notice period upon the appointment of a permanent or interim successor Trustee.  The Trustee may be removed for cause by (i) the Trust Oversight Committee, without further order of the Bankruptcy Court; provided, however, in any such case, removal shall be in good faith and can be challenged by the Trustee by making an application to the Bankruptcy Court during which challenge period the Trustee shall remain with all rights and obligations under the Trust Agreement.  "Cause" for removal of the Trustee shall include gross negligence, fraud, willful wrongful action or inaction in the performance of his duties, or failure to consult with the Trust Oversight Committee, as required hereby.  Upon the resignation, death or removal of the Trustee, the Trust Oversight Committee shall appoint the successor Trustee.  In its discretion the Trust Oversight Committee may appoint an interim successor Trustee pending its appointment of a permanent successor Trustee.  Upon appointment pursuant to this Section 2.4 of the Trust Agreement, the successor Trustee,

- 4 -

without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his, her or its predecessor.

     **2.5**    **Trust Continuance.**  The death, resignation or removal of the Trustee shall not terminate the Litigation Trust or revoke any existing agency (other than any agency of such Trustee as a Litigation Trustee) created pursuant to this Trust Agreement or invalidate any action theretofore taken by the Trustee.  By accepting the position as Trustee or Interim Trustee, such successor Trustee agrees that the provisions of this Trust Agreement shall be binding upon and inure to the benefit of such successor Trustee and all his, her or its heirs and legal and personal representatives, successors or assigns.

     **2.6**    **Compensation and Expenses of Trustee.**  The Trustee shall be entitled to receive compensation based on his (and those persons in his firm's) standard hourly rates for actual time spent (including non-working travel at 50% of the applicable rate) plus out-of-pocket expenses including mileage, copies and faxes).  The Trustee's standard hourly rates are subject to increase from time to time as such standard hourly rates may be increased in the ordinary course of business.  The Trustee shall endeavor to have all work performed efficiently and at a reasonable cost.  The Trustee shall regularly and periodically submit to the Trust Oversight Committee an invoice for his services, and his firm's fees and expenses.  Absent any Trust Oversight Committee member's objection to such fees and expenses within such 10-day period, the Trustee may pay such fees and expenses.

     **2.7**    **Retention and Compensation of Professionals.**  The Trustee may retain and engage such professionals, consultants and persons as may be necessary to carry out its duties under this Trust Agreement, including, without limitation, any law or accounting firm of which such Trustee is a partner or otherwise affiliated from time to time (the "Trustee's Professionals"), provided that any professional, consultant or person whom the Trustee intends to retain shall be approved in advance of such retention by the Trust Oversight Committee.  The terms of the retention of the Trustee's Professionals shall be as agreed to by the Trustee, after consultation with the Trust Oversight Committee,

- 5 -

and such Trustee's Professionals.  The Trustee's Professionals receiving compensation or an hourly or periodic basis shall regularly and periodically submit to the Trustee and the Trust Oversight Committee an invoice for his services, and his firm's fees and expenses.  Absent any objection by the Trustee or any Trust Oversight Committee member to such fees and expenses within such 10-day period, the Trustee may pay such fees and expenses.

      **2.8**    **Court Approval for Payment.**  Notwithstanding the foregoing paragraphs 2.6 and 2.7, the Trustee may in its sole discretion, but shall not be obligated to, seek Bankruptcy Court authorization before the payment of any fees and expenses to the Trustee or Trustee's Professionals.

## ARTICLE III

## POWERS AND LIMITATIONS OF TRUSTEE

      **3.1**    **General Powers of Trustee.**  In connection with the administration of the Litigation Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Litigation Trust.  In addition to the Litigation Trustee's powers under the Plan and the Trust Agreement, the Litigation Trust shall succeed to all of the rights of the Debtors necessary to protect, conserve and liquidate all Trust Assets as quickly as reasonably practicable.  Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Trustee may exercise all powers granted it hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets.  Without limiting, but subject to, the foregoing, the Trustee shall be expressly authorized:

      (a)    To open and maintain bank accounts, or other investment accounts, on behalf of or in the name of the Litigation Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Litigation Trust .

Book Page 157

(b)      To receive, conserve and manage the Trust Assets.

(c)      To hold legal title to any and all Trust Assets.

(d)      Subject to the applicable provisions of the Plan, to investigate, to prosecute, to settle, to otherwise, collect and liquidate, or to abandon, the Trust Assets.

(e)      To make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Reserve or other Trust Assets and the proceeds thereof, the fees and charges incurred by the Litigation Trust and the fees and expenses of the Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Trust Agreement, without application to the Bankruptcy Court.

(f)      To establish, and with the consent of the Trust Oversight Committee, to fund and administer the Reserve in accordance with and pursuant to the Plan, the Confirmation Order and this Trust Agreement

(g)      To pay all lawful, expenses, debts, charges and liabilities of the Litigation Trust.

(h)      To wind down the affairs of the Debtors, including the filing of final tax returns and certificates of dissolution and then to make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(i)      To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of his, her or its discretion and judgment, the Trustee may

Book Page 158

enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(j)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(k)     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Litigation Trust.

(l)     If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee some form of adequate security as designated by the Trustee; confer upon such trustee all the rights, powers, privileges and duties of Trustee, subject to the conditions and limitations of this Litigation Trust, except as modified or limited by the Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such other trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and remove such other trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Trustee of a written instrument declaring such other trustee removed from office, and specifying the effective date and time of removal.

(m)     Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all Avoidance Actions and other Causes of Action (collectively, the "Causes of Action") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and

- 8 -

litigate or settle such Causes of Action on behalf of the Debtors or the Estates, and pursue such Causes of Action to settlement or final order, all in accordance with the terms of this Trust Agreement.

(n)     To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Trust Agreement, the Confirmation Order and the Plan.

(o)     To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(p)     To implement and/or enforce all provisions of the Plan.

(q)     To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Trust Agreement and to ultimately close the Chapter 11 Cases.

(r)     Exercise such rights of setoff as the Debtors or the Estates may have had against any Beneficiary and/or seek Court approval of such exercise.

(s)     Voluntarily engage in arbitration or mediation with regard to any dispute.

(t)     To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) to file, if necessary, any and all tax information returns required with respect to the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Litigation Trust, and (iv) pay taxes, if any, payable by the Litigation Trust.

(u)     To make all distributions ("Distributions") to holders of Allowed Claims provided for or contemplated by the Plan.

(v)     To perform any other actions or duties required to be performed by the Trustee pursuant to the provisions of the Plan and/or Confirmation Order

- 9 -

Book Page 160

**3.2    Limitations on the Trustee.**  Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following, unless authorized by the Bankruptcy Court:

(a)    Take any action in contravention of the Plan, the Confirmation Order or this Trust Agreement.

(b)    Take any action that would significantly jeopardize treatment of the Litigation Trust as a "Litigation Trust" for federal income tax purposes.

(c)    Loan Trust Assets to the Trustee.

(d)    Purchase Trust Assets from the Litigation Trust.

(e)    Transfer Trust Assets to another trust with respect to which the Trustee serves as trustee.

(f)    Settle or dismiss any Action in which the amount being sought by the Trustee (or the amount in controversy) is in excess of $100,000 for an amount which is less than seventy percent (70%) of the amount at issue, without the prior consent of the Trust Oversight Committee.

(g)    Pay any fees or expenses of the Trustee or the Trustee's Professionals other than in accordance with this Trust Agreement;

**3.3    Trustee Conflicts of Interest.**  If the Trustee determines, in the exercise of the Trustee's discretion, that he has a material conflict of interest with respect to any matter, the Trust Oversight Committee shall at its option and in its discretion either (i) exercise the Trustee's rights and authorities with respect to such matter, or (ii) designate a person to act on behalf of the Litigation Trust solely with respect to such matter with such designee's authority to act on behalf of the Litigation Trust to terminate upon the matter's conclusion.  If neither the Trustee nor the Trust Oversight Committee is able

- 10 -

to act on behalf of the Litigation Trust (and the Trust Oversight Committee is unable to appoint a designee to so act on behalf of the Litigation Trust) with respect to any matter, the Litigation Trustee, after notice to the US Trustee and the Trust Oversight Committee, may request the Bankruptcy Court to approve the Trustee's choice of a designee to act on behalf of the Litigation Trust solely with respect to such matter, with such designee's authority to act on behalf of the Trust to terminate upon the matter's conclusion.

## ARTICLE IV

## TRUST OVERSIGHT COMMITTEE, GENERALLY

4.1     **The Trust Oversight Committee.** On the Effective Date, a governing board of three (3) persons, which shall include two (2) members selected by the Committee and one (1) representative selected by Adeptio, shall commence serving as the "Trust Oversight Committee". The initial members of the Trust Oversight Committee are the individuals (each, a "Member") set forth in Schedule A attached hereto. In addition, BMC Group, Inc. shall have the right to have a designated representative attend meetings of the Trust Oversight Committee as an observer (the "BMC Observer"). Although the BMC Observer may participate in meetings of the Trust Oversight Committee, the BMC Representative is not a Member and does not have any voting or other rights of Members. The Trust Oversight Committee shall have general oversight powers for the activities of the Trustee as well as those specific rights and powers set forth in other provisions of this Trust Agreement and under the Plan.

4.2     **Authority and Responsibilities.** The Trust Oversight Committee shall have the authority and responsibility to oversee, review, and guide the activities and performance of the Trustee and shall have the authority to remove the Trustee in accordance with Section 2.4 hereof. The Trust Oversight Committee shall also (a) monitor and review the fairness of settlement, abandonment and other disposition proposals proposed to or conditionally agreed to[2] by the Trustee with respect to the Litigation

---

[2] A condition being the obtaining of the consent of the Trust Oversight Committee.

- 11 -

Book Page 162

Claims (including any counterclaims), (b) consult with the Trustee, and if required, vote on a proposed settlement, abandonment and other disposition and prosecution of any Causes of Action, (c) monitor and oversee the administration of the Trust and the Trustee's performance of its responsibilities under this Trust Agreement and the Plan, and (d) perform such other tasks as set forth in this Trust Agreement and in the Plan. In all circumstances, except as explicitly provided herein, the Trust Oversight Committee shall exercise its responsibilities under the Liquidation Trust consistent with fiduciary standards. In all circumstances, the Trust Oversight Committee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Liquidation Trust. The Trustee shall consult with and provide information to the Trust Oversight Committee on a regular, periodic basis as the Trustee deems appropriate or as required by the Trust Oversight Committee.

      **4.3**     **Meeting of the Trust Oversight Committee.** Meetings of the Trust Oversight Committee are to be held with such frequency and at such place as the Trustee and the Members may determine in their reasonable discretion. Special meetings of the Trust Oversight Committee may be held whenever and wherever called for by the Trustee or any two Members. Unless the Trust Oversight Committee decides otherwise (which decision shall rest in the sole discretion of the Trust Oversight Committee), the Trustee and its/his/her designated advisors may attend meetings of the Trust Oversight Committee.

      **4.4**     **Manner of Acting.** Two (2) Members of the Trust Oversight Committee shall constitute a quorum for the transaction of business at any meeting of the Trust Oversight Committee. The affirmative vote of a majority of the Members of the Trust Oversight Committee present at a meeting shall be the act of the Trust Oversight Committee. Any action required or permitted to be taken by the Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by written consent of a majority of the Trust Oversight Committee. Any or all of the Members of the Trust Oversight Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons

participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may, if approved by the Members at a meeting, be conducted by electronic mail or individual communications by the Trustee and each Member of the Trust Oversight Committee.

      **4.5**     **Tenure of the Members of the Trust Oversight Committee.**  The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Liquidation Trust is terminated in accordance with Article X hereof.  The Members of the Trust Oversight Committee will serve until death or resignation pursuant to Section 4.6 below, or removal pursuant to Section 4.7 below.

      **4.6**     **Resignation.**  A Member may resign by giving not less than forty-five (45) days' prior written notice thereof to the Trustee and the other Members.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with Section 4.8 below.

      **4.7**     **Removal**.  A Member may be removed by the unanimous vote of the other Members and the Trustee, written resolution of which shall be delivered to the removed Member; provided, however, that such removal may only be made for Cause (as defined in Section 2.4 hereof).

      **4.8**     **Appointment of a Successor Trust Oversight Committee Member.**

         (a)     In the event of a vacancy on the Trust Oversight Committee (whether by removal, death, or resignation), a new Member may be appointed by the remaining Members to fill such position.  If all Members resign at once, the Trustee, with Bankruptcy Court approval, may appoint new members.

- 13 -

Book Page 164

(b)      Immediately upon the appointment of any successor Member, all rights, powers, duties, authority, and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act; and the successor Member will not be liable personally for any act or omission of the predecessor Member.

4.9      **Reimbursement of Expenses**.  The Litigation Trust will reimburse the Members for all reasonable, out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties hereunder.  All expenses of Members shall be paid solely from the Trust Assets.  In the event that the Trust Assets are insufficient to pay the expenses of the Members, the expenses will be paid pro rata to each Member until sufficient funds exist from which to pay the Member's expenses.

## ARTICLE V

## LIABILITY OF TRUSTEE AND MEMBERS OF TRUST OVERSIGHT COMMITTEE; EXCULPATION AND INDEMNITY

5.1      **Trustee and Members of Trust Oversight Committee Standard of Care; Exculpation.**    Neither the Trustee, any partner, Member, officer, affiliate, employee, employer, professional, agent or representative of the Trustee, or any Member or any of its Members, officers, affiliates, employees, employers, professionals, agents or representatives (collectively the "Indemnified Persons") shall be personally liable in connection with the affairs of the Litigation Trust to any Person, including any Beneficiary of the Litigation Trust, or to the Litigation Trust, except for acts or omissions of the Indemnified Person that constitute fraud, willful misconduct, or gross negligence.  Persons dealing with Indemnified Persons in connection with the Litigation Trust, or seeking to assert claims against the Litigation Trust, shall have recourse only to the Trust Assets (excluding any fund designated to pay administrative costs) to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute fraud, willful misconduct or gross negligence.

- 14 -

5.2    **Indemnification.**   Except as otherwise set forth in the Plan or Confirmation Order, Indemnified Persons, including, without limitation, any firm in which the Trustee or Member is a partner, member, shareholder or employee (the "Firm") shall be defended, held harmless and indemnified from time to time by the Litigation Trust against any and all losses, claims, costs, expenses and liabilities to which such Indemnified Persons may be subject by reason of such Indemnified Party's execution in good faith of its duties pursuant to the discretion, power and authority conferred on such Person by this Trust Agreement, the Plan, or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this section shall not indemnify any Indemnified Person for any actions taken by an Indemnified Person which constitute bad faith, fraud, willful misconduct, or gross negligence. Satisfaction of any obligation of an Indemnified Person arising pursuant to the terms of this Section 5.2 shall be payable only from the Trust Assets (excluding any fund designated to pay administrative costs) and such right to payment shall be prior and superior to any rights of Beneficiaries to receive a Distribution of the Trust Assets.

5.3    **No Liability for Acts of Predecessor Trustees.**   No successor Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee.

5.4    **Reliance by Trustee and Members on Documents, Mistake of Fact or Advice of Counsel.**   Except as otherwise provided in this Trust Agreement, the Trustee and each Member may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee or Member, as the case may be, to be genuine and to have been presented by an authorized party. The Trustee and each Member shall not be liable if it acts based on a mistake of fact before having actual knowledge of an event or for any action taken or suffered by such person if such person has reasonably relied upon the advice of counsel or other professionals engaged by the Trustee or Member in accordance with this Trust Agreement.

- 15 -

Book Page 166

5.5    **Insurance.**  To the extent that Trust Assets exist to pay for such insurance, the Trustee may purchase errors and omissions insurance for himself (and any Trustee Firm) and the Members with regard to any liabilities, losses, damages, claims, costs and expenses such Person may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud, gross negligence or willful misconduct, with respect to the implementation and administration of the Plan and this Trust Agreement.

## ARTICLE VI
### DUTIES OF TRUSTEE

6.1    **General.**  The Trustee shall have all duties specified in the Plan, the Confirmation Order and this Trust Agreement as being the responsibility of the Trustee.

6.2    **Books and Records.**  The Trustee shall maintain in respect of the Litigation Trust, books and records relating to the Trust Assets, income realized therefrom and expenses of and claims against or assumed by the Litigation Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.  Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, nothing in this Trust Agreement is intended to require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust, or as a condition for making any payment or Distribution out of the Trust Assets.

6.3    **Asset Valuation.**  The Trustee, following consultation with the Trust Oversight Committee, shall apprise the Beneficiaries of the value of the Trust Assets to the extent required by applicable law.  The valuation shall be used consistently by all parties (including the Trustee and Beneficiaries) for all federal income tax purposes.  Any dispute regarding the valuation of Assets shall be resolved by the Bankruptcy Court.

- 16 -

6.4    **Final Accounting of Trustee Upon His Termination.**  Within thirty (30) days after a Trustee's announced resignation or removal, such Trustee of former Trustee, as the case may be, shall render a final accounting (the "Outgoing Trustee's Final Accounting") containing at least the following information:

(a)    A description of the Trust Assets as of the last day of such Trustee's service hereunder;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Litigation Trust and the Trust Assets during the Trustee's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and income;

(d)    The ending balance of all Trust Assets as of the date of the Trustee's accounting, including the Cash balance on hand and the name and location of the depository where it is kept; and

(e)    All known liabilities owed by the Litigation Trust.

## ARTICLE VII

### BENEFICIARIES

7.1    **Effect of Death, Incapacity or Bankruptcy of Beneficiary.**  The death, incapacity or bankruptcy of a Beneficiary during the term of the Litigation Trust shall not operate to terminate the Litigation Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Litigation Trust .

- 17 -

Book Page 168

7.2     **Standing of Beneficiary.**    Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Trust Assets.

**ARTICLE VIII**

**DISTRIBUTIONS**

8.1     **Distributions from Trust Assets.**  All Distributions of Trust Assets made by the Trustee to the Beneficiaries shall be made only in accordance with the Plan, the Confirmation Order and this Trust Agreement.  Any Distribution made by the Trustee in good faith and, if required hereby, with the consent of the members of the Trust Oversight Committee, shall be binding and conclusive on all interested parties.  Trust Assets that are the result of advances made pursuant to the Adeptio Loan shall be used to pay the Trust's administrative expenses and the fees and expenses of the Trustee and the Trustee's Professionals, including those incurred in connection with the investigation of avoidance actions and other claims and the commencement and prosecution of such litigation.  Thereafter, after payment in full and termination of the Adeptio Loan, the Trust Assets (other than the Adeptio Loan) shall be distributed as follows:

> **First,** to pay the unpaid administrative expenses of the Trust and the unpaid Trustee's fees and expenses (including the unpaid fees and expenses of Klehr Harrison Harvey Branzburg & Ellers LLP); but excluding the fees and expenses of the Trustee's Professionals;
>
> **Second,** to pay the out-of-pocket expenses of the Trustee's Professionals;
>
> **Third,** to pay the fees of the Trustee's Professionals pro rata up to a recovery that equals the percentage recovery received by the pre-confirmation Bankruptcy professionals;
>
> **Fourth,** in accordance with the Plan, to pay pro rata the Trustee's Professionals, the pre-confirmation bankruptcy professionals, and any Claims (including administrative expense claims) with a priority ahead of the General Unsecured Claims;

**Fifth**, to pay any unpaid Allowed Priority Claims; provided, however, that they will be paid in full by the date allowed under the Bankruptcy Code; and

**Sixth**, to pay the Beneficiaries, pro rata, on account of their Allowed General Unsecured Claims.

**8.2    Annual Distributions; Withholding.**    To the extent that sufficient funds are contained in the Litigation Trust from which to make a Distribution, the Trustee may make Distributions annually (or more frequently as determined by the Trustee) to the Beneficiaries from all net Cash income and all other Cash held in the Litigation Trust; provided, however, that the Litigation Trust shall retain such amounts in the Reserve  as are reasonably necessary (a) to meet contingent liabilities of the Litigation Trust, (b) to pay reasonable administrative expenses including, without limitation, the compensation to and reasonable, actual and necessary costs and expenses of the Trustee, including, without limitation, the fees and expenses of Trustee's Professionals, in connection with the performance of the Trustee's duties in connection with this Trust Agreement, (c) the reasonable expenses of the Members as permitted by the terms of this Trust Agreement; and (d) to satisfy all other liabilities incurred or assumed by the Litigation Trust  (or to which the Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Trust  Agreement. All such Distributions shall be made as provided, and subject to any withholding or reserve, in this Trust Agreement, the Plan or the Confirmation Order.    Additionally, the Trustee may withhold from amounts distributable to the Beneficiaries any and all amounts, determined in the Trustee's reasonable sole direction, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed by the Litigation Trustee, a Beneficiary who holds both an Allowed Claim(s) and a Disputed Claim(s) will not receive a Distribution on account of either the Allowed Claim or the Disputed Claim, nor accrue interest thereon until such Disputed Claim is resolved by settlement or Final Order.

- 19 -

Book Page 170

      **8.3**    **Non-Cash Property.**  Any Trust Asset that is not Cash may be sold, transferred or abandoned by the Trustee upon the consent of a majority of Members, _provided,_ _however,_ no consent of the Members is required if (i) the item being sold, transferred or abandoned has a fair market value of less than $10,000 and in the Trustee's judgment, cannot be sold in a commercially reasonable manner, or (ii) in the case of an Action, such Action would cost more to prosecute than the likely recovery from the prosecution of such Action, or the Trustee otherwise believes that abandonment of the action is appropriate.

      **8.4**    **Method of Cash Distributions.**  Any Cash Distribution to be made by the Litigation Trust  pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Trustee , by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

**ARTICLE IX**

**TAXES**

      **9.1**    **Income Tax Status.**  Consistent with the Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Litigation Trust shall be treated as a Litigation Trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the Internal Code.  As such, the Beneficiaries will be treated as the deemed owners of the Litigation Trust.  Any items of income, deductions and credit loss of the Litigation Trust shall be allocated for federal income tax purposes, to the Litigation Trust.

      **9.2**    **Tax Returns.**  In accordance with Treasury Regulation Section 1.671-4(a), the Litigation Trust shall file with the Internal Revenue Service annual tax returns on Form 1041 together with the separate statements required under such Regulation.  In addition, the Trustee shall file in a timely manner such other tax returns as are required by applicable law and pay solely from Trust Assets any

- 20 -

taxes shown as due thereon. The Trustee may require that each Beneficiary provide and/or confirm such Beneficiaries' name, address and tax identification number as a condition to payment of any Distribution to such Beneficiary.

**9.3    Withholding of Taxes Related to Litigation Trust Operations.**  To the extent that the operation of the Litigation Trust or the liquidation of the Trust Assets creates a tax liability in excess of applicable net operating losses, the Litigation Trust shall promptly pay such tax liability from the Trust Assets and any such payment shall be considered a cost and expense of the operation of the Litigation Trust. The Trustee may reserve a sum, the amount of which shall be determined by the Trustee in its sole discretion, sufficient to pay the accrued or potential tax liability arising out of the operations of the Litigation Trust or the operation of the Trust Assets. In the exercise of discretion and judgment, the Trustee may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld.

No later than the time required under applicable law after the end of each calendar year, the Trustee shall cause to be filed all required federal, state and other tax returns. Pursuant to the requirement under the Plan for the Trust to be treated as a Grantor Trust, all items of income will be treated as income subject to tax on a current basis. Further, for federal income tax purposes, all items of income, gain, loss, and deduction of the Trust for such calendar year shall be allocated to all Beneficiaries on a pro rata basis, based on either their Allowed Claim(s) or, in the case of Disputed Claims, the greater of (a) the amount of the claim as scheduled by the Debtors in their bankruptcy schedules and statements of financial affairs filed by the Debtors in their Chapter 11 Cases, and (b) the amount set forth in any proof of claim filed by the Beneficiary in the Chapter 11 Cases. Such pro-rata allocation will be calculated as of the end of each calendar year and, with respect to each Disputed Claim, until such claim either becomes an

- 21 -

Allowed Claim or is disallowed.  Further, such pro rata allocation in regard to Disputed Claims shall not in itself entitle any Beneficiary to any payment and shall be irrespective of whether any payments are actually disbursed to such Beneficiary.

As a condition to making any distribution under this Agreement and the Plan, each Beneficiary or other entity receiving a distribution from Trust Assets may be required to provide its taxpayer identification number on IRS Form W-9 and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of the Plan, Claims of Beneficiaries or other persons receiving distributions of Trust Assets who do not provide such information within 30 days of such request may be expunged.

## ARTICLE X
## TERMINATION OF TRUST

**10.1    Maximum Term.**  The Litigation Trust shall commence as of the Effective Date shall continue and remain in full force and until (i) the conclusion by settlement or Final Order of all pending litigation to which the Trustee is a party and, in the sole opinion and discretion of the Trustee, the exhaustion of all efforts to collect thereon, (ii) all of the Trust Assets are liquidated or disposed of in accordance with the Plan and this Trust Agreement and all of the funds in the Litigation Trust have been completely distributed in accordance with the Plan and this Trust Agreement, (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and all time periods and all opportunity for such authorities to challenge such final tax returns have expired, and (iv) the orders closing the Chapter 11 Cases are each a Final Order (the "Trust Term").

    **10.2**    **Distribution Upon Termination.**  Upon the termination of the Litigation Trust, the Trustee shall distribute the remaining Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, Confirmation Order, and this Trust Agreement.

    **10.3**    **Winding Up and Discharge of the Trustee.**  For the purposes of winding up the affairs of the Litigation Trust at its termination, the Trustee shall continue to act as Trustee and the Members shall continue to act as members of the Trust Oversight Committee until their respective duties have been fully discharged.  After doing so, the Trustee, its agents and employees and the Members, their agents and employees shall have no further duties or obligations hereunder, except as required by this Trust Agreement, the Plan, the Disclosure Statement or applicable law concerning the termination of a trust.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its agents and employees and the Members, their agents and employees of any further duties, discharging the Trustee and releasing its bond, if any.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

    **11.1**    **Amendments.**    The Trustee may propose to the Bankruptcy Court the modification, supplementation or amendment of this Trust Agreement following consultation with the Trust Oversight Committee, and if such modifications are material in nature, the consent of a majority of the Members. Such modification, supplementation or amendment shall be in writing and filed with the Bankruptcy Court.  No modification, supplementation or amendment of this Trust Agreement shall be effective except upon a Final Order of the Court.

    **11.2**    **Waiver.**  No failure by the Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any

- 23 -

right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**11.3    Cumulative Rights and Remedies.**  The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.4    No Bond Required.**   Except as otherwise provided for in the Plan or Confirmation Order, notwithstanding any state law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

**11.5    Irrevocability.**  The Litigation Trust is irrevocable.

**11.6    Division of Trust.**  Under no circumstances shall the Trustee have the right or power to divide the Litigation Trust unless authorized to do so by the Bankruptcy Court.

**11.7    Governing Law.**  This Trust Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.  If the Trustee determines to do so, he may cause the Trust to become a statutory trust under Delaware Law by filing a certificate of trust with the Secretary of State of Delaware pursuant to 12 Del. C. § 38.

**11.8    Retention of Jurisdiction.**  Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Litigation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all Causes of Action, and any controversies, suits and issues that may arise in connection therewith, including, without limitation, this Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any professional retained by the Trustee or the Litigation Trust, in each case in its capacity as such.  Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce,

interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that (i) any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration.

      **11.9    Severability.**  In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

      **11.10    Limitation of Benefits.**  Except as otherwise specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

      **11.11    Notices.**  All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses.

Book Page 176

If to the Debtors:

        Bayard, P.A.
        222 Delaware Ave., Suite 900
        P.O. Box 25130
        Wilmington, DE  19899
        Attention: Neil B. Glassman, Esquire
        Telephone: (302) 655-5000
        Facsimile: (302) 658-6395

If to the Litigation Trustee:

        Morton Branzburg, Esquire
        260 South Broad Street
        Philadelphia, PA 19102-5003
        Telephone: (215) 569-3007
        Facsimile: (215) 568-6603

If to the Trust Advisory Committee:

        [Chair's name/contact information]

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands requests, consents, notices and communications shall be deemed to have been given (a) upon receipt of a facsimile transmission as confirmed by the sender's facsimile transmission receipt, (b) at the time of actual delivery thereof, (c) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (d) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

        **11.12  Further Assurances.**   From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

        **11.13  Integration.**   This Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement with by and among the parties, and there are no representations,

warranties, covenants or obligations except a set forth herein, in the Plan and in the Confirmation Order. This Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided herein, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**11.14    Relationship to the Plan.**  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**11.15    Successors or Assigns.**  The terms of this Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**11.16    Interpretation.**  The enumeration and section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**11.17    Counterparts.**  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

- 27 -

Book Page 178

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**SN LIQUIDATION, INC., and its affiliated Debtors and Debtors in Possession**

By: _____
        Name:

        Its:

**LITIGATION TRUSTEE**

By: _____
        Morton Branzburg, Esquire

- 28 -

# SCHEDULE A

(Schedule A is not attached hereto)

Book Page 180

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

Book Page 181

**SECOND AMENDED JOINT PLAN OF LIQUIDATION**

**OF SN LIQUIDATION, INC.,** *ET AL*

<u>**EXHIBIT 2**</u>

<u>**TERM SHEET**</u>

Book Page 182

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

**In re InPhonic, Inc., et al., Case No. 07-11666**

**Settlement Term Sheet**

- **Upon Closing of the APA**, Adeptio INPC Funding, LLC ("Adeptio") will:

    o **Professional Fee Payments**. Upon allowance or other court authorization, pay all professional fees accrued through the confirmation, up to the aggregate amount budgeted for such fees in the DIP budget from the filing date through confirmation of a plan (to the extent not previously paid by the debtor from DIP funds) (the "Professional Funding"). For the avoidance of doubt, and notwithstanding the foregoing, the aggregate amount paid by Adeptio on account of the Professional Funding shall not exceed $1,100,000;

    o **Investigation, Litigation and Wind Down Funding**. Fund (i) the administrative costs of maintaining the Debtors' estates post closing in the amount of $200,000 ("Wind Down Funding") and (ii) the costs of professional fees necessary to investigate the viability of avoidance actions and other litigation claims and commence and prosecute such litigation if appropriate that the Debtors' estates through a Litigation Trust may possess through a senior secured loan (which shall accrue interest as ruled by the Court) of up to a total $500,000, in accordance with the terms set forth below (the "Investigation Funding") which amount shall be repaid from first proceeds paid to the Litigation Trust;

    o **Deficiency Claim**. Adeptio shall have an allowed deficiency claim of $20,000,000 on account of its prepetition secured claim; and

    o **Priority Claims**. Upon confirmation of a chapter 11 plan, contribute up to a total $500,000 solely for the purpose of making distributions under such plan on account of allowed priority claims as such claims become allowed pursuant to the terms and conditions of section 1129(a)(9) of the Bankruptcy Code (the "Priority Claims Funding").

- **Retained Litigation Claims**. The Debtors' estates shall retain Excluded Assets, as set forth and defined in the APA, including Excluded Avoidance Actions and excluded litigation claims (including claims against individuals and parties with no on-going, post-closing business relationship) and the Debtors shall promptly seek to abandon/waive all section 547 preference claims. These claims include those set forth in the Notice of Circumstances sent by the Debtors on November 29, 2007 to its respective Directors and Officers liability insurance carriers it being understood that such claims do not include claims against individuals and parties (whether or not an officer or director) with an on-going, post-closing business relationship with the Debtors' post-closing business, which claims are considered Purchased Assets under the APA.

- **DIP Facility Funding**. Funding under the DIP Facility shall continue in accordance with the terms of the DIP Facility and the Budget (as defined in the DIP Facility), up to the Revolving

Book Page 184

Credit Commitment (as defined in the DIP Facility) of $25,000,000.00. The DIP Facility shall terminate in accordance with its terms|

- **Assumed Liabilities**. Adeptio shall assume the following liabilities, as set forth in the APA (all as defined in the APA): Cure Costs under Designated Contracts and the Assumed Liabilities. It is understood that the Assumed Liabilities include Adeptio's obligations in connection with the GAH Fee which shall be allowed in the amount of $1,300,000 inclusive of amounts paid to GAH to the date of closing, which such obligations are in addition to the Professional Funding.

- **No Further Obligations**. It is expressly understood that Adeptio has no obligation to the Debtors' or their estates other than under

  o   that certain Senior Secured, Super-Priority Debtor-In-Possession Credit and Guaranty Agreement, dated as of November 9, 2007, and related documents and orders (the "DIP Facility");

  o   that certain Asset Purchase Agreement, dated as of November 8, 2007 (the "APA");

  o   the Wind Down Funding;

  o   the Professional Funding;

  o   the Investigation and Litigation Funding; and

  o   the Priority Claims Funding.

- **Purchased Actions**. In connection with the purchase of Avoidance Actions or litigation claims purchased under the APA, Avoidance Actions against the putative defendants shall be deemed released as of the closing of the sale under the APA.

- **Investigation Period**. The Creditors' Committee's investigation period under the DIP Facility shall terminate on December 13, 2007.

- **Court Approval**. Immediately upon execution and delivery of this Term Sheet, the Debtors shall file and serve appropriate pleadings with the Bankruptcy Court for approval of this Term Sheet and settlement pursuant to Bankruptcy Rule 9019 on an expedited basis to be heard no later than December 20, 2007.

- **Litigation Trust**. The parties agree to work in good faith towards an agreement regarding the governance and constitution of the Litigation Trust.

- **Sale Process**. At the December 13, 2007 Sale Hearing, the Court shall enter a Sale Order as required under the APA.

- **Cooperation**. The books, records, files or other materials, or copies thereof, necessary to investigate and/or prosecute the claims and causes of action not sold and assigned to Adeptio

2

Book Page 185

will be provided by the Debtors and/or Adeptio to the Creditors Committee or its designee, and the Debtors and Adeptio will provide access to personnel as reasonably necessary.

- **Final Settlement**.  This settlement shall be a final, unconditional settlement between Adeptio, the Official Committee of Unsecured Creditors, and the Debtors, with no investigation or other contingencies.

- **Reservation of Rights and No Amendment**.  The APA, the DIP Facility, and the prepetition secured loan facility remain in full force and effect, with no amendment or modification whatsoever, and Adeptio fully reserves all rights thereunder.

- **Full Authority**.  By their signature below, the parties represent that they are vested with full and complete authority to execute this term sheet on behalf of their client(s).

- **Post-Closing Cooperation**.  Without limiting anything in this term sheet, Andrew Zeinfeld, Ken Schwartz and Walter Leach shall cooperate with the Litigation Trust in the pursuit of trust claims.

3

Agreed and Accepted:

| InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, 101 Interactive, LLC, as Debtors and Debtors In Possession | Official Committee of Unsecured Creditors for: InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, 101 Interactive, LLC |
|---|---|
| By: _____<br>Thomas R. Califano<br>DLA Piper US LLP<br>1251 Avenue of the Americas<br>New York, New York 10020 | By: _____<br>Reed Smith, LLP<br>1201 Market Street, Suite 1500<br>Wilmington, Delaware 19801-1163 |
| Adeptio INPC Funding, LLC<br><br>By: _____<br>Anup Sathy, P.C.<br>David A. Agay<br>Kirkland & Ellis, LLP<br>200 East Randolph<br>Chicago, Illinois 60601 | |

Agreed and Accepted:

| InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, 101 Interactive, LLC, as Debtors and Debtors In Possession | Official Committee of Unsecured Creditors for: InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, 101 Interactive, LLC |
|---|---|
| By: _____<br>Thomas R. Califano<br>DLA Piper US LLP<br>1251 Avenue of the Americas<br>New York, New York 10020 | By: _____<br>Reed Smith, LLP<br>1201 Market Street, Suite 1500<br>Wilmington, Delaware 19801-1163 |
| Adeptio INPC Funding, LLC<br><br>By: _____<br>Anup Sathy, P.C.<br>David A. Agay<br>Kirkland & Ellis, LLP<br>200 East Randolph<br>Chicago, Illinois 60601 | |

Book Page 188

Agreed and Accepted:

| | |
|---|---|
| InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, 101 Interactive, LLC, as Debtors and Debtors In Possession | Official Committee of Unsecured Creditors for: InPhonic, Inc., CAIS Acquisition, LLC, CAIS Acquisition II, LLC, SimIPC Acquisition Corp., Star Number, Inc., Mobile Technology Services, LLC, FON Acquisition, LLC, 101 Interactive, LLC |
| By: _____<br>　　Thomas R. Califano<br>　　DLA Piper US LLP<br>　　1251 Avenue of the Americas<br>　　New York, New York 10020 | By: _____<br>　　Reed Smith, LLP<br>　　1201 Market Street, Suite 1500<br>　　Wilmington, Delaware 19801-1163 |
| Adeptio INPC Funding, LLC<br><br>By: _____  P.C.<br>　　Anup Sathy, P.C.<br>　　David A. Agay<br>　　Kirkland & Ellis, LLP<br>　　200 East Randolph<br>　　Chicago, Illinois 60601 | |

**SECOND AMENDED JOINT PLAN OF LIQUIDATION**

**OF SN LIQUIDATION, INC.,** *ET AL*

**EXHIBIT 3**

**ADEPTIO LOAN AGREEMENT TERM SHEET**

Book Page 190

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

Book Page 191

### SN LIQUIDATION, INC., ET AL
### SUMMARY OF TERMS AND CONDITIONS FOR
### ADEPTIO INPC FUNDING LLC $500,000 LOAN

**AUGUST 11, 2008**

| | |
|---|---|
| **DEBTORS:** | INP Liquidation Corp., (f/k/a InPhonic, Inc.); CS I Liquidation, LLC (f/k/a CAIS Acquisition, LLC); CS II, LLC (f/k/a CAIS Acquisition II, LLC); SI Liquidation Corp. (f/k/a SimIPC Acquisition Corp.); SN Liquidation, Inc. (f/k/a Star Number, Inc.); MTS Liquidation, LLC (f/k/a Mobile Technology Services, LLC); FN LLC (f/k/a FON Acquisition, LLC); and, 1010, LLC (f/k/a 1010 Interactive, LLC). |
| **BORROWER:** | Debtors' Litigation Trust formed pursuant to the Debtors' Joint Plan of Liquidation, as and when such plan is confirmed by the Bankruptcy Court. |
| **LENDER:** | Adeptio INPC Funding, LLC or it designee ("Lender"), provided, however, that any such designee is capitalized adequately to fund the Loan, in the Committee's or the Trust's reasonable discretion, and that, in any event, Adeptio INPC Funding, LLC shall remain obligated to fund the loan on the terms described herein if such designee fails to do so. |
| **FACILITY:** | Up to $500,000 Senior Secured Grid Term Loan (the "Loan"). |
| **PURPOSE:** | To fund the costs of professional fees and expenses necessary to investigate the viability of avoidance actions and other litigation claims and commence and prosecute such litigation if appropriate that the Debtors' estates, through the Borrower, may possess. |
| **SECURITY:** | Borrower shall grant Lender a senior secured, first priority lien on all its existing and after-acquired tangible and intangible assets and property including, but not limited to, all proceeds from avoidance actions and litigation that Borrower initiates, and any amounts distributable to the Borrower's beneficiaries. |
| **INTEREST RATE:** | The "Applicable Federal Rate," being the applicable federal short-term rate for monthly compounding promulgated each month by the U.S. Treasury Secretary pursuant to section 1274(d) of the Internal Revenue Code of 1986, as amended (the "Code"), automatically fluctuating upward and downward each month with changes in the applicable federal rate as required under section 7872(f) of the Code.   This rate is 2.06% for June 2008. |
| **BORROWINGS:** | Lender will advance the principal amount of the Loan from time-to-time within two business days after it receives a written request from Borrower specifying the amount of the advance requested (each, an "Advance") and providing documentation of the fees and expenses to be paid with the proceeds of such Advance.  Borrower may request Advances not more frequently than two times per month.  The aggregate amount of the Advances shall not exceed the maximum principal amount of the Loan.  Borrower shall have up to 12 months to draw the full amount of the Loan after which time Lender shall have no further obligation to advance any portion of the undrawn principal amount of the Loan. |

Book Page 192

| | |
|---|---|
| **LOAN PAYMENT** | Borrower shall pay the loan from the proceeds of litigation trust claims and other proceeds of liquidating its assets including the proceeds of any avoidance actions and other litigation claims that the Borrower prosecutes. Borrower shall pay in full the principal amount of the Loan outstanding, together with any accrued and unpaid interest, before distributing any of its assets to any other of Borrower's beneficiaries or paying any other of Borrower's costs or expenses. Payments that Borrower makes on account of the outstanding principal balance of the Loan shall permanently reduce the availability under the Loan and shall not be available for reborrowing. |
| **CONDITIONS PRECEDENT:** | Lender's obligation to fund the Loan shall be subject to:  (1) an order confirming the Debtors' plan of liquidation (as may be amended or modified); (2) evidence of the formation of the litigation trust; (3) delivery to the Lender of the Borrower's non-binding, good faith estimated projection of draws under the Loan; and (4) Borrower's execution and delivery to Lender of documents evidencing the Loan, each of the foregoing in form and substance wholly consistent with the terms of the Settlement Agreement Term Sheet, this Term Sheet, and the Plan. |
| **REPRESENTA-TIONS AND WARRANTIES** | Due formation of the liquidation trust; authority to enter into Loan documents; validity and binding nature of the Loan documents. |
| **AFFIRMATIVE COVENANTS:** | Delivery of periodic reports of Borrower's activities in such form as is provided to the Trust Oversight Committee, which reports shall be consistent with the reporting requirements set forth in Article V.E.2(a) of the Plan; payment and performance of obligations agreed to by the Borrower and Lender that are consistent with this Term Sheet and the Settlement Agreement Term Sheet; continued existence of the trust; and compliance with laws that have a material effect on the repayment of the Loan. |
| **NEGATIVE COVENANTS:** | Borrower shall not make distributions of proceeds to its beneficiaries prior to payment in full of the Loan and accrued and unpaid interest. Borrower shall not incur any indebtedness, liens, or other obligations that are senior in priority to or *pari passu* with the Loan. |
| **EVENTS OF DEFAULT:** | Conversion of the bankruptcy cases to Chapter 7 and termination of the Litigation Trust; breach of affirmative or negative covenants; failure to pay any interest or principal under the Loan in accordance with the priority of the Loan and pursuant to the terms of the Settlement Agreement Term Sheet. |
| **WAIVER OF JURY TRIAL, GOVERNING LAW:** | Waiver of jury trial, submission to jurisdiction in Delaware before the Bankruptcy Court. Delaware law (without reference to choice of law provisions) to govern. |
| **MISCELLANEOUS:** | This Term Sheet is subject to definitive loan documentation. |

2