UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SN Liquidation, Inc. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11666 (KG)<br>(Jointly Administered)<br><br>**Re: D.I. No. 649** |

## LEAD PLAINTIFFS' OBJECTION TO CONFIRMATION OF DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION

Rodney Caspersen ("Lead Plaintiff"), for himself and on behalf of the putative class in the consolidated securities class action entitled *In re InPhonic, Inc. Securities Litigation*, Case No. 07-00930 (RBW) (D.D.C.) (the "Securities Class Action"), by and through his attorneys, submits this objection to confirmation of the Debtors' Second Amended Joint Plan of Liquidation (the "Plan"), and respectfully states as follows:

### RELEVANT BACKGROUND

1.    On November 8, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    The Securities Class Action, filed on May 18, 2007, is federal class action on behalf of purchasers of the common stock of InPhonic, Inc. ("Inphonic") between May 8, 2006 and October 11, 2007, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934.

3.    The complaint alleges that during the Class Period, InPhonic's stock price reached a high of $14.36 per share as a direct result of a deliberate and/or reckless scheme by certain officers and directors of InPhonic to improperly inflate InPhonic's stock price by over-reporting InPhonic's revenues, under-reporting expenses and falsely assuring investors that InPhonic maintained adequate internal controls to ensure the accuracy of its financial results.

4.    Specifically, the complaint alleges that in early 2006, InPhonic and the

revenues and understated expenses related to wireless activations and equipment and consumer rebates to make InPhonic appear more profitable than it actually was. Each quarter in 2006, the individual defendants falsely reported that InPhonic had exceeded revenue and earnings targets and was thriving from a new residual revenue program initiated in early 2006. InPhonic also rejected thousands of legitimate rebate requests to boost reported gross margins and to manipulate reported equipment costs.

5.    Ultimately, the breadth and scope of the securities fraud defendants perpetrated became too great to conceal. InPhonic was forced to restate its financial results for all of 2006. On April 3, 2007, InPhonic shocked investors when it revealed that its financial statements for the quarterly periods ended June 30, 2006 and September 20, 2006, and its financial statements for the year-ended December 31, 2006 should no longer be relied upon as a result of "accounting irregularities ." According to InPhonic, these "accounting irregularities" focused on the improper recognition of revenue from net activation and service revenues. Further, InPhonic disclosed that its audit committee had determined that "a material weakness" existed in InPhonic's internal control over financial reporting. These disclosures caused InPhonic's stock to fall 11.7 percent, or $1.21 per share, to close on April 3, 2007 at $9.15 per share, on unusually heavy trading volume.

6.    The complaint further alleges that InPhonic subsequently clarified the seriousness of its accounting and internal control issues which would force it to restate its financial results for all of 2006. At that time, InPhonic also disclosed that it had identified additional material weaknesses in its financial reporting controls and that it had misapplied Generally Accepted Accounting Principles ("GAAP"), resulting in the overstatement of more than $18 million of InPhonic's total revenue during the Class Period. InPhonic also disclosed that it had failed to report properly almost $8 million related to equipment, sales, marketing and other rebate expenses and reserves. On this news, shares of InPhonic stock fell an additional 7.5 percent, or $0.64 per share, to close on May 4, 2007 at $7.90 per share, on unusually heavy trading volume.

7.    Finally, the complaint alleges that, throughout the Class Period, InPhonic and the other defendants failed to disclose material adverse facts about InPhonic's financial well-being.    Specifically, InPhonic and the other defendants failed to disclose or indicate the following: (1) that InPhonic's financial results were materially inflated; (2) that InPhonic prematurely recorded $16 million of net activation and service revenue; (3) that InPhonic improperly recognized revenue from fees due from customers when contracts were cancelled or devices were unreturned; (4) that InPhonic failed to accurately account for accrued expenses and reserves in connection with consumer product rebates; (5) that the InPhonic's financial statements were not prepared in accordance with GAAP; (6) that InPhonic lacked adequate internal and financial controls; and (7) that, as a result of the foregoing, InPhonic's financial statements were materially false and misleading at all relevant times.

8.    As a result of InPhonic's and the other defendants' wrongful acts and omissions, and the precipitous decline in the market value of InPhonic's common stock, Lead Plaintiff and other class members have suffered significant losses and damages.

9.    Due to the discovery stay set forth in section 21D(b)(3)(b) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA"), and 11 U.S.C. §, Lead Plaintiff has not had the opportunity to conduct formal discovery of the Debtor, its affiliates or the non-debtor defendants in the Securities Class Action.

10.    On or about January 24, 2008, Lead Plaintiff timely filed a proof of claim (Claim No. 230) asserting an unliquidated claim of not less than $50,000,000 arising out of the allegations set forth in the complaint in the Securities Class Action.

## OBJECTION[1]

---

[1]    Although the Plan possibly violates the absolute priority rule of 11 U.S.C. § 1129(b) and fails to comply with applicable provisions of the Bankruptcy Code (i.e., 11 U.S.C. § 507), for the

11.    As set forth in more detail below, Lead Plaintiff objects to confirmation of the Plan on three separate grounds. <u>First</u>, the Plan improperly extends the automatic stay and injunctions far into the future (indeed, to a date *uncertain*). <u>Second</u>, the Plan improperly and unjustifiably precludes Lead Plaintiff from proceeding, following confirmation of the Plan, against the Debtors solely to the extent of available insurance coverage, irrespective of any injunction or distribution under the Plan. <u>Third</u>, Lead Plaintiff is entitled to the same release, discharge and injunction carve-out from the release provision under the Plan afforded to the U.S. Securities and Exchange Commission (the "<u>SEC</u>") with respect to claims against any non-debtor, defendants, named or to be named, in the Securities Class Action.

## A.    The Extension Of The Automatic Stay And Injunctions Under The Plan Is Inappropriate And Prejudicial To Lead Plaintiff And The Class.

12.    Under the Plan, stays and injunctions provided for in the Debtors' cases under sections 105 or 362 of the Bankruptcy Code and existing on the Confirmation Date will remain in effect until the later of the closing of the Debtors' chapter 11 cases or the dissolution of the Litigation Trust. *See* Plan, Art. XI(m), at 51.

13.    Significantly, however, neither the entry of the final decree closing these cases nor the dissolution of the Litigation Trust will occur on a date certain. In fact, the dissolution of the Litigation Trust cannot occur until all of the following have occurred: (i) the conclusion of all pending litigation, (ii) all of the Liquidation Trust's assets are liquidated or disposed of in accordance with the Plan and the Trust Agreement and all of the funds in the Litigation Trust have been completely distributed in accordance with the Plan, (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and all time periods and all opportunity for such authorities to challenge such final tax returns have expired, and (iv) the orders closing the Debtors' chapter 11 cases are each a final order. *See* Plan

---

sake of brevity and of objecting only on grounds most relevant to the class's claims against the Debtors, Lead Plaintiff does not here argue against confirmation of the Plan on these grounds. Lead Plaintiff reserves the right to supplement this objection to assert additional or different arguments against confirmation of the Plan.

at Ex. 1, Art. X. Thus, the term of the injunctions and automatic stay may extend several years after the Plan's effective date. Neither the Plan nor the Litigation Trust Agreement provides any explanation to justify the lengthy extension of the automatic stay (or other stays or injunctions imposed by the Plan or the conformation order).

14.    The Liquidation Trustee has the right to pursue the Debtors' causes of action, *inter alia*, against the directors and officers. *See* Plan, Art. V(e)(2)(d). The factual bases underlying those claims undoubtedly will be similar to, if not identical, to the facts underlying the claims in the Securities Class Action. Because of the extended stay and injunctions under the Plan, a significant road block has been executed to prevent Lead Plaintiff from obtaining access to relevant discovery in the context of the Securities Class Action while the Litigation Trustee will have unfettered access to the same documents and information to pursue his or her competing claims.

15.    Although Lead Plaintiff can request the Court to modify the stay, there is no basis for the Litigation Trust to be able to assert the automatic stay for years beyond the Plan's effective date. The effect of the extended injunctions and stay is to frustrate Lead Plaintiff's ability to obtain documents relevant in the Securities Class Action while the Liquidation Trustee has full access to the documents, to pursue its own claims.

16.    Bankruptcy courts do not generally allow debtors to offensively use the automatic stay in this fashion. *See, e.g., Hydramar Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. Lexis 24828, *13 (E.D. Pa. 1986), citing *Bohack Corp. v. Borden, Inc.*, 599 F. 2d 1160 (2d Cir. 1979) (a debtor using the bankruptcy process and the automatic stay to its advantage may not serve the purpose of the Bankruptcy Code; the automatic stay "has no application where the debtor is in the position of assailant rather than the victim"); *In re A.H. Robbins Co.*, 828 F. 2d 1023, 1026 (4th Cir. 1987); *In re Johns-Manville*, 31 B.R. 965, 974 (S.D.N.Y. 1983) (accepting the view that the bankruptcy's protective shield should not be unfairly converted into a sword of aggression). *See also Maritime Electric Co. v. United Jersey Bank*, 959 F. 2d 1194, 1205 (3d Cir. 1991). The automatic stay should not be available offensively for what might be several years after

confirmation of the Plan, to frustrate the claims of Lead Plaintiff against defendants common to those against whom the Litigation Trustee may assert a claim to gain a fundamentally unfair litigation advantage.

**B.    Lead Plaintiff Should Be Allowed To Proceed With Its Claims Against The Debtors Solely To The Extent Of Available Insurance Coverage, Irrespective Of Any Injunctions Or The Automatic Stay.**

17.    Upon information and belief, the Debtors maintain numerous liability insurance policies (the "D&O Policies") in favor of their directors and officers covering claims asserted in the Securities Class Action, as well as for claims asserted against the Debtors directly for violations of federal securities laws. Under the Plan, all of the Debtors' insurance policies are deemed to be executory contracts that are assumed and assigned to the Litigation Trust. *See* Plan, Art. VI(a). The Plan proponents provide no information as to the coverage provided under the D&O Policies and do not identify which parties have a right to access the proceeds thereof in the event a claim is asserted against them. Notwithstanding the assignment of these policies to the Litigation Trust, Lead Plaintiff submits that the class is entitled to the proceeds of the D&O Policies to satisfy Lead Plaintiff's and the class's claims. Moreover, Lead Plaintiff and the class should be allowed to pursue their claims against the Debtors solely to the extent of such available insurance.

18.    Assuming the Debtors are covered by any of the D&O Policies, and because the proceeds of the D&O Policies are not an asset of the Debtors' estates being distributed under the Plan, there is no basis to deny Lead Plaintiff the right to access the D&O Policies in connection with the claims that those policies were intended to cover.

19.    The proceeds of the D&O Policies may only be accessed by the Lead Plaintiff through the pursuit of the claims asserted in the Securities Class Action because Lead Plaintiff may not have a direct action against the D&O insurance carriers under the D&O Policies.

20.     Finally, because the Debtors are liquidating, they are not eligible for a discharge under section 1141 of the Bankruptcy Code.  Thus, it is unfairly prejudicial to prevent Lead Plaintiff from pursuing its claims after the effective date of the Plan.

21.     Accordingly, the Plan should not impact the rights of Lead Plaintiff or the class to pursue their claims against the Debtors solely to the extent of the proceeds of the D&O Policies.

**C.      The Carve Out In Favor Of The SEC From The Release, Discharge And Injunction Provisions Of The Plan Should Also Apply To Lead Plaintiff.**

22.     As previously discussed, the Plan includes a broad release of Adeptio and Simpelxity, Inc. (Adeptio's successor) by third parties.  *See* Plan, Art. XI(c)(2).  The release contained in the Plan carves out claims by the SEC against non-debtors.  In this regard, the Plan provides that:

> Nothing in the Plan or Disclosure Statement or the order approving the Plan or Disclosure Statement shall (i) release or discharge any claims held by the U.S. Securities and Exchange Commission against any non-debtor(s) or (ii) enjoin or restrain the U.S. Securities and Exchange Commission from enforcing such claims against any non-debtor(s).

Plan at Article XI(c)(2).

23.     Non-debtor releases are appropriate only under extraordinary circumstances.  *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211-17 (3d Cir. 2000) (denying third party releases and related injunctions where there was no legal or evidentiary basis to authorize same); *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005) (holding that non-debtor releases are proper only in rare cases and may be "tolerated only if the affected creditor consents").

24.     While the Plan does not appear to release non-debtors other than Adeptio and Simplexity, it includes express language affirmatively stating that any claims of the SEC against non-debtors will not be released, discharged or enjoined under the Plan.  The inclusion of this language creates the appearance that non-debtor releases are being or may be granted under the

Plan. To the extent there is any intention to provide such non-debtor releases under the Plan, Lead Plaintiff objects. The non-debtor defendants in the Securities Class Action are not entitled to a release, discharge or similar relief. *See Continental Airlines*, *supra*; *Metromedia Fiber*, *supra*; 11 U.S.C. § 524(e). To clarify this ambiguity and avoid any potential prejudice to Lead Plaintiff's claims against the non-debtor defendants in the Securities Class Action, the Plan should provide Lead Plaintiff with the same relief provided to the SEC. Thus, the last paragraph in Article XI(c)(2) of the Plan should be revised to read as follows:

> Nothing in the Plan or Disclosure Statement or the order approving the Plan or Disclosure Statement shall (i) release or discharge any claims held by the U.S. Securities and Exchange Commission or Lead Plaintiff and the class in the consolidated securities class action entitled *Thomas Stevens, Individually And On Behalf Of All Others Similarly Situation v. InPhonic, Inc., et al.*, Case No. 07-00930 (RBW) (D.D.C.) (the "Securities Class Action"), against any non-debtor(s) or (ii) enjoin or restrain the U.S. Securities and Exchange Commission or the plaintiffs in the Securities Class Action from enforcing such claims against any non-debtor(s).

25. If the Plan does not provide for third party non-debtor releases, there should be no objection to the inclusion of this language in the Plan and confirmation order.

## CONCLUSION

26. Lead Plaintiff respectfully requests that an order be entered (i) denying confirmation of the Plan unless the objections sets forth herein are satisfied, and (ii) granting Lead Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

**CROSS & SIMON, LLC**

*/s/ Christopher P. Simon*
Christopher P. Simon Esq. (Bar No. 3697)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
Tel: (302) 777-4200
Fax: (302) 777-4224

-and-

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel To Lead Plaintiff And The Class*

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Andrew N . Friedman, Esq.
1100 New York Ave ., N.W.
West Tower, Suite 500
Washington, D.C. 20005

*Lead Counsel To Lead Plaintiff And The Class*

Dated: September 16, 2008