**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| SN LIQUIDATION, INC., *et al.*, | : Case No. 07-11666 (KG) |
|  | : |
| Debtors. | : (Jointly Administered) |
|  | : |
|  | : **Re: Docket No. 649** |

**DECLARATION OF DORENE ROBOTTI IN SUPPORT OF CONFIRMATION**
**OF THE JOINT PLAN OF REORGANIZATION OF THE DEBTORS AND THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dorene Robotti makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

1.      I am a Managing Director at Clear Thinking Group LLC ("CTG"). CTG was appointed by Order of the Court as Chief Wind-Down Officer for SN Liquidation, Inc. and its affiliated debtors and debtors in possession (the "Debtors") *nunc pro tunc* to February 21, 2008. As such, I am familiar with the Debtors' wind down operations, businesses and financial affairs.

2.      I submit this declaration (the "Declaration") in support of confirmation of the Second Amended Joint Plan of Liquidation of SN Liquidation, Inc. *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors, dated August 11, 2008 (the "Plan"),[1] and in connection with the Debtors' responsibilities under the Bankruptcy Code. I have reviewed the Plan and the Second Amended Disclosure Statement for the Joint Plan of Liquidation of SN Liquidation, Inc. *et al.* Proposed by the Debtors in Possession and the Official

---

[1]  Capitalized terms used but not defined herein shall  have the meanings ascribed to them in the Plan or the Disclosure Statement (as defined herein), as applicable.

Committee of Unsecured Creditors, dated August 11, 2008 (the "Disclosure Statement"), and represent that I am familiar with the terms and provisions thereof.

3.      I am authorized to submit this Declaration. Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge, on information learned from my review of the Plan and other relevant documents, on my opinion based upon my experience and knowledge of the Debtors' operations and financial condition, or upon information supplied to be by the purchasers of the Debtors' assets or the professionals retained by the Debtors. If I were called to testify, I would testify competently to the facts set forth in this Declaration.

## Background

4.      On November 8, 2007, (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

5.      On the Petition Date, the Debtors filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion and APA, the Debtors sought authority to sell substantially all of their business assets and to assume, sell and assign certain of their unexpired leases, license agreements, and executory contracts free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code.

2

{BAY:01159799v3}

5.    On December 13, 2007, after conducting a hearing, the Bankruptcy Court entered an order approving the Sale Motion and APA (the "Sale Order"). Pursuant to the Sale Order, the Debtors have sold substantially all of their business assets to Adeptio INPC Funding, LLC ("Adeptio"). On December 21, 2007, the parties closed the sale of the APA.

6.    On May 19, 2008, the Debtors filed the Debtors' Motion Pursuant to Sections 1125, 1126, and 105 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018 and 3020, and Local Rule 3017-1 for Order (A) Approving Adequacy of Disclosure Statements, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Fixing the Administrative Expense Bar Date, and (D) Fixing Date, Time and Place for Confirmation Hearing (the "Solicitation Procedures Motion").

7.    On August 11, 2008, the Debtors filed, under certification of counsel, the Plan and the Disclosure Statement, together with a revised form of order granting the Solicitation Procedures Motion (the "Solicitation Procedures Order"). On August 12, 2008, the Court entered the Solicitation Procedures Order, approving the Disclosure Statements and the proposed solicitation procedures. Thereafter, the Debtors caused BMC Group, Inc. (the "Voting Agent") to solicit acceptances of the Plan.

8.    The Solicitation Procedures Order, among other things, (i) established September 16, 2008 at 4:00 p.m. (Prevailing Central Time) as the deadline for voting on the Plan, (ii) scheduled a hearing commencing on October 14, 2008 at 2:00 p.m. (Prevailing Eastern Time) to consider confirmation of the Plan and objections thereto, and (iii) established September 16, 2008 at 4:00 p.m. (Prevailing Eastern Time) as the deadline to object to confirmation of the Plan.

9.    Objections to confirmation of the Plan were filed by Vincent E. Rhynes, equity interest holder [Docket No. 686], the Commonwealth of Pennsylvania, Department of Revenue

3

{BAY:01159799v3}

[Docket No. 699], the United States of America, Internal Revenue Service [Docket No. 704], and Rodney Caspersen, for himself and on behalf of the putative class in the consolidated Securities Class Action [Docket No. 705], and Andrew B. Zeinfeld and Kenneth D. Schwarz, former officers of InPhonic, Inc., a Debtor in these chapter 11 cases [Docket No. 713].

### Overview of the Plan

10.    On August 11, 2008, the Debtors and the Committee filed the Plan. The Plan is the result of ongoing negotiations with a number of creditors and creditor representatives. The Plan provides for the orderly liquidation of the Debtors' Estates. Because substantially all of the Debtors' operating assets were sold as part of the Sale, the Plan provides for the formation of the Litigation Trust that will administer the remaining Estate Assets and assess the value thereof. These remaining Estate Assets include, but are not limited to, any Causes of Action against the recipients of stock redemption payments and claims, former directors and officers, or otherwise. Those Causes of Action are central to the success of the Plan and the distribution of any value to Holders of General Unsecured Claims.

11.    There are eight (8) distinct legal entities that are being liquidated pursuant to the Plan. The Plan, however, provides for the merger of all of the Debtors' estates into SN Liquidation. To the extent that all of the Estates are merged, on the Effective Date (i) all intercompany claims by, between and among the Debtors shall be eliminated, (ii) all assets and liabilities of the Affiliate Debtors shall be merged or treated as if they were merged with the assets and liabilities of SN Liquidation, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of SN Liquidation, (iv) the Subsidiary Interests shall be cancelled and (v) each Claim filed or to be filed against any

4

Debtor shall be deemed filed only against SN Liquidation and shall be deemed a single claim against and a single obligation of SN Liquidation.

12.    In addition, and to the extent that the Estates are merged on the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect. The existing common and voting stock of the Debtors shall be cancelled under the Plan, and no distributions are provided for holders of such stock interests or claims based upon or arising from the ownership of such stock.

### Satisfaction of Conditions Precedent to Confirmation

13.    Based upon my review of the Plan and discussions with the Debtors' legal counsel, I believe that the conditions precedent to confirmation of the Plan, as set forth in Article IX of the Plan, have been or will be satisfied upon entry of an order confirming the Plan.

### Compliance with the Applicable Provisions of the Bankruptcy Code

14.    The Plan Complies With Section 1129(a)(1) of the Bankruptcy Code. Based upon my review of the Plan and all related materials, and based on my discussions with the Debtors' legal counsel, it is my understanding that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1), including, without limitation, sections 1122, and 1123 of the Bankruptcy Code.

(a).    The Plan Satisfies Section 1122 of the Bankruptcy Code.

15.    Article II of the Plan provides for the separate classification of five (5) Classes of Claims and one (1) Class of Interests. Each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interest within such Class. Further, I

{BAY:01159799v3}

believe that valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests under the Plan. Additionally, similar Claims have not been placed into different Classes in order to affect the voting on the Plan.

(b)     The Plan satisfies Section 1123 of the Bankruptcy Code.

16.     The Plan fully complies with each requirement of section 1123(a)(1)-(7) of the Bankruptcy Code as follows:

(i)     Section 1123(a)(1). Article II of the Plan designates Classes of Claims and Interests created by the Plan that require classification. Further, Administrative Expense Claims, Priority Tax Claims and Trustee Fee Claims are not classified in Article II of the Plan, as required by section 1123(a)(1) of the Bankruptcy Code.

(ii)     Section 1123(a)(2). Article II of the Plan specifies that Class 1 - Other Secured Claims and Class II - Priority Non-Tax Claims are Unimpaired under the Plan.

(iii)     Section 1123(a)(3). Article II of the Plan provides that Claims and Interests in Classes 3, 4, 5 and 6 are designated as Impaired under the Plan in that the legal, equitable and contractual rights of holders of Claims or Interests in those Classes are altered in connection with the Plan.

(iv)     Section 1123(a)(4). As reflected in the treatment set forth in Article III of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class.

(v)     Section 1123(a)(5). Article V and various other provisions of the Plan specifically provide adequate means for implementation of the liquidating Plan, including, without limitation: (a) the completion and implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' assets, (b) the formation of the Litigation

6

Trust, which will pursue the Estates' Causes of Action, (c) the merger of all of the Debtors' Estates into SN Liquidation, (d) the transfer of all Estate Assets to the Litigation Trust, and (e) the dissolution of the Debtors under applicable state law. All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to the Plan shall be obtained from the following sources: (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action; (d) Adeptio's funding obligations pursuant to the Sale Order and Term Sheet, including the: (i) Professional Funding; (ii) Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with the terms of such Term Sheet.

(vi)    Section 1123(a)(6). Pursuant to Article V.B of the Plan, the Debtors shall be merged with and into SN Liquidation on the Effective Date. Immediately after the merger and the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be deemed dissolved under applicable state law. Further, Article III.E.I of the Plan provides for the cancelation of all equity interests of the Debtors' on the Effective Date. Therefore, the Debtors will be prohibited from issuing non-voting equity securities.

(vii)    Section 1123(a)(7). Pursuant to Article V.B of the Plan, the Debtors shall be merged with and into SN Liquidation, Inc. on the Effective Date, and the sole director or manager, as the case may be, of each of the Debtors, including SN Liquidation, Inc., shall be deemed to have resigned. Further, Article III.E.I. of the Plan provides that immediately after the merger and the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be deemed dissolved under applicable state law. The Trustee of the Litigation Trust was selected by the Official Committee of Unsecured Creditors and will, *inter alia*, administer the remaining assets of the estates and prosecute any claims of the estates pursuant to Article V.E

7

{BAY:01159799v3}

of the Plan. The Litigation Trust Agreement provides for the manner of selecting the Trustee's successor, and the Trust Oversight Committee will monitor the Litigation Trust. This is consistent with the interests of creditors and public policy.

(viii)    Section 1123(b)(1). Pursuant to Article II of the Plan, Classes 1 and 2 are designated as Unimpaired and Claims and Interests in Classes 3 through 6 are designated as Impaired.

(ix)    Section 1123(b)(2). Article VI of the Plan provides for (a) the treatment of each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto (the "Insurance Policies"), unless previously canceled or transferred by Adeptio, as Executory Contracts, (b) the assumption of the Insurance Policies and the assignment of all of the Estates' rights under such Insurance Policies to the Litigation Trust in accordance with sections 365 and 1123 of the Bankruptcy Code, (c) the rejection of all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to Section 2.5(b) of the Asset Purchase Agreement) on the Effective Date *nunc pro tunc* to the Petition Date, and (d) the rejection of all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date *nunc pro tunc* to July 19, 2008. Based upon my review of the Plan, my knowledge of the Debtors' cases and discussions with the Debtors' legal counsel, I believe that the decisions regarding the assumption and rejection of executory contracts and unexpired leases, which were made in accordance with the arm's-length and good faith negotiations that resulted, and are embodied in, the Plan, are based on and are within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, the Debtors' Estates, Holders of Claims, and other parties in interest in the Debtors'

Chapter 11 Cases, and in compliance with the Bankruptcy Code. The rejection of the Executory Contracts benefits the Estates by relieving the burden and cost of carrying contracts when the Debtors are no longer operating.

(x)    Section 1123(b)(3).    Based upon my review of the Plan, my personal knowledge of the circumstances and negotiations leading to its filing by the Plan Proponents, and my discussions with the Debtors' legal professionals, it is my understanding that each of the releases, exculpations and limitations of liability set forth in Article XI, Sections C.1, C.2 and F of the Plan are supported by reasonable consideration and are integral to the terms, conditions and settlements contained in the Plan and Term Sheet. Further, in light of the extensive negotiations involved with formulation of the Plan, each such release, exculpation and limitation of liability is (i) fair, equitable, and reasonable to all parties in interest, (ii) an integral element of the liquidation and resolution of the Debtors' cases, (iii) are in the best interests of the Debtors and their Estates, and (iv) is fair consideration provided by the Proponents, Adeptio and Simplexity. Furthermore, it is my understanding that the third party release set forth in Article XI.C.2 of the Plan is appropriate and not inconsistent with the Bankruptcy Code. The third party release does not apply to any Holder of a Secured Lender Claim or a General Unsecured Claim if such holder selected to opt out of such release by a written election set fort on such Holder's ballot. The third party release is designed to be voluntary and consensual. Without the releases, injunction and exculpation and limitation of liability provided for in the Plan, the Plan would not be adequately funded, and there would be little likelihood of a successful plan of liquidation. The Plan provides for the best possible opportunity for recovery to the affected parties. Therefore, it is my belief that the third party release should be upheld as to parties voting in favor of the Plan and not selecting to opt out of such release.

{BAY:01159799v3}

(xi)    Section 1123(b)(6). Based upon my review of the Plan and discussions with the Debtors' legal counsel, it is my understanding that the Plan's provisions are appropriate and consistent with the Bankruptcy Code, in accordance with section 1123(b)(6) of the Bankruptcy Code.

(c)    The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code.

17.    Based upon my review of the Plan and my discussions with the Debtors' legal counsel, the Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, as required by section 1129(a)(2). It is my further understanding that the Debtors have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, in compliance with the Bankruptcy Rules and this Court's Order dated August 12, 2008 approving: (a) the voting and tabulation procedures in connection with voting on the Plan and (b) the Disclosure Statement and all exhibits thereto.

(d)    The Plan Complies With Section 1129(a)(3): Plan Proposed in Good Faith.

18.    The Plan is the culmination of significant arm's-length negotiations among the Debtors, the Creditors Committee, Adeptio and other parties-in-interest. The Plan received overwhelming support from Voting Holders that voted on the Plan, as evidence of the consensual nature of the Plan and the Debtors' good faith. Inasmuch as the Plan promotes the distribution objectives and purposes of the Bankruptcy Code, the Plan has been filed in good faith. Furthermore, the releases and exculpations provided for in the Plan have been negotiated and agreed to by the Committee and other parties in interest. Moreover, the Debtors submit that they have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

10

(e)    The Plan Complies With Section 1129(a)(4) of the Bankruptcy Code: Court
       Approval of Certain Administrative Expense Payments.

19.    Based upon my discussions with the Debtors' legal counsel and my knowledge of

the Debtors' cases, it is my understanding and belief that to date, all professional fees and

expenses are subject to the approval of this Court and the interim compensation procedures order

entered in these cases.  Pursuant to Article V.E.4 of the Plan, all fees and expenses sought by

professionals remain subject to final review for reasonableness by the Court under section 330 of

the Bankruptcy Code.

(f)    The Plan Complies With Section 1129(a)(5) of the Bankruptcy Code:  Identity of
       Directors, Officers and Compensation of Insiders.

20.    Article V of the Plan provides that on the Effective Date - (a) the members of the

board of directors or managers, as the case may be, of each of the Debtors including SN

Liquidation shall be deemed to have resigned, and (b) each of the Debtors shall be merged with

and into SN Liquidation without the necessity of any other or further action to be taken by or on

behalf of the Debtors.  Further, on the Effective Date, immediately after (i) the merger of the

other Debtors into SN Liquidation, and (ii) the transfer of all Estate Assets to the Litigation

Trust, the Debtors will cease to exist and shall be dissolved under applicable state law.  Morton

Branzburg will be Trustee of the Litigation Trust.  The Litigation Trust Oversight Committee

will monitor the Trust.  Accordingly, section 1129(a)(5) of the Bankruptcy Code is inapplicable

in these chapter 11 cases.

(g)    The Plan Complies With Section 1129(a)(6) of the Bankruptcy Code: Rate
       Changes  Subject  to  the  Jurisdiction  of  any  Governmental  Regulatory
       Commission.

21.    It is my understanding that the Plan does not provide for or contemplate any rate

change that would require approval of any regulatory agency.

11

(h)   The Plan Complies With Section 1129(a)(7) of the Bankruptcy Code: Best Interests of All Holders of Claims and Interests.

22.     Based upon my discussions with the Debtors' legal counsel, my review of the Article XI of the Disclosure Statement, and my knowledge of the Debtors' financial affairs, business operations and cases, I believe that liquidation under chapter 7 of the Bankruptcy Code would result in smaller or no distributions to creditors.  Based upon my discussions with the Debtors' legal counsel, it is my understanding and belief that with respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or Interest in such Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date pursuant to Chapter 7 of the Bankruptcy Code.

(i)   The Plan Does Not Comply With Section 1129(a)(8): Class 3 (Secured Lender Claims) did not vote and therefore did not accept the Plan, and the Holders of Claims and Interests in the Deemed Rejected Classes are deemed to have rejected the Plan.

23.     Based on my review of the Final Voting Declaration, it is my understanding that Holders of Class 4 General Unsecured Claims voted overwhelmingly to accept the Plan.  Based upon my review of the Plan and the Final Voting Declaration, it is my understanding that the Holders of Class 3 Secured Lender Claims did not vote regarding the Plan, and the Holders of Claims and Interests in the Deemed Rejecting Classes are deemed to have rejected the Plan. Based upon my discussions with the Debtors' legal counsel, since the Plan does not satisfy the acceptance requirements of section 1129(a)(8) with respect to Class 3 (Secured Lender Claims) and the Deemed Rejecting Classes, it must be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code, with respect to those Classes.

(j)     The Plan Complies With Section 1129(a)(9): Treatment of Administrative, Priority and Tax Claims.

24.     Based upon my review of Article III of the Plan, as well as my discussions with the Debtors' legal counsel, it is my understanding that the Plan provides for the statutorily mandated treatment of Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims, entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code in the manner required by, and therefore, complies in all respects with section 1129(a)(9) of the Bankruptcy Code.  To the extent Holders of Administrative Expense Claims will not be paid in full on the Effective Date, such claimants have consented to their treatment under the Plan. Upon examination of the universe of administrative expense claims, I am not aware of any Holders of Administrative Expense Claims who object to Article III.A.1 of the Plan

(k)     The Plan Complies With Section 1129(a)(10):  At Least One Class of Impaired Claims Has Accepted the Plan.

25.     Based upon my review of the Final Voting Declaration, it is my understanding that the Holders of Class 4 General Unsecured Claims, an Impaired Class under the Plan, have voted overwhelmingly to accept the Plan.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(10) of the Bankruptcy Code.

(l)     The Plan Complies With Section 1129(a)(11): The Plan is Feasible.

26.     The Plan is a liquidating plan that provides for the orderly liquidation of the Debtors' Estates.  Based upon my review of the Plan (and all exhibits thereto), the Disclosure Statement, my discussions with the Debtors' legal counsel, as well as my knowledge of the Debtors' cases, it is my belief that the liquidation proposed in the Plan is feasible.

27.     The Plan provides for (a) the completion and implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' assets, (b) the formation

13

{BAY:01159799v3}

of the Litigation Trust, which will pursue the Estates' Causes of Action, (c) the merger of all of the Debtors' Estates into SN Liquidation, (d) the transfer of all Estate Assets to the Litigation Trust, and (e) the dissolution of the Debtors under applicable state law. All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to the Plan shall be obtained from the following sources: (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action;[2] (d) Adeptio's funding obligations pursuant to the Sale Order and Term Sheet, including the: (i) Professional Funding; (ii) Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with the terms of such Term Sheet.

(m)     The Plan Complies With Section 1129(a)(12): Payment of All Statutory Fees.

28.     Based upon my review of the Plan and my discussions with the Debtors' legal counsel, it is my understanding that, in accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, all Trustee Fee Claims will be satisfied on or before the Effective Date. Also, the Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-confirmation reports as may be required.

(n)     The Plan Complies With Section 1129(a)(13):  Retirement Benefits.

29.     The Debtors will cease to exist after the Effective Date and have never had a pension plan or other obligation under section 1129(a)(13) of the Bankruptcy Code. Therefore, it is my belief that the Plan meets the requirements of section 1129(a)(13) of the Bankruptcy Code.

---

[2]     The remaining Estate Assets include, but are not limited to, any Causes of Action against the recipients of stock redemption payments and claims, former directors and officers, or otherwise. Those causes of action are central to the success of the Plan and the distribution of any value to Holders of General Unsecured Claims.

14

(o) The Plan Complies With Section 1129(a)(16): Transfers of Property Must Comply With Applicable Provisions of Nonbankruptcy Law.[3]

30. I am informed by Debtors' legal counsel that all transfers of property made pursuant to the Plan will be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust.

(p) The Plan Complies With Section 1129(b): Confirmation of the Plan Over Non-Acceptance by Certain Impaired Classes.

30. Based upon my review of the Plan and my discussions with the Debtors' legal counsel, it is my understanding that the Plan satisfies all requirements of section 1129(b) of the Bankruptcy Code and should therefore be confirmed notwithstanding the fact that Class 3 did not accept the Plan by ballot, and Classes 5 and 6 are conclusively deemed to have rejected the Plan.

31. Specifically, the Plan does not discriminate unfairly and is fair and equitable with respect to the Holders of Class 3 (Secured Lender Claims), Class 5 (Intercompany Claims) and Class 6 (Equity Interests), respectively. Based upon my review of the Plan and discussions with the Debtors' legal counsel, it is my belief that there are no other classes with similar legal rights to Classes 3, 5 or 6, respectively. Also, I am informed that no Holders of Claims or Interests subordinate to the Holders of Claims and Interests in Classes 5 or 6 will not receive or retain any property under the Plan. Further, in exchange for and in full satisfaction, settlement, release and discharge of Adeptio's Allowed Secured Lender Claim, it is my understanding that Adeptio consents to the treatment of its Secured Claim as proposed in the Plan and as detailed in the

---

[3] Based on the facts of these chapter 11 cases, it is my understanding that sections 1129(a)(14) and (15) of the Bankruptcy Code are not applicable.

15

Term Sheet. Accordingly, the Plan is fair and equitable with respect to the Class 3 (Secured Lender Claims) and the Deemed Rejecting Classes.

      (q)    <u>The Plan Complies With Section 1129(d): The Principal Purpose of the Plan is Not the Avoidance of Taxes</u>.

32.    Based upon my review of the Plan and my knowledge of the circumstances leading to its development, I submit that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

Based on the foregoing, I believe the Plan satisfies all of the requirements of the Bankruptcy Code and should be confirmed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on October  8 , 2008

                                     Dorene Robotti, Managing Director
                                     Clear Thinking Group LLC

16