## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
|  | : Case No. 07-11666 (KG) |
| SN LIQUIDATION, INC., *et al.*, | : |
|  | : (Jointly Administered) |
| Debtors. | : |
|  | : **Re: Docket No. 649** |

## MEMORANDUM OF LAW IN SUPPORT OF SECOND AMENDED PLAN AND
## REPLY TO OBJECTIONS TO CONFIRMATION

**DLA PIPER US LLP**

Thomas R. Califano, Esquire
Jeremy R. Johnson, Esquire
1251 Avenue of the Americas
New York, New York  10020

**BAYARD P.A.**

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
Wilmington, Delaware  19899

Counsel for Debtors and Debtors in Possession

**REED SMITH LLP**

Kurt F. Gwynne (No. 3951)
1201 Market Street
Suite 1500
Wilmington, DE 19801

Robert P. Simons (admitted in PA)
Claudia Z. Springer (admitted in PA)
Joshua C. Lewis (admitted in PA)

Counsel for the Official Committee of Unsecured Creditors

## TABLE OF CONTENTS

**Page No.**

I.    STATEMENT OF FACTS ...................................................................................1

    A.    General Background ...........................................................................1

    B.    The Chapter 11 Cases, the Plan, and Solicitation of Votes Thereon ....................1

II.    ARGUMENT ...................................................................................................4

    A.    The Plan Satisfies the Requirements for Confirmation Under 11 U.S.C. § 1129(a) ..........................................................................................4

        1.    The Plan Complies with  11 U.S.C. § 1129(a)(1).......................................6

            a.    The Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122..........................................................6

            b.    The Plan Satisfies the Requirements of 11 U.S.C. § 1123(a) of the Bankruptcy Code ...................................8

            c.    Permissive Provisions of Section 1123(b) of the Bankruptcy Code .....................................................11

        2.    The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(2)...............................................19

        3.    The Plan Has Been Proposed in Good Faith and Not by any Means Forbidden By Law – 11 U.S.C. § 1129(a)(3) ............................................21

        4.    The Plan Provides That Payments Made by the Debtors for Services or Costs and Expenses Are Subject to Approval – 11 U.S.C. § 1129(a)(4)..................................................................23

        5.    The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers of the Debtors and Insiders – 11 U.S.C. § 1129(a)(5) ...............................................................................23

        6.    The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6)..................................................................24

        7.    The Plan is in the Best Interests of Creditors and Interest Holders – 11 U.S.C. § 1129(a)(7)...................................................................24

        8.    The Plan Complies with 11 U.S.C. § 1129(a)(8)......................................26

## TABLE OF CONTENTS (con't)

Page No.

9.     The Plan Complies with 11 U.S.C. § 1129(a)(9) ........................................27

      a.     Holders of Administrative Expense Claims Consent to their Treatment in the Plan ................................................................28

      b.     The Plan Satisfies 11 U.S.C. § 1129(a)(9)(B) ..............................29

      c.     The Plan Satisfies 11 U.S.C. § 1129(a)(9)(C) ...............................30

      d.     The Plan Satisfies 11 U.S.C. § 1129(a)(9)(D) ...............................30

10.    At Least One Class of Impaired Claims Has Accepted the Plan – 11 U.S.C. § 1129(a)(10) ...............................................................31

11.    The Plan Is Feasible – 11 U.S.C. § 1129(a)(11) ............................31

12.    All Statutory Fees Will Be Paid – 11 U.S.C. § 1129(a)(12) .....................33

13.    The Plan Satisfies the Requirement that It Provide for the Continuance of Retiree Obligations – 11 U.S.C. § 1129(a)(13) ................33

14.    The Plan Complies with 11 U.S.C. § 1129(a)(16) ......................................34

B.     The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code ................................................................34

    1.     The Plan Complies with Section 1129(b)(1) Because it Does Not Discriminate Unfairly Against the Rejecting Classes ...............................35

    2.     The Plan Complies with Section 1129(b)(2) because it is Fair and Equitable with Respect to Holders of Claims and Interests in the Rejecting Classes ..................................................................36

      a.     The Plan is Fair and Equitable as to Claimholders ........................36

      b.     The Plan is Fair and Equitable to Interest Holders ........................38

III.    REPLY IN SUPPORT OF CONFIRMATION .................................................39

A.     Objections to the Plan ................................................................39

B.     Reply to Confirmation Objections ................................................40

    1.     The Rhynes Objection ................................................................40

## TABLE OF CONTENTS (con't)

**Page No.**

2.   The PA Objection ....................................................................................40

3.   The IRS Objection .................................................................................41

4.   The Casperson Objection.......................................................................43

      a.   Extending the Automatic Stay is Necessary and
         Appropriate and Is In the Interests of All Creditors .....................44

      b.   Insurance Policies and Proceeds are Property of the Estate ..........46

      c.   The Lead Plaintiff Opted-Out of Third-Party Releases ................47

5.   The Z&S Objection.................................................................................48

IV.   CONCLUSION............................................................................................50

SN Liquidation, Inc. and its affiliated debtors and debtors in possession (the "Debtors"), hereby submit this memorandum of law (the "Memorandum") (a) in support of confirmation of the Second Amended Joint Plan of Liquidation of SN Liquidation, Inc. *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors, dated August 11, 2008 (the "Plan")[1] and (b) in reply to certain objections thereto. In support of the Memorandum, the Debtors respectfully represent as follows:

## I.    STATEMENT OF FACTS

### A.    General Background

The Debtors respectfully refer this Court to the Plan [Docket No. 649], the Second Amended Disclosure Statement for the Joint Plan of Liquidation of SN Liquidation, Inc. *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors, dated August 11, 2008 [Docket No. 650] (the "Disclosure Statement"), the Affidavit of Kenneth D. Schwarz in Support of First Day Motions sworn to on November 8, 2007 [Docket No. 14], the Declaration of Dorene Robotti in Support of Confirmation of the Joint Plan of Liquidation Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors [Docket No. 727] (the "Robotti Declaration"), and the entire record of these chapter 11 cases for an overview of the Debtors' businesses and all other relevant facts that may bear on confirmation of the Plan.

### B.    The Chapter 11 Cases, the Plan, and Solicitation of Votes Thereon

On November 8, 2007, (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement (as defined herein), as applicable.

On the Petition Date, the Debtors filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").  Pursuant to the Sale Motion and APA, the Debtors sought authority to sell substantially all of their business assets and to assume, sell and assign certain of their unexpired leases, license agreements, and executory contracts free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code.

On November 16, 2007, the United States Trustee (the "UST") appointed the Official Committee of Unsecured Creditors (the "Committee").  On October 6, 2008, the UST filed a revised notice of appointment of the Committee.  The revised notice of appointment reflects the removal of a Committee member from the Committee.

On December 13, 2007, after conducting a hearing, the Bankruptcy Court entered an order approving the Sale Motion and APA (the "Sale Order").  Pursuant to the Sale Order, the Debtors have sold substantially all of their business assets to Adeptio INPC Funding, LLC ("Adeptio").  On December 21, 2007, the parties closed the sale of the APA.

On or around December 21, 2007, Adeptio assigned to Simplexity, LLC, a Delaware limited liability company and a subsidiary of Adeptio ("Simplexity"), its rights to receive the Assets (as defined in the APA) from Adeptio under the APA.

On May 19, 2008, the Debtors filed the Debtors' Motion Pursuant to Sections 1125, 1126, and 105 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018 and 3020, and Local

Rule 3017-1 for Order (A) Approving Adequacy of Disclosure Statements, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Fixing the Administrative Expense Bar Date, and (D) Fixing Date, Time and Place for Confirmation Hearing (the "Solicitation Procedures Motion").

On August 11, 2008, the Debtors filed, under certification of counsel, the Plan and the Disclosure Statement, together with a revised form of order granting the Solicitation Procedures Motion (the "Solicitation Procedures Order"). On August 12, 2008, the Court entered the Solicitation Procedures Order. Thereafter, in accordance with the Solicitation Procedures Order, the Debtors caused BMC Group, Inc. (the "Voting Agent") to solicit acceptances of the Plan from the Holders of Class 3 Secured Lender Claims and Class 4 General Unsecured Claims (collectively, the "Voting Holders"), who held such claims as of August 1, 2008 (the "Solicitation Record Date"). The Debtors did not solicit votes on the Plan from Holders of Claims or Interests classified in Classes 1, 2, 5 and 6, each of which was either deemed to have accepted or rejected the Plan pursuant to sections 1126(f) and (g) of the Bankruptcy Code.

Pursuant to Solicitation Procedures Order, all ballots accepting or rejecting the Plan must have been properly completed, executed and timely returned to the Voting Agent by 4:00 p.m., prevailing Central Time, on September 16, 2008 (the "Voting Deadline"), in order to be counted.[2] On October 2, 2008, the Voting Agent executed the Daniel Declaration confirming the results of the solicitation, as follows:

---

[2] The distribution of the solicitation materials in accordance with the Solicitation Procedures Order is further described in the Declaration of Brad Daniel on Behalf of BMC Group, Inc. Voting Agent, Regarding the Solicitation and Tabulation of Votes With Respect to the Second Amended Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors In Possession and the Official Committee of Unsecured Creditors Dated August 11, 2008 (the "Daniel Declaration").

| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
| --- | --- | --- | --- | --- |
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| **Class 3** **Secured Lender Claims** | 0 0.00% | $0.00 0.00% | 0 0.00% | $0.00 0.00% |
| **Class 4** **General Unsecured Claims** | 2439 96.06% | $2,844,718.08 99.23% | 100 3.94% | $21,973.42 0.77% |

*See* Daniel Declaration, at ¶ 10.

The Holders of Class 3 Secured Lender Claims did not cast a vote for or against the Plan. The Holders of Class 4 General Unsecured Claims who voted, voted to accept by 99% in amount and 96% in number. A total of 275 Holders of Class 4 General Unsecured Claims voted to "opt out" of the third-party release of Adeptio and Simplexity.

A hearing on confirmation of the Plan is scheduled for October 14, 2008.

## II.   ARGUMENT

### A.   The Plan Satisfies the Requirements for Confirmation Under 11 U.S.C. § 1129(a)

Section 1129 of the Bankruptcy Code governs confirmation of a plan or reorganization and sets forth the requirements that must be satisfied in order for a plan to be confirmed. As the proponents of the Plan, the Debtors and the Committee bear the burden of establishing that all elements necessary for confirmation of the Plan under section 1129(a) of the Bankruptcy Code have been met by a preponderance of the evidence. *Heartland Fed. Savs. & Loan Assoc'n v. Brisco Enters., Ltd. II (In re Briscoe Enters. Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) *cert. denied*, 510 U.S. 992 (1992).

As addressed in detail below, the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8). Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not

all Classes of Claims or Interests have accepted the Plan.  Class 3 did not vote to accept the Plan, and Classes 5 and 6 were deemed to reject the Plan and did not vote.  Class 3 will consent to a cram down of the Plan pursuant to 1129(b).  With respect to Classes 5 and 6, no Holders of Claims or Interests subordinate to the Classes will receive or retain any property under the Plan. Accordingly, the requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code are satisfied with respect to the Classes 5 and 6.  The Plan is fair and equitable with respect to Classes 5 and 6 and does not unfairly discriminate against such Classes.

On January 3, 2008, the Court approved a conformed term sheet settling certain litigation pending in this Court and providing for the framework of a plan of liquidation (the "Term Sheet") to be negotiated by and among the Debtors, Adeptio and the Committee.  On the Plan's Effective Date, pursuant to the Term Sheet and Plan, and subject to the terms of the Term Sheet, in exchange for and in full satisfaction, settlement, release and discharge of Adeptio's Allowed Secured Lender Claim, Adeptio shall receive an Allowed Deficiency Claim in the amount of Twenty Million Dollars ($20,000,000), which entitles Adeptio to a Pro Rata share of the Litigation Trust Interests to be distributed to the Holders of Allowed General Unsecured Claims in Class 4.  In exchange for, and in full satisfaction, settlement, release and discharge of Adeptio's Allowed Secured Lender Claim, Adeptio consented to the treatment of its Secured Lender Claim as proposed in the Plan and as detailed in the Term Sheet.  Although Adeptio did not submit a ballot, Adeptio does not object to the treatment of its Secured Lender Claim under the Plan, and, in fact by its conduct, has consented to such treatment.  Accordingly, the Plan is fair and equitable with respect to the Class 3 (Secured Lender Claims) and satisfies the requirements of 1129(b)(2)(A) of the Bankruptcy Code.

The Plan should be confirmed because it satisfies each of the requirements of section

1129(a) of the Bankruptcy Code, other than section 1129(a)(8) of the Bankruptcy Code, which is not required in a "cram down."

### 1.    The Plan Complies with  11 U.S.C. § 1129(a)(1)

Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). "Applicable provisions" has been interpreted to include the requirements under sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan or reorganization. *Kane v. Johns-Mansville Corp. (In re Johns-Mansville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988).

### a.    The Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122

Section 1122 of the Bankruptcy Code governs the classification of claims under a plan. Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if it is substantially similar to other claims or interest in that class 11 U.S.C. § 1122. Claim or interests in a class need not be identical, but rather should be similar in legal character or effect with respect to the debtor. *See In re AOV Indus., Inc.*, 792 F.2d 1140, 1150-51 (D.C. Cir 1986) (affirming plan confirmation where claims guaranteed by third party were grouped in same class as non-guaranteed claims).

As such, section 1122(a) of the Bankruptcy Code does not require the placement of all substantially similar claims in the same class as long as the debtor advances a legitimate reason supported by credible proof for the separate classification. *See Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co.)*, 800 F.2d 581, 585 (6th Cir. 1986) (affirming plan confirmation over objection by collective bargaining unit, finding that section 1122(a) "does not require that similar claims be grouped together, but merely that any group created must be homogenous"). While gerrymandering claims in order to create an impaired assenting class is not permissible, section 1122 provides debtors with a great degree of

flexibility in classifying claims under section 1122, and courts are afforded broad discretion in approving a proponent's classification scheme and properly considering the specific facts of each case before rendering a decision. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case"); *In re U.S. Truck Co.*, 800 F.2d at 586 (noting the "broad discretion" of courts to determine proper classifications).

Article II of the Plan classifies five Classes of Claims and one Class of Interests of the Debtors, which are described in fuller detail in the Plan and Disclosure Statement. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and Trustee Fee Claims are not classified and are separately treated. The Classes are designated as follows: (a) Class 1 – Other Secured Creditor Claims; (b) Class 2 – Non-Tax Priority Claims; (c) Class 3 – Secured Lender Claims; (d) Class 4 – General Unsecured Claims; (e) Class 5 – Intercompany Claims; and (f) Class 6 – Equity Interests.

This classification scheme complies with section 1122(a) of the Bankruptcy Code because each Class contains only Claims or Interests that are substantially similar to each other. Furthermore, the classification scheme created by the Plan is based on the similar nature of the Claims or Interests contained in each Class and not upon an impermissible classification factor. Finally, similar Claims have not been placed into different Classes in order to affect the outcome of the vote on the Plan.

Because each Class consists of only similar Claims or Interests, the Court should approve the classification scheme set forth in the Plan as consistent with section 1122(a) of the Bankruptcy Code.

b.      The Plan Satisfies the Requirements of 11 U.S.C. § 1123(a) of the
Bankruptcy Code

Section 1123 of the Bankruptcy Code sets forth seven requirements with which every

chapter 11 plan must comply 11 U.S.C. § 1123(a).  As demonstrated below, the Plan fully

complies with each requirement.

Designation of Classes of Claims and Interests – 11 U.S.C. § 1123(a)(1).  Section

1123(a)(1) of the Bankruptcy Code requires a plan to designate classes of interests and claims,

other than the types of claims specified in Bankruptcy Code sections 507(a)(2) (administrative

expense claims), 507(a)(3) (claims arising in the "gap" period in an involuntary case), and

507(a)(8) (priority tax claims). 11 U.S.C. § 1123(a)(1).  Article II of the Plan designates Classes

of Claims and Interests as required under section 1123(a)(1).   In accordance with the

requirements of section 1123(a)(1), Administrative Expense Claims, Priority Tax Claims and

Trustee Fee Claims are not classified in Article II of the Plan.

Specification of Unimpaired Classes – 11 U.S.C. § 1123(a)(2).  Section 1123(a)(2) of the

Bankruptcy Code requires that a plan shall "specify any class of claims or interests that is not

impaired under the plan." 11 U.S.C. § 1123(a)(2).  Article II of the Plan specifies that Class 1:

Other Secured Claims and Class 2:  Priority Non-Tax Claims are Unimpaired under the Plan,

therefore satisfying the Bankruptcy Code requirement.

Specification of Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3).  Section

1123(a)(3) of the Bankruptcy Code requires a plan "specify the treatment of any class of

claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3).  As provided in

Article II of the Plan, Claims and Interests in Classes 3, 4, 5 and 6 are designated as Impaired

under the Plan in that the legal, equitable and contractual rights of holders of Claims or Interests

in those Classes are altered in connection with the Plan.  In accordance with section 1123(a)(3),

Article III of the Plan specifies the treatment afforded to each Impaired Class of Claims and Interests.

Same Treatment of Claims or Interests Within Class – 11 U.S.C. § 1123(a)(4). Section 1123(a)(4) of the Bankruptcy Code requires that the treatment of each Claim or Interest in each particular Class is the same as the treatment of all other Claims or Interests in such Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment. 11 U.S.C. § 1123(a)(4). The Plan complies with section 1123(a)(4) by ensuring that the treatment of each Claim or Interest in each particular Class is the same as the treatment of all other Claims or Interests in such Class, as described herein.

Adequate Means for Implementation of Plan – 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation," and gives several examples of what may constitute "adequate means."[3] 11 U.S.C. § 1123(a)(5). Article V of the Plan sets forth the means for implementation of the Plan, which will be adequate to implement it. *See* Robotti Declaration, ¶ 16(v), 26-27.

Prohibition on the Issuance of Nonvoting Equity Securities – 11 U.S.C. § 1123(a)(6). Under section 1123(a)(6) of the Bankruptcy Code, a plan for a corporate debtor must provide

---

[3] Section 1123(a)(5) requires a plan to provide for "adequate means" for the plan's implementation, "such as –
    (A) retention by the debtor of all or any part of the property of the estate;
    (B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after confirmation of such plan;
    (C) merger or consolidation of the debtor with one or more persons;
    (D) sale of all or any part of property of the estate … among those having an interest in such property of the estate;
    (E) satisfaction or modification of any lien;
    (F) cancellation or modification of any indenture or similar default;
    (G) curing or waiving of any default;
    (H) extension of a maturity date or change in an interest rate or other term of outstanding securities;
    (I) amendment of the debtor's charter; or
    (J) issuance of securities of the debtor, or for any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose."
11 U.S.C. § 1123(a)(5).

that the debtor's corporate charter will prohibit the issuance of nonvoting equity securities.  11 U.S.C. § 1123(a)(6).

Pursuant to the Plan, the Debtors shall be merged with and into SN Liquidation on the Effective Date.  *See* Plan at Article V.B.  Immediately after the merger and the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be deemed dissolved under applicable state law.  *Id.*  Further, the Plan provides for the cancellation of all equity interests of the Debtors' on the Effective Date.  Plan at Article III.E.I.  Therefore, the Debtors will functionally be prohibited from issuing non-voting equity securities.

Selection of Directors and Officers – 11 U.S.C. § 1123(a)(7).  Section 1123(a)(7) of the Bankruptcy Code provides that a plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director or trustee."  11 U.S.C. § 1123(a)(7).

Pursuant to the Plan, the Debtors shall be merged with and into SN Liquidation, Inc. on the Effective Date, and the sole director or manager, as the case may be, of each of the Debtors, including SN Liquidation, Inc., shall be deemed to have resigned.  Plan at Article V.B.  Immediately after the merger and the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be deemed dissolved under applicable state law.  Plan at Article III.E.I.  The Trustee of the Litigation Trust was selected by the Official Committee of Unsecured Creditors and will, *inter alia*, administer the remaining assets of the estates and prosecute any claims of the estates.  Plat at Article V.E; *see also* SN Liquidation, Inc. Litigation Trust Agreement at Plan, Exhibit 1.  The Litigation Trust Agreement provides for the manner of selecting the Trustee's successor, if any, and the Trust Oversight Committee will monitor the

Litigation Trust. This is consistent with the interests of creditors and public policy.

As set forth above, the Plan satisfies the seven mandatory plan requirements contained in Section 1123(a) of the Bankruptcy Code. Section 1123(a)(8) does not apply here because the Debtors are not individuals.

      c.     <u>Permissive Provisions of Section 1123(b) of the Bankruptcy Code</u>

Section 1123(b) of the Bankruptcy Code sets forth various provisions that may, but are not required to be incorporated into a chapter 11 plan. 11 U.S.C. § 1123(b). The Plan adopts several of those provisions. All are consistent with 11 U.S.C. § 1123(b).

<u>Impair or Leave Unimpaired Any Class of Claims</u>. A plan may impair or leave unimpaired any class of claims, secured or unsecured, or of interests. 11 U.S.C. § 1123(b)(1). Pursuant to Article II of the Plan, as contemplated by section 1123(b)(1) of the Bankruptcy Code, Classes 1 and 2 are designated as Unimpaired. Claims and Interests in Classes 3 through 6 are designated as Impaired under the Plan.

<u>Treatment of Executory Contracts</u>. Section 1123(b)(2) of the Bankruptcy Code provides as follows:

> Subject to subsection (a) of this section, a plan may:
>
> (2) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

11 U.S.C. § 1123(b)(2).

As contemplated under section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan (subject to the effectiveness of the Plan) and the Confirmation Order provide for: (a) the treatment of each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto (the "Insurance Policies"), unless previously canceled or transferred by Adeptio, as Executory Contracts, (b) the assumption of the Insurance Policies and the

assignment of all of the Estates' rights under such Insurance Policies to the Litigation Trust in accordance with sections 365 and 1123 of the Bankruptcy Code, (c) the rejection of all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to Section 2.5(b) of the Asset Purchase Agreement) on the Effective Date *nunc pro tunc* to the Petition Date, and (d) the rejection of all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date *nunc pro tunc* to July 19, 2008. *See* Plan at Article VI.

The decisions regarding the assumption and rejection of executory contracts and unexpired leases are based on and are within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, are their estates, holders of Claims, and other parties in interest in the Debtors' Chapter 11 Cases. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984), *Minges*, 602 F.2d at 42. The decisions to assume or reject the Executory Contracts were each made in accordance with the arm's-length and good faith negotiations that resulted, and are embodied in, the Plan. The rejection of the Executory Contracts benefits the estates by relieving the burden and cost of carrying contracts when the Debtors are no longer operating. Accordingly, the requirements of sections 1123(b)(2) and 365 of the Bankruptcy Code have been satisfied.

Releases. As contemplated under section 1123(b)(3) of the Bankruptcy Code, Article XI.C of the Plan (subject to the effectiveness of the Plan) provides for the Estate's release of "Adeptio and its non-natural affiliates and subsidiaries and each of their respective directors, officers, employees, members attorneys, financial advisors, accountants, professionals, agents and representatives" by the "Debtors, their professionals, employees, agents, and advisors" on the Effective Date, of "any and all causes of action, whether known or unknown foreseen,

liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date in law, at equity, whether for tort, fraud, contract, violations of federal state securities laws or otherwise, arising from or related in any way to the Debtors," provided, however, that "nothing in [the] Plan releases any Retained Litigation Claims as set forth in the Term Sheet or Adeptio's or Simplexity's other obligations under the Term Sheet, the APA or [the] Plan." This release provision is appropriate and is not inconsistent with the Bankruptcy Code. *See* 11 U.S.C. § 1123(b)(6).

Article XI.C.2 of the Plan (subject to the effectiveness of the Plan) also provides for the third party releases (the "Third Party Release") of "Adeptio and Simplexity, including their respective present members, officers, directors, employees, advisors, attorneys, and agents and their respective former members, officers, directors, employees, and agents if they are Transferred Employees, as that term is defined in the Asset Purchase Agreement (and their Affiliates as set forth in Article XI, Section F of the Plan) by "any Holder of a Secured Lender Claim or a General Unsecured Claim and their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns" that does not opt out of such release in voting regarding the Plan of "any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way whatsoever to the Debtors and these Chapter 11 Cases, including, but not limited to, those in any way related to formulating, negotiating, preparing,

disseminating, implementing, administering, confirming, or consummating the Sale, [the] Plan, the Disclosure Statement, the Litigation Trust Agreement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with these Chapter 11 Cases or the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their gross negligence, willful misconduct or bad faith." Plan at Article XI.C.2. The foregoing releases shall not apply to any Holder of a Secured Lender Claim or a General Unsecured Claim if such holder "opts out" of such releases by a timely written election sort on such Holder's ballot. *Id.*

The Plan also provides for the Exculpation of Limitation of Liability of parties essential in negotiating the Plan. Article XI.F of the Plan provides that:

> Neither the Debtors, the Committee, the Litigation Trustee, the Trust Oversight Committee, Adeptio or Simplexity, nor any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan or the Litigation Trust Agreement, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the Litigation Trust Agreement or the property to be distributed under this Plan or the Litigation Trust Agreement, except for their gross negligence, willful misconduct or bad faith, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

> The Litigation Trust is hereby deemed to release only each Person exculpated pursuant to the above paragraph from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or bad faith.

Affiliates (as defined in the Asset Purchase Agreement) of Simplexity and Adeptio shall be exculpated and their liability (and the releases set forth in section XI.C of this Plan) shall be limited to the extent provided in and only to the extent provided in, the Asset Purchase Agreement and Term Sheet.

The law in this jurisdiction is well-settled that plan provisions that release potential claims of voting parties will be upheld as to parties voting in favor of the plan. *See In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (approving consensual releases of voting party's potential claims); *In re Int'l Wireless Communications Holdings, Inc.*, No. 9802007(MFW), 1999 Bankr. LEXIS 1853, at *24-25 (Bankr. D. Del. Mar. 26, 1999) ("as to each creditor or shareholder who voted for the Plan which contains the Release language, we have no hesitation in concluding that they have consented to the Release and are bound thereby under contract law.")

The Plan provisions set forth above are customary provisions establishing liability standards and related debtor release provisions, as well as provisions releasing parties instrumental to the reorganization. Specifically the exculpation of limitation of liability complies with applicable law. In *PWS Holding Corp.*, 228 F.3d 224, 235 (3d Cir. 2000), the United states Court of Appeals for the Third Circuit (the "Third Circuit") approved a plan provision that released claims "brought in connection with work on the bankruptcy reorganization plan . . . ." The plan provision at issue in *PWS* did not "eliminate liability but rather limit[ed] it to willful misconduct or gross negligence." *Id.*   The Third Circuit characterized such provision as a "commonplace provision in Chapter 11 plans." *Id.* The Plan contains similar provisions. The Plan's release and exculpation provisions are all consistent with the holding in *PWS* and are customarily approved in this jurisdiction.[4]   Accordingly, Article XI.F of the Plan, which

---

[4] *See, e.g., In re Levitz Furniture Inc.*, Case No. 97-1842 (MFW) (Bankr. D. Del.) (Dec. 14, 2000 confirmation order); *International Wireless Communications Holdings, Inc.*, Case No. 98-02007(MFW) (Bankr. D. Del.) (Mar. 26, 1999 mem. opinion confirming plan); *Heartland Wireless Communications, Inc.*, Case No. 98-2692 (JJF)

establishes a willful misconduct/gross negligence liability standard is consistent with applicable law, and should be approved.

The Third Circuit also sides with the majority of reported Circuit Court decisions that permit third party releases and injunctions under certain circumstances. *See Debtors v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 227 (3d Cir. 2003) (In approving the indemnification provisions in a financial advisor's retention agreement: "The 'hallmarks of permissible non-consensual release' are 'fairness, necessity to the reorganization, and specific factual findings to support these conclusions.' . . . Added to these requirements is that the releases 'were given in exchange for fair consideration.'") (citing *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000) (while recognizing that third parties may be released and claims against them may be enjoined under a plan where there is a specific factual findings of fairness, necessity to the reorganization and fair consideration, injunction of claims against officers and directors of debtor violated section 524(e) of the Bankruptcy Code in that case). *Accord In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (discussing Continental Airlines; "We did not treat § 524(e) as a per se rule barring any provision in a reorganization plan limiting the liability of third parties . . . Indeed, because this release does not affect the liability of third parties, but rather sets for the appropriate standard of liability, we believe that this release is outside of the scope of § 524(e)."). *Cf. First Fidelity Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993) (confirmation of chapter 13 plan, which did not include a third party release and injunction, did not release non-debtors insurer from its obligation for credit insurance on a motor vehicle).

The Third Circuit has upheld release and injunction of claims of third parties against non-

---

(Bankr. D. Del.) (Mar. 15, 1999) (confirmation order); *In re Westmoreland Coal Co.*, Case Nos. 94-1066 through 94-1070 (PJW) (Bankr. D. Del.) (Dec. 16, 2006) (confirmation order).

debtors upon specific factual findings of:

    1.        fairness;

    2.        necessity to the reorganization;

    3.        fair consideration provided by the non-debtors;

    4.        that was given in exchange for fair consideration.

*See United Artists Theatre Co.*, 315 F.3d at 227.

The Delaware Bankruptcy Court has also applied a five factor test:

    1.        Is there an identity of interests such that a judgment against the third party would deplete the estate?

    2.        Did the non-debtor make a substantial contribution of assets to the estate?

    3.        Without the injunction would there be a little likelihood of a successful plan?

    4.        Do a substantial majority of creditors support the injunction?

    5.        Does the plan provide for payment of all or substantially all of the claims of the class or classes affected by the injunction?

*See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607 n.15 (Bankr. D. Del. 2001) (third party release and injunction stricken from plan because test not met) (citing *In re Zenith Electronics, Inc.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994).

The Delaware Bankruptcy Court has approved third party releases and injunctions in confirmed chapter 11 plans. *See In re Vencor, Inc.*, 284 B.R. 79, 86 (Bankr. D. Del. 2002) (confirmed plan with third party release and injunction for the funder of a settlement); *see Continental Airlines*, 203 F.3d at 213-14; *In re International Wireless Communications Holdings, Inc.*, 1999 Bankr. LEXIS 1853, *24-*28 (Bankr. D. Del. 1999) (applied five factor test of *Master Mortgage*, and approved third party release and injunction because exceptional circumstances existed where litigation between third parties would be costly to estate and the

release was not gratuitous).  *See also In re International Wireless Communications Holdings, Inc.*, 1999 Bankr. LEXIS 1832 (confirmation order approving plan containing third party release and injunction).  *Cf. VFB L.L.C. v. The Money's Trust (In re VF Brands, Inc.)*, 282 B.R. 134, 138 (Bankr. D. Del. 2002) (disapproved third party injunction outside the context of a plan); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 43 (Bankr. D. Del. 2000) (third party release and injunction disapproved because majority of classes affected did not vote in favor of the plan).

The Proponents meet the five factor test for the Plan's releases and limited injunctions of claims of third parties against non-debtors:

1. There is an identity of interests between the Debtors, Adeptio and Simplexity, the parties receiving a release under the Plan. The Proponents negotiated with Adeptio for the contribution of funds to pay Allowed Priority Claims, certain professional fees, and Investigation Funding. The feasibility of the Plan is based upon this funding. Without the Third Party Release, Adeptio and Simplexity would not have provided $500,000 for the payment of Allowed Priority Claims without litigating their obligation to do so.

2. The Priority Claims Funding constitutes good and valuable consideration for the Third Party Release and the injunction.

3. Without the releases and the injunction, for the reasons set forth above, the Priority Claims Funding would not be contributed without litigation and there would be little likelihood of a successful plan. If no Plan is confirmed, no recovery will be available to general unsecured creditors.

4. A substantial majority of creditors support the Plan, and all Holders of Class 3 and 4 Claims were entitled to opt out of the Third Party Release.

5. Although the Plan may not provide for payment of all the Claims or Classes affected by the Third Party Release, it provides for the best possible opportunity for recovery to the affected parties. Any party desiring not to release Adeptio and Simplexity was entitled to opt out of the Third Party Release.

The Third Party Release set forth in Article XI.C.2 of the Plan should be upheld as to parties voting in favor of the plan and not selecting to opt out of such release. The Third Party Release is appropriate and not inconsistent with the Bankruptcy Code.  *See* 11 U.S.C. §

1123(b)(6).

In addition to the foregoing permissive provisions of the Plan, all other permissive provisions of the Plan are consistent with section 1123(b) of the Bankruptcy Code.

Therefore, the Debtors believe that the aforementioned provisions and all other provisions of the Plan comply with sections 1122 and 1123 of the Bankruptcy Code and are consistent with all other applicable provisions of the Bankruptcy Code. Accordingly, the Debtors submit that the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

### 2.    The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(2)

Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). Whereas section 1129(a)(1) of the Bankruptcy Code focuses on the form and content of a plan itself, section 1129(a)(2) is concerned with the applicable activities of a plan proponent under the Bankruptcy Code. *See 7 Collier on Bankruptcy* ¶ 1129.03[2] at 1129-26 (15th ed. rev. 2007). In determining whether a plan proponent has complied with this section, courts focus on whether the disclosure and solicitation requirements of sections 1125 and 1126 have been adhered to. *See In re PWS Holding Corp.*, 228 F.3d at 248; *In re Resorts Int'l Inc.*, 145 B.R. 412, 468 (Bankr. D.N.J. 1990) (applying section 1129(a)(2) only to disclosure requirements of Bankruptcy Code); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code."), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *see also* S. Rep. No. 95-589 at 126 (1977); *reprinted in* 1978 U.S.C.C.A.N. 65787, 5912 (Section 1129(a)(2) "requires that the proponent of the plan comply with the applicable provisions of

chapter 11, such as section 1125 regarding disclosure"); H.R. Rep. No. 95-595 at 412 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 (same).

As evidenced by the prior orders of the Court and the filings submitted by the Debtors, the Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with these Chapter 11 Cases. *See In re Johns-Manville Corp.*, 68 B.R. at 630; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 149; H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978).

The Debtors have timely filed with the Clerk of the Court their schedules of assets and liabilities. Good, sufficient and timely notice of the Confirmation Hearing and all other hearings in these Chapter 11 Cases has been given to all holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been given.

The Plan Proponents have properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Order dated August 12, 2008 (the "Solicitation Procedures Order") approving: (a) the voting and tabulation procedures in connection with voting on the Plan (the "Voting Procedures") and (b) the Disclosure Statement and all exhibits thereto. All duly executed, completed and submitted Ballots were properly solicited and tabulated in accordance with the Voting Procedures. The Debtors have accordingly satisfied section 1129(a)(2) of the Bankruptcy Code. *See In re Sound Radio, Inc.*, 93 B.R. 849, 852-53 (Bankr. D.N.J. 1988); *aff'd in part* and *remanded in part*, 103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990).

3.     **The Plan Has Been Proposed in Good Faith and Not by any Means Forbidden By Law – 11 U.S.C. § 1129(a)(3)**

Section 1129(a)(3) requires a plan to have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) (citations omitted). In determining whether a plan has been proposed in good faith, courts have recognized that they should avoid applying any hard and inflexible rules, but should instead evaluate each case on its own merits. *See In re Century Glove*, Civ. A Nos. 90-400-SLR, 90-401-SLR, 1993 WL 239489 at *4 (D. Del. Feb. 10, 1993) (good faith should be evaluated in light of the totality of the circumstances surrounding confirmation; *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (same).

In the "context of a Chapter 11 plan, courts have held [that] a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.'" *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)).

The Debtors have met the good faith obligation imposed upon them under the Bankruptcy Code. The Plan is the culmination of significant arm's-length negotiations among the Debtors, the Creditors Committee, Adeptio and other parties-in-interest. *See* Robotti Declaration, ¶ 18. Indeed, the support for the Plan received from Holders of Class 4 Claims that voted on the Plan is evidence of the consensual nature of the Plan and the Debtors' good faith. Inasmuch as the Plan promotes the distribution objectives and purposes of the Bankruptcy Code,

the Plan has been filed in good faith. Moreover, the Debtors submit that they have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code. In short, the Plan satisfies the "good faith" requirements of section 1129(a)(3).

Furthermore, the releases and exculpations provided for in the Plan have been negotiated and agreed to by the Committee and other parties in interest. Indeed, such provisions have been proposed in good faith and are consistent with sections 105 and 1129 of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." It is well-established that bankruptcy courts are empowered under section 105(a) of the Bankruptcy Code to grant releases in favor of non-debtors in a variety of contexts, particularly where such relief represents an element to the success of a workable chapter 11 plan. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 773 (Bankr. S.D.N.Y. 1992) (bankruptcy court has jurisdiction to approve the release and injunction provisions of the plan, including the release of identified non-debtor third parties); *In re Johns-Manville Corp.*, 68 B.R. at 630-31 (permanent injunction issued in favor of settling insurance company); *Menard-Sandford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694, 701 (4th Cir. 1989) (release and permanent injunction in favor of insurance company, executives and law firms), *cert. denied*, 493 U.S. 959 (1989); *In re Texaco, Inc.*, 84 B.R. at 904 (release by debtor of potential claims against officers and directors approved where such release would represent no additional relinquishment of causes of action by the debtor because the claims sought to be asserted by derivative-action plaintiffs would be offset by the corporate bylaw indemnification of such officers and directors).

Article XI.F of the Plan sets forth customary exculpation provisions which protects the Debtors, the Committee, the Litigation Trustee, Adeptio and Simplexity or any of their

respective members, officers, directors, employees, attorneys, advisors or agents with respect to the formulation, solicitation and administration of the Plan, and such provision is consistent with sections 105(a), 1103, 1123(a)(5) and 1142 of the Bankruptcy Code. *See infra* Part II.1.c.

4.     **The Plan Provides That Payments Made by the Debtors for Services or Costs and Expenses Are Subject to Approval – 11 U.S.C. § 1129(a)(4)**

Section 1129(a)(4) of the Bankruptcy Code requires that professional fees and expenses paid by the plan proponent, the debtor or a person receiving distributions of property under the plan be subject to approval by the court as reasonable.  11 U.S.C. § 1129(a)(4).  In other words, the debtor must disclose to the Court all professional fees and expenses, and such professional fees and expenses must be subject to Court approval.  *See In re Texaco, Inc.*, 85 B.R. 934, 939 (Bankr. S.D.N.Y. 1988).  To date, all such payments are subject to the approval of this Court and the interim compensation procedures order entered in these cases.  *See* Plan at Article V.E.4.  All fees and expenses sought by professionals remain subject to final review for reasonableness by the Court under section 330 of the Bankruptcy Code.  Accordingly, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

5.     **The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers of the Debtors and Insiders – 11 U.S.C. § 1129(a)(5)**

Section 1129(a)(5) of the Bankruptcy Code requires certain disclosures and approvals with regard to the post confirmation management of the revested debtor.  11 U.S.C. § 1129(a)(5). Article V of the Plan provides that on the Effective Date - (a) the members of the board of directors or managers, as the case may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned, and (b) each of the Debtors shall be merged with and into SN Liquidation without the necessity of any other or further action to be taken by or on behalf of the Debtors.  Further, on the Effective Date, immediately after (i) the merger of the other Debtors into SN Liquidation, and (ii) the transfer of all Estate Assets to the Litigation Trust, the Debtors

will cease to exist and shall be dissolved under applicable state law. Morton Branzburg, Esquire, will be Trustee of the Litigation Trust. *See* Plan Exhibit 1. The Litigation Trust Oversight Committee will monitor the Trust. *Id.* This is consistent with the interest of the creditors and public policy. Accordingly, section 1129(a)(5) of the Bankruptcy Code is inapplicable relative to the Plan and should be deemed satisfied.

6. **The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6)**

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its business approve any rate change provided for in the Plan. The Plan does not provide for or contemplate any rate change that would require approval of any regulatory agency. Accordingly, section 1129(a)(6) is inapplicable relative to the Plan and should be deemed satisfied.

7. **The Plan is in the Best Interests of Creditors and Interest Holders – 11 U.S.C. § 1129(a)(7)**

Section 1129(a)(7) of the Bankruptcy Code contains the "best interests" test, which requires that each holder of a claim or interest in an impaired class (a) accept the plan or (b) receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1120(a)(7). This "best interests" test focuses on individual dissenting creditors rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999).

"[U]nder the best interests test, the court 'must find that each [dissenting] creditor will receive or retain value that is not less than the amount he [or she] would receive if the debtors were liquidated'" as of the effective date of the plan. *In re The Leslie Fay Companies, Inc.*, 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997) (*quoting In re Victory Constr. Co., Inc.*, 42 B.R. 145, 151

(Bankr. C.D. Cal. 1984)). *See also In re Am. Family Enters.*, 256 B.R. 377, 403 (D.N.J. 2000) (finding debtors' burden of proof under section 1129(a)(7) met where debtors showed that creditors would receive at least at much under the plan as they would receive in a liquidation of the debtors' assets under chapter 7); *In re Jartran, Inc.*, 44 B.R. 331, 389-94 (Bankr. N.D. Ill. 1984) (best interests test satisfied by showing that, upon liquidation, the cash received would be insufficient to pay priority claims and secured creditors so that unsecured creditors and stockholders would receive no recovery). As section 1129(a)(7) itself makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests. *See* 11 U.S.C. § 1129(a)(7). If a class of claims or equity interest unanimously approves the plan, the best interests test is deemed satisfied for all members of that class. *In re Drexel Burhman Lambert Group, Inc.*, 138 B.R. at 761.

In this case, with respect to Claims in Class 1 (Other Secured Claims) and Class 2 (Priority Non-Tax Claims), section 1129(a)(7) is not implicated because the creditors in these classes are Unimpaired under the Plan. Over 96% in number and over 99% in amount of the Class 4 Claimants voted to accept the Plan. Thus, in this case, the best interests test needs to be applied to Classes 3, 5, and 6 (Classes 3, 5, and Class 6 are collectively referred to as, the "Rejecting Classes"), although the test, if applied, would be satisfied with respect to Class 4. The Rejecting Classes are Impaired under the Plan and the Deemed Rejected Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Article XI of the Disclosure Statement discusses liquidation under chapter 7 of the Bankruptcy Code. As detailed in that section, the Proponents believe that liquidation under chapter 7 or dismissal would result in smaller or no distributions to creditors. This is because of additional administrative expenses involved in the appointment of a trustee, attorneys and other

professionals during such liquidation. If the Plan is confirmed, Class 3 and 4 creditors may receive a distribution based on the prosecution of litigation by the Trust. If these cases are liquidated under chapter 7, Adeptio might not be obligated to provide Investigation Funding and Priority Claims Funding. This will most likely result in little or no recovery for Holders of General Unsecured Claims, less or possibly no recovery for Holders of Allowed Administrative Claims and little to no recovery for Holders of Allowed Priority Claims. The Holders of Intercompany Claims and Equity Interests, which are receiving no distributions under the Plan, would likewise receive no distribution if the Debtors were liquidated under chapter 7.

Based on the foregoing, confirmation of the Plan will provide each dissenting creditor and interest holder with a distribution that is not less than such creditor or holder would receive or retain if the Debtors were liquidated on the Effective Date pursuant to chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### 8.     The Plan Complies with 11 U.S.C. § 1129(a)(8)

Subject to the exceptions identified in section 1129(b) of the Bankruptcy Code, section 1129(a)(8) requires that each class of claims and interests either has accepted the Plan or is not impaired under the Plan. A Class of Claims accepts a plan if the holders of at least two-thirds in dollar amount and more than one-half in the number of claims in the class vote to accept the plan, counting only those claims whose holders actually vote to accept or reject the plan. 11 U.S.C. § 1126(c).

Class 1 (Other Secured Claims) and Class 2 (Priority Non-Tax Claims) are Unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. 11 U.S.C. § 1126(f). As set forth in the Final Voting Declaration, Class 4 (General Unsecured Claims) have voted to accept the Plan within the meaning of section 1126 of the Bankruptcy Code. *See* Daniel Declaration, ¶

10-11.

Class 3 (Secured Lender Claims) did not vote to accept the Plan by ballot.[5]  Arguably the

Class 3 claimant, Adeptio, has accepted the Plan by its conduct, but the Debtors do not think the

Court needs to address this issue since the cramdown provisions of section 1129(b) are available

and are satisfied, as set forth below.   The Holders of Claims and Interests in the Deemed

Rejected Classes (Classes 5 and 6) are deemed to have rejected the Plan.  11 U.S.C. § 1126(g); *In

re PWS Holding Corp.*, 228 F.3d at 231-32.  Accordingly, to the extent the Plan does not satisfy

the acceptance requirements of section 1129(a)(8) with respect to Class 3 Claims and the

Deemed Rejected Classes, it can be confirmed under the "cram down" provisions of section

1129(b) of the Bankruptcy Code, which requires that a plan does not "discriminate unfairly" and

is "fair and equitable" with respect to each rejecting class.  *See* 11 U.S.C. § 1129(b).  *See* section

II.B of this Memorandum below.

9.      **The Plan Complies with 11 U.S.C. § 1129(a)(9)**

Under Bankruptcy Code section 1129(a)(9), unless otherwise agreed, a plan must provide

that:

A.      the holder of a claim entitled to priority under section 507(a)(2) or (3) will
receive cash for the allowed amount of the claims on the effective date of
the plan;

B.      the holder of a claim entitled to priority under section 507(a)(1), (4), (5),
(6) or (7) will receive either deferred cash payments for the allowed
amount or cash for the allowed amount for the claim on the effective date
of the plan;

C.      the holder of a tax claim entitled to priority under section 507(a)(8) will
receive regular installment payments in cash (i) of the total value, as of the
effective date of the plan, equal to the allowed amount of such claim; (ii)
over a period ending not later than 5 years after the date of the order of

---

[5] Although the Holder of the Class 3 Claim negotiated its treatment under the Plan and substantially participated in
the Plan negotiations by obtaining agreement from the Proponents to solicit third party releases, it did not submit a
ballot.  The Debtors reserve all rights to assert, if necessary, that Class 3 accepted the Plan.

relief under section 301, 302 or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided by the plan (other than cash payments to a class of creditors under section 1122(b)); and

D.      the holder of a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, will receive cash payments on account of that claim in the same manner and over the same period as described in subparagraph (C).

11 U.S.C. § 1129(a)(9).

a.      <u>Holders of Administrative Expense Claims Consent to their Treatment in the Plan</u>

Article III of the Plan provides that, subject to the requirements of the Plan, APA, the Sale Order, and Term Sheet, on, or as soon as reasonably practicable after the later of (i) the repayment in full and Termination of the Adeptio Loan; (ii) the Distribution Date or (iii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors and shall have agreed upon.  Plan at Article III.A.1.

Subject to repayment in full and Termination of the Adeptio Loan, proceeds, if any, once recovered by the Litigation Trust will be used to pay Allowed Administrative Claims with interest.[6]  *Id.*  If there are insufficient proceeds to pay the Holders of the unpaid Allowed Administrative Claims, such Holders will receive a Pro Rata distribution and distributions thereafter from the Litigation Trust to the extent the proceeds are available until fully paid, before which there shall be no distributions to Holders of General Unsecured Claims on account

---

[6] All unpaid Allowed Administrative Claims shall be paid interest from the Effective Date to the date of distribution at the published L.I.B.O.R. rate of interest as of the Effective Date plus 4%.

of such claims. *Id.* The Plan may be confirmed only if the Holders of unpaid Administrative Claims consent to such treatment. *Id.* If Holders of unpaid Administrative Claims do not object to this Plan, they are deemed to consent to the treatment proposed herein upon entry of an order confirming this Plan. *Id.* All holders of unpaid Administrative Claims consent to the treatment proposed in the Plan. No administrative expense claimant objected to the Plan, and the Debtors, upon examination of the universe of administrative expense claims, are not aware of any administrative expense claimants who object to Article III.A.1 of the Plan.

Further, all Trustee Fee Claims will be satisfied on or before the Effective Date and the Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-confirmation reports as may be required.

Therefore, because of the consent of Holders of Administrative Expense Claim, the Plan is confirmable under 11 U.S.C. § 1129(a)(9)(A).

b.    <u>The Plan Satisfies 11 U.S.C. § 1129(a)(9)(B)</u>

Article III.B.2 of the Plan provides that on, or as soon as reasonably practicable after, the latest of: (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Non-Tax Claim; or (iii) the date such Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between the Debtors or Litigation Trustee and the Holder of such Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim (i) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such other treatment as to which the Litigation Trustee and such Holder shall have agreed upon in writing. Plan at Article III.B.2.

There are sufficient funds to pay all Allowed Priority Claims on the Distribution Date. Therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9)(B).

c.    The Plan Satisfies 11 U.S.C. § 1129(a)(9)(C)

Article III.A.2 of the Plan provides that the legal and equitable rights of the Holders of Priority Tax Claims are not Impaired.  On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date; (ii) the date such claim becomes an Allowed Priority Tax Claim, or (iii) the date such Allowed Priority Tax Claim becomes payable pursuant to any agreement between the Litigation Trustee and each Holder of an Allowed Priority Tax, each Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of such Allowed Priority Tax claim or (b) such other treatment as to which the Allowed Priority Tax Claim Holder and the Litigation Trustee shall have agreed in writing.  Plan at Article III.B.2.  To the extent that Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims exceed $500,000, the Holders of Allowed Priority Tax Claims shall receive their Pro Rata share of such differential, which shall be paid by the Litigation Trust in regularly quarterly distributions over the time period set forth 1129(a)(9)(C)(ii) to the extent the Litigation Trust contains sufficient Cash.  In the event an Allowed Priority Tax Claim is not paid on the Distribution Date, the Holders thereof will be paid interest on such Priority Tax Claim accruing from the Distribution Date to the date of actual distribution at the interest rate set forth in 26 U.S.C. §§ 6621 and 6622 as of the Effective Date. *Id.*  This distribution scheme complies with 11 U.S.C. 1129(a)(9)(C) and provides for payment ahead of non-priority general unsecured claims.

Therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9)(C).

d.    The Plan Satisfies 11 U.S.C. § 1129(a)(9)(D)

There are no Holders of Secured Claims which would otherwise meet the description of an unsecured claim of a governmental unit under Bankruptcy Code section 507(a)(8) but for the

secured status of that claim.  As a result, section 1129(a)(9)(D) is inapplicable to the Plan and is therefore deemed satisfied.

> **10.    At Least One Class of Impaired Claims Has Accepted the Plan – 11 U.S.C. § 1129(a)(10)**

Section 1129(a)(10) of the Bankruptcy Code requires that if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan.  As described in the Final Voting Affidavit, the results of voting by the Voting Holders are as follows:

| Plan Class of Impaired Creditors | Amount Accepting Plan (% of Amount Voted) | Amount Rejecting Plan (% of Amount Voted) | Number Accepting Plan (% of Number Voted) | Number Rejecting Plan (% of Number Voted) |
|---|---|---|---|---|
| Class 3 | 0 | 0 | 0 | 0 |
| Class 4 | 99.23% | 0.77% | 96.06% | 3.94% |

Class 4 is an Impaired Class and voted to accept the Plan.  Thus, at least one Impaired Class of Claims has voted in sufficient number and amount to accept the Plan, without regard to the votes of insiders.[7]  Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

> **11.    The Plan Is Feasible – 11 U.S.C. § 1129(a)(11)**

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, *unless such liquidation or reorganization is proposed in the plan.*"  11 U.S.C. § 1129(a)(11) (emphasis added).  The Debtors' chapter 11 plan is a liquidating plan and, as described in summary below, is feasible under section 1129(a)(11) of the Bankruptcy Code.

Although a liquidating plan does not exempt such plan from the requirements of section 1129(a)(11), it does mean that there is less emphasis on future performance.  *See In re Holmes,*

---

[7] The Debtors are not aware of any insiders voting to accept the Plan.

301 B.R. 911, 915 (Bankr. M.D. Ga. 2003).  The plan proponents must show that the liquidation proposed in the plan is feasible.  *Id.*

Article V of the Plan discusses the means for implementation of the Plan.  In summary, the Plan is a liquidating plan that provides for the orderly liquidation of the Debtors' Estates. The Debtors and the Litigation Trust will implement and consummate the Plan through the means set forth in the Term Sheet and contemplated by sections 1123(a)(5)(B) and (D), 1123(b)(3)(A) and 1123(b)(4) of the Bankruptcy Code.  The Plan completes the implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' Assets and the pursuit of the Estates' Causes of Action *via* the Litigation Trust.

The Plan provides for the merger of all of the Debtors' Estates into SN Liquidation, the transfer of all Estate Assets to the Litigation Trust, and the dissolution of the Debtors under applicable state law.  Because substantially all of the Debtors' operating assets were sold as part of the Sale, the Plan provides for the formation of the Litigation Trust that will administer the remaining Estate Assets and assess the value thereof. The remaining Estate Assets include, but are not limited to, any Causes of Action against the recipients of stock redemption payments and claims, former directors and officers, or otherwise.  Those causes of action are central to the success of the Plan and the distribution of any value to Holders of General Unsecured Claims.

All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to this Plan shall be obtained from the following sources:  (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action; (d) Adeptio's funding obligations pursuant to the Sale Order and Term Sheet, including the: (i) Professional Funding; (ii) Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with

the terms of such Term Sheet.

Thus, as demonstrated by Article V of the Plan, and as summarized herein, the Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code.

12.     **All Statutory Fees Will Be Paid – 11 U.S.C. § 1129(a)(12)**

Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ll fees payable under section 1930 of Title 28, as determined by the court at the hearing on confirmation of the plan, have been paid, or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930], chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(1).

In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, all Trustee Fee Claims will be satisfied on or before the Effective Date. Also, the Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-confirmation reports as may be required.

13.     **The Plan Satisfies the Requirement that It Provide for the Continuance of Retiree Obligations – 11 U.S.C. § 1129(a)(13)**

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). The Debtors will cease to exist after the Effective Date and have never had a pension plan or other obligation under this section. Therefore, the Plan meets the requirements of section 1129(a)(13).

14.    **The Plan Complies with 11 U.S.C. § 1129(a)(16)[8]**

Bankruptcy Code § 1129(a)(16) requires all transfers of property of a plan to be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust. All transfers to be made under the Plan comply with any such applicable nonbankruptcy law. The Plan therefore satisfies the requirements of Bankruptcy Code § 1129(a)(16).

**B.    The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code**

Section 1129(b) of the Bankruptcy Code provides a mechanism (commonly called "cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims or interests. Under section 1129(b), the court may cram down a plan over the dissenting vote of an impaired class or classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes. *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr.D.Del. 1999) (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it does not discriminate unfairly and is fair and equitable"); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1997).

The Deemed Rejected Classes (Classes 5 and 6) will not receive any distribution or retain any property on account of their Claims and Interests under the Plan and therefore have been deemed to have rejected the Plan. 11 U.S.C. § 1126(g); *In re PWS Holding Corp.*, 228 F.3d at 231-32. Also, the Holders of Class 3 Secured Lender Claims did not cast a vote for or against

---

[8] Based on the facts of these chapter 11 cases, sections 1129(a)(14) and (15) of the Bankruptcy Code are not applicable.

the Plan and therefore Class 3 has not accepted the Plan by ballot.[9]  Accordingly, since the Plan does not satisfy facially the acceptance requirements of section 1129(a)(8) with respect to all the Rejecting Classes, it must be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

Section 1129(b)(1) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).

### 1.    The Plan Complies with Section 1129(b)(1) Because it Does Not Discriminate Unfairly Against the Rejecting Classes

The section 1129(b)(1) requirement that a plan not discriminate unfairly against unimpaired dissenting classes focuses on the treatment of the dissenting class relative to other classes consisting of similar legal rights. *See* H.R. Rep. No. 95-595, at 416-417 (1977).  Section 1129(b)(1) does not prohibit discrimination between classes; rather, it prohibits discrimination that is unfair. *See, e.g., In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990).  The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar claims are treated differently without a reasonable basis for the disparate treatment.  Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (a) the classes are comprised of dissimilar claims or interests, *see, e.g., In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988), or (b) taking into account

---

[9] *See supra* n. 5.

the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g., Buttonwood Partners*, 111 B.R. at 63; *In re Rivera Echevarria*, 129 B.R. 11, 13 (Bankr. D.P.R. 1991).

In the present case, the "unfair discrimination" requirement is satisfied with respect to the Rejecting Classes because there are no other classes with similar legal rights to those of the Rejecting Classes. Class 6 (Equity Interests) is the only class of interests under the Plan. Thus, Class 6 is clearly distinct from the classes consisting of Claims, Classes 1-5. There is no unfair discrimination with respect to Class 6. In addition, with respect to Class 3 (Secured Lender Claims) and Class 5 (Intercompany Claims), there is no unfair discrimination, because there are no other similarly-situated Classes of Claims against the Debtors.

Based upon the foregoing, the Plan does not "discriminate unfairly" with respect to the Rejecting Classes, and accordingly satisfies the requirements of section 1129(b) of the Bankruptcy Code.

### 2. The Plan Complies with Section 1129(b)(2) because it is Fair and Equitable with Respect to Holders of Claims and Interests in the Rejecting Classes

#### a. The Plan is Fair and Equitable as to Claimholders

Section 1129(b)(2)(A) of the Bankruptcy Code requires, as part of an assessment of the proposed plan's fairness to dissenting classes of secured claim holders, that the plan meet one of three alternative requirements: (i) the plan may propose to satisfy the claim in full by giving the creditor a note in the amount of the secured claim secured by the same collateral; (ii) the plan may propose to sell the collateral pursuant to section 363 of the Bankruptcy Code free of the lien, and transfer the lien to the proceeds of sale; or (iii) the plan may give the creditor the "indubitable equivalent" of its claim. *See* 11 U.S.C. § 1129(b)(2)(A); *see also Collier on Bankruptcy* ¶ 1129.05[2] at 1129-142 (15th ed. rev. 2007). Any one of the treatments will

independently satisfy the fair and equitable requirement. *In re Arnold & Baker Farms*, 85 F.3d 1415, 1420 (9th Cir. 1996); *Wade v. Bradford*, 39 F.3d 1126 (10th Cir. 1994) (proponent need not provide indubitable equivalent if any of other two clauses of section 1129(b)(2)(A) are met). In this case, not only is Adeptio getting the indubitable equivalent of its secured claim – a $20 million dollar unsecured claim, but it has also consented to its treatment, and, in effect, consented to a cram down.

Adeptio is the only Holder of a Class 3 Secured Lender Claim. On the Effective Date, pursuant to the Term Sheet and subject to the terms of the Term Sheet,[10] in exchange for and in full satisfaction, settlement, release and discharge of Adeptio's Allowed Secured Lender Claim, Adeptio shall receive an Allowed Deficiency Claim in the amount of Twenty Million Dollars ($20,000,000), which entitles it to a Pro Rata share of the Litigation Trust Interests to be distributed to the Holders of Allowed General Unsecured Claims in Class 4. In exchange for and in full satisfaction, settlement, release and discharge of Adeptio's Allowed Secured Lender Claim, Adeptio consents to the treatment of its Secured Claim as proposed in the Plan and as detailed in the Term Sheet and outlined above. Although Adeptio did not vote on the Plan, Adeptio consented to the treatment of its Secured Lender Claim under the Plan per the Term Sheet and the Debtors assert that this shows Adeptio's consent to a cram down with respect to its Claim. Accordingly, the Plan is fair and equitable with respect to the Class 3 (Secured Lender Claims) and satisfies the requirements of 1129(b)(2)(A) of the Bankruptcy Code.

Section 1129(b)(2)(B) of the Bankruptcy Code requires, as part of an assessment of the proposed plan's fairness to dissenting classes of unsecured claim holders, that the plan meet one of two alternative requirements: (i) the plan may provide the holder of a claim of such class

---

[10] The Term sheet was approved by the Court's Order (I) Approving Conformed Term Sheet Settling Controversies, (II) Authorizing the Abandonment of Certain Preference Claims Pursuant to Bankruptcy Code Section 544, dated January 3, 2008.

receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of such claim, or (ii) the plan may propose that interest holders junior to dissenting classes receive nothing until the senior dissenting classes are compensated in full. *See* 11 U.S.C. § 1129(b)(2)(C); *Union Meeting Partners*, 165 B.R. at 569. The Plan is fair and equitable under section 1129(b)(2)(B)(ii) of the Bankruptcy Code with respect to Class 5 (Intercompany Claims) because no Class junior to Class 5 will receive any distributions under the Plan.

b.    The Plan is Fair and Equitable to Interest Holders

Section 1129(b)(2)(C) of the Bankruptcy Code requires, as part of an assessment of the proposed plan's fairness to dissenting classes of interest holders, that the plan meet one of two alternative requirements: (i) the plan may propose to pay dissenting classes the face value (as of the effective date of the plan) of the "fixed liquidation to which such holder is entitled, any fixed redemption price . . . , or the value of such interest"; or (ii) the plan may propose that interest holders junior to dissenting classes receive nothing until the senior dissenting classes are compensated in full. *See* 11 U.S.C. § 1129(b)(2)(C); *see also* Holleran, Michael J., *et al.*, BANKRUPTCY CODE MANUAL 1248 (Thompson/West 2007); *In re Union Meeting Partners*, 165 B.R. at 569. The Plan is fair and equitable under section 1129(b)(2)(C)(ii) of the Bankruptcy Code with respect to Class 6 (Equity Interests) because no Class junior to Class 6 will receive any distributions under the Plan.

Thus, the Debtors satisfy the "cram down" requirements of section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes, and the Plan may be confirmed notwithstanding section 1129(a)(8) of the Bankruptcy Code.

### III.    REPLY IN SUPPORT OF CONFIRMATION

A.    **Objections to the Plan**

On September 4, 2008, Vincent E. Rhynes filed the Limited Objection to Debtor(s) Second Amended Joint Plan of Liquidation F/K/A Inphonic INC [Docket No. 686] (the "Rhynes Objection"). In the Rhynes Objection, Mr. Rhynes objects to the Plan because the he is treated as an equity interest holder under the Plan. Mr. Rhynes attached a common stock certificate to his objection.

On September 12, 2008, the Commonwealth of Pennsylvania, Department of Revenue (the "PA DOR") filed the Objection to Second Amended Joint Plan of Liquidation of SN Liquidation, Inc. et al. Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated August 11, 2008 [Docket No. 699] (the "PA Objection"). The PA Objection requests the filing of certain tax returns with the Commonwealth and the closing of tax accounts prior to confirmation of the Plan.

On September 16, 2008, the United States filed the Objection by the United States to the Debtors' Second Amended Joint Plan of Liquidation [Docket No. 704] (the "IRS Objection"). In the IRS Objection, the U.S., on behalf of the Internal Revenue Service (the "IRS"), objects to the Plan because of: (i) the treatment of priority tax claims therein, (ii) the length of the automatic stay provided, (iii) the inclusion of a third-party release, (iv) the provisions perceived by the IRS as seeking impermissible prospective tax relief.

On September 16, 2008, Rodney Casperson filed the Lead Plaintiffs' Objection to Confirmation of Debtors' Second Amended Joint Plan of Liquidation [Docket No. 705] (the "Casperson Objection"). In the Casperson Objection, Mr. Casperson objects to the automatic stay provision of the Plan. Mr. Casperson also objects to the inability to proceed with its alleged claims against the Debtors solely to the extent of available insurance coverage and seeks to opt

out of the Plan's third party releases.

On September 19, 2008, Andew B. Zeinfeld and Kenneth D. Schwarz filed the Objection to Confirmation of Second Amended Joint Plan of Liquidation [Docket No. 713] (the "Z&S Objection"). Messrs. Zeinfeld and Schwarz object to the Plan to the extent it purports to reject indemnification agreements and seeks to disallow any contingent indemnification claims.

Contemporaneous with the filing of this Memorandum, the Proponents filed the Notice of Proposed Confirmation Order (the "Proposed Confirmation Order") to address the issues raised in the foregoing objections to confirmation of the Plan.

## B.      Reply to Confirmation Objections

The Plan should be confirmed because the foregoing objections have been resolved or should be overruled.

### 1.      The Rhynes Objection

The Plan provides that Class 6 Equity Interest Holders are impaired by the Plan and are therefore deemed to reject the Plan. Mr. Rhynes objected to the Plan because he was not sent a ballot to vote on the Plan. Further, Mr. Rhynes attached a stock certificate to his objection indicating his ownership of shares of common stock in InPhonic. Since Mr. Rhynes, as an equity interest holder, he was already deemed to reject the Plan, and no ballot was required by the Solicitation Procedures Order. The Rhynes Objection does not assert any basis upon which Mr. Rhynes would be entitled to vote on the Plan. Finally, Mr. Rhynes asked this Court to require the Debtors to publish a list of equity security holders on the Court's docket. Such a list was filed with the Debtors' bankruptcy petitions and is available on the docket. Therefore, the Rhynes Objection should be overruled.

### 2.      The PA Objection

The Proponents and the PA DOR have resolved the PA Objection. The Debtors

anticipate filing a motion pursuant to Bankruptcy Rule 9019 to seek this Court's approval of the resolution. As will be more fully set forth in the Bankruptcy Rule 9019 motion, in exchange for the PA DOR's withdrawal of the PA Objection prior to the Confirmation Hearing, certain claims of the PA DOR have been liquidated and allowed.

### 3.    The IRS Objection

In conjunction with the resolution of all of the IRS claims against the Debtors, the Proponents resolved certain aspects of the IRS's objection to the treatment of its priority tax claims. Since Allowed Priority Tax and Non-Tax Claims will not exceed $500,000, there will be sufficient funds to pay Holders of such Allowed Claims in full on the Distribution Date. The IRS no longer objects to the payment of its priority tax claims over a period of years or the risk of a pro rata distribution because sufficient funds are currently available. The IRS, however continues to maintain that it should be paid on the Effective Date as opposed to the Distribution Date. The Plan defines Distribution Date as, "the date for Distribution occurring as soon as practicable after the Effective Date." Plan at Article I.B.46. The Proponents intend to make a distribution to Holders of Allowed Priority Claims as soon as is practicable. In order to make a Distribution, the Proponents must first obtain funds from Adeptio, calculate and make the Distribution. The Distribution Date will likely be the same as the Effective Date. However, in the event there is a brief lag between the two Dates, the Estates should not be required to incur the costs of calculating *de minimis* interest. The IRS and the Proponents propose to resolve this objection by inserting language into the Proposed Confirmation Order that requires the Distribution Date to occur no later than 10 calendar days after the Effective Date.

The IRS requested the inclusion of language in the Proposed Confirmation Order that allows it to opt out of the Plan's third party releases and to clarify that the IRS is not granting the Litigation Trust or the Debtors any prospective tax relief. The Proponents do not object to

permitting the IRS to opt out of the Third Party Release and were not seeking prospective tax relief from the IRS through the Plan or Litigation Trust Agreement. The IRS already had the opportunity to opt out of the Third Party Release by submitting a ballot opting out by the Voting Deadline. However, no such ballot was submitted at the time of the filing of this Memorandum. Therefore, the IRS Objection should be overruled on these grounds.

The IRS also objects to the Plan's alleged extension of the automatic stay beyond the time period set forth in 11 U.S.C. § 362. The Proponents, through the Proposed Confirmation Order, modified the Plan to extend the automatic stay until the closing or dismissal of the Chapter 11 Cases. The revised language modifies Article XI.M of the Plan as follows:

> Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), including any stay exceptions provided for under Bankruptcy Code section 362(b), shall remain in full force and effect until *the closing or dismissal of the Chapter 11 Cases.*

> In accordance therewith, and without limiting the foregoing, *until the closing or dismissal of the Chapter 11 Cases* (except as provided in section 362(b) of the Bankruptcy Code), parties are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date.

Such a modification is compliant with 11 U.S.C § 362(c). *See Supra* Part III.B.4. Therefore, any objection based on the length of the automatic stay should be overruled.

### 4.    The Casperson Objection

Mr. Casperson, who characterizes himself as the Lead Plaintiff,[11] objects to the Plan because it seeks to extend the automatic stay and injunctions beyond the Confirmation Date, allegedly precludes the Lead Plaintiff from re-asserting his class claims against the Debtors to the extent of insurance coverage, and does not preserve the Lead Plaintiffs' rights, if any, against certain non-debtor entities.

The Lead Plaintiff's arguments fail, and the Plan should be confirmed. Specifically, the Lead Plaintiff, and the class he purportedly represents, is an alleged general unsecured creditor. Indeed, Thomas Stevens, individually and on behalf of others similarly situated, assert an alleged unsecured claim against the Debtors in these cases in the amount of not less than $50 million (Claim Number 230) (the "Class Claim"). In support of the Class Claim, the Lead Plaintiff attached a copy of the civil action styled *In re InPhonic, Inc. Securities Litigation*, Case No. 07-00930 (D.D.C.) (the "Securities Class Action").

The Plan provides that all of the Debtors' remaining Assets, including Causes of Action and property of the Estates, are to be transferred to the Litigation Trust. *See* Plan at Article V.E.1. The Litigation Trust has been established not for its own purposes, but for the benefit of all of the Debtors' creditors. Accordingly, the Lead Plaintiff, should the alleged claim be determined to be valid, is one of among thousands of creditors for whose benefit the Litigation Trust was established.

The Lead Plaintiff plainly objects to the Plan because it wants to jump ahead of the other creditors in these Cases. The securities claims, whether they are derivative or direct claims against the Debtors, their former officers and directors, and/or the Debtors' D&O insurance

---

[11] The Lead Plaintiff is identified in the Casperson Objection as Rodney Casperson. The Plaintiff in the Securities Class Action (as defined below) and the claimant in the Class Claim (as defined below) are each identified as "Thomas Stevens, individually and on behalf of all others similarly situated."

carriers, are property of the Estates and considered Estate Assets. *See* Disclosure Statement at Article IV.C.5.a. Accordingly, per the Plan, these Estate Assets are assigned to the Litigation Trust to be pursued by the Trustee for the benefit of all creditors, not just those creditors who are party to the Securities Class Action.

The Lead Plaintiff's arguments that the Plan proposes to use the protections afforded by the automatic stay "offensively" are inappropriate and misplaced. In all of the cases that the Lead Plaintiff relies upon, it is the debtor that is allegedly using the automatic stay as a sword of aggression. However, in these Cases, pursuant to the terms of the Plan, the automatic stay is used solely to preserve the Estate Assets for the benefit of all creditors. Contrary to the Lead Plaintiff's suggestions, the Litigation Trust is not a creditor that is looking out for its own interests. The Litigation Trust is a mechanism to prosecute claims for the benefit and protection of the Debtor's creditors. The Lead Plaintiff's objection should be seen for what it is, a blatant attempt to get ahead of the other creditors in these Cases.

        a.     <u>Extending the Automatic Stay is Necessary and Appropriate and Is In the Interests of All Creditors</u>

So that any one creditor does not benefit to the detriment of other creditors, the Plan seeks to extend the automatic stay pursuant to section 362 of the Bankruptcy Code. Section 362(c)(2) provides that the automatic stay provided by section 362(a) continues until the earliest to occur: "(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied." Pursuant to the terms of the Plan, injunctions and the automatic stay are to remain in place until the case is closed or the Litigation Trust is dissolved. *See* Plan at Art. XI.M. Upon confirmation of the Plan, neither will have occurred. Accordingly, by the express terms of the Bankruptcy Code, the continuation of the

protections afforded by section 362 is necessary and appropriate and safeguards the interests of all creditors of the estates. The Proponents have revised the Plan language regarding the automatic stay to eliminate any doubt as to the validity of Article XI.M. of the Plan. *See infra* Part III.B.3.

The assets, claims, and causes of action included among the Estate Assets, including the claims raised in the Securities Class Action, continue to be property of the estate notwithstanding their transfer to the Litigation Trust. Section 1123(a)(5)(B) of the Bankruptcy Code provides as follows:

> Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall--
>> (5) provide adequate means for the plan's implementation, such as--
>>> (B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan.

11 U.S.C. § 1123(a)(5)(B). Nothing in the Bankruptcy Code suggests that upon transfer to a trust established for the benefit of creditors, estate property ceases to be "property of the estate." Indeed, liquidating trusts are routinely established in chapter 11 plans. In fact, the Bankruptcy Court for the District of Delaware has rejected arguments that property transferred to a liquidating trust does not constitute property of the estate. *See, e.g., In re U.S. Wireless Corp.,* 333 B.R. 688 (Bankr. D. Del. 2005).

Furthermore, courts have held that when property of the estate is transferred to a litigation trust pursuant to a confirmed chapter 11 plan, the trustee of such trust may assert a turnover action under section 542 of the Bankruptcy Code to recover property of the estate. *See, e.g., In re Lomas Financial Corp.,* 1999 WL 33495524, *4 (Bankr. D. Del. 1999) (holding that when all of a debtors' assets are transferred to a trust for the benefit of creditors, the trustee is a proper party to initiate a section 542 turnover action to recover property of the estate); *see also In*

*re Greater Southeast Community Hosp. Corp. I*, 365 B.R. 293, 300-01 (Bankr. D. Colo. 2006) (a trustee for a trust established for the benefit of creditors "can invoke the same powers that a chapter 11 trustee or debtor-in-possession would possess because he is a 'representative of the estate' as defined by 11 U.S.C. § 1123."). Accordingly, estate property remains "property of the estate" notwithstanding its transfer to the Litigation Trust.

To hold that a trustee on behalf of a liquidating trust cannot assert the protections and rights that were assigned to it by a debtor would render section 1123(a)(5)(B) of the Bankruptcy Code meaningless allowing for the assignment of such property.    Given the number of liquidating chapter 11 plans that have been confirmed in this District, and the express language of the Bankruptcy Code allowing for such plans, the Plan should be confirmed and the protections of section 362(a) of the Bankruptcy Code be maintained as required by section 362(c)(2)(A). The Casperson Objection should be overruled.

> b.    Insurance Policies and Proceeds are Property of the Estate

The Lead Plaintiff seeks to be allowed to pursue his claims against the Debtors' insurance policies, which, per the Plan, are to be assigned to the Litigation Trust. If the Lead Plaintiff is allowed to pursue claims against the Debtors' insurance policies, it would deprive other creditors of their opportunity to share in any potential recovery on derivative or direct actions. The insurance policies, and the right to any proceeds from such policies, are property of the estates. *See In re Nutraquest, Inc.*, 434 F.3d 639, 647 n. 4 (3d Cir. 2006) (the debtor's "right to its insurance-policy proceeds is property of the estate under 11 U.S.C. § 541(a)"). Accordingly, Lead Plaintiff's argument that "the class is entitled to the proceeds of the D&O Policies to satisfy Lead Plaintiff's and the class's claims" (Casperson Objection at ¶ 17) is wrong under the law. The insurance policies, and any proceeds therefrom, are property of the estates, and remain so upon their assignment to the Litigation Trust. *See id.*

The Lead Plaintiff's motives are transparent -- it wants to get ahead of all other unsecured creditors in these Cases.   All claims and Assets of the Debtors, including potential causes of action and direct or derivative claims and recoveries from the Debtors' insurance policies, are to be transferred to the Litigation Trust for the benefit of all creditors, not just the Lead Plaintiff. To allow the Lead Plaintiff to thwart confirmation of the Plan so that he may pursue his own interests prejudices all of the Debtors' other creditors.

The Lead Plaintiff wants the claims resolution process to occur in the court of its choosing as opposed to the Bankruptcy Court.   The Bankruptcy Court is the proper court to liquidate the Lead Plaintiff's alleged claims because it can balance the interests of the Estates and the creditors against the interest of the Lead Plaintiffs.   The automatic stay is essential to maintaining the integrity of the claims resolution process and to centralizing the process in one court – the Bankruptcy Court – where the interests of the creditors and other parties in interest are upheld.

c.      The Lead Plaintiff Opted-Out of Third-Party Releases

Although the Plan contemplates certain third party releases, the releases are subject to the right of creditors to opt-out.   *See* Plan at Article XI.C.2.   Specifically, at the end of the Article XI.C.2, the Plan provides as follows: "provided, however, that the foregoing releases shall not apply to any Holder of a Secured Lender Claim or a General Unsecured Claim if such holder "opts out" of such releases by a timely written election set forth on such Holder's ballot." *Id.*

The Lead Plaintiff, through its counsel S. Jason Teele, Esquire, submitted a ballot opting out of the Third Party Release.   Accordingly, the Lead Plaintiff is not bound by the Third Party Release, and therefore its objection to confirmation of the Plan should be overruled.

5.      **The Z&S Objection**

Messrs. Zeinfeld and Schwarz object to the inclusion of indemnification agreements in the Plan as Executory Contracts.  In the Proposed Confirmation Order, the Proponents clarify the language in Article VI.B. regarding the rejection of Executory Contracts to include indemnification agreements only to the extent they are executory.  The Z&S Objection alleges that the Debtors', "bylaws are not executory contracts and may not be rejected." Z&S Objection at p. 5.  The Plan does include language regarding the acceptance or rejection of the Debtors' bylaws.  The Plan merely states that indemnification agreements—to the extent they are executory—are rejected on the Effective Date.  Pursuant to Section 365 of the Bankruptcy Code, the Debtors may reject an executory contract with the Court's approval if it is in the Debtors' sound business judgment. *See supra* Part II.A.1.C.  The Plan seeks this Court's approval for the rejection of certain Executory Contracts. *See* Plan at Article VI.B.  It is in the Estates' best interests to reject any outstanding Executory Contracts on the Effective Date because the Debtors are no longer operating.  Upon the Effective Date, the Litigation Trust will receive all the Estates' assets, and the Debtors will no longer need to be party to any Executory Contracts as such contracts will not benefit the Estates.

Messrs. Zeinfeld and Schwarz have not questioned the Debtors' business judgment in determining to reject any indemnification agreements that are Executory Contracts.  The Z&S Objection merely indicates that Article VI.B of the Plan might affect them negatively.  There is no ambiguity regarding the Plan's treatment of Executory Contracts.  Therefore, the Z&S Objection as it pertains to the Plan provision regarding Executory Contracts should be overruled.  Nonetheless the Proponents propose to resolve the objection on this ground by modifying Article VII of the Plan as follows:

On the Effective Date, all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to section 2.5(b) of the Asset Purchase Agreement), including without limitation, all written employment agreements, collective bargaining agreements, severance contracts, employee benefit or retirement or supplemental retirement benefit plans, indemnification agreements *to the extent they are executory* (whether discrete or set forth in other documents) and agreements and unexpired real or personal property leases of the Debtors, that are not the subject of a motion to assume or reject pending on the Effective Date, are deemed rejected by the Debtors as of the Petition Date. Further, on the Effective Date, all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date, shall be deemed rejected by the Debtors and such rejection shall be deemed to be effective as of July 19, 2008.

Each Person who is a party to an Executory Contract which was not previously rejected prior to the Effective Date or which is rejected pursuant to the Plan and this Confirmation Order, shall be entitled to file a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract to which such Person is a party. All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date. All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date and shall be pre-petition general unsecured claims subject to the provisions of the Bankruptcy Code, relevant rules and the Plan.

Messrs. Zeinfeld and Schwarz also object to the language in Article VII of the Plan that disallows indemnification claims that are contingent on the Effective Date. The Proponents propose to resolve this objection by modifying Article VII as follows:

*Except with respect to Claim Nos. 1075 and 1076*, on the Effective Date, any Claim for reimbursement, indemnification, contribution or subrogation of an Entity that is liable with any Debtors on or that has secured the Claim of a Creditor not heretofore disallowed by order of the Bankruptcy Court shall be deemed disallowed to the extent (a) such Creditor's Claim against the Debtors is disallowed; (b) such Claim for reimbursement, indemnification, contribution or subrogation is contingent as of the Confirmation Date, including, without limitation, all Claims which are not allowable under Bankruptcy Code section 502(e); or (c) such Entity asserts a right of subrogation to the rights of such Creditor under Bankruptcy Code section 509 except as otherwise specifically provided therein. *The amount and validity of Claim Nos. 1075 and 1076 shall be determined at a later date, and the Debtors' and Litigation Trusts' rights to object to Claim Nos. 1075 and 1076 on any and all grounds permitted under law and/or equity and to assert setoff are fully preserved.*

Therefore, the Z&S Objection should be overruled.

## IV.   CONCLUSION

For the foregoing reasons, the Debtors respectfully submit that this Court should enter an

order (I) confirming the Plan and (II) granting the Debtors such other and further relief as is just

and proper.

Date:   October 8, 2008
        Wilmington, Delaware

**BAYARD, P.A.**

Neil B. Glassman (No. 2087)
Mary E. Augustine (No. 4477)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:     (302) 655-5000
Facsimile:     (302) 658-6395

        and

**DLA PIPER US LLP**
Thomas R. Califano, Esquire
Christopher R. Thomson, Esquire
Jeremy R. Johnson, Esquire
1251 Avenue of the Americas
New York, New York  10020
Telephone:     (212) 335-4500
Facsimile:     (212) 335-4501

Counsel for Debtors and Debtors in Possession