**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>SN LIQUIDATION, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 07-11666 (KG)<br>(Jointly Administered)<br>**Objection Deadline: October 31, 2008 at 4:00 p.m.**<br>**Hearing Date: November 7, 2008 at 2:00 p.m.** |

**MOTION OF ILLINOIS NATIONAL INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY OF 11 U.S.C. §362(a) TO ADVANCE DEFENSE COSTS UNDER AN EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY**

Illinois National Insurance Company ("Illinois National"), by and through its undersigned counsel, hereby enters this limited appearance[2] solely for the purpose of moving for an order granting it relief from the automatic stay to advance Defense Costs incurred by or on behalf of the insured executives and/or employees of the debtor InPhonic, Inc. or its subsidiaries ("Debtor") in relation to specific lawsuits (identified below) as those payments come due.[3] In support of this motion, Illinois National states as follows:

---

[1] The Debtors and debtors in possession are INP Liquidation Corp. f/k/a InPhonic, Inc., CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC, CS II, LLC f/k/a CAIS Acquisition II, LLC, SI Liquidation Corp. f/k/a SimIPC Acquisition Corp., SN Liquidation, Inc. f/k/a Star Number, Inc., MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC, FN LLC f/k/a FON Acquisition, LLC, 1010, LLC f/k/a 1010 Interactive, LLC.

[2] Illinois National submits this motion without consenting to jurisdiction over Illinois National for any other purpose.

[3] Any advancement of Defense Costs to executives or employees would be subject to a full reservation of rights by Illinois National. Nothing herein is a waiver of any rights or defenses available to Illinois National under the Policy or otherwise, nor is it an admission that the Policy is valid and enforceable.

**BACKGROUND**

1. On November 8, 2007, (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. The Debtors continue to possess their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 cases.

3. On the Petition Date, the Debtors filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion and APA, the Debtors sought authority to sell substantially all of their business assets and to assume, sell and assign certain of their unexpired leases, license agreements, and executory contracts free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code.

4. On November 16, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

5. On December 13, 2007, after conducting a hearing, the Bankruptcy Court entered an order approving the Sale Motion and APA (the "Sale Order"). Pursuant to the Sale Order, the Debtors have sold substantially all of their business assets to Adeptio INPC Funding, LLC ("Adeptio" or the "Buyer").

6. On or around December 21, 2007, Adeptio assigned to Simplexity, LLC a Delaware limited liability company and a subsidiary of Adeptio ("Simplexity"), its rights to receive the Assets from the Debtors under the APA (as defined in the APA). On or around December 21, 2007, the parties closed the sale pursuant to the APA.

7. Illinois National issued to InPhonic an Executive and Organization Liability Insurance Policy No. 965-69-56 covering Loss on account of certain Claims first made during the Policy Period November 30, 2006 to November 30, 2007 ("the Policy"), subject to a $10 million aggregate Limit of Liability. Pursuant to Coverage A of the Insuring Agreements, the Policy covers Non-Indemnifiable Loss incurred by the Executives and Employees ("Insured Persons") of InPhonic and its Subsidiaries. Also, pursuant to Coverage B(ii), the Policy covers Loss incurred by InPhonic in indemnifying such Insured Persons, on account of a Claim for Wrongful Acts.

8. The Policy further provides pursuant to Clause 8 that Illinois National shall advance, excess of any applicable retention amount, covered Defense Costs. "Defense Costs" are defined by Section 2(f) of the Policy as follows: "reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured, but excluding any compensation of any Insured Person or any Employee of an Organization."

9. In addition, Clause 22 of the Policy (with emphasis added) provides as follows:

> 22. ORDER OF PAYMENTS
>
> In the event of Loss arising from a covered Claim for which payment is due under the provisions of this policy, then the insurer shall in all events:

  (a) <u>first, pay Loss for which coverage is provided under Coverage A</u> and Coverage C of this policy; then

  (b) only after payment of Loss has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(ii) of this policy; and then

  (c) only after payment of Loss has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverages B(i) and D of this policy.

In the event the Insurer withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the Named Entity remit such payment to an Organization or directly to or on behalf of an Insured Person.

<u>The bankruptcy or insolvency of any Organization</u> or any Insured Person <u>shall not relieve the Insurer of any of its obligations to prioritize payment of covered Loss under this policy</u> pursuant to this Clause 22.

  10. On May 18, 2007, a securities class action was filed against David A. Steinberg, former CEO and Chairman of InPhonic, and Lawrence S. Winkler, former CFO and Treasurer of InPhonic in the United States District Court for the District of Columbia, captioned *In re InPhonic, Inc. Securities Litigation*, Case No. 07-00930 (the "Securities Action").[4]

  11. On December 31, 2007, Icon International, Inc. commenced a civil action against non-debtors David A. Steinberg, Andrew Zeinfield and Kenneth D. Schwarz in the United States

---

[4] The original complaint named InPhonic as a defendant; however, the pending First Amended Class Action Complaint names only Steinberg and Winkler.

District Court for the District of Columbia, captioned *Icon International, Inc. v. David A. Steinberg, et al.*, Case No. 07-02342 (the "Icon Action").  Steinberg, Winkler, Zeinfield and Schwarz are collectively the "Individual Defendants."  The Securities Class Action and Icon Action are collectively the "Pending Actions."

12. These Individual Defendants have incurred defense expenses in the defense of the Pending Actions and will continue to incur defense expenses in the defense of the Pending Actions, particularly the ongoing Securities Action.  The Individual Defendants are seeking advancement from Illinois National of the defense expenses they have incurred so far and will incur in the future.  The Individual Defendants have so far submitted bills which total nearly $800,000.  Illinois National is in the process of reviewing those bills to determine what amounts it should advance, pursuant to the Policy's definition of Defense Costs, and subject to a reservation of rights.

13. The Pending Actions are the only pending lawsuits involving InPhonic for which Illinois National seeks to make payment or advancement of fair and reasonable Defense Costs.

14. Illinois National has already fully reserved all of its rights and defenses with respect to the Pending Actions.  Nothing in this motion constitutes a waiver of modification or limitation of such full reservation of rights and defenses.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue in this District is proper pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicate for the relief sought herein is 11 U.S.C. §§362(a) and 105(a).

**REQUEST FOR RELIEF**

16.     Illinois National acknowledges this Court's ruling that the Policy is property of the estate (see *In re SN Liquidation, Inc.*, 388 B.R. 579, 583 (Bankr. D. Del. 2008)).[5]  However, Illinois National believes that the Policy proceeds should still be available to advance Defense Costs on behalf of the Individual Defendants.  Therefore, Illinois National seeks entry of an order granting relief from the automatic stay for the purpose of making fair and reasonable payments under the Policy as such payments may come due.  Illinois National is not requesting that this Court approve, review or otherwise become involved in decisions by Illinois National regarding what amounts would be covered Defense Costs under the Policy.

17.     Although it is generally stated that an insurance policy issued to a debtor becomes property of its bankruptcy estate, it is well settled that the extent of the estate's interest in the policy is expressly "limited by the contractual provisions within that policy." *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995).  As noted by the court in *Jones*, "'the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition." *ld.* at 455, citing *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993) (bankruptcy estate had no rights to proceeds of insurance policy contractually designated for other parties).  Thus, it has been held that a "bankruptcy trustee takes his interest in the insurance policy pursuant to the interest of the debtor – 'standing in the shoes' as it were." *Matter of Light*, 23 B.R. 482, 484 (Bankr. E.D. Mich.

---

[5] Illinois National was not a party to the prior proceedings which resulted in the Court's order. Therefore, Illinois National does not waive the right to contest whether the Policy is property of the estate.  *See e.g. In re Spaulding Composites Co., Inc.,* 207 B.R. 899, 907 (9th Cir. BAP 1997) ("[A] debtor's interest in a portion of property does not subject the entire property to §541.  Nor does a debtor's claim to property mean that the entire property is a part of the bankruptcy estate.") (citation omitted); *In re Pintlar Corp.*, 124 F.3d 1310, 1313 (9th Cir. 1997) (holding that individual insured's rights under a D&O policy not subject to the automatic stay).

1982). *See also In re Feierisen,* 56 B.R. 167, 169 (Bankr. D. Or. 1985) ("The Trustee, as the representative of the estate, acquired the rights of the debtor in the insurance policy issued by plaintiff, subject to all defenses and obligations that may have existed at the time the estate was created.")

19. Under *In re First Central Financial Corp.*, 238 B.R. 9 (Bankr. E.D.N.Y. 1999), *affirmed sub nom.*, *Ochs v. Lipson*, 2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. 2000), a Bankruptcy Court may and should allow payment of defense costs under a D&O policy. In *First Central*, a trustee challenged a D&O insurer's payment of defense costs for claims made against the debtor's former directors and officers. The trustee argued that both the D&O policy and its proceeds were property of the estate because the policy provided entity coverage to the debtor for securities claims. Payment of the directors' and officers' defense costs would thus have the effect of reducing the policy's aggregate limit of liability available for all coverages, including securities claims made against the debtor. Notwithstanding the existence of entity coverage under the policy (*i.e.,* coverage provided directly to the debtor corporation for claims made against it), the *First Central* court held that the automatic stay did not prevent the reimbursement of defense costs from the policy's proceeds. *See also In re Adelphia Communications Corp.*, 298 B.R. 49, 53-55 (S.D.N.Y. 2003). The court reasoned, "D&O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose." *First Central*, 238 B.R. at 16. *See also In re World Health Alternatives, Inc.*, 369 B.R. 805 (Bankr. D. Del. 2007) (allowing payments on behalf of individual insureds notwithstanding existence of potential entity coverage under D&O policy).

19. This reasoning is especially true with respect to Illinois National's ability here to advance Defense Costs. *See, e.g., Little v. MGIC Indemnity. Corp.,* 836 F.2d 789, 794-796 (3rd

Cir. 1998) (interpreting policy to require contemporaneous payment of defense costs); *FDIC v. Booth*, 824 F. Supp. 76, 80 (M.D. La. 1993) (finding that policy required insurer to reimburse defense costs as they are incurred), on subsequent appeal, 82 F.3d 670 (5th Cir. 1996); *FSLIC v. Burdette*, 718 F. Supp. 649 (E.D. Tenn. 1989) (same).

20.  Also, the Order of Payments language of the Policy clarifies that payments on account of these types of claims against Insured Persons receive priority over payments on behalf of InPhonic.

19.  Although InPhonic may be entitled to coverage under the Policy in its own right to the extent it indemnifies the Individual Insureds for Defense Costs incurred in the Pending Actions,[6] any advancement of the Policy's proceeds as requested herein will directly benefit the Debtors as it will reduce the estate's potential liability for such Defense Costs. Accordingly, cause exists to grant relief from the stay so as to allow the advancement of reasonable Defense Costs under the Policy. *See In re Allied Digital Technologies Corp.*, 306 B.R. 505, 513-514 (Bankr. D. Del. 2004). *See also In re CyberMedica, Inc.,* 280 B.R. 12, 18-19 (Bankr. D. Mass. 2002) (court found cause to lift the automatic stay to allow reimbursement of defense costs under D&O policy); *In re CHS Electronics, Inc.,* 261 B.R. 538, 544 (Bankr. S.D. Fla. 2002) (court held that proceeds of D&O policy ear-marked to fund a securities class settlement were not estate property, and alternatively found cause to lift the stay to allow payments under the policy).

---

[6] The Policy also provides, pursuant to Coverage B(i) Organization Liability coverage for Securities Claims, but InPhonic is no longer a defendant in the Securities Action.

WHEREFORE, Illinois National respectfully requests that the Court enter an order granting the relief requested herein, providing that Illinois National may advance Defense Costs pursuant to the Policy in connection with the Pending Actions against the Individual Defendants, and such other and further relief as may be necessary.

Dated: October 8, 2008

**WOMBLE CARLYLE SANDRIDGE & RICE PLLC**

\_\_/s/ Kevin J. Mangan_____
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue
Suite 1501
Wilmington, Delaware  19801
T: (302) 252-4320
F: (302) 252-4330
fmonaco@wcsr.com
kmangan@wcsr.com

-and-

E. Joseph O'Neil
Robert A. McCall
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261

Counsel for Illinois National Insurance Company