# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| SN LIQUIDATION, INC., *et al.*, | : | Case No. 07-11666 (KG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | **Re: Docket No. 649** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING PURSUANT TO 11 U.S.C. § 1129 THE SECOND AMENDED JOINT PLAN OF LIQUIDATION OF SN LIQUIDATION, INC., *ET AL*. PROPOSED BY THE DEBTORS IN POSSESSION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AUGUST 11, 2008**

### Recitals

A.    On November 8, 2007, (the "Petition Date"), SN Liquidation, Inc. and its affiliated debtors and debtors in possession (the "Debtors") each filed voluntary petitions for relief under chapter 11, title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

B.    On the Petition Date, the Debtors filed the Motion of the Debtors for an Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing the Sale of Substantially All of their Assets; (II) Approving an Asset Purchase Agreement (the "APA"), Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").

C.    On December 13, 2007, after conducting a hearing, the Bankruptcy Court entered an order approving the Sale Motion and APA (the "Sale Order"). Pursuant to the Sale Order, the Debtors have sold substantially all of their business assets to Adeptio INPC Funding, LLC ("Adeptio"). On December 21, 2007, the parties closed the sale of the APA.

{BAY:01171834v1}

D.      On or around December 21, 2007, Adeptio assigned to Simplexity, LLC, a Delaware limited liability company and a subsidiary of Adeptio ("Simplexity"), its rights to receive the Assets (as defined in the APA) from Adeptio under the APA.

E.      On May 19, 2008, the Debtors filed the Debtors' Motion Pursuant to Sections 1125, 1126, and 105 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018 and 3020, and Local Rule 3017-1 for Order (A) Approving Adequacy of Disclosure Statements, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Fixing the Administrative Expense Bar Date, and (D) Fixing Date, Time and Place for Confirmation Hearing (the "Solicitation Procedures Motion").

F.      On August 11, 2008, the Debtors filed with the Court, under certification of counsel, (a) the Second Amended Joint Plan of Liquidation of SN Liquidation, Inc. *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors, dated August 11, 2008 (the "Plan")[1] and (b) the Second Amended Disclosure Statement for the Joint Plan of Liquidation of SN Liquidation, Inc. *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors, dated August 11, 2008 (the "Disclosure Statement"), together with a revised form of order granting the Solicitation Procedures Motion (the "Solicitation Procedures Order").

G.      On August 12, 2008, the Court entered the Solicitation Procedures Order. Thereafter, in accordance with the Solicitation Procedures Order, the Debtors caused BMC Group, Inc. (the "Voting Agent") to solicit acceptances of the Plan from the Holders of Class 3 Secured Lender Claims and Class 4 General Unsecured Claims (collectively, the "Voting Holders"), who held such Claims as of August 1, 2008 (the "Solicitation Record Date"). The

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Debtors did not solicit votes from Holders of Claims or Interests in Classes 1, 2, 5 and 6, each of which was either deemed to have accepted or rejected the Plan pursuant to sections 1126(f) and (g) of the Bankruptcy Code.

        H.      Pursuant to Solicitation Procedures Order, all ballots accepting or rejecting the Plan must have been properly completed, executed and timely returned to the Voting Agent by 4:00 p.m. (Prevailing Central Time) on September 16, 2008 (the "Voting Deadline"), in order to be counted.[2]

        I.      The only Holders of Claims entitled to vote to accept or reject the Plan pursuant to the provisions of the Bankruptcy Code were the Voting Holders.  On October 2, 2008, the Voting Agent executed the Declaration of Brad Daniel on Behalf of BMC Group, Inc., Voting Agent, Regarding the Solicitation and Tabulation of Votes With Respect to the Second Amended Joint Plan of Liquidation of SN Liquidation, Inc., *et al.* Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors Dated August 11, 2008 (the "Final Voting Declaration") confirming the results of the solicitation, as follows:

| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
|---|---|---|---|---|
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| **Class 3** **Secured Lender Claims** | 0 0.00% | $0.00 0.00% | 0 0.00% | $0.00 0.00% |
| **Class 4** **General Unsecured Claims** | 2439 96.06% | $2,844,718.08 99.23% | 100 3.94% | $21,973.42 0.77% |

        J.      The Holders of Class 3 Secured Lender Claims did not vote for or against the Plan, and they are deemed to have rejected the Plan.  Over ninety-nine percent (99%) in amount

---

[2] Copies of the forms of ballots (the "Ballots") are attached to the Solicitation Procedures Motion, filed May 19, 2008.

and ninety-six percent (96%) in number of the Holders of Class 4 General Unsecured Claims voted to accept the Plan. A total of 275 Holders of Class 4 General Unsecured Claims voted to "opt out" of the Third Party Releases (as defined herein) of Adeptio and Simplexity set forth in Article XI.C.2 of the Plan.

K.      Pursuant to the Solicitation Procedures Order, this Court established (i) 4:00 p.m. (Prevailing Eastern Time) on September 16, 2008 as the deadline by which objections to the confirmation of the Plan were to be filed (the "Objection Deadline"), (ii) 4:00 p.m. (Prevailing Eastern Time) on October 9, 2008 as the deadline by which replies to any objections to the Plan were to be filed (the "Reply Deadline"), and (iii) 2:00 p.m. (Prevailing Eastern Time) on October 14, 2008 as the time and date for the hearing to consider confirmation of the Plan (the "Confirmation Hearing").

L.      Prior to the Objection Deadline, objections to confirmation of the Plan were filed by Vincent E. Rhynes, equity interest holder [Docket No. 686], the Commonwealth of Pennsylvania, Department of Revenue [Docket No. 699], the United States of America, Internal Revenue Service [Docket No. 704], Rodney Caspersen ("Lead Plaintiff"), for himself and, in his capacity as lead plaintiff, on behalf of the putative class in the consolidated securities class action styled In re InPhonic, Inc. Securities Litigation, Case No. 07-00930 (RBW) (D.D.C.) (the "Consolidated Securities Class Action") [Docket No. 705], and Andrew B. Zeinfeld and Kenneth D. Schwarz, former officers or directors of InPhonic, Inc., one of the Debtors [Docket No. 713].[3]

M.      On October 8, 2008, the Debtors filed the (i) Memorandum of Law in Support of the Second Amended Plan and Reply to Objections to Confirmation (the "Confirmation Memorandum"), (ii) the proposed confirmation order and (iii) the Declaration of Dorene Robotti

---

[3] By agreement, the Debtors gave an extension to Zeinfeld and Schwarz to file an objection to confirmation of the Plan until September 19, 2008.

in Support of Confirmation the Joint Plan of Liquidation Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors (the "Robotti Declaration", together with the Confirmation Memorandum and the proposed confirmation order, the "Confirmation Submissions").

      N.    At the Confirmation Hearing, this Court considered the Confirmation Submissions and heard the arguments of counsel supporting and in opposition to confirmation of the Plan.

      WHEREAS, this Court having reviewed the Plan, the Final Voting Declaration and the Confirmation Submissions; this Court having heard statements of counsel in support of the confirmation of the Plan at the Confirmation Hearing; this Court having considered all testimony presented and evidence submitted by affidavits, declarations or otherwise at the Confirmation Hearing; this Court having taken judicial notice of the papers and pleadings filed in these chapter 11 cases; it appearing to this Court that notice of the Confirmation Hearing and the opportunity of all parties-in-interest to object to the confirmation of the Plan were adequate and appropriate, and (ii) the legal and factual bases set forth in the Confirmation Submissions and the Final Voting Declaration and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law:

## Findings of Fact and Conclusions of Law[4]

IT IS HEREBY FOUND AND DETERMINED THAT:

1.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).  This Court has jurisdiction over the chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction by way of reference from the United States District Court for the District of Delaware to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.    Judicial Notice.  Judicial notice is hereby taken of the docket of these chapter 11 cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the chapter 11 cases.

3.    Transmittal and Mailing of Materials; Notice.  Due, adequate, and sufficient notice of the Plan and the Confirmation Hearing, along with all deadlines for voting on or filing objections to the Plan, has been given to all Holders of Claims and/or Interests entitled to receive notice in accordance with the Bankruptcy Rules, the procedures set forth in the Solicitation Procedures Order, the Order Approving Limited Notice to Certain Rebate Creditors, entered February 25, 2008 (the "Rebate Notice Order") and further orders of the Court.  The Disclosure

---

[4] This Confirmation Order constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

Statement, Plan, Ballots, and Confirmation Hearing Notice were transmitted and served in substantial compliance with the Bankruptcy Rules, the Solicitation Procedures Order, and any other applicable orders of the Court, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the Solicitation Procedures Order and any other applicable orders of the Court was given in compliance with the Bankruptcy Rules, the Solicitation Procedures Order, and other applicable orders of the Court, and no other or further notice is or shall be required.

4.    _Distribution_.  All procedures used to distribute the solicitation materials to the applicable Holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations.

5.    _Burden of Proof_.  The Plan Proponents have met their burden of proving, by a preponderance of the evidence, the elements of sections 1129(a) and (b) of the Bankruptcy Code.

6.    _Modifications to Plan_.  The modifications to the Plan set forth on the record of the Confirmation Hearing, made by this Confirmation Order, ~~and~~or included in the form of Plan do not materially and adversely affect or change the treatment of any creditor who has not accepted in writing such modifications.  Accordingly, pursuant to Rule 3019 of the Federal Rules of Bankruptcy Procedure, these modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor resolicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Disclosure of the modifications on the record of the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these chapter 11 cases.  Accordingly, pursuant to section 1127 of the

Bankruptcy Code, and Bankruptcy Rule 3019, all Holders of Claims that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

       7.    <u>Compliance with Applicable Provisions of the Bankruptcy Code</u>.  The Plan complies with and satisfies all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation sections 1122 and 1123 of the Bankruptcy Code and Bankruptcy Rule 3016.

       a.    <u>The Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code by Placing Only Substantially Similar Claims or Interests in Each Class</u>.  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, Article II of the Plan sets forth five Classes of Claims and one Class of Interests of the Debtors. The Classes are designated as follows:  (a) Class 1 – Other Secured Creditor Claims; (b) Class 2 – Non-Tax Priority Claims; (c) Class 3 – Secured Lender Claims; (d) Class 4 – General Unsecured Claims; (e) Class 5 – Intercompany Claims; and (f) Class 6 – Equity Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests under the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and Trustee Fee Claims are not classified and are separately treated.

b.    <u>The Plan fully complies with each requirement of section 1123(a)(1)-(7)</u> <u>of the Bankruptcy Code, as set forth below</u>:

(i)    <u>Proper Classification (11 U.S.C. § 1123(a)(1))</u>.  Article II of the Plan designates Classes of Claims and Interests as required under section 1123(a)(1) of the Bankruptcy Code.  In accordance with the requirements of section 1123(a)(1), Administrative Expense Claims, Priority Tax Claims and Trustee Fee Claims are not classified in Article II of the Plan.

(ii)    <u>Specified Treatment of Unimpaired Classes (11 U.S.C. §</u> <u>1123(a)(2))</u>.  Article II of the Plan specifies that Class 1 - Other Secured Claims and Class 2 - Priority Non-Tax Claims are Unimpaired under the Plan, therefore satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article II of the Plan specifies that Claims and Interests in Classes 3, 4, 5 and 6 are designated as Impaired under the Plan in that the legal, equitable and contractual rights of holders of Claims or Interests in those Classes are altered in connection with the Plan.  In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies the treatment afforded to each Impaired Class of Claims and Interests.

(iv)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to other treatment of such Claim or Interest, thereby satisfying Section 1123(a)(4) of the Bankruptcy Code.

(v)    <u>Implementation of the Plan (11 U.S.C. §1123 (a)(5))</u>.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article V and other Plan provisions provide adequate and proper means for the Plan's implementation and the orderly liquidation of the Debtors' Estates.  The Debtors and the Litigation Trust will implement and consummate the Plan through the means set forth in the Term Sheet and contemplated by sections 1123(a)(5)(B) and (D), 1123(b)(3)(A) and 1123(b)(4) of the Bankruptcy Code.

(vi)    <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Pursuant to Article V.B of the Plan, the Debtors shall be merged with and into SN Liquidation, Inc. on the Effective Date.   Immediately after the merger and the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be deemed dissolved under applicable state law.  Pursuant to Article III.E.I of the Plan, all equity interests of the Debtors shall be canceled on the Effective Date. Accordingly, section 1123 (a)(6) of the Bankruptcy Code is satisfied.

(vii)    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>. Pursuant to Article V.B of the Plan, the Debtors shall be merged with and into SN Liquidation, Inc. on the Effective Date, and the sole director or manager, as the case may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned.  Pursuant to Article III.E.I of the Plan, immediately after the merger and the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be deemed dissolved under applicable state law. The Trustee of the Litigation Trust will, *inter alia*, administer the remaining assets of the estates and prosecute any claims of the estates.  The Litigation Trust Agreement provides for the manner of selecting the Trustee's successor, if any is required, and the Trust Oversight Committee will

monitor the Litigation Trust. This is consistent with the interests of creditors and public policy and satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

> c.    Permissive Provisions of Section 1123(b) of the Bankruptcy Code

(i)    Impairment of Classes (11 U.S.C. § 1123(b)(1)) Pursuant to Article II of the Plan, as contemplated by section 1123(b)(1) of the Bankruptcy Code, Classes 1 and 2 are designated as Unimpaired. Claims and Interests in Classes 3 through 6 are designated as Impaired under the Plan.

(ii)    Treatment of Executory Contracts (11 U.S.C. § 1123(b)(2))    As contemplated under section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides for: (a) the treatment of each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto (the "Insurance Policies"), unless previously canceled or transferred by Adeptio, as Executory Contracts, (b) the assumption of the Insurance Policies and the assignment of all of the Estates' rights under such Insurance Policies to the Litigation Trust in accordance with sections 365 and 1123 of the Bankruptcy Code, (c) the rejection of all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to Section 2.5(b) of the Asset Purchase Agreement) on the Effective Date *nunc pro tunc* to the Petition Date, and (d) the rejection of all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date *nunc pro tunc* to July 19, 2008.

The decisions regarding the assumption and rejection of executory contracts and unexpired leases are based on and are within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, the Debtors' Estates, and other parties in interest in the Debtors' chapter 11 cases.

      (iii)    <u>Releases (11 U.S.C. § 1123(b)(3) and (6))</u>. As contemplated under section 1123(b)(3) of the Bankruptcy Code, Article XI.C.1 of the Plan provides for the Estate's release of "Adeptio and its non-natural affiliates and subsidiaries and each of their respective directors, officers, employees, members, attorneys, financial advisors, accountants, professionals, agents and representatives" by the "Debtors, their professionals, employees, agents, and advisors" on the Effective Date, of "any and all causes of action, whether known or unknown foreseen or unforseen, liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors," provided, however, that "nothing in [the] Plan releases any Retained Litigation Claims as set forth in the Term Sheet or Adeptio's or Simplexity's other obligations under the Term Sheet, the APA or [the] Plan." This release provision is not inconsistent with the Bankruptcy Code and is appropriate under section 1123(b)(3) of the Bankruptcy Code.

      Article XI.C.2 of the Plan provides for the third party releases of "Adeptio and Simplexity, including their respective present members, officers, directors, employees, advisors, attorneys, and agents and their respective former members, officers, directors, employees, and agents if they are Transferred Employees, as that term is defined in the Asset Purchase Agreement (and their Affiliates as set forth in Article XI.F of the Plan)" by "any Holder of a Secured Lender Claim or a General Unsecured Claim and their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns" that does not opt out of such release in voting regarding the Plan by a timely written election set forth on such Holder's Ballot of "any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known

or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in

law, at equity, whether for tort, contract, violations of federal or state securities laws, or

otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or

circumstances existing or taking place prior to or on the Effective Date arising from or related in

any way whatsoever to the Debtors and these Chapter 11 Cases, including, but not limited to,

those in any way related to formulating, negotiating, preparing, disseminating, implementing,

administering, confirming, or consummating the Sale, [the] Plan, the Disclosure Statement, the

Litigation Trust Agreement, or any other contract, instrument, release, or other agreement or

document created or entered into in connection with these Chapter 11 Cases or the Plan, or any

other post-petition act taken or omitted to be taken in connection with or in contemplation of the

liquidation of the Debtors, except for their gross negligence, willful misconduct or bad faith" (the

"Third Party Releases").  The Third Party Releases shall not apply to any Holder of a Secured

Lender Claim or a General Unsecured Claim if such holder selected to opt out of such releases

by a timely written election ~~set forth on such Holder's Ballot~~ and shall not apply to the Internal

Revenue Service of the United States of America.  The Third Party Releases set forth in Article

XI.C.2 of the Plan are upheld ~~as to parties voting in favor of the plan and not selecting to opt out~~

~~of such release~~.  Nothing in the Plan, Disclosure Statement or this Order shall (i) release or

discharge any claims held by the U.S. Securities and Exchange Commission (the "SEC") against

any non-debtor(s) or (ii) enjoin or restrain the SEC from enforcing such claims against any non-

debtor(s). In addition, nothing in the Plan, Disclosure Statement or this Order shall (i) release or

discharge any claims held by Lead Plaintiff, for himself and, in his capacity as lead plaintiff, on

behalf of the putative class (the "Putative Class") in the Consolidated Securities Class Action,

against (x) any non-debtor(s) other than Adeptio and its Affiliates, and (y) Adeptio and its

Affiliates solely to the extent Lead Plaintiff and/or the Putative Class has properly opted out of the Third Party Releases or (ii) enjoin or restrain Lead Plaintiff, individually and in his capacity as Lead Plaintiff of the Putative Class, from prosecuting such claims against any such non-debtor(s) (subject to the same limitation set forth in the preceding clause). For the avoidance of doubt, Adeptio and its Affiliates, on the one hand, and Lead Plaintiff, for himself and, in his capacity as lead plaintiff of the Putative Class, on the other hand, expressly reserve any and all rights with respect to the applicability of any injunction set forth in the Plan, Disclosure Statement or this Order. The release provision in Article XI.C.2 of the Plan is not inconsistent with the Bankruptcy Code and is appropriate under section 1123(b)(6) of the Bankruptcy Code.

The Plan provides for the Exculpation and Limitation of Liability of parties essential in negotiating the Plan as follows:

> Neither the Debtors, the Committee, the Litigation Trustee, the Trust Oversight Committee, Adeptio or Simplexity, nor any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan or the Litigation Trust Agreement, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the Litigation Trust Agreement or the property to be distributed under this Plan or the Litigation Trust Agreement, except for their gross negligence, willful misconduct or bad faith, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

> The Litigation Trust is hereby deemed to release only each Person exculpated pursuant to the above paragraph from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, these Chapter 11 Cases, formulating, negotiating or implementing this Plan,

solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan, the Confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or bad faith.

Affiliates (as defined in the Asset Purchase Agreement) of Simplexity and Adeptio shall be exculpated and their liability (and the releases set forth in section XI.C of this Plan) shall be limited to the extent provided in and only to the extent provided in, the Asset Purchase Agreement and Term Sheet.

Article XI.C.2 of the Plan is fair to the creditors of the Debtors, the Plan provision is necessary to the confirmation of the Plan, and Adeptio and Simplexity and the Debtors exchanged fair consideration for the Third Party Releases.

In addition to the foregoing permissive provisions of the Plan, all other permissive provisions of the Plan are consistent with section 1123(b) of the Bankruptcy Code

8.    Compliance with Applicable Provisions of the Bankruptcy Code 11 U.S.C. § 1129(a)(2)). As evidenced by the record before the Court, the prior orders of this Court and the filings submitted by the Debtors, the Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with these chapter 11 cases. The Debtors have timely filed with the Clerk of the Court their schedules of assets and liabilities. Good, sufficient and timely notice of the Confirmation Hearing and all other hearings in these chapter 11 cases has been given to all parties in interest to whom notice was required to have been given. The Plan Proponents have properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order. All duly executed, completed and submitted Ballots were properly solicited

and tabulated in accordance with the voting procedures outlined in the Solicitation Procedures Order. Accordingly, the Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code.

9.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. This Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based upon the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' Estates and expeditiously making the distributions provided for in the Plan. The Plan is the culmination of significant arm's-length negotiations among the Debtors, the Creditors Committee, Adeptio and other parties-in-interest. Furthermore, the releases and exculpations provided for in the Plan have been negotiated and agreed to by the Committee and other parties in interest, and such provisions have been proposed in good faith and are consistent with sections 105 and 1129 of the Bankruptcy Code. Article XI.F of the Plan sets forth a customary exculpation provision which protects the Debtors, the Committee, the Litigation Trustee, Adeptio and Simplexity and any of their respective members, officers, directors, employees, attorneys, advisors or agents with respect to the formulation, solicitation and administration of the Plan, and such provision is consistent with sections 105(a), 1103, 1123 and 1142 of the Bankruptcy Code.

10.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.    To date, any payment made by the Debtors for services or for costs and expenses in or in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, are subject to the approval of this Court and the interim compensation procedures order entered in these cases. Pursuant to Article V.E.4 of the Plan, all fees and expenses sought by professionals

remain subject to final review for reasonableness by the Court under section 330 of the Bankruptcy Code. Accordingly, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

11.     Identity of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). Article V of the Plan provides that on the Effective Date - (a) the members of the board of directors or managers, as the case may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned, and (b) each of the Debtors shall be merged with and into SN Liquidation without the necessity of any other or further action to be taken by or on behalf of the Debtors. Further, on the Effective Date, immediately after (i) the merger of the other Debtors into SN Liquidation, and (ii) the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be dissolved under applicable state law. Accordingly, section 1129(a)(5) of the Bankruptcy Code is inapplicable to this Plan and accordingly is satisfied.

12.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for or contemplate any rate change that would require approval of any regulatory agency. Accordingly, section 1129(a)(6) is inapplicable to this Plan and accordingly is satisfied.

13.     Best Interest of Creditors Test (11 U.S.C. § 1129 (a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Article XI of the Disclosure Statement and other evidence proffered or adduced at the Confirmation hearing: (i) are persuasive and credible; (ii) have not been controverted by other evidence or challenged; and (iii) establish that each Holder of a Claim or Interest in an Impaired Class either (a) has accepted the Plan or (b) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective of the Plan that is not less than the amount that it would receive if the Debtors were

liquidated pursuant to chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

14.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 (Other Secured Claims) and Class 2 (Priority Non-Tax Claims) are Unimpaired under the Plan and, therefore, are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. As set forth in the Final Voting Declaration, Class 4 (General Unsecured Claims) have voted to accept the Plan within the meaning of section 1126 of the Bankruptcy Code. Class 3 (Secured Lender Claims) did not vote and therefore did not accept the Plan, and the Holders of Claims and Interests in Class 5 (Intercompany Claims) and Class 6 (Equity Interests) together, the "Deemed Rejecting Classes") are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not satisfy section 1129(a)(8) of the Bankruptcy Code. Notwithstanding the lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to the Class 3 (Secured Lender Claims) and the Deemed Rejecting Classes, the Plan is confirmable because, as set forth below, it satisfies section 1129(b) of the Bankruptcy Code, which requires that a plan does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting class.

As set forth in the Final Voting Declaration, the results of the solicitation of the Plan are as follows:

| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
|---|---|---|---|---|
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| Class 3 Secured Lender Claims | 0 0.00% | $0.00 0.00% | 0 0.00% | $0.00 0.00% |
| Class 4 General Unsecured Claims | 2439 96.06% | $2,844,718.08 99.23% | 100 3.94% | $21,973.42 0.77% |

15.     <u>Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims under Article III of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code; the treatment of Priority Non-Tax Claims under Article III of the Plan satisfies the requirements of Section 1129(a)(9)(B) of the Bankruptcy Code, and; the treatment of Priority Tax Claims under Article III of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, the Plan provides for the statutorily mandated treatment of claims entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code in the manner required by, and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

16.     <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. As described in the Final Voting Declaration, Holders of Claims in Class 4 (General Unsecured Claims), which are in an Impaired Class under the Plan, voted to accept the Plan in requisite numbers and amounts without the need to include any acceptance of the Plan by any insider. Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

17.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. Article V and other Plan provisions provide for the means for implementation of the Plan and the orderly liquidation of the Debtors' Estates. The Debtors and the Litigation Trust will implement and consummate the Plan through the means set forth in the Term Sheet and contemplated by sections 1123(a)(5)(B) and (D), 1123(b)(3)(A) and 1123(b)(4) of the Bankruptcy Code. The Plan completes the implementation of the Sale Order and the Term Sheet related to the sale of substantially all of the Debtors' Assets and the pursuit of the Estates' Causes of Action *via* the Litigation Trust.

The Plan provides for the merger of all of the Debtors' Estates into SN Liquidation, the transfer of all Estate Assets to the Litigation Trust, and the dissolution of the Debtors under applicable state law. Because substantially all of the Debtors' operating assets were sold as part of the Sale, the Plan provides for the formation of the Litigation Trust that will administer the remaining Estate Assets and assess the value thereof. The remaining Estate Assets include, but are not limited to, any Causes of Action against the recipients of stock redemption payments and claims, former directors and officers, or otherwise. Those causes of action are central to the success of the Plan and the distribution of any value to Holders of General Unsecured Claims.

All Cash necessary for the Debtors or the Litigation Trustee to make payments pursuant to this Plan shall be obtained from the following sources: (a) the Debtors' or SN Liquidation's Cash on hand, (b) Cash received in liquidation of the Debtors' Excluded Assets, (c) proceeds of the Causes of Action; (d) Adeptio's funding obligations pursuant to the Sale Order and Term Sheet, including the: (i) Professional Funding; (ii) Wind Down Funding; (iii) Investigation Funding; (iv) and Priority Claims Funding, all as defined in the Term Sheet in accordance with the terms of such Term Sheet.

The Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code.

18.    Payment of Fees (11 U.S.C. § 1129(a)(12)). In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that all Trustee Fee Claims will be satisfied on or before the Effective Date, and that the Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-confirmation reports as may be required.

19.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtors will
cease to exist after the Effective Date and have never had a pension plan or other obligation
under this section.  Therefore, the Plan meets the requirements of section 1129(a)(13).

20.    <u>Transfers of Property Under the Plan (11 U.S.C. § 1129(a)(16))</u>.[5]  All transfers
under the Plan comply with any such applicable nonbankruptcy law.  The Plan therefore satisfies
the requirements of Bankruptcy Code § 1129(a)(16).

21.    <u>Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. §
1129(b))</u>.  As described above, the Plan satisfies all of the applicable requirements of section
1129(a) of the Bankruptcy Code other than section 1129(a)(8).  Pursuant to section 1129(b)(1) of
the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired
Classes have voted to accept the Plan.  The Holder of the Class 3 (Secured Lender) Claims has
not accepted the Plan by Ballot, and the Deemed Rejecting Classes are deemed to have rejected
the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Class 6 (Equity Interests) is the only class of interests under the Plan.  Thus, Class 6 is
clearly distinct from the classes consisting of Claims, Classes 1-5.  There is no unfair
discrimination with respect to Class 6.  In addition, with respect to Class 3 (Secured Lender
Claims) and Class 5 (Intercompany Claims), there is no unfair discrimination, because there are
no other similarly-situated Classes of Claims against the Debtors.

In exchange for and in full satisfaction, settlement, release and discharge of Adeptio's
Allowed Secured Lender Claim, Adeptio consents to the treatment of its Secured Claim as
proposed in the Plan and as detailed in the Term Sheet, and does not object to a cram down under
section 1129(b) of the Bankruptcy Code with respect to its claim and Class 3.  Accordingly, the

---

[5] Based on the facts of these chapter 11 cases, sections 1129(a)(14) and (15) of the Bankruptcy Code are not
applicable.

Plan is fair and equitable with respect to Class 3 (Secured Lender Claims) and satisfies the requirements of 1129(b)(2)(A) of the Bankruptcy Code. The Plan is fair and equitable under sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code with respect to Class 5 (Intercompany Claims) and Class 6 (Equity Interests) because no Class junior to Class 5 or Class 6 will receive any distributions under the Plan.

Accordingly, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code.

22.     <u>Identification of Plan Proponent (Fed. R. Bankr. P. 3016(a))</u>.  The Plan satisfies Bankruptcy Rule 3016(a) by identifying the date of the Plan and the proponents of the Plan.

23.     <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

24.     <u>Good· Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Plan Proponents, their respective officers, directors, employees, agents, accountants, business consultants, representatives, attorneys, and advisors, through their participation in the negotiation and preparation of the Plan and the Disclosure Statement and their efforts to confirm the Plan, have solicited acceptances and rejections of the Plan in good faith pursuant to Section 1125(e) of the Bankruptcy Code, and each is hereby entitled to the full protections of 11 U.S.C. § 1125(e).

25.     <u>Conditions to Confirmation</u>.  Each of the conditions to confirmation set forth in Article IX of the Plan have been either satisfied or waived.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS

FOLLOWS:

26.    The Plan, as modified herein, is confirmed in each and every respect pursuant to

section 1129 of the Bankruptcy Code, and all acceptances and rejections previously cast for or

against the Plan are hereby deemed to constitute acceptances or rejections of the Plan and all

parties in interest are authorized and empowered, or enjoined, as the case may be, to act in

accordance with its terms.  The Debtors shall file a conformed plan upon the entry of this Order.

27.    The Plan completes the implementation of the Sale Order and the Term Sheet

related to the sale of substantially all of the Debtors' assets and the pursuit of the Estates' Causes

of Action *via* the Litigation Trust.

The Litigation Trust

28.    The Litigation Trust Agreement is hereby approved.  The Plan Proponents are

authorized and directed to take all actions necessary or appropriate to enter into, implement and

consummate the Litigation Trust Agreement and any other contracts, instruments, releases, or

other agreements or documents created in connection with this Plan.  On the Effective Date, the

Litigation Trust shall be created pursuant to the Litigation Trust Agreement.

29.    The Litigation Trustee is hereby deemed to be bound by the Sale Order, APA,

Term Sheet, the Plan and this Confirmation Order, and all terms, including releases, contained

herein therein.

Implementation of the Plan

30.    In accordance with section 1142 of the Bankruptcy Code, the Plan Proponents, the

Litigation Trust and any other entity or person designated pursuant to the Plan be, and they

hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any

document, and to take any action necessary or appropriate to implement, effectuate and consummate the Plan and the transactions contemplated thereunder, and any transactions contemplated thereby in accordance with their respective terms, whether or not any such document is specifically referred to in the Plan or exhibits thereto, and without further application to or order of this Court.

31.     Pursuant to the Plan, and in accordance with section 1142 of the Bankruptcy Code and section 303 of Delaware General Corporate Law or other similar provisions in the corporate or comparable laws of the Debtors' jurisdictions of incorporation, the Debtors are hereby authorized to take such corporate action as may be necessary and appropriate to implement and effectuate consummation of the Plan and each of the agreements and instruments referred to therein or contemplated thereby, in this Confirmation Order, or under the Plan and all such actions are approved.  The Debtors are not required to file certificates of cancellation with the Delaware Secretary of State.  Moreover, all trading of the Debtor's stock shall cease as of the Effective Date.  On the Record Date, the stock transfer ledgers of INP Liquidation Corp. ("INP") shall be closed, and there shall be no further changes made or processed in the holders of record of INP's common stock.  INP's stock transfer agent or agents shall not accept or process any request or instruction for transfers of the INP stock after the Record Date set forth in the Solicitation Procedures Order.  The Trustee and the Debtors shall not be required to recognize any transfer of INP's stock after the Record Date, but shall instead be entitled to recognize and deal for all purposes with only those holders of record stated on the applicable transfer ledgers as of the Record Date.

32.     Pursuant to Section 303 of the Delaware General Corporation Law (8 Del. C. § 303), on the Effective Date, (a) the members of the board of directors or managers, as the case

may be, of each of the Debtors including SN Liquidation shall be deemed to have resigned; (b) each of the Debtors shall be merged with and into SN Liquidation without the necessity of any other or further action to be taken by or on behalf of the Debtors.

33.     On the Effective Date, immediately after (i) the merger of the other Debtors into SN Liquidation and (ii) the transfer of all Estate Assets to the Litigation Trust, the Debtors will cease to exist and shall be dissolved under applicable state law, and the Debtors shall be entitled to use this Confirmation Order as evidence of the authority to terminate the Debtors' corporate existence and to make all necessary filings associated therewith.

34.     In accordance with section 1141 of the Bankruptcy Code, the Plan and its provisions hereby are binding upon and inure to the benefit of the Debtor and its successors, including the Litigation Trust, any Person or entity acquiring or receiving property under the Plan, and any Holder of a Claim against or Interest in the Debtors, whether the Claim or Interest of such Holder is Impaired under the Plan and whether or not such holder has filed, or is deemed to have filed, a proof of Claim or Interest, or has accepted or rejected the Plan.

35.     Except as otherwise specifically provided under the Plan, in accordance with section 1141 of the Bankruptcy Code, any property transferred or otherwise dealt with by the Plan hereby is free and clear of all Claims and Interests.

Treatment of Executory Contracts

36.     Each of the Debtors' Insurance Policies, unless previously canceled or transferred to Adeptio, are treated as Executory Contracts, and the Plan shall constitute a motion to assume the Insurance Policies and to assign all of the Estates' rights under such Insurance Policies to the Litigation Trust.  Subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of the assumption of the Insurance Policies pursuant to sections

365(a) and 1123(b)(2) of the Bankruptcy Code and a finding that such assumption is in the best interest of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases. For the avoidance of doubt, the Term Sheet and the APA are deemed assumed under this Plan, and are not rejected. To the extent that rights and benefits under any Insurance Policies and agreements apply to Claims against the Debtors, which Claims, if Allowed, will be paid by the Liquidating Trust, such policies and agreements shall be assigned to the Litigation Trust.

37.     Article VI.B of the Plan is hereby modified to state as follows:

On the Effective Date, all Executory Contracts (except for the Insurance Policies and any Executory Contracts that are Held Contracts pursuant to section 2.5(b) of the Asset Purchase Agreement), including without limitation, all written employment agreements, collective bargaining agreements, severance contracts, employee benefit or retirement or supplemental retirement benefit plans, indemnification agreements to the extent they are executory (whether discrete or set forth in other documents) and agreements and unexpired real or personal property leases of the Debtors, that are not the subject of a motion to assume or reject pending on the Effective Date, are deemed rejected by the Debtors as of the Petition Date. Further, on the Effective Date, all Held Contracts that are not the subject of a notice of assumption and assignment pending on the Effective Date or a motion to reject pending on the Effective Date, shall be deemed rejected by the Debtors and such rejection shall be deemed to be effective as of July 19, 2008.

Each Person who is a party to an Executory Contract which was not previously rejected prior to the Effective Date or which is rejected pursuant to the Plan and this Confirmation Order, shall be entitled to file a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract to which such Person is a party. All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date. All proofs of claim with respect to Claims arising from the rejection of any Executory Contract shall be filed with the Bankruptcy Court on or before the relevant Bar Date and shall be pre-petition general unsecured claims subject to the provisions of the Bankruptcy Code, relevant rules and the Plan.

Settlement Pursuant to Bankruptcy Rule 9019

38.    Pursuant to Bankruptcy Rule 9019, except as otherwise provided herein, confirmation of the Plan shall constitute a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that were or could have been commenced against Debtors prior to the date of entry of this Confirmation Order.

Disallowance of Contribution Claims

39.    Article VII of the Plan is hereby modified as follows:

Except with respect to Claim Nos. 1075 and 1076, on the Effective Date, any Claim for reimbursement, indemnification, contribution or subrogation of an Entity that is liable with any Debtors on or that has secured the Claim of a Creditor not heretofore disallowed by order of the Bankruptcy Court shall be deemed disallowed to the extent (a) such Creditor's Claim against the Debtors is disallowed; (b) such Claim for reimbursement, indemnification, contribution or subrogation is contingent as of the Confirmation Date, including, without limitation, all Claims which are not allowable under Bankruptcy Code section 502(e); or (c) such Entity asserts a right of subrogation to the rights of such Creditor under Bankruptcy Code section 509 except as otherwise specifically provided therein. The amount and validity of Claim Nos. 1075 and 1076 are unaffected by the preceding sentence and shall be determined at a later date, and the Debtors' and Litigation Trusts' rights to object to Claim Nos. 1075 and 1076 on any and all grounds permitted under law and/or equity and to assert setoff are fully preserved.

Terms of Injunctions or Stays

40.    Article XI.M of the Plan is hereby modified as follows:

Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays provided for in these chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), including any stay exceptions provided for under section 362(b) of the Bankruptcy Code or any provisions contained in sections 362(d), (e), (f) and (g) of the Bankruptcy Code, shall remain in full force and effect until the dismissal or closing of the chapter 11 cases. In accordance therewith, and without limiting the foregoing, until the

dismissal or closing of the chapter 11 cases, parties are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date.

<u>Retention of Jurisdiction</u>

41.    Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these chapter 11 cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

a.    Hear and determine all Causes of Action, which Causes of Action are vital to the implementation and success of the Plan and constitute the only source of payment on account of General Unsecured Claims;

b.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of an Claim;

c.    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4); provided, however, that from and after the Effective Date, the Litigation

Trust Expenses may be paid without the necessity of application to or approval by the Bankruptcy Court (although any party in interest may challenge the reasonableness of any such Litigation Trust Expenses);

d.    Hear and determine all matters with respect to the assumption or rejection of any Executory Contract to which any Debtor is a party or with respect to which any Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

e.    Effectuate performance of and payments under the provisions of the Plan;

f.    Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, related to, these chapter 11 cases;

g.    Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or this Confirmation Order;

h.    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

i.      Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, this Confirmation Order;

j.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or this Confirmation Order;

k.      Enter and implement such orders as may be necessary or appropriate if this Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

l.      Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, this Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or this Confirmation Order, including the Litigation Trust Agreement or the Adeptio Loan, which is critical to the implementation of the Plan;

m.      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

n.      Except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

o.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

~~p.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;~~

p.     ~~q.~~ Modify the Plan at the request of the Proponents and as provided by applicable law;

q.     ~~r.~~ Hear and determine such other matters as may be provided in this Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

r.     ~~s.~~ Enter a Final Decree closing these Chapter 11 Cases.

Administrative Claim Bar Dates

42.     Any person asserting an Administrative Claim (other than a Professional Fee Claim) shall file an application therefore with the Bankruptcy Court not later than thirty (30) days after the Effective Date.  Any Person asserting a Professional Fee Claim shall file a fee application with the Bankruptcy Court not later than sixty (60) days after the Effective Date for professional services rendered and out-of-pocket costs incurred through the Effective Date.  Any Administrative Claim or Professional Fee Claim not filed within the deadlines set forth above shall be forever barred, and the Debtors and the Litigation Trust shall be discharged of any obligation on such Claim.

Trustee Fee Claims

43.     All Trustee Fee Claims will be satisfied on or before the Effective Date.  The Litigation Trustee will timely pay post-confirmation quarterly fees and timely file post-

confirmation reports under 28 U.S.C. § 1930 until the entry of an order closing these chapter 11 cases.

Notice Required Post-Confirmation

44.    From and after the Effective Date, any notice to be provided shall be sufficient if provided to (a) those persons who have requested notice pursuant to Fed.R.Bank.P. 2002; and (b) all parties whose rights may be affected by the action which is the subject of the notice, and such notice as is approved as sufficient by Order of this Court.

45.    Pursuant to the Bankruptcy Rule 3020(c), but subject to the Rebate Notice Order and any other applicable orders in these cases, the Debtors shall promptly serve notice of entry of this Order as provided in Bankruptcy Rule 2002(f) to all parties listed on the 2002 list, to be sent by first class mail, postage pre-paid.

IRS Provision

46.    Notwithstanding any provision to the contrary in the Plan or this Order confirming the Plan: (1) the Third Party Releases set forth in Article XI.C.2 of the Plan shall not apply to the Internal Revenue Service of the United States of America; (2) confirmation of the Plan shall not affect the rights of the IRS, if any, to assert setoff and recoupment against the Debtors, the Estates, or the Litigation Trust; and (3) the Debtors and the Creditors' Committee agree that they do not seek any prospective tax relief with respect to any transaction set forth in the Plan or the Litigation Trust Agreement, and the Debtors, the Estates and the Litigation Trust reserve all rights to defend any claims asserted by the IRS.

Caspersen Provision

47.    Notwithstanding any provision to the contrary in the Plan or this Order confirming the Plan: (1) from and after a date which is four months after the date of entry of this

Order (the "4 Month Anniversary"), the automatic stay shall not apply to Lead Plaintiff and/or the Putative Class solely for the limited purpose of seeking discovery from the Debtors or the Litigation Trust in connection with the Consolidated Securities Class Action; provided, however, that nothing herein limits or precludes the Debtors or the Litigation Trust from otherwise asserting any applicable objections, defenses, privileges, or claims relating to any such discovery consistent with the record of the Confirmation Hearing, and (2) prior to the 4 Month Anniversary, Lead Plaintiff and/or the Putative Class shall not seek relief from the automatic stay to prosecute the claims asserted in the Consolidated Securities Class Action against the Debtors.

48.    Nothing in the Plan or this Order shall constitute a determination whether any proceeds from the Insurance Policies constitute property of the Estates or are Estate Assets.

General Provisions

49.    47. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent.

50.    48. Article I.B.46 of the Plan is hereby modified to state as follows, "'Distribution Date' means Effective Date."

51.    49. To the extent that the terms of this Confirmation Order are inconsistent with the terms of the Plan, the terms of this Confirmation Order shall control; in all other respects, the terms of the Plan shall remain in full force and effect.

52.    50. The failure to specifically include any particular provisions of the Plan in this Order will not diminish the effectiveness of such provisions, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by reference.

53.    51. This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective

successors and assigns, including, but no limited to, the Litigation Trust and Litigation Trustee, and all other parties in interest in these chapter 11 cases.

54. 52. On the Effective Date, the Committee will dissolve, and the Committee Members will be released and discharged from all duties and obligations arising from or related to these chapter 11 cases. Except as otherwise provided in the Plan or this Confirmation Order, the Professionals retained by the Committee and the Committee Members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date. The Professionals retained by the Committee or the Debtors may be retained by the Litigation Trustee and compensated in accordance with the Litigation Trust Agreement.

55. 53. Each of the Objections to confirmation of the Plan, which has not been withdrawn, waived, or settled, and all reservations of rights included therein, is overruled. To the extent that pleadings or letters filed by individuals or entities constitute Objections to confirmation of the Plan and have not been withdrawn, waived, or settled, they are overruled.

56. 54. The record of the Confirmation Hearing be, and it hereby is, closed.

Dated:    October 14, 2008
          Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE
