UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .
SN LIQUIDATION, INC., *et al.,*     .    Case No. 07-11666(KG)
                                    .    (Jointly Administered)
                                    .
                                    .    October 14, 2008
                                    .    2:00 p.m.
              Debtors.              .    (Wilmington)
                                    .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

## INDEX

|                              | PROFFER | ADMITTED |
|------------------------------|---------|----------|
| WITNESSES FOR DEBTORS:       |         |          |
| BRAD DANIEL                  | 8       | 11       |
| DARLENE ROBOTTI              | 11      | 28       |

|                                            | ADMITTED |
|--------------------------------------------|----------|
| EXHIBIT FOR THE DEBTORS:                    |          |
| EXHIBIT A - Tabulation Report Prepared by BMC | 11     |

1          THE CLERK: Please rise.

2          THE COURT: Good afternoon, everyone.  Please be

3   seated.  Thank you.  Ms. Augustine, good afternoon.

4          MS. AUGUSTINE: Good afternoon, Your Honor.  Thank

5   you for accommodating our schedule today in attempting to

6   resolve the last plan objection.  Or the last few points.

7   While I present the proffers - -

8          THE COURT: Yes.

9          MS. AUGUSTINE: - - the parties are still going to

10  work outside in the hall, and then perhaps we can all have

11  similar timing and continue, or we might need to ask Your

12  Honor - -

13         THE COURT: Another recess?

14         MS. AUGUSTINE:  - - for a recess.

15         THE COURT: That would be fine.  Yes, Ms. Augustine.

16  Sure.

17         MS. AUGUSTINE: Okay.  For the record, Mary

18  Augustine on Bayard on behalf of the Debtors and Debtors-in-

19  Possession.  The key item on the agenda today is the

20  confirmation of the plan of liquidation proposed by both the

21  Debtors and the Official Committee of Unsecured Creditors - -

22         THE COURT: Yes.

23         MS. AUGUSTINE:  - - in this matter.  If I may

24  proceed with the agenda, because there are some other items.

25  It's my understanding 1 is a continued matter.

1              THE COURT: Yes.

2              MS. AUGUSTINE: Two is, has been signed.

3              THE COURT: Correct.

4              MS. AUGUSTINE: Matter no. 3 I've also been informed

5    that that certification of counsel was, the order submitted

6    under certification of counsel was approved.

7              THE COURT: That's right.

8              MS. AUGUSTINE: Skipping 4 for a moment.  Item no.

9    5, the US Trustee's motion to convert has been withdrawn.

10             THE COURT: Yes.

11             MS. AUGUSTINE: So we're happy to be before the

12   Court on this confirmation hearing.  It's been a, a very long

13   journey, but all of the parties have worked very hard and

14   been very willing to negotiate with such a small funded plan.

15             THE COURT: Yes.

16             MS. AUGUSTINE: We've properly noticed, as I will

17   give in the proffer of Brad Daniel, this hearing and also a

18   lot of the, the plan, the disclosure statement, certain

19   notices provided in the solicitation procedures order, so

20   we're properly before the Court today.  Your Honor, I have a

21   five point presentation, and I'd like to just outline it to

22   you.

23             THE COURT: Yes.

24             MS. AUGUSTINE: And then Your Honor can tell me if

25   there's a specific order you would like to proceed.  The

1    first item would be the judicial notice of the procedural

2    history in the cases.  There are a few items I'd like the

3    Court to recognize under judicial notice.  The second item is

4    the proffer of Dorene Robotti.  She's the Managing Director

5    of Clear Thinking Group.  Clear Thinking Group is the

6    Debtors' Chief Wind Down Officer in these cases.  I also have

7    a proffer of Brad Daniel.  He's the Senior Manager of BMC

8    Group.  BMC Group is the Debtors' claims and balloting agent.

9            THE COURT: Yes.

10           MS. AUGUSTINE: I have a summary of the plan

11   objections and status at this time.  And then that ties in

12   with the last proponent, which is the black line changes to

13   the confirmation order.  And Your Honor, we did file a black

14   lined confirmation order last night.  Because of the holiday,

15   we've also black lined it again, and at any point in the

16   hearing I can approach and hand up that black lined

17   confirmation order.

18           THE COURT: Okay.  I think, based upon your outline

19   Ms. Augustine, I think it makes sense first to sort of

20   document our record with those items you wish to have

21   incorporated, if you will, through judicial notice.

22           MS. AUGUSTINE: Excellent.

23           THE COURT: Then I think the two proffers.  Probably

24   the Daniel proffer first.

25           MS. AUGUSTINE: Okay.

1        THE COURT: We may reach a point where we don't

2   really have to get much into detail on the summary of plan

3   objections, because they may be resolved.  Or at least you

4   can indicate which ones have been resolved, and we'll go on

5   from there.  And so I think we could probably skip over that

6   one and go to the, to the black line.

7        MS. AUGUSTINE: Okay.  Great, Your Honor.  Thank

8   you.  The items for judicial notice are fairly short.  The,

9   we, the Debtors and the Committee as plan proponents ask that

10  this Court take judicial notice that on November 8th the

11  Debtors each filed voluntary petitions for relief under

12  Chapter 7 of the Bankruptcy Code in this court.  On that same

13  date, the Debtors filed a motion for an order pursuant to

14  §§105(a), 363, and 365 of the Code and Rules 2002, 6004, and

15  9014 of the Federal Rules of Bankruptcy Procedure to

16  authorize the sale of substantially all of their assets,

17  approve an asset purchase agreement, approve the assumption

18  and assignment of certain executory contracts and unexpired

19  leases, and granting related relief.  Pursuant to the sale

20  motion that was filed and the asset purchase agreement filed

21  with the sale motion the Debtors sought authority to sell

22  substantially all of their assets and to assume, sell, and

23  assign certain of their unexpired leases, license agreements,

24  and executory contracts free and clear of all liens, claims,

25  encumbrances, and interests upon satisfaction of certain cure

1    amounts required by §365 of the Bankruptcy Code.  On December

2    13th, after conducting a sale hearing, this Court entered an

3    order approving the sale motion and the asset purchase

4    agreement.  Pursuant to the sale order, the Debtors sold

5    substantially all of their business assets to Adeptio INPC

6    Funding, LLC.  The sale closed on December 21st, 2007, and

7    pursuant to the sale order and the asset purchase agreement,

8    Adeptio assigned to Simplexity, LLC, a Delaware limited

9    liability company and subsidiary of Adeptio, it's rights to

10   receive assets from the Debtors under the asset purchase

11   agreement.  Then on January 3rd, 2008, this Court approved a

12   conformed term sheet settling certain litigation pending

13   before this Court and providing for the framework of a plan

14   of liquidation, which is the reason we are before Your Honor

15   today.  The plan was contemplated to be negotiated by and

16   among the Debtors, Adeptio, and the Committee.  On the plan's

17   effective date, and pursuant to this term sheet and subject

18   to the term sheet, Adeptio, in exchange for full

19   satisfaction, settlement, and release, and discharge of their

20   secured lender claim, will receive an allowed deficiency

21   claim in the amount of $20 million, which entitles Adeptio to

22   a pro rata share of the Litigation Trust interests to be

23   distributed to the Class 4 claimants under the plan.  Per

24   this term sheet, in exchange for and in full satisfaction,

25   settlement, and release, and discharge of Adeptio's allowed

1  secured claim, Adeptio consented to its treatment of its

2  secured lender claim.  And that is further discussed in the

3  plan and the term sheet.  So those are, that concludes the

4  items that the proponents would like the Court to take

5  judicial notice of.

6        THE COURT: Thank you.  And I certainly do.  I'm

7  obviously well familiar with all of them, and they are now

8  part of this, this confirmation hearing record.

9        MS. AUGUSTINE: Thank you, Your Honor.  Then if I

10  may proceed to the proffer of Brad Daniel.

11        THE COURT: Yes.

12        MS. AUGUSTINE: Brad Daniel, who is in the courtroom

13  today, if called to testify regarding the plan, solicitation

14  and tabulation of the plan, and the balloting results, would

15  testify as follows.  Mr. Daniel is employed as a Senior

16  Manager by BMC Group, Inc., the noticing, claim and balloting

17  agent for the Debtors and Debtors-in-Possession.  Pursuant to

18  the order authorizing and approving the appointment of BMC

19  Group as noticing, claims, and balloting agent for the

20  Bankruptcy Court entered on November 9th, 2007, BMC was

21  retained for, among other purposes, the noticing,

22  solicitation, and tabulation of votes with respect to

23  confirmation of the plan.  Mr. Daniel, through BMC, acted as

24  the Debtors' balloting agent for the plan that's before the

25  Court today.  BMC followed the disclosure statement, the

1    plan, and solicitation procedures order for the solicitation

2    and tabulation of votes to accept or reject the plan.

3    Pursuant to the disclosure statement and the plan, Classes 1,

4    2, 5, and 6 were identified as non-voting classes, and the

5    holders of claims and interests in such classes were not

6    entitled to vote to accept or reject the plan.  Accordingly,

7    as voting agent, BMC was not required and did not solicit

8    votes from the holders of claims in interests in those non-

9    voting classes.  On or before August 21st, pursuant to the

10   procedures order, and in accordance therewith, votes were

11   solicited from the holders of claims in the following

12   impaired classes.  Class 3, secured lender claims, and Class

13   4, general unsecured claims.  Pursuant to the procedures

14   order, all ballots accepting or rejecting the plan must have

15   properly been completed, executed, and timely returned to BMC

16   by 4 p.m. prevailing central time on September 16th, 2008,

17   which was the voting deadline, in order for those ballots to

18   be counted.  Upon receipt of timely returned ballots, BMC

19   adhered to the following procedures.  Personnel employed by

20   BMC opened all envelopes and removed all ballots.  All

21   ballots were stamped with the date received.  Ballots cast

22   either to accept or reject the plan were counted in

23   accordance with the tabulation rules established by the

24   solicitation procedures order.  And the results of the

25   tabulation of the properly completed and executed timely

1    returned ballots in Classes 3 and 4 are as follows.  Class 3

2    did not vote regarding the plan.  Class 3 was the secured

3    lender claims.  Class 4, which were the general unsecured

4    claims, 2,439 in number voted to accept the plan and

5    $2,844,718.08 in amount voted to accept the plan.  That is

6    96.06% in number and 99.23% in amount.  One hundred ballots

7    voted to reject the plan, and $21,973.42 voted to reject the

8    plan in amount.  That is 3.9%, .94% in votes counted to

9    reject and .77% in amount.  BMC prepared a complete

10   tabulation report to show, in summary form and in detail, the

11   results of all ballots received by BMC through the voting

12   deadline, which was September 16th.  The tabulation report was

13   filed with the court on October 3rd, 2008, and is true and

14   correct to the best of Mr. Daniel's knowledge and belief.

15   The tabulation report also identifies the ballots that were

16   received by BMC but not counted, including the reasons why,

17   consistent with the procedures order, each such ballot was

18   excluded from the tabulation of the votes.  All ballots

19   received by BMC are currently stored at BMC's Minneapolis

20   office located at 18750 Lake Drive East, Chanhassen,

21   Minnesota, 55317, and are available for inspection by the

22   Court or any other party in interest upon request.

23   Therefore, I'd like to move into evidence as Exhibit A the

24   tabulation report prepared by BMC.  And if Your Honor, if I

25   may approach with a copy?

1          THE COURT: You certainly may.  Thank you, Ms.

2    Augustine.  Thank you.  Is there any objection to the Court

3    receiving this Exhibit A into evidence?  Hearing none, it is

4    so admitted.

5          MS. AUGUSTINE: Thank you, Your Honor.  In addition,

6    in his capacity with BMC, Mr. Daniel would testify further,

7    as indicated here, the Debtors' claims agent reviewed all the

8    total allowed priority claims in these cases and calculated,

9    as of this hearing, the total amount of allowed priority

10   claims at $325,752.61.  This calculation is provided that the

11   proposed settlement with the Ohio Department of Taxation as

12   finalized and confirmed with, by Ohio.  Nonetheless, Ohio has

13   stipulated to a cap for confirmation purposes while it seeks

14   to confirm settlement.  The stipulation between the Debtors

15   and Ohio provides that Ohio's priority claims will not exceed

16   $100 thousand, therefore the maximum possible total of

17   allowed priority claims will not exceed $425,752.61.  Your

18   Honor, that concludes the proffer of Mr. Daniel.

19         THE COURT: Thank you.  Does anyone wish to cross

20   examine Mr. Daniel?  And hearing no one, the proffer is

21   accepted by the Court.  Thank you, Mr. Daniel, for your

22   service.

23         MR. DANIEL: You're welcome.

24         MS. AUGUSTINE: Your Honor, the next proffer would

25   be of Ms. Dorene Robotti.  The proponents again would proffer

1   this testimony in support of the plan.  And if Ms Robotti

2   were called to testify, she would testify as follows.  Ms.

3   Robotti is a Managing Director at Clear Thinking Group, LLC.

4   Clear Thinking Group was appointed by order of the Court as

5   Chief Wind Down Officer for SN Liquidation, Inc., and it's

6   affiliated Debtors and Debtors-in-Possession.  As such, she

7   is familiar with the Debtors wind down operations,

8   businesses, and financial affairs.  Clear Thinking Group was

9   retained on March 29th, 2008 *nunc pro tunc* to February 21st,

10  2008.  Ms. Robotti has over 25 years of commercial experience

11  and has worked in restructuring for Clear Thinking Group for

12  four years.  Prior to working for Clear Thinking Group, Ms.

13  Robotti worked for public and private entities in either a

14  corporate executive or general counsel capacity.  Ms. Robotti

15  has been involved in this plan and solicitation and

16  confirmation process.  Since Clear Thinking Group's

17  retention, Ms. Robotti has been personally involved on a

18  daily basis in the Debtors' Chapter 11 bankruptcy

19  proceedings, and has personal knowledge regarding the plan

20  terms and provisions and the negotiations.  Ms. Robotti is

21  also informed by employees of Simplexity and her counsel of

22  the Chapter 11 proceedings prior to Clear Thinking Group's

23  retention and the events leading to the Debtors' filings

24  under Chapter 11.  With respect to the background of these

25  Chapter 11 cases, Ms. Robotti would testify as follows.  On

1    August 12th, 2008, the Court entered the solicitation

2    procedures order approving the disclosure statement, both the

3    general disclosure statement and the Class 4 Unsecured

4    Creditor disclosure statement, and the proposed solicitation

5    procedures.  Thereafter, the Debtors caused BMC to solicit

6    acceptances of the plan.  The solicitation procedures order,

7    among other things, established September 16th, 2008 at 4 p.m.

8    prevailing central time as the deadline for voting on the

9    plan, scheduled today's hearing, on October 14th, 2008 at 2

10   p.m. prevailing eastern time to consider confirmation of the

11   plan and objections thereto, and established September 16th,

12   2008 at 4 p.m. prevailing eastern time as the deadline to

13   object to confirmation of the plan.  Ms. Robotti would

14   testify as follows regarding the following summary of plan

15   terms.  On August 11th, 2008 the Debtors and the Committee

16   filed a plan.  The plan is the result of ongoing negotiations

17   with a number of creditors and creditor representatives.  The

18   plan provides for the orderly liquidation of the Debtors'

19   estates.  Because substantially all of the Debtors' operating

20   assets were sold as part of the sale, the plan provides for

21   the formation of a Litigation Trust that will administer the

22   remaining estate assets and assess the value thereof.  These

23   remaining estate assets include, but are not limited to,

24   causes of action against the recipients of stock redemption

25   payments and claims, former directors and officers, and, or

1   otherwise.  Those causes of action are central to the success

2   of the plan, and the distribution of any value to holders of

3   general unsecured claims.  There are eight distinct legal

4   entities that are being liquidated pursuant to the plan.  The

5   plan, however, provides for the merger of all of the Debtors'

6   estates into SN Liquidation.  To the extent that all the

7   estates are merged on the effective date, all inter-company

8   claims by, between, and among the Debtors shall be

9   eliminated.  All assets and liabilities of the affiliated

10  Debtors shall be merged or treated as if they were merged

11  with the assets and liabilities of SN.  And any allegation of

12  a Debtor and all guarantees thereof by one or more of the

13  Debtors shall be deemed to be one obligation of SN

14  Liquidation.  Any subsidiary interest shall be cancelled.

15  And each claim filed, or to be filed, against any Debtor

16  shall be deemed as filed only against SN Liquidation, and

17  shall be deemed as a single claim, and single obligation, of

18  SN Liquidation.  In addition, and to the extent the estates

19  are merged on the effective date in accordance with the terms

20  of the plan and the consolidation of the assets and

21  liabilities of the Debtors, all claims based on guarantees of

22  collection, payment, or performance made by the Debtors as to

23  the obligations of another Debtor shall be released and have

24  no further force and effect.  The existing common and voting

25  stock of the Debtors shall be cancelled under the plan, and

1   no distributions are provided for holders of such stock

2   interests or claims based on the arising, based upon or

3   arising from the ownership interest of stock.  Ms. Robotti

4   would testify as follows regarding unclassified claims,

5   classes of claims, and their respective treatment under the

6   plan.  With respect to unclassified claims such as

7   administrative claims, except as otherwise provided in the

8   plan and subject to the requirements of the plan, the APA,

9   the final sale order, and term sheet, on or as soon as

10  reasonably practicable after the later of the repayment in

11  full and termination of the Adeptio loan, the distribution

12  date, or the date such administrative claim becomes an

13  allowed administrative claim, a holder of an allowed

14  administrative claim shall receive in full satisfaction,

15  settlement, release, and discharge of and exchange for the

16  claim, cash equal to the unpaid portion of the face amount of

17  the claim, or such other treatment as to which such holder of

18  the claim and the Debtors have agreed upon.  All unpaid

19  allowed administrative claims shall be paid interest from the

20  effective date to the date of distribution the published

21  LIBOR rate of interest plus 4%.  Ms. Robotti will testify

22  that currently the estates do not have sufficient cash to

23  make a distribution to holders of allowed administrative

24  claims.  Payment of allowed administrative claims will be

25  funded by the proceeds, if any, of any litigation or causes

1   of action commenced by the Committee or the Litigation Trust.

2   Subject to repayment and termination of the Adeptio loan,

3   proceeds of the causes of action, if any, once recovered by

4   the Litigation Trust will be used to pay allowed

5   administrative claims as provided above.  If there is

6   insufficient proceeds to pay the holders of allowed

7   administrative claims, those holders will receive a pro rata

8   distribution to the extent proceeds are available.  And to

9   the extent that further proceeds are received, until they are

10  fully paid.  Before - - there shall be no distributions to

11  holders of general unsecured claims on account of their

12  claims until the administrative expense claimants are paid in

13  full.  The known holders of administrative expense claims

14  consent to their treatment under the plan.  To the extent an

15  unknown holder of an unpaid administrative expense claim

16  exists, such holder is deemed to consent to the treatment

17  proposed under the plan, because no objections were filed to

18  the plan by administrative creditors.  With respect to

19  unclassified priority tax claims, again, on or as soon as

20  reasonably practicable after the latest of the distribution

21  date, the date such claim becomes an allowed priority tax

22  claim, or the date such allowed priority tax claim becomes

23  payable pursuant to any agreement, each such holder shall

24  receive on account of their allowed claim in full

25  satisfaction, settlement, release, and discharge of and

1  exchange for the claim cash equal to the unpaid portion of

2  the allowed priority tax claim, or such other agreement as is

3  agreed to in writing.  Adeptio shall make available up to

4  $500 thousand solely for the purpose of making distributions

5  on account of allowed priority claims, provided that they

6  shall make payments on account of allowed priority claims

7  only to the extent that such claims are allowed, and only as

8  requested by the Debtors on or before the effective date, or

9  by the Litigation Trustee if their request is made after the

10 effective date.  Pursuant to the report prepared by the

11 Debtors' claims agent, BMC, allowed priority tax claims

12 including scheduled claims do not exceed the $500 thousand in

13 funding.  With respect to Trustee fee claims, which are again

14 unclassified claims, Ms. Robotti would testify that all such

15 claims will be satisfied on or before the effective date.

16 The proponents anticipate that approximately $174 thousand in

17 priority claims funding will remain and be available to pay

18 Trustee fee claims, and the trust, and such fees that will

19 accrue post-petition.  Even if the Ohio Department of

20 Taxation's claim, priority claim is allowed in the amount of

21 $100 thousand, approximately $74 thousand will remain to pay

22 Trustee fee claims.  With respect to classified claims, Ms.

23 Robotti would testify with respect to Class 1 secured claims

24 that on or as soon as reasonably practical, practicable after

25 the later of repayment in full and termination of the Adeptio

1    loan, the distribution date, the date such claim becomes an

2    allowed other secured claim, or the date such other secured

3    claim becomes payable pursuant to agreement, a holder of a

4    secured claim other than a secured lender claim shall receive

5    cash equal to the amount of the allowed secured claim, the

6    collateral which secures the claim, or such treatment as to

7    which the parties agree.  With respect to Class 2, non-tax

8    priority claims, on or as soon as reasonably practicable

9    after the effective date, or I'm sorry after the latest of

10   the distribution date, the date such claim becomes an allowed

11   priority non-tax claim, or the date such non-tax claim

12   becomes payable pursuant to any agreement between the Debtors

13   or Litigation Trustee and the holder of such claim, each

14   holder shall receive in full satisfaction, settlement,

15   release, and discharge, in exchange for the allowed claim,

16   cash equal to the unpaid portion of the allowed priority non-

17   tax claim, or such other agreement as to which the Litigation

18   Trustee and holder have agreed in writing.

19          THE COURT: Yes.

20          MS. AUGUSTINE: We're almost through this part.  I

21   apologize, Your Honor.

22          THE COURT: I understand.  It's necessary.

23          MS. AUGUSTINE: With respect to Class 3 secured

24   lender claims, Ms. Robotti would testify that on the

25   effective date pursuant to the term sheet, and subject to the

1   terms of the term sheet in exchange for and in full

2   satisfaction, settlement, release, and discharge of the

3   secured lenders' allowed secured lender claim, the secured

4   lender shall receive an allowed deficiency claim in the

5   amount of $20 million.  Which entitles the secured lender to

6   a pro rata share of the interest in the Litigation Trust to

7   be distributed to the holders of allowed general unsecured

8   claims in Class 4.  We have three more classes.  With respect

9   to Class 4, general unsecured claims, Ms. Robotti would

10   testify that each holder of an allowed general unsecured

11   claim shall receive it's pro rata share of the Litigation

12   Trusts' interests, which shall entitle the holder of a

13   Litigation Trust interest to its pro rata share of any

14   distributions up to the amount of their allowed claim made by

15   the Litigation Trust after satisfaction in full and

16   termination of the Adeptio loan, all Litigation Trust

17   expenses, unpaid allowed administrative claims, allowed

18   priority tax claims, and allowed priority non-tax claims.

19   Distributions on Litigation Trust interests shall be made in

20   accordance with and pursuant to the Litigation Trust

21   agreement, and shall be made by the Litigation Trust at such

22   times in such amounts as the Litigation Trustee, after

23   consultation with the Litigation Trust Committee, shall

24   determine.  With respect to Class 5, inter-company claims,

25   Ms. Robotti would testify that on the confirmation date, or

1    such other date as may be set by order of this Court, but

2    subject to the occurrence of the effective date, all inter-

3    company claims shall be deemed expunged and extinguished.

4    The holders of inter-company claims shall not be entitled to

5    and shall not receive or retain any property or interest in

6    property on account, on account of such claims.  Class 5 is

7    deemed to have rejected the plan, and therefore those holders

8    are not entitled to vote on the plan.  Finally, with respect

9    to Class 6, equity interests, on the effective date, all

10   equity interests shall be cancelled and each holder thereof

11   shall not be entitled to and shall not receive or retain any

12   property or interest in property on account of such equity

13   interests.  Class 6 is deemed to have rejected the plan, and

14   therefore they were not entitled to vote.  With respect to

15   the factors under §1129(a), Ms. Robotti would further testify

16   as follows regarding the plan.  Article 2 of the plan

17   provides for separate classifications of five classes of

18   claims and one class of interests.  Each class of claims or

19   interests contain only claims or interests that are

20   substantially similar to the other claims or interests within

21   such class.  Further, valid business, factual, and legal

22   reasons exist for separately classifying the various classes

23   of claims and interests under the plan.  Additionally,

24   similar claims have not been placed into different classes in

25   order to effect the voting on the plan.  Pursuant to Article

1   2 of the plan, Classes 1 or 2 are designated as unimpaired,

2   and claims and interests in Classes 3 through 6 are

3   designated as impaired.  Article 6 of the plan provides for

4   treatment of the, each of the Debtors' insurance policies,

5   and any agreements, documents, or instruments related

6   thereto, unless previously cancelled or transferred by

7   Adeptio, as executory contracts.  The assumption of the

8   insurance policies and the assignment of all of the estates

9   rights under such insurance policies are to the Litigation

10  Trust.  The rejection of all executory contracts, except for

11  certain insurance policies, on the effective date *nunc pro*

12  *tunc* to the petition date, and the rejection of all held

13  contracts that are not subject to notice of assumption and

14  assignment pending on the effective date, or a motion to

15  reject pending on the effective date.  Any of those executory

16  contracts are rejected *nunc pro tunc* to July 19th, 2008.  Ms.

17  Robotti would also testify that the decisions regarding the

18  assumption and rejection of executory contracts and unexpired

19  leases were made in accordance with good faith negotiations,

20  good faith, arm's length negotiations that resulted in, that

21  are embodied in the plan and are based on the sound business

22  judgment of the Debtors.  They are necessary, the rejection

23  is necessary to the implementation of the plan, and are in

24  the best interest of the Debtors, the Debtors' estates,

25  holders of claims, and any other parties in interest.  The

1    rejection of executory contracts benefits the estates by

2    relieving the burden and cost of carrying contracts on the

3    Debtor who is no longer operation.  With respect to releases,

4    exculpations, and limitations of liability, Ms. Robotti would

5    testify that they are supported by reasonable consideration

6    and are integral to the terms, conditions, and settlements

7    contained in the plan and term sheet.  Further, in light of

8    the extensive negotiations involved with formulation of the

9    plan, each such release, exculpation, and limitation of

10   liability is fair, equitable, and reasonable to all parties

11   in interest as an integral element of the liquidation and

12   resolution of the Debtors' cases, and are in the best

13   interests of the Debtors and their estates.  And finally,

14   these releases are fair consideration provided by the

15   proponents, Adeptio, and Simplexity.  Third party releases do

16   not apply to any holder of a secured lender claim or a

17   general unsecured claim if such holder selected to opt out of

18   such release by a written election set forth on the holder's

19   ballot, and these third party releases do not apply to the

20   SEC or the IRS.  The third party releases are designed to be

21   voluntary and consensual.  Without the releases injunction

22   and exculpation and limitation of liability provided for in

23   the plan, the plan would not be adequately funded, and there

24   would be little likelihood of a successful plan of

25   liquidation.  The plan provides for the best possible

1    opportunity for recovery of, to the affected parties.  The

2    plan received overwhelming support from Class 4 creditors who

3    voted to accept the plan, which is evidence of the consensual

4    nature of the plan, and the Debtors' good faith.  The plan

5    has been filed in good faith, and the releases and

6    exculpations were heavily negotiated and agreed to by the

7    Committee and other parties in interest.  Ms. Robotti would

8    testify that all professional fees and expenses in these

9    cases are subject to approval of this Court and the interim

10   compensation procedures order entered in these cases.

11   Pursuant to Article 5(e)(4) of the plan, all fees and

12   expenses sought by the professionals remain subject to final

13   review for reasonableness by the Court.  Ms. Robotti would

14   also testify that Article 5 of the plan provides that on the

15   effective date, A, the members of the Board of Directors or

16   Managers, as the case may be of each of the Debtors,

17   including SN Liquidation, shall be deemed to have resigned.

18   B, each of the Debtors shall be merged with and into SN

19   Liquidation without the necessity of any other or further

20   action to be taken on behalf of the Debtors.  Further, on the

21   effective date, immediately after the merger of the other

22   Debtors into SN Liquidation and the transfer of all the

23   estate assets to the Trust, the Debtors will cease to exist

24   and shall be dissolved under applicable state law.  Mr.

25   Morton Brandsburg (phonetic) will be the Trustee of the

1    Litigation Trust, and the Litigation Trust Oversight

2    Committee will monitor the Trust.  Ms. Robotti would testify

3    that the plan does not provide for or contemplate any change,

4    rate change that would require approval of any regulatory

5    agency.  She would testify that liquidation under Chapter 7

6    or dismissal of these cases would result in smaller or no

7    distributions to creditors.  She would testify that this is

8    because of additional administrative expenses involved in the

9    appointment of a Trustee, attorneys, and other professionals

10   during liquidation.  If a plan is confirmed, Class 3 and 4

11   creditors may receive a distribution based on the prosecution

12   of litigation by the Trust.  If these cases are liquidated

13   under Chapter 7, Ms. Robotti would testify that Adeptio may

14   not be obligated to provide investigation funding and

15   priority claims funding.  This would most likely result in

16   little or no recovery for holders of general unsecured

17   claims, less or possibly no recovery for holders of allowed

18   administrative expense claims, and little to no recovery for

19   holders of allowed priority claims.  The holders of inter-

20   company claims and equity interests, which are receiving no

21   distribution under the plan, would likewise receive no

22   distribution if the Debtors were liquidated under Chapter 7.

23   With respect to each impaired class of claims or interests,

24   each holder of an allowed claim or interest in such class has

25   either accepted the plan or will receive or retain under the

1    plan on account of such claim or interest, property of a

2    value as of the effective date that is not less than the

3    amount such holder would receive or retain if the Debtors

4    were liquidated on the effective date pursuant to Chapter 7.

5    Based on the foregoing, confirmation of the plan will provide

6    each dissenting creditor and interest holder with a

7    distribution that is not less than such creditor or holder

8    would receive or retain if the Debtors were liquidated on the

9    effective date.  Mr. Robotti would testify that holders of

10   Class 4 general unsecured claims voted to accept the plan.

11   Based on her review of the plan and the final voting

12   declaration, Ms. Robotti would testify that holders of Class

13   3 secured lender claims did not vote regarding the plan.  Ms.

14   Robotti would testify that to the extent holders of allowed,

15   or, I'm sorry, holders of administrative expense claims will

16   not be paid in full on the effective date, such claimants

17   have consented to their treatment.  She would testify that

18   she is not aware of any holders of claims who object to

19   Article 3(a)(1) of the plan.  The plan is a liquidating plan

20   and provides for the orderly liquidation of the Debtors'

21   estates, and Ms. Robotti would testify that the liquidation

22   proposed is feasible.  Ms. Robotti would testify that because

23   substantially of the Debtors' operating assets were sold as

24   part of the sale, the plan provides for the formation of the

25   Trust who will administer the assets.  And the remaining

1   assets include any causes of action against the recipients of

2   stock reduction payments and claims, causes of action against

3   former directors and officers, or other causes of action

4   which are central to the plan's success and distribution.

5   She would testify that all cash necessary to make payments

6   pursuant to this plan would be obtained from the following

7   sources.  The Debtors' or SN Liquidation's cash on hand, cash

8   received in the liquidation of the Debtors' excluded assets

9   which were not sold under the APA, proceeds of any causes of

10  action, Adeptio's funding obligations pursuant to the sale

11  order and term sheet, which include professional funding, the

12  wind down fund, the investigation fund, and the priority

13  claims fund, all as defined in the term sheet in accordance

14  with the terms of the term sheet.  Ms. Robotti would testify

15  that through communications between counsel she has confirmed

16  that the Trustee of the Litigation Trust will timely file

17  post-confirmation reports as may be required.  She would also

18  testify that the Debtors will cease to exist after the

19  effective date, and have never had a pension plan.  Ms.

20  Robotti would testify that all transfers of property made

21  pursuant to the plan will be made in accordance with

22  applicable provisions of non-bankruptcy law that govern the

23  transfer of property by a corporation or trust that is not a

24  moneyed business or commercial corporation or trust.  With

25  respect to the cram-down of the plan, Ms. Robotti would

1   testify as follows.  Ms. Robotti would testify that the plan

2   should be confirmed notwithstanding the fact that, that Class

3   3 did not accept the plan by ballot, and Classes 5 and 6 are

4   conclusively deemed to have rejected the plan.  She would

5   testify that the plan does not discriminate unfairly, and is

6   fair and equitable with respect to the holders of Class 3

7   secured lender claims, Class 5 inter-company claims, and

8   Class 6 equity interests respectively.  Ms. Robotti would

9   testify that there are no other classes with similar legal

10  rights to Classes 3, 5, and 6.  She would testify that no

11  holders of claims or interests subordinate to the holders of

12  claims and interests in Classes 5 and 6 will receive

13  distribution or retain any property under the plan.  Further,

14  in exchange for and in full satisfaction, settlement,

15  release, and discharge of Adeptio's allowed secured lender

16  claim, Adeptio consents to its treatment of its secured claim

17  as proposed in the plan and as detailed in the term sheet,

18  and does not object to a cram-down.  Adeptio is the only

19  holder of a Class 3 secured lender claim.  Although Adeptio

20  did not vote on the plan, it consented to its treatment of

21  its secured lender claim, and the Debtors - - let's see.

22  Excuse me for a second, Your Honor.  And Adeptio consented to

23  its treatment of its claim under the plan and the term sheet,

24  and that this shows that Adeptio's consent to a cram-down

25  with respect to its claim.  In addition, Adeptio does not

1   object.  Finally, Ms. Robotti would testify that the

2   principle purpose of the plan proposed today is not for the

3   avoidance of taxes.  Or the avoidance of the application of

4   §5 of the Securities Act of 1933.  Finally, that concludes

5   Ms. Robotti's proffer.  I appreciate everyone's patience.

6            THE COURT: Ms. Robotti couldn't have said it better

7   herself.  Does anyone wish to cross examine Ms. Robotti?  No.

8   Hearing no one, the proffer is admitted.

9            MS. AUGUSTINE: And for the record, Ms. Robotti is

10  in the courtroom today.

11           THE COURT: Yes.  I should have noted that myself.

12  Thank you.

13           MS. AUGUSTINE: Okay.  This is the more exciting

14  part of the presentation, Your Honor.  The objections to the

15  plan and the black line changes of the confirmation order.

16  If I may approach with a black line of the confirmation

17  order?

18           THE COURT: Yes, Ms. Augustine, thank you.  Thank

19  you.  You may need a drink of water after all of that.

20           MR. GLASSMAN: And she has leave of the Court to

21  take one?

22           THE COURT: Yes.  Always.

23           MS. AUGUSTINE: Your Honor, there, there are a few

24  objections that have been resolved.  And the black line will

25  not be the final black line that you have, because some of

1   those changes have occurred today in the courtroom.

2           THE COURT: Okay.

3           MS. AUGUSTINE: But if I may just go through a

4   summary of each objection.

5           THE COURT: Yes.

6           MS. AUGUSTINE: And then I can show you how things

7   have been resolved thus far in this black line.  And then

8   after that point, we can present the one remaining objection.

9           THE COURT: Very well, that's fine.

10          MS. AUGUSTINE: Okay.  Vincent Rhynes, the

11  Commonwealth of Pennsylvania, Department of Revenue, the

12  United States on behalf of the IRS, Andrew Zeinfeld and

13  Kenneth Schwartz, and what we're calling the Rodney Caspersen

14  purportedly on behalf of the lead plaintiff's - - that's a

15  mouthful - - are the objecting parties to the plan.  The

16  Commonwealth Department of Revenue withdrew their objection

17  to the plan, and the Debtors will file a 9019 motion to seek

18  approval of a resolution of the, the claims filed by the

19  Commonwealth of Pennsylvania Department of Revenue.  The

20  United States also has withdrawn their objection.  They have

21  authorized me today to represent on the record that the

22  United States, on behalf of the IRS, withdraws their

23  objection to the plan.  There, there are changes in the form

24  of order that I will highlight that resolve the IRS's

25  objection.

1          THE COURT: Okay.

2          MS. AUGUSTINE: Andrew Zeinfeld and Kenneth Schwartz

3    also objected to the plan for two reasons.  To reject - -

4    because it was unclear to them if we were purporting to

5    reject indemnification agreements, and there was a perceived

6    disallowance of contingent indemnification claims.  Which

7    we've modified plan language.  And I do want to make sure the

8    record is clear.  We're not changing what the plan provisions

9    mean with respect to those claims, we're just modifying

10   language to resolve their objection.  So that's the summary

11   of how we can go through the clean and, or, I'm sorry, the

12   black line of the confirmation order.  There is one pro se

13   objecting party.  Mr. Vincent Rhynes.

14          THE COURT: Yes.

15          MS. AUGUSTINE: And perhaps, Your Honor, we could

16   dispose with that objection first?

17          THE COURT: Very well.  Please.

18          MS. AUGUSTINE: Mr. Rhynes filed a limited objection

19   because he is treated under the plan as an equity interest

20   holder.  He also attached a common stock certificate to his

21   objection.  The plan provides that Class 6 equity interest

22   holders are impaired and are deemed to reject the plan.  Mr.

23   Rhynes objected to not receiving a ballot to vote on the

24   plan.  Since he was an equity interest holder, he was already

25   deemed to reject the plan, and no ballot was required to be

1   sent to him pursuant to the solicitation procedures order.

2   In addition, Mr. Rhynes believed that we - - oh, I'm sorry.

3   Mr. Rhynes did not assert any basis that would allow him,

4   pursuant to the plan or the solicitation procedures order, to

5   vote on the plan.  And his, the other portion of his

6   objection was a request that the Court require the Debtors to

7   publish a list of equity security holders on the docket.

8   That list was actually filed with the Debtors' petitions, and

9   is available for review.  Therefore, because Mr. Rhynes did

10  not appear today, is incorrect with the, regarding the

11  availability of the list of equity security holders, and was

12  not entitled to receive a ballot, we ask that the Rhynes

13  objection be overruled.

14          THE COURT: Anyone wish to be heard in the courtroom

15  or on the telephone?  Clearly this is an objection that is

16  without basis, and I will overrule it as really having no

17  foundation in either the facts, or the law, or the procedures

18  of the hearing.

19          MS. AUGUSTINE: Thank you, Your Honor.  And if Your

20  Honor is ready to turn to the black line?

21          THE COURT: Yes.

22          MS. AUGUSTINE: Your Honor, several of these changes

23  are more grammatical or changes of the like.  However, I'll

24  start with the first change, which is on page 4.  Because of

25  subsequent changes, we've made third party releases a defined

1    term.

2          THE COURT: Okay.

3          MS. AUGUSTINE: And so that is indicated at the top

4    of page 4.  The next change is on page 13.

5          THE COURT: Yes.

6          MS. AUGUSTINE: On page 13 we define the third party

7    releases, and indicate that they shall not apply to the

8    Internal Revenue Service of the United States of America.

9    This change was negotiated in resolution of their objection

10   to the plan.  In addition, the SEC requested that we add

11   language to this portion of the confirmation order that

12   mirrors the language already in the plan regarding their

13   release of any third party, or claims against non-Debtors.

14   That's language indicated on middle of page 13.  Nothing in

15   the plan disclosure statement or this order shall release or

16   discharge any claims held by the US Securities and Exchange

17   Commission against any non-Debtors or enjoin or restrain the

18   SEC from enforcing such claims against any non-Debtors.  So

19   those are the changes there.

20         THE COURT: Yes.

21         MS. AUGUSTINE: You'll notice on the next page,

22   third party releases is again changed because it's now a

23   defined term.  Now some, some of these items, the first copy

24   of the confirmation order was filed with some changes already

25   in here, because we obviously didn't file a confirmation

1   order originally with the plan.

2            THE COURT: Right.

3            MS. AUGUSTINE: So although some things are not in

4   black line, I would like to highlight them for Your Honor.

5            THE COURT: All right.

6            MS. AUGUSTINE: And also clarify that the black line

7   that is before Your Honor is a cumulative black line of all

8   the changes since the original form was filed and today.  Not

9   including what's going to happen as a result of some of the

10  negotiations that happened before the hearing.

11           THE COURT: Okay.

12           MS. AUGUSTINE: If Your Honor could turn to page 25

13  of the confirmation order?

14           THE COURT: I am with you.

15           MS. AUGUSTINE: There was a clarification added to

16  the executory contract language in Article 6(b) of the plan.

17  Although the language that's included in here is lengthy, the

18  only change that was made, it's the middle of the paragraph.

19  It just says, indemnification agreements, to the extent they

20  are executory, and then continues.  The to the extent they

21  are executory language was added to clarify under the

22  Zeinfeld and Schwartz objection - -

23           THE COURT: Exactly.

24           MS. AUGUSTINE: - - the treatment of indemnification

25  agreements.  The next page, page 26 at the bottom, paragraph

1   39, indicates that Article 7 of the plan is modified

2   essentially to carve out two claims, Claim No. 1075 and 1076.

3   Those are the claims of Misters Zeinfeld and Schwartz.  And

4   they also requested that you can see at the very bottom of

5   page 26 this additional language that they are unaffected by

6   the preceding sentence of the plan.

7           THE COURT: Yes.  Good.

8           MS. AUGUSTINE: The next paragraph, paragraph 40,

9   modifies the plan provision Article 11(m).  It's about eight

10  lines down.  It clarifies that the automatic stay is in full

11  force and effect until the dismissal or closing of these

12  Chapter 11 cases.  And that, Your Honor, I believe the

13  settlements that were discussed before the hearing may

14  change, again, the terms of this.  But I wanted to highlight

15  that we did, at this point, remove until the termination of

16  the Litigation Trust - -

17          THE COURT: Good.

18          MS. AUGUSTINE: - - from that language.  The next

19  change is on page 31.  At the bottom.  Paragraph 46.

20          THE COURT: Yes.

21          MS. AUGUSTINE: This provision was requested by the

22  IRS, and this resolved the remainder of their objections.  It

23  indicates notwithstanding any provision to the contrary in

24  the plan or this order confirming the plan, the third party

25  releases set forth in Article 11(c)(2) of the plan shall not

1    apply to the Internal Revenue Service of the United States of

2    America.  Confirmation of the plan shall not affect the

3    rights of the IRS, if any, to assert setoff and recoupment

4    against the Debtors, the estates, or the Litigation Trust.

5    And three, the Debtors and the Creditors Committee agree that

6    they do not seek any prospective tax relief with respect to

7    any transactions set forth in the plan or the Litigation

8    Trust agreement.  And the Debtors, the estates, and the

9    Litigation Trust reserve all rights to defend any claims

10   asserted by the IRS.  The next change is the same page,

11   paragraph 48.  Well, it continued to page 32.  We modified

12   Article 1(b)(46), which is the definition section of the plan

13   to change the definition of distribution date to mean

14   effective date.  This was also - -

15            THE COURT: Okay.

16            MS. AUGUSTINE: This was also to address the

17   concerns raised by the Internal Revenue Service.

18            THE COURT: Exactly.  Good.

19            MS. AUGUSTINE: And Your Honor, that concludes the

20   black lines made thus far.

21            THE COURT: Okay.

22            MS. AUGUSTINE: To the confirmation order.  Would

23   you like to proceed with hearing the parties objections, the

24   objecting parties, or would you like the Committee and

25   perhaps Mr. Glassman to present regarding the Caspersen

1    objection.

2            THE COURT: Tell me this.  Which objections are

3    resolved at this point?  I know, obviously the Internal

4    Revenue Service, the Commonwealth of Pennsylvania, Zeinfeld

5    and Schwartz.  Is the Caspersen objection - -

6            MS. AUGUSTINE: Mr. Caspersen is left.

7            THE COURT: Okay.

8            MR. GLASSMAN: I believe Ms. Tancredi may - -

9            MS. AUGUSTINE: And Ms. Tancredi - -

10           MR. GLASSMAN: - - might still have a piece of, or

11   something to say to the Court.

12           THE COURT: All right.  Fine.

13           MR. GLASSMAN: Part of - -

14           MS. AUGUSTINE: That's with respect to the Zeinfeld

15   and Schwartz - -

16           THE COURT: Oh, okay.

17           MS. AUGUSTINE:  - - objection.

18           THE COURT: Very well.  Why don't I hear from the

19   Committee, then?  And then we can go on with the objections,

20   if that's acceptable.

21           MS. AUGUSTINE: And the Committee would be speaking

22   with respect to the Caspersen objection.

23           THE COURT: If that's the case, then I take it back.

24   Let me hear from the objectors.

25           MS. AUGUSTINE: Okay.  Thank you, Your Honor.

1          MR. LEWIS: Thank you, Your Honor.

2          THE COURT: Mr. Etkin, good afternoon.

3          MR. ETKIN: Good afternoon, Your Honor.

4          THE COURT: Welcome.  And I was pleased to sign the

5    order for your admission for this case, and it's good to see

6    you.

7          MR. ETKIN: Thank you very much, Your Honor.  I

8    appreciate it.  Sorry for the last minute submission of the

9    *pro hac* papers.

10         THE COURT: Not a problem.

11         MR. ETKIN: And it's always good to be in your

12   courtroom, Your Honor.  I think that rather than go through

13   the objection, and - -

14         THE COURT: I did read it.

15         MR. ETKIN: Well I know that.  I, I assume that.  I

16   think we do have a resolution, Your Honor.  Which is because

17   of the good officers of the Court in delaying the

18   commencement of the confirmation hearing, we at least

19   attempted to use that time wisely.  And it will be probably

20   up to the Court to decide whether we accomplished that task

21   or not.

22         THE COURT: Okay.

23         MR. ETKIN: But I believe that we do have a

24   resolution of, of the issues raised in the objection, and

25   certain additional issues that popped up as a result of our

1    review of the Debtors' response to the objection, which kind

2    of raised the temperature a little bit, but luckily I think

3    that we were, cooler heads prevailed, and we were able to get

4    our way through that as well.  But I think that what we've,

5    what we've done to resolve the objections and those other

6    issues is, will take care of everything.  Some of these will

7    involve, Your Honor, changes, as Ms. Augustine mentioned, to

8    the confirmation order.  And I assume that will be provided

9    to you at some later point.  But we, we will go over those.

10   And some, I think, will merely involve statements for the

11   record and representations for the record regarding some of

12   these issues which we've decided would suffice as opposed to

13   further tinkering with the confirmation order.

14          THE COURT: Okay.

15          MR. ETKIN: And of course the Committee or the

16   Debtor will quickly correct me if I misstate anything.  In

17   the first instance, Your Honor, and I'm going to try to give

18   a little, a very little background as to the why with respect

19   to these, these representations or changes before I get into

20   them.  But if you looked at the Debtors' response, you know,

21   some issues were raised as to the ownership of certain

22   claims, whether they be direct individual claims, or

23   derivative claims, without drawing a distinction between the

24   two.  We've discussed that, and I believe that the Debtor and

25   the Committee are prepared to represent for the record that

1    with respect to individual claims asserted under the Federal

2    Securities Laws, that those are direct claims that belong to

3    the lead plaintiff in the putative class and are not property

4    of the estate pursuant to §541 of the Bankruptcy Code, or

5    estate assets as that term is defined in the plan.  So we

6    agreed that a representation would be made that to the extent

7    the claims asserted in the securities litigation are direct

8    claims pursuant to the Federal Securities Laws, again, they

9    are not property of the estate or estate assets as defined in

10   the plan, and would not, and the assertion of those claims,

11   and the prosecution of those claims would not serve as a

12   basis to assert the automatic stay to preclude the

13   prosecution or assertion of those claims.

14           THE COURT: Absolutely.

15           MR. ETKIN: So that's, and that we agreed would be a

16   representation on the record, which I would ask the Debtor

17   and the Committee to confirm either now or when I'm through,

18   which hopefully won't be long.

19           THE COURT: Why don't we wait, and then we can make

20   the representations at once?

21           MR. ETKIN: That's fine, Your Honor.  We also

22   agreed, and this would be a, this would be reflected in the

23   confirmation order, I believe, Your Honor, that the - - and

24   I'm going to try to get this right the first time, because we

25   tinkered with it a bit.  But the automatic stay, which the

1    plan seeks to extend beyond confirmation and the effective

2    date, would not apply to any request by lead plaintiffs and

3    the putative class for discovery from the Debtors or the

4    Litigation Trust in connection with the securities

5    litigation.  However, we did agree that the, we would hold

6    off for four months from the entry of the confirmation order

7    in connection with that modification, so to speak, of the

8    automatic stay, without precluding the lead plaintiff and the

9    class from seeking stay relief within that four month period,

10   if it became necessary for purposes of the prosecution of the

11   class action.  So the, the inapplicability of the stay would

12   only kick in after the expiration of four months from the

13   entry of the confirmation order.  And that deals directly

14   with one of our, one of the items in our objection.  The next

15   item, which I believe will be reflected in the confirmation

16   order, and is also the subject of our objection, is that lead

17   plaintiff and the class will reserve their right to seek

18   relief from the automatic stay to pursue their claims in the

19   securities litigation against the Debtors.  And then solely

20   to the extent of any available insurance coverage in

21   connection with those claims.

22            THE COURT: Okay.

23            MR. ETKIN: That's not to say that, that such a stay

24   relief motion will be made or won't be made, but the right is

25   preserved.  However, based upon a request from both the

1   Committee and the Debtor, we did agree that we would not seek

2   such stay relief until the expiration of four months from the

3   date of the entry of the confirmation order.  Ostensibly to

4   give the Litigation, or the Liquidation Trustee an

5   opportunity to get his feet wet a bit.

6           THE COURT: Good.

7           MR. ETKIN: So that resolves another element of the,

8   of our objection.  We also agreed, and I believe this will

9   also be included in the confirmation order, that nothing in

10  the plan or the confirmation order shall constitute a

11  determination that any of the proceeds of the directors and

12  officers liability insurance policies are or are not property

13  of the estate under §541, or estate assets as defined in the

14  plan, and that all parties reserve their rights with respect

15  to that issue to the extent that that issue raises its ugly

16  head sometime in the future.  But that issue is preserved,

17  and we just wanted to ensure that, especially after receiving

18  the Debtors' response, that nothing in the plan or the

19  confirmation order makes that determination.  Finally, Your

20  Honor, and this was also part of our, our objection, we

21  wanted the same carve out language that the SEC - -

22          THE COURT: Yes.

23          MR. ETKIN:  - - was provided in the plan.

24  There is agreement with respect to providing that language,

25  except that as to the purchaser, and I forget the name of the

1    two entities, if somebody - -

2              MR. GLASSMAN: Adeptio and affiliates.

3              MR. ETKIN: Adeptio and affiliates.

4              THE COURT: Yes.

5              MR. ETKIN: Or Simplexity, or whatever.  That, that

6    that carve out will apply to them to the, solely to the

7    extent that we properly opted out of the release - -

8              THE COURT: Okay.

9              MR. ETKIN:  - - in connection with the ballot.  So

10   I think that, that they just wanted to dot the i's and cross

11   the t's with respect to that issue.  But it applies across

12   the board to all other non-Debtors with respect to them, only

13   to the extent we opted out as provided in the plan and in the

14   ballot.  There were a couple of other small changes, Your

15   Honor, in the, in the confirmation order that we discussed.

16   Other than, other than what I've already discussed.  One

17   involves adding some language, I gave Mr. Glassman the page,

18   so I'm going to leave it to him to take care of it.  But then

19   with respect to the reservation of the Court's jurisdiction

20   in this case, and I think it is on page 30 of the black line.

21   It's item (p), where it says - -

22             THE COURT: Yes.

23             MR. ETKIN:  - - herein determine all disputes

24   involving the existence, nature, or scope of the Debtors'

25   discharge.

1             THE COURT: Yes.

2             MR. ETKIN: Since this is a liquidating plan, there

3    is no discharge.

4             THE COURT: Correct.

5             MR. ETKIN: So that's being deleted as a provision

6    in the confirmation order.

7             THE COURT: Good.

8             MR. ETKIN: And I think, Your Honor, that basically

9    sums it up.  And with those representations and changes to

10   the confirmation order, we would be prepared to withdraw our

11   objection.

12            THE COURT: All right, Mr. Etkin.  Thank you very

13   much.  That was helpful.  Mr. Kosmowski, good afternoon.

14            MR. KOSMOWSKI: Good afternoon, Your Honor.  Ed

15   Kosmowski on behalf of Adeptio.  I just want to add one small

16   point.  There's also going to be a reservation of rights for

17   Adeptio that we reserve our rights to dispute or challenge

18   any assertion made by the class action claimants that their

19   ballot was properly executed.  Other than that, what counsel

20   said is agreeable.

21            THE COURT: Thank you.

22            MR. KOSMOWSKI: Thank you.

23            THE COURT: Thank you.  Yes, why don't we - - that's

24   a good idea.  Let's take the one objection at a time.  It

25   will just be clearer, I think.  Thank you.

1          MR. GLASSMAN: Good afternoon, Your Honor.  Neil

2    Glassman of Bayard on behalf of the Debtors.  Well, I know

3    you weren't too sure we'd get here, and there were times when

4    I was less than entirely confident.  But we are, and you have

5    to admit, you don't get too many consensual cram-downs.  So.

6          THE COURT: No.  No, you don't.  Especially these

7    days.

8          MR. GLASSMAN: Yeah.  But we are who we are.  Let me

9    respond to a couple of points Mr. Etkin made, and they really

10   just are clarifying.  One is, is that the confirmation that

11   individual claims are not property of the estate is

12   appropriate.  But I just simply wanted to make it clear that

13   individual claims against the Debtors, as long as the

14   automatic stay is there, that prosecution of those could

15   implicate the stay.

16         THE COURT: Yes.

17         MR. GLASSMAN: That's all I'm saying.

18         THE COURT: I'll just acknowledge - -

19         MR. GLASSMAN: He, he meant it, he just didn't quite

20   say it that way.

21         THE COURT: And I understood it that way, and Mr.

22   Etkin is, is nodding his head yes, and so that should be

23   understood, of course.

24         MR. GLASSMAN: And one other nit, and that is, is

25   that the self effectuating abatement of the stay after four

1   months is only with respect to discovery.  Not with respect

2   to actually bringing the claims, and litigating them against

3   the Debtors.  The, the other thing that I need to supplement,

4   I guess, is Mr. Etkin's references to some of the other

5   changes, or one other change that we need to make to the

6   plan.  Article X, oh boy, and I got to get my readers on,

7   just a second.

8           THE COURT: Okay.

9           MR. GLASSMAN: I think it's X(i)(m).  No, X(i).(m).

10  Which relates to the stay.  We would like to add references

11  to the, some of the operative provisions of 362 so that their

12  rights to seek a modification of the stay, the burden of

13  proof, all that stuff is incorporated as well, in, so we

14  don't, so there's no question about that.  And they were Mr.

15  Etkin's suggestion, but I happened to have the piece of paper

16  with the chicken scratchings on it.

17          THE COURT: Okay.

18          MR. GLASSMAN:  So I wanted to put that on the

19  record.  And I think Mr. Lewis, on behalf of the Committee,

20  would like to make some statements.

21          THE COURT: Please.  Thank you Mr. Glassman.  Good

22  afternoon.

23          MR. LEWIS: Good afternoon, Your Honor.  Joshua

24  Lewis of Reed Smith on behalf of the Official Committee of

25  Unsecured Creditors.  I'm here with my colleague Kate

1   Jackson.

2            THE COURT: Good afternoon.

3            MS. JACKSON: Good afternoon, Your Honor.

4            MR. LEWIS: Your Honor, I believe through some hard

5   work and diligence, and the Court's graciousness, we were

6   able to reach an agreement, and I believe that Mr. Etkin did

7   summarize the terms of that agreement sufficiently.  I did

8   just want to make a couple of comments, just general

9   comments, about, you know, where we are in this case.  As

10  Your Honor well knows we're on a, sort of a shoestring budget

11  here.  The only hope of any recovery for creditors is the

12  prosecution of claims.

13           THE COURT: Yes.

14           MR. LEWIS: That are transferred to the Litigation

15  Trust.  It's that prosecution of claims, and the potential

16  backstopping of insurance that's sort of given rise to this

17  dispute today.  The Committee is very intensely focused on

18  making sure that it does not waive any rights or, you know,

19  potential claims that it may have on behalf of the Litigation

20  Trust, as everything gets transferred over to those insurance

21  proceeds.  Mr. Etkin asked that we confirm, that Mr. Glassman

22  and I confirm that individual direct claims are not property

23  of the estate, and certainly that is true.  I did want to,

24  and I believe that Mr. Etkin said this, but just to make sure

25  that I'm earning my salary today, I wanted to make sure that

1    I made it clear for the record that, that all rights and

2    claims to the insurance proceeds, that, will belong to the

3    Litigation Trust upon, upon confirmation, and the right to

4    argue and request a determination from this Court, whether

5    the insurance proceeds are or are not property of the estate,

6    are preserved for a later date.  And that was the only

7    comment I wanted to make.  And perhaps Mr. Etkin needs to

8    respond, or Mr. Glassman.  But those are my only comments.

9              MR. GLASSMAN: Your Honor, there is - -

10              THE COURT: Thank you.

11              MR. GLASSMAN:  - - there is one thing that we

12    talked about, Mr. Etkin and I and Mr. Lewis talked about,

13    which I don't think was put on the record.  And that is

14    simply that, I hate to stand up and make another reservation

15    of rights, because I know Judges just hate that, but one of

16    the things we talked about is to the extent there are

17    objections to the class proof of claim, they are preserved.

18    We're not intending to deal with those by this proceeding.

19    Which I think is a fair comment.

20              THE COURT: Mr. Etkin, has anything caused you

21    concern?

22              MR. ETKIN: No, no heartburn yet, Your Honor.

23              THE COURT: Okay.

24              MR. ETKIN: There, of course any substantive

25    objections to the class proof of claim are preserved.  Just

1   as, as amusing, it would be interesting to hear an objection

2   to a claim that served as the basis for the Trust's claim

3   against the same defendants.  But, you know, I've been

4   surprised before.  But in any event, that's clear.  And I

5   think the purpose of part of the resolution that we've

6   reached today is just to make sure that the issue of whether

7   the insurance proceeds are property of the estate or not is

8   not determined by the plan or the confirmation order.  And to

9   the extent it needs to be determined down the road, we'll

10  cross that bridge when we come to it.

11          THE COURT: Excellent.  I think that was the

12  Committee's point, and it's been now confirmed by everyone.

13          MR. GLASSMAN: Well - -

14          THE COURT: Oh.

15          MR. GLASSMAN:  - - he used the word substantive.  I

16  think all objections are preserved, Your Honor.  Procedural

17  and substantive.

18          THE COURT: I think, I think that's probably

19  correct.

20          MR. GLASSMAN: Thank you, Your Honor.

21          MR. ETKIN: That's fine, Your Honor.

22          THE COURT: We'll cross those when we come to them

23  if we do.  But yes.  All right.  Now, finally.  You've been

24  very patient.  Good afternoon.

25          MS. TANCREDI: Good afternoon.  Lisa Tancredi on

1    behalf of Kenneth Schwartz and Andrew Zeinfeld.  My clients

2    are insureds under at least one of the insurance policies.

3            THE COURT: Yes.

4            MS. TANCREDI: And they're also defendants in

5    various of the actions.  One of them is a defendant in the

6    rebate litigation, and I believe two of them are defendants

7    in the Icon litigation.  They both filed claims against the

8    Debtor for indemnification.  And I'm going to have to go back

9    to these dreaded insurance policies, because that's the basis

10   of our issue.  There's no mechanism, currently, for the other

11   insureds of the policies to get access to the policies.  The

12   policies cover, among other things, loss and loss includes

13   defense costs.  And currently, as I was listening to the

14   different modifications that were being made to the plan or

15   to the order before Your Honor, and I wasn't a part of those

16   settlement discussions, I don't think that my issue is quite

17   covered.

18           THE COURT: Okay.

19           MS. TANCREDI: Because I want my clients to be able

20   to come in, or have some mechanism to gain access to the

21   insurance policies.  And I'd prefer to do that without having

22   to move to amend the plan.

23           THE COURT: Mr. Glassman.  Was that your - -

24           MS. TANCREDI: That - -

25           THE COURT: Does that complete your comments?

1              MS. TANCREDI: That's it.  Yeah.

2              THE COURT: Okay.

3              MS. TANCREDI: I mean, because currently, right now,

4    they're, the stay is in place until the case is closed or the

5    Trust is dissolved.

6              THE COURT: Right.

7              MS. TANCREDI: But there's no way to come in and

8    dispute the stay.  Other than for, I think, Mr. Etkin's

9    client.

10             THE COURT: Okay.  Yes, Mr. Glassman.

11             MR. GLASSMAN: I've had difficulty understanding the

12   issue, because to my, I can tell you, I mean, I wrote this, I

13   helped write this plan.  I've been very involved.  We are not

14   trying to take insurance coverage away from any insured.  So

15   to the extent the other directors and officers who are - -

16   there are multiple insureds under these policies.  You have

17   individuals who are insured.  You have the entities that are

18   insured for certain things, if there are losses that are

19   within the ambit of the policy.  So I, I am at a loss to

20   understand why it is, for example, if, if Misters Schwartz

21   and Zeinfeld have the right to advancement of defense costs

22   by this insurance company, I have difficulty understanding

23   how this plan, or the confirmation order, precludes them from

24   bringing an action against their insurer, a first party

25   claim, to force coverage.  Or defense cost payments.  So I'm,

1    maybe I'm not understanding, and I apologize if I'm not.

2    It's, you know, we tried to clarify for Ms. Tancredi that we

3    weren't trying to assign non-executory contracts, or assume

4    them.  That that section only related to executory contracts.

5    We've really taken out of the ambit of 502(e) the provision

6    relative to 502(e).  Leaving that for another day relative to

7    those claims.  So I'm having difficulty responding, because I

8    don't see how we're really stopping them.  The fact that the

9    insurance companies don't want to pay is not really a,

10   necessarily a consequence of the letters that are in the

11   words that are in the plan or the confirmation order.  Unless

12   I'm, and I'll be happy to respond to - -

13            THE COURT: My impression is that - -

14            MR. GLASSMAN:  - - but I'm having difficulty

15   understanding.  That's all.

16            THE COURT: I think that, is it a timing issue, Ms.

17   Tancredi?  As much as anything.  That while a stay is in

18   effect, you - -

19            MS. TANCREDI: It's a timing issue, but it's also, I

20   mean, we can all sort of think through how this is going to

21   happen.  The insurance company is going to say, Well, the

22   insurance policies could be property of the estate.  I'm not

23   paying anything.  To anybody.  So then we'll, hopefully, you

24   know, we need some mechanism to come back before Your Honor

25   to have that decided.  Probably.  So that - -

1          THE COURT: And Mr. Glassman - -

2          MS. TANCREDI:  - - that's my problem.  Right now

3    there's no mechanism for that.  It just says that the stay

4    extends until the case is closed or the Trust is dissolved.

5    Period.

6          THE COURT: Right.  Right.

7          MS. TANCREDI: And I need something else.

8          MR. GLASSMAN: The carriers, I don't know which

9    carriers, I forget at this point.  But I can tell Your Honor

10   that carriers have filed a motion to be heard, what we hope

11   is post-confirmation, for an order permitting them to pay

12   defense costs.  And I assume it's a comfort order, as most

13   carriers want comfort orders - -

14         THE COURT: Yes.

15         MR. GLASSMAN: - - in that regard.  And I'm not

16   going to observe whether or not in fact they, my own views

17   whether or not they need those comfort orders.  I think it's

18   pretty clear.  But - -

19         THE COURT: There is a motion on file that's been

20   noticed?

21         MR. GLASSMAN: Yeah.

22         THE COURT: Okay.

23         MR. GLASSMAN: And I believe that Womble Carlyle is

24   in for the, in for the carriers.  Is that - - nobody is - -

25         THE COURT: Ms. Tancredi, if that's the case, does

1   that solve your problem?  We'll hear that motion, and

2   hopefully these - -

3           MS. TANCREDI: This is the first I've heard of the

4   motion.  Unfortunately.  But what I would just like is some

5   ability to seek relief from stay, if necessary, to proceed

6   against the policies.  Without having to wait until the Trust

7   is dissolved or the case is closed.  That's all I would like.

8   Thank you.

9           THE COURT: Is there, is there a problem if - -

10          MR. ETKIN: Can I try to help on that issue - -

11          THE COURT: You may.

12          MR. ETKIN:  - - Your Honor?

13          THE COURT: Certainly.

14          MR. ETKIN: Since we're all trying to be a little

15   helpful to each other.

16          THE COURT: Yes, Mr. Etkin.

17          MR. ETKIN: I think that one of the changes I asked

18   Mr. Glassman to make, which he indicated on the record would

19   be made, is that not only is 362(a) extant post-confirmation

20   and 362(b) extant post-confirmation, but 362(d), (e), (f),

21   and (g) will be extant post-confirmation, which allows any

22   party in interest to come in and seek stay relief to the

23   extent that, or modification of these, of the stay to the

24   extent necessary.  So if the plan didn't implicitly provide

25   for that previously, it will now expressly provide for that.

1   Now to get into - -

2           THE COURT: Or the order at least, the order will.

3           MR. ETKIN: The order will.

4           THE COURT: Yes.

5           MR. ETKIN: And to the extent, to the extent that

6   carriers, as a matter of course - - and I know Your Honor is

7   more than familiar with this issue - - seek these comfort

8   orders, whether they have to or not, just to essentially just

9   put up another road block to insureds with respect to

10  coverage, and you've got to march to that tune, the ability

11  exists certainly now that the order will be revised to

12  provide for the 362 modification provisions to be applicable

13  post-confirmation.

14          THE COURT: That - - and as long as it's not

15  exclusive to Mr. Etkin's client, I think that will be – -

16          MR. GLASSMAN: It's not - -

17          THE COURT: That will provide you the protection you

18  need Ms. Tancredi.  Or your clients need, I should say.

19          MR. GLASSMAN: Your Honor, I think that - -

20          THE COURT: I think that does it.

21          MR. GLASSMAN:  - - those provisions would apply

22  anyway - -

23          THE COURT: Yes.

24          MR. GLASSMAN:  - - even if we didn't add them.

25          THE COURT: I think so too.

1          MR. GLASSMAN: But we'll add them out of an

2    abundance of caution.  I mean, if an insurer is taking a

3    position that it needs stay relief in order to make a

4    payment, folks can ask for stay relief.

5          THE COURT: Yes.  I think that's always available.

6    I can't imagine ever denying a party an opportunity to be

7    heard on, on relief from the stay.  And that would be the

8    situation.  But it sounds like, perhaps, it will be addressed

9    in the order.

10          MS. TANCREDI: I think it will be now.  I actually

11    did listen very closely earlier, and I think it was limited

12    to Mr. Etkin's client.

13          THE COURT: I, that - -

14          MS. TANCREDI: But if it's not, if it's now open to

15    everybody, then that resolves the issue.

16          THE COURT: And if it's not, yes, I think it is open

17    to everybody in any event, but it's either open to everybody,

18    or it's certainly open to Mr. Etkin's and Ms. Tancredi's

19    clients.  At least to that extent.  Good.  Ms. Augustine.

20    Now that you've regained your breath, you're ready to go.

21          MS. AUGUSTINE: Yes, Your Honor.  Thank you.  I

22    guess at this point we would propose to go back to the

23    office, incorporate changes into the order, and then submit

24    under certification of counsel for approval after circulating

25    to our two objectors here.

1          THE COURT: Yes.

2          MS. AUGUSTINE: Probably at some point tomorrow Your

3   Honor would see that certification of counsel, if everyone

4   moves quickly.

5          THE COURT: That would be acceptable.  I am

6   delighted to approve confirmation of this plan.  It's been a

7   very, very hard fought and difficult process, I know, and I

8   really congratulate everyone for their tenacity.  I think

9   that's the appropriate word in this particular case.  And the

10  ability to resolve some last, some final disputes that came

11  up on the precise language in the plan and the proposed

12  order.  And certainly, the findings that appear in the

13  confirmation order, and I'm not going to go through all of

14  them and the sections of the code.  But clearly it meets the

15  requirements.  And in particular I think not only the

16  technical requirements, but as well the general, good faith

17  requirement for approval of a confirmation, a plan of

18  confirmation.  And I will, and I indicate that I am approving

19  it.  Subject to whatever minor revisions we've been talking

20  about here today on the record.  But I - -

21         MR. GLASSMAN: Thank you, Your Honor.

22         MS. AUGUSTINE: Thank you, Your Honor.

23         THE COURT: - - I congratulate everyone.  It's an

24  important and it's a good day when parties are able to reach

25  this point.  Particularly these days, as I said, when it is

1    even more difficult.  But in this particular case, I think we

2    all had some concerns that we might not get here, and here we

3    are.  So I thank you, and I congratulate all of you.  And I

4    will just await arrival of the proposed order.

5              MS. AUGUSTINE: Thank you, Your Honor.

6              THE COURT: Thank you all.  Congratulations and we

7    will stand in recess.  Good to see you all.

8         (Whereupon at 3:46 p.m. the hearing in this matter was

9    concluded for this date.)

10

11

12

13

14

15

16

17

18              I, Jennifer Ryan Enslen, approved transcriber for

19   the United States Courts, certify that the foregoing is a

20   correct transcript from the electronic sound recording of the

21   proceedings in the above entitled matter.

22

23    _/s/Jennifer Ryan Enslen_                _October 26, 2008_
      Jennifer Ryan Enslen
24    43 Bay Boulevard
      Newark, DE 19702
25    (302)836-1905