UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                          . Case No. 07-11666 (KG)
                                .
                                .
SN LIQUIDATION, INC., et al.,   .
                                . 824 North Market Street
                                . Wilmington, Delaware  19801
            Debtors.            .
                                . November 7, 2008
. . . . . . . . . . . . . . . . . 2:02 p.m.
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT

APPEARANCES:

```
For the Debtors:               The Bayard Firm
                               By:  JAMIE EDMONSON, ESQ.
                               222 Delaware Avenue
                               Suite 900
                               Wilmington, DE  19899


For Illinois National Ins.
Co.:                           Womble Carlyle Sandridge
                                 & Rice
                               By:  KEVIN J. MANGAN, ESQ.
                               222 Delaware Avenue
                               Suite 1501
                               Wilmington, DE  19801


For Illinois National Ins.
Co.:                           Peaboby & Arnold, LLP
                               By:  ROBERT McCALL, ESQ.
                               Federal Reserve Plaza
                               600 Atlantic Avenue
                               Boston, MA 02210


Audio Operator:                Theresa Pullan
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES (Contd'):**

```
For Official Committee of
Unsecured Creditors:              Reed Smith, LLP
                                  By:  KURT F. GWYNNE, ESQ.
                                  1201 Market Street
                                  Suite 1500
                                  Wilmington, DE  19801

For Andrew Zeubfeld &
Kenneth Schwartz:                 Venable, LLP
                                  By:  LISA TANCREDI, ESQ.
                                  1800 Mercantile Bank & Trust
                                  Building
                                  2 Hopkins Plaza
                                  Baltimore, MD  21201
```

1             COURT CLERK:  Please rise.

2             THE COURT:  Good afternoon, everyone, please be

3 seated.  Thank you.

4             MS. EDMONSON:  Good afternoon, Your Honor, Jamie

5 Edmonson of Bayard on behalf of the debtors.

6             THE COURT:  It's nice to see you, Ms. Edmonson.

7             MS. EDMONSON:  Nice to see you, Your Honor.  We have

8 a relatively short agenda for today's hearing.

9             THE COURT:  Yes.

10             MS. EDMONSON:  And only one matter that's actually

11 going forward.

12             THE COURT:  Okay.

13             MS. EDMONSON:  The first matter that was on the

14 agenda was the motion for the debtors to abandon documents.

15             THE COURT:  Yes.

16             MS. EDMONSON:  We did receive on objection to that

17 from Messrs. Zeinfeld and Schwartz, but after realizing that

18 the debtors really don't have possession of -- well, don't

19 really have an interest in those documents any longer after the

20 sale, we filed a motion to withdraw that motion, which Your

21 Honor granted earlier this week by a signed order.

22             THE COURT:  Yes.

23             MS. EDMONSON:  That leaves only the contested matter,

24 which is the motion for relief from stay brought by Illinois

25 National Insurance Company, and with that, I will cede the

4

1  podium to either Mr. Mangan or to Mr. Gwynne.

2         THE COURT:  All right.  Thank you very much, Ms.

3  Edmonson.  Mr. Mangan, good afternoon, good to see you, Your

4  Honor.

5         MR. MANGAN:  Your Honor, thank you very much.  It's a

6  pleasure being in front of you.

7         Your Honor, I represent Illinois National and with me

8  today is Robert McCall of Peabody & Arnold from Boston, who

9  came down to present this motion for the Court.

10        THE COURT:  Well, he's certainly welcome.  You're

11 welcome and it's good to have you in court, sir.

12        MR. MANGAN:  Your Honor, by the way, he's already

13 been admitted pro hac.

14        THE COURT:  Thank you.  Thank you, Mr. Mangan.

15        MR. McCALL:  Your Honor, I think the motion here is

16 very simple and the legal issues in this motion are familiar to

17 the Court.  Illinois National seeks leave to use a D&O policy

18 to pay defense expenses for certain individual insureds.

19        THE COURT:  Yes.

20        MR. McCALL:  The two reasons for granting the relief

21 are straightforward.  First, the policy provides a defense

22 obligation for insured individuals under certain circumstances.

23 Second, the policy provides that the policy proceeds are to be

24 applied first to obligations to the insured individuals before

25 any payments for debtor entity coverage.

**J&J COURT TRANSCRIBERS, INC.**

5

1          Again, this is simply a motion to pay expenses out of

2    the $10 million policy.  As the Court is aware, there's $35

3    million in policies.  Illinois National is not asking to make

4    payment for a settlement or a judgment, nor is Illinois

5    National asking this Court to undertake the burden of

6    determining the amount of defense expenses to be paid.

7          With respect to the policy, it's important to keep in

8    mind that the Illinois National policy primarily covers certain

9    claims against directors and officers.  Any coverage for the

10   debtor company is limited and secondary, and that secondary

11   nature is evidence by Paragraph 22 of the policy which

12   explicitly provides that loss payments must be made first for

13   the Ds and Os under coverages A and C of the policy, and second

14   to the debtor company for loss for indemnification by the

15   debtor to the Ds and Os.

16         Third, and only third, does coverage kick in for --

17   or payment kick in for securities claims against the debtor.

18   The lawsuits against the individuals are the Icon litigation

19   which this Court is familiar with in the securities class

20   action litigation.

21             THE COURT:  Yes.

22             MR. McCALL:  Neither of these lawsuits involve the

23   debtor as a party.  In fact, the debtor was dropped from the

24   securities class action litigation.

25         In terms of the committees' objection, I anticipate

**J&J COURT TRANSCRIBERS, INC.**

6

1   sort of three points that I suspect they'll make.  One, is that

2   the policy proceeds are property of the estate, two, that the

3   Court should put some sort of limit on the relief that's being

4   requested and, third that we should just put off to another day

5   resolution of this issue.

6           Let me turn to the issue of whether in this case the

7   proceeds we propose to use are property of the estate.

8           THE COURT:  Okay.

9           MR. McCALL:  The committee cites this Court's prior

10  decision in connection with the Icon litigation for that

11  proposition.  That decision, which I would submit, was limited

12  in nature and under the circumstances did not address the order

13  of payments clause.

14          In the World Health Alternatives case, this Court

15  addressed very similar arguments to those being made here by a

16  trustee, and the policy contained a similar order of payments

17  clause.  The Court properly saw the trustee's position as a

18  claim against the Ds and Os under the policy, rather than as a

19  party protected by the policy against a claim against it.  This

20  is precisely the position, I would submit, that the committee

21  is taking and that the successor litigation trust will likely

22  take here.

23          As explained in greater detail also in the CHS

24  Electronics case, which we've cited, the issue driving the

25  objection is not entity coverage, but preserving the proceeds

**J&J COURT TRANSCRIBERS, INC.**

7

1  to satisfy claims against the insured individuals.  And as the

2  CHS opinion explains, there's nothing in the code or case law

3  which would give the trustee or litigation trust a preferred

4  status over litigation by non-bankruptcy plaintiffs.

5       The next issue is putting some sort of limitation on

6  the relief, and I expect that the committee will say that there

7  should be some limitation on the relief that Illinois National

8  is granted.

9       For example, in Allied Digital, Judge Case actually

10 rejected a request to put a cap on the fees and I would submit

11 that in this case, it's not appropriate to put a cap.  In that

12 case, the Court recognized that holding defense costs hostage

13 could result in irreparable harm to the defense of the

14 individuals.

15       The third point, which I expect will be raised, will

16 be that the Court should put off resolution of this issue to

17 some future, undetermined date when the litigation trust is

18 ready and up and running and wants to litigate this.

19       I think, as an initial matter, this is just not how

20 motions for relief from stay work.  If there's good cause, the

21 relief should be granted within the time frame under the code,

22 unless, of course, the committee can show some reasonable cause

23 for having the hearing continued over.  But, again, I don't

24 think the committee has any reasonable cause because as I

25 explained, the position of the committee is really as a

8

1  claimant against the policy, not as a party being protected by

2  the policy.

3           Finally, with respect to that point, it really should

4  be the burden of the committee or the trust, to bring a motion

5  in the future, if it believes that a valid legal basis exists

6  to vacate any relief that's granted.

7           In conclusion, I think, Your Honor, that there's

8  clearly cause under the policy to grant Illinois National

9  relief from the stay to fund these defenses of the individual

10 insureds, and there's no valid reason either to deny, limit or

11 delay that relief.

12          THE COURT:  I think that sums it up nicely.  That is

13 the issue, is there any reason to deny, limit or delay.

14          MR. McCALL:  Okay, thank you, Your Honor.

15          THE COURT:  Thank you, and, obviously after I hear

16 from the committee, I may have questions for you.  Thank you,

17 Mr. McCall.  Well, Mr. Gwynne, good afternoon.

18          MR. GWYNNE:  Good afternoon, Your Honor, Kurt Gwynne

19 from Reed Smith, counsel for the Official Committee of

20 Unsecured Creditors.

21          Your Honor knows the plan was confirmed, but has not

22 yet gone effective.

23          THE COURT:  Yes.

24          MR. GWYNNE:  We are working through the financing

25 documents with Adepdeo and a few other minor issues.  We have

1  met, by the way, with Mr. Branzburg, Mort Branzburg, from Klehr

2  Harrison who is going to be liquidating trustee.

3         THE COURT:  Yes.

4         MR. GWYNNE:  Your Honor, counsel made a statement

5  about the way motions for relief from the stay work.  Well, the

6  committee submits the way they work is that the movant has to

7  come forward with evidence.  It has a burden of production.

8  There are some cases that say the movant bears the burden of

9  proving cause.  There are other cases that say that the debtor

10 or the estate bears the burden of proving the absence of cause,

11 but that the movant has a burden of production even in those

12 cases, to come forward with evidence as to why relief from stay

13 is appropriate.

14        There is no evidence in the record before Your Honor

15 today regarding why relief from stay is appropriate.  There are

16 statements that have been made to the Court.  There's no

17 evidence there were statements made regarding the litigation,

18 what the litigation is about, those type of things.  But,

19 there's no evidence before Your Honor with respect to that, and

20 that's important because as Your Honor recognized in the prior

21 opinion regarding Icon International 388 B.R. 579, on Page 584

22 of that opinion, that the depletion of insurance proceeds

23 "would adversely affect the debtors estate."  That's because

24 there is entity coverage here with respect to Inphonic and that

25 there is coverage for the debtor, notwithstanding the order of

1  payment provision.  There is no evidence that defense costs or

2  defense settlements are going to exceed the 30, $35 million in

3  insurance proceeds that are out there.

4       So, the estate has a very important interest in

5  making sure that the proceed are used judiciously and

6  appropriately.  And in the motion that was filed by Illinois

7  National, on Paragraph 8 of the motion, they refer to Section

8  2(f) of the policy as saying that the defense costs have to be

9  reasonable fees, costs and expense.

10       Well, there's no evidence before the Court, Your

11 Honor, that the fees are reasonable or that the expenses are

12 reasonable, and because there is also property of the estate

13 that is being implicated, the debtor has an important interest

14 in making sure that the payment of any fees is done so on a

15 reasonable, appropriate basis.

16       The fees that are payable under that Section 2(f),

17 are also those that are related to the loss.  Well, we don't

18 know if they were -- that counsel that's representing these

19 officers and directors was also doing things with respect to

20 the bankruptcy case, monitoring that.  We have no idea what the

21 fees are for.  There's no evidence of the basis for the fees,

22 the reasonableness of the fees, or that they even relate to a

23 loss covered by the policy.

24       For that reason, Your Honor, the committee believes

25 that Your Honor should deny the motion and if the insurer wants

1  to file another one and bring forward evidence, and put

2  evidence before this Court regarding why the payment of these

3  fees is appropriate in light of the fact that property of the

4  estate is implicated and even if so, that the fees are

5  reasonable fees, because, as I mentioned, the debtor has a keen

6  interest in that.

7         With respect to -- so the committees' first position,

8  Your Honor, is for those reasons, Your Honor should deny the

9  motion.

10        Now, counsel cites to and talks about other

11 decisions.  I don't know in those case, Your Honor, whether the

12 insurance company put forward evidence or not, but I do know

13 that evidence is required, this is an evidentiary hearing and

14 there's none before Your Honor.

15        The second issue was, the committee thought that it

16 would make sense to impose a limit on the amount of D&O

17 proceeds that were being used to pay fees and expenses, but in

18 light of the fact that there's no evidence here today, as to

19 what the reasonable amount would be, the committee thinks that

20 rather than a limit, that the motion should be denied and it

21 is, of course, without prejudice to the insurer coming back and

22 putting forward evidence on the relevant issues.

23        But, lastly, the other issue from the committees'

24 perspective was, we would like the trustee, who is going to be

25 the one pursuing claims and causes of action, to have an

1 opportunity to participate in this hearing.

2          Now, counsel said that that's not the way 362 motions

3 work.  I think under 362(e), that Your Honor does have the

4 right and I think Congress modified it in the BAP CPA

5 amendments to say that so long as the Court enters an order

6 within 60 days of a final judgment, that that's sufficient or

7 even further time if the Court makes findings of fact regarding

8 that.

9          But, what I think makes the most sense in light of

10 the dirth of evidence is to deny the motion and the motion

11 could be refiled.  At that point, the trustee should be up and

12 running and be able to be here and participate.

13          THE COURT:  Timing-wise, Mr. Gwynne, roughly what

14 amount of time are we talking about?

15          MR. GWYNNE:  Well, Your Honor, having had the

16 pleasure of dealing with Adepdeo on minor issues to this case,

17 I'm hoping we'll be able to do that consensually.  I don't

18 know, but I would hope within two, three weeks.

19          And that's all I have, Your Honor, unless you have

20 other questions.

21          THE COURT:  Thank you, Mr. Gwynne.  I certainly

22 understand your position very well.

23          MR. GWYNNE:  Thank you, Your Honor.

24          THE COURT:  Mr. McCall, help me out with the lack of

25 evidence at this point.

1          MR. McCALL:  Well, Your Honor, all we need here is

2     the policy and the policy is already in the record.  The Court

3     is familiar with the policy, so that's the only evidence.

4     We're not asking the Court to review the reasonableness of the

5     fees, nor is it really the Court's job on this type of motion

6     to flyspeck the fees of defense counsel.  And the notion that

7     somehow that Illinois National would be paying something

8     unrelated to the defense of the claims at issue is

9     counterintuitive.  Insurance companies aren't in the business

10    of paying defense fees for litigation that's not covered.

11          And there's no case law that's pointed out by the

12    committee for the proposition that it's the job of the

13    bankruptcy court to review the reasonableness of the fees that

14    are paid by the insurer under a D&O policy.

15          THE COURT:  Well, normally I would agree with you,

16    but in this situation where there is potential coverage, or I

17    should say potential benefit from the policy for the bankruptcy

18    estate, isn't it appropriate for the Court to determine whether

19    or not funds are being applied correctly and properly to help

20    protect the debtors' estate here, and that the liquidation

21    trustee, himself, ought to be involved in that process?

22          MR. McCALL:  Well, I think the problem here is that

23    the issue is no longer entity coverage here, this is really the

24    liquidation trustee coming in as another claimant against the

25    Ds and Os under the policies and at that point you're really

1  not talking about proceeds that are property of the estate.

2  You were talking about, at that point, the litigation trustee

3  standing in the shoes of any other private claimant and in that

4  case the litigation trustee has no special standing to halt the

5  payment of defense costs on other claims and there's plenty of

6  case law for the proposition that it is -- it amounts to

7  irreparable harm not to allow the insurer to pay the defense

8  costs for counsel for the individual directors and officers.

9        I mean, I have not heard anything suggesting that

10  there is a securities claim coverage, which is the direct

11  entity coverage for which the proceeds of the policy, arguably,

12  could be property of the estate.  So, we're really talking

13  about the litigation trustee standing in the shoes,

14  essentially, of another private claimant.  There's no special

15  bankruptcy power to supervise how the insurance company

16  dispenses of the proceeds of the policy.

17        THE COURT:  In this case, can't this be viewed as a

18  situation in which the insurer is, in effect, protecting its

19  own interest, in that, by paying these defense costs it

20  increases the odds, if you will, that the individuals will

21  successfully -- will be more likely to successfully defend the

22  case, thereby, reducing the exposure of the insurer?

23        MR. McCALL:  Yes.  And indirectly benefitting any

24  other claimants under the policies because, you know, if we --

25  obviously, if an effective defense isn't put up in those cases,

1  there's a chance that we could wind up with a large judgment

2  that maybe would exceed the amount of policies available and

3  the litigation trust would have nothing to go after,

4  theoretically.  But, you know, I think that's a good point and,

5  you know, we're also protecting the theoretical interest of the

6  estate in its obligation to fund the defense of Ds and Os.

7          But, you know, I don't think -- I think that's a good

8  point, Your Honor, but I think that we could look at this --

9          THE COURT:  You think it cuts the other way.

10         MR. McCALL: -- we'd also look at this as simply as

11  the litigation trust being another claimant under the policy as

12  opposed to the litigation trust standing in the shoes of --

13  protecting the property of the estate.

14         THE COURT:  What is the status of the litigation?  In

15  other words, what harm would befall either your client or the

16  insureds if we, in effect, adjourned this until we had our

17  liquidation trustee in place?

18         MR. McCALL:  Well, I know that my client has received

19  about $900,000 worth of legal fee bills and that's -- and we

20  don't have the last two months worth of bills, so I think you

21  can get an idea of how much activity has taken place.  I don't

22  know the exact status of the securities class action, but I

23  suspect that, you know, if it's like any of these cases,

24  there's lots of activity going on from month-to-month, and so I

25  can't say how much prejudice but, obviously, these law firms

1   are in the hole pretty big, and at some point the rubber could

2   meet the road here in terms of how far they're going to go in

3   defending the cases.  But, you know, I don't think we need to

4   reach that point.

5           THE COURT:  Okay.  Thank you, Mr. McCall.

6           MR. McCALL:  Thank you.

7           THE COURT:  Good afternoon.  Is it Tancredi?

8           MS. TANCREDI:  Yes, good afternoon, Your Honor.

9           THE COURT:  Good afternoon.

10          MS. TANCREDI:  First of all I'd like to apologize for

11  my phone.  I flew in on the red eye this morning and I thought

12  it was off.  And I've never not turned the phone off.  So, I

13  apologize.

14          THE COURT:  I have very selective hearing, Ms.

15  Tancredi.  We're fine.

16          MS. TANCREDI:  Thank you.  A couple points to Your

17  Honor's questions --

18          THE COURT:  Yes, please.

19          MS. TANCREDI:  -- and then to what Mr. Gwynne had to

20  say.  Venable has been representing two of these defendants for

21  more than nine months and it has incurred more than $170,000

22  worth in fees and it hasn't been paid a dime.  And while I have

23  confidence that all good intents are on this side of this

24  courtroom as far as going effective on the plan, there is no

25  reason to delay payment to these law firms any longer.

1      As far as waiting until the trustee is appointed or

2  the liquidating trustee is appointed, Mr. Gwynne has done a

3  fantastic job of representing whatever interests that party

4  would have.  And as far as evidence, it's a little ironic for

5  Mr. Gwynne to bring that topic up here because I believe that

6  when he got the TRO staying the <u>Icon</u> litigation, it was the

7  committee that was a little light in the evidence point.

8       And, finally, the insurance company certainly has an

9  interest in protecting its own interest, but that would also

10 include not paying a dime more in defense fees than it has to.

11      And as far as determining reasonableness, I don't see

12 this as being that much different than those cases where a

13 creditor is secured, it has reasonable fees that can be paid

14 out of property of the estate and the Court doesn't flyspeck

15 those fees.  So, thank you, Your Honor.

16      THE COURT:  The insurance companies do a very good

17 job for themselves, you're quite correct, Ms. Tancredi.  But,

18 let me just make sure I understand because I think Mr. McCall

19 referred to $900,000 of expenses and yours was limited just to

20 the Venable firm?

21      MS. TANCREDI:  Yes.  There are other firms that have

22 substantially higher fees.

23      THE COURT:  Thank you.  Thank you very much.

24      MR. GWYNNE:  May I respond briefly, Your Honor?

25      THE COURT:  You may, Mr. Gwynne.  Why isn't this the

1  <u>World Health</u> situation?

2       MR. GWYNNE:  Well, Your Honor, in this case there's

3  no evidence before the Court with respect to the fees that I

4  mentioned, the numbers that are being thrown out here.  Those

5  are not inconsequential.

6       THE COURT:  No, I agree.

7       MR. GWYNNE:  900,000, 700,000 and a policy where the

8  estate does have an interest and no one has reviewed them.  Ms.

9  Tancredi pointed out, well, why isn't this like the situation

10 with the secured creditor?  Well, if it were, Your Honor, then

11 somebody would be reviewing the fees; the U.S. Trustee or the

12 committee, or the debtor.  I mean, that's how it works with

13 respect to DIP financing, there's no blank check.  There's

14 notice and there's an opportunity to protect the estate because

15 even though those fees are directly incurred by the secured

16 creditor, it affects the estate.  The same is true here.

17      We understand the order of payment provision, and Ms.

18 Tancredi and her firm understand it and that's why they'll

19 continue to work and why they've worked so far.  Because they

20 know if they prove their fees are reasonable, and appropriate,

21 that they're entitled to payment first.  So, there's no issue

22 with people walking away.

23      But, for example, Ms. Tancredi is here today and she

24 was here at the last hearing.  Those fees don't have anything

25 to do with respect to the loss, Your Honor, that's being

1    incurred.  Are those fees part of her firm's fees that are

2    being charged under the policy, are there other fees relating

3    to the bankruptcy case itself that are being charged?

4         With respect to what Illinois counsel said --

5    Illinois National's counsel with respect to, this isn't an

6    issue of entity coverage, it's an issue of the liquidating

7    trustee making a new claim.  That's not true, the policy period

8    is up.  If we had an evidentiary hearing, Your Honor, as we

9    would expect, there's a 20-page notice of claim sent by

10   debtors' counsel to the insurance company putting them on

11   notice of claims.

12        The estate has already made a claim under the policy,

13   the committee sent its own.  Recently the insurance company

14   sent a letter denying that, but that issue, you know, putting

15   that aside, it's irrelevant because I haven't seen anything

16   denying the debtors, but even if they have, the estate still

17   has the right to adjudicate whether any such denial would be

18   appropriate.  But, because there's no evidence we don't have

19   those issues in the record.

20        With respect to the trustee and the trustee's

21   involvement, it is the same as it is in any other instance

22   where property of the estate is being implicated.  And Your

23   Honor already held in this case, in a published opinion, that

24   this impacts property of the estate.

25        It's inappropriate in that case to let the insurance

1 company decide what's reasonable or not when it's spending

2 money that's going to affect the estate.  And why is that

3 particularly true in this case?  If we had evidence, Your

4 Honor, if we had evidence, I believe the evidence would show

5 through cross examination that the claims made against these

6 officers and directors, exceed the first layer of coverage.

7         So, the first layer, they don't care if they're

8 paying it to the -- they give $5 million in attorneys fees, I'm

9 out of this, I'm done.  They don't care if it goes to them or

10 if it goes to claimants.  They don't care because they're the

11 first layer and their money is going to be exhausted.

12         So, unlike the situation where an insurance company's

13 policy is not exhausted, they don't have an incentive that's

14 adequate to review the fees and expenses and that's why in this

15 case, Your Honor, we think that it is appropriate to have those

16 fees vetted.

17         And we're not saying that in every instance they need

18 to submit fee "apps" to the Court, but there ought to be a

19 procedure where the trustee has the opportunity and if it's

20 before the trustee is appointed, frankly, we'll do it if that's

21 an issue, but where someone on behalf of the estate, the

22 committee, the debtors, or the trustee, liquidating trustee,

23 that someone has the opportunity to review these fees and then

24 if there's an issue, and only then, bring it before the Court.

25         As Ms. Tancredi said, with respect to a secured

1  creditor, that's the way it works, and the same -- it's a

2  similar thing here because we have an order of payment

3  provision that is, in essence, like a secured creditor would

4  give them the priority to payment.  That's all I have, Your

5  Honor, unless you have other questions.

6           THE COURT:  No, that was helpful, I appreciate it.

7           MR. GWYNNE:  Thank you, Your Honor.

8           THE COURT:  Yes, Mr. McCall?

9           MR. McCALL:  I don't want to keep this going forever,

10  Your Honor.

11           THE COURT:  No, no.

12           MR. McCALL:  But, there's one point on the production

13  of evidence that I found a bit puzzling, which was the notion

14  that it was Illinois National's burden to somehow present

15  evidence that there was no entity claim, and it strikes me that

16  that should have been -- that's the burden of the objecting

17  party to show that there is a claim that would implicate entity

18  coverage.  It's not my job to do that.  That's not my burden to

19  do that.

20           Objection was filed, it wasn't raised.  The only

21  piece of evidence that we submit is relevant to this particular

22  motion, is the policy, and that policy has been before the

23  Court for quite a bit of time and we're not asking the Court to

24  review the reasonableness of the fees, nor is there any

25  precedent that I'm aware of, for the type of fee review that

1 | has been proposed by the committee.

2 | The bottom line here is, the committee stands as a

3 | trust and it's true of any other claimant against the Ds and

4 | Os.  They're not entitled to any special treatment, per se.

5 | We're not talking, I think in this case, about proceeds that

6 | are policy of the estate, so we should obtain the necessary

7 | relief in order to start paying these bills.

8 | THE COURT:  Thank you, Mr. McCall.

9 | Well, you know, I think it's the law of the case

10 | here, based upon my prior ruling, that the policy is the

11 | property of the estate, and under those circumstances any

12 | unused portion of the policy is potentially recoverable by the

13 | estate or subsequently by the trust.  And I am concerned, based

14 | upon bankruptcy practice, that the requested fees and expenses

15 | have not been reviewed as to their propriety and that there

16 | should be at least an opportunity to review the priority of

17 | payments out of potential property of the estate.

18 | At the same time, I recognize that there are law

19 | firms working diligently on behalf of clients and they are

20 | entitled to a prompt determination of their entitlement to

21 | payment.  So, I am not going to allow the matter to lag, but I

22 | do think that at the very least, I think that Mr. Gwynne is far

23 | more than competent as a representative of the committee, but

24 | it is not the committee that is ultimately going to be

25 | responsible here, and we're very close to the appointment of

1 the liquidating trustee.

2          And I do think that the resolution of the issues

3 raised ought to be in the hands of the trustee at this point.

4 It's simply a question of timing and I think that we can

5 probably schedule something very promptly and at least, at

6 least have the trustee talking with Illinois National to see if

7 there can't be some resolution, or if there needs to be a

8 hearing either on the legal grounds or on factual grounds,

9 where the Court would take evidence.

10          So, I think, you know, I'm reluctant to schedule

11 something where we don't have a trustee in place, but on the

12 other hand, I assume that Mr. Branzburg is getting up to speed

13 on the case.  Is that right, Mr. Gwynne?

14          MR. GWYNNE:  That's correct, Your Honor.

15          THE COURT:  And it may not take a lot of time.

16 Unfortunately, I guess, I'm going to be in a position where I

17 really can't provide him with a lot of time in fairness to the

18 parties who have raised the motion -- who have filed the motion

19 and raised the issues today.

20          So, I am going to look for a time.  I know it seems

21 like a long time off, but December the 8th I could hear the

22 parties.  I think that would give Mr. -- that would allow the

23 time that we're talking about for Mr. Branzburg's appointment.

24 So, I'm not going to grant or deny the motion today, I'm going

25 to set it down for further hearing on December the 8th, at,

1  let's say at ten o'clock.  It could be a little bit later if it

2  would be more convenient for Mr. McCall who is traveling from

3  Boston, if he would like to do it a little bit later, or even

4  in the afternoon, so that you could come down in the morning.

5         MR. McCALL:  Your Honor, I may have to think about

6  the date because I have a trial scheduled for that week.

7         THE COURT:  Okay.

8         MR. McCALL:  So, if I know that that trial is going

9  forward, then we may have to push it to another date, unless a

10  colleague of mine is going to come down and handle this.

11         THE COURT:  Well, let me just ask this.  What is --

12  we're talking a couple of hours here, I think, at most probably

13  aren't we?  It's not going to be an all day hearing for sure.

14  And, in fact, I still believe that we could probably get close

15  to a resolution before that time.  The 21st, is that too soon,

16  though?  That's too soon.

17         MR. GWYNNE:  Especially, Your Honor, if there is

18  going to be a review of $900,000 worth of fees by the trustee.

19         THE COURT:  That's right.  And the following week is

20  Thanksgiving week.  And, first of all, I have a fairly full

21  schedule that week, and secondly, I don't like to impose upon

22  parties to travel on Thanksgiving week, if we can avoid it.

23         I could hear you on Friday, the 5th, at 3 p.m.  Is

24  that any better if you're going to be --

25         MR. McCALL:  No, Your Honor, it's not any better.  I

1  would be more inclined to keep it on for December 8th, and then

2  I would file a motion, or contact chambers about scheduling

3  another date, if we can't get someone here.

4          THE COURT:  The fact of the matter is, if you have a

5  problem and you want to adjourn the date, I have no reason to

6  think that the liquidating trustee would be unwilling to do so.

7  So, let's set it down for the 8th at ten o'clock.

8          And why don't we do one thing, though.  Let's have a

9  telephone conference on Monday the 24th at, say, ten o'clock,

10  so that I can hear from the parties as to where the matter

11  stands, what type of a hearing they're anticipating as far as

12  it being either purely argument at that point, or if there is

13  going to be testimony and we can sort of get the hearing in a

14  little bit of an organized state.

15          So, that would be ten o'clock on November 24th, for

16  the teleconference, and a hearing at ten o'clock on the 8th of

17  December.  All right.  But, I do think it's probably

18  appropriate here to allow this little bit of additional time,

19  given not only the estates' interests, but as well, the amount

20  of money that we're talking about, which is not insignificant.

21          MS. EDMONSON:  Your Honor, just --

22          THE COURT:  Oh, before I get in trouble.

23          MS. EDMONSON:  I'm sorry.

24                  (Pause)

25          THE COURT:  Let's do this.  We'll do the 24th as a

1  status conference, so if someone will set up the call and give

2  us the call-in number.  We won't be on the record because

3  someone is using the courtroom, but at least we'll have a

4  status -- you know, we'll have an opportunity to discuss the

5  procedure for the hearing.

6            MS. EDMONSON:  Your Honor, the debtors can set up

7  that call.

8            THE COURT:  Thank you, Ms. Edmonson.

9            MS. EDMONSON:  You're welcome.

10           THE COURT:  Thank you very much.

11           MS. EDMONSON:  On just a minor note.  I was going to

12  request if we could possibly keep the December 8th hearing date

13  just in place, even if this doesn't go forward.  We don't have

14  any further omnibus hearings scheduled at this time and we do

15  have some miscellaneous motions that need to be filed and

16  heard.

17           THE COURT:  That would be fine.

18           MS. EDMONSON:  Great.

19           THE COURT:  Let's do that, and for dates after the

20  8th I guess it would be really Mr. Branzburg who would be more

21  concerned at that point.

22           MS. EDMONSON:  Yes, Your Honor.

23           THE COURT:  All right.  So, this would be

24  non-Illinois National issues, but rather the general bankruptcy

25  issues and I'll also give that as your date to notice matters.

1          MS. EDMONSON:  Thank you, Your Honor.

2          THE COURT:  Thank you.  Anything further?

3          MR. McCALL:  No thank you.

4          THE COURT:  Counsel, thank you and good weekend and

5  safe traveling to all.

6          MS. EDMONSON:  Thank you, Your Honor.

7                         *  *  *  *  *

8

9              **C E R T I F I C A T I O N**

10

11     I, ELAINE HOWELL, court approved transcriber, certify that

12  the foregoing is a correct transcript from the official

13  electronic sound recording of the proceedings in the

14  above-entitled matter and to the best of my ability.

15

16

17

18  /s/ Elaine Howell                 Date:  November 16, 2008

19  ELAINE HOWELL

20  J&J COURT TRANSCRIBERS, INC.

21

22

23

24

25  (CR)

                    **J&J COURT TRANSCRIBERS, INC.**