## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case. No. 07-11666 (KG) |
| SN LIQUIDATION, INC., *et al.*, ) | (Jointly Administered) |
| ) | |
| Debtors. ) | **Hearing Date: December 8, 2008** |
| ) | |

## MOTION OF XL SPECIALTY INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY SO THAT ILLINOIS NATIONAL INSURANCE COMPANY MAY REIMBURSE DEFENSE COSTS

XL Specialty Insurance Company ("XL"), by and through its undersigned counsel, hereby enters a limited appearance solely for the purpose of moving the Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a).[1]  Specifically, XL seeks an order permitting Illinois National Insurance Company ("Illinois National") to reimburse and/or advance certain defense fees and costs incurred by or on behalf of individuals insured under Illinois National's Executive and Organization Liability Insurance Policy.  The grounds for this Motion are as set forth below and in the Motion of Illinois National Insurance Company For Relief From The Automatic Stay of 11 U.S.C. § 362(a) To Advance Defense Costs Under An Executive And Organization Liability Insurance Policy (the "Illinois National Motion," Docket No. 730, attached hereto as Exhibit A), which XL hereby incorporates by reference.  It is XL's understanding that Illinois National intends to withdraw its Motion.

---

[1] In submitting this motion, XL does not consent to jurisdiction for any other purpose.

372441 v 1

I. **JURISDICTION**

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought herein is 11 U.S.C. §§ 362 and 105(a).

II. **BACKGROUND**

2.        On or about November 8, 2007, the Debtors[2] filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

3.        As detailed in the Illinois National Motion, certain former directors and officers of InPhonic, Inc. (the "Individual Defendants") were named as defendants in a securities class action, In re InPhonic, Inc. Securities Litig., No. 07-930 (D.D.C.) (the "Securities Action"), and civil action Icon Int'l, Inc. v. David A. Steinberg, et al., No. 07-2342 (D.D.C.) (the "Icon Action").

4.        As described in the Illinois National Motion, Illinois National issued Executive and Organization Liability Insurance Policy No. 965-69-56 to InPhonic, Inc. ("InPhonic"), with a $10 million aggregate **Limit of Liability**, including **Defense Costs** (the "Primary Policy"). (Capitalized terms in bold are defined in the Primary Policy.)  A true and correct copy of the Primary Policy is attached hereto as Exhibit B.

_____

[2] The Debtors and debtors in possession are INP Liquidation Corp. f/k/a InPhonic, Inc.; CS I Liquidation, LLC f/k/a CAIS Acquisition, LLC; CS II, LLC f/k/a CAIS Acquisition II, LLC; SI Liquidation Corp. f/k/a SimIPC Acquisition Corp.; SN Liquidation, Inc. f/k/a Star Number, Inc.; MTS Liquidation, LLC f/k/a Mobile Technology Services, LLC; FN LLC f/k/a FON Acquisition, LLC; and 1010, LLC f/k/a 1010 Interactive, LLC.

5.      The Primary Policy contains four Insuring Agreements which, subject to the Primary Policy's other terms and conditions, provide coverage for **Loss** arising from a **Claim** against an **Insured**.  Coverage A, Executive Liability Insurance, provides coverage for **Non-Indemnifiable Loss** (including **Defense Costs**) incurred by **Insured Persons** of InPhonic and/or its **Subsidiaries** (the **Organization**) arising from a **Claim** made against **Insured Persons** for a **Wrongful Act**.  Coverage B, Organization Insurance, provides coverage for **Loss** incurred by an **Organization** in indemnifying a **Claim** made against **Insured Persons** for a **Wrongful Act** (Coverage B(ii)) and also provides coverage for an **Organization**'s **Loss** arising from a **Securities Claim** against it (Coverage B(i)).  Coverages C and D provide Outside Entity Executive Liability Insurance and CrisisFund Insurance, respectively.

6.      The Primary Policy sets forth the priority of payments under its Insuring Agreements.  Clause 22 of the Primary Policy mandates that the Insurer shall first pay **Loss** for which coverage is provided under Coverage A and Coverage C; then pay under Coverage B(ii); and then pay under Coverage B(i) and Coverage D.  Clause 22 further provides that the "bankruptcy or insolvency of any **Organization** . . . shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22."

7.      Clause 2(p) of the Primary Policy defines **Loss** to include **Defense Costs**.  The Primary Policy mandates, in Clause 8, that the Insurer "shall advance, excess of any applicable retention amount, covered **Defense Costs** . . . ."

8.      XL issued Classic A-Side Management Liability Insurance Policy No. ELU095338-06 to InPhonic for the Policy Period November 30, 2006 to November 30, 2007, extended to November 30, 2008 (the "A-Side Policy"), with a $15 million aggregate Limit of

Liability, including Defense Expenses.  (Capitalized terms are defined in the A-Side Policy.)  A true and correct copy of the A-Side Policy is attached hereto as Exhibit C.

9.      Subject to its terms and conditions, the A-Side Policy potentially affords coverage for Loss of any Insured Person resulting from a Claim first made during the Policy Period for a Wrongful Act *"except to the extent that such Loss is paid by any other Insurance Program . . . ."* (emphasis added).  Moreover, the A-Side Policy provides that the "Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with: . . . any Insurance Program . . . whether such other insurance is stated to be primary, contributing, excess or otherwise."  <u>See</u> Section IV(B), as amended by Endorsement No. 7.  The A-Side Policy defines Insurance Program, in Section II(H), as "any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance" and "any other existing insurance under which coverage may be owed."

10.     The Individual Defendants requested coverage under the Primary Policy for legal fees and costs which they previously incurred in defense of the Icon Action and Securities Action and which they are continuing to incur in the Securities Action.  Upon information and belief, Illinois National responded that it could not reimburse any legal fees or costs absent an order from the Court granting relief from the automatic stay.

11.     On or about October 9, 2008, Illinois National filed a motion seeking relief from the automatic stay in order to advance the Individual Defendants' legal fees and costs.  The Official Committee of Unsecured Creditors filed an Objection to the Illinois National Motion on or about November 3, 2008.  A hearing on the Illinois National Motion was held on November 7, 2008.  At that time, the Court postponed ruling on the Illinois National Motion, scheduled a teleconference for November 24, 2008, and scheduled a further hearing on December 8, 2008.

12.     Illinois National has informed XL that it intends to withdraw the Illinois National Motion prior to the November 24 teleconference.

13.     To the extent Illinois National does not provide coverage for the Individual Defendants' legal fees and costs under the Primary Policy, the Individual Defendants have submitted the Icon Action and Securities Action for coverage under the A-Side Policy.  XL has reserved its right to deny and/or limit coverage for these actions based on various terms, conditions and exclusions from coverage contained in the A-Side Policy and under applicable law, including but not limited to the A-Side Policy provisions specifying that the A-Side Policy is excess to other Insurance Programs, such as the Primary Policy.

## III.     RELIEF REQUESTED AND BASIS THEREFOR

14.     Previously, this Court ruled that the Primary Policy was property of the Debtors' estate.  See In re SN Liquidation, Inc., 388 B.R. 579 (Bankr. D. Del. 2008).  XL has not waived the right to contest whether the Primary Policy and its proceeds are property of the Debtors' estate.

15.     Because of the Court's prior ruling, Illinois National sought—and XL now seeks– relief from the automatic stay in order to reimburse the Individual Defendants' **Defense Costs**. Section 362(d) provides that the Court may grant relief from the automatic stay on request from a party in interest "for cause."  11 U.S.C. § 362(d).  The determination of "cause" for purposes of this section is determined on a case-by-case basis.  See, e.g., In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Moreover, courts employ a "balancing test" in determining whether to lift the automatic stay, weighing inter alia whether any "great prejudice" will result to the debtor against the hardship to other parties if the stay is not lifted.  See, e.g., id.  In this case,

"cause" exists for granting relief from the automatic stay in order to permit Illinois National to make payments for **Defense Costs** under the Primary Policy.

16.    First, the Debtors' estate will not suffer "great prejudice" if the automatic stay is lifted for payment of the Individual Defendants' **Defense Costs**.  In light of the Primary Policy's Order of Payments provision, reimbursement of the Individual Defendants' **Defense Costs** "does not diminish the protection afforded the estate's assets under the terms of the Policy."  In re Laminate Kingdom, LLC, No. 07-10279-BKC-AJC, 2008 WL 1766637 at *3 (Bankr. S.D. Fla. Mar. 13, 2008).  When examining a provision similar to the one in the Primary Policy, the court in In re Laminate Kingdom noted that the policy required that proceeds be used *first* to pay non-indemnifiable loss under Coverage A, including costs of defense, and only after such payments are made, and only if proceeds remained after payment of such costs, would there be any payments for entity coverage:

> Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the Costs of Defense are paid.

> The Trustee's efforts to protect sufficient insurance proceeds to satisfy a large judgment against the former officers and directors or to protect the estate from potential liability is consistent with the duties of the Trustee and the general policy in favor of maximizing the value of the bankruptcy estate. . . .   However, the Code provides the Trustee no different status than a non-bankruptcy plaintiff with an unliquidated claim which may be covered by insurance proceeds . . . .

Id.

17.    Second, the Individual Defendants would be harmed if the automatic stay is not lifted.  "D&O policies are obtained for the protection of individual directors and  officers. . . . In essence and at its core, a D&O policy remains a safeguard of officer and director interests and

not a vehicle for corporate protection." In re First Cent. Fin. Corp., 238 B.R. 9, 16 (Bankr.

E.D.N.Y. 1999), aff'd sub nom Ochs v. Lipson, No. 99-cv-6730 (TCP), 2000 U.S. Dist. Lexis

22005 (E.D.N.Y. Mar. 2, 2000). In recognition of the importance of management's interest in

the proceeds of policies obtained primarily for its benefit, even those courts that conclude that

the proceeds of D&O policies are property of the Debtor's estate nonetheless grant relief from

the automatic stay in order to permit payment by insurers of defense expenses under the policies.

As explained by one court, "bankruptcy courts should be wary of impairing the contractual rights

of directors and officers even in cases where the policies provide entity coverage." In re

Adelphia Comm. Corp., 285 B.R. 580, 598 (Bankr. S.D.N.Y. 2002), vacated and remanded on

other grounds, 298 B.R. 49 (S.D.N.Y. 2003) (granting relief from stay in order to permit the

primary insurer to advance defense costs). See also In re Laminate Kingdom LLC, 2008 WL

1766637 at *4 ("numerous courts have granted relief from the automatic stay to permit the

advancement of defense costs to a debtor's directors and officers—even though the insurance

policies also provided direct coverage to the debtor."); In re RC Liquidating Co., No. 05-50475

C-11, 2007 WL 329183 at *2 (Bankr. M.D.N.C. Jan. 31, 2007) (finding adequate cause to lift

stay and permit payment of Defense Costs: "the court is satisfied that there are no countervailing

interests that outweigh the recognition and implementation of the contractual rights of the

Defendants under the Policy regarding Defense Costs."); In re Boston Regional Med. Ctr., Inc.,

285 B.R. 87 (Bankr. D. Mass. 2002) (granting relief from stay in order to permit use of D&O

policy proceeds for payment of directors' and officers' defense costs).[3] Likewise, here, the

Primary Policy was obtained primarily for the protection of the Debtors' directors and officers,

---

[3] Additional authority in support of relief from the stay is cited in the Illinois National
Motion and is incorporated herein by reference.

such as the Individual Defendants, and their interest in the Primary Policy's proceeds should be given priority.  The Primary Policy expressly provides priority of payment for its A-side coverage.

18.    In sum, the balancing test weighs in favor of lifting the automatic stay to permit Illinois National's payment of **Defense Costs**.  No pending action for which insurance coverage is being sought asserts any claims against the Debtors.  If the stay is not lifted, the Individual Defendants will be denied the benefit of any coverage under the Primary Policy to which they otherwise would be entitled.  The harm to the Individual Defendants thus would clearly outweigh any harm to the Debtors, which remains at most speculative and remote.

19.    In addition, failure to lift the automatic stay would cause harm to XL by turning the D&O insurance program upside down.  By its plain terms, XL's A-Side Policy was intended and designed to be excess over Illinois National's Primary Policy and any other available coverage.  The A-Side Policy expressly provides that its coverage "shall be specifically excess over, and shall not contribute with: . . . any Insurance Program."  The Primary Policy clearly falls within the A-Side Policy's definition of "Insurance Program," i.e., "any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance."  As noted above, the Primary Policy itself provided for priority of payments under its A-side coverage. Unambiguous insurance contracts should be enforced according to their terms.  <u>See, e.g.</u>, <u>ABB Flakt, Inc. v. National Union Fire Ins. Co.</u>, 731 A.2d 811, 816 (Del. 1999) ("The language of the insurance policy determines the scope of the coverage obligation. . . .  When the language is clear and unequivocal, a party will be bound by its clear meaning. . . . "); <u>Chiriboga v. International Bank for Reconstruction and Development</u>, 616 F. Supp. 963, 969 (D.D.C. 1985) ("[u]nder the law of the District of Columbia, the terms of an insurance policy, so long as they

are clear and unambiguous, express the contract between the parties and must be enforced. . . .").
Failure to grant relief from the automatic stay would, in effect, render the A-Side Policy a
primary policy, contrary to its plain language.

20.     Based on the foregoing, "cause" under 11 U.S.C. § 362(d) exists to warrant relief
from the automatic stay to permit Illinois National to advance payments of **Defense Costs** in
these matters.

21.     Finally, like Illinois National, XL is not requesting that this Court approve, review
or otherwise become involved in decisions regarding whether fees incurred in the Icon Action
and/or the Securities Action are reasonable, necessary, covered or otherwise owing under the
Primary Policy.  To the contrary, requiring review of defense costs when the insurer "will
already be closely monitoring the bills . . . results in an unnecessary additional review of Defense
Costs and a waste of scarce judicial resources."  See In re Tom's Foods, Inc., No. 05-40683
RFH, 2006 WL 3593450 at *2-3 (Bankr. M.D. Ga. Dec. 7, 2006).

## IV.   <u>CONCLUSION</u>

22.   For the foregoing reasons, XL respectfully requests relief from the automatic stay contained in 11 U.S.C. § 362, such that Illinois National may reimburse, under the Primary Policy, **Defense Costs** incurred in the Icon Action and Securities Action.


Date:  November 20, 2008                    Respectfully submitted,

                                            WHITE AND WILLIAMS LLP


                                            _James S. Yoder_

                                            _____
                                            James S. Yoder (DE Bar 2643)
                                            824 N. Market Street, Suite 902
                                            Wilmington, DE  19899-0709:
                                            Phone: (302) 467-4524
                                            Fax: (302) 467-4554
                                            YoderJ@whiteandwilliams.com

                                            Counsel for XL Specialty Insurance Company

**Of Counsel:**

Gary V. Dixon
Stephanie T. Schmelz
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006-1040
Telephone:  (202) 662-2000
Facsimile:   (202) 662-2190

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MOTION OF XL

SPECIALTY INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY SO

THAT ILLINOIS NATIONAL INSURANCE COMPANY MAY REIMBURSE DEFENSE

COSTS was made on November __, 2008 upon:

### SEE ATTACHED SERVICE LIST

Under penalty of perjury, I declare that the foregoing is true and correct.

_____

James S. Yoder