# Exhibit C

**Policy Number:** **ELU095338-06**

**Renewal of Number** ELU090504-05

☐ **Greenwich Insurance Company**

☒ **XL Specialty Insurance Company**

Members of the XL America Companies

---

**CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

---

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1.** Name and Mailing Address of Insured Entity:

InPhonic, Inc.
1010 Wisconsin Avenue NW
Suite 600
Washington, DC  20007

**Item 2.** Policy Period:  **From:** November 30, 2006  **To:** November 30, 2007
At 12:01AM Standard Time at your Mailing Address Shown Above

**Item 3.** Limit of Liability:

$15,000,000  Aggregate each Policy Period (including **Defense Expenses**)

**Item 4.** Optional Extension Period and Premium:

Length of Optional Extension Period:   One Year
Optional Extension Premium:        $247,500.00

**Item 5.** Notices required to be given to the Insurer must be addressed to:

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

**Item 6.** Premium:

Premium                  $165,000.00
Taxes, Surcharges or Fees:          $0.00
Total Policy Premium:         $165,000.00

**Item 7.** Policy Forms and Endorsements Attached at Issuance:

CL 71 00 03 00   XL 80 39 04 05   XL 80 24 03 03   CL 85 07 09 00   XL 80 31 04 04   Manuscript 753 06 03
CL 83 14 10 03   CL 80 18 09 02   XL 80 34 10 04   CL 80 75 08 04   CL 80 72 07 04   CL 80 27 10 02
XL 80 38 02 05   CL 83 03 08 01

---

Countersigned: _____  By: _____
                    Date                              Authorized Representative

---

THESE DECLARATIONS AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

CL 70 00 11 01

In **Witness** Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will **not** be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.

Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**

Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

# POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT OF 2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer:  **XL Specialty Insurance Company**
Policy Number:    **ELU095338-06**

# IN WITNESS ENDORSEMENT

XL SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICE:    SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040

STATUTORY HOME OFFICE:    1201 NORTH MARKET STREET
SUITE 501
WILMINGTON, DE 19801

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

John R. Glancy
President

Kenneth P. Meagher
Secretary

IL MP 9104 0406 XLS

# NOTICE TO POLICYHOLDERS

## U.S TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# PRIVACY POLICY

The XL America, Inc. insurance group ("We" or "Our Group"), respects the privacy of all personal information. Thus, the information We collect from our customers, or potential customers, is treated with the highest degree of privacy.

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws.

The term "personal information" includes all information we obtain about a customer and maintain in our files. All persons with access to personal information are required to follow this policy.

## Our Privacy Promise

Your privacy rights are important to us. Analysis of your private information allows us to provide to you excellent service and products. Your trust in us depends upon the security and integrity of our records. Thus, We promise to:

1) Follow strict security standards. This will protect any information you share with us, or that we receive about you.
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management. We will obtain only reputable references and services.
3) Collect and use the least amount of information necessary to:
   a. advise you and deliver excellent service and products; and
   b. conduct our business.
4) Train our employees to securely handle private information. We will only permit authorized employees to have access to such information.
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a. we disclose to you our intent to do so; or
   b. we are required to do so by law.
6) Not disclose medical information unless:
   a. you give us written consent to do so; or
   b. We disclose for any exception provided in the law.
7) attempt to keep our records complete and exact.
8) advise you how and where to access your account (unless prohibited by law).
9) advise you how to correct errors or make changes to your account.
10) inspect our procedures to ensure your privacy.

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services.

The information we collect come from the following sources:

- **Submission** – In the application, you provide: your name; address; phone number; e-mail address; and other types of private information.

- **Quotes** – We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost.
  The data we collect will vary with the type of insurance you seek.
- **Transactions** – We maintain records of all transactions with Our Group and our third party providers. Our records include:
  1) your coverage choices;
  2) premiums; billing; and payment records,
  3) claims history; and
  4) other data related to your account.
- **Claims** –We maintain records on any claims that are made under your policies.  The investigation of a claim involves collection of a broad range of information.  It also involves many issues, some of which do not directly involve you.  We will share with you facts that we collect about your claim; unless prohibited by law.  The process of claim investigation also involves advice; opinions; and comments from many people.  These may include attorneys and experts.  This will help us determine how best to handle your claim.  To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you.
- **Credit and Financial Reports** – We may receive your credit history.  This is to support information you provided during the submission and quote processes.  This history will help to underwrite your coverage.

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods. If we become aware that any information may be incorrect, we will make reasonable effort to correct it.

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes. This is true unless such sharing is permitted by law.  Information may be shared with a third party for necessary servicing of the product.  It may also be disclosed for other business reasons as permitted by law.

We do not share personal data outside of Our Group for servicing or joint marketing reasons.  We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party.

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group.  "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc.); solvency, etc.

We also do not disclose outside of Our Group personal information for use in marketing.  We may share information within Our Group regarding our experience and dealings with the customer.

We may disclose private information about a customer as allowed or otherwise required by law.  The law allows us to share a customer's financial data within Our Group for marketing purposes.  The law does not allow customers to limit or prevent such disclosures.

We may also disclose personal information about you or your business to:
- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;

- persons or groups that conduct scientific studies. This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order. This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation. This applies whether the transaction is proposed or complete;
- a professional peer review group. This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer. However, such consent shall not be prohibited, limited or sought for certain insurance functions. This includes, but is not limited to:

a. claims administration;
b. fraud prevention;
c. underwriting; policy placement or issuance; loss control or auditing.

## Access to Your Information

The following persons will have access to personal information we collect: employees of Our Group and third party service providers. Information will only be collected as is needed in transactions with you.

## Violation of the Privacy Policy

Any person violating this Policy will be subject to discipline. This may include termination.

For questions regarding this privacy statement, please contact your broker.



# CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Company identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

## I.   INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification from any source. If **Loss** is not paid by such other **Insurance Program** or as indemnification from any source, the Insurer will pay covered **Loss** on behalf of the **Insured Persons**, subject to all of the terms, conditions (including but not limited to Condition IV(B)) and limitations of the Policy.

## II.   DEFINITIONS

(A)   **"Application"** means:

    (1)   the **Application** attached to and forming part of this Policy; and

    (2)   any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)   **"Change In Control"** means:

    (1)   the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

    (2)   the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)   the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)   **"Claim"** means:

    (1)   a written demand for monetary or non-monetary relief;

    (2)   any civil or criminal judicial proceeding in a court of law or equity, or arbitration; or

    (3)   a formal civil, criminal, administrative, or regulatory proceeding or formal investigation against an **Insured Person**.

(D)   **"Company"** means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITIONS IV(C).

(E)   **"Defense Expenses"** means reasonable legal fees and expenses incurred in the defense of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)    wrongful termination of employment whether actual or constructive;

    (2)    employment discrimination of any kind;

    (3)    sexual or other harassment in the workplace; or

    (4)    wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Insurance Program**" means

    (1)    any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance, and

    (2)    any other existing insurance under which coverage may be owed.

(I)    "**Insured Person**" means:

    (1)    any past, present, or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)    any individual identified in (I)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent, or governor of any **Outside Entity**; or

    (3)    the lawful spouse of any person set forth in the above provisions of this definitions, but only to the extent the spouse is a party to any **Claim** solely in their capacity as a spouse of such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (I)(1), (2), and (3) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(J)    "**Interrelated Wrongful Acts**" means any **Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events.

(K)    "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay. **Loss** will not include:

    (1)    the multiplied portion of any damage award;

    (2)    fines, penalties or taxes imposed by law; or

    (3)    matters which are uninsurable under the law pursuant to which this Policy is construed.

Note: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for an **Insured Person**,

    

punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of counsel for the **Insured Person.**

(L)  **"Parent Company"** means the entity named in Item 1 of the Declarations.

(M)  **"Policy Period"** means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(N)  **"Outside Entity"** means any corporation or organization other than the **Company** of which any **Insured Person** serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific written direction of the **Company**.

(O)  **"Subsidiary"** means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(P)  **"Wrongful Act"** means:

   (1)  any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

   (i)  **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

   (ii)  **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of an **Outside Entity**; and

   (2)  any **Employment Practices Wrongful Act**.

## III.  EXCLUSIONS

(A)  Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

   (1)  by, on behalf of, or at the direction of the **Company** or **Outside Entity**, except and to the extent such **Claim**:

   (i)  is brought by a security holder of the **Company** or **Outside Entity** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of the **Company** or any **Outside Entity**.

   (ii)  is brought by the Bankruptcy Trustee or Examiner of the **Company** or **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or **Outside Entity**;

   (2)  brought about or contributed to in fact by any:

   (i)  intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

   (ii)  profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

   as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(B)  The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**:

(1)     for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof.  EXCLUSION (B)(1) shall not apply to any **Claim**:

    (i)     brought by a security holder of the **Company** or **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

    (ii)    a derivative action brought by or on behalf of, or in the name or right of, the **Company**, and brought and maintained independently of, and without solicitation, assistance, participation or intervention of the **Company**, **Insured Person**, or **Outside Entity**.

(2)     based upon, arising out of, directly or indirectly resulting from, in  consequence of, or in any way involving any fact, circumstance or situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or any other similar insurance.

Note:  EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**.

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

### (A)    Limit of Liability

The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy.  Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

### (B)    Indemnification and Other Insurance

(1)     The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

    (i)     all indemnification to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

    (ii)    any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess, or otherwise.

(2)     This Policy shall not be subject to the terms or conditions of any other insurance.  The Insurer does not waive compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification.

### (C)    Mergers and Acquisitions

(1)     If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)    With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act** committed at any time during which such entity, asset, liability, or **Subsidiary** is not insured under this Policy.

(3)    If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4)    If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**; and

    (i)    coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

    (ii)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

**(D)   Notice**

(1)    As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)    If, during the **Policy Period**, the **Insured Persons** or the **Company** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

    (i)    provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

    (ii)    request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the Policy Period.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

**(E)   Defense and Settlement of Claims**

(1)    It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**. No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2)    Upon written request, the Insurer will pay on a current basis any **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on

behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)    Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**.

(F)    **Assistance, Cooperation and Subrogation**

(1)    The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons**. The **Insured Persons** and the **Company** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)    **Interrelated Claims**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) and (2) above, if applicable.

(H)    **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **Cancellation and Renewal of Coverage**

(1)    Except for the nonpayment of premium, as set forth in (I)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Person**, if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(J)    **Optional Extension Period**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the

period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)    **Representation Clause**

Each **Insured Person** represents that the statements and particulars contained in the **Application** are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy. No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against any other **Insured Person**.

(L)    **Action Against the Insurer, Assignment, and Changes to Policy**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

(i)    there has been full compliance with all of the terms and conditions of this Policy; and

(ii)    the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Person** to determine their liability, nor may the **Insured Person** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)    **Authorization and Notices**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect:

(1)    the payment of the premiums,

    

    (2)      the receiving of any return premiums that may become due under this Policy,

    (3)      the giving of all notices to the Insurer as provided herein, and

    (2)      the receiving of all notices from the Insurer.

(N)    **Entire Agreement**

The **Insured Persons** agree that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** in relation to the insurance.

**Endorsement No.: 1**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

XL 80 39 04 05

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF ADDRESS OF INSURER ENDORSEMENT

In consideration of the premium charged, as of the effective date of this Endorsement:

**Notices required to be given to the Insurer must be addressed to:**

**Notice to Claim Dept:**
XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept.

**All other Notices:**
XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

**Endorsement No.: 2**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 85 07 09 00

**Endorsement No.: 3**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DISTRICT OF COLUMBIA AMENDATORY ENDORSEMENT

Clause IV. CONDITIONS (I) Cancellation and Renewal of Coverage (2) is amended by deleting the words "twenty (20) days" and replacing them with the words "thirty (30) days".

# DISTRICT OF COLUMBIA ADDENDUM TO APPLICATION

The Application for Classic A-Side Management Liability Insurance Coverage Form is amended by the addition of the following:

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** "WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT."

**Endorsement No.: 4**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

XL 80 31 04 04

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# WORLDWIDE COVERAGE ENDORSEMENT

In consideration of the premium charged, coverage under this Policy shall extend anywhere in the world.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 753 06 03

**Endorsement No.: 5**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND CONDITION (E)(2) ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (E)(2) of the Policy is amended to read in its entirety as follows:

"(2)    Upon written request, the Insurer will pay on a current basis any Defense Expenses before the disposition of the Claim for which this Policy provides coverage.  As a condition of the advancement of Defense Expenses, the Insurer may require a written undertaking, in a form satisfactory to the Insured, to repay any Loss including Defense Expense paid to or on behalf of the Insured Persons if it is finally determined that the Loss incurred is not covered under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 83 14 1O 03

**Endorsement No.: 6**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to November 16, 2005.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 18 09 02

**Endorsement No.: 7**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND CONDITIONS (B)(1) ENDORSMENT

In consideration of the premium charged, Section IV Conditions (B)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

(i)    all indemnification to which an Insured Person may be entitled from any source, including but not limited to the Company or any Outside Entity; and

(ii)    any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if Loss is not paid by such other insurance or as indemnification, this Policy will respond on behalf of the Insured Persons as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position."

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 34 10 04

**Endorsement No.: 8**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# RESCISSION ENDORSEMENT

In consideration of the premium charged, the Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 75 08 04

**Endorsement No.: 9**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DEBTOR IN POSSESSION ENDORSEMENT

In consideration of the premium charged, the term "Company," as defined in Section II Definitions (D) of the Policy, shall include the Parent Company and any covered Subsidiary as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 72 07 04

**Endorsement No.: 10**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND LOSS DEFINITION ENDORSEMENT

In consideration of the premium charged, the "Note" to Section II Definition (K) of the Policy is amended to read in its entirety as follows:

"Note:    With respect to judgments in which punitive, exemplary or multiplied damages are awarded, the law of the jurisdiction most favorable to the insurability of punitive, exemplary or multiplied damages shall control, provided such jurisdiction:

(i)    is where such punitive, exemplary or multiplied damages were awarded;

(ii)    is where the Parent Company or any Subsidiary is incorporated or otherwise organized or has a place of business;

(iii)    is where the Insurer is incorporated or has its principal place of business; or

(iv)    is where the Wrongful Act was committed."

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 27 10 02

**Endorsement No.: 11**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ADD INSURED PERSON ENDORSEMENT

In consideration of the premium charged, the term "Insured Person," as defined in Section II Definitions (I) of the Policy, is amended to include Greg Cole, Gary Tiedemann, Tripp Donnelley.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 38 02  05

**Endorsement No.: 12**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INCONSISTENCY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy modified b y another endorsement attached to this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of the endorsement which are more favorable to the Insured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 83 03 08  01

**Endorsement No.: 13**
**Named Insured: InPhonic, Inc.**
**Policy No.: ELU095338-06**

**Effective: November 30, 2006**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND EXCLUSIONS (A)(2) ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (A)(2) of the Policy is amended to read in its entirety as follows:

"(2)    brought about or contributed to in fact by any:

    (i)    intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

    (ii)    profit or remuneration gained by any Insured Person to which such Insured Person is not legally entitled;

    as determined by a final adjudication in the underlying action;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 83 03 08 01

XL 80 20 01 02

Endorsement No.: 14
Named Insured: InPhonic, Inc.
Policy No.: ELU095338-06

Effective: November 30, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# ADD/DELETE AN ENDORSEMENT
# (FOR ADDITIONAL PREMIUM)

In consideration of an additional premium of $247,500.00 charged:

(1)    Endorsement No. 15 to this Policy is added to this Policy.

(2)    Item 6. of the Declarations is amended to read in its entirety as follows:

"Item 6. Premium:  $412,500.00 Total Policy Premium"

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 15
Named Insured: InPhonic, Inc.
Policy No.: ELU095338-06

Effective: Nov. 30, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# OPTIONAL EXTENSION PERIOD

In consideration of the additional premium of $247,500.00, the Insureds have exercised their right to purchase an Optional Extension Period for the period from:

November 30, 2007 to November 30, 2008

All other terms, conditions and limitations of this Policy remain unchanged.