# EXHIBIT A

**TRANSFIRST®**

APPLICATION FOR MERCHANT PROCESSING

FIFTH THIRD BANK (MERCHANT BANK)
38 Fountain Square Plaza
Cincinnati, OH 45263
800.972.3030

Short Name: **NDMS**   Assoc #: **092611**   Sales Rep Name: **Todd Eichner**

☒ TransFirst (Processor)/Fifth Third Bank (Merchant Bank) 38 Fountain Square Plaza, Cincinnati, OH 45263
☐ Patriot Act   ☐ Free-Use Equipment Addendum   ☐ Lease Documents   ☐ Gift Card   ☐ Check Processing   ☐ Merchant Setup Options
☒ Merchant Agreement V.4 Term   ☐ CNP Addendum   ☐ Specialized Services Addendum

## Business Information

| | |
|---|---|
| Legal Business Name **InPhonic, Inc.** | Business Name / DBA **InPhonic, Inc.** |
| Legal or Mailing Address **1010 Wisconsin Ave, Ste 600** | Business Address (Physical, No PO Boxes) **10803 Parkridge Blvd, Ste 100** |
| City **Washington**  State **DC**  Zip **20007** | City **Reston**  State **VA**  Zip **20191** |
| Legal Phone # **202·333·0001**  Legal Fax # **202·333·5007** | DBA Phone # **703·636·4600**  DBA Fax# **703·636·4642** |
| Federal Tax ID (Must Be 9 Digits) **52/2199384** | Location Contact **Suzanne Kraus** |
| New Business/Owner  ☒ no  ☐ yes | Email Address **skraus@inphonic.com**  Website **www.inphonic.com** |

Ownership Establish Date/Date of Birth (if sole proprietorship)
**1·27·97**

Seasonal: ☒ no ☐ yes
Months Open: J F M A M J J A S O N D

Type Of Ownership
☐ Sole Proprietorship ☐ LLC ☐ Partnership ☐ Ltd Partnership
☒ Corporation, check one: ☒ Publicly traded ☐ Private ☐ Non Profit

Description of products/services sold
**Online mobile phone equipment, activations, sales**

| Card Swiped: _____ % | Currently Processing: ☒ YES ☐ NO |
|---|---|
| Manual With Imprint: _____ % | Dial Pay  ☐ YES ☒ NO |
| Manual No Imprint: **100** % | |
| (Must Equal 100%) | Average Ticket: $ **100** |
| Business To Business: _____ % | High Ticket: $ **250** |
| | Monthly Volume: $ **2MM** |

Mailing Address:
☐ Legal   ☒ DBA

Any prior Bankruptcies? ☒ no ☐ yes
If yes, how long ago? _____
☐ Personal   ☐ Business

Refund Policy:
☐ No Refund ☒ Refund in 30 days or less ☐ Merchandise Exchange
☐ Other _____

## Owners / Officers Information

| Principal Name/ Title **Lawrence S. (Larry) Winkler, CFO** | % Ownership | Social Security # ___/___/___ | Home Address, City, State, Zip | Phone # |
|---|---|---|---|---|
| Principal Name/ Title | % Ownership | Social Security # ___/___/___ | Home Address, City, State, Zip | Phone # |

## Banking Information

| ABA Routing Number (9 digits) **121137522** | DDA Account Number (full Account number)* **1891668467** | Bank Name **Comerica** | Phone Number **800·269·9050** |
|---|---|---|---|

Please select one for ACH account type listed above:   ☐ Checking (Demand account)   ☐ Savings account   ☐ Bank GL account

*AUTHORIZATION FOR AUTOMATIC FUNDS TRANSFER (ACH): The Merchant Bank is authorized to initiate or transmit automatic credit and/or debit and/or check entries to the account identified in the *attached voided check* relating to the above account for all services under this Agreement. Said authority is granted to processor and all parties and their agents.

## Trade References

| Trade Name | Account # | Product Sold | Phone #'s (No 800 #'s) |
|---|---|---|---|
| | | | |
| | | | |

## Transaction Types

Do you bill your customer prior to goods being shipped? ☐ no ☒ yes
If Yes, how many days? ☒ 0-2 days   ☐ 3-30 days   ☐ 31-60 days   ☐ 60-90 days   ☐ Over 90 days

How do you advertise?
☐ Yellow pages   ☐ Telemarketing   ☐ Catalog   ☒ Internet   ☐ Word of mouth   ☐ Publications   ☐ Mass/Direct mail   ☐ Other

Have you ever accepted credit cards before? ☒ Yes   ☐ No   If Yes: Processor Name **Paymentech**
(Provide the most recent 3 months of processing statements. MOTO merchants applying for e-Payment services, provide most recent 6 months of processing statements.)

Number of locations? _____ If you are affiliated with an existing account, please provide existing merchant ID#

Qualified Processing Method (Select One):
☐ EDC Retail   ☒ EDC Card Not Present (CNP)   ☐ Dial Pay   ☐ Cash Advance
* If processing via mail, phone or Internet: supply copy of print advertising, catalogs and brochures. Where applicable, provide: videotape (TV), audio tape (Radio or TV), and Web-page screen prints/URL (Internet).

(New App V3.1 Rev 1/05)   Page 1 of 3   Merchant initials

**TRANSFIRST®**

APPLICATION FOR MERCHANT PROCESSING

FIFTH THIRD BANK (MERCHANT BANK)
38 Fountain Square Plaza
Cincinnati, OH 45263
800.972.3030

## Access to Cardholder Information

List the names of each your independent contractors or agents that will have access to cardholder data

## Schedule of Fees

### Card Acceptance
☒ All Visa/MasterCard Cards ☐ Visa/MC Credit & Business Cards Only ☐ Visa/MasterCard Debit Cards Only ☐ Pin Based Debit/EBT Cards
☒ Discover ☒ American Express ☐ Diners/Carte Blanche ☐ JCB

### Fee Schedule

DISCOUNT METHOD: ☐ Daily ☒ Monthly

| MOTO PRICING? ☐YES ☐NO | Check Card Rebate (signature based) | Qualified Discount | Mid-Qualified Surcharge* | Non-Qualified Surcharge* | Visa/MC Transaction Fee | Visa/MC Item Fee |
|---|---|---|---|---|---|---|
| Visa®/MasterCard® (Credit & Business Cards) | | I/C + .35% | Qualified+___.___% | Qualified+___.___% | $ $.05 | |
| Visa®/MC® DEBIT (Signature Based) | ___.___% | ___.___% | Qualified+___.___% | Qualified+___.___% | $ | $ |
| Discover® | | ___.___% | | | $ | $ |
| American Express® | | ___.___% | | | $ | $ |

*All Mid/Non-qualified fees apply to all Visa/MC Card types

### Other Card Fees / Transaction Fees / Misc. Fees

| | | | | | |
|---|---|---|---|---|---|
| Visa/MC Pin Based Debit Trans Fee | $ | Minimum Visa/MC® Discount Fee | $25 | Application Setup Fee | $ |
| EBT Transaction Fee | $ | Monthly Statement Fee | $10 | Discover® Application Fee | $ |
| Diners Club | $ | Debit Monthly Fee | $ | Pin Based Debit/EBT Application Fee | $ |
| JCB | $ | Pin Based EBT Monthly Fee | $ | TransLink Monthly Fee | $ |
| Voice Auth/ARU | $0.95 | Annual Fee | $ | Wireless Terminal Setup Fee (one-time) | $50.00 (per Terminal) |
| Non-AVS Adjustment | $0.50% | ACH Return/Change Fee | $15.00 | Wireless Monthly Gateway Fee | $15.00 (per Terminal) |
| Wireless per Transaction Fee (in addition to Visa/MC Transaction Fee) | $0.05 | Minimum Chargeback Fee | $15.00 | Network release Fee (Semi Annual) | $13.50 |
| | | Retrieval Fee | $15.00 | | |
| | | Monthly Merchant Club Fee | $12.50 | | |

*All Batch closing & Batch inquiry fees are considered "transactions" and will be billed at the same rate as Visa® transaction fee

### Other Services (Check Service/Gift-Loyalty Cards) NOTE: These services are provided by TransFirst and not Merchant Bank
Check Services (Select One):
Verification ☐ Standard Guaranty ☐ Premium Verification ☐Premium Guaranty (Attach Check Service Addendum/fee Schedule)
Merchant Gift Card and Loyalty Program (select one):
☐Gift only ☐ Giftcard Plus (Attach Gift Card Addendum/fee Schedule)

### Equipment Options

| Item | Model | QTY | Code | Price |
|---|---|---|---|---|
| Terminal | | | | |
| Terminal | | | | |
| Printer(s) | | | | |
| Pin Pads | | | | |
| Check Reader | | | | |
| Other | cybersource | | | |
| Other | | | | |
| Other | | | | |
| Other | | | | |

Equipment Billing: ☐Agent ☐Merchant
Ship Equipment: ☐Legal ☐DBA ☐Agent ☐Other
Send Welcome Kit: ☐Legal ☐DBA ☐Agent ☐Other
Training By: ☐TransFirst ☐Agent ☐Other

Other:
Name:
Address:
City:
State/Zip:

PN=Purchase New/PO=Purchase Other Source MO=Merchant Owned/RF=Refurbished/O=lease/
(Shipping, handling and tax will be billed in addition to the equipment price listed above.)

Additional Shipping Information:

(New App V3.1 Rev 1/05)          Page 2 of 3          Merchant initials

 **TRANSFIRST** *

APPLICATION FOR MERCHANT PROCESSING

**FIFTH THIRD BANK (MERCHANT BANK)**
38 Fountain Square Plaza
Cincinnati, OH 45263
800.972.3030

Agreement Signature: By signing below, each of the Merchant and Guarantors (1) certifies, under penalty of perjury, that all information and documents submitted with this Application are true and complete; (2) authorizes Processor and its agents to verify any of the information given, including credit references, and to conduct an initial and ongoing investigation business comprehensive credit reports and investigations; (3) acknowledges receipt of the Merchant Card Processing Agreement ("Agreement") including the Continuing Guaranty ("Guaranty") contained within the Agreement, any applicable Addendum ("Addendum") to the Agreement and agrees to be bound by and perform in accordance with all provisions, terms and conditions of the Agreement, the Guaranty, the Guide and any applicable Addendum; (4) agrees to be bound by and perform in accordance with terms, conditions and provisions of any Merchant Card Processing Agreement between any Merchant Affiliate of Merchant and Processor and its agents and Merchant Bank ("Merchant Affiliate Agreement"), regardless of whether such Merchant Affiliate Agreement currently exists or is executed, amended or supplemented at some future date; (5) agrees that Processor and its agents and Merchant Bank may rely upon copies or facsimiles of this Application bearing Merchant's and Guarantor(s)'s signatures, or on copies or facsimiles of other documents bearing Merchant's and Guarantor(s)'s signatures, and that any such copies or facsimiles shall be treated for all purposes as originals of the Application or other document.

If quoted above, Merchant hereby requests Discover Card acceptance be added to this Application. Merchant understands that the Terms and Conditions for Discover Card Acceptance ("Discover Card Terms and Conditions") will be sent to Merchant upon approval by Discover Financial Services, Inc. for Merchant to accept the Discover Card by Discover Financial Services, Inc. By accepting the Discover Card for the purchase of goods and/or services, Merchant agrees to be bound by the Discover Card Terms and Conditions. By signing below, Merchant represents that the information provided on the Application is complete and accurate and Merchant authorizes American Express Travel Related Services Company, Inc ("American Express") to verify the information on this Application and to receive and exchange information about Merchant, including, requesting reports from consumer reporting agencies. If Merchant asks American Express whether or not a consumer report was requested, American Express will tell Merchant, and if American Express received a report, American Express will give Merchant the name and address of the agency that furnished it. Merchant understands that upon American Express' approval of the business entity indicated above, to accept the American Express Card, the Terms and Conditions for American Express®Card Acceptance ("American Express Terms and Conditions") will be sent to such business entity along with a Welcome Letter. By accepting the American Express card for the purchase of goods and/or services, Merchant agrees to be bound by the American Express Terms and Conditions. If selected above, Merchant agrees to be bound by and perform in accordance with all the terms and conditions and provisions of the Check Services Agreement. Merchant hereby requests Check Service acceptance be added to this Application. Merchant understands that the Terms and Conditions for check Service will be sent to Merchant upon approval by CrossCheck. If quoted above, Merchant hereby requests CrossCheck acceptance be added to this Application. Further, Merchant agrees to and accepts all terms and conditions as set forth by CrossCheck. If quoted above, Merchant hereby requests Tender Card Gift and Loyalty card acceptance be added to this Application. Further, Merchant agrees to and accepts all terms and conditions as set forth by Tender Card. Early Termination Fees apply; See Terms and Agreements.

**MERCHANT(S) SIGNATURE**

Χ _____  7/22/06

(1) Principal/Owner for Merchant    Date

CFO, INPHONIC, INC
L. WINKLER

(1) Print Name                     Title

Χ _____

(2) Principal/Owner for Merchant    Date

(2) Print Name                     Title

**GUARANTOR(S) SIGNATURE**

Χ _____

(1) Guarantor Signature (no titles)    Date

(1) Print name

Χ _____

(2) Guarantor Signature (no titles)    Date

(2) Print name

**FOR INTERNAL USE ONLY**

X) _____

Accepted by Processor           Date

Print name          Title

X) _____

Accepted by Agent Bank          Date

Print name          Title

X) _____

Accepted by Merchant Bank       Date

Print name          Title

# MERCHANT CARD PROCESSING AGREEMENT

This Merchant Card Processing Agreement is for merchant card payment processing services between the merchant ("Merchant") that signed the Application (the "Application") and the bank named in the Application (the "Merchant Bank") and the Processor named in the Application (the "Processor"). The Processor and the Merchant Bank are collectively hereinafter referred to as the "Bank". Processor and Merchant Bank reserve the right to allocate Bank's duties and obligations amongst themselves as they deem appropriate in their sole discretion, and Merchant Bank or Processor may jointly or individually assert or exercise any rights or remedies provided to Bank hereunder.

The appendices, addenda, schedules, Operating Guide and **FEE SCHEDULE** that accompany this Merchant Card Processing Agreement, as amended from time to time as provided herein, are part of the terms and conditions of this Agreement, as are the Application and the Operating Rules, and are individually and collectively hereinafter referred to as the "Agreement."

According to the processing services selected by Merchant on the Application and, in accordance with the terms of this Agreement and applicable Operating Rules, Merchant agrees:

- to participate in the Bank's Card processing program by honoring Valid Cards in accordance with this Agreement; and
- to submit sales drafts, Credit Vouchers and other electronic data to Bank for the Card Program services provided by Bank.

## Section 1. DEFINITIONS.

**1.01** **"Acceptance"** is the process by which Merchant allows a Card or electronic debit or credit entry to be used by a Cardholder as a means of payment.

**1.02** **"ACH"** means the Automated Clearing House Network.

**1.03** **"ACH Rules"** means, collectively, the National Automated Clearing House Association ("NACHA") Operating Rules and NACHA Operating Guidelines, as the same are amended from time to time.

**1.04** **"Address Verification Service" (AVS)** is a Card fraud prevention tool designed for mail order, telephone order and electronic commerce (internet) merchants and other electronic transactions. Use of AVS is not a guarantee that a Card Transaction is valid.

**1.05** **"Adjustment"** is one or more transactions involving a Credit Voucher, a Chargeback, or a correction to the Settlement Account resulting from a Card Transaction

processing error, or from Merchant's failure to follow the Operating Rules.

**1.06** **"Application"** is the Application for Merchant Agreement that Merchant completed and signed and which is subsequently individually accepted by both Processor and Merchant Bank by execution or as otherwise provided herein..

**1.07** **"Authorization"** is the process whereby Merchant in compliance with the Operating Rules for each Card obtains approval of a Charge from the Card Issuer. An Authorization indicates only the availability of the Cardholder's credit limit at the time the Authorization is requested.

**1.08** **"Authorization Code"** is a message obtained through the Card Associations' Authorization networks that informs Merchant that a Card transaction has been approved.

**1.09** **"Batch"** is a term that collectively refers to Card transactions delivered for processing in a file and processed within a given period of time, usually daily.

**1.10** **"Business Day"** is Monday through Friday excluding Merchant Bank holidays. Each Business Day ends at the cut-off time specified by Merchant Bank. Charges submitted for processing on a holiday, weekend, or after the cut-off time are treated as received the following Business Day.

**1.11** **"Card"** is any Visa-branded or MasterCard-branded Credit and Business Cards or Debit Cards, private-label credit card, ATM/debit Card, or any other card issued by a member of a Card Association which Bank may at any time specify in writing as an additional Card payment option available to Merchant (See also "Valid Card").

**1.12** **"Card Not Present"** or **"CNP"** is a Card Transaction wherein neither the Cardholder nor the Card is physically present at the Point of Sale. Mail order and telephone order (MO/TO), electronic commerce and Preauthorized Transactions are collectively referred to as "CNP Transactions".

**1.13** **"Card Program"** is one or more programs of financial service Cards honored by Merchants and financial institutions for presentment and collection of Cardholder indebtedness.

**1.14** **"Card Transaction"** is the honoring of a Card by Merchant to purchase Merchant's goods or services.

**1.15** **"Cardholder"** is the person issued a Card and a corresponding account by a Card Issuer.

**1.16** **"Cardholder Account"** is the account of a Cardholder as represented by a Card.

**1.17** **"Card Association"** refers to any entity formed to administer and promote Cards, including, without limitation,

MasterCard International, Incorporated ("MasterCard") Visa U.S.A. Inc. and Visa International (collectively, "Visa"). In the case of On-line Debit Transactions, "Card Association" includes the Debit Networks.

**1.18** **"Card Issuer"** is the institution authorized by a Card Association to issue Cards to Cardholders and that has issued a Card presented to Merchant for a Charge or Credit Voucher.

**1.19** **"Card Verification Value (CVV)/Card Validation Code 2 (CVC2)"** is a unique value encoded on the Magnetic Stripe of a Card used to validate Card information during the Authorization process.

**1.20** **"Card Verification Value 2 (CVV2)/Card Validation Code 2 (CVC2)"** is a code derived by the Card Issuer and printed on the reverse side of a Card. The CVV2/CVC2 is used to deter fraudulent use of an account number in a CNP Transaction.

**1.21** **"Charge"** is the evidence of an obligation of a Cardholder arising from a Card Transaction with Merchant which is submitted by Merchant in paper or electronic form to Bank for processing through a Card Association's interchange system so that payment may be made to Merchant and the amount of the Charge posted to the Cardholder Account. A Charge also may be referred to as a "Charge Record," "sales draft" or "sales slip."

**1.22** **"Chargeback"** is a return of a Charge to Merchant, typically initiated by a Cardholder through a Card Issuer, for transmittal to and payment by Merchant under Operating Rules established by the Card Associations.

**1.23** **"Credit and Business Cards"** are any Visa-branded or MasterCard-branded Cards that are adopted by Visa or MasterCard for use in connection with their consumer credit and charge Card Programs, any Visa-branded or MasterCard-branded business, corporate or, commercial Card (includes business, corporate and public sector credit, charge or debit Cards), and any other Visa-branded or MasterCard-branded Card that is not defined as a Debit Card.

**1.24** **"Credit Voucher"** is the evidence of a partial or total refund of a Charge submitted by Merchant to Bank in paper or electronic form for processing through a Card Association interchange system so that credit may be made to a Cardholder Account. A Credit Voucher may also be referred to as a "Credit Slip".

**1.25** **"Debit Cards"** are Visa-branded or MasterCard-branded consumer Cards issued by U.S. Card Issuers that when presented for payment, access, debit, hold or settle funds from a consumer's demand deposit, investment or other asset account. Examples of Debit Cards include: Visa Classic, Gold and Platinum Check Cards; Visa Check Card II Check Cards; Visa Buxx Cards; Visa Payroll Cards; Visa Gift Cards; and MasterCard Standard, Gold, and Platinum debit Cards.

**1.26** **"Debit Network"** is an online data processing system used to support PIN based Card Transactions.

**1.27** **"Installment Billing Transaction"** is a single purchase of goods that is divided into two or more installment payment transactions made in a Card Not Present environment.

**1.28** **"Magnetic Stripe"** refers to a stripe of magnetic information affixed to the back of a plastic credit or debit Card. The magnetic stripe contains essential Cardholder and account information.

**1.29** **"Merchant Affiliate"** is any entity or account designated as "Affiliated" on the Application and, in addition, any person or entity which is owned or controlled, in whole or in part, by Merchant or any of Merchant's principal business owners identified in the Application ("Principals").

**1.30** **"Merchant Bank"** is the Bank so named in the Application.

**1.31** **"Merchant Identification Number (MID)"** is the identification number assigned to Merchant by Bank for the purposes of participation in Bank's Card Program. Merchant may be assigned multiple MIDs.

**1.32** **"On-line Debit Card Transaction"** is a Card Transaction between the Merchant and the Cardholder that is initiated with a Card that is processed through a Debit Network, and that requires entry of a Cardholder's personal identification number ("PIN") during the transaction process.

**1.33** **"Operating Guide"** means the then-current manual prepared by Bank, containing operational procedures, instructions and other directives relating to Card Transactions. a copy of the current Operating Guide may be accessed at Processor's web site at *[insert URL]*.

**1.34** **"Operating Rules"** are relevant portions of Operating Regulations, Operating Manuals, Official Rules, Bulletins, Notices, and similar documents issued by Card Associations, Debit Networks, Merchant Bank or Processor.

**1.35** **"Point of Sale"** or **"POS"** is each location of Merchant where Merchant and Cardholder can jointly complete a Charge or Credit Voucher transaction in connection with the Cardholder's purchase of goods or services provided by Merchant.

**1.36** **"Preauthorized Health Care Transaction"** is a Card Transaction for which a Cardholder has given a health care Merchant written permission to the Cardholder Account for services.

**1.37** **"Preauthorized Transaction"** is a Card Transaction for which a Cardholder has given advance permission to

periodically charge the Cardholder Account. Preauthorized Transactions include Recurring Transactions, Installment Billing Transactions, and Preauthorized Health Care Transactions.

**1.38** "**Processing Fees**" are the fees payable by Merchant to Bank for the Card Program services Bank provides to Merchant in connection with this Agreement, as specified in the **FEE SCHEDULE** to the Application.

**1.39** "**Recurring Transaction**" is a Card Transaction where the Cardholder provides permission, in either written or electronic format, to a Merchant to periodically charge the Cardholder Account for recurring goods or services, including, but not limited to, insurance premiums, subscriptions, monthly internet access fees, membership fees, tuition, or utility charges.

**1.40** "**Regulation E**" means the regulations, together with all staff interpretations issued thereunder, published by the Federal Reserve Baird to implement The Electronic Funds Transfer Act. "Regulation E" includes specific rules for all parties involved governing the issuance and use of Debit Cards and the processing of On-line Debit Card Transactions.

**1.41** "**Settlement Account**" is the checking account or other acceptable deposit account Merchant maintains at a depository institution acceptable to Bank for credit of Charges by Merchant Bank and debit of Credit Vouchers, Chargebacks, Processing Fees and any fines or fees assessed by Card Associations or other governmental agency or entity having authority.

**1.42** "**Valid Card**" is a Card that is (1) properly issued under the authority of a Card Association (not counterfeit); (2) "current" according to any beginning and expiration dates on the Card; (3) signed by the Cardholder named on the front or other authorized signer, or in the case of CNP Transactions, in compliance with the applicable Operating Rules; (4) not listed at the time of a Charge in a warning bulletin or notice issued by a Card Association; and (5) not visibly altered or mutilated when physically present at the POS.

### Section 2. MERCHANT'S APPLICATION AND INFORMATION.

By completing and signing the Application, Merchant applies for the Card Program services covered by the Application and this Agreement. In its sole and absolute discretion, Processor and/or Merchant Bank may accept or reject Merchant's Application. Merchant may present Charges to Bank only for the activities and in the volumes described on the Application, including the percentage of mail/phone order and electronic commerce (internet) transactions.

### Section 3. MERCHANT'S GENERAL DUTIES.

**3.01** Merchant will comply with this Agreement for submitting and processing Charges and Credit Vouchers with Bank. Bank is responsible to Merchant for processing Card Transactions under the Operating Rules for the Card Program services to which Merchant subscribes, which may vary among Card types.

**3.02. Merchant may choose to accept (i) Debit Cards only, or (ii) Credit and Business Cards only or, (iii) both Debit Cards and Credit and Business Cards.** The applicable discount rates for Debit Cards and Credit and Business Cards are stated on the **FEE SCHEDULE**. Merchant shall designate which Card type(s) Merchant will accept upon the signing of the Application.

**3.03   General Requirements.**   For Card Transactions, Merchant will:

A.   Honor all Valid Cards of the Card type(s) selected under **Section 3.02** of this Agreement.

B.   Honor all Valid Visa-branded or MasterCard-branded Cards issued by a non U.S. Card Issuer.

C.   Not accept Cardholder payments for previous Card charges incurred at the Merchant location.

D.   Not establish minimum or maximum amounts for Card Charges or Credit Vouchers unless otherwise required or allowed by the Operating Rules.

E.   Not impose any surcharge or convenience fee on Card Charges or transactions if the surcharge or convenience fee is prohibited by the Operating Rules.

F.   Not require a Cardholder to complete a postcard or similar device that includes the Cardholder Account number, Card expiration date, signature or any other Card account data in plain view when mailed.

G.   Include any tax on a purchase in the total Charge amount.

H.   Not request or use a Cardholder Account number for any purpose other than as payment for Merchant's goods or services.

I.   Not disburse funds in the form of travelers cheques or other non-cash media, if the sole purpose is to allow a Cardholder to make a cash purchase of goods or services from Merchant.

J.   Not use a Charge to make a cash advance to any person or to disburse funds in the form of cash, except for specialized transactions previously authorized by Bank in writing.

K. Not require a Cardholder to provide fingerprints or other personal information, such as address, license, telephone number or social security number as a condition for honoring a Card, unless required to do so by the Operating Rules.

L. Not make a photocopy of a Card or require the Cardholder to provide a photocopy or facsimile of a Card unless the photocopy or facsimile is needed for a Card recovery program of Bank or a Card Association.

M. Not submit Card Charges for processing without physical possession of a Card unless pre-approved in writing by Bank, either on the Application or in other written form.

N. Comply with all laws in completing Card Transactions, performing obligations under this Agreement, and otherwise conducting Merchant's business.

O. Not accept Cards for transactions that are classified as "Quasi-Cash Transactions" including, but not limited to, the sale of casino gaming chips, money orders, opening deposits on financial or other accounts, wire transfer money orders, or the issuance of scrip.

P. Not accept a Card to collect or refinance an existing debt that has been deemed uncollectible by Merchant.

Q. Not enter into interchange a Charge that represents collection of a dishonored check.

R. Not require a Cardholder, as a condition of honoring a Card, to sign a statement that waives the Cardholder's rights to dispute the transaction with the Card Issuer.

S. As applicable, accept CNP Transactions in accordance with the terms of the **CNP ADDENDUM**.

**3.04    Merchant's Responsibility for Acts of Others.** Merchant, and not Bank, is responsible for any advice from, acts of, as well as omissions, acts of fraud or acts of misconduct by Merchant's employees, processors, consultants, advisors, contractors, agents, officers and directors. Merchant, and not Bank, is responsible for the use, unauthorized use or misuse of Merchant's equipment, POS terminals, or software.

**3.05    Electronic Notices and Disclosures.** Merchant consents to receiving electronically rather than in paper form all written notices, disclosures and other documents ("Documents") which are to be provided by Bank to Merchant under this Agreement. Bank will notify Merchant that a Document is available on Bank's web site with a link to that specific page of the web site containing the Document. Merchant agrees that such notification will be sent to Merchant at the e-mail address provided as part of the Application.    Bank will maintain on its web site any

Document sent to Merchant electronically for not less than six months from the date of its posting on the web site.

Merchant understands and acknowledges that access to the Internet, e-mail and the worldwide web are required for Merchant to access a Document electronically and Merchant confirms that Merchant has such access. Merchant understands that there are costs related to access Documents electronically and Merchant agrees that Merchant is responsible for these related access costs.

At any time and without giving Merchant advance notice, Merchant Bank and/or Processor may elect not to send a Document electronically, in which case a paper copy of the Document will be sent to Merchant or such Document shall otherwise be provided as provided for herein.

**Section 4.    PROCEDURES FOR CARD TRANSACTIONS.**

**4.01    Operating Procedures for Card Transactions.** In accepting Cards for the purchase of Merchant's goods and services, Merchant shall comply with the requirements of this Agreement, including but not limited to the Operating Rules and the Operating Guide, as the same are revised from time to time.

   A.    Authorization

       1.    Unless specifically exempted by Operating Rules, Merchant agrees to obtain Authorization for the total amount of the transaction, including the tip and tax, if applicable, and shall record the positive Authorization Code on the sales draft prior to completing the transaction. Such Authorization must be obtained for every Card Transaction on the transaction date and prior to completing the transaction, unless otherwise specified in the Operating Rules. Procedures for obtaining Authorizations are set forth in the Operating Guide.

       2.    If a Merchant completes a Charge without Authorization, Merchant will be responsible for any Chargeback of the Charge and this Agreement shall be subject to immediate termination without notice. **Obtaining Authorization does not assure that the person using the Card is the Cardholder and will not prevent a Chargeback to Merchant for any of a variety of reasons under the Operating Rules, including use of the Card by an unauthorized user or a Cardholder claim or defense relating to the Charge.**

   B.    Recording a Charge.    Merchant must record each Charge and Credit Voucher by following procedures in a format and manner specified by Bank and using records such as sales drafts, sales slips or electronic processing records and methods, as set forth in the Operating Guide. Merchant will complete each sale as a single Charge,

except as alternative methods are specifically approved by Bank in writing. Merchant will deliver to the Cardholder an accurate and complete copy of the Charge, no later than the time of delivery of the goods or performance of services, using a format approved by the Card Associations and supplied by Bank. Merchant must provide on the Cardholder's copy of the Charge the truncated Card account number of the Cardholder.

C. Refunds; Adjustments; Credit Vouchers.

1. Merchant Policy. Merchant may limit returned merchandise or limit price adjustments, to the same extent as for sales not involving a Card, provided Merchant properly discloses its policy to the Cardholder before the sale, the limits are properly disclosed on the Charge Record before the Cardholder signs it, and the purchased goods or services are delivered to the Cardholder at the time the Charge takes place. Proper disclosure means the words "NO REFUND," "EXCHANGE ONLY," or "IN STORE CREDIT ONLY" are printed in large letters near the signature line on all copies of the Charge Record prior to obtaining the Cardholder's signature on the Charge Record. Merchant will submit any changes to its return policy to Bank in writing at least thirty (30) days before the change and will not implement any change to which Bank reasonably objects. **Merchant's policies will not override the Operating Rules and will not prevent Chargebacks to Merchant under those rules.**

2. Credit Vouchers. Merchant will not make a refund or Adjustment for a Charge in cash (except when required by law), but will deliver to Bank a Credit Voucher for a refund or Adjustment to the Cardholder Account within three (3) days of the refund or Adjustment and deliver to the Cardholder a copy of the Credit Voucher at the time the refund or Adjustment is made. Merchant will include the refund date and amount and a brief description of the refund or Adjustment on the Credit Voucher in sufficient detail to identify the Card used and original Charge. The amount of the Credit Voucher must not exceed the amount of the original Charge except for any amount which Merchant agrees to reimburse the Cardholder for return postage. Merchant may not deliver a Credit Voucher to Bank for any refund or Adjustment of a purchase not originating as a Charge with the same Cardholder requesting the refund or Adjustment, a Charge not made with Merchant, or a Charge not originally processed by Bank. Merchant will not complete a Credit Voucher for a Card issued to it or its Principals or employees except for a valid refund of a Charge originating with Merchant. Merchant may not receive money from a Cardholder and subsequently deliver to Bank a Credit Voucher to make a deposit to the account of the Cardholder. Bank may delay processing Credit Vouchers on any

day to the extent they exceed the total of valid Charges presented on that day and the balance in the Settlement Account available to cover the Credit Vouchers, until the sum of valid Charges and the balance in the Settlement Account is sufficient to cover the Credit Vouchers

3. Credit Vouchers After Agreement Termination. After this Agreement terminates, Bank is not obligated to process any Credit Vouchers that Merchant submits. All Chargebacks related to Credit Voucher disputes will be Merchant's responsibility. If Merchant enters into a new card processing service agreement with a new processor and provides Bank the name and address of Merchant's new processor, Bank will work with the new processor at Merchant's expense to reasonably resolve disputes.

D. Submission of Valid Charges. Merchant will submit to Bank a Charge only if the Charge is made or approved by the Cardholder who is issued the Card used for the Charge. Except as otherwise permitted by the Operating Rules and as approved by Bank in advance, Merchant will not submit a Charge for processing by Bank until Merchant has delivered or shipped the goods and/or performed all its services. Merchant will not submit directly or indirectly: (1) any Card Transaction previously submitted to Bank; (2) any Card Transaction that Merchant knows or should have known to be fraudulent or not authorized by the Cardholder; (3) any Card Transaction that results from a transaction outside of Merchant's normal course of business, as described on the Application; (4) any Card Transaction that results from a transaction not involving Merchant or not originated as the result of an act between Merchant and a Cardholder; or (5) any Card Transaction containing the account of a Card issued to Merchant or any account numbers issued to Merchant's business owners, family members and Principals for transactions that do not represent a purchase of goods or services from Merchant or a related credit.

E. Prepayments. Merchant may deposit a Charge for a prepayment if Merchant advises the Cardholder of the immediate billing at the time of the Card Transaction, for (1) prepayment of services, excluding estimates for services to be provided, and (2) full payment of custom ordered merchandise, manufactured to the Cardholder's specifications.

F. Multiple Outlets. A Merchant with multiple outlets must ensure that Bank is able to: (1) identify the location of each Card Transaction on the Charge Record, and (2) include this identification in the clearing record submitted to Bank.

G. Payments to Merchant for Valid Charges.

1. Merchant Bank will provide provisional credit to Merchant for each valid Charge which Merchant submits to Bank by crediting Merchant's Settlement Account, provided Merchant Bank has received settlement for the valid Charge through the interchange procedures specified by the Card Association applicable to the Card used for the Charge (Bank does not provide payment for all Card types for which Authorization services are provided). Merchant Bank is not obligated to provide provisional credit to Merchant for Charges submitted that are not valid Charges, and may suspend or discontinue any provisional credit in Merchant Bank's and/or Processor's sole and absolute discretion, including for any reason that would justify termination of this Agreement. Each provisional credit from Merchant Bank to Merchant will be subject to Adjustment, including revocation, upon Bank's further review and verification. **Provisional credit to Merchant for a Charge disputed by a Cardholder for any reason is not final.**

2. Merchant Bank may deduct from any payment to Merchant the amount of any Credit Voucher processed for Merchant, any Chargeback to Merchant, any amount to be deposited in the Reserve Account and any Processing Fees and Card Association fines or charges due from Merchant. Merchant must immediately pay Bank the amount by which a Credit Voucher processed on any day exceeds valid Charges submitted on that day. Without limiting Bank's remedies, Merchant Bank may obtain the amount due by deducting it from the Settlement Account, Reserve Account or other accounts of or funds from Merchant.

3. Merchant acknowledges that all payments and credits provided to Merchant are provisional and subject to suspension, to Chargebacks and to Adjustments in accordance with this Agreement and the Operating Rules.

H. Retrieval Requests. If Merchant deposits Charge Records with Bank through magnetic tape, electronic transmission, or electronic data capture terminal, upon the request of a Card Association or Bank, Merchant shall respond to all transaction documentation (retrieval) requests within the time frames specified in the applicable Operating Regulations. If Merchant does not respond or responds late to a transaction documentation request, Merchant may be without recourse as Chargebacks for "non receipt of requested item" in most cases, cannot be reversed. .

**4.02. Procedures for On-Line Debit Card Transactions.** Merchant must obtain Authorization for each On-line Debit Card Transaction before Merchant can complete the transaction. Merchant will not complete an On-line Debit Card Transaction unless it has been authorized by the Card Issuer by using the POS Equipment (defined in **Section 4.04**)

and following the procedures of the Card Association. Merchant may not complete an On-line Debit Card Transaction without entry of the PIN by the Cardholder. Merchant will comply with Regulation E, all applicable law, and all applicable Operating Rules in connection with each On-line Debt Card Transaction.

**4.03 CNP Transactions.** The **CNP ADDENDUM** applies to all Card Transactions wherein neither the Cardholder nor the Card is physically present at the Point of Sale. CNP Transactions include mail order and telephone order, electronic commerce (internet), and Preauthorized Transactions. A Merchant may only accept CNP Transactions if the Merchant has completed the appropriate areas on the Application and has been authorized by Merchant Bank and Processor to accept such Card Transactions.

**4.04 Equipment; Supplies; Displays.**

A. At Merchant's request, Bank will supply Merchant with POS equipment and/or Software, including electronic terminals, other processing equipment and, for On-line Debit Card Transactions, PIN pads (collectively "POS Equipment") that comply with the Operating Rules. Bank will use good faith efforts to program the POS Equipment to operate at Merchant's location in compliance with the Operating Rules. However, Bank makes no representations or warranties that Bank's programming of the POS Equipment furnished by Bank will operate in compliance with the Operating Rules. Merchant acknowledges and agrees that it is Merchant's obligation to operate in compliance with the Operating Rules.

B. All third party software, equipment and services provided or procured by Bank under this Agreement are provided "AS-IS" but Bank will, at Merchant's expense, use reasonable commercial efforts to assist Merchant in enforcing any warranty offered by the third party supplier of such software, equipment or services.

C. Merchant will use only the forms for Charges and electronic processing formats provided or approved in advance by Bank. Bank may change the forms from time to time, and, upon notification, Merchant will comply with any changes. Merchant will use Charge forms or materials provided by Bank only for Charges which Merchant submits to Bank.

D. Merchant shall display Visa, MasterCard and, if applicable, other Card Association decals, program marks, and advertising and promotional materials in compliance with the Operating Rules. Merchant shall only display Visa and MasterCard approved decals, program marks and advertising and promotional materials for the Card type(s) that Merchant selected under **Section 3.02** of this Agreement.

E. Merchant may not (a) indicate or imply that the Card Associations or Bank endorses any Merchant goods or services, (b) refer to a Card Association or Bank in stating eligibility for Merchant's products, services or membership, or (c) use any marks, symbols or logos owned by any Card Association or Bank for any purpose other than those permitted in the Operating Rules.

## Section 5. CHARGEBACKS.

**5.01** Bank will charge back to Merchant and Merchant will pay Bank, the amount of each Charge which Merchant or a Merchant Affiliate submits to Bank for processing that is subject to Chargeback to Bank **for any reason** under the Operating Rules, or to the extent Merchant Bank receives claims regarding the Charges from Cardholders under other provisions of law.

**5.02**    A Chargeback may occur for any one or more of several reasons under the Operating Rules or through operation of consumer protection laws, such as the Truth in Lending Act and the Fair Credit Billing Act.    Chargeback reasons include, without limitation:

A.  The Charge Record or any material information it contains as provided by Merchant (such as the Card account number, expiration date of the Card, merchant description, purchase amount, Charge date and Authorization date) is illegible, incomplete, incorrect, or unsigned, or is not transmitted to Bank within the required time limits;

B.  Merchant knew or, by following proper practices, should have known that the Card was not to be honored;

C.  The Charge was completed with a counterfeit or altered Card or before the valid date or after the expiration date of the Card;

D.  Merchant did not obtain Authorization, or did not provide a correct and legible Authorization Code on the Charge Record;

E.  The Charge Record is a duplicate of another Charge Record, represents one of two or more Charges arising from a single purchase, or the Charge has been submitted to another merchant card processor;

F.  The Cardholder disputes participating in or approving the Charge, signing the Charge Record, or the sale, delivery, quality or performance of the purchase; the Cardholder alleges that return of goods or a Credit Voucher was improperly refused; or the Cardholder alleges that a Credit Voucher issued by Merchant was not processed for the Cardholder Account;

G.  The amount on the Charge Record submitted to Bank differs from the amount on the copy required to be delivered to the Cardholder;

H.  The Charge was fraudulent or the related purchase was not a bona fide purchase in Merchant's ordinary course of business, was subject to any claim of illegality, cancellation, avoidance, or offset for any reason, including, without limitation, negligence, fraud or dishonesty on the part of Merchant or Merchant's agents or employees or was submitted in violation of **Section 6** of this Agreement;

I.  The Cardholder has asserted what the Cardholder believes is a good faith claim or defense against the Charge;

J.  The Charge is in violation of any law;

K.  Any other Card Transactions that Bank is or would be required to pay, repurchase or Chargeback by virtue of Operating Rules or otherwise, processed under this Agreement or any agreement with any Merchant Affiliate.

**5.03** Merchant may not enter into interchange any Charge for a Card Transaction that was previously charged back to the Merchant Bank and returned to Merchant, irrespective of Cardholder approval.

**5.04**    If Bank determines that Merchant has or is reasonably likely to have a monthly ratio of Chargebacks to Charges exceeding one percent (1%), Bank, may, but is not obligated to, notify Merchant of new procedures it should adopt and additional Processing Fees imposed for processing Chargebacks, and/or may terminate this Agreement, at Merchant Bank's discretion, without advance notice. Merchant must immediately pay any fines or fees imposed by a Card Association or Bank relating to Chargebacks to Merchant.

**5.05**  The Card Associations have established guidelines, merchant monitoring programs and reports to track merchant activity such as, but not limited to excessive credits and Chargebacks, and increased deposit activity. In the event Merchant exceeds the guidelines or submits suspicious transactions as identified by a Card Association or any related program or reports, Merchant may be subject to: (a) operating procedure requirement modifications; (b) incremental Chargebacks and/or fees; (c) settlement delay or withholding; (d) termination of this Agreement; and/or (e) audit and imposition of fines.  Merchant hereby releases Bank from any and all damages, liability, costs or expenses that Merchant may incur as a result of Bank's compliance with Card Association directives.

**5.06** Each Chargeback to Merchant is immediately due and payable by Merchant. Without limiting Bank's other remedies or Bank's security interest described in **Section 16** below,

Merchant Bank may deduct, debit and withhold the amount of a Chargeback or anticipated Chargeback from the Settlement Account, Reserve Account, or any Merchant account at the Merchant Bank, or other property of Merchant held by Bank, or any Settlement Account or Reserve Account of a Merchant Affiliate. Bank will send Chargeback reports to Merchant as debits occur. To the extent funds are not available from the previously described accounts of the Merchant or Merchant Affiliate, Merchant irrevocably authorizes Merchant Bank to attach and initiate withdrawals of funds from Merchant's accounts at other financial institutions, by ACH entry, sight draft, preauthorized checks, reverse wires or otherwise to cover the Chargebacks, and Merchant hereby irrevocably authorizes the other financial institutions to withdraw the funds from Merchant's accounts and pay Bank the amount of the Chargebacks. Merchant Bank will release to Merchant any of Merchant's deposits, funds or property after Bank determines in its sole and absolute discretion that the deposits, funds or property are not likely to be needed to cover any Chargebacks.

## Section 6. MERCHANT'S WARRANTIES.

Upon signing the Application, and each time Merchant submits a Charge, Merchant represents and warrants that:

A. Merchant has abided by this Agreement, and all applicable laws and Operating Rules for the Charge;

B. Each statement made on the Application was true as of the date Merchant signed the Application agreeing to be bound by this Agreement;

C. There have been no materially adverse changes in information provided in the Application or in Merchant's financial condition, or management;

D. Merchant does not do business under a trade name or style not previously disclosed in writing, and there has been no change in the nature of Merchant's business or the product lines that Merchant sells not previously disclosed;

E. The Charge is genuine and arises from a bona fide sale of merchandise or services by Merchant, represents a valid obligation for the amount shown on the Charge Record and does not involve the use of the Card for any other purpose;

F. Merchant has title to the Charge, there are no liens or other encumbrances on it, and Merchant has the authority to convey the Charge for processing;

G. The Charge is not subject to any dispute, set-off or counterclaim;

H. The Charge has not been previously presented for processing unless allowed by the Operating Rules;

I. Each statement on the Charge is true, and Merchant has no knowledge of facts that would impair the validity or collectability of the amount of the Charge;

J. Merchant has completed only one Charge per sale, or one Charge per shipment of merchandise where the Cardholder has agreed to partial shipments;

K. The person who executes the Application on behalf of the Merchant has the full power and authority to execute the Application and to enter into this Agreement;

L. This Agreement is the legal, valid, and binding obligation of the Merchant enforceable against the Merchant in accordance with its terms;

M. Merchant shall submit transactions and/or Charges only in accordance with the information contained in the Application and this Agreement;

N. Merchant has the power and authority to authorize the automatic funds transfer provided for in **Section 14.8** of this Agreement;

O. The Settlement Account described in **Section 14** of this Agreement is owned and controlled by the Merchant and is a valid account for processing debit and credit transactions under this Agreement.

P. That Merchant will immediately notify Merchant Bank and Processor of any material changes to any information provided herein including but not limited to a change in Merchant's legal entity, location, business type, or the types of goods and services offered for sale by Merchant.

## Section 7. CONFIDENTIALITY; DATA SECURITY.

7.1 Merchant will retain in a secure and confidential manner original or complete and legible copies of each Charge Record, and each Credit Voucher required to be provided to Cardholders, for at least two (2) years or longer if required by law or the Operating Rules. Merchant shall render all materials containing Cardholder Account numbers unreadable prior to discarding.

7.2 Merchant will store Charge Records in an area limited to selected personnel, and when record-retention requirements have been met, Merchant will destroy the records so that Charge Records are rendered unreadable.

7.3 Merchant will not:

A. Provide Cardholder Account numbers, personal Cardholder information or Card Transaction information to anyone except Bank, Card Associations, or Merchant's agents for the purpose of assisting Merchant in

completing Card Transactions, or as specifically required by law.

B. Retain or store Card Magnetic Stripe, CVV, CVV2 or CVC2 oata subsequent to Authorization for a Card Transaction.

C. Sell, purchase, provide or exchange Card account number information to any third party without the Cardholder's consent, or to any entity other than Merchant's authorized agents, the Bank, the Card Associations, or in response to valid legal process or subpoena.

D. Release any Cardholder information over the telephone under any circumstances.

7.4 Merchant may not, in the event of its failure, including bankruptcy, insolvency, or other suspension of business operations, sell, transfer, or disclose any materials that contain Cardholder Account numbers, personal information or Card Transaction information to third parties. In the event that Merchant's business fails or ceases to exist, Merchant is required to return to Bank all such information or provide proof of destruction of this information to Bank.

7.5 Merchant agrees to establish security procedures to protect Cardholder information and comply with the Visa Cardholder Information Security Program (CISP) and any other similar requirements contained in the Operating Regulations. Merchant may find the details of the CISP program at www.visa.com/cisp. The Card Associations or Bank, and their respective representatives, may inspect the premises of Merchant or any independent contractor or agent engaged by Merchant for compliance with security requirements. Merchant acknowledges that any failure to comply with security requirements may result in the imposition of restrictions on Merchant or the permanent prohibition of Merchant's participation in Card acceptance programs by the Card Associations.

7.6 Merchant must notify Bank and receive Bank's approval prior to engaging any independent contractor or agent in connection with Merchant's acceptance of Cards or the submission of Charges or Credit Vouchers to Bank. Merchant may utilize a third party as Merchant's agent ("Agent") to perform some of Merchant's obligations under this Agreement. Agents include, but are not limited to, Merchant's software providers and/or equipment providers. Merchant shall provide Merchant Bank and Processor at least sixty (60) days advance written notice of Merchant's election to use an Agent. Merchant Bank and/or Processor may individually approve or deny the use of an Agent in their sole and absolute discretion and at any time. If an Agent is designated a service provider under any applicable Operating Regulation or is otherwise required to certify, register, or act in any fashion pursuant to the Operating Regulations, Merchant shall cause such Agent to cooperate with Merchant Bank in completing any steps

required for registration and/or certification and/or action. Merchant is solely responsible for any and all applicable fees, costs, expenses and liabilities associated with such registration and/or certification and/or action. Bank shall in no event be liable to Merchant or any third party for any actions or inactions of any Agent used by Merchant, and Merchant hereby expressly assumes all such liability.

Merchant will immediately notify Bank if Merchant decides to use electronic authorization or data capture terminals provided by any entity other than Bank or its authorized designee ("Third Party Terminals") to process transactions, including leasing a terminal from a third party. If Merchant elects to use Third Party Terminals, (i) the third party providing the terminals will be Merchant's agent in the delivery of Card transactions to Bank; and (ii) Merchant assumes full responsibility and liability for any failure of that third party to comply with the Bank Rules, the Operating Regulations, the Laws, or this Agreement. Bank will not be responsible for any losses or additional fees incurred by Merchant as a result of any error by a third party agent or a malfunction in a Third Party Terminal.

The use of an Agent or an Agent's software application that has connectivity to the Internet poses an increased risk, and Merchant assumes all liability for such increased risks. If Merchant utilizes software or hardware with a connection to the Internet such hardware or software interacts in any capacity with the provision of services contemplated pursuant to this Agreement, Merchant is solely liable without limitation for any and all consequences of such interaction.

7.7 Merchant agrees and shall ensure that Merchant's Agents provide the same levels of security as those required of Merchant, and that such Agents transmit data in accordance with: (1) the required format(s) of the Card Associations; (2) the Operating Rules; and (3) the requirements of Bank.

7.8 Merchant must immediately notify Merchant Bank and Processor of any suspected or confirmed loss or theft or materials or records that contain Cardholder Account numbers or Card Transaction information. In the event of a suspected or confirmed loss or theft Merchant shall provide immediate access to all facilities, systems, procedures, equipment, and documents as may be deemed appropriate by Bank or its designated representatives for inspection, audit, and copying as deemed appropriate by both Merchant Bank and Processor in their individual sole discretion. Merchant shall be responsible for all costs associated with such inspection, audit, and copying however such costs may occur.

7.8 Merchant authorizes Bank to release its name and address to any third party whom the Bank determines needs to know such information in order for Bank to perform the Card Program services under this Agreement and who has requested such information.

**7.10** If requested in writing by Merchant, Bank may provide a list of Bank Identification Numbers (BIN) that apply to Debit Cards for the sole purpose of identifying Debit Cards presented at the Point of Sale. Merchant shall not use the BIN information for any reason other than to identify the Debit Cards presented at the Point of Sale. The BIN information is propriety and confidential information belonging to Visa or MasterCard. A Merchant shall not disclose the BIN information to any third party without the prior written consent of Visa or MasterCard.

**7.11**    Federal regulations enacted pursuant to the USA PATRIOT Act and other applicable laws require financial institutions with which the Processor has relationships to verify the identity of every person who seeks to open an account or become a signatory on an account with a financial institution. As a result of Merchant's status as an account holder with Merchant Bank, Merchant shall provide documentary verification of Merchant's identity, such as a driver's license or passport for an individual and certified copy of organization documents for an entity in manner acceptable to Bank. Bank reserves the right to verify Merchant's identity through other non-documentary methods as Bank deems appropriate in its sole discretion. Bank may retain a copy of any document it obtains to verify Merchant's identity with the financial institution.

**7.12**    Merchant is responsible for insuring its Merchant Identification Number ("MID") is kept confidential. When a change to a Merchant account is required, Merchant shall disclose its MID to the Bank representative as confirmation that the person requesting the change has authority. If the person requesting the change discloses the proper MID, Bank shall assume that person has the proper authority to make the change. Merchant shall be fully liable for any changes to its account after disclosure of the MID. Bank may request from Merchant additional information to further verify Merchant's identity.

### Section 8. OPERATING RULES.

**8.1** Merchant must comply with the Operating Rules, as the same may be amended from time to time. The Operating Rules may change with little or no advance notice to Merchant and Merchant will be bound by all such changes. If Merchant objects to any change in the Operating Rules, it must immediately stop accepting new Charges for Cards governed by the change. The Operating Rules will govern in the event that there is any inconsistency between this Agreement and the Operating Rules.

**8.2** Operating Rules of the Debit Networks may differ among them with respect to the transactions they allow. Bank, at its discretion, may require that the most restrictive requirements of one Debit Network apply to all of Merchant's On-line Debit Card Transactions, regardless of Card type.

**8.3** If Merchant selects, and Bank provides Card Program services for, any one or more of American Express, Discover Card/NOVUS Card Brands, JCB or Diners Club as payment options and Merchant's selection is approved by Bank, Merchant understands that Merchant's acceptance of any of those payment options may require execution of a separate merchant card acceptance agreement with those individual Card Issuers, as applicable, and that agreement will govern the completion, processing, settlement and other procedures relating to transactions with those Card Issuers. If Merchant experiences problems with transmission or delivery of those Card Issuers' transactions, Merchant will be obligated to contact the appropriate service provider(s) for service.

### Section 9. MERCHANT'S BUSINESS; OTHER PROCESSORS.

**9.1** Merchant will comply with all laws, rules and regulations in completing Charges, submitting them to Bank, performing its obligations under this Agreement, and otherwise conducting its business.

**9.2** Merchant will give Merchant Bank and Processor at least thirty (30) days' prior written notice before any change in Merchant's name or location, any change in ownership or management of Merchant's business, any sale, assignment, rental, lease or transfer of ownership of any location that accepts Cards, or any material change in information concerning Merchant in the Application, and material change in the type or nature of the business carried out by Merchant or otherwise required to be provided to Bank.

**9.3** Merchant agrees that it will not participate in a Card Program with another financial institution or processor without Bank's written approval.

### Section 10. CREDIT REPORTS AND OTHER INFORMATION.

**10.1 Reports about Merchant.** From time to time, Bank may obtain credit and other information on Merchant, owners of Merchant and officers of Merchant, from others (such as customers and suppliers of Merchant, lenders and credit reporting agencies), and furnish information on Merchant's relationship with Bank and Bank's experience with Merchant to others seeking the information.

**10.2 Reports from Merchant.** Merchant will provide Bank with updated business and financial information concerning Merchant, including financial statements, tax returns, evidence of required licenses and other information and documents Bank may reasonably request from time to time. All material marked "confidential" which Bank receives from Merchant will be used only by Bank or Card Association in performing the Card Program services under this Agreement or related services and reporting. At any reasonable time, Bank, any Card Association or any other entity having authority has the right to audit Merchant's records relating to this Agreement.

## Section 11. ASSIGNMENT; BANKRUPTCY.

**11.1 Assignment.** This Agreement is binding upon the successors and assigns of Bank and Merchant. Merchant will not assign this Agreement to another entity without Bank's prior written consent and any purported assignment made without Bank's consent will be void.

## 11.2 Bankruptcy.

A. Merchant will notify Bank immediately if any bankruptcy, insolvency or similar petition is filed by or against Merchant. Merchant acknowledges that this Agreement constitutes an executory contract to extend credit or financial accommodations as defined in 11 U.S.C. §365(c)(2) and that the Agreement cannot be assumed or assigned in the event of bankruptcy. Merchant and Bank agree that in the event of Merchant's bankruptcy, Bank shall be entitled to suspend further performance under this Agreement.

B. Merchant acknowledges and agrees that in the event of a bankruptcy proceeding, Merchant must establish a Reserve Account or maintain a previously established and then current Reserve Account in amounts required by Bank and in accordance with any Reserve Account provision specified in this Agreement. Merchant Bank will have the right to setoff against the Reserve Account for any and all obligations which Merchant may owe Bank, without regard as to whether the obligations relate to Charges initiated or created before or after the filing of the bankruptcy petition.

## Section 12. AMENDMENTS; WAIVERS.

**12.1 Amendments.** Unless otherwise provided for in this Agreement, Bank may amend this Agreement at any time by providing Merchant with fifteen (15) days' prior notice by: (a) sending Merchant written notice of such amendment, or (b) posting such amendment to the Bank web site and providing Merchant with electronic notice as provided in **Section 3.05.** The amendment will become effective unless Bank receives Merchant's notice terminating this Agreement before the effective date. Bank may amend this Agreement upon less than fifteen (15) days' prior notice if Bank reasonably determines immediate modification is required by laws, Operating Rules or any adverse change in Merchant's financial condition. Amendments submitted by Merchant will bind Bank only if in writing and approved and signed by Bank's authorized officer.

**12.3 Waivers.** Bank's failure to enforce this Agreement will not waive Bank's rights under this Agreement. Waivers of any provision of this Agreement must be in writing and signed by the Bank. A waiver in one instance will not apply to other occasions unless that intent is clear from the signed waiver.

## Section 13. TERM; TERMINATION.

**13.01 Term/Renewal.** The initial term of this Agreement shall be for the term of three (3) years (the "Initial Term") commencing on the date this Agreement is executed by authorized officers of Merchant Bank and Processor. At the expiration of the Initial Term, This Agreement will automatically renew for successive three (3) year periods (each a "Renewal Term") unless a party provides the other parties with notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration of the then current term..

## 13.02 Termination.

A. Termination without Cause. Merchant Bank or Merchant Bank's designated representative may terminate this Agreement as to all Card types or individually specified Card types, without cause, upon thirty (30) days advance written notice.

B. Termination for Cause by Bank. Merchant Bank or Merchant Bank's designated representative may terminate this Agreement in its sole and absolute discretion, effective immediately, upon written, electronic or oral notice to Merchant if Bank reasonably determines that any of the following conditions exists:

1. Merchant has violated any provision of this Agreement.
2. There is a material adverse change in Merchant's financial condition.
3. A petition in bankruptcy has been filed by or against Merchant, the Merchant is generally unable to pay its debts as they become due, a receiver, custodian, trustee, liquidator or similar official is appointed for a substantial portion of Merchant's business, there is a general assignment for the benefit creditors, or the business terminates.
4. Any information which Merchant provided to Bank, including Application information, was false, incomplete or misleading when received.
5. At any time during the term of this Agreement, Merchant has had a monthly ratio of Chargebacks to Charges exceeding one percent (1%), or Chargebacks are in excess of three percent (3%) of any monthly dollar amount of Charges.
6. There is an overdraft for three (3) days or more in the Settlement Account, or overdrafts in the Settlement Account are otherwise excessive.
7. Merchant or any of Merchant's officers or employees has been involved in processing Charges with Bank or other parties arising from fraudulent or otherwise unauthorized transactions.
8. Merchant is or will be unable or unwilling to perform its obligations under this Agreement or any applicable laws.

9. Merchant has failed to pay Bank any amount when due.

10. Merchant has failed to promptly perform or discharge any obligation under this Agreement, the Settlement Account or the Reserve Account.

11. Any of Merchant's representations or warranties made in connection with this Agreement was not true or accurate when given.

12. Merchant has defaulted on any agreement it has with Bank.

13. Bank is served with legal process seeking to attach or garnish any of Merchant's funds or property in Bank's possession, and Merchant does not satisfy or appeal the legal process within fifteen (15) days of the Bank being served.

14. The Operating Rules are amended in any way so that the continued existence of this Agreement would cause Bank to be in breach of such Rules.

15. Any Guaranty supporting Merchant's obligations is revoked, withdrawn or terminated or altered in any way.

16. If any circumstances arise regarding Merchant or its business that create harm or loss of goodwill to any Card Association.

C. Termination for Cause by Merchant. Merchant may terminate this Agreement in the event of a material breach of the terms of this Agreement by Bank, provided Merchant gives Bank written notice of any alleged breach and such breach remains uncured for a period of thirty (30) days following receipt of written notice by the Bank.

D. Damages for Termination.

1. Termination of this Agreement prior to expiration of the Initial Term or any Renewal Term shall result in the assessment of an account termination fee against Merchant in an amount equal to the greater of (i) the average monthly processing fees charged to Merchant for the previous 12 months (or such shorter time if the merchant has processed for less than 12 months) multiplied by the number of months remaining under the agreement, or (ii) $250.

2. Merchant acknowledges and agrees that the damages described in subsection 1. above are not a penalty but rather are a reasonable computation of the financial harm caused by the termination of this Agreement by the Merchant.

E. Merchant Bank's rights of termination under this Agreement are cumulative. A specific right of termination shall not limit any other right of Bank to terminate this Agreement expressed elsewhere in this Agreement. Notice of termination may be given orally or in writing, and if given orally, shall be confirmed in writing.

F. Upon termination, Merchant's rights to complete Charges and Credit Vouchers and submit them to Bank, and to use Charge form or formats, promotional material and any other items provided by Bank, will cease. Termination of this Agreement will not terminate the rights and obligations of Merchant and Bank relating to acts or omissions occurring before termination, including for example, any Processing Fees or other service fees owed to Bank, any Charges processed for Merchant by Bank (whether before or after termination), Merchant's Chargeback and indemnity obligations, and the Security Interest granted to Bank in this Agreement.

G. It is understood that a file for terminated merchants referred to as "MATCH" is maintained by Card Associations containing the names of any business (and its principals) which have been terminated for certain reasons, including fraud, depositing excessive counterfeit paper, excessive unauthorized transactions, depositing paper for others (laundering), bankruptcy or breach of Merchant Agreement. Merchant acknowledges that Merchant Bank is required to report Merchant to the MATCH if this Agreement is terminated for any of the foregoing reasons or other reasons as may be modified by the Card Associations. Merchant agrees and consents to such reporting in the event of the termination of this Agreement for any of the foregoing reasons.

H. Sections 5, 7, 13, 14, 15, 16, 19, 20, 21, 22 and 25 will survive termination of this Agreement.

**Section 14. SETTLEMENT ACCOUNT.**

**14.1    Settlement Account Required.** Merchant must maintain a Settlement Account in Merchant's name in satisfactory condition at a depository institution under arrangements acceptable to Bank. The Settlement Account will be subject to the provisions of **Section 16** of this Agreement.

**14.2** Merchant agrees to maintain a minimum balance of funds in the Settlement Account as Bank may specify to Merchant in writing from time to time.

**14.3** Subject to the terms and conditions of this Agreement, Bank agrees to provisionally credit Merchant for each Charge that Bank accepts from Merchant. Merchant agrees that the Merchant Bank may charge the Settlement Account for the amount of any sales draft processed under this Agreement, or any agreement Bank may have with any Merchant Affiliate that results in a Chargeback, or for any Credit Voucher or other reimbursement or Processing Fees to which Bank may be entitled.

**14.4** Merchant agrees that Bank may audit all Charge calculations and that Merchant Bank shall have the right, without notice, to make withdrawals, deposits, or other

Adjustments to or from the Settlement Account for any deficiencies or overages.

**14.5** Bank shall presume that any amounts the Bank pays to or debits from Merchant are correct unless Merchant disputes these by sending Bank written notice within thirty (30) days of the date of the applicable statement containing any disputed payments or debits.

**14.6** If Merchant chooses to rent or lease processing equipment from Processor or utilizes software provided by Processor for use in processing transactions, Merchant agrees to pay Bank: (1) a pre-determined monthly rental fee; (2) any initial upfront costs as required; and (3) all applicable taxes for such Card processing equipment or software utilization.

**14.7 Settlement Account Closure.** If the Settlement Account is closed, Merchant Bank or its designated representative may terminate this Agreement, effective immediately, upon written or oral notice (with written confirmation in the event of oral notice) unless Merchant opens another Settlement Account acceptable to Bank. Merchant may change the Settlement Account upon prior written approval by Bank, which approval will not be unreasonably withheld.

**14.8 ACH Authorization.** Merchant authorizes Merchant Bank or its agents or designated representatives to initiate debit and credit entries and Adjustments to the Settlement Account or the Reserve Account (described in **Section 15** of this Agreement) through the ACH settlement process for amounts due under this Agreement. This authorization will remain in full force and effect until termination of the Agreement and the full and final payment of all obligations of Merchant due under this Agreement. Merchant agrees to be bound by all applicable terms and provisions of the ACH Rules or other applicable association or network, in effect from time to time. Merchant acknowledges and agrees that Bank will not be liable for any delays in receipt of funds, any failure by Merchant to receive funds, or errors in debit or credit entries caused by Merchant, or third parties, including but not limited to any Card Association or any financial institution.

## Section 15. RESERVE ACCOUNT.

### 15.1    Reserve During Term of Agreement.

A. At Bank's request, and as condition for providing Card Program services, Merchant may be required to deposit, or Merchant Bank may deposit by deducting from any payment due to Merchant or from any funds in the Settlement Account or any other deposit account of Merchant, into an account maintained by Merchant Bank (or at another approved depository institution) (the "Reserve Account"), initially or at any time in the future as requested by Bank, sums sufficient to satisfy Merchant's current and/or future obligations as determined by Bank in its sole and absolute discretion.

B. The Reserve Account will be separate from the Settlement Account. Merchant shall have no right of withdrawal from the Reserve Account. The Reserve Account shall be under the sole control of Merchant Bank. Any and all earnings from deposits of the Merchant to the Reserve Account shall be the sole property of the Bank.

### 15.2    Reserve Account Deposits.

A. At any time in Bank's sole and absolute discretion, Bank may (i) designate the minimum balance required to be deposited in the Reserve Account, (ii) require that the amount on deposit in the Reserve Account be increased, (iii) require that the Merchant deposit, or Merchant Bank may deposit for Merchant into the Reserve Account a percentage of, or a fixed amount from each Charge processed, or (iv) otherwise determine the amount to be deposited in the Reserve Account. Bank at its sole and absolute discretion may require that each month Merchant deposit, or Merchant Bank may deposit by deducting from any payment due to Merchant or from any funds in the Settlement Account or any other deposit account of Merchant sums into the Reserve Account no later than the twenty (20) day of the month. Bank shall notify the Merchant as to the amount of the funds to be deposited each month.

B. Merchant acknowledges and agrees that the Reserve Account may contain both funds deposited by the Merchant and funds of other merchants of the Bank.

**15.3    Deductions from Reserve Account.** If funds are not available in the Settlement Account, Bank without prior notice to Merchant may deduct from the Reserve Account any obligation of Merchant to Bank under this Agreement, including all Processing Fees, Chargebacks, Credit Vouchers, Damages, and any and all additional fees, fines, penalty amounts and charges due the Card Associations.

**15.4    Replenishment of Reserve Account Deficiencies.** Whenever the balance in the Reserve Account is less than the minimum balance required, or is otherwise deficient, Merchant Bank may, without prior notice, deposit the deficiency into the Reserve Account by reducing any payment to Merchant required by this Agreement or deduct the deficiency from the Settlement Account or any other deposit account of Merchant with another depository institution (including accounts of general partners if Merchant is a partnership) and deposit it into the Reserve Account. Merchant authorizes deductions from its accounts by ACH entry, sight draft, preauthorized check, reverse wire, or otherwise as Bank deems appropriate under the circumstances. In addition, Merchant will deposit any deficiency into the Reserve Account within one (1) Business Day after receiving Bank's oral or written request. Without limiting Bank's remedies,

Merchant's failure to deposit any deficiency on time will permit Bank, without advance notice, to suspend or cease processing additional Charges and Credit Vouchers. Bank will give Merchant written notice of any suspension or cessation of processing.

**15.5    Additions to Reserve Account.** If Bank has reason to believe that Merchant may be liable to customers or to Bank for Chargebacks exceeding the balance in the Reserve Account, Merchant Bank may: (A) immediately place in the Reserve Account payments due to Merchant and/or stop processing transactions for Merchant until such time as the extent of Merchant's obligations to Bank, or Merchant's liability for Chargebacks, or Merchant's liability to customers are known, and Bank no longer deems itself insecure, and/or (B) demand from Merchant an amount that in Bank's judgment is needed to ensure payment of Merchant's obligations and liabilities. Merchant's failure to pay any amount will permit Merchant Bank or its designated representative to terminate this Agreement immediately without advance notice.

**15.6    Reserve Account After Agreement Terminates.** Merchant Bank may continue to hold or deposit funds in the Reserve Account after termination of this Agreement, regardless of whether termination is by Merchant or Bank. Upon termination of the Agreement by Merchant or Bank, Bank may retain sufficient funds to satisfy any and all Processing Fees, Chargebacks, Credit Vouchers, Damages, and any and all additional fees, fines, penalty amounts and charges due the Card Associations. If no funds have been deposited into the Reserve Account before termination, Bank, at Bank's option, may notify Merchant to deposit funds into the Reserve Account upon termination of this Agreement. All provisions which apply to a pre-termination Reserve Account will apply after termination, including replenishment of deficiencies. The funds will be held by Bank or its designated agent for a period of not less than one hundred eighty (180) days from the date of the last Card Transaction processed under the Agreement, plus the period of any warranty, guarantee, and/or return policy on goods and/or services sold. Bank will return the balance in the Reserve Account to Merchant after Bank reasonably determines that the risk of Chargebacks and other Processing Fees has ended and after deducting all amounts that Merchant owes to Bank under this Agreement or any other agreement.

### Section 16. SECURITY INTEREST.

#### 16.1 Merchant's Grant of Security Interest.

A. To secure Merchant's performance of its obligations under this Agreement, and any other agreement with Bank, Merchant grants Bank a security interest in each Charge and its proceeds, the Settlement Account, the Reserve Account and any other deposit account of Merchant with a financial institution, whether now existing or established in the future, and in the proceeds of all those accounts, any funds due Merchant from Bank and any of Merchant's property held by Bank. Bank may enforce these security interests without notice or demand. The security interests granted under this Agreement will continue after this Agreement terminates, until Merchant satisfies all its obligations to Bank.

B. Furthermore, and with respect to any security interests granted herein, Bank will have all rights afforded under the Uniform Commercial Code, as the same may, from time to time, be in effect in the State of Colorado; provided, however, in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of the security interests granted herein is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of Colorado, then Bank will have all rights afforded under the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions relating to such attachment, perfection or priority of the security interests, as well as any other applicable law.

**16.2 Perfection of Security Interest.** Upon request of Bank, Merchant will execute one or more financing statements or other documents to evidence the security interests granted to Bank under this **Section 16**. Merchant shall cooperate with Bank in obtaining any control agreement or similar agreement with a depository bank necessary to perfect the security interests granted herein. In addition, Merchant agrees that its signature on the Application will be considered Merchant's signature agreeing to any control agreement as defined in Article 9 of the Uniform Commercial Code among Merchant, Bank and any other financial institution under which Bank, Merchant and any other financial institution agree to the disposition of funds in the Settlement Account, the Reserve Account or any other deposit account without further consent by Merchant.

### Section 17. CUSTOMER CLAIMS.

To the extent that Bank has paid or may pay a Chargeback or Credit Voucher, Merchant will be obligated to reimburse Bank for any sums Bank pays. If Merchant does not reimburse Bank, Bank will have all of the rights and remedies of Cardholders, including the Cardholders' rights under 11 U.S.C. §507(a)(6). Bank may assert any claim on behalf of a Cardholder individually or on behalf of all Cardholders as a class.

### Section 18. PROCESSING FEES.

**18.1** Merchant will pay Processing Fees in the amount specified in the **FEE SCHEDULE** attached to the Application or as otherwise provided for in this Agreement or an Addendum thereto. Bank may increase the Processing Fees by giving Merchant thirty (30) days advance written notice effective for Charges and Credit Vouchers submitted on and after the effective date of the change.

**18.2** Bank will not be required to provide the Merchant with thirty (30) days notice of an increase in Processing Fees in the event that any Card Association, or any other entity having such authority increases the Processing Fees and the effective date for implementation of the increase in the Processing Fees is less than thirty (30) days. In such cases, the Bank shall make reasonable efforts including, but not limited to, written correspondence, notification on statements, website notification, email, fax and direct contact via the telephone or otherwise, to provide reasonable notification to Merchant. However, failure to provide advance notice of the increase in Processing Fees will not affect Merchant's obligation to pay the increased Processing Fees. The increase(s) in Processing Fees shall be effective on the date specified by Bank.

**18.3** Processing Fees and other service charges owed by Merchant to Bank may be deducted by Bank from amounts due Merchant, or from the Settlement Account or from the Reserve Account. Merchant will pay the amounts due by the next Business Day if sufficient funds are not available in the Settlement Account.

## Section 19. INDEMNIFICATION; LIMITATION OF LIABILITY; WARRANTY.

**19.1 Indemnification.** Merchant agrees to indemnify Bank, including their officers, directors, employees, and agents against and to hold them harmless from any and all claims and demands of any party arising from or based upon any act or omission of Merchant, Merchant's employees, Merchant's designated representatives or agents, or Merchant's Agent(s) in connection with or arising out of this Agreement, the duties to be performed by Merchant pursuant to this Agreement, any Charges which Merchant submits to Bank, or Merchant's violation of the Operating Rules or any applicable law. In the event that Bank shall be made a party to any litigation, proceeding, arbitration, bankruptcy proceeding, or other legal process (collectively "Actions") commenced by any third party, Merchant shall protect and hold Bank harmless from and with respect to the Actions and shall pay all costs, expenses, and attorney's fees incurred or paid in connection with the Action, together with any judgments rendered. Merchant shall indemnify, defend, and hold harmless Bank for any hacking, infiltration, or compromise of Merchant's systems or the systems of Merchants Agent(s), designated representatives, or other agents.

**19.2 Limitation of Liability.** Bank will not accept responsibility for errors, acts, or failure to act by others, including but not limited to, Agents, third party suppliers of software, equipment or services; or, banks, communication common carriers, data processors or clearinghouses through which transactions may be passed, originated and/or authorized. Bank will not be responsible for any loss, liability or delay caused by fires, earthquakes, war, civil disturbances, power surges or failures, acts of governments, acts of terrorism, labor disputes, failures in communication networks,

legal constraints or other events beyond the control of Bank. Bank undertakes no duties to Merchant other than the duties expressly provided for in this Agreement, and any and all other or additional duties that may be imposed upon Bank in law or equity are hereby irrevocably waived and released to the maximum extent permitted by law. In any event, Bank's cumulative liability to Merchant, whether arising in contract, tort (including, without limitation, negligence and strict liability) or otherwise, shall not exceed the lesser of $10,000 or, an amount equal to the aggregate of monthly net Processing Fees paid by Merchant in the three (3) month period prior to the month that the incident giving rise to liability occurred.

**IN NO EVENT SHALL BANK BE LIABLE FOR SPECIAL, INCIDENTAL, INDIRECT, CONSEQUEN-TIAL OR EXEMPLARY DAMAGES OR FOR ANY INTERRUPTION OR LOSS OF USE, DATA, BUSINESS OR PROFITS, WHETHER OR NOT SUCH LOSS OR DAMAGES WERE FORESEEABLE OR BANK WAS ADVISED OF THE POSSIBILITY THEREOF AND REGARDLESS OF WHETHER ANY LIMITED REMEDY HEREIN FAILS OF ITS ESSENTIAL PURPOSE.**

**BANK SPECIFICALLY DISCLAIMS ALL WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SERVICES PROVIDED HEREUNDER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BANK DOES NOT GUARANTEE OR WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.**

## Section 20. NOTICES.

Except to the extent oral or electronic notice is explicitly authorized herein, each notice required by this Agreement will be in writing and will be effective when delivered, addressed to Merchant Bank at 38 Fountain Square Plaza, MD 10907E, Cincinnati, Ohio 45263, and the return address on the Merchant's Card processing statements and to Merchant at Merchant's address to which Bank mails Merchant's statements, or at such other address as either party may provide by written notice to the other party. Any address Merchant designates will also be the address to which Bank mails Merchant's statements. Delivery by facsimile transmission will be considered effective when the sender receives electronic confirmation of the transmission.

## Section 21.   COLORADO LAW; JURISDICTION; VENUE.

This Agreement is made at Boulder, Colorado, and this Agreement is governed by Colorado law, as applied to

agreements made and performed entirely in Colorado without reference to conflict of laws provisions. All performances due and transactions undertaken pursuant to this Agreement shall be deemed to be due or have occurred in Boulder, Colorado, and Merchant's entry into this Agreement, and any Guarantor's entry into a Continuing Guaranty relating to this Agreement, shall conclusively be deemed to be a transaction of business in Colorado within the meaning of C.R.S. §13-1-124 or any successor statute. Merchant and any Guarantor agree that the exclusive venue and place of jurisdiction for any litigation arising from or relating to this Agreement shall be the county and district courts in and for Boulder County, Colorado, and Merchant and any Guarantor irrevocably and unconditionally submit to the jurisdiction of such courts with respect to any such litigation.

## Section 22. ATTORNEY FEES; ARBITRATION.

**22.1 Attorney Fees.** Merchant and/or Guarantor will be liable for and will indemnify and reimburse Bank for all attorneys' fees and other costs and expenses paid or incurred by Bank in the enforcement of this Agreement or in matters relating to this Agreement, in collecting any amounts due from Merchant to Bank, or arising from any breach by Merchant of this Agreement, or any other wrongdoing by Merchant or Guarantor.

**22.2 Arbitration.** Merchant, Bank and any Guarantor will settle any dispute or controversy concerning or relating to this Agreement through binding arbitration before a single arbitrator, held at Denver or Boulder, Colorado in accordance with the provisions of the Colorado Uniform Arbitration Act or any successor statute. If Merchant and/or any Guarantor does not unconditionally proceed with arbitration in accordance with this **Section 22.2** within ten (10) days after Bank sends a written demand for arbitration, Bank shall be entitled (but not obligated) to initiate litigation concerning the dispute or controversy.

## Section 23. ADDENDUM.

Provided that the applicable box(es) is checked on the Application, the following Addenda are made a part of this Agreement. The applicability of these Addenda depends upon the Merchant's business, and the Card Program services requested by Merchant. In its sole and absolute discretion, Bank may accept or reject Merchant's request for services provided in the Addenda.

1. **CARD NOT PRESENT (CNP) ADDENDUM**

2. **SPECIAL SERVICES ADDENDUM**

    —**Travel and Entertainment Services:**
    Advance Payment Service
    Reservation Service
    T&E Advance Deposit Service
    Priority Check-Out Service
    T&E Cash Disbursement Service

    —**Other Special Services:**
    Account Funding Transaction
    CPS/Small Ticket
    Dynamic Currency Conversion Transactions
    Express Payment Service (EPS)
    Preauthorized Health Care
    Supermarket Incentive Program
    Telephone Service Transactions
    Visa Cash Back Service

Merchant understands and agrees that any attached Addendum is considered a part of the Agreement and Merchant will comply with the terms therein. In the event of conflict between the provisions of this Agreement and the provisions of an Addendum, the provisions of the Addendum will control.

## Section 24. FINAL AGREEMENT; EFFECTIVE DATE.

This Agreement is the complete and final agreement between Merchant and Bank for the Card Program services covered by this Agreement and supersedes all prior or contemporaneous negotiations, stipulations or agreements. If any provision of this Agreement is invalid or unenforceable, the other provisions remain effective. This Agreement becomes effective when the Application is signed and approved by Bank.

## Section 25. CONTINUING GUARANTY.

**25.1** As a primary inducement to Bank to enter into this Agreement, and to approve the Application of Merchant, the Guarantor(s), individually and severally, who signed on the Guarantor signature line(s) on the Application, agree to be bound by all terms and provisions of this Agreement to the same extent and in the same manner as Merchant, and unconditionally and irrevocably, personally guarantee the continuing full and faithful performance and payment by Merchant of each and all of Merchant's duties and obligations to Bank under this Agreement or any other agreement currently in effect or in the future entered into between Merchant or its Principals and Bank, as such agreements now exist or are amended from time to time, with or without notice to Guarantor(s).

**25.2** Merchant and Guarantor(s) further agree to be bound by the terms and provisions of any Merchant Card Processing Agreement between Bank and any Merchant Affiliate (as that term is defined in this Agreement), regardless of whether such agreement currently exists or is executed, amended or supplement at some future date. Merchant and Guarantor(s) unconditionally and irrevocably guarantee the full payment and performance of each and all duties and obligations owed to Bank by Merchant Affiliate pursuant to any Merchant Card Processing Agreement. The provisions of **Section 25.3** apply to the guarantee by Merchant and Guarantor(s) of the Merchant Affiliate's obligations to Bank under any Merchant Card Processing Agreement.

**25.3** Guarantor(s) understands that Bank, without notice to Guarantor(s), may from time to time renew or extend the

•

Agreement, modify rates, limits, charges and fees, or modify the amount or type of services provided to Merchant all of which may increase the Guarantor's obligations under this Guaranty. Guarantor(s) further understands that Bank may proceed directly against Guarantor(s) without first exhausting Bank's remedies against the Merchant, any other person or entity responsible to Bank or any security held by Bank. This Guaranty is a continuing guaranty and will not be discharged or affected by the release or discharge of Merchant or the death of the Guarantor(s). This Guaranty will bind all heirs, administrators, and representatives of the Guarantor(s) and may be enforced by or for the benefit of any successor of Bank. To the fullest extent permissible under applicable law, Guarantor(s) waives any and all rights of subrogation, reimbursement or indemnity derived from Merchant, all other rights and defenses available to Merchant, and all other rights and defenses available to Guarantor(s).

DOCS/630655.1